1    TOWNSEND AND TOWNSEND AND CREW LLP
     JAMES G. GILLILAND, JR. (State Bar No. 107988)
2    MEHRNAZ BOROUMAND SMITH (State Bar No. 197271)
     MEGAN M. CHUNG (State Bar No. 232044)
3    JEB OBLAK (State Bar No. 241384)
     Two Embarcadero Center, 8th Floor
4    San Francisco, California 94111
     Telephone: (415) 576-0200
5    Facsimile: (415) 576-0300
     Email: jggilliland@townsend.com,
6    mboroumand@townsend.com,
     mmchung@townsend.com,
7    jboblak@townsend.com

8    Attorneys for Plaintiff and Counterdefendant,
     APPLE INC.

9

10                UNITED STATES DISTRICT COURT

11              NORTHERN DISTRICT OF CALIFORNIA

12                  (SAN FRANCISCO DIVISION)

13    APPLE INC., a California corporation,      Case No.    CV 08-03251 WHA

14              Plaintiff,          **APPLE INC.'S NOTICE OF MOTION AND MOTION TO DISMISS**

15             v.                **PSYSTAR'S COUNTERCLAIMS; MEMORANDUM OF POINTS AND**

16    PSYSTAR CORPORATION,            **AUTHORITIES IN SUPPORT THEREOF**

17             Defendant.

18

19    PSYSTAR CORPORATION,            Date:       November 6, 2008
                                        Time:      8:00 a.m.
20             Counterclaimant,        Courtroom: 9, 19th Floor
                                                  Honorable William Alsup
21             v.

22    APPLE INC., a California corporation,

23             Counterdefendant.

24

25

26

27

28

Dockets.Justia.com

# TABLE OF CONTENTS

**Page**

I.  STATEMENT OF RELEVANT FACTS ............................................................................. 2

II.  THE LEGAL STANDARD FOR A MOTION TO DISMISS ...................................... 3

III.  ALL OF PSYSTAR'S COUNTERCLAIMS SHOULD BE DISMISSED
WITH PREJUDICE ............................................................................................................ 4

    A.  All of Psystar's Counterclaims Require The Definition Of Legally
Plausible Relevant Markets ................................................................................. 4

    B.  Psystar's Alleged Single-Product Relevant Markets Are Neither
Legally Nor Factually Plausible ....................................................................... 6

        1.  Courts Repeatedly Reject Single Brand Markets ............................... 6

        2.  The Allegations Contained In Psystar's Counterclaims
Disprove Its Contentions About Single Brand Markets ...................... 8

    C.  Apple Is Not Obliged To Help Psystar Compete ......................................... 12

    D.  Psystar's Cartwright Act Claims Should Be Dismissed .............................. 15

    E.  Psystar's California Unfair Competition Law Claims Should Be
Dismissed ............................................................................................................... 16

IV.  CONCLUSION ................................................................................................................... 17

**Cases**

*A. I. Root Co. v. Computer/Dynamics, Inc.*,
  806 F.2d 673 (6th Cir. 1986) .................................................................................. 7

*Aguilar v. Atlantic Richfield Co.*,
  25 Cal.4th 826 (Cal. 2001) .................................................................................... 16

*Bank of the West v. Superior Court*,
  2 Cal.4th 1254, 10 Cal.Rptr.2d 538, 833 P.2d 545 (1992) .................................... 16

*Bell Atlantic Corp. v. Twombly*,
  --- U.S. ----, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) .......................... 3, 5, 8, 12

*Berry v. Coleman*,
  172 Fed.Appx. 929, 2006 WL 759087, 2 (11th Cir. 2006) ...................................... 3

*Branch v. Tunnell*,
  14 F.3d 449 (9th Cir. 1994) ..................................................................................... 4

*Brown Shoe Co. v. United States*,
  370 U.S. 294 (1962) .................................................................................................. 6

*Chavez v. Whirlpool Corp.*,
  93 Cal.App.4th 363 (Cal.App.2. Dist.2001) .......................................................... 16

*Chicago Title Ins. Co. v. Great Western Financial Corp.*,
  69 Cal.2d 305 (Cal. 1968) ...................................................................................... 15

*Chongris v. Board of Appeals of Town of Andover*,
  811 F.2d 36 (1st Cir. 1987) ...................................................................................... 3

*Continental T. V., Inc. v. GTE Sylvania Inc.*,
  433 U.S. 36, 97 S.Ct. 2549 (1977) ........................................................................ 11

*Corwin v. Los Angeles Newspaper Service Bureau, Inc.*,
  4 Cal.3d 842 (Cal. 1971) ........................................................................................ 15

*Data General Corp. v. Grumman Systems Support Corp.*,
  36 F.3d 1147 (1st Cir. 1994) .................................................................................. 14

*Digital Equipment Corp. v. Uniq Digital Technologies, Inc.*,
  73 F.3d 756 (7th Cir. 1996) ........................................................................... 7, 8, 11

*Dimidowich v. Bell & Howell*,
  803 F.2d 1473 (9th Cir. 1986) ................................................................................ 15

*Disenos Artisticos E Industriales, S.A. v. Work*,
  714 F. Supp. 46 (E.D. N.Y. 1989) ............................................................................ 7

*Epstein v. Washington Energy Co.*,
  83 F.3d 1136 (9th Cir.1996) ............................................................................ 4

*Fox Film Corp. v. Doyal*,
  286 U.S. 123 (1932) ...................................................................................... 13

*Green Country Food Market, Inc. v. Bottling Group, LLC*,
  371 F.3d 1275 (10th Cir. 2004) ...................................................................... 7

*Hack v. President and Fellows of Yale College*,
  237 F.3d 81 (2d Cir. 2000) ............................................................................. 7

*Hal Roach Studios, Inc. v. Richard Feiner and Co.*,
  896 F.2d 1542 (9th Cir. 1990) ........................................................................ 4

*Ill. Tool Works v. Independent Ink, Inc.*,
  547 U.S. 28 (2006) .......................................................................................... 5

*In re Graphics Processing Units Antitrust Litig.*,
  527 F. Supp. 2d 1011 (N.D. Cal. 2007) ....................................................... 3, 4

*In re Independent Service Orgs. Antitrust Litig. CSU, L.L.C.*,
  203 F.3d 1322 (Fed. Cir. 2000) .................................................................... 14

*In re Silicon Graphics Inc. Securities Litigation*,
  183 F.3d 970 (9th Cir. 1999) .......................................................................... 4

*In re Wang Laboratories, Inc.*,
  1996 WL 87050 (D. Mass. 1996) ............................................................... 7, 11

*In re Wireless Telephone Services Antitrust Litigation*,
  385 F. Supp. 2d 403 (S.D.N.Y. 2005) .......................................................... 11

*Insignia Sys., Inc. v. News Corp., Ltd.*,
  2005 U.S. Dist. LEXIS 42851 (D. Minn. Aug. 25, 2005) .............................. 5

*Jefferson Parish Hospital District No. 2 v. Hyde*,
  466 U.S. 2 (1984) ............................................................................................ 5

*Kolling v. Dow Jones & Co.*,
  137 Cal.App.3d 709 (1982) .......................................................................... 15

*Lambtek Yogurt Machines v. Dreyer's Grand Ice Cream, Inc.*,
  1997 – 2 Trade Cases (CCH) ¶ 71, 891 (N.D. Cal. 1997) ............................. 7

*Little Caesar Enterprises, Inc. v. Smith*,
  34 F.Supp.2d 459 n.30 (E.D. Mich. 1998) ..................................................... 7

*Lucent Technologies, Inc. v. Gateway, Inc.*,
  2007 WL 2900484, 16 (S.D. Cal. 2007) ......................................................... 6

*Mack v. South Bay Beer Distributors*,
  798 F.2d 1279 (9th Cir.1986) ......................................................................... 4

*Marder v. Lopez*,

450 F.3d 445 (9th Cir. 2006) ................................................................................................. 4

*Morrison v. Viacom, Inc.*,
  66 Cal.App.4th 534 (Cal.App.1.Dist.1998) ........................................................................ 15

*Olympia Equipment Leasing Co. v. Western Union Telegraph Co.*,
  802 F.2d 217 (7th Cir. 1986) ............................................................................................. 15

*Rebel Oil Co. v. Atlantic Richfield Co.*,
  51 F.3d 1421 (9th Cir. 1995) ............................................................................................... 5

*RLH Industries, Inc. v. SBC Communications, Inc.*,
  133 Cal.App.4th 1277, 35 Cal.Rptr.3d 469, 475 (Cal.App. 4 Dist. 2005) ...................... 16

*Ron Tonkin Gran Turismo, Inc. v. Fiat Distributors, Inc.*,
  637 F.2d 1376 (9th Cir. 1981) ............................................................................................. 6

*Santa Cruz Medical Clinic v. Dominican Santa Cruz Hosp.*,
  1994 WL 619288 (N.D. Cal. 1994) ................................................................................... 15

*Schor v. Abbott Labs.*,
  457 F.3d 608 (7th Cir. 2006) ............................................................................................. 13

*SCM Corp. v. Xerox Corp.*,
  645 F.2d 1195 (2d Cir., 1981) ........................................................................................... 14

*Shaw v. Rolex Watch, U.S.A., Inc.*,
  673 F.Supp. 674 (S.D. N.Y. 1987) ...................................................................................... 7

*Snowden v. Hughes*,
  321 U.S. 1 (1944) ................................................................................................................. 3

*Southland Sod Farms v. Stover Seed Co.*,
  108 F.3d 1134 (9th Cir. 1997) ........................................................................................... 16

*Spahr v. Leegin Creative Leather Products, Inc.*,
  2008 WL 3914461 (E.D. Tenn., Aug. 20, 2008) ...................................................... 6, 8, 11

*Spectrum Sports v. McQuillan*,
  506 U.S. 447 (1993) ............................................................................................................. 5

*Sprewell v. Golden State Warriors*,
  266 F.3d 979 (9th Cir. 2001) ............................................................................................... 4

*State of California ex rel. Van de Kamp v. Texaco, Inc.*,
  46 Cal.3d 1147 (1988) ....................................................................................................... 15

*Steckman v. Hart Brewing*,
  143 F.3d 1293 (9th Cir. 1998) ............................................................................................. 4

*Stewart v. Abend*,
  495 U.S. 207 (1990) ........................................................................................................... 13

*Sybersound Records, Inc. v. UAV Corp.*,
  517 F.3d 1137 (9th Cir. 2008) ........................................................................................... 16

*Tanaka v. Univ. of S. Cal.*,
    252 F. 3d 1059 (9th Cir. 2001) ............................................................................... 5

*United States v. Colgate & Co.*,
    250 U.S. 300 (1919) ............................................................................................. 13

*United States v. E.I. DuPont de Nemours & Co.*,
    351 U.S. 377, 76 S.Ct. 994 (1956) ......................................................................... 6

*United States v. Grinnell Corp.*,
    384 U.S. 563 (1966) ............................................................................................... 5

*United States v. Microsoft Corp.*,
    147 F.3d 935 (D.C. Cir. 2001) ............................................................................. 14

*Verizon Communs. v. Law Offices of Curtis V. Trinko, LLP*,
    540 U.S. 398 (2004) ....................................................................................... 13, 14

**Statutes**

California Business & Professions Code §§ 16700 *et. seq.* ....................................... 15

California Business & Professions Code §16727 ....................................................... 15

California Business & Professions Code § 17200 ...................................................... 16

**Other Authorities**

*New York Times*, "Apple Riding A 51% Jump In Mac Sales," April 24, 2008 ................... 9

*New York Times*, "As Apple Gains PC Share, Jobs Talks of a Decade of Upgrades,"
    October 22, 2007 ..................................................................................................... 9

*The Wall Street Journal*, "Microsoft Kicks Off Seinfeld Campaign,"
    Sept. 5, 2008, p. 2 ................................................................................................. 11

**Treatises**

1 ABA Section of Antitrust Law, *Antitrust Law Developments*, 588-89 (6th ed. 2007) ......................... 6

Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust
    Principles and Their Application*, ¶563d ..................................................... 6, 10

**Constitutional Provisions**

U.S. Const. Art. I, § 8, cl. 8 ...................................................................................... 13

## NOTICE OF MOTION AND MOTION TO DISMISS

PLEASE TAKE NOTICE that on November 6, 2008, at 8:00 a.m., or as soon thereafter as the matter can be heard, in the courtroom of the Honorable William Alsup, located at 450 Golden Gate Avenue, San Francisco, California 94102, plaintiff and counterdefendant, Apple Inc. ("Apple") will, and hereby does, move for an order dismissing Psystar Corporation's ("Psystar") Counterclaims.

Apple seeks an Order dismissing all of Psystar's Counterclaims with prejudice.

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant Psystar Corporation is knowingly infringing Apple's copyrights and trademarks, and inducing others to do the same. Psystar makes and sells personal computers that use, without permission, Apple's proprietary operating system software. In an obvious attempt to divert attention from its unlawful actions, Psystar asserts deeply flawed antitrust counterclaims designed to have this Court force Apple to license its software to Psystar, a direct competitor. The Court should reject Psystar's efforts to excuse its copyright infringement, and dismiss these Counterclaims with prejudice.

Ignoring fundamental principles of antitrust law, and the realities of the marketplace, Psystar contends that Apple has unlawfully monopolized an alleged market that consists of only one product, the Macintosh® computer. However, in direct contradiction to Psystar's claimed Mac®-only market, Psystar admits that "a seemingly infinite list of manufacturers may be found in the computer hardware system marketplace," including "Dell, Acer, Lenovo, Sony, and Hewlett-Packard to name but a few." Counterclaims, ¶ 22, lines 13-17. Psystar also admits, in further contradiction to its alleged Mac-only market, that Apple has gone to great lengths in the media to position its Mac as superior to other personal computers against which it directly competes. Counterclaims ¶¶ 31-35.

Psystar's very business model is premised on the fact that Apple's computers compete directly with personal computers using different operating systems. In its Counterclaims Psystar admits computers with the Macintosh operating system ("Mac OS") are one of many types Psystar sells to consumers: "PSYSTAR manufactures and distributes computers *tailored to customer choosing*. As a part of its devotion to *supporting customer choice*, PSYSTAR supports a wide range of operating systems including Microsoft Windows XP and XP-64 bit, Windows Vista and Vista 64-bit, Linux (32 and 64-bit kernels), and the MacOS." Counterclaims, ¶ 15, lines 8-11 (emphasis added). Since

1  customers are <u>choosing</u> between these computer systems, the systems necessarily compete with one
2  another.  For these reasons and others, Psystar's effort to assert antitrust claims premised on the
3  existence of a relevant product market restricted solely to Apple's products fails as a matter of law.

4          Moreover, the ultimate goal of Psystar's Counterclaims is an order from this Court compelling
5  Apple to help competitors, like Psystar, by forcing Apple to license its proprietary software to those
6  competitors for use on their own computer hardware.  Psystar's effort is contrary to law and must be
7  rejected.  Neither the federal nor the state antitrust laws require competitors to stop competing with,
8  and instead to start helping, each other.

9  **I.**      **STATEMENT OF RELEVANT FACTS**

10          Apple launched its Macintosh computer line in 1984.  Both parties agree the Mac is "considered
11  to be reliable and to enjoy ease-of-use" and that its current operating system, Mac OS X Leopard®,
12  "has received 'significant acclaim.'"  Answer, ¶ 3, lines 23-25; ¶ 6, lines 20-22.  Apple is the exclusive
13  manufacturer of the Mac and its operating system.  Counterclaims, ¶ 18, lines 13-16; ¶ 27, lines 18-21.
14  Apple's licensing agreement with its customers prohibits the use of the Mac operating system on non-
15  Apple computers.  Answer, ¶ 18, lines 3-5; Counterclaims, ¶ 57, lines 9-10.

16          Psystar also "manufactures and distributes computers . . ."  Counterclaims, ¶ 15, line 8.  Psystar
17  tailors the hardware and software configurations it sells "to customer choosing."  *Id*.  Its Open
18  Computers can be configured to run the Windows® XP operating system, the Windows Vista®
19  operating system, the Linux operating system or Mac OS®.  *Id.*, lines 8-12.  Psystar, however, does not
20  have a license to copy, use or sell Mac OS, and the terms of the Mac OS license agreement prohibit use
21  of that software on non-Apple hardware.  Counterclaims, ¶¶ 57, lines 9-10; ¶ 61, lines 5-18.

22          Notwithstanding the way it runs it own business, Psystar alleges the Mac is so superior to other
23  personal computers, especially those based upon Microsoft's Windows operating system, that other
24  PCs are not "and cannot be considered an effective substitute" for the Mac.  Counterclaims, ¶ 19, lines
25  22-26.  Psystar asserts that the features and functions of the Mac are so special, and its customers are so
26  loyal, that there is a legally and economically cognizable relevant product market limited exclusively to
27  the Macintosh operating system.  Counterclaims, ¶¶ 18-20.  By definition, Apple is the only participant
28  in this alleged market.

Next Psystar claims there is a second market for computer hardware alone (without an operating system) that <u>could</u> run Mac OS, which Psystar calls the "Mac OS Capable Computer Hardware Systems" market. Counterclaims, ¶¶ 21-26. Psystar alleges the only companies in this purported market are Apple and Psystar, although Psystar claims other companies would enter this "market" if Apple were forced to allow them to install Apple's Mac OS on their computers. Counterclaims, ¶¶ 24, 26. Finally, within this alleged market of two, Psystar asserts there is a sub-market consisting of the computers Apple sells - its Mac line of computers - called the "Apple-Labeled Computer Hardware Systems submarket" - in which Apple is the only participant. Countercaims, ¶ 27, lines 16-23.

While Apple agrees its Macintosh computers are superior to other personal computers, that does not mean they face no competition. Indeed, Psystar repeatedly contradicts its own market definitions with allegations throughout its Counterclaims showing active competition between Apple and other PC manufacturers. Consequently, Psystar's allegations fail to allege a viable claim that Apple has restrained trade in any commercially real market.

## II.  <u>THE LEGAL STANDARD FOR A MOTION TO DISMISS</u>

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the "legal sufficiency" of the claims alleged in the complaint. *In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1018 (N.D. Cal. 2007). To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), Psystar must plead facts that, if true, render its antitrust allegations not just possible, but **plausible**. *Bell Atlantic Corp. v. Twombly*, --- U.S. ----, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929 (2007); *In re Graphics Processing Units*, *supra*, 527 F. Supp. 2d at 1023-4. While claims challenged by a motion to dismiss need not have detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *See Twombly*, 127 S.Ct. at 1955, 1974. Inconsistent allegations regarding material facts should not be considered as true. *Chongris v. Board of Appeals of Town of Andover*, 811 F.2d 36, 37 (1st Cir. 1987) (citing *Snowden v. Hughes*, 321 U.S. 1, 10 (1944)); *Berry v. Coleman*, 172 Fed.Appx. 929, 932, 2006 WL 759087, 2 (11th Cir. 2006) ("conclusory allegations [that] contradict the other facts alleged in the complaint" need not be taken as

true).  Moreover, "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim.  *Epstein v. Washington Energy Co.*, 83 F.3d 1136, 1140 (9th Cir.1996) (citations omitted)."  *In re Graphics Processing Units, supra*, 527 F. Supp. 2d at 1018.

When evaluating the sufficiency of a complaint, courts may consider all materials properly submitted as part of the complaint or counterclaim, such as exhibits. *See Hal Roach Studios, Inc. v. Richard Feiner and Co*., 896 F.2d 1542, 1555 (9th Cir. 1990).  Courts "are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint."  *Steckman v. Hart Brewing*, 143 F.3d 1293, 1295 (9th Cir. 1998).  In addition, courts may take judicial notice of "matters of public record," *Mack v. South Bay Beer Distributors*, 798 F.2d 1279, 1282 (9th Cir.1986), and need not accept as true allegations that contradict matters properly subject to judicial notice.  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

## III.  ALL OF PSYSTAR'S COUNTERCLAIMS SHOULD BE DISMISSED WITH PREJUDICE

Psystar's Counterclaims all are based on the facially implausible premise that there is a separate relevant product market for the Mac operating system and that there is no competition in that market.  The Counterclaims also presuppose, contrary to the law, that Apple is required to help its competitors compete against it.  The allegations in Psystar's Counterclaims, and the documents it incorporates by reference in those claims,[1] establish that Psystar has not pled, and cannot plead, any viable antitrust or unfair competition claims.  Consequently, all of its Counterclaims should be dismissed with prejudice.

### A.  All of Psystar's Counterclaims Require The Definition Of Legally Plausible Relevant Markets

For each of its antitrust claims Psystar must plead, and ultimately prove, one or more economically meaningful relevant product markets.  To state a viable tying claim in violation of

---

[1] If a document is incorporated by reference in a complaint, but is not physically attached, the entire document may be considered if it is central to the claim and no party questions its authenticity.  *See Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).  As the Ninth Circuit Court of Appeals stated in *In re Silicon Graphics Inc. Securities Litigation*, 183 F.3d 970, 986 (9th Cir. 1999), a district court may "consider documents 'whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading,' " quoting *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994).

Section 1 of the Sherman Act, as Psystar attempts in its first Counterclaim, requires that Psystar plead and prove Apple has power in the relevant market for the tying product, which it claims is "the Mac OS market." *Jefferson Parish Hospital District No. 2 v. Hyde*, 466 U.S. 2, 13-14, 104 S.Ct. 1551, 1558-59 (1984); *Ill. Tool Works v. Independent Ink, Inc.*, 547 U.S. 28, 36, 126 S.Ct. 1281, 1287 (2006). Likewise, to state a valid claim under Section 2 of the Sherman Act, as attempted in Psystar's second Counterclaim, Psystar must demonstrate that Apple has monopoly power in a relevant product market (again, the alleged Mac OS market). *United States v. Grinnell Corp.*, 384 U.S. 563, 570-71, 86 S.Ct. 1698, 1703-1704 (1966); *Spectrum Sports v. McQuillan*, 506 U.S. 447, 455, 115 S.Ct. 884, 890 (1993); *Rebel Oil Co. v. Atlantic Richfield Co.*, 51 F.3d 1421, 1432-33 (9th Cir. 1995). Psystar's exclusive dealing claims under Section 3 of the Clayton Act require proof that a substantial portion of the claimed relevant market – usually greater than 50% – was foreclosed. *Jefferson Parish*, 466 U.S. at 45-6; *Insignia Sys., Inc. v. News Corp., Ltd.*, 2005 U.S. Dist. LEXIS 42851 (D. Minn. Aug. 25, 2005) (exclusive dealing claim dismissed for failure to allege percentage of foreclosure in properly defined relevant market). Here, Psystar alleges that Apple "has substantially lessened competition in the Mac OS Capable Computer Hardware Systems marketplace to the point of near elimination." Counterclaims, ¶ 109, lines 12-13.

As shown below, Psystar's single-brand relevant market definitions are irremediably flawed. Psystar's own allegations establish that there is no such relevant market as the "Mac OS market." Those allegations also show there is no such thing as a Mac OS Capable Computer Systems market. Consequently, there is no basis for Psystar to claim Apple has market power in any market. As a result, all of Psystar's claims collapse, since "failure to identify a[n economically-meaningful] relevant [product] market is a proper ground for dismissing a Sherman Act claim." *Tanaka v. Univ. of S. Cal.*, 252 F. 3d 1059, 1063 (9th Cir. 2001) (affirming dismissal where plaintiff sought to restrict the relevant market to UCLA soccer). Absent some suggestion that Apple exercised substantial market power in a relevant product market, Psystar's antitrust claims should be dismissed with prejudice and not be permitted to continue into their "inevitably costly and protracted discovery phase." *Asahi Glass Co. v. Pentech Pharmaceuticals, Inc.,* 289 F.Supp.2d 986, 995 (N.D.Ill.2003) (Posner, J., sitting by designation). *See also, Twombly, supra,* 127 S.Ct. at 1967 ("It is no answer to say that a claim just shy

of plausible . . . can, if groundless, be weeded out in the discovery process . . ."); *Spahr v. Leegin Creative Leather Products, Inc.*, 2008 WL 3914461 (E.D. Tenn., Aug. 20, 2008) at pg. 8 ("[F]urther factual inquiry through discovery will add nothing to the question before the Court. It is patently obvious from the face of the complaint that the plaintiff's definition of the relevant product market is deficient and cannot be cured.")

**B.** **Psystar's Alleged Single-Product Relevant Markets Are Neither Legally Nor Factually Plausible**

**1.** **Courts Repeatedly Reject Single Brand Markets**

Psystar's effort to define a single-brand relevant market contravenes well-known principles of antitrust law. Relevant markets generally cannot be limited to a single manufacturer's products. "As the Supreme Court recognized in the *United States v. E.I. DuPont de Nemours & Co.*, 351 U.S. 377, 76 S.Ct. 994 (1956), the 'power that, let us say, automobile or soft-drink manufacturers have over their trademarked products is not the power that makes an illegal monopoly. Illegal power must be appraised in terms of the competitive market for the product.'" 1 ABA Section of Antitrust Law, *Antitrust Law Developments*, 588-89 (6th ed. 2007). Reasonably interchangeable products that serve the same use are in the same market. *United States v. E.I. DuPont DeNemours Co.*, at 404, 76 S.Ct. 1012. The outer boundaries of a market "are determined by the reasonable interchangeability of use or the cross-elasticity of demand between the product itself and substitutes for it." *Brown Shoe Co. v. United States*, 370 U.S. 294, 325, 82 S.Ct. 1502, 1523-1524 (1962). "Most courts correctly define the presumptive market to include similar products, even though they can be differentiated by brand or features." Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application*, ¶563d.

Courts consistently have rejected the exact same effort to define a single-brand product market as Psystar attempts here. *See, e.g.*, *Ron Tonkin Gran Turismo, Inc. v. Fiat Distributors, Inc.*, 637 F.2d 1376, 1378 (9th Cir. 1981) (rejecting market definition limited to Fiat cars based on "unsubstantiated belief that for a sizeable number of customers only a Fiat will do"); *Lucent Technologies, Inc. v. Gateway, Inc.*, 2007 WL 2900484, 16 (S.D. Cal. 2007) (rejecting relevant market of "MPEG-2

compliant computers" where MPEG-2 was patented, yet "interchangeab[le] with other technologies in the market"). For example, in *Lambtek Yogurt Machines v. Dreyer's Grand Ice Cream, Inc.,* 1997 – 2 Trade Cases (CCH) ¶ 71, 891 (N.D. Cal. 1997), plaintiff's antitrust claim was dismissed because it alleged a single-brand market of "equipment capable of dispensing *Dreyer's* frozen yogurt." *Id.* at pg. 80, 296:

> "Defendants are incapable of monopolizing the market for its own brand of product. A manufacturer has a natural monopoly in the sale and distribution of its own products. [Citations omitted] Such natural monopolies do not contravene antitrust laws."

*Id. See, Digital Equipment Corp. v. Uniq Digital Technologies, Inc.*, 73 F.3d 756 (7th Cir. 1996) (rejecting market power in a "firm's own products" where it "sells in vigorous competition"); *A. I. Root Co. v. Computer/Dynamics, Inc.*, 806 F.2d 673, 675-6 (6th Cir. 1986) (company's unique operating system software and hardware is not a relevant market; rather the relevant market is all "small business computers," which admittedly included IBM, NCR and Seiko*); In re Wang Laboratories, Inc.*, 1996 WL 87050 (D. Mass. 1996) (single manufacturer's computer not the relevant market). As the Tenth Circuit Court of Appeals said in *Green Country Food Market, Inc. v. Bottling Group, LLC*, 371 F.3d 1275, 1282 (10th Cir. 2004), "Even where brand loyalty is intense, courts reject the argument that a single branded product constitutes a relevant market." *Accord*, *Hack v. President and Fellows of Yale College*, 237 F.3d 81, 86-87 (2d Cir. 2000) (affirming district court's grant of defendant's motion to dismiss because the "Yale education" market is not a "plausible" relevant market). Confronted with implausible singe-brand product market claims, trial courts have not hesitated to dismiss them. *Lambtek Yogurt, supra; Little Caesar Enterprises, Inc. v. Smith*, 34 F.Supp.2d 459, 477 n.30 (E.D. Mich. 1998) ("[C]ourts [are] reluctant to find market power in single brand products, no matter how coveted or unique, if other brands of the product might, at a certain price level, be selected as substitutes for the preferred brand."); *Shaw v. Rolex Watch, U.S.A., Inc.*, 673 F.Supp. 674, 679 (S.D. N.Y. 1987) (market for Rolex watches is not even a "plausible  product market" and the court "does not need protracted discovery to state with confidence that Rolex watches are reasonably interchangeable with other high quality timepieces"); *Disenos Artisticos E Industriales, S.A. v. Work*, 714 F. Supp. 46, 48 (E.D. N.Y. 1989) (fact that some customers "echo the brand loyalties…furnishes

no basis for employing a single-product market definition.")

Most recently, in *Spahr, supra*, the court rejected almost identical allegations as those made here.  Plaintiff claimed that Leegin's brand of women's accessories, called the "Brighton" brand, was a separate market because the products are unique, they are marketed as "one of a kind," customers would not consider other accessories as "suitable substitutes," and there was an "inelasticity of demand" for these products.  2008 WL 3914461, at pp. 3, 8.  Applying the Supreme Court's decision in *Twombly*, the District Court dismissed the complaint without leave to amend because its definition of the relevant market was implausible "from the face of the complaint…."  *Id.*, at 8.

> "If the plaintiffs were correct… a whole host of products which enjoy brand loyalty, such as Pepsi, Coca-Cola, Rolex watches, fast foods, Chevrolet, Ford, Chrysler, Volkswagen and Dodge automobiles, office supplies, ice cream, and the like would all become relevant markets for antitrust purposes.  Plaintiffs ignore, however, volumes of case law which reject such a conclusion."

*Id.*, at 9.  (footnotes citing cases omitted).  Noting that "[c]ourts have consistently refused to consider one brand to be a relevant market of its own when the brand competes with other potential substitutes [citations omitted]," the court dismissed plaintiff's claims without leave to amend.  This Court should do the same.

### 2. The Allegations Contained In Psystar's Counterclaims Disprove Its Contentions About Single Brand Markets

Despite the plethora of legal authority which makes clear that an antitrust plaintiff cannot legitimately plead a single brand market, Psystar has still attempted to do so.  Yet with this attempt, Psystar has asserted allegations that disprove its own contentions regarding the existence of an alleged Mac OS market.   All of Psystar's claims rely on the unsupported premise that Mac OS is a unique product[2] that has no competition whatsoever.  Psystar grounds all of it its Counterclaims on the allegation that "the Mac OS market is distinct and unique as compared to other operating systems **in**

---

[2] Psystar asserts that an operating system, without a computer, is a separate product.  This assertion also is wrong.  *Digital Equipment Corp. v. Uniq Digital Technologies*, 73 F.3d 756, 761 (7th Cir. 1996) (selling operating system software together with a computer is not a tie since "[a]n operating system is essential to make a bunch of silicon chips a 'computer.' No OS, no computation. … Every manufacturer in the business includes an operating system with the physical parts that make up a computer.").  However, for the purposes of this motion Apple is not addressing this additional flaw in Psystar's Counterclaims.

**the marketplace**[3] including but not limited to the Windows operating system from Microsoft

Corporation." Counterclaims, ¶ 19, lines 22-24 (emphasis added). Without any factual support -- i.e.,

"on information and belief" -- Psystar asserts "the Windows operating system is not and cannot be

considered an effective substitute for Mac OS; the same holds true for any other operating system."

*Id.*, lines 25-26; ¶ 45, lines 26-28. However, this unsupported assertion is directly contradicted

elsewhere in the Counterclaims where Psystar admits that it offers the Windows and Linux operating

systems as substitutes for the Mac OS on Psystar's own computer hardware. Counterclaim ¶ 15. It is

simply not plausible that Psystar would offer Windows and Linux as alternative choices to the Mac OS

on its own computers if they were not competitive substitutes for one another. Indeed, the allegations

in Psystar's Counterclaims, along with the documents Psystar references, demonstrate that its artificial,

hyper-narrow, market definitions must fail and its Counterclaims must fail along with them.

Psystar alleges that Apple has been so successful in advertising its products that loyal customers

would never consider switching to another brand. Counterclaims, ¶¶ 30-35.[4] Psystar also conclusorily

asserts that a small but significant change in the price of Apple's computers would not cause

consumers to buy computers from another manufacturer. *Id.*, ¶¶ 36-38. According to Psystar, studies

have shown that Apple is "known for its 'market performance and brand leadership'… 'far outranks **its**

**closest competitor**'… [and] is 'well known for its passionate and dedicated customer base.'"

Counterclaims, ¶ 38, lines 10-12 (emphasis added). *See also, id.*, ¶ 39.[5] Yet, this allegation again is

---

[3] Even when trying to allege a single-brand market Psystar stumbles, acknowledging in this allegation the existence of the <u>actual</u> "marketplace," which is the market for personal computers with installed operating systems. In that market Apple has less than an 8% share, while computers running operating systems from Microsoft have a market share of almost 90%. *See, New York Times*, "Apple Riding A 51% Jump In Mac Sales," April 24, 2008, pp. C1, C8 (Apple Req. for Judicial Notice, Ex. E) ("International Data Corporation's survey this month showed Apple with a 6 percent share of the American market in the first quarter…"); *New York Times*, "As Apple Gains PC Share, Jobs Talks of a Decade of Upgrades," October 22, 2007, pp. C1, C8 (Apple Req. for Judicial Notice, Ex. D) ("Last week, the research firm Gartner said PC shipments in the United States grew only 4.7 percent in the third quarter . . . . Gartner forecast that Apple [would achieve] . . . an 8.1 percent share of the domestic market.")

[4] Examples of the complete text of the advertisements cited by Psystar are submitted as Exhibit A of Apple's Request for Judicial Notice, and a CD with sample videos of these ads is attached as Exhibit B.

[5] The press release about these third-party studies, quoted by Psystar, is attached as Exhibit C to Apple's Request for Judicial Notice.

one of many in which Psystar admits that Apple has competitors, thereby contradicting its market definitions. *See also*, Counterclaims ¶¶ 15, 22-23, 36-37.

Psystar's allegations about the competition that is actually occurring contradict its artificial single-brand market definitions. For example, Psystar's allegations about Apple's extensive advertising campaign comparing the features of Mac computers to computers running the Windows operating system affirmatively prove that Apple is in direct head-to-head competition with the likes of Dell, Hewlett-Packard, Sony, and others. For example, the "*Get a Mac*" advertising campaign relied upon by Psystar (Counterclaims, ¶¶ 34-35) specifically compares the features and functions of a Mac with a competing PC running the Windows operating system (*See,* Apple's Request for Judicial Notice, Exs. A and B.)

Among other things, the ads cited by Psystar:

- Reference a *Wall Street Journal* review that the Mac is "the finest desktop PC on the market, at any price . . .";

- Show that Macs and PCs sold by other companies can work together on a computer network;

- Note that both computers run the application program, Microsoft Office;

- Acknowledge that both can be used for videoconferencing;

- Quote a review from *PC World* magazine that "the fastest Windows Vista notebook we tested this year is a Mac";

- Assert that former purchasers of PCs from other companies are switching to the Mac and can transfer files from competing computers to a Mac easily; and

- Reference another review from the *Wall Street Journal* that Mac OS X "Leopard is better and faster than Vista."

Request for Judicial Notice, Ex. A, pp. 1-3, 5, 22, 32, 47, and 56. Yes, as alleged by Psystar, some purchasers have concluded Apple's Mac is better than Windows-based PCs (Counterclaims, ¶ 35). And, yes, as Psystar asserts, some Windows-based PCs are less expensive for that reason. *Id.*, ¶¶ 36-37. **But, that is the very essence of competition involving quality and price![6]** Phillip E. Areeda &

---

[6] Just this month Microsoft launched a counter advertising campaign "to rejuvenate its Windows brand, which has been battered in recent years in commercials by rival Apple Inc. . . . The vast majority of

Continued on the next page

Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application*, ¶563d (describing cases rejecting relevant market definition that were limited to manufacturer's differentiated brand); see also *In re Wireless Telephone Services Antitrust Litigation*, 385 F. Supp. 2d 403, 419-420 (S.D.N.Y. 2005) ("the mere existence of a brand and brand identification in the marketplace are not synonymous with market power. … In general, where 'interbrand competition exists...it provides a significant check on the exploitation of interbrand market power because of the ability of consumers to substitute a different brand of the same product.'") (citing *Continental T. V., Inc. v. GTE Sylvania Inc.*, 433 U.S. 36, 52 n.19, 97 S.Ct. 2549, 2558 (1977)); *Wang Laboratories, Inc.*, 1996 WL 87050, supra. Indeed, as the Seventh Circuit Court of Appeals recognized in *Digital Equipment Corp. v. Uniq Digital Technologies, Inc.*, 73 F.3d 756 (7th Cir. 1996), "[c]omputer manufacturers are vigorous rivals; prices drop daily; this is one of our economy's most competitive sectors."

Psystar's conclusory allegations regarding "cross-elasticity and SSNIP" do not rescue its effort to allege a single-brand product market. *See*, Counterclaims, ¶¶ 36, 37, 43. Specifically, Psystar asserts, on information and belief, "that a percentage change in price of one product, namely the Mac OS, will not result in a change in quantity that consumers will demand of another product as evidenced by the price differentiations . . . as otherwise set forth above." *Id.*, ¶ 43 at lines 11-13. This assertion is so vague it is meaningless.[7] Moreover, the "price differentiations" between products that Psystar cites do <u>not</u> relate to the price of operating systems. All of the cited advertising, and all of Psystar's price comparisons, refer to complete and functioning computer systems, not to operating systems without computers. Consequently, Psystar's allegations about the cross-elasticity of demand for computer systems provide no support whatsoever for its contention that there is a separate product market for one brand of operating system software.

Equally vague allegations about cross-elasticity of demand were rejected last month in *Spahr v.*

---

Continued from the previous page

PCs continue to run on Windows, though Apple's Mac business has steadily gained market share, rising to 7.8% of new PC shipments in the U.S. . . according to research firm IDC." *The Wall Street Journal*, "Microsoft Kicks Off Seinfeld Campaign," Sept. 5, 2008, p. 2 (Apple's Request for Judicial Notice, Ex. F).

[7] Psystar also makes reference to the "allegations as made by APPLE in its complaint" but this adds no further specificity to its vague allegations.

*Leegin Creative Leather Products*, 2008 WL 3914461 (W.D. Tenn. 2008), where the court granted defendant's motion to dismiss:

> "Plaintiffs do allege . . . that 'Brighton-brand products are distinct products characterized by an inelasticity of demand.' Plaintiffs have not, however, alleged facts which explain their conclusory allegation. This is precisely the type of conclusory allegation the Supreme Court cautioned against in *Twombly*, 127 S.Ct. at 1966."

2008 WL 3914461 at *9, fn.2 Likewise, Psystar here provides no factual basis for its assertion that the price of the Mac OS (alone) is not constrained by the price of Windows XP or Windows Vista or Linux alone. Consequently, its conclusory allegation that there is no cross-elasticity of demand must be ignored.

Finally, Psystar admits that operating system software from competing suppliers all serve the same purpose:

> "18.... Operating systems like the Mac OS control and direct the interaction between software applications such as word processors, Internet browsers, and applications and the central processing unit of the computer and its various hardware components.
>
> * * *
>
> "21.... Operating systems -- like the Mac OS -- manage the interaction between various prices of hardware such as a monitor or printer. The operating system also manages various software applications running on a computing device.
>
> * * *
>
> "28.... Without an operating system, a computer can perform virtually no useful tasks...."

Counterclaims, ¶¶ 18, 21, 28. While the operating system in an Apple computer may perform its functions in a different (and better) manner than the operating system in other computers, the systems are economically interchangeable since they serve the exact same purpose. Therefore, they all belong in the same relevant market.

Psystar has not alleged a plausible relevant product market in which Apple has market power. Without such, all its Counterclaims fail.

### C.     Apple Is Not Obliged To Help Psystar Compete

Ultimately, Psystar seeks to force Apple to license its software to competitors, like Psystar, so

they can use Mac OS to create Mac "clones."  Psystar undeniably can sell, and is selling, its Open

Computers running Windows or Linux in direct competition with Apple's Mac.  Nevertheless, it also

wants to sell computers running Apple's Mac OS in direct competition with Apple's Mac.  However,

one of the bedrock principles of antitrust law is that a manufacturer's unilateral decision concerning

how to distribute its product and with whom it will deal cannot violate the Sherman Act:

> the [Sherman Act] does not restrict the long recognized right of a trader or manufacturer engaged in an entirely private business, freely to exercise his own independent discretion as to parties with whom he will deal.  And, of course, he may announce in advance the circumstances under which he will refuse to sell.

*United States v. Colgate & Co.*, 250 U.S. 300, 307, 39 S.Ct. 465, 468 (1919); *Verizon Communs. v.*

*Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 408, 124 S.Ct. 872, 879 (2004) ("as a general

matter, the Sherman Act does not restrict the long recognized right of [a] trader or manufacturer

engaged in an entirely private business, freely to exercise his own independent discretion as to parties

with whom he will deal." (internal quotation marks omitted)); *Schor v. Abbott Labs.*, 457 F.3d 608,

610-11 (7th Cir. 2006) (affirming dismissal of monopolization claim on a motion to dismiss because

"antitrust law does not require monopolists to cooperate with rivals by selling them products that would

help the rivals to compete").

Even if Apple had market power in a true relevant market, the antitrust laws cannot be used to

force Apple to license its Mac OS to a competitor such as Psystar.  Forced sharing is an anathema to

the Constitutional and statutory framework for copyrights, which explicitly gives copyright owners the

right to exclude as an incentive to create new works.  *See* U.S. Const. Art. I, § 8, cl. 8 ("To promote the

Progress of Science and useful Arts, by securing for limited Time, to Authors and Inventors the

exclusive Right to their respective Writings and Discoveries"); 17 U.S.C. § 106 (2000); *Stewart v.*

*Abend*, 495 U.S. 207, 228-29, 110 S.Ct. 1750, 1764 (1990) ("[N]othing in the copyright statutes would

prevent an author from hoarding all of his works during the term of the copyright."); *Fox Film Corp. v.*

*Doyal*, 286 U.S. 123, 127, 52 S.Ct. 546, 547 (1932) ("The owner of the copyright, if he pleases, may

refrain from vending or licensing and content himself with simply exercising the right to exclude others

from using his property").  Thus, Apple cannot be compelled to allow Psystar to use the copyrighted

Mac OS in Psystar's computers.

As the United States Supreme Court has emphatically stated, the mere possession of market power, even monopoly power, "is not only not unlawful; it is an important element of the free-market system." *Trinko, supra,* 540 U.S. at 407, 124 S.Ct. 879. It is this opportunity to triumph in the market that "attracts 'business acumen' in the first place . . . [and] induces risk taking that produces innovation and economic growth." *Id.* As a result, the Supreme Court confirmed in *Trinko* that except in rare circumstances clearly not present here even monopolists cannot be compelled to deal with their rivals or part with the source of their advantage. The Supreme Court emphasized that:

> Compelling . . . firms to share the source of their advantage is in some tension with the underlying purpose of antitrust law, since it may lessen the incentive for the monopolist, the rival, or both to invest in . . . economically beneficial facilities. Enforced sharing also requires antitrust courts to act as central planners, identifying the proper price, quantity, and other terms of dealing -- a role for which they are ill suited. Moreover, compelling negotiation between competitors may facilitate the supreme evil of antitrust: collusion.

*Trinko*, 540 U.S. at 407-08, 124 S.Ct. 879; *see also United States v. Microsoft Corp.*, 147 F.3d 935, 946-48 & n.9, 950-51 (D.C. Cir. 2001) ("[a]ntitrust scholars have long recognized the undesirability of having courts oversee product design, and any dampening of technological innovation would be at cross-purposes with antitrust law").

Even in the most extreme case – a complete monopoly protected by patents – the antitrust laws do not require forced licensing. Thus, in *SCM Corp. v. Xerox Corp.,* 645 F.2d 1195 (2d Cir., 1981), Xerox had the exclusive patent rights to plain paper photocopiers, a product so superior that it dominated any potential substitute such as coated paper copying or mimeographs. 645 F.2d at 1200. Nevertheless, the Second Circuit held that the antitrust laws could not be used to force Xerox to license its intellectual property to a competitor. 645 F.2d at 1209-1210. Likewise, in *Data General Corp. v. Grumman Systems Support Corp.*, 36 F.3d 1147, 1187 (1st Cir. 1994), the First Circuit affirmed the dismissal of antitrust counterclaims that were premised on Data General's refusal to license its copyrighted software to a direct competitor. *See also, In re Independent Service Orgs. Antitrust Litig. CSU, L.L.C.*, 203 F.3d 1322, 1327 (Fed. Cir. 2000) (following *Data General)*.

Psystar cannot allege Apple has monopoly power in either a PC operating systems market or a personal computer market since Microsoft's Windows has market power in those markets. But even if Apple had market power, competitors are not required by the antitrust laws to help their rivals. There

is no "general principle of antitrust law that a competitor is entitled to the assistance . . . of any firm in its market that happens to have monopoly power.  A monopolist is not required to subsidize its competitors. . . ."  *Olympia Equipment Leasing Co. v. Western Union Telegraph Co.,* 802 F.2d 217, 219 (7th Cir. 1986).  For all of these reasons Psystar's antitrust Counterclaims should be dismissed.

### D.     Psystar's Cartwright Act Claims Should Be Dismissed

Psystar's state antitrust claims, pleaded under California's Cartwright Act, Business & Professions Code §§ 16700 *et. seq.* suffer from all the same infirmities as its federal claims, and more. First, there is no cause of action for unilateral monopolization under the Cartwright Act. *Dimidowich v. Bell & Howell*, 803 F.2d 1473, 1478 (9th Cir. 1986) ("No California statute deals expressly with monopolization or attempted monopolization;" "This claim is not cognizable under the Cartwright Act, for it fails to allege any combination."); *Santa Cruz Medical Clinic v. Dominican Santa Cruz Hosp*., 1994 WL 619288, 13 (N.D. Cal. 1994) ("Single firm monopolization is not cognizable under the Cartwright Act.  *State of California ex rel. Van de Kamp v. Texaco, Inc*., 46 Cal.3d 1147, 1163 (1988).")  Second, Cartwright Act tying and exclusive dealing claims have the same requirements as the federal Sherman Act which, as shown above, Psystar cannot meet.

Psystar's tying claim under California law fails because it has not pled, and cannot plead, a legally-cognizable relevant product market in which Apple has market power.  *Corwin v. Los Angeles Newspaper Service Bureau, Inc.*, 4 Cal.3d 842, 856-858 (Cal. 1971) (citing federal tying cases as precedent).  Likewise, Psystar's exclusive dealing claim fails under California law because its allegations demonstrate there cannot be an anticompetitive effect in any economically-plausible, legally-cognizable relevant market. *Chicago Title Ins. Co. v. Great Western Financial Corp.*, 69 Cal.2d 305, 315 (Cal. 1968) (federal interpretations of section 3 of the Clayton Act control California's interpretation of Business & Professions Code §16727); *Morrison v. Viacom, Inc.*, 66 Cal.App.4th 534, 548 (Cal.App.1.Dist.1998) ("An 'antitrust injury' must be proved; that is, the type of injury the antitrust laws were intended to prevent, and which flows from the invidious conduct which renders defendants' acts unlawful. [Citations.]" (citing *Kolling v. Dow Jones & Co.*, 137 Cal.App.3d 709, 723 (1982)).  For all the same reasons discussed above, Psystar has not met, and cannot meet, any of these pleading requirements, so its state law antitrust claims should be dismissed.

**E.    Psystar's California Unfair Competition Law Claims Should Be Dismissed**

Psystar's contention that Apple has engaged in an "unlawful and/or unfair business practice" (Counterclaims, ¶ 120, lines 7-9) in violation of Business & Professions Code § 17200, is premised entirely on its contentions that Apple has violated federal and state antitrust laws.  Since Psystar's antitrust claims are irreparably flawed, its §17200 claim fails as well.  *Aguilar v. Atlantic Richfield Co.*, 25 Cal.4th 826, 866 -867 (Cal. 2001) (no §17200 claim where predicate antitrust law claim dismissed); *RLH Industries, Inc. v. SBC Communications, Inc.*, 133 Cal.App.4th 1277, 1286, 35 Cal.Rptr.3d 469, 475 (Cal.App. 4 Dist. 2005) ("Having properly granted [Defendant] summary judgment on the Cartwright Act causes of action, the court also properly granted [Defendant] summary judgment on the unfair competition cause of action"); *Chavez v. Whirlpool Corp.*, 93 Cal.App.4th 363, 375 -376 (Cal.App.2. Dist.2001) ("[C]onduct alleged to be 'unfair' because it unreasonably restrains competition and harms consumers, such as the resale price maintenance agreement alleged here, is not 'unfair' if the conduct is deemed reasonable and condoned under the antitrust laws.").

Apparently misunderstanding California common law, Psystar asserts that Apple has engaged in an "unlawful and/or unfair business practice within the meaning of the common law of unfair competition," (Counterclaims, ¶ 124 at lines 23-25).  Common law unfair competition is a trademark doctrine that refers to the practice of "passing off." *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1153 (9th Cir. 2008); *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1147 (9th Cir. 1997) ("'The common law tort of unfair competition is generally thought to be synonymous with the act of 'passing off' one's goods as those of another ... [, or] acts analogous to 'passing off,' such as the sale of confusingly similar products, by which a person exploits a competitor's reputation in the market.'  *Bank of the West v. Superior Court*, 2 Cal.4th 1254, 1263, 10 Cal.Rptr.2d 538, 544, 833 P.2d 545, 551 (1992).  Because Plaintiffs' allegations do not amount to 'passing off' or its equivalent, Defendants are correct that Plaintiffs' claim for unfair competition was properly dismissed.").

Since no such allegations are made here, Psystar's unfair competition claims -- both statutory and common law -- should be dismissed.

///

///

IV.   **CONCLUSION**

   Psystar's attempt to direct attention from its infringing conduct should fail.  It cannot plausibly define a relevant market in which Apple has market power, so Psystar cannot prove any unfair competition by Apple.  Nor can Psystar use the antitrust laws to force Apple to help its direct competitor.  Therefore, Psystar's Counterclaims all should be dismissed with prejudice.

DATED:  September 30, 2008          Respectfully submitted,

                                   TOWNSEND AND TOWNSEND AND CREW LLP


                                   By:___*/s/ James G. Gilliland, Jr.*_____
                                        JAMES G. GILLILAND, JR.

                                   Attorneys for Plaintiff
                                   APPLE INC.

61498471 v4