ROBERT J. YORIO (SBN 93178)
yorio@carrferrell.com
COLBY B. SPRINGER (SBN 214868)
cspringer@carrferrell.com
CHRISTINE S. WATSON (SBN 218006)
cwatson@carrferrell.com
CHRISTOPHER P. GREWE (SBN 245938)
cgrewe@carrferrell.com
CARR & FERRELL *LLP*
2200 Geng Road
Palo Alto, California 94303
Telephone: (650) 812-3400
Facsimile: (650) 812-3444

Attorneys for Defendant/Counterclaimant
PSYSTAR CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>    Plaintiff,<br><br>    v.<br><br>PSYSTAR CORPORATION,<br><br>    Defendant.<br><br>AND RELATED COUNTERCLAIMS. | CASE NO. CV-08-03251-WHA<br><br>**PSYSTAR CORPORATION'S OPPOSITION TO APPLE INC.'S MOTION TO DISMISS PSYSTAR CORPORATION'S COUNTERCLAIMS**<br><br>Date: November 6, 2008<br>Time: 8:00 a.m.<br>Courtroom: 9, 19th Floor<br>Judge: Hon. William Alsup |

{00342996v1}

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................... 1

II. ARGUMENT .................................................................................................................. 2

    A. Apple Misconstrues and Misapplies the Legal Standard for a Motion to Dismiss. ............................................................................................................. 2

    B. Apple's Motion to Dismiss Based on Psystar's Single-Product Market Definition is Fundamentally Flawed. .......................................................... 3

        1. Ninth Circuit Law Expressly States that an Antitrust Claimant May Restrict the Relevant Market to a Single Brand of the Product at Issue. ........................................................................................ 3

            a. Denial of Apple's motion to dismiss on the legal principle that single-product markets are permitted under Ninth Circuit law should come as no surprise to Apple. ........................................................................................ 4

            b. Psystar's pleading of single-product markets is sufficient not only as a matter of law but also as a matter of fact. ........................................................................................ 4

        2. Psystar's Counterclaims Satisfy the Pleading Requirements under Ninth Circuit Law. ................................................................................ 6

        3. Apple Overstates the Alleged "Plethora of Legal Authority" in Support of its Motion to Dismiss. ........................................................... 8

        4. Defining the Relevant Market for Antitrust Claims is an Issue of Fact for the Jury. ........................................................................................ 9

    C. Apple's Incorrectly Asserts that Psystar's Counterclaims "Force Apple to Help Its Competitors." ..................................................................... 11

    D. All of Psystar's Counterclaims Are Sufficiently Plead. ..................................... 13

        1. Psystar's State and Common Law Counterclaims Are Sufficiently Plead. ................................................................................. 13

        2. Assuming *Arguendo* that Apple's Arguments Have Any Merit, Psystar's Fourth, Fifth and Sixth Counterclaims Are Sufficiently Plead Notwithstanding Psystar's Market Definitions. ............................................................................................... 13

III. CONCLUSION ............................................................................................................ 15

# TABLE OF AUTHORITIES

**CASES**

*A.I. Root Co. v. Computer Dynamics, Inc.*,
  615 F.Supp. 727, 1985-2 Trade Cases P 66,674 (N.D.Ohio May 31, 1985) (NO. C84-1348) ............................................................................................................................ 8

*A.I. Root Co. v. Computer/Dynamics, Inc.*,
  806 F.2d 673 (6th Cir. 1986) .............................................................................................. 8

*Aydin Corp. v. Loral Corp.*,
  718 F.2d 897 (9th Cir. 1983) ............................................................................................ 14

*Aydin Corp. v. Loral Corp.*,
  981 WL 2178, 1982-1 Trade ¶ 64,685 (N.D.Cal. Oct 08, 1981) ...................................... 14

*Bell Atlantic Corp. v. Twombly*,
  127 S. Ct. 1955 (2007) ....................................................................................................... 2

*Brown Shoe Co. v. U.S.*,
  370 U.S. 294 (1962) ........................................................................................................... 9

*Cel-Tech Comms., Inc. v. Los Angeles Cellular Tel. Co.*,
  20 Cal.4th 163 (1999) ................................................................................................ 13, 14

*Digidyne Corp. v. Data General Corp.*,
  734 F.2d 1336 (9th Cir. 1984) ..................................................................................... 3, 12

*Digital Equipment Corp. v. Uniq Digital Technologies, Inc.*,
  1993 WL 338985, 1993-2 Trade Cases P 70,378 (N.D.Ill. Sep 01, 1993) (NO. 88 C 0644) ............................................................................................................................... 8

*Digital Equipment Corp. v. Uniq Digital Technologies, Inc.*,
  73 F.3d 756 (7th Cir. 1986) ............................................................................................... 8

*Dimidowich v. Bell & Howell*,
  803 F.2d 1473 (9th Cir.1986) .......................................................................................... 13

*Disenos Artisticos E Industriales, S.A. v. Work*,
  714 F.Supp. 46 (E.D.N.Y. 1989) ....................................................................................... 9

*Eastman Kodak Co. v. Image Technical Services, Inc.*,
  504 U.S. 451 (1992) ........................................................................................................... 6

*Edwards v. Arthur Anderson LLP*,
  44 Cal.4th 937 (2008) ...................................................................................................... 14

*Forsyth v. Humana, Inc.*,
  114 F.3d 1467 (9th Cir. 1997) ..................................................................................... 9, 10

*Fortner Enterprises v. U.S. Steel Corp.*,
  394 U.S. 495 (1969) ......................................................................................................... 12

*Golan v. Pingel Enter., Inc.*
  310 F.3d 1360 (Fed. Cir. 2002) ....................................................................................... 15

*Green Country Foods Market, Inc. v. Bottling Group, LLC*,
   371 F.3d 1275 (10th Cir. 2004) ........................................................................................... 9

*Imax Corp. v. Cinema Tech., Inc.*,
   152 F.3d 1161 9th Cir. 1998) ............................................................................................ 15

*In re Apple & AT&TM Antitrust Litigation*,
   No. 144 Civ. 07-05152, slip op. (9th Cir. October 1, 2008) ..................................... 4, 6, 7

*In re Wang Laboratories, Inc.*,
   1996 WL 87050 (D. Mass. 1996) ........................................................................................ 9

*Karl Storz Endoscopy-Am., Inc. v. Surgical Techs., Inc.*,
   285 F.3d 848 (9th Cir. 2002) ............................................................................................ 15

*Les Shockley Racing, Inc. v. National Hot Rod Ass'n*,
   884 F.2d 504 (9th Cir. 1989) .............................................................................................. 2

*Little Caesars Enterprises, Inc. v. Smith*,
   34 F.Supp.2d 459 (E.D. Mich. 1998) .................................................................................. 8

*Lucent Technologies, Inc. v. Gateway, Inc.*,
   2007 WL 2900484 (S.D. Cal. 2007) ................................................................................... 9

*Newcal Industries, Inc. v. Ikon Office Solution*,
   518 F.3d 1038 (9th Cir. 2008) ................................................................................... passim

*Newman v. Universal Pictures*,
   486 U.S. 1059 (1988) .......................................................................................................... 2

*Newman v. Universal Pictures*,
   813 F.2d 1519 (9th Cir. 1987) ............................................................................................ 2

*Ojala v. Bohlin*,
   178 Cal. App.2d 292 (1960) ............................................................................................. 14

*Robertson v. Dean Witter Reynolds, Co.*,
   749 F.2d 530 (9th Cir. 1984) .......................................................................................... 2, 3

*Ron Tonkin Gran Turismo, Inc. v. Fiat Distributors, Inc.*,
   637 F.2d 1376 (9th Cir. 1981) ............................................................................................ 9

*Slattery v. Apple Computer, Inc.*,
   2005 WL 2204981 (9th Cir. 2005) ..................................................................................... 4

*Theme Promotions, Inc. v. News America Marketing FSI*,
   539 F.3d 1046, 1053 (9th Cir. 2008) .................................................................................. 9

*U.S. v. LSL Biotechnologies*,
   379 F.3d 672 (9th Cir. 2004) .............................................................................................. 2

*U.S. v. Microsoft Corp.*,
   253 F.3d 34 (C.A.D.C. 2001) ............................................................................................. 5

*U.S. v. Microsoft Corp.*,
   87 F.Supp.2d 30 (D.D.C. 2000) ......................................................................................... 5

*United States v. Oracle Corp.*,
  331 F.Supp. 2d 1098 (N.D. Cal 2004)........................................................................................10

*Verizon Communs. v. Law Offices of Curtis V. Trinko, LLP*,
  540 U.S. 398 (2004) ...................................................................................................................11

*Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp.*,
  382 U.S. 172 (1965) .....................................................................................................................2

**STATUTES**

15 U.S.C. § 2 ......................................................................................................................................12

CAL. BUS. & PROF. CODE § 17200.......................................................................................................14

CAL. BUS. & PROF. CODE § 16700.......................................................................................................11

**RULES**

FED. R. CIV. P. 12(b)(6) ........................................................................................................................2

# I. **INTRODUCTION**

Apple Computer Inc. ("Apple")'s primary argument in support of its motion to dismiss is that the relevant markets in Pystar's counterclaims are 'implausible' because single-product relevant markets cannot be plead as a matter of law. <u>Apple is simply wrong</u>. The Ninth Circuit Court of Appeals clearly established in *Newcal Industries, Inc. v. Ikon Office Solution* the following legal principle:

> "[T]he law permits an antitrust claimant to restrict the relevant market to a single brand of the product at issue."
> *Newcal Industries, Inc. v. Ikon Office Solution*,
> 518 F.3d 1038, 1048 (9th Cir. 2008)

Apple is nothing if tenacious, having previously asserted this very same argument in attempts to dismiss antitrust claims related to Apple's iPod, iTunes Music Store, and iPhone pending in the Northern District of California. The result should likewise be the same – the motion should be dismissed. The sentiment echoed by Apple in those cases, as it is here, is that the antitrust claimants are trying to "force" and "require Apple to help its competitors compete against it." This fundamental subversion of the real issues – the adequacy of Psystar's pleading regarding Apple's misuse of its Mac OS copyrights and illegal tying of its separately sold OS to its Apple-Labeled Computer Hardware Systems – is ill-founded. Psystar requests that the Court adhere to the precedent of the Ninth Circuit – as did the Court in the aforementioned actions – and deny Apple's motion to dismiss.

## II. ARGUMENT

### A. Apple Misconstrues and Misapplies the Legal Standard for a Motion to Dismiss.

A complaint may be dismissed for failure to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). A claim may be dismissed as a matter of law for: "(1) lack of a recognizable legal theory or (2) insufficient facts under a cognizable legal theory." *Robertson v. Dean Witter Reynolds, Co.*, 749 F.2d 530, 534 (9th Cir. 1984). The legal theories at issue are not in question. Apple instead asserts that Psystar's detailed factual arguments are mere "conclusory allegations" upon which the Court may dismiss Psystar's counterclaims. Apple is incorrect.

Psystar's detailed factual arguments go above and beyond what is required under Rule 12(b)(6) of the Federal Rules of Procedure. To survive a Rule 12(b)(6) motion, Psystar "need only allege sufficient facts from which the court can discern the elements of an injury resulting from an act forbidden by antitrust laws." *Newman v. Universal Pictures*, 813 F.2d 1519, 1522 (9th Cir. 1987), *cert. denied*, 486 U.S. 1059 (1988); *U.S. v. LSL Biotechnologies*, 379 F.3d 672, 683 (9th Cir. 2004). The Court is required to accept the facts pleaded as true and to construe them in light most favorable to Psystar. *See, e.g., Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp.*, 382 U.S. 172, 174-75 (1965); *Les Shockley Racing, Inc. v. National Hot Rod Ass'n*, 884 F.2d 504, 507 (9th Cir. 1989) ("[non-moving parties] are entitled to have all of their allegations of material fact accepted as true and construed in a favorable light").

With regard the general rules of pleading, Apple incorrectly applies *Bell Atlantic Corp.v. Twombly* to the allegations in Psystar counterclaims. Unlike the claims in *Twombly*, Psystar's counterclaims do not simply state "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (affirming dismissal of Sherman Act § 1 claim of conspiracy in restraint of trade). Psystar's well-pled complaint sets forth very specific factual allegations. *See* Counterclaim, ¶¶ 17-77). <u>Apple even identifies and points to factual allegations supporting Psystar's claims in its brief</u>. *See* Apple Brief, 1:16-28 (citing Counterclaim, ¶¶ 15, 22, 31-35), 2:12-21 (citing Counterclaim, ¶¶ 18, 27, 57),

2:22-26 (citing Counterclaim, ¶¶ 18,-20) (regarding the absence of effective substitutes for the Mac OS), 8:23-12:26 (citing Counterclaim, ¶¶ 15, 18-19, 21-23, 28, 34-39, 43).

**B. Apple's Motion to Dismiss Based on Psystar's Single-Product Market Definition is Fundamentally Flawed.**

**1. Ninth Circuit Law Expressly States that an Antitrust Claimant May Restrict the Relevant Market to a Single Brand of the Product at Issue.**

In its counterclaim allegations, Psystar identifies two relevant product markets: (1) the Mac OS and (2) Mac OS Capable Computer Hardware Systems. Counterclaim, ¶¶ 17-29. Psystar further specifically identifies Apple-Labeled Computer Hardware Systems as an artificially created and illegally maintained submarket of the Mac OS Capable Computer Hardware Systems market. *Id.* ¶¶ 27-28. "Apple is the only member and wields monopoly power" in Apple-Labeled Computer Hardware Systems submarket. *Id.* Apple's motion to dismiss is based on the argument that a single-product market is legally implausible. Apple is simply incorrect.

The Ninth Circuit Court of Appeals established in the most plain, unambiguous, and straightforward terms that "the law permits an antitrust claimant to restrict the relevant market to a single brand of the product at issue." *Newcal Industries, Inc. v. Ikon Office Solution*, 518 F.3d 1038, 1048 (9th Cir. 2008); *see also Digidyne Corp. v. Data General Corp.*, 734 F.2d 1336, 1339 (9th Cir. 1984) (affirming the district courts analysis of a "'single product' claim").

In *Newcal*, the Ninth Circuit criticized the district court's 12(b)(6) dismissal of an antitrust claimant's claims for exclusive dealing, tying, restraint of trade, and attempted monopolization when all of the movant's arguments hinged on **factual** deficiencies rather than **legal** deficiencies. *See Newcal Industries*, 518 F.3d at 1051-52. Such is the case here as Apple does not contend that Psystar's counterclaims lack recognizable legal theories or insufficient facts under those theories. *See Robertson,* 749 F.2d at 534 (dismissing a claim is only proper for: "(1) lack of a recognizable legal theory or (2) insufficient facts under a cognizable legal theory").

Apple simply – and incorrectly – concludes that Psystar's factual allegations are wrong. *See* Apple Brief, 8:18-12:26. Apple's conclusions do not support Apple's motion to dismiss. Apple's

arguments do nothing but reinforce the existence of factual disagreement regarding the relevant markets, which necessitates the denial of Apple's motion to dismiss. *See infra* Section III(B)(3).

### a. Denial of Apple's motion to dismiss on the legal principle that single-product markets are permitted under Ninth Circuit law should come as no surprise to Apple.

United States District Court Judge Ware recently applied the single-product market principle in his denial of Apple's motion to dismiss the antitrust claims in the putative class action involving Apple's iPhone. Judge Ware stated that: "there can be a legally cognizable aftermarket in a single brand's products, even if that market is created by a contractual relationship." *In re Apple & AT&TM Antitrust Litigation*, No. 144 Civ. 07-05152, slip op. at 13:1-2, 14:10-12 (9th Cir. October 1, 2008) (Order Granting in Part and Denying in Part Apple's Motion to Dismiss).[1]

Judge Ware reached a similar decision three years earlier when he denied Apple's motion to dismiss antitrust claims in a class action involving Apple's iPod and iTunes Music Store. In that action, Judge Ware stated that: [a]lthough the alleged relevant markets are narrowly defined by Plaintiff, this Court accepts these allegations as true for the purpose of this motion. . . . [A]s plead, Plaintiff alleges all of the elements of a tying claim to survive a motion to dismiss under Rule 12(b)(6)." *Slattery v. Apple Computer, Inc.*, 2005 WL 2204981 at *4 (9th Cir. 2005) (Order Granting in Part and Denying in Part Apple's Motion to Dismiss).[2]

### b. Psystar's pleading of single-product markets is sufficient not only as a matter of law but also as a matter of fact.

Notwithstanding (1) that "[t]he definition of the relevant market is a question of fact for the jury" (*see infra* Section II(B)(3)) and (2) that a single-product market is sufficient as a matter of law, Psystar's definition of the Mac OS as a relevant market is factually plausible. Apple

---

[1] Order attached as Exhibit "A" to Declaration of Christopher Grewe in support of Opposition to Motion to Dismiss ("Grewe Decl.").

[2] Order attached as Exhibit "B" to Declaration of Christopher Grewe in support of Opposition to Motion to Dismiss ("Grewe Decl.").

conclusorily submits to the Court that the Mac OS is a "competitive substitute" for the Windows OS and Linux and, thus, cannot plausibly be defined as the relevant market. Apple Brief, 8:18-10:2. Apple's contention is wrong on its face for at least two reasons.

First, the factual allegations in Psystar's counterclaims, including reference to Apple's advertising campaigns, refute Apple's contention. *See* Counterclaim, ¶¶ 19-20, 25, 27-28, 30-46, 55-56, 68; s*ee also* Exhibit A of Apple's Request for Judicial Notice. Second, factual findings of other district courts regarding the Windows OS in comparison other to operating systems refuted Apple's unsupported contention.

For example, in *U.S. v. Microsoft Corp.*, the United States District Court for the District of Columbia made the evidentiary finding that the Mac OS, contrary to Apple's conclusion in support of its motion, **was not a suitable substitute to the Windows OS**, stating:

> The Court has already found, based on the evidence in this record, that there are currently no products – ***and that there are not likely to be any in the near future*** – that a significant percentage of computer users worldwide could substitute for Intel-compatible PC operating systems without incurring substantial costs.

*U.S. v. Microsoft Corp.*, 87 F.Supp.2d 30, 36 (D.D.C. 2000), *aff'd in relevant part, U.S. v. Microsoft Corp.*, 253 F.3d 34 (C.A.D.C. 2001) (emphasis added).

On appeal, Microsoft challenged this market definition on the specific basis that the Mac OS should be included therein. The Court of Appeals emphasized the district court's finding, stating:

> The District Court found that consumers **would not switch from Windows to Mac OS in response to a substantial price increase** because of the costs of acquiring the new hardware needed to run Mac OS (an Apple computer and peripherals) and compatible software applications, as well as because of the effort involved in learning the new system and transferring files to its format. Findings of Fact ¶ 20.

*U.S. v. Microsoft Corp.*, 253 F.3d 34, 52 (C.A.D.C. 2001) (emphasis added). The Court of Appeals criticized Microsoft's conclusory argument on appeal stating that "Microsoft neither points to evidence contradicting the District Court's findings nor alleges that supporting record evidence is insufficient." *Id.* The Court of Appeals affirmed the lower court's findings and stated "we have no

basis for upsetting the court's decision to exclude Mac OS from the relevant market." *Id.*[3] These findings of fact suggest that Psystar's allegations regarding the Mac OS as a relevant market are, at the very least, plausible.

### 2. Psystar's Counterclaims Satisfy the Pleading Requirements under Ninth Circuit Law.

As noted in *In re Apple & AT&TM Antitrust Litigation*, the Ninth Circuit considers several factors when evaluating a claimant's market allegations in a motion to dismiss under Federal Rule 12(b)(6). *See In re Apple & AT&TM Antitrust Litigation*, slip op. at 12:19-13:2 (citing *Newcal*, 513 F.3d at 1045). First, "the 'relevant market must be a product market,' the boundaries of which are defined by products and producers." *In re Apple & AT&TM Antitrust Litigation*, slip op. at 12:19-13:2. Second, "the market encompasses the product at issue, in addition to all reasonably interchangeable economic substitutes." *Id.* Third, an antitrust claimant "may allege a submarket, which must be 'economically distinct from the general product market.'" *Id.* All of these factors are encompassed in Psystar' counterclaims.

In *In re Apple AT&TM Antitrust Litigation*, the Ninth Circuit found in light of these factors that the antitrust claimants sufficiently alleged market power and monopolization in the iPhone voice and data services aftermarket and the iPhone applications aftermarket. Relying on *Newcal Industries* and *Eastman Kodak,* the Ninth Circuit held that the plaintiffs pleading was sufficient where it "alleged an aftermarket for iPhone voice and data services 'that would not exist without' the primary market for iPhones, and is thus 'wholly derivative from and dependant on the primary market.'" *See In re Apple & AT&TM Antitrust Litigation*, slip op. at 14:13:-15:26 (citing *Newcal*, 513 F.3d at 1045; *Eastman Kodak Co. v. Image Technical Services, Inc.* 504 U.S. 451 (1992)). The Ninth Circuit similarly held that the antitrust claimants successfully alleged an iPhone applications

---

[3] Psystar acknowledges that subsequent iterations to the Mac OS have been released since these findings of fact and affirmation thereof, including the capability of running the Mac OS on Intel processors. Such changes, alone, cannot establish that the factual findings of a district court after a full bench trial and affirmed on appeal are now completely implausible.

aftermarket, stating that "an aftermarket for iPhone applications that 'would not exist without' the primary market for iPhones, and is thus 'wholly derivative from and dependant on the primary market'" was sufficient to state a claim under Section 2 of the Sherman Act. *See In re Apple & AT&TM Antitrust Litigation*, slip op. at 16:1-28 (citing *Newcal*, 513 F.3d at 1049).

Psystar identifies two relevant product markets: (1) the Mac OS and (2) Mac OS Capable Computer Hardware Systems in its counterclaim allegations. Counterclaim, ¶¶ 17-29. Psystar further specifically identifies Apple-Labeled Computer Hardware Systems as an artificially created and illegally maintained submarket of the Mac OS Capable Computer Hardware Systems market, and of which "Apple is the only member and wields monopoly power." *Id.* ¶¶ 27-28. Apple illicitly creates and maintains this submarket through its Mac OS End User License Agreement (EULA). *Id.* ¶¶ 27-28. The Apple-Labeled Computer Hardware Systems submarket is one that "would not exist" without the primary market for the Mac OS and is thus "wholly derivative from and dependent" on that market. The present markets are both factually and legally analogous to the markets and submarkets in *In re Apple AT&TM Antitrust Litigation*, wherein the court found the claimants' antitrust allegations sufficient to overcome Apple's motion to dismiss.

Moreover, the Apple-Labeled Computer Hardware Systems submarket exists as a direct result of Apple's Mac OS EULA. The Court in *In re Apple & AT&TM Antitrust Litigation* expressly noted that claimants' antitrust claims were "also adequate to the extent the alleged aftermarket is predicated on an initial contractual relationship between [Apple] and [purchasers of the tying product]." *See In re Apple & AT&TM Antitrust Litigation*, slip op. at 151-6 (citing *Newcal*, 513 F.3d at 1049). The situation in the *In re Apple & AT&TM Antitrust Litigation* is analogous here as the Apple-Labeled Computer Hardware Systems submarket is expressly predicated on contractual relationship (i.e., Apple's EULA) between Apple and Mac OS purchases. Apple specifically points to Psystar's counterclaim allegations asserting the same. *See* Apple Brief, 2:19-21 (citing Counterclaim, ¶¶ 57, 61). On this additional basis, Psystar's market allegations are sufficiently plead to deny Apple's motion to dismiss under the applicable law of the Ninth Circuit.

### 3. Apple Overstates the Alleged "Plethora of Legal Authority" in Support of its Motion to Dismiss.

Apple also incorrectly overstates its legal conclusion that the "plethora of legal authority . . . makes clear that an antitrust plaintiff cannot legitimately plead a single brand market." Apple Brief, 8:18-19. As noted *supra* in Section II(B)(1), <u>Apple's conclusion is simply incorrect</u>. Ninth Circuit law expressly permits an antitrust claimant to restrict the relevant market to a single brand of the product at issue. *Newcal Industries*, 518 F.3d at 1048.

Moreover, the cases cited by Apple do not support Apple's motion to dismiss. In fact, the majority of the cases cited by Apple in support of its single-product argument were not even decided at the Rule 12(b)(6) pleadings stage on a motion to dismiss. These cases reinforce the point that market definitions require a factual determination that cannot properly be made on a motion to dismiss:[4]

- *Little Caesars Enterprises, Inc. v. Smith*, 34 F.Supp.2d 459 (E.D. Mich. 1998), a district court case from **outside this jurisdiction**, *cited in* Apple's Brief at 7:21-24, was decided on **summary judgment** *only after a very fact specific analysis* of the relevant facts from discovery and testimony from economic experts was completed. *Id.* at 490-513.

- *A.I. Root Co. v. Computer/Dynamics, Inc.*, 806 F.2d 673 (6th Cir. 1986), a circuit court decision from **outside this jurisdiction**, *cited in* Apple's Brief at 7:10-13, had been decided on **summary judgment** *only after discovery* relating to the market definition, including depositions, had been taken.[5]

- *Digital Equipment Corp. v. Uniq Digital Technologies, Inc.*, 73 F.3d 756 (7th Cir. 1986), a circuit court decision from **outside this jurisdiction**, *cited in* Apple's Brief at 7:9-10, had been decided on **summary judgment** *after analysis of the facts and consideration of expert opinion* regarding the relevant market.[6]

---

[4] A detailed discussion regarding the factual determination of market definitions after the pleading stage is provided *infra* in Section II(B)(3).

[5] *See A.I. Root Co. v. Computer Dynamics, Inc.*, 615 F.Supp. 727, 1985-2 Trade Cases P 66,674 (N.D.Ohio May 31, 1985) (NO. C84-1348) (district court's summary judgment ruling).

[6] *See Digital Equipment Corp. v. Uniq Digital Technologies, Inc.*, 1993 WL 338985, 1993-2 Trade Cases P 70,378 (N.D.Ill. Sep 01, 1993) (NO. 88 C 0644) (district court's summary judgment ruling).

- *In re Wang Laboratories, Inc.*, 1996 WL 87050 (D. Mass. 1996), a district court case from **outside this jurisdiction**,, *cited in* Apple's Brief at 7:13-14, related to a district court's decision regarding its factual findings on the relevant market definition *after full trial on the merits*.

- *Disenos Artisticos E Industriales, S.A. v. Work*, 714 F.Supp. 46 (E.D.N.Y. 1989), a district court case from **outside this jurisdiction**, *cited in* Apple's Brief at 7:27-8:1, was decided on **summary judgment** *after a review of the evidentiary record*.

- *Lucent Technologies, Inc. v. Gateway, Inc.*, 2007 WL 2900484 (S.D. Cal. 2007), a district court case from **outside this jurisdiction**, *cited in* Apple's Brief at 6:26-7:2, was decided on **summary judgment** *after a review of the evidentiary record*.

- *Ron Tonkin Gran Turismo, Inc. v. Fiat Distributors, Inc.*, 637 F.2d 1376 (9th Cir. 1981), *cited in* Apple's Brief at 6:24-26, had been decided on **summary judgment** *after a review of the evidentiary record*.

- *Brown Shoe Co. v. U.S.*, 370 U.S. 294 (1962), *cited in* Apple's Brief at 6:17-19, had been decided *after a full trial on the merits*.

- *Green Country Foods Market, Inc. v. Bottling Group, LLC*, 371 F.3d 1275 (10th Cir. 2004), *cited in* Apple's Brief at 7:14-17, had been decided at **summary judgment** *only after it had found a lack of evidence* to establish the market definition at issue. *See id.* at 1284-85.

That none of these cases was decided at the pleadings stage is not surprising given that plaintiff's definition of the relevant market is a post-pleadings factual determination. *Forsyth*, 114 F.3d at 1475.

### 4. Defining the Relevant Market for Antitrust Claims is an Issue of Fact for the Jury.

Apple's motion to dismiss should be further denied because "[t]he definition of the relevant market is a question of fact for the jury." *Theme Promotions, Inc. v. News America Marketing FSI*, 539 F.3d 1046, 1053 (9th Cir. 2008) (citing *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1475 (9th Cir. 1997)). Defining the relevant market is a question of fact for the jury, in part, because "[d]etermining the relevant market can involve a complicated economic analysis, including concepts like cross-elasticity of demand, and 'small but signatory nontransitory increase in price'

1  ('SSNIP') analysis." *Id.* (citing *United States v. Oracle Corp.*, 331 F.Supp. 2d 1098 (N.D. Cal
2  2004) (Walker, C.J.)).

3  Apple does not address this issue in its brief. Apple was, however, highly – albeit
4  improperly – critical of Psystar's factual allegations in characterizing them as "so vague [they] are
5  meaningless" and must therefore be "ignored." *See* Apple Brief, 11:16-12:24 (citing a Western
6  District of Tennessee case for this assertion). For example, Apple improperly criticizes Psystar's
7  factual allegation "that a percentage change in price of one product, namely the Mac OS, will not
8  result in a change in quantity that consumers will demand of another product as evidence by the
9  price differentiations . . . as otherwise set forth above." Apple Brief, 11:13-16 (citing Psystar's
10 Counterclaim, ¶ 43).

11 This factual allegation is anything but ambiguous. <u>First</u>, Psystar's factual allegations set
12 forth specific prices, values and products. *See* Counterclaim, ¶¶ 36-37, 44-45. <u>Second</u>, the Ninth
13 Circuit Court of Appeals expressly stated *in almost identical language* that that such a factual
14 allegation is an important fact question to be determined by the jury:

> "Cross-elasticity of demand measures the percentage change in quantity that consumers will demand of one product in response to a percentage change in the price of another." *Theme Promotions*, 539 F.3d at 1054 (citing *Forsyth*, 114 F.3d at 1483).

18 In short, Psystar has not posited meaningless or vague allegations in its counterclaims.
19 Apple's requests that the Court (1) ignore the federal pleading requirements (*see supra* Section
20 II(A)) (2) determine questions of fact for the jury in a pre-answer motion, and (3) disregard and
21 ignore without reason the very specific factual allegations in Psystar's well-pled complaint are all
22 improper requests.

## C. Apple's Incorrectly Asserts that Psystar's Counterclaims "Force Apple to Help Its Competitors."

Apple's last gasp argument in support of its motion to dismiss is that Psystar's counterclaims seek to force Apple to share a piece of its Mac OS pie with its competitors. <u>Apple's argument is a fundamental subversion of the true issues relevant to Psystar's counterclaims</u>. Psystar's counterclaims are not premised on "forcing Apple to license its software to competitors." Psystar seeks to prevent Apple from intentionally restraining competition. *See* CAL. BUS. & PROF. CODE § 16700. Apple's contrived attempt to shoehorn this case into the law of *Verizon Communs. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 401-03 (2004), is therefore meritless.

The issue in *Trinko* was whether Verizon, a telecommunications carrier subject to regulation by the Telecommunications Act of 1996 (the "Telco Act"), could be held liable for unlawful monopolization if the alleged antitrust violation was for Verizon's failure to adhere to the statutory requirements imposed by Section 251 of the Telco Act. *Verizon Communs. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 401-03 (2004). Section 251 of the Telco Act required Verizon to allow competing local exchange carriers to connect to certain components of Verizon's network. *Id.* The antitrust claimants' claims were based on FFC findings that Verizon failed to adhered to the Section 251 requirements, and the claimants asserted that Verizon's failure to meet its obligations under the Telco Act stifled competition and, thus, created antitrust liability. *Id.* at 404. In other words, the alleged antitrust liability was based on Verizon's failure to adhere to Section 251 of the Telco Act. The Supreme Court rejected the claim, noting that while Verizon's action may have been a breach of the Telco Act, it did violate any antitrust law as such laws do not require a firm to assist competitors. *Id.* at 407-10.

The issue here is not whether Apple is being forced to help it competitors. Psystar's counterclaims assert, *inter alia*, Apple's misuse of its Mac OS copyrights and illegal tying of its separately sold Mac OS to Apple-Labeled Computer Hardware Systems. Both acts constitute an illegal restraint of trade directly in conflict with the likes of the Cartwright Act. *See* CAL. BUS. & PROF. CODE § 16700.

Specifically, Psystar's counterclaims focus, in part, on Apple's illegal tying arrangement

consistent with prerequisites of *per se* illegal tying. *See* Counterclaim, ¶¶ 78-92. Those prerequisites are: "(1) separate products, the purchase of one (tying product) being conditioned on the purchases of the other (tied product); (2) sufficient economic power with respect to the tying product to restrain competition in the tied product; and (3) an effect upon a substantial amount of commerce in the tied product." *Digidyne*, 734 F.2d at 1338 (citing *Fortner Enterprises v. U.S. Steel Corp.*, 394 U.S. 495, 499 (1969)). In that regard, Psystar complains of Apple's illegal tying of its Mac OS to only Apple-Labeled Computer Hardware Systems – not that Apple is refusing to help its competitors.

Apple's contention that such allegations are "implausible" likewise has no merit. The Ninth Circuit has previously held that a computer software and hardware manufacture can be held liable for violations of Section 1 of the Sherman Act and Section 3 of the Clayton Act for *per se* illegal tying of the manufacturer's OS to the manufacturer's CPUs of its computer systems. *See Digidyne*, 734 F.2d 1336 (reversing district court's grant of manufacturer's motion for judgment n.o.v. or for a new trial following a jury verdict of *per se* tying). In *Digidyne*, the "tying product" was the OS and the "tied product" was the CPU of the computer systems. *Id.* Here, the "tying product" is the Mac OS and the "tied product" is Apple-Labeled Computer Hardware Systems. Not only are Psystar's allegations plausible, they are grounded in factual allegations similar to the factual findings previously held to constitute *per se* illegal tying.

Further, Apple's illegal enforcement of the Mac OS EULA violates Section 2 of the Sherman Act. 15 U.S.C. § 2. Apple's EULA contractually requires the end user to install, use, and run the Mac OS exclusively on Apple-Labeled Computer Hardware Systems. Counterclaim, ¶ 97. This contractual requirement between Apple and the end user is to the exclusion of all other computer hardware systems manufacturers in the marketplace including Mac OS Capable Computer Hardware System manufacturers. Counterclaim, ¶ 98. Apple's anticompetitive conduct unlawfully maintains Apple's market and monopoly power in the artificially created Apple-Labeled Computer Hardware Systems submarket by controlling prices and wholly eliminating competition in the Mac OS Capable Computer Hardware Systems market. *See* 15 U.S.C. § 2; Counterclaim, ¶ 99. It is this anticompetitive conduct for which Psystar complains – not a plea for Apple to 'help'

1  its competitors.

2

3  **D.     All of Psystar's Counterclaims Are Sufficiently Plead.**

4
        **1.     Psystar's State and Common Law Counterclaims Are Sufficiently Plead.**
5

6       Because Apple's motion to dismiss Psystar's federal antitrust claims must be denied,

7  Apple's motion to dismiss Psystar's state law claims for Apple's violation of the California

8  Cartwright Act (fourth counterclaim) and Apple's violation of the unfair competition law (fifth and

9  sixth counterclaims) should similarly be denied. *See Dimidowich v. Bell & Howell*, 803 F.2d 1473,

10 1478 (9th Cir. 1986) (noting that if a plaintiff is capable of maintaining a Sherman Act claim, the

11 plaintiff is capable of maintaining a similar Cartwright Act claim); *Cel-Tech Comms., Inc. v. Los*

12 *Angeles Cellular Tel. Co.*, 20 Cal.4th 163, 187, 83 Cal.Rptr.2d 548, 973 P.2d 527 (1999) (noting

13 that if a plaintiff is capable of maintaining a Sherman Act claim, the plaintiff is capable of

14 maintaining a similar California unfair competition law).

15
        **2.     Assuming *Arguendo* that Apple's Arguments Have Any Merit,
16              Psystar's Fourth, Fifth and Sixth Counterclaims Are Sufficiently
                Plead Notwithstanding Psystar's Market Definitions.**
17

18      Assuming *arguendo* that Apple's arguments had any merit, Apple's primary contention

19 (i.e., that the counterclaims are insufficiently plead as a result of the implausibility of a single-

20 product market) does not render Psystar's fourth, fifth and sixth counterclaims for violations of the

21 California Cartwright Act and California unfair competition laws insufficiently plead as a matter of

22 law. Psystar's fourth counterclaim is for Apple's violations of the California Cartwright Act under

23 California Business and Professions Code § 16700 *et seq.* Psystar's fifth counterclaim is for

24 Apple's violations of California unfair competition law under California Business and Professions

25 Code § 17200 *et seq.* Psystar's sixth counterclaim is for Apple's violations of common law unfair

26 competition law. Theses counterclaims do not require the pleading of a market definition and

27 would not fail in the absence of a sufficient market definition.

28

For example, the fourth, fifth and sixth counterclaim allege, in part, that Apple's general suppression of competition and the misuse of its intellectual property including its copyrights expressly forms part of its claims for relief. *See* Counterclaim, ¶¶ 114-126. With regard to Psystar's fourth counterclaim (Cartwright claim), it is acknowledged (as noted *supra* Section II(D)(1)) that if a plaintiff is capable of maintaining a Sherman Act claim, the plaintiff is capable of maintaining a similar Cartwright Act claim; <u>however, the laws are distinct</u>. *See Dimidowich v. Bell & Howell*, 803 F.2d 1473, 1478 (9th Cir.1986) ("'[s]imilar' does not mean identical. California courts have never said that federal authority is binding on them . . . to the extent the California courts' interpretation of the Cartwright Act is different from federal interpretations of the Sherman Act, we must respect those differences, and follow the California courts' interpretation").

A claim for unfair competition under California Business & Professions Code section 17200 is also far broader than a federal antitrust claim and thus Apple's conduct may constitute a violation of section 17200 even if not rising for some technical reason to an antitrust violation. *See Cel-Tech Comms., Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th 163, 187, 83 Cal.Rptr.2d 548, 973 P.2d 527 (1999). Section 17200 defines "unfair competition" as "any unlawful, unfair or fraudulent business act or practice." CAL. BUS. & PROF. CODE § 17200. The California Supreme Court has consistently recognized the sweeping nature of section 17200, stating: "[w]hen a plaintiff who claims to have suffered injury from a direct competitor's 'unfair' act or practice invokes section 17200, the word 'unfair' in that section means conduct that threatens an incipient violation of an antitrust law." *Cel-Tech*, 20 Cal.4th at 187, 83 Cal.Rptr.2d 548, 973 P.2d 527.

The same applies for common law unfair competition. Despite Apple's claim the Psystar does not understand the law (*see* Apple Brief, 16:14-24 (asserting unfair competition applies only to trademarks)), common law unfair competition encompasses Psystar's claims in spite of the sufficiency, or alleged lack thereof, Psystar's market definitions. *See e.g., Aydin Corp. v. Loral Corp.*, 981 WL 2178, 1982-1 Trade ¶ 64,685, at 72,687 (N.D.Cal. Oct 08, 1981), *aff'd in relevant part,* 718 F.2d 897, 905 (9th Cir. 1983), 1 (addressing antitrust claims and related common law unfair competition claims); *Edwards v. Arthur Anderson LLP*, 44 Cal.4th 937, – Cal.Rptr.3d –, – P.3d – (2008) (addressing contracts that restrict competition). "There is no complete list of the

activities which constitute unfair competition." *Ojala v. Bohlin*, 178 Cal.App.2d 292, 301, 2 Cal.Rptr. 919, 924 (1960). For example, claims of unfair competition can also be based on acts and practices contravening intellectual rights. *See e.g., Golan v. Pingel Enter., Inc.* 310 F.3d 1360, 1374 (Fed. Cir. 2002) (assertion of rights under unenforceable patent); *Karl Storz Endoscopy-Am., Inc. v. Surgical Techs., Inc.*, 285 F.3d 848, 852-53 (9th Cir. 2002) (consumer confusion based on company's preservations of manufacture's mark, instead of using mark, on product at issue); *Imax Corp. v. Cinema Tech., Inc.*, 152 F.3d 1161, 1169-1170 (9th Cir. 1998) (misappropriation of trade secrets).

Psystar asserts, in part, factual allegations in its well-pled complaint regarding Apple's anticompetitive conduct and copyright misuse. Counterclaim, ¶¶ 46-77. Apple's overstated conclusions regarding the inability of Psystar's counterclaims to survive a motion to dismiss based entirely on the insufficiency of Psystar's market definitions is ill-founded. For this reason, Apple's motion to dismiss the fourth, fifth and sixth counterclaims must be denied, notwithstanding any finding as to the sufficiency, or lack thereof, Psystar's market definitions.

### III. <u>CONCLUSION</u>

For the foregoing reasons, Psystar respectfully requests that the Court deny Apple's motion to dismiss in its entirety.

Dated: October 16, 2008      CARR & FERRELL *LLP*

By: /s/ Christopher P. Grewe
ROBERT J. YORIO
COLBY B. SPRINGER
CHRISTINE S. WATSON
CHRISTOPHER P. GREWE

Attorneys for Defendant/Counterclaimant
PSYSTAR CORPORATION