| | |
|---|---|
| 1 | TOWNSEND AND TOWNSEND AND CREW LLP |
| | JAMES G. GILLILAND, JR. (State Bar No. 107988) |
| 2 | MEHRNAZ BOROUMAND SMITH (State Bar No. 197271) |
| | MEGAN M. CHUNG (State Bar No. 232044) |
| 3 | JEB OBLAK (State Bar No. 241384) |
| | Two Embarcadero Center, 8th Floor |
| 4 | San Francisco, California 94111 |
| | Telephone: (415) 576-0200 |
| 5 | Facsimile: (415) 576-0300 |
| | Email: jggilliland@townsend.com, |
| 6 | mboroumand@townsend.com, |
| | mmchung@townsend.com, |
| 7 | jboblak@townsend.com |
| 8 | Attorneys for Plaintiff and Counterdefendant, |
| | APPLE INC. |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| APPLE INC., a California corporation, | Case No. CV 08-03251 WHA |
| Plaintiff, | **REPLY BRIEF IN SUPPORT OF APPLE INC.'S MOTION TO DISMISS PSYSTAR'S COUNTERCLAIMS** |
| v. | |
| PSYSTAR CORPORATION, | |
| Defendant. | |
| PSYSTAR CORPORATION, | Date: November 6, 2008 |
| Counterclaimant, | Time: 8:00 a.m. |
| v. | Courtroom: 9, 19th Floor |
| APPLE INC., a California corporation, | Honorable William Alsup |
| Counterdefendant. | |

REPLY BRIEF IN SUPPORT OF APPLE INC.'S MOTION TO DISMISS PSYSTAR'S COUNTERCLAIMS
Case No. CV 08-03251 WHA

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ........................................................................................................... 1

II. ARGUMENTS AND AUTHORITIES ......................................................................... 1

    A. Psystar Improperly Relies Upon An Abrogated Legal Standard .......................... 1

    B. Numerous Courts Have Dismissed Complaints For Failing To Plead A Plausible Relevant Product Market ........................................................................ 2

    C. Psystar's Allegations Establish There Cannot Be A Single-Brand Market Here ......................................................................................................... 4

        1. The Ninth Circuit's "Aftermarket" Cases Do Not Help Psystar ............ 4

        2. Other Pending Cases Involving Apple Are Irrelevant .............................. 7

        3. *Digidyne* Does Not Help Psystar ................................................................ 8

        4. Psystar's Contradictory Allegations Are Insufficient to State a Claim ........................................................................................................... 10

    D. Psystar Tacitly Acknowledges Apple's Right To Refuse To Help A Competitor ............................................................................................................ 11

    E. Psystar's State Law Claims Are Irreparably Flawed and Should Be Dismissed ............................................................................................................. 12

        1. Psystar's Cartwright Act Claim Should Be Dismissed ......................... 12

        2. Psystar's Business and Professions Code Claim Should Be Dismissed ................................................................................................. 13

        3. Psystar's Supposed "Common Law Unfair Competition" Claim Should Be Dismissed ................................................................................ 13

III. CONCLUSION ............................................................................................................. 14

| | |
|---|---|
| 1 | **TABLE OF AUTHORITIES** |
| 2 | Page |

# TABLE OF AUTHORITIES

Page

**Cases**

*A. I. Root Co. v. Computer/Dynamics, Inc.*,
  806 F.2d 673 (6th Cir. 1986) .................................................................................................. 8, 9

*Aguilar v. Atlantic Richfield Co.*,
  25 Cal. 4th 826 (Cal. 2001) ....................................................................................................... 13

*America Channel, LLC v. Time Warner Cable, Inc.*,
  2007 WL 142173 (D. Minn. Jan 17, 2007) .............................................................................. 10

*Aquatherm Indus., Inc. v. Florida Power & Light Co.*,
  145 F.3d 1258 (11th Cir. 1998) .................................................................................................. 3

*Aydin Corp. v. Loral Corp.*,
  1981 WL 2178 (N.D. Cal. 1981) .............................................................................................. 14

*Bell Atlantic Corp. v. Twombly*,
  __ U.S. __, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ............................................................. 2

*Berry v. Coleman*,
  172 Fed. Appx. 929, 2006 WL 759087 (11th Cir. 2006) ......................................................... 10

*Brown Shoe v. United States*,
  370 U.S. 294, 82 S. Ct. 1502, 8 L. Ed. 2d 510 (1962) ............................................................... 6

*Bruce Chapman and Handle With Care Behavior Management System, Inc. v. New
  York State Division For Youth*,
  No. 05-7010-CV, __ F.3d __, slip op. (2d Cir. Oct. 14, 2008) .................................................. 2

*Cel-Tech Commc'n v. Los Angeles Cellular Tel. Co.*,
  20 Cal. 4th 163 (Cal. 1999) ....................................................................................................... 13

*Chavez v. Whirlpool Corp.*,
  93 Cal. App. 4th 363 (Cal. Ct. App. 2001) ............................................................................... 13

*Conley v. Gibson*,
  355 U.S. 41, 78 S. Ct. 99 (1957) ................................................................................................ 2

*Corwin v. Los Angeles Newspaper Service Bureau, Inc.*,
  4 Cal. 3d 842 (Cal. 1971) .......................................................................................................... 12

*Data General Corp. v. Grumman Systems Support Corp.*,
  36 F.3d 1147 (1st Cir. 1994) ..................................................................................................... 11

*Digidyne Corp. v. Data General Corp.*,
  734 F.2d 1336 (9th Cir. 1984) ................................................................................................ 8, 9

*Digital Equipment Corp. v. Uniq Digital Technologies*,
  73 F.3d 756 (7th Cir. 1996) .................................................................................................... 8, 9

*Dimidowich v. Bell & Howell*,
  803 F.2d 1473 (9th Cir. 1986) .................................................................................................. 12

*E & E Co. Ltd. v. Kam Hing Enters., Inc.*,
   2008 WL 1924905 (N.D. Cal. Apr. 29, 2008) ............................................................................ 3

*E&L Consulting, Ltd. v. Doman Indus. Ltd.*,
   360 F. Supp. 2d 465 (E.D.N.Y. 2005) aff'd 472 F.3d 23 (2d Cir. 2006) ......................................... 10

*Eastman Kodak Co. v. Image Technical Services, Inc.*,
   504 U.S. 451, 112 S. Ct. 2072, 119 L. Ed. 2d 265 (1992) .......................................................... passim

*Forsyth v. Humana, Inc.*,
   114 F.3d 1467 (9th Cir. 1997) .................................................................................................. 5

*Golan v. Pingel Enter., Inc.*,
   310 F.3d 1360 (Fed. Cir. 2002) .............................................................................................. 14

*Grappone, Inc. v. Subaru of New England*,
   858 F.2d 792 (1st Cir. 1988) .................................................................................................. 8

*Hack v. President & Fellows of Yale Coll.*,
   237 F.3d 81 (2d Cir. 2000) .................................................................................................. 3, 5

*Illinois Tool Works v. Independent Ink, Inc.*,
   547 U.S. 28, 126 S. Ct. 1281, 164 L. Ed. 2d 26 (2006) ................................................................ 8

*Imax Corp. v. Cinema Tech., Inc.*,
   152 F.3d 1161 (9th Cir. 1998) ................................................................................................ 14

*In re Apple & AT&TM Antitrust Litigation*,
   No. 144 Civ. 07-05152, slip op. (N.D. Cal. Oct. 1, 2008) ............................................................ 8

*In re Independent Service Orgs. Antitrust Litig. CSU, L.L.C.*,
   203 F.3d 1322 (Fed. Cir. 2000) .............................................................................................. 11

*Jefferson Parish Hospital District No. 2 v. Hyde*,
   466 U.S. 2, 80 L. Ed. 2d 2 (1984) ........................................................................................ 8, 10

*Karl Storz Endoscopy-Am., Inc. v. Surgical Techs., Inc.*,
   285 F.3d 848 (9th Cir. 2002) ................................................................................................ 14

*Maris Distrib. Co. v. Anheuser-Busch, Inc.*,
   302 F.3d 1207 (11th Cir. 2002) .............................................................................................. 5

*Mathias v. Daily News, L.P.*,
   152 F. Supp. 2d 465 (S.D.N.Y. 2001) ..................................................................................... 6

*McCabe Hamilton & Renny, Co., Ltd. v. Matson Terminals, Inc.*,
   2008 WL 2437739 (D. Haw. June 17, 2008) ............................................................................ 3

*Michigan Division-Monument Builders of N. Am. v. Michigan Cemetery Ass'n*,
   524 F.3d 726 (6th Cir. 2007) .................................................................................................. 6

*Mozart Co. v. Mercedes-Benz of N. Am., Inc.*,
   833 F.2d 1342 (9th Cir. 1987) ................................................................................................ 8

*Newcal Industries, Inc. v. Ikon Office Solutions*,

| | | |
|---|---|---|
| 1 | | 513 F.3d 1038 (9th Cir. 2008) .................................................................................................. passim |
| 2 | *Newman v. Universal Pictures*, | |
| 3 | 813 F.2d 1519 (9th Cir. 1987) .............................................................................................. 2 | |
| 4 | *Ojala v. Bohlin*,<br>178 Cal. App. 2d 292 (Cal. Ct. App. 1960) ........................................................................ 14 | |
| 5 | *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, | |
| 6 | 124 F.3d 430 (3rd Cir. 1997) ......................................................................................... 3, 4, 5 | |
| 7 | *Re-Alco Indus., Inc. v. Nat'l Ctr. for Health Educ., Inc.*,<br>812 F. Supp. 387 (S.D.N.Y. 1993) ........................................................................................ 3 | |
| 8 | *Rick-Mik Enterprises Inc. v. Equilon Enterprises, LLC*, | |
| 9 | 532 F.3d 963 (9th Cir. 2008) ................................................................................................ 2 | |
| 10 | *RLH Indus., Inc. v. SBC Commc'n, Inc.*,<br>133 Cal. App. 4th 1277 (Cal. Ct. App. 2005) ................................................................... 13 | |
| 11 | *Schor v. Abbott Labs.*, | |
| 12 | 457 F.3d 608 (7th Cir. 2006) .............................................................................................. 12 | |
| 13 | *SCM Corp. v. Xerox Corp.*,<br>645 F.2d 1195 (2d Cir. 1981) ............................................................................................ 12 | |
| 14 | *Shaw v. Rolex Watch, U.S.A., Inc.*, | |
| 15 | 673 F. Supp. 674 (S.D.N.Y. 1987) ...................................................................................... 3 | |
| 16 | *Slattery v. Apple Computer, Inc.*,<br>2005 WL 2204981 (N.D. Cal. Sept. 9, 2005) ...................................................................... 7 | |
| 17 | *Spahr v. Leegin Creative Leather Products, Inc.*, | |
| 18 | 2008 WL 3914461 (E.D. Tenn. Aug. 20, 2008) ................................................................... 3 | |
| 19 | *Steckman v. Hart Brewing Co.*,<br>143 F.3d 1293 (9th Cir. 1998) ............................................................................................ 10 | |
| 20 | *Tanaka v. University of Southern California*, | |
| 21 | 252 F.3d 1059 (9th Cir. 2001) ....................................................................................... 3, 10 | |
| 22 | *Theatre Party Assocs. v. Shubert Org.*,<br>695 F. Supp. 150 (S.D.N.Y. 1988) ...................................................................................... 3 | |
| 23 | *Theme Promotions, Inc. v. News America Marketing FSI*, | |
| 24 | 539 F.3d 1046 (9th Cir. 2008) ............................................................................................ 11 | |
| 25 | *Town Sound and Custom Tops, Inc. v. Chrysler Motors Corp.*,<br>959 F.2d 468 (3d Cir. 1992) (en banc), 113 S. Ct. 196 (1992) ........................................... 8 | |
| 26 | *UGG Holdings, Inc. v. Severn*, | |
| 27 | 2004 WL 5458426 (C.D. Cal. Oct. 1, 2004) ....................................................................... 3 | |
| 28 | *United Farmers Agents Assoc., Inc.  v. Farmers Ins. Exchange*,<br>89 F.3d 233 (5th Cir. 1996) ................................................................................................. 5 | |

*United States v. E.I. DuPont de Nemours & Co.*,
 351 U.S. 377, 76 S. Ct. 994, 100 L. Ed. 1264 (1956) .................................................................. 7

*United States v. Microsoft*,
 253 F.3d 34 (D.C. Cir. 2001) ..................................................................................................... 9

*United States v. Oracle Corp.*,
 331 F. Supp. 2d 1098 (N.D. Cal. 2004) ..................................................................................... 6

*Verizon Commc'n v. Law Offices of Curtis V. Trinko, LLP*,
 540 U.S. 398, 124 S. Ct. 872, 157 L. Ed. 2d 823 (2004) ..................................................... 11, 12

*Westerfield v. Quizno's Franchise Co.*,
 527 F. Supp. 2d 840 (E.D. Wis. 2007) ....................................................................................... 3

*Will v. Comprehensive Accounting Corp.*,
 776 F.2d 665 (7th Cir. 1985) ...................................................................................................... 8

**Statutes**

California Business and Professions Code §16727 ......................................................................... 12

California Business and Professions Code §17200 ......................................................................... 13

**Other Authorities**

*The Presumption of Economic Power for Patented and Copyrighted Products in
 Tying Arrangements*, 85 Colum. L. Rev. 1140 (1985) ............................................................... 8

**Treatises**

1 ABA Section of Antitrust Law, *Antitrust Law Developments,* 192 (6th ed. 2007) ........................... 12

REPLY BRIEF IN SUPPORT OF APPLE INC.'S MOTION TO DISMISS PSYSTAR'S COUNTERCLAIMS
Case No. CV 08-03251 WHA                                                                                                                                          v

## I. INTRODUCTION

Without a license to do so, Counterclaimant Psystar Corporation ("Psystar") has installed Apple's Mac OS® on Psystar's computers so they operate "like that of a Macintosh from APPLE" and sells them in competition with Apple. (Counterclaims ¶ 16.) By doing so, Psystar has knowingly infringed Apple's copyrights. In addition, Psystar also knew of Apple's trademarks, including the one for Mac® (Answer ¶ 8), and yet initially decided to call its computers "OpenMac" (*Id.* ¶ 12). In this and other ways Psystar has infringed Apple's trademarks. Now, Psystar tries to divert attention from its infringing acts by asserting deeply flawed antitrust counterclaims.

Psystar argues that its antitrust and unfair competition claims should proceed even though the allegations in the Counterclaims contradict its crucial assertion that there is a relevant product market limited to Apple's own Macintosh® Operating System ("Mac OS"), and even though the Supreme Court has significantly tightened the standard for pleading claims under the antitrust laws. Psystar argues that the Ninth Circuit permits antitrust claims alleging a "single-brand" market to proceed, but fails to recognize that those cases are limited to rare circumstances involving "aftermarkets" not, as here, the primary market for a product. Indeed, courts have dismissed cases before discovery in which the claimant has asserted a single-brand primary market when, as in this case, such an allegation is "implausible."

Psystar does not deny that the very products it sells — now called the Open Computer and OpenPro Computer — are sold to consumers with their choice of operating systems: Windows XP, Windows Vista, Linux or Mac OS. (*See* Counterclaims ¶ 15.) These operating systems are being offered to the same consumers, for the same purpose, through the same seller at similar prices. Consequently, they necessarily are in the same product market. Psystar's own allegations demonstrate that its effort to define a single-brand market must be rejected and its antitrust and unfair competition claims dismissed with prejudice.

## II. ARGUMENTS AND AUTHORITIES

### A. Psystar Improperly Relies Upon An Abrogated Legal Standard

The United States Supreme Court clarified and tightened the standards required to successfully plead a viable antitrust claim in *Bell Atlantic Corp. v. Twombly*, __ U.S. __, 127 S. Ct. 1955, 167 L.

Ed. 2d 929 (2007). As recognized by the Ninth Circuit three months ago, "[a]t least for the purposes of adequate pleading in anti-trust cases, the [Supreme] Court specifically abrogated the usual 'notice pleading' rule" and "retired" the standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed.2d 80 (1957). *Rick-Mik Enterprises Inc. v. Equilon Enterprises, LLC*, 532 F.3d 963, 970-71 (9th Cir. 2008). Psystar ignores this important development in the law, asserting it need only allege facts from which the Court might "discern the elements of an injury resulting from an act forbidden by antitrust laws." (Psystar's Opposition Brief ("Opp.") at 2, citing *Newman v. Universal Pictures*, 813 F.2d 1519, 1521-22 (9th Cir. 1987).) This is wrong. *Twombly* requires more – it requires plausible claims.

Psystar further misconstrues *Twombly* to require dismissal only in cases where no specific factual allegations are included in the pleading. That also is wrong. In *Twombly* the plaintiff asserted numerous specific factual allegations. *See* 127 S. Ct. at 1962-63. Nevertheless, the Supreme Court dismissed the antitrust claims because those allegations did not meet the "plausibility" standard, stating that "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the complaint's allegations are true." *Id.* at 1959; *see also id.* at 1970 (holding that "nothing contained in the complaint invests either the action or inaction alleged with a plausible suggestion of conspiracy"). Similarly in *Rick-Mik*, the Ninth Circuit held that even though the plaintiff made numerous factual allegations about market power and the separateness of the alleged tied and tying products, those allegations still failed to meet *Twombly*'s plausibility standard. *Rick-Mik*, 532 F.3d at 973, 975. Here, as in *Twombly* and *Rick-Mik*, Psystar's counterclaims should be dismissed because they simply do not support a plausible antitrust claim.

**B.   Numerous Courts Have Dismissed Complaints For Failing To Plead A Plausible Relevant Product Market**

Psystar contends that a Rule 12(b)(6) dismissal is precluded because defining the relevant market is a fact-laden question for the jury. (Opp. at 9-10.) This same argument has been rejected by numerous courts,[1] including the Ninth Circuit in *Tanaka v. University of Southern California*, 252

---

[1] *See, e.g., Bruce Chapman and Handle With Care Behavior Management System, Inc. v. New York State Division For Youth*, No. 05-7010-CV, __ F.3d __, slip op. at 15-16 (2d Cir. Oct. 14, 2008)

Continued on the next page

F.3d 1059, 1063-64 (9th Cir. 2001).  In *Tanaka*, the Ninth Circuit affirmed dismissal of the complaint in part because it found that the plaintiff "ha[d] failed to identify an appropriately defined product market.  Her conclusory assertion that the 'UCLA women's soccer program' is 'unique' and hence 'not interchangeable with any other program in Los Angeles' is insufficient…. Moreover, [the plaintiff's] limitation of the relevant product market to a single athletic program is especially unavailing insofar as the very existence of any given intercollegiate athletic program is predicated upon the existence of a field of competition composed of other, similar programs." *Id.*

Like *Tanaka*, many dismissed complaints involved implausible attempts to limit a product market to a single brand.  *See, e.g.*, *Hack v. President & Fellows of Yale Coll.*, 237 F.3d 81, 86-87 (2d Cir. 2000) (limited to Yale University); *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 438 (3rd Cir. 1997) (limited to goods approved by Domino's Pizza for Domino's stores); *Spahr v. Leegin Creative Leather Products, Inc.*, 2008 WL 3914461 (E.D. Tenn. Aug. 20, 2008) (limited to Leegin's brand of handbags and accessories); *Westerfield v. Quizno's Franchise Co.*, 527 F. Supp. 2d 840, 857 (E.D. Wis. 2007) (limited to Quizno's Franchises); *Re-Alco Indus., Inc. v. Nat'l Ctr. for Health Educ., Inc.*, 812 F. Supp. 387, 391-92 (S.D.N.Y. 1993) (limited to one particular brand of health education materials); *Theatre Party Assocs. v. Shubert Org.*, 695 F. Supp. 150, 153-55 (S.D.N.Y. 1988) (limited to "Phantom of the Opera" tickets); *Shaw v. Rolex Watch, U.S.A., Inc.*, 673 F. Supp. 674, 678-79 (S.D.N.Y. 1987) (limited to Rolex).  Psystar's attempt to limit the relevant market to a single product, Mac OS, is equally flawed and likewise should be rejected.

---

Continued from the previous page
("Though market definition is a deeply fact-intensive inquiry . . . , the relevant market is legally insufficient" where "plaintiffs' proposed relevant market does not encompass all interchangeable substitute products") (internal citations, quotation marks and brackets omitted) (attached as Exhibit 2 to Reply Declaration of James G. Gilliland, Jr.) ("Gilliland Reply Decl."); *Aquatherm Indus., Inc. v. Florida Power & Light Co.*, 145 F.3d 1258, 1261 (11th Cir. 1998) (affirming dismissal of the antitrust claims in the complaint); *McCabe Hamilton & Renny, Co., Ltd. v. Matson Terminals, Inc.*, 2008 WL 2437739 (D. Haw. June 17, 2008) (granting a Rule 12(b)(6) motion to dismiss antitrust claims because the complaint failed to provide any fact to explain why the market should be so limited); *E & E Co. Ltd. v. Kam Hing Enters., Inc.*, 2008 WL 1924905, at *1 (N.D. Cal. Apr. 29, 2008) (J. Chesney) (same); *UGG Holdings, Inc. v. Severn*, 2004 WL 5458426, at *3-4 (C.D. Cal. Oct. 1, 2004) (dismissing with prejudice antitrust claims for failing to allege a viable relevant product market).

1  **C.  Psystar's Allegations Establish There Cannot Be A Single-Brand Market Here**

2  **1.  The Ninth Circuit's "Aftermarket" Cases Do Not Help Psystar**

Relying on *Newcal Industries, Inc. v. Ikon Office Solutions,* 513 F.3d 1038 (9th Cir. 2008), and two other Northern District cases currently pending against Apple, Psystar argues that it is possible to restrict the relevant market to a single brand of the product at issue.  Psystar ignores, however, that courts only allow such single-brand markets where the antitrust plaintiff can establish "aftermarkets" in which consumers already are "locked in" to a particular brand of product.  No such allegations are or could be made here.

*Newcal* is an aftermarket case.  Psystar misleadingly cites one aspect of the case and ignores other fundamental holdings that show its claims fail.  Like *Eastman Kodak Co. v. Image Technical Services, Inc.,* 504 U.S. 451, 112 S. Ct. 2072, 119 L. Ed. 2d 265 (1992), *Newcal* involved two different types of markets—the primary market (copier equipment) and an aftermarket (replacement parts and services).  *Newcal*, 513 F.3d at 1043; *Kodak*, 504 U.S. at 456-59.  The primary market for copier equipment was indisputably a competitive market, and the aftermarket was the alleged relevant market at issue.  *Newcal*, 513 F.3d at 1049 n.5.  The Ninth Circuit held that in very limited circumstances an aftermarket consisting exclusively of a single brand could survive a motion to dismiss.  *Id.* at 1049-51.  Those circumstances are not alleged here.

The *Newcal* Court enumerated the unusual factors that must be alleged and then proven to show a single-brand aftermarket, none of which exist here.  First, the Court of Appeals was clear that it was only discussing <u>aftermarkets</u> and <u>not the primary competitive market</u>.  *Id.* at 1049 ("All…of these cases involve aftermarkets.").  Second, the alleged anticompetitive conduct must relate only to the aftermarket and "[c]ritically" not to a product that is "part of the [competitive] initial market."  *Id.* at 1050 (contrasting *Queen City Pizza* where claimant knowingly agreed to buy pizza supplies from Dominos when the franchise agreement was executed); *see also Kodak*, 504 U.S. at 455.  Third, the court stated that market power that "flows from contractual exclusivity" or a "contractual provision" — rather than leveraging some "special access" to consumers — does **not** constitute unlawful "market power" proscribed by the antitrust laws.  *Newcal*, 513 F.3d at 1050.  Finally, either market imperfections, a change in policy, or fraud and deceit must be alleged "to rebut the economic

presumption that … consumers make a knowing choice to restrict their aftermarket options when they decide in the initial (competitive) market to enter [a] … contract." *Id*.

Psystar ignores the critical distinctions made by the Ninth Circuit in *Newcal* (as well as the Supreme Court in *Kodak*), which show that *Newcal* does not apply to this case. First, and most significantly, **Psystar does not allege an aftermarket**. Rather, its allegations all concern the primary market in which consumers buy personal computers with operating systems.

Unlike the agreements challenged in *Newcal*, Psystar admits Apple's Software License Agreement is part of the <u>initial</u> transaction with consumers. Psystar asserts that from the moment of their initial purchase Mac OS users are "contractually prohibited … from installing, using, or running" Mac OS on non-Apple-labeled computers. Counterclaims ¶ 65; *compare*, *Newcal*, 513 F.3d at 1048; *Kodak*, 504 U.S. at 473-478. Thus, as claimed by Psystar, any alleged "market power" Apple possesses is obtained through "contractual exclusivity" that flows from the Software License Agreement that was entered in the primary market. Such contractual agreements can neither create nor be the basis for a single product market when purchasers knowingly and voluntarily enter into the contract at the time of the original purchase of the product at issue. *Newcal, supra*, 513 F.3d at 1048 ("the law prohibits an antitrust claimant from resting on market power that arises solely from contractual rights that consumers knowingly and voluntarily gave to the defendant); *Hack*, *supra*, 237 F.3d at 85 ("Economic power derived from contractual arrangements affecting a distinct class of consumers cannot serve as a basis for a monopolization claim"); *Maris Distrib. Co. v. Anheuser-Busch, Inc.*, 302 F.3d 1207, 1222 (11th Cir. 2002) (same); *Queen City Pizza*, *supra,* 124 F.3d at 436; *United Farmers Agents Assoc., Inc. v. Farmers Ins. Exchange*, 89 F.3d 233, 236 (5th Cir. 1996) ("Economic power derived from contractual agreements such as franchises or in this case, the agents' contract with Farmers, 'has nothing to do with market power, ultimate consumers' welfare, or antitrust.'"). Accordingly, Psystar's allegations of market power are precisely the same sort of "market power" held lawful in *Queen City Pizza* and *Forsyth v. Humana, Inc.*, 114 F.3d 1467 (9th Cir. 1997). *See Newcal*, 513 F.3d at 1050.

In addition, Psystar has not claimed any market imperfections (let alone fraud or deceit) that prevented customers from realizing that Mac OS is only licensed for use with Macintosh computers.

1 *Newcal*, 513 F.3d at 1048-1049; *Kodak*, 504 U.S. at 473-478; *Michigan Division-Monument Builders of N. Am. v. Michigan Cemetery Ass'n*, 524 F.3d 726, 737 (6th Cir. 2007) ("But a lock-in claim requires specific factual allegations in the complaint that the defendant either changed its rules after the initial sale was made or concealed its rules from its customers."). Psystar also does not allege — nor can it allege — a change in policy prevented customers from realizing that Apple only licenses Mac OS with its Macintosh computers. Indeed, Psystar asserts that any such policy is longstanding. (Counterclaims ¶ 49-55.) Thus, Psystar has not alleged — and cannot claim — the requirements of an "aftermarket" case.

Although Psystar relies on "aftermarket" cases in its brief, it has not alleged any such markets in its Counterclaims. Rather, Psystar identifies two relevant product markets: "(1) the Mac OS and (2) Mac OS Capable Computer Hardware Systems…." (Opp. at 7.) It also alleges that within the second of these purported markets there is a "submarket" of Apple-Labeled Computer Hardware Systems. *Id.*[2] But the supposed existence of this submarket is irrelevant for three reasons. First, defining an economically real "submarket" requires the same specificity and plausibility as defining a primary market, which Psystar has not done. *See, e.g.*, *United States v. Oracle Corp.*, 331 F. Supp. 2d 1098, 1119 (N.D. Cal. 2004) ("Defining a narrow 'submarket' tends to require a relatively long laundry list of factors, which creates the danger of narrowing the market by factors that have little economic basis."). Second, it is improper to equate "submarkets" with "aftermarkets" as Psystar has tried to do here. *Mathias v. Daily News, L.P.,* 152 F. Supp. 2d 465, 483 (S.D.N.Y. 2001), held:

> The [Plaintiff's] attempt to establish a "sub-market" by referencing the Supreme Court's decision in *Eastman Kodak Co. v. Image Technical Servs., Inc.,* 504 U.S. 451, 112 S. Ct. 2072, 119 L. Ed. 2d 265 (1992), also fails. *Eastman Kodak* created a limited exception for a market based on a single brand name when, as a result of an expensive investment in a primary market, the purchaser is locked into an aftermarket of the brand name manufacturer's products.

---

[2] Submarkets and aftermarkets are distinct antitrust concepts. Submarkets are subsets of a broader primary market. In *Brown Shoe v. United States*, 370 U.S. 294, 325, 82 S. Ct. 1502, 1524, 8 L. Ed. 2d 510 (1962), the Supreme Court stated the boundaries of a submarket may be determined by examining certain enumerated "practical indicia," which establish the existence of a relevant product market in the first instance. 370 U.S. at 325 (listing "practical indicia"). Aftermarkets, on the other hand, are derivative markets from some primary market and not subsets. *See, e.g., Kodak*, 504 U.S. at 455.

Finally, Psystar does not claim any anticompetitive conduct has occurred in the alleged submarket, so the allegations are irrelevant and do nothing to bolster Psystar's claims.

Indeed, Psystar does not identify a single case that has recognized a relevant market limited to a single brand outside of a *Kodak/Newcal* lock-in claim. Nor can it. As the Supreme Court observed more than fifty years ago in *United States v. E.I. DuPont de Nemours & Co.*, 351 U.S. 377, 393, 76 S. Ct. 994, 1006, 100 L. Ed. 1264 (1956), the "power that, let us say, automobile or soft-drink manufacturers have over their trademarked products is not the power that makes an illegal monopoly." *See also, Oracle Corp.*, 331 F. Supp. 2d at 1119 ("[J]udicial rejection of markets narrowly defined to a single manufacturer's product has been even more pronounced than judicial skepticism about narrowly defined submarkets.").

### 2. Other Pending Cases Involving Apple Are Irrelevant

Similarly inapposite are two Northern District 12(b)(6) rulings issued by Judge Ware — not the Ninth Circuit[3] — in currently pending cases involving Apple's iTunes® digital music store, iPod® digital music player and iPhone®. (*See* Opp. at 4, 6, 7; Grewe Declaration.) In *Slattery v. Apple Computer, Inc.*, 2005 WL 2204981 (N.D. Cal. Sept. 9, 2005) (currently pending as *The Apple iPod iTunes Anti-Trust Litigation*, C-05-00037-JW), the plaintiffs **did not allege a single-brand market**. Rather they made unsupported allegations of tying between Apple's iPod digital music player and its iTunes digital music store with supposed anticompetitive effects in two alleged multi-brand markets. Plaintiffs asserted "two separate relevant markets pertinent to [their] claims. The first is the market for the legal online sale of digital music.... The second market is portable hard drive digital music players." *Id.* at *1. Apple does not agree that these alleged markets exist as defined by plaintiffs. Nonetheless, they are of no consequence here. The supposed markets in *Slattery* were <u>not</u> single brand markets and therefore do not help Psystar. *Id.* at *3.

*In re Apple & AT&TM Antitrust Litigation*, No. 144 Civ. 07-05152, slip op. (N.D. Cal. Oct. 1,

---

[3] Strangely, throughout its Opposition and the supporting Grewe Declaration, Psystar incorrectly refers to Judge Ware's 12(b)(6) decisions in the two Apple cases as Ninth Circuit decisions. In fact, both of the Apple cases cited by Psystar are class action lawsuits that are still in their preliminary stages. Very limited discovery has occurred and no dispositive motions have been filed. Consequently, there is no finding that Apple has engaged in anticompetitive behavior in either case.

2008), also provides no help to Psystar. There, plaintiffs alleged anticompetitive conduct in purported "aftermarkets" for iPhone voice and data services and iPhone applications. Although Apple believes that there are no legally cognizable aftermarkets in that case, Judge Ware ruled that plaintiffs had adequately pled an "aftermarket" in accordance with *Kodak* and *Newcal*. *Id*. at 14-16. Again, however, this ruling is irrelevant here since Psystar has not pled an aftermarket case. Nor can it, for the focus of Psystar's counterclaims is the consumer's initial purchase of a computer with its operating system in the primary market not an aftermarket.

### 3. *Digidyne* Does Not Help Psystar

Psystar's reliance on *Digidyne Corp. v. Data General Corp.*, 734 F.2d 1336, 1341, 1344 (9th Cir. 1984) is misplaced. Psystar again ignores more recent Supreme Court precedent; this time it is *Illinois Tool Works v. Independent Ink, Inc.*, 547 U.S. 28, 126 S. Ct. 1281, 164 L. Ed. 2d 26 (2006). In *Digidyne*, the Ninth Circuit found *per se* illegal tying based on a presumption of market power arising from the copyright on defendant's software. *Id.* at 1341, 1344 ("The RDOS copyright created a presumption of economic power sufficient to render the tying arrangement illegal *per se*"). *Digidyne*, however, has been tacitly overruled by *Independent Ink* in which the Supreme Court held "that, in all cases involving a tying arrangement, the plaintiff must prove that the defendant has market power in the tying product."[4] *Independent Ink*, 547 U.S. at 46. There is no longer a presumption of

---

[4] Other appellate courts have criticized *Digidyne*. *See*, e.g., *Will v. Comprehensive Accounting Corp.*, 776 F.2d 665, 673 n.4 (7th Cir. 1985), *cert. denied*, 475 U.S. 1129, 106 S. Ct. 1659 (1986); Note, *The Presumption of Economic Power for Patented and Copyrighted Products in Tying Arrangements*, 85 Colum. L. Rev. 1140, 1156 (1985); *see also Jefferson Parish Hospital District No. 2 v. Hyde*, 466 U.S. 2, 37 n.7, 800 L. Ed. 2d 2 (1984) (O'Connor, J., concurring)). That criticism was acknowledged by the Ninth Circuit in *Mozart Co. v. Mercedes-Benz of N. Am., Inc.*, 833 F.2d 1342, 1346 n.4 (9th Cir. 1987), *cert. denied*, 488 U.S. 870 (1988) (citing *A.I. Root Co. v. Computer/Dynamics, Inc.*, 806 F.2d 673, 676 (6th Cir. 1986). *Mozart* noted that "[t]wo Justices who favor retention of the *per se* rule against tie-ins would have granted certiorari in *Digidyne* because of the panel's failure to engage in market analysis." *Id.* at 1346 n.4. The Ninth Circuit then parted from *Digidyne* in at least two ways: (1) it refused to assume *per se* illegality based on a presumption of market power and suggested the panel in *Digidyne* erred for failing to engage in market analysis and (2) it refused to presume market power from the alleged "uniqueness" of the defendant's product. *Id.* at 1346. Since *Mozart*, additional courts have criticized *Digidyne* or limited it to its unique facts. *See*, e.g., *Digital Equipment Corp. v. Uniq Digital Technologies.*, 73 F.3d 756, 762 (7th Cir. 1996); *Town Sound and Custom Tops, Inc. v. Chrysler Motors Corp.*, 959 F.2d 468, 479 n.11 (3d Cir. 1992) (en banc), *cert. denied*, 113 S. Ct. 196 (1992); *Grappone, Inc. v. Subaru of New England*, 858 F.2d 792, 798 (1st Cir. 1988).

market power based on copyrights, patents or any other intellectual property. Consequently, Psystar must actually allege sufficient and specific facts that take into account economic realities and show market power in a plausible relevant market. It has failed to do so.

Not only has *Digidyne* been tacitly overruled, it is also factually distinguishable. Unlike the plaintiff in *Digidyne*, Psystar has not alleged a "lock-in" theory. (*See* Section II.C.2, *supra*.) Additionally, in *Digidyne* the defendant admitted that its RDOS was the only viable operating system that could run on a NOVA CPU. *See Digidyne*, 734 F.2d at 1338, 1341. Here, in contrast, Psystar has admitted there are operating systems other than Mac OS that can run on Intel microprocessors. When substitutes do exist, the courts have refused to find the operating system to be a separate product from the hardware. *See, e.g., Digital Equipment Corp. v. Uniq Digital Technologies*, 73 F.3d 756 (7th Cir. 1996) (selling operating system software together with a computer is not a tie); *A. I. Root Co. v. Computer/Dynamics, Inc.*, 806 F.2d 673, 675-6 (6th Cir. 1986) (company's supposed unique OS is not a relevant market; relevant market is all "small business computers").

Moreover, Psystar cannot plausibly argue there are no other viable operating systems here when its own computers are able to run Mac OS, Windows XP, Windows Vista and Linux (Counterclaims ¶ 15). As Psystar fully admits, Apple now uses an Intel microprocessor (Counterclaims ¶¶ 36-37), instead of the prior non-Intel microprocessor. Consequently, Psystar's reliance on *United States v. Microsoft*, 253 F.3d 34, 53 (D.C. Cir. 2001), also is misplaced. Since Mac OS can now run on Intel processors, Apple's current Macintosh products, as described in Psystar's Counterclaims, would now fall within the *Microsoft* definition of the relevant market: all **Intel-compatible** PC operating systems worldwide. Moreover, the series of *Microsoft* decisions make it clear that Apple does not have market power. The district court found that "even if Apple's Mac OS were included, Microsoft's share would exceed 80%," which means that Apple would have had less than a 20% market share. *Microsoft*, 253 F.3d at 54. Later, the European Commission determined that Apple had at most 3.9% market share during the time period between 2000 and 2002, and that it was Microsoft who had market power. (*See* Gilliland Reply Decl., Ex. 1 at ¶¶ 5.2.1, 5.2.1.1 and Table 5.) Hence, Psystar's antitrust counterclaims are implausible since no court has inferred requisite market power for a tying claim from a market share below thirty percent after the Supreme Court's

REPLY BRIEF IN SUPPORT OF APPLE INC.'S MOTION TO DISMISS PSYSTAR'S COUNTERCLAIMS  9
Case No. CV 08-03251 WHA

decision in 1984 in *Jefferson Parish Hospital District No. 2 v. Hyde*, 466 U.S. 2, 80 L. Ed. 2d 2 (1984). 1 ABA Section of Antitrust Law, *Antitrust Law Developments,* 192 & n. 1109 (6th ed. 2007).

### 4. Psystar's Contradictory Allegations Are Insufficient to State a Claim

Psystar argues that the definition of a relevant market is a question of fact, so it should be allowed to proceed with discovery to try to prove its implausible, single-brand, primary market. But even on a motion to dismiss, courts are not required to accept as true inconsistent allegations or those contradicted by documents referred to in the pleading. *Steckman v. Hart Brewing Co.,* 143 F.3d 1293, 1295 (9th Cir. 1998); *Berry v. Coleman,* 172 Fed. Appx. 929, 932, 2006 WL 759087 (11th Cir. 2006). Thus inconsistent allegations, acknowledging viable substitutes exist while at the same time attempting to exclude them in defining a relevant market, do not allege a valid relevant market. *See Tanaka*, 252 F.3d at 1064; *America Channel, LLC v. Time Warner Cable, Inc.*, 2007 WL 142173, at *9 (D. Minn. Jan 17, 2007) (dismissing monopolization claim because the factual allegations did not support the plaintiff's proposed product market of "cable systems" when the plaintiff also alleged "there are other MVPD [multi-channel video programming distribution] suppliers that provide interchangeable products and who compete with the defendants"); *E&L Consulting, Ltd. v. Doman Indus. Ltd.*, 360 F. Supp. 2d 465, 472-473 (E.D.N.Y. 2005) aff'd 472 F.3d 23 (2d Cir. 2006) (granting Rule 12(b)(6) motion where plaintiffs failed to plead a relevant market "in economically meaningful terms" in part because "plaintiffs' allegations regarding the product market are contradicted by other facts set forth in their own complaint").

As noted previously, Psystar itself sells computers with other operating systems in competition with the computers it sells with Mac OS. (Counterclaims ¶ 15.) Psystar admits that it "manufactures and distributes computers tailored to customer choosing," including the choice among "**wide range of operating systems including Microsoft Windows XP and XP 64-bit, Windows Vista and Vista 64-bit, Linux (32 and 64-bit kernels) and the Mac OS.**" (*Id.* emphasis added.) Psystar further acknowledges that Apple has competitors by repeatedly referring to "APPLE's competitors" and Apple's competition, the antithesis of a single-brand market. (*Id.* ¶¶ 15, 22-23, 36-37, 76.) Psystar alleges that Apple "allow[s] (and all but invit[es]) others to run a **competing OS** on a Macintosh" (*Id.* ¶ 56, emphasis added), and by "competing OS" Psystar clearly is referring to Windows (*Id.* ¶ 55). It

1  also alleges that Apple's customer loyalty "far outranks it closest competitor." (*Id.* ¶ 38.) Psystar
2  specifically notes Apple's substantial advertising campaign directed to its competition from Microsoft
3  Windows. (*Id.* ¶¶ 34-35; Request for Judicial Notice Ex. B.) These allegations acknowledge that
4  Apple competes in a market broader than its own brand and require the conclusion that Psystar cannot
5  allege a viable antitrust claim.

6  Notwithstanding its admission that Apple has competitors, Psystar argues it should be allowed
7  to proceed with its evidence that there is little "elasticity of demand" between Apple's Mac computers
8  with their Mac OS and other personal computers running the Windows operating system, citing *Theme*
9  *Promotions, Inc. v. News America Marketing FSI,* 539 F.3d 1046 (9th Cir. 2008). *Theme Promotions*
10 repeated the truism that cross-elasticity of demand for a product helps define the relevant product
11 market. (*See* Counterclaims ¶¶ 36, 37, 43.) This does not help Psystar, however, because its cross-
12 elasticity allegations – regarding the price of **computers** – have no bearing on the elasticity of demand
13 for operating system **software** alone. These allegations, even if true, do not help show a single-brand
14 market limited to Mac OS software since the prices quoted relate to hardware with operating systems,
15 not operating systems alone.

16       **D.**     **Psystar Tacitly Acknowledges Apple's Right To Refuse To Help A Competitor**

17 Psystar fails to provide any authority that counters Apple's legal right to decide how it
18 distributes its product and with whom it may choose to license or not license the product. While
19 Psystar discusses the facts of *Trinko*, it fails to address or refute the longstanding general principle that
20 "the Sherman Act 'does not restrict the long recognized right of [a] trader or manufacturer engaged in
21 an entirely private business, freely to exercise his own independent discretion as to parties with whom
22 he will deal.'" *Verizon Commc'n v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 408, 124 S.
23 Ct. 872, 879, 157 L. Ed. 2d 823 (2004). Thus, courts have not forced licensing based on purported
24 monopolization or other antitrust theories in copyright or patent cases. *See, e.g.*, *Data General Corp.*
25 *v. Grumman Systems Support Corp.*, 36 F.3d 1147, 1187 (1st Cir. 1994) (affirmed summary judgment
26 dismissing antitrust counterclaims premised on Data General's refusal to license its copyrighted
27 software to a direct competitor); *In re Independent Service Orgs. Antitrust Litig. CSU, L.L.C.*, 203
28 F.3d 1322, 1327 (Fed. Cir. 2000) (following *Data General*); *SCM Corp. v. Xerox Corp.,* 645 F.2d

1195, 1209-10 (2d Cir. 1981) (refused to force Xerox to license its patented photocopiers that were deemed superior). Based on these principles, courts properly have dismissed complaints seeking such relief on Rule 12(b)(6) motions to dismiss. *See, e.g.*, *Schor v. Abbott Labs.*, 457 F.3d 608, 610-11, 614 (7th Cir. 2006) (even when dubious factual allegations regarding market power are assumed to be true, it was proper to dismiss a monopolization claim because the patent holder has the right to exercise its discretion on how to distribute its patented invention).

Instead of addressing these cases, Psystar contends that Apple has "subverted" the true issues of Psystar's counterclaims. There is no doubt, however, that Psystar seeks an injunction forcing Apple to allow Psystar to put Apple's proprietary Mac OS on Psystar's computers as an option along with Windows and Linux products, so Psystar can sell those computers in competition with Apple. (*See* Counterclaims ¶15 and Prayer for Relief). This would require Apple to help Psystar compete against it, in direct contradiction to *Trinko*.

### E. Psystar's State Law Claims Are Irreparably Flawed and Should Be Dismissed

Psystar has not pled a violation of any law in its Fourth, Fifth and Sixth counterclaims, nor has it provided any legal authority for maintaining its Cartwright Act claims in the absence of a violation of the federal antitrust laws.

#### 1. Psystar's Cartwright Act Claim Should Be Dismissed

While contending that the elements for federal and state law claims are distinct, Psystar fails to provide any independent basis or authority to support its Cartwright Act claim other than what serves as the basis for its Sherman Act claims. Psystar alleges tying, unilateral monopolization and exclusive dealing to support its Cartwright Act claim. (*See* Counterclaims ¶¶ 115-116.) Yet, the law is clear: a Cartwright Act claim cannot be based on unilateral monopolization. *Dimidowich v. Bell & Howell*, 803 F.2d 1473, 1478 (9th Cir. 1986). Moreover, Cartwright Act claims based on tying and exclusive dealing require definition of a relevant market. *See, e.g.*, *Corwin v. Los Angeles Newspaper Service Bureau, Inc.*, 4 Cal. 3d 842, 856-858 (Cal. 1971) (tying claim requires defining relevant markets); California Business and Professions Code §16727 (alleged exclusive dealing must "substantially lessen competition or tend to create a monopoly," hence requiring the definition of a relevant market). *Corwin*, 4 Cal. 3d at 853. As discussed *supra*, Psystar has failed to allege a legally cognizable

relevant market.  Accordingly Psystar's Cartwright Act claims fail.[5]

### 2. Psystar's Business and Professions Code Claim Should Be Dismissed

Psystar does not dispute that its California Business and Professions Code Section 17200 claims fail under the "unlawful" prong if its antitrust claims fail.  (*See* Opp. at 14); *see also Aguilar v. Atlantic Richfield Co.*, 25 Cal. 4th 826, 866-867 (Cal. 2001) (no §17200 claim under "unlawful" prong where Cartwright Act claim fails).  Rather, Psystar incorrectly argues that its §17200 claim survives under the "unfair" prong of California Business & Professions Code Section 17200 based on its antitrust allegations.  Since *Cel-Tech Communications v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163 (Cal. 1999), however, California courts have ruled that there is no claim under the unfair prong of Section 17200:

> If the **same conduct** is alleged to be both an antitrust violation and an "unfair" business act or practice for the same reason—because it unreasonably restrains competition and harms consumers—the determination that the conduct is **not an unreasonable restraint** of trade necessarily implies that the conduct is **not "unfair"** toward consumers.  To permit a separate inquiry into essentially the same question under the unfair competition law would only invite conflict and uncertainty and could lead to the enjoining of procompetitive conduct.  (*See Cel-Tech*, *supra*, 20 Cal. 4th at 185.)

*Chavez v. Whirlpool Corp.*, 93 Cal. App. 4th 363, 375 (Cal. Ct. App. 2001) (emphasis added); *RLH Indus., Inc. v. SBC Commc'n, Inc.*, 133 Cal. App. 4th 1277, 1286 (Cal. Ct. App. 2005) (rejecting plaintiff's argument that conduct "threaten[ed] an incipient violation" of the antitrust laws where Cartwright Act claims failed).  Psystar has not alleged any conduct or asserted any legal claim that reaches beyond the antitrust laws.  Accordingly, if Psystar's antitrust claims fail, so too must its Section 17200 claim.

### 3. Psystar's Supposed "Common Law Unfair Competition" Claim Should Be Dismissed

Psystar confuses **statutory** unfair competition with **common law** unfair competition in its opposition brief in an effort to keep its sixth counterclaim alive.  Common law unfair competition is a

---

[5] Moreover, even if the Court finds some legally cognizable relevant market has been adequately defined in the context of a motion to dismiss, Psystar's monopolization and exclusive dealing claims must be dismissed for failure to allege a combination as required by the Cartwright Act.

narrow doctrine in trademark law relating to the "passing off" of goods and services. (Motion at 16.) It does not include the alleged statutory unfair competition claims and alleged antitrust violations that Psystar asserts in its common law counterclaim. Psystar's effort to expand the scope of common law unfair competition was rejected by Psystar's own authority in *Aydin Corp. v. Loral Corp.*, 1981 WL 2178, at *18 (N.D. Cal. 1981), where Judge Patel rejected the plaintiff's assertion that its Cartwright Act and tortious interference claims could be the basis for common law unfair competition. *See also, Ojala v. Bohlin*, 178 Cal. App. 2d 292 (Cal. Ct. App. 1960). The other authorities cited by Psystar also do not support its argument. *See Golan v. Pingel Enter., Inc.*, 310 F.3d 1360, 1373 (Fed. Cir. 2002) (held that issues of state or common law exist in the context of a trademark claim, not antitrust); *Karl Storz Endoscopy-Am., Inc. v. Surgical Techs., Inc.*, 285 F.3d 848, 853 (9th Cir. 2002) (notably did not include any reference to common law unfair competition); *Imax Corp. v. Cinema Tech., Inc.*, 152 F.3d 1161 (9th Cir. 1998) (addressing claims based upon common law misappropriation of trade secrets, not antitrust).

## III. CONCLUSION

Psystar's allegations fail to state viable antitrust or unfair competition claims. Rather, they demonstrate that there is no single-brand relevant product market. Consequently, those allegations are insufficient to state a claim that Apple has market power of any sort or that its actions violate any federal or state law. Psystar's Counterclaims are simply an attempt to obscure Psystar's violations of copyright and trademark laws and its breach of Apple's Software License Agreement. The Counterclaims should be dismissed with prejudice.

DATED: October 23, 2008          Respectfully submitted,

TOWNSEND AND TOWNSEND AND CREW LLP


By:    /s/James G. Gilliland, Jr.
         JAMES G. GILLILAND, JR.
       Attorneys for Plaintiff
       APPLE INC.

61596259 v3