# Exhibit 2
## to
## Reply Declaration of James G. Gilliland, Jr. In Support of Apple Inc.'s Motion to Dismiss Psystar's Counterclaims

```
05-7010-cv
Chapman v. NYS Division for Youth
```

```
 1                 UNITED STATES COURT OF APPEALS
 2
 3                      FOR THE SECOND CIRCUIT
 4
 5                         August Term 2007
 6
 7   (Argued: October 25, 2007         Decided: October 14, 2008)
 8
 9                       Docket No. 05-7010-cv
10
11   -------------------------------------------------------x
12
13   BRUCE CHAPMAN AND HANDLE WITH CARE BEHAVIOR
14   MANAGEMENT SYSTEM, INC.,
15
16            Plaintiffs-Appellants,
17
18                             -- v. --
19
20   NEW YORK STATE DIVISION FOR YOUTH, NEW YORK STATE
21   OFFICE OF CHILDREN & FAMILY SERVICE, NEW YORK STATE
22   DEPARTMENT OF SOCIAL SERVICES, JOHN JOHNSON,
23   Commissioner of New York State Office of Children and
24   Family Services, and former Commissioner of the New
25   York State Division for Youth, in his official and
26   individual capacity, MARGARET DAVIS, former Director
27   of Training for the New York State Division for
28   Youth, and former Director of Training for New York
29   State Office of Children and Family Services, in her
30   official and individual capacity, PATSY MURRAY,
31   former Associate Training Technician for the New York
32   State Division for Youth, and current position as
33   Trainer for New York State Office of Children and
34   Family Services, in her official and individual
35   capacity, CORNELL UNIVERSITY, JEFFREY LEHMAN,
36   President of Cornell University, in his official and
37   individual capacity, DOCTOR HUNTER RAWLINGS, III,
38   former President of Cornell University, in his
39   official and individual capacity, NEW YORK STATE
40   COLLEGE OF HUMAN ECOLOGY, FAMILY LIFE DEVELOPMENT
41   CENTER, RESIDENTIAL CHILD CARE PROJECT, THERAPEUTIC
42   CRISIS INTERVENTION, MARTHA HOLDEN, Project Director
43   of the Residential Child Care Project and Therapeutic
44   Crisis Intervention Trainer and Coordinator, in her
```

```
 1    official and individual capacity, MICHAEL NUNNO,
 2    Project Director of the Residential Child Care
 3    Project and Therapeutic Crisis Intervention Trainer
 4    and Coordinator, in his official and individual
 5    capacity, HILLSIDE CHILDREN'S CENTER, DENNIS
 6    RICHARDSON, President and CEO of Hillside Children's
 7    Center, in his official and individual capacity,
 8    DOUGLAS BIDLEMAN, Employee of Hillside Children's
 9    Center and Therapeutic Crisis Intervention Trainer,
10    in his official and individual capacity,
11
12
13              Defendants-Cross-Defendants-Appellees.
14
15    ---------------------------------------------------x
16
17    B e f o r e :  WALKER, STRAUB, and POOLER, Circuit Judges.
18
```

19    Plaintiffs-appellants seek review of an order of the United

20 States District Court for the Northern District of New York

21 (David N. Hurd, Judge) dismissing their copyright and antitrust

22 claims pursuant to Fed. R. Civ. P. 12(b) and (c) and declining to

23 exercise supplemental jurisdiction over their state law claims.

24 The district court dismissed plaintiffs' copyright claims on the

25 basis that a contract unambiguously granted the defendants a

26 perpetual license to copy plaintiffs' materials. We conclude that

27 the contract is ambiguous, and remand the case for further fact-

28 finding on this issue.  With regard to plaintiffs' antitrust

29 claims, we agree with the district court that plaintiffs have

30 failed to allege a plausible antitrust market.  We therefore

31 affirm the district court's order dismissing plaintiffs'

32 antitrust claims with prejudice.

33    AFFIRMED in part; VACATED and REMANDED in part.

```
 1                                GUY L. HEINEMANN, Guy L. Heinemann,
 2                                P.C. (Irene M. Vavulitsky, Guy L.
 3                                Heinemann, P.C., and Hilary Adler,
 4                                Law Offices of Hilary Adler,
 5                                Gardiner, N.Y., on the brief), New
 6                                York, N.Y., for Plaintiffs-
 7                                Appellants.
 8
 9                                ANDREA OSER, Assistant Solicitor
10                                General (Daniel Smirlock, Deputy
11                                Solicitor General, on the brief),
12                                for Eliot Spitzer, Attorney General
13                                of the State of New York, Albany,
14                                N.Y., for Defendants-Appellees, New
15                                York State Division for Youth, New
16                                York State Department of Social
17                                Services; New York State Office of
18                                Children & Family Services, John
19                                Johnson; Margaret Davis, and Patsy
20                                Murray.
21
22                                NELSON E. ROTH (Valerie L. Cross
23                                and Norma W. Schwab, on the brief)
24                                Office of the University Counsel,
25                                Ithaca, N.Y., for Defendants-
26                                Appellees, Cornell University,
27                                Jeffrey Lehman, Hunter Rawlings,
28                                III, New York State College of
29                                Human Ecology, Family Life
30                                Development Center, Residential
31                                Child Care Project, Therapeutic
32                                Crisis Intervention, Martha Holden,
33                                and Michael Nunno.
34
35                                DAVID H. WALSH, Petrone & Petrone,
36                                P.C., Syracuse, N.Y., for
37                                Defendants-Appellees, Hillside
38                                Children's Center, Dennis
39                                Richardson, and Douglas Bidleman.
40
41   JOHN M. WALKER, JR., Circuit Judge:
```

Plaintiffs-appellants Bruce Chapman and Handle With Care Behavior Management System, Inc., (collectively "HWC") market a training program ("Handle With Care") that teaches individuals a

3

safe technique for physically restraining others.  HWC sued three groups of defendants alleging generally that they had infringed HWC's copyright and adversely affected the market for such restraint services in violation of the antitrust laws.

Specifically, HWC sued various New York state agencies and their officers and agents (collectively "the state defendants").  The state defendants include: the New York State Office of Children and Family Services ("OCFS"), which in 1998 succeeded the New York State Division for Youth ("DFY") and the New York State Department of Social Services ("DSS") also named as defendants; John Johnson, the former Commissioner of DFY and the current Commissioner of OCFS; Margaret Davis, the former Director of Training for DFY and the current Director of Training for OCFS; and Patsy Murray, a former Associate Training Technician for DFY and current Trainer for OCFS.

HWC also sued Cornell University and the New York State College of Human Ecology (the "College") and related persons and entities (collectively "the Cornell defendants").  The Cornell defendants include: Cornell University; Jeffrey Lehman, Cornell's then-current president; Hunter Rawlings III, Cornell's former president; the College and subsidiaries the Family Life Development Center, the Residential Child Care Project, and Therapeutic Crisis Intervention ("TCI"); and Project Directors of the Residential Child Care Project and TCI Trainers and

4

1    Coordinators, Martha Holden and Michael Nunno.

2        Finally, HWC sued Hillside Children's Center ("HCC"), a
3    private childcare provider and residential treatment center, and
4    two of its officers, Dennis Richardson, HCC's president, and
5    Douglas Bidleman, HCC's Coordinator for Sociotherapy
6    (collectively "the Hillside defendants").

7        The state and Cornell defendants moved to dismiss the
8    complaint pursuant to Fed. R. Civ. P. 12(b)(6), and the Hillside
9    defendants moved to dismiss the complaint pursuant to Fed. R.
10   Civ. P. 12(c).  The district court granted both motions as to all
11   of plaintiffs' federal claims and declined to exercise
12   supplemental jurisdiction over the remaining state law claims.
13   The federal claims dismissed were: (1) copyright infringement
14   against the state defendants; and (2) conspiracy to monopolize
15   and restrain trade, together with monopoly, restraint of trade,
16   and unfair competition, against all defendants.

17       The district court dismissed plaintiffs' copyright claim on
18   the basis that the contract at issue unambiguously granted the
19   state defendants the right to copy plaintiffs' materials
20   indefinitely.  We disagree with that conclusion, find the
21   contract ambiguous, and remand the case to the district court to
22   determine the duration of the license to copy plaintiffs'
23   materials granted under the contract.

24       With regard to the antitrust claims, the district court held

that the plaintiffs failed to offer a plausible relevant market in which the defendants monopolized the trade for restraint services or engaged in restraint of trade or unfair competition with respect thereto. We agree that the plaintiffs have failed to define a plausible market and conclude that the plaintiffs cannot establish that the defendants have substantial market power in the market for restraint services properly defined. Accordingly, we affirm the district court's dismissal of plaintiffs' antitrust claims and vacate the district court's dismissal of the copyright claim against the state defendants.

**BACKGROUND**

For purposes of reviewing a motion to dismiss, we assume the accuracy of the plaintiffs' allegations in their complaint. Patane v. Clark, 508 F.3d 106, 111 (2d Cir. 2007) (per curiam). "[O]ur review is limited to undisputed documents, such as a written contract attached to, or incorporated by reference in, the complaint." Official Comm. Of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, L.L.P., 322 F.3d 147, 160 n.7 (2d Cir. 2003) (citing Cortec Indus., Inc. v. Sum Holding, L.P., 949 F.2d 42, 47 (2d Cir. 1991)).

OCFS (previously DFY and DSS) operates juvenile facilities and monitors child care providers in the state of New York. The New York legislature mandated that OCFS:

> promulgate regulations concerning standards for the
> protection of children in residential facilities and
> programs operated or certified by the division, from abuse
> and maltreatment. . . . Such standards shall . . . establish
> as a priority that: . . . administrators, employees,
> volunteers and consultants receive training in . . .: the
> characteristics of children in care and techniques of group
> and child management including crisis intervention.

N.Y. Exec. Law § 501(12); see also N.Y. Soc. Serv. Law § 462(1)(c). To that end, state regulations require that each supervised child care facility "submit[] its restraint policy to [OCFS]" and prohibit the use of "any method of restraint unless it has . . . been approved in writing by [OCFS]." 18 N.Y. Comp. Codes R. & Regs. § 441.17(c).

In 1987, New York State purchased HWC's method for use in its own facilities. That year, DFY contracted with HWC to provide training in HWC's methods to its staff (the "1987 contract"). The 1987 contract provided that HWC would train 120 DFY staff members over fifteen days in HWC's methods. It further provided that HWC would furnish DFY with one "copy of Handle With Care (copyrighted) which [DFY] may reproduce in whole or in part as required by [DFY]" and "a videomaster of the restraint program to be used by [DFY's] master trainers in conducting training programs for facility staff." Finally, the contract stated that "[t]his agreement shall commence January 1, 1988 and end March 31, 1988." There is no dispute that HWC fulfilled its obligations under the 1987 contract and trained 120 DFY staff,

some of whom were master trainers, during the relevant three-month term.  In 1997, however, after two incidents at DFY facilities in which children were harmed by the use of improper restraint techniques, DFY requested that HWC provide retraining to its staff.

The resulting contract (the "1997 contract") provided that HWC would "update and recertify existing [DFY] Crisis Management/Physical Restraint trainers in the techniques encompassed in the <u>Handle With Care</u> program;"  that it would "deliver twelve (12) days of training to approximately one hundred twenty (120) existing [DFY] trainers;" and that DFY had "the right to reproduce all training materials."[1]  The contract provided that the "agreement shall commence May 1, 1997 and end August 31, 1997."  Additionally, HWC required DFY staff members to sign individual contracts acknowledging that their certification to train in HWC's methods terminated after one year.

HWC furnished the training and materials in conformity with the 1997 contract.  Thereafter, there is no dispute that DFY master trainers, using HWC's materials, trained the rest of DFY's staff in the HWC method.  A year later, DFY merged into OCFS and the latter continued to use HWC's materials to train its staff.

---

[1] We note that, as defendants acknowledge on appeal, the district court was mistaken in its view that the contract was "drafted by Chapman."

1    HWC faced competition in the restraint method and training
2    business.  Cornell, in partnership with the State of New York,
3    developed and marketed its own restraint method and training
4    services called Therapeutic Crisis Intervention ("TCI").  HWC and
5    TCI competed in providing restraint training services to various
6    agencies, organizations, and businesses.
7         Sometime after DFY merged with OCFS in 1998, OCFS began to
8    withhold its approval of each facility's restraint method unless
9    the TCI method was used.  After learning of the alleged policy
10   change at OCFS, HWC filed the instant action challenging the
11   policy, claiming that OCFS, Cornell, and HCC conspired to
12   monopolize the market for restraint services in violation of the
13   antitrust laws.  HWC also claimed that OCFS infringed HWC's
14   copyright by reproducing HWC's materials in 1998 and by
15   continuing to use them and made various state law claims.  After
16   the district court dismissed these claims, HWC appealed.
17
18                            **DISCUSSION**
19   **I.   Legal Standard**
20        We review de novo the dismissal of a complaint for failure
21   to state a claim, and accept all well-pleaded facts as true and
22   consider those facts in the light most favorable to the
23   plaintiff.  Patane v. Clark, 508 F.3d 106, 111 (2d Cir. 2007)
24   (per curiam).

>To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.' Once a claim has been adequately stated, it may be supported by showing any set of facts consistent with the allegations in the complaint.

ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007)).

**II.  The Copyright Claim**

HWC's copyright claim against the state defendants is dependent upon the terms of the 1997 contract. There is no dispute that DFY copied HWC's materials; the only question is whether DFY had the right to do so. See Graham v. James, 144 F.3d 229, 236 (2d Cir. 1998) ("A copyright owner who grants a nonexclusive license to use his copyrighted material waives his right to sue the licensee for copyright infringement."). "In interpreting a contract, the intent of the parties governs. A contract should be construed so as to give full meaning and effect to all of its provisions." Am. Express Bank Ltd. v. Uniroyal, Inc., 562 N.Y.S.2d 613, 614 (N.Y. App. Div. 1990) (citations omitted). The question of whether a provision in an agreement is ambiguous is a question of law. Collins v. Harrison-Bode, 303 F.3d 429, 433 (2d Cir. 2002). Under New York law, the presence or absence of ambiguity is determined by looking within the four corners of the document, without

1   reference to extrinsic evidence.  <u>Kass v. Kass</u>, 696 N.E.2d 174,
2   180 (N.Y. 1998).  "[A]n ambiguity exists where a contract term
3   could suggest more than one meaning when viewed objectively by a
4   reasonably intelligent person who has examined the context of the
5   entire integrated agreement and who is cognizant of the customs,
6   practices, usages and terminology as generally understood in the
7   particular trade or business."  <u>World Trade Ctr. Props., L.L.C.
8   v. Hartford Fire Ins. Co.</u>, 345 F.3d 154, 184 (2d Cir. 2003)
9   (internal quotation marks and citation omitted).
10       We must decide whether the 1997 contract is ambiguous as to
11  the duration of the license granted to copy HWC's materials.
12  Although both parties contend that the 1997 agreement is
13  unambiguous on its face, they draw different conclusions as to
14  the duration of the license.  HWC claims that, according to the
15  1997 contract's "Term of Agreement" provision, DFY's right to
16  copy its materials ended on August 31, 1997 (120 days after the
17  agreement commenced).  The state defendants, however, contend
18  that the 1997 contract unambiguously grants DFY a perpetual right
19  to copy HWC's materials.  The district court agreed with the
20  state defendants.  We disagree and conclude that the contract on
21  its face is ambiguous.
22       The purpose of the 1997 contract is not disputed: HWC agreed
23  to "update and recertify existing [DFY] Crisis

11

1   Management/Physical Restraint trainers in the techniques
2   encompassed in the <u>Handle With Care</u> program." To that end, the
3   agreement provided that HWC would perform twelve days of training
4   to DFY trainers. The DFY trainers would then train the rest of
5   DFY's staff in HWC's methods. Contemplating that the DFY
6   trainers would need to utilize HWC's materials in training the
7   rest of the Division staff, the 1997 contract acknowledged that
8   "[DFY] has the right to reproduce all training materials."
9      HWC's argument that the license to copy its materials
10  expired after 120 days conflicts with the agreement's purpose.
11  While the 1997 contract states that the "agreement shall commence
12  May 1, 1997 and end August 31, 1997," there is nothing in the
13  contract that expressly indicates that this provision governs the
14  duration of the license to copy HWC's materials. Indeed, from
15  the four corners of the agreement, it is not at all certain that
16  the parties intended that DFY's rights to copy HWC's materials
17  terminate so quickly. HWC plainly knew that it was training
18  trainers who, if they were to train the rest of DFY's staff,
19  would need to copy HWC's materials. The provision allowing use
20  of HWC's materials is unclear on its face as to whether it was
21  meant to end with the agreement, or whether it was meant to
22  continue for a reasonable period of time after the agreement

1  ended to allow for further training of DFY staff.

2  We are equally unpersuaded that the 1997 contract granted a
3  perpetual license.  There is no indication from the contract that
4  the license to copy HWC's materials was meant to be perpetual.
5  And under New York law, "[c]ontracts which are vague as to their
6  duration generally will not be construed to provide for perpetual
7  performance."  Ketcham v. Hall Syndicate, Inc., 236 N.Y.S.2d 206,
8  214 (N.Y. Sup. Ct. 1962).  In the absence of a clear provision,
9  courts are reluctant to declare a perpetual license as a matter
10 of law.  See Warner-Lambert Pharm. Co. v. John J. Reynolds, Inc.,
11 178 F. Supp. 655, 661 (S.D.N.Y. 1959), aff'd, 280 F.2d 197 (2d
12 Cir. 1960) (per curiam).  Because the contract here does not
13 explicitly grant a perpetual license, we do not find that it did
14 so.

15 After rejecting both parties' arguments and finding no
16 plausible alternative within the four corners of the document, we
17 conclude that the 1997 contract is ambiguous as to the duration
18 of the license.  This leaves us two choices.  "We may resolve
19 [the] ambiguity . . . if there is no extrinsic evidence to
20 support one party's interpretation of the ambiguous language or
21 if the extrinsic evidence is so one-sided that no reasonable
22 factfinder could decide contrary to one party's interpretation.

13

Or, we may remand for the trial court to consider and weigh extrinsic evidence to determine what the parties intended." Collins, 303 F.3d at 433 (internal quotation marks and citation omitted). We choose the latter.

The extrinsic evidence presently in the record does not answer the question. HWC points out that when it provided retraining in 1997, it required each Division trainer to sign a contract acknowledging that his/her certification expired after one year. This evidence would support a finding that the license granted under the 1997 contract was of a more limited duration. The evidentiary record, however, is incomplete. Because further fact-finding is necessary, we remand the copyright claim to the district court for further proceedings consistent with this opinion.[2]

### III. Plaintiffs Have Failed to Define the Proper Market for Antitrust Purposes

HWC claims that OCFS, in cooperation with Cornell, has conspired to create a monopoly in the market for "training

---

[2] Because the district court did not have occasion to reach the state defendants' Eleventh Amendment immunity defenses, and because the Eleventh Amendment would not, in any event, bar suit against OCFS officials and employees sued in their official capacity for injunctive relief, Henriettta D. v. Bloomberg, 331 F.3d 261, 287 (2d Cir. 2003), we do not need to reach this issue.

1   services to private child care providers located within the State
2   of New York" by withholding approval of supervised facilities
3   that do not use the TCI method.  HWC alleges that HCC was
4   complicit in this arrangement because, after HWC trained HCC's
5   staff in 2001, HWC discovered that one of HCC's training
6   coordinators "appeared in TCI's training manual and video
7   illustrating" HWC's proprietary methods.
8        For a monopoly claim "[t]o survive a Rule 12(b)(6) motion to
9   dismiss, an alleged product market must bear a rational relation
10  to the methodology courts prescribe to define a market for
11  antitrust purposes -- analysis of the interchangeability of use
12  or the cross-elasticity of demand, and it must be plausible."
13  Todd v. Exxon Corp., 275 F.3d 191, 200 (2d Cir. 2001) (internal
14  quotation marks and citation omitted).  "[T]he reasonable
15  interchangeability of use or the cross-elasticity of demand
16  between the product itself and substitutes for it" determine
17  "[t]he outer boundaries of a product market."  Brown Shoe Co. v.
18  United States, 370 U.S. 294, 325 (1962).  Though "market
19  definition is a deeply fact-intensive inquiry [and] courts
20  [therefore] hesitate to grant motions to dismiss for failure to
21  plead a relevant product market," Todd, 275 F.3d at 199-200,
22  "[w]here the plaintiff fails to define its proposed relevant

market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, or alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products even when all factual inferences are granted in plaintiff's favor, the relevant market is legally insufficient and a motion to dismiss may be granted," Queen City Pizza, Inc. v. Domino's Pizza, Inc., 124 F.3d 430, 436 (3d Cir. 1997).  Here we find that plaintiffs' proposed relevant market does not encompass all interchangeable substitute products.  We therefore affirm the district court's dismissal of the antitrust claims.

    HWC contends that the relevant market for our analysis here is the market for "restraint training services to private child care providers located within the State of New York."  This definition is too narrow.  HWC has failed to show how the market for restraint training services <u>to child care providers</u> is any different from the larger market for restraint training services to other businesses, agencies, and organizations. "Interchangeability implies that one product is roughly equivalent to another for the use to which it is put. . . ." Queen City, 124 F.3d at 437 (internal quotation marks and citation omitted).  Plaintiffs do not contest that Handle With

16

Care is marketed to and utilized by various organizations, institutions, and agencies that are not child care providers. Indeed, plaintiffs readily admit in their complaint that they compete for such contracts on a "national and international" basis. The unifying characteristic of this market is that each purchaser needs to restrain individuals, not just children.

Because "the reasonable interchangeability of use . . . between the product itself and substitutes for it" determines "[t]he outer boundaries of a product market," it is apparent that the proper market here is the larger market for restraint training services to businesses, agencies, and organizations with the need to safely restrain individuals of all ages, not the more limited market for child restraint services. Brown Shoe, 370 U.S. at 325. As the district court noted, the larger market includes social service agencies, law enforcement agencies, correctional facilities, educational facilities, and even airlines.

Furthermore, we reject HWC's argument that because private child care providers in New York must have OCFS approval in order to operate, and thus that the market is specialized, it stated a plausible discrete relevant market. The relevant inquiry is not whether a private child care provider may reasonably use both

approved and non-approved OCFS methods interchangeably, but whether private child care providers in general might use such products interchangeably.  See Queen City, 124 F.3d at 438. HWC's proposed relevant market "clearly does not encompass all interchangeable substitute products even when all factual inferences are granted in plaintiff's favor." Id. at 436.  We thus agree with the district court that the "Plaintiffs have not offered any theoretically reasonable explanation for restricting the product market to child care providers that require OCFS approval, or provided a sufficient factual predicate to support an inference that OCFS enjoys any substantial market power in the broader market for restraint services."  Plaintiffs' proposed market is therefore legally insufficient and dismissal of the antitrust claims was appropriate.[3]

**CONCLUSION**

  For the foregoing reasons, the judgment below is AFFIRMED as to

---

[3]   HWC argues that the district court exceeded its allowable discretion in dismissing their antitrust claims with prejudice, as opposed to allowing HWC to amend their complaint.  Given the nature of the claims, repleading would be futile; HWC offers no plausible argument as to how the failure to plead a relevant market could be rectified through an amended complaint.  See Patane v. Clark, 508 F.3d 106, 113 n.6 (2d Cir. 2007) (per curiam).

| | |
|---|---|
| 1 | the antitrust claims and VACATED as to the copyright claim and |
| 2 | the case is REMANDED to the district court for further |
| 3 | proceedings consistent with this opinion. |