| | |
|---|---|
| JAMES G. GILLILAND, JR. (SBN 107988)<br>jggilliland@townsend.com<br>MEHRNAZ BOROUMAND SMITH (SBN 197271)<br>mboroumand@townsend.com<br>MEGAN M. CHUNG (SBN 232044)<br>mmchung@townsend.com<br>JEB OBLAK (SBN 241384)<br>jboblak@townsend.com<br><br>TOWNSEND AND TOWNSEND AND CREW LLP<br>Two Embarcadero Center, 8th Floor<br>San Francisco, California 94111<br>Telephone: (415) 576-0200<br>Facsimile: (415) 576-0300<br><br>Attorneys for Plaintiff and Counterdefendant<br>APPLE INC. | ROBERT J. YORIO (SBN 93178)<br>ryorio@carrferrell.com<br>COLBY B. SPRINGER (SBN 214868)<br>cspringer@carrferrell.com<br>CHRISTINE S. WATSON (SBN 218006)<br>cwatson@carrferrell.com<br>CHRISTOPHER P. GREWE (SBN 245938)<br>cgrewe@carrferrell.com<br><br>CARR & FERRELL LLP<br>2200 Geng Road<br>Palo Alto, California 94303<br>Telephone: (650) 812-3400<br>Facsimile: (650) 812-3444<br><br>Attorneys for Defendant and Counterclaimant<br>PSYSTAR CORPORATION |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>        Plaintiff,<br><br>    v.<br><br>PSYSTAR CORPORATION, a Florida corporation,<br><br>        Defendant.<br><br>AND RELATED COUNTERCLAIMS. | Case No.   CV 08-03251 WHA<br><br>**JOINT CASE MANAGEMENT STATEMENT AND [PROPOSED] CASE MANAGEMENT ORDER**<br><br>Date:      November 6, 2008<br>Time:     8:00 a.m.<br>Judge:    Hon. William Alsup<br>Courtroom:  9, 19th Floor |

Pursuant to this Court's July 21, 2008 Order, Federal Rule of Civil Procedure 16 and Civil Local Rule 16-9, Plaintiff and Counterdefendant Apple Inc. ("Apple") and Defendant and Counterclaimant Psystar Corporation ("Psystar") (collectively referred to herein as "the Parties") jointly submit this Case Management Statement and Proposed Order and request the Court adopt the portions it deems appropriate as the Case Management Order in this matter.

**JOINT CASE MANAGEMENT STATEMENT**

1. **Jurisdiction and Service:** The Parties agree that this Court has both personal and subject matter jurisdiction in this case and that San Francisco is a proper venue. This Court has federal question jurisdiction, pursuant to 28 U.S.C. §§ 1331, 1332 and 1338, over Apple's Copyright and Lanham Act claims and Psystar's Sherman and Clayton Act claims. Apple's remaining claims and Psystar's remaining counterclaims form part of the same case or controversy as Apple and Psystar's other asserted claims. Consequently, pursuant to 28 U.S.C. § 1367, this Court has supplemental subject matter jurisdiction over those claims and counterclaims as well.

All parties to this lawsuit have been served. Apple served its Complaint on Psystar on July 8, 2008. In turn, Psystar filed and served its Answer and Counterclaims on Apple on August 28, 2008.

2. **Facts:** The Parties have set forth their separate statement of facts below followed by a joint list of factual issues in dispute in this case.

<u>Apple's Statement</u>: Apple is one of the most innovative companies in developing, manufacturing and marketing consumer products and services. Apple's products include the Macintosh® line of desktop and portable computers, famous for their reliability, ease-of-use and innovative industrial design. Apple's most recent operating system for its Macintosh computers — Mac OS X — was launched in 2001. Mac OS X is known as Leopard® and has obtained rave reviews as being "visually stunning" and "powerful, polished and carefully conceived." Apple licenses the use of Mac OS X software and the intellectual property associated with it through its Software License Agreement for Mac OS X (Exhibit 1 to Complaint). The Software License Agreement is a limited use license which allows the licensee to "install, use and run one (1) copy of the Apple Software on a single Apple-labeled computer at a time." The license further states that the licensee "agree[s]" not to install, use or run the Apple-Software on any non-Apple labeled computer or enable another to do

so….."[1] Furthermore, the license agreement states that it will automatically terminate if the licensee "fail[s] to comply with any term(s) of [the] License."

Apple also manufactures and sells the Xserve® rack-mount server for use in businesses needing to connect multiple computers to a single server. Xserve uses Mac OS X Leopard Server as its operating system software and is licensed to users under the terms of the Software License Agreement for Mac OS X Server (Exhibit 2 to Complaint).[2] Like Mac OS X Leopard, Mac OS X Server has been the subject of much media coverage.

In violation of Apple's copyright and trademark rights and the terms of the Mac OS X Software License Agreement, Psystar began online sales of a computer named OpenMac, in April 2008. OpenMac runs a modified, unauthorized version of Leopard on non-Apple-labeled hardware. Subsequent to its initial launch, Psystar renamed the OpenMac as the Open Computer and also sells a more advanced version of the computer known as the OpenPro. Like the Open Computer, the OpenPro also runs a modified, unauthorized version of Leopard on non-Apple-labeled hardware. Psystar has also offered, without Apple's permission and consent, downloads of Mac OS X Leopard software updates. According to Psystar's Chief Executive Officer, Psystar has sold thousands of these computers. In addition to its OpenMac/Open Computer and OpenPro computers, Psystar also began selling rack-mount servers called OpenServ 1100 and OpenServ 2400 in June 2008 which utilize modified, unauthorized versions of Mac OS X Leopard Server software.

In selling the Open Computer, OpenPro, OpenServ 1100 and OpenServ 2400 (hereinafter the "Psystar Products") with Apple's proprietary Mac OS X software, Psystar is breaching and inducing breach of Apple's Mac OS X Leopard and Mac OS X Leopard Server Software License Agreements. In order to run Mac OS X on Psystar Products, Psystar has modified and/or copied Apple's proprietary software and is directly and contributorily infringing Apple's copyrights in its Mac OS X Leopard and

---

[1] Apple Software is defined within the Software License agreement as the "software (including Boot ROM Code) … accompanying this License whether preinstalled on Apple-labeled hardware, on disk, in read only memory, or any other media or in any other form …."

[2] The Software License Agreement for Mac OS X Server contains the same key terms found in the Mac OS X license discussed above.

Mac OS X Leopard Server software.  Psystar is also infringing Apple's registered, unregistered and common law trademarks and non-functional trade dress.  Psystar's actions violate both state and common law unfair competition laws.

In its counterclaims, Psystar contends that Apple is violating federal and state antitrust laws by not permitting the use of its software on non-Apple-labeled hardware.  However, as detailed in Apple's motion to dismiss, contrary to the plethora of legal authority and marketplace realities, Psystar has improperly alleged that Apple is monopolizing a single product market — the alleged Mac computer market.  No such market exists.  Moreover, Apple denies the existence of the other alleged markets pled by Psystar and further denies having market power in those alleged markets.  Contrary to Psystar's contentions, Apple is well within its rights to choose not to license its proprietary software to its competitors and its decision to do so does not constitute anticompetitive behavior.

<u>Psystar's Statement</u>:  Psystar manufactures and distributes computers capable of supporting a wide range of operating systems.  Psystar computers run the Mac OS X like an Apple Macintosh only on a computer hardware system offered at a considerably lower price and with considerably higher performance.  Apple seeks to prohibit Psystar's offerings through the Apple EULA and claims of infringement of Apple intellectual property.  Psystar contends that Apple's conduct is anticompetitive and violates state and federal antitrust law.

Psystar alleges that there are two relevant product markets: the Mac OS and Mac OS Capable Computer Hardware Systems—computer hardware capable of executing the Mac OS.  Within the Mac OS Capable Computer Hardware Systems market is a subsidiary market created, dominated, and maintained by Apple—the Apple-Labeled Computer Hardware Systems.

Apple is the exclusive manufacturer and/or licensor of the Mac OS.  Apple possesses monopoly power in the Mac OS market, which is distinct, unique, and not reasonably interchangeable with respect to any other operating systems.  Apple promotes this distinctness, uniqueness, and lack of interchangeability.  Market pricing and consumer behavior affirms this promotion.

In the broader computer hardware system marketplace, manufacturers construct entire computers that are marketed and sold to the consumer.  A number of companies dedicated to sourcing various components used by these manufacturers also exist.  But for the exclusionary conduct of

Apple, there is no compelling reason (technological or otherwise) that any of these computer hardware system manufacturers could not manufacture and sell computer hardware systems capable of hosting, executing, and running the Mac OS. These manufacturers constitute the Mac OS Capable Computer Hardware Systems market.

Apple is the only manufacturer of hardware systems operating the Mac OS—Apple-Labeled Computer Hardware Systems. Because of Apple's anticompetitive conduct, Apple has created a subsidiary market within the Mac OS Capable Computer Hardware Systems market—the Apple-Labeled Computer Hardware Systems market. Of this market, Apple is the only member and wields monopoly power.

Inelastic demand exists with respect to the Mac OS. A small but significant non-transitory increase in price will not result in a change in demand for the Mac OS. Apple has, in fact, stated that its customers would "rather delay [a more expensive Apple-Labeled Computer Hardware System] purchase than switch [to a different product]."

In order to protect its monopoly power in the Mac OS and Apple-Labeled Computer Hardware Systems market, Apple (through the EULA) has tied the Mac OS to Apple-Labeled Hardware Systems. The same EULA precludes customers or would be competitors from installing the Mac OS on any computer hardware system that is not an Apple-Labeled Computer Hardware System. Apple has also caused the Mac OS to malfunction upon recognizing computer hardware that is not an Apple-Labeled Computer Hardware System. Apple has also misused its copyrights to establish and maintain rights not otherwise reserved or intended under the Copyright Act.

Competition in the Mac OS Capable Computer Hardware System market is all but non-existent as a result of Apple's illicit tying of the Mac OS to Apple-Labeled Computer Hardware Systems. Apple has successfully eliminated competition and continues to ensure that no competition arises in the Mac OS Capable Computer Hardware System market with respect to the Mac OS and Apple-Labeled Computer Hardware Systems. Apple is, therefore, free to control and charge supra-competitive prices.

Factual Issues in Dispute

a. Whether Psystar has willfully reproduced, created derivative works from, distributed and/or

displayed Apple's copyrighted works and whether and to what extent Apple has been damaged by such acts.

b. Whether Psystar has induced others to reproduce, distribute and/or display Apple's copyrighted works and whether and to what extent Apple has been damaged by such acts.

c. Whether Psystar has installed, used and/or run Mac OS X software on non-Apple-labeled computers and/or enabled others to do so.

d. Whether Psystar has sold and/or distributed Mac OS X software without requiring that the user agree to the terms of the Software License Agreement.

e. Whether Psystar has sold and/or distributed Mac OS X software that has been modified.

f. Whether Psystar modified open source materials.

g. Whether Psystar has copied and/or installed a single copy of Mac OS X on Psystar Products.

h. The amount of damages Apple has suffered as a result of Psystar's alleged violation of the terms of the Software License Agreements for Mac OS X Leopard and Mac OS X Leopard Server.

i. Whether Apple's registered trademarks are famous.

j. Whether Psystar had authorization to use Apple's registered, unregistered and common law trademarks and trade dress.

k. Whether Psystar's alleged distribution, sale and/or running of the Psystar Products with a copy of Mac OS X (or a modified version thereof) and Apple's trademarks and trade dress is likely to cause confusion, mistake or deception among consumers as to the origin, sponsorship or approval of the software and computers and/or to cause confusion or mistakes as to any affiliation, connection or association between Apple and Psystar.

l. Whether Psystar's alleged distribution, sale and/or running of the Psystar Products with a copy of Mac OS X (or a modified version thereof) dilutes or is likely to dilute Apple's registered, unregistered and/or common law trademarks.

m. Whether and to what extent Apple has been damaged by Psystar's alleged use of Apple's registered, unregistered and/or common law trademarks and trade dress with the Psystar Products.

n. Whether Apple's trade dress in Mac OS X Leopard is non-functional.

o. The amount of profits Psystar has earned by virtue of allegedly infringing Apple's registered,

1 | unregistered and/or common law trademarks and trade dress.
2 | p.     Whether Psystar has willfully violated any of Apple's trademark rights.
3 | q.     The proper definition of the relevant markets and submarkets.
4 | r.     Whether Apple has monopoly power in one or more of the relevant markets or submarkets.
5 | s.     Whether Apple's alleged tying of the Mac OS to Apple-Labeled Computer Hardware Systems restrains competition.
7 | t.     Whether Apple's alleged conduct restrains competition.
8 | u.     Whether consumers of the Mac OS would purchase a computer hardware system other than an alleged Apple-Labeled Computer Hardware System but for the alleged anticompetitive conduct of Apple.

   3.   **Legal Issues**:  The Parties submit the following list of legal issues in dispute:

a.     Whether Psystar's alleged use, reproduction, creation of derivative works, distribution and/or display of Apple's copyrighted works constitutes direct and/or contributory copyright infringement under the federal Copyright Act, 17 U.S.C. §501 *et seq.*

b.     Whether Psystar's development, manufacture, distribution and/or sale of the Psystar Products with Mac OS X constitutes direct and/or contributory copyright infringement under the federal Copyright Act, 17 U.S.C. § 501 *et seq.*

c.     Whether Psystar's installation, use, running, sale and/or distribution of Mac OS X software on Psystar Products constitutes a breach of Apple's contracts.

d.     Whether Psystar's installation, use, distribution and/or sale of the Psystar Products with Mac OS X (or a modified version thereof) constitutes trademark and/or trade dress infringement under different provisions of the Lanham Act including 15 U.S.C. §§ 1114, 1125(a) and 1125(c), and/or common law.

e.     Whether Psystar's distribution and/or sale of the Psystar Products with Mac OS X violates California Business and Professions Code § 17200 *et seq.* or common law unfair competition laws.

f.     Whether Psystar has induced others to violate the terms of the Software License Agreements for Mac OS X Leopard and Mac OS X Leopard Server.

g.     Whether Psystar has engaged in fair use with respect to any Apple intellectual property.

h.  Whether any alleged Apple intellectual properties meet the legal standard for protection (e.g., copyrightable subject matter and non-functional trademarks).

i.  Whether Apple misused its copyrights.

j.  Whether the Apple EULA is enforceable.

k.  Whether Apple's alleged tying of the Mac OS to Apple-Labeled Computer Hardware Systems is per se anticompetitive conduct in violation of *inter alia* Section 1 of the Sherman Act.

l.  Whether Apple has misused its copyrights to further violations of the Sherman and Clayton Acts as well as the California Business and Professions Code, and at the common law.

m.  Whether Apple has specifically intended to and illegally maintained monopoly power in the alleged Apple-Labeled Computer Hardware Systems market.

n.  Whether Apple has excluded competitors from the alleged Mac OS Capable Computer Hardware Systems market in violation of *inter alia* the Clayton Act.

4.  **Motions:** With the exception of Apple's currently pending Motion to Dismiss Psystar's Counterclaims, there have been no other motions to date. The Parties anticipate that they may file dispositive motions, depending on the evidence that is produced during the discovery process.

5.  **Amendment and Pleadings:** The Parties have agreed to a deadline of January 19, 2009 to amend pleadings.

6.  **Evidence Preservation**

Apple's Statement: At Apple, individual employees are tasked with maintenance of their own files including hard copy documents, emails, voicemails and other electronically recorded materials. Apple has not implemented any programs that result in the automatic deletion of emails. Similarly Apple does not determine which voicemails are saved or deleted by an individual recipient. However, the voicemail system is set up to delete saved messages after ninety days. At the institution of this lawsuit, Apple identified a group of employees who could potentially have documents relevant to the issues reasonably evident in this action. Apple then provided those individuals with a document retention notice which included a request for the retention of any relevant documents, including but not limited to emails, voicemails and other electronically-recorded materials relating to the issues in this lawsuit. As a result of the counterclaims asserted by Psystar, Apple has also sent out a follow-up

retention notice asking for the retention of documents reasonably relevant to the antitrust and unfair competition claims asserted by Psystar. Apple will be working with Psystar to narrow the list of individuals from whom documents will be retrieved for purposes of this lawsuit.

<u>Psystar's Statement</u>. Counsel for Psystar has personally counseled the principals of Psystar as to the retention of documents and other information as they pertain to the issues in this lawsuit. A retention notice was subsequently issued to the principals of Psystar memorializing the same. Retention of documents includes but is not limited to electronic mail, physical documents and things, and other electronically-recorded materials.

7. **Disclosures:** The Parties have agreed to provide each other with initial disclosures on November 30, 2008.

8. **Discovery**: The Parties have met and conferred pursuant to Rule 26(f) regarding discovery issues and have agreed to the following:

(a) The Parties expect to stipulate to a protective order which will be submitted to the Court.

(b) Privilege logs in this case need only include the following information: (i) the identity of the author(s) and recipient(s) of a document; (ii) the date of the document; (iii) a description of the document sufficient to establish privilege; and (iv) the specific privilege that is being asserted.

(c) Neither party will request or be required to produce responsive voicemails and/or instant messages.

(d) The number of depositions which can be taken by each party in this case will be increased from the ten permitted by the Federal Rules of Civil Procedure to fifteen. The parties agree that these fifteen depositions per side will include third party depositions but exclude expert depositions.

(e) The number of interrogatories per party will be limited to twenty-five as discussed in the Federal Rules of Civil Procedure. The parties agree, however, that each party can propound one interrogatory asking for the factual basis for all affirmative defenses, including identification of knowledgeable witnesses and supporting documents, and that this interrogatory will only count as one of the twenty-five permitted by the Federal Rules of Civil Procedure despite its compound nature.

9. **Class Action:** This is not a class action.

10. **Related Cases:** The Parties are not aware of any related cases or proceedings pending

before another judge of this Court or before another court or administrative body.

11. **Relief**

Apple's Statement. Apple seeks both damages and injunctive relief in this case. Based on its copyright infringement claims, Apple will seek either actual damages it has suffered and/or any profits gained by Psystar as a result of Psystar's willful direct and/or contributory infringement of Apple's copyrighted works or the maximum statutory damages permitted by law. *See* 17 U.S.C. §§ 504(b)-(c). Apple will further seek its attorneys' fees under 17 U.S.C. § 505. Based on its trademark and trade dress claims, Apple will also seek the greater of (1) treble its actual damages or (2) Psystar's profits from the sale of the Psystar Products with Mac OS X. This being an exceptional case, Apple will also seek costs and attorneys' fees. Alternatively, Apple will seek the maximum statutory damages allowed under §1117(c). *See* 15 U.S.C. § 1117. Moreover, upon proving its copyright, trademark and/or unfair competition claims, Apple will seek injunctive relief. *See* 15 U.S.C. § 1116; 17 U.S.C. § 502 and Cal. Bus. & Prof. Code § 17203. Apple will also seek damages for Psystar's breach and induced breach of Apple's license agreements. Given that discovery is just beginning, Apple is unable to compute damages at this time.

Psystar's Statement. Psystar seeks actual damages, costs, fees, and declaratory relief in this case. Actual damages and trebling are permitted under 15 U.S.C §§ 1, 2, 14, and 15(a), the latter-most section also allowing for recovery of costs and attorneys' fees. Psystar seeks similar relief under its Cartwright Act, unfair competition, and common law claims. Psystar also seeks declaratory relief as to a finding that Apple's EULA and other business practices constitute an unlawful restraint on trade thereby invalidating all or a part of said EULA.

12. **Settlement and ADR:** On October 2, 2008, the Parties filed their stipulation agreeing to private mediation before a mutually agreed upon mediator from JAMS in San Francisco.

13. **Declination of Magistrate Judge:** The Parties have declined to have a Magistrate Judge preside over this case.

14. **Other References**: The Parties do not believe the case is suitable for reference to binding arbitration, a special master, or to the Judicial Panel on Multidistrict Litigation.

15. **Narrowing of Issues:** There is currently a motion to dismiss Psystar's antitrust and

unfair competition claims pending before the Court, which Apple believes will narrow some of the disputed issues in this case. Psystar has opposed said motion, which is currently calendared for hearing on November 6 concurrent with the Parties initial Case Management Conference. Otherwise, the Parties do not believe that the issues in dispute in this case can be narrowed at this time.

16. **Expedited Schedule:** The Parties do not believe that this type of case can be handled on an expedited basis with streamlined procedures.

17. **Scheduling:** The Parties propose the following discovery and court dates:

| | |
|---|---|
| Initial Disclosures: | November 30, 2008 |
| Last Day to Amend Pleadings: | January 19, 2009 |
| Last Day to Add Parties: | January 19, 2009 |
| Fact Discovery Cutoff: | June 26, 2009 |
| Expert Disclosures: | July 10, 2009 |
| Rebuttal Expert Disclosures: | July 24, 2009 |
| Reply Expert Disclosures: | July 31, 2009 |
| Expert Discovery Cutoff: | August 10, 2009 |
| Last Day to Hear Dispositive Motions: | September 24, 2009 |
| Pretrial Conference Date: | October 26, 2009 |
| Trial Date: | November 9, 2009 |

18. **Trial:** Both Parties have demanded a jury in this case and expect that the trial will last approximately 10 days.

19. **Disclosure of Non-party Interested Entities or Persons:** Both parties have filed "Certifications of Interested Entities or Persons" containing the following information:

Apple's Statement. The following persons (i) have a financial interest in the subject matter in controversy or in a party to the proceeding, or (ii) have a non-financial interest in that subject matter or in a party that could be substantially affected by the outcome of this proceeding. Specifically, the individuals listed are directors and executive officers of Apple who have a financial interest, as defined by 28 U.S.C. § 455(d)(4), in Apple: (a) Board of Directors: William Campbell; Millard

Drexler; Albert Gore Jr.; Steve Jobs; Andrea Jung; Arthur D. Levinson, Ph.D; Eric Schmidt, Ph.D; and Jerome B. York; and (b) Executive Officers: Steve Jobs; Timothy D. Cook; Daniel Cooperman; Peter Oppenheimer; Philip W. Schiller; Tony Fadell; Scott Forstall; Ronald B. Johnson; Robert Mansfield; Bertrand Serlet; and Sina Tamaddon. Apple notes that it has numerous employees who actively participate in its affairs but it has only identified its directors and executive officers in this disclosure.

<u>Psystar's Statement</u>. Rodolfo Pedraza and Roberto Pedraza have a financial interest in the subject matter in controversy or in a party to the proceeding and/or a non-financial interest in the subject matter or in a party that could be substantially affected by the outcome of this proceeding. Psystar has numerous employees who actively participate in the day-to-day operations of Psystar and who might be affected by the outcome of the litigation but has listed only the co-founders and shareholders of the corporation.

DATED: October 30, 2008

Respectfully submitted,

TOWNSEND AND TOWNSEND AND CREW LLP


By: _____*/s/ James G. Gilliland, Jr.*_____
    JAMES G. GILLILAND, JR.
    MEHRNAZ BOROUMAND SMITH
    MEGAN CHUNG
    JEB OBLAK

Attorneys for Plaintiff and Counterdefendant
APPLE INC.


DATED: October 30, 2008

CARR & FERRELL LLP


By: _____*/s/ Colby B. Springer*_____
    ROBERT J. YORIO
    COLBY B. SPRINGER
    CHRISTINE S. WATSON
    CHRISTOPHER P. GREWE

Attorneys for Defendant/Counterclaimant
PSYSTAR CORPORATION

61449996 v2

**CASE MANAGEMENT ORDER**

The Joint Case Management Statement and Proposed Order is hereby adopted by the Court as the Case Management Order for the case, and the parties are ordered to comply with this Order.

In addition, the Court makes the following orders:

DATED: _____ _____
William Alsup
United States District Judge

# GENERAL ORDER ATTESTATION

I, James G. Gilliland, Jr., am the ECF user whose ID and password are being used to file this **JOINT CASE MANAGEMENT STATEMENT AND [PROPOSED] CASE MANAGEMENT ORDER.** In compliance with General Order 45,X.B., I hereby attest that Colby B. Springer has concurred in this filing.

*/s/ James G. Gilliland, Jr.*
JAMES G. GILLILAND, JR.