TOWNSEND AND TOWNSEND AND CREW LLP
JAMES G. GILLILAND, JR. (State Bar No. 107988)
MEHRNAZ BOROUMAND SMITH (State Bar No. 197271)
MEGAN M. CHUNG (State Bar No. 232044)
JEB OBLAK (State Bar No. 241384)
Two Embarcadero Center, 8th Floor
San Francisco, California 94111
Telephone: (415) 576-0200
Facsimile: (415) 576-0300
Email: jggilliland@townsend.com,
mboroumand@townsend.com,
mmchung@townsend.com,
jboblak@townsend.com

Attorneys for Plaintiff,
APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| APPLE INC., a California corporation, | Case No.    CV 08-03251 WHA |
| Plaintiff, | **AMENDED COMPLAINT FOR COPYRIGHT INFRINGEMENT, INDUCED COPYRIGHT INFRINGEMENT, VIOLATION OF THE DIGITAL MILLENNIUM COPYRIGHT ACT, BREACH OF CONTRACT, INDUCED BREACH OF CONTRACT, TRADEMARK INFRINGEMENT, TRADE DRESS INFRINGEMENT AND UNFAIR COMPETITION** |
| v. | |
| PSYSTAR CORPORATION, a Florida corporation, and DOES 1-10, inclusive, | |
| Defendants. | |
| | **JURY TRIAL REQUESTED** |

Plaintiff Apple Inc. ("Apple") hereby alleges as follows:

## BACKGROUND ALLEGATIONS

1.       Apple is a California corporation with its headquarters and principal place of business at 1 Infinite Loop, Cupertino, California. Apple makes and sells well-known computer hardware, software and consumer products and services including the Macintosh® computer, the iPod® music player and the iPhone™. Founded in 1976, Apple has been consistently ranked as one of the most innovative companies in the world. Apple currently employs approximately 28,000 people

Dockets.Justia.com

worldwide, owns and operates over 200 retail stores, and sells its products online as well. In 2008, *Fortune Magazine* named Apple "America's Most Admired Company."

2.      A pioneer of the personal computer revolution, Apple launched its Macintosh line of computers in 1984. Apple's Macintosh computers (or "Mac") introduced such novel innovations as the mouse, computer icons and the graphical user interface. Apple's "perennially praised" Mac® line of computers includes the Mac Pro®, iMac®, Mac® mini, MacBook®, MacBook Pro and MacBook Air®. Since 2001, Apple has sold more than 29 million Macintosh computers.

3.      Apple's Macintosh computers are famous for their reliability, ease-of-use and innovative industrial design. Apple's development teams have seamlessly integrated the hardware and software features of Macintosh computers such that the use of the computers is intuitive, efficient and pleasurable. Moreover, the unified, integrated Mac system is simpler to service, update and maintain. Indeed, for eight consecutive years *Consumer Reports* has ranked Apple's technical support for its customers best in the nation for both desktop and laptop computers, surpassing Dell, Hewlett-Packard, Sony, Toshiba, Gateway and Lenovo.

4.      In 2001, Apple launched the tenth generation of its operating system - Mac OS X. Mac OS X revolutionized operating system architecture, adding extraordinary capabilities, speed and stability. Apple's most recent version of Mac OS X, version 10.5, known as "Leopard®," has been described by reviewers as "visually stunning," "powerful, polished and carefully conceived," and "elegant." Other reviewers have said the "grace of Leopard's interface elements makes productivity more pleasurable with a Mac," all the result "of years of hard, diligent work by the development teams at Apple."

5.      The Mac OS X user interface combines the use of color, transparency and animation together with the overall arrangement and set up of various icons in a unique and creative manner. In addition, the Finder toolbar containing the famous Apple mark is combined with a distinctive three-dimensional applications bar (or "dock") on which various icons reside. The distinctive nonfunctional combination of elements that makes up the Mac OS X user interface is well known to consumers and has become associated with Apple and Mac OS X Leopard. This combination of elements shall be referred to hereafter as "Apple's Trade Dress."

6.      Mac OS X, including the Leopard® version, has been the subject of numerous articles in general circulation newspapers, magazines and online publications, as well as radio, television and Internet broadcasts.  The product has received significant acclaim and in recent years sales of Mac computers have surged, growing at a faster pace than the personal computer market in general.

7.      Apple also manufactures and sells the Xserve® rack-mount server for use in businesses needing to connect multiple computers to a single server.  The Xserve uses Mac OS X Leopard Server as its operating system software.  Mac OS X Leopard Server has also been the subject of numerous articles, publications and media coverage both on television and radio and on the Internet.

8.      The Apple brand, including its registered trademarks Apple® and Mac®, is one of the most famous brands in the world.  Since inception, Apple has continuously and extensively promoted, offered and sold its Mac computers, and its related goods and services, in interstate commerce under the various Apple and Mac trademarks.  Since 1994, Apple has spent more than $3 billion to promote its brand, including the Apple and Mac trademarks.  Apple's brand, including its various marks and distinctive trade dress, have become synonymous with high quality, innovative, elegant and user-friendly consumer electronics products.  Indeed, among many other accolades over the years, for each of the past three years *BusinessWeek Magazine* named Apple the "World's Most Innovative Company."  The Apple brand and trademarks consistently are ranked by independent research organizations as being among the fifty most valuable brands on earth.

9.      As a result of Apple's continuous and extensive use and promotion, the consuming public nationwide understands that Apple's various marks and distinctive trade dress identify Apple's goods and services, and associates the marks with Apple exclusively.  Because of the consistent quality of Apple's goods and services marketed under and in association with Apple's trademarks and distinctive trade dress, Apple has established considerable good will and reputation with respect to its goods and services.

10.     Apple's use of its Apple, Mac, Leopard, Xserve and SuperDrive marks has been exclusive and continuous in the computer industry since long prior to the date of Defendant's first infringing acts described below.  Furthermore, the Apple marks and distinctive trade dress became famous among the general consuming public long before the date of Defendant's first infringing use.

1  The various Apple marks and distinctive trade dress are well known and are among the most important
2  assets of Apple.

3         11.    On information and belief, Defendant Psystar Corporation ("Psystar" or "Defendant") is
4  a corporation organized and existing under the laws of the State of Florida with its principal place of
5  business at 10475 NW 28th Street, Doral, Florida 33172.

6         12.    In April, 2008, without authorization from Apple, and in violation of the terms of the
7  Software License Agreement governing the use of Mac OS X software and Apple's intellectual
8  property, Psystar began selling in commerce a computer named the OpenMac which apparently runs a
9  modified, unauthorized, version of the Leopard operating system as well as modified and unauthorized
10  versions of other Apple software and firmware.  Thereafter Psystar changed the name of its product to
11  Open Computer, but continued to sell it with the Leopard operating system, without authorization
12  from Apple.  Psystar also began selling another computer model, the OpenPro, seemingly named after
13  Apple's Mac Pro®, without authorization from Apple, and in violation of the terms of the Software
14  License Agreement governing the use of Mac OS X software and Apple's intellectual property.  Like
15  the Open Computer, the OpenPro apparently runs a modified, unauthorized, version of the Leopard
16  operating system as well as modified and unauthorized versions of other Apple software and
17  firmware.  Psystar sells its computers online and ships them throughout the United States, including
18  into the Northern District of California.  Psystar's Chief Executive Officer has been quoted as saying
19  that Psystar has sold "thousands" of these computers.  In addition, without Apple's permission or
20  consent, Psystar makes copies of, and offers to customers for download from its website,
21  www.psystar.com, "updates" to the Leopard software that are either direct copies of Apple-generated
22  updates and/or unauthorized modified versions of software updates from Apple.

23         13.    In June, 2008, Psystar began selling in commerce rack-mount servers called the
24  OpenServ 1100 and OpenServ 2400.  Subsequently, in October, 2008, Psystar added yet another
25  server, the OpenServ 800, to its line of products and began selling it in commerce.  Without
26  authorization from Apple, and in violation of the terms of the Software License Agreement governing
27  the use of the Mac OS X Leopard Server software and Apple's intellectual property, Psystar has
28  offered for sale and, on information and belief, sold OpenServ 800, OpenServ 1100 and OpenServ

1    2400 servers utilizing the Mac OS X Leopard Server software.

2          14.     In August, 2008, without authorization from Apple, Psystar began distributing a

3    "restore disk" which allows for the installation of Mac OS X, in violation of the terms of the Software

4    License Agreement governing the use of Mac OS X software and Apple's intellectual property.  On

5    information and belief, without authorization from Apple, Psystar intentionally provides specific

6    instructions to its customers that allow customers to install Mac OS X software on non-Apple-labeled

7    hardware, in violation of the terms of the Software License Agreement.  On information and belief,

8    Psystar also provides technical support and assists its customers to install Mac OS X software in

9    violation of the terms of the Software License Agreement.

10          15.     On information and belief, in fall 2008, Psystar worked to develop a laptop product that

11    runs Mac OS X and in October, 2008, Psystar announced that it is planning to sell in commerce

12    additional computers, servers, laptops, and/or hard drives that are preinstalled with or which will run a

13    modified, unauthorized, version of Mac OS X operating system, including but not limited to a product

14    referred to on Psystar's website as the "mobile Open Computer."

15          16.     Online commentators have reported that Psystar's Open Computer is "missing stuff like

16    iLife, Bluetooth, an IR receiver, DVD burning and the ability to update your computer," is "LOUD,

17    Crazy Loud," it "breaks the OS' automatic updates," and that "video was DOA right out of the box.

18    No signal going to monitor.  Boot up is moot point as there is nothing to see."  For the OpenPro,

19    online commentators have stated that the OpenPro's "internal [hardware] design is only average

20    compared with that of a Mac Pro," and it has been reported that Psystar failed to properly connect the

21    graphics card.  Of Psystar itself reviewers have written, "they have no quality control,"  "lousy tech

22    support," and "All I want to do is return the computer and get a refund."  Likewise, it has been

23    reported that Psystar has repeatedly changed locations, that its office could not be found, and that its

24    first on-line payment processor terminated Psystar's account.

25          17.     As alleged more fully below, by misappropriating Apple's proprietary software and

26    intellectual property for its own use, Psystar's actions harm consumers by selling to them a poor

27    product that is advertised and promoted in a manner that falsely and unfairly implies an affiliation

28    with Apple.  Psystar's actions also have caused, and are causing, harm to Apple and constitute a

misuse of Apple's intellectual property. To prevent this continued unfair and unlawful exploitation of Apple's proprietary technology, and to avoid further consumer confusion and injury, Apple seeks an injunction against further misappropriation and infringement of its intellectual property, an award of damages, treble damages and its attorneys' fees and costs of suit.

18.    On information and belief, persons other than Psystar are involved in Psystar's unlawful and improper activities described in this Amended Complaint. The true names or capacities, whether individual, corporate, or otherwise, of these persons are unknown to Apple. Consequently they are referred to herein as John Does 1 through 10 (collectively the "John Doe Defendants"). On information and belief, the John Doe Defendants are various individuals and/or corporations who have infringed Apple's intellectual property rights, breached or induced the breach of Apple's license agreements and violated state and common law unfair competition laws. Apple will seek leave to amend this complaint to show the unknown John Doe Defendants' true names and capacities when they are ascertained.

## JURISDICTION AND VENUE

19.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. sections 1331, 1332, and 1338 because this action arises under the copyright and trademark laws of the United States, there is complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000.

20.    Venue is proper in this judicial district pursuant to 28 U.S.C. section 1391 because Psystar has done business in this judicial district, has committed acts of copyright and trademark infringement in this district, has breached a contract with a substantial impact in this district, has engaged in unfair competition in this district, and continues to commit such acts in this district. Because this is an Intellectual Property case, it is not subject to the intra-District venue provisions of Northern District of California Local Rule 3-2(c).

## GENERAL ALLEGATIONS

21.    Apple licenses the use of its Macintosh operating system ("Mac OS") software for use only on Apple-labeled hardware. Indeed, an original version of the Mac OS is available only with the purchase of a Macintosh computer. Upgrades to the Mac OS may be licensed separately, but the

1  terms of the license prohibit use of the Mac OS or its upgrades on non-Apple hardware.

2    22.    The Software License Agreement for Mac OS X Leopard (and Mac OS X Leopard

3  Server) ("License Agreement") provided with each version of Mac OS X Leopard and Mac OS X

4  Leopard Server are attached hereto as Exhibits 1 and 2, and are incorporated herein by reference.  The

5  Mac OS X Leopard License Agreement specifies *inter alia*,:

> "1.  **General**.  The software (including Boot ROM Code)… accompanying this License whether preinstalled on Apple-labeled hardware, on disk, in read only memory, or any other media or in any other form (collectively, the "Apple Software") are licensed, not sold, to you by Apple Inc. ("Apple") for use only under the terms of this License, and Apple reserves all rights not expressly granted to you….

> 2.  **Permitted License Uses and Restrictions**.

> A.  <u>Single Use</u>.  This license allows you to install, use and run one (1) copy of the Apple Software on a single Apple-labeled computer at a time. You agree not to install, use, or run the Apple Software on any non-Apple-labeled computer or enable another to do so.
>                          *     *     *

> C.  You may make one copy of the Apple Software (excluding the Boot ROM code and other Apple firmware that is embedded or otherwise contained in Apple-labeled hardware) in machine-readable form for backup purposes only….Apple Boot ROM code and firmware is provided only for use on Apple-labeled hardware and you may not copy, modify or redistribute the Apple Boot ROM code or firmware, or any portions thereof….

> D.  Certain components of the Apple Software, and third party open source programs included with the Apple Software, have been or may be made available by Apple on its Open Source web site (http://www.opensource.apple.com/) (collectively the "Open-Sourced Components"). You may modify or replace only these Open-Sourced Components; provided that: (i) the resultant modified Apple Software is used, in place of the unmodified Apple Software, on a single Apple labeled computer; and (ii) you otherwise comply with the terms of this License and any applicable licensing terms governing use of the Open-Sourced Components.
>                          *     *     *

> F.  Except as and only to the extent permitted by applicable licensing terms governing use of the Open-Sourced Components, or by applicable law, you may not copy, decompile, reverse engineer, disassemble, modify, or create derivative works of the Apple Software or any part thereof.

>                          *     *     *

> **3. Transfer.** You may not rent, lease, lend, redistribute or sublicense the Apple Software. Subject to the restrictions set forth below, you may,

however, make a one-time permanent transfer of all of your license rights to the Apple Software (in its original form as provided by Apple) to another party, provided that: (a) the transfer must include all of the Apple Software, including all its component parts (excluding Apple Boot ROM code and firmware), original media, printed materials and this License; (b) you do not retain any copies of the Apple Software, full or partial, including copies stored on a computer or other storage device; and (c) the party receiving the Apple Software reads and agrees to accept the terms and conditions of this License. You may not rent, lease, lend, redistribute, sublicense or transfer any Apple Software that has been modified or replaced under Section 2D above….

Updates: If an Apple Software update completely replaces (full install) a previously licensed version of the Apple Software, you may not use both versions of the Apple Software at the same time nor may you transfer them separately.

\* \* \*

5. **Termination**. This License is effective until terminated. Your rights under this License will terminate automatically without notice from Apple if you fail to comply with any term(s) of this License. Upon the termination of this License, you shall cease all use of the Apple Software and destroy all copies, full or partial, of the Apple Software."

The Mac OS X Leopard Server License Agreement includes essentially the same terms.

23. Psystar claims the "Open Computer is a PC that works just like a Mac with Apple's latest operating system OS X 10.5 a.k.a. Leopard." Psystar claims its product "is ready to run out of the box when you purchase it with Leopard included. If you buy Leopard with your Open Computer we'll install it for free." Psystar also says "The Open Computer <u>can now be purchased with Leopard included and pre-installed</u>" (emphasis in original), the OpenPro is ready to run "right out of the box" with "Mac OS X Leopard 10.5 preinstalled," and that OpenServ computers run "Mac OS X Leopard Server."

24. Apple has never authorized Psystar to install, use, or sell the Mac OS software on any non-Apple-labeled hardware.

### FIRST CLAIM FOR RELIEF
#### (Copyright Infringement)
#### (17 U.S.C. Sections 501 *et seq.*)

25. Plaintiff incorporates herein by reference each and every allegation in the preceding paragraphs.

26.     Mac OS, Mac OS X, Mac OS X version 10.5, and Mac OS X Server, individual files constituting components of Mac OS, Mac OS X, Mac OS X version 10.5, and Mac OS X Server, as well as various files constituting components of other Apple software and firmware found on Apple-labeled computers are each original works of authorship created by Apple constituting copyrightable subject matter (hereafter, "the Copyrighted Works").  Apple is the owner of, among others, United States copyright registrations TX4-669-971 (Mac OS); TX5-401-457 (Mac OS X); TX6-849-489 (Mac OS X Leopard Version 10.5); TX4-991-736 (Mac OS X Server); and TX6-849-684 (Mac OS X Server Version 10.5 Leopard).  The effective date of Apple's copyright registrations predates the commencement of infringement by Psystar.

27.     Defendant has created derivative works from, reproduced, distributed and/or displayed the Copyrighted Works in violation of Apple's exclusive rights under the Copyright Act.  Apple has not licensed or otherwise authorized Defendant's creation of derivative works from, reproduction, distribution or display of the Copyrighted Works.

28.     Apple is informed and believes, and on that basis alleges, that Defendant's infringement of Apple's copyrights in the Copyrighted Works is, and continues to be, intentional, willful and in conscious disregard of Apple's rights.

29.     Apple is informed and believes, and on that basis alleges, that Defendant has realized profit by virtue of its infringement of Apple's copyrights.

30.     Apple has sustained economic damage as a result of Defendant's infringement of Apple's copyrights in an amount to be proven at trial.

31.     Apple is entitled to recover the actual damages it has suffered and/or any profits gained by Defendant that are attributable to its acts of copyright infringement pursuant to 17 U.S.C. § 504(b).  Alternatively, Apple is entitled to the maximum statutory damages allowed under 17 U.S.C. § 504(c) based on Defendant's willful acts of copyright infringement.  Apple will make its election at the appropriate time before final judgment is rendered.

32.     Pursuant to 17 U.S.C. § 502, Apple is entitled to an injunction against Defendant's continuing reproduction, distribution and display of Apple's copyrighted materials.

///

33.     Apple is further entitled to recover its full costs and reasonable attorneys' fees pursuant to 17 U.S.C. § 505.

## SECOND CLAIM FOR RELIEF
### (Contributory and Induced Copyright Infringement)
### (17 U.S.C. § 501, *et seq.*)

34.     Plaintiff incorporates herein by reference each and every allegation in the preceding paragraphs.

35.     Defendant is aware that its actions as described above infringed and continue to infringe Apple's copyrights and exclusive rights to create derivative works from, reproduce, display and distribute Apple's copyrighted materials.

36.     By offering for sale copies of Apple software to actual and potential purchasers for use on non-Apple-labeled computers, and by providing services to install, update, and/or modify Apple software to cause it to operate on non-Apple-labeled computers, Defendant has induced, caused or materially contributed to the infringing conduct of purchasers.

37.     Apple is informed and believes, and on that basis alleges, that Defendant's inducement of infringement of Apple's copyrights in the Copyrighted Works is, and continues to be, intentional, willful and in conscious disregard of Apple's rights.

38.     Apple is informed and believes, and on that basis alleges, that Defendant has realized profit by virtue of its inducement of infringement of Apple's copyrights.

39.     Apple has sustained economic damage as a result of Defendant's inducement of infringement of Apple's copyrights in an amount to be proven at trial.

40.     Apple is entitled to recover the actual damages it has suffered and/or any profits gained by Defendant that are attributable to its acts of copyright infringement pursuant to 17 U.S.C. § 504(b). Alternatively, Apple is entitled to the maximum statutory damages allowed under 17 U.S.C. § 504(c) based on Defendant's willful acts of copyright infringement.  Apple will make its election at the appropriate time before final judgment is rendered.

41.     Pursuant to 17 U.S.C. § 502, Apple is entitled to an injunction against Defendant's continuing reproduction, distribution and display of Apple's copyrighted materials.

42.     Apple is further entitled to recover its full costs and reasonable attorneys' fees pursuant to 17 U.S.C. § 505.

### THIRD CLAIM FOR RELIEF
**(Violation of Digital Millennium Copyright Act)**
**(17 U.S.C. § 1201, *et seq.*)**

43.     Plaintiff incorporates herein by reference each and every allegation in the preceding paragraphs.

44.     Apple employs technological protection measures that effectively control access to Apple's Copyrighted Works.

45.     Defendant has illegally circumvented Apple's technological copyright protection measures that control access to Apple's Copyrighted Works.

46.     Defendant has admitted that Apple's Mac OS X normally "will not operate on anything other than Apple-labeled computer hardware" but that Defendant has "developed [its] own code that allows it to operate on a non-Apple-labeled computer system" and that such code overrides or gets around Apple's embedded codes.

47.     Apple is informed and believes, and on that basis alleges, that Defendant's "code" is used to circumvent a technological protection measure since it avoids, bypasses, removes, descrambles, decrypts, deactivates, or impairs a technological protection measure without Apple's authority for the purpose of gaining unauthorized access to Apple's Copyrighted Works.

48.     Apple is informed and believes, and on that basis alleges, that Defendant has manufactured, imported, offered to the public, provided or otherwise trafficked a product, device, component, technology, software, or "code" ("the Circumvention Devices") that are primarily designed or produced for the purpose of either circumventing Apple's technological protection measures that effectively control access to Copyrighted Works, or allowing third parties to access Apple's Copyrighted Works without authorization.

49.     Apple is informed and believes that that the Circumvention Devices have only limited commercially significant purpose or use other than to circumvent a technological protection measure that effectively controls access to Copyrighted Works, or are marketed by Defendant for use in

circumventing a technological protection measure that effectively controls access to Copyrighted Works.

50.     Apple is informed and believes, and on that basis alleges, that Defendant has realized profit by virtue of its circumvention of Apple's technological protection measure and trafficking in circumvention devices.

51.     Apple has sustained economic damage as a result of Defendant's circumvention of technological protection measures and trafficking in the Circumvention Devices in an amount to be proven at trial.

52.     Apple is entitled to recover the actual damages it has suffered and/or any profits gained by Defendant that are attributable to its circumvention of access controls and trafficking in the Circumvention Devices pursuant to 17 U.S.C. § 1203(c)(1).  Alternatively, Apple is entitled to the maximum statutory damages allowed under 17 U.S.C. § 1203(c)(2).  Apple will make its election at the appropriate time before final judgment is rendered.

53.     Pursuant to 17 U.S.C. § 1203(b), Apple is entitled to an injunction against Defendant's continuing circumvention of access controls and trafficking in the Circumvention Devices.

54.     Apple is further entitled to recover its full costs and reasonable attorneys' fees pursuant to 17 U.S.C. § 1203(b).

**FOURTH CLAIM FOR RELIEF**
**(Breach of Contract)**

55.     Plaintiff incorporates herein by reference each and every allegation in the preceding paragraphs.

56.     Apple is informed and believes, and on that basis alleges, that Psystar has acquired Mac OS X version 10.5 software, that Psystar opened the box in which the software disk and license were packaged, opened the seal on the shrink-wrapped software disk, and thereafter installed the Leopard operating system and/or Leopard Server software on computers.  By so doing Psystar accepted the terms and conditions of the applicable License Agreement.

57.     Psystar breached the License Agreement(s) by, *inter alia*:

///

A.    Installing, using and running Mac OS X software on non-Apple-labeled computers;

B.    Enabling others to install, use or run Mac OS X software on non-Apple-labeled computers;

C.    Selling and/or distributing Mac OS X software without requiring that the transferees agree to the terms of the License Agreement;

D.    Selling and/or distributing Mac OS X software that has been modified; and

E.    Copying and installing a single copy of Mac OS X on more than a single computer at a time;

F.    Copying, modifying and/or distributing original or modified Apple Boot ROM code or firmware, or portions thereof;

G.    Redistributing Mac OS X software in a form in which the software or portions of it have been modified or replaced;

H.    Transferring copies of Mac OS X and updates thereto separately;

I.    Continuing to use and failing to destroy all copies, full or partial, of the software, after termination of the Software Licenses Agreement for Mac OS X upon automatic termination without notice as a result of the breaches described in A-H above.

58.    On information and belief, Apple alleges that Psystar has engaged in other and further actions that violate the License Agreement.

59.    As a direct and proximate cause of Psystar's breach of the License Agreement Apple has suffered economic injury and damages in an amount to be proven at trial in excess of $75,000.

**FIFTH CLAIM FOR RELIEF**
**(Inducing Breach of Contract)**

60.    Plaintiff incorporates herein by reference each and every allegation in the preceding paragraphs.

61.    The owners and managers of Psystar have admitted in public statements their knowledge of the existence of the License Agreement governing the use of Mac OS X software and of its terms and conditions.

62.     Apple is informed and believes, and on that basis alleges, that notwithstanding its knowledge of the existence and terms of the License Agreement, Psystar has advised, encouraged and assisted others to breach the License Agreement by, among other things, encouraging those consumers to acquire Mac OS X software and then assisting them to install, use and run it on non-Apple-labeled computers.  In so doing Psystar has unlawfully induced breach of the License Agreement by others.

63.     As a direct and proximate result of Psystar's actions to induce others to breach the License Agreement, Apple has suffered economic injury and damages in an amount to be proven at trial in excess of $75,000.  Apple further seeks punitive damages and injunctive relief as a result of Psystar's inducement of others to breach Apple's License Agreement.

**SIXTH CLAIM FOR RELIEF**
**(Trademark Infringement)**
**(15 U.S.C. § 1114)**

64.     Plaintiff incorporates herein by reference each and every allegation in the preceding paragraphs.

65.     Apple owns registered trademarks pertaining to the Mac computer, server and Leopard software (the "Infringed Marks") including but not limited to: Apple® (U.S. Reg. No. 1078312),  the Apple Logo® (U.S. Reg. Nos.1114431 and 2715578), Mac® (U.S. Reg. No.  1964391), the  Mac Logo® (U.S. Reg. No. 1931078), Mac OS® (U.S. Reg. No. 2000282), Leopard® (U.S. Reg. No. 3386175), XServe® (U.S. Reg. No. 2697680) and SuperDrive® (U.S. Reg. No. 3217368), copies of which are attached hereto as Exhibit 3.

66.     Apple never consented to Psystar's use of Apple's Infringed Marks.

67.     Prior to Psystar's first use of the Infringed Marks, Psystar was aware of Apple's business and had either actual notice and knowledge, or constructive notice of Apple's ownership and registrations of the Infringed Marks.

68.     Defendant's unauthorized use of Apple's trademarks is likely, if not certain, to deceive or to cause confusion or mistake among consumers as to the origin, sponsorship or approval of the software and computers and/or to cause confusion or mistake as to any affiliation, connection or association between Apple and Psystar, in violation of 15 U.S.C. §§ 1114(a).

69.     Apple is informed and believes, and on that basis alleges that Psystar's infringement of

Apple's trademarks has been and continues to be intentional, willful and without regard to Apple's trademark rights.

70.     Apple is informed and believes and on that basis alleges that Psystar has gained profits by virtue of its infringement of Apple's trademarks.

71.     Apple also has sustained damages as a direct and proximate result of Psystar's infringement of Apple's trademarks in an amount to be proven at trial.

72.     Apple will suffer and is suffering irreparable harm from Psystar's infringement of the Apple trademarks insofar as Apple's invaluable good will is being eroded by Defendant's continuing infringement. Apple has no adequate remedy at law to compensate it for the loss of business reputation, customers, market position, confusion of potential customers and good will flowing from Psystar's infringing activities. Pursuant to 15 U.S.C. § 1116, Apple is entitled to an injunction against Defendant's continuing infringement of Apple's trademarks. Unless enjoined, Defendant will continue its infringing conduct.

73.     Because Psystar's actions have been committed with intent to damage Apple and to confuse and deceive the public, Apple is entitled to treble its actual damages or Defendant's profits, whichever is greater, and to an award of costs and, this being an exceptional case, reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a) and 1117(b). Alternatively, Apple is entitled to the maximum statutory damages allowed under 15 U.S.C. § 1117(c). Apple will make its election at the appropriate time before final judgment.

### SEVENTH CLAIM FOR RELIEF
**(Trademark Infringement)**
**(15 U.S.C. § 1125(a))**

74.     Plaintiff incorporates herein by reference each and every allegation of the preceding paragraphs.

75.     Through Plaintiff's use in interstate commerce, Apple also owns common law trademark rights throughout the United States in unregistered trademarks and other source identifiers in and in connection with the Mac and its OS X Leopard software.

76.     Apple never consented to Psystar's use of Apple's various marks or its distinctive trade dress.

77.     Apple is informed and believes, and on that basis alleges that Defendant chose to use the name Open Mac, Apple's various other trademarks and its distinctive trade dress, to cause confusion or mistake, or to deceive the public as to the origin, sponsorship, association or approval of the goods and services of Defendant and/or to falsely imply an association with Apple.

78.     Defendant's unauthorized use of Apple's trademarks and its distinctive trade dress is likely, if not certain, to cause confusion or to deceive customers as to the affiliation, connection or association of Psystar with Apple.

79.     Defendant's unauthorized use of the Apple's various trademarks and its distinctive trade dress is also likely, if not certain, to cause confusion or to deceive customers as to the origin, sponsorship, association or approval of the goods and services of the Defendant.

80.     Defendant's unauthorized use of Apple's various trademarks and its distinctive trade dress also facilitates the acceptance of Defendant's computers and related services not based on the quality of the goods and services provided by Defendant, but on the association that the public is likely to make with Apple and the reputation for outstanding quality and goodwill associated with Apple's goods and services.

81.     Defendant's conduct deprives Apple of the ability to control the quality of the goods and services marketed under the Infringed Marks and Apple's unregistered common law trademarks and, instead, places Apple's valuable reputation and goodwill into the hands of Defendant, over which Apple has no control.

82.     Apple is informed and believes, and on that basis alleges, that Psystar's infringement of Apple's trademarks has been and continues to be intentional, willful and without regard to Apple's trademark rights.

83.     Apple is informed and believes, and on that basis alleges, that Psystar has gained profits by virtue of its infringement of Apple's trademarks.

84.     Apple also has sustained damages as a direct and proximate result of Psystar's infringement of Apple's trademarks in an amount to be proven at trial.

85.     Apple will suffer and is suffering irreparable harm from Psystar's infringement of the Apple trademarks insofar as Apple's invaluable good will is being eroded by Defendant's continuing

1   infringement.  Apple has no adequate remedy at law to compensate it for the loss of business

2   reputation, customers, market position, confusion of potential customers and good will flowing from

3   Psystar's infringing activities.  Pursuant to 15 U.S.C. § 1116, Apple is entitled to an injunction against

4   Defendant's continuing infringement of Apple's trademarks.  Unless enjoined, Defendant will continue

5   its infringing conduct.

6           86.     Because Psystar's actions have been committed with intent to damage Apple and to

7   confuse and deceive the public, Apple is entitled to treble its actual damages or Defendant's profits,

8   whichever is greater, and to an award of costs and, this being an exceptional case, reasonable

9   attorneys' fees pursuant to 15 U.S.C. § 1117(a) and 1117(b).  Alternatively, Apple is entitled to the

10  maximum statutory damages allowed under 15 U.S.C. § 1117(c).  Apple will make its election at the

11  appropriate time before final judgment.

**EIGHTH CLAIM FOR RELIEF**
**(Trade Dress Infringement)**
**(15 U.S.C. § 1125(a))**

14          87.     Plaintiff incorporates herein by reference each and every allegation of the preceding

15  paragraphs.

16          88.     Apple is the owner of common law rights throughout the United States in Apple's

17  Trade Dress through their use and promotion in interstate commerce.

18          89.     Apple's Trade Dress has been prominently displayed in the Mac OS X Leopard, is well-

19  known among consumers and has come to be associated exclusively with Apple and the Leopard

20  version of the Mac OS X.

21          90.     Apple's Trade Dress has become distinctive of Apple's Mac OS X Leopard operating

22  system, and distinguishes Apple's goods and services from those offered by others.

23          91.     Apple's Trade Dress was distinctive long before Defendant began offering its product

24  for sale.

25          92.     Apple's Trade Dress is non-functional.

26          93.     Defendant's unauthorized use, sale and distribution of goods displaying Apple's Trade

27  Dress is likely to cause confusion, to cause mistake, or to deceive as to the source of goods and

28  services provided by Defendant, or as to affiliation, connection, association, sponsorship, or approval

1    of such goods and services.

2    94.    Defendant's unauthorized use, sale and distribution of good displaying Apple's Trade

3    Dress constitutes trade dress infringement in violation of Section 43(a) of the Lanham Act, 15 U.S.C.

4    § 1125(a).

5    95.    Apple is informed and believes, and on that basis alleges, that Psystar's infringement of

6    Apple's Trade Dress has been and continues to be intentional, willful and without regard to Apple's

7    trademark rights.

8    96.    Apple is informed and believes, and on that basis alleges, that Psystar has gained

9    profits by virtue of its infringement of Apple's Trade Dress.

10   97.    Apple also has sustained damages as a direct and proximate result of Psystar's

11   infringement of Apple's Trade Dress in an amount to be proven at trial.

12   98.    Pursuant to 15 U.S.C. § 1116, Apple is entitled to an injunction against Defendant's

13   continuing infringement of Apple's trademarks.  Unless enjoined, Defendant will continue its

14   infringing conduct.

15   99.    Because Psystar's actions have been committed with intent to damage Apple and to

16   confuse and deceive the public, Apple is entitled to treble its actual damages or Defendant's profits,

17   whichever is greater, and to an award of costs and, this being an exceptional case, reasonable

18   attorneys' fees pursuant to 15 U.S.C. § 1117(a) and 1117(b).  Alternatively, Apple is entitled to the

19   maximum statutory damages allowed under 15 U.S.C. § 1117(c).  Apple will make its election at the

20   appropriate time before final judgment.

21                              **NINTH CLAIM FOR RELIEF**
                                    **(Trademark Dilution)**
22                                 **(15 U.S.C. § 1125(c))**

23   100.   Plaintiff incorporates herein by reference each and every allegation of the preceding

24   paragraphs.

25   101.   Apple possesses exclusive trademark rights associated with the Apple, Mac, and

26   Mac OS X trademarks as well as other source identifiers found in the Mac OS X software.  The Apple,

27   Mac and Mac OS trademarks are famous in the United States and all were famous prior to the

28   commencement of Psystar's infringing activities.

102.    By its conduct, Psystar has diluted Apple's marks in violation of 15 U.S.C. § 1125(c).

103.    Psystar willfully intends and intended to trade on Apple's reputation for excellence.

104.    Apple will suffer and is suffering irreparable harm from Psystar's dilution of the Apple trademarks.

105.    Pursuant to 15 U.S.C. § 1116, Apple is entitled to an injunction against Defendant's continuing infringement of Apple's trademarks.

106.    Because Psystar's actions have been committed with intent to damage Apple and to confuse and deceive the public, Apple is entitled to treble its actual damages or Defendant's profits, whichever is greater, and to an award of costs and, this being an exceptional case, reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a) and 1117(b).  Alternatively, Apple is entitled to the maximum statutory damages allowed under 15 U.S.C. § 1117(c).  Apple will make its election at the appropriate time before final judgment.

**TENTH CLAIM FOR RELIEF**
**(State Unfair Competition)**
**(Cal. Bus. & Prof. Code §17200)**

107.    Plaintiff incorporates herein by reference each and every allegation of the preceding paragraphs.

108.    Psystar's business practices as alleged above constitute unfair competition and unfair business practices and business acts in violation of Section 17200 *et seq.* of the California Business & Professions Code.

109.    Pursuant to California Business and Professions Code §17203, Apple is entitled to enjoin these practices.  Without injunctive relief, Apple has no means by which to control Psystar's unlawful copying and distribution of Apple's copyrighted works.  Similarly, Apple has no way to control the confusion created by Psystar's infringement of Apple's trademarks.  Apple is therefore entitled to injunctive relief prohibiting Psystar from continuing such acts of unfair competition pursuant to California Business and Professions Code §17203.

///

///

///

## ELEVENTH CLAIM FOR RELIEF
### (Common Law Unfair Competition)

110.     Plaintiff incorporates herein by reference each and every allegation of the preceding paragraphs.

111.     Psystar's business practices as alleged above constitute unfair competition and unfair business practices under state common law.  As a direct and proximate result of Psystar's infringing conduct, Apple has suffered and will continue to suffer lost sales and profits in an amount not yet fully ascertained in an amount to be proven at trial.  In addition, Apple has suffered and continues to suffer injury to its business reputation and goodwill for which no adequate remedy exists at law and for which Apple is entitled to injunctive relief.

## PRAYER FOR RELIEF

WHEREFORE, in consideration of the foregoing, Plaintiff prays for judgment as follows:

1.     Awarding Apple actual damages and/or any profits gained by defendants and/or statutory damages for direct and/or contributory copyright infringement as determined at trial;

2.     Awarding Apple a preliminary and/or permanent injunction against the sale or distribution of any software or device, including but not limited to the Psystar Open Computer, OpenPro computer, and OpenServ server products, that allows for the installation or running of Apple software on non-Apple computers, and requiring Psystar to recall all such products and software sold or distributed to the public as a result of Psystar's infringement of Apple's copyrights;

3.     Awarding Apple actual damages and/or any profits gained by defendants and/or statutory damages for circumvention of an access control measure and/or trafficking in circumvention devices as determined at trial;

4.     Awarding Apple a preliminary and/or permanent injunction against the sale or distribution of any software or device, including but not limited to the Psystar Open Computer, OpenPro computer, and OpenServ server products, that allows forn the installation or running of Apple Software on non-Apple computers, and requiring Psystar to recall all such products and software sold or distributed to the public as a result of Psystar's circumvention of an access control measure and/or trafficking in circumvention devices;

1        5.       Awarding damages as a result of Psystar's breach of Apple's Software License

2  Agreement for Mac OS X and Mac OS X Server;

3        6.       Awarding damages, including punitive damages, as a result of Psystar's inducement of

4  others to breach Apple's Software License Agreement for Mac OS X and Mac OS X Server;

5        7.       Awarding a preliminary and/or permanent injunction against Psystar's inducement of

6  third parties to breach Apple's License Agreement;

7        8.       Awarding Apple actual and statutory damages for trademark infringement and/or

8  dilution as determined at trial;

9        9.       Awarding Apple actual and statutory damages for trade dress infringement as

10  determined at trial;

11        10.      Awarding Apple a preliminary and/or permanent injunction against sales of the Psystar

12  Open Computer, OpenPro computer, and OpenServ server products with Apple software and requiring

13  Psystar to recall all such products sold to the public as a result of Psystar's infringement of Apple's

14  trademarks and trade dress;

15        11.      Awarding Apple a preliminary and/or permanent injunction against sales of the Psystar

16  Open Computer, OpenPro computer,  and OpenServ server products with Apple software and

17  requiring Psystar to recall all such products sold to the public as a result of Psystar's dilution of

18  Apple's trademarks;

19        12.      Awarding Apple a preliminary and/or permanent injunction against sales of the Psystar

20  Open Computer, OpenPro computer,  and OpenServ server products with Apple software and

21  requiring Psystar to recall all such products sold to the public as a result of its statutory and common

22  law unfair competition;

23        13.      Ordering Apple actual damages as a result of Psystar's common law unfair competition;

24        14.      Awarding Apple treble damages for Psystar's willful acts;

25        15.      Awarding Apple its reasonable attorneys' fees and costs; and

26        16.      Awarding Apple such other relief as the Court deems appropriate.

27  ///

28  ///

# DEMAND FOR JURY TRIAL

Plaintiff Apple Inc. hereby demands a trial by jury of all issues triable by jury pursuant to Federal Rule of Civil Procedure 38(b) and Civil Local Rule 3-6(a).


DATED: December 2, 2008        Respectfully submitted,

TOWNSEND AND TOWNSEND AND CREW LLP


By:    */s/ James G. Gilliland, Jr.*
       JAMES G. GILLILAND, JR.
       Attorneys for Plaintiff
       APPLE INC.

61710693 v1