| | |
|---|---|
| 1 | ROBERT J. YORIO (SBN 93178) |
| | yorio@carrferrell.com |
| 2 | COLBY B. SPRINGER (SBN 214868) |
| | cspringer@carrferrell.com |
| 3 | CHRISTOPHER P. GREWE (SBN 245938) |
| | cgrewe@carrferrell.com |
| 4 | CARR & FERRELL *LLP* |
| | 2200 Geng Road |
| 5 | Palo Alto, California 94303 |
| | Telephone: (650) 812-3400 |
| 6 | Facsimile: (650) 812-3444 |
| 7 | Attorneys for Defendant/Counterclaimant |
| | PSYSTAR CORPORATION |
| 8 | |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| APPLE INC., a California corporation, | | CASE NO. CV-08-03251-WHA |
| Plaintiff, | | |
| v. | | **PSYSTAR CORPORATION'S NOTICE OF AND MOTION FOR LEAVE TO AMEND** |
| PSYSTAR CORPORATION, a Florida corporation, | | |
| Defendant. | | Date: Thursday, January 15, 2009 |
| | | Time: 8:00 a.m. |
| | | Courtroom: 9, 19th Floor |
| | | Judge: Hon. William Alsup |
| AND RELATED COUNTERCLAIMS. | | |

**PLEASE TAKE NOTICE** that on **THURSDAY, JANUARY 15, 2009, AT 8:00 A.M.**, or as soon thereafter as the matter can be heard, in the courtroom of the Honorable William Alsup, located at 450 Golden Gate Avenue, San Francisco, California 94102, defendant and counterclaimant, PsyStar Corporation ("PsyStar") will, and hereby does, move for an order granting PsyStar leave to file its First Amended Counterclaim and ordering that the First Amended Counterclaim submitted with this motion be deemed filed. The motion will be based on this Notice of and Motion for Leave to Amend, the following Memorandum of Points and Authorities, PsyStar's First Amended Counterclaim (Exhibit A), and the Proposed Order (Exhibit B) filed herewith. The motion is further based on all of the files and records of this action and on any additional material that may be

elicited at the hearing of this motion. For the convenience of the Court, an annotated version of the PsyStar's First Amended Counterclaim with respect to PsyStar's initial counterclaim is attached hereto as Exhibit C.

# TABLE OF CONTENTS

INTRODUCTION ....................................................................................................................5

ARGUMENT ..........................................................................................................................7

    I.    The Federal Rules, Supreme Court, and Ninth Circuit Routinely Grant Leave to Amend ................................................................................7

    I.    The Federal Rules, Supreme Court, and Ninth Circuit Routinely Grant Leave to Amend ................................................................................7

    II.    Copyright Misuse is Recognized by the Court of Appeals for the Ninth Circuit ................................................................................................8

    III.    Copyright Misuse is Not Dependent Upon Establishing the Elements of an Antitrust Claim ...................................................................8

    IV.    Apple's EULA Attempts to Utilize Apple Copyrights to Secure Exclusivity with Respect to Apple-Labeled Computer Hardware Systems to the Exclusion of Mac OS Capable Computer Hardware Systems—an Exclusive Right Not Covered by the Copyright Act ......................10

    V.    Apple's Use of the DMCA to Extend its Copyrights to Cover Uncopyrightable Hardware Components Under the Guise of 'Technological Protection Measures' Constitute a Misuse of the DMCA .................................................................................................................11

    VI.    Apple's Misuse of Its Copyrights Contravenes Antitrust Law and Policy and is Actionable Under California's Unfair Competition Statute ...............................................................................................................12

CONCLUSION .....................................................................................................................13

# TABLE OF AUTHORITIES

**CASES**

*A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001) ....................................8, 10

*AICCO, Inc. v. Ins. Co. of N. Am.*, 90 Cal.App. 4th 579 (2001) ..................................12

*Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772 (5th Cir. 1999)......................................8, 11

*Cel-Tech Comms., Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th 163 (1999) .....................12

*DCD Programs, Ltd. v. Leighton*, , 833 F.2d 183 (9th Cir. 1987)..............................................7

*DSC Communications Corp. v. DGI Techs., Inc.*, 81 F.3d 597 (5th Cir. 1996)...........................8

*Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003) ...................................7

*Foman v. Davis*, 371 U.S. 178 (1962)...........................................................................................7

*In re Independent Service Organizations Antitrust Litigation*, (*CSU, L.L.C v. Xerox Corporation*), 203 F.3d 1322 (Fed. Cir. 2000)..............................................................8

*Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2 (1984).....................................................6

*Lasercomb America, Inc. v. Reynolds,* 911 F.2d 970 (4th Cir. 1990)................................8, 9, 10

*Morton Salt Co. v. G.S. Suppieger Co.*, 314 U.S. 488 (1942)........................................................9

*Practice Mgmt. Information Corp. v. American Medical Ass'n,* 121 F.3d 516 (9th Cir. 1997) ......................................................................................................................8, 9

*qad, inc. v. ALN Assocs., Inc.*, 770 F. Supp. 1261 (N.D. Ill. 1991) ............................................10

*Supermarket of Homes, Inc. v. San Fernando Bd. of Realtors*, 786 F.2d 1400 (9th Cir. 1986 ).........................................................................................................................8

*Tanaka v. University of Southern California*, 252 F.3d 1059 (9th Cir. 2001) ..............................6

*Tippett v. Terich*, 37 Cal.App.4th 1517 (1995) ..........................................................................12

*Triad Sys. Corp. v. Southeastern Express Co.*, 64 F.3d 1330 (9th Cir. 1995) ..............................8

*United States v. Webb*, 655 F.2d 977 (9th Cir. 1981) ...................................................................7

**STATUTES**

7 U.S.C. § 106..............................................................................................................................11

CAL. CODE CIV. PROC. § 1021.5...................................................................................................13

**RULES**

FED. R. CIV. P. 15(a)(2) ..................................................................................................................8

**OTHER RESOURCES**

*ANTICIRCUMVENTION MISUSE*, 50 UCLALR 1095 (2003) …………………………………….11

**INTRODUCTION**

In its Order dated November 18, 2008 (*Order*), the Court granted Apple's motion to dismiss PsyStar's counterclaims for violations of federal and state antitrust law. *SEE Order*, 1, 17, 19 (dismissing PsyStar's claims under Sections 1 and 2 of the Sherman Act as well as Section 3 of the Clayton Act). A series of state law claims were likewise dismissed. *SEE Order*, 1, 17-18 (concerning dismissal of PsyStar's Cartwright Act and unfair competition claims). As a further part of that Order, the Court stated that "PsyStar may move for leave to amend" and that "[a]ny such motion should be accompanied by a proposed pleading" explaining why the bases for dismissal of PsyStar's initial counterclaims had been "overcome by the proposed pleading." *Order*, 19. PsyStar was further directed to "plead its best case." *Id.* PsyStar believes that it has complied with the Court's order in this regard.

PsyStar respectfully disagrees with a number of the Court's conclusions including those related to market definition and the viability of PsyStar's single product market allegation. *SEE GENERALLY Order*, 5-17. Notwithstanding, PsyStar reserves the right to pursue those issues on appeal. For the purpose of the present motion, PsyStar focuses its amendments to a number of claims asserted in PsyStar's initial counterclaim (*Counterclaim*) but that were overlooked during the Rule 12(b)(6) briefing and, ultimately, the Court's aforementioned Order. Specifically, PsyStar pleads its case with respect to seeking a declaratory judgment as to the unenforceability of any and all asserted copyrights by Apple. *SEE PsyStar's First Amended Counterclaim,* ¶¶ 2-3, and 67-77 (concerning request for declaratory relief with respect to Apple's copyright misuse through use of its EULA); see also *Apple's First Amended Complaint*, ¶ 25-33 (concerning direct infringement) and ¶ 34-42 (concerning contributory and/or induced copyright infringement). PsyStar also seeks a declaratory judgment as to the unenforceability of Apple's copyrights in light of Apple's newly asserted Digital Millennium Copyright Act (DMCA) claim. *SEE PsyStar's First Amended Counterclaim,* ¶¶ 2-3, and 78-90 (concerning request for declaratory relief with respect to Apple's copyright misuse through use of the DMCA); *SEE Apple's First Amended Complaint*, ¶ 43-54.

These claims for declaratory relief are sought in light of the brazen misuse of Apple copyrights. *SEE PsyStar's First Amended Counterclaim*, ¶ 47-56. Apple's copyright misuse occurs in the context of both the Apple EULA (¶ 47-51) and spurious DMCA assertions (¶ 52-56). Both of these efforts constitute Apple having leveraged (and continuing to leverage) the limited monopoly granted by the U.S. Copyright Office under the U.S. Copyright Act to areas outside that statutory grant. Apple's leveraging conduct constitutes copyright misuse thereby rendering the corresponding copyrights unenforceable.

PsyStar likewise seeks a corresponding declaration of Apple having engaged in unfair competition under California's unfair competition statute. *SEE PsyStar's First Amended Counterclaim*, ¶ 91-104 (concerning PsyStar's third and fourth claims for relief). Apple's copyright misuse—which is wholly and completely independent of any antitrust pleading standard or requirement—violates the policy and spirit of the antitrust laws therefore constituting unfair behavior and otherwise giving rise to an actionable claim under the California Business and Professions Code.

While copyright misuse may have found its origins in antitrust law, its pleading requirements are—as noted above—wholly and completely independent of those requirements imposed upon an antitrust counterclaim. *SEE Order*, 6 (requiring identification of the relevant market in an antitrust context) *CITING Tanaka v. University of Southern California*, 252 F.3d 1059, 1063 (9th Cir. 2001) (finding that "[f]ailure to identify a relevant market is a proper ground for dismissing a Sherman Act claim"); *SEE ALSO Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 23 n.39 (1984) (finding the standards for establishing a Sherman Act Section 1 and Clayton Act Section 3 claim to be the same). As such, PsyStar's *First Amended Counterclaim*, on its face, already avoids the issues related to the Mac OS being an "independent market" as well as those concerns raised with respect to the submarket/aftermarket relationship of Apple-Labeled Computer Hardware Systems and Mac OS Capable Computer Hardware Systems. *SEE Order,* 12 (concerning Mac OS market), 17 (concerning submarket/aftermarket relationship), 19 (requiring an "expla[nation] why the foregoing problems are overcome by the proposed pleading").

# ARGUMENT

## I. The Federal Rules, Supreme Court, and Ninth Circuit Routinely Grant Leave to Amend

Federal Rule of Civil Procedure 15(a) provides that leave to amend a pleading "shall freely [be] give[n] . . . when justice so requires." FED. R. CIV. P. 15(a)(2) ). The Supreme Court of the United States and Ninth Circuit Court of Appeals each have affirmed that leave to amend should be granted with "extreme liberality." *Foman v. Davis*, 371 U.S. 178, 182 (1962) ; SEE *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (finding that "[a]bsent prejudice . . . there exists a *presumption* under Rule 15(a) in favor of granting leave to amend") (emphasis in original); SEE ALSO *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981) (finding that courts should be guided by policy favoring decisions on the merits "rather than on the pleadings or technicalities"). The primary factors relied upon by the Supreme Court and the Ninth Circuit in *denying* a motion for leave to amend include "bad faith, undue delay, prejudice to the opposing party, and futility of amendment." *DCD Programs, Ltd. v. Leighton,* 833 F.2d 183, 186 (9th Cir. 1987) . None of those factors are present here.

The amended counterclaims asserted herewith are made in good faith and within the time permitted by the Court. Further, these claims do not prejudice Apple as copyright misuse has already been raised in the context of an affirmative defense and was likewise alleged—albeit disregarded in the Rule 12(b)(6) process—in PsyStar's initial counterclaim. SEE *Counterclaim*, 24-25 (thirty-seventh affirmative defense for copyright misuse); SEE ALSO *Counterclaim*, ¶¶ 100, 109, 115 (alleging anticompetitive behavior vis-à-vis Apple's misuse of copyrights). Discovery is ongoing and scheduled to conclude in June 2009 meaning that Apple will be offered a full opportunity to propound discovery on these claims. Finally, and as is established in greater detail below, each of PsyStar's amended counterclaims are valid claims supported by the law and properly plead to withstand challenged under Rule 12(b)(6).

**II. <u>Copyright Misuse is Recognized by the Court of Appeals for the Ninth Circuit</u>**

The copyright misuse doctrine "prevents copyright holders from leveraging their limited monopoly to allow them control of areas outside the monopoly" otherwise granted by the Copyright Act. *A&M Records, Inc. v. Napster*, *Inc.,* 239 F.3d 1004, 1026-27 (9th Cir. 2001) . Recognized in association with the doctrine of patent misuse, the copyright misuse doctrine is firmly established as a limitation on licensing restrictions that are either anticompetitive or otherwise violate the public policy underlying the federal copyright laws. The Ninth Circuit is among those courts that recognize that the copyright misuse defense "forbids the use of the copyright to secure an exclusive right or limited monopoly not granted by the Copyright Office." *Practice Mgmt. Information Corp. v. American Medical Ass'n*, 121 F.3d 516, 520 (9th Cir. 1997) (*QUOTING Lasercomb America, Inc. v. Reynolds*, 911 F.2d 970, 977-79 (4th Cir. 1990)) ; *SEE ALSO Triad Sys. Corp. v. Southeastern Express Co.*, 64 F.3d 1330, 1337 (9th Cir. 1995) *AND Supermarket of Homes, Inc. v. San Fernando Bd. of Realtors*, 786 F.2d 1400, 1408 (9th Cir. 1986) .

**III. <u>Copyright Misuse is Not Dependent Upon Establishing the Elements of an Antitrust Claim</u>**

Like the patent misuse defense, copyright misuse has **not** been limited to circumstances in which a plaintiff has violated the antitrust laws. *SEE Lasercomb*, 911 F.2d at 976-79 ); *SEE ALSO Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 792-95 (5th Cir. 1999) *AND DSC Communications Corp. v. DGI Techs., Inc.*, 81 F.3d 597, 601-02 (5th Cir. 1996) . "[A] defendant in a copyright infringement suit **need not prove an antitrust violation** to prevail on a copyright misuse defense"; misuse may be based upon the **public policies reflected in the copyright laws** themselves. *Practice Mgmt.*, 121 F.3d at 520-21 ) (emphasis added). In that regard, the Noerr-Pennington doctrine or any other antitrust defense would not immunize Apple's actions as they pertain to misuse of copyright. *Id.*; *SEE ALSO In re Independent Service Organizations Antitrust Litigation*, (*CSU, L.L.C v. Xerox Corporation*), 203 F.3d 1322, 1329 (Fed. Cir. 2000) (declining to find exclusionary conduct in violation of the antitrust laws absent "evidence that the copyrights [at issue] . . . were used to gain monopoly power beyond the statutory copyright granted by

Congress").[1]  The rationale for copyright misuse in these cases has been that courts should not facilitate the expansion of a copyright beyond the boundaries set forth in the Copyright Act, which is exactly what would happen if the Court were to enforce certain terms in Apple's EULA.

The boundaries set by the Copyright Act must be respected because they reflect Congress' recognition that intellectual property rights serve the public interest by "increasing the store of human knowledge and arts," and do not serve only the private interest of "rewarding inventors." *Lasercomb*, 911 F.2d at 976).  Each of the aforementioned cases establish the rule that the copyright misuse doctrine applies any time a copyright owner attempts to circumvent the boundaries surrounding his copyrights under the Copyright Act.  The Ninth Circuit has declared unequivocally that it "adopt[s] that rule."  *Practice Mgmt.*, 121 F.3d at 520).

It should be noted that copyright misuse does not require a party alleging misuse to show that they were directly harmed by the abusive practice.  SEE E.G. *Lasercomb*, 911 F.2d at 979 (finding that "the defense of copyright misuse is available even if the defendants themselves have not injured by the misuse."); CF. *Morton Salt Co. v. G.S. Suppieger Co.*, 314 U.S. 488, 494 (1942) (finding that "[i]t is the adverse effect upon the public interest of a successful infringement suit in conjunction with the patentee's course of conduct which disqualifies him to maintain the suit, regardless of whether the particular defendant has suffered from the misuse of the patent."). Notwithstanding, PsyStar asserts that it has most definitely been harmed by the misuse of Apple's copyrights—the present litigation being clear evidence to that fact.

---

[1] PsyStar does not re-plead its Sherman and Clayton Act antitrust claims (and related state claims) in the context of the present motion and amended counterclaim.  PsyStar does, however, reserve the right to move the court for leave to amend and reintroduce those antitrust claims subject to proof that Apple used its copyright to gain monopoly power beyond the statutory right copyright granted by Congress.  In that context, while PsyStar has eliminated much of the previously plead subject matter as it pertains to market definition from its initial *Answer and Counterclaim*, the present amendments are made solely for the simplification of the pleadings.  The present amendments should not be construed as PsyStar discounting the merits of the previously plead allegations.

Psystar Corporation's Notice of and Motion for Leave to Amend
(Case No. CV-08-03251-WHA)

**IV. Apple's EULA Attempts to Utilize Apple Copyrights to Secure Exclusivity with Respect to Apple-Labeled Computer Hardware Systems to the Exclusion of Mac OS Capable Computer Hardware Systems—an Exclusive Right Not Covered by the Copyright Act**

Apple's attempt to establish control over Apple-Labeled Computer Hardware Systems vis-à-vis its copyrights and corresponding EULA constitutes an attempt to secure an "exclusive right" that was "not granted" by the Copyright Office. *Lasercomb*, 911 F.2d at 977 ). To appreciate this, the Court need only note that in Section 106 of the Copyright Act, Congress set forth the six exclusive rights that a copyright owner enjoys:

(1) reproduction;

(2) creation of derivative works;

(3) distribution;

(4) public performance;

(5) public display; and

(6) digital public performance.

17 U.S.C. § 106 . As a result, by attempting to secure rights in hardware (Apple-Labeled Computer Hardware Systems), which are outside the scope of copyright, Apple's EULA unquestionably "seek[s] to control areas outside of their grant of monopoly" under the Copyright Act. *A&M Records*, 239 F.3d at 1026-27 (9th Cir. 2001) ); *Cf. qad, inc. v. ALN Assocs., Inc.*, 770 F. Supp. 1261 (N.D. Ill. 1991) (finding "qad's misuse was even more egregious: **It used its copyright to sue ALN and to restrain it from the use of material over which qad itself had no rights.** That is a misuse of both the judicial process and the copyright laws") (emphasis added). By misusing its copyrights through its EULA to extend its "exclusive rights" under Section 106 of the Copyright Act to include Apple-Labeled Computer Hardware Systems, Apple has rendered its copyrights unenforceable.

# V. Apple's Use of the DMCA to Extend its Copyrights to Cover Uncopyrightable Hardware Components Under the Guise of 'Technological Protection Measures' Constitute a Misuse of the DMCA

Apple's (mis)use of the DMCA in its First Amended Complaint closely resembles the behavior at issue in *Alcatel USA, Inc. v. DGI Techs., Inc.* where the Fifth Circuit barred DGI from doing with contract and copyright what Apple is attempting to do vis-à-vis the DMCA. 166 F.3d 772 (5th Cir. 1999). In *Alcatel,* DSC had developed both an operating system and a microprocessor card for a telecommunications switch. Running the operating system required copying the operating system into the microprocessor's memory. DGI developed microprocessor cards compatible with the DSC operating system. To test and use the DGI cards required loading the DSC operating system into the cards' memory but the DSC license agreement prohibited the running its operating system on non-DSC cards. The jury found that DSC's license agreement constituted copyright misuse; the Fifth Circuit agreed: "DSC has used its copyright to indirectly gain commercial control over products DSC does not have copyright, namely its microprocessor cards." *Id.* at 793; SEE *Anticircumvention Misuse*, 50 UCLALR 1095, 1134 (2003) (referencing *Alcatel* and positing "a misuse of the [DMCA] circumvention right" by "leveraging the right granted in the technological control system to control unpatented" hardware) (attached hereto as Exhibit D).

The same public policy that forbids use of a copyright monopoly to control purchasers' use of third party materials by barring enforcement of the copyright lever should likewise block enforcement of the DMCA when it is used to go beyond the scope of either copyright or access. Use of the DMCA as a "paracopyright" was recognized years ago as being "ripe for abuse." *Anticircumvention Misuse*, 50 UCLALR at 1113 (finding that "[p]aracopyright seems additionally positioned to facilitate anticompetitive licensing terms" including "'shrinkwrap' licensing" and other "noncompetition provisions"). These abuses of copyright have—"[i]n the past,"—been "restrained by judicial application of the misuse doctrine." *Id.* at 1114. Scholars, in this regard, have "suggest[ed] the need to recognize a new claim of anticircumvention of paracopyright misuse." *Id.* at 1132; see also *id.* at 1140 (finding "that the need for a doctrine of anticircumvention

misuse is real, and the time for its application will arrive shortly, if indeed it has not already arrived").

As evidenced by the present pleadings, that time has arrived and copyright misuse is the solution. Apple is attempting to use its copyrights in the Mac OS not to prevent unauthorized production of any copyrightable elements but to prevent competitors from developing competing hardware systems interoperable with the Mac OS. Through the use of anti-circumvention and the DMCA, Apple is attempting to leverage its copyright limited monopoly in reproduction of the Mac OS into a broader monopoly in a separate hardware market. This is the exact behavior that is prohibited by the copyright misuse doctrine. The fact that the misuse occurs in the context of the DMCA is irrelevant as the doctrine remains nevertheless applicable.

**VI. Apple's Misuse of Its Copyrights Contravenes Antitrust Law and Policy and is Actionable Under California's Unfair Competition Statute**

California's unfair competition law is intended to protect competitors as well as consumers from unfair practices. S<small>EE</small> *Tippett v. Terich*, 37 Cal.App.4th 1517, 1536 (1995) (overruled on other grounds). When an entity claims to have suffered from injury from a competitor's "unfair" act or practice, the principal test is whether that act or practice threatens "an incipient violation of an antitrust law, or **violates the policy or spirit of one of the antitrust laws** because its effects are comparable to, or are the same as, a violation of the law." *Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (1999) ) (emphasis added). Notwithstanding, the unfair competition claim is not dependent upon any pleading requirement of an actual antitrust claim—only the spirit of the same. Leveraging of a monopoly right into an otherwise unrelated market (*i.e.*, the copyrights related to the Mac OS into the Apple Labeled Computer Hardware Systems market) most surely runs afoul of the 'spirit' of a federal leveraging or tying claim. In that regard, the conduct is actionable. S<small>EE</small> *Cel-Tech*, 20 Cal. 4th at 163 (finding an act that "threatens of harms competition" to be actionable); see also *AICCO, Inc. v. Ins. Co. of N. Am.,* 90 Cal.App. 4th 579, 590 (2001) ) (finding that unfair competition may be plead as part of a claim for a declaratory judgment). Fees are likewise awardable to the extent that bringing an end to the complained of

action involves either an important right or affects a significant benefit to the general public. *SEE* CAL. CODE CIV. PROC. § 1021.5 .

**CONCLUSION**

For the foregoing reasons, PsyStar respectfully requests that the Court grant PsyStar's motion for leave to amend and allow for entry of the First Amended Counterclaim attached hereto as Exhibit A.

Dated:  December 8, 2008                             CARR & FERRELL *LLP*


By: /s/ Colby B. Springer
ROBERT J. YORIO
COLBY B. SPRINGER
CHRISTOPHER P. GREWE

Attorneys for Defendant/Counterclaimant
PSYSTAR CORPORATION