

1   ROBERT J. YORIO (SBN 93178)
    yorio@carrferrell.com
2   COLBY B. SPRINGER (SBN 214868)
    cspringer@carrferrell.com
3   ~~CHRISTOPHER P. GREWE (SBN 245938)~~
    ~~cgrewe@carrferrell.com~~
4   ~~CHRISTINE S. WATSON (SBN 218006)~~
    ~~cwatson@carrferrell.com~~
5   CARR & FERRELL *LLP*
    2200 Geng Road
6   Palo Alto, California 94303
    Telephone: (650) 812-3400
7   Facsimile: (650) 812-3444

8   Attorneys for Defendant/Counterclaimant
    PSYSTAR CORPORATION
9

10                  UNITED STATES DISTRICT COURT

11                 NORTHERN DISTRICT OF CALIFORNIA

12                     SAN FRANCISCO DIVISION

13  APPLE INC., a California corporation,        CASE NO. CV-08-03251-WHA

14                      Plaintiff,
                                                 ~~ANSWER AND AFFIRMATIVE~~
15         v.                                    ~~DEFENSES OF PSYSTAR~~
                                                 ~~CORPORATION~~
16  PSYSTAR CORPORATION, a Florida
    corporation,                                 PSYSTAR CORPORATION'S
17                                               FIRST AMENDED
                        Defendant.               COUNTERCLAIMS FOR
18                                               DECLARATORY RELIEF AS TO
                                                 THE UNENFORCEABILITY OF
19  ~~PSYSTAR CORPORATION,~~                      COPYRIGHTS AND
                                                 STATUTORY UNFAIR
20              ~~Counterclaimant,~~             ~~COMPETITION~~ VIOLATIONS
                                                 ~~OF THE SHERMAN, CLAYTON,~~
21         ~~v.~~                                ~~AND CARTWRIGHT ACTS, AND~~
                                                 ~~STATE AND COMMON UNFAIR~~
22  ~~APPLE INC., a California corporation,~~    ~~COMPETITION LAW~~

23             ~~Counterdefendant.~~AND          JURY TRIAL REQUESTED
24  RELATED COUNTERCLAIMS

25

26      ~~Through its undersigned counsel, Defendant and Counterclaimant Psystar Corporation~~

27  ~~(hereinafter PSYSTAR) responds to the July 3, 2008 *Complaint for Copyright Infringement etc.*~~

28

{00349979v1}                                    -1-
            ~~Answer and~~ PsyStar Corporation's First Amended Counterclaim~~ of Psystar Corporation~~
                              (Case No. CV-08-03251-WHA)

Dockets.Justia.com

1   (hereinafter "Complaint") of Plaintiff and Counterdefendant Apple Inc. (hereinafter PLAINTIFF or

2   APPLE) as follows:

3

4   **BACKGROUND ALLEGATIONS**

5

6   1.      PSYSTAR admits that PLAINTIFF is a California corporation with its headquarters and

7   principal place of business at 1 Infinite Loop, Cupertino, California.  PSYSTAR admits that

8   PLAINTIFF sells hardware, software, and services including the Macintosh computer, the iPod

9   music player, and the iPhone.  PSYSTAR admits that the PLAINTIFF was founded in 1976 and

10  that PLAINTIFF has been referred to as "one of the most innovative companies in the world."

11  PSYSTAR lacks information or knowledge as to the number of persons employed by the

12  PLAINTIFF; PSYSTAR likewise lacks information or knowledge as to the number of stores

13  operated by the PLAINTIFF and on that basis denies those allegations; PSYSTAR admits that

14  PLAINTIFF sells a number of products online.  PSYSTAR admits that in 2008, *Fortune Magazine*

15  named the PLAINTIFF "America's Most Admired Company."

16  2.      PSYSTAR admits that PLAINTIFF launched the Macintosh line of computers in 1984 but

17  otherwise denies the allegation that PLAINTIFF is "[a] pioneer of the personal computer

18  revolution."  On information and belief, PSYSTAR admits that the Macintosh (or "Mac") utilized a

19  mouse, computer icons, and graphical user interface but lacks information or knowledge as to

20  whether said components and functionality were novel and on that basis denies the remainder of the

21  allegation.  PSYSTAR admits that the Macintosh line of computers has included those particular

22  models identified in the third sentence of paragraph 2 of the Complaint but denies the un-cited

23  reference that said line of computers is "perennially praised" and on that basis denies the remainder

24  of the allegation.  PSYSTAR lacks information or knowledge as to the number of Macintosh

25  computers sold by the PLAINTIFF since 2001 and on that basis denies the allegation.

26  3.      PSYSTAR admits the allegation that Macintosh computers are considered "famous" and

27  that Macintosh computers are generally considered to be reliable and to enjoy ease-of-use as it

28  pertains to the operating system.  PSYSTAR, on information and belief, denies the allegation that

1  development teams of the PLAINTIFF "have seamlessly integrated the hardware and software

2  features of the Macintosh computer[]" and that the Macintosh "is simpler to service, update and

3  maintain." PSYSTAR is without information or knowledge as to *Consumer Reports'* ranking of

4  technical support for or by the PLAINTIFF and on that basis denies the allegation.

5  4.      PSYSTAR admits that version 10.0 of the Mac OS X was released in 2001.  PSYSTAR

6  admits the allegations of the second sentence of paragraph 4 of the Complaint.  PSYSTAR is

7  without information or knowledge as to whether the unidentified reviewers referenced by the

8  PLAINTIFF in the third and fourth sentences of the paragraph 4 of the Complaint actually made

9  such statements and on that basis denies the remaining allegations as set forth in paragraph four of

10  the Complaint.

11  5.      PSYSTAR admits that the "color, transparency and animation" and "overall arrangement"

12  of the Mac OS X interface are "unique and creative" with respect to their operative functionality.

13  PSYSTAR admits that the combined Apple mark as purportedly found in the Finder toolbar is

14  "famous" for its functionality and that the Finder toolbar is combined with "a distinctive three-

15  dimensional applications bar" thereby offering additional functionality for the benefit of the user of

16  the Mac OS X.  PSYSTAR denies that the "combination of elements" in the Mac OS X interface is

17  "distinctive," "nonfunctional" and "well known to consumers"; PSYSTAR is without information

18  or knowledge as to whether the aforementioned elements are "associated with the PLAINTIFF and

19  Mac OS X Leopard" and on that basis denies the remainder of the allegation.  PSYSTAR admits

20  that the PLAINTIFF refers to the aforementioned combinations as the PLAINTIFF's "Trade Dress"

21  but denies that any legal protections offered by any associated theory are available and/or valid.

22  6.      PSYSTAR admits that the Mac OS X has been the subject of media discussion and that the

23  Mac OS X—if the PLAINTIFF means to refer to the same as "[t]he product"—has received

24  "significant acclaim."  PSYSTAR is without information or knowledge as to whether the sale of

25  Mac computers has "surged," whether the growth of any such sales is "at a faster pace than the

26  personal computer market in general," and whether any such sales are related to the Mac OS X and

27  on that basis denies the assertion.

28

1    7.    PSYSTAR admits that the PLAINTIFF manufacturers and sells a product known as the

2    Xserve rack-mount server.  PSYSTAR admits that the Xserve uses an iteration of one or more

3    components referenced as the Mac OS X Leopard Server.  PSYSTAR admits that the Mac OS X

4    Leopard Server has been the subject of media discussion.

5    8.    PSYSTAR admits the PLAINTIFF alleges ownership in certain registered trademarks

6    as identified in the first sentence of paragraph 8 of the Complaint and that certain marks and brands

7    of the PLAINTIFF have been referenced by others as being "one of the most famous brands in the

8    world."  PSYSTAR admits that the PLAINTIFF promotes, offers, and sells computers, goods, and

9    services in interstate commerce but is without information or knowledge as to the time and effort

10   corresponding to such promotions, offers, and sales and/or the specific trademarks used with such

11   promotions, offers, and sales and on that basis denies the allegation.  PSYSTAR is without

12   information or knowledge as to the promotional expenditures of the PLAINTIFF and whether such

13   expenditures are related to the trademarks identified in the third sentence of paragraph 8 of the

14   Complaint and on that basis denies the allegations.  PSYSTAR denies the allegation that the

15   PLAINTIFF's brand, unidentified marks, and purportedly distinctive trade dress (if any) are

16   "synonymous" with anything and on that basis denies the allegation.  PSYSTAR admits that

17   *BusinessWeek Magazine* has identified the PLAINTIFF as the "World's Most Innovative

18   Company."  PSYSTAR is without information or knowledge as to whether the unidentified

19   independent research organizations referenced by the PLAINTIFF in the final sentence of

20   paragraph 8 of the Complaint actually made such determinations and on that basis denies the

21   allegation.

22   9.    PSYSTAR is without information or knowledge as to what the consuming public

23   nationwide associates with or understands any marks or trade dress of the PLAINTIFF to identify

24   and on that basis denies the allegation.  PSYSTAR is without information or knowledge as to the

25   quality of any goods or services of the PLAINTIFF and any good will established with respect to

26   the same and on that basis denies the allegations.

27   10.   PSYSTAR is without information or knowledge as to the exclusivity and frequency of use

28   of any mark of the PLAINTIFF and on that basis denies the allegation; PSYSTAR expressly denies

-4-

Answer and PsyStar Corporation's First Amended Counterclaim of Psystar Corporation
(Case No. CV-08-03251-WHA)

1  that it is infringing said marks.  PSYSTAR admits that certain marks of the PLAINTIFF may be

2  famous but deny that any alleged trade dress enjoys such fame, in part because the alleged trade

3  dress of the PLAINTIFF is functional and on that basis denies the allegation; PSYSTAR expressly

4  denies that it is infringing the same.  PSYSTAR is without information or knowledge as to what the

5  PLAINTIFF considers its "most important assets" and on that basis denies the allegations;

6  PSYSTAR likes denies the assertion that any trade dress is distinctive and again notes the

7  functionality of the same.

8  11.    PSYSTAR admits that it is a corporation organized and doing business under the laws of the

9  State of Florida with its principal place of business at 10475 NW 28th Street, Doral, Florida.

10  12.    PSYSTAR admits that for a period of several hours on one day that PSYSTAR colloquially

11  referred to certain computers by the name of 'OpenMac' but denies that it currently sells any

12  computer referred to by that name; PSYSTAR denies that it sells any computer under any name that

13  runs a modified, unauthorized version of the Leopard operating system.  PSYSTAR admits

14  currently selling a computer referred to as the 'Open Computer' and that said computer may

15  include the Leopard operating system; PSYSTAR denies that any such computer runs a modified,

16  unauthorized version of the Leopard operating system.  PSYSTAR admits that it offers the Open

17  Computer for sale online and that PSYSTAR ships said computer throughout the United States

18  including into the Northern District of California.  PSYSTAR admits that it has made statements

19  concerning the number of computers sold.  PSYSTAR denies the allegations in the final sentence of

20  paragraph 12 of the Complaint, specifically: that PSYSTAR makes copies of the Leopard software;

21  that PSYSTAR offers downloads of 'updates' to the Leopard software from the website

22  www.psystar.com; that PSYSTAR copies any "updates" generated by the PLAINTIFF; and/or that

23  PSYSTAR generates unauthorized, modified versions of software updates from the PLAINTIFF.

24  13.    PSYSTAR admits that it sells a rack-mounted server referred to as the OpenServ.

25  PSYSTAR otherwise denies each and every allegation of paragraph 13 of the Complaint.

26  14.    PSYSTAR is without information or knowledge as to the allegations of paragraph 14 of the

27  Complaint and on that basis denies each and every allegation therein.

28

Answer and PsyStar Corporation's First Amended Counterclaim of Psystar Corporation
(Case No. CV-08-03251-WHA)

1   15.   PSYSTAR admits that the PLAINTIFF seeks an injunction against the alleged

2   misappropriation and alleged infringement of the PLAINTIFF's allegedly proprietary software and

3   alleged intellectual property; PSYSTAR denies that it has misappropriated any such proprietary

4   software or intellectual property.  PSYSTAR denies that its actions have harmed the consuming

5   public, sells a poor product, and/or has advertised and promoted any such product in a manner that

6   falsely and unfairly implied an affiliation with the PLAINTIFF.  PSYSTAR denies that its action

7   have and/or continue to cause harm to the PLAINTIFF; PSYSTAR likewise denies that its actions

8   constitute a misuse of PLAINTIFF's intellectual property.  PSYSTAR admits that the PLAINTIFF

9   seeks an award of actual damages (while concurrently denying that any exist), treble damages

10   (while concurrently denying that any such relief is appropriate,), and attorneys' fees and costs

11   (while concurrently denying that any such relief is appropriate); PSYSTAR denies that it has

12   engaged in any action that is unfair, unlawful, exploitive, or that otherwise causes consumer

13   confusion and injury nor that any such action has ever existed.

14

15                    **JURISDICTION AND VENUE**

16

17   16.   PSYSTAR admits that the Northern District of California has jurisdiction of the present

18   action in that the PLAINTIFF has brought the action pursuant to, *inter alia,* the copyright laws of

19   the United States.  PSYSTAR denies that it has caused the PLAINTIFF any harm.

20   17.   PSYSTAR admits that venue is proper in the Northern District of California in that

21   PSYSTAR has done business in this judicial district.  PSYSTAR otherwise denies the allegations of

22   paragraph 17 including that PSYSTAR has committed infringement of copyright and/or trademark

23   infringement, breached a contract, engaged in unfair competition, and/or continues to commit such

24   acts in this or any district.  PSYSTAR admits that the present action is an Intellectual Property

25   Action and is therefore exempt from the intra-District venue provisions of Local Rule 3-2(c).

26

27

28

{00349979v1}

-6-

**GENERAL ALLEGATIONS**

18.   PSYSTAR admits that the PLAINTIFF claims to license the use of the Mac OS for use only on Apple-labeled hardware although PSYSTAR is without information or knowledge as to what this otherwise vague and ambiguous terminology (*i.e.*, Apple-labeled hardware) refers.   PSYSTAR is without information or knowledge as to what is meant by an "original version of the Mac OS" and on that basis denies the allegations of the second sentence of paragraph 18 of the Complaint and believes that the Mac OS may be purchased online and/or from any number of resellers such as Amazon, AsenaShop, FadFusion, and SoftwareMedia.com.   PSYSTAR admits that the PLAINTIFF states that upgrades to the Mac OS may be licensed separately and, further, that the PLAINTIFF states its license prohibits the use of the Mac OS or upgrades on non-Apple hardware.

19.   PSYSTAR admits that a license agreement is attached as Exhibits 1 and 2 to the Complaint but is without information or knowledge with respect to whether those agreements are provided with each version of the Mac OS X or Max OS X Server and on that basis denies the allegations of the first sentence of paragraph 19 of the Complaint.   PSYSTAR admits that the quoted language matches that language as provided in the exhibit attached to the Complaint claiming to be the Mac OS X license and, further, that said quoted language also corresponds to that language in the exhibit purporting to be the Max OS X Leopard Server License Agreement; PSYSTAR otherwise denies all remaining allegations of paragraph 19 of the Complaint including whether or not said terms are valid and/or enforceable.

20.   PSYSTAR admits the allegations of paragraph 20.

21.   PSYSTAR admits the allegations of paragraph 21 but only to the extent that PSYSTAR has never engaged in any discussion concerning the allegations of paragraph 21 with the PLAINTIFF; PSYSTAR similarly notes that the PLAINTIFF has never denied PSYSTAR the authorization to install, use, or sell the Mac OS software on any non-Apple-labeled hardware until the filing of the present action.

Answer and PsyStar Corporation's First Amended Counterclaim of Psystar Corporation
(Case No. CV-08-03251-WHA)

**FIRST CLAIM FOR RELIEF**

**(Copyright Infringement)**

22.   PSYSTAR repeats and incorporates by reference its admission and denials as set forth in paragraphs 1-21 of the present Answer.

23.   PSYSTAR denies that Max OS, Mac OS X, Mac OS X version 10.5, and Mac OS X Server all constitute "an original work of authorship" "constituting copyrightable subject matter" as those terms are defined by the United States copyright laws and on that basis denies the allegations; PSYSTAR is without information or knowledge as to who contributed to the purported works of authorship identified in paragraph 23 of the Complaint and on that basis denies the allegations of paragraph 23.

24.   PSYSTAR admits that the PLAINTIFF claims to be the owner of the copyright registrations identified in paragraph 24 of the Complaint.  PSYSTAR is without information or knowledge as to whether registrations should have been granted as to the aforementioned works and on that basis denies the remaining allegations in paragraph 24.  PSYSTAR denies the allegation that PSYSTAR has infringed any valid copyright held by the PLAINTIFF.

25.   PSYSTAR denies the allegations of paragraph 25 including the allegation that PSYSTAR has in anyway infringed any of the PLAINTIFF's exclusive rights under the Copyright Act.

26.   PSYSTAR denies the allegations of paragraph 26 of the Complaint.

27.   PSYSTAR denies the allegations of paragraph 27 of the Complaint.

28.   PSYSTAR denies the allegations of paragraph 28 of the Complaint.

29.   PSYSTAR denies the allegations of paragraph 29 of the Complaint.

30.   PSYSTAR denies the allegations of paragraph 30 of the Complaint.

31.   PSYSTAR denies the allegations of paragraph 31 of the Complaint.

Answer and PsyStar Corporation's First Amended Counterclaim of Psystar Corporation
(Case No. CV-08-03251-WHA)

{00349979v1}

1

**SECOND CLAIM FOR RELIEF**

2

**(Contributory and Induced Copyright Infringement)**

3

4   32.   PSYSTAR repeats and incorporates by reference its admissions and denials as set forth in

5   paragraphs 1-31 of the present Answer.

6   33.   PSYSTAR denies the allegations of paragraph 33 of the Complaint.

7   34.   PSYSTAR denies the allegations of paragraph 34 of the Complaint.

8   35.   PSYSTAR denies the allegations of paragraph 35 of the Complaint.

9   36.   PSYSTAR denies the allegations of paragraph 36 of the Complaint.

10   37.   PSYSTAR denies the allegations of paragraph 37 of the Complaint.

11   38.   PSYSTAR denies the allegations of paragraph 38 of the Complaint.

12   39.   PSYSTAR denies the allegations of paragraph 39 of the Complaint.

13   40.   PSYSTAR denies the allegations of paragraph 40 of the Complaint.

14

15

**THIRD CLAIM FOR RELIEF**

16

**(Breach of Contract)**

17

18   41.   PSYSTAR repeats and incorporates by reference its admissions and denials as set forth in

19   paragraphs 1-40 of the present Answer.

20   42.   PSYSTAR denies the allegations of paragraph 42 of the Complaint in that the software disk

21   is not sealed or shrink-wrapped.

22   43.   PSYSTAR denies the allegations of paragraph 43 of the Complaint.

23   44.   PSYSTAR denies the allegations of paragraph 44 of the Complaint.

24   45.   PSYSTAR denies the allegations of paragraph 45 of the Complaint.

25

26

27

28

**FOURTH CLAIM FOR RELIEF**

**(Inducing Breach of Contract)**

46.    PSYSTAR repeats and incorporates by reference its admissions and denials as set forth in paragraphs 1-45 of the present Answer.

47.    PSYSTAR admits that it is aware of the existence of the License Agreement governing the use of the Max OS X software and certain conditions and terms thereof but lacks information or knowledge as to what particular terms and conditions are referred to by the PLAINTIFF and for that reason denies the allegation.

48.    PSYSTAR denies that it has advised, encouraged, and assisted others to breach the License Agreement; PSYSTAR has not advised consumers to acquire Mac OS X software and install, use, and run it on non-Apple-Labeled computers.  PSYSTAR denies that it has unlawfully induced breach of the License Agreement by others.

49.    PSYSTAR denies the allegations of paragraph 49 of the Complaint.

**FIFTH CLAIM FOR RELIEF**

**(Trademark Infringement)**

50.    PSYSTAR repeats and incorporates by reference its admissions and denials as set forth in paragraphs 1-49 of the present Answer.

51.    PSYSTAR admits that registered marks exist as attached to the Complaint as Exhibit 3 but is without information or knowledge as to what goods and service those marks pertain and on that basis denies the remaining allegations of paragraph 51.

52.    PSYSTAR admits that the PLAINTIFF has never expressly consented to the use of any trademark of the PLAINTIFF but alleges that PSYSTAR has never engaged in any discussion concerning the allegations of paragraph 52 with the PLAINTIFF; PSYSTAR further alleges that the PLAINTIFF has never denied PSYSTAR the authorization to use any mark of the PLAINTIFF.

1   PSYSTAR denies that any valid mark has been infringed and on that basis denies the remaining

2   allegations of paragraph 52.

3   53.    PSYSTAR admits that it is aware of the PLAINTIFF and its business but denies that

4   PSYSTAR has infringed any valid mark of the PLAINTIFF.

5   54.    PSYSTAR denies the allegation that it has engaged in an unauthorized use of any trademark

6   of the PLAINTIFF; PSYSTAR further denies that any action of PSYSTAR has caused deception or

7   confusion or mistake amongst consumers as to the origin, sponsorship, approval, affiliation,

8   connection, or association between the PLAINTIFF and PSYSTAR and on that basis denies the

9   remaining allegations of paragraph 54.

10   55.    PSYSTAR denies the allegations of paragraph 55 of the Complaint.

11   56.    PSYSTAR denies the allegations of paragraph 56 of the Complaint.

12   57.    PSYSTAR denies the allegations of paragraph 57 of the Complaint.

13   58.    PSYSTAR denies the allegations of paragraph 58 of the Complaint.

14   59.    PSYSTAR denies the allegations of paragraph 59 of the Complaint.

15

16                          **SIXTH CLAIM FOR RELIEF**

17                          **(Trademark Infringement)**

18

19   60.    PSYSTAR repeats and incorporates by reference its admissions and denials as set forth in

20   paragraphs 1-59 of the present Answer.

21   61.    PSYSTAR is without information or knowledge as to the existence of the unidentified

22   common law trademark rights of the PLAINTIFF and on that basis denies the allegations of

23   paragraph 61 of the Complaint.

24   62.    PSYSTAR is without information or knowledge as to the nature of existence of the

25   unidentified "various marks or . . . [purportedly] distinctive trade dress" referenced in paragraph

26   sixty two of the Complaint and on that basis denies those allegations.

27

28

1  63.    PSYSTAR denies the allegations of paragraph 63 because PSYSTAR has never sought to

2  cause confusion or mistake, or to deceive the public as to the origin, sponsorship, association or

3  approval of goods or services of PSYSTAR or to imply an association with the PLAINTIFF.

4  64.    PSYSTAR denies the allegations of paragraph 64 of the Complaint.

5  65.    PSYSTAR denies the allegations of paragraph 65 of the Complaint.

6  66.    PSYSTAR denies the allegations of paragraph 66 of the Complaint.

7  67.    PSYSTAR denies the allegations of paragraph 67 of the Complaint.

8  68.    PSYSTAR denies the allegations of paragraph 68 of the Complaint.

9  69.    PSYSTAR denies the allegations of paragraph 69 of the Complaint.

10 70.    PSYSTAR denies the allegations of paragraph 70 of the Complaint.

11 71.    PSYSTAR denies the allegations of paragraph 71 of the Complaint.

12 72.    PSYSTAR denies the allegations of paragraph 72 of the Complaint.

13

14                        **SEVENTH CLAIM FOR RELIEF**

15                        **(Trade Dress Infringement)**

16

17 73.    PSYSTAR repeats and incorporates by reference its admission and denials as set forth in

18 paragraphs 1-72 of the present Answer.

19 74.    PSYSTAR is without information and belief as to whether the PLAINTIFF is the owner of

20 the alleged Trade Dress and on that basis denies the allegations of paragraph 74.

21 75.    PSYSTAR is without information and belief as to what is well known among consumers

22 and what has become exclusively associated with the PLAINTIFF and the Leopard version of the

23 Mac OS X and on that basis denies the allegations of paragraph 75.

24 76.    PSYSTAR denies that PLAINTIFF's alleged Trade Dress is distinctive with respect to the

25 Max OS X Leopard operating system and whether the same distinguishes PLAINTIFF's goods and

26 services and on that basis denies the allegations of paragraph 76.

27 77.    PSYSTAR denies that PLAINTIFF's purported Trade Dress is distinctive and on that basis

28 denies the allegations of paragraph 77.

78.    PSYSTAR denies that PLAINTIFF's purported Trade Dress is non-functional.

79.    PSYSTAR denies that it has engaged in an unauthorized use of PLAINTIFF's purported Trade Dress and that any activity of PSYSTAR is likely to cause confusion, mistake, or deception with respect to the source of goods and services or as to the affiliation, connection, association, sponsorship or approval of such goods and services and on that basis denies the allegations of paragraph 79.

80.    PSYSTAR denies that it has violated Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

81.    PSYSTAR denies the allegations of paragraph 81 of the Complaint.

82.    PSYSTAR denies the allegations of paragraph 82 of the Complaint.

83.    PSYSTAR denies the allegations of paragraph 83 of the Complaint.

84.    PSYSTAR denies the allegations of paragraph 84 of the Complaint.

85.    PSYSTAR denies the allegations of paragraph 85 of the Complaint.

## EIGHTH CLAIM FOR RELIEF

### (Trademark Dilution)

86.    PSYSTAR repeats and incorporates by reference its admissions and denials as set forth in paragraphs 1-85 of the present Answer.

87.    PSYSTAR denies the allegations of paragraph 87 of the Complaint.

88.    PSYSTAR denies the allegations of paragraph 88 of the Complaint.

89.    PSYSTAR denies the allegation of paragraph 89 of the Complaint.

90.    PSYSTAR denies the allegations of paragraph 90 of the Complaint.

91.    PSYSTAR denies the allegations of paragraph 91 of the Complaint.

92.    PSYSTAR denies the allegations of paragraph 92 of the Complaint.

1

### NINTH CLAIM FOR RELIEF

2

### (State Unfair Competition)

3

4    93.    PSYSTAR repeats and incorporates by reference its admissions and denials as set forth in

5    paragraphs 1-92 of the present Answer.

6    94.    PSYSTAR denies the allegations of paragraph 94 of the Complaint.

7    95.    PSYSTAR denies the allegations of paragraph 95 of the Complaint.

8

9

### TENTH CLAIM FOR RELIEF

10

### (Common Law Unfair Competition)

11

12   96.    PSYSTAR repeats and incorporates by reference its admissions and denials as set forth in

13   paragraphs 1-95 of the present Answer.

14   97.    PSYSTAR denies the allegations of paragraph 97 of the Complaint.

15   98.    PSYSTAR denies the allegations of paragraph 98 of the Complaint.

16

17

### PRAYER FOR RELIEF

18

19   99.    PSYSTAR expressly denies that the PLAINTIFF is entitled to any of the relief requested in

20   the Claims for Relief.

21

22

### GENERAL DENIAL

23

24   100.   PSYSTAR further denies each and every allegation set forth in the Complaint to which

25   PSYSTAR has not specifically admitted, controverted, or denied.

26

27

28

1

**AFFIRMATIVE DEFENSES**

2

3   PSYSTAR asserts the following affirmative defenses and reserve the right to allege additional
4   defenses as they are discovered.

5

6   **First Affirmative Defense**
7   **(Failure to State a Claim)**

8

9   The PLAINTIFF has failed to state a claim upon which relief can be granted.

10

11   **Second Affirmative Defense**
12   **(Estoppel)**

13

14   The PLAINTIFF's claims are barred, in whole or in part, by the doctrine of estoppel.

15

16   **Third Affirmative Defense**
17   **(Waiver)**

18

19   The PLAINTIFF's claims are barred, in whole or in part, by the doctrine of waiver.

20

21   **Fourth Affirmative Defense**
22   **(Unclean Hands)**

23

24   The PLAINTIFF's claims are barred, in whole or in part, by the doctrine of unclean hands.

25

26

27

28

1     **Fifth Affirmative Defense**

2     **(Failure to Mitigate)**

3

4     The PLAINTIFF's claims are barred, in whole or in part, by its failure to mitigate any alleged

5     injury and/or its failure to mitigate any alleged damages.

6

7     **Sixth Affirmative Defense**

8     **(Lack of Injury in Fact)**

9

10    The PLAINTIFF cannot satisfy its burden of demonstrating that the PLAINTIFF suffered any

11    injury in fact, nor did the PLAINTIFF suffer any such injury.

12

13    **Seventh Affirmative Defense**

14    **(Special Case)**

15

16    The PLAINTIFF cannot satisfy its burden, in whole or in part, of demonstrating that the present

17    case is a special case.

18

19    **Eighth Affirmative Defense**

20    **(Lack of Standing to Assert Copyright / Trademark)**

21

22    The PLAINTIFF lacks standing to assert a claim of infringement of any alleged copyright and/or

23    trademark including, but not limited to, lack of right, title, and interest to bring an action related to

24    the same.

25

26

27

28

{00349979v1}

Answer and PsyStar Corporation's First Amended Counterclaim of Psystar Corporation
(Case No. CV-08-03251-WHA)

1      Ninth Affirmative Defense

2      (Lack of Infringement of Copyright / Trademark)

3

4      PSYSTAR has not directly or indirectly—by contribution or inducement—infringed any alleged

5      copyright and/or trademark of the PLAINTIFF.

6

7      Tenth Affirmative Defense

8      (Lack of Copyrightable Subject Matter)

9

10     PLAINTIFF's alleged copyrights lack protectable subject matter in that they lack original

11     expression as required by 17 U.S.C. § 102(a) and/or encompass an idea, procedure, process,

12     system, method of operation, concept, principle, or discovery as prohibited by 17 U.S.C. § 102(b).

13

14     Eleventh Affirmative Defense

15     (Fair Use of Copyright)

16

17     Any reproduction, display, derivation, or distribution of any valid copyright of the PLAINTIFF by

18     PSYSTAR is a fair use protected by the provisions of 17 U.S.C. § 107.

19

20     Twelfth Affirmative Defense

21     (First Sale / Exhaustion of Copyright)

22

23     Any distribution of any valid copyright of the PLAINTIFF by PSYSTAR is subject to the first sale

24     doctrine.

25

26

27

28

{00349979v1}

-17-

Answer and PsyStar Corporation's First Amended Counterclaim of Psystar Corporation
(Case No. CV-08-03251-WHA)

1

**Thirteenth Affirmative Defense**

2

**(Express License of Copyright)**

3

4   Any reproduction, display, derivation, or distribution of any valid copyright of the PLAINTIFF by

5   PSYSTAR is subject to an express license by and between the parties including but not limited to

6   the Apple Public Source License and/or one or more other Open Source licenses.

7

8   **Fourteenth Affirmative Defense**

9   **(Implied License to Copyright)**

10

11   Any reproduction, display, derivation, or distribution of any valid copyright of the PLAINTIFF by

12   PSYSTAR is subject to an implied license by and between the parties.

13

14   **Fifteenth Affirmative Defense**

15   **(Failure to Register Copyright)**

16

17   PLAINTIFF is prohibited from bringing action against PSYSTAR for the alleged infringement of

18   one or more of PLAINTIFF's copyrights for failure to register said copyrights with the Copyright

19   Office as required by 17 U.S.C. § 411.

20

21   **Sixteenth Affirmative Defense**

22   **(Lack of Willfulness)**

23

24   PSYSTAR has not willfully infringed—directly or indirectly—any copyright and/or trademark of

25   the PLAINTIFF.

26

27

28

Seventeenth Affirmative Defense

(Functionality of Trademark)

One or more of PLAINTIFF's trademarks and/or trade dress is functional as prohibited by 15 U.S.C. § 1052(e)(5).

Eighteenth Affirmative Defense

(Lack of Association / Lack of Indicia of Source)

One or more of PLAINTIFF's trademarks are not associated with any good or service of the PLAINTIFF nor are the trademarks indicative of source of any good or service.

Nineteenth Affirmative Defense

(Lack of Secondary Meaning of Trademark)

One or more of PLAINTIFF's trademark and/or trade dress are descriptive and lack requisite secondary meaning within the relevant consuming public as prohibited by 15 U.S.C. § 1052(e)(1).

Twentieth Affirmative Defense

(Generic Term)

One or more of PLAINTIFF's alleged trademarks are generic terms that do not warrant protection.

1  Twenty-First Affirmative Defense
2  (Lack of Actual Confusion)
3
4  There has been no actual confusion with respect to any activity of PSYSTAR and one or more of
5  the trademarks and/or trade dress of the PLAINTIFF.
6
7  Twenty-Second Affirmative Defense
8  (Lack of Likelihood of Confusion)
9
10  There is no likelihood that any members of the relevant consuming public will be confused with
11  respect to any activity of PSYSTAR and one or more of the trademarks and/or trade dress of the
12  PLAINTIFF.
13
14  Twenty-Third Affirmative Defense
15  (Nominative Use of Trademark)
16
17  The use of any trademark of the PLAINTIFF by PSYSTAR is a nominative fair use in that the
18  PLAINTIFF's product or service is not readily identifiable without the use of the trademark;
19  PSYSTAR only uses as much of the trademark as is reasonably necessary to identify the
20  PLAINTIFF's products or services; and PSYSTAR does nothing that would, in conjunction with
21  the trademark, suggest to the relevant consuming public a sponsorship or endorsement by the
22  PLAINTIFF.
23
24
25
26
27
28

{00349979v1}

1

**Twenty-Fourth Affirmative Defense**

2

**(Fair Use of Trademark)**

3

4   The use of any trademark of the PLAINTIFF by PSYSTAR is protected by the Fair Use Doctrine

5   and/or the First Amendment including but not limited to parody, non-commercial use, product

6   comparison, and/or non-competing/non-confusing use.

7

8

**Twenty-Fifth Affirmative Defense**

9

**(Lack of Privity)**

10

11   There is no contract by and between PSYSTAR and the PLAINTIFF whereby PSYSTAR could

12   allegedly breach the same.

13

14

**Twenty-Sixth Affirmative Defense**

15

**(Partial Failure of Consideration)**

16

17   PLAINTIFF's claims are wholly or partially barred because of a failure of consideration.

18

19

**Twenty-Seventh Affirmative Defense**

20

**(Preemption)**

21

22   PLAINTIFF's claims are wholly or partially barred because the contract is preempted in whole or

23   in part by federal law.

24

25

26

27

28

{00349979v1}

-21-

Answer and PsyStar Corporation's First Amended Counterclaim of Psystar Corporation
(Case No. CV-08-03251-WHA)

**Twenty-Eighth Affirmative Defense**

**(Illegality)**

PLAINTIFF's claims are wholly or partially barred because the contract is unenforceable on the grounds illegality.

**Twenty-Ninth Affirmative Defense**

**(Public Policy)**

PLAINTIFF's claims are wholly or partially barred in that the contact is unenforceable as being contrary to the public policy of the law of the State of California.

**Thirtieth Affirmative Defense**

**(Unconscionability)**

PLAINTIFF's claims are wholly or partially barred in that the contract is unenforceable in that it is procedurally and/or substantively unconscionable.

**Thirty-First Affirmative Defense**

**(Vague, Ambiguous, and Otherwise Unintelligible Contract)**

The alleged contract utilizes vague, ambiguous, and otherwise unintelligible terms thereby preventing a meeting of the minds as to the scope, rights, and reservations of the alleged contract.

1

**Thirty-Second Affirmative Defense**

2

**(Lack of Independently Actionable Claim)**

3

4    PLAINTIFF's unfair competition claims fail to identify a requisite and independently actionable

5    activity of PSYSTAR giving rise to any alleged unfair competition.

6

7

**Thirty-Third Affirmative Defense**

8

**(Severability)**

9

10   Certain provisions of the alleged contract are unenforceable and therefore severable from any

11   otherwise valid provisions of the contract.

12

13

**Thirty-Fourth Affirmative Defense**

14

**(Frustration of Purpose)**

15

16   Enforcement of the alleged contract by and between the PLAINTIFF and PSYSTAR as alleged by

17   the PLAINTIFF would frustrate and cause the alleged contract to operate in a manner contrary to

18   the purpose of the same.

19

20

**Thirty-Fifth Affirmative Defense**

21

**(Consideration Paid in Full)**

22

23   PSYSTAR has delivered on its consideration in full and the PLAINTIFF, notwithstanding said

24   consideration, now seeks to repudiate the contract.

25

26

27

28

{00349979v1}

-23-

Answer and PsyStar Corporation's First Amended Counterclaim of Psystar Corporation

(Case No. CV-08-03251-WHA)

1

**Thirty-Sixth Affirmative Defense**

2

**(Failure to Act in a Commercially Reasonable Manner)**

3

4 PLAINTIFF's actions are unreasonable in light of one or more provisions of the California

5 Commercial Code.

6

7

**Thirty-Seventh Affirmative Defense**

8

**(Copyright Misuse)**

9

10 The PLAINTIFF has attempted to leverage the rights granted under any valid copyright to areas

11 outside the exclusive rights granted by the Copyright Act. The PLAINTIFF has engaged in certain

12 anticompetitive behavior and/or other actions that are in violation of the public policy underlying

13 the federal copyright laws including, but not limited to, a failure to abide by the fair use and first

14 sale doctrines.

15

16 The PLAINTIFF has further engaged in copyright misuse through the use of an illicit trying

17 provision in its end-user license agreement for the Mac OS X with respect to only utilizing the Mac

18 OS X software on Apple-Labeled Computer Hardware Systems and as is further detailed in

19 PSYSTAR's counterclaims for violations of the Sherman Act, Clayton Act, and Cartwright Act,

20 which are incorporated herein by reference. By attempting to enforce this illicit tying provision,

21 the PLAINTIFF is attempting to obtain, maintain, and/or enjoy rights not granted by the Copyright

22 Act including, but not limited to, destroying competition in the Mac OS Capable Computer

23 Hardware Systems market, which is wholly unrelated to any valid copyright.

24

25 The PLAINTIFF has further engaged in copyright misuse by utilizing any valid copyright in the

26 Mac OS to maintain its monopoly in the Apple-Labeled Computer Hardware System market and is

27 further detailed in PSYSTAR's counterclaims for violations of the Sherman Act, Clayton Act, and

28 Cartwright Act, which are incorporated herein by reference. By attempting to enforce its End User

{00349979v1}

-24-

Answer and PsyStar Corporation's First Amended Counterclaim of Psystar Corporation
(Case No. CV-08-03251-WHA)



1    License Agreement as it pertains to any valid copyright, PLAINTIFF aims to maintain the

2    aforementioned monopoly, the PLAINTIFF is attempting to obtain, maintain, and/or enjoy rights

3    not granted by the Copyright Act including, but limited to, maintaining its monopoly in the Apple-

4    Labeled Computer Hardware Systems submarket, which is wholly unrelated to any valid copyright.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**COUNTERCLAIM**

**Nature of this Action**

1.     This is an action for declaratory relief under the Declaratory Judgment Act (28 U.S.C. § 2201) (hereinafter referred to as the "First Amended Counterclaim").

2.     PsyStar Corporation ("PSYSTAR") seeks a declaration as to the unenforceability of certain copyrights held and asserted by Apple Inc. ("APPLE") in its July 3, 2008 Complaint ("Complaint") and December 2, 2008 Amended Complaint ("First Amended Complaint").  PSYSTAR's request for declaratory relief as to unenforceability of these copyrights is predicated upon APPLE having leveraged (and APPLE continuing to leverage) the limited monopoly granted by the U.S. Copyright Office under the U.S. Copyright Act to areas outside that statutory grant.  APPLE's leveraging conduct therefore constitutes copyright misuse, which renders the corresponding copyrights unenforceable.

3.     APPLE leverages its asserted copyrights in the Macintosh OS X Operating System (the "Mac OS") to secure exclusive rights not granted by the U.S. Copyright Office.  APPLE has secured—and continues to seek to secure—exclusive rights in certain hardware components referred to herein as Apple-Labeled Computer Hardware Systems vis-à-vis the Mac OS.  APPLE illicitly and improperly secured and continues to secure these rights to the exclusion of Mac OS Capable Computer Hardware Systems.  APPLE leverages its asserted copyrights through its End User License Agreement ("EULA") and the misapplication of the Digital Millennium Copyright Act ("DMCA").

4.     ~~Sections 1 and 2 of the Sherman Act, Section 3 of the Clayton Act, Section 16700 of the California Business and Professions Code (the Cartwright Act), Section 17200 of the California Business and Professions Code, and state common law with respect to the~~PSYSTAR also seeks a corresponding declaration as to APPLE having violated Section 17200 of the California Business & Professions Code.  PSYSTAR seeks this declaration of relief with respect to APPLE's unfair and anticompetitive conduct in securing the aforementioned exclusive rights in contravention of the

Answer and PsyStar Corporation's First Amended Counterclaim ~~of Psystar Corporation~~
(Case No. CV-08-03251-WHA)

1   policy and spirit of not only the United States copyright laws but state and federal antitrust law by

2   counterdefendant APPLE (collectively referred to as the "Counterclaim").

3

4                                   **Jurisdiction and Venue**

5

6   5.      The First

7   and Second counterclaims set forth in Claim for Relief of this First Amended Counterclaim are is

8   brought pursuant to 28 U.S.C. § 2201.  This Court is thereby vested with subject matter jurisdiction

9   pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this case presents a federal question under the

10  United States Copyright Act.  15 U.S.C. § 1 (the Sherman Act) to seek redress for APPLE's illegal

11  tying of the Mac OS to Apple-Labeled Computer Hardware Systems as those products and markets

12  are defined below.

13  1.      The Second Claim for Relief of this Counterclaim is brought pursuant to 15 U.S.C. § 2 (the

14  Sherman Act) to seek redress for APPLE's attempts to maintain its monopoly and control prices in

15  the Apple-Labeled Computer Hardware Systems submarket and to destroy competition in the Mac

16  OS Capable Computer Hardware Systems market as those markets (and submarkets) are defined

17  below.

18  2.      The Third Claim for Relief of this Counterclaim is brought pursuant to 15 U.S.C. § 14 (the

19  Clayton Act) to seek redress for APPLE's illegal requirements of its customers to exclusively deal

20  with APPLE as it pertains to the Mac OS and Apple-Labeled Computer Hardware Systems in

21  domestic, interstate commerce.

22  3.      The Court has jurisdiction over the First, Second, and Third Claims for Relief pursuant to

23  35 U.S.C. §§ 1331 and 1337.

24  4.      The Fourth Claim for Relief of this Counterclaim is brought pursuant to the California

25  Cartwright Act, California Business and Professions Code § 16700 *et seq.* to seek redress for

26  APPLE's unlawful conduct in violation of state law.

27

28

{00349979v1}

-27-

Answer and PsyStar Corporation's First Amended Counterclaim of Psystar Corporation
(Case No. CV-08-03251-WHA)

1    5.    The facts underlying the Fourth Claim for Relief share a common nucleus of operative facts

2    and law with the first, second, and third claims for relief in this Counterclaim.  This Court,

3    therefore, has supplemental subject matter jurisdiction pursuant to 28 U.S.C. § 1367.

4    6.    The Third and Fourth counterclaims set forth in Fifth Claim for Relief of this First

5    Amended Counterclaim are is brought pursuant to California unfair competition law, California

6    Business and Professions Code § 17200 *et seq.* to seeks redress for APPLE's unfair and unlawful

7    conduct in violation of state law.

8    7.    The facts underlying the Third and Fourth counterclaims Fifth Claim for Relief share a

9    common nucleus of operative facts and law with the Ffirst and , Ssecond , third, and fourth

10   counterclaims for relief in this First Amended Counterclaim.  This Court, therefore, has

11   supplemental subject matter jurisdiction pursuant to 28 U.S.C. § 1367(a).

12   8.    The Sixth Claim for Relief of this Counterclaim is brought pursuant to the California

13   common law of unfair competition.

14   9.    The facts underlying the Sixth Claim for Relief share a common nucleus of operative facts

15   and law with the First, Second, Third, and Fourth Causes of Action in this Counterclaim.  This

16   Court, therefore, has supplemental subject matter jurisdiction pursuant to 27 U.S.C. § 1367.

17   10.8.  This First Amended Counterclaim is a compulsory counterclaim brought in accordance with

18   Federal Rule of Civil Procedure 13(a)(1).  T in that the aforementioned causes of action arise out of

19   the transactions or occurrences that are is the subject matter of APPLE's Complaint and First

20   Amended Complaint claim and does not require adding another party over which the Court cannot

21   acquire jurisdiction.

{00349979v1}

-28-

Answer and PsyStar Corporation's First Amended Counterclaim of Psystar Corporation
(Case No. CV-08-03251-WHA)

**The Parties**

11.9.   APPLE is a California Corporation with its principal place of business at 1 Infinite Loop, Cupertino, California 95014.  APPLE markets the Macintosh Computer and the OS X Operating System (the "Mac OS").

12.10.  Counterclaimant PSYSTAR is a Florida Corporation with its principal place of business at 10475 NW 28th Street, Doral, Florida, 33172.

13.11.  PSYSTAR manufactures and distributes computers tailored to customer choosing.  As a part of its devotion to supporting customer choice, PSYSTAR supports a wide range of operating systems including Microsoft Windows XP and XP 64-bit, Windows Vista and Vista 64-bit, Linux (32 and 64-bit kernels), and the Mac OS.  PSYSTAR generally refers to this custom tailored line of computers as Open Computers.

14.12.  Open Computers are personal computers that, in the case of the Mac OS, work like a Macintosh including the latest Macintosh operation system—OS X.5 (a.k.a. Leopard).  PSYSTAR Open Computers, again in the case of the Mac OS, run the OS X like that of a Macintosh from APPLE albeit on a computer hardware system offered at a considerably lower price and with considerably higher performance.  For example, one of the least expensive Macintosh machines on the market is for the Mac Mini, which PSYSTAR is informed and believes, and thereon alleges, costs more than that of an Open Computer from PSYSTAR.  PSYSTAR is informed and believes, and thereon alleges, that the Mac Mini offers poorer performance, smaller storage space, and RAM. Furthermore, the Mac Mini does not have the option for an alternative video card such as an NVIDIA GeForce 8600, which is supported by the PSYSTAR Open Computer.

1        **General Allegations**

2

3    ~~The Relevant Markets~~

4    ~~15.~~13.   For the purposes of ~~the present~~ this First Amended Counterclaim, PSYSTAR refers to the

5    following ~~is informed and believes, and thereon alleges, that there are two relevant~~ product~~s~~

6    ~~markets~~: the Mac OS, Mac OS Capable Computer Hardware Systems, and Apple-Labeled

7    Computer Hardware Systems.  The ~~first product market is that of the~~ Mac OS has been briefly

8    referenced above with respect to the Mac OS X Operating System.  ~~The second product market is~~

9    ~~that of c~~Computer hardware capable of executing the Mac OS is referred to herein as  ~~(~~"Mac OS

10   Capable Computer Hardware Systems"~~)~~ such as the Open Computer from PSYSTAR.  Apple-

11   Labeled Computer Hardware Systems are those hardware systems manufactured exclusively by

12   APPLE and ~~.  Within the Mac OS Capable Computer Hardware Systems market is a~~ belonging to a

13   subsidiary market of Mac OS Capable Computer Hardware Systems.  That subsidiary market—the

14   Apple-Labeled Computer Hardware Systems market—is ~~a~~rtificially created, dominated, and

15   maintained by APPLE~~— the Apple-Labeled Computer Hardware Systems submarket~~.  All of the

16   aforementioned products are sold ~~The relevant geographic market is, in both instances,~~ in the

17   United States of America.

18

19       **The Mac OS**

20   ~~16.~~14.  More specifically, T~~t~~he Mac OS is a graphical user interface-based operating system that

21   (prior to the emergence of PSYSTAR) was ~~is~~ operable exclusively on the Macintosh line of

22   computer hardware and other computer hardware made by and available only from APPLE~~—~~

23   Apple-Labeled Computer Hardware Systems.  ~~On information and belief, PSYSTAR alleges that~~

24   ~~APPLE is the exclusive manufacturer and master licensor of the Mac OS.~~  Operating systems like

25   the Mac OS control and direct the interaction between software applications such as word

26   processors, Internet browsers, and applications and the central processing unit of the computer and

27   its various hardware components.

28

{00349979v1}

1    17. 15.   APPLE, as noted above, is the exclusive manufacturer and/or master licensor of the Mac

2    OS.  APPLE, therefore, possesses monopoly power in the Mac OS market.  As addressed herein,

3    PSYSTAR is informed and believes, and thereon alleges, that the Mac OS market is distinct and

4    unique as compared to other operating systems in the marketplace including but not limited to the

5    Windows operating system from Microsoft Corporation.  As such, PSYSTAR alleges on

6    information and belief that the Windows operating system is not and cannot be considered an

7    effective substitute for the Mac OS; the same holds true for any other operating system.

8    PSYSTAR, in that regard, is informed and believes, and thereon alleges, that other operating

9    systems are not reasonably interchangeable by consumers with respect to the Mac OS.

10   18. 16.   PSYSTAR is informed and believes, and thereon alleges, that there are substantial barriers

11   to entry in the market for operating systems, including the Mac OS market.  It is prohibitively

12   difficult, time-consuming, and expensive to create any operating system much less one that would

13   offer substantially identical functionality, security, stability, and other aspects offered by the Mac

14   OS.  As suchIn general, a potential new operating system entrant manufacturer faces an almost

15   insurmountable barrier to successful entry to the operating system market.  Those barriers would be

16   raised even higher with respect to an operating system that would directly compete with , in

17   general, but specifically the Mac OS market.

18

19        **Mac OS Capable Computer Hardware Systems**

20   19. 17.   Computer hardware systems, in general, perform central processing unit functions.

21   Operating systems—like the Mac OS—manage the interaction between various pieces of hardware

22   such as a monitor or printer.  The operating system also manages various software applications

23   running on a computing device.

24   20. 18.   A seemingly infinite list of manufacturers may be found in the computer hardware system

25   marketplace.  These manufacturers construct entire hardware systems (*i.e.*, computers) marketed

26   and sold to the consumer either directly or via an authorized re-seller.  The participants in the

27   computer hardware system marketplace include Dell, Acer, Lenovo, Sony, and Hewlett-Packard to

28   name but a few.

1   ~~21.~~19.  Any number of companies dedicated to manufacturing and sourcing various components

2   used by the aforementioned manufacturers (*e.g.*, hard drives (Western Digital), processors (Intel

3   and AMD), ~~and~~ graphics processing cards (NVIDIA)) also exist.

4   ~~22.~~20.  PSYSTAR is informed and believes, and thereon alleges, that one or more of these

5   manufacturers of computer hardware systems are capable and desirous of manufacturing computer

6   hardware systems that host, execute, and run the Mac OS.  ~~PSYSTAR is informed and believes, and~~

7   ~~thereon alleges, that t~~There is no compelling technological reason that any one of the

8   aforementioned computer hardware system manufacturers could not accumulate and assemble the

9   hardware components in an Apple-Labeled Computer Hardware System such that said system

10  would be ~~manufacture and sell computer hardware systems~~ capable of hosting, executing, and

11  running the Mac OS.  As noted above, PSYSTAR refers to the computer systems that could and

12  would be manufactured by these entities as ~~, therefore, is informed and believes, and thereon~~

13  ~~alleges, that these entities constitute a market that PSYSTAR hereinafter refers to as the~~ Mac OS

14  Capable Computer Hardware Systems ~~market~~.

15  ~~23.     PSYSTAR is informed and believes, and thereon alleges, that competition amongst~~

16  ~~members of the Mac OS Capable Computer Hardware Systems market exists notwithstanding the~~

17  ~~Mac OS and APPLE's otherwise exclusionary conduct as detailed below.  PSYSTAR is informed~~

18  ~~and believes, and thereon alleges, that the Mac OS Capable Hardware Systems market is separate~~

19  ~~and distinct from the Mac OS market.~~

20  ~~24.~~21.  ~~On information and belief, PSYSTAR alleges that t~~As there is no technical reason that a

21  third-party could not accumulate and assemble the hardware components in an Apple-Labeled

22  Computer Hardware System such that said system would be capable of running the Mac OS, ~~that is,~~

23  ~~such that the system would constitute a Mac OS Capable Computer Hardware System.  O~~on

24  information and belief PSYSTAR alleges that but for the exclusionary and leveraging conduct of

25  APPLE ~~—said~~ ~~and other~~ conduct amounting to unfair competition ~~—, as set forth in greater detail~~

26  ~~herein, and as exemplified by the activities of PSYSTAR,~~ a third-party (as evidenced by the

27  activities of PSYSTAR) could and would accumulate, assemble, and market the hardware

28  components capable of running the Mac OS.

1

2     **Apple-Labeled Computer Hardware Systems**

3     ~~25.~~22.   ~~PSYSTAR is informed and believes, and thereon alleges, that n~~Notwithstanding the various

4     ~~such diverse competition amongst~~ computer hardware manufacturers in the marketplace, none of

5     the aforementioned companies currently manufacture computer hardware systems that support the

6     Mac OS.  APPLE is the only manufacturer of systems operating the Mac OS.  APPLE's exclusive

7     line of hardware systems that support the Mac OS include the Mac Pro, the Mac Mini, the

8     MacBook, the MacBook Air, MacBook Pro, and iMac.  ~~For the purposes of this Counterclaim,~~

9     PSYSTAR, as noted above, refers to the exclusive line of APPLE hardware systems that support

10    the Mac OS ~~are referred to~~ as Apple-Labeled Computer Hardware Systems.  PSYSTAR is informed

11    and believes, and thereon alleges, that but for the anticompetitive conduct of APPLE as outlined

12    herein, Apple-Labeled Computer Hardware Systems would ~~otherwise~~ be a competing member of

13    the otherwise diverse Mac O~~SC~~ Capable Computer Hardware Systems market.  ~~That is, APPLE's~~

14    ~~anticompetitive conduct has created a subsidiary market within the Mac OS Capable Computer~~

15    ~~Hardware Systems market of which APPLE is the only member and wields monopoly power.~~

16    23.     ~~On information and belief,~~ PSYSTAR alleges that by virtue of APPLE's leveraging of

17    copyrights in the context of APPLE's ~~own End User License Agreement (~~EULA), spurious

18    litigation via the DMCA, and various other anti- and unfair competitive conduct as set forth in

19    greater detail herein, there is no viable alternative to the purchase and use of Apple-Labeled

20    Computer Hardware Systems for users who wish to use the Mac OS, for a prospective buyer of the

21    Mac OS, or for a user of an older version of the Mac OS ~~other than the forced purchase of an~~

22    ~~Apple-Labeled Computer Hardware System~~.  Without an operating system, a computer hardware

23    system can perform virtually no useful tasks thus making the installation of the Mac OS a necessity.

24    The Mac OS—at least according to APPLE—can only be installed on Apple-Labeled-Computer

25    Hardware Systems, a restriction that APPLE enforces through the aforementioned misuse of its

26    copyrights.  Mac OS users are—through APPLE's copyright misuse—thereby locked in to a

27    component not otherwise covered by any APPLE copyright—an Apple-Labeled Computer

28    Hardware System ~~In light of the importance of an operating system, the potential benefit to a~~

-33-
                    ~~Answer and~~ PsyStar Corporation's First Amended Counterclaim ~~of Psystar Corporation~~
                                         (Case No. CV-08-03251-WHA)

1  monopolist and the potential economic and social cost of monopolization in a second market—the

2  Apple-Labeled Computer Hardware Systems submarket vis-à-vis the Mac OS Capable Computer

3  Hardware Systems market—is very high.

4  26.

5  27.   On information and belief, PSYSTAR alleges that the Mac OS, Apple-Labeled Computer

6  Hardware Systems, and Mac OS Capable Computer Hardware Systems that are denied operability

7  (technologically or contractually) with the Mac OS are all sold in domestic, interstate commerce.

8  28.

9  **29.   The Mac OS Market is Distinct From and Lacks Interchangeability with Other OSs**

10  30.   On information and belief, PSYSTAR alleges that there is a recognized and distinct product

11  market in the Mac OS.  APPLE has taken great efforts to define the Mac OS as a separate and

12  distinct market especially with respect to any and all other operating systems.  APPLE's efforts are

13  not in vain as consumers and merchants have come to recognize the Mac OS as a separate and

14  distinct market with respect to any and all other operating systems, especially the Windows

15  operating system from Microsoft.

16

17        *"Think Different"*

18  31.   PSYSTAR is informed and believes, and thereon alleges, that APPLE's efforts to define the

19  Mac and Mac OS as an environment of its own began no later than 1997 when APPLE released its

20  *Think Different* advertising campaign.  APPLE used the *Think Different* campaign in both print and

21  television mediums.  In this campaign, APPLE sought to distinguish itself as a significant,

22  historical differentiator by placing the company in the context of the likes of Albert Einstein, Bob

23  Dylan, Thomas Edison, Mahatma Gandhi, Frank Lloyd Wright, and Pablo Picaso among others.

24  The television advertisement was accompanied by a voice over stating *inter alia*:

25        "[h]ere's to the crazy ones.  The misfits.  The rebels.  The troublemakers. . . . You
26        can praise them, disagree with them, quote them, disbelieve them, glorify or vilify
        them.  About the only thing you can't do is ignore them.  Because they change
27        things. . . . While some see them as the crazy ones, we see genius.  Because they

28

{00349979v1}

-34-

Answer and PsyStar Corporation's First Amended Counterclaim of Psystar Corporation
(Case No. CV-08-03251-WHA)

1   people who are crazy enough to think they can change the world, are the ones who

2   do."

3   32.   APPLE utilized a print advertisement campaign, as well, wherein APPLE computers and

4   consumer electronic devices were pictured alongside the *Think Different* slogan.  Another series of

5   print advertisements utilized a portrait of historical innovators that changed the world alongside the

6   APPLE logo without reference to any particular product.

7   33.   On information and belief, PSYSTAR alleges that APPLE sought to establish a counter-

8   culture image—including and especially with respect to the traditional Windows based computing

9   environment—through its *Think Different* campaign.  PSYSTAR is informed and believes, and

10   thereon alleges, that this campaign was successful in that the *Think Different* campaign has been

11   referred to as 'The Ad Campaign That Restored Apple's Reputation.'

12   _____

13   *"Get a Mac"*

14   34.   PSYSTAR is informed and believes, and thereon alleges, that APPLE continued to

15   distinguish the Mac OS from the Windows operating system in its *Get a Mac* campaign, which

16   commenced in 2006 and continues to the present.  Through this campaign, actor Justin Long, in

17   casual dress, introduces himself as a Mac while another actor, John Hodgman, identifies himself as

18   a PC running the Microsoft Windows operating system; the PC character is dressed in formal,

19   stuffy attire.  The Mac and the PC then 'act out' and describe how their capabilities and attributes

20   differ.  While the vignettes differ from commercial to commercial, they all convey an identical

21   message—a Mac is not a Windows-Based PC and a Windowed-Based PC is certainly not a Mac.

22   The Mac OS and Windows operating system are not merely differing operating systems with no

23   interchangeability but cultural icons representative of different lifestyles, markets, and that the

24   computing devices of each environment are used for wholly different audiences.

25   35.   PSYSTAR is informed and believes, and thereon alleges, that APPLE intends to convey the

26   message that a Mac user would not use a Windows-Based PC and a Windows-Based PC user would

27   not use a Mac, lending credence to the cultural adage 'once you've had Mac, you never go back.'

28   *InsideCRM* has, in fact, directly referenced APPLE's *I'm a Mac* advertising campaign with respect

{00349979v1}

-35-

Answer and PsyStar Corporation's First Amended Counterclaim of Psystar Corporation
(Case No. CV-08-03251-WHA)

1   to APPLE attempting to create "a hip brand" and "strong identification" wherein "[t]he Mac guy is

2   smooth and confident, while [the] PC appears uptight and old."  The message is, "[o]nce you've

3   become smooth, would *you* want to go back to uptight?"  PSYSTAR is informed and believes, and

4   thereon alleges, that APPLE intends to convey the message that Mac users—users of the Mac OS—

5   do not nor will they ever switch to a PC and the Windows operating system environment.

6   

7       **Lack of Cross-Elasticity and SSNIP**

8   36.   PSYSTAR is informed and believes, and thereon alleges, that marketplace economics

9   likewise support the assertion that the Windows operating environment is not a viable substitute for

10  the Mac OS.  For example, the MacBook is one of the cheapest Macintosh products commercially

11  available that includes the Mac OS and traditional computer components (*e.g.*, a monitor and a

12  keyboard).  A MacBook with a 2.1GHz Intel Core 2 Duo processor, 1GB memory, 120GB hard

13  drive, and combo drive sells for approximately $1,099.00 from the apple.com website.  A similarly

14  configured computer running an operating system other than the Mac OS retails at dell.com for

15  approximately $674.00, which is nearly $500 less than that of its Mac OS and Apple-Labeled

16  Computer Hardware System counterpart.

17  37.   PSYSTAR is informed and believes, and thereon alleges, that a top of the line MacBookPro

18  with 2.5GHz Intel Core 2 Duo processor, 2GB memory, 250GB hard drive, Double-layer

19  SuperDrive, and 512MB NVIDIA GeForce 8600M GT graphics card sells for approximately

20  $2,799.00 from the apple.com website.  A similarly configured computer (albeit with superior

21  hardware components versus that of the MacBookPro) and running an operating system other than

22  the Mac OS retails at dell.com for approximately $2,300.00, which is nearly $500 less than that of

23  its Mac OS and Apple-Labeled Computer Hardware System counterpart.

24  38.   PSYSTAR is informed and believes, and thereon alleges, that there is a substantial, upward

25  price differentiation between the Mac OS / Apple-Labeled Computer Hardware Computer System

26  and that of a Mac OS-Capable Computer Hardware System running a non-Mac OS variant and, in

27  some instances, with superior hardware.  Notwithstanding the consistent upward differentiation in

28  price across a broad spectrum (*i.e.*, from the least expensive Apple-Labeled Computer Hardware

1   System to the most expensive Apple-Labeled Computer Hardware System) by and between a

2   Computer Hardware System without a Mac OS and a Apple-Labeled Computer Hardware System

3   with the Mac OS, studies by Satmetrix Systems found that Apple is known for its "market

4   performance and brand leadership" and that APPLE "far outranks its closest competitor." Further,

5   APPLE is "well known for its passionate and dedicated customer base."

6   39.     PSYSTAR is informed and believes, and thereon alleges, that APPLE's customer loyalty is

7   well-established notwithstanding the higher prices of an Apple-Labeled Computer Hardware

8   System versus those of a similarly situated non-APPLE product.  APPLE customers have, in fact,

9   been referred to by *Seeking Alpha* as "zealots" and "fanboys" in addition to "Mac loyalists."  These

10  customers, accordingly to *Seeking Alpha*, will "defend the company and its products in any debate

11  going on around them."

12  40.     PSYSTAR is informed and believes, and thereon alleges, that customers of APPLE and

13  users of the Mac OS would not consider any other operating system, including but not limited to

14  the Windows operating system from Microsoft, to be a reasonably interchangeable alternative much

15  less one that serves the same purpose as the Mac OS.

16  41.     PSYSTAR is informed and believes, and thereon alleges, that any other operating system,

17  including but not limited to the Windows operating system lacks the potential or ability to deprive

18  APPLE of its customers, especially at a significant level of business as it concerns the Mac OS.

19  42.     PSYSTAR is informed and believes, and thereon alleges, that there is insufficient cross-

20  elasticity of demand with respect to the Mac OS and any other operating system, including but not

21  limited to the Windows operating system.  PSYSTAR is informed and believes, and thereon

22  alleges, that APPLE has made a conscious and successful effort to create inelasticity of demand

23  through product differentiation in its Mac OS and with respect to its advertising and perception to

24  consumers in the marketplace.  PSYSTAR is informed and believes, and thereon alleges, that

25  APPLE seeks to embed in the mind of consumers and the marketplace as a whole that there is no

26  substitute for the Mac OS, including but not limited to the Windows operating system or Linux.

27  PSYSTAR is informed and believes, and thereon alleges, that APPLE attempts to distinguish the

28  Mac OS from any other operating systems in the market through, at the least, its user interface,

{00349979v1}

-37-

1  which APPLE admits in its Complaint with respect to novelty (¶ 2); ease-of-use and pleasure (¶¶ 3,

2  8); speed and stability (¶ 4); visual appearance and elegance (¶¶ 4, 8); careful, powerful, and

3  polished conception (¶ 5); uniqueness and creativity (¶ 5); and acclaim in the market (¶ 6).

4  43.    PSYSTAR is informed and believes, and thereon alleges, that a percentage change in price

5  of one product, namely the Mac OS, will not result in a change in quantity that consumers will

6  demand of another product as is evidenced by the price differentiations and allegations as made by

7  APPLE in its *Complaint* and as otherwise set forth above.

8  44.    PSYSTAR is further informed and believes, and thereon alleges, that a 'small but

9  significant non-transitory increase in price' (SSNIP), including one of at least five percent in the

10  Mac OS, will not result in a change in demand for the Mac OS.  PSYSTAR is informed and

11  believes, and thereon alleges, that such a SSNIP would not likely result in consumers of the Mac

12  OS or Apple-Labeled Computer Hardware Systems or potential purchasers of the Mac OS or

13  Apple-Labeled Computer Hardware Systems electing to purchase another operating system, such as

14  the Windows operating system.  PSYSTAR is informed and believes, and thereon alleges, that

15  APPLE, as a monopolist in the Mac OS market, could profitably impose a SSNIP with respect to

16  the Mac OS and not suffer a material loss of customers choosing a substitute product, such as the

17  Windows operating system.  The nearly $500 price differentiation as illustrated above is, at the

18  least, suggestive of the same.

19  45.    PSYSTAR, on information and belief, therefore alleges that the Windows operating

20  system—and any other third-party operating system for that matter—does not constitute a viable

21  substitute product and should not be included in defining the relevant market.  In that regard,

22  PSYSTAR, on information and belief, alleges that the first relevant market is that of the Mac OS to

23  the exclusion of other operating systems.

24

25  **Apple's Anticompetitive Conduct**

26  46.24.  PSYSTAR, on information and belief, alleges that APPLE is content with the knowledge

27  that it has exclusive rights to the of having monopoly power in the Mac OS market and that nearly

28  insurmountable barriers exist with respect to any other entity introducing a Mac OS-like operating

1    system.  PSYSTAR is informed and believes, and thereon alleges, that the most significant

2    potential competitive threat to APPLE and the Mac OS market is, therefore, not from a new

3    operating system but from computer hardware system manufacturers that may offer a competing

4    hardware platform upon which to run the Mac OS—Mac OS Capable Computer Hardware

5    Systems.  Any such hardware platform weould compete directly with Apple-Labeled Computer

6    Hardware Systems, which are manufactured by APPLE and available for purchase only from

7    APPLE and/or its authorized resellers.

8    47.25.  PSYSTAR is informed and believes, and thereon alleges, that in order to protect itself

9    valuable monopoly in the Mac OS market and, by extension, Apple-Labeled Computer Hardware

10    Systems from potential competitive threats, and to potentially extend its Mac OS monopoly into

11    other markets, APPLE has engaged in a series of anticompetitive activities involving, *inter alia,* its

12    copyrights.  PSYSTAR is further informed and believes, and thereon alleges, that APPLE's conduct

13    includes contractual agreements tying the Mac OS to—and only to—Apple-Labeled Hardware

14    Systems, exclusionary agreements precluding customers or would be competitors from installing,

15    running, or using the Mac OS on any computer hardware system that is not an Apple-Labeled

16    Computer Hardware System, that is, Mac OS Capable Computer Hardware Systems.  These

17    contractual ties are backed with the threat of litigation for infringement of one or more APPLE

18    copyrights.

19    26.     PSYSTAR is informed and believes, and thereon alleges, that manufacturers of Mac OS

20    Capable Computer Hardware Systems that could run the Mac OS and that are not Apple-Labeled

21    Computer Hardware Systems pose a significant competitive threat to APPLE with respect to the

22    quality of such hardware systems and the pricing of such systems.  If Mac OS Capable Computer

23    Hardware Systems that are not Apple-Labeled Systems were introduced into the overall

24    marketplace, APPLE would be forced to engage in significant research, development, and quality

25    improvement in computer hardware; APPLE would, further, be forced into price competition with

26    other Mac OS Capable Computer Hardware System manufacturers.

27

28    **The Demise of the Clone Program**

{00349979v1}

Answer and PsyStar Corporation's First Amended Counterclaim of Psystar Corporation
(Case No. CV-08-03251-WHA)

1   48.27.  On information and belief, PSYSTAR alleges that in or around 1995, APPLE launched an

2   official clone program (the "Clone Program").  On information and belief, PSYSTAR alleges that

3   as a part of APPLE's Clone Program, Macintosh ROMs and system software were licensed to other

4   computer hardware manufacturers who agreed to pay a royalty for each 'cloned' computer sold.

5   49.28.  On information and belief, PSYSTAR alleges that from 1995 to 1997, it was possible to buy

6   a PowerPC-based computer running the Mac OS from, at the least, Power Computing Corporation.

7   On information and belief PSYSTAR alleges that other licensees and members of the Clone

8   Program included Motorola, Radius, APS Technologies, DayStar Digital, and UMAX.

9   50.29.  PSYSTAR, on information and belief, alleges that in what was to be the start of a trend of

10  increasingly anticompetitive conduct with respect to excluding others in the marketplace from

11  selling computer hardware systems capable of operating the Mac OS and otherwise evidencing

12  APPLE's distaste for legitimate competition in the hardware marketplace, APPLE elected to end

13  the Clone Program in or about 1997.  APPLE's election to end the Clone Program accelerated at

14  about the same time as the return of Steve Jobs to APPLE as its Chief Executive Officer.

15  51.30.  On information and belief, PSYSTAR alleges that the APPLE Clone Program came to a *de*

16  *facto* end with the release of Mac OS 8, which, unlike certain prior iterations of the Mac OS, had no

17  official licensee program.

18  52.31.  On information and belief, PSYSTAR alleges that APPLE further sought to discontinue the

19  Clone Program through the purchase of Power Computing Corporation, a very successful and

20  viable manufacturer of a computer hardware system capable of running the Mac OS.

21  32.     On information and belief, PSYSTAR alleges that the Mac OS 9 was released on or about

22  October 23, 1999 without any official licensee program.  On information and belief, PSYSTAR

23  alleges that updates to the Mac OS 9—up to and including Mac OS 9.2.2 on December 6, 2001—

24  were also released without any official licensee program.

25

26          **Mac OS X Tied to Apple-Labeled Computer Hardware Systems**

27  53.33.  PSYSTAR is informed and believes, and thereon alleges, that APPLE's trend of releasing

28  subsequent iterations of the Mac OS without an official licensee program continued with respect to

1   the Mac OS X.  In June 2005 at the 2005 Worldwide Developer Conference, APPLE CEO Steve

2   Jobs announced the planned release of the aforementioned Mac OS X for late 2006 or early 2007.

3   At the same conference, APPLE Senior Vice President Phil Schiller noted that APPLE had no plans

4   of running the Windows OS on a Macintosh but noted "[t]hat doesn't preclude someone from

5   running it" and that APPLE "won't do anything to preclude that."

6   ~~54.~~ 34.  In contrast to allowing (and all but inviting) others to run a competing OS on a Macintosh

7   and, further, openly stating that APPLE would not do anything to preclude the same, Schiller stated

8   that APPLE did not plan to let people run the Mac OS X on other computer makers' hardware; said

9   Schiller: "[w]e will not allow running Mac OS X on anything other than an Apple Mac."

10  35.     True to its word, and by its own admission in paragraph ~~18~~ 21 of APPLE's First Amended

11  Complaint, APPLE "prohibit[s] use of the Mac OS or its upgrades on non-Apple hardware."

12

13          **Kernel Panic and Infinite Loops**

14  36.     On information and belief, PSYSTAR alleges that APPLE intentionally embeds code in the

15  Mac OS that causes the Mac OS to ~~recognize~~ malfunction on any computer hardware system that is

16  not an Apple-Labeled Computer Hardware System.  Upon ~~information and belief, PSYSTAR~~

17  ~~alleges that upon~~ recognizing that a computer hardware system is not an Apple-Labeled Computer

18  Hardware System, the Mac OS will not operate properly, if at all, and will go into what is

19  colloquially known as 'kernel panic.'

20  37.     ~~Through~~ In kernel panic, the operating system believes that it has detected an internal and

21  fatal error from which the operating system cannot safely recover.  As a result, the operating system

22  discontinues operation.  As noted above, without a functioning operating system, functionality of

23  the corresponding computer is reduced to near zero.

24  38.     In Unix style operating systems like that of the Mac OS, the kernel routines that handle

25  panics are generally known as panic().  Panic() routines are generally designed to output an error

26  message to the display device of the computer, dump an image of kernel memory to disk for

27  post-mortem debugging, and then await either manual reboot of the system or automatically initiate

28  the same.  Attempts by the operating system to read an invalid or non-permitted memory address

are a common source of kernel panic. Panic may also occur as a result of a hardware failure or a bug in the operating system. While the operating system, in some instances, could continue operation after occurrence of a memory violation, the system is in an unstable state and often discontinues operation to prevent further damage and to allow for diagnosis of the error rather than risk security breaches and data corruption.

39.    As of the release of Mac OS 10.5, PSYSTAR is informed and believes and thereon alleges that APPLE has continued to cause interoperability issues in its xnu kernel on generic Intel hardware including kernel panics. A sample kernel panic situation in the 10.5.5 xnu kernel artificially arises during the initialization process if the Mac OS detects that the processor of the corresponding computing device is not in a certain family. PSYSTAR is informed and believes and thereon alleges that that 'certain family' is the Intel Dual Core/Core/Core2 series of processors, which is inclusive of Apple-Labeled Computer Hardware Systems.

40.    PSYSTAR is informed and believes and thereon alleges that there is no specific reason as to why this "check" should be present in the code as the kernel is capable of booting on a much broader range of hardware, specifically Mac OS Capable Computer Hardware Systems. PSYSTAR is informed and believes and thereon alleges that when the check is patched out, either by binary patching the kernel or source patching and then compiling, the kernel can easy be booted on a Pentium 4 processor. This is something that is currently restricted by the "check" in current versions of the xnu kernel and for no functional reason. This "check" stops the execution of the Mac OS on any x86 processor not sold by Apple— that is, the "check" stops the execution of the Mac OS on any computer that is not an Apple-Labeled Computer Hardware System.

41.    PSYSTAR is informed and believes and thereon alleges that APPLE embeds further code in the Mac OS that causes the Mac OS to malfunction on any computer hardware system that is not an Apple-Labeled Computer Hardware System. PSYSTAR is informed and believes and thereon alleges that upon recognizing that a computer hardware system is not an Apple-Labeled Computer Hardware System, the Mac OS will not operate properly, if at all, and will enter into what is colloquially known as an 'infinite loop.'

1    42.    An infinite loop is a sequence of instructions in a computer program that endlessly loops.

2    This infinite loop is due either to the loop having no terminating condition or having one that can

3    never be met.  Infinite loops cause a program to consume all available processor time.

4    43.    As of the release of Mac OS 10.5, PSYSTAR is informed and believes and thereon alleges

5    that APPLE has continued to cause interoperability issues in its xnu kernel on generic Intel

6    hardware including infinite loops.  PSYSTAR is informed and believes and thereon alleges that a

7    sample infinite loop arises during restart/reboot after calling modular restart functions.  PSYSTAR

8    is informed and believes and thereon alleges that most x86 hardware (*i.e.*, non-Apple-Labeled

9    Computer Hardware Systems) fail to reboot with the stock xnu kernel due to this infinite loop.

10   55.44.    There is no specific reason as to why this infinite loop is present in the code as the kernel

11   is capable of restating/rebooting on a much broader range of hardware, specifically Mac OS

12   Capable Computer Hardware Systems.  Thus, the restart/reboot infinite loop exists for no functional

13   reason.  This loop stops the execution of the Mac OS on any x86 processor not sold by Apple—that

14   is, an Apple-Labeled Computer Hardware System.

15   56.45.  PSYSTAR is informed and believes, and thereon alleges, that the Mac OS need not go into

16   kernel panic or an infinite loop.  Tas the Mac OS is otherwise capable of operating on any number

17   of computer hardware systems that are not Apple-Labeled Computer Hardware Systems (*i.e.*, , that

18   is, Mac OS Capable Computer Hardware Systems).  PSYSTAR is informed and believes, and

19   thereon alleges, that the instances of kernel panic and infinite loop as described above are is self-

20   induced by APPLE's embedding of code to induce kernel panic and infinite loops to thereby

21   prevent interoperability on computer hardware systems that are not Apple-Labeled Computer

22   Hardware Systems (*i.e.*, , that is, Mac OS Capable Computer Hardware Systems).

23   46.    PSYSTAR is informed and believes, and thereon alleges, that APPLE is engaged in

24   anticompetitive conduct that prevents the proper operation of the Mac OS on any computer

25   hardware system that is not an Apple-Labeled Computer Hardware System—a Mac OS Capable

26   Computer Hardware System—thereby forcing customers of the Mac OS to purchase—and only

27   purchase—an Apple-Labeled Computer Hardware System if they wish to have the Mac OS operate

28   sans kernel panic or an infinite loop.

**APPLE's Misuse of Copyrights via the EULA**

~~57.~~ 47.  In addition to technically preventing the Mac OS from operating on any Mac OS Capable Computer Hardware System and that is not an Apple-Labeled Computer Hardware System, the EULA for the Mac OS X Leopard and MAC OS X Leopard Server (collectively referenced herein as the aforementioned Mac OS), specifically—and, again, by APPLE's own admission in paragraph ~~19~~ 22 of its First Amended Complaint—states:

> "1.  General.  The software (including Boot ROM Code) . . . accompanying this License whether preinstalled on Apple-labeled hardware, on disks, in read only memory, or in any other media or in any other form (collectively the 'Apple Software') are licensed, not sold, to you by Apple Inc. ('Apple') for use **only under the terms of this License** . . . ."
>
> 2.  Permitted License Uses and Restrictions.
>
> A.  <u>Single Use</u>.  This license allows you to install, use and run (1) copy of the Apple Software on a single **Apple-labeled computer** at a time.  **You agree not to install, use, or run the Apple Software on any non-Apple-Labeled computer or enable another to do so.**

(emphasis added).

~~58.~~ 48.  Thus, as a pre-condition of a license to the Mac OS, APPLE leverages its copyrights in the Mac OS to require ~~unlawfully requires~~ customers to agree to install, use, or run the Mac OS on—and only on—Apple-Labeled Computer Hardware Systems.  As such, a customer is prohibited from seeking out and choosing any other computer hardware system that is not an Apple-Labeled Computer Hardware System—including but not limited to a Mac OS Capable Computer Hardware System—on which to install, use, and run the Mac OS.

49.     PSYSTAR is informed and believes, and thereon alleges, that APPLE ~~unlawfully~~ misuses its copyrights in the ~~ties the~~ Mac OS to force purchases of Apple-Labeled Computer Hardware Systems for use in conjunction with the Mac OS.  APPLE, therefore, has attempted to (and continues to) leverage the rights granted under any valid copyright to areas outside the exclusive rights granted by the Copyright Act (*i.e.*, forcing purchases of Apple-Labeled Computer Hardware

1   Systems).  APPLE has thus engaged in certain anticompetitive behavior and/or other actions that

2   are in violation of the public policy underlying the federal copyright laws including, but not limited

3   to, a failure to abide by the fair use and first sale doctrines.

4   50.      APPLE has leveraged and thereby misused its copyrights through the use of its EULA and

5   the requirement that the Mac OS be used exclusively on Apple-Labeled Computer Hardware

6   Systems notwithstanding the lack of any copyright interest in that hardware.  By enforcing this

7   provision in its EULA, APPLE is attempting to obtain, maintain, and/or enjoy rights not granted by

8   the Copyright Act including, but not limited to, destroying competition in the Mac OS Capable

9   Computer Hardware Systems market, which is wholly unrelated to any valid copyright.

10  51.      APPLE has further engaged in copyright misuse by utilizing any valid copyright in the Mac

11  OS to maintain exclusive control of the Apple-Labeled Computer Hardware System market.  By

12  enforcing its EULA as it pertains to any valid copyright, APPLE is attempting to obtain, maintain,

13  and/or enjoy rights not granted by the Copyright Act including, but limited to, maintaining its

14  control of the Apple-Labeled Computer Hardware Systems market to the exclusion of Mac OS

15  Capable Computer Hardware Systems, which is wholly unrelated to any valid copyright.

16

17          **APPLE's Misuse of Copyrights via the DMCA**

18  52.      APPLE purports to use "technological protection measures" to "control access to Apple's

19  copyrighted works."  APPLE has accused PSYSTAR of having engaged in the manufacture,

20  importation, offering to the public, provisioning, or trafficking of an as yet unidentified

21  "Circumvention Device" primarily designed or produced for the purpose of circumventing

22  APPLE's technological protection measures and/or allowing third parties to access APPLE

23  copyrights without authorization.  APPLE makes these assertions in the context of 17 U.S.C. §

24  1201 *et seq.* (the DMCA).

25  53.      PSYSTAR is informed and believes and thereon alleges that APPLE is leveraging rights

26  granted under any valid copyright to areas outside the exclusive rights granted by the Copyright

27  Act (*i.e.*, forcing purchases of Apple-Labeled Computer Hardware Systems).  APPLE has thus

28  engaged in certain anticompetitive behavior and/or other actions that are in violation of the public

1  policy underlying the federal copyright laws including, but not limited to, a failure to abide by the

2  fair use and first sale doctrines.

3  54.   APPLE accomplishes this leveraging through the assertion of claims under the DMCA.

4  Through the use of the DMCA, APPLE attempts to leverage its copyright-granted limited

5  monopoly in the Mac OS into a broad monopoly in the independent manufacture of Mac OS

6  Capable Computer Hardware Systems by forcing purchases of Apple-Labeled Computer Hardware

7  Systems.  Specifically, APPLE alleges that any party utilizing the Mac OS on any computer system

8  that is not an Apple-Labeled Computer Hardware System has engaged in a violation of the DMCA.

9  By attempting to apply the DMCA in this manner, APPLE is attempting to obtain, maintain, and/or

10  enjoy rights not granted by the Copyright Act including, but not limited to, destroying competition

11  in the Mac OS Capable Computer Hardware Systems market, which is wholly unrelated to any

12  valid copyright.

13  55.   PSYSTAR is further informed and believes and thereon alleges that APPLE does not

14  actually employ a technological copyright protection measure that controls access to the Mac OS.

15  PSYSTAR is also informed and believes and thereon alleges that any purported technological

16  copyright protection measure does not necessarily control access to a copyrighted work.

17  PSYSTAR further alleges that any PSYSTAR product or technology has a commercially significant

18  purpose or use other than to circumvent a technological measure that effectively controls access to

19  a copyrighted work.

20  56.   PSYSTAR is informed and believes and thereon alleges that APPLE is aware of one or

21  more of the foregoing allegations set forth in paragraph 55.  PSYSTAR alleges that notwithstanding

22  such knowledge, APPLE brought the foregoing DMCA claim in an attempt to chill innovation

23  whereby third-parties such as PSYSTAR would not engage in legal and legitimate development of

24  products that compete with Apple-Labeled Computer Hardware Systems.  PSYSTAR is informed

25  and believes and thereon alleges that APPLE made the foregoing DMCA claims solely to prevent

26  and/or stymie the continued development of a competitive threat to Apple-Labeled Computer

27  Hardware Systems—that is, Mac OS Capable Computer Hardware Systems.

28

{00349979v1}

-46-

1   PSYSTAR is informed and believes, and thereon alleges, that APPLE is attempting to maintain its

2   monopoly in the artificially created Apple-Labeled Computer Hardware System submarket by

3   utilizing its monopoly power in the Mac OS through systematic destruction of competition to the

4   Apple-Labeled Computer Hardware System that might otherwise exist vis-à-vis a Mac OS Capable

5   Computer Hardware System.

6   59.    PSYSTAR is informed and believes, and thereon alleges, that APPLE has contractually

7   prohibited its customers, through the EULA, from installing, using, or running the Mac OS on any

8   system that is not an Apple-Labeled Computer Hardware System.

9   60.    PSYSTAR is informed and believes, and thereon alleges, that APPLE refuses to license the

10   Mac OS to any other computer hardware system manufacturer, that is, a Mac OS Capable

11   Computer Hardware System manufacturer.

12

13   **Apple Benefits from Misuse of its Copyrights**

14   61. 57.   On information and belief, PSYSTAR alleges that as a result of the aforementioned

15   conduct, competition in the Mac OS Capable Computer Hardware System market with respect to

16   the illicitly contractually tied Mac OS and Apple-Labeled Computer Hardware Systems submarket

17   is, notwithstanding PSYSTAR, essentially non-existent.  PSYSTAR is informed and believes, and

18   thereon alleges, that APPLE has successfully eliminated all but a few competitors (e.g., PSYSTAR)

19   ion and continues to ensure that no competition arises in the Mac OS Capable Computer Hardware

20   System market with respect to the Mac OS and Apple-Labeled Computer Hardware Systems.

21   APPLE ensures this lack of competition vis-à-vis illicit contractual and licensing practices and the

22   misuse of its intellectual property, including its copyrights and spurious litigation under the

23   DMCA, both of the latter of which includes attempts to obtain, maintain, and/or enjoy rights not

24   granted by the Copyright Act including, extension and/or maintenance of monopoly power in

25   certain of the defined markets.

26   62. 58.  PSYSTAR is informed and believes, and thereon alleges, that with competition all but

27   eliminated in the Mac OS Capable Computer Hardware System market as it pertains to the Mac OS

28   and Apple-Labeled Computer Hardware Systems, APPLE is free to control and charge customers

1  supra-competitive prices ~~as suggested with respect to the pricing of various Apple-Labeled~~

2  ~~Computer Hardware Systems against otherwise functional equivalents that would exist in the Mac~~

3  ~~OS Capable Computer Hardware Systems marketplace~~.  For example, APPLE CEO Steve Jobs

4  announced in an October 2008 investor's conference call that "[w]e don't know how to make a

5  $500 computer that's not a piece of junk, and our DNA will not let us ship that."

6  ~~63.~~59.  PSYSTAR is informed and believes, and thereon alleges, that APPLE's conduct with

7  respect to the Mac OS requires its end users, therefore, to deal exclusively with APPLE through the

8  purchase and use of only Apple-Labeled Computer Hardware Systems.

9  ~~64.~~60.  Through APPLE's requirement that end users exclusively utilize Apple-Labeled Computer

10  Hardware Systems to the exclusion of all other Mac OS Capable Computer Hardware Systems in

11  the marketplace, PSYSTAR is informed and believes, and thereon alleges, that APPLE has, at the

12  least, substantially lessened competition in the Mac OS Capable Computer Hardware Systems

13  marketplace if not eliminated it in its entirety.  ~~APPLE, as a result, maintains its monopoly position~~

14  ~~with respect to the Mac OS and the artificially created Apple-Labeled Computer Hardware System.~~

15  ~~65.~~61.  PSYSTAR is informed and believes, and thereon alleges, that APPLE's pattern of conduct

16  makes it clear that unless restrained, APPLE will continue to misuse the EULA for the Mac OS and

17  various intellectual properties including copyrights related to the Mac OS and spurious litigation

18  under the DMCA to artificially exclude competition from Mac OS Computer Hardware System

19  manufacturers thereby depriving customers of a free choice between Mac OS Capable Computer

20  Hardware Systems that would otherwise be capable of running the Mac OS.

21  ~~PSYSTAR is informed and believes, and thereon alleges, that APPLE has unreasonably restrained~~

22  ~~and, unless enjoined, will continue to unreasonably restrain competition from the Mac OS Capable~~

23  ~~Computer Hardware Systems market.  These unreasonable restraints on trade allow APPLE to~~

24  ~~maintain its monopoly position with respect to the Mac OS and Apple-Labeled Computer Hardware~~

25  ~~Systems submarket not because customers have freely chosen an Apple-Labeled Computer~~

26  ~~Hardware System but because of the illegal exercise of monopoly power by APPLE.~~

27  ~~66.~~62.  On information and belief, PSYSTAR alleges that APPLE would enjoy significant

28  advantages with respect to maintaining its ~~monopoly position~~exclusivity in the contractually tied

1  Mac OS market and the Apple-Labeled Computer Hardware Systems markets submarket.  On

2  information and belief, PSYSTAR alleges that APPLE would further enjoy a benefit by preventing

3  competition from the Mac OS Capable Computer Hardware Systems market by contractually tying

4  the Mac OS to Apple-Labeled Computer Hardware Systems and otherwise misusing its intellectual

5  property including copyrights with respect to the same.  On information and belief, PSYSTAR

6  alleges that APPLE would further enjoy a benefit by technically and/or contractually excluding

7  other manufacturers from manufacturing Mac OS Capable Computer Hardware Systems market

8  rather than having to compete on the merits with Apple-Labeled Computer Hardware Systems.

9  APPLE would enjoy a similar benefit through the spurious threat of litigation under the DMCA.

10  67.63.  PSYSTAR is informed and believes, and thereon alleges, that the anticompetitive

11  technological and contractual conduct of APPLE in conjunction with the misuse of its intellectual

12  properties reduce the incentives and abilities of Mac OS Capable Computer Hardware System

13  manufacturers that would otherwise compete with Apple-Labeled Computer Hardware Systems on

14  the merits from innovating and differentiating their products in ways that would further facilitate

15  competition in the Mac OS Capable Computer Hardware System market.  As a result, APPLE is

16  allowed to unfairly maintain market power in the Mac OS Capable Computer Hardware System

17  market.

18  68.64.  The present Counterclaim does not seek to inhibit APPLE from competing on the merits by

19  innovation, but does challenge APPLE's concerted attempts to maintain its monopoly in the Mac

20  OS and Mac OS Capable Computer Hardware System market and to unfairly ultimately achieve

21  dominance in other markets, not by innovation and other competition on the merits, but by tie-ins,

22  exclusive dealing contracts, copyright misuse, spurious litigation under the DMCA, and other

23  anticompetitive agreements that deter innovation, exclude competition, and deny customers of their

24  right to choose among competing alternatives

25  69.65.  PSYSTAR is informed and believes, and thereon alleges, that APPLE's conduct adversely

26  affects innovation, including by impairing the incentive of APPLE's would-be competitors in the

27  Mac OS Capable Computer Hardware Systems market and potential competitors to undertake

28  research and development, because they know that APPLE can limit and has in the past limited the

-49-

1    rewards from any resulting innovation; impairing the ability of APPLE's competitors and potential

2    competitors to obtain financing for research and development; inhibiting APPLE's competitors that

3    nevertheless succeed in developing promising innovations from effectively marketing their

4    improved products to customers of the Mac OS; reducing the incentive and ability of Computer

5    Hardware Systems manufacturers to innovate and differentiate their products in ways that would

6    appeal to customers; and reducing competition and the spur to innovation by APPLE and others

7    that only competition can provide.

8    70.66.  PSYSTAR is informed and believes, and thereon alleges, that the purpose and effect of

9    APPLE's conduct with respect to the Mac OS and Mac OS Capable Computer Hardware Systems

10   that are not Apple-Labeled Computer Hardware Systems have been and, if not restrained, will be to

11   preclude competition on the merits between Apple-Labeled Computer Hardware Systems and other

12   Mac OS Capable Computer Hardware System manufacturers and to maintain APPLE's Mac OS

13   exclusivity  monopoly in the Apple-Labeled Computer Hardware System market.  PSYSTAR, at

14   the very least, has been harmed through such anticompetitive conduct.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**Claims for Relief**

2

3

**First Claim for Relief**

4

**(Declaration of Unenforceability for Copyright Misuse (EULA))**

5

(Unlawful "Tying" in Violation of Section 1 of the Sherman Act)

6

(15 U.S.C. § 1)

7

8  67.    PSYSTAR hereby incorporates by reference all of the allegations of paragraphs 1–7766 of

9  this First Amended Counterclaim as if fully set forth herein.

10  68.    APPLE possesses one or more copyrights related to the Mac OS.

11  69.    APPLE licenses the Mac OS and any copyrights corresponding to the Mac OS through

12  APPLE's EULA.

13  70.    As a part of APPLE's EULA, APPLE requires the end-user to "agree not to install, use, or

14  run the Apple Software on any non-Apple-Labeled Computer."

15  71.    Apple-Labeled Computer Hardware Systems are not covered by any copyright

16  corresponding to the Mac OS.

17  72.    APPLE has leveraged and continues to leverage the limited monopoly granted by the

18  Copyright Act through the copyrights corresponding to the Mac OS to areas outside the copyright

19  monopoly or otherwise granted by the Copyright Act including the requirement that end-users only

20  install the Mac OS on Apple-Labeled Computer Hardware Systems.

21  73.    APPLE's use of the EULA in conjunction with its copyrights in this manner is

22  anticompetitive.

23  74.    APPLE's use of the EULA in conjunction with its copyrights in this manner violates the

24  underlying public policy of the federal copyright laws.

25  75.    APPLE's use of the EULA in conjunction with its copyrights to expand its monopoly to

26  areas outside the copyright grant in a manner that is anticompetitive and contrary to public policy

27  constitutes a misuse of APPLE's copyrights.

28

1   76.     PSYSTAR has been directly harmed by APPLE's use of the EULA in conjunction with

2   APPLE's misuse of its copyrights.

3   77.     PSYSTAR is therefore entitled to a declaratory judgment finding APPLE's copyrights to be

4   unenforceable until that time that APPLE discontinues the use of the EULA in conjunction with the

5   misuse of its copyrights.

6

7   71.     PSYSTAR, on information and belief, alleges that the Mac OS market and Apple-Labeled

8   Computer Hardware Systems submarket, which is an artificially created subset of the Mac OS

9   Capable Computer Hardware Systems market, are separate product markets.

10  72.     PSYSTAR, on information and belief, alleges that the Mac OS and Apple-Labeled

11  Computer Hardware Systems, as a subset of the artificially created Mac OS Capable Computer

12  Hardware Systems, are sold in the different product markets.

13  73.     PSYSTAR, on information and belief, alleges that the Mac OS and Mac OS Capable

14  Computer Hardware Systems including Apple-Labeled Computer Hardware Systems have different

15  functions.

16  74.     PSYSTAR, on information and belief, alleges that the Mac OS and Mac OS Capable

17  Computer Hardware Systems have separate demand and are treated by industry participants as

18  separate products.

19  75.     PSYSTAR, on information and belief, alleges that market efficiencies would exist should

20  APPLE not to tie the Mac OS and Apple-Labeled Computer Hardware Systems.

21  76.     PSYSTAR, on information and belief, alleges that market efficiencies would exist should

22  APPLE permit the licensing of the Mac OS without the requirement of a purchase of an Apple-

23  Labeled Computer Hardware System.

24  77.     PSYSTAR, on information and belief, alleges that APPLE has sufficient market power in

25  the Mac OS market to affect the Mac OS Capable Computer Hardware Systems market.

26  78.     PSYSTAR, on information and belief, alleges that APPLE has tied and will continue to tie

27  the Mac OS to Apple-Labeled Computer Hardware Systems in violation of Section 1 of the

28  Sherman Act, 15 U.S.C. § 1.

1  79.    PSYSTAR, on information and belief, alleges that the purpose of tying the Mac OS to

2  Apple-Labeled Computer Hardware Systems is to prevent customers from choosing among

3  computer hardware systems—Mac OS Capable Computer Hardware Systems—on their merits and

4  to foreclose competing Mac OS Capable Computer Hardware Systems from competing with Apple-

5  Labeled Computer Hardware Systems thereby restraining competition.

6  80.    PSYSTAR, on information and belief, alleges that the effect of tying the Mac OS is to force

7  customers into buying Apple-Labeled Computer Hardware Systems that the customer did not wish

8  to acquire or might have preferred to purchase in the form of alternative Mac OS Capable

9  Computer Hardware Systems (*i.e.*, a non-Apple-Labeled Computer Hardware System) from an

10  alternative supplier (*i.e.*, not APPLE) on different terms.

11  81.    PSYSTAR, on information and belief, alleges that APPLE's tying of the Mac OS to Apple-

12  Labeled Computer Hardware Systems affects a substantial amount of commerce in the Mac OS

13  Capable Computer Hardware Systems market.

14  82.    PSYSTAR, on information and belief, alleges that APPLE's tying of the Mac OS to Apple-

15  Labeled Computer Hardware Systems is unlawful *per se* under the antitrust laws.

16  83.    PSYSTAR, on information and belief, alleges that APPLE's tying of the Mac OS to Apple-

17  Labeled Computer Hardware Systems is unlawful under the antitrust laws because the

18  anticompetitive effects of APPLE's tying conduct are not outweighed by pro-competitive

19  considerations.

20  84.    PSYSTAR, as a result of APPLE's illicit tying behavior, has been damaged and requests

21  compensatory relief in addition to a declaration as to APPLE's illicit behavior.

22

23  **Second Claim for Relief**

24  **(Declaration of Unenforceability for Copyright Misuse (DMCA))**

25

26  **(Monopoly Maintenance in Violation of Section 2 of the Sherman Act)**

27  **(15 U.S.C. § 2)**

28

78.    PSYSTAR hereby incorporates by reference all of the allegations of paragraphs 1-92-77 of this First Amended Counterclaim as if fully set forth herein.

79.    APPLE possesses one or more copyrights related to the Mac OS.

80.    APPLE causes the Mac OS to malfunction on non-Apple-Labeled Computer Hardware Systems by embedding code that cause kernel panic and/or infinite loop.

81.    The code that causes kernel panic and/or infinite loop does not constitute a technological copyright protection measure.

82.    The code that causes kernel panic and/or infinite loop does not effectively control access to a copyrighted work.

83.    PSYSTAR products have a commercially significant purpose or use other than to circumvent a technological measure that effectively controls access to a copyrighted work.

84.    Notwithstanding the foregoing, APPLE has asserted the DMCA against PSYSTAR in an attempt to leverage the limited monopoly granted by the Copyright Act through the copyrights corresponding to the Mac OS to areas outside the copyright monopoly or otherwise granted by the Copyright Act including the installation and/or operation of the Mac OS on Apple-Labeled Computer Hardware Systems.

85.    Apple-Labeled Computer Hardware Systems are not covered by any copyright corresponding to the Mac OS.

86.    APPLE's use of the DMCA in conjunction with its copyrights in this manner is anticompetitive.

87.    APPLE's use of the DMCA in conjunction with its copyrights in this manner violates the underlying public policy of the federal copyright laws.

88.    APPLE's use of the DMCA in conjunction with its copyrights to expand its monopoly to areas outside the copyright grant in a manner that is anticompetitive and contrary to public policy constitutes a misuse of APPLE's copyrights.

89.    PSYSTAR has been directly harmed by APPLE's use of the DMCA in conjunction with APPLE's misuse of its copyrights.

1  90.    PSYSTAR is therefore entitled to a declaratory judgment finding APPLE's copyrights to be

2  unenforceable until that time that APPLE discontinues the use of the DMCA in conjunction with

3  the misuse of its copyrights.

4

5

6  85.    PSYSTAR, on information and belief, alleges that APPLE possesses monopoly power in the

7  Mac OS market.

8  86.    PSYSTAR, on information and belief, alleges that APPLE possess certain intellectual

9  properties including copyrights relating to the Mac OS thereby further enforcing its monopoly

10 power in the Mac OS market.

11 87.    PSYSTAR, on information and belief, alleges that given the prevalence of the Mac OS in

12 the Mac OS market, customers need a computer hardware system on which to operate the Mac OS.

13 88.    PSYSTAR, on information and belief, alleges that although a number of competing

14 computer hardware systems manufacturers exist in the marketplace and that would otherwise be

15 capable of manufacturing Mac OS Capable Computer Hardware Systems, APPLE contractually

16 requires the end user to install, use, and run the Mac OS solely on Apple-Labeled Computer

17 Hardware Systems.

18 89.    PSYSTAR, on information and belief, alleges that this contractual requirement by and

19 between APPLE and the end user is to the exclusion of all other computer hardware systems

20 manufacturers in the marketplace including Mac OS Capable Computer Hardware System

21 manufacturers.

22 90.    PSYSTAR, on information and belief, alleges that through this anticompetitive conduct,

23 APPLE is attempting—with specific intent—to unlawfully maintain its market and monopoly

24 power in the artificially created Apple-Labeled Computer Hardware Systems submarket by

25 controlling prices and/or destroying competition in the Mac OS Capable Computer Hardware

26 Systems market.

27 91.    PSYSTAR, on information and belief, alleges that APPLE likewise misuses its copyrights

28 with respect to prohibiting Mac OS Capable Computer Hardware System manufacturers from

1   manufacturing and selling computer hardware systems that would allow for installation, use, and

2   running of the Mac OS.

3   92.   PSYSTAR, on information and belief, alleges that unless restrained by the Court, APPLE

4   will continue to attempt to maintain its monopoly power in the Apple-Labeled Computer Hardware

5   Systems submarket to the exclusion of other manufactures including manufacturers of Mac OS

6   Capable Computer Hardware Systems by and through anticompetitive and unreasonably

7   exclusionary conduct including but not limited to those allegations set forth in the First Claim for

8   Relief above as well as the misuse of its copyrights.

9   93.   PSYSTAR, on information and belief, alleges that if left unrestrained, APPLE is likely to

10   succeed in its attempts to control prices and/or destroy competition in the Mac OS Capable

11   Computer Hardware Systems market thereby maintaining its monopoly in the Apple-Labeled

12   Computer Hardware Systems submarket.

13   94.   PSYSTAR, on information and belief, alleges that PSYSTAR, a manufacturer of a Mac OS

14   Capable Computer Hardware System, has been and will continue to be harmed by APPLE's

15   anticompetitive and unreasonably exclusionary conduct.

16   95.   PSYSTAR, on information and belief, alleges that APPLE's intent to illegally maintain

17   monopoly power is in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

18   96.   PSYSTAR, as a result of APPLE's illicit monopoly maintenance, has been damaged and

19   requests compensatory relief in addition to a declaration as to APPLE's illicit behavior.

20

21   **Third Claim for Relief**

22   **(Exclusive Dealing in Violation of Section 3 of the Clayton Act)**

23   **(15 U.S.C. § 14)**

24

25   97.   PSYSTAR hereby incorporates by reference all of the allegations of paragraphs 1-105 of

26   this Counterclaim as if more fully set forth herein.

27   98.   PSYSTAR, on information and belief, alleges that APPLE requires of its end users of the

28   Mac OS that they deal exclusively with APPLE through the purchase and use of Apple-Labeled

1  Computer Hardware Systems to the exclusion of all other Mac OS Capable Computer Hardware

2  Systems in the marketplace.

3  99.   PSYSTAR, on information and belief, alleges that the Mac OS and Mac OS Capable

4  Computer Hardware Systems including Apple-Labeled Computer Hardware Systems each

5  constitute a good, ware, merchandise, or other commodity involved in domestic, interstate

6  commerce.

7  100.   PSYSTAR, on information and belief, alleges that through APPLE's requirement that end

8  users utilize only Apple-Labeled Computer Hardware Systems to the exclusion of all other Mac OS

9  Capable Computer Hardware Systems in the marketplace—including but not limited to APPLE's

10  EULA and misuse of copyrights—APPLE has substantially lessened competition in the Mac OS

11  Capable Computer Hardware Systems marketplace to the point of near elimination.

12  101.   PSYSTAR, on information and belief, alleges that through APPLE's requirement that end

13  users utilize only Apple-Labeled Computer Hardware Systems to the exclusion of all other Mac OS

14  Capable Computer Hardware Systems, APPLE's behavior will tend to maintain a monopoly in

15  interstate commerce.

16  102.   PSYSTAR, on information and belief, alleges that PSYSTAR, a manufacturer of a

17  competing Mac OS Capable Computer Hardware System, has been and will continue to be harmed

18  by APPLE's anticompetitive and unreasonably exclusionary conduct.

19  103.   PSYSTAR, on information and belief, alleges that APPLE's intent to exclude other

20  manufacturers in the Mac OS Capable Computer Hardware Systems marketplace with respect to

21  the Mac OS constitutes a violation of Section 3 of the Clayton Act, 15 U.S.C. § 14.

22  104.   PSYSTAR, as a result of APPLE's illicit exclusionary behavior, has been damaged and

23  requests compensatory relief in addition to a declaration as to APPLE's illicit behavior.

24

25

26

27                          **Fourth Claim for Relief**

28                    **(Violations of the California Cartwright Act)**

1                              **(California Business and Professions Code § 16700 *et seq.*)**

2

3      105.    PSYSTAR hereby incorporates by reference all of the allegations of paragraphs 1-113 of

4    this Counterclaim.

5      106.    PSYSTAR, on information and belief, alleges that through the conduct alleged in the First,

6    Second, and Third Claims for Relief, including but not limited to APPLE's tying of the Mac OS to

7    Apple-Labeled Computer Hardware Systems, APPLE's attempts to control prices and/or destroy

8    competition in the Mac OS Capable Computer Hardware Systems market vis-à-vis its monopoly

9    maintenance in the Apple-Labeled Computer Hardware Systems submarket, APPLE's requirement

10    of its customers not to use the goods of a competitor, and the misuse of its intellectual property

11    including its copyrights, APPLE has violated the California Cartwright Act, California Business

12    and Professional Code § 16700 *et seq.*

13      107.    PSYSTAR, on information and belief, alleges that the conduct alleged in the First, Second,

14    and Third Claims for Relief, including but not limited to APPLE's tying of the Mac OS to Apple-

15    Labeled Computer Hardware Systems, APPLE's attempts to destroy competition in the Mac OS

16    Capable Computer Hardware Systems market vis-à-vis its monopoly maintenance in the artificially

17    created Apple-Labeled Computer Hardware Systems submarket, APPLE's requirement of its

18    customers not to use the goods of a competitor, and the misuse of its intellectual property including

19    its copyrights, is forbidden, unlawful, and against public policy.

20      108.    APPLE's violations of the Cartwright Act have injured PSYSTAR in its business and/or

21    property by suppressing competition in the Mac OS Capable Computer Hardware Systems market

22    thus constituting a direct antitrust injury to PSYSTAR.

23      109.    PSYSTAR, on information and belief, alleges that as a result of APPLE's illicit behavior,

24    PSYSTAR has been damaged and requests compensatory relief in addition to a declaration as to

25    APPLE's illicit behavior.

26

27

28                               **Fifth Third Claim for Relief**

{00349979v1}

**(Violation of State Unfair Competition Law—Copyright Misuse/EULA)**

**(California Business & Professions Code § 17200 *et seq.*)**

91.    PSYSTAR hereby incorporates by reference all of the allegations of paragraphs 1-90118 of this Counterclaim.

92.    APPLE's misuse of its copyrights in conjunction with its EULA violates the policy and/or spirit of the antitrust laws.

93.    APPLE's misuse of its copyrights in conjunction with its EULA threatens and harms competition.

94.    Bringing an end to APPLE's misuse of its copyrights would affect a significant benefit to the general public.

110.95. PSYSTAR, on information and belief, alleges that tThe foregoing conduct amounts to an unlawful and/or unfair business practice within the meaning of the California Unfair Competition Law, California Business & Professional Code § 17200 *et seq.*

111.96. PSYSTAR, on information and belief, alleges that APPLE's violations of California's Unfair Competition Law have injured PSYSTAR and its business and/or property by suppressing competition in the Mac OS Capable Computer Hardware Systems market thus constituting a direct injury to PSYSTAR.

112.97. PSYSTAR is therefore entitled to a declaratory judgment finding APPLE to have engaged in unfair competition until that time that APPLE discontinues the use of the EULA in conjunction with the misuse of its copyrights. PSYSTAR, as a result of APPLE's illicit behavior, has been damaged and requests injunctive relief and attorneys' fees and costs in addition to a declaration as to APPLE's illicit behavior.

**Sixth Fourth Claim for Relief**

**(Violation of State Unfair Competition Law—Copyright Misuse / DMCA)**

**(California Business & Professions Code § 17200 *et seq.*)**

{00349979v1}

1    (Violation of the Common Law of Unfair Competition)

2

3    113.98. PSYSTAR hereby incorporates by reference all of the allegations of paragraphs 1-122 97 of

4    this Counterclaim.

5    99.    APPLE's misuse of its copyrights in conjunction with the DMCA violates the policy and/or

6    spirit of the antitrust laws.

7    100.    APPLE's misuse of its copyrights in conjunction with the DMCA threatens and harms

8    competition.

9    101.    Bringing an end to APPLE's misuse of its copyrights would affect a significant benefit to

10    the general public.

11    102.    The foregoing conduct amounts to an unlawful and/or unfair business practice within the

12    meaning of the California Unfair Competition Law, California Business & Professional Code §

13    17200 *et seq.*

14    103.    APPLE's violations of California's Unfair Competition Law have injured PSYSTAR and its

15    business and/or property by suppressing competition in the Mac OS Capable Computer Hardware

16    Systems market thus constituting a direct injury to PSYSTAR.

17    104.

18    114.    PSYSTAR is therefore entitled to a declaratory judgment finding APPLE to have engaged

19    in unfair competition until that time that APPLE discontinues the use of the DMCA in conjunction

20    with the misuse of its copyrights. PSYSTAR, on information and belief, alleges that the foregoing

21    conduct amounts to an unlawful and/or unfair business practice within the meaning of the common

22    law of unfair competition.

23    115.    PSYSTAR, on information and belief, alleges that APPLE's violations of the common law

24    of unfair competition for the state of California have injured PSYSTAR and its business and/or

25    property by suppressing competition in the Mac OS Capable Computer Hardware Systems market

26    thus constituting a direct injury to PSYSTAR.

27

28

{00349979v1}



116.105.      PSYSTAR, as a result of APPLE's illicit behavior, has been damaged and requests compensatory and punitive relief as otherwise governed by the California Civil Code in addition to a declaration as to APPLE's illicit behavior.

1    **Prayer for Relief**

2

3    **WHEREFORE, PSYSTAR PRAYS FOR RELIEF AS FOLLOWS:**

4

5    1.      Entering judgment for PSYSTAR against APPLE on all counts;

6    2.      Award PSYSTAR compensatory and statutory money damages, including treble damages

7    and punitive damages, as appropriate;

8    3.      An award of prejudgment interest, as appropriate;

9    4~~2~~.      Declare APPLE's actions with respect to its EULA to be a misuse of copyrights thereby

10   making said copyrights unenforceable so long as the misuse of those copyrights with respect to its

11   EULA continues~~to be in violation of state and federal antitrust laws, state law of unfair competition~~

12   ~~and the common law, and enjoin APPLE from carrying on such conduct~~;

13   3.      Declare APPLE's actions with respect to its claims under the DMCA to be a misuse of

14   copyrights thereby making any copyright purportedly protected through enforcement of the DMCA

15   unenforceable so long as to the misuse of those copyrights continues;

16   4.      Declare APPLE's actions with respect to the misuse of its copyrights in conjunction with its

17   EULA to constitute unfair competition;

18   5.      Declare APPLE's actions with respect to the misuse of its copyrights in conjunction with

19   the DMCA to constitute unfair competition;

20   6~~5~~.      Enter such other preliminary and permanent injunctive relief as is necessary and appropriate

21   to restore prohibit attempts to enforce otherwise unenforceable copyrights as those copyrights

22   concern APPLE's misuse of the same~~competitive conditions in the markets affected by APPLE's~~

23   ~~unlawful conduct~~;

24   7.      An aware of attorney's fees as allowed for under California Code of Civil Procedure §

25   1021.5; and

26   8~~6~~.      That the Court enter such additional relief as it may find just and proper~~.; and~~

27   ~~7.      That PSYSTAR recover the costs of this action.~~

28

{00349979v1}

-62-



Dated: ~~August 2~~December 8, 2008          CARR & FERRELL *LLP*

By: _____
ROBERT J. YORIO
COLBY B. SPRINGER
~~CHRISTINE S. WATSON~~CHRISTOPHER P.
GREWE

Attorneys for Defendant/Counterclaimant
PSYSTAR CORPORATION

{00349979v1}          ~~Answer and~~ PsyStar Corporation's First Amended Counterclaim ~~of Psystar Corporation~~
(Case No. CV-08-03251-WHA)

1

**DEMAND FOR JURY TRIAL**

2

3  Defendant and Counterclaimant PSYSTAR hereby demands a jury trial of all issues in the above-

4  captioned action that are triable to a jury.

5

6  Dated: ~~August 2~~December 8, 2008          CARR & FERRELL *LLP*

7

8                                              By:_____

9                                              ROBERT J. YORIO
                                               COLBY B. SPRINGER

10                                             CHRIST~~OPHER P. GREWE~~INE S. WATSON

11                                             Attorneys for Defendant/Counterclaimant
                                               PSYSTAR CORPORATION

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

{00349979v1}

-64-

~~Answer and~~ PsyStar Corporation's First Amended Counterclaim ~~of Psystar Corporation~~
(Case No. CV-08-03251-WHA)