ROBERT J. YORIO (SBN 93178)
yorio@carrferrell.com
COLBY B. SPRINGER (SBN 214868)
cspringer@carrferrell.com
CHRISTOPHER P. GREWE (SBN 245938)
cgrewe@carrferrell.com
CARR & FERRELL *LLP*
2200 Geng Road
Palo Alto, California 94303
Telephone: (650) 812-3400
Facsimile:   (650) 812-3444

Attorneys for Defendant/Counterclaimant
PSYSTAR CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>    Plaintiff,<br><br>    v.<br><br>PSYSTAR CORPORATION, a Florida<br>Corporation, and Does 1-10, inclusive,<br><br>    Defendants. | CASE NO. CV-08-03251-WHA<br><br>**ANSWER AND AFFIRMATIVE DEFENSES OF PSYSTAR CORPORATION TO APPLE INC.'S FIRST AMENDED COMPLAINT**<br><br>**JURY TRIAL REQUESTED** |
| AND RELATED COUNTERCLAIMS | |

        Defendant and Counterclaimant Psystar Corporation (hereinafter PSYSTAR) responds to the first *Amended Complaint for Copyright Infringement, etc.* (hereinafter "First Amended Complaint") of Plaintiff and Counterdefendant Apple Inc. (hereinafter PLAINTIFF or APPLE) as follows:

1.      PSYSTAR admits that PLAINTIFF is a California corporation with its headquarters and principal place of business at 1 Infinite Loop, Cupertino, California.  PSYSTAR admits that PLAINTIFF sells hardware, software, and services including the Macintosh computer, the iPod music player, and the iPhone.  PSYSTAR admits that the PLAINTIFF was founded in 1976 and that PLAINTIFF has been referred to as "one of the most innovative companies in the world."  PSYSTAR lacks information or knowledge as to the number of persons employed by the PLAINTIFF; PSYSTAR likewise lacks information or knowledge as to the number of stores operated by the PLAINTIFF and on that basis denies those allegations; PSYSTAR admits that PLAINTIFF sells a number of products online.  PSYSTAR admits that in 2008, *Fortune Magazine* named the PLAINTIFF "America's Most Admired Company."

2.      PSYSTAR admits that PLAINTIFF launched the Macintosh line of computers in 1984 but otherwise denies the allegation that PLAINTIFF is "[a] pioneer of the personal computer revolution."  On information and belief, PSYSTAR admits that the Macintosh (or "Mac") utilized a mouse, computer icons, and graphical user interface but lacks information or knowledge as to whether said components and functionality were novel and on that basis denies the remainder of the allegation.  PSYSTAR admits that the Macintosh line of computers has included those particular models identified in the third sentence of paragraph 2 of the First Amended Complaint but denies the un-cited reference that said line of computers is "perennially praised" and on that basis denies the remainder of the allegation.  PSYSTAR lacks information or knowledge as to the number of Macintosh computers sold by the PLAINTIFF since 2001 and on that basis denies the allegation.

3.      PSYSTAR admits the allegation that Macintosh computers are considered "famous" and that Macintosh computers are generally considered to be reliable and to enjoy ease-of-use as it pertains to the operating system.  PSYSTAR, on information and belief, denies the allegation that development teams of the PLAINTIFF "have seamlessly integrated the hardware and software features of the Macintosh computer[]" and that the Macintosh "is simpler to service, update and

1    maintain." PSYSTAR is without information or knowledge as to *Consumer Reports'* ranking of

2    technical support for or by the PLAINTIFF and on that basis denies the allegation.

3    4.      PSYSTAR admits that version 10.0 of the Mac OS X was released in 2001. PSYSTAR

4    admits the allegations of the second sentence of paragraph 4 of the First Amended Complaint.

5    PSYSTAR is without information or knowledge as to whether the unidentified reviewers referenced

6    by the PLAINTIFF in the third and fourth sentences of the paragraph 4 of the First Amended

7    Complaint actually made such statements and on that basis denies the remaining allegations as set

8    forth in paragraph four of the First Amended Complaint.

9    5.      PSYSTAR admits that the "color, transparency and animation" and "overall arrangement"

10   of the Mac OS X interface are "unique and creative" with respect to their operative functionality.

11   PSYSTAR admits that the combined Apple mark as purportedly found in the Finder toolbar is

12   "famous" for its functionality and that the Finder toolbar is combined with "a distinctive three-

13   dimensional applications bar" thereby offering additional functionality for the benefit of the user of

14   the Mac OS X. PSYSTAR denies that the "combination of elements" in the Mac OS X interface is

15   "distinctive," "nonfunctional" and "well known to consumers"; PSYSTAR is without information

16   or knowledge as to whether the aforementioned elements are "associated with the PLAINTIFF and

17   Mac OS X Leopard" and on that basis denies the remainder of the allegation. PSYSTAR admits

18   that the PLAINTIFF refers to the aforementioned combinations as the PLAINTIFF's "Trade Dress"

19   but denies that any legal protections offered by any associated theory are available and/or valid.

20   6.      PSYSTAR admits that the Mac OS X has been the subject of media discussion and that the

21   Mac OS X—if the PLAINTIFF means to refer to the same as "[t]he product"—has received

22   "significant acclaim." PSYSTAR is without information or knowledge as to whether the sale of

23   Mac computers has "surged," whether the growth of any such sales is "at a faster pace than the

24   personal computer market in general," and whether any such sales are related to the Mac OS X and

25   on that basis denies the assertion.

26   7.      PSYSTAR admits that the PLAINTIFF manufacturers and sells a product known as the

27   Xserve rack-mount server. PSYSTAR admits that the Xserve uses an iteration of one or more

28

1   components referenced as the Mac OS X Leopard Server. PSYSTAR admits that the Mac OS X

2   Leopard Server has been the subject of media discussion.

3   8.      PSYSTAR admits that the PLAINTIFF alleges ownership in certain registered trademarks

4   as identified in the first sentence of paragraph 8 of the First Amended Complaint and that certain

5   marks and brands of the PLAINTIFF have been referenced by others as being "one of the most

6   famous brands in the world." PSYSTAR admits that the PLAINTIFF promotes, offers, and sells

7   computers, goods, and services in interstate commerce but is without information or knowledge as

8   to the time and effort corresponding to such promotions, offers, and sales and/or the specific

9   trademarks used with such promotions, offers, and sales and on that basis denies the allegation.

10  PSYSTAR is without information or knowledge as to the promotional expenditures of the

11  PLAINTIFF and whether such expenditures are related to the trademarks identified in the third

12  sentence of paragraph 8 of the First Amended Complaint and on that basis denies the allegations.

13  PSYSTAR denies the allegation that the PLAINTIFF's brand, unidentified marks, and purportedly

14  distinctive trade dress (if any) are "synonymous" with anything and on that basis denies the

15  allegation. PSYSTAR admits that *BusinessWeek Magazine* has identified the PLAINTIFF as the

16  "World's Most Innovative Company." PSYSTAR is without information or knowledge as to

17  whether the unidentified independent research organizations referenced by the PLAINTIFF in the

18  final sentence of paragraph 8 of the First Amended Complaint actually made such determinations

19  and on that basis denies the allegation.

20  9.      PSYSTAR is without information or knowledge as to what the consuming public

21  nationwide associates with or understands any marks or trade dress of the PLAINTIFF to identify

22  and on that basis denies the allegation. PSYSTAR is without information or knowledge as to the

23  quality of any goods or services of the PLAINTIFF and any good will established with respect to

24  the same and on that basis denies the allegations.

25  10.     PSYSTAR is without information or knowledge as to the exclusivity and frequency of use

26  of any mark of the PLAINTIFF and on that basis denies the allegation; PSYSTAR expressly denies

27  that it is infringing said marks. PSYSTAR admits that certain marks of the PLAINTIFF may be

28  famous but deny that any alleged trade dress enjoys such fame, in part because the alleged trade

1  dress of the PLAINTIFF is functional and on that basis denies the allegation; PSYSTAR expressly

2  denies that it is infringing the same. PSYSTAR is without information or knowledge as to what the

3  PLAINTIFF considers its "most important assets" and on that basis denies the allegations;

4  PSYSTAR likes denies the assertion that any trade dress is distinctive and again notes the

5  functionality of the same.

6  11.    PSYSTAR admits that it is a corporation organized and doing business under the laws of the

7  State of Florida with its principal place of business at 10475 NW 28th Street, Doral, Florida.

8  12.    PSYSTAR admits that for a period of several hours on one day that PSYSTAR colloquially

9  referred to certain computers by the name of 'OpenMac' but denies that it currently sells any

10  computer referred to by that name; PSYSTAR denies that it sells any computer under any name that

11  runs a modified, unauthorized version of the Leopard operating system; PSYSTAR likewise denies

12  that it sells any computer running a modified and unauthorized version of other Apple software and

13  firmware. PSYSTAR admits currently selling a computer referred to as the 'Open Computer' and

14  that said computer may include the Leopard operating system; PSYSTAR denies that any such

15  computer runs a modified, unauthorized version of the Leopard operating system. PSYSTAR

16  admits that it sells a computer model referred to as the OpenPro but denies that it is named after the

17  MacPro® or any other APPLE product; PSYSTAR likewise denies that the OpenPro is sold in

18  violation of any legally enforceable provision of the Software License Agreement that purportedly

19  governs the use of the MAC OS X software and/or any other APPLE intellectual property.

20  PSYSTAR denies the assertion that the OpenPro runs a modified unauthorized version of the

21  Leopard operating systems and/or any other Apple software and firmware. PSYSTAR admits that

22  it offers the Open Computer for sale online and that PSYSTAR ships said computer throughout the

23  United States including into the Northern District of California. PSYSTAR admits that it has made

24  statements concerning the number of computers sold. PSYSTAR denies the allegations in the final

25  sentence of paragraph 12 of the First Amended Complaint, specifically: that PSYSTAR makes

26  copies of the Leopard software; that PSYSTAR offers downloads of 'updates' to the Leopard

27  software from the website www.psystar.com; that PSYSTAR copies any "updates" generated by

28

the PLAINTIFF; and/or that PSYSTAR generates unauthorized, modified versions of software updates from the PLAINTIFF.

13.     PSYSTAR admits that it has offered for sale a series of rack-mounted servers referred to as the OpenServ. PSYSTAR otherwise denies each and every allegation of paragraph 13 of the First Amended Complaint.

14.     PSYSTAR admits that it distributes a "restore disk" but denies that said disk violates any legally enforceable term of the Software License Agreement that purportedly governs the use of the Mac OS X and/or any other APPLE intellectual property. PSYSTAR denies the allegation that it provides technical and support and assists its customers in an effort to violate the terms of the Software License Agreement.

15.     PSYSTAR admits that it is working to develop any number of products that will run a number of different operating systems thereby providing its customers with flexibility and choice with respect to the design and operation of their personal computer. PSYSTAR otherwise denies the allegations of paragraph 15 of the First Amended Complaint.

16.     PSYSTAR is without information or knowledge as to the allegations of paragraph 16 of the First Amended Complaint and on that basis denies each and every allegation therein.

17.     PSYSTAR admits that the PLAINTIFF seeks an injunction against the alleged misappropriation and alleged infringement of the PLAINTIFF's allegedly proprietary software and alleged intellectual property; PSYSTAR denies that it has misappropriated any such proprietary software or intellectual property. PSYSTAR denies that its actions have harmed the consuming public, sells a poor product, and/or has advertised and promoted any such product in a manner that falsely and unfairly implied an affiliation with the PLAINTIFF. PSYSTAR denies that its action have and/or continue to cause harm to the PLAINTIFF; PSYSTAR likewise denies that its actions constitute a misuse of PLAINTIFF's intellectual property. PSYSTAR admits that the PLAINTIFF seeks an award of actual damages (while concurrently denying that any exist), treble damages (while concurrently denying that any such relief is appropriate,), and attorneys' fees and costs (while concurrently denying that any such relief is appropriate); PSYSTAR denies that it has

1  engaged in any action that is unfair, unlawful, exploitive, or that otherwise causes consumer

2  confusion and injury nor that any such action has ever existed.

3  18.    PSYSTAR admits that APPLE contends that persons other than PSYSTAR are involved in

4  the activities alleged in APPLE's First Amended Complaint.  PSYSTAR denies that said activities

5  are unlawful and improper.  PSYSTAR likewise denies the suggestion that there exists a concerted

6  effort to commit infringement of APPLE's intellectual property rights, to breach or induce the

7  breach of APPLE's otherwise unenforceable license agreements, and to violate state and common

8  law unfair competition laws.  PSYSTAR admits that APPLE contends that it will seek leave to

9  amend its First Amended Complaint upon the discovery of these purported individuals and/or

10 corporations but otherwise denies the allegations set forth in paragraph 18.

12                              **JURISDICTION AND VENUE**

14 19.    PSYSTAR admits that the Northern District of California has jurisdiction of the present

15 action in that the PLAINTIFF has brought the action pursuant to, *inter alia,* the copyright laws of

16 the United States.  PSYSTAR denies that it has caused the PLAINTIFF any harm.

17 20.    PSYSTAR admits that venue is proper in the Northern District of California in that

18 PSYSTAR has done business in this judicial district.  PSYSTAR otherwise denies the allegations of

19 paragraph 20 including that PSYSTAR has committed copyright and/or trademark infringement,

20 breached a contract, engaged in unfair competition, and/or continues to commit such acts in this or

21 any district.  PSYSTAR admits that the present action is an Intellectual Property Action and is

22 therefore exempt from the intra-District venue provisions of Local Rule 3-2(c).

## **GENERAL ALLEGATIONS**

21.     PSYSTAR admits that the PLAINTIFF claims to license the use of the Mac OS for use only on Apple-labeled hardware although PSYSTAR is without information or knowledge as to what this otherwise vague and ambiguous terminology (*i.e.*, Apple-labeled hardware) refers.  PSYSTAR is without information or knowledge as to what is meant by an "original version of the Mac OS" and on that basis denies the allegations of the second sentence of paragraph 21 of the First Amended Complaint and believes that the Mac OS may be purchased online and/or from any number of resellers such as Amazon, AsenaShop, FadFusion, and SoftwareMedia.com.  PSYSTAR admits that the PLAINTIFF states that upgrades to the Mac OS may be licensed separately and, further, that the PLAINTIFF states its license prohibits the use of the Mac OS or upgrades on non-Apple hardware.

22.     PSYSTAR admits that a license agreement is attached as Exhibits 1 and 2 to the First Amended Complaint but is without information or knowledge with respect to whether those agreements are provided with each version of the Mac OS X or Max OS X Server and on that basis denies the allegations of the first sentence of paragraph 22 of the First Amended Complaint. PSYSTAR admits that the quoted language matches that language as provided in the exhibit attached to the First Amended Complaint claiming to be the Mac OS X license and, further, that said quoted language also corresponds to that language in the exhibit purporting to be the Max OS X Leopard Server License Agreement; PSYSTAR otherwise denies all remaining allegations of paragraph 22 of the First Amended Complaint including whether or not said terms are valid and/or enforceable.

23.     PSYSTAR admits the allegations of paragraph 23.

24.     PSYSTAR admits the allegations of paragraph 24 but only to the extent that PSYSTAR has never engaged in any discussion concerning the allegations of paragraph 24 with the PLAINTIFF; PSYSTAR similarly notes that the PLAINTIFF has never denied PSYSTAR the authorization to install, use, or sell the Mac OS software on any non-Apple-labeled hardware until the filing of the present action.

# FIRST CLAIM FOR RELIEF

## (Copyright Infringement)

25.     PSYSTAR repeats and incorporates by reference its admission and denials as set forth in paragraphs 1-24 of the present Answer.

26.     PSYSTAR denies that Max OS, Mac OS X, Mac OS X version 10.5, and Mac OS X Server all constitute "an original work of authorship" "constituting copyrightable subject matter" as those terms are defined by the United States copyright laws and on that basis denies the allegations; PSYSTAR is without information or knowledge as to who contributed to the purported works of authorship identified in paragraph 26 of the First Amended Complaint and on that basis denies the any corresponding allegation; PSYSTAR admits that the PLAINTIFF claims to be the owner of the copyright registrations identified in paragraph 26 of the First Amended Complaint.  PSYSTAR is without information or knowledge as to whether registrations should have been granted as to the aforementioned works and on that basis denies the remaining allegations in paragraph 26. PSYSTAR denies the allegation that PSYSTAR has infringed any valid copyright held by the PLAINTIFF.

27.     PSYSTAR denies the allegations of paragraph 27 including the allegation that PSYSTAR has in anyway infringed any of the PLAINTIFF's exclusive rights under the Copyright Act.

28.     PSYSTAR denies the allegations of paragraph 28 of the First Amended Complaint.

29.     PSYSTAR denies the allegations of paragraph 29 of the First Amended Complaint.

30.     PSYSTAR denies the allegations of paragraph 30 of the First Amended Complaint.

31.     PSYSTAR denies the allegations of paragraph 31 of the First Amended Complaint.

32.     PSYSTAR denies the allegations of paragraph 32 of the First Amended Complaint.

33.     PSYSTAR denies the allegations of paragraph 33 of the First Amended Complaint.

**SECOND CLAIM FOR RELIEF**

**(Contributory and Induced Copyright Infringement)**

34.     PSYSTAR repeats and incorporates by reference its admissions and denials as set forth in paragraphs 1-33 of the present Answer.

35.     PSYSTAR denies the allegations of paragraph 35 of the First Amended Complaint.

36.     PSYSTAR denies the allegations of paragraph 36 of the First Amended Complaint.

37.     PSYSTAR denies the allegations of paragraph 37 of the First Amended Complaint.

38.     PSYSTAR denies the allegations of paragraph 38 of the First Amended Complaint.

39.     PSYSTAR denies the allegations of paragraph 39 of the First Amended Complaint.

40.     PSYSTAR denies the allegations of paragraph 40 of the First Amended Complaint.

41.     PSYSTAR denies the allegations of paragraph 41 of the First Amended Complaint.

42.     PSYSTAR denies the allegations of paragraph 42 of the First Amended Complaint.

**THIRD CLAIM FOR RELIEF**

**(Violation of the Digital Millennium Copyright Act)**

43.     PSYSTAR repeats and incorporates by reference its admissions and denials as set forth in paragraphs 1-42 of the present Answer.

44.     PSYSTAR denies that APPLE employs technological protection measures that effectively control access to APPLE's Copyrighted Works.

45.     PSYSTAR denies the allegation that it has circumvented a technological copyright protection measure that controls access to APPLE's Copyrighted Works.

46.     PSYSTAR admits that it has developed means to allow the Mac OS X to operate on non-Apple-Labeled computer hardware systems; PSYSTAR otherwise denies the remaining allegations of paragraph 46 of APPLE's First Amended Complaint.

47.     PSYSTAR denies that its "code" circumvents a technological measure by virtue of avoiding, bypassing, removing, descrambling, decrypting, deactivating, or impairing a

1  technological protection measure in order to gain unauthorized access to APPLE's copyrighted

2  works.

3  48.     PSYSTAR denies that it manufactures any product, device, component, technology,

4  software, or 'code' that is primarily designed or produced for circumventing any so-called

5  technological protection measure that effectively controls access to copyrighted works or that

6  allows third parties to accomplish the same.

7  49.     PSYSTAR denies the allegations of paragraph 49 of the First Amended Complaint

8  including the assertion that PSYSTAR manufactures or markets a so-called Circumvention Device.

9  50.     PSYSTAR denies the allegations of paragraph 50 of the First Amended Complaint

10  including the assertion that PSYSTAR has realized a profit by virtue of circumvention of any

11  technological protection measure or trafficking in a circumvention device as is falsely alleged by

12  Apple.

13  51.     PSYSTAR denies the allegations of paragraph 51 of the First Amended Complaint

14  including the assertion that APPLE has been damaged by virtue of PSYSTAR's alleged

15  circumvention of any technological protection measure or alleged trafficking in a circumvention

16  device for at least the reasons that PSYSTAR has not engaged in any such activity as is falsely

17  alleged by Apple.

18  52.     PSYSTAR denies the allegations of paragraph 52 of the First Amended Complaint.

19  53.     PSYSTAR denies the allegations of paragraph 53 of the First Amended Complaint.

20  54.     PSYSTAR denies the allegations of paragraph 54 of the First Amended Complaint.

21

22                          **FOURTH CLAIM FOR RELIEF**

23                               **(Breach of Contract)**

24

25  55.     PSYSTAR repeats and incorporates by reference its admissions and denials as set forth in

26  paragraphs 1-54 of the present Answer.

27  56.     PSYSTAR denies the allegations of paragraph 56 of the First Amended Complaint in that

28  the software disk is not sealed or shrink-wrapped.

1    57.    PSYSTAR denies the allegations of paragraph 57 of the First Amended Complaint.

2    58.    PSYSTAR denies the allegations of paragraph 58 of the First Amended Complaint.

3    59.    PSYSTAR denies the allegations of paragraph 59 of the First Amended Complaint.

4

5                           **FIFTH CLAIM FOR RELIEF**

6                          **(Inducing Breach of Contract)**

7

8    60.    PSYSTAR repeats and incorporates by reference its admissions and denials as set forth in

9    paragraphs 1-59 of the present Answer.

10   61.    PSYSTAR admits that it is aware of the existence of the License Agreement governing the

11   use of the Max OS X software and certain conditions and terms thereof but lacks information or

12   knowledge as to what particular terms and conditions are referred to by the PLAINTIFF and for

13   that reason denies the allegation.

14   62.    PSYSTAR denies that it has advised, encouraged, and assisted others to breach the License

15   Agreement; PSYSTAR has not advised consumers to acquire Mac OS X software and install, use,

16   and run it on non-Apple-Labeled computers.  PSYSTAR denies that it has unlawfully induced

17   breach of the License Agreement by others.

18   63.    PSYSTAR denies the allegations of paragraph 63 of the First Amended Complaint.

19

20                           **SIXTH CLAIM FOR RELIEF**

21                          **(Trademark Infringement)**

22

23   64.    PSYSTAR repeats and incorporates by reference its admissions and denials as set forth in

24   paragraphs 1-63 of the present Answer.

25   65.    PSYSTAR admits that registered marks exist as attached to the First Amended Complaint as

26   Exhibit 3 but is without information or knowledge as to what goods and service those marks pertain

27   and on that basis denies the remaining allegations of paragraph 65.

28

66.     PSYSTAR admits that the PLAINTIFF has never expressly consented to the use of any trademark of the PLAINTIFF but alleges that PSYSTAR has never engaged in any discussion concerning the allegations of paragraph 66 with the PLAINTIFF; PSYSTAR further alleges that the PLAINTIFF has never denied PSYSTAR the authorization to use any mark of the PLAINTIFF. PSYSTAR denies that any valid mark has been infringed and on that basis denies the remaining allegations of paragraph 66.

67.     PSYSTAR admits that it is aware of the PLAINTIFF and its business but denies that PSYSTAR has infringed any valid mark of the PLAINTIFF.

68.     PSYSTAR denies the allegation that it has engaged in an unauthorized use of any trademark of the PLAINTIFF; PSYSTAR further denies that any action of PSYSTAR has caused deception or confusion or mistake amongst consumers as to the origin, sponsorship, approval, affiliation, connection, or association between the PLAINTIFF and PSYSTAR and on that basis denies the remaining allegations of paragraph 68.

69.     PSYSTAR denies the allegations of paragraph 69 of the First Amended Complaint.

70.     PSYSTAR denies the allegations of paragraph 70 of the First Amended Complaint.

71.     PSYSTAR denies the allegations of paragraph 71 of the First Amended Complaint.

72.     PSYSTAR denies the allegations of paragraph 72 of the First Amended Complaint.

73.     PSYSTAR denies the allegations of paragraph 73 of the First Amended Complaint.

## SEVENTH CLAIM FOR RELIEF

### (Trademark Infringement)

74.     PSYSTAR repeats and incorporates by reference its admissions and denials as set forth in paragraphs 1-73 of the present Answer.

75.     PSYSTAR is without information or knowledge as to the existence of the unidentified common law trademark rights of the PLAINTIFF and on that basis denies the allegations of paragraph 75 of the First Amended Complaint.

1    76.    PSYSTAR is without information or knowledge as to the nature of existence of the

2    unidentified "various marks or . . . [purportedly] distinctive trade dress" referenced in paragraph

3    sixty-two of the First Amended Complaint and on that basis denies those allegations.

4    77.    PSYSTAR denies the allegations of paragraph 77 because PSYSTAR has never sought to

5    cause confusion or mistake, or to deceive the public as to the origin, sponsorship, association or

6    approval of goods or services of PSYSTAR or to imply an association with the PLAINTIFF.

7    78.    PSYSTAR denies the allegations of paragraph 78 of the First Amended Complaint.

8    79.    PSYSTAR denies the allegations of paragraph 79 of the First Amended Complaint.

9    80.    PSYSTAR denies the allegations of paragraph 80 of the First Amended Complaint.

10   81.    PSYSTAR denies the allegations of paragraph 81 of the First Amended Complaint.

11   82.    PSYSTAR denies the allegations of paragraph 82 of the First Amended Complaint.

12   83.    PSYSTAR denies the allegations of paragraph 83 of the First Amended Complaint.

13   84.    PSYSTAR denies the allegations of paragraph 84 of the First Amended Complaint.

14   85.    PSYSTAR denies the allegations of paragraph 85 of the First Amended Complaint.

15   86.    PSYSTAR denies the allegations of paragraph 86 of the First Amended Complaint.

16

17                              **EIGHTH CLAIM FOR RELIEF**

18                              **(Trade Dress Infringement)**

19

20   87.    PSYSTAR repeats and incorporates by reference its admission and denials as set forth in

21   paragraphs 1-86 of the present Answer.

22   88.    PSYSTAR is without information and belief as to whether the PLAINTIFF is the owner of

23   the alleged Trade Dress and on that basis denies the allegations of paragraph 88.

24   89.    PSYSTAR is without information and belief as to what is well-known among consumers

25   and what has become exclusively associated with the PLAINTIFF and the Leopard version of the

26   Mac OS X and on that basis denies the allegations of paragraph 89.

27

28

90.    PSYSTAR denies that PLAINTIFF's alleged Trade Dress is distinctive with respect to the Max OS X Leopard operating system and whether the same distinguishes PLAINTIFF's goods and services and on that basis denies the allegations of paragraph 90.

91.    PSYSTAR denies that PLAINTIFF's purported Trade Dress is distinctive and on that basis denies the allegations of paragraph 91.

92.    PSYSTAR denies that PLAINTIFF's purported Trade Dress is non-functional.

93.    PSYSTAR denies that it has engaged in an unauthorized use of PLAINTIFF's purported Trade Dress and that any activity of PSYSTAR is likely to cause confusion, mistake, or deception with respect to the source of goods and services or as to the affiliation, connection, association, sponsorship or approval of such goods and services and on that basis denies the allegations of paragraph 93.

94.    PSYSTAR denies that it has violated Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

95.    PSYSTAR denies the allegations of paragraph 95 of the First Amended Complaint.

96.    PSYSTAR denies the allegations of paragraph 96 of the First Amended Complaint.

97.    PSYSTAR denies the allegations of paragraph 97 of the First Amended Complaint.

98.    PSYSTAR denies the allegations of paragraph 98 of the First Amended Complaint.

99.    PSYSTAR denies the allegations of paragraph 99 of the First Amended Complaint.


**NINTH CLAIM FOR RELIEF**

**(Trademark Dilution)**


100.    PSYSTAR repeats and incorporates by reference its admissions and denials as set forth in paragraphs 1-99 of the present Answer.

101.    PSYSTAR denies the allegations of paragraph 101 of the First Amended Complaint.

102.    PSYSTAR denies the allegations of paragraph 102 of the First Amended Complaint.

103.    PSYSTAR denies the allegations of paragraph 103 of the First Amended Complaint.

104.    PSYSTAR denies the allegations of paragraph 104 of the First Amended Complaint.

105.    PSYSTAR denies the allegations of paragraph 105 of the First Amended Complaint.

1    106.    PSYSTAR denies the allegations of paragraph 106 of the First Amended Complaint.

2

3                              **TENTH CLAIM FOR RELIEF**

4                              **(State Unfair Competition)**

5

6    107.    PSYSTAR repeats and incorporates by reference its admissions and denials as set forth in

7    paragraphs 1-106 of the present Answer.

8    108.    PSYSTAR denies the allegations of paragraph 108 of the First Amended Complaint.

9    109.    PSYSTAR denies the allegations of paragraph 109 of the First Amended Complaint.

10

11                             **ELEVENTH CLAIM FOR RELIEF**

12                             **(Common Law Unfair Competition)**

13

14   110.    PSYSTAR repeats and incorporates by reference its admissions and denials as set forth in

15   paragraphs 1-109 of the present Answer.

16   111.    PSYSTAR denies the allegations of paragraph 111 of the First Amended Complaint.

17

18                              **PRAYER FOR RELIEF**

19

20   PSYSTAR expressly denies that the PLAINTIFF is entitled to any of the relief requested in the

21   Claims for Relief.

22

23                              **GENERAL DENIAL**

24

25   PSYSTAR further denies each and every allegation set forth in the First Amended Complaint to

26   which PSYSTAR has not specifically admitted, controverted, or denied.

27

28

# AFFIRMATIVE DEFENSES

PSYSTAR asserts the following affirmative defenses and reserves the right to allege additional defenses as they are discovered.

## First Affirmative Defense

## (Failure to State a Claim)

The PLAINTIFF has failed to state a claim upon which relief can be granted.

## Second Affirmative Defense

## (Estoppel)

The PLAINTIFF's claims are barred, in whole or in part, by the doctrine of estoppel.

## Third Affirmative Defense

## (Waiver)

The PLAINTIFF's claims are barred, in whole or in part, by the doctrine of waiver.

## Fourth Affirmative Defense

## (Unclean Hands)

The PLAINTIFF's claims are barred, in whole or in part, by the doctrine of unclean hands.

**Fifth Affirmative Defense**

**(Lack of Injury in Fact)**

The PLAINTIFF cannot satisfy its burden of demonstrating that the PLAINTIFF suffered any injury in fact, nor did the PLAINTIFF suffer any such injury.

**Sixth Affirmative Defense**

**(Special Case)**

The PLAINTIFF cannot satisfy its burden, in whole or in part, of demonstrating that the present case is a special case.

**Seventh Affirmative Defense**

**(Lack of Standing to Assert Copyright / Trademark)**

The PLAINTIFF lacks standing to assert a claim of infringement of any alleged copyright and/or trademark including, but not limited to, lack of right, title, and interest to bring an action related to the same.

**Eighth Affirmative Defense**

**(Lack of Infringement of Copyright / Trademark)**

PSYSTAR has not directly or indirectly—by contribution or inducement—infringed any alleged copyright and/or trademark of the PLAINTIFF.

**Ninth Affirmative Defense**

**(Lack of Copyrightable Subject Matter)**

PLAINTIFF's alleged copyrights lack protectable subject matter in that they lack original expression as required by 17 U.S.C. § 102(a) and/or encompass an idea, procedure, process, system, method of operation, concept, principle, or discovery as prohibited by 17 U.S.C. § 102(b).

**Tenth Affirmative Defense**

**(Fair Use of Copyright)**

Any reproduction, display, derivation, or distribution of any valid copyright of the PLAINTIFF by PSYSTAR is a fair use protected by the provisions of 17 U.S.C. § 107.

**Eleventh Affirmative Defense**

**(First Sale / Exhaustion of Copyright)**

Any distribution of any valid copyright of the PLAINTIFF by PSYSTAR is subject to the first sale doctrine.

**Twelfth Affirmative Defense**

**(Express License of Copyright)**

Any reproduction, display, derivation, or distribution of any valid copyright of the PLAINTIFF by PSYSTAR is subject to an express license by and between the parties including but not limited to the Apple Public Source License and/or one or more other Open Source licenses.

**Thirteenth Affirmative Defense**

**(Implied License to Copyright)**

Any reproduction, display, derivation, or distribution of any valid copyright of the PLAINTIFF by PSYSTAR is subject to an implied license by and between the parties.

**Fourteenth Affirmative Defense**

**(Failure to Register Copyright)**

PLAINTIFF is prohibited from bringing action against PSYSTAR for the alleged infringement of one or more of PLAINTIFF's copyrights for failure to register said copyrights with the Copyright Office as required by 17 U.S.C. § 411.

**Fifteenth Affirmative Defense**

**(Lack of Willfulness)**

PSYSTAR has not willfully infringed—directly or indirectly—any copyright and/or trademark of the PLAINTIFF.

**Sixteenth Affirmative Defense**

**(Functionality of Trademark)**

One or more of PLAINTIFF's trademarks and/or trade dress is functional as prohibited by 15 U.S.C. § 1052(e)(5).

1

## Seventeenth Affirmative Defense

2

### (Lack of Association / Lack of Indicia of Source)

3

4   One or more of PLAINTIFF's trademarks are not associated with any good or service of the

5   PLAINTIFF nor are the trademarks indicative of source of any good or service.

6

7

## Eighteenth Affirmative Defense

8

### (Lack of Secondary Meaning of Trademark)

9

10   One or more of PLAINTIFF's trademark and/or trade dress are descriptive and lack requisite

11   secondary meaning within the relevant consuming public as prohibited by 15 U.S.C. § 1052(e)(1).

12

13

## Nineteenth Affirmative Defense

14

### (Generic Term)

15

16   One or more of PLAINTIFF's alleged trademarks are generic terms that do not warrant protection.

17

18

## Twentieth Affirmative Defense

19

### (Lack of Actual Confusion)

20

21   There has been no actual confusion with respect to any activity of PSYSTAR and one or more of

22   the trademarks and/or trade dress of the PLAINTIFF.

23

24

25

26

27

28

**Twenty-First Affirmative Defense**

**(Lack of Likelihood of Confusion)**

There is no likelihood that any members of the relevant consuming public will be confused with respect to any activity of PSYSTAR and one or more of the trademarks and/or trade dress of the PLAINTIFF.

**Twenty-Second Affirmative Defense**

**(Nominative Use of Trademark)**

The use of any trademark of the PLAINTIFF by PSYSTAR is a nominative fair use in that the PLAINTIFF's product or service is not readily identifiable without the use of the trademark; PSYSTAR only uses as much of the trademark as is reasonably necessary to identify the PLAINTIFF's products or services; and PSYSTAR does nothing that would, in conjunction with the trademark, suggest to the relevant consuming public a sponsorship or endorsement by the PLAINTIFF.

**Twenty-Third Affirmative Defense**

**(Fair Use of Trademark)**

The use of any trademark of the PLAINTIFF by PSYSTAR is protected by the Fair Use Doctrine and/or the First Amendment including but not limited to parody, non-commercial use, product comparison, and/or non-competing/non-confusing use.

**Twenty-Fourth Affirmative Defense**

**(Lack of Privity)**

There is no contract by and between PSYSTAR and the PLAINTIFF whereby PSYSTAR could have allegedly breached the same.

**Twenty-Fifth Affirmative Defense**

**(Violation of Section 16600 of the Business & Professions Code)**

The PLAINTIFF violates Section 16600 of the California Business & Professions Code vis-à-vis an otherwise void contractual arrangement that attempts to restrain PSYSTAR from engaging in a lawful profession, trade, or business; any related contract is therefore unenforceable.

**Twenty-Sixth Affirmative Defense**

**(Partial Failure of Consideration)**

PLAINTIFF's claims are wholly or partially barred because of a failure of consideration.

**Twenty-Seventh Affirmative Defense**

**(Preemption)**

PLAINTIFF's claims are wholly or partially barred because the contract is preempted in whole or in part by federal law.

## Twenty-Eighth Affirmative Defense

### (Illegality)

PLAINTIFF's claims are wholly or partially barred because the contract is unenforceable on the grounds illegality.

## Twenty-Ninth Affirmative Defense

### (Public Policy)

PLAINTIFF's claims are wholly or partially barred in that the contact is unenforceable as being contrary to the public policy of the law of the State of California.

## Thirtieth Affirmative Defense

### (Unconscionability)

PLAINTIFF's claims are wholly or partially barred in that the contract is unenforceable in that it is procedurally and/or substantively unconscionable.

## Thirty-First Affirmative Defense

### (Vague, Ambiguous, and Otherwise Unintelligible Contract)

The alleged contract utilizes vague, ambiguous, and otherwise unintelligible terms thereby preventing a meeting of the minds as to the scope, rights, and reservations of the alleged contract.

**Thirty-Second Affirmative Defense**

**(Lack of Independently Actionable Claim)**

PLAINTIFF's unfair competition claims fail to identify a requisite and independently actionable activity of PSYSTAR giving rise to any alleged unfair competition.

**Thirty-Third Affirmative Defense**

**(Severability)**

Certain provisions of the alleged contract are unenforceable and therefore severable from any otherwise valid provisions of the contract.

**Thirty-Fourth Affirmative Defense**

**(Frustration of Purpose)**

Enforcement of the alleged contract by and between the PLAINTIFF and PSYSTAR as alleged by the PLAINTIFF would frustrate and cause the alleged contract to operate in a manner contrary to the purpose of the same.

**Thirty-Fifth Affirmative Defense**

**(Consideration Paid in Full)**

PSYSTAR has delivered on its consideration in full and the PLAINTIFF, notwithstanding said consideration, now seeks to repudiate the contract.

## Thirty-Sixth Affirmative Defense
## (Failure to Act in a Commercially Reasonable Manner)

PLAINTIFF's actions are unreasonable in light of the California Commercial Code.

## Thirty-Seventh Affirmative Defense
## (Copyright Misuse)

The PLAINTIFF has attempted to leverage the rights granted under any valid copyright to areas outside the exclusive rights granted by the Copyright Act. The PLAINTIFF has engaged in certain anticompetitive behavior and/or other actions that are in violation of the public policy underlying the federal copyright laws including, but not limited to, a failure to abide by the fair use and first sale doctrines.

As evidence of the misuse of its copyrights, PSYSTAR is informed and believes that APPLE intentionally embeds code in the Mac OS that causes the Mac OS to malfunction on any computer hardware system that is not an Apple-Labeled computer hardware system. Upon recognizing that a computer hardware system is not an Apple-Labeled computer hardware system, the Mac OS will not operate properly, if at all, and will go into what is colloquially known as 'kernel panic.' Through kernel panic, the operating system believes that it has detected an internal and fatal error from which the operating system cannot safely recover. As a result, the operating system discontinues operation. Without a functioning operating system, functionality of the corresponding computer is reduced to near zero.

In Unix style operating systems like that of the Mac OS, the kernel routines that handle panics are generally known as panic(). Panic() routines are generally designed to output an error message to the display device of the computer, dump an image of kernel memory to disk for post-mortem debugging, and then await either manual reboot of the system or automatically initiate the same.

Attempts by the operating system to read an invalid or non-permitted memory address are a common source of kernel panic. Panic may also occur as a result of a hardware failure or a bug in the operating system. While the operating system, in some instances, could continue operation after occurrence of a memory violation, the system is in an unstable state and often discontinues operation to prevent further damage and to allow for diagnosis of the error rather than risk security breaches and data corruption.

As of the release of Mac OS 10.5, PSYSTAR is informed and believes and thereon alleges that APPLE has continued to cause interoperability issues in its xnu kernel on generic Intel hardware, including kernel panics. A sample and artificially induced kernel panic situation arises in the 10.5.5 xnu kernel during the initialization process where the Mac OS detects that the processor of the corresponding computing device is not in a certain family. PSYSTAR is informed and believes and thereon alleges that that 'certain family' is the Intel Dual Core/Core/Core2 series of processors, which is inclusive of Apple-Labeled computer hardware systems.

PSYSTAR is informed and believes and thereon alleges that there is no specific reason as to why this "check" should be present in the code as the kernel is capable of booting on a much broader range of hardware. PSYSTAR is informed and believes and thereon alleges that when the check is patched out, either by binary patching the kernel or source patching and then compiling, the kernel can easy be booted on a Pentium 4 processor. This is something that is currently restricted by the "check" in current versions of the xnu kernel and for no functional reason. This "check" stops the execution of the Mac OS on any x86 processor not sold by Apple—that is, the "check" stops the execution of the Mac OS on any computer that is not an Apple-Labeled computer hardware system. As further evidence of the misuse of its copyrights, PSYSTAR is informed and believes and thereon alleges that APPLE embeds code in the Mac OS that causes the Mac OS to malfunction on any computer hardware system that is not an Apple-Labeled computer hardware system. PSYSTAR is informed and believes and thereon alleges that upon recognizing that a computer hardware system is not an Apple-Labeled computer hardware system, the Mac OS will not operate

properly, if at all, and will enter into what is colloquially known as an 'infinite loop.' An infinite loop is a sequence of instructions in a computer program that endlessly loops. This infinite loop is due either to the loop having no terminating condition or having one that can never be met. Infinite loops cause a program to consume all available processor time.

As of the release of Mac OS 10.5, PSYSTAR is informed and believes and thereon alleges that APPLE has continued to cause interoperability issues in its xnu kernel on generic Intel hardware including infinite loops. PSYSTAR is informed and believes and thereon alleges that a sample infinite loop arises during restart/reboot after calling modular restart functions. PSYSTAR is informed and believes and thereon alleges that most x86 hardware fail to reboot with the stock xnu kernel due to this infinite loop.

There is no specific reason as to why this infinite loop is present in the code as the kernel is capable of restating/rebooting on a much broader range of hardware. Thus, the restart/reboot infinite loop exists for no functional reason. This loop stops the execution of the Mac OS on any x86 processor not sold by Apple—that is, an Apple-Labeled computer hardware system.

PSYSTAR is informed and believes, and thereon alleges, that APPLE is engaged in conduct that constitutes misuse of its copyright by preventing the proper operation of the Mac OS on any computer hardware system that is not an Apple-Labeled computer hardware system. Customers purchasing the Mac OS are thereby forced to purchase, and only purchase, an Apple-Labeled computer hardware system if they wish to have the Mac OS operate sans kernel panic or an infinite loop.

In conjunction to technically preventing the Mac OS from operating on any computing device other capable of executing the Mac OS including those that are not an Apple-Labeled computer hardware system, the EULA for the Mac OS X Leopard and MAC OS X Leopard Server (collectively

referenced herein as the aforementioned Mac OS), specifically—and by APPLE's own admission

in paragraph 22 of its First Amended Complaint—states:

> "1. General. The software (including Boot ROM Code) . . . accompanying this
> License whether preinstalled on Apple-labeled hardware, on disks, in read only
> memory, or any other media or in any other form (collectively the 'Apple Software')
> are licensed, not sold, to you by Apple Inc. ('Apple') for use **only under the terms
> of this License** . . . ."
>
> 2. Permitted License Uses and Restrictions.
>
> A. Single Use. This license allows you to install, use and run (1) copy of the Apple
> Software on a single **Apple-labeled computer** at a time. **You agree not to install,
> use, or run the Apple Software on any non-Apple-Labeled computer or enable
> another to do so.**

(emphasis added).

APPLE leverages its copyrights in the Mac OS to require customers to agree to install, use, or run

the Mac OS on—and only on—Apple-Labeled computer hardware systems. As such, a customer is

prohibited from seeking out and choosing any other computer hardware system that is not an

Apple-Labeled computer hardware system on which to install, use, and run the Mac OS.

As evidenced by the foregoing, APPLE misuses its copyrights in the Mac OS to force purchases of

Apple-Labeled computer hardware systems for use in conjunction with the Mac OS. APPLE,

therefore, has attempted to (and continues to) leverage the rights granted under any valid copyright

to areas outside the exclusive rights granted by the Copyright Act (*i.e.*, forcing purchases of Apple-

Labeled computer hardware systems). APPLE has thus engaged in certain anticompetitive

behavior and/or other actions that are in violation of the public policy underlying the federal

copyright laws including, but not limited to, a failure to abide by the fair use and first sale

doctrines.

APPLE has leveraged and thereby misused its copyrights through the use of both its EULA and the

requirement that the Mac OS be used exclusively on Apple-Labeled computer hardware systems

notwithstanding the lack of any copyright interest in that hardware. By enforcing this provision in its EULA, APPLE is attempting to obtain, maintain, and/or enjoy rights not granted by the Copyright Act including those wholly unrelated to any valid copyright.

APPLE likewise purports to use "technological protection measures" to "control access to Apple's copyrighted works." APPLE has accused PSYSTAR of having engaged in the manufacture, importation, offering to the public, provisioning, or trafficking of an as yet unidentified "Circumvention Device" primarily designed or produced for the purpose of circumventing APPLE's technological protection measures and/or allowing third parties to access APPLE copyrights without authorization. APPLE makes these assertions in the context of 17 U.S.C. § 1201 *et seq.* (the DMCA).

PSYSTAR is informed and believes and thereon alleges that APPLE is leveraging rights granted under any valid copyright to areas outside the exclusive rights granted by the Copyright Act (*i.e.*, forcing purchases of Apple-Labeled computer hardware systems). APPLE has thus engaged in certain anticompetitive behavior and/or other actions that are in violation of the public policy underlying the federal copyright laws including, but not limited to, a failure to abide by the fair use and first sale doctrines.

APPLE accomplishes this leveraging through the assertion of claims under the DMCA. Through the use of the DMCA, APPLE attempts to leverage its copyright-granted limited monopoly in the Mac OS into a broad monopoly in the independent manufacture of Mac OS capable computer hardware systems by forcing purchases of Apple-Labeled computer hardware systems. Specifically, APPLE alleges that any party utilizing the Mac OS on any computer system that is not an Apple-Labeled Computer Hardware System has engaged in a violation of the DMCA. By attempting to apply the DMCA in this manner, APPLE is attempting to obtain, maintain, and/or enjoy rights not granted by the Copyright Act including those wholly unrelated to any valid copyright.

PSYSTAR is further informed and believes and thereon alleges that APPLE does not actually employ a technological copyright protection measure that effectively controls access to the Mac OS.  PSYSTAR is also informed and believes and thereon alleges that any purported technological copyright protection measure does not necessarily and/or effectively control access to a copyrighted work.  PSYSTAR further alleges that any PSYSTAR product or technology has a commercially significant purpose or use other than to circumvent a technological measure that effectively controls access to a copyrighted work notwithstanding APPLE's allegations as to the same.  PSYSTAR is informed and believes and thereon alleges that APPLE is aware of the foregoing; notwithstanding such knowledge, PSYSTAR alleges that APPLE brought a DMCA claim in an attempt to chill innovation whereby third-parties such as PSYSTAR would not engage in legal and legitimate development of products that compete with Apple-Labeled computer hardware systems.

PSYSTAR is informed and believes and thereon alleges that APPLE made the foregoing DMCA claims solely to prevent and/or stymie the continued development of a competitive threat to Apple-Labeled computer hardware systems—that is, computer hardware systems capable of executing the Mac OS that are not Apple-Labeled computer hardware systems.

**Thirty-Eight Affirmative Defense**

**(No Technological Measures Effectively Controlling Access to a Copyrighted Work)**

APPLE does not employ a technological measure that effectively controls access to a copyrighted work.

**Thirty-Ninth Affirmative Defense**

**(No Circumvention)**

PSYSTAR has not circumvented any technological measure that effectively controls access to a copyrighted work.

**Fortieth Affirmative Defense**

**(No Circumvention Device)**

PSYSTAR does not manufacture, import, traffic, offer to the public, or provide a product, device, component, technology, software, or code whose primary purpose is to circumvent a technological measure that effectively controls access to a copyrighted work.

**Forty-First Affirmative Defense**

**(Significant Commercial Purpose)**

To the extent that PSYSTAR manufactures or sells any device that might be employed in any conduct related to the circumvention of a technological measure that effectively controls access to a copyrighted work—and without admitting that PSYSTAR does manufacture any such device— such a device has a significant commercial purpose other than to circumvent a technological measure that effectively controls access to a copyrighted work.

**Forty-Second Affirmative Defense**

**(Lack of Proximate Cause)**

To the extent that PSYSTAR manufactures or sells any device that might be employed in any conduct related to the circumvention of a technological measure that effectively controls access to a copyrighted work—and without admitting that PSYSTAR does manufacture any such device— PSYSTAR contends that any such device is utilized by third-parties acting beyond the control of

1   PSYSTAR whereby these third-parties utilize any such device in an unauthorized and otherwise

2   unexpected or unanticipated manner not intended by PSYSTAR.

3

4   Dated:  December 16, 2008                    CARR & FERRELL *LLP*

5

6                                                By:  /Colby B. Springer/

7                                                     ROBERT J. YORIO
                                                     COLBY B. SPRINGER
8                                                     CHRISTOPHER P. GREWE

9                                                     Attorneys for Defendant/Counterclaimant
                                                     PSYSTAR CORPORATION

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEMAND FOR JURY TRIAL**

Defendant and Counterclaimant PSYSTAR hereby demands a jury trial of all issues in the above-captioned action that are triable to a jury.


Dated: December 16, 2008                              CARR & FERRELL *LLP*


                                              By: /Colby B. Springer/
                                              ROBERT J. YORIO
                                              COLBY B. SPRINGER
                                              CHRISTOPHER P. GREWE

                                              Attorneys for Defendant/Counterclaimant
                                              PSYSTAR CORPORATION