TOWNSEND AND TOWNSEND AND CREW LLP
JAMES G. GILLILAND, JR. (State Bar No. 107988)
MEHRNAZ BOROUMAND SMITH (State Bar No. 197271)
MEGAN M. CHUNG (State Bar No. 232044)
J. JEB B. OBLAK (State Bar No. 241384)
Two Embarcadero Center, Eighth Floor
San Francisco, CA 94111
Telephone: (415) 576-0200
Facsimile: (415) 576-0300
Email: jggilliland@townsend.com
       mboroumand@townsend.com
       mmchung@townsend.com
       jboblak@townsend.com

Attorneys for Plaintiff
APPLE INC.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>    Plaintiff,<br><br>v.<br><br>PSYSTAR CORPORATION,<br>a Florida corporation,<br><br>    Defendant. | Case No. CV 08-03251 WHA<br><br>**APPLE INC.'S OPPOSITION TO PSYSTAR CORPORATION'S MOTION FOR LEAVE TO AMEND ITS COUNTERCLAIMS**<br><br>Date: Thursday, January 22, 2009<br>Time: 8:00 a.m.<br>Courtroom: 9, 19th Floor<br>Honorable William Alsup |

# TABLE OF CONTENTS

|     |     | Page |
| --- | --- | --- |
| I. | INTRODUCTION | 1 |
| II. | FACTUAL BACKGROUND | 1 |
| III. | PSYSTAR'S ATTEMPT TO INTRODUCE PROPOSED COUNTERCLAIMS FOR COPYRIGHT MISUSE SHOULD BE REJECTED | 2 |
| | A. Psystar Improperly Attempts To Create Counterclaims For The Affirmative Defense of Copyright Misuse | 2 |
| | B. Leave to Amend Should Be Denied Because Psystar's Proposed Counterclaims Fail to Plead Facts Sufficient to Find Misuse | 5 |
| |    1. Apple's Claims Against Psystar Flow From Apple's Exclusive Rights Under Copyright Law | 6 |
| |    2. Psystar's Proposed Counterclaims Fail To Plead The Necessary Elements of Misuse Under Ninth Circuit Precedent | 7 |
| IV. | PSYSTAR'S PROPOSED THIRD AND FOURTH SECTION 17200 COUNTERCLAIMS ARE BASELESS AND THUS SHOULD NOT BE ALLOWED | 9 |
| | A. Psystar Fails To Allege Any Unlawful Conduct In Violation of A Statute In Support Of Its Purported Section 17200 Counterclaims | 10 |
| | B. Psystar Fails To Allege Any Unfair Conduct That Violates Or Threatens To Violate The Antitrust Laws To Support Its Proposed Section 17200 Counterclaims | 10 |
| V. | CONCLUSION | 13 |

# TABLE OF AUTHORITIES

Page

**Cases**

*Aguilar v. Atlantic Richfield Co.*
  25 Cal. 4th 826 (2001) ...................................................................................................... 10

*Alcatel U.S.A., Inc. v. DGI Tech., Inc.*, 166 F.3d 772 (5th Cir. 1999) ............................................. 8, 9

*Altera Corp. v. Clear Logic, Inc.*
  424 F.3d 1079 (9th Cir. 2005) .............................................................................................. 2

*Arista Records, Inc. v. Flea World, Inc.*
  356 F. Supp. 2d 411 (D.N.J. 2005) ................................................................................... 3, 4

*Bilbrey v. Brown*
  738 F.2d 1462 (9th Cir. 1984) .............................................................................................. 3

*Bonin v. Calderon*
  59 F.3d 815 (9th Cir. 1995) .................................................................................................. 5

*Cal. v. Neville Chem. Co.*
  358 F.3d 661 (9th Cir. 2004) ................................................................................................ 5

*Cel-Tech Communications v. Los Angeles Cellular Telephone Co.*
  20 Cal. 4th 163 (1999) .......................................................................................... 10, 11, 12

*Chavez v. Whirlpool Corp.*
  93 Cal. App. 4th 363 (2001) .............................................................................................. 13

*Chip-Mender, Inc. v. Sherwin-Williams Co.*
  2006 WL 13058, *10 (N.D. Cal. 2006) ............................................................................. 10

*Cuviello v. City of Stockton*
  2008 WL 4283260, *3 (E.D.Cal. Sept. 16, 2008) ............................................................... 3

*Financial & Sec. Products Ass'n v. Diebold, Inc.*
  2005 WL 1629813 (N.D. Cal. July 8, 2005) ..................................................................... 13

*Foman v. Davis*
  371 U.S. 178, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962) .......................................................... 5

*Girafa.com, Inc. v. Alexa Internet, Inc.*
  2008 WL 4500858, *2 (N.D. Cal. 2008) ........................................................................... 11

*Hayden v. County of Nassau*
  180 F.3d 42 (2d Cir. 1999) .................................................................................................. 5

*Johnson v. Am. Airlines, Inc.*
  834 F.2d 721 (9th Cir.1987) ................................................................................................ 5

*McGraw-Edison Co. v. Preformed Line Products Co.*
  362 F.2d 339 (9th Cir. 1966) .............................................................................................. 3

| | |
|---|---|
| *MGM Studios Inc. v. Grokster, Ltd.*<br>269 F. Supp. 2d 1213 (C.D. Cal. 2003) | 3 |
| *Natural Resources Defense Council, Inc. v. U.S. E.P.A.*<br>966 F.2d 1292 (9th Cir. 1992) | 3 |
| *People's Choice Wireless, Inc. v. Verizon Wireless*<br>131 Cal. App. 4th 656 (2005) | 11 |
| *Practice Mgmt. Info. Corp. v. AMA*<br>121 F.3d 516 (9th Cir. 1997) | 9 |
| *Rayman v. Peoples Sav. Corp.*<br>735 F. Supp. 842 (N.D. Ill. 1990) | 4 |
| *RLH Industries, Inc. v. SBC Communications, Inc.*<br>133 Cal. App. 4th 1277 (2005) | 13 |
| *Roth v. Garcia Marquez*<br>942 F.2d 617 (9th Cir. 1991) | 5 |
| *Stevenson Real Estate Services, Inc. v. CB Richard Ellis Real Estate Services, Inc.*<br>138 Cal. App. 4th 1215 (2006) | 11 |
| *Tenneco Inc. v. Saxony Bar & Tube, Inc.*<br>776 F.2d 1375 (7th Cir. 1985) | 4 |
| *Ticketmaster L.L.C. v. RMG Technologies, Inc.*<br>536 F. Supp. 2d 1191 (C.D. Cal. 2008) | 3, 4 |
| *Triad Systems Corp. v. Southeastern Express Co.*<br>64 F.3d 1330 (9th Cir 1995) | 6, 7 |
| *U.S. v. State of Wash.*<br>759 F.2d 1353 (9th Cir. 1985) | 3 |

**Statutes**

| | |
|---|---|
| California Business & Professions Code § 17200 | passim |
| Digital Millennium Copyright Act | 2, 4, 6, 7 |

**Rules**

| | |
|---|---|
| Fed. R. Civ. P. 8 | 5 |

**Treatises**

| | |
|---|---|
| Borchard, Declaratory Judgments 299 (2d ed. 1941) | 3 |

## I. INTRODUCTION

Defendant Psystar Corporation's ("Psystar") Motion for Leave to Amend its Counterclaims should be denied. In an effort to circumvent this Court's dismissal of its antitrust and unfair competition counterclaims and to deflect attention from its ongoing violations of Apple Inc.'s ("Apple") copyright, trademark and contractual rights, Psystar has taken its previously asserted affirmative defense of copyright misuse and has improperly recast it as the basis for four amended counterclaims. Yet, the law is clear: copyright misuse is an affirmative defense – not a cause of action – and cannot be asserted as a counterclaim for declaratory relief. Nor should the Court allow Psystar to assert unfair competition counterclaims that are entirely derivative of its two improper copyright misuse claims. Moreover, nothing in Psystar's proposed Amended Counterclaim shows any misuse of Apple's copyrights. Apple is well within its rights to limit the reproduction and distribution of its copyrighted works and to implement technological protection measures that prevent the unauthorized use and distribution of its proprietary software. The Copyright Act explicitly grants these rights to a copyright holder, so Apple is fully entitled to assert them. *See* 17 U.S.C. § 106. Consequently, Apple respectfully requests that this Court deny Psystar's Motion for Leave to Amend.

## II. FACTUAL BACKGROUND

On July 3, 2008, Apple filed a complaint against Psystar alleging direct and contributory copyright infringement, breach and induced breach of Apple's software license agreement, trademark infringement and violation of state and common law unfair competition laws. Apple based its claims on, *inter alia*, Psystar's illegal copying, distribution, use and modifications of Apple's copyrighted Mac OS X software, its distribution of Mac OS X software on non-Apple-labeled hardware in direct violation of the terms of the Mac OS X Software License Agreement ("SLA"), its inducement of customers to breach the terms of Apple's SLA and its infringement of Apple's trademarks and trade dress. In response, Psystar filed an Answer which included an affirmative defense of copyright misuse as well as state and federal antitrust counterclaims asserting the existence of a single brand market and derivative state and common law unfair competition claims. (Answer, Dkt. No. 12, at 24-25.)

Apple moved to dismiss Psystar's counterclaims on the grounds that Psystar had not and could not properly assert viable antitrust (and unfair competition) claims against Apple because Apple does not have market power in any legally cognizable relevant market. On November 18, 2008, this Court granted Apple's motion, holding that "Psystar's claim that Mac OS-compatible computer hardware systems constitute a distinct submarket or aftermarket contravenes the pertinent legal standards" and dismissed Psystar's federal and state antitrust and unfair competition counterclaims. (Nov. 18 Order at 17.) In its Order, the Court gave Psystar leave to amend those counterclaims but required that Psystar file a motion to explain how it had overcome the pleading insufficiencies set forth in the Court's Order. (*Id.* at 19.) The Court further stated it would dismiss all inadequately pled claims without further leave to amend. (*Id.*)

Significantly, in its proposed Amended Counterclaims, Psystar does not assert any federal or state antitrust counterclaims. Rather than attempt to fix the problems with its original pleadings, as the Court's Order allowed, Psystar has abandoned its antitrust theories entirely and instead repackaged its affirmative defense of copyright misuse as two new counterclaims for misuse and two corresponding derivative state unfair competition claims.

### III. PSYSTAR'S ATTEMPT TO INTRODUCE PROPOSED COUNTERCLAIMS FOR COPYRIGHT MISUSE SHOULD BE REJECTED

#### A. Psystar Improperly Attempts To Create Counterclaims For The Affirmative Defense of Copyright Misuse

Psystar has proposed two counterclaims — both based on copyright misuse.[1] Psystar's proposed pleading directly contravenes controlling Ninth Circuit law holding that copyright misuse is available only as an affirmative defense and not for declaratory relief. The Ninth Circuit has clearly stated that the doctrine of copyright misuse has no role "beyond 'its logical place as a defense to a claim of copyright infringement.'" *Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1090 (9th Cir. 2005). In *Altera*, the defendant Clear Logic asserted copyright misuse solely as a counterclaim in an action for induced breach of contract and intentional interference with

---

[1] There is no separate defense of "DMCA Misuse" as Psystar admits. (Psystar Mot. at 11-12.) Psystar provides no authority for the creation of such a defense and, in fact, does not allege a DMCA misuse counterclaim in its Proposed First Amended Counterclaims. Rather, Psystar has asserted two counterclaims for copyright misuse.

contractual relations. In that case, Clear Logic had not pleaded copyright misuse as an affirmative defense. Even so, the Court of Appeals affirmed the district court's dismissal of the counterclaim on the basis that the Ninth Circuit had "adopted the doctrine of copyright misuse, specifically describing the doctrine as a '<u>defense</u> to copyright infringement.'" *Id.* (emphasis added).

Likewise, in cases where, as here, defendants have attempted to assert copyright misuse as both a defense and a counterclaim, courts have repeatedly held that the counterclaim for declaratory relief contravenes the objectives of the Declaratory Judgments Act.[2] *MGM Studios Inc. v. Grokster, Ltd.*, 269 F. Supp. 2d 1213, 1226 (C.D. Cal. 2003) ("*MGM*"); *see also Ticketmaster L.L.C. v. RMG Technologies, Inc.*, 536 F. Supp. 2d 1191, 1199 (C.D. Cal. 2008); *Arista Records, Inc. v. Flea World, Inc.*, 356 F. Supp. 2d 411 (D.N.J. 2005). The facts of the *MGM* case are virtually identical to the present action. There, plaintiff asserted, *inter alia*, a claim for copyright infringement. The defendant, Sharman, asserted an affirmative defense of copyright misuse and also counterclaimed with a declaratory relief cause of action based on copyright misuse. The *MGM* court granted plaintiffs' motion to dismiss the copyright misuse counterclaims, noting the redundancy of allowing counterclaims for misuse to remain in the case:

> Copyright misuse has already been asserted by Sharman as an affirmative defense, and the Court will reach all aspects of that issue if necessary. Separately litigating that defense in a declaratory posture <u>would not serve the purposes of declaratory relief</u>, such as clarifying and settling the legal relations of the parties, or affording a declaratory plaintiff relief from the 'uncertainty, insecurity, and controversy giving rise to the proceeding.'

*Id.* (quoting *Bilbrey v. Brown*, 738 F.2d 1462, 1470 (9th Cir. 1984)) (emphasis added).

Psystar's proposed declaratory relief claims serve only to complicate this litigation needlessly. Other district courts have dismissed improper "copyright misuse" counterclaims for

---

[2] The Ninth Circuit has longstanding and unambiguous criteria to determine when declaratory relief is appropriate or, as here, inappropriate. *McGraw-Edison Co. v. Preformed Line Products Co.*, 362 F.2d 339 (9th Cir. 1966); *U.S. v. State of Wash.*, 759 F.2d 1353, 1357 (9th Cir. 1985); *Natural Resources Defense Council, Inc. v. U.S. E.P.A.*, 966 F.2d 1292, 1299 (9th Cir. 1992); *Cuviello v. City of Stockton*, 2008 WL 4283260, *3 (E.D. Cal. Sept. 16, 2008). The first principal criteria is whether "'the judgment will serve a useful purpose in clarifying and settling the legal relations in issue.'" *McGraw-Edison*, 362 F.2d at 342 (quoting Borchard, Declaratory Judgments 299 (2d ed. 1941)). The second is whether "it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Id.* "It follows that when neither of these results can be accomplished, the court should decline to render the declaration prayed." *Id.*

TOWNSEND
and
TOWNSEND
and
CREW
LLP

this very reason. In *Ticketmaster*, for example, the defendant created a program to access Ticketmaster's copyrighted website in violation of the license for using the website, thereby infringing Ticketmaster's copyrights and violating the Digital Millennium Copyright Act ("DMCA"). 536 F. Supp. 2d at 1199. As Psystar is attempting here, the defendant in *Ticketmaster* asserted a counterclaim for "copyright misuse." Because of "the fact that no such claim can <u>ever</u> be pled" and since "<u>no possible</u> amendment could save it," the court dismissed defendant's "copyright misuse" counterclaim with prejudice. *Id*. (emphasis added). The court also dismissed the defendant's "Declaratory Relief" counterclaim to the extent that it was based on copyright misuse because the defendant "ha[d] asserted copyright misuse as an affirmative defense . . . ." *Id*. (noting that "the presence of a declaratory relief claim for copyright misuse here would be duplicative and a needless waste of judicial resources"). Simply describing alleged copyright misuse as "brazen" and seeking declaratory relief, as Psystar has done here, does not convert the legal principle from an affirmative defense to a counterclaim. *Arista Records, Inc.*, 356 F. Supp. 2d at 428 ("copyright misuse is not a claim but a defense, and Defendants may not transmute it into an independent claim merely by labeling it one for 'declaratory judgment'"). Because there is no additional relief available to Psystar beyond that offered by its copyright misuse defense, there is no reason for the duplication of Psystar's affirmative defenses as counterclaims.

Moreover, both courts and the Federal Rules of Civil Procedure recognize that there are distinct and mutually exclusive roles for affirmative defenses and counterclaims in federal court proceedings. *Rayman v. Peoples Sav. Corp.*, 735 F. Supp. 842, 853 (N.D. Ill. 1990) ("Counterclaim Count III-seeking no affirmative relief as against Rayman other than an adjudication that the sale of Crest shares was illegal-is really an affirmative defense to the enforcement of Flanagans' guaranties."). *See also Tenneco Inc. v. Saxony Bar & Tube, Inc.*, 776 F.2d 1375, 1379 (7th Cir. 1985) ("The label 'counterclaim' has no magic. What is really an answer or defense to a suit does not become an independent piece of litigation because of its label. Fed.R.Civ.P. 8(c) . . . ."). Where, as here, a party pleads an affirmative defense both as a defense and as a counterclaim, the court should dismiss the counterclaim. *Rayman*, 735 F. Supp. at 853

("It adds nothing to the pleadings Flanagans have already put before this Court. This Court will therefore simply disregard that duplicative count, just as it would if Flanagans had responded to the Complaint with two identical affirmative defenses pleading illegality rather than with one illegality defense and a separate counterclaim reasserting illegality."). Indeed, whether or not the party has already asserted the purported counterclaim as an affirmative defense, under Federal Rule of Civil Procedure 8, the court has the power to treat the allegations as they properly should be treated – here, as an affirmative defense. *Id.* (*quoting* Fed. R. Civ. P. 8: "When a party has mistakenly designated a defense as a counterclaim or a counterclaim as a defense, the court on terms, if justice so requires, shall treat the pleading as if there had been a proper designation.").

Because Psystar's first and second proposed Amended Counterclaims for declaratory judgment are inappropriate castings of the copyright misuse defense, and because *each* is duplicative of Psystar's existing affirmative defenses, the motion for leave to amend should be denied.

**B.  Leave to Amend Should Be Denied Because Psystar's Proposed Counterclaims Fail to Plead Facts Sufficient to Find Misuse**

Futility of amendment alone may justify denial of a motion for leave to amend. *Foman v. Davis,* 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962); *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995). "[F]utility includes the inevitability of a claim's defeat on summary judgment." *Johnson v. Am. Airlines, Inc.*, 834 F.2d 721, 724 (9th Cir.1987); *accord Roth v. Garcia Marquez*, 942 F.2d 617, 628-629 (9th Cir. 1991); *Cal. v. Neville Chem. Co.*, 358 F.3d 661 (9th Cir. 2004). Where a claim would be defeated on a motion to dismiss, it is also futile. *Hayden v. County of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999) ("where the plaintiff is unable to demonstrate that he would be able to amend his complaint in a manner which would survive dismissal, opportunity to replead is rightfully denied").

Not only is there no basis for Psystar's purported copyright misuse counterclaims, Psystar fails to allege a viable misuse defense in light of its own inconsistent allegations. As acknowledged by this Court and Psystar in its prior briefs, Apple is well within its rights to determine whether, how or by whom its software is reproduced and how it is to be licensed,

distributed or used. *See* Order, at 14 ("[H]ere Apple asks its customers to purchase Mac OS knowing that it is to be used only with Apple computers (Compl. ¶ 28). *It is certainly entitled to do so*.") (emphasis added). *See also Triad Systems Corp. v. Southeastern Express Co.,* 64 F.3d 1330, 1337 (9th Cir 1995). In the Ninth Circuit, it is not copyright misuse to limit the uses of licensed software where one's competitors are free to develop competing software and customers are free to purchase it. Psystar's pleadings are unambiguous in showing competition among numerous operating systems, as well as among sellers of computer hardware systems. Accordingly, these counterclaims must fail.

### 1. Apple's Claims Against Psystar Flow From Apple's Exclusive Rights Under Copyright Law

As this Court held in its ruling on Apple's motion to dismiss, Psystar failed in its counterclaims to allege facts sufficient to show that Apple has violated state or federal antitrust law by requiring through its SLA that Mac OS X be used on only Apple-labeled hardware. Psystar does not deny that it is distributing computers with Apple's copyrighted software loaded on them, in direct contravention of Apple's license and without Apple's permission. Consequently, Apple is well within its rights in asserting copyright infringement claims against Psystar.

Apple's assertion of a Digital Millennium Copyright Act ("DMCA") claim also is proper. Psystar has admitted that without a "key" the Mac operating system will not work – specifically stating that Apple's Mac OS X software normally "will not operate on anything other than Apple-labeled computer hardware." (Hearing Transcript at 16.) Indeed, even in its proposed amended counterclaims, Psystar asserts that there is a "check," *i.e.* a technological protection measure which works in conjunction with Mac OS X. (Proposed First Am. Countercl., ¶ 40.) According to Psystar, "[t]his 'check' stops the execution of the Mac OS on any x86 processor not sold by Apple – that is, the 'check' stops the execution of the Mac OS on any computer that is not an Apple-Labeled Computer Hardware System." (*Id.*)

Psystar has further admitted that it has found a way to circumvent that lock and key mechanism "by develop[ing its] own code that allows it to operate on a non-Apple-labeled

computer system" and that such code overrides or otherwise avoids Apple's embedded codes. (Hearing Transcript at 16-17; Proposed First Am. Countercl., ¶ 36 (claiming that Apple "embeds code" and that upon "recognizing that a computer hardware system is not an Apple-Labeled Computer Hardware System, the Mac OS will not operate properly").) Psystar states that "when the check is patched out, either by binary patching the kernel or source patching and then compiling, the kernel can easy [*sic*] be booted on a Pentium 4 processor," *i.e.* a non-Apple-labeled computer. (Proposed First Am. Countercl., ¶ 40.) Thus, "patch[ing] out" this check allows use of Mac OS X in violation of Apple's software license agreement; thereby infringing Apple's copyrights. Psystar's admissions in and of themselves affirm Apple's contentions that Psystar is circumventing a technological protection mechanism in order to access a copyrighted work in violation of the DMCA. Consequently, Apple, by asserting its legal rights, has not engaged in any misuse of the DMCA.

### 2. Psystar's Proposed Counterclaims Fail To Plead The Necessary Elements of Misuse Under Ninth Circuit Precedent

Despite the distinguishable facts, Psystar has erroneously relied on *Alcatel*, a single Fifth Circuit case, for the legal basis of its misuse claim. Yet Ninth Circuit precedent clearly states that there can be no copyright misuse when competitors are free to write and market their own competing product. Specifically, the Ninth Circuit has held that it is not copyright misuse to restrict the use of the plaintiff's copyrighted software on uncopyrighted hardware when a competitor is not barred from developing its own software. *Triad Systems*, 64 F.3d at 1337.

As in this case, the *Triad* plaintiff, Triad Systems Corporation ("Triad"), manufactured and sold computers as an integrated package with its copyrighted operating system. *Id.* at 1332. Defendant Southeastern Express Company ("Southeastern") was an independent service organization ("ISO") that serviced Triad computers. Triad sued Southeastern for infringing its software copyrights by making unlicensed copies while performing maintenance on Triad computer systems for Triad's licensees. *Id.* at 1332-1333. As is the case with the Apple SLA, Triad did not attempt to control the use of its hardware, but only the use of its copyrighted software.

The Ninth Circuit affirmed the entry of summary judgment in favor of Triad on the grounds that Southeastern <u>could not</u> prove copyright misuse. *Id.* at 1337. The Court based its decision on the fact that "Triad did not attempt to prohibit Southeastern or any other ISO from developing its own service software to compete with Triad." *Id.* ("[W]e also conclude that Southeastern <u>cannot show</u> that it is likely to prevail on its asserted copyright misuse defense. The district court properly granted summary judgment on this claim in favor of Triad….") (emphasis added).

The Ninth Circuit's decision in *Triad* turned on the fact that competitors could design their own software to replace the Triad software, just as Apple's competitors market "a wide range" of software that competes with Mac OS X – software like Linux and Windows that Psystar itself licenses for use on the computers it sells. (Proposed First Am. Countercl. at ¶ 11.) Psystar cannot show that it is likely prevail on copyright misuse (as a claim for declaratory relief, or otherwise) because it has pleaded no facts supporting the proposition that there is lack of competition in the operating system market. To the contrary, while Psystar has made vague and conclusory assertions of barriers to entry in the OS market, it simultaneously has admitted that there are a wide range of available operating systems that Psystar itself sells, each of which was necessarily developed and born into the OS market. (*Id.* at ¶¶ 11, 16 (resurrecting Psystar's already-rejected single-brand market argument by alleging heightened barriers to entry for "an operating system that would compete with Mac OS").)

Psystar's reliance on *Alcatel* is misplaced. (Psystar Mot. at 8, 11, *citing Alcatel U.S.A., Inc. v. DGI Tech., Inc.*, 166 F.3d 772 (5th Cir. 1999).) The *Alcatel* court upheld a jury finding that "'DSC has used its copyrights to indirectly gain commercial control over products DSC does not have copyrighted,' namely, its microprocessor cards." *Id.* at 793-94. Psystar has pled nothing that would suggest that Apple has exerted control over any hardware. Rather, Psystar continues to acknowledge that there is a "seemingly infinite list of manufacturers" of computer hardware systems. (Proposed First Am. Countercl. at ¶ 18.) Here, there are also numerous competitors in the operating systems market, unlike *Alcatel* where "[a]ny competing microprocessor card developed for use on DSC phone switches [was required to] be compatible with DSC's copyrighted operating

system." Whereas the court found that assertion of the copyright in *Alcatel* would "prevent anyone from developing a competing microprocessor card," Apple's assertion of its copyrights does not prevent Psystar, or any other person, from developing competing computers. Psystar and the rest of the world are free to develop operating systems, hardware, or both that compete with Apple Computers and Apple's Mac OS X.

Just as Apple's SLA places no limitations on Psystar's development of a competing operating system or personal computer, neither does it limit consumers' use of competing operating systems. Thus, Psystar's citation to *Practice Mgmt. Info. Corp. v. AMA*, 121 F.3d 516 (9th Cir. 1997) – a case in which the license agreement required the licensee to forego use of all competing products (a concerted boycott in antitrust parlance) – is completely distinguishable from this case. Indeed, Psystar has pled no facts, nor can it, to show that Apple attempts to control the operating systems that purchasers of Apple Computers run on their machines, or to restrict consumers' use of competing products. Rather, Psystar's proposed pleading acknowledges that Apple allows users to run other operating systems on Apple computers and does nothing to restrict users choice of operating system to Mac OS X. (Proposed First Am. Countercl. at ¶ 33.)

## IV. PSYSTAR'S PROPOSED THIRD AND FOURTH SECTION 17200 COUNTERCLAIMS ARE BASELESS AND THUS SHOULD NOT BE ALLOWED

This Court has dismissed once already Psystar's Section 17200 counterclaims because Psystar only made "conclusory allegations regarding the 'sweeping nature of section 17200'" but did not identify any conduct of Apple that was either unlawful or unfair. (Order at 18.) Now, Psystar has proposed two Section 17200 counterclaims based on a purported "unlawful and/or unfair business practice." (*See, e.g.*, Proposed First Am. Countercl. ¶¶ 6, 95, 102.) But neither Psystar's Proposed Amended Counterclaims nor its Motion for Leave to Amend "explain why the [dismissed counterclaim's] problems are overcome by the proposed pleading." (Order at 19.) In fact, the proposed Section 17200 counterclaims suffer the same defects as before: a complete lack of support in law or in fact.

Moreover, Psystar's Section 17200 claims are wholly derivative of its copyright misuse claims, and therefore must fail for the same reasons as the proposed misuse counterclaims
APPLE INC.'S OPPOSITION TO PSYSTAR CORPORATION'S MOTION FOR LEAVE TO AMEND
CASE NO. CV 08-03251 WHA – 9 –

discussed *supra*. Psystar has predicated every specific allegation of conduct in its state law counterclaims on the alleged "misuse of [Apple's] copyrights." (Proposed First Am. Countercl. ¶¶ 92-94, 99-101.) Because Psystar has not, and cannot, plead facts sufficient to prove the misuse defense, its proposed Section 17200 claims must also fail, and thus granting leave to amend would be futile.

### A. Psystar Fails To Allege Any Unlawful Conduct In Violation of A Statute In Support Of Its Purported Section 17200 Counterclaims

Psystar alleges in its Proposed First Amended Counterclaims that Apple's conduct is somehow "unlawful" in violation of Section 17200. For "unlawfulness," "section 17200 borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Cel-Tech Communications v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 180 (1999) (internal quotation marks omitted); *Aguilar v. Atlantic Richfield Co.*, 25 Cal. 4th 826 (2001) (Section 17200 "unlawful" claim may not continue once summary judgment is entered on the "borrowed" claim).

Psystar has not pled or identified any statute that Apple has purportedly violated. (*See* Psystar Mot. at 12-13; Proposed First Am. Countercl. ¶¶ 6, 91-104.) Instead of identifying a federal or California statute, Psystar mistakenly relies on the affirmative defense of copyright misuse. Psystar provides no authority that allows misuse, or a common law affirmative defense, to be the basis of Section 17200 claim. None could be found. Rather, Judge Hamilton in this district found that affirmative defense of laches could not be the basis of a Section 17200 claim. *See Chip-Mender, Inc. v. Sherwin-Williams Co.*, 2006 WL 13058, *10 (N.D. Cal. 2006) (granting motion to dismiss Section 17200 counterclaims in a patent infringement suit where there was "no legal authority to support the proposition that delay in pursuing licensing discussions or in filing a patent infringement suit constitutes unfair competition"). Thus, Psystar has failed to allege any predicate unlawful practice for its Section 17200 counterclaims.

### B. Psystar Fails To Allege Any Unfair Conduct That Violates Or Threatens To Violate The Antitrust Laws To Support Its Proposed Section 17200 Counterclaims

Psystar admits that a viable Section 17200 counterclaim requires at least violation of the

"spirit" of antitrust law. (Psystar Mot. at 12.) The California Supreme Court has explained that this requires harm to competition, not individual competitors:

> When a plaintiff who claims to have suffered injury from a direct competitor's 'unfair' act or practice invokes section 17200, the word 'unfair' in that section means conduct that **threatens an incipient violation of an antitrust law**, or violates the policy or spirit of one of those laws **because its effects are comparable to or the same as a violation of the law**, or otherwise **significantly threatens or harms competition**.

*Cel-Tech Communications* at 186-87 (emphasis added). Thus, a viable Section 17200 counterclaim based on an alleged "unfair practice" must demonstrate "proof of harm to competition." *Girafa.com, Inc. v. Alexa Internet, Inc.*, 2008 WL 4500858, *2 (N.D. Cal. 2008) (Whyte, J.) (Section 17200 unfair claim requires an ". . . 'impact on competition,' not just harm to a competitor"); *see also Stevenson Real Estate Services, Inc. v. CB Richard Ellis Real Estate Services, Inc.*, 138 Cal. App. 4th 1215, 1225 (2006) (Section 17200 counterclaims based on alleged unfair practice must be dismissed on the pleadings when the "amended complaint alleges no conduct even remotely approaching a violation of an antitrust law or the policy or spirit of antitrust laws."); *People's Choice Wireless, Inc. v. Verizon Wireless*, 131 Cal. App. 4th 656, 668 (2005) (no Section 17200 unfair claim "[i]n the absence of an abuse of monopoly power in a relevant market").

Here, Psystar has failed to plead any incipient or actual violation of the antitrust laws. Instead, Psystar attempts to repackage its dismissed antitrust allegations under the guise of copyright misuse. Psystar repeatedly refers back to the dismissed antitrust allegations in its Proposed First Amended Counterclaims:

> "Apple-Labeled Computer Hardware Systems . . . belonging to a subsidiary market of Mac OS Capable Computer Hardware Systems. That subsidiary market – the Apple-Labeled Computer Hardware Systems market – is artificially created, dominated, and maintained by APPLE." (¶ 13)

> "[T]here are substantial barriers to entry in the market for operating systems, including the Mac OS market." (¶ 16)

> "Apple-Labeled Computer Hardware Systems would be a competing member of the otherwise diverse Mac OS Capable Computer Hardware Systems market." (¶ 22)

> "PSYSTAR is informed and believes, and thereon alleges, that with competition all but eliminated in the Mac OS Capable Computer Hardware System market as it pertains to the Mac OS and Apple-Labeled Computer Hardware Systems, APPLE is free to control and charge customers supra-competitive prices." (¶ 58)
>
> "APPLE . . . attempts to obtain, maintain, and/or enjoy rights not granted by the Copyright Act including, extension and/or maintenance of monopoly power in certain of the defined markets." (¶ 57)

(*See also, e.g.*, ¶¶ 22, 24-26, 50, 54, 57, 58, 60-63, 65, 66, 96, 103 (all referring to the rejected "Mac OS Capable Computer Hardware Systems market"); ¶¶ 2-3, 21, 23, 33-35, 48-50, 53, 54, 72, 84 (referring to rejected tying and leveraging claims); ¶¶ 25, 59, 60 (referring to rejected exclusive dealing claims); ¶¶ 57, 62 (referring to rejected monopoly maintenance claims); ¶ 58 (referring to rejected monopolization claims).)

In its motion, Psystar attempts to support its tacit resuscitation of the dismissed antitrust counterclaims by arguing, without any case support; that "[l]everaging of a monopoly right into an otherwise unrelated market (*i.e.*, the copyrights related to the Mac OS into the Apple Labeled Computer Hardware Systems market) most surely runs afoul of the 'spirit' of a federal leveraging or tying claim." (Psystar Mot. at 12.) Psystar's argument, however, completely disregards the California Supreme Court's requirement in *Cel-Tech* that there be a significant threat to competition in a relevant market. Psystar acknowledges that Apple is in competition with all the personal computer manufacturers listed in Proposed Amended Counterclaims. (*See* Proposed Am. Countercl., ¶18 (interbrand competition exists between Apple and "Dell, Acer, Lenovo, Sony, and Hewlett-Packard to name but a few").) Psystar also acknowledges that there is significant interbrand (as well as intrabrand) competition in the operating systems market, admitting that Mac OS X competes with four versions of the Windows operating system and two versions of the Linux operating system just within Psystar's own product line. (*Id.*, ¶ 18.)

By way of these admissions, Psystar has pleaded facts showing vigorous competition, **not** the significant threat to competition necessary under *Cel-Tech*. Thus, Apple respectfully requests that the Court again reject Psystar's spurious attempts to allege Section 17200 counterclaims as the Court recognized:

> [I]f the same conduct is alleged to be both an antitrust violation and an 'unfair' business act or practice for the same reason – because it unreasonably restrains competition and harms consumers – the determination that the conduct is not an unreasonable restraint of trade necessarily implies that the conduct is not 'unfair' toward consumers.

Nov. 18 Order at 17-18 (quoting *Chavez v. Whirlpool Corp.*, 93 Cal. App. 4th 363, 375 (2001) and citing *RLH Industries, Inc. v. SBC Communications, Inc.*, 133 Cal. App. 4th 1277, 1286–87 (2005)); *see also Financial & Sec. Products Ass'n v. Diebold, Inc.*, 2005 WL 1629813 (N.D. Cal. July 8, 2005) ("To permit a separate inquiry into essentially the same question under the unfair competition law would only invite conflict and uncertainty and could lead to the enjoining of procompetitive conduct.").

## V.  CONCLUSION

Psystar's proposed copyright misuse counterclaims are simply a restatement of its existing affirmative defense. Its unfair competition claims do not meet the requirements of Section 17200. All of the claims are unfounded. Consequently, Psystar's Motion for Leave to Amend should be denied.

DATED:  December 30, 2008      Respectfully submitted,

TOWNSEND AND TOWNSEND AND CREW LLP


By: */s/ James G. Gilliland, Jr.*
     JAMES G. GILLILAND, JR.

Attorneys for Plaintiff
APPLE INC.

61749607 v1