PAGES 1 - 26

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE WILLIAM H. ALSUP

APPLE INC., A CALIFORNIA            )
CORPORATION,,                       )
                                )
         PLAINTIFF,         )
                                )
  VS.                     ) NO. C 08-3251 WHA
                                )
PSYSTAR CORPORATION, A FLORIDA    )
CORPORATION,,                       )
                                ) SAN FRANCISCO, CALIFORNIA
         DEFENDANT.         ) THURSDAY
                                ) JANUARY 22, 2009
_____ ) 2:00 O'CLOCK P.M.

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

**FOR PLAINTIFF**:         TOWNSEND AND TOWNSEND AND CREW
                        TWO EMBARCADERO CENTER, EIGHTH FLOOR
                        SAN FRANCISCO, CALIFORNIA  94111-3834

                      **BY:  JAMES G. GILLILAND, ESQUIRE AND**
                      MEHRNAZ BOROUMAND SMITH, ATTORNEY AT
                      LAW

**FOR DEFENDANT**:        CARR & FERRELL LLP
                        2200 GENG ROAD
                        PALO ALTO, CALIFORNIA 94303
                      **BY:  COLBY B. SPRINGER, ESQUIRE**

*REPORTED BY:   KATHERINE WYATT, CSR 9866, RMR, RPR*
                  *OFFICIAL REPORTER - US DISTRICT COURT*
                  *COMPUTERIZED TRANSCRIPTION BY ECLIPSE*

Dockets.Justia.com

1    JANUARY 22, 2009                    2:00 O'CLOCK P.M.

2

3                         P R O C E E D I N G S

4              THE COURT:  OKAY.  APPLE VERSUS PSYSTAR.

5              MR. GILLILAND:  GOOD AFTERNOON, YOUR HONOR.  JIM

6    GILLILAND AND MEHRNAZ BOROUMAND SMITH FOR PLAINTIFF APPLE.

7              MS. SMITH:  GOOD AFTERNOON.

8              THE COURT:  WELCOME BACK.

9              MR. SPRINGER:  COLBY SPRINGER FOR DEFENDANT PSYSTAR

10   CORPORATION.

11             THE COURT:  OKAY.  WELCOME BACK TO YOU, AS WELL.

12             ALL RIGHT. THIS IS A MOTION FOR -- BY PSYSTAR TO MOVE

13   TO AMEND, SO YOU WANT TO GO FIRST?

14             MR. SPRINGER:  THANK YOU, YOUR HONOR.

15             AS THE COURT RECALLS IN THE PRIOR MOTION TO DISMISS

16   THE COURT DISMISSED THE ANTITRUST CLAIMS AND GRANTED PSYSTAR

17   THE OPPORTUNITY TO FILE A MOTION FOR LEAVE TO AMEND, WHICH IS

18   WHY WE'RE HERE TODAY.

19             IN THE CURRENT PROPOSED AMENDED COMPLAINT PSYSTAR

20   INTRODUCES FOUR NEW CAUSES OF ACTION, TWO OF WHICH ARE RELATED.

21   THERE'S A CONSPIRACY MISUSE CLAIM WITH RESPECT TO APPLE'S

22   LICENSING ACTIVITY, SPECIFIC TO THEIR EULA.

23             AND THERE'S ALSO A COPYRIGHT MISUSE CLAIM WITH

24   RESPECT TO THE DIGITAL MILLENNIUM COPYRIGHT ACT CLAIM THAT

25   APPLE HAS SUBSEQUENTLY BROUGHT IN THEIR FIRST-AMENDED

1   COMPLAINT.

2          THERE'S ALSO AN UNFAIR COMPETITION CLAIM RELATED TO

3   BOTH OF THOSE.  AND I'LL EXPLAIN THE REASON WHY PSYSTAR HAS

4   BIFURCATED BOTH OF THOSE, IN SHORT.

5          AS THE COURT IS WELL AWARE, GRANTING LEAVE TO AMEND

6   IS -- IT'S VERY WELL FAVORED.  IN THE INSTANCES WHERE LEAVE TO

7   AMEND IS DENIED, IT'S USUALLY BASED ON ONE OF FOUR FACTORS:

8   BAD FAITH, WHICH WE CONTEND IS CLEARLY NOT THE CASE HERE; UNDUE

9   DELAY, WHICH IS, AGAIN, NOT THE CASE HERE.

10          PSYSTAR BROUGHT THEIR MOTION IN ACCORDANCE WITH THE

11   COURT'S PRIOR ORDER.

12          PREJUDICE TO THE OPPOSING PARTY, IN THIS CASE APPLE.

13   WE CONTEND THAT THERE WOULD BE NO PREJUDICE HERE.

14          AND ALSO WITH RESPECT TO FUTILITY OF THE AMENDMENT.

15   IT'S THIS LAST CATEGORY ON WHICH APPLE OPPOSES THE MOTION, AND

16   WHICH I WISH TO ADDRESS SHORTLY OR QUICKLY ON FOUR SPECIFIC

17   POINTS.

18          THE FIRST OF THOSE POINTS IS THAT WE HAVE PSYSTAR HAS

19   PROPERLY PLED THEIR COPYRIGHT MISUSE CLAIM WITH RESPECT TO THE

20   END-USER LICENSING AGREEMENT.  THE COPYRIGHT MISUSE CLAIM IS

21   BASED ON THE NINTH CIRCUIT'S HOLDING IN PRACTICE MANAGEMENT

22   CORPORATION, WHICH RECOGNIZED COPYRIGHT MISUSE.

23          ESSENTIALLY, THE PRACTICE MANAGEMENT DECISION AND

24   SUBSEQUENTLY CLARIFIED IN THE A&M RECORDS VERSUS NAPSTER

25   DECISION, COPYRIGHT MISUSE EXISTS WHEN A PARTY ATTEMPTS TO

1  EXPAND THE RIGHTS GRANTED UNDER THE COPYRIGHT ACT BY THE MISUSE

2  OF THEIR COPYRIGHT, AS THE NAME SUGGESTS.

3          SO WHEN A PARTY ATTEMPTS TO EXPAND THEIR GOVERNMENT

4  GRANTED MONOPOLY THAT COMES WITH THE COPYRIGHT, THAT

5  CONSTITUTES COPYRIGHT MISUSE.

6          PSYSTAR HAS IDENTIFIED A NUMBER OF INSTANCES IN ITS

7  AMENDED COMPLAINT, SPECIFICALLY WITH THE EULA, BEGINNING AT

8  SECTION 47 OF ITS PROPOSED AMENDED COMPLAINT, AND THEN

9  SUBSEQUENTLY AT SECTION 52 OF ITS PROPOSED AMENDED COMPLAINT

10  WITH RESPECT TO APPLE'S DMCA CLAIMS.

11          SPECIFICALLY, PSYSTAR CONTENDS THAT THROUGH THE USE

12  OF APPLE'S COPYRIGHTS THEY ARE ATTEMPTING TO EXPAND THE RIGHTS

13  FROM THE OS, THE OPERATING SYSTEM, WHERE THEY HAVE THOSE

14  COPYRIGHTS, INTO THE REALM OF COMPUTER HARDWARE.

15          COMPUTER HARDWARE IS NOT SERVICED OR COVERED BY ANY

16  OF THE COPYRIGHTS IN SUIT IN THIS PRESENT ACTION. AS SUCH,

17  APPLE'S ATTEMPTING TO TAKE THEIR COPYRIGHTS FOR THE SOFTWARE

18  AND ENCOMPASS A TOTALLY SEPARATE PRODUCT, A TOTALLY SEPARATE

19  ISSUE, NAMELY THE HARDWARE, THE APPLE-LABELED COMPUTER

20  HARDWARE, WITHIN THOSE COPYRIGHTS, AS WELL.  TRYING TO EXPAND

21  THEIR RIGHTS BEYOND THE SCOPE OF COPYRIGHT THAT IS EXPRESSION

22  TO SOMETHING NONEXPRESSIVE:  HARDWARE, CLEARLY IS EXPANDING

23  THOSE RIGHTS.

24          PSYSTAR ALSO CONTENDS THAT THE MEANS BY WHICH APPLE

25  TRIES TO ENFORCE THEIR EULA THROUGH DMCA LITIGATION THEY'RE

1  ALSO ATTEMPTING TO ESSENTIALLY ABROGATE CERTAIN RIGHTS THAT

2  EXIST UNDER THE COPYRIGHT ACT WITH RESPECT TO FIRST SALE, FAIR

3  USE, AND THEN ALSO UNDER SECTION 117 CONCERNING SPECIFICALLY

4  DISPOSING OF SOFTWARE AFTER IT'S BEEN INITIALLY PURCHASED.

5          THOSE ISSUES ARE SET OUT CLEARLY IN THE

6  CROSS-COMPLAINT AND ALSO IN OUR MOVING PAPERS.  IT'S IMPORTANT

7  TO NOTE, HOWEVER, THAT WHILE COPYRIGHT USE -- MISUSE MIGHT FIND

8  ITS ORIGINS IN ANTITRUST, THERE ARE NO ANTITRUST CLAIMS AT

9  ISSUE IN THE PRESENT COMPLAINT.

10          SO THE ISSUES THAT LED TO THE DISMISSAL OF THE PRIOR

11  CROSS-COMPLAINT, NAMELY MARKET DEFINITION, ET CETERA, NONE OF

12  THOSE ISSUES ARE PRESENT HERE. HENCEFORTH, WE HAVE OVERCOME THE

13  COURT'S ORDER OR WE'RE ADDRESSED THE COURT'S ISSUE WITH RESPECT

14  TO HOW THIS PRESENT COMPLAINT OVERCOMES THE MOTION TO DISMISS

15  PREVIOUSLY.

16          THE SECOND ISSUE THAT APPLE RAISES IS WITH RESPECT TO

17  THEY CONTEND THAT COPYRIGHT MISUSE CANNOT BE BROUGHT IN THE

18  CONTEXT OF A DECLARATORY JUDGMENT. IN THAT CONTEXT, THEY RELY

19  UPON THREE DECISIONS:  ALTERA, MGM VERSUS GROKSTER AND THE

20  TICKETMASTER DECISION.

21          WITH RESPECT TO THE ALTERA DECISION, IT'S NOT --

22  WHILE REFERENCE WAS MADE TO COPYRIGHT MISUSE AS A DEFENSE, AND

23  THE REFUSAL TO GRANT COPYRIGHT MISUSE AS A DECLARATORY JUDGMENT

24  IN THAT SPECIFIC INSTANCE, IT'S IMPORTANT TO NOTE THAT THERE

25  WAS NO COPYRIGHT AT ISSUE IN THE ALTERA CASE. ALTERA HAD TO DO

1  WITH A CONTRACT AND INDUCED BREACH OF CONTRACT CLAIM.

2        THERE IS, HOWEVER, A COPYRIGHT CLEARLY AT ISSUE --

3  SEVERAL COPYRIGHTS, IN FACT, AT ISSUE IN THE PRESENT CASE.  AS

4  SUCH, ALTERA IS INAPPLICABLE.

5        THE OTHER TWO DECISIONS ADDRESSED BY APPLE IN THE

6  MOVING PAPERS, MGM AND THE TICKETMASTER CASE, BOTH OF THOSE

7  CASES ADMITTEDLY DID DENY THE INTRODUCTION OF A COPYRIGHT

8  MISUSE DECLARATORY JUDGMENT ACTION IN BOTH OF THOSE CASES.

9        HOWEVER, BOTH OF THOSE DECISIONS DID NOT ADDRESS IT

10  IN THE CONTEXT OF A PER SE RULE PROHIBITING COPYRIGHT MISUSE.

11        FOR EXAMPLE, IN THE MGM DECISION IT WAS -- A MORE

12  SPECIFIC DISCUSSION WAS HELD WITH RESPECT TO COPY MISUSE DOES

13  NOT AUTOMATICALLY EQUATE TO AN AWARD OF DAMAGES.

14        IN THE TICKETMASTER CASE THERE WAS NO ANALYSIS

15  WHATSOEVER.  IT WAS PLAIN AND SIMPLE DENIAL OF THE ALLOWANCE OF

16  THE COPYRIGHT MISUSE.  SO IT WOULD BE, I THINK, A STRETCH TO

17  SAY THAT TICKETMASTER PROVIDES ANY SORT OF GUIDANCE WITH

18  RESPECT TO HOW COPYRIGHT MISUSE MAY OR MAY NOT BE PLEAD IN THE

19  CONTEXT OF A DECLARATORY JUDGMENT ACTION.

20      **THE COURT:**  WHAT DOES DECLARATORY JUDGMENT GIVE YOU

21  THAT AFFIRMATIVE DEFENSE DOES NOT?

22      **MR. SPRINGER:**  WELL, SO AFFIRMATIVE DEFENSE IS PLED

23  IN THE CASE, AS WELL.  AND THIS IS ANOTHER ISSUE THAT APPLE

24  DOES RAISE WITH RESPECT TO ARGUING THAT AFFIRMATIVE DEFENSE AND

25  DECLARATORY JUDGMENT CANNOT BE PLED AT THE SAME TIME.  AND WE

1   BELIEVE THAT'S INCORRECT.

2           IN THE CONTEXT AND TO ADDRESS YOUR SPECIFIC QUESTION,

3   THE DECLARATORY JUDGMENT, AS DECISIONS LIKE MEDIMMUNE AND ST

4   MICRO ELECTRONICS PROVE, IT GIVES US SOMEWHAT OF A CLEAR PATH

5   OR CLEARANCE WITH RESPECT TO HOW WE MIGHT OPERATE IN THE

6   FUTURE.

7           NOW, PSYSTAR HAS ADMITTED PUBLICLY THAT THEY CONTINUE

8   TO DEVELOP PRODUCTS, HAVE NEW IDEAS, NEW R&D THAT THEY WOULD

9   LIKE TO MOVE FORWARD INTO THE FUTURE.  IT IS QUITE POSSIBLE

10  THAT APPLE MIGHT HAVE AN ISSUE WITH THOSE, AS WELL, AS PSYSTAR

11  DOES DO A NUMBER OR DOES MANUFACTURE A NUMBER OF PRODUCTS THAT

12  UTILIZE THE MAC OS.

13          IN THAT CONTEXT WE WOULD ASK THE COURT:  DO WE HAVE

14  TO WAIT TO BE SUED IN ORDER TO MOVE FORWARD WITH THOSE

15  PRODUCTS, AS WELL?

16          AND THAT WAS THE VERY ISSUE ADDRESSED BY THE COURTS

17  IN MEDIMMUNE AND ST MICRO ELECTRONICS.  A DJ ACTION, THE

18  DECLARATORY JUDGMENT ACT, EXISTS SPECIFICALLY FOR THIS ISSUE SO

19  THAT A PARTY CAN GET, YOU KNOW, SOME SORT OF CERTAINTY WITH

20  RESPECT TO HOW THEY MAY OPERATE IN THE FUTURE SO THEY DON'T

21  HAVE TO SIT THERE AND WAIT WITH A SORT OF DAMOCLES SWINGING

22  OVER THEIR HEAD WITH RESPECT TO:

23              "WELL, IF WE DO THIS ARE WE GOING TO GET SUED

24          TODAY?  WE CAN BE SUED TOMORROW."

25          **THE COURT:**  LET ME POSE THIS QUESTION:  IF THE

1   COPYRIGHT -- TELL ME WHAT THE COPYRIGHT MISUSE IS AGAIN?  WHAT

2   WAS THE COPYRIGHT ON, AND WHAT WAS THE MISUSE PART?

3        **MR. SPRINGER:**  APPLE HAS A NUMBER OF COPYRIGHTS

4   THROUGH THEIR -- THAT THEY HAVE IDENTIFIED IN THEIR COMPLAINT

5   AS THEY PERTAIN TO VARIOUS ASPECTS OF THE MAC OS, NOT ONLY  MAC

6   OS 10'S --

7        **THE COURT:**  GIVE ME ONE EXAMPLE OF -- I'M NOT A

8   COMPUTER GEEK, EVEN THOUGH I MIGHT LOOK LIKE ONE.  I'VE NEVER

9   HEARD OF THOSE PRODUCTS. I HAVE HEARD OF APPLE.

10        SO WHAT IS THE -- WHAT IS THE TRADEMARK -- NOT

11   "TRADEMARK" -- WHAT IS THE COPYRIGHT ON --

12        **MR. SPRINGER:**  THE COPYRIGHT, AS WE UNDERSTAND IT --

13        **THE COURT:**  -- AS ISSUED BY THE COPYRIGHT OFFICE?

14        **MR. SPRINGER:**  THE COPYRIGHT COVERS THE OPERATING

15   SYSTEM. THE CODE THAT WHEN YOU BOOT UP YOUR COMPUTER MAKES THE

16   COMPUTER WORK.

17        **THE COURT:**  ALL RIGHT.  SO IT'S NOT THE WORD "APPLE."

18        **MR. SPRINGER:**  CORRECT.  THAT WOULD BE THE TRADEMARK.

19        **THE COURT:**  SEE, THAT WAS WHAT I -- I WAS CONFUSING

20   THE WORD "APPLE."

21        **MR. SPRINGER:**  NO.

22        **THE COURT:**  OKAY.  SO IT'S ON THE APPLE -- IT'S ON

23   THE ACTUAL -- IT'S GETTING A COPYRIGHT LIKE SOMEBODY WOULD ON A

24   NOVEL, EXCEPT IT'S THE OPERATING SOFTWARE.

25        **MR. SPRINGER:**  CORRECT.

1  **THE COURT:** SO THEY GOT A COPYRIGHT ON THE SOFTWARE.

2  **MR. SPRINGER:** YES.

3  **THE COURT:** SO WHAT IS THE MISUSE PART?

4  **MR. SPRINGER:** THE COPYRIGHT BY ITS VERY NATURE

5  COVERS ORIGINAL EXPRESSION. SO IN THAT CONTEXT THEY ARE

6  ALLEGING -- APPLE IS ALLEGING THEY HAVE A COPYRIGHT THAT COVERS

7  THE EXPRESSIVE ASPECTS OF THE OPERATING SYSTEM. AND THIS IS

8  ASIDE FROM THE ISSUE OF THE IDEA EXPRESSION DICHOTOMY THAT

9  EXISTS WHETHER OR NOT SOMETHING CAN ACTUALLY BE COPYRIGHTED. WE

10  WILL SAVE THAT ISSUE FOR ANOTHER DAY.

11  BUT PRESUMING THAT THERE IS ORIGINAL EXPRESSION IN

12  THE OPERATING SYSTEM, APPLE ASSERTS THAT:

13  "WE HAVE A COPYRIGHT.  WE HAVE AN EXCLUSIVE

14  RIGHT, AS THOSE RIGHTS ARE IDENTIFIED IN SECTION 106,

15  WITH RESPECT TO THE OPERATING SYSTEM."

16  IT COVERS ONLY EXPRESSION.  COPYRIGHT COVERS ONLY

17  EXPRESSION.

18  NOW, WHAT THEY HAVE ATTEMPTED TO DO THROUGH THEIR

19  COPYRIGHTS IN CONJUNCTION WITH THEIR END-USER LICENSE

20  AGREEMENTS AND ALSO IN CONJUNCTION WITH THEIR NEW DMCA CLAIM IS

21  TO SAY:

22  "THIS IS GOING TO CONTROL HARDWARE, AS WELL."

23  AND PART OF THAT IS THROUGH THEIR EULA. THAT SAYS:

24  "YOU CAN ONLY USE THIS SOFTWARE ON

25  APPLE-LABELED COMPUTERS."

1  AND FROM THAT THEY ARE ALLEGING THAT PSYSTAR, BECAUSE
2  PSYSTAR IS RUNNING THE MAC OS ON NONAPPLE-LABELED COMPUTERS,
3  THEY ARE SAYING THAT WE HAVE BREACHED THE LICENSE, AND
4  THEREFORE ENGAGED IN INFRINGEMENT OF THEIR COPYRIGHT.
5  COPYRIGHT DOES NOT PROTECT NONCOPYRIGHTABLE SUBJECT
6  MATTER. THE NONCOPYRIGHTABLE SUBJECT MATTER HERE IS THE
7  HARDWARE, THE BOX THAT RUNS THE SOFTWARE ITSELF.
8  THERE'S ALSO ISSUES, AS I MENTIONED, WITH RESPECT TO
9  APPLE ATTEMPTING TO ABROGATE CERTAIN RIGHTS OR DEFENSES THAT
10  EXIST UNDER THE COPYRIGHT, NAMELY FIRST SALE UNDER 109, AND
11  ALSO THE DISPOSITION OF SOFTWARE UNDER SECTION 117 AS THOSE
12  ISSUES ARE DISCUSSED IN OUR MOVING PAPERS.
13  SO, IN ESSENCE, APPLE IS NOT ONLY TRYING TO EXPAND
14  THE SCOPE OF THEIR COPYRIGHT BEYOND PURE SOFTWARE, BUT INTO THE
15  REALM OF HARDWARE, WHICH IS NOT COVERED BY THE COPYRIGHT.  THEY
16  ARE ALSO ATTEMPTING TO ELIMINATE CERTAIN RIGHTS THAT ARE
17  EXPRESSLY SET FORTH IN THE COPYRIGHT ACT WITH RESPECT TO WHAT
18  THE COPYRIGHT DOES AND DOES NOT COVER AND THE RIGHTS OF USERS,
19  END-USERS DOWN THE LINE.
20  **THE COURT:**  ALL RIGHT.  NOW, IF YOU WERE CORRECT THAT
21  THERE IS COPYRIGHT MISUSE AND YOU GOT A DECLARATION TO THAT
22  EFFECT, WHAT WOULD BE THE EFFECT OF THAT?
23  **MR. SPRINGER:**  SO WHEN A COPYRIGHT MISUSE IS FOUND,
24  THE COPYRIGHT IS UNENFORCEABLE. SO LET'S SAY --
25  **THE COURT:**  AGAINST YOU OR AS AGAINST THE WORLD?

1      **MR. SPRINGER:** IT WOULD BE UNENFORCEABLE AGAINST AT

2 LEAST PSYSTAR. AND IT WOULD ARGUABLY BE UNENFORCEABLE BY APPLE

3 AGAINST THIRD PARTIES, AS WELL, TO THE EXTENT THAT THEY ARE

4 ENGAGED IN SIMILAR MISUSE OF THAT COPYRIGHT.

5      THE THEORY IS VERY SIMILAR TO THE CONCEPT OF PATENT

6 MISUSE. AND, IN FACT, COPYRIGHT MISUSE AND PATENT MISUSE BOTH

7 FIND A COMMON ORIGIN IN ANTITRUST LAW. BUT IT'S IMPORTANT TO

8 REMEMBER, AGAIN, THAT NEITHER REQUIRES PLEADING OF MARKETS,

9 MARKET POWER, AS WOULD BE THE CASE IN AN ANTITRUST ARGUMENT.

10      **THE COURT:** ALL RIGHT. THANK YOU.

11 LET ME HEAR FROM THE OTHER SIDE.

12      **MR. GILLILAND:** THANK YOU, YOUR HONOR. JIM GILLILAND

13 FOR APPLE.

14      TO TAKE YOU BACK JUST A STEP, YOU'LL RECALL THAT

15 THERE WERE ANTITRUST COUNTERCLAIMS WERE ASSERTED BASED ON AN

16 ALLEGATION OF TIE-IN BETWEEN THE MACINTOSH OPERATING SYSTEM

17 SOFTWARE AND THE MAC HARDWARE. AND THE COURT RULED THAT THERE

18 WAS NO --

19      **THE COURT:** I REMEMBER.

20      **MR. GILLILAND:** -- RELEVANT MARKET.

21      **THE COURT:** I THREW THAT OUT.

22      **MR. GILLILAND:** ALL RIGHT.

23      **THE COURT:** BUT NOW THIS IS A NEW THEORY.

24      **MR. GILLILAND:** SO ESSENTIALLY WHAT PSYSTAR HAS DONE

25 IS TAKEN EXACTLY THE SAME PLEADING AND SAID:

1    "WELL, IF IT'S NOT ANTITRUST VIOLATION, THEN

2    WE'RE GOING TO CLAIM THAT THIS IS COPYRIGHT MISUSE."

3    AT SOME POINT IN THIS CASE WE WILL HAVE TO RESOLVE

4    THE QUESTION OF WHETHER OR NOT IN THE COURSE OF INTELLECTUAL

5    PROPERTY RIGHTS THERE COULD BE A CLAIM OF LEVERAGING WITHOUT

6    THE DEFINITION OF A RELEVANT MARKET AND WITHOUT ANY KIND OF

7    MARKET POWER.

8    THAT ISSUE WILL BE RESOLVED HERE, BUT IT CAN BE

9    RESOLVED IN THE COURSE OF THE COPYRIGHT MISUSE DEFENSE.  AND

10   THERE'S NO REASON FOR THE COURT TO HAVE TO RESOLVE IT NOW.

11   APPLE BELIEVES THAT THESE COUNTERCLAIMS, IF ASSERTED,

12   WOULD BE FUTILE, BECAUSE WE HAVE THE RIGHT, AS THE COPYRIGHT

13   HOLDER, TO RESTRICT WHO COPIES OUR SOFTWARE.

14   WE HAVE THE RIGHT TO RESTRICT WHO DISTRIBUTES OUR

15   SOFTWARE. IF THIS HAD BEEN A NOVEL, WE COULD ONLY LICENSE OUT

16   THE RIGHT TO PUBLISH IT IN A HARD COPY BOOK.  AND WE COULD

17   RESERVE TO OURSELVES THE DIGITAL RIGHTS FOR AN AUDIO BOOK, FOR

18   EXAMPLE.

19   SUCH RESTRICTIVE LICENSING OCCURS FREQUENTLY AND IS

20   NOT UNLAWFUL IN THE ABSENCE OF MARKET POWER.

21   **THE COURT:**  WELL, THEY SAY YOU DO HAVE MARKET POWER

22   HERE.

23   **MR. GILLILAND:**  WELL, THEY WOULD LIKE TO CLAIM

24   THERE'S MARKET POWER, BUT THIS COURT HAS ALREADY FOUND THAT

25   THERE CAN'T BE A MARKET RELATED OR LIMITED SOLELY TO APPLE. AND

IF WE THEN GO AND TALK ABOUT ALL THE OPERATING SYSTEMS ON ALL
THE COMPUTERS WE'RE PRETTY CONFIDENT THAT WE WILL BE ABLE TO
PROVE THAT THERE'S NO MARKET POWER.

      **THE COURT:** YOU'RE SAYING THAT THE NINTH CIRCUIT HAS
HELD THAT YOU CANNOT HAVE COPYRIGHT MISUSE NO MATTER HOW
ABUSIVE UNLESS THERE'S MARKET POWER.

      **MR. GILLILAND:** I DID NOT SAY THAT YET.

      **THE COURT:** OKAY.

      **MR. GILLILAND:** BUT I DID SAY THAT THAT ISSUE WILL
HAVE TO BE RESOLVED IN THIS CASE. WHETHER OR NOT THERE COULD BE
UNLAWFUL -- THAT IT COULD BE COPYRIGHT MISUSE TO HAVE A
LICENSING SCHEME SUCH AS THIS IN THE ABSENCE OF MARKET POWER.

      THE TRIAD SYSTEMS CASE FROM THE NINTH CIRCUIT, IN
TRIAD THERE WAS A COMPUTER COMPANY THAT MADE THE HARDWARE, THAT
MADE THE SOFTWARE. THEY LICENSED THE SOFTWARE TO THEIR
CUSTOMERS. THEY SAID:

        "YOU MAY ONLY USE THIS SOFTWARE ON OUR
        COMPUTERS.  YOU CANNOT LET ANYBODY ELSE EVEN COME IN
        AND USE YOUR OWN COMPUTER WITH THIS SOFTWARE."

      AND THE COURT HELD THAT THAT WAS NOT COPYRIGHT
MISUSE.

      **THE COURT:** WAS THAT THE NINTH CIRCUIT OR DISTRICT
COURT?

      **MR. GILLILAND:** RIGHT, NINTH CIRCUIT. TRIAD SYSTEMS
VERSUS SOUTHEASTERN.

1         **THE COURT:** AND THEY SAID THAT WAS NOT COPYRIGHT?

2 WAS THAT BEFORE OR AFTER THAT CASE THAT AUTHORIZED COPYRIGHT

3 MISUSE?

4         **MR. GILLILAND:** PRACTICE MANAGEMENT? IT WAS -- TRIAD

5 SYSTEMS IS 64 F.3D. AND IT WAS, I BELIEVE, AFTER THE PRACTICE

6 MANAGEMENT CASE.

7         **THE COURT:** PRACTICE MANAGEMENT WAS 121.

8         **MR. GILLILAND:** WELL, THAT WAS BEFORE THAT, THEN. SO

9 THEY ALREADY ADDRESSED COPYRIGHT MISUSE THERE AND SAID THAT IT

10 WAS NOT MISUSE.

11         NOW, IN PRACTICE MANAGEMENT THERE WAS A DIFFERENT

12 ALLEGATION THERE. PRACTICE MANAGEMENT, THE AMERICAN MEDICAL

13 ASSOCIATION HAD CREATED THIS COMPENDIUM OF BILLING CODES THAT

14 WERE GOING TO BE USED BY THE GOVERNMENT FOR MEDICARE

15 REIMBURSEMENT. AND THEY PUBLISHED THOSE BILLING CODES AND GOT A

16 COPYRIGHT ON THAT AND ENTERED AN AGREEMENT WITH THE HEALTH CARE

17 FINANCE AGENCY WHICH SAID:

18         "YOU MAY ONLY USE OUR CODES. YOU ENTER AN

19         EXCLUSIVE DEALING AGREEMENT THAT WE WILL LICENSE OUR

20         CODES AND OUR COMPENDIUM TO YOU, BUT THERE'S AN

21         EXCLUSIVE AGREEMENT. YOU CANNOT USE ANYBODY ELSE'S."

22         AND IN THAT INSTANCE, THE NINTH CIRCUIT SAID:

23         "WELL, THAT RESTRICTS COMPETITION IN CREATING

24         COMPENDIUMS."

25         HERE, THERE'S NOTHING IN APPLE'S LICENSE AGREEMENT

1  THAT RESTRICTS ANYBODY TO CREATE THEIR OWN OPERATING SYSTEM,

2  RESTRICTS ANYBODY TO CREATE THEIR OWN HARDWARE.

3           IN FACT, PSYSTAR HAS CREATED ITS OWN HARDWARE.  THEY

4  ARE COMPETING WITH APPLE.  THERE'S NOTHING IN OUR LICENSE

5  AGREEMENT THAT RESTRICTS COMPETITION IN ANY WAY.

6           **THE COURT:**  SAY THAT AGAIN.

7           **MR. GILLILAND:**  THERE'S NOTHING IN APPLE'S LICENSE

8  AGREEMENT THAT RESTRICTS COMPETITION IN ANY WAY BECAUSE --

9           **THE COURT:**  WELL, YOU SAY THEY CAN'T USE THE SOFTWARE

10  ON THEIR MACHINE.

11           **MR. GILLILAND:**  BUT THEY CAN CREATE THEIR OWN

12  MACHINES, AND THEY CAN PUT THE LINUX OPERATING SYSTEM ON IT OR

13  THE WINDOWS OPERATING SYSTEM ON IT OR THE UBUNTU OPERATING

14  SYSTEM ON IT.  AND THEY CAN SELL THEM IN DIRECT COMPETITION

15  WITH THE APPLE MACINTOSH WITH THE APPLE OPERATING SYSTEM ON IT.

16           AND IF I MIGHT TAKE A STEP BACK, THIS IS AN IMPORTANT

17  ISSUE, AND IT WILL BE RESOLVED IN THIS CASE.  BUT IT DOESN'T

18  HAVE TO BE RESOLVED THROUGH A COUNTERCLAIM FOR DECLARATORY

19  RELIEF.

20           **THE COURT:**  WHAT'S THE HARM OF HAVING A COUNTERCLAIM

21  IF IT'S GOING TO BE IN THE CASE, ANYWAY?

22           **MR. GILLILAND:**  WELL, TWO THINGS.  FIRST OF ALL,

23  SINCE IT'S ALREADY PLEADED AS A MISUSE DEFENSE, THE ISSUE IS

24  JOINED BETWEEN APPLE AND PSYSTAR.  BUT IT IS LIMITED TO APPLE

25  AND PSYSTAR, ESTABLISHING A PRINCIPLE IN THIS CASE, THAT ONE

1 COULD TAKE AN AFFIRMATIVE DEFENSE AND TURN IT AROUND AND FILE A

2 DECLARATORY RELIEF ACTION WHEN THERE'S NOT ALREADY PENDING A

3 LAWSUIT WOULD BE -- WOULD OPEN UP FEDERAL COURTS TO ALL KINDS

4 OF NEW --

5       **THE COURT:**  THERE IS A LAWSUIT HERE.

6       **MR. GILLILAND:**  THERE IS A LAWSUIT HERE.

7       **THE COURT:**  THE THING I KEEP THINKING ABOUT IN PATENT

8 CASES THEY DO THIS ALL THE TIME, THE PATENT OWNER SUES THE

9 OTHER SIDE NOT ONLY DEFENDS ON THE GROUND THAT THE PATENT IS

10 INVALID, BUT THEY ROUTINELY ASK FOR DECLARATORY RELIEF THAT

11 IT'S INVALID AND UNENFORCEABLE.  AND NO ONE BLINKS AT THAT.

12       **MR. GILLILAND:**  YOU'RE RIGHT, YOUR HONOR.  AND THE

13 UNENFORCEABILITY COUNTERCLAIM USUALLY SAYS:

14       "DUE TO INEQUITABLE CONDUCT AND/OR PATENT

15       MISUSE."

16       **THE COURT:**  RIGHT.

17       **MR. GILLILAND:**  SO WE WENT BACK TO THE CASE BOOKS,

18 AND WE LOOKED TO FIND:  IS THERE A CASE IN WHICH THE COURTS

19 ACTUALLY IN THE PATENT CONTEXT ADDRESS THIS SPECIFIC ISSUE?  IF

20 YOU'VE ALREADY ASSERTED THIS AS AN AFFIRMATIVE DEFENSE CAN YOU

21 ALSO ASSERT IT AS A DECLARATORY RELIEF ACTION?

22       AND WE DID NOT FIND ANYTHING.

23       **THE COURT:**  I THINK THERE ARE CASES ON THAT.  I

24 REMEMBER IT COMING UP IN THIS CONTEXT BECAUSE THE ORIGINAL

25 PLAINTIFF WITH OWNING THE PATENT DECIDED TO GIVE UP AND DISMISS

1    THEIR COMPLAINT.  AND THE JUDGE SAID:

2              "NO.  TOO LATE.  THE OTHER SIDE HAS A RIGHT TO

3         DECLARE YOUR PATENT INVALID."

4         SO THE CASE THEN WENT FORWARD ON THE COUNTER CLAIM TO

5    DECLARE -- SO THAT THE -- IN OTHER WORDS, THE DEFENDING PARTY

6    HAD AN INTEREST IN GETTING A DECLARATION THAT THE PATENT WAS

7    UNENFORCEABLE, EVEN THOUGH THE ORIGINAL PLAINTIFF HAD GIVEN UP

8    BECAUSE THEY HAD OTHER PRODUCTS IN THE PIPELINE AND THEY WANTED

9    TO GET IT CLEARED UP, CLEARED AWAY AND THEIR CUSTOMERS AND ALL

10   OF THOSE REASONS.

11        **MR. GILLILAND:**  YES, THERE ARE SUCH CASES, BUT NOT

12   ANY THAT I'VE FOUND THAT RELY EXCLUSIVELY ON THE QUESTION OF

13   PATENT MISUSE. FREQUENTLY THEY'RE ARGUMENTS WITH

14   UNENFORCEABILITY OR INVALIDITY RELATING TO EITHER FRAUD ON THE

15   PATENT OFFICE OR INVALIDITY --

16        **THE COURT:**  THAT COULD BE.  THAT COULD BE, BECAUSE I

17   DON'T REMEMBER IT COMING UP WITH THE PATENT MISUSE.  BUT WHY

18   WOULDN'T THAT JUST BEEN ANALOGOUS TO THE OTHER?

19        **MR. GILLILAND:**  WELL, WHAT WE HAVE ARE TWO CASES THAT

20   ARE DIRECTLY ON POINT INVOLVING COPYRIGHT.  AND WE HAVE NOT

21   BEEN ABLE TO FIND ANY DIRECTLY ANALOGOUS IN PATENT.  THE ONES

22   THAT ARE DIRECTLY ON POINT INVOLVING COPYRIGHT ARE MGM STUDIOS

23   VERSUS GROKSTER  AND TICKETMASTER VERSUS RMG, BOTH OUT OF THE

24   CENTRAL OF DISTRICT OF CALIFORNIA AND BOTH INVOLVING FACT

25   CIRCUMSTANCES WHICH ARE -- AND PROCEDURAL POSTURES WHICH ARE

1    VIRTUALLY IDENTICAL TO THIS ONE.

2          IN BOTH OF THOSE CASES THE COPYRIGHT HOLDER FILED

3    INFRINGEMENT ACTIONS.  IN BOTH OF THOSE CASES THE DEFENDANTS

4    ASSERTED ANTITRUST COUNTERCLAIMS. IN BOTH OF THOSE CASES THE

5    COURTS SAID THE ANTITRUST COUNTERCLAIMS WERE INADEQUATELY PLED.

6          IN BOTH OF THOSE CASES THE DEFENDANT HAD ALSO PLEADED

7    PATENT MISUSE AS A DEFENSE.  IN BOTH OF THOSE CASES THEY THEN

8    TRIED TO PLEAD COPYRIGHT MISUSE AS A COUNTERCLAIM.  AND IN BOTH

9    CASES THE COURT SAID:

10          "THAT'S UNNECESSARY, IMPROPER USE OF THE

11          DECLARATORY JUDGMENT ACT AND NEEDLESSLY

12          COMPLICATES AN ALREADY COMPLEX CASE."

13          THE ISSUE AS BETWEEN PSYSTAR AND APPLE IS ALREADY

14    JOINED, AND WE DON'T NEED TO ADD ANOTHER COUNTERCLAIM TO SAY

15    THE SAME THING OVER AGAIN.

16          THE TICKETMASTER CASE CALLED THEM:

17          "DUPLICATIVE AND A NEEDLESS WASTE OF JUDICIAL

18          RESOURCES."

19          AND THE GROKSTER CASE SAID:

20          "THE DECLARATORY JUDGMENT ACT IS NOT INTENDED TO

21          PROVIDE A FORUM FOR ESTABLISHING THE LEGAL RELATIONS

22          BETWEEN DECLARATORY DEFENDANTS AND ALL THE WORLD

23          THE MISUSE ISSUE IS ALREADY HERE IN OUR CASE, AND

24          THAT'S SUFFICIENT."

25          THE OTHER ALLEGATIONS HERE ARE FOR UNFAIR COMPETITION

1    UNDER THE CALIFORNIA SECTION 17200 OF THE BUSINESS AND

2    PROFESSIONS CODE.  THESE ARE ESSENTIALLY THE SAME ALLEGATIONS.

3         THE COURT ALREADY FOUND THAT THERE WAS NO CLAIM

4    STATED UNDER SECTION 17200.  SO WE THINK, AGAIN, THAT THOSE

5    CLAIMS SHOULD BE DISMISSED, AS WELL, OR SPECIFICALLY HERE.

6         **THE COURT:**  ALL RIGHT.

7         **MR. GILLILAND:**  PERMISSION TO ADD THEM NOT GRANTED

8    BECAUSE THAT'S REALLY WHAT WE'RE ASKING FOR, THAT PSYSTAR IS

9    ASKING FOR HERE.

10         **THE COURT:**  ALL RIGHT.  I GOT TO BRING IT TO A CLOSE.

11         **MR. GILLILAND:**  THANKS.

12         **THE COURT:**  ONE MINUTE OR DO YOU NEED ANY?

13         **MR. SPRINGER:**  ONE MINUTE, YOUR HONOR?

14         **THE COURT:**  ALL RIGHT. ONE MINUTE.

15         **MR. SPRINGER:**  THREE QUICK POINTS, AND I'LL MAKE SURE

16    I SPEAK SLOWLY.  I APOLOGIZE AGAIN.

17         I CAN'T EMPHASIZE ENOUGH THE IMPORTANCE THAT

18    COPYRIGHT MISUSE IS NOT PREDICATED ON MARKET POWER. THE NINTH

19    CIRCUIT HAS FLAT OUT SAID IN PRACTICE MANAGEMENT QUOTE:

20         "A DEFENDANT IN A COPYRIGHT INFRINGEMENT SUIT

21         NEED NOT PROVE AN ANTITRUST VIOLATION TO PREVAIL ON A

22         COPYRIGHT MISUSE DEFENSE."

23         SO MARKET POWER IS WHOLLY IRRELEVANT WITH RESPECT TO

24    THE COPYRIGHT MISUSE CLAIMS IN THE PRESENT ACTION.

25         THE SECOND ISSUE I'D LIKE TO ADDRESS --

1        **THE COURT:** READ THAT QUOTE TO ME AGAIN.

2        **MR. SPRINGER:** QUOTE:

3         "A DEFENDANT IN A COPYRIGHT INFRINGEMENT SUIT

4        NEED NOT PROVE AN ANTITRUST VIOLATION TO PREVAIL ON A

5        COPYRIGHT MISUSE DEFENSE."

6        **THE COURT:** HOW ABOUT PROVING MARKET POWER, THOUGH?

7        **MR. SPRINGER:** THERE IS NO SPEAKING ABOUT MARKET

8 POWER. THERE IS NO SPEAKING ABOUT MARKET DEFINITION.

9        WHILE COPYRIGHT MISUSE DOES FIND ITS ORIGINS FROM THE

10 ANTITRUST, AS DOES PATENT MISUSE, COPYRIGHT MISUSE IS IN NO WAY

11 PREDICATED UPON THE TRADITIONAL ANTITRUST MARKET POWER MARKET

12 DEFINITION ANALYSIS.

13        SO ANY ISSUES WITH RESPECT TO MARKET POWER --

14        **THE COURT:** HOW WOULD THAT WORK HERE? WHY ISN'T IT

15 RIGHT THAT IF APPLE HAS WRITTEN UP ITS OWN SOFTWARE, IT HAS A

16 COPYRIGHT ON THE SOFTWARE, AND IF IT WANTS TO SAY TO ITS

17 CUSTOMERS:

18         "YOU CAN USE OUR SOFTWARE, BUT ONLY ON OUR

19        COMPUTERS," WHAT'S WRONG WITH THAT?

20        I MEAN, YOU CAN GO OUT AND DO YOUR OWN SOFTWARE OR

21 YOU COULD USE LINUX AND SELL YOUR COMPUTER. SO WHY IS THERE A

22 DECISION IN THE NINTH CIRCUIT THAT SAYS THAT SCENARIO IS

23 ILLEGAL?

24        **MR. SPRINGER:** IT DOESN'T SPEAK ABOUT SCENARIO, BUT

25 IN THAT CONTEXT YOU'RE ALMOST ASKING TO PROVE A NEGATIVE. THE

1  COPYRIGHT MISUSE IS -- CONCERNS THE GOVERNMENT GRANT, THE

2  GOVERNMENT TRUST, THE QUID PRO QUO THAT YOU GET THROUGH AN

3  INTELLECTUAL PROPERTY -- AN INTELLECTUAL PROPERTY MONOPOLY FROM

4  THE RELEVANT GOVERNMENT OFFICE, IN THIS CASE THE COPYRIGHT

5  OFFICE.

6         WITH THE COPYRIGHT YOU HAVE A VERY SPECIFIC

7  ENUMERATED LIST OF RIGHTS.  THOSE ARE SET FORTH IN SECTION 106.

8  WHEN YOU TRY TO EXPAND THE SCOPE OF THAT COPYRIGHT BEYOND THE

9  RIGHTS IN 106, THE RIGHT TO DISPLAY, THE RIGHT TO COPY, THE

10 RIGHT TO DISTRIBUTE, ET CETERA, ONCE YOU EXPAND BEYOND THOSE

11 RIGHTS AND USE THE COPYRIGHT AS SORT OF YOUR BULL PULPIT YOU

12 ARE MISUSING YOUR COPYRIGHT.  YOU ARE EXPANDING THE GRANT THAT

13 THE GOVERNMENT HAS GIVEN YOU.

14        **THE COURT:**  HOW WOULD IT WORK UNDER YOUR THEORY?  IF

15 APPLE HAS THE COPYRIGHT ON THE SOFTWARE --

16        **MR. SPRINGER:**  CORRECT.

17        **THE COURT:**  -- AND YOU HAVE THE COMPUTER, AND YOU

18 SELL YOUR COMPUTER TO YOUR CUSTOMER.  AND THEN, YOUR CUSTOMER

19 SAYS:

20         "I WOULD LIKE TO RUN THE APPLE SOFTWARE ON

21         THIS," AND THEN YOU HAVE TO SAY:

22         "WELL, WE DON'T HAVE A LICENSE. WE CAN'T SELL

23         YOU THAT.  SO YOU'LL HAVE TO GO DEAL WITH APPLE."

24         THEN, APPLE SAYS:

25         "WE DON'T WANT TO DEAL WITH YOU. WE DON'T WANT TO

1    SELL OUR SOFTWARE TO YOU."

2    DOESN'T APPLE HAVE THE RIGHT TO DO THAT?

3    **MR. SPRINGER:**  APPLE HAS LIMITED RIGHTS WITH RESPECT

4    TO THE SCOPE OF THEIR COPYRIGHT. A COPYRIGHT IS NOT A BLANKET

5    ABSOLUTE GRANT OF TO DO WHATEVER YOU WANT TO DO, WHENEVER YOU

6    WANT TO DO IT, HOWEVER YOU WANT TO DO IT.  THERE ARE LIMITS

7    WITH RESPECT TO HOW YOU USE A COPYRIGHT.

8    **THE COURT:**  PROBABLY THERE ARE LIMITS, BUT YOUR ARE

9    NOT ADDRESSING MY SCENARIO SO --

10   **MR. SPRINGER:**  WELL, SO YOUR SCENARIO IS THE

11   SCENARIO --

12   **THE COURT:**  IN MY SCENARIO DOES APPLE HAVE TO SELL --

13   OR "LICENSE" IS THE RIGHT WORD -- LICENSE ITS SOFTWARE TO YOUR

14   CUSTOMER?

15   **MR. SPRINGER:**  IN THE CONTEXT HERE APPLE IS SAYING

16   THAT THEY DON'T.  AND WE BELIEVE THAT BY THEM SAYING -- WE

17   BELIEVE THAT BY HAVING A RESTRICTION IN THEIR EULA SAYING IT

18   CAN ONLY RUN ON APPLE-LABELED COMPUTER HARDWARE THAT THEY HAVE

19   EFFECTIVELY LEVERAGED THAT COPYRIGHT TO REQUIRE THE PURCHASE --

20   YOU KNOW, TO BRING IN HARDWARE THAT'S NOT COVERED BY THE

21   COPYRIGHT.  IN THAT SENSE, THEY HAVE LEVERAGED THAT COPYRIGHT

22   TO EXPAND THEIR RIGHT TO EXPAND THEIR COMMERCIAL BENEFITS,

23   THEIR COMMERCIAL INTEREST INTO AREAS THAT ARE OUTSIDE THE

24   COPYRIGHT LAW.

25   THE HARDWARE, THE COMPUTER ITSELF, THE BOX, IS NOT

1    PROTECTED BY ANY OF THESE COPYRIGHTS. AND THEY ARE SAYING:

2              "WE'RE GOING TO USE THOSE COPYRIGHTS HOWEVER TO

3        BASICALLY LASSO THOSE IN AND BASICALLY EXPAND THE

4        RIGHT OF OUR COPYRIGHT.  WE ARE GOING TO CREATE A

5        PSEUDO PATENT."

6        **THE COURT:**  WELL, ALL RIGHT.  I SEE THE LEVERAGE

7    POINT.  BUT YOU'RE STILL NOT ANSWERING MY QUESTION.  LET ME

8    GIVE YOU TWO SCENARIOS.

9        **MR. SPRINGER:**  ALL RIGHT.

10       **THE COURT:**  AND YOUR TIME IS UP.

11       **MR. SPRINGER:**  I APOLOGIZE.

12       **THE COURT:**  BUT IS MR. -- IS HE HERE YET?

13       **MR. BABCOCK:**  YOUR HONOR, I DON'T THINK YOU HAVE TO

14   WORRY ABOUT --

15       **THE COURT:**  OKAY.  WELL, WE WILL HAVE OUR HEARING IN

16   JUST A MOMENT.  I'M SORRY TO KEEP YOU WAITING.

17             BUT LET ME GIVE YOU TWO SCENARIOS. SCENARIO NUMBER

18   ONE, LET'S SAY APPLE HAS WRITTEN THIS GREAT SOFTWARE. BUT FOR

19   PECULIAR REASONS IT WANTS TO KEEP IT TO ITSELF, AND IT'S NOT

20   SELLING IT TO ANYBODY. IT'S GOT A COPYRIGHT ON IT, BUT IT'S NOT

21   SELLING IT -- IT'S JUST SELLING IT INTERNALLY TO ITS OWN

22   PEOPLE.

23       **MR. SPRINGER:**  WITHIN THE COMPANY OR --

24       **THE COURT:**  WITHIN THE COMPANY, YES.  JUST AN

25   EMPLOYEE ONLY THING.  AND THEN, YOUR COMPANY COMES ALONG AND

1  KNOWS ABOUT IT AND BUILDS SOFTWARE THAT -- HARDWARE, SORRY --

2  THAT WOULD RUN ON IT. AND YOUR CUSTOMER GOES TO APPLE AND SAYS:

3           "SELL ME A LICENSE TO USE THAT GREAT SOFTWARE."

4       APPLE SAYS:

5           "NO, IT'S JUST INTERNAL ONLY."

6       SURELY THAT CAN'T BE SOME KIND OF COPYRIGHT MISUSE.

7       **MR. SPRINGER:**  BUT THAT'S NOT THE SITUATION.

8       **THE COURT:**  I UNDERSTAND. ALL RIGHT. BUT YOU WOULD

9  AGREE THAT THAT'S NOT ANY KIND OF MISUSE.

10      **MR. SPRINGER:**  IT WOULD SEEM IT WOULD BE VERY

11 DIFFERENT THAN THE SITUATION HERE.  SO WITH RESPECT TO THE

12 ARGUMENT WE'RE MAKING FOR MISUSE HERE, NO, IT IS NOT THE SAME.

13      **THE COURT:**  ALL RIGHT. SO NOW WHAT THEY DO INSTEAD IS

14 THEY DO SELL IT TO SOME PEOPLE, BUT ONLY TO THOSE PEOPLE WHO

15 BUY THEIR COMPUTER. LICENSE IT TO BE USED ONLY WITH THEIR OWN

16 COMPUTERS. THAT IS LEVERAGING IN A WAY, BUT -- OKAY.  SO IF

17 THEY HAD THE RIGHT TO WITHHOLD IT AND USE IT FOR THEMSELVES,

18 WHY DON'T THEY HAVE THE RIGHT TO JUST WITHHOLD IT AND LICENSE

19 ONLY THOSE PEOPLE WHO BUY THEIR COMPUTERS?

20      **MR. SPRINGER:**  BECAUSE YOU PRESENTED TWO VERY

21 DIFFERENT SCENARIOS.

22      **THE COURT:**  I KNOW THEY ARE DIFFERENT, BUT WHY ARE

23 THEY DIFFERENT LEGALLY?  WHY SHOULD IT MAKE A DIFFERENCE?

24      **MR. SPRINGER:**  IN YOUR LATTER SCENARIO THEY PUT THE

25 PRODUCT ON THE SHELF, AS THEY DO IN THE REAL WORLD, AS THEY DO

1  IN THE PRESENT LITIGATION, AND YOU, ME, ANYONE IN THIS ROOM CAN

2  GO INTO ANY APPLE STORE AND BUY THE PRODUCT.  AND, IN FACT,

3  THAT'S WHAT PSYSTAR DOES WITH A NUMBER OF COPIES OF THE

4  OPERATING SYSTEM.

5        THEY GO INTO THE APPLE STORE, AND THEY BUY IT.  THEY

6  GO TO AN APPLE-AUTHORIZED RETAILER, AND THEY BUY IT.  THEY PAY

7  GOOD AND VALUABLE CONSIDERATION TO BUY A BOX OF THE APPLE

8  SOFTWARE OFF THE SHELF.  THEY HAVE PAID GOOD MONEY FOR IT, AND

9  THEY USE IT.  AND WITH THAT COMES CERTAIN RIGHTS AND THE

10  ELIMINATION OF CERTAIN RIGHTS WITH RESPECT TO APPLE.

11        SO, FOR EXAMPLE, THE FIRST SALE DOCTRINE THEY HAVE

12  EXHAUSTED CERTAIN OF THEIR RIGHTS ONCE THEY SELL THE PRODUCT

13  FOR GOOD AND VALUABLE CONSIDERATION, AS IS THE CASE HERE.

14        **THE COURT:**  WELL, IF YOU'RE ABLE TO BUY THAT SOFTWARE

15  NOW, WHAT'S THE PROBLEM?

16        **MR. SPRINGER:**  THAT'S APPLE.  ASK APPLE THAT

17  QUESTION.

18        **THE COURT:**  THEY ARE SUING YOU BECAUSE YOU ARE BUYING

19  IT AND USING IT.

20        **MR. SPRINGER:**  EXACTLY.

21        **THE COURT:**  THEY ARE SAYING YOU SHOULD NOT BE ALLOWED

22  TO DO THAT; THAT SOMEHOW YOU ARE VIOLATING THE LICENSE

23  AGREEMENT.

24        **MR. SPRINGER:**  THEY ARE SAYING THAT WE VIOLATED THE

25  LICENSING AGREEMENT, AND PSYSTAR'S REPLY TO THAT IS:

1          "THE WAY YOU HAVE LICENSE AGREEMENT VIS-A-VIS

2     YOUR COPYRIGHTS IS MISUSE OF YOUR COPYRIGHTS.  YOU'RE

3     EXPANDING YOUR RIGHTS TO THE HARDWARE, WHICH IS NOT

4     COVERED BY THE COPYRIGHT."

5          IT'S ALSO ABROGATING CERTAIN RIGHTS AND DEFENSES THAT

6  ARE GIVEN TO PSYSTAR AND SUBSEQUENT PURCHASERS OF THE SOFTWARE

7  UNDER THE COPYRIGHT LAW.

8          SO IN THAT SENSE, THAT IS HOW APPLE IS MISUSING THE

9  COPYRIGHTS.  THAT IS HOW THEY ARE LEVERAGING THEIR RIGHTS FROM

10 PURE SOFTWARE INTO THE REALM OF HARDWARE, WHICH IS NOT

11 PROTECTED BY THE COPYRIGHT.  SO IN THAT CONTEXT THEY HAVE

12 EXPANDED THE SCOPE.  THEY HAVE EXPANDED THEIR RIGHTS UNDER THE

13 COPYRIGHT AS IS EXPRESSLY PROHIBITED BY PRACTICE MANAGEMENT AND

14 A&M RECORDS V. NAPSTER.

15          **THE COURT:**  I DON'T KNOW THE ANSWER TO THIS.  I'LL

16 HAVE TO STUDY IT MORE, SO I HAVE TO BRING IT TO A CLOSE.  IT'S

17 UNDER SUBMISSION.

18          **MR. SPRINGER:**  THANK YOU, YOUR HONOR.

19          **MR. GILLILAND:**  THANK YOU, YOUR HONOR.

20          **THE COURT:**  THANK YOU ALL. SEE YOU SOON.

21          (THEREUPON, THIS HEARING WAS CONCLUDED.)

22

23

24

25

CERTIFICATE OF REPORTER

I, KATHERINE WYATT, THE UNDERSIGNED, HEREBY CERTIFY THAT THE FOREGOING PROCEEDINGS WERE REPORTED BY ME, A CERTIFIED SHORTHAND REPORTER, AND WERE THEREAFTER TRANSCRIBED BY ME INTO TYPEWRITING; THAT THE FOREGOING IS A FULL, COMPLETE AND TRUE RECORD OF SAID PROCEEDINGS.

I FURTHER CERTIFY THAT I AM NOT OF COUNSEL OR ATTORNEY FOR EITHER OR ANY OF THE PARTIES IN THE FOREGOING PROCEEDINGS AND CAPTION NAMED, OR IN ANY WAY INTERESTED IN THE OUTCOME OF THE CAUSE NAMED IN SAID CAPTION.

THE FEE CHARGED AND THE PAGE FORMAT FOR THE TRANSCRIPT CONFORM TO THE REGULATIONS OF THE JUDICIAL CONFERENCE.

IN WITNESS WHEREOF, I HAVE HEREUNTO SET MY HAND THIS 24TH DAY OF JANUARY, 2009.

_____