ROBERT J. YORIO (SBN 93178)
yorio@carrferrell.com
COLBY B. SPRINGER (SBN 214868)
cspringer@carrferrell.com
CHRISTOPHER P. GREWE (SBN 245938)
cgrewe@carrferrell.com
CARR & FERRELL *LLP*
2200 Geng Road
Palo Alto, California 94303
Telephone: (650) 812-3400
Facsimile:   (650) 812-3444

Attorneys for Defendant/Counterclaimant
PSYSTAR CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>                Plaintiff,<br><br>     v.<br><br>PSYSTAR CORPORATION, a Florida corporation,<br><br>                Defendant.<br><br>AND RELATED COUNTERCLAIMS | CASE NO. CV-08-03251-WHA<br><br>**PSYSTAR CORPORATION'S FIRST AMENDED COUNTERCLAIM FOR DECLARATORY RELIEF AS TO THE UNENFORCEABILITY OF COPYRIGHTS**<br><br>**JURY TRIAL REQUESTED** |

<u>**Nature of this Action**</u>

1.      This is an action for declaratory relief under the Declaratory Judgment Act (28 U.S.C. § 2201) (hereinafter referred to as the "First Amended Counterclaim").

2.      PsyStar Corporation ("PSYSTAR") seeks a declaration as to the unenforceability of certain copyrights held and asserted by Apple Inc. ("APPLE") in its July 3, 2008 Complaint ("Complaint") and December 2, 2008 Amended Complaint ("First Amended Complaint").  PSYSTAR's request for declaratory relief as to unenforceability of these copyrights is predicated upon APPLE having

leveraged (and APPLE continuing to leverage) the limited monopoly granted by the U.S. Copyright Office under the U.S. Copyright Act to areas outside that statutory grant. APPLE's leveraging conduct therefore constitutes copyright misuse, which renders the corresponding copyrights unenforceable.

3.     APPLE leverages its asserted copyrights in the Macintosh OS X Operating System (the "Mac OS") to secure exclusive rights not granted by the U.S. Copyright Office. APPLE has secured—and continues to seek to secure—exclusive rights in certain hardware components referred to herein as Apple-Labeled Computer Hardware Systems vis-à-vis the Mac OS. APPLE illicitly and improperly secured and continues to secure these rights to the exclusion of Mac OS Capable Computer Hardware Systems. APPLE leverages its asserted copyrights through its End User License Agreement ("EULA") and the misapplication of the Digital Millennium Copyright Act ("DMCA").

**Jurisdiction and Venue**

4.     The First and Second counterclaims set forth in this First Amended Counterclaim are brought pursuant to 28 U.S.C. § 2201. This Court is thereby vested with subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this case presents a federal question under the United States Copyright Act.

5.     This First Amended Counterclaim is a compulsory counterclaim brought in accordance with Federal Rule of Civil Procedure 13(a)(1). The aforementioned causes of action arise out of the transactions or occurrences that are the subject matter of APPLE's Complaint and First Amended Complaint and do not require adding another party over which the Court cannot acquire jurisdiction.

**The Parties**

6.    APPLE is a California Corporation with its principal place of business at 1 Infinite Loop, Cupertino, California 95014.  APPLE markets the Macintosh Computer and the OS X Operating System.

7.    Counterclaimant PSYSTAR is a Florida Corporation with its principal place of business at 10475 NW 28th Street, Doral, Florida, 33172.

8.    PSYSTAR manufactures and distributes computers tailored to customer choosing.  As a part of its devotion to supporting customer choice, PSYSTAR supports a wide range of operating systems including Microsoft Windows XP and XP 64-bit, Windows Vista and Vista 64-bit, Linux (32 and 64-bit kernels), and the Mac OS.  PSYSTAR generally refers to this custom tailored line of computers as Open Computers.

9.    Open Computers are personal computers that, in the case of the Mac OS, work like a Macintosh including the latest Macintosh operation system—OS X.5 (a.k.a. Leopard).  PSYSTAR Open Computers, again in the case of the Mac OS, run the OS X like that of a Macintosh from APPLE albeit on a computer hardware system offered at a considerably lower price and with considerably higher performance.  For example, one of the least expensive Macintosh machines on the market is for the Mac Mini, which costs more than that of an Open Computer from PSYSTAR.  PSYSTAR is informed and believes, and thereon alleges, that the Mac Mini offers poorer performance, smaller storage space, and RAM.  Furthermore, the Mac Mini does not have the option for an alternative video card such as an NVIDIA GeForce 8600, which is supported by the PSYSTAR Open Computer.

**General Allegations**

10.    For the purposes of this First Amended Counterclaim, PSYSTAR refers to the following products: the Mac OS, Mac OS Capable Computer Hardware Systems, and Apple-Labeled Computer Hardware Systems.  The Mac OS has been briefly referenced above with respect to the

Mac OS X Operating System.  Computer hardware capable of executing the Mac OS is referred to herein as Mac OS Capable Computer Hardware Systems such as the Open Computer from PSYSTAR.  Apple-Labeled Computer Hardware Systems are those hardware systems manufactured exclusively by APPLE and belonging to a subsidiary market of Mac OS Capable Computer Hardware Systems.  That subsidiary market—the Apple-Labeled Computer Hardware Systems market—is artificially created, dominated, and maintained by APPLE.  All of the aforementioned products are sold in the United States of America.

**The Mac OS**

11.     More specifically, the Mac OS is a graphical user interface-based operating system that (prior to the emergence of PSYSTAR) was operable exclusively on the Macintosh line of computer hardware and other computer hardware made by and available only from APPLE—Apple-Labeled Computer Hardware Systems.  Operating systems like the Mac OS control and direct the interaction between software applications such as word processors, Internet browsers, and applications and the central processing unit of the computer and its various hardware components.

12.     APPLE is the exclusive manufacturer and/or master licensor of the Mac OS.

13.     PSYSTAR is informed and believes, and thereon alleges, that there are substantial barriers to entry in the market for operating systems, including the Mac OS market.  It is prohibitively difficult, time-consuming, and expensive to create any operating system much less one that would offer substantially identical functionality, security, stability, and other aspects offered by the Mac OS.  In general, a new operating system manufacturer faces an almost insurmountable barrier to successful entry to the operating system market.  Those barriers would be raised even higher with respect to an operating system that would directly compete with the Mac OS.

**Mac OS Capable Computer Hardware Systems**

14.     Computer hardware systems, in general, perform central processing unit functions. Operating systems—like the Mac OS—manage the interaction between various pieces of hardware

such as a monitor or printer.  The operating system also manages various software applications running on a computing device.

15.     A seemingly infinite list of manufacturers may be found in the computer hardware system marketplace.  These manufacturers construct entire hardware systems (*i.e.*, computers) marketed and sold to the consumer either directly or via an authorized re-seller.  The participants in the computer hardware system marketplace include Dell, Acer, Lenovo, Sony, and Hewlett-Packard to name but a few.

16.     Any number of companies dedicated to manufacturing and sourcing various components used by the aforementioned manufacturers (*e.g.*, hard drives (Western Digital), processors (Intel and AMD), and graphics processing cards (NVIDIA)) also exist.

17.     PSYSTAR is informed and believes, and thereon alleges, that one or more of these manufacturers of computer hardware systems are capable and desirous of manufacturing computer hardware systems that host, execute, and run the Mac OS.  There is no compelling technological reason that any one of the aforementioned computer hardware system manufacturers could not accumulate and assemble the hardware components in an Apple-Labeled Computer Hardware System such that said system would be capable of hosting, executing, and running the Mac OS.  As noted above, PSYSTAR refers to the computer systems that could and would be manufactured by these entities as Mac OS Capable Computer Hardware Systems.

18.     As there is no technical reason that a third-party could not accumulate and assemble the hardware components in an Apple-Labeled Computer Hardware System such that said system would be capable of running the Mac OS, on information and belief PSYSTAR alleges that but for the exclusionary and leveraging conduct of APPLE—said conduct amounting to unfair competition—a third-party (as evidenced by the activities of PSYSTAR) could and would accumulate, assemble, and market the hardware components capable of running the Mac OS.

**Apple-Labeled Computer Hardware Systems**

19.     Notwithstanding the various computer hardware manufacturers in the marketplace, none of the aforementioned companies currently manufacture computer hardware systems that support the

Mac OS.  APPLE is the only manufacturer of systems operating the Mac OS.  APPLE's exclusive line of hardware systems that support the Mac OS include the Mac Pro, the Mac Mini, the MacBook, the MacBook Air, MacBook Pro, and iMac.  PSYSTAR, as noted above, refers to the exclusive line of APPLE hardware systems that support the Mac OS as Apple-Labeled Computer Hardware Systems.  PSYSTAR is informed and believes, and thereon alleges, that but for the anticompetitive conduct of APPLE as outlined herein, Apple-Labeled Computer Hardware Systems would be a competing member of the otherwise diverse Mac OS Capable Computer Hardware Systems market.

20.     PSYSTAR alleges that by virtue of APPLE's leveraging of copyrights in the context of APPLE's EULA, spurious litigation via the DMCA, and various other anti- and unfair competitive conduct, there is no viable alternative to the purchase and use of Apple-Labeled Computer Hardware Systems for users who wish to use the Mac OS, for a prospective buyer of the Mac OS, or for a user of an older version of the Mac OS.  Without an operating system, a computer hardware system can perform virtually no useful tasks thus making the installation of the Mac OS a necessity. The Mac OS—at least according to APPLE—can only be installed on Apple-Labeled-Computer Hardware Systems, a restriction that APPLE enforces through the aforementioned misuse of its copyrights.  Mac OS users are—through APPLE's copyright misuse—thereby locked in to a component not otherwise covered by any APPLE copyright—an Apple-Labeled Computer Hardware System.

**Apple's Anticompetitive Conduct**

21.     PSYSTAR, on information and belief, alleges that APPLE is content with the knowledge that it has exclusive rights to the Mac OS and that nearly insurmountable barriers exist with respect to any other entity introducing a Mac OS-like operating system.  PSYSTAR is informed and believes, and thereon alleges, that the most significant competitive threat to APPLE is not from a new operating system but from computer hardware system manufacturers that may offer a competing hardware platform upon which to run the Mac OS—Mac OS Capable Computer Hardware Systems.  Any such hardware platform would compete directly with Apple-Labeled

Computer Hardware Systems, which are manufactured by APPLE and available for purchase only from APPLE and/or its authorized resellers.

22.     PSYSTAR is informed and believes, and thereon alleges, that in order to protect itself from potential competitive threats, APPLE has engaged in a series of anticompetitive activities involving, *inter alia,* its copyrights.  PSYSTAR is further informed and believes, and thereon alleges, that APPLE's conduct includes contractual agreements tying the Mac OS to—and only to—Apple-Labeled Hardware Systems, exclusionary agreements precluding customers or would be competitors from installing, running, or using the Mac OS on any computer hardware system that is not an Apple-Labeled Computer Hardware System, that is, Mac OS Capable Computer Hardware Systems.  These contractual ties are backed with the threat of litigation for infringement of one or more APPLE copyrights.

23.     PSYSTAR is informed and believes, and thereon alleges, that manufacturers of Mac OS Capable Computer Hardware Systems that could run the Mac OS and that are not Apple-Labeled Computer Hardware Systems pose a significant competitive threat to APPLE with respect to the quality of such hardware systems and the pricing of such systems.  If Mac OS Capable Computer Hardware Systems that are not Apple-Labeled Systems were introduced into the overall marketplace, APPLE would be forced to engage in significant research, development, and quality improvement in computer hardware; APPLE would, further, be forced into price competition with other Mac OS Capable Computer Hardware System manufacturers.

**The Demise of the Clone Program**

24.     On information and belief, PSYSTAR alleges that in or around 1995, APPLE launched an official clone program (the "Clone Program").  On information and belief, PSYSTAR alleges that as a part of APPLE's Clone Program, Macintosh ROMs and system software were licensed to other computer hardware manufacturers who agreed to pay a royalty for each 'cloned' computer sold.

25.     On information and belief, PSYSTAR alleges that from 1995 to 1997, it was possible to buy a PowerPC-based computer running the Mac OS from, at the least, Power Computing Corporation.

On information and belief PSYSTAR alleges that other licensees and members of the Clone Program included Motorola, Radius, APS Technologies, DayStar Digital, and UMAX.

26.     PSYSTAR, on information and belief, alleges that in what was to be the start of a trend of increasingly anticompetitive conduct with respect to excluding others in the marketplace from selling computer hardware systems capable of operating the Mac OS and otherwise evidencing APPLE's distaste for legitimate competition in the hardware marketplace, APPLE elected to end the Clone Program in or about 1997.  APPLE's election to end the Clone Program accelerated at about the same time as the return of Steve Jobs to APPLE as its Chief Executive Officer.

27.     On information and belief, PSYSTAR alleges that the APPLE Clone Program came to a *de facto* end with the release of Mac OS 8, which, unlike certain prior iterations of the Mac OS, had no official licensee program.

28.     On information and belief, PSYSTAR alleges that APPLE further sought to discontinue the Clone Program through the purchase of Power Computing Corporation, a very successful and viable manufacturer of a computer hardware system capable of running the Mac OS.

29.     On information and belief, PSYSTAR alleges that the Mac OS 9 was released on or about October 23, 1999 without any official licensee program.  On information and belief, PSYSTAR alleges that updates to the Mac OS 9—up to and including Mac OS 9.2.2 on December 6, 2001— were also released without any official licensee program.

**Mac OS X Tied to Apple-Labeled Computer Hardware Systems**

30.     PSYSTAR is informed and believes, and thereon alleges, that APPLE's trend of releasing subsequent iterations of the Mac OS without an official licensee program continued with respect to the Mac OS X.  In June 2005 at the 2005 Worldwide Developer Conference, APPLE CEO Steve Jobs announced the planned release of the aforementioned Mac OS X for late 2006 or early 2007. At the same conference, APPLE Senior Vice President Phil Schiller noted that APPLE had no plans of running the Windows OS on a Macintosh but noted "[t]hat doesn't preclude someone from running it" and that APPLE "won't do anything to preclude that."

31.     In contrast to allowing (and all but inviting) others to run a competing OS on a Macintosh and, further, openly stating that APPLE would not do anything to preclude the same, Schiller stated

1    that APPLE did not plan to let people run the Mac OS X on other computer makers' hardware; said

2    Schiller: "[w]e will not allow running Mac OS X on anything other than an Apple Mac."

3    32.     True to its word, and by its own admission in paragraph 21 of APPLE's First Amended

4    Complaint, APPLE "prohibit[s] use of the Mac OS or its upgrades on non-Apple hardware."

5

6                    **Kernel Panic and Infinite Loops**

7    33.     On information and belief, PSYSTAR alleges that APPLE intentionally embeds code in the

8    Mac OS that causes the Mac OS to malfunction on any computer hardware system that is not an

9    Apple-Labeled Computer Hardware System.  Upon recognizing that a computer hardware system is

10   not an Apple-Labeled Computer Hardware System, the Mac OS will not operate properly, if at all,

11   and will go into what is colloquially known as 'kernel panic.'

12   34.     In kernel panic, the operating system believes that it has detected an internal and fatal error

13   from which the operating system cannot safely recover.  As a result, the operating system

14   discontinues operation.  As noted above, without a functioning operating system, functionality of

15   the corresponding computer is reduced to near zero.

16   35.     In Unix style operating systems like that of the Mac OS, the kernel routines that handle

17   panics are generally known as panic().  Panic() routines are generally designed to output an error

18   message to the display device of the computer, dump an image of kernel memory to disk for

19   post-mortem debugging, and then await either manual reboot of the system or automatically initiate

20   the same.  Attempts by the operating system to read an invalid or non-permitted memory address

21   are a common source of kernel panic.  Panic may also occur as a result of a hardware failure or a

22   bug in the operating system.  While the operating system, in some instances, could continue

23   operation after occurrence of a memory violation, the system is in an unstable state and often

24   discontinues operation to prevent further damage and to allow for diagnosis of the error rather than

25   risk security breaches and data corruption.

26   36.     As of the release of Mac OS 10.5, PSYSTAR is informed and believes and thereon alleges

27   that APPLE has continued to cause interoperability issues in its xnu kernel on generic Intel

28   hardware including kernel panics.  A sample kernel panic situation in the 10.5.5 xnu kernel

1  artificially arises during the initialization process if the Mac OS detects that the processor of the

2  corresponding computing device is not in a certain family.  PSYSTAR is informed and believes and

3  thereon alleges that that 'certain family' is the Intel Dual Core/Core/Core2 series of processors,

4  which is inclusive of Apple-Labeled Computer Hardware Systems.

5  37.      PSYSTAR is informed and believes and thereon alleges that there is no specific reason as to

6  why this "check" should be present in the code as the kernel is capable of booting on a much

7  broader range of hardware, specifically Mac OS Capable Computer Hardware Systems.  PSYSTAR

8  is informed and believes and thereon alleges that when the check is patched out, either by binary

9  patching the kernel or source patching and then compiling, the kernel can easy be booted on a

10  Pentium 4 processor.  This is something that is currently restricted by the "check" in current

11  versions of the xnu kernel and for no functional reason.  This "check" stops the execution of the

12  Mac OS on any x86 processor not sold by Apple—that is, the "check" stops the execution of the

13  Mac OS on any computer that is not an Apple-Labeled Computer Hardware System.

14  38.      PSYSTAR is informed and believes and thereon alleges that APPLE embeds further code in

15  the Mac OS that causes the Mac OS to malfunction on any computer hardware system that is not an

16  Apple-Labeled Computer Hardware System.  PSYSTAR is informed and believes and thereon

17  alleges that upon recognizing that a computer hardware system is not an Apple-Labeled Computer

18  Hardware System, the Mac OS will not operate properly, if at all, and will enter into what is

19  colloquially known as an 'infinite loop.'

20  39.      An infinite loop is a sequence of instructions in a computer program that endlessly loops.

21  This infinite loop is due either to the loop having no terminating condition or having one that can

22  never be met.  Infinite loops cause a program to consume all available processor time.

23  40.      As of the release of Mac OS 10.5, PSYSTAR is informed and believes and thereon alleges

24  that APPLE has continued to cause interoperability issues in its xnu kernel on generic Intel

25  hardware including infinite loops.  PSYSTAR is informed and believes and thereon alleges that a

26  sample infinite loop arises during restart/reboot after calling modular restart functions.  PSYSTAR

27  is informed and believes and thereon alleges that most x86 hardware (*i.e.*, non-Apple-Labeled

28  Computer Hardware Systems) fail to reboot with the stock xnu kernel due to this infinite loop.

41.     There is no specific reason as to why this infinite loop is present in the code as the kernel is capable of restating/rebooting on a much broader range of hardware, specifically Mac OS Capable Computer Hardware Systems.  Thus, the restart/reboot infinite loop exists for no functional reason.  This loop stops the execution of the Mac OS on any x86 processor not sold by Apple—that is, an Apple-Labeled Computer Hardware System.

42.     PSYSTAR is informed and believes and thereon alleges that the Mac OS need not go into kernel panic or an infinite loop.  The Mac OS is capable of operating on any number of computer hardware systems that are not Apple-Labeled Computer Hardware Systems (*i.e.*, Mac OS Capable Computer Hardware Systems).  PSYSTAR is informed and believes, and thereon alleges, that the instances of kernel panic and infinite loop as described above are self-induced by APPLE's embedding of code to induce kernel panic and infinite loops to thereby prevent interoperability on computer hardware systems that are not Apple-Labeled Computer Hardware Systems (*i.e.*, Mac OS Capable Computer Hardware Systems).

43.     PSYSTAR is informed and believes, and thereon alleges, that APPLE is engaged in anticompetitive conduct that prevents the proper operation of the Mac OS on any computer hardware system that is not an Apple-Labeled Computer Hardware System—a Mac OS Capable Computer Hardware System—thereby forcing customers of the Mac OS to purchase—and only purchase—an Apple-Labeled Computer Hardware System if they wish to have the Mac OS operate sans kernel panic or an infinite loop.


**APPLE's Misuse of Copyrights via the EULA**

44.     In addition to technically preventing the Mac OS from operating on any Mac OS Capable Computer Hardware System and that is not an Apple-Labeled Computer Hardware System, the EULA for the Mac OS X Leopard and MAC OS X Leopard Server (collectively referenced herein as the aforementioned Mac OS), specifically—and, again, by APPLE's own admission in paragraph 22 of its First Amended Complaint—states:

> "1.  General.  The software (including Boot ROM Code) . . . accompanying this
> License whether preinstalled on Apple-labeled hardware, on disks, in read only

memory, or any other media or in any other form (collectively the 'Apple Software') are licensed, not sold, to you by Apple Inc. ('Apple') for use **only under the terms of this License . . . .**"

2. Permitted License Uses and Restrictions.

A. <u>Single Use</u>. This license allows you to install, use and run (1) copy of the Apple Software on a single **Apple-labeled computer** at a time. **You agree not to install, use, or run the Apple Software on any non-Apple-Labeled computer or enable another to do so.**

(emphasis added).

45.     Thus, as a pre-condition of a license to the Mac OS, APPLE leverages its copyrights in the Mac OS to require customers to agree to install, use, or run the Mac OS on—and only on—Apple-Labeled Computer Hardware Systems.  As such, a customer is prohibited from seeking out and choosing any other computer hardware system that is not an Apple-Labeled Computer Hardware System—including but not limited to a Mac OS Capable Computer Hardware System—on which to install, use, and run the Mac OS.

46.     PSYSTAR is informed and believes, and thereon alleges, that APPLE misuses its copyrights in the Mac OS to force purchases of Apple-Labeled Computer Hardware Systems for use in conjunction with the Mac OS.  APPLE, therefore, has attempted to (and continues to) leverage the rights granted under any valid copyright to areas outside the exclusive rights granted by the Copyright Act (*i.e.*, forcing purchases of Apple-Labeled Computer Hardware Systems).  APPLE has thus engaged in certain anticompetitive behavior and/or other actions that are in violation of the public policy underlying the federal copyright laws including, but not limited to, a failure to abide by the fair use and first sale doctrines.

47.     APPLE has leveraged and thereby misused its copyrights through the use of its EULA and the requirement that the Mac OS be used exclusively on Apple-Labeled Computer Hardware Systems notwithstanding the lack of any copyright interest in that hardware.  By enforcing this provision in its EULA, APPLE is attempting to obtain, maintain, and/or enjoy rights not granted by the Copyright Act including, but not limited to, destroying competition in the Mac OS Capable Computer Hardware Systems market, which is wholly unrelated to any valid copyright.

48.     APPLE has further engaged in copyright misuse by utilizing any valid copyright in the Mac OS to maintain exclusive control of the Apple-Labeled Computer Hardware System market. By enforcing its EULA as it pertains to any valid copyright, APPLE is attempting to obtain, maintain, and/or enjoy rights not granted by the Copyright Act including, but limited to, maintaining its control of the Apple-Labeled Computer Hardware Systems market to the exclusion of Mac OS Capable Computer Hardware Systems, which is wholly unrelated to any valid copyright.

### APPLE's Misuse of Copyrights via the DMCA

49.     APPLE purports to use "technological protection measures" to "control access to Apple's copyrighted works." APPLE has accused PSYSTAR of having engaged in the manufacture, importation, offering to the public, provisioning, or trafficking of an as yet unidentified "Circumvention Device" primarily designed or produced for the purpose of circumventing APPLE's technological protection measures and/or allowing third parties to access APPLE copyrights without authorization. APPLE makes these assertions in the context of 17 U.S.C. § 1201 *et seq.* (the DMCA).

50.     PSYSTAR is informed and believes and thereon alleges that APPLE is leveraging rights granted under any valid copyright to areas outside the exclusive rights granted by the Copyright Act (*i.e.*, forcing purchases of Apple-Labeled Computer Hardware Systems). APPLE has thus engaged in certain anticompetitive behavior and/or other actions that are in violation of the public policy underlying the federal copyright laws including, but not limited to, a failure to abide by the fair use and first sale doctrines.

51.     APPLE accomplishes this leveraging through the assertion of claims under the DMCA. Through the use of the DMCA, APPLE attempts to leverage its copyright-granted limited monopoly in the Mac OS into a broad monopoly in the independent manufacture of Mac OS Capable Computer Hardware Systems by forcing purchases of Apple-Labeled Computer Hardware Systems. Specifically, APPLE alleges that any party utilizing the Mac OS on any computer system that is not an Apple-Labeled Computer Hardware System has engaged in a violation of the DMCA. By attempting to apply the DMCA in this manner, APPLE is attempting to obtain, maintain, and/or

1  enjoy rights not granted by the Copyright Act including, but not limited to, destroying competition

2  in the Mac OS Capable Computer Hardware Systems market, which is wholly unrelated to any

3  valid copyright.

4  52.      PSYSTAR is further informed and believes and thereon alleges that APPLE does not

5  actually employ a technological copyright protection measure that controls access to the Mac OS.

6  PSYSTAR is also informed and believes and thereon alleges that any purported technological

7  copyright protection measure does not necessarily control access to a copyrighted work.

8  PSYSTAR further alleges that any PSYSTAR product or technology has a commercially significant

9  purpose or use other than to circumvent a technological measure that effectively controls access to

10  a copyrighted work.

11  53.      PSYSTAR is informed and believes and thereon alleges that APPLE is aware of one or

12  more of the foregoing allegations set forth in paragraph 55.  PSYSTAR alleges that notwithstanding

13  such knowledge, APPLE brought the foregoing DMCA claim in an attempt to chill innovation

14  whereby third-parties such as PSYSTAR would not engage in legal and legitimate development of

15  products that compete with Apple-Labeled Computer Hardware Systems.  PSYSTAR is informed

16  and believes and thereon alleges that APPLE made the foregoing DMCA claims solely to prevent

17  and/or stymie the continued development of a competitive threat to Apple-Labeled Computer

18  Hardware Systems—that is, Mac OS Capable Computer Hardware Systems.

19

20  **Apple Benefits from Misuse of its Copyrights**

21  54.      On information and belief, PSYSTAR alleges that as a result of the aforementioned

22  conduct, competition in the Mac OS Capable Computer Hardware System market with respect to

23  the contractually tied Mac OS and Apple-Labeled Computer Hardware Systems is, notwithstanding

24  PSYSTAR, essentially non-existent.  PSYSTAR is informed and believes, and thereon alleges, that

25  APPLE has eliminated all but a few competitors (*e.g.*, PSYSTAR) and continues to ensure that no

26  competition arises in the Mac OS Capable Computer Hardware System market with respect to the

27  Mac OS and Apple-Labeled Computer Hardware Systems.  APPLE ensures this lack of competition

28  vis-à-vis illicit contractual and licensing practices and the misuse of its intellectual property,

1  including its copyrights and spurious litigation under the DMCA, both of which include attempts to

2  obtain, maintain, and/or enjoy rights not granted by the Copyright Act including, extension and/or

3  maintenance of monopoly power in certain of the defined markets.

4  55.     PSYSTAR is informed and believes, and thereon alleges, that with competition all but

5  eliminated in the Mac OS Capable Computer Hardware System market as it pertains to the Mac OS

6  and Apple-Labeled Computer Hardware Systems, APPLE is free to control and charge customers

7  supra-competitive prices.  For example, APPLE CEO Steve Jobs announced in an October 2008

8  investor's conference call that "[w]e don't know how to make a $500 computer that's not a piece of

9  junk, and our DNA will not let us ship that."

10  56.     PSYSTAR is informed and believes, and thereon alleges, that APPLE's conduct with

11  respect to the Mac OS requires its end users, therefore, to deal exclusively with APPLE through the

12  purchase and use of only Apple-Labeled Computer Hardware Systems.

13  57.     Through APPLE's requirement that end users exclusively utilize Apple-Labeled Computer

14  Hardware Systems to the exclusion of all other Mac OS Capable Computer Hardware Systems in

15  the marketplace, PSYSTAR is informed and believes, and thereon alleges, that APPLE has, at the

16  least, substantially lessened competition in the Mac OS Capable Computer Hardware Systems

17  marketplace if not eliminated it in its entirety.

18  58.     PSYSTAR is informed and believes, and thereon alleges, that APPLE's pattern of conduct

19  makes it clear that unless restrained, APPLE will continue to misuse the EULA for the Mac OS and

20  various intellectual properties including copyrights related to the Mac OS and spurious litigation

21  under the DMCA to artificially exclude competition from Mac OS Computer Hardware System

22  manufacturers thereby depriving customers of a free choice between Mac OS Capable Computer

23  Hardware Systems that would otherwise be capable of running the Mac OS.

24  59.     On information and belief, PSYSTAR alleges that APPLE would enjoy significant

25  advantages with respect to maintaining its exclusivity in the contractually tied Mac OS Apple-

26  Labeled Computer Hardware Systems markets.  On information and belief, PSYSTAR alleges that

27  APPLE would further enjoy a benefit by preventing competition from the Mac OS Capable

28  Computer Hardware Systems market by contractually tying the Mac OS to Apple-Labeled

Computer Hardware Systems and otherwise misusing its intellectual property including copyrights with respect to the same. On information and belief, PSYSTAR alleges that APPLE would further enjoy a benefit by technically and/or contractually excluding other manufacturers from manufacturing Mac OS Capable Computer Hardware Systems market rather than having to compete on the merits with Apple-Labeled Computer Hardware Systems. APPLE would enjoy a similar benefit through the spurious threat of litigation under the DMCA.

60.     PSYSTAR is informed and believes, and thereon alleges, that the anticompetitive technological and contractual conduct of APPLE in conjunction with the misuse of its intellectual properties reduce the incentives and abilities of Mac OS Capable Computer Hardware System manufacturers that would otherwise compete with Apple-Labeled Computer Hardware Systems on the merits from innovating and differentiating their products in ways that would further facilitate competition in the Mac OS Capable Computer Hardware System market.

61.     The present Counterclaim does not seek to inhibit APPLE from competing on the merits by innovation, but does challenge APPLE's concerted attempts to unfairly achieve dominance in other markets, not by innovation and other competition on the merits, but by tie-ins, exclusive dealing contracts, copyright misuse, spurious litigation under the DMCA, and other anticompetitive agreements that deter innovation, exclude competition, and deny customers of their right to choose among competing alternatives

62.     PSYSTAR is informed and believes, and thereon alleges, that APPLE's conduct adversely affects innovation, including by impairing the incentive of APPLE's would-be competitors in the Mac OS Capable Computer Hardware Systems market and potential competitors to undertake research and development, because they know that APPLE can limit and has in the past limited the rewards from any resulting innovation; impairing the ability of APPLE's competitors and potential competitors to obtain financing for research and development; inhibiting APPLE's competitors that nevertheless succeed in developing promising innovations from effectively marketing their improved products to customers of the Mac OS; reducing the incentive and ability of Computer Hardware Systems manufacturers to innovate and differentiate their products in ways that would

1  appeal to customers; and reducing competition and the spur to innovation by APPLE and others

2  that only competition can provide.

3  63.    PSYSTAR is informed and believes, and thereon alleges, that the purpose and effect of

4  APPLE's conduct with respect to the Mac OS and Mac OS Capable Computer Hardware Systems

5  that are not Apple-Labeled Computer Hardware Systems have been and, if not restrained, will be to

6  preclude competition on the merits between Apple-Labeled Computer Hardware Systems and other

7  Mac OS Capable Computer Hardware System manufacturers and to maintain APPLE's Mac OS

8  exclusivity in the Apple-Labeled Computer Hardware System market.  PSYSTAR, at the very least,

9  has been harmed through such anticompetitive conduct.

## Claims for Relief

### First Claim for Relief

### (Declaration of Unenforceability for Copyright Misuse (EULA))

64.     PSYSTAR hereby incorporates by reference all of the allegations of paragraphs 1-66 of this First Amended Counterclaim as if fully set forth herein.

65.     APPLE possesses one or more copyrights related to the Mac OS.

66.     APPLE licenses the Mac OS and any copyrights corresponding to the Mac OS through APPLE's EULA.

67.     As a part of APPLE's EULA, APPLE requires the end-user to "agree not to install, use, or run the Apple Software on any non-Apple-Labeled Computer."

68.     Apple-Labeled Computer Hardware Systems are not covered by any copyright corresponding to the Mac OS.

69.     APPLE has leveraged and continues to leverage the limited monopoly granted by the Copyright Act through the copyrights corresponding to the Mac OS to areas outside the copyright monopoly or otherwise granted by the Copyright Act including the requirement that end-users only install the Mac OS on Apple-Labeled Computer Hardware Systems.

70.     APPLE's use of the EULA in conjunction with its copyrights in this manner is anticompetitive.

71.     APPLE's use of the EULA in conjunction with its copyrights in this manner violates the underlying public policy of the federal copyright laws.

72.     APPLE's use of the EULA in conjunction with its copyrights to expand its monopoly to areas outside the copyright grant in a manner that is anticompetitive and contrary to public policy constitutes a misuse of APPLE's copyrights.

73.     PSYSTAR has been directly harmed by APPLE's use of the EULA in conjunction with APPLE's misuse of its copyrights.

74.    PSYSTAR is therefore entitled to a declaratory judgment finding APPLE's copyrights to be unenforceable until that time that APPLE discontinues the use of the EULA in conjunction with the misuse of its copyrights.

**Second Claim for Relief**

**(Declaration of Unenforceability for Copyright Misuse (DMCA))**

75.    PSYSTAR hereby incorporates by reference all of the allegations of paragraphs 1-77 of this First Amended Counterclaim as if fully set forth herein.

76.    APPLE possesses one or more copyrights related to the Mac OS.

77.    APPLE causes the Mac OS to malfunction on non-Apple-Labeled Computer Hardware Systems by embedding code that cause kernel panic and/or infinite loop.

78.    The code that causes kernel panic and/or infinite loop does not constitute a technological copyright protection measure.

79.    The code that causes kernel panic and/or infinite loop does not effectively control access to a copyrighted work.

80.    PSYSTAR products have a commercially significant purpose or use other than to circumvent a technological measure that effectively controls access to a copyrighted work.

81.    Notwithstanding the foregoing, APPLE has asserted the DMCA against PSYSTAR in an attempt to leverage the limited monopoly granted by the Copyright Act through the copyrights corresponding to the Mac OS to areas outside the copyright monopoly or otherwise granted by the Copyright Act including the installation and/or operation of the Mac OS on Apple-Labeled Computer Hardware Systems.

82.    Apple-Labeled Computer Hardware Systems are not covered by any copyright corresponding to the Mac OS.

83.    APPLE's use of the DMCA in conjunction with its copyrights in this manner is anticompetitive.

84.     APPLE's use of the DMCA in conjunction with its copyrights in this manner violates the underlying public policy of the federal copyright laws.

85.     APPLE's use of the DMCA in conjunction with its copyrights to expand its monopoly to areas outside the copyright grant in a manner that is anticompetitive and contrary to public policy constitutes a misuse of APPLE's copyrights.

86.     PSYSTAR has been directly harmed by APPLE's use of the DMCA in conjunction with APPLE's misuse of its copyrights.

87.     PSYSTAR is therefore entitled to a declaratory judgment finding APPLE's copyrights to be unenforceable until that time that APPLE discontinues the use of the DMCA in conjunction with the misuse of its copyrights.

**Prayer for Relief**

**WHEREFORE, PSYSTAR PRAYS FOR RELIEF AS FOLLOWS:**

1.      Entering judgment for PSYSTAR against APPLE on all counts;

2.      Declare APPLE's actions with respect to its EULA to be a misuse of copyrights thereby making said copyrights unenforceable so long as the misuse of those copyrights with respect to its EULA continues;

3.      Declare APPLE's actions with respect to its claims under the DMCA to be a misuse of copyrights thereby making any copyright purportedly protected through enforcement of the DMCA unenforceable so long as to the misuse of those copyrights continues;

4.      Enter such other preliminary and permanent injunctive relief as is necessary and appropriate to prohibit attempts to enforce otherwise unenforceable copyrights as those copyrights concern APPLE's misuse of the same;

5.      That the Court enter such additional relief as it may find just and proper.


Dated:  February 12, 2009                                    CARR & FERRELL *LLP*



                                                                By:/s/    Colby B. Springer
                                                                ROBERT J. YORIO
                                                                COLBY B. SPRINGER
                                                                CHRISTOPHER P. GREWE

                                                                Attorneys for Defendant/Counterclaimant
                                                                PSYSTAR CORPORATION

# DEMAND FOR JURY TRIAL

Defendant and Counterclaimant PSYSTAR hereby demands a jury trial of all issues in the above-captioned action that are triable to a jury.


Dated:  February 12, 2009                          CARR & FERRELL *LLP*


                                          By:/s/    Colby B. Springer
                                          ROBERT J. YORIO
                                          COLBY B. SPRINGER
                                          CHRISTOPHER P. GREWE

                                          Attorneys for Defendant/Counterclaimant
                                          PSYSTAR CORPORATION

Psystar Corporation's First Amended Counterclaim
(Case No. CV-08-03251-WHA)