```
Pages 1 - 17

               UNITED STATES DISTRICT COURT

             NORTHERN DISTRICT OF CALIFORNIA

          BEFORE THE HONORABLE WILLIAM H. ALSUP

APPLE INC., a California        )
corporation,                    )
                                )
          Plaintiff,            )
                                )
  vs.                           ) NO. C 08-03251-WHA
                                )
PSYSTAR CORPORATION, a Florida  )
corporation, and DOES 1-10,     )
inclusive,                      )
                                ) San Francisco, California
          Defendants.           ) Monday
                                ) May 5, 2009
_____) 11:02 a.m.


                  TRANSCRIPT OF PROCEEDINGS
```

**APPEARANCES**:

**For Plaintiff**:    Townsend and Townsend and Crew, LLP
                      Two Embarcadero Center - 8th Floor
                      San Francisco, California  94111-3834
                      (415) 576-0200
                      (415) 576-0300 (fax)
                **BY: MEGAN M. CHUNG**


**For Defendant**:    Carr & Ferrell, LLP
                      2200 Geng Road
                      Palo Alto, CA  94303
                      (650) 812-3496
                      (650) 812-3444 (fax)
                **BY: COLBY B. SPRINGER**



**Reported By:    Lydia Zinn, CSR #9223, RPR
                  Official Reporter - U.S. District Court**

1              **THE COURT:**  Have a seat, please.

2              **THE CLERK:**  Calling Civil Action C. 08-3251, Apple
3    versus Pystar.

4              Counsel, can you please state your appearances?

5              **MS. CHUNG:**  Your Honor, my name is Megan Chung, for
6    Townsend, Townsend, and Crew, representing plaintiff, Apple,
7    Inc.

8              **THE COURT:**  Welcome.

9              **MR. SPRINGER:**  Colby Springer, of Carr & Ferrell,
10   L.L.P., for Psystar Corporation.

11             **THE COURT:**  For the record, we're here on a discovery
12   dispute.  And it's now 11:00 o'clock this morning.  Earlier the
13   two sides met in the jury room.  So whose motion is this?
14   Ms. Chung, this is your motion?

15             **MS. CHUNG:**  Yes.  This is Apple's motion.

16             **THE COURT:**  Have any agreements been reached.

17             **MS. CHUNG:**  I am happy to report that we have been
18   able to reach agreement on most of the issues.

19             **THE COURT:**  Why don't you come up here, so the court
20   reporter can hear you?

21             All right.  Well, then, let's go through the
22   agreements then one at a time, and make sure that Mr. Springer
23   agrees that you have reached an agreement.  Okay?  Go ahead.

24             **MS. CHUNG:**  So we have been able to reach an
25   agreement that Mr. Springer will check and get confirmation

1  that they have produced everything regarding sales and revenue
2  information from April to September of 2008.
3          And we have been able to also reach an agreement that
4  they will request the bank's four statements from April to
5  September of 2008.
6          We have been able to reach an agreement that they
7  will check to determine whether they have tabulations of vendor
8  invoices from Ms. Perez, and whether they have produced that;
9  and if not, they will produce that.
10         **THE COURT:**  All right.  Let me stop you there.
11         So far do you agree, Mr. Springer?
12         **MR. SPRINGER:**  That is correct.
13         **THE COURT:**  All right.  Continue.
14         **MS. CHUNG:**  We have also an agreement that by the end
15  of the day, Pystar will produce or reproduce Bates-numbered
16  documents 1383 through 2000, which Apple had never received.
17         **THE COURT:**  Correct?
18         **MR. SPRINGER:**  That's correct.
19         **THE COURT:**  All right.
20         **MS. CHUNG:**  We have also agreed that Mr. Springer
21  will check on the status of the aggregated financial statement
22  information that they are creating, and also check on the
23  underlying documents to make sure that they have been produced
24  in this case.  And he'll let me know when the aggregated
25  information will come to us.

1           **THE COURT:**  True?

2           **MR. SPRINGER:**  That is correct.

3           **THE COURT:**  All right.

4           **MS. CHUNG:**  He will check on the underlying documents
5   for the balance statements and profit and loss statements that
6   were attached as Exhibit B to the motion, and whether those
7   underlying documents were produced; and if not, produce them.

8           **MR. SPRINGER:**  And that is correct.

9           **THE COURT:**  All right.

10          **MS. CHUNG:**  He confirmed that they -- Pystar -- have
11  produced all the payroll information; that there is no
12  information or documents on lease payments; that they have
13  produced all of the vendor invoices that they have to date.

14          **MR. SPRINGER:**  And that is correct.

15          **MS. CHUNG:**  And then the two other issues are -- we
16  have discovered during the meet-and-confer session --

17          **THE COURT:**  These are issues that you agreed on, or
18  things that you want me to decide?

19          **MS. CHUNG:**  No.  These two issues are still
20  outstanding.

21          And we have agreed, in the sense that Mr. Springer
22  will check on the attachments to the e-mails which have not
23  been produced.

24          And now I understand that some of the e-mails
25  attachments were corrupted, as well as some of the attachments.

1   In the conversion from Psystar to its counsel, the export did
2   not function or did not work correctly.
3           **MR. SPRINGER:**  That's generally correct, your Honor.
4           The document attachments to e-mails that -- Psystar
5   has produced a number of e-mails.  A number of those e-mails
6   that have been produced reference the existence of an
7   attachment.  In a number of instances, those attachments have
8   not been produced.  It is a result of -- not because Psystar is
9   withholding the attachments for any reason, but because the
10  attachments have been corrupted.  And it appears that that
11  corruption of the attachment has something to do with the
12  e-mail system that they use as a whole.
13          So we have identified the make and model of the
14  e-mail system, as it were.  And we're going to try to work to
15  do something.  Either the file itself -- the original file is
16  still present with Psystar, we believe.  And we're going to try
17  to find some way that we can get Apple to have access to those
18  original attachments, those original documents somehow, because
19  there's a problem moving the file from the electronic form into
20  the form that is actually produced to them.  The corruption
21  occurs somewhere between there.
22          **THE COURT:**  But if you went to Psystar now and went
23  on their e-mail system and sat in one of the employees' desks
24  and called up that e-mail and opened the attachment, would it
25  be gobbledygook, or would it be a real -- you know, would it

1   read properly?
2            **MR. SPRINGER:**  I don't want to say for certain.  My
3   understanding is that if they were able to open -- if someone
4   was sitting in front of a terminal and clicked on a file, or
5   whatever the case might be, some indication of -- that there's
6   an attachment -- my understanding is that they would be able to
7   open the attachment.
8            The issue --
9            **THE COURT:**  Why don't you just open them up and print
10  them out in hard copy?
11           **MR. SPRINGER:**  Because we've been producing documents
12  in electronic copy.
13           **THE COURT:**  You can either do this.  Produce them in
14  hard copy or electronically.  You've got to do it one way are
15  the other.
16           **MR. SPRINGER:**  Absolutely.
17           **THE COURT:**  When are you going to do this?
18           **MR. SPRINGER:**  It's not an issue of are we not going
19  to do it.  It's an issue of:  what's the best way to do it?
20           **THE COURT:**  And also when?
21           **MR. SPRINGER:**  If Apple would like us to go back and
22  manually print out e-mails, to the extent that that's possible,
23  if that's the solution they want us to do, that's the solution
24  we'll take.  If they'd rather have an electronic format --
25           **THE COURT:**  The discovery cutoff in this case is

1  June 26th.

2      **MS. CHUNG:** Yes.

3      **THE COURT:** If it turns out this is a delay, I'm
4  going to let them take depositions the rest of the year --

5      **MR. SPRINGER:** Understood.

6      **THE COURT:** -- because it sounds like a stall to me,
7  Mr. Springer.

8      **MR. SPRINGER:** It's absolutely not, your Honor.

9      **THE COURT:** I'm going to take it as a good-faith
10 sign, but you -- that's it's not a stall. I've never herd of
11 such a thing; of documents being corrupted. This is a new one
12 on me. So you'd better fix it, and fix it promptly.

13     And, Ms. Chung, if it turns out you need more time to
14 take depositions, your side's going to get an extension if it
15 relates to these documents.

16     **MS. CHUNG:** I understand.

17     **THE COURT:** Now, if it's not relating to these
18 documents, you don't get an extension; but this doesn't sound
19 right to me. All right.

20     **MS. CHUNG:** Well, regarding this issue we are also
21 still talking about how we could get the attachments so that
22 they come with the e-mail, because right now, they produce --
23 some are separate.

24     **THE COURT:** If they have to write -- print it out,
25 they're going to put on top of it, "This went with e-mail dated

1  June 28th," or whatever.
2          Look.  In the old-fashioned way, we used to do this
3  all the time:  hard-copy documents.  You could live with that
4  system, if you need to.
5          **MS. CHUNG:**  Right.
6          **THE COURT:**  What's your next problem?
7          **MS. CHUNG:**  That would be great, your Honor.
8          And then the last is -- well, the other issue is:  we
9  need dates for reopening the deposition for topic two on the
10 financial information.  And I asked for dates.  And he will get
11 back to me.
12         **THE COURT:**  All right.  I'm going to just give you a
13 date right now.
14         **MS. CHUNG:**  Okay, but we would like a date
15 sufficiently far enough so that we could review all of these
16 documents, and especially the attachments.
17         **THE COURT:**  When are you the documents going to be
18 produced?
19         **MR. SPRINGER:**  Produced to them on Monday.  And then
20 there's also a question of whether or not they need to review
21 additional documents as well.
22         **THE COURT:**  Well, when are you going to finish up all
23 the production of these open items that you just mentioned to
24 me in the last ten minutes?
25         **MR. SPRINGER:**  So --

```
 1            MS. CHUNG:  Well, by the end of the day, I'm supposed
 2   to get confirmation.
 3            THE COURT:  Yeah, but that was just -- a lot of those
 4   items.
 5            MS. CHUNG:  Right.
 6            THE COURT:  But you're not going to get -- you
 7   weren't intending to say that Mr. Springer's going to produce
 8   all of these documents by the end of the day?
 9            MS. CHUNG:  No, no.  And --
10            THE COURT:  So when is the day he's going to produce
11   them?
12            MR. SPRINGER:  By the end of the day, Bates range
13   1383 through 2000.
14            I am going to confirm with Psystar Corporation today
15   with respect to the existence of -- this kind of reiterates
16   some of the things that Ms. Chung already mentioned.  I'm going
17   to check and confirm by the end of the day with respect to --
18            THE COURT:  I heard all of those things, but a lot of
19   them, where you were going to be producing more materials if
20   they existed --
21            MR. SPRINGER:  So the documents --
22            THE COURT:  -- when is that going to occur?
23            MR. SPRINGER:  If there are additional documents that
24   need to be produced, I believe those documents are -- the
25   e-mail-system issue aside -- are bank statements which they are
```

1   going to get back on line and see if they can go further back
2   for these bank statements.
3           THE COURT:  All right.  When is that going to happen?
4   When are we going to get all of that material?
5           MR. SPRINGER:  I will tell them.  I propose they go
6   back in time if they're available on line.  If not, have sent a
7   letter to those banks for those accounts requesting those
8   documents to be produced in hard copy by the end of this week.
9           THE COURT:  So you'll get the documents.  Ms. Chung
10  will get the material by the end of -- the material by the end
11  of the week if it exists, or they can get it from the bank?
12          MR. SPRINGER:  The issue with some of these
13  on-line -- statements may no longer exist on line because
14  they're too far back in time.  I'm going to have them by the
15  end of the day tomorrow.
16          THE COURT:  Look.  Here's what I'm going to do.
17  Today's May 5.
18          MR. SPRINGER:  Correct.
19          THE COURT:  I'm going to give you until Monday, May
20  18th, at noon to absolutely finish all of the completion
21  that -- that you've agreed to undertake.
22          In other words, if they've got to do several steps
23  and they're contingent whether they exist or they don't exist,
24  you've got to find all of that out and actually make the
25  productions by the 18th of May.

1        **MR. SPRINGER:** understood.

2        **THE COURT:** Is that good enough time?

3        **MS. CHUNG:** Yes, your Honor.

4        **THE COURT:** Well, Mr. Springer, is that enough time
5   for you?

6        **MR. SPRINGER:** It is not an issue with respect to
7   Psystar making that inquiry, and then immediately sending
8   notice to the bank.

9        I would ask for some, presuming that we -- that
10  Psystar takes care of business today and tomorrow with respect
11  to, A, can they download, and if not, immediately informing the
12  bank to send those documents, at that point, the issue is where
13  the bank stands.  So --

14       **THE COURT:** Well, but the customer can go, you know,
15  and complain.  Maybe it's not enough to just ask once.  They've
16  got to ask, you know, every other day, "Where is it?  Where is
17  it," until they finally get it to you.

18       **MR. SPRINGER:** If that is what the Court --

19       **THE COURT:** Every other day you've got to bug the
20  bank; otherwise, it goes at the bottom of the stack.

21       **MR. SPRINGER:** We'll harass them every other day.

22       **THE COURT:** May 18th at nine.  I'm going to stick
23  with that.

24       June 3rd, Wednesday, is the date of the deposition at
25  9:00 a.m., unless you two agree in writing to a different day

1   of the week of June 1.  So you've got five daze to choose from,
2   but if you can't reach an agreement, June 3rd, Wednesday,
3   9:00 a.m., is the day.
4         Where did you take this deposition last time?
5         **MR. SPRINGER:**  San Francisco, your Honor.
6         **THE COURT:**  In whose office?
7         **MS. CHUNG:**  At Townsend's office.
8         **THE COURT:**  It will be at the same place on June 3rd.
9   Does that work?
10        **MR. SPRINGER:**  Correct.
11        **THE COURT:**  Is that okay?  You both agree to that?
12        **MS. CHUNG:**  It will be fine.
13        **THE COURT:**  All right.  That will give you the
14  flexibility to change it, if you both agree in writing.
15  Otherwise, if there's -- please don't do this to me.  Say, "Oh,
16  it's not convenient.  We'll still working on a date."  If
17  June 3rd comes and this person doesn't show up, there will be
18  trouble.  So that is the date, June 3rd, unless you agree in
19  advance, beforehand, in writing to some other date; but it has
20  to be the week of June 1.
21        All right.  So that solves that problem.
22        See how easy it is to solve these problems?
23        **MS. CHUNG:**  Just for clarification, your Honor, for
24  May 18th -- is that the date by which Psystar's to produce all
25  of the attachments in hard copy?

```
 1              THE COURT:  Well, okay.  Yeah.  That's what I was
 2   thinking.
 3              MS. CHUNG:  Okay.
 4              THE COURT:  Let's address that specifically.  Is that
 5   going to be enough time for you, Mr. Springer, to get those
 6   attachments produced, either in hard copy or electronically?
 7   But one way or the other, you've got to have them produced.
 8              MR. SPRINGER:  Today's date is the 5th?
 9              THE COURT:  Identified as to which e-mail they went
10   with.
11              MR. SPRINGER:  That will be fine.  May 18th.
12              THE COURT:  That will give you about a week and a
13   half, two weeks, to review all of those documents.  And then
14   you can finish up your deposition.
15              What else do you want me to solve today?
16              MS. CHUNG:  Apple is seeking its attorneys' fees and
17   expenses for having to bring this motion.  This defers time.
18   We've discovered that there might be these issues with
19   attachments.  We've been asking for these attachments.  We've
20   about been asking for all these files since December, if not
21   February of this year, your Honor.  So the last issue before
22   you is our request for sanctions.
23              THE COURT:  Well, it's not really sanctions.
24              It's -- under the rule, it's -- what does it say?  No
25   longer -- you don't have to find bad faith anymore?
```

```
 1            MS. CHUNG:  No.
 2            THE COURT:  What rule am I looking at here?
 3            MS. CHUNG:  I believe it's 37(c).
 4            THE COURT:  37(c).
 5       Mr. Springer, what do you say?  I'm not finding the
 6  part that I used to remember, but --
 7            MR. SPRINGER:  Are you asking me what my stance is?
 8            THE COURT:  What do you say about the attorneys'-fees
 9  part?
10            MR. SPRINGER:  I would disagree, in the sense that
11  Psystar is a small company.  They have limited resources.
12  They've made every effort to produce documents.  This is the
13  first and only real discovery dispute that we've had.  We've
14  been able to come to anamicable conclusion on it.
15  Unfortunately, it was unnecessary to do it at the Court's
16  request.
17       We did inform Apple during the deposition of
18  Roberto Pedraza that additional documents and deposition dates
19  would be forthcoming.  Those were produced.
20       Obviously, there still are issues outstanding, but
21  there's a good-faith effort between the parties.  We may
22  resolve it.
23       There are are no efforts here to hide the ball of any
24  sort with respect to the e-mail issue.  We're working with
25  Apple this morning.  As of this morning, we're working with
```

1  Apple, you know, to come to a remedy that allows them to get
2  those attachments.
3      So there clearly is a good-faith effort on behalf of
4  Psystar and their limited resources and the abilities they have
5  to produce documents and, at the same time, carry on their
6  business.
7      **MS. CHUNG:** If I may respond, your Honor, just two
8  points.
9      We have been -- Mr. Springer and I have been meeting
10 and conferring about the financial documents, I can attest,
11 since February.  This is the first time today that I heard that
12 documents were lost during a move, and that the e-mail
13 attachments could not be produced due to the corruption.
14     Now, if he had said that to me way back when when we
15 were talking about these documents, we could have worked that
16 out before; but he never raised that before.
17     So to bring that up now as evidence of good faith or
18 diligence, I believe, is not accurate.  And it mischaracterizes
19 the record.  And so it is due to Psystar's lack of diligence
20 that we're before you.
21     **THE COURT:** All right.  Here's the answer.
22     If you completely comply with this May 18th date and
23 the deposition, there will be no attorneys' fees.
24     **MR. SPRINGER:** Fair enough.
25     **THE COURT:** But if you don't do that, I think

```
 1  Ms. Chung is probably entitled to them; but to give you an
 2  incentive to bring this to closure and to solve these problems,
 3  I'm going to say no.  If you get it done and you've done it all
 4  right and meet all these deadlines and there won't be things
 5  like, "Oh, the bank won't respond.  Oh, the corruption.  The
 6  corruption won't respond" -- no, no.
 7          In other words, no more excuses.  Just get it done.
 8  Then, no attorneys' fees.
 9          MR. SPRINGER:  Thank you, your Honor.
10          THE COURT:  All right?  Are we done now?
11          MS. CHUNG:  Yes.  Thank you, your Honor.
12          THE COURT:  Okay.  Thank you for coming in and for
13  working hard to solve the problems you did solve this morning.
14  See you soon, I guess.
15          This is on the record.
16          No.  You two need to meet and confer and do a form of
17  order that will capture what the Court ruled today.  Then
18  submit that as an agreed-upon form of order.  I should have
19  said that earlier.  I'm sorry.  In other words, you write down
20  what it is the Court ruled.
21          MR. SPRINGER:  Okay.
22          THE COURT:  And then we will go through it.  My law
23  clerk will go through it to make sure that it tracks what we
24  did today.  So usually, the lawyers can at least agree on what
25  the court ruled.  Okay?
```

```
 1              MS. CHUNG:  Okay.
 2              MR. SPRINGER:  Okay.
 3              THE COURT:  Thank you.  Please do that.  Try to
 4    submit that by Friday at noon.
 5              (At 11:20 a.m. the proceedings were adjourned.)
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

**CERTIFICATE OF REPORTER**

I, LYDIA ZINN, Official Reporter for the United States Court, Northern District of California, hereby certify that the foregoing proceedings in C.08-3251-WHA, Apple v. Pystar, were reported by me, a certified shorthand reporter, and were thereafter transcribed under my direction into typewriting; that the foregoing is a full, complete and true record of said proceedings as bound by me at the time of filing.

The validity of the reporter's certification of said transcript may be void upon disassembly and/or removal from the court file.

_____

/s/ Lydia Zinn, CSR 9223, RPR

Thursday, May 7, 2009