# townsend.

James G. Gilliland, Jr.
(415) 273-7560
jggilliland@townsend.com

August 19, 2009

**Via Electronic Filing**

Honorable William Alsup
United States District Court
450 Golden Gate Ave., 19th Fl.
San Francisco, CA 94102

Re:   *Apple Inc. v. Psystar Corp.*, Case No. C 08-03251 WHA

Dear Judge Alsup:

      Psystar's request for the continued 30(b)(6) deposition of Philip Schiller is nothing more than an effort to harass one of Apple's senior executives and prematurely seek expert testimony. Psystar's letter brief is misleading, leaves out key facts and should be denied. In Topic 3 of its 30(b)(6) deposition notice, Psystar sought testimony regarding injury suffered by Apple as a result of Psystar's illegal acts. Apple agreed to designate a witness to testify on the injury suffered by Apple but objected to Topic 3 to the extent it sought expert testimony regarding damages. (*See* Ex. 1, Excerpts of Apple's Objections to Psystar's Notice of 30(b)(6) Deposition.) Psystar did not confer with Apple about these objections before the deposition.

      On August 13, 2009, during several hours of deposition testimony in his individual capacity, Mr. Schiller testified about Apple's injury, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (*See, e.g.*, Schiller Dep. at 44:5-46:22; 86:8-91:23, attached as Ex. 4.) Thereafter, Mr. Schiller sat for Apple's 30(b)(6) deposition on Topic 3. (*Id.* at 23:20-24:10.) From the outset, Psystar's counsel disregarded the scope of testimony for which Mr. Schiller was designated. (*Id.* at 5:13-6:15.) Despite Apple's objections, Psystar's counsel sought testimony on the quantification of damages – the subject of expert testimony – rather than the injury suffered by Apple. (*See e.g., id.* at 22:20-23:20.)[1] Mr. Schiller was fully prepared to discuss the non-quantifiable, irreparable injury to Apple but Psystar's counsel chose to not ask those questions and terminated the deposition instead. (*Id.* at 26:18-27:23.)

      Moreover, the profit margin information that Psystar seeks is irrelevant. After reviewing the still-incomplete financial records that Psystar finally produced this week, Apple has concluded that the benefit of seeking lost profits as a measure of recovery in this case does not justify the risk of providing its closely guarded margin data to Psystar and its counsel.[2] This choice was made as a result of Psystar's decision to litigate this case in the press. Indeed, despite the prohibition in the Protective Order (Dkt. No. 54-2 at 15), Psystar has stated its intent

---

[1] In fact, Psystar's counsel began asking questions relating to an entirely different 30(b)(6) topic, Topic 8, seeking testimony regarding costs, revenues and profits including profit margins associated with Apple's computers and Mac OS X operating system. (*See* Ex. 1.)

[2] Apple's decision to forego lost profits is based on its desire not to risk disclosure of its closely guarded margin data. To the extent this information is compelled, Apple reserves its right to claim lost profits.

Townsend and Townsend and Crew LLP · Two Embarcadero Center, Eighth Floor, San Francisco, CA 94111-3834 · tel 415.576.0200 · fax 415.576.0300
San Francisco · Palo Alto · Walnut Creek · San Diego · Denver · Seattle · Washington DC · Tokyo · www.townsend.com

# townsend.

August 19, 2009
Page 2

to provide the public with information sought in discovery in this case after the case is completed. (See Ex. 2, http://community.psystar.com: "Below is the list deponents by date, feel free to post your questions as comments or email them directly to press@psystar.com if you feel that the question would be better unleashed via surprise attack. Bear in mind that we might not be able to release the answers to said questions **until the conclusion of this litigation (re: Apple's Super Secret Protective Order)** but we are still allowed to use them amongst our legal counsel and in court." (*emphasis added*)).

Apple attempted to obtain the information necessary to determine the scope of lost profits starting in November of 2008. As the Court is aware, Psystar did not produce that information, requiring Apple to file a motion to compel. In opposing Apple's motion, Psystar's counsel represented that Psystar had "produced all responsive financial documents in its possession" (*see* Dkt. No. 61 at 1). The Court granted Apple's motion on May 8, 2009, and ordered Psystar to produce financial data within 10 days. On May 18, 2009, Psystar produced a limited set of documents and represented that it had complied with the Court's Order. (*See* Ex. 3, May 18, 2009 Grewe letter.) Shortly thereafter, Psystar filed for bankruptcy.

After the bankruptcy stay was lifted, on August 6th and 7th, Apple took the depositions of Psystar employees Maria Guernsey and Jennifer Perez. ███████████████████████ ███████████████████████████████████████████. Despite Psystar's repeated assurances to the Court and to Apple that it had produced all relevant financial documents, this was the first time that Psystar disclosed its use of accounting software.[4] Moreover, Psystar did not produce either financial documents from this database or other outstanding financial information until last Friday, August 15, 2009, and, as of Tuesday of this week, was still producing thousands of pages of additional financial documents.

In light of Apple's decision not to seek lost profits and Psystar's stated intent to disclose Apple's confidential information, Apple now seeks a protective order specifically precluding discovery by Psystar of Apple's non-public profit margins on the sale of individual products or product lines. Indeed, Apple believes that discovery of its non-public financial information should be limited to revenues, R&D and advertising costs related to Mac computers and Mac OS X. One explicit basis for issuance of a protective order is to limit the disclosure of "confidential research, development or commercial information." Fed. R. Civ. P. 26(c)(1)(G); *U.S. v. Columbia Broadcasting System, Inc.*, 666 F.2d 364, 369 (9th Cir. 1982). Apple must show that the information is indeed confidential and that disclosure would harm it. Then the burden shifts to Psystar to prove the information is relevant to the subject matter of the litigation.

---

[3] ███████████████████████████████████████████████████████████████████████████████████ This mischaracterization was repeated at the hearing on May 5, 2009.

[4] Indeed, in its May 18, 2009 letter, Psystar represented that Psystar's June 2008 profit and loss statement was an informal document created by Diana Bustillo in Microsoft Excel. (Ex. 3.) ████ ████████████

# townsend.

August 19, 2009
Page 3

Courts will balance the risk of disclosure of the confidential information and resulting harm against the risk that a protective order will impair the prosecution or defense of the claims. *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1471 (9th Cir. 1992) (noting that "none of the trade secrets were themselves relevant"); *see also Johnson v. Mortham*, 164 F.R.D. 571 (N.D. Fla. 1996) (granting plaintiffs' motion for protective order limiting discovery to matters relevant to the issues not disposed of on summary judgment).

[REDACTED] Profit margin data is not relevant in this case as Apple is not seeking lost profits. Moreover, while Psystar's profit margin is relevant to determining the appropriate level of statutory damages for copyright infringement, Apple's is not. *N.A.S. Import, Corp. v. Chenson Enterprises, Inc.*, 968 F.2d 250, 252 (2d Cir. 1992) ("In determining an award of statutory damages ...a court may consider 'the expenses saved and profits reaped by the defendants in connection with the infringements, the revenues lost by the plaintiffs as a result of the defendant's conduct, and the infringers' state of mind-whether willful, knowing, or merely innocent.'") (quoting *Nimmer on Copyright* § 14.04[B], at 14-41 (1991)); *Fitzgerald Pub. Co. v. Baylor Pub. Co.*, 807 F.2d 1110, 1117 (2d Cir. 1986) ("the expenses saved and the **profits reaped by the infringers** are considered. Other factors – not dependent on particular defendant's culpability – are also examined, including the revenues lost by the plaintiff, the value of the copyright, and the deterrent effect on others besides the defendant. Some factors do focus upon an individual defendant's culpability, for instance, whether the defendant's conduct was innocent or willful, or whether **a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced**. Finally, the potential for discouraging the defendant is factored into the determination of the award.") (internal citations omitted; emphasis added).

Psystar is actively seeking publicity about this case, going so far as to seek questions from the public for depositions of Apple's witnesses and promising to disclose information it learns about Apple after the completion of the lawsuit. While Psystar's counsel has represented that neither he, nor his clients, will violate the Protective Order, Psystar has not been entirely candid with Apple, or this Court, on previous occasions. Since profit margin data is of the utmost importance to Apple, it does not want to risk having this information publicized and is willing to forego lost profits to prevent this. Accordingly, Apple respectfully requests that this Court deny Psystar's motion to compel and grant Apple's request for a Protective Order.

Very truly yours,

/s/

James G. Gilliland, Jr.
Counsel for Apple Inc.

62177823

---

[5] Apple is prepared to submit a further declaration from its Finance Department regarding the extremely sensitive, and closely guarded, nature of this information, as well as the impact on the company of its inadvertent disclosure, if the Court deems it necessary.