**GAUNTLETT & ASSOCIATES**
David A. Gauntlett (SBN 96399)
James A. Lowe (SBN 214383)
Brian S. Edwards (SBN 166258)
18400 Von Karman, Suite 300
Irvine, California 92612
Telephone: (949) 553-1010
Facsimile: (949) 553-2050
info@gauntlettlaw.com
jal@gauntlettlaw.com
bse@gauntlettlaw.com

Attorneys for Defendants
Akanoc Solutions, Inc.,
Managed Solutions Group, Inc.
and Steve Chen

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| LOUIS VUITTON MALLETIER, S.A., | Case No.: C 07-3952 JW (HRL) |
| Plaintiff, | |
| vs. | **SUPPLEMENTAL JURY INSTRUCTION NO. 2** |
| AKANOC SOLUTIONS, INC., et al., | |
| Defendants. | |

## CONTRIBUTORY COPYRIGHT INFRINGEMENT

You have now heard all of the evidence with respect to Louis Vuitton's claim that the defendants contributorily infringed Louis Vuitton's copyrighted works. You must decide if third parties directly infringed Louis Vuitton's copyrighted works and if so, whether Managed Solutions Group, Inc., Akanoc Solutions, Inc. or Steve Chen contributed to that infringement. You should consider each defendant's contributory liability as to each copyrighted work separately.

To establish contributory infringement of Louis Vuitton's copyrighted works by the defendants in this case, Louis Vuitton has the burden of proving (1) its copyrighted work(s) were directly infringed by a specified third party; (2) each defendant was aware of the third party's infringing conduct at the time it was happening; and (3) each defendant either induced or materially contributed to the infringing conduct.

These elements must be proven by a preponderance of the evidence. Preponderance of the evidence means that you are persuaded by the evidence that it is more probably true than not true.

## ELEMENT ONE – DIRECT INFRINGEMENT

To prove a claim of direct copyright infringement, Louis Vuitton must show that it owns the copyrights at issue and that a specified third party (*not* one of the defendants) violated one or more of Louis Vuitton's exclusive rights under the Copyright Act to:

1. Reproduce the copyrighted work;
2. Prepare derivative works based upon the copyrighted work; or
3. Distribute copies of the copyrighted work to the public by sale.

## ELEMENT TWO – KNOWLEDGE OF DIRECT INFRINGEMENT

Louis Vuitton must also prove, by a preponderance of the evidence, that each defendant either knew or should have known that Louis Vuitton's copyrighted work(s) was/were being infringed by a specified third party at the time the infringement was taking place. You may not infer that a defendant had this knowledge simply because the infringing materials were located on one or more of the defendants' computer servers. Generalized knowledge of counterfeiting at

websites on defendants' servers is not enough. To have the requisite knowledge, defendants must know or have reason to know of specific instances of actual infringement at specific websites.

### ELEMENT THREE – MATERIAL CONTRIBUTION TO OR INDUCEMENT OF DIRECT INFRINGEMENT

Louis Vuitton must also prove, by a preponderance of the evidence, that the defendant(s) induced, caused, or materially contributed to the direct infringement of its copyrights. This requires that each defendant actively encourage or induce infringement through specific acts or active steps that show an affirmative intent that the service at issue be used to infringe.

You should consider the liability of each defendant separately as to each of the above elements. If you find that Louis Vuitton has failed to prove any element by a preponderance of the evidence, your verdict should be for that particular defendant.

17 U.S.C. § 106

*Ellison v. Robertson,* 357 F.3d 1072, 1076 (9th Cir. 2004) ("To prove a claim of direct copyright infringement, a plaintiff must show that he owns the copyright and that the defendant himself violated one or more of the plaintiff's exclusive rights under the Copyright Act.")

Contributory copyright infringement requires (1) knowledge of another's infringement and (2) either (a) material contribution to the infringement or (b) inducement of the infringement.

*A & M Records, Inc. v. Napster, Inc.,* 239 F.3d 1004, 1019 (9th Cir.2001) ("[O]ne who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another, may be held liable as a 'contributory' infringer. [citations omitted] Put differently, liability exists if the defendant engages in personal conduct that encourages or assists the infringement. *Id.*

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.,* 545 U.S. 913, 936-937 (2005) ("[T]he inducement rule, too, is a sensible one for copyright. We adopt it here, holding that one who distributes a device with the object of promoting its use to infringe copyright, as shown by clear expression or other affirmative steps taken to foster infringement, is liable for the resulting acts of infringement by third parties.")

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster Ltd.*, 545 U.S. 913, 936 (2005) ("The rule on inducement of infringement as developed in the early cases is no different today. Evidence of "active steps ... taken to encourage direct infringement," such as advertising an infringing use or instructing how to engage in an infringing use, show an affirmative intent that the product be used to infringe, and a showing that infringement was encouraged overcomes the law's reluctance to find liability when a defendant merely sells a commercial product suitable for some lawful use . . . . [Emphasis added; citation and footnote omitted.]")

*Perfect 10, Inc. v. Amazon.com, Inc.,* 508 F.3d 1146, 1170 (9th Cir. 2007), ("Within the general rule that "[o]ne infringes contributorily by intentionally inducing or encouraging direct infringement," *Grokster,* 545 U.S. at 930, 125 S.Ct. 2764, the Court has defined two categories of contributory liability: "Liability under our jurisprudence may be predicated on actively encouraging (or inducing) infringement through specific acts . . . or on distributing a product distributees use to infringe copyrights, if the product is not capable of 'substantial' or 'commercially significant' noninfringing uses." *Id.* at 942, 125 S.Ct. 2764 (Ginsburg, J., concurring) (quoting *Sony,* 464 U.S. at 442, 104 S.Ct. 774); *see also id.* at 936-37, 125 S.Ct. 2764. [Emphasis added.]")

*E-Pass Technologies, Inc. v. 3Com Corp.,* 473 F.3d 1213, 1222-23 (Fed.Cir.2007) (implying that in order to successfully make out an inducement of infringement claim based on direct infringement by a defendant's customers, the plaintiff should be able to point to at least one end user that infringed).

*Tiffany, Inc. v. Ebay, Inc.* 576 F.supp.2d 463, 508, 510, fn. 37 (S.D.N.Y. 2008) ("Under copyright law, generalized knowledge that copyright infringement may take place in an Internet venue is insufficient to impose contributory liability. [citing *A & M Records, Inc. v. Napster, Inc.,* 239 F.3d 1004, 1027 (9th Cir.2001) ("The mere existence of the Napster system, absent actual notice and Napster's demonstrated failure to remove the offending material, is insufficient to impose

contributory liability."); *Hendrickson v. eBay, Inc.,* 165 F.Supp.2d 1082, 1088-90 (C.D. Cal. 2001) (holding that generalized notice of copyright infringements was insufficient to establish knowledge for the purpose of contributory liability)"].

*Tiffany, Inc. v. Ebay, Inc.* 576 F.supp.2d 463, 508 (S.D.N.Y. 2008) ("For the following reasons, the Court concludes that while eBay clearly possessed general knowledge as to counterfeiting on its website, such generalized knowledge is insufficient under the *Inwood* test to impose upon eBay an affirmative duty to remedy the problem.")

*Tiffany, Inc. v. Ebay, Inc.* 576 F.supp.2d 463, 510 (S.D.N.Y. 2008) ("[C]ourts have also rejected a standard that would reach conduct that only might be infringing. Instead, courts have required a much higher showing that a defendant knew or had reason to know of specific instances of actual infringement.")

18 U.S.C. §2511(2)(a)(i) provides that "a provider of wire communication service to the public shall not utilize service observing or random monitoring except for mechanical or service quality control checks."

18 U.S.C. § 2702(a)(1) prohibits disclosure of the content of communications in electronic storage:

> A person or entity providing an electronic communication[1] service to the public shall not knowingly divulge to any person or entity the contents of a communication while in electronic storage by that service.

18 U.S.C. 2511(2)(a)(i) provides:

> …[A] provider of wire communication service to the public shall not utilize service observing or random monitoring except for mechanical or service quality control checks.

Pursuant to 18 U.S.C. § 2510(17), the term "electronic storage" in Section 2702 is defined broadly as follows:

> (A) any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof; and
> (B) any storage of such communication by an electronic communication service for the purposes of backup protection of such communication.[2]

---

[1] An "electronic communication" is defined as: any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce..." 18 U.S.C. § 2510(12).

[2] Either part of the definition of "electronic storage" is sufficient under the SCA. *Quon,* 309 F.Supp.2d at 1207, citing to S.Rep. No. 99-541, at 35; 1986 U.S.C.C.A.N at 3590.

*Quon v. Arch Wireless Operating Co., Inc.*, 309 F.Supp.2d 1204, 1207 (C.D.Cal. 2004) Title II of the ECPA created the Stored Communications Act ("SCA"). ("The ECPA's legislative history indicates that Congress passed the SCA to prohibit a provider of an electronic communications service 'from knowingly divulging the contents of any communication while in electronic storage by that service to any person other than the addressee or intended recipient.'")

*Dyer v. Northwest Airlines Corporations,* 334 F.Supp.2d 1196, 1199 (D.N.D. 2004) ("The ECPA definition of 'electronic communications service' clearly includes Internet service providers such as America Online, as well as telecommunications companies whose cables and phone lines carry internet traffic.")

*Konop v. Hawaiian Airlines, Inc.,* 302 F.3d 868, 879 (9th Cir. (Cal.) 2002) ("The parties agree that the relevant 'electronic communications service' is Konop's Website, and that the website was in 'electronic storage.'")