1  **GAUNTLETT & ASSOCIATES**
   David A. Gauntlett (SBN 96399)
2  James A. Lowe (SBN 214383)
   Brian S. Edwards (SBN 166258)
3  18400 Von Karman, Suite 300
   Irvine, California  92612
4  Telephone:   (949) 553-1010
   Facsimile:    (949) 553-2050
5  info@gauntlettlaw.com
   jal@gauntlettlaw.com
6  bse@gauntlettlaw.com

7  Attorneys for Defendants
   Akanoc Solutions, Inc.,
8  Managed Solutions Group, Inc.
   and Steven Chen
9

10                         **UNITED STATES DISTRICT COURT**

11               **NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION**

12

13  LOUIS VUITTON MALLETIER, S.A.,        )   Case No.:  C 07-3952 JW (HRL)
                                          )
14                 Plaintiff,             )
                                          )   **SUPPLEMENTAL JURY**
15       vs.                              )   **INSTRUCTION NO. 5**
                                          )
16                                        )
                                          )
17  AKANOC SOLUTIONS, INC., et al.,       )
                                          )
18                 Defendants.            )
                                          )
19

                                                      **SUPPLEMENTAL JURY INSTRUCTION NO. 5**
                                                                                  **– C 07-3952 JW**

# DEFENSES TO CONTRIBUTORY COPYRIGHT INFRINGEMENT – DMCA SAFE HARBOR – REQUIREMENTS

Federal law exempts Internet service providers such as MSG and Akanoc from contributory copyright infringement claims that result from the conduct of their customers when they meet certain criteria. To qualify for safe harbor protection regarding infringing material on websites stored on their servers, MSG and Akanoc must prove by a preponderance of the evidence that:

(1) they are providers of online services or network access, or the operator of facilities therefore;

(2) they adopted and reasonably implemented a termination policy for subscribers and account holders who are repeat infringers;

(3) they accommodate and do not interfere with standard technical measures that copyright owners use to protect their works;

(4) any contributory infringement is by reason of the storage at the direction of a user of material that resides on a system or network controlled or operated by or for the service provider;

(5) they lacked actual knowledge of the infringing material or were not aware of facts or circumstances from which infringing activity was apparent on its system or network and/or acted expeditiously to remove or disable access to the material upon obtaining such knowledge or awareness;

(6) they did not receive a financial benefit directly attributable to the infringing activity, if they had the right and ability to control such activity. Any ability of MSG and Akanoc to remove or block access to materials posted on websites or stored on their servers is not sufficient to demonstrate that they receive a direct financial benefit;

(7) they responded expeditiously to remove or disable access to infringing material upon notification from the copyright owner; and

(8) they properly designated an agent to receive such notification.

In determining whether the ISP defendants complied with (1) and (6) above, it is enough if the ISP defendants did what they could reasonably be asked to do to under the circumstances to prevent the use of their services by repeat infringers.

An ISP defendants' failure to comply with (6) above is excused if the plaintiff fails to provide

adequate notice of claimed infringement in writing to the defendants' designated agent that complies with the following:

> 1. A physical or electronic signature of a person authorized to act on its behalf;
>
> 2. Identification of the copyrighted work claimed to have been infringed, or, if multiple copyrighted works at a single online site are covered by a single notification, a representative list of such works at that site;
>
> 3. Identification of the material claimed to be infringing or to be the subject of infringing activity and that is to be removed or access to which is to be disabled, and information reasonably sufficient to permit the service provider to locate the material;
>
> 4. Information reasonably sufficient to permit the applicable service provider (MSG or Akanoc) to contact the complaining party, such as an address, telephone number, and, if available, an electronic mail address at which the complaining party may be contacted;
>
> 5. A statement that the complaining party has a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law; and
>
> 6. A statement that the information in the notification is accurate, and under penalty of perjury, that the complaining party is authorized to act on behalf of the owner of an exclusive right that is allegedly infringed.

Any failure by the defendants to comply with any of the above safe harbor requirements is irrelevant and should not be considered by you in determining the defendants liability for secondary copyright and trademark infringement.

*See* 15 U.S.C. 512(k)(1)(B):

> Definitions.--(1) Service provider
>
> (B) As used in this section, other than subsection (a), the term "service provider" means a provider of online services or network access, or the operator of facilities therefor, and includes an entity described in subparagraph (A).

*Tur v. YouTube, Inc.*, 2007 WL 1893635 *2-3 (C.D.Cal. June 20, 2007) ("To be eligible for any of the four safe harbors at §§ 512(a)-(d), a service provider must first meet the threshold conditions set out in § 512(i) ..."). Accordingly, YouTube must prove that:

> (1) it has adopted and reasonably implemented a termination policy for subscribers and account holders who are repeat infringers, 17 U.S.C. § 521(i)(1)(A)
>
> (2) accommodates and does not interfere with "standard technical measures" that copyright owners use to protect their works, 17 U.S.C. § 512(i)(1)(B)
>
> (3) its infringement is "by reason of the storage at the direction of a user of material that resides on a system or network controlled or operated by or for the service provider," 17 U.S.C. § 512(c)(1);
>
> (4) it lacked actual knowledge of the infringing material or was not aware of facts or circumstances from which infringing activity was apparent on its system or network and/or acted expeditiously to remove or disable access to the material upon obtaining such knowledge or awareness, 17 U.S.C. § 512(c)(1)(A)(i)-(iii);
>
> (5) it did "not receive a financial benefit directly attributable to the infringing activity," if it had "the right and ability to control such activity," 17 U.S.C. § 512(c)(1)(B);
>
> (6) it responded expeditiously to remove or disable access to infringing material upon notification from the copyright owner, 17 U.S.C. § 512(c)(1)(C); and
>
> (7) it has properly designated an agent to receive such notification, 17 U.S.C. § 512(c)(2).

*Tur v. YouTube, Inc.*, 2007 WL 1893635 *3 (C.D.Cal. June 20, 2007) ("With regard to 17 U.S.C. § 512(c)(1)(B), YouTube maintains it does not receive a financial benefit directly attributable to the allegedly infringing activity and that it does not have the right or ability to control said activity. As the statute makes clear, a provider's receipt of a financial benefit is only implicated where the provider also "has the right and ability to control the infringing activity." 17 U.S.C. § 512(c)(1)(B), See *Perfect 10, Inc. v. CCBill LLC.*, 2007 WL 1557475 at *11. As such, if YouTube does not have the right and ability to control the alleged infringing activity, the Court need not engage in the "financial benefit analysis.")

*Tur v. YouTube, Inc.*, 2007 WL 1893635 *3 (C.D.Cal. June 20, 2007)("The 'right and ability to control' infringing activity, as the concept is used in the DMCA, has been held to mean "something more" than just the ability of a service provider to remove or block access to materials posted on its website or stored in its system." *Hendrickson v. Ebay, Inc.,* 165 F.Supp.2d 1082, 1093 (C.D.Cal.2001); see also *Perfect 10, Inc. v. Cybernet Ventures, Inc.,* 213 F.Supp.2d 1146, 1183 (C.D.Cal.2002); see also *Corbis Corp. v. Amazon.com, Inc.,* 351 F.Supp.2d 1090 (W.D.Wash.2004). Rather, the requirement presupposes some antecedent ability to limit or filter copyrighted material. Fonavisa at 263; see also *MGM, Inc. v. Grockster,* 545 U.S. 913, 926.")

*Ellison v. Robertson,* 357 F.3d 1072, 1080 (9th Cir.2004) (Section 512(i)(1)(A) requires service providers to: (1) adopt a policy that provides for the termination of service access for repeat copyright infringers in appropriate circumstances; (2) implement that policy in a reasonable manner; and (3) inform its subscribers of the policy.")

*In re Aimster Copyright Litigation,* 252 F.Supp.2d 634, 659 (N.D.Ill.2002), aff'd, 334 F.3d 643 (7th Cir.2004) (repeat infringer policy communicated when users informed they "may have their access to all services terminated" for repeated copyright violations) (emphasis added); *Perfect 10, Inc. v. CCBill, LLC,* 340 F.Supp.2d 1077, 1088-89 (C.D.Cal.2004) (policy stating user's access may be terminated deemed sufficient communication).

*Perfect 10, Inc. v. CCBill LLC,* 488 F.3d 1102, 1112 (9th Cir. 2007) ("In order to substantially comply with § 512(c)(3)'s requirements, a notification must do more than identify infringing files. The DMCA requires a complainant to declare, under penalty of perjury, that he is authorized to represent the copyright holder, and that he has a good-faith belief that the use is infringing. This requirement is not superfluous. Accusations of alleged infringement have drastic consequences: A user could have content removed, or may have his access terminated entirely. If the content infringes, justice has been done. But if it does not, speech protected under the First Amendment could be removed. We therefore do not require a service provider to start potentially invasive proceedings if the complainant is unwilling to state under penalty of perjury that he is an authorized representative of the copyright owner, and that he has a good-faith belief that the material is unlicensed.")

*Perfect 10, Inc. v. CCBill LLC,* 488 F.3d 1102, 1109 (9th Cir.2007) ("The statute does not define "reasonably implemented." We hold that a service provider "implements" a policy if it has a working notification system, a procedure for dealing with DMCA-compliant notifications, and if it does not actively prevent copyright owners from collecting information needed to issue such notifications. . . An implementation is reasonable if, under "appropriate circumstances," the service provider terminates users who repeatedly or blatantly infringe copyright.")

*Perfect 10, Inc. v. CCBill LLC,* 488 F.3d 1102, 1118 (9th Cir.2007) ("In this case, Perfect 10 provides almost no evidence about the alleged direct financial benefit to CWIE. Perfect 10 only alleges that "CWIE 'hosts' websites for a fee." This allegation is insufficient to show that the infringing activity was "a draw" as required by *Ellison.* 357 F.3d at 1079. Furthermore, the legislative history expressly states that "receiving a one-time set-up fee and flat, periodic payments for service from a person engaging in infringing activities would not constitute receiving a 'financial benefit directly attributable to the infringing activity.' " H.R. Rep., at 54. Perfect 10 has not raised a genuine issue of material fact that CWIE receives a direct financial benefit from infringing activity. Because CWIE does not receive a direct financial benefit, CWIE meets the requirements of § 512(c).")

*Rossi v. Motion Picture Ass'n of America Inc.,* 391 F.3d 1000, 1003 (9th Cir.2004) ("When a copyright owner suspects his copyright is being infringed, he must follow the notice and takedown provisions set forth in § 512(c)(3) of the DMCA, which provide in part:

> (A) To be effective under this subsection, a notification of claimed infringement must be a written communication provided to the designated agent of a service provider that includes substantially the following:
>
> (i) A physical or electronic signature of a person authorized to act on behalf of the owner of an exclusive right that is allegedly infringed.
>
> (ii) Identification of the copyrighted work claimed to have been infringed, or, if multiple copyrighted works at a single online site are covered by a single notification, a representative list of such works at that site.
>
> (iii) Identification of the material that is claimed to be infringing or to be the subject of infringing activity and that is to be removed or access to which is to be disabled, and information reasonably sufficient to permit the service provider to locate the material.
>
> (iv) Information reasonably sufficient to permit the service provider to contact the complaining party, such as an address, telephone number, and, if available, an electronic mail address at which the complaining party may be contacted.
>
> (v) A statement that the complaining party has a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law. 17 U.S.C. § 512(c) (emphasis added)."

*Perfect 10, Inc. v. Amazon.com, Inc.,* 487 F.3d 701, 715, fn. 4 (9th Cir. 2007) ("The failure of a service provider's conduct to qualify for limitation of liability under [the DMCA] shall not bear adversely upon the consideration of a defense by the service provider that the service provider's conduct is not infringing under this title or any other defense.")

*Costar Group, Inc. v. Loopnet, Inc.,* 373 F.3d 544, 552 (4th Cir. 2004) ("CoStar argues that because the DMCA supplanted *Netcom*, Loopnet must rely for its defnse exclusively on the immunity conferred by the DMCA. This argument, however, is belied by the plain language of the DMCA itself: . . . Other defenses not affected: The failure of a service provider's conduct to qualify for limitation of liability under this section shall not bear adversely upon the consideration of a defense by the service provider that the service provider's conduct is not infringing under this title or any other defense. . . Thus the statute specifically provides that despite a failure to meet the safe-harbor conditions in § 512(c) and (i), an ISP is still entitled to all other arguments under the law- whether by way of an affirmative defense or through an argument that conduct simply does not constitute a

prima facie case of infringement under the copyright act."

*In re Aimster Copyright Litigation,* 334 F.3d 643, 655 (9th Cir. 2007) ("The [DMCA] provides a series of safe harbors for Internet service providers and related entities, but none in which Aimster can moor. The Act does not abolish contributory infringement. The common element of its safe harbor is that the service provider must do what it can reasonably be asked to do to prevent the use of its service by "repeat infringers.") [citing 17 U.S.C. § 512(i)(a)(A)]

*Perfect 10, Inc. v. CCBill LLC,* 488 F.3d 1102, 1109 (9th Cir.2007) ("These safe harbors limit liability but 'do not affect the question of ultimate liability under the various doctrines of direct, vicarious, and contributory liability.')