UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| APPLE INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>PSYSTAR CORPORATION,<br>a Florida corporation, and DOES 1-10, inclusive,<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIMS | Case No. CV 08-03251 WHA<br><br>COURT ORDERED SUPPLEMENTAL BRIEFING ON THE RELEVANCE OF TOPIC 3 TESTIMONY, DEFENDANT'S MOTION TO COMPEL AND PLAINTIFF'S CROSS-MOTION FOR A PROTECTIVE ORDER |

[COURT ORDERED SUPPLEMENTAL BRIEFING ON THE RELEVANCE OF TOPIC 3 TESTIMONY, DEFENDANT'S MOTION TO COMPEL AND PLAINTIFF'S CROSS-MOTION FOR A PROTECTIVE ORDER
CASE NO. CV 08-03251 WHA

1

Dockets.Justia.com

TABLE OF CONTENTS

I.   Short History of the 30(b)(6) Deposition At Issue ............................................... 5

II.  Apple's Failure to Appear at the Noticed Deposition Violated Rule 37(d) ......................... 7

III. Apple's Profit Margins Are Relevant to Statutory Damages for Copyright
     Infringement ................................................................................. 9

IV.  Apple's Profit Margins are Relevant to Psystar's Claim for Copyright
     Misuse ...................................................................................... 13

V.   Apple's Profit Margins Are Relevant to Defenses to Claims with Actual
     Damages ..................................................................................... 14

VI.  Apple's Profit Margins Are Relevant to Each of Apple's 10 Requests for
     Permanent Injunctive Relief. ................................................................ 16

VII. Apple's Allegations that Psystar Will Breach the Protective Order Are
     Improper and False .......................................................................... 18

VIII. Conclusion ................................................................................ 18

[COURT ORDERED SUPPLEMENTAL BRIEFING ON THE RELEVANCE OF TOPIC 3 TESTIMONY, DEFENDANT'S
MOTION TO COMPEL AND PLAINTIFF'S CROSS-MOTION FOR A PROTECTIVE ORDER
CASE NO. CV 08-03251 WHA

2

**CASES**

4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 14.04 [E] [1], 14-69 (2003) ... 10
*Alcatel USA, Inc. v. DGI Technologies, Inc.*, 166 F.3d 772 (5th Cir. 1999) ... 12
*Assessment Technologies of WI LLC v. Wiredata, Inc.*, 350 F.3d 640 (7th Cir. 2003) ... 12
*Bly v. Banbury Books, Inc.,* 638 F.Supp. 983, 985-988 (E. D. Pa. 1986) (internal citations omitted) ... 8, 10
*BMW v. Gore*, 517 U.S. 559, 581 (1996) ... 11
*Brooks Bros. v. Brooks Clothing of California, Ltd.*, 60 F.Supp. 442, 459 (S.D.Cal.1945), aff'd, 158 F.2d 798 (9th Cir. 1947), cert. denied, 331 U.S. 824, (1947). ... 14
citing *Louis Vuitton S.A. v. Spencer Handbags Corp.*, 765 F.2d 966, 973 (2d Cir.1985) ... 14
*Constellation NewEnergy, Inc. v. Powerweb, Inc.*, No. 02-2733, 2004 WL 1784373, at 5 (E.D.Pa. Aug.10, 2004) ... 8
*DFW Metro Line Servs. v. Southwestern Bell Tel. Co.*, 901 F.2d 1267, 1269 (5th Cir. 1990) ... 16
*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 392 (2006) ... 15
*F. W. Woolworth Co. v. Contemporary Arts*, 344 U.S. 228, 230-31 (1952) ... 10
*Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340 (1998) ... 11
*GTE Card Servs. Inc. v. AT&T Corp.*, 1997 WL 74712 *3 (N.D. Tex.), aff'd, 124 F.3d 191 (5th Cir. 1997) ... 16
*Gucci America, Inc v. Duty Free Apparel, Ltd.*, 315 F. Supp. 2d 511, 520 (2nd Cir. 2004) ... 10
*International Star Class Yacht Racing Ass'n v. Tommy Hilfiger*, U.S.A., Inc. 80 F.3d 749 (2nd Cir. 1996). ... 14
*Jackson v. Sturkie*, 255 F.Supp. 2d 1096, 1103 (N.D. Ca. 2003) ... 10
*Lasercomb America, Inc. v. Reynolds*, 911 F.2d 970, 973 & n.8 (4th Cir. 1990) ... 12
*Lauratex Textile Corp. v. Allton Knitting Mills Inc.*, 519 F.Supp. 730 (S.D.N.Y. 1981) ... 16
*Maier Brewing Co. v. Fleischmann Distilling Corp.* 390 F.2d 117 (9th Cir. 1968) ... 14
*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F.Supp.2d 1197 (C.D. Cal 2007) ... 15
*Mishawaka Rubber & Woolen Mfg. Co. v. S. S. Kresge*, 316 U.S. 203, 206, (1941) ... 14
*Practice Management Information Corp. v. American Medical Ass'n.*, 133 F.3d 1140 (9th Cir. 1997) ... 12
*Smith v. Sprint Comm. Co. L.P.* 1996 WL 1058204 (N.D. Cal. 1996) ... 16
*State Farm Mut. Auto. Ins. Co. v. New Horizont, Inc.* 250 F.R.D. 203 (E.D.Pa., 2008) ... 8
*Truxes v. Rolan Electric Corp.*, 314 F.Supp. 752, 759 (D.C.P.R., 1970). 93 F.R.D. 62 (1981) ... 7
*United States v. Portland Cement Co.*, 338 F.2d 798, 803 (10 Cir., 1964) ... 7
*Wolfe v. National Lead Co.*, 156 F.Supp. 883, 891 (N.D.Cal.1957), aff'd, 272 F.2d 867, 872 (9th Cir. 1959) ... 14
*z4 Tech. Inc. v. MicroSoft Corp.*, 434 F. Supp. 2d 437, 440-41 (E.D. Tex. 2006) ... 15

**STATUTES**

15 U.S.C. § 1117(a) ... 13
17 U.S.C.A. § 504. ... 11

**TREATISES**

8 Wright and Miller, Federal Practice and Procedure, Section 2291, at 808 ... 7
J. Thomas McCarthy, Trademarks and Unfair Competition § 30:66 (4th ed.1998) ... 14

[COURT ORDERED SUPPLEMENTAL BRIEFING ON THE RELEVANCE OF TOPIC 3 TESTIMONY, DEFENDANT'S MOTION TO COMPEL AND PLAINTIFF'S CROSS-MOTION FOR A PROTECTIVE ORDER
CASE NO. CV 08-03251 WHA

3

**COURT ORDERED SUPPLEMENTAL BRIEFING ON THE RELEVANCE OF TOPIC 3 TESTIMONY, DEFENDANT'S MOTION TO COMPEL AND PLAINTIFF'S CROSS-MOTION FOR A PROTECTIVE ORDER**

After flying to California from Florida with a team of attorneys, Psystar was met with an unresponsive witness for Apple at an agreed to 30(b)(6) deposition on the topic of Apple's damages in this case ("topic 3"). In addition to bearing the significant costs of preparing for, traveling to, and attending the deposition, Psystar remains without access to important evidence. By its constructive failure to appear at the noticed deposition, Apple plainly violated the Federal Rules of Civil Procedure. Now, *after* agreeing to testify on a noticed topic, yet refusing to either prepare for or testify at the actual deposition, Apple presents the court with a motion for a protective order precluding disclosure of the important evidence.

Apple is not entitled to further block Psystar from discovery of this evidence, especially in light of its recent actions. The topic 3 testimony is relevant and necessary to Psystar's case. If Apple prevails on claims of copyright infringement, its loss of profits - an important component of Apple's alleged injury - is relevant to the jury's determination of a just award of damages. This is true even if the award is for statutory damages, which Apple has stated it will elect. Topic 3 testimony will also provide important evidence of Apple's profiting from copyright misuse. And beyond copyright infringement and misuse, there are many other claims in this case from which actual damages may result. Psystar is entitled to evidence of Apple's damages to prepare its defense.

Given the importance of the topic 3 testimony and Apple's efforts to stonewall discovery, Psystar respectfully requests the court to grant its previously filed motion to compel, and further sanction Apple under Rule 37(d) as the court deems appropriate.

[COURT ORDERED SUPPLEMENTAL BRIEFING ON THE RELEVANCE OF TOPIC 3 TESTIMONY, DEFENDANT'S MOTION TO COMPEL AND PLAINTIFF'S CROSS-MOTION FOR A PROTECTIVE ORDER
CASE NO. CV 08-03251 WHA

4



[COURT ORDERED SUPPLEMENTAL BRIEFING ON THE RELEVANCE OF TOPIC 3 TESTIMONY, DEFENDANT'S MOTION TO COMPEL AND PLAINTIFF'S CROSS-MOTION FOR A PROTECTIVE ORDER
CASE NO. CV 08-03251 WHA

5



[COURT ORDERED SUPPLEMENTAL BRIEFING ON THE RELEVANCE OF TOPIC 3 TESTIMONY, DEFENDANT'S MOTION TO COMPEL AND PLAINTIFF'S CROSS-MOTION FOR A PROTECTIVE ORDER
CASE NO. CV 08-03251 WHA

[redacted]

## II. Apple's Failure to Appear at the Noticed Deposition Violated Rule 37(d)

Apple cannot avoid the fact that in its own pleading it agreed to "provide a witness to testify on injury suffered." This statement is not in any manner synonymous or interchangeable with "irreparable injuries" or injunctive relief. Injuries "suffered" refer to actual damage occurring in the

[COURT ORDERED SUPPLEMENTAL BRIEFING ON THE RELEVANCE OF TOPIC 3 TESTIMONY, DEFENDANT'S MOTION TO COMPEL AND PLAINTIFF'S CROSS-MOTION FOR A PROTECTIVE ORDER
CASE NO. CV 08-03251 WHA

7

past. "Irreparable injury" can only, if it is to have any legal relevance, mean the element of injunctive relief that describes harm to be experienced in the future. Apple's feigned ignorance at the deposition of the subject matter does not alter the legal significance of their failure to prepare or testify.

Therefore, Apple's refusal to testify at the deposition without any prior motion for a protective order is a direct and substantial violation of the Federal Rules of Civil Procedure. The court in *Mitsui & Co. v. Puerto Rico Water Res. Auth.* discussed exactly the situation presented by Apple's conduct, and its worth quoting the Court at length for their analysis:

> [Rule 37(d)] provides sanctions for serious disregard of obligations imposed upon a party by the discovery rules even though the party has not violated any court order. Rule 37(d), dealing with failure to appear for taking of a deposition, applies to a person designated under Rule 30(b)(6) to testify on behalf of a corporate party. 8 Wright and Miller, Federal Practice and Procedure, Section 2291, at 808. The failure to act described in Rule 37(d) may not be excused on the ground that the discovery sought is objectionable unless the party failing to act has applied for a protective order as provided by Rule 26(c). The order must be obtained before the date set for the discovery, and failure to move at that time will be held to preclude objection later. 8 Wright and Miller, Federal Practice and Procedure, Section 2035, at 262; *United States v. Portland Cement Co.*, 338 F.2d 798, 803 (10 Cir., 1964); *Truxes v. Rolan Electric Corp.*, 314 F.Supp. 752, 759 (D.C.P.R., 1970). 93 F.R.D. 62 (1981).

Psystar properly noticed Apple about topic 3. The notice was sufficient to inform Apple that Psystar needed testimony regarding the actual injuries to the corporation, including lost profits and sales. At no time prior to the date of the deposition did Apple apply for or obtain a protective order

[COURT ORDERED SUPPLEMENTAL BRIEFING ON THE RELEVANCE OF TOPIC 3 TESTIMONY, DEFENDANT'S MOTION TO COMPEL AND PLAINTIFF'S CROSS-MOTION FOR A PROTECTIVE ORDER
CASE NO. CV 08-03251 WHA

8

to prevent the disclosure of the financial information they now refuse to disclose.

At the deposition, Apple failed to provide the information specifically requested in topic 3. Mr. Schiller was designated by Apple as the 30(b)(6) witness to testify on topic 3. His refusal to prepare and testify about topic 3 amounts to a failure to appear at the noticed deposition. *See State Farm Mut. Auto. Ins. Co. v. New Horizont, Inc*. 250 F.R.D. 203 (E.D.Pa., 2008) ("However, if a Rule 30(b)(6) witness is asked a question concerning a subject that was noticed with particularity, is seeking information that is reasonably available to the corporation, and is not unreasonably obscure, and the witness is unprepared to answer the question, the purpose of the deposition is completely undermined"); *Constellation NewEnergy, Inc. v. Powerweb, Inc.*, No. 02-2733, 2004 WL 1784373, at 5 (E.D.Pa. Aug.10, 2004) ("In reality if a Rule 30(b)(6) witness is unable to give useful information he is no more present for the deposition than would be a deponent who physically appears for the deposition but sleeps through it.").

Under *Mitsui*, Apple has no excuse for its failure to act at the deposition, and has waived its objections to the testimony sought under topic 3. The proper remedy is an order to compel the testimony Apple previously agreed to provide, and such other sanctions as the court finds applicable under Rule 37(d). Without such action by the court, Psystar will be left without crucial, relevant evidence that Apple acknowledges it has in its possession.

## II. Apple's Profit Margins Are Relevant to Statutory Damages for Copyright Infringement

Apple attempts to avoid the consequences of its misconduct with a generalized claim that Apple's profit margins are not relevant to Psystar's copyright infringement defense. Putting aside Apple's forfeiture of such a claim through bad faith and misconduct, the relevancy of profit margins to a calculation of statutory damages is obvious and well supported by case law and legislative history.

[COURT ORDERED SUPPLEMENTAL BRIEFING ON THE RELEVANCE OF TOPIC 3 TESTIMONY, DEFENDANT'S MOTION TO COMPEL AND PLAINTIFF'S CROSS-MOTION FOR A PROTECTIVE ORDER
CASE NO. CV 08-03251 WHA

9

The Eastern District of Pennsylvania addressed an argument remarkably similar to Apples and soundly rejected it. Here is the important excerpt from *Bly v. Banbury Books, Inc.*:

> [i]nitially, I will address the parties' arguments as to the evidentiary basis required for a court to assess statutory damages. In its brief in opposition to plaintiff's motion for summary judgment, defendant argued that damages should not be awarded without testimony or other proof of losses to plaintiff or gains to defendant resulting from defendant's infringement. Plaintiff argued that such proof was not relevant because he had elected statutory damages.
>
> ...
>
> Most importantly, plaintiff's argument overlooks the fact that deterrence is not the sole factor properly considered in assessing statutory damages. At least equally important is compensating plaintiffs who have been injured by a defendant's infringement, particularly when actual damages and profits are difficult to prove. While it is clear that to require a plaintiff to adduce specific proof of actual damages or profits would contravene the purpose of the statutory damages provision, this does not mean that it is irrelevant whether and to what extent a plaintiff has been harmed by a defendant's infringement. To the contrary, numerous courts have held that assessed statutory damages should bear some relation to the actual damages suffered.
>
> ...
>
> Although plaintiff argues strenuously that he is entitled to a maximum award of statutory damages, he cites no case in which a court has exercised the discretion conferred upon it by the Copyrights Act to award maximum statutory damages when the plaintiff has suffered no harm. On the other hand, courts have held that minimum statutory damages should be assessed when a plaintiff has sustained minimal, if any,

[COURT ORDERED SUPPLEMENTAL BRIEFING ON THE RELEVANCE OF TOPIC 3 TESTIMONY, DEFENDANT'S MOTION TO COMPEL AND PLAINTIFF'S CROSS-MOTION FOR A PROTECTIVE ORDER
CASE NO. CV 08-03251 WHA

10

damages. Moreover, the legislative history of the Copyrights Act, while not entirely clear on this point, seems to contemplate that when a plaintiff does not establish that any damage has resulted from an infringement, the minimum amount of $250 will be awarded. *Bly v. Banbury Books, Inc.,* 638 F.Supp. 983, 985-988 (E. D. Pa. 1986) (internal citations omitted).

The *Bly* court recognized that an award of statutory damages necessarily implies recovery of actual damages, thus implicating the relevancy of plaintiffs lost profits in the deliberation to determine the amount of damages. This entwinement of statutory and actual damages is well-recognized. *See Gucci America, Inc v. Duty Free Apparel, Ltd*., 315 F. Supp. 2d 511, 520 (2ndCir. 2004) (*quoting* 4 Melville B. Nimmer& David Nimmer, Nimmer on Copyright § 14.04 [E] [1], 14-69 (2003) ("[t]o the extent possible, statutory damages 'should be woven out of the same bolt of cloth as actual damages.'"). Indeed, the Supreme Court recognized the probative value of evidence of plaintiff's lost profits or actual damages as early as 1952:

> [t]he trial judge excluded or struck most of this testimony on the ground that authority to allow statutory damages rendered proof of actual damage unnecessary. It might have been better practice to have received the evidence, even if it fell short of establishing the measure of liability; for when recovery may be awarded without any proof of injury, it cannot hurt and may aid the exercise of discretion to hear any evidence on the subject that has probative value. *F. W. Woolworth Co. v. Contemporary Arts*, 344 U.S. 228, 230-31 (1952).

Evidence of profits is important not only to assist the trier-of-fact, but also to afford the defendant a basis to appeal an unfair or unconstitutional award of damages. In the Ninth Circuit, courts adhere to the "threefold goals of the Copyright Act's statutory damages" which include "compensating the plaintiff for his losses and/or defendant's gains from infringement, penalizing

[COURT ORDERED SUPPLEMENTAL BRIEFING ON THE RELEVANCE OF TOPIC 3 TESTIMONY, DEFENDANT'S MOTION TO COMPEL AND PLAINTIFF'S CROSS-MOTION FOR A PROTECTIVE ORDER
CASE NO. CV 08-03251 WHA

11

defendant for his misconduct and deterring future willful infringements of copyright." *Jackson v. Sturkie*, 255 F.Supp. 2d 1096, 1103 (N.D. Ca. 2003). In other words, an award of statutory damages consists of compensation + punishment + deterrence. A defendant is entitled to develop evidence about the actual injury to the plaintiff, which is roughly equivalent to the compensation awarded to the plaintiff. Subtracting compensation, an award of statutory damages is pure punishment and deterrence. A comparison of the amount of compensation to the amount assigned to punishment and deterrence is the necessary analysis to determine whether an award of statutory damages is constitutional. *See BMW v. Gore*, 517 U.S. 559, 581 (1996).

In contrast to the support cited above, there is no authority - judiciary or statutory - that explicitly denies the relevance of evidence of plaintiffs injuries to a determination of statutory damages. Nothing within the language of section 504 of the Copyright Act prevents a court from considering such evidence. In fact, the legislative history of the Copyright Act explicitly recognizes the power of courts to consider such evidence:

> [r]ecovery of actual damages and profits under section 504(b) [subsec. (b) of this section] or of statutory damages under section 504(c) [subsec. (c) of this section] is alternative and for the copy-right owner to elect; as under the present law, the plaintiff in an infringement suit is not obliged to submit proof of damages and profits and may choose to rely on the provision for minimum statutory damages. <u>However, there is nothing in section 504 [this section] to prevent a court from taking account of evidence concerning actual damages and profits in making an award of statutory damages within the range set out in subsection (c)</u>. 17 U.S.C.A. § 504.

Consistent with the absence of judicial or statutory denials of relevancy, the Supreme Court held in *Feltner* that a litigant may elect to have a jury determine statutory damages in a copyright infringement case, and that jury may be presented with *all* evidence relevant to the determination of

a just award. *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340 (1998).

### IV. Apple's Profit Margins are Relevant to Psystar's Claim for Copyright Misuse

It is copyright misuse to use a copyright in one product, here, Mac OS X, to gain a monopolistic advantage in an entirely different market, here, the market for personal computers (the physical hardware on which Mac OS X runs). The Ninth Circuit adopted copyright misuse in *Practice Management Information Corp. v. American Medical Ass'n.*, 133 F.3d 1140 (9th Cir. 1997). The proposition that copyright misuse is primarily concerned with anticompetitive conduct is strongly supported by *Practice Management*. In that case, the court's central concern was the competitive advantage an exclusive licensing provision gave the AMA over potential competitors. In fact, all of the leading copyright misuse cases have adopted the view that anticompetitive conduct is a chief concern of copyright misuse doctrine. *See Alcatel USA, Inc. v. DGI Technologies, Inc.*, 166 F.3d 772 (5th Cir. 1999); *Lasercomb America, Inc. v. Reynolds*, 911 F.2d 970, 973 & n.8 (4th Cir. 1990); *Assessment Technologies of WI LLC v. Wiredata, Inc.*, 350 F.3d 640 (7th Cir. 2003).

Apple's profit margins are relevant in this case because a reasonable juror might consider them in deciding whether Apple has used its copyright in Mac OS X to diminish competition in the market for personal computers. In particular, a reasonable juror could look to (1) Apple's relative profit margins on software and hardware, (2) Apple's profit margins by product compared to its competitors' profit margins on comparable products, and (3) the size of Apple's profit margin on hardware both absolutely and relative to the profit margins of Apple's competitors on comparable hardware. If Apple's profit margins on Macintoshes (Mac OS X + hardware) or on hardware alone are unusually large, this suggests that Apple's efforts to limit competition — Apple's attempts to tie Mac OS X to Apple-branded hardware — have in fact reduced competition and therefore do constitute copyright misuse.

[COURT ORDERED SUPPLEMENTAL BRIEFING ON THE RELEVANCE OF TOPIC 3 TESTIMONY, DEFENDANT'S MOTION TO COMPEL AND PLAINTIFF'S CROSS-MOTION FOR A PROTECTIVE ORDER
CASE NO. CV 08-03251 WHA

13

### V. Apple's Profit Margins Are Relevant to Defenses to Claims with Actual Damages

Apple's contention that its financial data relating to profit-margins is no longer relevant to this case — because it no longer seeks actual damages with respect to its Copyright and DMCA claims — is shortsighted because it ignores the relevancy of that evidence to Apple's other pending claims.

Apple has not yet elected to pursue statutory damages for its trademark claims. On August 20, 2009, Counsel for Apple stated that: "For our breach of contract case, we are seeking disgorgement as well as -- or nominal damages. For our copyright infringement and our DMCA claims, we are seeking statutory damages. And for our trademark claims, we are going to prove that there has been harm to Apple's brand and tarnishment, as well." Hearing transcript at p. 27.

The separation of trademark claims from copyright and DMCA claims demonstrates that no election has been made, as of yet, to pursue only statutory damages under the Lanham Act.

Apple's Amended Complaint provides: "Apple is informed and believes and on that basis alleges that Psystar has gained profits by virtue of its infringement of Apple's trademarks. Apple also has sustained damages as a direct and proximate result of Psystar' infringement of Apple's trademarks in an amount to be proven at trial … [b]ecause Psystar's actions have been committed with intent to damage Apple and to confuse and deceive the public, Apple is entitled to treble its actual damages or Defendant's profits, whichever is greater, and to an award of costs and, this being an exceptional case, reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a) and 1117(b). Alternatively, Apple is entitled to the maximum statutory damages allowed under 15 U.S.C. § 1117(c). Apple will make its election at the appropriate time before final judgment. Amended Complaint at ¶¶ 70-73.

Because no election has yet been made, as evidenced by the hearing transcript, Apple's

[COURT ORDERED SUPPLEMENTAL BRIEFING ON THE RELEVANCE OF TOPIC 3 TESTIMONY, DEFENDANT'S MOTION TO COMPEL AND PLAINTIFF'S CROSS-MOTION FOR A PROTECTIVE ORDER
CASE NO. CV 08-03251 WHA] 14

"treble damages" are still in play, and margins are necessary to compare its "actual damages" and "Defendant's profits" to determine "whichever is greater."

Such damages may include compensation for (1) lost sales or revenue; (2) sales at lower prices; (3) harm to market reputation; or (4) expenditures to prevent, correct, or mitigate consumer confusion. *International Star Class Yacht Racing Ass'n v. Tommy Hilfiger*, U.S.A., Inc. 80 F.3d 749 (2nd Cir. 1996).

In an action for Lanham Act violations, "the plaintiff need only prove gross sales and then it is up to the infringer to prove which, if any, of those sales were not attributable to the wrongful act, and deductible costs and expenses to arrive at net profits." J. Thomas McCarthy, Trademarks and Unfair Competition § 30:66 (4th ed.1998). Any doubts about the actual amount of gross sales or profits will be resolved against the infringing party. Id. (citing *Louis Vuitton S.A. v. Spencer Handbags Corp.*, 765 F.2d 966, 973 (2d Cir.1985)).

"[I]f it can be shown that the infringement had no relation to profits made be the defendant, that some purchasers bought goods bearing the infringing mark because of the defendant's recommendation or his reputation or for any reason other than a response to the diffused appeal of the plaintiff's symbol, the burden of showing this is upon the poacher. The plaintiff of course is not entitled to profits demonstrably not attributable to the unlawful use of his mark.' *Maier Brewing Co. v. Fleischmann Distilling Corp*. 390 F.2d 117 (9th Cir. 1968). *See also Mishawaka Rubber & Woolen Mfg. Co. v. S. S. Kresge*, 316 U.S. 203, 206, (1941). *See also Wolfe v. National Lead Co.*, 156 F.Supp. 883, 891 (N.D.Cal.1957), aff'd, 272 F.2d 867, 872 (9th Cir. 1959); *Brooks Bros. v. Brooks Clothing of California, Ltd.*, 60 F.Supp. 442, 459 (S.D.Cal.1945), aff'd, 158 F.2d 798 (9th Cir. 1947), cert. denied, 331 U.S. 824, (1947).

Apple's failure to produce the financial documentation at issue is preventing Psystar from

[COURT ORDERED SUPPLEMENTAL BRIEFING ON THE RELEVANCE OF TOPIC 3 TESTIMONY, DEFENDANT'S MOTION TO COMPEL AND PLAINTIFF'S CROSS-MOTION FOR A PROTECTIVE ORDER
CASE NO. CV 08-03251 WHA

15

accurately presenting its case and is severely prejudicial in light of the possibility of resolution against Psystar.

### VI. Apple's Profit Margins Are Relevant to Each of Apple's 10 Requests for Permanent Injunctive Relief.

Relevance of profit margins and related financial data within the statutory damages context of the Copyright Act is one issue.  Relevancy of profit margins and related financial data within the context of the extraordinary remedy of permanent injunctive relief is a second, independent issue.  Even the strongest argument for irrelevance—made within the former context—carries no weight with respect to the latter.  "It goes without saying that an injunction is an equitable remedy [which] should issue only where the intervention of a court of equity 'is essential in order effectually to protect property rights against injuries otherwise irremediable.'" *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F.Supp.2d 1197 (C.D. Cal 2007).

As determined by the United States Supreme Court, a permanent injunction does not automatically issue upon a finding of copyright infringement. *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 392 (2006).  Rather, under "well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief." Id. at 391.

To justify an award of permanent injunctive relief, Apple must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.  Analysis of Apple's financial data, including its profit margins, is strictly relevant to at least 3 factors.

[COURT ORDERED SUPPLEMENTAL BRIEFING ON THE RELEVANCE OF TOPIC 3 TESTIMONY, DEFENDANT'S MOTION TO COMPEL AND PLAINTIFF'S CROSS-MOTION FOR A PROTECTIVE ORDER
CASE NO. CV 08-03251 WHA

16

Lost profits, and loss of market share are among the type of injuries that are often not subject to accurate calculation, and therefore irreparable. *z4 Tech. Inc. v. MicroSoft Corp.*, 434 F. Supp. 2d 437, 440-41 (E.D. Tex. 2006) (denying permanent injunction because "any harm" from future infringement could be calculated). Irreparable injury does not exist where damages adequately compensate the harm suffered. *DFW Metro Line Servs. v. Southwestern Bell Tel. Co.*, 901 F.2d 1267, 1269 (5th Cir. 1990); see also *GTE Card Servs. Inc. v. AT&T Corp.*, 1997 WL 74712 *3 (N.D. Tex.), aff'd, 124 F.3d 191 (5th Cir. 1997) (loss of good will and sale alone is not irreparable injury; damages are adequate). Psystar is entitled to Apple's financial data to make this determination in defense of Apple's request for permanent injunctive relief.

Apple cannot show that an absence of an adequate remedy at law by withholding the facts which indicate adequacy; namely, its financial data indicating, or not indicating, economic damages. If money damages compensates for the injury alleged, permanent injunctive relief may not issue. *See Smith v. Sprint Comm. Co. L.P.* 1996 WL 1058204 (N.D. Cal. 1996); *Lauratex Textile Corp. v. Allton Knitting Mills Inc.*, 519 F.Supp. 730 (S.D.N.Y. 1981) (only if money damages will not suffice, permanent injunction to prevent copyright infringement is appropriate). The balance of harm factor is similarly dependent on Apple's financial information because that information must be accessed to calculate the nature and extent of any alleged harm before such harm may be weighed against the severe consequence to Psystar contemplated by the issuance of permanent injunctive relief.

In particular, Apple's breach of contract claim, its various trademark related claims, and the 10 separately premised requests for injunctive relief flowing therefrom, each bring profit related financial data squarely into play. This information is crucial to Apple's claims and particularized requests for relief, and critical to Psystar's defense against those claims and requests for relief.

[COURT ORDERED SUPPLEMENTAL BRIEFING ON THE RELEVANCE OF TOPIC 3 TESTIMONY, DEFENDANT'S MOTION TO COMPEL AND PLAINTIFF'S CROSS-MOTION FOR A PROTECTIVE ORDER
CASE NO. CV 08-03251 WHA

17

### VII. Apple's Allegations that Psystar Will Breach the Protective Order Are Improper and False

Apple also attempts to shield relevant evidence in its possession with an unsupported appeal to confidentiality and privacy. Whatever legitimate privacy concerns exist for Apple are adequately addressed by the protective order in place in this case. One of the main purposes of that protective order was to allow for the production of information such as profit margins without unnecessary cost or loss of time to the parties or the court.

Under the current protective order Apple can designate information as "highly confidential." This restricts access to an extremely limited set of individuals. Apple agreed to this arrangement at the beginning of the case.

However, because the protective order still requires the release of relevant evidence, Apple now suggests that Psystar may in the future improperly disclose highly confidential information without authority. Psystar has not violated the protective order and will not violate the protective order in the future. Apple's information is adequately protected. The proposed motion for the protective order is a thinly veiled device to weaken Psystar's case by manipulation of the discovery process.

### VIII. Conclusion

For the above stated reasons, Psystar respectfully reiterates its request that the court grant its previously filed motion to compel, and further sanction Apple under Rule 37(d) as the court deems appropriate.

1 | Dated: August 27, 2009

2 |                                        CAMARA & SIBLEY LLP

                                     By:    /s   K. A. D. Camara

                                       K.A.D. CAMARA

                                       *Attorney for Defendant / Counterclaimant Psystar Corporation*

[COURT ORDERED SUPPLEMENTAL BRIEFING ON THE RELEVANCE OF TOPIC 3 TESTIMONY, DEFENDANT'S MOTION TO COMPEL AND PLAINTIFF'S CROSS-MOTION FOR A PROTECTIVE ORDER CASE NO. CV 08-03251 WHA

19

# CERTIFICATE OF SERVICE

I, Noah D. Radbil, declare I am employed in the City of Houston and County of Harris, Texas in the office of Camara & Sibley. I am over the age of eighteen and not a party to this action. My business address is Camara & Sibley, 2339 University Boulevard, Houston, Texas 77005.

I served the following document(s):

COURT ORDERED SUPPLEMENTAL BRIEFING ON THE RELEVANCE OF TOPIC 3 TESTIMONY, DEFENDANT'S MOTION TO COMPEL AND PLAINTIFF'S CROSS-MOTION FOR A PROTECTIVE ORDER, Case No. CV 08-03251 WHA

on the interested parties in this action by placing a true and correct copy thereof, on the above date, enclosed in a sealed envelope, following the ordinary business practice of Camara & Sibley LLP. I sent the document(s) to the following:

| James G. Gilliland, Jr.<br>TOWNSEND AND TOWNSEND AND CREW LLP<br>Two Embarcadero Center, 8th Floor<br>San Francisco, California 94111<br>Telephone: (415) 576-0200<br>Facsimile: (415) 576-0300 | email: jggilliland@townsend.com |

☒ [By First Class Mail] I am readily familiar with my employer's practice for collecting and processing documents for mailing with the United States Postal Service. On the date listed herein, following ordinary business practice, I served the within document(s) at my place of business, by placing a true copy thereof, enclosed in a sealed envelope, with postage thereon fully prepaid, for collection and mailing with the United States Postal Service where it would be deposited with the United States Postal Service that same day in the ordinary course of business.

☐ [By Overnight Courier] I caused each envelope to be delivered by a commercial carrier service for overnight delivery to the offices of the addressee(s).

☐ [By Hand] I directed each envelope to the party(ies) so designated on the service list to be delivered by courier this date.

☐ [By Facsimile Transmission] I caused said document to be sent by facsimile transmission to the fax number indicated for the party(ies) listed above.

☒ [By Electronic Transmission] I caused said document to be sent by electronic transmission to the e-mail address indicated for the party(ies) listed above via the court's ECF notification system.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration was executed on August 27, 2009 at Houston, Texas.

/s   Noah D. Radbil
Noah D. Radbil

CERTIFICATE OF SERVICE
CASE NO. CV 08-03251 WHA