1  TOWNSEND AND TOWNSEND AND CREW LLP
   JAMES G. GILLILAND, JR. (State Bar No. 107988)
2  MEHRNAZ BOROUMAND SMITH (State Bar No. 197271)
   MEGAN M. CHUNG (State Bar No. 232044)
3  J. JEB B. OBLAK (State Bar No. 241384)
   Two Embarcadero Center, Eighth Floor
4  San Francisco, CA  94111
   Telephone:  (415) 576-0200
5  Facsimile:   (415) 576-0300
   Email: jggilliland@townsend.com
6          mboroumand@townsend.com
           mmchung@townsend.com
7          jboblak@townsend.com

8  Attorneys for Plaintiff and Counterdefendant
   APPLE INC.

9

10                          UNITED STATES DISTRICT COURT

11                       FOR THE NORTHERN DISTRICT OF CALIFORNIA

12                                 SAN FRANCISCO DIVISION

13  APPLE INC., a California corporation,        | Case No. CV 08-03251 WHA

14              Plaintiff,                       | **APPLE INC.'S REPLY TO PSYSTAR
                                                 | CORPORATION'S SUPPLEMENTAL
15        v.                                     | BRIEFING ON THE RELEVANCE OF
                                                 | TOPIC 3 TESTIMONY, DEFENDANT'S
16  PSYSTAR CORPORATION, a Florida               | MOTION TO COMPEL AND
    corporation, and DOES 1-10, inclusive,       | PLAINTIFF'S CROSS-MOTION FOR A
17                                               | PROTECTIVE ORDER**
              Defendants.
18  
    AND RELATED COUNTERCLAIMS
19

20

21

22

23

24

25

26

27

28

townsend.

APPLE INC.'S REPLY TO PSYSTAR CORP.'S SUPP. BRIEFING ON THE RELEVANCE OF TOPIC 3 TESTIMONY, MOTION
TO COMPEL AND CROSS-MOTION FOR A PROTECTIVE ORDER, CASE NO. CV 08-03251 WHA

Dockets.Justia.com

## I. INTRODUCTION

Psystar Corporation ("Psystar") contends for the first time in its supplemental briefing that Apple's product line profit margins are relevant to Apple's trademark infringement claim, the injunctive relief that Apple is seeking and to Psystar's copyright misuse counterclaim. Despite Psystar's assertions to the contrary, product line profits margins are not relevant to any of the claims or defenses in this case. Moreover, Psystar and its counsel have affirmatively stated their intent to involve "the public" in this litigation, and have even chosen to disclose otherwise privileged information. Thus, Apple's concerns about protecting the confidentiality of its most sensitive financial information are well-founded.

## II. APPLE'S PROFIT MARGINS ARE NOT RELEVANT TO ITS TRADEMARK INFRINGEMENT CLAIMS

Psystar's argument that Apple has not declared what remedy it seeks for Psystar's trademark infringement is disingenuous at best. Apple informed Psystar through its damages expert report that it intends to seek only injunctive relief for its trademark infringement claims. On August 21, 2009 – almost a week before Psystar filed its supplemental briefing – Apple served Psystar with the Report of Matthew R. Lynde, Ph.D. which outlined the harm to Apple caused by Psystar's illegal activities. In that report, Dr. Lynde clearly sets forth the damages being sought by Apple for its various causes of action, including its trademark infringement claim. Specifically Dr. Lynde opined that Psystar's trademark infringement has caused irreparable harm to Apple's brand, business model and reputation. He also explained the difficulty of quantifying such harm and opined that unless Psystar is enjoined from continuing its illegal acts, Apple will continue to be harmed. *See* August 21, 2009 Expert Report of Matthew Lynde ("Lynde Report") at 25-42. Psystar's feigned ignorance regarding Apple's election of injunctive relief as the remedy for Psystar's trademark infringement is just another attempt to seek profit margin information to which it is not entitled.

///

///

///

APPLE INC.'S REPLY TO PSYSTAR CORP.'S SUPP. BRIEFING ON THE RELEVANCE OF TOPIC 3 TESTIMONY, MOTION TO COMPEL AND CROSS-MOTION FOR A PROTECTIVE ORDER, CASE NO. CV 08-03251 WHA

- 1 -

## III. APPLE'S PROFIT MARGINS ARE NOT RELEVANT TO THE INJUNCTIVE RELIEF IT SEEKS

Apple seeks permanent injunctive relief halting Psystar's unlawful conduct. Psystar's assertion that Apple's profit margins are relevant to determining whether injunctive relief is appropriate is undermined by the same legal authorities Psystar cites for that proposition. In its brief, Psystar relies on *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197 (C.D. Cal. 2007) ("*Grokster*") for the assertion that injunctive relief is not automatically granted after a finding of copyright infringement. *Id.* (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 126 S. Ct. 1837, 1839, 164 L. Ed. 2d 641 (2006)).[1] Importantly, the *Grokster* court also noted that although "irreparable harm may not be presumed[,] [i]n run-of-the-mill copyright litigation, such proof should not be difficult to establish." *Grokster*, 518 F. Supp. 2d. at 1215 (citing 6 William F. Patry, *Patry on Copyrights*, § 22:74). Thus, Apple will be entitled to injunctive relief upon proof that Psystar's ongoing infringements will result in irreparable injury that is unquantifiable and thus <u>cannot</u> be remedied by the payment of monetary damages. *Grokster*, 518 F. Supp. 2d at 1215. Specifically, Apple will show injury to Apple's brand, goodwill, and business reputation – none of which can be quantified. *See MySpace, Inc. v. Wallace*, 498 F. Supp. 2d 1293, 1305 (C.D. Cal. 2007) ("Harm to business goodwill and reputation is unquantifiable and considered irreparable."). In addition, Apple also will prove that Psystar's unrestrained conduct induces others to infringe Apple's copyrights and circumvent Apple's protection measures in violation of the Digital Millennium Copyright Act ("DMCA"). Because the irreparable harm analysis necessarily extends beyond monetary harm, Apple's profit margins simply are not relevant to determining the propriety of injunctive relief.

///

---

[1] Psystar disregards Apple's claim for injunctive relief based on Apple's trademark infringement claims and the fact that in determining injunctive relief post *eBay* in trademark cases, the Ninth Circuit has not adopted the four-part test for injunctions set out in *eBay*. *See Abercrombie & Fitch Co. v. Moose Creek, Inc.*, 486 F.3d 629 (9th Cir. 2007). And California district courts have continued to apply the pre-*eBay* presumption of irreparable harm upon a finding of trademark infringement. *See, e.g., Sinhdarella, Inc. v. Vu*, 2008 WL 410246, at **2, 7 (N.D. Cal. Feb. 12, 2008) (the possibility that defendant would not be able to pay monetary damages "in combination with the likelihood of confusion analyzed above qualifies as irreparable harm").

APPLE INC.'S REPLY TO PSYSTAR CORP.'S SUPP. BRIEFING ON THE RELEVANCE OF TOPIC 3 TESTIMONY, MOTION TO COMPEL AND CROSS-MOTION FOR A PROTECTIVE ORDER, CASE NO. CV 08-03251 WHA

- 2 -

1        Trying to establish the relevance of Apple's profit margins to irreparable injury, Psystar
2   relies on case law that actually contradicts its argument.  In *z4 Tech., Inc, v. Microsoft Corp.*, 434
3   F. Supp. 2d 437 (E.D. Tex 2006) (cited in Psystar Supplemental Brief at p. 15), the court denied
4   an injunction since plaintiff's injury could be remedied through payment of a reasonable royalty
5   under terms consistent with the terms <u>plaintiff was willing to offer</u> any party wishing to
6   incorporate plaintiff's technology into its product.  *Id.* at 440.  Here, Apple does not license Mac
7   OS X for use by any third party on any non-Apple hardware.  Apple designs its hardware and Mac
8   OS X software to create a seamless customer experience.  Apple's entire business model is
9   focused on enhancing the experience of customer who buy and use tightly integrated products.
10  Apple's development teams have integrated the software and hardware features in Apple
11  computers in order to provide consumers with intuitive, efficient and high quality products.
12  Running Mac OS X on hardware that is not integrated with Apple's operating system will wholly
13  undermine this user experience and result in significant customer dissatisfaction, which in turn
14  tarnishes Apple's brand.  Lynde Report, *supra,* at 25-42.  Consequently, there is no reasonable
15  royalty that could even begin to remedy the harm caused to Apple by Psystar's illegal conduct.
16  *See SimplexGrinnell LP v. Integrated Sys. & Power, Inc.*, 2009 U.S. Dist. LEXIS 30657, at *65
17  (S.D.N.Y. March 31, 2009); *see also Silverstein v. Penguin Putnam, Inc.*, 368 F.3d 77, 84 (2d Cir.
18  2004) ("In the copyright realm, it has been said that an injunction should be granted if denial
19  would amount to a forced license to use the creative works of another.").
20       Similarly, *DFW Metro Line Services v. Southwestern Bell Telephone Co.,* 901 F.2d 1267
21  (5th Cir. 1990), is inapposite.  In *DFW,* the Court held that damage to plaintiff's goodwill could be
22  compensated monetarily because plaintiff had existed for only a year and a half.  *Id.* at 1269
23  (noting that plaintiff "has not shown, nor even argued, that special circumstances in this case
24  would make money damages inadequate"); *see also GTE Card Services Inc. v. AT&T Corp.,* 1997
25  WL 74712, 3 (N.D. Tex. 1997) ("[t]he lost goodwill of a business operated over a *short* period of
26  time is usually compensable in money damages") (emphasis added).  First, neither *DFW* nor *GTE*
27  *Card Services* spoke to the relevance of profit margins for calculating lost good will.  Second,
28  Apple has been in business and building its goodwill, brand and reputation for over thirty years.

Apple's brand has become synonymous with innovative, high quality, <u>fully-integrated</u> products and is one of the most famous brands in the world.[2] Psystar's illegal acts have tarnished that brand, and threaten further tarnishment, an injury for which Apple cannot be compensated monetarily. *See* Lynde Report at 24, 33-35. As neither *DFW* nor *GTE Card Services* asserted that profit margins are relevant to calculating good will and because Apple is completely different from the nascent businesses at issue in those cases, neither of these cases provides support for Psystar's argument.

Psystar also cites to *Smith v. Sprint Communications Co.*, 1996 WL 1058204 (N.D. Cal. Sept. 13, 1996). This case is on point – although not for the proposition for which Psystar cites it. Rather, *Smith* cuts against the very argument that Psystar makes and holds that "a claim for injunctive relief does not require the Court to calculate damages." *Id.* at 4. Instead, the Court only determines whether damages alone would leave some injury un-redressed. *Id.* Psystar also miscites *Lauratex Textile Corp. v. Allton Knitting Mills Inc.*, 519 F. Supp. 730, 732 (S.D.N.Y. 1981), claiming it stands for the proposition that a permanent injunction "is appropriate where money damages would not suffice." *See* Psystar Supplemental Brief at 17. Contrary to Psystar's assertions, the court in *Lauratex* issued an injunction based on the high likelihood that the infringer would continue infringing. *Id.* at 733. While the court used the <u>defendant's</u> gross profits as a yardstick for the appropriateness of statutory damages, nothing in *Lauratex* or any other case makes Apple's profit margins relevant to the adequacy of damages or the need for an injunction. *See id.* (awarding plaintiff statutory damages of $40,000 where defendant had gross profits of $5,177 and holding that "[i]t is possible . . . to compute defendants' [gross profits] from the evidence presented at trial and use that as an approximate measure of plaintiff's damages").

Finally, Psystar's assertion that Apple's lost profits must be used in a balance of hardships analysis also fails. Where there is a likelihood of future infringement the balance of hardships shifts further in favor of plaintiff. *Grokster*, 518 F. Supp. 2d at 1222. In contrast, Psystar's infringing business model "has no separate legitimate business purpose" and thus enjoining the

---

[2] Indeed, *BusinessWeek Magazine* has named Apple the "World's Most Innovative Company" for several years running and several independent research organization specializing in branding have ranked the Apple brand among the 50 most valuable brands. *See* Lynde Report at 32-33.

APPLE INC.'S REPLY TO PSYSTAR CORP.'S  SUPP. BRIEFING ON THE RELEVANCE OF TOPIC 3 TESTIMONY, MOTION
TO COMPEL AND CROSS-MOTION FOR A PROTECTIVE ORDER, CASE NO. CV 08-03251 WHA

- 4 -

sale of infringing products should be given no weight. *Id.* at 1220.  Again, data showing *Apple's* profit margins is not relevant to determining whether the Court should issue a permanent injunction to stop *Psystar's* conduct .

### IV. APPLE'S PROFIT MARGINS ARE NOT RELEVANT TO PSYSTAR'S BASELESS COPYRIGHT MISUSE CLAIM

To prove copyright misuse – which it cannot – Psystar must show that Apple limits its operating system software to Apple-labeled hardware in a manner that prohibits competition. *See Lasercomb Am., Inc. v. Reynolds*, 911 F.2d 970 (4th Cir. 1990) (finding copyright misuse where license agreement limited licensee from competing with licensor for 99 years); *Practice Mgmt. Info. Corp. v. Am. Med. Ass'n.*, 121 F.3d 516, 520-521 (9th Cir. 1997) (holding that copyright misuse occurred where licensor conditioned license to copyrighted material on an agreement not to purchase competitor's products and to exclusively use licensor's code).

Yet Apple has done nothing to prevent others, including Psystar, from developing their own operating system software or making computers.  Nor is there anything in Apple's Software License Agreement that prohibits Mac OS X licensees or Mac owners from purchasing any other brand of computer running, for example, Windows or Linux operating systems.  Indeed, Apple has no quarrel with Psystar selling computers in competition with Apple that run other operating systems.  Apple's complaint arises from the fact that Psystar has <u>not</u> developed its own operating system (or even tried).  Rather, free-riding on the hundreds of millions of dollars Apple has expended in research and development, and knowingly violating Apple's Software License Agreement, Psystar has taken Apple's Mac OS X operating system, made unauthorized copies of, and modifications to, it, and is distributing that software on untested and unapproved hardware.

Psystar has the burden to prove that Apple is engaging in unlawful, anticompetitive behavior, yet it has neither submitted an expert report on this matter,[3] nor provided any evidence beyond the unsupported allegations in its cross-complaint asserting misuse.  Indeed, when asked the basis for its counterclaim, five days before the close of discovery, Psystar provided no support whatsoever, saying only, "Psystar responds by incorporating its live counterclaim pleading …."

---

[3] The deadline for Psystar to serve any affirmative expert reports was August 21, 2009.

APPLE INC.'S REPLY TO PSYSTAR CORP.'S  SUPP. BRIEFING ON THE RELEVANCE OF TOPIC 3 TESTIMONY, MOTION TO COMPEL AND CROSS-MOTION FOR A PROTECTIVE ORDER, CASE NO. CV 08-03251 WHA

- 5 -

1   *See* Psystar's Response to Apple's Interrogatory Re: Copyright Misuse on August 17, 2009.  In
2   fact, the deposition testimony of all of Apple's witnesses shows there is no basis for Psystar's
3   claim of copyright misuse.  Rather, it is Apple's pro-competitive focus on creating integrated
4   computers that run seamlessly for its customers – not any anticompetitive motive – that drives its
5   requirement that Mac OS X run only on Apple tested and approved hardware.

6   Now Psystar contends that if it were able to show that Apple's product-line profit margins
7   were high, it would be able to establish evidence of misuse.  That is wrong.  Even if Psystar could
8   allege that Apple's profit margins were high, this would not show any unlawful extension of
9   Apple's copyrights; at most those margins would show that Apple's computers are in high
10  demand, or are efficiently produced, or both.  The mere fact that a company makes a profit on its
11  products, even if it is allegedly high, does not allow an inference of market power, *Apple, Inc. v.*
12  *Psystar Corp.,* 586 F. Supp. 2d 1190, 1198-99 (N.D. Cal. 2008), or anticompetitive conduct, and
13  certainly does not provide any support for an inference that it has misused its intellectual property
14  rights.  *See High Tech. Careers v. San Jose Mercury News*, 1995 WL 115480, *3 (N.D. Cal.
15  March 14, 1995) (finding that many courts have disparaged the evidentiary value of high profits to
16  indicate anticompetitive activity and stating that "high profits may be indicative of a variety of
17  factors other than a monopoly power, such as an extraordinary market, operating efficiency, or
18  high-quality management"); *see also In Re IBM Peripheral EDP Devices, Etc,* 481 F. Supp. 965,
19  981 (N.D. Cal. 1979) ("the inference that a defendant that enjoys healthy profits only does so
20  because of an unhealthy market structure is not a strong one"); *Forsyth v. Humana, Inc.,* 827 F.
21  Supp. 1498, 1511 (D. Nev. 1993) ("proof of excessive profits ... may be misleading and subject to
22  several interpretations").  Apple's product-line profit margins are simply not relevant to Psystar's
23  copyright misuse claim.

### V.  APPLE'S FEAR OF DISCLOSING HIGHLY CONFIDENTIAL INFORMATION TO PSYSTAR IS WELL-FOUNDED

26  Since filing its Supplemental Brief last week, Apple discovered that Psystar and its counsel
27  have communicated the details of this case to individuals not bound by the protective order and
28  thereby to the public at large.  *See* Ex. A (print out from blog containing Psystar's attorney-client

APPLE INC.'S REPLY TO PSYSTAR CORP.'S  SUPP. BRIEFING ON THE RELEVANCE OF TOPIC 3 TESTIMONY, MOTION
TO COMPEL AND CROSS-MOTION FOR A PROTECTIVE ORDER, CASE NO. CV 08-03251 WHA

- 6 -

communications) (http://blogs.law.harvard.edu/nesson/2009/07/23/morning-mail-honored-to-see-my-teaching-take-hold/).[4]  In addition to waiving the protections of attorney-client privilege as to the subject matters discussed, Psystar's lead counsel, Kiwi Camara, wrote, "I like very much the idea of conducting this litigation publicly."  Indeed, it was Mr. Camara who suggested that Psystar post the schedule of Apple executives' depositions and solicit deposition questions from the public.  *See* Ex. A ("A nice follow-up post might be the roster of Apple people being deposed – we can invite the world to send us questions.").  As noted in Apple's Supplemental Briefing, in this same posting on Psystar's website, Psystar told readers "to [b]ear in mind that we might not be able to release the answers to said [deposition] questions until the conclusion of this litigation (re: Apple's Super Secret Protective Order) . . . ."  Given the actions of Psystar and its counsel, and their waiver of the confidentiality of Psystar's own privileged communications in an effort to drum up publicity, Apple's fear of disclosing its highly confidential information is genuine and well-founded.

## VI.    CONCLUSION

As shown above and in Apple's Supplemental Briefing, Apple's profit margins are not relevant to any of the claims or defenses in this case and, therefore, Apple should not be obliged to disclose that information to Psystar.

DATED:  September 2, 2009          Respectfully submitted,

TOWNSEND AND TOWNSEND AND CREW LLP


By: */s/ James G. Gilliland, Jr.*
       JAMES G. GILLILAND, JR.

Attorneys for Plaintiff and Counterdefendant
APPLE INC.

---

[4] In an email exchange with his client discussing case strategy, Mr. Camara reports discussing this case with a Prof. Charles Nesson of Harvard Law School, whom he describes as an "expert in public litigation," and to whom he simultaneously sent otherwise privileged information.