# EXHIBIT 4

## TO DECLARATION OF MEGAN CHUNG IN SUPPORT OF APPLE INC.'S OPPOSITION TO PSYSTAR'S BRIEF FILED AUGUST 31, 2009

1  K.A.D. CAMARA (TX Bar No. 24062646 / MA
   Bar No. 661087– *To Appear Pro Hac Vice*)
2  camara@camarasibley.com
   CAMARA & SIBLEY LLP
3  2339 University Boulevard
   Houston, Texas 77005
4  Telephone: (713) 893-7973
   Facsimile:  (713) 583-1131
5
   DAVID WELKER (SBN 252658)
6  david.welker@post.harvard.edu
   WELKER & ROSARIO
7  2689 Sycamore Lane, Suite A6
   Davis, California  95616-5583
8  Telephone: (949) 378-2900

9  Attorneys for Defendant/Counterclaimant
   PSYSTAR CORPORATION
10

11                    UNITED STATES DISTRICT COURT

12                   NORTHERN DISTRICT OF CALIFORNIA

13                        SAN FRANCISCO DIVISION

14  | | |
    |---|---|
15  | APPLE INC., a California corporation, | CASE NO. CV-08-03251-WHA |
16  | Plaintiff, | |
    | v. | **PSYSTAR CORPORATION'S NOTICE OF DEPOSITION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(B)(6)** |
17  | PSYSTAR CORPORATION, | |
18  | Defendant. | |
19
20  | AND RELATED COUNTERCLAIMS. | |

-1-

## NOTICE

Please take notice that pursuant to Rule 30(b)(6) of the Rules of Federal Procedure and in accordance with Judge Alsup's Supplemental Order (Docket No. 8), Psystar Corporation ("Psystar") will take the deposition upon oral examination of the representative of Apple Inc. ("Apple") who has knowledge of and may testify concerning the matters set forth below. The deposition will take place on August 13, 2009 at 379 Lytton Ave., Palo Alto, CA 94301 and will be recorded by stenography and/or video. The deposition shall take place before a notary public or other officer authorized to administer oaths and shall continue from day to day until completed.

Apple is requested and required to designate and make available to testify a person or persons knowledgeable about the following topics (in the following list of topics, the term "OS X" includes both Mac OS X and Mac OS X Server):

1. Actual or potential confusion between Apple's products and Psystar's products, including but not limited to any and all communications between Apple and any third person about Psystar's products.

2. The use, development, registration, and investment in each of the trademarks or items of trade dress at issue in this action, including but not limited to:

   a. the identity of each mark or item of trade dress at issue;
   b. the functionality or lack thereof of each item of trade dress;
   c. the length of use of each mark at issue;
   d. the amount of money spent to develop each mark at issue;
   e. the time and manner of registration of each registered mark;
   f. any prior litigation involving the marks or items of trade dress at issue;
   g. the sales and profit associated with each of the marks or items of trade dress at issue;
   h. the manner in which each mark or item of trade dress was used, including the geographic scope of such use and the number and cost of any advertisements using the mark or item of trade dress;
   i. the similarities and differences between each mark or item of trade dress and their allegedly infringing Psystar counterparts;

PSYSTAR CORP.'S NOTICE OF RULE 30(B)(6) DEPOSITION
Case No. CV-08-03251-WHA

j.    the similarities and differences between each product to which each mark or item of trade dress is applied and the Psystar counterpart with respect to which Psystar is alleged to have infringed the mark or item of trade dress;

k.    the use of each mark or item of trade dress or any similar mark or item of trade dress by others, whether or not under license, and, if under license, the terms of each such license; and

l.    the public's awareness of and the associations brought to mind by each mark or item of trade dress, to the extent information about this topic is actually known by or is reasonably available to Apple.

3. The injury suffered by Apple as a result of the allegedly unlawful acts about which Apple complains in this action and the injury that Apple is likely to suffer if these acts continue, including but not limited to the amount and manner of calculation of any lost profits, and distinguishing between the injury caused by each unlawful act in which Apple alleges that Psystar engaged.

4. The amount of a reasonable royalty for the use of OS X in the manner in which Psystar is alleged to be using it or, if no such royalty is known, the manner in which such a royalty might be calculated.

5. The manner in which OS X is distributed through retailers like Amazon and Best Buy, including the existence and terms of any agreements between Apple and such retailers relating to their retailing of OS X, and the manner in which OS X is available from Apple, both online and through its physical Apple Stores. Further, the manner in which OS X is sold, licensed, or otherwise made available to members of the public.

6. Demographic data about Apple's customers and their experiences with computers, both those manufactured by Apple and those not manufactured by Apple, to the extent such information is actually known by or is reasonably available to Apple.

7. The quality, operation, and features of Psystar's products and reports regarding or investigations of the quality, operation, and features of Psystar's products, whether performed by Apple internally or received by Apple from third parties.

PSYSTAR CORP.'S NOTICE OF RULE 30(B)(6) DEPOSITION
Case No. CV-08-03251-WHA

8.  The cost structure for development, production, marketing, and sale of Apple's computers and OS X, including the costs, revenue, and profits for each such product, broken down, to the extent possible, between the hardware, the operating system, and other installed software, and the manner in which this information is or can be calculated.

9.  The manner of formation and terms of any license agreement or other agreement relating to OS X that Apple contends exists between itself and users of OS X, including but not limited to Psystar and Psystar's customers, and each breach of any such agreement over which Apple is suing in this litigation or that Apple contends will or might be engaged in by Psystar's customers.

10. The code and manner of operation of Darwin, both independently and as incorporated into OS X, including, in particular, the role of kernel extensions and the extensibility, including through kernel extensions, of Darwin and OS X.  Further, the manner in which Darwin came to be released to the public as open source and the terms of the license under which Darwin was so released to the public.  Further, the manner in which Darwin or parts of Darwin are incorporated into OS X.

11. License agreements with third persons to use any of the trademarks or items of trade dress or copyrighted works, including but not limited to OS X, at issue in this action, including the negotiation, formation, and terms of these agreements.

12. All attempts by Apple (or by third parties, if actually known by Apple or reasonably available to Apple) to cause OS X to run on non-Apple hardware, what these attempts consisted of, and what the results of these attempts were.

13. The market demand and any evidence of the existence or magnitude of such demand for OS X separately from hardware and for OS X installed on non-Apple hardware.

14. Any negotiations between Apple and any third parties regarding licensing OS X for installation on non-Apple hardware.

-4-

15. The authorship, development, identity, and registration of each copyrighted work at issue in this litigation, including any derivative works or compilations that Apple contends Psystar infringed.

16. The specific acts of copyright infringement in which Apple contends Psystar engaged, the manner in which these acts constituted copyright infringement, and the identity and nature of the specific copyrighted works that Apple contends Psystar infringed.

17. The identity and nature of each technological measure that Apple contends that Psystar unlawfully circumvented, each act that Apple contends constituted such circumvention, the manner in which Psystar circumvented the technological measure, the manner in which others could have circumvented the technological measure, and the identity and nature of the copyrighted work that the technological measure in question was protecting.

18. Quality control, performance, and user experience with integrated hardware and software; and compatibility issues with third party components and application.

Dated: July 21, 2009                                    CAMARA & SIBLEY LLP

By: _____
K.A.D. CAMARA

Dated: July 21, 2009                                    WELKER & ROSARIO

By: _____
DAVID WELKER

Attorneys for Defendant/Counterclaimant
PSYSTAR CORPORATION