1   CAMARA & SIBLEY LLP
    K.A.D. CAMARA (admitted *pro hac vice*)
2   2339 University Boulevard
    Houston, Texas  77005
3   Telephone: 713-893-7973
    Fax: 713-583-1131
4   camara@camarasibley.com

5   Attorney for Defendant/Counterclaimant
    PSYSTAR CORPORATION

6

7                   IN THE UNITED STATES DISTRICT COURT
                   FOR THE NORTHERN DISTRICT OF CALIFORNIA
8                         SAN FRANCISCO DIVISION

9   APPLE INC., a California corporation,        CASE NO. CV-08-03251-WHA

10          *Plaintiff*,                          **PSYSTAR CORPORATION'S
                                                 RESPONSE IN OPPOSITION TO
11  v.                                           APPLE INC.'S MOTION TO
                                                 DISMISS OR ENJOIN
12  PSYSTAR CORPORATION,                         PROSECUTION OF THE
                                                 RECENTLY-FILED FLORIDA
13          *Defendants*.                         ACTION AND TO RE-OPEN
                                                 DISCOVERY FOR LIMITED
14  AND RELATED COUNTERCLAIMS                    PURPOSES**

15

16

17        PSYSTAR'S RESPONSE IN OPPOSITION TO APPLE'S MOTION TO DISMISS OR
       ENJOIN PROSECUTION OF THE RECENTLY-FILED FLORIDA ACTION AND TO RE-
18                   OPEN DISCOVERY FOR LIMITED PURPOSES

19          The case at bar involves Apple's challenge to the legality of Psystar computer systems that

20   run Apple's Mac OS X Leopard. Fact discovery in this case has been completed: Apple has deposed

21   the senior employees of Psystar, inspected Psystar products, and inspected the Psystar manufacturing

22   facility in which Psystar assembles computer systems running Leopard; similarly, Psystar has

23   deposed the senior engineers at Apple responsible for the design and implementation of the

24   technological protection measures in Leopard that Apple alleges Psystar circumvented.  Summary-

25   judgment briefing is due in several weeks, expert depositions are proceeding next week, and trial is

26   scheduled for January 10.  Psystar opposes any continuance of the trial date necessary to allow

27

28

PSYSTAR CORPORATION'S RESPONSE IN OPPOSITION TO APPLE INC.'S MOTION TO          1
DISMISS OR ENJOIN PROSECUTION OF THE RECENTLY-FILED FLORIDA ACTION AND TO
RE-OPEN DISCOVERY FOR LIMITED PURPOSES (CV 08-03251 WHA)

Dockets.Justia.com

Apple to remedy its strategic decision to litigate only Leopard in this action, a strategic decision that it now regrets. It is Psystar that is prejudiced by a further delay in the trial date since it is Psystar's business that is being harmed by the shroud of legal doubt that Apple has created by this action.

Apple controlled the schedule for the release of Snow Leopard. Apple elected not to take steps to add Snow Leopard to this case by seeking a late pleadings amendment. Apple elected not to raise the issue of Snow Leopard's impending release and its effect on the time needed for discovery at the post-stay status conference, by motion to extend the time for discovery, or at a status conference requested for that purpose. By contrast, the release of Snow Leopard was a surprise event for Psystar. Psystar did not know when Snow Leopard would be released until Apple's public announcement of a release date. And Psystar developed its new technology — selective virtualization — in the days preceding and the week following the release of Snow Leopard. It is simply incorrect to suggest that Psystar withheld any information or code during the discovery period that might have induced Apple to seek a pleadings amendment sooner. And it would have taken no great oracular capacity to predict that upon the release of Snow Leopard, Psystar would have taken steps to get Snow Leopard running on Psystar systems. Psystar has never been opaque about its intention to continue on in its business.

Apple had its opportunity to bring Snow Leopard into this case and chose not to. Apple chose not to conduct discovery into Snow Leopard and stonewalled when Psystar asked questions at depositions about Snow Leopard. Apple assumed that its new technological protection measures would prevent Psystar from running Snow Leopard on Psystar computers. Placing its faith in its security engineers — ████████████████████████ — Apple decided not to seek leave to amend its complaint or disclosures when Snow Leopard was released or when a date certain was set for that release. Instead, Apple did nothing.

As a result, the Florida action is the first-filed case relating to Snow Leopard. Apple is free

to move for transfer and consolidation of the Florida action to this Court — but it must do so in Florida.  Apple has not done so yet.  Apple is also free to file motions in the Florida action seeking to give preclusive effect to this Court's earlier rulings on Psystar's antitrust counterclaims, to this Court's forthcoming rulings on motions for summary judgment, and to the eventual jury verdict. While Psystar does not believe that there would be any substantial preclusion between this action and the Florida action, preclusion doctrines are the proper way for a defendant in multiple actions to avoid unnecessary re-litigation of issues or inconsistent results.  What is improper is to ask this Court to intrude on and, indeed, preempt the judgment of Judge Hoeveler of the United States District Court for the Southern District of Florida.  Judge Hoeveler and his Court are quite capable of hearing and ruling on the various arguments that Apple has improperly advanced here.

## I.     This Case Does Not Cover Snow Leopard

### A.     Complaint and copyright registrations

Apple's amended complaint accuses Psystar of running Mac OS X Leopard on non-Apple computers, circumventing the technological protection measures that protect Mac OS X Leopard, and breaching the license agreement that accompanies Mac OS X Leopard.  The amended complaint nowhere mentions Snow Leopard.  There is no way it could have mentioned Snow Leopard, since Snow Leopard was released only several weeks ago, well after the amended complaint was filed. The amended complaint cannot have encompassed Snow Leopard because — put simply and starkly — neither Snow Leopard nor the Psystar computers that run Snow Leopard existed when it was filed.  *See Reiffin v. Microsoft Corp.*, 270 F. Supp. 2d 1132, 1162 (N.D. Cal. 2003) (pleadings amendment was procedure by which to add claims for new products released after filing of the original complaint).

Apple's amended complaint further cannot be construed to extend to Snow Leopard because Apple had not registered any copyright in Snow Leopard before filing the complaint and, in fact, has

not registered its copyright in Snow Leopard as of a search conducted on September 14.  *See* Amended Complaint at ¶ 26 (listing copyright registrations); Ex. F (Affidavit of Jane Dryer re: search at copyright office).  Copyright registration is a prerequisite to any action for infringement. 17 U.S.C. § 411(a) ("no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title"); *Kodadek v. MTV Networks, Inc.*, 152 F.3d 1209, 1211 (9th Cir. 1998).  When a plaintiff files an infringement action based on an unregistered copyright, the appropriate remedy is dismissal of the action.  *See Jefferson Airplane v. Berkeley Systems Inc.*, 886 F. Supp. 713, 714–17 (N.D. Cal. 1994).  At a minimum, the plaintiff must file an amended complaint alleging the registration, *see Zito v. Steeplechase Films, Inc.*, 267 F. Supp. 2d 1022, 1025 (N.D. Cal. 2003) — something that Apple has not even sought to do and that it should not be permitted to do at this late hour.

**B.    Discovery responses**

Throughout written discovery in this case, Apple has refused to answer questions, give admissions, or produce documents relating to versions of Mac OS X other than Mac OS X Leopard. For example, in response to a definition in interrogatories of "Mac OS" that included "all versions of Mac OS including, without limitation, Mac OS X, Mac OS 9, and Mac OS 8,"

To this day, Apple has not supplemented this response, even though it now contends that not only Leopard but also Snow Leopard are within this action.  In fact, Apple has not amended any of its answers to written discovery so that they apply to Mac OS X Snow Leopard.  And Apple has not produced documents related to Snow Leopard.  This is because all parties understood that Mac OS X Snow Leopard was not included in this case.  And, again, to this day, Apple has made no motion to amend the pleadings to include Mac OS X Snow Leopard or the new Psystar products that allegedly infringe Snow Leopard.  Any such amendment would, of course, be improper under the very principles described by Apple in its Florida Motion, since the first-filed case that addresses Snow Leopard is the case currently pending in Florida.

**C.      Stonewalling in depositions**

PSYSTAR CORPORATION'S RESPONSE IN OPPOSITION TO APPLE INC.'S MOTION TO
DISMISS OR ENJOIN PROSECUTION OF THE RECENTLY-FILED FLORIDA ACTION AND TO
RE-OPEN DISCOVERY FOR LIMITED PURPOSES (CV 08-03251 WHA)

5



PSYSTAR CORPORATION'S RESPONSE IN OPPOSITION TO APPLE INC.'S MOTION TO
DISMISS OR ENJOIN PROSECUTION OF THE RECENTLY-FILED FLORIDA ACTION AND TO
RE-OPEN DISCOVERY FOR LIMITED PURPOSES (CV 08-03251 WHA)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17



After stonewalling in the depositions

18         , Apple cannot claim that Snow Leopard has always been covered by this action.  Snow

19 Leopard is a new Apple product and the Psystar computers that run Snow Leopard are new Psystar

20 products.  If Apple wanted to amend its pleadings to include Snow Leopard and Psystar products

21 running Snow Leopard, it should have moved to do so.  Certainly Apple knew far better than Psystar

22 when Snow Leopard was going to be released.  Any such motion should be denied now, however,

23 because it would necessarily upset the trial schedule in this case to the prejudice of Psystar and

24 because the first-filed action addressing Snow Leopard is the case in Florida.

25

26 **II.    The Florida Case Deals With A Different Apple Product, A Different Apple License, A
27          New Psystar Technology (Selective Virtualization), New Psystar Devices, And A
         Different Relevant Market**

28

Neither the parties nor the federal courts will waste effort by having issues related to Snow Leopard litigated in the Florida action while this case proceeds expeditiously to a trial at which the legality of Psystar's past conduct regarding Leopard will be finally determined.  This is because the evidence and legal issues surrounding Snow Leopard are radically different from those surrounding Leopard.  Apple attempts to obviate these differences by skimming the surface of the legal issues in the two cases.   Although they are superficially similar — both involve claims for copyright infringement and circumvention of technological protection mechanisms, both involve first-sale and § 117 arguments by Psystar — differences in the evidence and facts make analysis of these legal issues entirely different in the two cases.  And as to the differences in Psystar's products, Apple, of course, cannot know how different they are since Apple has not yet taken any discovery on Psystar systems that run Snow Leopard or on Psystar's new selective virtualization technology for running Snow Leopard.

A.      **Snow Leopard v. Leopard**

The Florida case involves Apple's Snow Leopard product.  Snow Leopard is different from Leopard in many respects.  But, in particular, the technological protection mechanisms that Apple contends that Psystar circumvented ████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████████████████████

No  discovery  has  been  taken  in  this  case  on  either  side  on  the  technical  protection

mechanisms in Snow Leopard.   The only evidence that Apple offers that these protection mechanisms are at all similar ████████████████████████████ ████████████████████████████████████████ ██████████████████████████   The nature of the technological protection measures in Snow Leopard is an entirely new topic that has not been explored in discovery in this case, in large part due to Apple's stonewalling.  Discovery should not be reopened now simply because Apple has changed its mind about whether it wishes to include Snow Leopard in this cause of action.  At minimum, Apple should be required to seek leave to amend its complaint — and if Apple did so, such leave, because there is already a pending Snow Leopard action in Florida, should be denied.

**B.      Snow Leopard License v. Leopard License**

Snow Leopard has a different "software license agreement" than Leopard.  The different agreements create legal differences not only for Apple's breach-of-contract claims, but also for Apple's copyright-infringement and DMCA anti-circumvention claims.  The Snow Leopard license, *see* Ex. D, differs from the Leopard license, *see* Ex. E, in several relevant respects.

*Ownership of the copy sold*.  One important legal issue is whether Apple sells copies of Mac OS X or merely licenses the use of Mac OS X.  As a matter of copyright law, this depends on whether Apple ever sells a copy of the Mac OS X software, where copy is statutorily defined as the physical object containing that software.  Psystar contends that Apple does sell such copies in the form of the physical DVD containing Mac OS X.  Apple contends that it does not sell copies, but merely licenses them.  In the Leopard license, Apple expressly states that "[y]ou own the media on which the Apple Software is recorded," while, in the Snow Leopard license, this line has been removed.  This distinction may make a crucial legal difference in the cases because it is the sale of a copy that triggers the § 117 (right to take steps to run software on your computer) and § 109 (first-sale doctrine) rights on which Psystar and its customers rely.

*Enforceability of the license agreement.*  The Snow Leopard license agreement, unlike the Leopard agreement, states that returns of the software are governed by Apple's online return policy, and not by the return policies of individual retailers like Amazon or Best Buy.  Apple's return policy, unlike that of many other retailers, permits the return of software after it has been opened.  Thus, a customer who buys a copy of Snow Leopard has a chance, under the Snow Leopard license, to open the copy, run the software, read the license, reject it, and return the software to Apple.  But a customer who buys a copy of Leopard from a retailer who does not accept returns of opened software has no such opportunity.  This lack of an opportunity to return the software may affect the enforceability of the license agreement.

*Decryption and reverse engineering.*  The Snow Leopard license agreement, unlike the Leopard agreement, contains an express prohibition on decompiling, decrypting, reverse engineering, disassembling, or attempting to derive the source code of Mac OS X.  This clause will be available to Apple with respect to Psystar computers that run Snow Leopard, but not with respect to computers that run Leopard.  And it raises entirely new issues to be briefed on summary judgment about the enforceability of such a clause in the face of the Digital Millennium Copyright Act's express grant of a right to owners of copies of software programs to reverse engineer them for purposes of interoperability.  *See* 17 U.S.C. § 1201(f).

*Choice of law.*  The Snow Leopard license agreement contains a survivorship clause that says that the choice-of-law provisions of that agreement survive its termination on account of an end user's breach of its terms.  The Leopard license agreement contains no such survivorship clause.  Thus, if a Mac OS X license terminates because the end user has breached it (say, on Apple's view, by running Mac OS X on non-Apple hardware), then the Snow Leopard license provides that the choice-of-law provision selecting California law survives while the Leopard license provides no such thing.  This may affect — and certainly requires different summary-judgment briefing on — the law

PSYSTAR CORPORATION'S RESPONSE IN OPPOSITION TO APPLE INC.'S MOTION TO
DISMISS OR ENJOIN PROSECUTION OF THE RECENTLY-FILED FLORIDA ACTION AND TO
RE-OPEN DISCOVERY FOR LIMITED PURPOSES (CV 08-03251 WHA)

10

that applies to some or all of Apple's state-law claims.

In short, the differences between the license agreement that applies to Snow Leopard and the agreement that applies to Leopard make this case and the Florida case quite different legally.

### C.     Virtualization v. Hook Function

The method by which Psystar computers run Mac OS X is completely different for Snow Leopard than it was for Leopard.  For Leopard, Psystar computers invoked a particular Apple function ███████████████ to cause Mac OS X to ███████████████████████ function properly.  This was accomplished through the Psystar-written kernel extension OpenCojones.kext.  For Snow Leopard, Psystar uses new code to instead virtualize (that is, simulate) parts of the system management chip (SMC) to "convince" Mac OS X that it is running on Apple hardware.  Virtualization like this is the backbone of a large part of the modern computing industry; indeed, it is how Apple's Macintosh computers are able to run Windows and Windows applications.  *See, e.g.,* http://www.vmware.com/techonology/virtualization.html (description of virtualization from the leading company in the field, VMware).  As this brief description makes clear, the Psystar technology in the Florida case is entirely different from the Psystar technology at issue here.

### D.     New Psystar Devices

One of the issues to be litigated in the Florida case is the legality of Psystar's "dongles" (an industry term in wide use).  Psystar's dongles are USB sticks containing virtualization software that allow end users to run Mac OS X on computers of their choice, not just computers purchased from Psystar.  The end user would buy a dongle from Psystar and a copy of Mac OS X from Apple or a reseller like Amazon or Best Buy and would then be able to run that copy of Mac OS X on their personal non-Apple computer.  Psystar has worked out a design for a dongle that it intends to test, manufacture, and sell in the near future, possibly depending on the progress made in the Florida action.  The dongle, of course, would be an entirely new product that is different in kind from the

Psystar computer systems at issue in this action.

**III.    Preclusion Doctrines Raised By Motion In Florida Are The Appropriate Way For Apple To Assert Its Objections To The Antitrust Claims In The Florida Case**

A surprisingly large part of Apple's present motion is devoted not to the copyright, anti-circumvention, trademark infringement, or breach-of-contract claims that Apple asserts in this case, but to the antitrust claims that Psystar has asserted in Florida.  Apple contends that these antitrust claims are barred by this Court's prior dismissal of the antitrust counterclaims that Psystar asserted earlier in this case and that Psystar's new antitrust claims are, in any event, compulsory counterclaims that Psystar was required to bring in this Court.  Neither contention is correct.  But, more importantly, both contentions can and should be raised by Apple, if at all, by motion in the Florida court: to the extent this Court's prior order raises issue or claim preclusion issues relevant to the new antitrust claims, Apple can move to dismiss or for summary judgment in Florida; to the extent the new antitrust claims are in fact compulsory counterclaims, Apple can move to dismiss in Florida.  There is no cause for this Court to intervene in matters that should be decided by Judge Hoeveler and the United States District Court for the Southern District of Florida.

Both claims of preclusion — preclusion because of the prior dismissal in this case and preclusion under the compulsory-counterclaim rule — fail for the same reason: the antitrust claims that Psystar is asserting in the Florida case relate to Apple's conduct surrounding Snow Leopard and therefore did not exist at the time the antitrust counterclaims in this case were filed or dismissed. Rule 13, likewise, makes compulsory counterclaims only those counterclaims "that—at the time of its service—the pleader has against an opposing party."  Counterclaims that arise after service of the answer are, by definition, not compulsory.  *See, e.g., Dillard v. Security Pacific Brokers, Inc.*, 835 F.2d 607, 609 (5th Cir. 1988); *Pike v. Greeman*, 266 F.3d 78, 92 n.17 (2d Cir. 2001).  Likewise, "[R]es judicata does not bar claims that did not exist at the time of the prior litigation." *Meekins v.*

*United Transportation Union*, 946 F.2d 1054, 1058 (4th Cir. 1991); *see also National Resources Defense Council v. U.S. E.P.A.*, 437 F. Supp. 2d 1137, 1155 (C.D. Cal. 2006) ("Claim preclusion does not bar litigants from bringing claims based on conduct that occurred after the settlement of a prior suit.").

As the Supreme Court explained in an antitrust case, this is so even though "both suits involved essentially the same course of wrongful conduct." *Lawlor v. National Screen Service Corp.*, 349 U.S. 322, 327 (1955). Even in such a case, a prior judgment "precludes recovery on claims arising prior to its entry, it cannot be given the effect of extinguishing claims which did not even then exist and which could not possibly have been sued upon in the previous case." *Id.* at 328. The Ninth Circuit, too, has held that a later-arising cause of action cannot be barred by a prior judgment even if the later-arising action involves the same basic course of conduct. "A claim arising after the date of an earlier judgment is not barred, even if it arises out of a continuing course of conduct that provided the basis for the earlier claim." *Frank v. United Airlines, Inc.*, 216 F.3d 845, 851 (9th Cir. 2000). Apple's notion that the antitrust claims in the Florida action are somehow precluded by this Court's dismissal of the anyway very different antitrust counterclaims filed here is simply without legal foundation.

It is also worth noting that, at a factual level, the antitrust claims in Florida are quite different from the antitrust claims that were asserted in this case. The Florida claims assert that Apple has made attempts to monopolize a different market: the market for "premium computers," defined as computers priced at more than $1,000. Psystar plans to amend the Florida complaint shortly to assert further market definitions, including one defining the market in personal computers running UNIX-based operating systems. Windows is not a UNIX-based operating system. And, although there are several other UNIX-based operating systems in the market, including the various flavors of Linux, it turns out that this, too, is a market in which Apple has, and has taken anticompetitive acts to obtain

1    and maintain, an effective monopoly.  But these are issues for the Florida Court.

2    **IV.    Conclusion**

3            It is within this Court's power to enjoin prosecution of a suit in a different federal forum.  But

4    this should be done only when the second suit involves the same claims, the same facts, and the same

5    parties to such a degree that, in this Court's discretion, it would be a waste of the federal judiciary's

6    resources to have the cases proceed in parallel.  An injunction barring Psystar from prosecuting the

7    Florida case would be appropriate if that case were simply a mirror image of this case, raising the

8    same legal questions on the same evidence.  But the Florida case is nothing like that.  The Florida

9    case concerns a new Apple product, Snow Leopard; a new series of Psystar products, including both

10   computers running Snow Leopard and dongles permitting end users to run their own copies of Snow

11   Leopard on their own non-Psystar computers; a new virtualization technology developed by Psystar;

12   a new license for Snow Leopard with at least four major differences from the Leopard license

13   affecting everything from choice of law to the enforceability of the license to whether the first-sale

14   doctrine and § 117 apply; and entirely new market definitions for the antitrust claims.

15

16

17           Moreover, as to Snow Leopard, the first-to-file rule, properly applied, leads to the conclusion

18   that it is the Florida court in which all Snow Leopard-related disputes should be centered.  Apple

19   actively refused to engage in discovery on Snow Leopard in this case, both in its responses to written

20   discovery and at depositions.  Instead, Apple took the position that Snow Leopard was not part of

21   this case because it had not yet been released.  *Cf. MedImmune, Inc. v. Genentech, Inc.*, 535 F. Supp.

22   2d 1000, 1009 (C.D. Cal. 2008) ("The Plaintiff has not demonstrated that NuMax is in fact part of

23   the actual controversy in this case.   Indeed, MedImmune has always directed its pleadings

24   exclusively to Synagis and has never amended its pleading to reference NuMax.   Furthermore,

25   Genentech states that MedImmune until very recently has refused to provide any discovery related to

26   NuMax.").  Having taken this position, Apple cannot now object to the filing of a new case in

27

28

1   Florida centered on the very questions it sought to avoid here.

2           If it turns out that there are any overlapping factual or legal issues, both Apple and Psystar

3   can address those issues in Florida by seeking agreement or orders limiting discovery in that case to

4   issues not fully explored here and by filing motions to dismiss or for summary judgment when

5   preclusion doctrines warrant doing so.  Ordinary steps like these that will adequately protect against

6   a waste of federal judicial resources make the extraordinary step of an injunction against the

7   prosecution of an action in a co-ordinate United States District Court entirely unnecessary.

8   Moreover, enjoining the Florida action would be prejudicial to Psystar because it would necessitate

9   reopening discovery in this case and, as this Court stated at the September 4 hearing, continuing the

10  trial date beyond January.  This case, and the legal doubt it creates about Psystar's business, is an

11  extraordinary burden on Psystar.  Having gotten through discovery on all issues surrounding

12  Leopard, Psystar wishes to get on with trial and achieve some final resolution of the legality of its

13  activities to date.  Apple should not be permitted to delay this day of reckoning by its last-minute

14  attempt to add Snow Leopard into this case.

15          Psystar respectfully requests that Apple's motion be denied in full.

1  Dated:  September 18, 2009          Respectfully submitted,

2                                      CAMARA & SIBLEY LLP

3

4                                      By:    /s/ K.A.D. Camara_____
                                              K.A.D. Camara
5

6                                      *Attorney for Defendant / Counterclaimant*
                                       *Psystar Corporation*
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**CERTIFICATE OF SERVICE**

2
      I, Michael Wilson, declare I am employed in the City of Houston and County of Harris, Texas
in the office of Camara & Sibley.  I am over the age of eighteen and not a party to this action.  My

3
business address is Camara & Sibley, 2339 University Boulevard, Houston, Texas 77005.

4
      I served the following document(s):

5
**PSYSTAR CORPORATION'S RESPONSE IN OPPOSITION TO APPLE INC.'S MOTION
TO DISMISS OR ENJOIN PROSECUTION OF THE RECENTLY-FILED FLORIDA**

6
**ACTION AND TO RE-OPEN DISCOVERY FOR LIMITED PURPOSES**
Case No. CV 08-03251 WHA

7

8
on the interested parties in this action by placing a true and correct copy thereof, on the above date,
enclosed in a sealed envelope, following the ordinary business practice of Camara & Sibley LLP.  I
sent the document(s) to the following:

9

10

| James G. Gilliland, Jr.<br>TOWNSEND AND TOWNSEND AND CREW LLP<br>Two Embarcadero Center, 8th Floor<br>San Francisco, California 94111<br>Telephone:  (415) 576-0200<br>Facsimile:   (415) 576-0300 | email:  jggilliland@townsend.com |
|---|---|

11

12

13

14
     ☐    [By First Class Mail]  I am readily familiar with my employer's practice for collecting
and processing documents for mailing with the United States Postal Service.  On the date listed herein,

15
following ordinary business practice, I served the within document(s) at my place of business, by
placing a true copy thereof, enclosed in a sealed envelope, with postage thereon fully prepaid, for
collection and mailing with the United States Postal Service where it would be deposited with the

16
United States Postal Service that same day in the ordinary course of business.

17
     ☐    [By Overnight Courier]  I caused each envelope to be delivered by a commercial carrier
service for overnight delivery to the offices of the addressee(s).

18

19
     ☐    [By Hand]  I directed each envelope to the party(ies) so designated on the service list to
be delivered by courier this date.

20
     ☐    [By Facsimile Transmission]  I caused said document to be sent by facsimile
transmission to the fax number indicated for the party(ies) listed above.

21

22
     ☒    [By Electronic Transmission]  I caused said document to be sent by electronic
transmission to the e-mail address indicated for the party(ies) listed above via the court's ECF
notification system.

23

24
      I declare under penalty of perjury under the laws of the United States of America that the
foregoing is true and correct, and that this declaration was executed on September 18, 2009 at
Houston, Texas.

25

26
               */s/ Michael Wilson*
               Michael Wilson

27

28