1  HENRY WEISSMANN (SBN 132418)
   BURTON A. GROSS (SBN 166285)
2  JOHN P. HUNT (SBN 208941)
   MUNGER, TOLLES & OLSON LLP
3  33 New Montgomery Street
   Nineteenth Floor
4  San Francisco, CA  94105-9781
   Telephone:    (415) 512-4000
5  Facsimile:    (415) 512-4077

6  ELAINE M. DUNCAN (SBN 110889)
   VERIZON CALIFORNIA INC.
7  711 Van Ness Ave #300
   San Francisco, CA 94102
8  Telephone:    (415) 474-0468
   Facsimile:    (415) 474-6546
9
   Attorneys for Plaintiff,
10 VERIZON CALIFORNIA INC.

11

12                    UNITED STATES DISTRICT COURT

13                  NORTHERN DISTRICT OF CALIFORNIA

14                      SAN FRANCISCO DIVISION

15

16  VERIZON CALIFORNIA INC.,          CASE NO. C 03-02838 TEH

17          Plaintiff,

18  v.                                 **NOTICE OF MOTION, MOTION AND
                                       MEMORANDUM OF POINTS AND
19  MICHAEL R. PEEVEY, LORETTA M.      AUTHORITIES IN SUPPORT OF
    LYNCH, CARL W. WOOD, GEOFFREY F.   VERIZON CALIFORNIA INC.'S MOTION
20  BROWN, AND SUSAN P. KENNEDY, in    FOR PARTIAL SUMMARY JUDGMENT
    their official capacities as Commissioners of  ON ITS FIRST, SECOND, AND FOURTH
21  the Public Utilities Commission of the State of  CAUSES OF ACTION**
    California, and not as individuals,
22                                     **[PROPOSED] ORDER filed concurrently
            Defendants.                herewith**
23
                                       **[UPDATED VERSION WITH JOINT
24  and                                APPENDIX CITATIONS]**

25  AT&T COMMUNICATIONS OF             **Date:**  December 8, 2003
    CALIFORNIA, INC.,                  **Time:**  10 a.m.
26                                     **Courtroom:**  12
            Intervenor/Defendant.
27
                                       **The Honorable Thelton E. Henderson**
28

Dockets.Justia.com

# NOTICE OF MOTION AND MOTION

**TO ALL COUNSEL OF RECORD IN THE ABOVE-CAPTIONED ACTION**:

**PLEASE TAKE NOTICE** that on December 8, 2003, at 10 a.m. or as soon thereafter as counsel may be heard, before the Honorable Thelton E. Henderson, United States District Judge, in Courtroom 12 of the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, California, Plaintiff Verizon California Inc. ("Verizon California") will, and hereby does, move this Court, pursuant to Rule 56 of the Federal Rules of Civil Procedure and Northern District Civil Local Rule 56, for entry of Summary Judgment in favor of Verizon California with respect to Counts I, II, and IV of its Complaint for Declaratory and Injunctive Relief.

Verizon California's motion is based upon this Notice of Motion and Motion, the supporting Memorandum of Points and Authorities attached hereto and such additional papers and pleadings and arguments of counsel as the Court may admit, and all the papers and pleadings on file in this action, including Verizon California's Complaint for Declaratory and Injunctive Relief. For the reasons set forth in detail in the supporting Memorandum of Points and Authorities, Verizon California seeks an order from this Court granting judgment in favor of Verizon California on Counts I, II, and IV of its Complaint, vacating the interim UNE rates established in the order challenged in this action, enjoining enforcement of the interim rates, remanding the case to the Commission for further proceedings, and granting such other relief as set forth in the Prayer.

Dated: October 6, 2003

Respectfully submitted,

MUNGER, TOLLES & OLSON LLP

BURTON A. GROSS

Attorneys for Plaintiff
VERIZON CALIFORNIA INC.

# TABLE OF CONTENTS

|  |  |  | Page |
|---|---|---|---|
| I. | | INTRODUCTION | 1 |
| II. | | BACKGROUND AND STATEMENT OF FACTS | 2 |
| | A. | The Statutory and Regulatory Framework | 2 |
| | B. | Proceedings Before the Commission | 3 |
| III. | | STANDARD OF REVIEW | 8 |
| IV. | | ARGUMENT | 9 |
| | A. | The Adoption of New Jersey-Based Rates Is Arbitrary, Capricious, And Contrary To Federal Law | 9 |
| | | 1. The Commission Must Set Rates Based On Verizon California's Costs To Provide Elements Of Its California Network | 9 |
| | | 2. The Record Does Not Support a Finding That The Interim Rates Reflect California Costs | 11 |
| | | 3. The Commission's Use of the Synthesis Model to Adjust the New Jersey Rates Does Not Render Them TELRIC-Compliant | 13 |
| | | 4. The Commission's Use of the New Jersey Rates Cannot Be Justified By Comparison To Other Rate Proposals | 16 |
| | | 5. The Rate Order's Unlawful Rates Cannot Be Excused On The Ground That They Are Interim | 18 |
| | B. | The Commission Acted Arbitrarily and Capriciously by Reversing Its Prior Policies Without Explanation | 20 |
| | C. | The Commission Acted Arbitrarily In Selecting New Jersey While Ignoring Florida | 22 |
| | D. | The Rate Order Was Entered in Violation of Verizon California's Due Process Rights Under the U.S. Constitution | 24 |
| V. | | CONCLUSION | 25 |

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*AT&T Communs. of Calif. v. Pacific Bell Tel. Co.,*
228 F. Supp. 1086 (N.D. Cal. 2002)------------------------------------------------------- 8

*Gateway E. Ry. Co. v. Terminal R.R. Ass'n,*
35 F.3d 1134 (7th Cir. 1994) ----------------------------------------------------------19

*GTE Calif. Inc. v. Conlon et al.,*
No. C 97-1757 SI, 1998 U.S. Dist. LEXIS 17556 (N.D. Cal. Sept. 29, 1998) ---------------------- 4

*Interstate Nat. Gas Ass'n of Am. v. FERC,*
756 F.2d 166 (D.C. Cir. 1985) ---------------------------------------------------------20

*Jordan v. City of Lake Oswego,*
734 F.2d 1374 (9th Cir. 1984)----------------------------------------------------------24

*MCI Telecomm. Corp. v. Bellsouth Telecomm., Inc.,*
9 F. Supp. 2d 766 (E.D. Ky. 1998) ----------------------------------------------------24

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,*
463 U.S. 29 (1983)---------------------------------------------------------------------20

*Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.,*
22 F.3d 546 (4th Cir. 1994)------------------------------------------------------------19

*Orthopaedic Hosp. v. Belshe,*
103 F.3d 1491 (9th Cir. 1997)---------------------------------------------------------- 8

*Reuters Ltd. v. UPI, Inc.,*
903 F.2d 904 (2d Cir. 1990) ----------------------------------------------------------19

*Sarasota-Charlotte Broadcasting Corp. v. FCC,*
976 F.2d 1439 (D.C. Cir. 1992)--------------------------------------------------------23

*Telecommunications Res. & Action Ctr. v. FCC,*
836 F.2d 1349 (D.C. Cir. 1988)--------------------------------------------------------20

*U.S. West Communs., Inc. v. Hix,*
986 F. Supp. 13 (D. Colo. 1997) ------------------------------------------------------ 8

*U.S. West Communs., Inc. v. MFS Intelenet, Inc.,*
193 F.3d 1112 (9th Cir. 1999) -------------------------------------------------------- 8

*U.S. West Communs., Inc. v. TCG Oregon,*
35 F. Supp. 2d 1237 (D. Ore. 1998) ----------------------------------------------- 8, 18, 24

*Verizon Communs. v. FCC,*
535 U.S. 467 (2002) ------------------------------------------------------------------10

**TABLE OF AUTHORITIES**
(continued)

Page

**STATE CASES**

*United States Steel Corp. v. PUC*, 29 Cal. 3d 603 (1981)--------------------------------------------23

**FEDERAL STATUTES**

47 U.S.C. § 151----------------------------------------------------------------------------- 2

47 U.S.C. § 153(26) ---------------------------------------------------------------------- 9

47 U.S.C. § 153(29) ---------------------------------------------------------------------- 9

47 U.S.C. § 153(32) ---------------------------------------------------------------------- 9

47 U.S.C. § 251(c)(3)------------------------------------------------------------------- 2

47 U.S.C. § 252(b)(1) -------------------------------------------------------------------- 3

47 U.S.C. § 252(d)(1)-------------------------------------------------------------------3, 17

47 U.S.C. § 252(d)(1)(A)(i)---------------------------------------------------------------9, 18

47 U.S.C. § 252(e)(6) ------------------------------------------------------------------- 3, 8

**FEDERAL REGULATIONS**

47 C.F.R. § 51.503(b) ------------------------------------------------------------------ 3

47 C.F.R. § 51.505(b) ----------------------------------------------------------------- 17, 18

47 C.F.R. § 51.505(b)(1) --------------------------------------------------------------10

47 C.F.R. § 51.506(e)(2) ---------------------------------------------------------------12

**FCC DECISIONS**

*In the Matter of Application by Bell Atlantic New York,*
   15 F.C.C.R. 3953 (Dec. 22, 1999) --------------------------------------------------14

*In the Matter of Application by Verizon Maryland Inc.,*
   18 F.C.C.R. 5212 (March 19, 2003)--------------------------------------------------14

*In the Matter of Application of Verizon New England Inc. et al,*
   16 F.C.C.R. 8988 (April 16, 2001) --------------------------------------------------14

*In the Matter of Application of Verizon New Jersey Inc. et al.,*
   17 F.C.C.R. 12275 (June 24, 2002)------------------------------------------ passim

*In the Matter of Federal-State Joint Board on Universal Service,*
   14 F.C.C.R. 20 (Nov. 2, 1999) ------------------------------------------------13

*In the Matter of Implementation of the Local Competition Provisions in the Telecommunications Act of 1996,*
  11 F.C.C.R. 15,499 (Aug. 8, 1996) ------------------------------------------------------------ 3, 10, 14

*In the Matter of Joint Application by BellSouth Corp. et al.,*
  17 F.C.C.R. 9018 (May 15, 2002) -------------------------------------------------------------- 10, 15

*In the Matter of Joint Application of SBC Commmuns. et al,*
  16 F.C.C.R. 6237 (Jan. 22, 2001) -------------------------------------------------------------- 15, 16

**CPUC DECISIONS**

CPUC Decision 03-03-033, 2003 Cal. PUC LEXIS 168 ---------------------------------------- passim

CPUC Decision 98-02-106, 1998 WL 1739407 (Feb. 19, 1998) ----------------------------------- 22

CPUC Decision 97-01-022, 1997 Cal. PUC LEXIS 22 ------------------------------------------------ 3

CPUC Decision 96-08-021, 1996 Cal. PUC LEXIS 841 -------------------------------------- 20, 21, 22

CPUC Decision 03-08-074, 1993 Cal. PUC LEXIS 923 ------------------------------------- passim

**OTHER AUTHORITIES**

The Status of Telecommunications Competition in California,
  http://www.cpuc.ca.gov/word_pdf/REPORT/25311.pdf (Feb. 28, 2003) ------------------------- 4

*In re Bell Atlantic-New Jersey, Inc.,*
  Dkt. No. TO00060356, 2002 WL 1997939 (N.J. Bd. Pub. Utils. adopted Nov. 20, 2001,
  released March 6, 2002)------------------------------------------------------------------------- 20, 21

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

The California Public Utilities Commission ("Commission") slashed by 30-60% the rates it had previously approved for the mandated lease by wholesale customers of elements of the network of Verizon California Inc. ("Verizon California"). The Commission adopted these rates following a truncated procedure that bypassed the required analysis of Verizon California's costs of providing these elements. Instead, the Commission based its new rates on those adopted by the New Jersey Board of Public Utilities for Verizon New Jersey. The New Jersey rates are among the lowest in effect for any affiliate of Verizon California throughout the country. The Commission's new rates threaten Verizon California with grave and imminent harm, as its competitors take unfair advantage of artificially low wholesale rates to win retail customers. The Court should declare the Commission's order unlawful for the following reasons.

First, the Commission violated federal law by failing to base the rates on Verizon California's costs in California. Instead, the Commission based the rates on the costs of another carrier in another state, as determined by another state commission. Indeed, the record contained no evidence of how the New Jersey Board determined Verizon New Jersey's costs. By assuming the validity of the New Jersey Board's determination, the Commission unlawfully abdicated its responsibility to make an independent determination of Verizon California's costs. In addition, because there was no evidence of what input costs the New Jersey Board used, there was no way for the Commission to determine how those input costs were different for Verizon California. The Commission claims to have addressed the latter problem by adjusting the New Jersey rates by using a computer model developed by the Federal Communications Commission ("FCC"). But because that model uses generic national inputs, rather than state- and carrier-specific data, the FCC does not allow state commissions to use it to impose rates on carriers.

Because the Commission was unable to determine whether the rates it adopted reflect Verizon California's costs, its order must be set aside. The Commission's assertion that other rate proposals that were submitted also failed to reflect Verizon California's costs is unavailing. The Commission is not authorized to set an unlawful rate merely because other rates would be

unlawful as well.  Likewise unavailing is the Commission's observation that the rates are "interim," and its promise to revisit the admitted problems in the rates when it establishes permanent rates at a later date.  Federal law does not establish different legal standards for "interim" and "permanent" rates; any rate must reflect Verizon California's costs in California.

Second, by importing the New Jersey rates, the Commission contradicted several of its own orders on the proper cost of capital and depreciation rates to be used to determine Verizon California's costs.  The Commission's failure to explain these departures from precedent independently renders the Commission's decision arbitrary and capricious.

Third, the Commission acted arbitrarily in basing the rates on those adopted in New Jersey, while refusing to consider even more recent rates adopted for Verizon California's affiliate in Florida – rates that the Commission admitted were "equally valid."

Fourth, the Commission violated due process.  After ruling that it would not set interim rates based on rates set in another state, the Commission abruptly reversed itself, allowed parties to propose New Jersey rates without any detailed support, and gave Verizon California only eleven days to respond.  This was an insufficient opportunity for Verizon California to identify and explain all of the substantive flaws with the New Jersey rate proposal.

The facts relevant to judicial review of the Commission's decision are readily ascertainable from the administrative record.  Thus, no genuine issue of material fact relating to the Commission's error in entering the Rate Order exists, and summary judgment is proper.

## II.  BACKGROUND AND STATEMENT OF FACTS

### A.  The Statutory and Regulatory Framework

The Telecommunications Act of 1996, 47 U.S.C. §§ 151, *et seq.* ("the Act"), requires incumbent local exchange carriers such as Verizon California to permit entrants to use parts of the incumbent's network, called "unbundled network elements" or UNEs.  47 U.S.C. § 251(c)(3).  UNEs include the local loop (the copper wire connecting a customer's premises to the incumbent's central office), and certain switching equipment the incumbent uses to route calls.[1]

---

[1] *See, e.g.,* Comments of Verizon California in Support of Interim Pricing Proposals, July 30, 2002 ("7/30/02 Verizon California Comments") at 3 (App. at 255).  As approved by the Court at the case management conference on October 1, the parties will produce an Appendix of Excerpts of the

The Act provides that, if the incumbent and entrant cannot agree on the terms of access to UNEs, either party may petition the appropriate state regulatory agency, such as the California Public Utilities Commission, to determine these matters in accordance with the Act. *Id.* § 252(b)(1). The Act directs state commissions to set rates for UNEs that are "just and reasonable," that are "based on the cost . . . of providing the . . . network element," and that may "include a reasonable profit." *Id.* § 252(d)(1). Federal district courts have jurisdiction to review state commission rate decisions under the Act. *Id.* § 252(e)(6).

The FCC has adopted regulations implementing the pricing rules of the Act, and state commissions must apply these rules in setting UNE prices. Accordingly, "states must set prices for interconnection and unbundled network elements based on the forward-looking, long-run, incremental cost methodology" known as Total Element Long Run Incremental Cost ("TELRIC"). *In the Matter of Implementation of the Local Competition Provisions in the Telecommunications Act of 1996*, First Report & Order, 11 F.C.C.R. 15,499 ¶ 620 (Aug. 8, 1996) ("*Local Competition Order*"); *see also* 47 C.F.R. § 51.503(b) (TELRIC pricing rules); *Local Competition Order* ¶¶ 672-732. The FCC has described TELRIC as a "forward-looking" methodology that sets UNE prices "based on the most efficient technology deployed in the incumbent LEC's current wire center locations." *Id.* at ¶¶ 685, 690. This approach is designed to ensure that the "existing network design" used by the incumbent providing the UNE is not ignored, while at the same time basing prices on "efficient, new technology that is compatible with the existing infrastructure." *Id.* at ¶ 685. The FCC's rules also require the state commission to consider various other factors specific to the incumbent's operations in the state.

## B. Proceedings Before the Commission

In early 1997, after a series of administrative proceedings, the Commission adopted UNE rates for Verizon California pursuant to the pricing requirements of the Act.[2] This Court subsequently upheld those rates, rejecting claims that "the particular [pricing] model adopted by

---

Administrative Record, which will be submitted at the end of briefing. At that time, updated briefs will be filed that include page references to the Appendix.

[2] Decision ("D.") 97-01-022, 1997 Cal. PUC LEXIS 22, at *33 & App. A.

1   the CPUC is unlawful under the Act." Order Regarding Parties' Motions for Summary Judgment,

2   *GTE Calif. Inc. v. Conlon et al.*, No. C 97-1757 SI, 1998 U.S. Dist. LEXIS 17556, at *28 (N.D.

3   Cal. Sept. 29, 1998) (Illston, J.) Verizon California, which is the incumbent local exchange

4   carrier in most parts of California not served by SBC Pacific Bell and has over 3 million

5   California retail customers, has made these rates available to all entrants over the last six years.

6   Since that time, a number of entrants have leased UNEs from Verizon California and successfully

7   entered the market in Verizon California's service area, offering local telecommunications service

8   in competition with the services provided by Verizon California.[3]

9          In late 1997, at the Commission's direction, Verizon California submitted cost studies to

10  be used to establish permanent UNE rates that would replace the rates that had been set for

11  Verizon California earlier that year.[4]  The Commission did not take any further formal action to

12  establish new UNE rates for Verizon until early 2002, when Tri-M Communications, an entrant,

13  petitioned the Commission to establish an expedited procedural schedule for setting revised UNE

14  rates in California.[5]  Verizon California agreed that the Commission should implement a process

15  to set  new permanent UNE rates, but insisted that it be given the opportunity to file new cost

16  studies for that purpose.[6]  The officials presiding over the proceeding – Commissioner Henry

17  Duque and Administrative Law Judge ("ALJ") Dorothy Duda – agreed that it would be "unwise

18  to set permanent UNE rates for Verizon based on cost studies and models filed in 1997," and

19  acknowledged that the Commission had not moved forward in this area in part because of its

20  "own resource constraints which have been exacerbated by the recent energy crisis in

21  California."[7]  Accordingly, in July 2002 the Commission established a schedule for setting

22

---

23  [3] *See* CPUC Report, "The Status of Telecommunications Competition in California,"
    http://www.cpuc.ca.gov/word_pdf/REPORT/25311.pdf (Feb. 28, 2003) at 15.

24  [4] *See* Assigned Commissioner's and ALJ's Ruling Granting Motion of Tri-M Communications. to

25  Intervene, May 31, 2002 ("5/31/02 Assigned Commissioner's Ruling") at 4 (App. at 75).

    [5] Motion by Tri-M Communications. for Ruling Establishing Expedited Procedural Schedule, Jan. 4, 2002
26  at 1 (App. at 2).

    [6] *See* Reply of Verizon California to Motion by Tri-M Communications for Ruling Establishing Expedited
27  Procedural Schedule, Jan. 22, 2002 (App. at 13).

28  [7] 5/31/02 Assigned Commissioner's Ruling at 4-5 (App. at 75-76).

1  permanent rates that would begin with Verizon California and other interested parties filing new

2  cost studies and supporting data that conform to the FCC's TELRIC rules.[8]

3  While its consideration of new permanent UNE rates was ongoing, the Commission

4  established an expedited proceeding to establish revised "interim" UNE rates until the new

5  permanent rates were in place.  In apparent recognition that any such interim rates must be

6  supported by substantial evidence demonstrating compliance with federal pricing standards, the

7  presiding ALJ ordered that all proposals must comply with TELRIC and must include a

8  "comprehensive description of the methodology" and extensive supporting materials.[9]  The ALJ

9  required parties to submit their proposals by July 30, 2002 and established an expedited schedule

10  for comments on proposals that would be completed in less than six weeks.[10]  The presiding

11  officers expressly *rejected* a suggestion made by several entrants that the Commission establish

12  interim rates for Verizon California based on rates adopted for another Verizon carrier in another

13  state – a proposal that Verizon California opposed as arbitrary and unlawful.[11]

14  Verizon California submitted a proposal, as directed, on July 30, 2002.[12]  Verizon

15  California expressed concern that the extremely expedited procedure the Commission had set up

16  to establish interim rates could result in the imposition of an arbitrary reduction in its rates not

17  based upon substantial evidence and not in compliance with the FCC's TELRIC principles.[13]

18  Verizon California expressly invoked its right to due process and explained that the Commission

19  could not arbitrarily impose new rates on it – even on an interim basis – without holding a "full

20  and fair proceeding" to determine the propriety of new rates.[14]  While preserving its right not to

21  have unsupported rates imposed on it, Verizon California nonetheless proposed a voluntary

---

[8] Administrative Law Judge's Ruling Revising Schedule for Setting Unbundled Network Element Rates, July 23, 2002 ("7/23/02 ALJ Ruling"), at 2-3 (App. at 182-83).

[9] 7/23/02 ALJ Ruling, at 2, 4-5.  (App. at 182, 184-85).

[10] *Id.* at 2.  (App. at 182).

[11] June 28, 2002 Prehearing Conference Transcript ("6/28/02 PHC Tr.") at 1673.  (App. at 169).

[12] *See* Comments of Verizon California in Support of Interim Pricing Proposals, July 30, 2002.  (App. at 253).

[13] *Id.* at 1-2 (App. at 253-54).

[14] *Id.*

reduction of certain of its UNE rates on an interim basis to meet the Commission's goal of expeditiously reducing rates.[15] This proposal used Verizon California's existing, Commission-approved UNE rates, which were based on Verizon California's costs, as a starting point, and proposed reductions based on a cost trend analysis described in detail in Verizon California's submission.[16] Verizon California explained that this voluntary proposal would allow the Commission to set lower rates on an expedited basis without extensive litigation, and thereby allow the parties to focus their attention and resources on preparing extensive cost studies for the permanent phase of the proceeding.[17]

Three days later, the Commission abruptly did an about-face and announced that it would reverse its "earlier limitation on considering application of UNE rates from another state in which Verizon operates." The Commission solicited new proposals based on UNE rates in other states, giving parties just over two weeks to submit the new proposals and giving Verizon California only eleven days to respond to any proposals submitted by the entrants.[18]

In response, the Joint Commenters for the first time proposed that the Commission could base rates for Verizon California on the UNE rates that the New Jersey Board of Public Utilities had recently set for Verizon California's affiliate *in New Jersey*[19] – rates that are among the lowest in effect for any Verizon California affiliate nationwide.[20]

In addition to filing comments objecting to the Joint Commenters' proposal and showing that it suffered from numerous legal and evidentiary problems described below, Verizon California requested on October 25, 2002 that the Commission supplement its record by taking official notice of the UNE rates just adopted by the Florida Public Service Commission – a

---

[15] *Id.* at 3-4 (App. at 255-56).

[16] *Id.*

[17] *Id.* at 2 (App. at 254).

[18] Assigned Commissioner and Administrative Law Judge's Ruling Reversing Limitation on Interim Pricing Proposals, Aug. 23, 2002 ("8/23/02 Assigned Commissioner Ruling"), at 3-4. (App. at 585-86).

[19] *See* Response of AT&T Communications of California, WorldCom, Inc. and The Utility Reform Network to Ruling Reversing Limitation on Interim Pricing Proposals, Sept. 9, 2002 (App. at 610); Declaration of Terry L. Murray in Support of Response of AT&T Communications of California *et al.*, Sept. 9, 2002 ("Sept. 9, 2002 Murray Decl.") (App. at 622).

[20] *See* Declaration of Michele Meny on Behalf of Verizon California, Sept. 9, 2002, Att. 1 (App. at 604).

- 6 -

1     request that the Commission subsequently granted.[21]  The Florida rates were the product of a

2     litigated proceeding, were set more recently than the New Jersey rates, and established UNE

3     prices that are much higher than the New Jersey rates proffered by the Joint Commenters.[22]

4         On November 14, 2002, the ALJ issued a Draft Decision that proposed to adopt the Joint

5     Commenters' New Jersey proposal with certain minor modifications.[23]  Verizon California's

6     comments on the Draft Decision reiterated the company's previous opposition to the wholesale

7     importation of New Jersey rates, setting forth all of the objections discussed below.[24]

8         On March 13, 2003, the Commission issued the Rate Order, D.03-03-033, 2003 Cal. PUC

9     LEXIS 168 (App. at 1024), adopting the New-Jersey-based interim UNE rates proposed in the

10    Draft Decision.  It slashed Verizon California's loop rate by 37%, the port rate by 54%, and the

11    switching rate by 60%.  *Id.* App. A.

12        On August 21, 2003, the Commission adopted an order (the "Rehearing Order," D.03-08-

13    074, 1993 Cal. PUC LEXIS 923 (App. at 1101)) denying Verizon California's timely application

14    for rehearing of the Rate Order.  The Rehearing Order concludes that the interim rates comply

15    with TELRIC and the Act because they "approximate Verizon's costs in California."  1993 Cal.

16    PUC LEXIS 923, at *10 (App. at 1103).  The Commission acknowledged that the New Jersey

17    rates upon which the interim rates were based used different cost of capital and depreciation rates

18    than the Commission had previously approved, and promised that these rates "will be

19    reconsidered and may be adjusted when permanent UNE rates are established."  *Id.*  The

20    Commission also rejected Verizon California's contentions that the record did not support the

21

---

22    [21] Petition of Verizon California to Reopen the Proceeding for the Limited Purpose of Taking Official
      Notice, Oct. 25, 2002 ("Verizon 10/25/02 Petition") (App. at 771); D.03-03-033, Interim Opinion

23    Establishing Interim Rates for Network Elements of Verizon California, (March 13, 2003) ("Rate Order"),
      2003 Cal. PUC LEXIS 168, at *115, Ordering Paragraph 10  (App. at 1054)).

24    [22] *See* Sept. 9, 2002 Murray Decl., Ex. TLM-1 (App. at 636); Attachment to Verizon 10/25/02 Petition,

25    Vote Sheet, Florida PSC, Dkt. No. 990649B-TP, Oct. 14, 2002, Issue 9(a) (App. at 787-88); Attachment to
      Verizon 10/25/02 Petition, Rate Tables, Florida PSC, Dkt. No. 990649B-TP, Oct. 14, 2002, App. A-1

26    (App. at 796).

      [23] *See* Draft Interim Opinion Establishing Interim Rates for Network Elements of Verizon California

27    ("Draft Decision"), App. A (App. at 833).

28    [24] *Id.* at 5-11 (App. at 839-45).

1    New Jersey-based rates and that the proceedings leading up to the adoption of the interim rates

2    violated due process. *Id.* at 8-13.

3    **III.    STANDARD OF REVIEW**

4         Section 252(e)(6) of the 1996 Act grants district courts jurisdiction to hear the claims of

5    "any party aggrieved" by a state commission "determination" of UNE rates.  Rates, whether

6    called "interim" or "permanent," are subject to judicial review.  *See U.S. West Communs., Inc. v.*

7    *TCG Oregon*, 35 F. Supp. 2d 1237, 1249 (D. Ore. 1998) (*"U.S. West v. TCG"*).

8         The Court considers *de novo* "whether the CPUC's decisions are in compliance with the

9    Act and the FCC's implementing regulations," *AT&T Communs. of Calif. v. Pacific Bell Tel. Co.*,

10   228 F. Supp. 1086, 1099 (N.D. Cal. 2002) (Wilken, J.) (*"AT&T v. Pacific Bell"*) (citing *U.S. West*

11   *Communs., Inc. v. MFS Intelenet, Inc.*, 193 F.3d 1112, 1117 (9th Cir. 1999) (*"MFS Intelenet"*)),

12   and the scope of *de novo* review includes both "procedural and substantive compliance with the

13   requirements of the Telecommunications Act." *U.S. West Communs., Inc. v. Hix*, 986 F. Supp.

14   13, 19 (D. Colo. 1997).  Thus, whenever an "issue requires interpreting the FCC's regulations, the

15   Court reviews the CPUC's decision . . . *de novo.*" *AT&T v. Pacific Bell*, 228 F. Supp. 2d at 1099.

16   This exacting standard of review reflects the fact that state agencies have no special "expertise

17   and familiarity" with respect to federal law, and thus are "not entitled to the deference afforded a

18   federal agency's interpretation of its own statutes." *Orthopaedic Hosp. v. Belshe*, 103 F.3d 1491,

19   1495 (9th Cir. 1997).

20        The Court reviews the Commission's "underlying factual determinations" under the

21   "arbitrary and capricious" standard, which requires that the Commission's factual determinations

22   be based on "substantial evidence" in the record.  *See MFS Intelenet*, 193 F.3d at 1124 n.15 (9th

23   Cir. 1999); *AT&T v. Pacific Bell*, 228 F. Supp. 2d at 1099.

24

25

26

27

28

# IV. ARGUMENT

## A. The Adoption of New Jersey-Based Rates Is Arbitrary, Capricious, And Contrary To Federal Law

### 1. The Commission Must Set Rates Based On Verizon *California's* Costs To Provide Elements Of Its *California* Network

State commissions must set UNE rates based on the forward looking costs the *specific carrier* incurs to provide its network elements *in the state where its facilities are located*. The Commission appears to accept this fundamental premise. *See* Rehearing Order, 1993 Cal. PUC LEXIS 923, at *10 (App. at 1103) (asserting interim rates were "adjusted to approximate Verizon's costs in California").

The Act provides that the rate for a UNE must be "based on the cost ... of providing the ... network element." 47 U.S.C. § 252(d)(1)(A)(i). This language expressly links the price to the cost of the network element provided *by the individual carrier*. The only relevant cost is that incurred by Verizon *California* to provide elements of *its* network *in California*, not the costs that an affiliate might incur in providing elements of another network in another state. That is why the statute defines "network element" by reference to the equipment or other portions of the network that *the incumbent carrier actually uses*:

> "The term 'network element' means a facility or *equipment used in the provision of a telecommunications service.* Such term also includes features, functions, and capabilities *that are provided by means of such facility or equipment*, including subscriber numbers, databases, signaling systems, and information sufficient for billing and collection or *used in the transmission, routing, or other provision of a telecommunications service*."

47 U.S.C. § 153(29) (emphasis added). The statutory definition links the element whose cost must be determined to the facilities and equipment actually used by the provisioning carrier, and thus requires consideration of the specific costs of the carrier whose rates are being set.[25]

The FCC has confirmed that each state has the responsibility for setting UNE rates on the basis of the forward-looking costs of the carrier *in that state*. "The Act contemplates the states

---

[25] Verizon California Inc. and Verizon New Jersey Inc. are separate corporations, and each is a separate "carrier" under the 1996 Act. *See* 47 U.S.C. §§ 153(26), § 153(32) (defining "local exchange carrier" as "any person" providing certain services and defining "person" to include a "corporation"). Each of Verizon California and Verizon New Jersey has its own management and books of account, and each corporation is subject to the regulatory regime of the state where it provides service.

1  *independently* setting rates based on federally established guidelines." *In the Matter of Joint*

2  *Application by BellSouth Corp. et al.*, 17 F.C.C.R. 9018, at ¶ 24 (May 15, 2002) ("*Georgia-*

3  *Louisiana § 271 Order*") (emphasis added). The FCC has further explained that "UNE rates are

4  set by state commissions *based on state-specific costs and demand.*" *In the Matter of Application*

5  *of Verizon New Jersey Inc. et al.*, 17 F.C.C.R. 12275, at ¶ 53 (June 24, 2002) ("*Verizon New*

6  *Jersey § 271 Order*") (emphasis added); *see also Local Competition Order* ¶ 114 (expressing

7  expectation that, in establishing UNE prices, states will "consider local technological,

8  environmental, regulatory, and economic conditions").

9        The FCC's TELRIC methodology – which the states must follow in setting prices for

10  UNEs, *Local Competition Order* at ¶ 620 – inherently requires independent, state-specific

11  determinations of a number of critical cost inputs. For example, to ensure that UNE rates are

12  based upon the incumbent carrier's "existing network design," the FCC's TELRIC rules require

13  that UNE pricing be based on "the incumbent LEC's current wire center locations." *Id.* at ¶ 685;

14  47 C.F.R. § 51.505(b)(1). *See also Verizon Commons. v. FCC*, 535 U.S. 467, 505 (2002)

15  (TELRIC accounts for "the current geography of [the specific carrier's] terminal locations").

16  These wire center locations – *i.e.*, the specific buildings where local lines are concentrated and

17  switched – are by definition unique to each state. TELRIC also requires state commissions to

18  account for the specific carrier's "*actual* total usage" or "fill factor" to establish the cost of a UNE

19  on a per-unit basis. *Local Competition Order* at ¶ 682 (emphasis added). Because actual usage

20  varies from state to state, determination of the appropriate fill factor also requires a state-specific

21  analysis. Basing costs on another carrier's network in a distant state, rather than the carrier's

22  costs specific to the state in which the element is provided, would not comply with the FCC's

23  requirement that UNE rates be "based on state-specific costs and demand." *Verizon New Jersey*

24  *§271 Order* ¶ 53.

25        Federal law requires the Commission to set UNE rates for Verizon California based on the

26  cost to *Verizon California* of providing the elements of its California network – not based on the

27  cost to Verizon New Jersey of providing elements of the New Jersey network.

28

## 2. The Record Does Not Support a Finding That The Interim Rates Reflect California Costs

The administrative record does not support a finding that the interim rates reflect Verizon California's costs of providing UNEs, as required by the FCC's TELRIC methodology. As the Rehearing Order acknowledges, the Commission's conclusion that the interim rates "approximate Verizon's costs in California" is based entirely on the September 9, 2002 submission of the Joint Commenters regarding the rates set by the New Jersey Board of Public Utilities for Verizon New Jersey. 1993 Cal. PUC LEXIS 923, at *10, *14-*15 (App. at 1103-04). The Joint Commenters' submission, however, contains no evidence comparing Verizon New Jersey and Verizon California in any of the basic respects essential to determining forward-looking costs pursuant to TELRIC. Thus, the record contains no evidence of the two carriers' wire center configurations, traffic levels, or costs of labor, land, or capital – each a key input to determining Verizon California's TELRIC-based UNE costs. The record also lacks evidence comparing the two states' geography, topography, population density, or urban-rural mix. Without such basic information, the Commission could not rationally conclude that the two carriers' costs are sufficiently similar to import New Jersey costs.

The Joint Commenters' submission provides no basis for concluding that these cost drivers are sufficiently similar to justify reliance on the New Jersey rates. Instead, the Joint Commenters' expert simply hypothesized that Verizon California's forward-looking costs for UNEs *should be similar in many respects*" to costs in New Jersey "if for no other reason than both companies are subsidiaries of the same parent and have access to the same vendor contract prices and sharing of overhead costs." September 9, 2002 Murray Decl. ¶ 17 (emphasis added) (App. at 634). This statement is an admission that: (1) there has been no showing that the costs are *in fact* the same or similar for the two carriers; and (2) at least in *some respects*, the costs experienced by the two carriers are in fact likely to be different. In addition, the hypothesis that costs will be similar because the carriers are "subsidiaries of the same parent" is refuted by the New Jersey rates themselves; as discussed below, the New Jersey rates are about one-half the

1    amount the Florida Commission set for another Verizon subsidiary within weeks of Joint

2    Commenters' proposal.

3         The Commission could not rationally or lawfully find that the New Jersey rates reflect

4    Verizon California's forward-looking costs – or even that the New Jersey rates reflect the

5    forward-looking costs of Verizon New Jersey – because the cost studies and other evidentiary

6    materials upon which the New Jersey rates are based are not in the record. The *only* information

7    the Commission had about the New Jersey rates was *the rates themselves*. By acting on that

8    incomplete record, the Commission violated the FCC's regulations, which mandate that the

9    record "include any . . . cost study" the state commission relies upon in setting UNE rates. 47

10   C.F.R. § 51.506(e)(2).

11        Verizon California repeatedly challenged this blind reliance on New Jersey rates and

12   identified various assumptions and inputs used in New Jersey that do not apply in California.[26]

13   The Commission admits, for example, that "the depreciation and cost of capital rates used by the

14   New Jersey Board of Public Utilities differ from those previously used by the Commission."

15   Rehearing Order, 1993 Cal. PUC LEXIS 923, at *10 (App. at 1103). The Commission comes

16   close to conceding that the importation of these assumptions into its determination of interim

17   UNE rates for Verizon California was erroneous by stating that these depreciation and cost of

18   capital rates "will be reconsidered and may be adjusted when permanent UNE rates are

19   established." *Id.* But the Commission never comes to grips with Verizon California's argument

20   that these and other inputs used by the New Jersey Board demonstrate that the New Jersey rates

21   do not comply with TELRIC even in New Jersey, and certainly preclude their use to establish

22   Verizon California's UNE rates even on an interim basis. Instead, the Commission states that it

23   "will not second-guess the work of another state commission" and instructs Verizon California to

24   "seek remedy by appealing the order of the New Jersey Board if it believes that errors were made

25   there." Rate Order, 2003 Cal. PUC LEXIS 168, at *67 (App. at 1041).   This unquestioning

26

27   [26] *See* Opening Comments of Verizon California on Nov. 14, 2002 Draft Decision of ALJ Duda
     Establishing Interim Rates at 7-11 (App. 939-43); Response of Verizon California to the CLECs' Aug 20,
28   2002 & Sept. 9, 2002 Comments, Sept. 20, 2002 ("Verizon 9/20/02 Comments"), at 20-21 (App. 681-82).

reliance on the action of another state commission abdicates the Commission's responsibility to make an *independent* determination of Verizon California's costs pursuant to TELRIC. The Commission's astonishing suggestion that Verizon California take up the evidentiary deficiencies in *California* rates by appealing the *New Jersey* Board's order is not only illusory (Verizon California has no standing to challenge the New Jersey Board's action), but also demonstrates the inherent problem with its New Jersey-based approach.

The Commission cannot respond to these errors because there is no basis in the record for determining whether the New Jersey-based prices reflect *Verizon California's* costs.

### 3. The Commission's Use of the Synthesis Model to Adjust the New Jersey Rates Does Not Render Them TELRIC-Compliant

The Commission erroneously contends that it has accounted for cost differences between New Jersey and California by using the FCC's "Synthesis Model" to adjust the New Jersey rates. Rate Order, 2003 Cal. PUC LEXIS 168, at *60 (App. at 1039); Rehearing Order, 1993 Cal. PUC LEXIS 923, at *9 (App. at 1103). This contention assumes that the New Jersey rates themselves comply with TELRIC – an assumption which, as just noted, the record does not support. But even if the New Jersey rates reflected Verizon New Jersey's costs, the Commission acted arbitrarily in concluding that the Synthesis Model could be used to adjust those rates to derive rates that would reflect Verizon California's costs. The FCC's precedents amply demonstrate that the Commission cannot use the FCC's Synthesis Model to make up for the Commission's failure to base Verizon California's UNE rates on Verizon California's costs.

The Synthesis Model was developed by the FCC as a means for apportioning universal federal service subsidies and is generally based upon "nationwide" input values "rather than company-specific" costs. *In the Matter of Federal-State Joint Board on Universal Service*, 14 F.C.C.R. 20,156, at ¶ 30 (Nov. 2, 1999) ("*USF Tenth Report & Order*"); *id.* at ¶ 90 (in adopting Synthesis Model, FCC was "not attempting to identify any particular carrier's cost"). Because many of the key inputs are not state- or carrier-specific, the FCC has "repeatedly cautioned against using the Synthesis Model to set [UNE] rates." *In the Matter of Application by Verizon Maryland Inc.*, 18 F.C.C.R. 5212, at ¶ 89 (March 19, 2003); *see also In the Matter of Application*

1   *of Verizon New England Inc. et al*, 16 F.C.C.R. 8988, at ¶ 32 (April 16, 2001) ("The [FCC] has

2   never used the [Synthesis Model] to determine rates for a particular element, nor was it designed

3   to perform such a task."); *In the Matter of Application by Bell Atlantic New York*, 15 F.C.C.R.

4   3953, at ¶ 245 (Dec. 22, 1999) (Synthesis Model "was developed for the purpose of determining

5   federal universal service support, and it may not be appropriate to use nationwide values for other

6   purposes, such as determining prices for unbundled network elements.").

7        Because the Synthesis Model uses many nationwide input values, the Commission cannot

8   use it to correct the New Jersey-based cost inputs to reflect costs in California. As discussed

9   above, the FCC's TELRIC methodology requires state commissions to base UNE rates on a

10  variety of cost inputs that are specific to the incumbent carrier whose network is at issue –

11  including, for example carrier-specific fill factors, depreciation rates, and cost-of-capital

12  calculations. *See Local Competition Order* ¶¶ 682 (fill factors); ¶¶ 702-03 (depreciation and cost

13  of capital). The Synthesis Model, however, uses nationwide averages for depreciation and cost-

14  of-capital and generic fill factors that do not reflect the usage levels of any specific incumbent

15  carrier. *See USF Tenth Report & Order* at ¶¶ 431-32 (adopting nationwide averages for

16  depreciation and cost of capital); *Verizon New Jersey § 271 Order* at ¶ 31 (observing that

17  Synthesis Model applies "generic values" for fill factors). Because the model does not use state-

18  or carrier-specific values for these inputs, it was impossible for the Commission to use the

19  Synthesis Model to transform the New Jersey-based inputs it relied upon into inputs that properly

20  reflect the TELRIC costs incurred by Verizon California.

21        The FCC has recently underscored the problem with using the Synthesis Model, with its

22  national inputs, in the context of setting UNE rates. The FCC rejected a challenge to the New

23  Jersey Board's *carrier-specific* fill factor calculation that was lower than the generic values used

24  in the Synthesis Model, explaining that the model's fill factor values were not established for the

25  purpose of establishing the proper rate for a particular carrier's UNEs. The proper fill factor for a

26  given carrier in a given state must instead be based upon "*a fact-intensive, state-specific*

27  *determination.*" *Verizon New Jersey § 271 Order* at ¶ 31 (emphasis added). The Synthesis

28  Model can no more be used to adjust New Jersey UNE rates for California than it can be used to

attack New Jersey UNE rates. The Commission, by its own admission, has not performed a "fact-intensive, state-specific determination" of any aspect of Verizon California's costs, including the fill factors used to transform total network costs into costs per unit of usage. Use of the Synthesis Model to adjust New Jersey rates perpetuates this problem rather than resolving it.

The Commission nevertheless claims that its use of the model was "*reasonably* consistent with how the FCC has used the Synthesis Model when comparing UNE rates across states." Rate Order, 2003 Cal. PUC LEXIS 168, at *109, Conclusion of Law 12 (App. at 1052) (emphasis added). As the use of the qualifier "reasonably" portends, the Commission's use of the model is, in fact, not consistent with how the FCC has used it. The FCC has *prohibited* use of the Synthesis Model, with its nationwide inputs, to establish state-specific UNE rates, and has used the model for interstate comparisons only for an entirely different purpose. When deciding whether to allow an incumbent carrier to offer long-distance services, the FCC engages in a broad analysis designed to determine the progress the carrier has made in opening its local exchange market to competition. One component of that analysis is a review of UNE rates approved by a state commission to determine whether TELRIC errors have been made. When the FCC determines that a TELRIC error has occurred, it has on occasion used approved UNE rates from other states, adjusted using the Synthesis Model, as a benchmark for the "limited purpose," *Georgia-Louisiana § 271 Order* ¶ 25, of determining whether the "error is substantial" enough to warrant rejection of the carrier's long-distance entry application. *In the Matter of Joint Application of SBC Commmuns. et al,*, 16 F.C.C.R. 6237, at ¶ 81 (Jan. 22, 2001) ("*SBC Kansas-Oklahoma § 271 Order*"). Using the Synthesis Model as a rough benchmark to assess the magnitude of an already-identified TELRIC error is a far cry from using it to impose on a carrier rates that fail to account for that carrier's state-specific inputs.

Even when the FCC uses the Synthesis Model for this limited benchmarking purpose, the FCC recognizes that the Model does not fully account for differences between states and between carriers and therefore considers various factors relating to the similarity of the two states. These factors include whether the two states "have geographic similarities" (in particular, whether they are "adjoining"), whether they have "similar, although not necessarily identical, rate structures for

comparison purposes," and whether the two carriers in question are part of the same Bell

Operating Company ("BOC"). *See Verizon New Jersey § 271 Order* at ¶ 49; *SBC Kansas-*

*Oklahoma § 271 Order* at ¶ 82. Despite its reliance on the Synthesis Model as justification for

relying upon New Jersey rates, the Commission has completely disregarded these issues, and has

engaged in *no* effort to assess whether California and New Jersey are similar enough for the

Synthesis Model to produce meaningful results even for a limited benchmarking purpose. In fact,

none of the criteria listed above are satisfied: New Jersey does not adjoin California, has few

geographic similarities relevant to telecommunications pricing, and lacks a significantly similar

rate structure.[27] Moreover, GTE California (now called Verizon California) was not part of the

Bell System and thus was never part of Bell Atlantic, the BOC that owned the company now

called Verizon New Jersey. Consequently, as the FCC has recognized, "Bell Atlantic and GTE's

systems developed from significantly different sources and, as a result, differ significantly from

each other." *In re Application of GTE Corp. and Bell Atlantic Corp.*, 15 F.C.C.R. 14,032, at ¶

286 (June 16, 2000).

The Synthesis Model is a limited tool that is used for a limited purpose. It is not a

talisman for converting rates that are based solely on Verizon New Jersey's network into

TELRIC-compliant rates that may be imposed upon Verizon California.

### 4. The Commission's Use of the New Jersey Rates Cannot Be Justified By Comparison To Other Rate Proposals

While acknowledging the "multitude of cost modeling issues" that it had not yet

addressed, the Commission states that it is "reluctantly" relying on the New Jersey rates because

the alternatives presented were, in the Commission's view, more seriously flawed. Rate Order,

2003 Cal. PUC LEXIS 168, at *59 (App. at 1039). Of the three proposals submitted, the

Commission believed that the New Jersey rates "would best serve as a proxy for Verizon's UNE

rates in California. Thus, the issue is not whether the New Jersey rates are supported by the

---

[27] The Commission explicitly acknowledged in the Rate Order that without a change in the Verizon California UNE rate structure, "it would be difficult to use the New Jersey rates" in California. Rate Order, 2003 Cal. PUC LEXIS 168, at *62 (App. at 1040).

evidentiary record, but rather whether the *proposal* we adopted is supported by the evidentiary record." Rehearing Order, 1993 Cal. PUC LEXIS 923, at *14 (App. at 1104) (emphasis in original). If the Commission is suggesting that the claimed inferiority of other proposals excuses the Commission from the obligation to identify record evidence to support a finding that the rates adopted reflect Verizon California's forward-looking costs, it is wrong.

The Commission has no authority to set rates for UNEs unless it complies with the Act and the FCC's implementing regulations. Those controlling federal authorities require a state commission, as a precondition to establishing a UNE rate, to determine that the rates are "based on the cost" of the element, determined in accordance with TELRIC. *See* 47 U.S.C. § 252(d)(1); 47 C.F.R. § 51.505(b). The Commission appears to concede that it must comply with the Act and the FCC's regulation in setting UNE rates, whether interim or permanent. Rehearing Order, 1993 Cal. PUC LEXIS 923, at *9 (App. at 1103) ("we could reasonably adopt interim UNE rates in a manner that is consistent with the 1996 Act and the FCC's regulations"). If the record before the Commission does not support a finding that the rates reflect Verizon California's costs, the Commission lacks authority to adopt them. It does not gain such authority merely because another set of proposed rates also would fail to comply with the Act and the FCC's regulations.

The Commission expressed concern that the UNE rates it had set for Verizon California in 1997 were out of date. Rate Order (App. at 1028). This concern would justify more rapid action by the Commission in the long-standing proceeding to evaluate Verizon California's forward-looking costs – a proceeding that has been stalled because of the Commission's focus on the energy crisis and "competing telecommunications priorities." Rehearing Order, 1993 Cal. PUC LEXIS 923, at *4 (App. at 1102). But it does not justify a shortcut around the federal requirement to base UNE rates on a determination of Verizon California's costs. The record does not support a determination that the New Jersey rates adopted by the Commission reflect Verizon California's forward-looking costs. If the Commission could not find any of the other proposals reflect such costs, then it had no basis for changing the existing UNE rates. Although under no legal obligation to do so, Verizon had proposed – and thus agreed not to challenge – reductions in the existing rates on an interim basis in order to be responsive to the Commission's concerns.

1    The Commission rejected Verizon California's proposal as insufficient and was therefore left

2    with no choice but to leave in place the existing rates that the Commission had previously found

3    complied with the Act pending conclusion of the ongoing proceeding to establish new permanent

4    rates based on a proper record.

**5.    The Rate Order's Unlawful Rates Cannot Be Excused On The Ground That They Are Interim**

7        The Commission finally claims that the TELRIC errors are of no moment because the

8    rates are "interim" and "will be subject to adjustment once final rates are set." Rate Order, 2003

9    Cal. PUC LEXIS 168, at *60 (App. at 1039).  The Act, however, does not authorize the

10   Commission to violate federal law when setting interim rates.  UNE rates, whether interim or

11   permanent, must be based on Verizon California's cost of providing the element at issue,

12   determined in accordance with TELRIC. *See* 47 U.S.C. § 252(d)(1)(A)(i); 47 C.F.R. § 51.505(b);

13   *supra* at 3, 9-10.  The Commission made its Rate Order effective upon issuance, meaning that the

14   rates have been binding on Verizon California since March 13, 2003.  Rate Order, 2003 Cal. PUC

15   LEXIS 168, at *117 (App. at 1055).  A state commission cannot escape judicial review of UNE

16   rates that are binding upon an incumbent carrier by calling them interim and contending that any

17   errors will be fixed later on. *See U.S. West v. TCG*, 35 F. Supp. 2d at 1249 (rejecting entrant's

18   claim that incumbent's interim UNE rates were not subject to challenge on appeal).  This rule is

19   sensible and necessary because state commissions cannot evade the strictures of the 1996 Act and

20   the FCC's TELRIC rules simply by calling their rates "interim."

21       Moreover, even assuming that the Commission at some point decides to perform a true-up

22   in response to current errors, the Rate Order's current rates will have caused Verizon California

23   irreparable harm.  The Commission has provided no indication of when it will complete its

24   evaluation of Verizon California's costs and adopt a true-up to correct the errors in the current

25   order.  As evidenced by the repeated postponements of the filing of new UNE cost studies, the

26   true-up decision could be years away.  In the meantime, Verizon California will suffer irreparable

27   harm because the interim UNE rates give entrants an unfair competitive advantage that allows

28   them to take customers away from Verizon California. *Multi-Channel TV Cable Co. v.*

1     *Charlottesville Quality Cable Operating Co.*, 22 F.3d 546, 552 (4th Cir. 1994) ("possibility of

2     permanent loss of customers" and the attendant "loss of goodwill" constitute irreparable injury);

3     *see also Gateway E. Ry. Co. v. Terminal R.R. Ass'n*, 35 F.3d 1134, 1140 (7th Cir. 1994); *Reuters*

4     *Ltd. v. UPI, Inc.*, 903 F.2d 904, 909 (2d Cir. 1990). This customer loss cannot be cured through

5     the abstract prospect of a true-up of the Commission's erroneous rates years hence. There is,

6     moreover, no guarantee that financially-shaky entrants that have received the unearned benefit of

7     below-cost rates will still exist and have the resources to pay back their windfall – let alone do so

8     willingly without additional protracted litigation.

9        The Commission calls these concerns "speculative" because Verizon California has failed

10    to prove to the Commission's satisfaction that the interim rates are "artificially low." Rehearing

11    Order, 1993 Cal. PUC LEXIS 923, at *10-*11 (App. at 1103). Verizon California's view that the

12    interim rates are far lower than its forward-looking costs is well-founded: the interim rates are 30-

13    60% below the rates that they replaced and are among the lowest UNE rates set by any state

14    commission for any Verizon company throughout the country. But more fundamentally, the

15    Commission's rejoinder misses the point. Because the Commission has not made any findings

16    regarding Verizon California's forward-looking costs, the Commission has no way of knowing

17    how the interim rates compare to those costs. By promising a true-up and acknowledging the

18    need for a more thorough study of the methodological issues pertaining to UNE rates, the

19    Commission concedes the possibility that the interim rates are below Verizon California's costs

20    determined pursuant to TELRIC. The true-up mechanism does not adequately protect Verizon

21    California from the harm it will suffer if, as the Commission concedes is possible, the interim

22    rates are below Verizon California's costs.

23        Federal law does not allow the Commission to adopt UNE rates that violate TELRIC

24    subject to a promise of future correction, particularly where, as here, the promise may not be

25    fulfilled. Because the Rate Order violates this basic principle, it must be vacated.

26

27

28

## B. The Commission Acted Arbitrarily and Capriciously by Reversing Its Prior Policies Without Explanation

The Rate Order is also arbitrary and capricious because it abruptly and without explanation reverses the Commission's long-standing positions. *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42 (1983) ("an agency changing its course . . . is obligated to supply a reasoned analysis for the change"); *Telecommunications Res. & Action Ctr. v. FCC*, 836 F.2d 1349, 1357 n.19 (D.C. Cir. 1988) ("an agency must supply a persuasively reasoned explanation for modifying its earlier position that is itself rationally grounded in the evidence before the agency"); *Interstate Nat. Gas Ass'n of Am. v. FERC*, 756 F.2d 166, 170 (D.C. Cir. 1985) (agency may "change its course . . . only with a full and complete explanation"). The Rate Order contradicts past Commission decisions on the proper approach to the calculation of two of the key cost inputs to the determination of UNE rates.

First, the Rate Order directly contradicts the Commission's prior rulings on Verizon California's cost of capital, *i.e.*, the return required to attract the capital needed for the investment in the network element. By importing New Jersey rates, the Rate Order adopts the 8.8% cost of capital that the New Jersey Board applied to Verizon California's New Jersey affiliate. *See In re Bell Atlantic-New Jersey, Inc.*, Dkt. No. TO00060356, 2002 WL 1997939 (N.J. Bd. Pub. Utils. adopted Nov. 20, 2001, released March 6, 2002) ("New Jersey UNE Order") Part III.C.1.c. The Commission thereby abandoned its prior ruling that the correct cost of capital for Verizon California is 10.51%, *see* D.96-08-021, 1996 Cal. PUC LEXIS 841, at *139-*140, Conclusion of Law 32, and its prior express rejection of a proposed 9.46% cost of capital based on data from outside California because it did not "reflect fully the risks faced by companies that operate in the California market." *Id.* at *69.

Second, the Commission also contradicts its past ruling on Verizon California's depreciation, *i.e.*, the time period over which the capital cost of equipment used to provide UNEs, such as digital switches and fiber cable, should be recovered. The Commission had previously determined that Verizon California should employ depreciation lives used in financial accounting for these assets, on the basis that such schedules "appear realistic for a firm having to operate in a

competitive environment." *See* D.96-08-021, 1996 Cal. PUC LEXIS 841, at *80, *112-*114, *140 Conclusion of Law 33. The New Jersey Board did not use financial accounting depreciation lives but instead borrowed depreciation lives used by the FCC in a different context. The result is depreciation lives that are almost uniformly longer than those the Commission had previously adopted: 15 years instead of 10 for digital switches, and 7.5 to 12.5 years longer for cable. *Compare* D.96-08-021, 1996 Cal. PUC LEXIS 841, at *112-*114 *with* New Jersey UNE Order Part III.C.2. The effect of adopting longer depreciation lives for key assets is to decrease the annual cost associated with the assets and consequently to reduce the UNE rates.

The Commission concedes that "the depreciation and cost of capital rates used by the New Jersey Board of Public Utilities differ from those previously used by the Commission." Rehearing Order, 1993 Cal. PUC LEXIS 923, at *10 (App. at 1103). Although the Commission admits "concern" about these "methodological differences," it claims that its use of the Synthesis Model to account for cost differences "overrides" these concerns. Rate Order, 2003 Cal. PUC LEXIS 168, at *60 (App. at 1039). But the Synthesis Model does not – and cannot – adjust depreciation or cost-of-capital amounts because it relies upon generic nationwide values for these inputs. *See supra* at 13-16. The Commission's policy reversals thus remain entirely unexplained and are therefore arbitrary and capricious.

The Commission's Rehearing Order further denies that it is required to explain its departure from precedent because the Commission is "establishing UNE rates in accordance with the 1996 Act, something we have not yet done." Rehearing Order, 1993 Cal. PUC LEXIS 923, at *18 (App. at 1105). On the contrary, the interim rates replace the UNE rates that the Commission had previously established pursuant to the Act, that were based on forward-looking costs, and that this Court had affirmed were consistent with the Act. *See supra* at 3-4. The Commission established those rates using different cost of capital and depreciation inputs than those that underlie the new interim rates.

In addition, the Commission's action contradicts its approach to setting forward-looking depreciation and cost of capital rates for SBC Pacific Bell. In setting TELRIC-based UNE rates for SBC Pacific Bell, the Commission concluded that depreciation should be based on financial

accounting lives, and that a proposal to depreciate even one input – copper cable – over a longer period amounted to a "significant error." D.96-08-021, 1996 Cal. PUC LEXIS 841, at *80; D.98-02-106, 1998 WL 1739407, at *18, *21. The Commission also decided that cost of capital should reflect "the risks faced by companies that operate in the California market" under the regulatory and competitive conditions prevailing *in California.* D.96-08-021, 1996 Cal. PUC LEXIS 841, at *69-*70; D.98-02-106, 1998 WL 1739407, at *21. These conclusions led the Commission to set cost of capital and depreciation rates for SBC Pacific Bell that were similar to those previously used to set Verizon California's UNE rates, and significantly higher than those used in New Jersey. The unexplained departure from the Commission's consistent rulings on cost of capital and depreciation was arbitrary and capricious.

Ultimately, the Commission's real answer to these inconsistencies is to promise that the cost of capital and depreciation inputs will be "reconsidered" – and, presumably, the errors corrected – when it sets permanent UNE rates. Rehearing Order, 1993 Cal. PUC LEXIS 923, at *18 (App. at 1105); Rate Order, 2003 Cal. PUC LEXIS 168, at *60 (App. at 1039). As discussed above, however, the Commission may not violate the law, even temporarily, in establishing UNE rates. Because the Commission acted in an arbitrary and capricious manner in setting interim rates based upon cost of capital and depreciation assumptions that contradict past Commission decisions without explanation, the Rate Order must be vacated.

### C. The Commission Acted Arbitrarily In Selecting New Jersey While Ignoring Florida

Finally, assuming that the Commission could base Verizon California's UNE rates on another state's UNE rates, the Commission's decision to rely solely upon New Jersey rates – and to ignore entirely much higher Florida rates – was arbitrary and capricious.

The Commission justified its use of New Jersey rates "because [they] are among the most recent forward-looking, TELRIC-based rates from another Verizon state." *Id.* at 31-32. Nevertheless, the Commission summarily rejected even more recent rates approved by the Florida Commission – rates that the Commission admitted were *"equally valid." Id.* at 32 & n. 28 (emphasis added).

The Florida UNE rates are significantly higher than the New Jersey rates for almost every network element, and are around double the New Jersey rates for key elements such as tandem switching (135% higher), end-office switching (90% higher), 2-wire loops (79% higher), and 4-wire loops (107% higher). *See* Attachment, Verizon California Notice of Ex Parte Communication, Nov. 6, 2002 (App. at 825) (statewide average Florida rates); Rate Order, App. B (statewide average New Jersey rates) (App. at 1056). This large variation in rates adopted for two Verizon jurisdictions within months of one another should have at least caused the Commission to *consider* whether it could reasonably rely on any recent Verizon TELRIC rates to set UNE rates for Verizon California.

Instead, the Commission simply ignored the Florida rates, explaining that "if we were to continually revise our decision for each new state that adopts UNE rates, we might never issue a decision." Rate Order, 2003 Cal. PUC LEXIS 168, at *49 n.28 (App. at 1036). But Verizon submitted the Florida Commission's ruling *nearly five months before the Commission adopted its decision.*[28] The Commission thus had ample time to take these rates into consideration.

An agency acts in an arbitrary and capricious manner when it ignores evidence that bears directly on a consideration that the agency itself has identified as critical for its decision. *See Sarasota-Charlotte Broadcasting Corp. v. FCC*, 976 F.2d 1439, 1440, 1442 (D.C. Cir. 1992) (where FCC adopted integration of ownership and management as criterion for awarding broadcast license, arbitrary and capricious for agency "to refuse to consider evidence" of integration presented by applicant); *United States Steel Corp. v. PUC*, 29 Cal. 3d 603, 608 (1981) (Commission is subject to "duty to consider all facts that might bear on [the] exercise" of its discretion and to "consider alternatives presented and factors warranting adoption of those alternatives"). By identifying another state's UNE rates as a critical factor in setting Verizon California's rates, yet ignoring Florida rates that the Commission admits were "equally valid," the Commission failed this test.

---

[28] Verizon California submitted the Florida commission's ruling on October 25, 2002 – less than two weeks after it was issued. *See* Verizon 10/25/02 Petition (App. at 771).

### D. The Rate Order Was Entered in Violation of Verizon California's Due Process Rights Under the U.S. Constitution

When a state commission establishes a carrier's UNE rates, the affected carrier has "a property interest in such rates" that is protected by the constitutional right of due process. *MCI Telecomm. Corp. v. Bellsouth Telecomm., Inc.*, 9 F. Supp. 2d 766, 772 (E.D. Ky. 1998). This right of due process entitles Verizon California both to "notice and an opportunity to be heard" and to a decision made "by a reasonable decision maker who does not act arbitrarily or capriciously and who bases the decision upon the evidence presented." *U.S. West v. TCG*, 35 F.Supp.2d 1237 (citing *Jordan v. City of Lake Oswego*, 734 F.2d 1374, 1376 (9th Cir. 1984)).

The Commission failed to give Verizon California meaningful notice by accepting a last-minute proposal and deprived Verizon California of a meaningful opportunity to be heard. At the end of an already-truncated proceeding, the Commission abruptly reversed its bar on costing proposals based on other states' rates, gave carriers just over two weeks to put together new proposals, and gave Verizon California *eleven days* to respond. *See supra* at 5-6.

This schedule was insufficient to give Verizon California a meaningful opportunity to respond and to give the Commission sufficient evidence on which to reach a principled decision. Under the best of circumstances, eleven days is not enough time to address the complex cost issues presented. But the Commission compounded the problem by refusing to enforce its earlier ruling requiring all costing proposals to "contain a comprehensive description of the methodology used to arrive at interim rates" along with "supporting cost studies or models, workpapers and supporting materials." 7/23/02 ALJ Ruling at 2 (App. at 182). The order further held that cost studies and cost models must be presented in a manner that allows the parties to "reasonably understand how costs are derived" by disclosing "all underlying data, formulae, computations, software, engineering assumptions, and outputs." *Id.* at 4. The Joint Commenters' New Jersey rates proposal – which the Commission adopted in its Interim Order – does not even attempt to comply with these fundamental requirements. The Joint Commenters did not submit *any* of the cost study information underlying their proposed New Jersey rates – let alone any of the underlying data, formulae, computations, software, engineering assumptions and the like.

1  Without such information (and with just eleven days to respond), Verizon California was

2  deprived of a fair opportunity to examine and critique the proposal.

3  In the extremely limited time that Verizon California was given to respond, it identified a

4  number of significant flaws in the Joint Commenters' proposal to import the New Jersey rates,

5  including the use of inappropriate depreciation rates and the misuse of the Synthesis Model. In its

6  comments on a draft of the decision that the Commission later adopted as the Rate Order, Verizon

7  California elaborated upon its earlier critique of the New Jersey rates and identified flaws in a

8  number of other inputs into those rates. The Commission refused to consider these additional

9  arguments on the ground that Verizon California presented them "after the evidentiary record had

10 been closed." Rehearing Order, 1993 Cal. PUC LEXIS 923, at *16 (App. at 1105). The

11 Commission has thereby proven the prejudice caused by its unreasonably truncated schedule.

12 Had the Commission complied with its prior rulings, and had the Commission given Verizon

13 California more than eleven days to respond, Verizon California would have been able to present

14 its additional arguments as part of the evidentiary record, and the Commission would have been

15 obliged to consider them.

16 Because the Commission established a process that both deprived Verizon California of a

17 meaningful opportunity to be heard and produced an arbitrary decision not based on meaningful

18 evidence, Verizon California's constitutional right to due process of law has been violated.

19 **V.    CONCLUSION**

20 For the foregoing reasons, the Rate Order must be vacated, the interim UNE rates

21 enjoined, and the matter must be remanded to the Commission so that it may set UNE rates for

22 Verizon California that comply with federal law.

23

24 Dated: October 6, 2003                          MUNGER, TOLLES & OLSON LLP.

25                                                                BURTON A. GROSS

26                                                                Attorneys for Plaintiff
                                                                   VERIZON CALIFORNIA INC.
27

28