**GAUNTLETT & ASSOCIATES**
David A. Gauntlett (SBN 96399)
James A. Lowe (SBN 214383)
Brian S. Edwards (SBN 166258)
Christopher Lai (SBN 249425)
18400 Von Karman, Suite 300
Irvine, California 92612
Telephone:  (949) 553-1010
Facsimile:  (949) 553-2050
info@gauntlettlaw.com
jal@gauntlettlaw.com
bse@gauntlettlaw.com

Attorneys for Defendants
Akanoc Solutions, Inc.,
Managed Solutions Group, Inc.
and Steve Chen

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| LOUIS VUITTON MALLETIER, S.A., | Case No.: C 07-3952 JW (HRL) |
| Plaintiff, | |
| vs. | **SUPPLEMENTAL JURY INSTRUCTION NO. 1** |
| AKANOC SOLUTIONS, INC., MANAGED SOLUTIONS GROUP, INC., STEVEN CHEN AND DOES 1 THROUGH 10, INCLUSIVE, | |
| Defendants. | |

**JURY INSTRUCTION No. \_\_\_**

CONTRIBUTORY COPYRIGHT INFRINGEMENT

You have now heard all of the evidence with respect to Plaintiff's claim that each of the defendants contributorily infringed the following copyrighted works:

| |
|---|
| *Multicolor Monogram Black Print* |
| *Multicolor Monogram White Print* |

You must first decide if any of the following websites directly infringed one or both of the copyrighted works listed above: 315EC.com, Ape168.com, Atozbrand.com, At88.com, bag1881.net, Bag4Sell.com, Bag925.com, BigWorldShoes.com, Bizyao.com, BrandFashioner.com, Brandstreets.com, BrandStyleSales.com, Brandtrading.net, BuyMyShoes.net, Cn-nike.us, DreamyShoes.com, Eastarbiz.com, Eastarbiz.net, EBuyNike.com, ECshoes.com, EGoToBuy.com, EMSYou.com, EShoes99.com, Eshoes99.net, Famous-Shop.com, Fansjersey.com, GucciFendi.com, GZ-Free.com, HandBagSell.com, Imitation-Gold.com, InNike.com, Lkkfashion2006.com, Ilouisvuitton.com, LongTimeGroup.com, Louis-vuitton-bags.org, Louisvuittonbagz.com, LoverNike.com, LuxeLike.com, Luxury2Us.com, LVBagz.com, lv-handbag.com, lv-nike.com, MailGoods.com, Myshoes99.com, Nike558.com, Nikeexp.com, NikeShoesOffer.com, NikeWTO.com, NonStopBeauty.com, PFCStation.com, PickHipHop.com, PickYourGoods.com, PickYourOrder.com, Pro-Jordan.com, Queen-bag.com, Replica-ebags.com, Replicabc.com, RRGNL.com, Shoes-Order.com, SoApparel.com, Soapparel.net, Sportsvendor.biz, Sunny7Shoes.com, Super925.com, Swisshours.biz, Top-handbag.com, Tytrade88.com, Watchesnreplica.com, WatchesReplica.net, WatchNReplica.net, WearOnline.net, Wendy929.com, Wendy929.net, Wendyluxury.com, WorldKeyTrade.com, YeahEBay.com, Yseenet.net.

For each website that you find directly infringed one or both copyrighted works, you must then decide as to each Defendant whether each defendant is liable for contributing to the direct infringement by each particular website you found to be directly infringing. You must separately consider each defendant's contributory liability as to each copyrighted work at each website.

Plaintiff must prove the following elements by a preponderance of the evidence.

Preponderance of the evidence means that you are persuaded by the evidence that it is more probably true than not true.

## ELEMENT ONE – DIRECT INFRINGEMENT

To prove that its copyrighted works were directly infringed at specific websites, you must be persuaded by a preponderance of the evidence that (1) Plaintiff is the owner of the copyrighted works, and (2) a specific accused website violated one or more of Louis Vuitton's exclusive rights as the owner of the copyrighted works to:

1. Reproduce the copyrighted work(s); or
2. Prepare derivative works based upon the copyrighted works; or
3. Distribute copies of the copyrighted works to the public by sale; or
4. Display the copyrighted works publicly.

You separately must make this determination as to each accused website and as to each copyrighted work.

## ELEMENT TWO – KNOWLEDGE OF DIRECT INFRINGEMENT AT WEBSITES

For each website, if any, that directly infringed one or both copyrighted works, you must next separately determine whether each Defendant is individually liable for contributing to that direct infringement. First, that defendant must have had actual knowledge of *infringing conduct* by each individual website at the time of the infringement. Generalized knowledge is not sufficient. You may not infer that any Defendant had such knowledge simply because the infringing materials were stored on an Internet server.

## ELEMENT THREE – INDUCE, CAUSE OR MATERIALLY CONTRIBUTE TO DIRECT INFRINGEMENT

Third, the Plaintiff must prove by a preponderance of the evidence that each Defendant induced, caused, or materially contributed to the direct infringement of the copyrighted work(s) at each specific directly infringing website, if any.

You must consider the liability of each Defendant separately as to each of the above elements. If you find that Plaintiff has failed to prove any element by a preponderance of the

1  evidence, your verdict should be for that particular Defendant.

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1  17 U.S.C. § 106 ("Subject to sections 107 through 122, the owner of copyright under this title has the exclusive rights to do and to authorize any of the following: (1) to reproduce the copyrighted work in copies or phonorecords; (2) to prepare derivative works based upon the copyrighted work; (3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending; (4) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly; (5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly; and (6) in the case of sound recordings, to perform the copyrighted work publicly by means of a digital audio transmission.")

*Ellison v. Robertson,* 357 F.3d 1072, 1076 (9th Cir. 2004) ("To prove a claim of direct copyright infringement, a plaintiff must show that he owns the copyright and that the defendant himself violated one or more of the plaintiff's exclusive rights under the Copyright Act.")

*Perfect 10, Inc. v. Visa Intern. Service Ass'n,* 494 F.3d 788, 795 (9th Cir. 2007) ("This court and the United States Supreme Court (Supreme Court) have announced various formulations of the same basic test for such liability. We have found that a defendant is a contributory infringer if it (1) has knowledge of a third party's infringing activity, and (2) "induces, causes, or materially contributes to the infringing conduct.")

*A & M Records, Inc. v. Napster, Inc.,* 239 F.3d 1004, 1019 (9th Cir.2001) ("[O]ne who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another, may be held liable as a 'contributory' infringer. [citations omitted] Put differently, liability exists if the defendant engages in personal conduct that encourages or assists the infringement. *Id.*

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.,* 545 U.S. 913, 936-937 (2005) ("[T]he inducement rule, too, is a sensible one for copyright. We adopt it here, holding that one who distributes a device with the object of promoting its use to infringe copyright, as shown by clear expression or other affirmative steps taken to foster infringement, is liable for the resulting acts of infringement by third parties.")

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster Ltd.*, 545 U.S. 913, 936 (2005) ("The rule on inducement of infringement as developed in the early cases is no different today.  Evidence of "active steps ... taken to encourage direct infringement," such as advertising an infringing use or instructing how to engage in an infringing use, show an affirmative intent that the product be used to infringe, and a showing that infringement was encouraged overcomes the law's reluctance to find liability when a defendant merely sells a commercial product suitable for some lawful use . . . . [Emphasis added; citation and footnote omitted.]")

*Perfect 10, Inc. v. Amazon.com, Inc.,* 508 F.3d 1146, 1170 (9th Cir. 2007), ("Within the general rule that "[o]ne infringes contributorily by intentionally inducing or encouraging direct infringement," *Grokster,* 545 U.S. at 930, 125 S.Ct. 2764, the Court has defined two categories of contributory liability: "Liability under our jurisprudence may be predicated on actively encouraging (or inducing) infringement through specific acts . . . or on distributing a product distributees use to infringe copyrights, if the product is not capable of 'substantial' or 'commercially significant' noninfringing uses." *Id.* at 942, 125 S.Ct. 2764 (Ginsburg, J., concurring) (quoting *Sony,* 464 U.S. at 442, 104 S.Ct. 774); *see also id.* at 936-37, 125 S.Ct. 2764.  [Emphasis added.]")

*E-Pass Technologies, Inc. v. 3Com Corp.,* 473 F.3d 1213, 1222-23 (Fed.Cir.2007) (implying that in order to successfully make out an inducement of infringement claim based on direct infringement by a defendant's customers, the plaintiff should be able to point to at least one end user that infringed).

*Tiffany, Inc. v. Ebay, Inc.* 576 F.supp.2d 463, 508, 510, fn. 37 (S.D.N.Y. 2008) ("Under copyright law, generalized knowledge that copyright infringement may take place in an Internet venue is insufficient to impose contributory liability. [citing *A & M Records, Inc. v. Napster, Inc.,* 239 F.3d 1004, 1027 (9th Cir.2001) ("The mere existence of the Napster system, absent actual notice and Napster's demonstrated failure to remove the offending material, is insufficient to impose contributory liability."); *Hendrickson v. eBay, Inc.,* 165 F.Supp.2d 1082, 1088-90 (C.D. Cal. 2001) (holding that generalized notice of copyright infringements was insufficient to establish knowledge for the purpose of contributory liability)"].

*Tiffany, Inc. v. Ebay, Inc.* 576 F.supp.2d 463, 508 (S.D.N.Y. 2008) ("For the following reasons, the Court concludes that while eBay clearly possessed general knowledge as to counterfeiting on its website, such generalized knowledge is insufficient under the *Inwood* test to impose upon eBay an affirmative duty to remedy the problem.")

*Tiffany, Inc. v. Ebay, Inc.* 576 F.supp.2d 463, 510 (S.D.N.Y. 2008) ("[C]ourts have also rejected a standard that would reach conduct that only might be infringing. Instead, courts have required a much higher showing that a defendant knew or had reason to know of specific instances of actual infringement.")

*Perfect 10, Inc. v. Visa Int'l Service Ass'n*, No. C 04-0371 JW, 2004 WL 1773349, at *4 (N.D. Cal. Aug. 5, 2004) ("Defendants' conduct does not begin to approach the level of involvement that existed in the cases enumerated above, where material contribution was found. **In each of those cases, the defendants' conduct specifically assisted the infringing activity itself.** Here, the websites would be every bit as capable of copying and distributing Plaintiff's copyrighted works regardless of whether they employed Defendants' services. As a result, Plaintiff has not adequately pled a claim for contributory copyright infringement.") (Emphasis added.)

*Fonovisa, Inc. v. Cherry Auction, Inc.,* 76 F.3d 259, 264 (9th Cir. 1996) ("Flea market proprietor liable as a contributory [copyright] infringer when it "actively strives to provide the environment and market for counterfeit recording sales to thrive.")

*Perfect 10, Inc. v. Visa Int'l Service Ass'n,* 494 F.3d 788, 798 (9th Cir. 2007) ("In *Fonovisa*, we held a flea market proprietor liable as a contributory infringer when it provided the facilities for and benefitted from the sale of pirated works. The court found that **the primary infringers and the swap meet were engaged in a mutual enterprise of infringement** and observed that it would be difficult for the infringing activity to take place in the massive quantities alleged without the support services provided by the swap meet. . . . The *Fonovisa* court found liability because the swap meet operator knowingly provided the 'site and facilities' for the infringing activity.") (Emphasis added.)

3 MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT § 12.04[A][3][a] (2008): "In order to be deemed a contributory infringer, the authorization or assistance must bear some direct relationship to the infringing acts, and **the person rendering** such **assistance or giving** such **authorization must be acting in concert with the infringer**." (Emphasis added.)

*Lockheed Martin Corp. v. Network Solutions, Inc.,* 985 F. Supp. 949, 962 (C.D. Cal. 1997), *aff'd,* 194 F.3d 980 (9th Cir. 1999) ("In *Fonovisa*, the Ninth Circuit adopted *Hard Rock*'s analogy between landlord/tenant vicarious liability and trademark law contributory liability in order to extend the *Inwood* standard to the flea market context. *Fonovisa*, 76 F.3d at 265. There, too, the court found that **the flea market operator provided more than space, and was directly and substantially involved in the businesses of the infringing vendors**. *Id.* at 264.") (Emphasis added.)

18 U.S.C. §2511(2)(a)(i) provides that "a provider of wire communication service to the public shall not utilize service observing or random monitoring except for mechanical or service quality control checks."

18 U.S.C. § 2702(a)(1) prohibits disclosure of the content of communications in electronic storage:

> A person or entity providing an electronic communication[1] service to the public shall not knowingly divulge to any person or entity the contents of a communication while in electronic storage by that service.

18 U.S.C. 2511(2)(a)(i) provides:

> [A] provider of wire communication service to the public shall not utilize service observing or random monitoring except for mechanical or service quality control checks.

Pursuant to 18 U.S.C. § 2510(17), the term "electronic storage" in Section 2702 is defined broadly as follows:

> (A) any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof; and
> (B) any storage of such communication by an electronic communication service for the purposes of backup protection of such communication.[2]

*Quon v. Arch Wireless Operating Co., Inc.*, 309 F.Supp.2d 1204, 1207 (C.D.Cal. 2004) Title II of the ECPA created the Stored Communications Act ("SCA"). ("The ECPA's legislative history indicates that Congress passed the SCA to prohibit a provider of an electronic communications service 'from knowingly divulging the contents of any communication while in electronic storage by that service to any person other than the addressee or intended recipient.'")

*Dyer v. Northwest Airlines Corporations,* 334 F.Supp.2d 1196, 1199 (D.N.D. 2004)  ("The ECPA definition of 'electronic communications service' clearly includes Internet service providers such as America Online, as well as telecommunications companies whose cables and phone lines carry internet traffic.")

*Konop v. Hawaiian Airlines, Inc.,* 302 F.3d 868, 879 (9th Cir. (Cal.) 2002) ("The parties agree that the relevant 'electronic communications service' is Konop's Website, and that the website was in 'electronic storage.'")

---

[1] An "electronic communication" is defined as: any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce..." 18 U.S.C. § 2510(12).

[2] Either part of the definition of "electronic storage" is sufficient under the SCA. *Quon,* 309 F.Supp.2d at 1207, citing to S.Rep. No. 99-541, at 35; 1986 U.S.C.C.A.N at 3590.