Pages 1 - 20

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE WILLIAM H. ALSUP

APPLE, INC.,                        )
                                    )
            Plaintiff,              )
                                    )
   VS.                              ) NO. C 08-3251 WHA
                                    )
PSYSTAR CORPORATION,                )
                                    )San Francisco, California
            Defendant.              )  Thursday
                                    )  September 24, 2009
_____)  8:00 a.m.

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

**For Plaintiff**:          Townsend and Townsend and Crew LLP
                            Two Embarcadero Center - 8th Floor
                            San Francisco, California  94111-3834
                      BY:   **JAMES G. GILLILAND, ESQ.**
                            **MEHRNAZ BOROUMAND SMITH, ESQ.**


**For Defendant**:          Camara and Sibley, LLP
                            2339 University Boulevard
                            Houston, Texas 77005
                      BY:   **KIWI CAMARA, ESQ.**
                            **KENT RADFORD, ESQ.**

*Reported By:   Debra L. Pas, CSR 11916, CRR, RMR, RPR*
        *Official Reporter - US District Court*
        *Computerized Transcription By Eclipse*

**P R O C E E D I N G S**

1

2  **SEPTEMBER 24, 2009**              **9:11 a.m.**

3

4        **THE COURT:**  All right.  Let's hear the other case.

5        **THE CLERK:**  Civil 08-3251, Apple versus Psystar.

6        Counsel, can you please state your appearances for

7  the record?

8        **MR. GILLILAND:**  Good morning, your Honor.  Jim

9  Gilliland Mehrnaz Boroumand Smith from Townsend, Townsend and

10  Crew for plaintiff Apple.

11        **MR. CAMARA:**  Good morning, your Honor.  Kiwi Camara

12  and Kent Radford from Camara and Sibley for Psystar

13  Corporation.

14        **THE COURT:**  Mr. Gilliland, this is your motion.

15  Please, go head.

16        **MR. GILLILAND:**  Thank you, your Honor.

17        This is Apple's motion to reopen discovery for a

18  short time for a limited purpose and to dismiss or stay the

19  parallel lawsuit that's been filed in Florida by Psystar

20  against Apple.

21        As the Court knows from our status conference on

22  September 4th, this issue has arisen because after the close

23  of discovery in the --

24        **THE COURT:**  Well, wait a minute.  Be fair.  You

25  stonewalled the entire time on this Snow Leopard.  They asked

1   you for the evidence, you refused to give it to them.   You

2   ruled it out of the case.

3        Then after discovery closed, you chose -- not them,

4   you chose -- to release Snow Leopard.   Then they sued.

5        So you make it sound like something happened after

6   the close of discovery and it's all their fault.   It's your

7   fault.   You could have kept that in the case and did not.

8   That's your big problem.

9        Now, I'm being honest with you.   I know the record

10   in this case.   You have -- you, and that other case we had

11   here, you have taken it upon yourself to decide when you are

12   going to give the other side discovery.

13        You didn't want to give them lost profit

14   information.   We had to litigate that like crazy.   Finally,

15   it took me hours to get through it.   I got through it.   You

16   won that one.   Though if it turns out it's relevant in some

17   way, the jury is going to be told that it's adverse to you

18   because you stonewalled on that.

19        Now you have stonewalled on Snow Leopard.

20   Throughout.   They wanted the information.   You said no.   You

21   ruled it out of the case.

22        Now you want to bring it back into the case because

23   they used it against to bring that lawsuit in Florida.

24        I don't see much equity on your side.   That's what

25   I'm feeling right now.   I want to give you a fair chance to

1  talk me out of it.

2          MR. GILLILAND:  Thank you, your Honor.  I

3  appreciate that.

4          I would ask the Court when you have a moment to

5  take a look at the declaration of Mehrnaz Boroumand Smith and

6  the attachments to it, specifically Exhibits 6, 7, 8, 9, 10

7  and 11.

8          THE COURT:  Just a moment.  Whose deposition?

9          MR. GILLILAND:  Mehrnaz Boroumand Smith.  It was

10 submitted in support of Apple's motion.

11         THE COURT:  I have so many papers here.  I'm going

12 to hand it down to you.  Motions to strike.  I've got motions

13 to dismiss.  I have so many pieces of paper here.  You find

14 it for me in all this material.

15         You lawyers need to learn that you have got to

16 present short, simple, sweet things for the poor judge.

17 Otherwise, how am I supposed to keep all of this straight?

18         (Brief pause.)

19         THE COURT:  I read their document request and they

20 asked you for this stuff.  I don't see how you can get out of

21 the fact that they asked you for it and you -- and you said

22 no.

23         Are you denying that?  Are you denying it,

24 Mr. Gilliland?  Please answer my question.

25         MR. GILLILAND:  I will.

1          Your Honor, the original document requests defined

2   the term "Mac OS" and we objected to it as overbroad because

3   it included, as so defined, everything that went back to the

4   beginning of the Mac --

5          **THE COURT:**  They asked for Snow Leopard several

6   times.  And I read the deposition, the Q & A where they said,

7   "You are asking for Snow Leopard.  That's not out yet.  We

8   are not giving you that."

9          **MR. GILLILAND:**  So those are the deposition

10  excerpts that I have referred to you in the Boroumand Smith

11  declaration, your Honor.

12          And, yes, we objected on the grounds of relevance,

13  but we did not -- but the witnesses went ahead and answered

14  all the questions.  And we objected --

15          **THE COURT:**  Not the one I saw.

16          **MR. GILLILAND:**  Well, that's why I'm -- there were

17  six witnesses who were asked about Snow Leopard, your Honor,

18  and every single one of them testified in response, answered

19  the questions that were put to them regarding Snow Leopard.

20  And those are the exhibits I just referred your Honor to.

21          **THE COURT:**  Let me find what it was that they said

22  that I read earlier and see if I somehow -- all right.  Here

23  is one.  Let's see.  Someone named -- I don't know whose

24  deposition this.  I see Boroumand Smith, but that's not the

25  witness.

1          There is an objection:

2          "To the extent this calls for information

3      regarding Snow Leopard, that hasn't been

4      released."

5          **MR. GILLILAND:**  Probably, your Honor, you are

6   looking at the deposition of Simon Patience.

7          And, yes, Miss Smith did say that in the

8   deposition.  However, Mr. Patience was then -- then went

9   ahead and answered the questions.

10         **THE COURT:**  Well, the witness just said Snow

11  Leopard isn't released yet.

12         **MR. GILLILAND:**  But then there were further

13  questions, your Honor.  They have quoted to you that portion,

14  but not continued.

15         Indeed, if you look at Psystar's opposition brief

16  to our motion, on page eight they testify that Mr. Patience,

17  Simon Patience -- they write:

18         "Simon Patience testified about this at

19      length in his deposition."

20         And by "this" they are talking about how the

21  technological protection measures in Snow Leopard were

22  changed.

23         So they say that he -- Mr. Patience testified about

24  this at length.  We did not stop any of the discovery on

25  this.

1      THE COURT:  Why was the objection made then?

2      MR. GILLILAND:  Well, that's a different question.

3   I'm sure your Honor might say there is no such thing as a

4   relevance objection in a deposition.  But be that as it may,

5   we -- we objected for the record, but then allowed the

6   discovery to proceed.

7          And as you will see in each of the deposition

8   excerpts of all the other witnesses, they all answer

9   questions regarding Snow Leopard.

10      THE COURT:  So you are telling me there was never a

11  single question that was refused based upon the fact that it

12  hadn't been released yet?

13      MR. GILLILAND:  That's correct, your Honor.

14      THE COURT:  All right.  Now, Mr. Camara?  Let me

15  just get to the bottom of this.

16      MR. GILLILAND:  That's fine, your Honor, of course.

17      THE COURT:  All right.  You misled me if that's

18  true.  Show me a question that was not answered on account of

19  this objection.

20      MR. CAMARA:  I didn't mean to mislead you, your

21  Honor.  What I meant to quote, and I think the brief reflects

22  what I meant, was that they repeatedly objected to Snow

23  Leopard questions on grounds of relevance.

24      THE COURT:  Where did the witness refuse -- where

25  did they refuse -- first on depositions.  Where did they

1  refuse to allow a witness to answer based upon that

2  objection?

3          MR. CAMARA:  They never instructed a witness not to

4  answer in the depositions.

5          THE COURT:  So what's the problem then?

6          MR. CAMARA:  Well, throughout their depositions

7  they maintained that Snow Leopard was not part of this case.

8          We are not contesting that.  We don't say that they

9  should have answered Snow Leopard questions.  We agree that

10  Snow Leopard was not part of this case.  That's why we didn't

11  press them.  That's why we didn't move to compel.  Instead we

12  took a different option.  We sued them over Snow Leopard in a

13  different case.

14          We don't think the objections were improper.  We

15  think they were correct.

16          THE COURT:  Where on documents, where did they

17  refuse to give you documents on account of Snow Leopard not

18  being a product?

19          MR. CAMARA:  Throughout the written discovery, but

20  if you look in particular at Apple's responses to

21  interrogatory, we asked an interrogatory that referred to a

22  Mac OS -- and this is on pages four and five our response

23  brief.  The definition of Mac OS that we used said:

24          "All versions of Mac OS, including

25      without limitation Mac OS X, Mac OS 9 and Mac

1       OS 8."

2               And Snow Leopard is Mac OS 10.6.  So that's

3   included in that definition.  It's also included within the

4   phrase "all versions."

5               Apple objected to that definition and refused to

6   answer on the basis of their objection.

7               Apple objected.

8               "Apple objects generally to the

9           definition of Mac OS license agreement

10          because it seeks information regarding all

11          license agreements covering all versions of

12          Apple's operating system that have ever

13          existed, regardless of whether each license

14          agreement as defined is at issue in this

15          action."

16              Then Apple stated how it would construe the

17  request.  Apple went on:

18              "Apple will construe each request

19          referring to a Mac OS license agreement as

20          referring to the software license agreement

21          for a Mac OS X Leopard."

22              And, again, we are not saying they did anything

23  wrong.  It's okay if the case includes only Leopard.  We are

24  simply saying that that's how everyone has conducted the

25  litigation in this case and we agree with it.

1          We think Snow Leopard is not in this case and,

2   therefore, is properly brought in Florida.

3          It's not a motion to compel.  It's simply evidence

4   of how the litigation has been understood by the parties

5   throughout fact discovery.

6          **THE COURT:**  All right.  I misunderstood your point,

7   but I now -- now I get your point.

8          All right.  So why isn't is that a correct

9   statement, that even if you allowed the witnesses to answer

10   and you objected on relevance grounds and construed the case

11   to be limited to OS X Leopard, as opposed to Snow Leopard,

12   and now that it's inconvenient to you, you want to go back

13   and change that?  Why is it that you are in that situation?

14          **MR. GILLILAND:**  Your Honor, thank you for the

15   question.

16          What we are suggesting is not only is this

17   inconvenient to Apple, but it's inconvenient to the Federal

18   Court system and to all the parties.

19          We have a lawsuit here that your Honor has devoted

20   an enormous amount of time to.  It involves the question of

21   copyright infringement.  It involves the question of a

22   violation of the Digital Millennium Copyright Act.

23          The license at issue is precisely the same, the

24   wording about restricting the use of Apple's software to

25   Apple's computers in this case as it would be in Florida.

1          The question of circumventing the technological

2   protection measure is, as Dr. Kelly's declaration discloses,

3   virtually the same in that case and in this one.  We can

4   resolve all of these issues by just another 60 days worth of

5   work here, as opposed to having two separate lawsuits 3,000

6   miles apart.

7          Psystar has argued that it's important to Psystar

8   to find out if its business is lawful, period.  We agree.  We

9   think it's unlawful.  We agree that it's important to resolve

10  that question.  It doesn't make sense if we are trying to

11  resolve it to have two different lawsuits, one of which has

12  just started, as opposed to having a trial in this case in

13  March instead of January and doing whatever additional

14  discovery has to occur in the next 30 days.

15          **THE COURT:**  But your company knew that they had

16  this other product coming out.  They could have said, We will

17  construe this to include Snow Leopard, too, so that we will

18  get it all wrapped up in one lawsuit."  And it wasn't until

19  after you got sued in Florida that you said, Oh, wait, maybe

20  that was a mistake.  That's what's going on here.

21          **MR. GILLILAND:**  Well, your Honor, we believe that

22  the allegations of the complaint are broad enough to include

23  Snow Leopard.

24          **THE COURT:**  They were, but you ruled them out in

25  your -- the way you construed your interrogatories.

1          **MS. EDGECOMBE:**  Well, with respect to the

2    interrogatory, at the time that it was answered the only

3    license that existed relating to Mac OS X was the Leopard

4    license.

5          Now, as you now see, there was discovery about Snow

6    Leopard.  I specifically asked Mr. Pedraza, the CEO of

7    Psystar, about Snow Leopard.  This is his testimony.  It's

8    Exhibit 14 to the declaration of Miss Boroumand Smith.  It

9    was taken on Wednesday, August 26th.

10          I said:

11          **"QUESTION:**  Is Psystar attempting to get

12      its computers to work with Snow Leopard?

13          **"ANSWER:**  What do you think?  I mean,

14      that is a silly question.

15          **"QUESTION:**  Why is it silly?

16          **"ANSWER:**  I think we would want to

17      support a newer version of the OS.

18          **"QUESTION:**  My question was silly

19      because the answer was 'Of course we are?'"

20          **"ANSWER:**  Well, I mean, I can't really

21      say...and, again, it actually even a little

22      bit frustrates me because I haven't been able

23      to devote time to doing that, but I promise

24      you that I am going to devote my time to do

25      that."

1        My question:

2        "And do you have an estimate as to when

3   the Psystar computers will be compatible with

4   Snow Leopard."

5        Mr. Pedraza:

6        **"ANSWER:**  As soon as possible."

7        My question:

8        **"QUESTION:**  And what does that mean?  Is

9   it a matter of days, weeks, months, years?"

10        Mr. Pedraza's answer:

11        **"ANSWER:**  Well, it depends on how

12   inspired I feel.  I haven't really looked

13   into it as much as I've wanted to.  So once I

14   can, you know, direct my into it, we'll see

15   how long it takes.  I will have a better

16   estimate."

17        That was his testimony on Wednesday, August 26.

18 The very next day they filed this lawsuit in Florida, your

19 Honor.  And in that lawsuit in Florida they said here are

20 Psystar's computers ready to sell with Snow Leopard and we

21 need declaratory relief that it's lawful.

22        On Wednesday Mr. Pedraza tells me he's still

23 thinking about it.  He's still working on it.  That's what he

24 said under oath.  On Thursday they filed a lawsuit against

25 Apple.

1        **THE COURT:**  That sounds fishy, that's true.  Why

2   don't you make a motion down there to have the judge transfer

3   the case?

4        **MR. GILLILAND:**  I can do that, your Honor, but the

5   issue -- the reason I came to your courtroom first is because

6   of the implication on the trial schedule in January.

7        **THE COURT:**  You know, even if we try the case, we

8   still have got to try this part of the case.  There are going

9   to be -- you can always have a new product.  You can have --

10  by the time we get to that trial, you can have yet another

11  product and say, Oh, let's postpone it again because we want

12  to wrap everything up.  There is always going to be a new

13  product in the offing.

14       To my mind the practical thing to do is push

15  forward, try the case.  Then you can bring a new case on the

16  next product.

17       But the more products that you lay in front of the

18  jury and in front of the Court, the harder it is to

19  understand them.  And to understand -- you know, maybe it

20  will be so complicated I just won't grasp it.

21       And so I think that you are trying to over

22  complicate the case.  We have got a good schedule now.

23       **MR. GILLILAND:**  We do have a good --

24       **THE COURT:**  I don't know what the judge down there

25  ought to do on a motion to transfer.  There is a lot of sense

1   in what you say to have one judge do it all on account of the

2   overlap and avoid waste.

3          On the other hand, maybe a fresh look at this

4   probable would -- maybe I have got it wrong.  I don't know.

5   Maybe another judge would see it differently and so they -- a

6   second judge might see the problem differently.  I don't -- I

7   don't know.

8          **MR. GILLILAND:**  Of course, your Honor, if that were

9   to occur, then neither Apple nor Psystar would know whether

10  the Psystar business is lawful.  That would be the worst

11  outcome, having a Federal Court in San Francisco say this is

12  lawful and a Federal Court in Florida say it's not lawful.

13  Then neither party would know how to proceed.

14         **THE COURT:**  Eventually we would have a conflict in

15  the circuits.  It would get somewhere.

16         **MR. GILLILAND:**  It's the United States --

17         **THE COURT:**  Assuming the circuit courts disagree,

18  but I -- I -- that's a good argument in favor of one judge

19  doing it all.

20         So I see that point, but I -- I don't think -- you

21  know, put yourself if my position.  I don't want to tell the

22  judge in Florida how to run his calendar.  And I do

23  appreciate the fact that you brought this problem to my

24  attention so that my feelings aren't hurt if you go do that.

25         Honestly, I think the first -- in the first

1  instance this problem should be laid before the judge there

2  and not some judge -- you know, they all think of us as a

3  little loony out here in California.  They'll think I'm

4  reaching in all the way from San Francisco to Florida to tell

5  them how to run their docket.

6         No, I think I should let them run their own

7  calendar, just like they would probably let me run my own

8  calendar.  And they will -- I trust all the judges to do the

9  right thing on a motion to transfer.

10        Now, the immediate problem is not a transfer.  It's

11  this discovery problem.

12        **MR. GILLILAND:**  Yes, that's right, your Honor.  And

13  the -- the reason that we submitted the declaration of

14  Dr. Kelly here is so that the Court can see that the

15  technical issue, which we can't go into in open court, but

16  how Psystar gets around the technological protection measure

17  in Mac OS X, Version 10.6, is not significantly or even

18  materially different.  There's a method and you have to use

19  it in order to get Mac OS X to run on your computer.  And

20  they have done it four different ways, but each of those ways

21  ends up at the same place, which is how you unencrypt these

22  files.  Consequently, the evidence is not actually going to

23  be that much different.

24        **THE COURT:**  I can't tell you how the trial is going

25  to come out, all right?  But, yes, I can see your argument

1  that there are similarities in the cases and we have to --

2  and maybe that would make some sense, but...

3          All right.  Any more?

4          **MR. GILLILAND:**  Thank you for your time, your

5  Honor.  Of course, you can see the dilemma.  If we go to

6  Florida and file a motion and succeed and the case is

7  transferred here, then it probably won't get here in time for

8  a trial in January unless we reopen discovery.

9          **THE COURT:**  Then we could have two trials.

10         **MR. GILLILAND:**  We could do that.

11         **THE COURT:**  It may be too short somewhat smaller

12  trials is better than one gigantic trial.

13         **MR. GILLILAND:**  It's -- of course, the decision is

14  in your discretion, your Honor.

15         My suggestion is that it would be more efficient

16  for everyone concerned, most particularly the Courts, to have

17  one trial in March rather than two separate trials.

18         **THE COURT:**  Possibly.  But what bothers me still is

19  that if you had known this was coming, you should have said

20  to yourself and to your client, We should put this -- make it

21  absolutely clear that Snow Leopard is in the case so we will

22  keep it all in front of that one judge.  We'll all go to

23  trial in March.

24         And instead you made a -- because you didn't want

25  them to know.  That's probably what it was.  Just like you

1  didn't want them to know the profit information and you took

2  it upon yourself to restrict the case de facto to things that

3  had been released.  So this is a problem of your own

4  strategic making.  That part of it is.

5          Now, this is -- these comments that I'm making here

6  are totally without prejudice to a motion to transfer, and

7  I'm not in any way suggesting it should not be transferred.

8  I see the arguments for a transfer.  It's up to the judge

9  there to do what is right in his opinion, so I -- but I --

10 this is not the immediate issue that's before me.

11          The immediate issue before me is whether this --

12 this schedule that we have got in place and with this record

13 in light of the way that discovery unfolded, in order to

14 allow all that to unfold in Florida.  So for the time being

15 I'm not so sure that's a good idea.

16          All right.  I'm going to take it under submission.

17 I will get an order out soon.

18          MR. GILLILAND:  Thank you for your time your Honor.

19          MR. CAMARA:  Thank you, your Honor.

20          THE COURT:  Yes, sir.  What can I do for you?

21          MR. CAMARA:  We filed a motion with respect to the

22 declaration of Jacques Vidrine.  I set it for today thinking

23 it was part of the response.  I can reset it later, if the

24 Court prefers.

25          THE COURT:  What motion?

1            **MR. CAMARA:**  We filed a motion to strike the

2    declaration of Jacques Vidrine, which was attached to their

3    motion to enjoin the Florida action.

4            At the last hearing your Honor asked them

5    specifically whether Jacques Vidrine would be involved in the

6    case.  Your Honor said they might have leave to amend to add

7    Jacques Vidrine to their initial disclosures if there was

8    some substantial justification because of new evidence.

9            Counsel for Apple paused, conferred with other

10   counsel for Apple and came back and told the Court that

11   Mr. Vidrine was out of their case entirely and then eight

12   days later they filed a motion that relies on the declaration

13   of Jacques Vidrine.  So we filed a motion to strike and for

14   sanctions.

15           **THE COURT:**  All right.  I will consider that on the

16   papers.

17           **MR. CAMARA:**  Your Honor, one other calendaring

18   question.

19           Summary judgment briefing is coming up.  I was

20   wondering if we might increase the page limits given all the

21   many issues that are in this case?

22           **MR. GILLILAND:**  Your Honor, we have no objection to

23   that.  It's the Court what has to read them all.

24           **THE COURT:**  Page limits are 25 now, right?

25           **MR. CAMARA:**  They are, your Honor.

1           THE COURT:  Thirty pages per side.

2           MR. CAMARA:  Thank you, your Honor.

3           THE COURT:  Fifteen on reply.  Well, that's 30

4  pages for -- who is making a motion?

5           MR. CAMARA:  I assume both of us, your Honor.

6           THE COURT:  The opening gets 30.  Opposition gets

7  30.  Reply gets 15.

8           MR. CAMARA:  Thank you, your Honor.

9           MR. GILLILAND:  Thanks very much.

10          THE COURT:  All right.  See you soon.

11          (Whereupon, further proceedings in the

12           above matter were adjourned.)

13

14                        --oo--

15

16

17

18

19

20

21

22

23

24

25

### CERTIFICATE OF REPORTER

I, DEBRA L. PAS, Official Reporter for the United States Court, Northern District of California, hereby certify that the foregoing proceedings in C 08-3251 WHA, APPLE, INC. vs PSYSTAR CORPORATION were reported by me, a certified shorthand reporter, and were thereafter transcribed under my direction into typewriting; that the foregoing is a full, complete and true record of said proceedings as bound by me at the time of filing.

The validity of the reporter's certification of said transcript may be void upon disassembly and/or removal from the court file.


/s/ Debra L. Pas

Debra L. Pas, CSR 11916, CRR, RMR, RPR

Thursday, October 8, 2009