TOWNSEND AND TOWNSEND AND CREW LLP
JAMES G. GILLILAND, JR. (State Bar No. 107988)
MEHRNAZ BOROUMAND SMITH (State Bar No. 197271)
MEGAN M. CHUNG (State Bar No. 232044)
J. JEB B. OBLAK (State Bar No. 241384)
Two Embarcadero Center Eighth Floor
San Francisco, CA 94111
Telephone: (415) 576-0200
Facsimile: (415) 576-0300
Email: jggilliland@townsend.com
        mboroumand@townsend.com
        mmchung@townsend.com
        jboblak@townsend.com

O'MELVENY & MYERS LLP
GEORGE RILEY (State Bar No. 118304)
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111
Telephone: (415) 984-8700
Facsimile: (415) 984-8701
Email: griley@omm.com

Attorneys for Plaintiff and Counterdefendant
APPLE INC.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| APPLE INC., | Case No. 08-3251 WHA |
| Plaintiff, | **APPLE INC.'S MOTION FOR SUMMARY JUDGMENT ON COPYRIGHT INFRINGEMENT, DMCA VIOLATIONS AND PSYSTAR'S AFFIRMATIVE DEFENSES** |
| v. | |
| PSYSTAR CORPORATION, a Florida corporation, | |
| Defendant. | Hearing Date. November 12, 2009 |
| AND RELATED COUNTERCLAIMS. | Hearing Time: 8:00 a.m. |
| | Courtroom: 9 |
| | Judge: Hon. William Alsup |
| | Trial Date: January 11, 2010 |

**REDACTED
PUBLIC VERSION**

townsend.

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ...................................................................................1

II.   FACTUAL BACKGROUND ...................................................................2

      A.    Apple And Its Integrated Products ...............................................2

      B.    Apple's Software License Agreement ...........................................4

      C.    Apple's Registered Copyrights In Mac OS X ...............................5

      D.    Apple's Protection Technology .....................................................5

      E.    Psystar And Its Copying And Distribution Of Mac OS X .............7

      F.    Psystar's Modification Of Mac OS X ............................................9

      G.    Psystar Disables Apple's Technological Protection Measures .......10

III.  APPLE IS ENTITLED TO SUMMARY JUDGMENT ON ITS
      COPYRIGHT AND DMCA CLAIMS .....................................................11

IV.   THE UNDISPUTED EVIDENCE ESTABLISHES PSYSTAR'S
      LIABILITY FOR VIOLATING THE COPYRIGHT ACT .....................12

      A.    Governing Copyright Law Principles ............................................12

      B.    Psystar Infringes Apple's Exclusive Right To Copy Mac OS X ....13

      C.    Psystar Infringes Apple's Exclusive Right To Create
            Derivative Works Of Mac OS X ...................................................13

      D.    Psystar Infringes Apple's Exclusive Right To Distribute Mac
            OS X ...........................................................................................15

      E.    Psystar Is Also Liable For Contributory Infringement ...................15

      F.    Psystar's Copyright Misuse Counterclaims And Defense Fail
            As A Matter Of Law .....................................................................16

      G.    Section 117's "Essential Steps" Defense Does Not Immunize
            Psystar's Unlawful Copying, Modification And Distribution
            Of Mac OS X ...............................................................................19

      H.    The First Sale Doctrine Does Not Apply To Psystar's Copying
            And Modification Of Mac OS X ...................................................21

V.    UNDISPUTED FACTS ESTABLISH PSYSTAR'S LIABILITY
      UNDER THE DMCA'S ANTI-CIRCUMVENTION AND ANTI-
      TRAFFICKING PROVISIONS ..............................................................22

A.   Psystar Violates The Anti-Circumvention Provisions Of
      Section 1201(a)(1)...........................................................................23

B.   Psystar Violates The Anti-Trafficking Provisions Of Sections
      1201(a)(2) And 1201(b) Of The DMCA.........................................24

C.   Section 1201(f)'s "Reverse Engineering" Exception Has No
      Application Here .............................................................................25

VI.   CONCLUSION .........................................................................................28

# TABLE OF AUTHORITIES

<u>Page</u>

CASES

*321 Studios v. Metro Goldwyn Mayer Studios, Inc.,*
    307 F. Supp. 2d 1085 (N.D. Cal. 2004) ........................................................ 22, 23

*A&M Records, Inc. v. Napster, Inc.,*
    239 F.3d 1004 (9th Cir. 2001) ................................................................................ 13

*Adobe Sys. Inc. v. One Stop Micro, Inc.,*
    84 F. Supp. 2d 1086 (N.D. Cal. 2000) ........................................................... 21

*Adobe Sys. Inc. v. Stargate Software, Inc.,*
    216 F. Supp. 2d 1051 (N.D. Cal. 2002) ......................................................... 21

*Altera Corp v. Clear Logic, Inc.,*
    424 F.3d 1079 (9th Cir. 2005) ......................................................................... 16

*Apple Computer, Inc. v. Formula Int'l., Inc.,*
    562 F. Supp. 775 (C.D. Cal. 1984), *aff'd* 725 F.2d 521 (9th Cir. 1984) .............. 20

*Apple Computer, Inc. v. Formula Int'l, Inc.,*
    594 F. Supp. 617 (C.D. Cal. 1984) ....................................................... 19, 20, 21

*Apple Inc. v. Psystar Corp.,*
    2009 WL 3112080 (N.D. Cal. Sept. 23, 2009) ........................................... 16

*Apple Inc. v. Psystar Corp.,*
    586 F. Supp. 2d 1190 (N.D. Cal. 2008) ........................................................ 17

*Bell Atl. Bus. Sys. Servs., Inc. v. Hitachi Data Sys. Corp.,*
    1995 WL 836331 (N.D. Cal. Dec. 14, 1995) ............................................... 17

*Cable/Home Commc'n Corp. v. Network Prods., Inc.,*
    902 F.2d 829 (11th Cir. 1990) ......................................................................... 15

*Celotex Corp. v. Catrett,*
    477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) ........................... 11, 12

*Davidson & Assoc., Inc. v. Internet Gateway, Inc.,*
    334 F. Supp. 2d 1164 (E.D. Mo. 2004) ......................................................... 27

*Davidson & Assocs. v. Jung,*
    422 F.3d 630 (8th Cir. 2005) ............................................................... 22, 26, 27

**TABLE OF AUTHORITIES**
(continued)

*Dun & Bradstreet Software Services, Inc. v. Grace Consulting, Inc.*,
 307 F.3d 197 (3d Cir. 2002)..................................................................... 14

*Expediters Intern. of Washington, Inc. v. Direct Line Cargo Mgmt. Servs., Inc.*,
 995 F. Supp. 468 (D.N.J. 1998) ............................................................. 20

*In re Adbox, Inc.*,
 488 F.3d 836 (9th Cir. 2007)............................................................. 19, 25

*Jarvis v. K2 Inc.*,
 486 F.3d 526 (9th Cir. 2007)................................................................. 14

*Jorst v. D'Ambrosio Bros. Inv. Co.*,
 2001 WL 969039 (N.D. Cal. Aug. 13, 2001)......................................... 19

*Ledo Fin. Corp. v. Summers*,
 122 F.3d 825 (9th Cir. 1997)................................................................. 25

*MAI Systems Corp. v. Peak Computer, Inc.*,
 991 F.2d 511 (9th Cir. 1993)......................................... 13, 16, 20, 21

*MDY Indus., LLC v. Blizzard Entm't, Inc.*,
 2008 WL 2757357 (D. Ariz. Jul. 14, 2008) .................................... 16, 20

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster Ltd.*,
 454 F. Supp. 2d 966 (C.D. Cal. 2006) ............................................ 15, 18

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster Ltd.*,
 545 U.S. 913, 125 S. Ct. 2764, 162 L. Ed. 2d 781 (2005)................... 15

*Microsoft Corp. v. BEC Computer Co., Inc.*,
 818 F. Supp. 1313 (C.D. Cal. 1992)..................................................... 18

*Midway Mfg. Co. v. Artic Int'l, Inc.*,
 704 F.2d 1009 (7th Cir. 1983)............................................................... 14

*Midway Mfg. Co. v. Strohon*,
 564 F. Supp. 741 (N.D. Ill. 1983) ........................................................ 14

*Mirage Editions, Inc. v. Albuquerque A.R.T. Co.*,
 856 F.2d 1341 (9th Cir. 1988)......................................................... 14, 22

*Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*,
 210 F.3d 1099 (9th Cir. 2000)............................................................... 12

*Novell, Inc. v. Unicom Sales, Inc.*,
 2004 WL 1839117 (N.D. Cal. 2004)..................................................... 21

- iv -

*Ortiz-Gonzalez v. Fonovisa,*
    277 F.3d 59 (1st Cir. 2002) ............................................................................ 15

*RealNetworks, Inc. v. DVD Copy Control Ass'n,*
    __ F. Supp. 2d ___, 2009 WL 2475338 (N.D. Cal. Aug. 11, 2009) .............. 22, 23

*S.O.S., Inc. v. Payday, Inc.,*
    886 F.2d 1081 (9th Cir. 1989) ......................................................................... 13

*Satterfield v. Simon & Schuster, Inc.,*
    569 F.3d 946 (9th Cir. 2009) ........................................................................... 11

*Serv. & Training, Inc. v. Data Gen. Corp.,*
    963 F.2d 680 (4th Cir. 1992) ........................................................................... 17

*Soremekun v. Thrifty Payless, Inc.,*
    509 F.3d 978 (9th Cir. 2007) ........................................................................... 12

*Sully v. Ayers,*
    2008 WL 2128171 (N.D. Cal. May 20, 2008) ................................................. 12

*Triad Sys. Corp. v. Southeastern Exp. Co.,*
    No. C 92 1539-FMS, 1994 WL 446049 (N.D. Cal. Mar. 18, 1994) .............. 18, 20

*U.S. v. Elcom Ltd.,*
    203 F. Supp. 2d 1111 (N.D. Cal. 2002) .......................................................... 22

*Universal City Studios, Inc. v. Corley,*
    273 F.3d 429 (2d Cir. 2001) ....................................................................... 22, 23

*Universal City Studios v. Reimerdes,*
    111 F. Supp. 2d 294 (S.D.N.Y. 2000) ..................................................... 23, 24, 27

*Wall Data Inc. v. L.A. County Sheriff's Dept.,*
    447 F.3d 769 (9th Cir. 2006) ........................................................................... 20

**STATUTES**

17 U.S.C. § 101 ...................................................................................................... 13

17 U.S.C. § 106 .............................................................................................. 13, 16

17 U.S.C. §§ 106(1), (2), (3) ........................................................................... 12, 15

17 U.S.C. § 109 ...................................................................................................... 21

17 U.S.C. § 109(a) ........................................................................................... 21, 22

townsend.    CASE NO. 08-3251 WHA

**TABLE OF AUTHORITIES**
(continued)

<u>Page</u>

17 U.S.C. § 117 ................................................................................................ 19, 20, 21

17 U.S.C. § 117(b) .......................................................................................................... 20

17 U.S.C. § 501, *et seq.* ..................................................................................... 2, 4, 5, 28

17 U.S.C. § 1201(a)(1)(A) ..................................................................................... 22, 23, 24

17 U.S.C. §§ 1201(a)(2) ............................................................................................... 24, 25

17 U.S.C. § 1201(a)(3)(A) ................................................................................................. 23

17 U.S.C. § 1201(a)(3)(B) ................................................................................................. 23

17 U.S.C. § 1201(b)(1) ....................................................................................................... 22

17 U.S.C. § 1201(f) ................................................................................................ 25, 26, 27

17 U.S.C. § 1201(f)(1)-(3) ................................................................................................. 26

17 U.S.C. § 1201(f)(4) ....................................................................................................... 26

17 U.S.C. § 1202 ................................................................................................................ 24

**OTHER AUTHORITIES**

Fed. R. Civ. P. 8(c) ........................................................................................................... 19

Fed. R. Civ. P. 56 .............................................................................................................. 11

townsend.    CASE NO. 08-3251 WHA

## I.    INTRODUCTION

Through efforts spanning more than a decade and investments totaling hundreds of millions of dollars, Apple Inc. ("Apple") has developed its proprietary Mac OS® X operating system. By the terms of its license agreements with customers and through technological protection measures in its software, Apple restricts the use of Mac OS X to Apple computers. Psystar Corporation ("Psystar") makes and sells computers containing pirated copies of Mac OS X that Psystar has altered to circumvent Apple's technological protection measures. In so doing, Psystar seeks to appropriate Apple's enormous investment in Mac OS X and trade on Apple's hard-won reputation for excellent, highly reliable products. By this motion, Apple seeks partial summary judgment that Psystar has infringed Apple's copyrights and violated the Digital Millennium Copyright Act ("DMCA").

There is no genuine factual dispute that Psystar makes unauthorized copies of Mac OS X and then installs those copies on computers its sells to the public. Nor is there any genuine factual dispute that, in order to make these illicit copies run on its computers, Psystar modifies Mac OS X, circumvents Apple's security protections and distributes the circumvention technology to Psystar's customers. Because it cannot dispute these facts, Psystar attempts to justify its conduct by relying on the doctrines of "copyright misuse," "first sale" and "essential steps." Psystar's arguments are contrary to established law and have been squarely rejected by the courts.

At base, Psystar insists that it has a right, without Apple's permission, to engage in the wholesale copying, alteration and commercial distribution of Apple's copyrighted software in order to compete with Apple. Psystar is free to compete with Apple – as do scores of other companies – by developing its own operating system, by using open source code or by licensing a system available from other vendors. But Psystar is not free to copy, modify and distribute Apple's software in violation of the copyright laws and Apple's software license.

The fundamental protections guaranteed by the laws protecting copyright have been central to the success of the software industry. Without these protections, companies could not justify the massive investments of time and money required to create and improve products that have transformed the world. Psystar's arguments, if accepted, would vitiate those protections. Persons

1 would be free to disable security technology and make unlimited copies of software for
2 distribution and sale in contravention of license terms. Authors of software could no longer
3 control the alteration of their creations; once a single copy of the software is licensed, the
4 consumer would be free to modify and distribute the work without regard to restrictions imposed
5 by the author. This is not the law.

6      The material facts are not in dispute. Psystar deliberately copies and modifies Mac OS X
7 without Apple's permission and in violation of the laws protecting copyright. Accordingly, the
8 Court should grant partial summary judgment on Apple's First and Second Claims for Copyright
9 Infringement and Contributory and Induced Copyright Infringement under 17 U.S.C. § 501, *et seq.*
10 and Third Claim for Violating the Digital Millennium Copyright Act, 17 U.S.C. § 1201, *et seq.*
11 The Court should also grant partial summary judgment dismissing Psystar's Eleventh and Thirty-
12 Seventh Affirmative Defenses for First Sale/Exhaustion of Copyright and Copyright Misuse and
13 Psystar's First and Second Counterclaims seeking a Declaration of Unenforceability for Copyright
14 Misuse (EULA) and Declaration of Unenforceability for Copyright Misuse (DMCA).

15 **II. FACTUAL BACKGROUND**

16     **A. Apple And Its Integrated Products**

17      A pioneer of the personal computer revolution, Apple launched its famous Macintosh® (or
18 "Mac®") computer in 1984.[1] Today the Mac line of personal computers includes the Mac Pro®,
19 iMac®, Mac® mini, MacBook®, MacBook Pro and MacBook Air®.[2] Apple's business strategy
20 focuses on its unique ability to design and develop fully integrated products combining Apple's
21 own operating system, hardware, application software and services.[3] The Mac exemplifies the
22 qualities consumers have come to expect from Apple; it is a seamlessly integrated, easy-to-use,
23 highly-reliable personal computer.[4]

---

24     [1] Declaration of Megan M. Chung ("Chung Decl.") filed herewith, Ex. 1 (Apple 10-K for fiscal
25 year ending September 29, 2001) at 4.

    [2] Chung Decl. Ex. 2 (Apple 10-K for fiscal year ending September 27, 2008) at 3-4.

26     [3] Chung Decl. Ex. 2 at 1. Apple's hardware is custom-tuned for Apple software, and Apple
27 software is custom-tuned for Apple hardware. Chung Decl. Ex. 4 (Culbert Dep.) at 43:11-45:15,
68:14-19; Declaration of Matthew R. Lynde ("Lynde Decl.") at ¶¶ 7-8.

28     [4] Chung Decl. Ex. 2 at 1; Ex. 4 at 45:8-15, 49:11-52:22, 53:24-54:19, 56:9-15; Ex. 6,
(Mansfield Dep.) at 9:25-10:5, 11:22-13:22, 24:20-26:25; Ex. 7 (Patience Dep.) at 115:12-117:15;

In 2001, Apple launched Mac OS X, the tenth generation of the Mac operating system.[5] This revolutionary operating system, which was the result of hundreds of millions of dollars in research and development expenditures, offers extraordinary capabilities, speed and stability.[6] On October 26, 2007, Apple released version 10.5 of Mac OS X, known as Leopard®, which has been described as "visually stunning," "powerful, polished and carefully conceived," and "elegant."[7]

Consistent with Apple's approach to developing integrated products, all Mac computers are sold with Mac OS X preinstalled, and Apple's license agreements strictly limit the use of Mac OS X to Apple computers.[8] Apple separately licenses Mac OS X in a retail packaged DVD to enable Apple's customers to upgrade their Mac computers to the latest version of the operating system.[9] Apple's licensed Mac OS X upgrades come in a shrink-wrapped box containing a DVD, installation instructions, license agreement, and service and warranty information.[10] By restricting the use of Mac OS X to Apple computers, Apple ensures that Mac OS X will operate optimally and provide consumers with the highest quality computing experience and technical support.[11] Apple's approach has been met with great success. Consumer Reports has ranked Apple's customer support the best in the nation for both desktop and laptop computers, and Business Week named Apple the most innovative company in the world for the last two years.[12]

Restricting software to use on particular hardware is common. Companies such as IBM, Research in Motion (makers of Blackberry devices), Nintendo, Sony and Microsoft (for its Xbox game system) have all used integrated product business models – the software is designed for, and

---

Ex. 12 (Schiller Dep.) 24:19-25:11; Ex. 15 (Wright Dep.) at 95:23-105:11.

[5] Chung Decl. Ex. 1 at 4.

[6] Lynde Decl. at ¶¶ 6-7; Chung Decl. Ex. 1 at 8.

[7] Chung Decl. Exs. 42-44.

[8] Chung Decl. Ex. 12 at 9:10-11:5; Ex. 13 (Van Vechten Dep.) at 62:23-65:1; Lynde Decl. at ¶ 7.

[9] Chung Decl. Ex. 12 at 18:14-20:2.

[10] Chung Decl. Ex. 12 at 15:20-17:8.

[11] Lynde Decl. at ¶¶ 7-8; Chung Decl. Ex. 6 at 9:25-10:5, 11:22-13:22, 24:20-26:25; Ex. 15 at 95:23-105:11; Ex. 12 at 24:19-25:11; Ex. 13 at 62:23-65:1.

[12] Chung Decl. Ex. 45; Lynde Decl. at ¶ 4.

only licensed for use on, specific hardware made by that company.[13]  For example, the license agreement for Amazon's "Kindle," an electronic book reader, states:  "You may use the Device Software only on the Device."[14]

## B. Apple's Software License Agreement

Apple licenses Mac OS X, both on Mac computers and upgrade DVDs, pursuant to a Software License Agreement ("SLA") that states Mac OS X is "licensed, not sold to [the user] by Apple Inc. [ ] for use only under the terms of th[e] License ...."[15]  The SLA specifies "Permitted License Uses and Restrictions":

> 2.  Permitted License Uses and Restrictions.
>
> A.  Single Use.  This license allows you to install, use and run one (1) copy of the Apple Software on a single Apple-labeled computer at a time.  You agree not to install, use, or run the Apple Software on any non-Apple-labeled computer or enable another to do so.
>
> * * *
>
> C.  You may make one copy of the Apple Software (excluding the Boot ROM code and other Apple firmware that is embedded or otherwise contained in Apple-labeled hardware) in machine-readable form for backup purposes only....Apple Boot ROM code and firmware is provided only for use on Apple-labeled hardware and you may not copy, modify or redistribute the Apple Boot ROM code or firmware, or any portions thereof....
>
> * * *
>
> F.  Except as and only to the extent permitted by applicable licensing terms governing use of the Open-Sourced Components, or by applicable law, you may not copy, decompile, reverse engineer, disassemble, modify, or create derivative works of the Apple Software or any part thereof.

*Id*. ¶ 2.  The SLA also restricts redistribution of and modifications to the software except under limited circumstances and for limited purposes:

> 3. Transfer. You may not rent, lease, lend, redistribute or sublicense the Apple Software. Subject to the restrictions set forth below, you may, however, make a one-time permanent transfer of all of your license rights to the Apple Software (in its original form as provided

---

[13] Lynde Decl. at ¶ 9; Chung Decl. Exs. 30-40.

[14] Chung Decl. Ex. 31 at APP_PSY0038966; Lynde Decl. at ¶ 9.

[15] Chung Decl. Ex. 26 at ¶ 1.

by Apple) to another party, provided that: (a) the transfer must include all of the Apple Software, including all its component parts (excluding Apple Boot ROM code and firmware), original media, printed materials and this License; (b) you do not retain any copies of the Apple Software, full or partial, including copies stored on a computer or other storage device; and (c) the party receiving the Apple Software reads and agrees to accept the terms and conditions of this License. You may not rent, lease, lend, redistribute, sublicense or transfer any Apple Software that has been modified or replaced under Section 2D above….

*Id*. ¶ 3.  The SLA terminates immediately if a licensee fails to comply with its terms:

5.  Termination.  This License is effective until terminated. Your rights under this License will terminate automatically without notice from Apple if you fail to comply with any term(s) of this License. Upon the termination of this License, you shall cease all use of the Apple Software and destroy all copies, full or partial, of the Apple Software.

*Id*. ¶ 5.  A version of the SLA is included with every Mac OS X upgrade DVD from Apple.[16] Users installing Mac OS X must agree to an electronic version of the SLA when it appears on the screen during installation.[17]

### C.    Apple's Registered Copyrights In Mac OS X

Apple protects its rights in Mac OS X by filing registrations with the Copyright Office. Mac OS X, Mac OS X version 10.5, components of Mac OS X, and other Apple software and firmware are each original works of authorship created by Apple constituting copyrightable subject matter.  Apple is the owner of, among others, United States copyright registrations TX5-401-457 (Mac OS X); TX6-849-489 (Mac OS X Leopard Version 10.5); and TX6-336-643 (Don't Steal Mac OS).[18]  The effective date of these Apple copyright registrations predates the commencement of Psystar's infringement.[19]

### D.    Apple's Protection Technology

Consistent with the license terms for Mac OS X, Apple employs technology in its software

---

[16] Chung Decl. Ex. 12 at 14:9-17:8.

[17] Chung Decl. Ex. 20 Psystar Supp. Response to RFA's 14-27 at No. 21.

[18] Chung Decl. Exs. 27-29.

[19] Chung Decl. Ex. 8 (Roberto Pedraza Dep.) at 42:24-43:1; Ex. 9 (Rodolfo Pedraza Dep. (3/19/09) at 19:18-25.

to ensure that Mac OS X will run only on Apple computers.[20]  Apple has implemented a type of "lock-and-key" technological protection measure that prevents a user from installing Mac OS X on a non-Apple computer.[21]  Psystar acknowledges this security mechanism and has



[20] Kelly Decl. at ¶¶ 8, 10; Chung Decl. Ex. 4 at 89:19-90:15; Ex. 6 at 23:16-24:19; Ex. 7 at 6:1-20, 42:10-19, 54:15-20; Ex. 14 (Van Vechten 30(b)(6) Dep.) at 15:16-16:7; Ex. 16 (Wright 30(b)(6) Dep.) at 6:19- 24.

[21] Kelly Decl. at ¶¶ 7-13.

### E. Psystar And Its Copying And Distribution Of Mac OS X

In April 2008, Psystar, a Florida corporation, began making its OpenMac (now Open Computer) and OpenPro computers from standard, off-the-shelf computer components.[30] Psystar has never expended any resources to develop its own operating system.[31] Instead, since a genuine release of Mac OS X "Leopard is not MADE to run on the Open Computer," Psystar "force[s] it" to run on Psystar hardware.[32] Psystar then sells its computers with unauthorized copies of Mac OS X on the Internet.[33] Psystar advertises that the "Open Computer is a PC that works just like a Mac with Apple's latest operating system OS X 10.5 a.k.a. Leopard" and that the OpenPro is ready to run "right out of the box" with "Mac OS X Leopard 10.5 preinstalled."[34] Even though Psystar undeniably distributes Mac OS X on its computers, Psystar admits that it does not have a license from Apple to distribute Mac OS X to its customers.[35]



---

[30] Chung Decl. Ex. 8 at 45:12-17; Kelly Decl. at ¶¶ 14-15.

[31] Chung Decl. Ex. 19 Psystar Response to RFA's 101-161 at Nos. 159-161.

[32] Chung Decl. Ex. 66 at PS006530; *see also* Ex. 67.

[33] Chung Decl. Ex. 9 at 52:2-25; Ex. 17 Psystar Responses to RFA's 30-100 at Nos. 30-32, 36-37 and 40.)

[34] Chung Decl. Ex. 46.

[35] Chung Decl. Ex. 17 at Nos. 30-32, 36-37 and 40; Ex. 20 at No. 19.



REDACTED

APPLE INC.'S MOTION FOR SUMMARY JUDGMENT ON COPYRIGHT INFRINGEMENT, DMCA VIOLATIONS
AND PSYSTAR'S AFFIRMATIVE DEFENSES, CASE NO. 08-3251 WHA

- 8 -



**F.      Psystar's Modification Of Mac OS X**

As discussed above, Mac OS X will not run on Psystar computers unless it is modified.[43]

To enable the software to run on non-Apple computers, Psystar alters Mac OS X in ways that

violate the SLA's prohibition on modifying the software.[44]

---

[41] Kelly Decl. at ¶¶ 22-25; Chung Decl. Ex. 8 at 59:12-60:8, 89:19-91:20, 93:20-94:2; Ex. 9 at 91:18-93:16, Ex. 23 at No. 7.

[42] Kelly Decl. at ¶ 27; Chung Decl. Ex. 18, Psystar Supp. Responses to RFA's 30-100 at Nos. 94-95.

[43] Kelly Decl. at ¶ 4; Chung Decl. Ex. 9 at 21:24-23:13; Exs. 51-54.

[44]



G.    Psystar Disables Apple's Technological Protection Measures



In August 2008, Psystar began distributing a "restore disc" that includes a circumvention kext that allows Mac OS X to be installed on non-Apple hardware in violation of the SLA.[59] Psystar provides instructions and assistance with the restore disc to help its customers install Mac OS X on Psystar computers.[60]

## III. APPLE IS ENTITLED TO SUMMARY JUDGMENT ON ITS COPYRIGHT AND DMCA CLAIMS

"Summary judgment is appropriate when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the nonmoving party the movant is clearly entitled to prevail as a matter of law." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 949 (9th Cir. 2009) (citing Fed. R. Civ. P. 56). For those issues on which Apple bears the burden of proof at trial, it must make a *prima facie* showing in support of its position. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The burden then shifts to

---

[53] Chung Decl. Ex. 9 at 21:24-22:17, 45:12-46:12, 48:24-49:20 and 53:14-23; Ex. 22 Psystar Responses to RFA's 227-306 at Nos. 246-47; Ex. 24 at No. 25; Ex. 41 at PS009264; .



[59] Kelly Decl. at ¶¶ 32-33; Chung Decl. Ex. 9 at 137:24-138:5; Ex. 10 (Rodolfo Pedraza Dep. (8/07/09) at 55:15-56:19; Ex. 11 at 63:7-64:14; Ex. 21 Psystar Responses to RFA's 162-226 at Nos. 164-5; Ex. 47, 65.

[60] Chung Decl. Ex. 3 at 29:24-31:24, 46:9-23, 94:9-23; Ex. 10 at 56:20-60:4; Ex. 11 at 63:7-64:14.

1    Psystar to produce facts controverting Apple's position.  *Celotex*, 477 U.S. at 324.

2          As demonstrated below, Apple is entitled to summary judgment on its claims under the

3    Copyright Act and the Digital Millennium Copyright Act ("DMCA") as a matter of law.[61]  The

4    undisputed facts establish that Psystar makes unauthorized copies of Mac OS X, modifies the

5    software to circumvent Apple's technological protection measures and enable Mac OS X to run on

6    Psystar's computers, and commercially distributes the modified software to the public.  The facts

7    further show that Psystar violates the anti-circumvention and anti-trafficking provisions of the

8    DMCA by disabling Apple's security technology and distributing the resulting copies, together

9    with the circumvention technology, to the public.

10          Psystar does not – and cannot – dispute that it has reproduced, modified and distributed

11   Apple's copyrighted software without Apple's permission.  Instead, Psystar has pleaded certain

12   affirmative defenses and indicated its intent to rely on others that allegedly absolve it of liability.

13   Psystar bears the burden of proof on its affirmative defenses and Apple need only "point[] out that

14   there is an absence of evidence to support the nonmoving party's case."  *Soremekun v. Thrifty*

15   *Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  To survive summary judgment on its defenses,

16   Psystar must set forth specific facts and evidence "to carry its ultimate burden of persuasion at

17   trial."  *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1106 (9th Cir.

18   2000); *see also Sully v. Ayers*, 2008 WL 2128171, at *5 (N.D. Cal. May 20, 2008) (Alsup, J.).

19   Psystar cannot meet this burden.

20   **IV.    THE UNDISPUTED EVIDENCE ESTABLISHES PSYSTAR'S LIABILITY FOR**
         **VIOLATING THE COPYRIGHT ACT**
21
         **A.    Governing Copyright Law Principles**
22

23          Section 106 of the Copyright Act grants the owner of a copyright certain exclusive rights

24   with respect to the copyrighted work, including the exclusive right to reproduce the work, to

25   prepare derivative works based on the work, and to distribute copies of the work to the public.  17

---

26          [61] Although Apple seeks summary judgment here only on its copyright infringement and
     DMCA claims, it reserves for trial its evidence and argument on all claims – including breach of
27   license, trademark infringement, and related claims.  Apple also reserves for trial its evidence and
     argument regarding Psystar's willfulness and Apple's damages incurred as a result of Psystar's
28   wrongful conduct.

U.S.C. §§ 106(1), (2), (3).  To establish direct infringement, a copyright plaintiff must show (1)

the plaintiff's ownership of the copyright; and (2) that the alleged infringer has violated at least

one of the exclusive rights granted under Section 106.  *See A&M Records, Inc. v. Napster, Inc.*,

239 F.3d 1004, 1013 (9th Cir. 2001).  Apple owns the copyright in the works at issue and, as

discussed below, the undisputed facts establish that Psystar has violated at least one of the rights

granted to Apple under Section 106.[62]

### B.    Psystar Infringes Apple's Exclusive Right To Copy Mac OS X

Psystar makes three types of unauthorized copies of Mac OS X in the course of building its

computers, as described in section II.E above.  Each copy violates Apple's exclusive right under

Section 106 to reproduce its own copyrighted work and is therefore sufficient to establish

Psystar's liability for copyright infringement.  *See, e.g.*, *MAI Systems Corp. v. Peak Computer,*

*Inc.*, 991 F.2d 511, 518-19 (9th Cir. 1993) (copying to RAM alone constitutes infringement).

Apple's SLA plainly prohibits any copying other than "on a single Apple-labeled computer at a

time" and further provides clearly that it "does not allow the Apple Software to exist on more than

one computer at a time…."[63]  *See S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1087 (9th Cir. 1989)

("licensee infringes the owner's copyright if its use exceeds the scope of its license").  Psystar

(twice) agrees to these license terms each time it opens and installs a copy of Mac OS X.  Yet

Psystar violates these and other provisions of the SLA when copying Mac OS X onto the imaging

station, and when making multiple copies of the software and installing the copies onto non-Apple

"Psystar" computers.  Each time a Psystar computer is turned on, Psystar creates additional

infringing copies of Mac OS X in RAM.

### C.    Psystar Infringes Apple's Exclusive Right To Create Derivative Works Of Mac OS X

Psystar's replacement of certain original files in Mac OS X with unauthorized software

code infringes Apple's exclusive right under the Act to create derivative works.  *See* 17 U.S.C. §

101 (a derivative work can consist of "editorial revisions, annotations, elaborations, or other

---

[62] Chung Decl. Exs. 27-29.

[63] Chung Decl. Ex. 26 at ¶ 2a.

modifications" to an original work of authorship); *Jarvis v. K2 Inc.*, 486 F.3d 526, 531-32 (9th Cir. 2007); *Mirage Editions, Inc. v. Albuquerque A.R.T. Co.*, 856 F.2d 1341, 1343-44 (9th Cir. 1988). Modifications need not be grand or sweeping to cause a work to be derivative – even modest changes to an original work of authorship can infringe the derivative work right. *See generally Midway Mfg. Co. v. Artic Int'l, Inc.*, 704 F.2d 1009 (7th Cir. 1983). Therefore, deletions, modifications, and additions to software code can result in an infringing derivative work of the original copyrighted software. In *Dun & Bradstreet Software Services, Inc. v. Grace Consulting, Inc.*, 307 F.3d 197 (3d Cir. 2002), for example, defendant Grace Consulting provided maintenance services to customers who purchased and had a license to use the plaintiff's "Millennium" financial software. Grace Consulting made an unauthorized copy of a licensed customer's Millennium software. *Id.* at 208. Grace then modified the copy of the Millennium software in order to fix bugs and add features and enhancements and sold the modified copies to its customers. *Id.* at 210. The Third Circuit upheld the district court's finding that by copying the plaintiff's software and then modifying it, Grace had "usurped" the plaintiff's right to make derivative works and had infringed its copyright. *Id.*; *see also Midway Mfg. Co. v. Strohon*, 564 F. Supp. 741, 744-46 (N.D. Ill. 1983) (holding that the deletion, replacement and alteration of Midway's code violated the derivative works right regardless of the first sale doctrine).

Psystar copies and modifies Mac OS X to run on Psystar computers, and, as Psystar puts it, "resells the packages."[64] As discussed above, Psystar makes three principal modifications to Mac OS X. ██████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ███████████████████████████████████ ███████████████████████████████████ These modifications fundamentally alter the functioning of Mac OS X by enabling its operation on an entirely different, unauthorized platform for which the software, as modified, is not ideally suited.[67] This infringes Apple's exclusive right to create derivative works.

---

[64] Chung Decl. Ex. 48.

[65] Kelly Decl. ¶ 27c, d.

████████████████████████████████████████████████ .

[67] Tests of the Psystar computer (as well as Psystar's customer complaints) confirm that, when

**D.  Psystar Infringes Apple's Exclusive Right To Distribute Mac OS X**

Psystar also infringes Apple's exclusive right to distribute its copyrighted software under Section 106(3).  Psystar's offering and selling to the public Apple's Mac OS X software, modified with ███████████████████████████████ falls squarely within the Act's prohibitions against unauthorized distribution.  *Ortiz-Gonzalez v. Fonovisa*, 277 F.3d 59, 62 (1st Cir. 2002); *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 843 (11th Cir. 1990).  Psystar has no defense to this infringement claim.  Pursuant to the SLA, Psystar expressly agreed that it would "not rent, lease, lend, redistribute, or sublicense the Apple Software."[68] Although the SLA permits Psystar to "make a one-time permanent transfer of all [Psystar's] license rights to the Apple Software," that provision clearly does not authorize Psystar to make multiple copies of the software and distribute those copies commercially.  Accordingly, Psystar's distribution of Mac OS X violates Apple's exclusive right to distribute its copyrighted works under the Act.

**E.  Psystar Is Also Liable For Contributory Infringement**

Psystar's offering and selling to the public pirated Mac OS X software also constitutes contributory infringement.  A defendant commits contributory copyright infringement "by intentionally inducing or encouraging direct infringement."  *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster Ltd.*, 545 U.S. 913, 930, 125 S. Ct. 2764, 162 L. Ed. 2d 781 (2005).  "[L]iability may attach even if the defendant does not induce specific acts of infringement."  *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster Ltd.*, 454 F. Supp. 2d 966, 984 (C.D. Cal. 2006) (citing *Grokster*, 545 U.S. 913, 125 S. Ct. at 2782 n.13).  "'[D]istribution of a product can itself give rise to liability where evidence shows that the distributor intended and encouraged the product to be used to infringe.'"  *Id.* (quoting *Grokster*, 545 U.S. 913, 125 S. Ct. at 2782 n.13).  "In such a case, the culpable conduct is not merely the encouragement of infringement but also the distribution of the tool intended for infringing use."  *Id.* at 984-85 (granting summary judgment of contributory

---

unlawfully installed on a non-Apple computer, the modified Mac OS X does not perform to its intended level of quality.  Kelly Decl. at ¶ 34; Chung Decl. Exs. 55-62.

[68] Chung Decl. Ex. 26 at ¶ 3.

infringement based on defendant's distribution of file-sharing software).

Psystar does not dispute that it promotes the use of the modified Mac OS X software in connection with its computers or that it has sold hundreds of computers preinstalled with modified Mac OS X.[69]  Psystar advertises that its computers "work[] just like a Mac with Apple's latest operating system OS X 10.5 a.k.a. Leopard."  As shown above, the undisputed facts establish that the use of Psystar computers infringes Apple's copyrights.  Each time a purchaser of a Psystar computer turns it on, the modified Mac OS X "runs" and creates a copy of the program from the hard drive to the computer's random access memory.  "Ninth Circuit law holds that the copying of software to RAM constitutes 'copying'" in violation of section 106 of the Copyright Act.  *MDY Indus., LLC v. Blizzard Entm't, Inc.*, No. CV-06-2555-PHX-DGC, 2008 WL 2757357, at *3 (D. Ariz. Jul. 14, 2008) (sale of infringing software program constituted contributory infringement of video game client and server software) (citing *MAI Sys.*, 991 F.2d at 518-19).  "Thus, if a person is not authorized by the copyright holder . . . or by law . . . to copy the software to RAM, the person is guilty of [direct] copyright infringement. . . ."  *Id*.  Because Psystar sells its computers and encourages its purchasers to infringe Apple's copyrights when they run the unlicensed, modified copies of Mac OS X on their Psystar computers, Psystar is liable for contributory infringement.

### F.    Psystar's Copyright Misuse Counterclaims And Defense Fail As A Matter Of Law

Psystar asserts that its infringement of Apple's copyrights is somehow excused by the copyright misuse doctrine.[70]  To prove copyright misuse, Psystar bears the burden of proving that Apple exploited its copyright "'to secure an exclusive right or limited monopoly not granted by the [Copyright] Office and which is contrary to public policy . . . .'"  *Apple Inc. v. Psystar Corp.*, 2009 WL 3112080, at *4 (N.D. Cal. Sept. 23, 2009) (Alsup, J.) (quoting *Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1090 (9th Cir. 2005)).  Psystar cannot meet this burden, and its

---

[69] Lynde Decl. at ¶ 11.

[70] As late as August 17, 2009 (four days before the close of fact discovery), Psystar stated in response to Apple's Interrogatory No. 16, which sought the factual and legal basis for Psystar's "copyright misuse" counterclaim, that it was "unable to provide a complete response" and "responds by incorporating its live counterclaim pleading, which sets forth several of Psystar's contentions with respect to Apple Inc.'s copyright and its known factual bases for those contentions."  Chung Decl. Ex. 24 at No. 16.

copyright misuse counterclaims and defense fail as a matter of law for at least three reasons.

First, this Court has already rejected Psystar's allegations that Apple monopolized any relevant market and thereby violated federal and state antitrust laws by restricting the use of its software to Apple computers. As this Court stated in dismissing Psystar's antitrust counterclaims, "Apple asks its customers to purchase Mac OS knowing that it is to be used only with Apple computers. *It is certainly entitled to do so.*" *Apple Inc. v. Psystar Corp.*, 586 F. Supp. 2d 1190, 1201 (N.D. Cal. 2008) (also available at Docket No. 33 at 14) (emphasis added). Apple has not imposed any undisclosed, unreasonably restrictive tying agreement on its customers. To the contrary, Apple discloses its licensing conditions to its customers before they are "locked in" to a purchase, and Apple's customers "knowingly agree to the challenged restraint." *Id.* at 1201.

Just as this Court rejected Psystar's attempts to assert unsupported antitrust claims so should it deny Psystar's copyright misuse counterclaims and defense that are premised on identical, and equally meritless, allegations. *See Serv. & Training, Inc. v. Data Gen. Corp.*, 963 F.2d 680, 690 (4th Cir. 1992) (summary judgment on defendant's antitrust claim foreclosed its copyright misuse defense); *Bell Atl. Bus. Sys. Servs., Inc. v. Hitachi Data Sys. Corp.*, 1995 WL 836331, at *11 (N.D. Cal. Dec. 14, 1995) (granting summary judgment on copyright misuse defense that was based on previously disposed-of tying claims). All the evidence contradicts any contention that Apple wields power in a relevant market. For example, sales of Mac computers in the first quarter of 2009 represented 7.6 percent of all new personal computer sales in the United States while the market shares of Apple's major competitors, Hewlett-Packard and Dell Inc., were 27.6 percent and 26.3 percent, respectively, during the same period.[71] Psystar, thus, cannot purport to premise its copyright misuse defense on an improperly alleged and unprovable antitrust violation.

Psystar would fare no better asserting the copyright misuse doctrine based on public policy because it cannot sustain its burden of establishing any conduct by Apple even approaching

_____

[71] Lynde Decl. at ¶ 5. When dismissing Psystar's counterclaim alleging an illegal "tying" arrangement, this Court already held that Psystar could not define a relevant product market in which Apple wields market power. *Apple Inc. v. Psystar Corp.*, 586 F. Supp. 2d 1190, 1200, 1203 (N.D. Cal. 2008) (also available at Docket No. 33 at 12, 17).

copyright misuse. Courts recognize copyright misuse only if a copyright owner is extending its copyright in ways that "undermine the Constitution's goal of promoting invention and creative expression." *See Grokster*, 454 F. Supp. 2d at 995 (rejecting argument that "any use of copyright in violation of public policy is sufficient" and holding that only when the "copyright is being used in a manner violative of the public policy *embodied in the grant of the copyright*") (internal quotations omitted). Nothing in Apple's licensing policy violates this public policy; indeed, courts have consistently upheld the license restrictions that Psystar has ignored and now challenges.

As noted above, licensing restrictions limiting the use of the copyright owner's software to hardware made by the owner are common in the industry. Such restrictions do not, as a matter of law, constitute copyright misuse in violation of public policy. *See, e.g.*, *Microsoft Corp. v. BEC Computer Co., Inc.*, 818 F. Supp. 1313, 1316-17 (C.D. Cal. 1992). For example, in *Triad Systems Corporation v. Southeastern Express Company*, the Ninth Circuit rejected the defendant's theory of copyright misuse based on the copyright owner's restriction that its software be used exclusively with the copyright owner's hardware and services. *Triad Systems*, 64 F.3d 1330, 1337 (9th Cir. 1995). Triad manufactured and sold computers and copyrighted software for auto parts stores. Southeastern was an independent service organization of Triad computers. Triad alleged that Southeastern infringed its copyright by making copies of Triad's software when it serviced Triad computers. Southeastern asserted a copyright misuse defense "on the ground that Triad has used its intellectual property monopoly over Triad software to leverage its position in the Triad computer maintenance market." *Triad Sys. Corp. v. Southeastern Exp. Co.*, 1994 WL 446049, at *13-14 (N.D. Cal. Mar. 18, 1994). The district court rejected the argument because "Southeastern failed to demonstrate that Triad's practices are anticompetitive" and "it cannot dispute that copyright owners like Triad are within their rights in using and enforcing restrictive license agreements." *Id*. The Ninth Circuit agreed, noting that "Triad did not attempt to prohibit Southeastern or any other ISO from developing its own service software to compete with Triad." *Triad Systems*, at 1337.

Nothing in Apple's voluntary licensing agreements unreasonably restricts creativity or competition. Competitors can, and do, develop competing operating systems and hardware. As

this Court noted, Psystar's counterclaims "explain[ed] that Mac OS performs the same functions

2   as other operating systems." (Dkt No. 33) (citing Countercl. ¶ 21).) Indeed, Psystar sells

3   computers containing other operating systems. (Dkt No. 33, First Am. Countercl. ¶¶ 11, 16.)

4   Psystar could – but has not – developed its own operating system. The decisions by Apple's

5   customers to enter into a voluntary licensing agreement whereby they agree to use Apple's

6   operating system software exclusively with Apple's computers does not restrain in any way the

7   development of competing software. Thus, Psystar's copyright misuse counterclaims and

8   affirmative defense fail as a matter of law.

### G. Section 117's "Essential Steps" Defense Does Not Immunize Psystar's Unlawful Copying, Modification And Distribution Of Mac OS X

Psystar has recently suggested – but not raised as an affirmative defense – that it makes new copies or adaptations of Mac OS X "as an essential step" in its utilization of Apple software, and therefore does not infringe under 17 U.S.C. § 117.[72] This defense has no merit. Section 117 establishes a very narrow exception to the general prohibition against unlawful copying of copyrighted works. *See* 17 U.S.C. § 117. Pursuant to Section 117, an owner of a computer who "rightfully owns a copy of a copyrighted program is authorized to make another copy of that program" if: (1) the copy is "necessary for him to be able to use the copyrighted program in *his* computer;" (2) the copy is "made only for the owner-user's internal use;" and (3) the copy is promptly "destroyed when the original copyrighted work is resold." *Apple Computer, Inc. v. Formula Int'l, Inc.*, 594 F. Supp. 617, 621-22 (C.D. Cal. 1984) (*Formula II*) (emphasis original). To qualify as an "internal" copy, the copy "cannot be made accessible to others." *Id.* Section 117 is aimed at allowing an owner of a computer program to copy the program into RAM and use it.

---

[72] Psystar has waived Section 117 as an affirmative defense because it did not plead the defense in its Answer. *Jorst v. D'Ambrosio Bros. Inv. Co.*, 2001 WL 969039, at *9 (N.D. Cal. Aug. 13, 2001) (citing Fed. R. Civ. P. 8(c)); *see also In re Adbox, Inc.*, 488 F.3d 836, 841 (9th Cir. 2007). Although the Court, in its discretion, may permit a defendant to raise an unpleaded defense in opposition to summary judgment, the Court should only do so "where the delay does not prejudice the plaintiff." *Jorst*, at *9. When the parties have proceeded through extensive litigation "including the depositions of multiple witnesses" and dispositive motion practice, the plaintiff will suffer prejudice if the defendant is permitted to raise a new, untimely defense. *Id.* Because the parties have litigated for more than a year and discovery is closed, Apple would be unfairly prejudiced if Psystar were permitted to raise a new affirmative defense based on Section 117 at this late date.

*Expediters Intern. of Washington, Inc. v. Direct Line Cargo Mgmt. Servs., Inc.*, 995 F. Supp. 468, 478 (D.N.J. 1998) ("Courts examining this legislative history have interpreted Section 117 to permit copying for the limited purpose of providing rightful possessors with access to programs for internal use"). Psystar cannot satisfy any of these requirements.

As a licensee of a copy of Mac OS X, Psystar is not an owner of the software and therefore is not entitled to the Section 117 defense. *Wall Data Inc. v. L.A. County Sheriff's Dept.*, 447 F.3d 769, 784-5 (9th Cir. 2006).[73] But even if Psystar were an owner of its copy of Mac OS X, its activities would not be protected by Section 117. That provision permits the owner to make a single copy of the software, only if the copy is essential to enable the software to run on the owner's computer and the copy is not accessible to others. *Formula II*, 594 F. Supp. at 621-22. Of course, Psystar makes multiple copies. The copies are not for internal use; they are modified and marketed and sold to third parties. *See* 17 U.S.C. § 117(b) (prohibiting transfer of copies that have been adapted). Thus, Psystar's activities far exceed the conduct permitted by Section 117.

Psystar's arguments were squarely rejected in *Apple Computer, Inc. v. Formula International, Inc.* Formula sold a computer kit called the "Pineapple" that permitted a purchaser to assemble a computer nearly identical to an Apple computer. The kit included non-Apple hardware components and copies of Apple software contained on diskettes and on chips installed in the hardware. The court granted Apple's motion for a preliminary injunction finding that Apple would likely succeed on the merits of its copyright infringement claims based on Formula's unauthorized copying and distribution of Apple's software. *Apple Computer, Inc. v. Formula Int'l., Inc.*, 562 F. Supp. 775 (C.D. Cal. 1984) (*Formula I*), *aff'd* 725 F.2d 521 (9th Cir. 1984) (granting and affirming preliminary injunction).

A year later, the Court found Formula in contempt of the preliminary injunction order because Formula resumed selling "Pineapple" kits which included Apple software. Formula argued that it had not violated the preliminary injunction because by purchasing the software from

---

[73] *See also MAI Sys. Corp.*, 991 F.2d at 518 (§ 117 does not apply to a licensee); *Triad Sys. Corp.*, 64 F.3d at 1333 (section 117 applied when Triad sold software but did not apply when Triad began to license its software); *MDY Indus., LLC*, 2008 WL 2757357, at *8 ("[L]icensees of a computer program do not 'own' their copy of the program and therefore are not entitled to a section 117 defense.")

an authorized distributor, then copying the software onto its chips, it was protected under section

117.  *Formula II*, 594 F. Supp. at 620.  The Court rejected Formula's assertion of Section 117

because (1) Formula was "not an owner-user of a computer," (2) its copying of Apple's software

could not be construed as for an "'internal use' by Formula," (3) Formula "made Apple's

programs available to others," and (4) Formula's "permanent copying" of the Apple programs was

not "an essential step" in the software's use.  *Id.* at 622.  *See*, *MAI Sys. Corp.*, 991 F.2d at 518-19

(approving "the court's conclusion that the permanent copying of the software onto the silicon

chips was not an 'essential step' in the utilization of the software").  Psystar's assertion of Section

117 similarly fails as a matter of law.

### H.    The First Sale Doctrine Does Not Apply To Psystar's Copying And Modification Of Mac OS X

Psystar has also asserted the "first sale" doctrine as an affirmative defense to infringement.

This defense, like Psystar's Section 117 defense, is without merit.  The first sale doctrine codified

at Section 109 of the Act allows only the "owner" of a "particular copy" of a copyrighted work to

"dispose of the possession of that copy."  17 U.S.C. § 109(a).  Psystar's invocation of the first sale

doctrine is therefore flawed for at least three reasons.

First, as discussed above, when Psystar purchases an upgrade DVD of Mac OS X, it is a

licensee subject to significant restrictions, not an owner, of a copy of Mac OS X.  Under Section

109, only owners of copyrighted material are entitled to dispose of the particular copy they have

purchased.  Because Psystar is a licensee, not an owner, of its copy of Mac OS X, it is not entitled

to sell or otherwise dispose of that copy under the first sale doctrine, but instead must comply with

the terms of the SLA.  *See Adobe Sys. Inc. v. Stargate Software, Inc.*, 216 F. Supp. 2d 1051, 1060

(N.D. Cal. 2002) (granting summary judgment of copyright infringement and rejecting the

defendant's assertion of the first sale doctrine because the defendant was a licensee, not an owner,

of the plaintiff's software); *Adobe Sys. Inc. v. One Stop Micro, Inc.*, 84 F. Supp. 2d 1086, 1090

(N.D. Cal. 2000) (same); *see also Novell, Inc. v. Unicom Sales, Inc.*, 2004 WL 1839117, at *11

(N.D. Cal. 2004) (provision for automatic termination of the license if the customer breaches any

of the terms and requiring the customer to destroy the software is indicative of a license, not a

sale).

Second, even if Psystar were permitted to assert the first sale doctrine – and it is not – the right to transfer a copyrighted work under the first sale doctrine "applies only to the particular copy" of the copyrighted work which the owner purchased "and nothing else." *Mirage Edition*, 856 F.2d at 1344 (first sale doctrine did not apply to the defendant's sale of prints that the defendant removed from a book it purchased and then framed and resold). At most, Psystar could claim that it is entitled to resell the retail copy of the Mac OS X DVD that it purchased. That is not what Psystar does. Instead, it uses that DVD to make unauthorized, modified copies of Mac OS X that it installs on computers and distributes to its customers. Every subsequent copy that Psystar made and installed on a Psystar computer is not covered under the first sale doctrine. *Id.* Psystar can no more rely on Section 109(a) to protect its commercial distribution of infringing copies of Mac OS X than could a bootlegger who made photocopies of a book it purchased and sold those copies commercially.

## V. UNDISPUTED FACTS ESTABLISH PSYSTAR'S LIABILITY UNDER THE DMCA'S ANTI-CIRCUMVENTION AND ANTI- TRAFFICKING PROVISIONS

Through the enactment of the DMCA in 1998, Congress adapted the law of copyright to the digital age by forbidding the unlawful copying, use and exploitation of works that are protected from access or use by protective technological measures. *See Davidson & Assocs. v. Jung*, 422 F.3d 630, 640 (8th Cir. 2005) (defendants violated the DMCA by providing unlawful "emulators" that circumvented the technological protection measures of online game software); *321 Studios v. Metro Goldwyn Mayer Studios, Inc.*, 307 F. Supp. 2d 1085, 1093-99 (N.D. Cal. 2004) (granting summary judgment under the DMCA for trafficking in DVD-copying device).

Among other things, the DMCA bans the circumvention of technological measures that protect access to copyrighted material, 17 U.S.C. § 1201(a)(1)(A), as well as the trafficking in or marketing of devices that are designed for such circumvention. *See* 17 U.S.C. §§ 1201(a)(2), 1201(b)(1); *see also Universal City Studios, Inc. v. Corley*, 273 F.3d 429, 440-41 (2d Cir. 2001) (discussing DMCA's "anti-circumvention" and "anti-trafficking" provisions); *U.S. v. Elcom Ltd.*, 203 F. Supp. 2d 1111, 1119-20 (N.D. Cal. 2002); *RealNetworks, Inc. v. DVD Copy Control Ass'n*,

1    __ F. Supp. 2d ___, 2009 WL 2475338, at *17 (N.D. Cal. Aug. 11, 2009).  Apple's DMCA claims

2    against Psystar arise under both the anti-circumvention and anti-trafficking provisions.

3         **A.    Psystar Violates The Anti-Circumvention Provisions Of Section 1201(a)(1)**

4         To succeed on its section 1201(a)(1) claim, Apple must show that (1) it employs

5    technological measures that effectively control access to the copyrighted Mac OS X software and

6    (2) Psystar has "circumvented" those measures, which the DMCA broadly defines to include "to

7    decrypt an encrypted work, or otherwise to avoid, bypass, remove, deactivate, or impair a

8    technological measure, without the authority of the copyright owner."  17 U.S.C. § 1201(a)(3)(A).

9    A technological protection is effective for the purpose of meriting the DMCA's anti-

10   circumvention protection if, "in the ordinary course of its operation," the protection mechanism

11   would prevent access to a copyrighted work.  17 U.S.C. § 1201(a)(3)(B).  Apple easily satisfies

12   these elements.

13        As Psystar admits, Mac OS X, in the ordinary course of operation, will not install, run, or

14   operate on non-Apple hardware.[74] ████████████████████████████████████████████

15   ████████████████████████████████████████████████████████████████████████████

16   ████████████████████████████████████████████████████████████████████████

17   ████████████████████████████████████████████████████████████████████████

18   ████████████████████████████

19      ████████████████████████████████████████████████████████████████████████

20   ████████████████████████████████████████████████████████████  *See, e.g.,*

21   *Corley,* 273 F.3d at 444, 453-54; *321 Studios,* 307 F. Supp. 2d at 1096; *RealNetworks,* 2009 WL

22   2475338, at *17.  In *Universal City Studios v. Reimerdes,* 111 F. Supp. 2d. 294, 317-18 (S.D.N.Y.

23   2000), the court found "indefensible as a matter of law" the argument that an encryption key

24   _____

25   █ ████████████████████████████████████████████████████████████████

26   █ ██████████████████████████████████████████████████████████████████

27   ███████████████████████████████████████████████████████████████████████████

28   [76] Chung Decl. Ex. 4 at 21:19-22:20, 29:9-30:3, 89:19-90:15; Ex. 7 at 6:9-20; Ex. 15 at 126:1-
     24; Ex. 16 at 6:19-24.

protecting access to and copying of DVD's was not an effective technological protection measure. 111 F. Supp. 2d at 317-18. The *Reimerdes* court held that "measures based on encryption or scrambling 'effectively control' access to copyrighted works, although it is well known that what may be encrypted or scrambled often may be decrypted or unscrambled." *Id.* at 318. ███

███████████████████████████████████████████████

███████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████

███████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████

**B.    Psystar Violates The Anti-Trafficking Provisions Of Sections 1201(a)(2) And 1201(b) Of The DMCA**

To establish its claims that Psystar traffics in devices that circumvent measures that protect access to, or rights in, copyrighted material, Apple must show that Psystar manufactures and

███████████████████████████████████

███████████████████████████████

███████████████████████████

███████████████████████████████████

townsend.

distributes computers and software to the public and that its computers and software (a) are "primarily designed or produced for the purpose" of circumventing Apple's technological protection measures; (b) have "only limited commercially significant purpose or use other than" to circumvent Apple's technological protection measures; *or* (c) are "marketed by [Psystar] … for use" in circumventing Apple's technological protection measures. 17 U.S.C. §§ 1201(a)(2); 1202(b)(1).

The undisputed facts show that Psystar distributes its circumvention technology with every one of its computers sold with Mac OS X. There is no dispute that Psystar installs this technology on its computers precisely for the purpose of evading protections and enabling Mac OS X to operate on non-Apple hardware.[81] ████████████████████████████████████

████████████████████████████████████████████████████████████████ █

Psystar markets its computers as specifically able to run Mac OS X.[83] Thus, all the elements of the anti-trafficking claims are satisfied.

## C. Section 1201(f)'s "Reverse Engineering" Exception Has No Application Here

Psystar may argue that it did not violate the DMCA because its efforts to circumvent Apple's technological protection measures were permitted under Section 1201(f) of the DMCA. Section 1201(f) permits limited acts of circumvention taken for the "sole purpose of identifying and analyzing those elements of the program that are necessary to achieve interoperability of an independently created computer program with other programs." 17 U.S.C. § 1201(f). Psystar has not pleaded Section 1201(f) as an affirmative defense and therefore has waived it. *See Metcalf*, 488 F.3d at 841; *Ledo Fin. Corp. v. Summers*, 122 F.3d 825, 827 (9th Cir. 1997). Even if Psystar were allowed to raise the defense at this late date, Psystar cannot meet the requirements of Section 1201(f).

To assert a 1201(f) defense, Psystar would have to prove that: "(1) [it] lawfully obtained

---

[81] Chung Decl. Ex. 24 at No. 25; Ex. 41 at PS009264.

█ ████████████

[83] Chung Decl. Ex. 50-51.

the right to use a copy of a computer program; (2) the information gathered as a result of the reverse engineering was not previously readily available to the person engaging in the circumvention; (3) the sole purpose of the reverse engineering was to identify and analyze those elements of the program that were necessary to achieve interoperability of an independently created computer program with other programs; and (4) the alleged circumvention did not constitute infringement." *Davidson*, 422 F.3d at 641-42. At a minimum, Psystar does not meet the third and fourth requirements.

Psystar did not "reverse engineer" Mac OS X in order to achieve interoperability between Mac OS X and an independently created computer program. Section 1201(f) allows a legitimate software developer to commit limited circumvention to analyze a software program to create new and independent software that is interoperable with that program. *See* Senate Rep. (DMCA), p. 32; Comm. Rep. (DMCA) p.42. Psystar did not circumvent Apple's technological protection measures in order to make new software; it did so in order to "force" copies of Mac OS X to run on non-Apple computers. Nor did Psystar circumvent Apple's technological protection measures to achieve "interoperability" with another computer program. "'Interoperability' means the ability of computer programs to exchange information, and of such programs mutually to use the information which has been exchanged."[84] 17 U.S.C. § 1201(f)(4). But Psystar has no independently created program that needs to exchange information with Mac OS X. Psystar's only "creation" was a means of bypassing Apple's technological protection measures so that it could make and sell unlicensed copies of Mac OS X. Nothing in Section 1201(f) authorizes the installation and sale of Apple's copyrighted software on unauthorized Psystar computers.

Furthermore, Psystar cannot meet the fourth requirement of Section 1201(f) because Psystar infringes Apple's copyright. 17 U.S.C. § 1201(f)(1)-(3). In *Davidson & Assoc. v. Jung*, for example, the court rejected the defendants' argument that they had not violated the DMCA because their acts constituted "reverse engineering" under Section 1201(f). The plaintiff was a video game developer and had established an online site for multiple gamers to play its games over the Internet. *Davidson*, 422 F.3d at 635-36. The site included security mechanisms to ensure

---

[84] Section 1201(f) does not create an exception for hardware-software interoperability.

that only persons who had purchased a licensed copy of the plaintiff's games and paid to use the gaming site were allowed access. The defendants developed their own gaming site and reversed engineered the plaintiff's software so that gamers could play the plaintiff's games on this alternate site without having to join the plaintiff's site. The court rejected the defendant's argument that its reverse engineering was an effort to achieve interoperability under Section 1201(f). The court found that because the defendant's circumvention "constitute[d] infringement," Section 1201(f) did not apply. *Id.* at 642; *see also Reimerdes*, 111 F. Supp. 2d. at 319-20 (S.D.N.Y. 2000) (section 1201(f) did not apply where the defendant's circumvention constituted infringement).

Like the defendants in *Davidson*, Psystar circumvented Apple's technological protection measures so that it could commit wholesale infringement of Mac OS X. The sole purpose of Psystar's copying and modifying Mac OS X was to enable it to profit by commercially distributing unlicensed copies of Mac OS X on Psystar computers. Section 1201(f) does not apply when the "defendants' purpose in developing the [the circumvention device] was to avoid the anti-circumvention restrictions of [Mac OS X] and to avoid the restricted access to [the protected work]." *Davidson & Assoc., Inc. v. Internet Gateway, Inc.*, 334 F. Supp. 2d 1164, 1186-7 (E.D. Mo. 2004). Psystar's efforts to assert Section 1201(f) therefore should fail.

///
///
///
///
///
///
///
///
///
///
///
///

## VI. CONCLUSION

For the foregoing reasons, the Court should grant partial summary judgment on Apple's First and Second Claims for Copyright Infringement and Contributory and Induced Copyright Infringement under 17 U.S.C. § 501, *et seq*. and Third Claim for Violating the Digital Millennium Copyright Act, 17 U.S.C. § 1201, *et seq*. The Court should also grant summary judgment dismissing Psystar's Eleventh and Thirty-Seventh Affirmative Defenses for First Sale/Exhaustion of Copyright and Copyright Misuse dismissing its Counterclaims for Copyright Misuse.

DATED: October 8, 2009      Respectfully submitted,

TOWNSEND AND TOWNSEND AND CREW LLP

By: */s/ James G. Gilliland, Jr.*
    JAMES G. GILLILAND, JR.

Attorneys for Plaintiff and Counterdefendant
APPLE INC.

62249720 v1

| | |
|---|---|
| 1 | **CERTIFICATE OF SERVICE** |
| 2 | I, **Esther Casillas**, declare I am employed in the City and County of San Francisco, California in the office of a member of the bar of this court at whose direction this service was |
| 3 | made. I am over the age of eighteen and not a party to this action. My business address is |
| 4 | Townsend and Townsend and Crew LLP, Two Embarcadero Center, Eighth Floor, San Francisco, California, 94111. |
| 5 | I served the following documents exactly entitled: **APPLE INC.'S MOTION FOR SUMMARY** |
| 6 | **JUDGMENT ON COPYRIGHT INFRINGEMENT, DMCA VIOLATIONS AND PSYSTAR'S AFFIRMATIVE DEFENSES** on the interested parties in this action following the |
| 7 | ordinary business practice of Townsend and Townsend and Crew LLP, as follows: |

K.A.D. Camara
Kent Radford
Camara & Sibley LLP
2339 University Boulevard
Houston, TX 77005
Phone: 713-893-7973
Fax: 713-583-1131
Email: camara@camarasibley.com

Eugene Action
1780 E. Barstow Avenue, #5
Fresno, CA 93710
Email: eugeneaction@hotmail.com

☒ [By First Class Mail] I am readily familiar with my employer's practice for collecting and processing documents for mailing with the United States Postal Service. On the date listed herein, following ordinary business practice, I served the within document(s) at my place of business, by placing a true copy thereof, enclosed in a sealed envelope, with postage thereon fully prepaid, for collection and mailing with the United States Postal Service where it would be deposited with the United States Postal Service that same day in the ordinary course of business.

☐ [By Overnight Courier] I caused each envelope to be delivered by a commercial carrier service for overnight delivery to the offices of the addressee(s).

☐ [By Hand] I directed each envelope to the party(ies) so designated on the service list to be delivered by courier this date.

☐ [By Facsimile Transmission] I caused said document to be sent by facsimile transmission to the fax number indicated for the party(ies) listed above.

☒ [By Electronic Transmission] I caused said document to be sent by electronic transmission to the e-mail address indicated for the party(ies) listed above via the court's ECF notification system.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration was executed on October 8, 2009, at San Francisco, California.

*/s/ Esther Casillas*
**Esther Casillas**

townsend.