1   TOWNSEND AND TOWNSEND AND CREW LLP
    JAMES G. GILLILAND, JR. (State Bar No. 107988)
2   MEHRNAZ BOROUMAND SMITH (State Bar No. 197271)
    MEGAN M. CHUNG (State Bar No. 232044)
3   J. JEB B. OBLAK (State Bar No. 241384)
    Two Embarcadero Center Eighth Floor
4   San Francisco, CA  94111
    Telephone:  (415) 576-0200
5   Facsimile:  (415) 576-0300
    Email: jggilliland@townsend.com
6          mboroumand@townsend.com
           mmchung@townsend.com
7          jboblak@townsend.com

8   O'MELVENY & MYERS LLP
    GEORGE RILEY (State Bar No. 118304)
9   Two Embarcadero Center, 28th Floor
    San Francisco, CA  94111
10  Telephone:  (415) 984-8700
    Facsimile:  (415) 984-8701
11  Email: griley@omm.com

12  Attorneys for Plaintiff and Counterdefendant
    APPLE INC.

13

14              UNITED STATES DISTRICT COURT

15          FOR THE NORTHERN DISTRICT OF CALIFORNIA

16                  SAN FRANCISCO DIVISION

17

18  APPLE INC.,                      Case No. 08-3251 WHA

19           Plaintiff,              **APPLE INC.'S REPLY BRIEF IN
                                     SUPPORT OF ITS MOTION FOR
20       v.                          SUMMARY JUDGMENT**

21  PSYSTAR CORPORATION, a Florida   Hearing Date:   November 12, 2009
    corporation,                     Hearing Time:   2:00 p.m.
22                                   Courtroom:      9
             Defendant.              Judge:          Hon. William Alsup
23  ─────────────────────────────   Trial Date:     January 11, 2010
    AND RELATED COUNTERCLAIMS.
24

25                  **PUBLIC VERSION**
                    **[REDACTED]**
26

27

28

APPLE INC.'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT,
CASE NO. 08-3251 WHA

townsend.

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ....................................................................................................1

II.     ARGUMENT ...........................................................................................................2

      A.      The Software License Agreement Confirms That Apple Does
            Not Authorize Psystar's Infringement .....................................................2

      B.      Neither Section 117 Nor Section 109 Authorizes Psystar's
            Copying, Adapting And Reselling Of Mac OS X....................................4

           1.      Psystar Is Not Entitled To A Section 117 Defense ................................4

           2.      Psystar Is Not Entitled To A Section 109 Defense ................................7

      C.      Psystar Seeks To Unduly Limit The Exclusive Right To
            Create Derivative Works From Copyrighted Software.............................7

      D.      Psystar Has Not Opposed Apple's Motion For Summary
            Judgment For Contributory Copyright Infringement Claim ...........................10

      E.      Apple Is Entitled To Judgment On Psystar's Copyright Misuse
            Defense And Counterclaim. .................................................................10

      F.      Apple Is Entitled To Judgment On Its DMCA Claims ....................................11

      G.      Apple Seeks Only to Enforce Its Intellectual Property And
            Protect The Fruits Of Its Labor ..........................................................13

II.     CONCLUSION .....................................................................................................14

townsend.

# TABLE OF AUTHORITIES

Page

CASES

*Apple Computer, Inc. v. Formula Int'l, Inc.*,
  562 F. Supp. 775 (C.D. Cal. 1984) ("*Formula I*") ................................................. 5

*Apple Computer, Inc. v. Formula Int'l, Inc.*,
  594 F. Supp. 617 (C.D. Cal. 1984) ("*Formula II*") ............................................... 5, 6

*Apple Inc. v. Psystar Corp.*,
  586 F. Supp. 2d 1190 (N.D. Cal. 2008) ................................................................. 10

*Cadence Design Sys., Inc. v. Avant! Corp.*,
  125 F.3d 824 (9th Cir. 1997) .................................................................................. 13

*Concrete Machinery Co. v. Classic Lawn Ornaments, Inc.*,
  843 F.2d 600 (1st Cir. 1988) .................................................................................. 13

*Dun & Bradstreet Software Services, Inc. v. Grace Consulting, Inc.*,
  307 F.3d 197 (3rd Cir. 2002) .................................................................................. 8, 9

*Evolution, Inc. v. SunTrust Bank*,
  342 F. Supp. 2d 943 (D. Kan. 2004) ...................................................................... 6

*Freeman v. Lasky, Haas & Cohler*,
  410 F.3d 1180 (9th Cir. 2005) ................................................................................ 11

*Graham v. James*,
  144 F.3d 229 (2d Cir. 1998) ................................................................................... 3

*Krause v. Titleserv, Inc.*,
  402 F.3d 119 (2d Cir. 2005) ................................................................................... 4, 5, 6

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*,
  518 F. Supp. 2d 1197 (C.D. Cal. 2007) ................................................................. 13

*Microsoft Corp. v. BEC Computer Co., Inc.*,
  818 F. Supp. 1313 (C.D. Cal. 1992) ....................................................................... 11

*Midway Mfg. Co. v. Strohon*,
  564 F. Supp. 741 (N.D. Ill. 1983) .......................................................................... 8

*Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*,
  508 U.S. 49, 113 S. Ct. 1920 (1993) ...................................................................... 11

*S.O.S., Inc. v. Payday, Inc.*,
  886 F.2d 1081 (9th Cir. 1989) ................................................................................ 3

townsend.

**TABLE OF AUTHORITIES**
(continued)

Page

*SAS Institute, Inc. v, S & H Computer Systems, Inc.,*
    605 F. Supp. 816 (D. Tenn. 1985) ................................................................. 8

*Sega Enterprises Ltd. v. Accolade, Inc.,*
    977 F.2d 1510 (9th Cir. 1992) ...................................................................... 4

*Silverstein v. Penguin Putnam, Inc.,*
    368 F.3d 77 (2d Cir. 2004) ........................................................................... 8

*Sony Computer Entm't Am., Inc. v. Divineo, Inc.,*
    457 F. Supp. 2d 957 (N.D. Cal. 2006) ........................................................ 12

*Sony Computer Entm't Am. Inc. v. Gamemasters,*
    87 F. Supp. 2d 976 (N.D. Cal. 1999) .......................................................... 11

*Storage Tech. Corp. v. Custom Hardware Eng'g & Consulting, Inc.,*
    421 F.3d 1307 (Fed. Cir. 2005) ................................................................... 12

*Stuart Weitzman, LLC v. MicroComputer Res., Inc.,*
    510 F. Supp. 2d 1098 (S.D. Fla. 2007) ........................................................ 5

*Sun Microsystems, Inc. v. Microsoft Corp.,*
    188 F. 3d 1115 (9th Cir. 1999) .................................................................... 3

*Torah Soft Ltd. v. Drosnin,*
    136 F. Supp. 2d 276 (S.D.N.Y. 2001) ......................................................... 8

*Triad Systems Corp. v. Southeastern Express Co.,*
    64 F.3d 1330 (9th Cir. 1995) ...................................................................... 11

*Universal City Studios, Inc. v. Corley,*
    273 F.3d 429 (2nd Cir. 2001) ..................................................................... 12

*Universal City Studios, Inc. v. Reimerdes,*
    111 F. Supp. 2d 294 (S.D.N.Y. 2000) ......................................................... 12

*Wall Data Inc. v. Los Angeles County Sheriff's Dept.,*
    447 F.3d 769 (9th Cir. 2006) ....................................................................... 4

*Wells Fargo & Co. v. WhenU.com, Inc.,*
    293 F. Supp. 2d 734 (E.D. Mich. 2003) ....................................................... 9

**STATUTES**

17 U.S.C. §101 ................................................................................................. 9

- iii -

townsend.    CASE NO. 08-3251 WHA

# TABLE OF AUTHORITIES
(continued)

Page

17 U.S.C. §107 ................................................................................................................. 7

17 U.S.C. §109(a) ............................................................................................................ 7

17 U.S.C. §117(a)(1) ....................................................................................................... 5

17 U.S.C §117(a)-(b) ...................................................................................................... 6

17 U.S.C §117(b) ............................................................................................................ 6


**OTHER AUTHORITIES**

Final Report of the National Commission on New Technological Uses of Copyrighted
    Works (1978) ("CONTU Report") ....................................................................... 5, 6

townsend.    CASE NO. 08-3251 WHA

1

**I.   INTRODUCTION**

2       Without the protections afforded by copyright laws, innovative companies such as Apple

3   Inc. will not invest the decades of effort and hundreds of millions of dollars required to develop a

4   product such as Mac OS X.  Psystar seeks to appropriate to its own uses Apple's proprietary work,

5   arguing that the law allows it to do so.  Psystar is wrong.

6       Apple has submitted undisputed facts showing that Psystar infringes Apple's copyrights in

7   Mac OS X and circumvents Apple's technological protection measures to do so.  Psystar, in

8   response, presents no evidence demonstrating a triable issue of fact and, indeed, concedes the facts

9   establishing its liability.  Though Apple need only show that Psystar infringes *one* of the exclusive

10  rights protected by the Copyright Act, Psystar admits the factual bases for three separate

11  violations:  (1) unauthorized copying of Mac OS X; (2) unauthorized distribution of Mac OS X;

12  and (3) the creation of unauthorized derivative works.  Psystar concedes that it makes multiple

13  copies of Apple's copyrighted Mac OS X while making each Psystar computer and that it

14  distributes and sells those computers loaded with copies of Apple's software.  (Response at 10-

15  12.)  Psystar also "confirms" the description provided by Apple's expert of the changes to

16  Mac OS X engineered by Psystar to force that software to run on non-Apple hardware.  (*Id.* at 13.)

17      Psystar advances various legal arguments intended to excuse its copying, modifying, and

18  distributing of Mac OS X.  None has merit.  Psystar argues that even if it violates the express

19  provisions of Apple's Software License Agreement ("SLA") prohibiting copying, modification,

20  and distribution of Mac OS X on non-Apple hardware, it still is not liable for copyright

21  infringement.  (Response at 8.)  Psystar contends that the SLA provisions it violates are "mere

22  covenant[s]" and not "conditions" limiting the scope of the license, so Apple has breach of

23  contract, not copyright infringement, claims against Psystar.  This argument is wrong.  Psystar's

24  activities violate the Copyright Act and also breach Apple's SLA.

25      Psystar's attempt to defend its unauthorized copying of Mac OS X under section 117 (the

26  "essential step" doctrine) and under section 109 (the "first sale" doctrine) of the Copyright Act

27  also is meritless.  Section 117 permits only copies that are necessary for "internal use."  It does not

28  authorize Psystar's mass copying of Mac OS X for the ultimate purpose of resale to end users.

1   Likewise, Psystar's claim that section 109 permits it to make unlimited copies of Mac OS X and

2   install them onto Psystar's computers simply because Psystar allegedly "owns" the original copy

3   is incorrect.  (Response at 12-13.)  Section 109 authorizes only the resale of one's particular copy

4   of Mac OS X.  Nothing in the Copyright Act condones Psystar's mass reproduction and

5   distribution of Apple's copyrighted work.

6           Psystar concedes the facts which establish that it has violated the Digital Millenium

7   Copyright Act ("DMCA").  Psystar admits that it developed technology to circumvent Apple's

8   technological protection measures and distributes this technology to others; these admissions

9   prove that Apple is entitled to judgment on its DMCA claims.  Although Psystar offers pages of

10  irrelevant discussion of open-source Apple software code called Darwin, Psystar ultimately

11  admits, as it must, that "Mac OS X includes many things which are not released as part of

12  Darwin" and that "Apple introduced into OS X specific technical measures not present in

13  Darwin." (Response at 3, 6.)  That others may have used Apple's software development tools for

14  permissible purposes does not excuse Psystar's circumvention of Apple's technological protection

15  measures.  (*Id.* at 5.)

16          Finally, Psystar acknowledges that it is not offering "theories of antitrust violations" to

17  support its copyright misuse defense and counterclaims, but instead offers the unsupported

18  proposition that Apple *per se* engages in misuse by using "copyright law to enforce the tethering

19  of OS X to Apple hardware." (Response at 20-21.)  There is no support in the law for Psystar's

20  novel proposition that copyright law prohibits licensing practices that do not restrain competition

21  or creativity and are common throughout the software industry.

22  **II.     ARGUMENT**

23          **A.     The Software License Agreement Confirms That Apple Does Not Authorize
                     Psystar's Infringement**
24

25          Apple seeks summary judgment that Psystar has violated the Copyright Act and the

26  DMCA.  In its opposition, Psystar claims that Apple's summary judgment motion "focuses almost

27  entirely on alleged breaches of the SLA" and therefore fails to establish that Psystar has "violated

28  an exclusive right granted to Apple by the Copyright Act." (Response at 8.)  Contrary to Psystar's

1  argument, Apple does not rely on the SLA to establish that Psystar infringes Apple's copyrights.

2  Psystar engages in copyright infringement, independent of the existence of the SLA. (*See* Apple's

3  SJ Br. at 8-9.) Apple refers to the SLA only to demonstrate that it does not otherwise permit

4  Psystar's infringement.[1]  Therefore, Psystar's assertion that certain provisions of the SLA

5  prohibiting its conduct are "mere covenants" rather than "conditions" of the license is not only

6  incorrect, but irrelevant.

7          Psystar does not dispute that it violates the SLA's prohibitions against the unauthorized use

8  of Mac OS X on non-Apple hardware, as well as its prohibitions against redistributing the

9  software, and also its limitations on transferring, modifying and copying Mac OS X. (*See* SLA §§

10  2A, 3, 2C and 2F.) Rather, Psystar argues that it is free to ignore the SLA altogether, mistakenly

11  citing *Sun Microsystems, Inc. v. Microsoft Corp.*, 188 F. 3d 1115 (9th Cir. 1999), for the

12  proposition that copyright infringement and license breaches can be overlooked, so long as the

13  terms breached are mere "covenants." (Response at 8-9.) However, neither *Sun Microsystems*,

14  nor the cases it relies upon, support the unprecedented limitation on copyright protection that

15  Psystar posits. *Sun* stands only for the proposition that breaching license provisions that regulate

16  rights enumerated in the Copyright Act <u>also</u> constitutes infringement; but breaching license terms

17  that do not govern rights enumerated in the Copyright Act does not constitute infringement.  The

18  *Sun* decision specifically affirmed that "[i]f … a license is limited in scope and the licensee acts

19  outside the scope, the licensor can bring an action for copyright infringement." *Sun Microsystems,*

20  *Inc.,* 188 F.3d at 1121; *see also Graham v. James*, 144 F.3d 229, 236 (2d Cir. 1998); *S.O.S., Inc. v.*

21  *Payday, Inc.,* 886 F.2d 1081, 1087 (9th Cir. 1989).  Here, Psystar's activities were <u>forbidden</u> by

22  Apple's SLA; there is neither a covenant nor a condition that provides otherwise.  Moreover,

23  Apple has shown that Psystar violates the Copyright Act, irrespective of its breach of the terms of

24  the SLA, through its copying, distribution and modification of Mac OS X.

25

26          [1] Psystar correctly acknowledges that this is a proper understanding of a license's role in
27  copyright action.  "A license agreement can be relevant to determining whether a defendant has
    committed copyright infringement, but only if the defendant has first violated an exclusive right
    granted by the Copyright Act. This is because a license can permit what would otherwise be a
28  violation." (Response at 8.)

APPLE INC.'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT,
CASE NO. 08-3251 WHA

3

**B.     Neither Section 117 Nor Section 109 Authorizes Psystar's Copying, Adapting And Reselling Of Mac OS X**

Psystar admits that it makes <u>three</u> types of copies of Mac OS X "in the course of the imaging process by which Psystar installs copies of Mac OS X on the computers that it sells to end users" (Response at 10), but argues that sections 117 and 109 authorize this infringing conduct.  Even if Psystar were an "owner of a copy" for the purpose of applying section 117 or section 109 (and it is not),[2] neither of these sections absolves Psystar of liability for infringing Apple's copyrights.

**1.     Psystar Is Not Entitled To A Section 117 Defense**

Section 117, the "essential step" doctrine, only permits the making of "a copy" (*i.e.*, one copy) of a copyrighted work when "essential" for an owner's internal use.  Section 117, which Psystar admits only permits "a narrow category of copying," does not authorize Psystar's conduct for several reasons.  (Response at 17.)[3]  First, Psystar does not make only a *single* copy of Mac OS X.  It makes one copy on a Mac mini, a second copy on its imaging station, and then reproduces unlimited copies onto Psystar computers using its imaging station.  (Response at 10-11.)  *See Wall Data, Inc. v. Los Angeles County Sheriff's Dept.*, 447 F.3d 769, 786 (9th Cir. 2006) (holding that hard drive imaging done in "an effort to save time and preserve flexibility" is not permitted by section 117).  All of these copies are different from the retail upgrade DVD of Mac OS X that Psystar allegedly distributes with its computers.  Second, Psystar makes these copies not for its internal use, but for resale to others, thereby violating section 117's mandate that copies

---

[2] A complete discussion of why Psystar is not an "owner" of copies of Mac OS X is set forth in Apple's Motion for Summary Judgment (Docket No. 181) ("Apple's SJ Br.") at 19-22, and Apple's Opposition to Psystar's Motion for Summary Judgment (Docket No. 196) ("Apple's Opp. Br.") at 7-16.  That discussion is incorporated herein by reference.

[3] Psystar argues in its opposition that it did not need to plead section 117 as an affirmative defense because (1) its interrogatory responses put Apple on notice that it would assert section 117; and (2) section 117 need not be pleaded as an affirmative defense.  (Response at 17.)  Both arguments are incorrect.  Psystar's interrogatory responses (Nos. 7, 10) say nothing about section 117's "essential step" defense.  (*See* Psystar Ex. F.)  *Sega Enterprises Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1520-21 (9th Cir. 1992), does not address or support Psystar's argument that section 117 need not be pleaded as an affirmative defense.  *Wall Data Inc. v. Los Angeles County Sheriff's Dept.*, 447 F.3d 769, 776, 784-86 (9th Cir. 2006) (section 117 pleaded as affirmative defense); *Krause v. Titleserv, Inc.*, 402 F.3d 119, 120 (2d Cir. 2005) (same).  Consequently, Psystar has waived this defense and should be precluded from asserting it now.

1    made for internal use must be "used in no other manner." 17 U.S.C. §117(a)(1).

2         Moreover, Psystar's adaptations of Mac OS X are not permitted by section 117, which

3    allows only "changes necessary to enable *the use for which* [the software] *was both sold and*

4    *purchased . . . .*" Final Report of the National Commission on New Technological Uses of

5    Copyrighted Works (1978) at 13, *available at* http://digital-law-

6    online.info/CONTU/PDF/index.html (hereinafter cited as the "CONTU Report") (emphasis

7    added); *see also  Krause v. Titleserv, Inc.*, 402 F.3d 119, 129 (2d Cir. 2005); *Stuart Weitzman,*

8    *LLC v. MicroComputer Res., Inc.*, 510 F. Supp. 2d 1098, 1109 (S.D. Fla. 2007), *vacated on other*

9    *grounds*, 542 F.3d 859 (11th Cir. 2008).  As the SLA expressly provides, Mac OS X is licensed

10   exclusively for use on Apple computers.  (Apple's SJ Br. at 3.)  Psystar's copying and adaptation

11   of Mac OS X are directly contrary to that purpose since they are done in order to permit use of

12   Mac OS X on non-Apple computers.  Consequently, Psystar's adaptations do not fit within

13   section 117's requirements.

14        Trying to salvage its claim that section 117 permits it to copy Mac OS X and resell it to

15   end users, Psystar attempts to distinguish *Apple v. Formula*.  (Response at 18-19.)  But its efforts

16   are unavailing.  *See Apple Computer, Inc. v. Formula Int'l, Inc.*, 562 F. Supp. 775 (C.D. Cal.

17   1984) ("*Formula I*"), *aff'd* 725 F.2d 521 (9th Cir. 1984); *Apple Computer, Inc. v. Formula Int'l,*

18   *Inc.*, 594 F. Supp. 617 (C.D. Cal. 1984) ("*Formula II*").  Psystar argues that defendant Formula's

19   copying of Apple's software for use in its "Pineapple" computers is different than Psystar's

20   copying because the *Formula* court addressed "whether purchasing a lawful copy of Apple

21   software then copying that software not onto a computer, but onto silicon chips that can be

22   plugged into a computer by the end user, is protected by § 117." (Response at 18.)  But Psystar

23   does not explain how, nor does it cite any case to support why, this distinction is relevant.  Nor

24   could it; making either type of copy – on to a ROM chip or on to a hard drive – is equally

25   unlawful.  Moreover, the court in *Formula II* rejected the argument that defendant's copies were

26   permissible under section 117 because they were made for others' "internal use," holding instead

27   that the one copy "made by the owner-user *cannot be made accessible to others*." *Formula II*,

28   594 F. Supp. at 622 (emphasis added).

1    Psystar again tries to distinguish the *Formula* decisions by making the baseless assertion

2    that "it is not clear whether the defendant owned legitimate copies of Apple's software or, instead,

3    owned pirated copies, in which case § 117 would not apply." (Response at 18.) But the reported

4    opinions make clear that Formula, just like Psystar, started with original, authorized copies of

5    Apple's operating system software. *Formula II*, 594 F. Supp. at 620 (describing the "Wong

6    diskettes" possessed by Formula as storage media containing Apple's copyrighted software and

7    produced under a license from Apple). The court squarely rejected Formula's argument that since

8    it was the "rightful owner" of the Wong diskettes it could copy that software onto computer

9    hardware (*i.e.*, ROM sets) and resell it. *Id.* The court described the exact legal theory that Psystar

10   posits now and rejected it. *Formula II*, 594 F. Supp. at 622-23 (finding "Formula's claimed

11   justification to be a mere pretext and to be outside the protection of Section 117" and refusing to

12   construe section 117 "in a manner that would effectively emasculate the protections for computer

13   programs contained in other sections of the Copyright Act").

14   Moreover, any copy that is not an "exact copy" constitutes an "adaptation" for the purpose

15   of section 117(b)'s prohibition against transfer without permission. 17 U.S.C §117(a)-(b).

16   Psystar impermissibly "adapts" Mac OS X to make it run on Psystar computers and transfers the

17   "adaptation" in violation of section 117(b)'s requirement that adaptations "may be transferred

18   only with the authorization of the copyright owner." 17 U.S.C §117(b). Adding "capabilities"

19   and desired features, "conversion of a program from one higher-level language to another," and

20   the addition of "features to the program that were not present at the time of rightful acquisition"

21   all constitute adaptations under section 117. *Krause*, 402 F.3d at 125; *Evolution, Inc. v. SunTrust

22   Bank*, 342 F. Supp. 2d 943 (D. Kan. 2004); CONTU Report at 13. Psystar admits that it adapts

23   Mac OS X by adding features "to increase [Mac OS X's] functionality," taking "steps" to make

24   Mac OS X "work on a wider range of computers than simply Apple Macintoshes" and "porting"

25   Mac OS X to work on Psystar's hardware. (Psystar Br. at 10-11.)

26   Finally, section 117(b) requires that an owner who wishes to transfer any "exact copies"

27   that it made for its internal use transfer the original "copy from which such copies were

28   prepared." 17 U.S.C. §117(b). Psystar does not meet this requirement because it keeps the

townsend.

original copy of Mac OS X on its imaging station and repeatedly uses that copy to continue its

mass duplication of Mac OS X onto additional Psystar computers.  Psystar never addresses this

explicit limitation of section 117.

### 2.      Psystar Is Not Entitled To A Section 109 Defense

Even if Psystar were an owner, not a licensee, of a copy of Mac OS X, section 109's "first

sale" doctrine also would not excuse Psystar's conduct because section 109 does not permit

*copying* of any kind, for any purpose.  17 U.S.C. §109(a).  Rather, section 109 permits the owner

of a copy only to transfer possession of the one copy of software it bought; it does not allow

Psystar's repeated copying or adaptation of Mac OS X in making and selling its computers.

(Apple's SJ Br. at 21-22; Apple's Opp. Br. at 11-12.)

Rather than address the actual requirements of sections 109 or 117, Psystar simply states

that it "owns" an original copy of the Mac OS X DVD, that it allegedly distributes a Mac OS X

DVD with Psystar computers, and that its activities are for the "internal use" *of others*.  (Response

at 10-12, 18-19.)  But neither section 109, nor section 117, nor any other copyright doctrine,[4]

permits an "owner" to make unlimited unauthorized copies of another's copyrighted work and, in

turn, sell those copies for use by others.  Such an interpretation, if adopted, would vitiate the

copyright laws, condone wholesale software piracy and gravely harm the entire software industry.

This cannot be the correct interpretation of sections 109, 117, and the Copyright Act.  Copyright

law simply does not sanction the commercial reproduction of copyrighted software for others'

use.

### C.      Psystar Seeks To Unduly Limit The Exclusive Right To Create Derivative Works From Copyrighted Software

Apple also is entitled to prevail on its alternative ground for copyright infringement that

Psystar creates an infringing derivative work.  Psystar does not dispute the facts underlying this

---

[4] Psystar briefly mentions "fair use" but makes no argument, and submits no evidence, purporting to justify its conduct under fair use principles.  *See* 17 U.S.C. §107.  If it were seriously attempting to prove fair use then Psystar would have been required to submit evidence regarding: (1) "the purpose and character" of its use of Mac OS X, including whether its use was "of a commercial nature"; (2) "the nature of the copyrighted work"; (3) "the amount and substantiality of the portion used in relation to the copyrighted work as a whole"; and (4) "the effect of the use upon the potential market for or value of" Mac OS X.  *Id.*  It submitted no such evidence.

1    claim. Psystar agrees with Apple's technical expert, Dr. John Kelly, ████████████
2    ████████████████████████████████████████████████████████████████████████

3    (Response at 7.)[5]

4         Case law establishes that modifications, such as those Psystar concedes, create a derivative

5    work. *Dun & Bradstreet Software Services, Inc. v. Grace Consulting, Inc.*, 307 F.3d 197 (3rd Cir.

6    2002) (finding derivative work where the defendant Grace modified the plaintiff's software);

7    *Midway Mfg. Co. v. Strohon*, 564 F. Supp. 741, 762 (N.D. Ill. 1983) (defendant's addition to the

8    ROM code and replacement of a small fraction of the existing programming instructions created a

9    derivative work);[6] *SAS Institute, Inc. v, S & H Computer Systems, Inc.*, 605 F. Supp. 816, 819-20,

10   831 (D. Tenn. 1985) (the "conversion" of a piece of software from a program that would run on an

11   IBM computer, to one that would run on a VAX computer is "well within the statutory definition

12   of a derivative work").

13        Psystar argues, however, that "adding to or replacing parts of OS X without modifying the

14   OS X source or object code" is insufficient to create a derivative work because it is like the

15   

[5]

24   [6] That the altered code in *Strohon* was functional – altering the appearance and sequence of
     game events – did not, as Psystar suggests it should, prevent the court from holding that a
25   derivative work had been created. Psystar cites to *Silverstein v. Penguin Putnam, Inc.*, 368 F.3d
     77 (2d Cir. 2004), and *Torah Soft Ltd. v. Drosnin*, 136 F. Supp. 2d 276 (S.D.N.Y. 2001), for the
26   premise that functional changes do not result in a derivative work. *Silverstein*, however, held only
     that an author was estopped from copyright *protection* based merely on copyediting. 368 F.3d at
27   83 (questioning but not deciding whether copyediting created an original work). *Torah Soft* held
     that where a program must read bible text by one of two methods, selection of one did not satisfy
28   the originality requirement for copyright *protection* of a compilation of non-original works. 136
     F. Supp. 2d at 289-90. Neither case pertains here.

1   programming activities of developers who write code to enable various software applications to

2   interoperate with Mac OS X. (Response at 13-16.) Psystar's argument is without merit. Contrary

3   to Psystar's assertion, *Dun & Bradstreet* does not hold that only changes to a program's source

4   code constitute a derivative work. In *Dun & Bradstreet*, the defendant created a new software

5   program that incorporated the plaintiff's copyrighted code and added the defendant's command

6   codes. The Third Circuit held that this new program was an infringing derivative work: "the

7   inclusion of the Copy and Call command makes [defendant's] W-2 programs infringing,

8   derviative works of [plaintiff's] copyrighted software." *Dun & Bradstreet*, 307 F.3d. at 212.

9   Similarly, Psystar's modification of Mac OS X can and does form the basis for a finding that

10  Psystar has infringed Apple's right to create derivative works of Mac OS X. *See* 17 U.S.C. §§101,

11  106.

12          Deleting and replacing the component software of Mac OS X is not, as Psystar argues,

13  analogous to the loading of separate applications software to run on top of an operating system.

14  Psystar does not cite any case holding that one can replace entire files within a piece of software

15  without creating a derivative work.[7] Psystar's actions are akin to ripping several chapters out of a

16  book, inserting new pages in the place of those removed, and then reselling that altered book.

17  Psystar would have the Court accept that it is merely reselling Apple's book in its entirety along

18  with a set of separate Psystar booklets.[8] But Psystar's false analogy fails. In the normal course

19  one can add word processing software to a computer, and then uninstall that software without

20  impairing the operating system on which it was installed. ███████████████████

21

---

22          [7] *Wells Fargo & Co. v. WhenU.com, Inc.*, 293 F. Supp. 2d 734, 769 (E.D. Mich. 2003), does
    not support Psystar's claim that its modifications to Mac OS X do not create a derivative work.

23  *Wells Fargo* considered whether a pop-up advertising window created a derivative work of an
    underlying web-browser window. Unlike the pop-up ads in *Wells Fargo*, which were merely

24  temporary alterations to the screen displays seen by the user, Psystar alters the code needed to boot
    the operating system and execute the user interface components of Mac OS X. (Kelly Decl. at ¶¶

25  16-17, 29, 31.)

26          [8] While Psystar's Response expounds at some length about open source software including, for
    example, Darwin and the "Mach" micro-kernel, none of that discussion matters to this case.

27  Psystar does not contend, or try to prove – because it cannot do so – that Apple's bootloader code,
    which Psystar replaces, is not proprietary to Apple. ██████████████████████████

28  ██████████        Thus, Psystar's "open source" discussion is nothing more than a red herring.

(Kelly Decl. at ¶¶ 16-17, 31.)

**D.    Psystar Has Not Opposed Apple's Motion For Summary Judgment For Contributory Copyright Infringement Claim**

Apple has moved for summary judgment on its claim for contributory infringement, and included with its motion evidence and argument supporting this claim. (*See* Apple SJ Br. at 15-16 and evidence cited therein.) Psystar has neither introduced any admissible evidence nor made any argument to rebut this claim. Accordingly, Apple is entitled to judgment on its claim for contributory copyright infringement.

**E.    Apple Is Entitled To Judgment On Psystar's Copyright Misuse Defense And Counterclaims**

Psystar repeatedly has changed the alleged basis for its copyright misuse defense and counterclaims, but at no point has it presented any evidence or legal support for its allegations. Psystar does not contest Apple's evidence that it lacks market power in a relevant market and confirms that its copyright misuse contention is not based on "recycled theories of antitrust violations." (Response at 20.) But Psystar offers no other basis for its misuse claim. Nor can it. Psystar presents no evidence and does not even argue that Apple undermines the policy of the Copyright Act by suppressing others' creativity. Nor does Psystar present any evidence or argument to show that Apple has stopped Psystar or anyone else from developing operating system software.

What remains of Psystar's misuse claim, as reflected in its Response, is Psystar's insistence that simply because Apple seeks to "enforce the tethering of OS X to Apple hardware," Apple *per se* is engaged in copyright misuse. For the many reasons discussed in Apple's opposition to Psystar's summary judgment motion, this argument fails. (Apple's Opp. Br. at 17-18.) This Court already has stated that Apple "is certainly entitled" "to ask its customers to purchase Mac OS knowing that it is to be used only with Apple computers." *Apple Inc. v. Psystar Corp.*, 586 F. Supp. 2d 1190, 1201 (N.D. Cal. 2008) (also Docket No. 33 at 14). Furthermore,

1    Apple has a constitutional right to enforce its copyrights in federal court unless the lawsuit is both

2    objectively baseless and filed for an improper purpose, and this suit most certainly is not. *Prof'l*

3    *Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60-61, 113 S. Ct. 1920,

4    1928 (1993); *Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180, 1183-85 (9th Cir. 2005). Psystar

5    provides no legal support for the view that seeking to enforce a restriction on the use of licensed

6    software is *per se* copyright misuse. Nor can it; that notion is contradicted by the many cases that

7    have upheld licensing arrangements that prohibit running software on unauthorized platforms.

8    *See, e.g.*, *Sony Computer Entm't Am. Inc. v. Gamemasters*, 87 F. Supp. 2d 976, 987 (N.D. Cal.

9    1999); *Microsoft Corp. v. BEC Computer Co., Inc.*, 818 F. Supp. 1313, 1316-17 (C.D. Cal. 1992).[9]

10        The facts are uncontested. Apple integrates its software with its hardware to provide its

11   customers with high quality products that are easy to use, reliable, and operate optimally. (*See*

12   Apple SJ Br. at 2-6.) Apple ensures this customer experience by conducting extensive testing and

13   customization of its software to its hardware and vice versa. This approach and effort has yielded

14   great success and customer satisfaction. (*See* Apple SJ Br. at 2-3.) Apple has done nothing to

15   suppress creativity or preclude Psystar or other competitors from creating their own operating

16   systems. (*See* Apple SJ Br. at 18-19.) That Apple protects its integrated products through

17   technical and legal means does not constitute copyright misuse.

18        **F.    Apple Is Entitled To Judgment On Its DMCA Claims**

19        Psystar concedes there are no factual disputes concerning Apple's DMCA claims. Psystar

20   admits that Mac OS X contains technological protection mechanisms that prevent its use on non-

21   Apple hardware and that Psystar circumvents these protections, again adopting the description of

22   Psystar's circumvention contained in the report of Apple's expert, Dr. Kelly. (Response at 6-7.)

23

24        [9] To support its misuse claim, Psystar relies on the portion of *Triad Systems Corp. v.
     Southeastern Express Co.*, 64 F.3d 1330, 1333 (9th Cir. 1995), in which Triad conceded that under
25   its first contract (Regime 1, covering 1976-1985), it "sold" rather than licensed software to
     consumers. In that context, the Ninth Circuit never addressed misuse. Moreover, when Triad
26   licensed and restricted use of its software, the Ninth Circuit affirmed the district court's finding of
     no copyright misuse. *Id.* at 1337 ("Triad did not attempt to prohibit [anyone] from developing its
27   own service software to compete with Triad."). The Ninth Circuit's decision in *Triad* supports
     Apple's position here. Mac OS X is licensed, not sold, to consumers and Apple's choice to limit
28   the software to its hardware does not limit competitors from creating their own operating systems
     or selling their own computers.

1    In its opposition Psystar introduces no new argument to contest its liability under the DMCA and,

2    instead, simply incorporates the arguments set forth in its motion for summary judgment.

3          Psystar's argument that its circumvention does not "facilitate infringement" both misstates

4    the law and ignores the undisputed facts.  Apple need not prove copyright infringement to succeed

5    on its DMCA claims.  The DMCA "targets the *circumvention* of digital walls guarding

6    copyrighted material (and trafficking in circumvention tools), but does not concern itself with the

7    *use* of those materials after circumvention has occurred."  *Universal City Studios, Inc. v. Corley*,

8    273 F.3d 429, 443 (2nd Cir. 2001) (emphasis in original).  At most Apple need only show – which

9    it has done – that its protection measures bear a "reasonable relation" to the interests of the

10   Copyright Act because they protect access to, and copying of, a copyrighted work, Mac OS X.  *Cf.*

11   *Storage Tech. Corp. v. Custom Hardware Eng'g & Consulting, Inc.*, 421 F.3d 1307, 1318 (Fed.

12   Cir. 2005) (denying preliminary injunction under DMCA when plaintiff's "rights under copyright

13   law are not at risk").  Moreover, even if proof of copyright infringement were required, Psystar's

14   conceded unauthorized copying of Mac OS X amply shows that infringement.

15         Psystar repeatedly has conceded that Apple's encryption mechanism is "effective" by

16   acknowledging that it prevents use of Mac OS X on non-Apple hardware.[10]  Moreover, as a matter

17   of law, the alleged availability of decryption code on the Internet does not undermine the

18   effectiveness of Apple's technological protection measures.  *Sony Computer Entm't Am., Inc. v.*

19   *Divineo, Inc.*, 457 F. Supp. 2d 957, 965 (N.D. Cal. 2006); *Universal City Studios, Inc. v.*

20   *Reimerdes*, 111 F. Supp. 2d 294, 317-318 (S.D.N.Y. 2000).  (*See* Apple's Opp. Br. at 18-21.)

21         For these reasons, as well as the additional reasons set forth in Apple's motion for

22   summary judgment, and in Apple's opposition to Psystar's motion for summary judgment, Apple

23   is entitled to judgment that Psystar has violated the DMCA.[11]

24   ///

25

26   ────────────────

     [10] Chung Decl. Ex. 9 at 21:24-22:12, Ex. 24 at No. 25, Ex. 41 at PS009264.

27   [11] Psystar apparently has decided not pursue a 1201(f) "reverse engineering" defense under the
     DMCA either because Psystar has waived the defense or for the unrebutted reasons stated in pages

28   25-27 of Apple's SJ Brief.  Consequently, Apple is entitled to summary judgment on that defense
     as well.

**G.     Apple Seeks Only to Enforce Its Intellectual Property And Protect The Fruits Of Its Labor**

Psystar argues that its blatant pirating of Apple's Mac OS X software, and its circumvention of the technological protection measures that Apple created to maintain the quality and reputation of its integrated computer products, should be overlooked because Psystar is a "family business" that Apple supposedly is "trying to destroy." (Response at 22.)  This rhetoric should be ignored.  Apple is not trying to harm a legitimate business.  Rather, Apple seeks only to stop Psystar from mis-appropriating the enormous investment of time, talent and resources made by Apple and its engineers in Mac OS X and to stop Psystar from harming Apple's hard-won reputation for excellence by selling an inferior, infringing product. *Cadence Design Sys., Inc. v. Avant! Corp.*, 125 F.3d 824, 829-30 (9th Cir. 1997) ("a defendant who knowingly infringes another's copyright 'cannot complain of the harm that will befall it when properly forced to desist from its infringing activities'"); *Concrete Machinery Co. v. Classic Lawn Ornaments, Inc.*, 843 F.2d 600, 612 (1st Cir. 1988) ("We see little reason why an entity should be allowed to establish and continue an enterprise based solely on what is in all likelihood copyright infringement, simply because that is its only business."); *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1221 (C.D. Cal. 2007) (proper to issue an injunction, despite hardship caused to defendants when its business model, like Psystar's, was set up to induce infringement).

Psystar argues that it is trying to "embody the spirit of innovation and hard work of which all of us, as Americans, are so justly proud." (Response at 22.)  But Psystar's pirating of Apple's software does not constitute hard work or promote innovation.  Psystar infringes Apple's copyrights and violates the DMCA.  It should be precluded from continuing to do so.

///

///

///

///

///

///

APPLE INC.'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT, CASE NO. 08-3251 WHA

13

1    **II.      CONCLUSION**

2              Apple respectfully requests that for the foregoing reasons and those set forth in Apple's

3    motion, the Court grant summary judgment for Apple and enter an order finding that Psystar has

4    both infringed Apple's copyrights and violated the DMCA.

5    DATED:  October 29, 2009              Respectfully submitted,

6                                          TOWNSEND AND TOWNSEND AND CREW LLP

7

8                                          By: _____/s/ James G. Gilliland, Jr._____
                                                JAMES G. GILLILAND, JR.
9
                                           Attorneys for Plaintiff and Counterdefendant
10                                         APPLE INC.

11
     62288274 v1
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I, **Victoria Hopper**, declare I am employed in the City and County of San Francisco, California in the office of a member of the bar of this court at whose direction this service was made. I am over the age of eighteen and not a party to this action. My business address is Townsend and Townsend and Crew LLP, Two Embarcadero Center, Eighth Floor, San Francisco, California, 94111.

I served the following documents exactly entitled: **REPLY BRIEF TO PSYSTAR CORPORATION'S OPPOSITION TO APPLE INC.'S MOTION FOR SUMMARY JUDGMENT** on the interested parties in this action following the ordinary business practice of Townsend and Townsend and Crew LLP, as follows:

| | |
|---|---|
| K.A.D. Camara<br>Kent Radford<br>Camara & Sibley LLP<br>2339 University Boulevard<br>Houston, TX 77005<br>Phone: 713-893-7973<br>Fax: 713-583-1131<br>Email: camara@camarasibley.com | Eugene Action<br>1780 E. Barstow Avenue, #5<br>Fresno, CA 93710<br>Email: eugeneaction@hotmail.com |

☒   [By First Class Mail] I am readily familiar with my employer's practice for collecting and processing documents for mailing with the United States Postal Service. On the date listed herein, following ordinary business practice, I served the within document(s) at my place of business, by placing a true copy thereof, enclosed in a sealed envelope, with postage thereon fully prepaid, for collection and mailing with the United States Postal Service where it would be deposited with the United States Postal Service that same day in the ordinary course of business.

☐   [By Overnight Courier] I caused each envelope to be delivered by a commercial carrier service for overnight delivery to the offices of the addressee(s).

☐   [By Hand] I directed each envelope to the party(ies) so designated on the service list to be delivered by courier this date.

☐   [By Facsimile Transmission] I caused said document to be sent by facsimile transmission to the fax number indicated for the party(ies) listed above.

☒   [By Electronic Transmission] I caused said document to be sent by electronic transmission to the e-mail address indicated for the party(ies) listed above via the court's ECF notification system.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration was executed on October 29, 2009, at San Francisco, California.

*/s/ Victoria Hopper*
**Victoria Hopper**

townsend.

CERTIFICATE OF SERVICE, CASE NO. 08-3251 WHA