| | |
|---|---|
| 1 | RICHARD DOYLE, City Attorney (#0886250 |
| 2 | GEORGE RIOS, Assistant City Attorney (#077908)<br>CLIFFORD S. GREENBERG, Senior Deputy City Attorney (#122612) |
| 3 | Office of the City Attorney<br>151 West Mission Street |
| 4 | San Jose, California 95110<br>Telephone: (408) 277-4454 |
| 5 | Attorneys for Defendants |
| 6 | CITY OF SAN JOSE, et. al. |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSÉ FACILITY

| | |
|---|---|
| WEST HOTEL PARTNERS, L.P., | NO. C03-04357 RMW (ADR) |
| Plaintiff, | **DEFENDANTS' POINTS AND AUTHORITIES IN SUPPORT OF REPLY TO OPPOSITION TO MOTION TO DISMISS** |
| vs. | |
| CITY OF SAN JOSÉ; REDEVELOPMENT AGENCY OF THE CITY OF SAN JOSÉ ("AGENCY"); SUSAN SHICK, IN HER CAPACITY AS AGENCY EXECUTIVE STAFF MEMBER; AND DOES I-XX, INCLUSIVE, IN THEIR INDIVIDUAL AND REPRESENTATIVE CAPACITIES, | DATE: DECEMBER 12, 2003<br>TIME: 9:00 A.M.<br>JUDGE: RONALD M. WHYTE |
| Defendants. | |

## ARGUMENT

The parties hereto have a dispute. Plaintiff West Hotel Partners (Hilton) contends that when it agreed with the City to pay for parking, following a buy-out of the Redevelopment Agency's "participation rights," it only agreed to pay for parking at a rate contemplated by a consultant's report. Defendant, San Jose, on the other hand, contends that the Hilton agreed to pay for parking at a rate set periodically by the City Council for general public parking at the Convention Center (Garage Rate). That dispute has led to Hilton's lawsuit (and San Jose's counter argument that Hilton owes the City money). Hilton, in essence, claims that it should

only pay what the consultant's report projected, and in the alternative, that its buy-out was based on mis-information and should therefore be reformed or rescinded. San Jose understands, but disagrees with Hilton's assertion.

For purposes of asserting federal jurisdiction, Hilton alleges that San Jose's increase in parking rates to the general public **alters the terms of an existing public contract**, and therefore implicates and violates the Contract Clause. However, the dispute in this case is *about the interpretation of the contract*, not about the effect of current legislation on a prior contractual obligation. In other words, this lawsuit is about the interpretation of Hilton's agreement to pay for parking. Is Hilton obligated to pay at the Garage Rate, as it agreed in a written Ground Lease, or did the parties agree to set parking rates as projected in the consultant's report? The controversy involves state contract/interpretation/parole evidence/misrepresentation law. The resolution of *that* controversy <u>determines</u> whether the Hilton should pay the rate set by City Counsel, or if not, what the remedy should be. The controversy does not properly involve whether the subsequent setting of parking rates violates the Contract Clause.

Plaintiff relies on a recent Ninth Circuit case, *Southern California Gas Company v. City of Santa Ana*, 336 F.3d 885 (9th Cir. 2003) for the assertion that the Contract Clause is implicated when a legislative act substantially impairs a prior contractual obligation between the governmental body and a private party. The Contract Clause analysis certainly does apply to such a situation, and a court, under those circumstances, must determine whether the subsequent legislation is reasonable and necessary to fulfill an important public purpose. *Id.*, at 889. But that is not the case when the original obligation is the actual subject of the dispute. In *Southern California Gas Company*, a 1938 franchise (considered an agreement for these purposes) granted the gas company the right to construct and maintain pipes under the city streets. In 2001, the city passed an ordinance requiring advance payment for any such trench cuts. The Court held that the Contract Clause was violated because the 2001 ordinance purportedly required the gas company to pay for a right it already possessed – to

excavate without additional fees. The original franchise contained *no suggestion* that it contemplated authority for future demands of payment for excavations. *Id.*, at 891. Therefore, the 2001 ordinance, by requiring payment for such excavations, substantially impaired the value of the prior franchise.

In *Southern California Gas Company*, the parties and the court agreed that the Contract Clause, and *not* common breach of contract principles, applied. *Id.*, at 889. The Court noted: "Rather than merely resolving a dispute about whether Santa Ana has fulfilled its obligations under the 1938 Franchise, we must determine whether the trench cut ordinance prevents or materially limits the Gas Company's ability to exercise contractual rights." *Ibid.* For this distinction, the Court referred to *University of Hawaii Professional Assem. v. Cayetano*, 183 F.3d 1096 (9th Cir. 1999), a case upon which Plaintiff herein also relies. In *Cayetano*, the state passed legislation changing the method of paying state employees, who had previously been paid twice a month on a regular basis for over twenty-five years. The main issue in the case was whether the state had "used its law-making powers not merely to breach its contractual obligations, but to create a defense to the breach that prevents the recovery of damages." *Id.*, at 1102. The Court explained, in detail, that if subsequent legislation merely *breaches* a prior contract, as opposed to *preventing* the performance of action under the contract (thereby eliminating or limiting a state breach of contract remedy) the Contract Clause is not implicated. Only when the state prevents enforcement of a contract by subsequent legislation will the legislation be considered to have "impaired" the contract. In *Cayetano*, since the pay legislation "slammed the door" on any breach of contract claim, the court found that the Contract Clause applied. *Id.*, at 1104.

In the instant case, what Plaintiff claims is a breach of contract. Plaintiff alleges that in negotiating the buy-out of the Redevelopment Agency's future entitlement ("participation rights") the City actually agreed (contrary to the terms of a written agreement) to charge the Hilton for parking as projected by the consultant's report that formed the basis for the buy-out. Therefore, the City's insistence that the Hilton pay for parking (as agreed in writing) at the

"Garage Rate", in Plaintiff's opinion, is an attempt to break the promise made by the City. The setting of new public parking rates does not in any way prevent Plaintiff from maintaining that breach of contract claim. As stated above, that claim – that the consultant's report and the associated negotiations constitute an agreement – is precisely what this dispute is about. That claim can be fully resolved under ordinary state law principles, and is not *foreclosed* by any legislative action. Once again, the point is simple. This is not a Contract Clause case.

Plaintiff also contends that this motion is in reality a motion to dismiss for failure to state a claim. Defendants disagree. Defendants do not argue that Plaintiff cannot allege sufficient facts to establish the substantiality of the contractual impairment or the lack of reasonableness of the legislation. Defendants point out that the Contract Clause is not implicated at all under this set of facts. This is not the type of dispute that raises Contract Clause issues. However, should the Court wish to analyze the allegations for sufficiency as to whether a claim is stated, Defendants do not object. Even under such analysis, the Complaint should be dismissed.

## CONCLUSION

Plaintiff bears the burden of establishing subject matter jurisdiction. Because Plaintiff's Complaint does not allege facts bringing the controversy within the reach of the Contract Clause, or any other Federal or Constitutional provision, the Complaint should be dismissed based on lack of jurisdiction.

DATED: NOVEMBER 25, 2003          RICHARD DOYLE, City Attorney

By ___/s/ Clifford S. Greenberg___
    CLIFFORD S. GREENBERG
    Senior Deputy City Attorney

Attorneys for Defendant
CITY OF SAN JOSÉ, et.al.