IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

APPLE, INC., a California corporation,

    Plaintiff,

  v.

PSYSTAR CORPORATION, a Florida corporation,

    Defendant.

    /

AND RELATED COUNTERCLAIMS.

    /

No. C 08-03251 WHA

**ORDER RE CROSS MOTIONS FOR SUMMARY JUDGMENT**

## INTRODUCTION

In this copyright-infringement action, plaintiff Apple, Inc. and defendant Psystar Corporation have filed cross motions for summary judgment. For the following reasons, Apple's motion is **GRANTED** and Psystar's motion is **DENIED**.

## STATEMENT

Plaintiff Apple Inc. launched its Macintosh computer in 1984 and its Mac OS X operating system in 2001. Apple has manufactured an exclusive line of personal computers, including the Mac Pro, iMac, Mac mini, MacBook, MacBook Air, and MacBook Pro. Mac computers have been sold with Mac OS X preinstalled. Mac OS X has also been sold as a DVD so customers can upgrade their Mac computers to another version of the operating system.

Mac OS X on both Mac computers and the DVD are covered by software license agreements that provided that the software is "licensed, not sold to [the user] by Apple Inc. ("Apple") for use only under the terms of this License" (Chung Exh. 26 at ¶ 1). Apple's license agreements restricted the use of Mac OS X to Apple computers, and specifically prohibited customers from installing the operating system on non-Apple computers. The license agreement stated (*id.* at ¶ 2):

> 2. **Permitted License Uses and Restrictions.**
>
> A. <u>Single Use</u>. This license allows you to install, use and run (1) copy of the Apple Software on a single Apple-labeled computer at a time. You agree not to install, use or run the Apple Software on any non-Apple-Labeled computer or enable another to do so.
>
>    \*   \*   \*
>
> C. You may make one copy of the Apple Software (excluding the Boot ROM code and other Apple firmware that is embedded or otherwise contained in Apple-labeled hardware) in machine-readable form for backup purposes only . . . . Apple Boot ROM code and firmware is provided only for use on Apple-labeled hardware and you many not copy, modify or redistribute the Apple Boot ROM code or firmware, or any portions thereof.
>
>    \*   \*   \*
>
> F. Except as and only to the extent permitted by applicable licensing terms governing use of the Open Sourced Components, or by applicable law, you may not copy, decompile, reverse engineer, disassemble, modify or create derivative works of the Apple Software or any part thereof.

It also restricted redistribution and modifications to the software (*id.* at ¶ 3):

> 3. **Transfer.** You may not rent, lease, lend, redistribute, or sublicense the Apple Software. Subject to the restrictions set forth below, you may, however make a one-time permanent transfer of all of your license rights to the Apple Software (in its original form as provided by Apple) to another party, provided that: (a) the transfer must include all of the Apple Software, including all its component parts (excluding Apple Boot ROM code and firmware), original media, printed materials and this License; (b) you do not retain any copies of the Apple Software, full or partial, including copies stored on a computer or other storage device; and (c) the party receiving the Apple Software reads and agrees to accept the terms and conditions of this License. You may not rent, lease, redistribute, sublicense or transfer any Apple Software that has been modified or replaced under Section 2D above.

2

In brief, customers were contractually precluded from utilizing Mac OS X on any computer hardware system that was not an Apple computer system.

Besides the license agreement, Apple has obtained three copyright registrations for Mac OS X. It has used lock-and-key technological measures to prevent Mac OS X from operating on non-Apple computers. This involved the use of a "kernel" extension, which is software that is executed and becomes part of the operating system on an Apple computer. The kernel extension would communicate with other kernel extensions to locate the decryption keys in the hardware, which then would unlock the encrypted files.

Defendant Psystar Corporation has made a line of computers called Open Computers (formally known as Open Mac and OpenPro). Psystar has modified Mac OS X to run on its computers and has sold them to the public. The following briefly describes the conduct at issue. Psystar first bought a copy of Mac OS X and then installed it on an Apple Mac mini. Next, Psystar copied Mac OS X from the Mac mini onto a non-Apple computer. This non-Apple computer was used as an "imaging station." Once on the imaging station, Mac OS X was modified. Psystar then replaced the Mac OS X "bootloader." The bootloader runs when a computer first comes on and locates and loads portions of the operating system into random access memory. Without a bootloader, Mac OS X would not operate. Psystar also disabled and/or removed Mac OS X kernel extension files and replaced them with other kernel extension files. Psystar's modifications enabled Mac OS X to run on non-Apple computers. The modified copy became the "master copy" that was used for mass reproduction and installation onto other Psystar computers. Apple also alleges that every time Psystar turned on Psystar computers running Mac OS X then another copy was made in random access memory.

Apple contends that Psystar's reproduction, modification, and distribution of Mac OS X on non-Apple computers constituted copyright infringement under the Copyright Act and a violation of the Digital Millennium Copyright Act. Psystar asserts a number of defenses. Both parties now move for summary judgment.

3

**ANALYSIS**

**1.   LEGAL STANDARD.**

Summary judgment must be granted under FRCP 56 when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." A district court must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there is any genuine issue of material fact. *Giles v. General Motors Acceptance Corp.*, 494 F.3d 865, 872 (9th Cir. 2007). A genuine issue of fact is one that could reasonably be resolved, based on the factual record, in favor of either party. A dispute is "material" only if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

**2.   COPYRIGHT INFRINGEMENT.**

Apple contends that Psystar is liable for copyright infringement. "Plaintiffs must satisfy two requirements to present a prima facie case of direct [copyright] infringement: (1) they must show ownership of the allegedly infringed material and (2) they must demonstrate that the alleged infringers violate at least one exclusive right granted to copyright holders under 17 U.S.C. § 106." *A&M Records v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001).

Apple has two federally registered copyrights in Mac OS X. The validity of these registered copyrights is not contested. Thus, Apple has established ownership of Mac OS X.[1]

Apple asserts that Psystar has violated three of its exclusive rights in Mac OS X: (1) its reproduction right; (2) its distribution right; and (3) its right to create derivative works. This order next addresses each of these.

**A.   Reproduction Right and Section 117.**

According to Apple, Psystar has violated its exclusive right to copy Mac OS X. Psystar admits that it has made copies of Mac OS X and installed those copies on non-Apple computers

---

[1] Psystar also asserts that Apple claims copyright infringement as to its decryption key. In response, Apple clarifies that it "has never alleged that Psystar's copyright infringement is limited to Psystar's unauthorized use of the" decryption key (Pl. Opp. 15). Rather Apple's allegations are focused on copying of Mac OS X, not just a decryption key. In any event, Psystar has provided little support for this argument and its position is rejected.

4

(Def. Opp. 10). In addition, when Psystar turns on its computers running Mac OS X, another copy of the software is made to the random access memory. Psystar has thus infringed Apple's reproduction right.

Section 117(a) permits the owner of a copy of a computer program to copy or modify the program for limited purposes without incurring liability for copyright infringement. *See Krause v. Titleserv, Inc.*, 402 F.3d 119, 121 (2nd Cir. 2005). But the question is whether Psystar can rely on Section 117 to escape liability. It cannot.

As Apple pointed out, Psystar waived any Section 117 essential step defense when it failed to plead it. Psystar counters that it has not waived Section 117 because that provision is a limitation on a copyright owner's exclusive rights rather than an affirmative defense. An earlier Ninth Circuit decision stated "Section 117 defines a narrow category of copying that is lawful *per se*" and "Section 107, by contrast, establishes a defense to an otherwise valid claim of copyright infringement." *Sega Enters. v. Accolade, Inc.*, 977 F.2d 1510, 1521 (9th Cir. 1992). Since then, the Ninth Circuit has expressly referred to Section 117 as a defense. *See Wall Data Inc. v. L.A. County Sheriff's Dep't*, 447 F.3d 769, 776 (9th Cir. 2006) (referring to Section 117 as an affirmative defense); *Asset Mktg. Sys. v. Gagnon*, 542 F.3d 748, 754 (9th Cir. 2008) (referring to Section 117 as a defense). As such, this order treats Section 117 as an affirmative defense.

Alternatively, if Section 117 is considered an affirmative defense, then Psystar argues it has pled it in its answer and raised the substance of its Section 117 argument in its interrogatory responses. Neither the answer nor interrogatory responses, however, refer to Section 117. And Psystar has not demonstrated any good cause for its failure to assert the defense after a year of litigation. Also, there has been no showing that its failure to do so will not prejudice Apple. As such, Psystar has waived the defense. At all events, the assertion of Section 117 is so frivolous

5

in the true context of how Psystar has used Mac OS X that a belated attempt to amend the pleadings would not be excused.[2]

Psystar briefly mentions a Section 107 fair use defense but does not even attempt to address the four factors used to determine fair use. *See* 17 U.S.C. 107. Psystar nonetheless contends that its production process and hard drive imaging are fair use. As stated, rather than loading Mac OS X separately onto individual computers, Psystar uses a mass production process. Arguing this is for efficiency, Psystar contends that "[s]uch incidental infringement is protected by the fair use doctrine to the extent that the infringement is not part of a greater scheme of infringement" (Def. Reply 6). To support this argument, Psystar cites the following passage in *Wall Data Inc. v. L.A. County Sheriff's Dep't*, 447 F.3d 769, 779 (9th Cir. 2006):

> To be clear, we do not hold that a fair use defense is not available simply because the infringer uses technology to make efficient use of its licenses. The problematic aspect of the Sheriff's Department's use is that it took in excess of what it bargained for, not that it was technologically efficient. Thus, for example, if the Sheriff's Department had saved time and money by hard drive imaging RUMBA software onto the number of computers for which it had licenses, its "efficiency" would not create a problem.

Psystar's reliance on this quote is misplaced. In *Wall Data*, the Sheriff Department purchased 3,663 licenses to plaintiff's software, but installed the software onto 6,007 computers. To do this, the Department used hard drive imaging — a single master hard drive containing the software was used to copy the contents onto many other computers. The Ninth Circuit held that this was not fair use and was in excess of the licensed use of the copyright software bargained for. While the process used for "efficiency" was not the problem, the Sheriff Department's unauthorized copying of the software beyond the number of licensed copies was problematic. Similarly, Psystar's use of Mac OS X has been in excess and has violated Apple's copyrights.

---

[2] Trying to have it both ways, Psystar successfully opposed Apple's earlier attempt to reopen discovery and extend deadlines to add an additional product — Snow Leopard — to this action. Psystar now seeks to add a very late affirmative defense. This would not be fair.

6

**B.     Distribution Right and Section 109.**

Apple contends that Psystar has violated its distribution right by offering and selling Mac OS X on Psystar computers to the public. Psystar admits that it has distributed Mac OS X (Chung Exh. 17 at 4).

But Psystar responds that its conduct is protected by the Section 109 first-sale doctrine. Section 109 provides that "the owner of a particular copy or phonorecord lawfully made under this title, or any person authorized by such owner, is entitled, without the authority of the copyright owner, to sell or otherwise dispose of the possession of that copy or phonorecord." 17 U.S.C. 109. This provision is a limitation on the distribution right. It applies only to an owner of a copy.

The parties spill much ink on whether Psystar was the owner or a licensee of the copy (*i.e.*, the tangible copy) of Mac OS X that it purchased. Even assuming arguendo that Psystar was the owner of a copy, the first-sale defense fails here. Section 109 provides immunity only when copies are "lawfully made." The copies at issue here were not lawfully manufactured with the authorization of the copyright owner. As stated, Psystar made an unauthorized copy of Mac OS X from a Mac mini that was placed onto an "imaging station" and then used a "master copy" to make many more unauthorized copies that were installed on individual Psystar computers. The first-sale defense does not apply to those unauthorized copies. *See Microsoft Corp. v. Software Wholesale Club, Inc.*, 129 F. Supp. 2d 995, 1006 (S.D. Tex. 2000) ("the first-sale doctrine does not apply to an admittedly counterfeit unit"); *see also* 2-8 NIMMER ON COPYRIGHT § 8.12 ("if the manufacture of a copy or phonorecord constitutes an infringement of the reproduction or adaptation right, its distribution will infringe the distribution right, even if this is done by the owner of such copy or phonorecord").

Psystar asserts on its motion that it includes a Mac OS X DVD with every Psystar computer it sells. There is no sworn evidentiary support for this assertion in Psystar's motion. This alone is dispositive. It is true, as Psystar points out, that Apple's opening brief on its own separate motion stated "Psystar includes both a Mac OS X DVD . . . and a hard drive copy of Mac OS X on the Psystar computer" (Pl. Br. 7). At oral argument, Psystar asserted that Apple

7

1 cited to paragraph 20 in the declaration of John Kelly, Apple's expert, to support this
2 proposition. Paragraph 20 merely stated that Kelly observed Psystar's technician who did not
3 use a Mac OS X installation DVD for the hard drive imaging or assembly of Psystar's Open
4 Computer (Kelly Decl. ¶ 20). At oral argument, Apple's counsel referred to paragraph 15 of the
5 Kelly declaration and a table therein. There, Kelly stated that he had examined nine Psystar
6 computers that had Mac OS X installed on the hard drive (*id.* at ¶ 15). He further stated that the
7 Mac OS X software for five of those computers was *not* the same as the software found on the
8 Mac OS X DVDs shipped with the computers. Instead, those computers had a different version
9 of Mac OS X actually installed on hard drive than was found on the accompanying Mac OS X
10 DVD. According to Table 2 in Kelly's declaration, three of the other nine computers did not
11 include a Mac OS X DVD at all (*ibid.*). The Apple footnote invoked by Psystar at the hearing
12 did include citations to deposition testimony, but the cited testimony did not support the
13 proposition either. Finally, for its own motion, Psystar was obligated to provide sworn support.
14 It may not cure evidentiary gaps for its own motion by invoking briefs filed separately and
15 simultaneously by its opponent. It must lay out plainly and clearly the basis for its own
16 summary judgment motion at step one.

17 Furthermore, it is not the court's task "to scour the record in search of a genuine issue of
18 triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1278 (9th Cir. 1996). Counsel have an obligation
19 to lay out their support clearly. In *Carmen v. San Francisco School District*, 237 F.3d 1026,
20 1031 (9th Cir. 2001), the court expressly held that "[t]he district court need not examine the
21 entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in
22 the opposition papers with adequate references so that it could conveniently be found."

23 Even if it were the case that a DVD was included with every computer, that did nothing
24 to cure the infringement as to the unauthorized copies discussed above. Besides Apple does not
25 assert copyright infringement with respect to the sale of the DVD that Psystar allegedly
26 purchased.

27 **C. Right to Create Derivative Works.**
28 Section 101 of the Copyright Act defines a derivative work as:

8

> [A] work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgment, condensation, or any other form in which a work may be recast, transformed, or adapted. A work consisting of editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship, is a "derivative work."

17 U.S.C. 101.

Psystar infringed Apple's exclusive right to create derivative works of Mac OS X. It did this by replacing original files in Mac OS X with unauthorized software files. Specifically, it made three modifications: (1) replacing the Mac OS X bootloader with a different bootloader to enable an unauthorized copy of Mac OS X to run on Psystar's computers; (2) disabling and removing Apple kernel extension files; and (3) adding non-Apple kernel extensions. These modifications enabled Mac OS X to run on a non-Apple computer. It is undisputed that Psystar made these modifications (Def. Opp. 6–7).[3]

But Psystar contends that this did not amount to creating a derivative work, because Apple's source code, object code, or kernel extensions were not modified. This argument is unavailing. Psystar admittedly replaced entire files within the software while copying other portions. This resulted in a substantial variation from the underlying copyrighted work. In fact, if the bootloader and kernel extensions added by Psystar were removed, then the operating system would not work on Psystar's computers. The inclusion of the copyrighted Mac OS X with the above-described additions and modifications makes Psystar's product an infringing, derivative work.

Psystar cites no decisions to reasonably support its argument that its modifications do not amount to a derivative work; whereas, Apple points to decisions showing that such deletions, modifications, and additions to software result in an infringing derivative work. *See, e.g., Dun & Bradstreet Software Servs. v. Grace Consulting, Inc.*, 307 F.3d 197, 208 (3rd Cir. 2002) (concluding that defendant's modification of a copy of plaintiff's software, including fixing bugs and adding features, created an infringing derivative work); *Midway Mfg. Co. v.*

---

[3] Psystar also asserts Section 117 as a defense to avoid liability for infringement of Apple's right to create derivative works. But as stated above, Psystar has waived this defense.

9

*Arctic International, Inc.*, 704 F.2d 1009, 1014 (7th Cir. 1983) (finding defendant's addition of circuit boards created a speeded-up video game that was a substantially different product from the original game and thus a derivative work); *SAS Institute, Inc. v. S & H Computer Systems, Inc.*, 605 F. Supp. 816, 831 (M.D. Tenn. 1985) (finding defendant's duplication and conversion of software that would run on an IBM computer to run on a VAX computer constituted a derivative work).

In sum, Psystar has violated Apple's exclusive reproduction right, distribution right, and right to create derivative works. Accordingly, Apple's motion for summary judgment on copyright infringement must be granted.

### 2. CONTRIBUTORY INFRINGEMENT.

Apple next asserts that Psystar is liable for contributory infringement. Psystar offers no opposition on this issue. "One infringes contributorily by intentionally inducing or encouraging direct infringement." *See MGM Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005). Psystar is a contributory infringer through its sale of unauthorized copies of Mac OS X to the public. This is contributory infringement. Accordingly, summary judgment must be granted for Apple on contributory infringement.

### 3. COPYRIGHT MISUSE.

Copyright misuse is a defense to copyright infringement. The copyright-misuse doctrine "forbids the use of the [copyright] to secure an exclusive right or limited monopoly not granted by the [Copyright] Office and which is contrary to public policy to grant." *Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1090 (9th Cir. 2005). "The misuse defense prevents copyright holders from leveraging their limited monopoly to allow them control of areas outside the monopoly." *A&M Records v. Napster, Inc.*, 239 F.3d 1004, 1026 (9th Cir. 2001).

Psystar argues that Apple misused its copyrights by continuing to prosecute allegedly "invalid" copyright infringement and DMCA claims against Psystar. This argument is unavailing. This order finds that Apple's claims are valid and has granted summary judgment in favor of Apple on those claims.

1  Psystar next argues that Apple's attempt to use copyright to tie Mac OS X to Apple
2 hardware constituted copyright misuse. Put differently, Psystar argues that Apple cannot extend
3 its exclusive rights to control the computers on which Apple's customers run Mac OS X.
4 Psystar's antitrust allegations were dismissed in a prior order, and Psystar then chose not to
5 pursue any antitrust counterclaims. The prior order stated, "Apple asks its customers to
6 purchase Mac OS knowing that it is to be used only with Apple computers. It is certainly
7 entitled to do so" (Dkt. No. 33 at 14). That order previously rejected Psystar's theory and this
8 order does the same.

9  Psystar rightly points out that the Ninth Circuit has stated, "a defendant in a copyright
10 infringement suit need not prove an antitrust violation to prevail on a copyright misuse
11 defense." *Practice Management Info Corp. v. American Medical Ass'n*, 121 F.3d 516, 521 (9th
12 Cir. 1997). For this principle, the Ninth Circuit relied upon a Fourth Circuit decision, which
13 explained, "[t]he question is not whether the copyright is being used in a manner violative of
14 antitrust law (such as whether the licensing agreement is 'reasonable'), but whether the
15 copyright is being used in a manner violative of the public policy embodied in the grant of a
16 copyright." *Lasercomb America, Inc., v. Reynolds*, 911 F.2d 970, 978 (4th Cir. 1990). In the
17 present case, Apple has not prohibited others from independently developing and using their
18 own operating systems. Thus, Apple did not violate the public policy underlying copyright law
19 or engage in copyright misuse. In this way, *Practice Management Info Corp.* is distinguishable.
20 There, the Ninth Circuit invalidated the AMA's copyright on a coding system of medical
21 procedures requiring a contracting party (HCFA) to use *only* the AMA's coding system and
22 none other, stating:

> What offends the copyright misuse doctrine is not HCFA's decision to use the AMA's coding system exclusively, but the limitation imposed by the AMA licensing agreement on HCFA's rights to decide whether or not to use other forms as well. Conditioning the license on HCFA's promise not to use competitors' products constituted a misuse of the copyright by the AMA.

27 *Id.* at 521. But Apple has not prohibited purchasers of Mac OS X from *using* competitor's
28 products. Rather, Apple has simply prohibited purchasers from using Mac OS X *on*

11

competitor's products. The Ninth Circuit has likewise distinguished *Lasercomb America*, 911 F.2d at 978–79, on this ground. *See Triad Systems Corp. v. Southeastern Express Co.*, 64 F.3d 1330, 1337 (9th Cir. 1995), *overruled on other grounds by Gonzales v. Texaco Inc.*, No. 07-17123, 2009 U.S. App. LEXIS 18370, at *5 (9th Cir. Aug. 17, 2009) ("[U]nlike the case of *Lasercomb America, Inc. v. Reynolds*, 911 F.2d 970, 978–79 (4th Cir. 1990), Triad did not attempt to prohibit Southeastern or any other ISO from developing its own service software to compete with Triad").

Psystar cites *In re Napster, Inc., Copyright Litigation*, 191 F. Supp. 2d 1087, 1105 (N.D. Cal. 2004) (Patel, J.), for the proposition that "unduly restrictive copyright licensing agreements" can constitute misuse. But even Judge Patel acknowledged that "no court has thus far articulated the boundaries of 'unduly restrictive licensing' or when licensing or other conduct would violate the amorphous concept of public policy." *Ibid.* As explained above, Apple's licensing agreement is not unduly restrictive. Indeed, the egregious examples of copyright misuse in the decisions cited by Psystar provide further support for this order's determination that Apple has *not* engaged in copyright misuse. For example, in *Lasercomb America*, 911 F.2d at 978, the Fourth Circuit found copyright misuse in the following circumstance:

> The language employed in the Lasercomb agreement is extremely broad. Each time Lasercomb sells its Interact program to a company and obtains that company's agreement to the noncompete language, the company is required to forego utilization of the creative abilities of all its officers, directors and employees in the area of CAD/CAM die-making software. Of yet greater concern, these creative abilities are withdrawn from the public. The period for which this anticompetitive restraint exists is ninety-nine years, which could be longer than the life of the copyright itself.

*Lasercomb America* likewise stated that an anti-competitive restraint lasting even 20 years would constitute copyright misuse. *Id.* at 979. Ultimately, the problem in *Lasercomb America* was that the all-encompassing anticompetitive restraint attempted to "*control* competition in an area outside the copyright." *Ibid.* (emphasis added). But Apple's licensing agreement is not nearly as all-encompassing as those addressed in *Lasercomb America* — Apple's agreement does not seek to control *all competition* in an area outside the copyright. Rather, Apple's

12

1 agreement simply attempts to control the use of Apple's own software — an area that is the
2 *focus* of the copyright.

3 Therefore, Psystar's motion for summary judgment on copyright misuse must be denied.

**4. DMCA.**

5 Apple contends that Psystar has violated the anti-circumvention and anti-trafficking
6 provisions of the DMCA. Apple has used a decryption key as a technological protection
7 measure to prevent access to Apple's Mac OS X and to prevent Mac OS X from running on a
8 non-Apple computer.

9 Section 1201(a)(1)(A) provides that no person shall circumvent a technological measure
10 that effectively controls access to a work protected under this title. Psystar has used decryption
11 software to obtain access to Mac OS X and to circumvent Apple's technological measure when
12 modifying Mac OS X in its production process. This is a violation of the Section 1201
13 anti-circumvention provision of the DMCA. 17 U.S.C. 1201(a)(1).

14 Section 1201(a)(2) prohibits the manufacture, importation, offering to the public,
15 providing, or otherwise trafficking in any technology, product, service, device, component, or
16 part thereof, that meets one of three criteria, including the following:

> (A) is primarily designed or produced for the purpose of circumventing a technological measure that effectively controls access to a work protected under this title;
>
> (B) has only limited commercially significant purpose or use other than to circumvent a technological measure that effectively controls access to a work protected under this title; or
>
> (C) is marketed by that person or another acting in concert with that person with that person's knowledge for use in circumventing a technological measure that effectively controls access to a work protected under this title.

17 U.S.C. 1201(a)(2); *see also* 17 U.S.C. 1201(b). Section 1201(b) is very similar to Section 1201(a)(2). But (a)(2) focuses on effectively controlling *access* and (b) focuses on effectively protecting a *right* of a copyright owner.

Psystar's circumvention technology was installed on Psystar computers and sold with Mac OS X. Psystar also marketed the computers as running Mac OS X. This facilitation of circumvention was a violation under Section 1201(a)(2).

13

Section 1201(b)(1) was likewise violated. When an end user turned on a Psystar computer and ran Mac OS X, there was also an act of circumvention, as Psystar concedes (Def. Reply 2). As stated, running the modified Mac OS X results in an unauthorized copy to RAM. Thus, Psystar's circumvention technology has not only provided access but also resulted in copies in RAM. Although Apple's technological measure may have been primarily aimed at controlling access, it also effectively protected its right to copy, at least for the copy made in RAM. *Cf. 321 Studios v. MGM Studios, Inc.*, 307 F. Supp. 2d 1085, 1097 (N.D. Cal. 2004) (Illston, J.) (finding that Section 1201(b)(1) applied when copying the encrypted DVDs was not particularly useful, as any copy made without circumventing could not be accessed or viewed).

Psystar asserts, nonetheless, that it has not violated the DMCA and provides two reasons: (1) Psystar did not facilitate infringement; and (2) Apple's technological protection measure was not effective. Because unauthorized copying and access have been proven, Psystar's first argument is rejected. *See Chamberlain Group, Inc. v. Skylink Techs., Inc.*, 381 F.3d 1178, 1193 (Fed. Cir. 2004). As to the second argument, Psystar contends that Apple's anticircumvention technology was ineffective because the decryption key for circumvention is publicly available on the internet. This argument fails. "The fact that circumvention devices may be widely available does not mean that a technological measure is not, as the DMCA provides, effectively protecting the rights of copyright owners in the ordinary course of its operation." *Sony Computer Entm't Am., Inc. v. Divineo, Inc.*, 457 F. Supp. 2d 957, 965 (N.D. Cal. 2006). Generally, measures based on encryption "effectively control" access to copyrighted works. Here, when the decryption key was not employed, the encryption effectively worked to prevent access to Mac OS X. And that is all that is required. *See Universal City Studios v. Reimerdes*, 111 F. Supp. 2d 294, 318 (S.D.N.Y. 2000) (noting that when a decryption program was not employed, the encryption worked to control access to the protected work). Accordingly, Psystar has violated the DMCA by circumventing Apple's

14

protection barrier and trafficking devices designed for circumvention. Apple's motion for summary judgment on its DMCA claim must be granted.[4]

### 5. TRADEMARK INFRINGEMENT AND TRADE-DRESS INFRINGEMENT.

The summary of argument section of Psystar's motion introduces an argument that its use of Apple's trademarks and trade dress is a nominative fair use. But the motion never fully addresses this issue. For example, no evidentiary cites or legal cites are provided. Psystar failed to even mention nominative fair use in its reply. While nominative fair use may be asserted as a defense, the defendant has the burden of proof. *See Mattel Inc. v. Walking Mt. Prods.*, 353 F.3d 792, 810 (9th Cir. 2003) (stating a defendant must prove three elements to show nominative fair use). The burden was not met here. Accordingly, Psystar's motion for summary judgment on nominative fair use must be denied.

### 6. RELIEF.

Psystar contends that Apple has waived damages on its non-copyright claims, such as its breach-of-contract claim. Psystar further argues that if an injunction is granted, then it should be limited to Mac OS X *Leopard* (and not include Mac OS X *Snow Leopard*, for example). Apple neither filed a motion on its non-copyright claims nor for a permanent injunction. Rather, Psystar has prematurely raised these points merely in anticipation of Apple doing so. As such, this order will not address the relief, if any, that Apple may be entitled to at this juncture.

### CONCLUSION

For the foregoing reasons, Apple's motion is **GRANTED** and Psystar's motion is **DENIED**.

Apple has also asserted the following claims, which remain for trial: (1) breach of contract; (2) induced breach of contract, (3) trademark infringement; (4) trademark dilution; (5) trade dress infringement; and (6) state unfair competition under California Business and Professions Code § 17200; and (7) common law unfair competition.

---

[4] Psystar does not rely on a reverse-engineering defense under the DMCA, and thus this order does not address Apple's argument on this point.

15

With respect to relief, formal briefing is appropriate, so:

| | |
|---|---|
| Apple's opening | November 23, 2009; |
| Psystar's opposition | November 30, 2009; and |
| Apple's reply | December 7, 2009. |

A hearing will be held on December 14, 2009, at 8 a.m.

**IT IS SO ORDERED.**

Dated: November 13, 2009.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE