```
TOWNSEND AND TOWNSEND AND CREW LLP
JAMES G. GILLILAND, JR. (State Bar No. 107988)
MEHRNAZ BOROUMAND SMITH (State Bar No. 197271)
MEGAN M. CHUNG (State Bar No. 232044)
J. JEB B. OBLAK (State Bar No. 241384)
Two Embarcadero Center Eighth Floor
San Francisco, CA 94111
Telephone: (415) 576-0200
Facsimile: (415) 576-0300
Email: jggilliland@townsend.com
       mboroumand@townsend.com
       mmchung@townsend.com
       jboblak@townsend.com

O'MELVENY & MYERS LLP
GEORGE RILEY (State Bar No. 118304)
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111
Telephone: (415) 984-8700
Facsimile: (415) 984-8701
Email: griley@omm.com

Attorneys for Plaintiff and Counterdefendant
APPLE INC.
```

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| APPLE INC., <br><br> Plaintiff, <br><br> v. <br><br> PSYSTAR CORPORATION, a Florida corporation, <br><br> Defendant. <br><br> AND RELATED COUNTERCLAIMS. | Case No. 08-3251 WHA <br><br> **DECLARATION OF DR. MATTHEW R. LYNDE, PH.D. IN SUPPORT OF APPLE INC.'S MOTION FOR A PERMANENT INJUNCTION, STATUTORY DAMAGES AND ATTORNEYS' FEES** |

I, Matthew R. Lynde, Ph.D., declare as follows:

1. I make this declaration on personal knowledge unless otherwise indicated and if called as a witness I am able to testify with respect to the matters stated herein. I am an economist

DECLARATION OF DR. MATTHEW R. LYNDE, PH.D. IN SUPPORT OF APPLE INC.'S MOTION FOR A PERMANENT INJUNCTION, STATUTORY DAMAGES AND ATTORNEYS' FEES, CASE NO. 08-3251 WHA

townsend.

and a Vice President of Cornerstone Research, an economic and financial consulting firm in San Francisco, California. I have been retained by the law firm of Townsend and Townsend and Crew LLP on behalf of Apple Inc. ("Apple") to provide testimony and expert opinion in the above-captioned matter. I have submitted an expert report and a supplemental expert report in this matter that I understand have been served on opposing counsel. Psystar Corporation did not take my deposition.

2. I earned a B.A. and a Ph.D. in economics from the University of California at Berkeley. As an undergraduate student, I studied electrical engineering as well as economics. Between degrees, I worked at the President's Council on Wage and Price Stability, followed by research on small firm innovation at the Brookings Institution. After earning my Ph.D., I served on the faculty of the City University of New York where I taught corporate finance as well as microeconomics and econometrics courses. I then joined Price Waterhouse in New York and eventually became the partner in charge of that firm's intellectual property practice in the San Francisco Bay Area. I was invited to join Cornerstone Research in 2001 and was also asked to head its San Francisco office. I specialize in applied economic, financial, and statistical analysis of complex business matters, especially for intellectual property issues, including the calculation of damages. I have more than 30 years of experience as a practicing applied economist for the government, academia, and business.

3. In preparing my testimony, among other things, I researched and analyzed both Apple and Psystar's business models, calculated Psystar's infringing units and revenues, conducted independent research, and reviewed documents disclosed through discovery as well as deposition testimony. Moreover, I determined, using a conservative methodology, the number of computers running Mac OS X that Psystar sold from April, 2008 until August, 2009, and calculated statutory damages. My conclusions regarding irreparable harm and damages are summarized in the next section and explained more fully throughout the remainder of this declaration.

## SUMMARY OF CONCLUSIONS

4. **Irreparable harm.** Psystar's ongoing copyright infringement and violations of the Digital Millennium Copyright Act ("DMCA"), including a pattern of infringing the copyrights in

DECLARATION OF DR. MATTHEW R. LYNDE, PH.D. IN SUPPORT OF APPLE INC.'S MOTION FOR A PERMANENT INJUNCTION, STATUTORY DAMAGES AND ATTORNEYS' FEES, CASE NO. 08-3251 WHA

townsend. - 2 -

Apple's revisions and upgrades to Mac OS X, have caused and will continue to cause irreparable harm to Apple. Specifically, Psystar's practices harm and will continue to harm Apple's brand, its business reputation, and business goodwill and result in an injury that cannot be quantified or measured with a reasonable degree of certainty. Unless legally prevented from continuing this pattern of harmful conduct, Psystar's actions will undermine Apple's ability to rely on its well-known close integration of software and hardware. This in turn will negatively affect Apple's ability to innovate, to offer superior customer services, to provide customers with reliable products and a better user experience, and will limit Apple's ability to use its brand in marketing its products. Psystar's pattern of wrongful conduct also enables and induces others to violate Apple's intellectual property, which has caused and will cause further irreparable injury to Apple.

5.  **Statutory damages.** According to my review of Psystar's incomplete financial records for April, 2008 through August 10, 2009, Psystar sold at least 768 computers preinstalled with Mac OS X and shipped at least 262 restore disks. Based on these numbers and this Court's November 13, 2009 findings that Psystar has infringed at least two of Apple's copyrighted works and violated the DMCA in a number of ways, I have calculated the range of statutory damages under copyright and DMCA standards. Based on my calculations, the statutory damages to Apple as a result of Psystar's copyright infringement are between $1500 and $300,000 and the statutory damages to Apple as a result of Psystar's violations of the DMCA are between $449,500 and $4,495,000.

## APPLE'S BUSINESS MODEL

6.  Founded in 1976, Apple is known as one of the original pioneers in the personal computer industry. It released the first Macintosh® personal computer ("Mac") in 1984. Today Apple designs, manufactures, and markets a variety of products, including Mac® computers, portable digital music players (*i.e.*, iPod®), and mobile communication devices (*i.e.*, iPhone®), as well as a variety of related software, services, peripherals, and networking solutions. BusinessWeek named Apple the most innovative company in the world in both 2008 and 2009.

7.  Apple's business model is built upon close integration of its hardware and software. This integrated business model was created and maintained with a very substantial investment in

DECLARATION OF DR. MATTHEW R. LYNDE, PH.D. IN SUPPORT OF APPLE INC.'S MOTION FOR A PERMANENT INJUNCTION, STATUTORY DAMAGES AND ATTORNEYS' FEES,  CASE NO. 08-3251 WHA

townsend.                                                                                                                          - 3 -

research and design that over the years has amounted to billions of dollars. As demonstrated in Apple's Form 10-Ks from 1998-2008, Apple's Research and Development ("R&D") budget has risen steadily from $303 million in 1998 to over $1.1 billion in 2008.

8. The integration of hardware and software in a focused product line are central to Apple's business model and are vital to Apple's success. Apple's integrated business model allows it to deliver a high quality-product that provides optimal performance, further enhancing the user experience. As set forth in Apple's Form 10-K, "[t]he Company's business strategy leverages its unique ability to design and develop its own operating system, hardware, application software, and services to provide its customers new products and solutions with superior ease-of-use, seamless integration, and innovative industrial design." Third parties have also recognized the importance of Apple's integrated business model to its success. For example, in the Q2 2009 Quarterly Commentary accompanying the American Customer Satisfaction Index ("ACSI") published by the National Quality Research Center at the University of Michigan, Professor Claes Fornell writes that "Apple's success has been a result of innovation, integration of products, customer service and good marketing."

9. Apple focuses on multiple dimensions of quality, including high technical standards, reliability, security, design, ease of use, and outstanding service and support. Apple maintains strict quality controls on all Apple products and after-sale services, and promotes quality as part of the Apple experience. It also distinguishes itself from its competitors through its brick-and-mortar retail and customer service presence. Apple's 2008 Form 10-K states that "[t]he Company… believes providing a high-quality sales and after-sales support experience is critical to attracting new and retaining existing customers."

10. The user experience provided by Apple's innovative products and strong customer support as well as its extensive marketing focusing on Apple's unique attributes, reinforces the overall Apple brand, reputation, and goodwill for all Apple products.

## PSYSTAR'S BUSINESS MODEL AND INFRINGING CONDUCT

11. Psystar primarily sells non-Apple computers with Mac OS X installed. According to the deposition testimony of its President and Co-Founder, Rodolfo Pedraza, at least 80% of

DECLARATION OF DR. MATTHEW R. LYNDE, PH.D. IN SUPPORT OF APPLE INC.'S MOTION FOR A PERMANENT INJUNCTION, STATUTORY DAMAGES AND ATTORNEYS' FEES, CASE NO. 08-3251 WHA

townsend. - 4 -

1 Psystar's computers are preinstalled with Mac OS X. Although Psystar's records are incomplete, they show that Psystar's gross profits from sales of those computers to amount to at least $243,055 through August 10, 2009. Since the issuance of my report, Psystar has also started marketing and distributing software that enables Mac OS X to run on non-Apple hardware, circumventing Apple's measures to protect its intellectual property. Psystar also licenses such software to third party computer manufacturers (OEMs).

12. Psystar described its own business model in a presentation to potential investors, (PS009258–84, attached to this declaration as Exhibit A). According to Psystar, its business model is *premised* on infringing Apple's intellectual property. Psystar characterizes this litigation as a "unique opportunity" and projects that it will capture 7% of all personal computer sales by 2011. In the same presentation, Psystar describes its plan to sell Mac OS X in an effort to take market share from Apple: "Psystar is the first and only business to compete with Apple in the OS X market" (PS009274). "Psystar will target students and educators" because "Apple has great penetration in this market" (PS009275). It is Psystar's plan to encourage and promote infringement by others as well. It plans to "[open] Mac OS to other OEMs" (PS009263) – which it has now done. According to Psystar's conservative forecast, by Q4 2011, it will sell two million units on an annual basis (PS009276). Psystar's more aggressive growth model forecasts fourteen million unit sales on an annual basis by the end of 2011 (PS009278).

13. Not only is Psystar's business premised on selling computers running Mac OS X, but Psystar's product development is also centered on offering Mac OS X. Psystar has spent less than $2,000 on R&D since 2008. Psystar has saved substantial amounts of money by using Mac OS X without authorization rather than developing its own operating system as a number of other companies have done.

14. Similarly, Psystar's marketing and advertising strategies also focus on offering Mac OS X. For example, Psystar attempted to use certain Apple product names and marks when advertising via Google AdWords. Google AdWords auctions off the chance to have the bidder's ads appear next to Google search results when a particular keyword is used in a search. Ads may also appear in various web pages that partner with Google and which contain the same keywords.

DECLARATION OF DR. MATTHEW R. LYNDE, PH.D. IN SUPPORT OF APPLE INC.'S MOTION FOR A PERMANENT INJUNCTION, STATUTORY DAMAGES AND ATTORNEYS' FEES, CASE NO. 08-3251 WHA

1  Psystar ran the following advertisements on Google: "Works Like a Mac; Faster Hardware and
2  More Options; Get Your Open Computer Today", and "Try Mac Now; Fast Computers with OS X
3  Installed, Visit Us & Get OS X On Your PC Now" (PS008475-PS008480 at PS008476). Psystar's
4  use of Apple's brand and product names in its advertising was effective in attracting users to
5  Psystar's website: the highest click-through rate (CTR) for an ad with Apple product names such as
6  "Mac" or "OS X" was more than three times higher than the highest click-through rate for a term
7  *other* than "Mac" or "OS X".

8        15.     Overall, Psystar spent just over $40,000 on advertising and promotion of its products
9  since 2008. In contrast, as demonstrated in Apple's 10-Ks from 1998–2009, Apple's advertising
10 expenses have risen steadily from $152 million in 1998 to over $486 million in 2008 and $501
11 million in 2009. Because Psystar's advertising and marketing centers on offering Mac OS X, it
12 essentially free rides on Apple's advertising and marketing efforts – just like it free rides on Apple's
13 R&D efforts. As a result, Psystar has saved substantial amounts of money in advertising and
14 marketing expenses.

15 **PSYSTAR CUSTOMERS AND THEIR EXPERIENCE WITH PSYSTAR PRODUCTS**

16       16.     In contrast to Apple's customers, Psystar customers have not experienced
17 consistently high-quality products and after-sale customer support. I have reviewed records[1] from

---

[1] These complaints can be found in the following documents: PS002985–7; PS008105; PS015132; PS015135–6; PS006017; PS007912; PS014681; PS003683; PS004100; PS005079–140; PS010718–22; PS005679; PS006646; PS007711–2; PS008002–5; PS013290; PS014455–6; PS014496–500; PS005183; PS006016–8; PS007368–80; PS013447; PS014984–9; PS005033–4; PS005057–8; PS005452; PS013527; PS013446; PS001228–9; PS004315; PS005333–4; PS005904; PS006881; PS007270; PS000211; PS000766–7; PS001241; PS001353; PS002164; PS002875–6; PS003423; PS003632–3; PS003856–7; PS004100; PS008326–31; PS009105; PS012945; PS013134; PS013978; PS014114; PS014275; PS014356; PS014666–8; PS004255–6; PS004303–4308; PS000825–6; PS007813; PS007947; PS003551; PS003718–21; PS003863–7; PS004155–6; PS004255–6; PS005289; PS008105–25; PS013277–8; PS015014–5; PS002242; PS002245; PS004199; PS004257; PS007912; PS007969; PS013026–7; PS013352; PS014451–9; PS014476; PS014559–62; PS002242; PS014739–47; PS001793–800; PS014150–2; PS003297–8; PS005079–140; PS005213–30; PS006464–5; PS007711–12; PS014191; PS014494–500; PS014984–9; PS002268; PS002985-7; PS003685–704; PS013280–1; PS002488–95; PS013509; PS007237; PS007822; PS015127–45; PS008301–4; PS003062–4; PS003650; PS003852–3; PS004175; PS004201; PS005047–8; PS005307–19; PS007583; PS007813; PS008352–3; PS003157–9; PS004201; PS007827–8; PS002251–2; PS003530; PS003531; PS005448–9; PS006526; PS013445; PS000325; PS003569; PS003592; PS008026–7; PS008473; PS002488–95; PS003157–9; PS007583; PS013913–5; PS007845; PS013256–63; PS013750–1; PS014307–20; PS014680–2; PS003592; PS007366; PS007675; PS013308; PS014616; PS014366–74; and PS014488–9; PS016829; PS016724–6.

DECLARATION OF DR. MATTHEW R. LYNDE, PH.D. IN SUPPORT OF APPLE INC.'S MOTION FOR A PERMANENT INJUNCTION, STATUTORY DAMAGES AND ATTORNEYS' FEES, CASE NO. 08-3251 WHA

townsend.     - 6 -

Psystar's document production in which customers complained about problems with Psystar computers including problems relating to video memory, clocks, automatic backups, running Apple software applications which are designed to work seamlessly on Apple computers such as iMovie, iWork, Photo Booth, and Final Cut Pro Studio, networking, excessive fan noise, software updates, audio, USB ports, wireless network connectivity, display, electrical malfunctions, quality control, unexpected blank screens, frequent system crashes, unexpected shutdowns, and malfunctioning hard discs and disc drives.  For example, one customer described that when he received his Psystar computer, "the hard disk was not mounted and just dangling in the computer.  Drive makes screeching noises and does not work properly."  Another customer noted that the Psystar computer stopped working only two days after he received it.  When he attempted to return the computer he was charged a 25% restocking fee of which he had no notice.  Other customers were frustrated that while they were promised at the time of purchase that they would receive all Mac OS X updates, they were later informed by Psystar that it was not responsible for providing the updates.

## PSYSTAR'S ACTS CAUSE IRREPARABLE HARM TO APPLE

17. In my opinion, Psystar's ongoing copyright infringement and its violations of the DMCA have caused and will continue to cause irreparable harm to Apple's brand equity, reputation, goodwill and business model, thereby harming Apple's ability to operate as it currently does, including its ability to innovate, offer superior customer services, and provide customers with reliable products.

## HARM TO APPLE'S BRAND EQUITY

18. In professional economics literature related to marketing, a brand is generally defined as "a name, term, sign, symbol, or design, or a combination of these intended to identify the goods or services of one seller or group of sellers and to differentiate them from those of competitors."  See *Marketing: An Introduction*, by Kotler and Armstrong.  A brand, however, serves as a number of functions beyond being a marker for the product offering of a firm, including influencing consumer choice by signaling product quality.  If the quality level signaled by the brand is confirmed by consumer experience, it leads to consumer satisfaction, repeat purchases and loyalty.  In this way, brands can help consumers simplify their choices and reduce risk.

DECLARATION OF DR. MATTHEW R. LYNDE, PH.D. IN SUPPORT OF APPLE INC.'S MOTION FOR A PERMANENT INJUNCTION, STATUTORY DAMAGES AND ATTORNEYS' FEES,  CASE NO. 08-3251 WHA

townsend.                                                                                                                    - 7 -

19. A brand can also augment the impact of the company's advertising and promotion efforts (*e.g.*, a strong brand can make advertising and promotion more effective), help secure distribution (*e.g.*, consumers expect stores to carry a strong brand), and facilitate growth and expansion into other product categories (*e.g.*, it can be easier for a strong brand to successfully launch brand extensions). Brands can have a strong sway on consumer preference and attract a loyal and profitable set of customers. As a result, a brand is an "asset" (though an intangible one) in the financial sense. In order to enhance and protect their brands, companies invest time, money and effort (*e.g.*, research and development) to preserve and improve the quality of their products and services, and the consumers' experience with their brands. They also engage in marketing and advertising efforts to increase brand awareness and recognition and to consistently provide a message about what their brands represent.

20. The value of the Apple brand has been assessed by several consulting companies that specialize in brands and branding. Two such companies, Millward Brown and Interbrand, have estimated the value of the Apple brand in the billions of dollars. In its 2008 report, Interbrand also commented that "[Apple's] ability to identify new customer needs and deliver products of beautiful simplicity and desirability continue to put it in a league of its own."

21. Apple follows a corporate branding strategy by using one corporate brand for all of its products. *Kellogg on Marketing*, published by the Northwestern University's Kellogg School of Management, notes that "[a]ll products under the corporate brand must be compatible with the associations that the brand evokes." Higher awareness and recognition of the Apple brand are expected to generate future sales, not only of the products Apple is currently offering, but also of Apple's future products. A product or a consumer's experience with a product that is not compatible with the brand's associations can harm the brand's equity.

22. Customer dissatisfaction with unauthorized products running Mac OS X, such as Psystar's computers, threatens the Apple brand. As discussed above, customers complained about the quality of Psystar's computers. Some of these problems may have stemmed from the low quality of Psystar computer hardware, others from Psystar's tampering with Mac OS X to make the operating system work on non-Apple hardware. Regardless of the source of the problems, Psystar

DECLARATION OF DR. MATTHEW R. LYNDE, PH.D. IN SUPPORT OF APPLE INC.'S MOTION FOR A PERMANENT INJUNCTION, STATUTORY DAMAGES AND ATTORNEYS' FEES, CASE NO. 08-3251 WHA

townsend. - 8 -

consumers are likely to attribute them at least in part to Mac OS X. This is consistent with the fact that Apple has received calls from Psystar customers for technical support on the computers they purchased from Psystar (APP_PSY0042441–9; APP_PSY0050592–607; APP_PSY0054794–5).

23. Apple has been ranked first in customer satisfaction since 2004 in the personal computer industry section of the American Customer Satisfaction Index ("ACSI") published by the National Quality Research Center at the University of Michigan. Laptop Magazine's Tech Support Showdown 2009 recently chose Apple as the overall winner in terms of technical support. In 2007, 2008 and 2009, Apple received top Consumer Report reader scores for both laptop and desktop technical support. A September 17, 2008 article in *iTWire.com* reported that "Apple continues to command the strongest repurchase intent of any PC brand."

24. The consumer experience following the purchase of an Apple product (from the use of products to customer service, to advertising and marketing campaigns) is an important building block of its brand equity. Thus, Psystar's sales today will not merely impact Apple's current computer sales but also potential sales of other Apple products, including products that will be introduced in the future.

25. Quantifying lost sales due to the reduction in brand equity is inherently difficult to do and impossible for any situations in the distant future and for new, currently unknown, products. Therefore, it would not be possible to fully compensate Apple for the harm suffered due to Psystar's acts.

### HARM TO APPLE'S BUSINESS REPUTATION

26. Business reputation is crucial for the long-term success of a company. A company with a strong business reputation can attract customers and employees and can differentiate itself from its competitors. According to a market research firm, Harris Interactive, "[p]ositive relationships exist between reputation perceptions and supportive behaviors toward the company such as: trusting them, definitely purchasing a product/service in the future, definitely recommending a product/service to others, and definitely investing or recommending the company as an investment to others."

27. Apple has consistently been highly ranked in surveys that try to measure business

DECLARATION OF DR. MATTHEW R. LYNDE, PH.D. IN SUPPORT OF APPLE INC.'S MOTION FOR A PERMANENT INJUNCTION, STATUTORY DAMAGES AND ATTORNEYS' FEES, CASE NO. 08-3251 WHA

- 9 -

reputation. In Fortune Magazine's "America's Most Admired Companies," Apple was ranked eleventh most admired company in 2006, seventh most admired company in 2007, and most admired company in 2008 as well as in 2009. Apple was the number one most admired company in both innovativeness and quality of products and services in 2006, 2007, 2008 and 2009. Harris Interactive ranked Apple nineteenth and fourteenth in its 2007 and 2008 Annual RQ surveys of business reputation respectively. Apple was ranked even higher in some subcategories, such as the consistency and distinctiveness of its corporate communications.

28.	Apple's carefully established and maintained brand identity is put at risk when consumers are confused about which products and services are actually Apple's responsibility. If consumers feel that Apple does not deliver on its promise, Apple's business reputation declines. At least some of Psystar's consumers confuse Psystar products with Apple products as evidenced by the calls Apple received from Psystar's customers (APP_PSY0042441–9; APP_PSY0050592–607; APP_PSY0054794–5). If Psystar is allowed to continue its current business practices and to enable others to violate Apple's intellectual property rights, the harm to Apple's business reputation can significantly increase.

### HARM TO APPLE'S BUSINESS GOODWILL

29.	Business goodwill is a company's intangible asset, defined as positive relationships with the entities with whom a company deals, including customers, suppliers, and employees. As is the case with other intangible assets, to the extent that Apple possesses goodwill, it has the potential to generate future sales, including of other products.

30.	Psystar's actions have damaged Apple's business goodwill. When a particular hardware-software configuration fails, it is possible for the customer to blame the software for the failure. Consumers of Psystar's computers could attribute the quality problems they experienced with Psystar's products to Apple's operating system. A reduction in business goodwill is likely to affect future sales of Apple's products and even the introduction of new products.

### HARM TO APPLE'S BUSINESS MODEL

31.	Close integration of hardware and software is crucial to Apple's success. Psystar's conduct threatens Apple's integrated business model and harms Apple's ability to operate as it

DECLARATION OF DR. MATTHEW R. LYNDE, PH.D. IN SUPPORT OF APPLE INC.'S MOTION FOR A PERMANENT INJUNCTION, STATUTORY DAMAGES AND ATTORNEYS' FEES, CASE NO. 08-3251 WHA

townsend.                                                                                                    - 10 -

currently does.

32. In economic terms, Psystar is free riding on the billions of dollars and years of effort that Apple has invested in creating and advertising its high quality integrated products. As a result, Psystar has saved substantial amounts of money in R&D, advertising and marketing expenses. But such free riding reduces Apple's incentives for continued investment and development of new integrated products.

### PSYSTAR'S OPERATION SETS AN EXAMPLE FOR OTHER INFRINGERS

33. Psystar's operation inspires other companies to undertake similar infringing activities. For example, a company called Quo Computer, announced a retail store in Los Angeles, opening on June 1, 2009, selling Quo-built computer systems with Mac OS X preinstalled. *TechSpot* magazine describes Quo computers as "seek[ing] to fill gap left by Psystar." Another company called AppleOpen Systems describes itself as offering "Open Architecture Design for Mac OS X 10.5 Leopard." An *OSNews* report confirmed the existence of Quo and indicated that these are not the only companies that are trying to sell systems with Apple's Mac OS X preinstalled on non-Apple hardware, with other "clone makers" reportedly operating in Russia, the UK, Germany, the Netherlands, France, Belgium, and Luxemburg.

34. Recently Psystar has also announced a new software product that it markets and distributes that enables the use of Mac OS X on non-Apple hardware. It has also offered to license this software to other third-party computer manufacturers (OEMs).

35. Thus, the harm of Psystar's infringement to Apple exceeds its own direct impact on Apple's sales or the impact on Apple's brand, business reputation and goodwill. Psystar's operations are encouraging others to violate Apple's intellectual property rights. The actual and potential entry of additional infringers encouraged by Psystar's actions further contributes to the irreparable harm to Apple's integrated product business model.

### PSYSTAR IS UNLIKELY TO BE ABLE TO PAY MONETARY DAMAGES

36. Psystar's financial records are not complete. Thus, evaluating Psystar's revenues and costs is not easy in this case. However, the records that exist appear to indicate that their costs exceed their revenues (PS018785–7).

37. Furthermore, Psystar filed for bankruptcy in May of 2009. Although Psystar's initial bankruptcy filing stated that Psystar had assets between zero and $50,000 (Case 09-19921-RAM, Doc 1, Filed 05/21/09, Page 1 of 6), Psystar's amended bankruptcy schedules state that Psystar's intellectual property asset is worth $3,000,000 (Case 09-19921-RAM, Doc 27-1, Filed 06/09/09, Page 6 of 26). The list of Psystar's creditors from May 21, 2009 lists claims in the amount of $259,357, including amounts owed to UPS, DHL, and the IRS. Psystar filed motions with the court requesting the continued use of its bank accounts, cash management system, credit card agreements, business form and records, as well as being permitted to honor customer deposits by fulfilling customer orders and delivering products for any remaining balance due on pending sales. Psystar stated it had between $5,000 and $10,000 in customer deposits (Case 09-19921-RAM, Filed 5/21/09). Psystar has since dismissed its bankruptcy filing, but it is unclear whether its financial situation has significantly improved.

38. Both Psystar's financial records and its bankruptcy filings indicate that Psystar would be unable to pay Apple monetary damages if such damages were awarded.

39. In sum, it is likely that Apple has suffered irreparable harm from Psystar's wrongful acts and will continue to do so if Psystar is not enjoined from continuing those acts. Psystar's actions harm Apple's intangible assets such as its corporate brand, business reputation, and business goodwill that are difficult to quantify. Psystar's actions also harm Apple by encouraging other entities to imitate Psystar's wrongful acts and infringe Apple's copyrights and violate its technological protection measure. And finally, given Psystar's lack of financial resources, it is unlikely that Apple would be compensated for any of the harm it has suffered.

## STATUTORY DAMAGES

40. The Court has ruled that Psystar's conduct infringes Apple's copyrights and violates the DMCA. I understand that Apple is entitled to statutory damages ranging from $750 to $30,000 for each copyrighted work that is infringed as well as additional damages up to $150,000 if Psystar's infringement is found to be willful. Statutory damages to Apple resulting from Psystar's copyright infringement are in a range between $1500 and $300,000 if Psystar is found to willfully infringe.

41. I understand that Apple may recover statutory damages for each violation of the DMCA ranging from $250 to $2500. I have been informed about the following four violations of the DMCA associated with Psystar's sale of computers running Mac OS X:

- The first violation is the shipment of a Psystar computer with Psystar's circumvention technology;
- The second violation is the acknowledgement form that is shipped with each Psystar computer which offers the customer a restore disc with Psystar's circumvention technology;
- The third violation is the shipment of the restore disk; and
- The fourth violation is when a customer runs the restore disk and connects with Psystar's servers to download Psystar's circumvention technology.

42. Psystar produced incomplete financial records. After conducting an extensive review of the business records that Psystar did produce, I was able to use invoices, purchase orders and a limited amount of other documents to reconstruct Psystar's financial statements. From these statements I formed a conservative conclusion about, among other things, Psystar's volume of sales of computers and acknowledgment forms shipped with those computers and the number of restore disks shipped by Psystar to its customers. According to my calculations, Psystar sold at least 768 computers preinstalled with Mac OS X from April, 2008 through August 10, 2009 and shipped 262 restore disks to customers. Psystar has not challenged my analysis of its financial records. There is less evidence indicating how often a Psystar customer connected to Psystar's servers downloads Psystar's circumvention technology. To be conservative, I have not included any violations related to such downloads in my analysis.

43. Given my understanding of the DMCA violations described above, it is my opinion that Psystar has violated the DMCA 1,798 times by selling at least 768 computers preinstalled with Mac OS X, including offers to provide customers with restore disks containing circumvention technology with each of its 768 sales of infringing computers and shipping 262 restore disks to customers. Given my understanding that damages for violation of the DMCA range from $250 to $2,500 per violation, based on the instances of violation identified above and based on the evidence

DECLARATION OF DR. MATTHEW R. LYNDE, PH.D. IN SUPPORT OF APPLE INC.'S MOTION FOR A PERMANENT INJUNCTION, STATUTORY DAMAGES AND ATTORNEYS' FEES, CASE NO. 08-3251 WHA

townsend. - 13 -

available to me, statutory damages to Apple for violations of the DMCA are in a range between $449,500 and $4,495,000.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge and belief.

Executed on November 23, 2009, at San Francisco, California.

_____
Matthew R. Lynde, Ph.D.

DECLARATION OF DR. MATTHEW R. LYNDE, PH.D. IN SUPPORT OF APPLE INC.'S MOTION FOR A PERMANENT INJUNCTION, STATUTORY DAMAGES AND ATTORNEYS' FEES, CASE NO. 08-3251 WHA

townsend.

- 14 -