TOWNSEND AND TOWNSEND AND CREW LLP
JAMES G. GILLILAND, JR. (State Bar No. 107988)
MEHRNAZ BOROUMAND SMITH (State Bar No. 197271)
MEGAN M. CHUNG (State Bar No. 232044)
J. JEB B. OBLAK (State Bar No. 241384)
Two Embarcadero Center, Eighth Floor
San Francisco, CA  94111
Telephone:  (415) 576-0200
Facsimile:  (415) 576-0300
Email: jggilliland@townsend.com
        mboroumand@townsend.com
        mmchung@townsend.com
        jboblak@townsend.com

O'MELVENY & MYERS LLP
GEORGE RILEY (State Bar No. 118304)
Two Embarcadero Center, 28th Floor
San Francisco, CA  94111
Telephone:  (415) 984-8700
Facsimile:  (415) 984-8701
Email: griley@omm.com

Attorneys for Plaintiff and Counterdefendant
APPLE INC.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| APPLE INC., | Case No. 08-3251 WHA |
| Plaintiff, | **APPLE INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR PERMANENT INJUNCTION, STATUTORY DAMAGES AND REASONABLE ATTORNEYS' FEES AND COSTS** |
| v. | |
| PSYSTAR CORPORATION, a Florida corporation, | |
| Defendant. | Date:       December 14, 2009 |
| | Time:       8:00 a.m. |
| AND RELATED COUNTERCLAIMS. | Courtroom:  9 |
| | Judge:      Hon. William Alsup |
| | Trial Date: January 11, 2010 |

townsend.

APPLE INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR PERMANENT INJUNCTION, STATUTORY DAMAGES
AND REASONABLE ATTORNEYS' FEES AND COSTS, CASE NO. 08-3251 WHA

Dockets.Justia.com

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ...................................................................................................1

II.   APPLE IS ENTITLED TO A PERMANENT INJUNCTION UNDER
      THE COPYRIGHT ACT AND THE DMCA.........................................................2

      A.    Apple Is Irreparably Harmed By Psystar's Illegal Conduct.............................2

            1.    Psystar's Infringement Will Continue To Irreparably
                  Harm Apple's Brand, Business Reputation And
                  Goodwill...............................................................................................4

            2.    Psystar Should Not Be Permitted To Undermine
                  Apple's Competitive Position By Infringing And
                  Contributing To Others' Infringement Of Apple's
                  Copyrights .............................................................................................6

            3.    By Trafficking In Circumvention Devices, Psystar Has
                  Spawned Other Infringers ....................................................................7

            4.    Damages Are Inadequate To Compensate Apple ..................................8

      B.    A Permanent Injunction Would Not Harm Any Legitimate
            Interest Of Psystar ...........................................................................................8

      C.    Protecting Copyrighted Works Serves The Public Interest................................9

      D.    The Permanent Injunction Must Be Sufficient To Prevent
            Psystar's Violation Of Apple's Rights Under The Copyright
            Act And The DMCA ........................................................................................9

      E.    Psystar Should Be Enjoined From Making And Distributing
            Unauthorized Copies Of, And Circumvention Devices For,
            Subsequent Versions Of Mac OS X ................................................................11

III.  APPLE IS ENTITLED TO STATUTORY DAMAGES...........................................13

      A.    The Number Of Psystar's DMCA Violations And Copyright
            Infringements ..................................................................................................15

      B.    Every Factor Supports A High Statutory Damages Award .............................16

IV.   AN AWARD OF REASONABLE ATTORNEYS' FEES AND
      COSTS IS APPROPRIATE...................................................................................17

V.    CONCLUSION ....................................................................................................19

townsend.

# TABLE OF AUTHORITIES

**PAGE**

CASES

*321 Studios v. Metro-Goldwyn-Mayer Studios, Inc.*,
  307 F. Supp. 2d 1085 (N.D. Cal. 2004) ...................................................... 8

*A&M Records, Inc. v. Napster, Inc.*,
  239 F.3d 1004 (9th Cir. 2001)................................................................. 8

*Apple Computer, Inc. v. Formula Int'l Inc.*,
  725 F.2d 521 (9th Cir. 1984)................................................................. 7

*Apple Computer, Inc. v. Franklin Computer Corp.*,
  714 F.2d 1240 (3rd Cir. 1983) .......................................................... 7, 8, 9

*Apple Inc. v. Psystar Corp.*,
  2009 U.S. Dist. LEXIS 94019 (N.D. Cal. Sept. 23, 2009) ....................... 3

*Berkla v. Corel Corp.*,
  302 F.3d 909 (9th Cir. 2002)................................................................. 17

*BMG Music v. Gonzalez*,
  430 F.3d 888 (7th Cir. 2005).................................................................. 12

*Chanel, Inc. v. Doan*,
  2007 U.S. Dist. LEXIS 22691 (N.D. Cal. Mar. 13, 2007)....................... 15

*Dunn & Fenley, LLC v. Allen*,
  2007 U.S. Dist. LEXIS 75292 (D. Or. Oct. 9, 2007) ............................ 18

*Eagle Servs. Corp. v. H20 Indus. Servs., Inc.*,
  532 F.3d 620 (7th Cir. 2008)................................................................. 17

*eBay Inc. v. MercExchange, L.L.C.*,
  547 U.S. 388 (2006)........................................................................... 2, 3

*Elecktra Entm't Group, Inc. v. Bryant*,
  2004 U.S. Dist. LEXIS 26700 (C.D. Cal. Feb. 13, 2004)....................... 15

*F.W. Woolworth Co. v. Contemporary Arts, Inc.*,
  344 U.S. 228 (1952).............................................................................. 15

*Fantasy, Inc. v. Fogerty*,
  94 F.3d 553 (9th Cir. 1996).................................................................... 17

townsend.

1

**TABLE OF AUTHORITIES**
(continued)

2

PAGE

3

*Fogerty v. Fantasy, Inc.*,
   510 U.S. 517 (1994)................................................................................... 17, 19

4

*Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.*,
   886 F.2d 1545 (9th Cir. 1989)............................................................... 17, 19

5

6

*Gates Rubber Co. v. Bando Am., Inc.*,
   798 F. Supp. 1499 (D. Colo. 1992), *aff'd in part, vacated in part on other grounds*, 9
   F.3d 823 (10th Cir. 1993)............................................................................ 9

7

8

*Harris v. Emus Records Corp.*,
   734 F.2d 1329 (9th Cir. 1984)................................................................. 14

9

10

*High Sierra Hikers Ass'n v. Blackwell*,
   390 F.3d 630 (9th Cir. 2004)..................................................................... 8

11

*Historical Res. v. Cabral*,
   80 F.3d 377 (9th Cir. 1996)................................................................. 17, 18

12

13

*Lava Records, LLC v. Jennifer Ates*,
   2006 U.S. Dist. LEXIS 46683 (W.D. La. July 11, 2006) ....................... 7

14

15

*LGS Architects, Inc. v. Concordia Homes*,
   434 F.3d 1150 (9th Cir. 2006)................................................................... 2

16

17

*Los Angeles News Service v. Reuters Television International Ltd*,
   149 F.3d 987 (9th Cir. 1998)................................................................... 15

18

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster*,
   518 F. Supp. 2d 1197 (C.D. Cal. 2007) ......................................... passim

19

20

*Microsoft Corp. v. Coppola*,
   2007 U.S. Dist. LEXIS 40515 (N.D. Cal. May 24, 2007) ..................... 15

21

22

*Microsoft Corp. v. E&M Internet Bookstore, Inc.*,
   2008 U.S. Dist. LEXIS 4381 (N.D. Cal. Jan. 22, 2008) ....................... 18

23

*Microsoft Corp. v. Lopez*,
   2009 U.S. Dist. LEXIS 36064 (W.D. Wash. Apr. 7, 2009)..................... 9

24

25

*Microsoft Corp. v. Marturano*,
   2009 U.S. Dist. LEXIS 44450 (E.D. Cal. May 27, 2009)................. 2, 3, 8

26

27

*Microsoft Corp. v. Nop*,
   549 F. Supp. 2d 1235 (E.D. Cal. 2008)................................................. 14

28

townsend.

1

**TABLE OF AUTHORITIES**
(continued)

2

PAGE

3

*Microsoft Corp. v. Ricketts,*
2007 U.S. Dist. LEXIS 40898 (N.D. Cal. May 24, 2007) ........................................ 15

4

5

*Mortgage Elec. Registration Sys. v. Brosnan,*
2009 U.S. Dist. LEXIS 87596 (N.D. Cal. Sept. 4, 2009) ........................................ 4

6

*Mun Hwa Broadcasting Corp. v. Kim,*
2007 U.S. Dist. LEXIS 42787 (M.D. Ga. Jun. 13, 2007) ........................................ 19

7

8

*MySpace, Inc. v. Wallace,*
498 F. Supp. 2d 1293 (C.D. Cal. 2007) ........................................ 4

9

10

*N.A.S. Import Corp. v. Chenson Enter., Inc.,*
968 F.2d 250 (2d Cir. 1992) ........................................ 14

11

*NLRB v. Express Pub. Co.,*
312 U.S. 426 (1941) ........................................ 9

12

13

*Orantes-Hernandez v. Thornburgh,*
919 F.2d 549 (9th Cir. 1990) ........................................ 9

14

15

*Pac. & S. Co. v. Duncan,*
744 F.2d 1490 (11th Cir. 1984) ........................................ 11

16

*Peer Int'l Corp. v. Pausa Records, Inc.,*
909 F.2d 1332 (9th Cir. 1990) ........................................ 14, 15

17

18

*Perfect 10 v. Amazon.com, Inc.,*
416 F. Supp. 2d 828 (C.D. Cal. 2006, *overruled on other grounds*, 487 F.3d 701 (9th Cir. 2007)) ........................................ 9

19

20

*Princeton Univ. Press v. Mich. Document Servs.,*
99 F.3d 1381 (6th Cir. 1996) ........................................ 11

21

22

*Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.,*
944 F.2d 597 (9th Cir. 1991) ........................................ 4

23

24

*Sara Lee Corp. v. Sycamore Family Bakery Inc.,*
2009 U.S. Dist. LEXIS 100554 (D. Utah Oct. 27, 2009) ........................................ 4

25

*Silicon Image, Inc. v. Analogix Semiconductor, Inc.,*
2008 U.S. Dist. LEXIS 109842 (N.D. Cal. Nov. 3, 2008) ........................................ 12

26

27

*SimplexGrinnel LP v. Integrated Sys. & Power, Inc.,*
642 F. Supp. 2d 206 (S.D.N.Y. 2009) ........................................ 12

28

townsend.

**TABLE OF AUTHORITIES**
(continued)

PAGE

*Sony Computer Entm't Am. v. Divineo, Inc.*,
  457 F. Supp. 2d 957 (N.D. Cal. 2006) ..................................................... 7

*Sony Computer Entm't Am. v. Gamemasters*,
  87 F. Supp. 2d 976 (N.D. Cal. 1999) ....................................................... 7

*Spencer Promotions Inc. v. 5th Quarter Enterprises Inc.*,
  1996 U.S. Dist. LEXIS 8686 (N.D. Cal. Feb. 21, 1996)........................ 17

*Stuhlbarg Int'l Sales Co. Inc. v. John D. Brush & Co.*,
  240 F.3d 832 (9th Cir. 2001)..................................................................... 4

*Tiffany (NJ) Inc. v. Luban*,
  282 F. Supp. 2d 123 (S.D.N.Y. 2003)..................................................... 14

*Triad Sys. Corp. v. Southeastern Express Co.*,
  54 F.3d 1330 (9th Cir. 1995).............................................................. 2, 8

*University City Studios, Inc. v. Reimerdes*,
  111 F. Supp. 2d 294 (S.D.N.Y. 2000)................................................ 7, 17

*Walt Disney Co. v. Powell*,
  897 F.2d 565 (D.C. Cir. 1990) ......................................................... 11, 12

*Warner Bros. Entm't Inc. v. RDR Books*,
  575 F. Supp. 2d 513 (S.D.N.Y. 2008)................................................. 7, 9

*Warner Bros. Records, Inc. v. Brown*,
  2008 U.S. Dist. LEXIS 95171 (N.D. Cal. Nov. 13, 2008)................... 9, 11

*Warner Bros. Records, Inc. v. Romero*,
  2007 U.S. Dist. LEXIS 79848 (N.D. Cal. Oct. 29, 2007)...................... 11

**STATUTES**

17 U.S.C. § 502.......................................................................................... 2, 9

17 U.S.C. § 504............................................................................................. 14

17 U.S.C. § 505............................................................................................. 17

17 U.S.C. § 1201....................................................................................... 1, 10

17 U.S.C. § 1203....................................................................................... 2, 13

townsend.

1

**TABLE OF AUTHORITIES**
(continued)

2

PAGE

3

**OTHER AUTHORITIES**

4

3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyrights* § 14.06[C] at 14-92 (1991) 9, 14

5

4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 14.06[B] ............................... 3

6

Federal Rule of Civil Procedure 54 ................................................................................ 17

7

Federal Rule of Civil Procedure 65 ................................................................................. 9

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

APPLE INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR PERMANENT INJUNCTION, STATUTORY
DAMAGES AND REASONABLE ATTORNEYS' FEES AND COSTS, CASE NO. 08-3251 WHA          - vi -

townsend.

1

## I.     INTRODUCTION

2

Psystar Corporation ("Psystar") has built its business on infringing Apple Inc.'s ("Apple")

3

copyrights and trademarks, free-riding on Apple's research and development efforts, and trading

4

on Apple's hard-earned reputation for high quality, innovative and easy-to-use computers.

5

Psystar's appropriation of Apple's intellectual property and goodwill has been systematic and

6

brazen, from the name of Psystar's "OpenMac" computers to its deliberate pirating of Apple's

7

Mac OS X.  Psystar even seeks to profit from Apple's efforts to protect its rights, extolling this

8

litigation as Psystar's "opportunity to gain market share," in a pitch to venture capitalists.[1]

9

On November 13, 2009, this Court granted Apple's motion for summary judgment on its

10

claim for infringement of Apple's copyrights in Mac OS X, finding that "Psystar has violated

11

Apple's exclusive reproduction right, distribution right, and right to create derivative works."

12

(Docket No. 214 at 10.)  The Court also held Psystar liable for contributory copyright

13

infringement and violations of Sections 1201(a)(1), 1201(a)(2) and 1201(b)(1) of the Digital

14

Millennium Copyright Act ("DMCA") for circumvention and trafficking in circumvention

15

devices.  (*Id.* at 10, 13-14.)

16

Unless Psystar is permanently enjoined, it will not stop its unlawful conduct – conduct that

17

is causing irreparable harm to Apple's business, brand and goodwill.  Apple is entitled to a

18

permanent injunction enjoining Psystar from:  (1) directly or contributorily infringing Apple's

19

copyrights in Mac OS X; (2) circumventing any of Apple's technological protection measure in

20

Mac OS X, including by using circumvention devices that include or are capable of generating

21

Apple's decryption key; (3) possessing circumvention devices that have been used against Apple's

22

technological protection measures; and (4) trafficking in circumvention devices containing or

23

capable of generating Apple's key, or any technology, product, service, device, component or part

24

for use in circumventing the technological protection measures in Mac OS X.

25

Apple also seeks statutory damages under the Copyright Act and the DMCA and

26

reasonable attorneys' fees and costs as the prevailing party.  The evidence of Psystar's willful

27

[1] Declaration of Megan M. Chung ("Chung Decl.") in Support of Apple's Motion for
Permanent Injunction, Statutory Damages and Reasonable Attorneys' Fees and Costs at Ex. 1 at
28   PS009263.

townsend.

1   infringement is both undisputed and overwhelming, and Apple is entitled to the maximum

2   statutory damages available.  Nevertheless, Apple seeks only a portion of such damages in an

3   effort to reach a swift resolution of these issues.

4          Money damages alone could never compensate for the irreparable injury that Apple has

5   suffered.  A failure to enjoin Psystar from continuing its unlawful activities would constitute an

6   involuntary license of Apple's immensely valuable intellectual property and encourage others to

7   follow Psystar's pattern of deliberate disregard of well-established law.  Accordingly, this Court

8   should grant a permanent injunction of a scope that will unequivocally end Psystar's unlawful

9   conduct.

10   **II.     APPLE IS ENTITLED TO A PERMANENT INJUNCTION UNDER THE
              COPYRIGHT ACT AND THE DMCA**

11

12          Sections 502(a) of the Copyright Act and 1203(b)(1) of the DMCA empower the Court to

13   grant a permanent injunction "on such terms as it may deem reasonable to prevent or restrain"

14   infringement of a copyrighted work or a violation of the DMCA.  17 U.S.C. §§ 502(a), 1203(b)(1).

15   To obtain a permanent injunction, Apple must demonstrate:  "(1) that it has suffered an irreparable

16   injury; (2) that remedies available at law, such as monetary damages, are inadequate to

17   compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and

18   defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved

19   by a permanent injunction."  *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006);

20   *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster*, 518 F. Supp. 2d 1197, 1210-14 (C.D. Cal. 2007);

21   *Microsoft Corp. v. Marturano*, 2009 U.S. Dist. LEXIS 44450, at *22 (E.D. Cal. May 27, 2009).

22   **A.     Apple Is Irreparably Harmed By Psystar's Illegal Conduct**

23          Under traditional copyright principles, Apple is entitled to a presumption of irreparable

24   harm because it has prevailed on its infringement claim.  *See LGS Architects, Inc. v. Concordia

25   Homes*, 434 F.3d 1150, 1155 (9th Cir. 2006); *Triad Sys. Corp. v. Southeastern Express Co.*, 54

26   F.3d 1330, 1335 (9th Cir. 1995).  Under this authority, Apple need not show that Psystar's conduct

27   has caused irreparable harm.  After the Supreme Court's decision in *eBay* regarding injunctions in

28   patent cases, however, district courts have been split as to whether the presumption of irreparable

**townsend.**

1    harm continues to apply in copyright cases.[2]  The Ninth Circuit has not expressly considered

2    whether *eBay* has eliminated the presumption of irreparable harm in the copyright context.  As this

3    Court previously noted, although "[i]rreparable harm may not be presumed, [ ] in run-of-the-mill

4    copyright litigation, such proof should not be difficult to establish.  Thus, [p]laintiffs may establish

5    an irreparable harm stemming from the infringement (*e.g.*, loss of market share, reputational

6    harm)."  *Apple Inc. v. Psystar Corp.*, 2009 U.S. Dist. LEXIS 94019, at *9 (N.D. Cal. Sept. 23,

7    2009) (quoting *Grokster*, 518 F. Supp. 2d at 1215).  As demonstrated below, Apple easily meets

8    this standard for showing irreparable harm.

9         When determining whether a plaintiff faces the threat of irreparable harm, courts should

10   consider evidence of past infringement as well as the likelihood of future infringement.  *See* 4

11   Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 14.06[B] (2008).  Apple has

12   proven, and the Court has found, that Psystar infringes Apple's copyrights and violates the

13   DMCA.  (Docket No. 214 at 10, 13-14.)  Moreover, there is ample evidence that, unless

14   permanently enjoined, Psystar will continue its pattern of infringing, and contributing to the

15   infringement of, Apple's copyrights in Mac OS X and circumventing Apple's technological

16   protection measures.  (Chung Decl. Ex. 1 at PS009263, 9272-77; Ex. 2 (Pedraza Dep.) at 101:18-

17   102:16; Ex. 3 (Summ. J. Hr'g. Tr.) at 23:4-6.)  Psystar has already distributed computers and

18   software that infringe (and contribute to the infringement of) Apple's copyrights in, and

19   circumvent the technological protection measures of, at least versions 10.5.2, 10.5.4, 10.5.5 and

20   10.5.6 of Mac OS X.  (Declaration of John P.J. Kelly ("Kelly Decl.") ¶ 5.)  Psystar has announced

21   its intention to continue infringing (and to contribute to the infringement of) Apple's copyrights in,

22   and circumventing the technological protection measures in, the current upgrade of Mac OS X,

23   version 10.6.[3]  Accordingly, Apple is entitled to a permanent injunction prohibiting the

24   _____

     [2] *Compare Marturano*, 2009 U.S. Dist. LEXIS 44450, at *23 (holding that copyright
25   infringement is presumed to give rise to irreparable harm, and where infringement is willful
     plaintiff need not introduce evidence of a threat of future harm) *with Grokster*, 518 F. Supp. 2d at
26   1210-14 (holding that post *eBay*, there is no presumption of irreparable harm upon the
     establishment of liability in copyright cases).

27   [3] To enable Mac OS X (whether Leopard or Snow Leopard) to run on non-Apple hardware,
     Psystar must (a) use Apple's decryption key to circumvent Apple's technological protection
28   measures and access the encrypted files in the Mac OS X and (b) modify the software by, at a
     minimum, using a different bootloader.  (Kelly Decl. ¶ 6; Chung Decl. Ex. 5 (Psystar's website

**townsend.**

infringement of Apple's copyrights and violation of the DMCA with respect to both current and future versions of Mac OS X.

> **1.      Psystar's Infringement Will Continue To Irreparably Harm Apple's Brand, Business Reputation And Goodwill**

Courts have long held that damage to brand, business reputation or goodwill constitutes irreparable harm.  *See*, *e.g.*, *Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991) ("[I]ntangible injuries, such as damage to ongoing recruitment efforts and goodwill, qualify as irreparable harm."); *accord Grokster*, 518 F. Supp. 2d at 1215; *MySpace, Inc. v. Wallace*, 498 F. Supp. 2d 1293, 1305 (C.D. Cal. 2007) ("Harm to business goodwill and reputation is unquantifiable and considered irreparable . . .").  Actual loss of goodwill is not required to establish irreparable harm.  *Mortgage Elec. Registration Sys. v. Brosnan*, 2009 U.S. Dist. LEXIS 87596, at *24 (N.D. Cal. Sept. 4, 2009).  "The Ninth Circuit has recognized that the potential loss of goodwill or the loss of the ability to control one's reputation may constitute irreparable harm . . . ."  *Id.* (citing *Stuhlbarg Int'l Sales Co. v. John D. Brush and Co.*, 240 F.3d 832, 841 (9th Cir. 2001) ("Evidence of threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm.")).  Recently, in *Sara Lee Corp. v. Sycamore Family Bakery Inc.*, 2009 U.S. Dist. LEXIS 100554, at *19 (D. Utah Oct. 27, 2009), the court held that "without an injunction, the strong reputation of this very popular product could be forever tarnished."  The court found that the "threatened injury to [plaintiff's] control over the quality of its [product] is irreparable" and concluded that the harm to plaintiff's reputation and goodwill resulting from defendant's infringement was "largely unquantifiable."  *Id.*

Apple has invested billions of dollars in research and development, advertising and customer support to establish an unequaled reputation for high quality products and superior customer service that is critical to the marketing of its products and the development of its brand, reputation and goodwill.  (Declaration of Philip Schiller ("Schiller Decl.") in Support of Apple's Motion for Permanent Injunction, ¶ 3; Declaration of Matthew R. Lynde ("Lynde Decl.") in Support of Apple's Motion for Permanent Injunction, ¶¶ 7,15.)  Apple's integrated product

offering computers with Mac OS X, version 10.6 and a Rebel EFI, a circumvention device.)

townsend.

APPLE INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR PERMANENT INJUNCTION, STATUTORY DAMAGES AND REASONABLE ATTORNEYS' FEES AND COSTS, CASE NO. 08-3251 WHA

4

business model ensures that Apple's software and hardware work flawlessly together to provide consumers with highly reliable, innovative and easy-to-use computers.  (Schiller Decl. ¶ 4; Lynde Decl. ¶ 8.)  Apple maintains strict quality controls for all its products and its after-sale service and support.  (Schiller Decl. ¶ 5; Lynde Decl. ¶ 9.)  Apple provides regular product updates and upgrades to ensure continued user satisfaction, even after purchase.  (Schiller Decl. ¶ 6.)  Apple maintains innovative and upscale stores, in addition to its on-line presence, in order to attract new customers and provide support to existing ones.  (Schiller Decl. ¶ 6; Lynde Decl. ¶ 9.)  Each customer contact – from Apple's advertisements to its post-purchase support – is thoroughly considered and carefully executed to ensure an outstanding product experience.  (Schiller Decl. ¶ 6.)

As a result of its unique and unparalleled focus on customers, Apple ranks at the top of the personal computer industry in consumer surveys.  In 2007, 2008 and 2009, Apple received top Consumer Report reader scores for both laptop and desktop technical support.  (Lynde Decl. ¶ 23.)  Apple also was ranked at the top of the American Customer Satisfaction Index in the personal computer category in 2009, and continues to command the strongest repurchase intent of any personal computer brand.  (*Id.*)  Third party brand analysts have noted that Apple's brand is associated with "beautiful simplicity," and have valued Apple's brand in the billions.  (*Id.* ¶ 20.)

In contrast, Psystar can claim little or no brand recognition of its own.  (*Id.* ¶¶ 12-14.)  Rather, Psystar has illegally profited from Apple's efforts rather than investing in developing its own products and building its own goodwill.  Since its inception, Psystar has invested less than $2,000 in research and development and a minimal amount in advertising.  What little advertising Psystar undertakes centers around using Apple's trade dress, trademarks and trade names.  (*Id.* ¶ 13; Declaration of Carol A. Scott ("Scott Decl.") in Support of Apple's Motion for Permanent Injunction, ¶ 6.)

Psystar's systematic pirating of Apple's software and trafficking in circumvention devices represents a profound threat to Apple's reputation, goodwill and brand.  Psystar distributes a modified version of Mac OS X that lacks the functionality of the original product.  Psystar does not attempt to match Apple's focus on quality and customer service or its investment in the

1  manufacture, sale or support of its products.  (Lynde Decl. ¶¶ 13, 16.)  Psystar's customers have

2  experienced serious problems with Psystar's products and after-sale customer support.  (*Id.* ¶ 16.)

3  Numerous customers have complained about not being able to connect to other Apple hardware

4  and software, the inability to use Apple software applications, Psystar's computers'

5  incompatibility with Apple-released system upgrades and about general dissatisfaction with

6  Psystar's customer service and technical support.  (*Id.*)

7  Psystar's lack of quality control and the defects in Psystar computers have injured, and will

8  continue to injure, Apple's reputation and goodwill because customers tend to blame the operating

9  system for their computer's problems, regardless of their true source.  (Lynde Decl. ¶ 22; Scott

10  Decl. ¶ 5.)  Indeed, on several occasions, Apple customer service representatives have received

11  calls from Psystar customers seeking help with Psystar computers.  (Lynde Decl. ¶ 22; Scott Decl.

12  ¶ 5.)  Once these callers learn that Apple cannot provide support for Psystar computers, they

13  believe that Apple does not provide the quality products and support it promises in advertisements.

14  (Schiller Decl. ¶ 8; Lynde Decl. ¶ 22; Scott Decl. ¶ 5.)  As a result, Apple's reputation for

15  excellence is harmed.

16  The injury that Apple suffers to its brand, reputation and goodwill is irreparable and

17  unquantifiable.  Calculating lost sales due to this impact is inherently difficult to do and

18  impossible for any situations in the future.  (Lynde Decl. ¶ 25.)  Because Psystar continues to

19  infringe Apple's copyrights and violate the DMCA, only an injunction can stop the harm to Apple.

20
21
**2. Psystar Should Not Be Permitted To Undermine Apple's Competitive Position By Infringing And Contributing To Others' Infringement Of Apple's Copyrights**

22  Psystar admits that it makes wholesale copies of Mac OS X and sells those unauthorized

23  copies to the public for the purpose of competing with Apple.  (*See* Psystar's Response to Apple's

24  Motion for Summ. J. at 6-7 (Docket No. 204); Chung Decl. Ex. 4.)  The Court has ruled that by

25  doing so, Psystar has "infringed Apple's exclusive reproduction right, distribution right and right

26  to create derivative works" and is liable for infringement.  (Docket No. 214 at 4-5, 10.)  Psystar

27  also has committed contributory infringement by enabling others to make unauthorized copies of

28  Mac OS X.  (*Id.* at 10.)  Psystar should not be permitted to willfully undermine Apple's

townsend.

APPLE INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR PERMANENT INJUNCTION, STATUTORY
DAMAGES AND REASONABLE ATTORNEYS' FEES AND COSTS, CASE NO. 08-3251 WHA                 6

competitive position by "construct[ing] its business around its infringement." *Apple Computer, Inc. v. Formula Int'l Inc.*, 725 F.2d 521, 525-26 (9th Cir. 1984) (citing *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1254 (3rd Cir. 1983) ("the jeopardy to Apple's investment and competitive position caused by [the defendant's] wholesale copying of many of its key operating programs . . . satisfies the requirement of irreparable harm needed to support a preliminary injunction")); *see also Warner Bros. Entm't Inc. v. RDR Books*, 575 F. Supp. 2d 513, 553 (S.D.N.Y. 2008) ("because [defendant] appropriates too much of [plaintiff's] creative work . . . a permanent injunction must issue to prevent the possible proliferation of works that do the same and thus deplete the incentive for original authors to create new works").  To prevent Psystar from realizing its goal of appropriating Apple's investment and market share,[4] Psystar must be permanently enjoined from making and selling unauthorized copies of current and future versions of Mac OS X and contributing to the infringement of Mac OS X by third parties.

### 3.   By Trafficking In Circumvention Devices, Psystar Has Spawned Other Infringers

As this Court found, Psystar is trafficking in devices that enable others to circumvent Apple's technological protection measure to gain access to and copy Mac OS X.  (Docket No. 214 at 13-15.)  Psystar is continuing to actively market those devices and has announced its intention continue to do so to enable others to infringe Apple's copyrights.  (Chung Decl. Ex. 5; Lynde Decl. ¶¶ 11-12, 34.)  If Psystar is not permanently enjoined from marketing unlawful circumvention devices, other parties will be encouraged and enabled to continue infringing Apple's copyrights in Mac OS X.  *Sony Computer Entm't Am. v. Divineo, Inc.*, 457 F. Supp. 2d 957, 968-69 (N.D. Cal. 2006); *University City Studios, Inc. v. Reimerdes*, 111 F. Supp. 2d 294, 343 (S.D.N.Y. 2000); *Sony Computer Entm't Am. v. Gamemasters*, 87 F. Supp. 2d 976, 988 (N.D. Cal. 1999).  A permanent injunction therefore is necessary to stop Psystar from continuing its unlawful activity and to deter others from doing the same.  *Lava Records, LLC v. Jennifer Ates*, 2006 U.S. Dist. LEXIS 46683, at *12 (W.D. La. July 11, 2006) (court permanently enjoined defendant's copyright infringement in part because of "the need to deter future infringement by

---

[4] Chung Decl. Ex. 1 at PS009263, 9272-77.

townsend.

1   Defendant and others"); *see also*, *321 Studios v. Metro-Goldwyn-Mayer Studios, Inc.*, 307 F.

2   Supp. 2d 1085, 1105 (N.D. Cal. 2004).

3                **4.      Damages Are Inadequate To Compensate Apple**

4           There is compelling evidence that Psystar will not be able to pay any statutory damages

5   resulting from its unlawful conduct.  *Grokster*, 518 F. Supp. 2d. at 1214, 1219 ("[d]amages are no

6   remedy at all if they cannot be collected").  In 2008 and 2009, Psystar's costs exceeded its

7   revenues.  (Lynde Decl. ¶ 36.)  Psystar has already filed for bankruptcy once during the course of

8   this litigation, listing the value of its assets (except for what it claims as its own intellectual

9   property, which it significantly overvalued) at between $0 and $50,000; Psystar's list of owed

10  claims amounted to over $250,000.  (*Id.* ¶ 37).  Moreover, even if Psystar could pay damages, the

11  harm to Apple's brand, reputation and goodwill is unquantifiable.  Finally, there also is evidence

12  of continuing third party infringement due to Psystar's induced infringement of Apple's

13  copyrights.  Such inducement "greatly erodes Plaintiffs' ability to enforce their exclusive rights."

14  *Grokster*, 518 F. Supp. 2d at 1217 (citing *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004,

15  1029 (9th Cir. 2001)).  Indeed, the very need to file multiple lawsuits "as a consequence of

16  [Psystar's] inducement is itself supportive of an irreparable harm finding."  *Id.* at 1219.

17           **B.      A Permanent Injunction Would Not Harm Any Legitimate Interest Of Psystar**

18          "In issuing an injunction, the court must balance the equities between the parties and give

19  due regard to the public interest."  *High Sierra Hikers Ass'n v. Blackwell*, 390 F.3d 630, 642 (9th

20  Cir. 2004).  Here, the balance of equities clearly weighs in favor of Apple.  Psystar has no

21  legitimate interest in the ability to continue infringing Apple's copyrights or in violating the

22  DMCA.  A defendant whose entire business is premised on misappropriation of Apple's

23  intellectual property cannot claim it suffers hardship by being forced to stop such infringement.

24  *See e.g., Triad*, 64 F.3d at 1338 ("Where the only hardship that the defendant will suffer is lost

25  profits from an activity which has been shown likely to be infringing, such an argument in defense

26  merits little equitable consideration . . . ." ) (internal quotation marks omitted); *Franklin*

27  *Computer*, 714 F.2d at 1255 (knowing infringer cannot be permitted to construct its business

28  around its infringement); *Marturano*, 2009 U.S. Dist. LEXIS 44450, at *23 ("The court perceives

1   no harm to Defendant since an injunction were [*sic*] merely require Defendant to comply with the

2   Copyright and Lanham Acts.").  Psystar's entire business is based on infringing Apple's

3   copyrights and circumventing Apple's technological measures.  (Lynde Decl. ¶¶ 11-12 and Ex. A.)

4   Psystar has no legitimate interest in being permitted to continue those unlawful activities to

5   Apple's detriment.

6        **C.**    **Protecting Copyrighted Works Serves The Public Interest**

7        The public interest is promoted by protecting Apple's copyrights against continued

8   infringement and by upholding the provisions of the DMCA.  *See Grokster*, 518 F. Supp. 2d at

9   1222 (citing *Perfect 10 v. Amazon.com, Inc.*, 416 F. Supp. 2d 828, 859 (C.D. Cal. 2006), *overruled*

10  *on other grounds*, 487 F.3d 701 (9th Cir. 2007)); *Microsoft Corp. v. Lopez*, 2009 U.S. Dist. LEXIS

11  36064, at *11 (W.D. Wash. Apr. 7, 2009) ("The public's interest is undoubtedly served by

12  preventing Defendant from distributing deceptively counterfeit Microsoft software.").  The

13  injunction Apple seeks would advance the basic goal of copyright law to "prevent[] the

14  misappropriation of the skills, creative energies, and resources which are invested in the protected

15  work."  *RDR Books,* 575 F. Supp. 2d at 553 (citing *Franklin Computer*, 714 F.2d at 1255).

16       **D.**    **The Permanent Injunction Must Be Sufficient To Prevent Psystar's Violation Of Apple's Rights Under The Copyright Act And The DMCA**

17

18       The Court has broad discretion under Fed. R. Civ. P. 65(d) "to restrain acts which are the

19  same type or class as unlawful acts which the court has found to have been committed or whose

20  commission in the future, unless enjoined, may fairly be anticipated from the defendant's conduct

21  in the past."  *Orantes-Hernandez v. Thornburgh*, 919 F.2d 549, 564 (9th Cir. 1990) (quoting

22  *NLRB v. Express Pub. Co.*, 312 U.S. 426, 435 (1941)); *see also Gates Rubber Co. v. Bando Am.,*

23  *Inc.*, 798 F. Supp. 1499, 1522 (D. Colo. 1992), *aff'd in part, vacated in part on other grounds*, 9

24  F.3d 823 (10th Cir. 1993) (citing 3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright*

25  § 14.06[C] at 14-92 (1991)).  A federal court may "grant temporary and final injunctions on such

26  terms as it may deem reasonable to prevent or restrain infringement of a copyright."  17 U.S.C. §

27  502(a); *Warner Bros. Records, Inc. v. Brown*, 2008 U.S. Dist. LEXIS 95171, at *6 (N.D. Cal.

28  Nov. 13, 2008).

1    This Court has ruled that Psystar infringed Apple's copyrights in Mac OS X by violating

2    Apple's exclusive reproduction right, distribution right and right to creative derivative works.

3    (Docket No. 214 at 10.)  The Court held that "Psystar has used decryption software to obtain

4    access to Mac OS X and to circumvent Apple's technological measure when modifying Mac OS X

5    in its production process" in violation of section 1201(a)(1) of the DMCA.  (*Id.* at 13.)  This Court

6    determined that Psystar violated sections 1201(a)(2) and 1201(b)(1) of the DMCA by installing

7    circumvention technology on the computers it distributes with Mac OS X and marketing those

8    computers as running with Mac OS X.  (*Id.* at 13-14.)  And this Court ruled that Psystar is "a

9    contributory infringer" because it intentionally induced or encouraged others to directly infringe

10   Apple's copyrights in Mac OS X.

11   Psystar's direct and contributory copyright infringement and violations of the DMCA

12   entitle Apple to permanent injunctive relief.  Apple therefore seeks an order from this Court

13   enjoining Psystar from:

14   • Infringing Apple's copyrights in Mac OS X;

15   • Manufacturing, distributing, preparing or using any non-Apple computer installed
       with a reproduction or derivative work of Mac OS X;
16

17   • Manufacturing, distributing, preparing or using any product that creates or
       facilitates the reproduction or modification of Mac OS X on non-Apple computers;

18   • Circumventing any technological protection measure in Mac OS X;

19   • Possessing any technology, product, device, component, or part thereof that has
       been used to circumvent any technological protection measure in Mac OS X, and
20     requiring Psystar to destroy any technology, product, device, component, or part
       thereof in its custody or control that has been used to circumvent any technological
21     protection measure in Mac OS X;

22   • Manufacturing, importing, offering to the public, providing, or otherwise
       trafficking in circumvention devices using, containing or capable of generating
23     Apple's decryption key, or any technology, product, service, device, component or
       part thereof for use in circumventing any technological protection measure in Mac
24     OS X; and

25   • Inducing, aiding or assisting others in infringing Apple's copyrights in Mac OS X
       or in circumventing any technological protection measure in Mac OS X.
26

27   Apple's injunction is tailored to prevent and restrain Psystar from infringing Apple's copyrights in

28   Mac OS X, circumventing Apple's technological protection measures in Mac OS X, and

1   trafficking in circumvention devices used to avoid any technological measures that restricts access

2   to Apple's copyrighted software.

3       **E.    Psystar Should Be Enjoined From Making And Distributing Unauthorized
            Copies Of, And Circumvention Devices For, Subsequent Versions Of Mac OS X**

4

5       In its summary judgment filings, Psystar asserted that any permanent injunction should be

6   limited to Psystar's distribution of computers with Mac OS X version 10.5 Leopard.  (Psystar

7   Summ. J. Mot. at 25.[5])  Psystar stated that such an injunction would pose no difficulty to Psystar

8   because it no longer distributes computers with Mac OS X Leopard.  Psystar's admission that it

9   has moved on to infringing subsequent versions of Mac OS X confirms that any injunction must

10  extend beyond Mac OS X Leopard, and Psystar should be enjoined from copying, modifying and

11  selling unauthorized copies of subsequent versions of Mac OS X.

12      "It has . . . been generally accepted that upon a finding of infringement, an injunction may

13  be issued as to existing ***and future*** works."  *Brown*, 2008 U.S. Dist. LEXIS 95171, at *6

14  (emphasis added) (citing *Princeton Univ. Press v. Mich. Document Servs.*, 99 F.3d 1381, 1392-93

15  (6th Cir. 1996) ("The weight of authority supports the extension of injunctive relief to future

16  works.")); *see also Pac. & S. Co. v. Duncan*, 744 F.2d 1490, 1499 n.17 (11th Cir. 1984); *Warner*

17  *Bros. Records, Inc. v. Romero*, 2007 U.S. Dist. LEXIS 79848, at *3-4 (N.D. Cal. Oct. 29, 2007).

18  For example, in *Walt Disney Co. v. Powell*, the defendant had infringed Walt Disney's copyrights

19  in Mickey and Minnie Mouse by manufacturing and distributing t-shirts featuring the cartoon

20  characters' images.  897 F.2d 565, 566 (D.C. Cir. 1990).  The defendant argued that the district

21  court abused its discretion in permanently enjoining him from distributing t-shirts featuring

22  images of other Walt Disney copyrighted cartoon characters, including Donald Duck, Pluto, and

23  Goofy, because those copyrights were not at issue in the suit.  *Id.*  The court of appeal rejected the

24  defendant's argument, finding that when "liability has been determined adversely to the infringer,

25  there has been a history of continuing infringement and a significant threat of future infringement

26  remains, it is appropriate to permanently enjoin the future infringement of works owned by the

27  _____
        [5] Psystar argued that "[a]ny injunction in this case should not extend either to Apple's new
28  Snow Leopard product or to Psystar's new products that incorporate or facilitate the use of Snow
    Leopard."  (*Id.*)

**townsend.**

1    plaintiff but not in suit." *Id.* at 568.

2         The evidence shows that Psystar has a history of direct infringement, contributory

3    infringement and trafficking in circumvention technology to enable others to infringe Apple's

4    copyrights in various versions of Mac OS X.  Psystar has illegally distributed computers running

5    versions 10.5.2, 10.5.4, 10.5.5 and 10.5.6 of Mac OS X with circumvention devices designed to

6    defeat Apple's technological protection measures.  (Kelly Decl. ¶¶ 4-5 and Table 2.)  Psystar

7    admits its intention to continue infringing Apple's copyrights and violating the DMCA with

8    respect to version 10.6 of Mac OS X as well as subsequent versions.  (*See* Psystar Summ. J. Mot.

9    at 25; Chung Decl. Ex. 3 at 23:2-5; Chung Decl. Ex. 5.)  Psystar's pattern of misconduct and

10   declared intent are more than sufficient to extend the injunction to subsequent versions of Mac OS

11   X.  "[I]n cases where courts have found that defendants have engaged in a pattern of infringing the

12   plaintiffs' copyrights such that there is a threat that other copyrights owned by the plaintiffs will

13   be infringed, they have routinely entered injunctions that enjoin infringement by those defendants

14   of all of the plaintiffs' copyrights, even if the copyrighted works have not yet been created."

15   *Silicon Image, Inc. v. Analogix Semiconductor, Inc.*, 2008 U.S. Dist. LEXIS 109842, at *25 (N.D.

16   Cal. Nov. 3, 2008).  It is therefore appropriate to include current and future versions of Mac OS X

17   within the injunction to "ensure that [Psystar's] misconduct does not recur as soon as the case

18   ends." *BMG Music v. Gonzalez*, 430 F.3d 888, 893 (7th Cir. 2005).

19        Moreover, by infringing, or contributing to the infringement, of subsequent versions of

20   Mac OS X, such as version 10.6 "Snow Leopard," Psystar is also infringing, or contributing to the

21   infringement of, Apple's copyrights in Mac OS X and Mac OS X Leopard.  Mac OS X Snow

22   Leopard is a derivative work of Mac OS X and Mac OS X Leopard.  (*See* Chung Decl. Ex. 6.)  By

23   making unauthorized copies of Mac OS X Snow Leopard, or by enabling others to make

24   unauthorized copies of Mac OS X Snow Leopard, Psystar infringes, or contributes to the

25   infringement of, Apple's copyright in Snow Leopard **and** its copyrights in the underlying works,

26   Mac OS X and Leopard.  *SimplexGrinnel LP v. Integrated Sys. & Power, Inc.,* 642 F. Supp. 2d

27   206, 213-14 (S.D.N.Y. 2009) ("[A]ny infringement of the preexisting material infringes the pre-

28   existing work, rather than the derivative work from which the pre-existing material may have

townsend.

APPLE INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR PERMANENT INJUNCTION, STATUTORY
DAMAGES AND REASONABLE ATTORNEYS' FEES AND COSTS, CASE NO. 08-3251 WHA                          12

1    actually been copied.").  Moreover, the software Psystar uses to run Mac OS X – either Leopard or

2    Snow Leopard – on non-Apple computers, contains the same key that this Court found violated

3    the anti-circumvention and anti-trafficking provisions of the DMCA.  (*See* Docket No. 214 at 13-

4    15; Kelly Decl. ¶ 4.)  Thus, the injunction must prevent Psystar from trafficking in any device that

5    allows Psystar to circumvent technological protection measures in Mac OS X software.

6        Because Apple's requested injunction prohibits acts relating to Mac OS X, that injunction

7    would prohibit Psystar from infringing current and future versions of Mac OS X, from engaging in

8    contributory infringement of current and future versions of Mac OS X, and from trafficking in

9    circumvention devices that enable others to make unauthorized copies of current and future

10   versions of Mac OS X.  But Psystar's actions with respect to multiple versions of Mac OS X

11   justify, and indeed compel, a permanent injunction that explicitly applies to future versions of Mac

12   OS X.

13   **III.    APPLE IS ENTITLED TO STATUTORY DAMAGES**

14       Apple seeks statutory damages for Psystar's copyright infringement and its violations of

15   the DMCA.  The undisputed facts in this case establish that Apple is entitled to a statutory award

16   near the maximum amount allowed:  (1) Psystar's entire business is premised on free riding on

17   Apple's decades-long investments in research and development and marketing; (2) Psystar's

18   infringement is willful and systematic; (3) Psystar destroyed source code and lied under oath about

19   it; (4) Psystar continues to infringe and must be deterred from doing so; and (5) Psystar's unlawful

20   conduct has spawned other infringers.  Thus, in light of Psystar's deliberate and extensive pattern

21   of violating Apple's rights and the necessity of deterring similar conduct, Apple is entitled to a

22   substantial statutory damages award.

23       Under the Copyright Act, Apple may recover statutory damages for each of Psystar's

24   DMCA violations "in the sum of not less than $200 or more than $2,500 per act of circumvention,

25   device, product, component, offer, or performance of service, as the court considers just."

26   17 U.S.C. § 1203(c)(3)(A).  Apple may also elect to seek statutory damages for Psystar's

27   infringement of each of Apple's two infringed copyrights "in a sum of not less than $750 or more

28   than $30,000 as the court considers just."  17 U.S.C. § 504(c)(1).  Courts have wide discretion in

1   calculating statutory damages, "constrained only by the specified maxima and minima." *Harris v.*

2   *Emus Records Corp.*, 734 F.2d 1329, 1335 (9th Cir. 1984).  "The court is guided by 'what is just

3   in the particular case, considering the nature of the copyright, the circumstances of the

4   infringement and the like . . . ." *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1336 (9th

5   Cir. 1990).  Following these broad guidelines, courts have developed several factors to ensure a

6   statutory damages award is just:  (1) the expenses saved and the profits reaped [by the infringer];

7   (2) the revenues lost by the plaintiff; (3) the value of the copyright; (4) the deterrent effect on

8   others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6)

9   whether a defendant has cooperated in providing particular records from which to assess the value

10  of the infringing material produced; and (7) the potential for discouraging the defendant.

11  *Microsoft Corp. v. Nop*, 549 F. Supp. 2d 1235, 1237 (E.D. Cal. 2008) (*citing Tiffany (NJ) Inc. v.*

12  *Luban*, 282 F. Supp. 2d 123, 125 (S.D.N.Y. 2003)); *see also N.A.S. Import Corp. v. Chenson*

13  *Enter., Inc.*, 968 F.2d 250, 252 (2d Cir. 1992) ("In determining an award of statutory damages . . .

14  a court may consider 'the expenses saved and profits reaped by the defendants in connection with

15  the infringements, the revenues lost by the plaintiffs as a result of the defendant's conduct, and the

16  infringers' state of mind-whether willful, knowing, or merely innocent.'") (quoting 3 *Nimmer on*

17  *Copyright* § 14.04[B], at 14-41 (1991)).

18          The Ninth Circuit has determined that proof of actual damages is not necessary to obtain

19  statutory damages.  In *Peer International Corp.*, the defendant argued that a statutory damages

20  award of the maximum $50,000 per violation "should not be converted into a windfall where, as a

21  practical matter, the plaintiff has suffered only nominal damages."  909 F.2d at 1336-37.  In

22  rejecting this argument, the Ninth Circuit stated,

23                  [i]t is clear . . . that a plaintiff may recover statutory damages
                    'whether or not there is adequate evidence of the actual damages
24                  suffered by the plaintiff or of the profits reaped by defendant.'
                    *Harris*, 734 F.2d at 1335.  The Supreme Court has stated that 'even
25                  for uninjurious and unprofitable invasions of copyright the court may,
                    if it deems it just, impose a liability within [the] statutory limits to
26                  sanction and vindicate the statutory policy 'of discouraging
                    infringement.'
27
    *Id.* at 1337 (*citing F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 233 (1952)).
28

Eight years later, the Ninth Circuit affirmed that evidence of actual damages is not necessary to obtaining statutory damages.  In *Los Angeles News Service v. Reuters Television International Ltd*, the Ninth Circuit ruled that a plaintiff may recover statutory damages "whether or not there is adequate evidence of the actual damages suffered by plaintiff or of the profits reaped by defendant . . . ."  149 F.3d 987, 996 (9th Cir. 1998); *see also Chanel, Inc. v. Doan*, 2007 U.S. Dist. LEXIS 22691, at *13 (N.D. Cal. Mar. 13, 2007) (citing *Los Angeles News Serv.*, 149 F.3d at 996 ("Plaintiff may recover statutory damages without offering evidence of plaintiff's actual damages or the defendant's profits because of the dual 'compensatory and punitive purposes' of statutory damages.")); *Elecktra Entm't Group, Inc. v. Bryant*, 2004 U.S. Dist. LEXIS 26700, at *14 (C.D. Cal. Feb. 13, 2004) ("Deterrence of future infringement is an important factor in determining damages under the Copyright Act, and therefore an award of statutory damages need not equal the amount of a plaintiff's actual damages.").[6]

## A.     The Number Of Psystar's DMCA Violations And Copyright Infringements

Apple is entitled to recover statutory damages for each of Psystar's DMCA violations. Psystar violates the DMCA in the following ways:

- The first violation occurs when Psystar boots up each of its computers containing Psystar's circumvention technology to test it before shipping it to customers.

- The second violation is the shipment of a Psystar computer containing Psystar's circumvention technology.

- The third violation is the shipment of an order form with each Psystar computer that offers the customer a restore disk containing Psystar's circumvention technology.

- The fourth violation occurs when Psystar ships a restore disk to a customer that contains Psystar's circumvention technology.

Apple seeks statutory damages for only two of these four violations – the shipment of computers and the shipment of restore disks.  Undisputed evidence shows Psystar has sold 768

---

[6] Indeed, in two default judgment actions this Court did not consider plaintiff's lost profits at all when awarding double the minimum statutory damages for copyright infringement.  *Microsoft Corp. v. Ricketts*, 2007 U.S. Dist. LEXIS 40898, at *12-13 (N.D. Cal. May 24, 2007) (internal citations omitted) (entering default judgment for copyright and trademark infringement); *Microsoft Corp. v. Coppola*, 2007 U.S. Dist. LEXIS 40515, at *12-13 (N.D. Cal. May 24, 2007) (same). When awarding twice the minimum, this Court noted only that "plaintiff has presented no estimate of how much *defendant* profited from her infringing activity."  *Id.* at 13 (emphasis added).

townsend.

APPLE INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR PERMANENT INJUNCTION, STATUTORY DAMAGES AND REASONABLE ATTORNEYS' FEES AND COSTS, CASE NO. 08-3251 WHA

15

1    computers running Mac OS X.  (Lynde Decl. ¶ 42.)  Undisputed facts prove Psystar has shipped

2    262 restore disks to its customers.  (*Id*.)  Thus, Apple seeks statutory damages for 1,030 of

3    Psystar's DMCA violations.

4         Apple also seeks statutory damages for Psystar's infringement of Apple's Mac OS X and

5    Mac OS X Leopard version 10.5 copyrights.

6         **B.    Every Factor Supports A High Statutory Damages Award**

7         The evidence, including that which supports Apple's claim for irreparable harm,

8    overwhelmingly supports a high statutory damage award.  Psystar's entire business is premised on

9    infringing Apple's copyrights and modifying its software code to enable Mac OS X to run on non-

10   Apple computers.  Through August 10, 2009, Psystar's infringement has generated a gross profit

11   of $243,055.  (Lynde Decl. ¶ 11.)  Psystar has spent less than $2,000 on research and development

12   compared to Apple's several billion dollars spent over the last three decades.  (*Id*. ¶ 13.)  Psystar

13   uses Apple's trademarks in its advertising to draw in  Apple's customers.  (Chung Decl. Ex. 4;

14   Lynde Decl. ¶ 14; Scott Decl. ¶ 6.)  Thus, any statutory award must be sufficient to deter Psystar's

15   continued infringement and significant enough to discourage other companies who have been

16   emboldened by Psystar's infringement.

17        There is abundant evidence that Psystar's infringement has been willful, and its conduct

18   reflects a contempt for established law.  Psystar continued to infringe after Apple filed this

19   lawsuit, and made no attempt to modify its products to avoid infringement.  Rudy Pedraza,

20   Psystar's Chief Executive testified that he learned about Apple's copyrights and end user license

21   agreement shortly after he began selling computers and thought the agreement was "bullshit."

22   (Chung Decl. Ex. 2 at 77:2-20.)  Moreover, despite the pendency of this lawsuit, Mr. Pedraza

23   declared in his intention to continue circumventing Apple's technological protection measures in

24   future unreleased versions of Mac OS X.  (Chung Decl. Ex. 2 at 101:18-102:5; *see also id*. at Ex.

25   5.)  Psystar erased code on its computers after litigation began, making Apple's proof that much

26   more difficult and drawing a discovery sanction from the Court.  (Docket No. 96.)  Psystar then

27   went on to name its new circumvention software "Open Cojones," reflecting its brazen disregard

28   for Apple's rights.

1    In sum, Psystar built a business predicated on stealing Apple's intellectual property.  As a

2    result, Apple seeks $2,000 for each of the 1,030 DMCA violations and $30,000 for each of the

3    infringed copyrights, for a total statutory damages award of $2,120,000.

4    **IV.    AN AWARD OF REASONABLE ATTORNEYS' FEES AND COSTS IS
            APPROPRIATE**

5    The Court has discretion to award full costs and reasonable attorneys' fees to the prevailing

6    party for copyright infringement and DMCA violations.  *See* 17 U.S.C. §§ 505, 1203(b)(5);

7    *Reimerdes*, 111 F. Supp. 2d at 345 & n.277 ("The DMCA permits awards of costs and attorney's

8    fees to the prevailing party in the discretion of the Court").  There is a presumption in favor of

9    awarding costs and attorneys' fees to a prevailing party.  *See* Fed. R. Civ. P. 54(d)(1); *Berkla v.*

10   *Corel Corp.*, 302 F.3d 909, 921 (9th Cir. 2002) ("the rule [54(d)(1)] creates a presumption in favor

11   of awarding costs to a prevailing party"); *Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.*, 886

12   F.2d 1545, 1556 (9th Cir. 1989) ("Plaintiffs in copyright actions may be awarded attorney fees

13   simply by virtue of prevailing in the action; no other precondition need be met, although the fees

14   awarded must be reasonable"); *see also Eagle Servs. Corp. v. H20 Indus. Servs., Inc.*, 532 F.3d

15   620, 625 (7th Cir. 2008) ("The presumption in a copyright case is that the prevailing party though

16   if it is the plaintiff, only if his copyright had been registered) . . . receives an award of fees.")

17   (internal citations omitted); *Spencer Promotions Inc. v. 5th Quarter Enterprises Inc.*, 1996 U.S.

18   Dist. LEXIS 8686, at*13 (N.D. Cal. Feb. 21, 1996) ("Plaintiffs need not show any other

19   preconditions in order to obtain an award of reasonable attorney's fees").

20   In deciding whether to award attorneys' fees, courts consider a non-exclusive list of

21   factors:  "[1] the degree of success obtained; [2] frivolousness, [3] motivation, [4] objective

22   unreasonableness (both in the factual and in the legal components of the case), and [5] the need in

23   particular circumstances to advance considerations of compensation and deterrence."  *Historical*

24   *Res. v. Cabral*, 80 F.3d 377, 379 n.1 (9th Cir. 1996) (citing *Fogerty v. Fantasy, Inc.*, 510 U.S. 517,

25   534 n.19 (1994)); *Fantasy, Inc. v. Fogerty*, 94 F.3d 553, 559 (9th Cir. 1996).  Though exceptional

26   circumstances are not a prerequisite to an award of attorneys' fees, the willful nature of

27   defendants' infringement is an important factor favoring an award of fees.  *Historical Res.*, 80

28

APPLE INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR PERMANENT INJUNCTION, STATUTORY
DAMAGES AND REASONABLE ATTORNEYS' FEES AND COSTS, CASE NO. 08-3251 WHA

1  F.3d at 378-79; *see also Microsoft Corp. v. E&M Internet Bookstore, Inc.*, 2008 U.S. Dist. LEXIS

2  4381, at *8 (N.D. Cal. Jan. 22, 2008) (J. Alsup) ("The willful nature of defendants' infringement

3  and the importance of deterring the sale of counterfeit products weigh in favor of granting

4  attorney's fees").

5       All the factors cited above favor an award of attorneys' fees to Apple.  *First*, Apple's

6  success is complete and unquestionable.  On summary judgment, Apple proved Psystar infringed

7  Apple's Mac OS X by reproducing, distributing and creating derivative works, induced copyright

8  infringement, and violated the anti-circumvention and anti-trafficking provisions of the DMCA.

9       *Second*, Apple's claims clearly cannot be characterized as frivolous or objectively

10  unreasonable; they were successful.  Rather, Psystar's defenses were frivolous and unsustainable

11  given Psystar's pirating of Apple's Mac OS X and circumvention of its technological protection

12  measures.  *See Dunn & Fenley, LLC v. Allen*, No. 02-1750-JE, 2007 U.S. Dist. LEXIS 75292, at

13  *10 (D. Or. Oct. 9, 2007) (finding defenses unsustainable given "the overwhelming similarity in

14  the works in question" and awarding plaintiff its attorney's fees).  Psystar's defenses were

15  objectively unreasonable in both fact and law considering:  Psystar did not oppose Apple's

16  contributory copyright infringement claim, Psystar waived its Section 117 defense, Psystar's

17  Section 109 defense clearly does not apply to the unauthorized copies it made, and Psystar offered

18  no evidence in support of its claim of copyright misuse and, indeed, failed to provide evidence or

19  authorities to support most of its rhetoric.

20       *Third*, the next factor, Psystar's motivation, favors Apple's request for fees.  Psystar admits

21  it continues to create and sell new products that infringe Apple's copyrighted works (*e.g.*, new

22  computers with Mac OS X 10.6 (Snow Leopard) and Rebel EFI, which is the stand-alone version

23  of Psystar's software that allows circumvention).  (*See* Chung Decl. Ex. 3 at 23:2-5.)  This

24  evidence shows Psystar's ongoing, willful, infringement.

25       *Finally*, "considerations of compensation and deterrence" also favor awarding Apple its

26  attorneys' fees.  Apple won on summary judgment, vindicating the goals of the Copyright Act and

27  the DMCA to promote original creative works and deter future copyright infringements.  *See*

28  *Fogerty*, 510 U.S. at 524; *Mun Hwa Broadcasting Corp. v. Kim*, 2007 U.S. Dist. LEXIS 42787, at

1   *4 (M.D. Ga. Jun. 13, 2007) ("Although discretionary, courts have frequently awarded Plaintiffs

2   their full costs and attorney's fees in order to:  (1) deter future copyright infringement; (2) ensure

3   that all holders of copyrights which have been infringed will have equal access to the court to

4   protect their works; and (3) penalize the losing party and compensate the prevailing party")

5   (internal quotation marks omitted).  An award of attorneys' fees and costs to Apple here "serve[s]

6   the purpose of encouraging private enforcement and deterring infringements." *Frank Music*

7   *Corp.*, 886 F.2d at 1556.  The need for deterrence is particularly compelling in view of Psystar's

8   willful infringement of Apple's Mac OS X and Mac OS X Leopard copyrights and its continuing

9   infringement with new products.  Accordingly, an award of attorneys' fees and costs is

10  appropriate.

11  **V.    CONCLUSION**

12      Psystar's whole business is premised on stealing from Apple.  Psystar pirates Apple's

13  software, circumvents Apple's technological protection measures and illegally benefits from the

14  good will and reputation Apple has built.  Psystar's conduct, if permitted to continue, will both

15  tarnish Apple's reputation for excellence and lead to the proliferation of copycats who also will

16  free ride on Apple's investments, infringe Apple's intellectual property rights and cause further

17  irreparable injury.  Accordingly, Apple respectfully requests that the Court grant Apple's Motion

18  for Permanent Injunction.  Further, as the evidence of Psystar's willful infringement is both

19  undisputed and overwhelming, Apple requests a statutory damages award of $2,120,000 under the

20  Copyright Act and the DMCA and reasonable attorneys' fees and costs as the prevailing party.

21

22  DATED:  November 23, 2009          Respectfully submitted,

23                                     TOWNSEND AND TOWNSEND AND CREW LLP

24

25                                     By: */s/ James G. Gilliland, Jr.*
                                           JAMES G. GILLILAND, JR.

26                                     Attorneys for Plaintiff and Counterdefendant
                                       APPLE INC.

27  62293354

28

townsend.