Apple Inc. v. Psystar Corporation Doc. 467

Daniel Rapaport (Bar No. 67217)
Charles M. Miller (Bar No. 148746)
**WENDEL, ROSEN, BLACK & DEAN, LLP**
1111 Broadway, 24th Floor
Oakland, CA 94607-4036
Telephone: (510) 834-6600
Fax: (510) 834-1928

Attorneys for Plaintiffs
BALCH ENTERPRISES, INC. and BALCH, LLC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BALCH ENTERPRISES, INC. and BALCH, LLC.,<br><br>Plaintiffs,<br><br>vs.<br><br>INSURANCE COMPANY STATE OF PENNSYLVANIA, a foreign corporation, and DOES 1 through 10,<br><br>Defendants. | Case No. C-03-01783 CRB ARB<br><br>**PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY ADJUDICATION** |



Dockets.Justia.com

## TABLE OF CONTENTS

Page

I. INTRODUCTION ..... 1

II. ARGUMENT ..... 2

A. Balch Is An Insured Under The Operative ICSOP Policy ..... 2

B. The Scope Of Coverage Provided To Balch Under The ICSOP Policy Cannot Be Limited By The Terms Of The Lease Agreement Because ..... 3

1. There Is No Evidence That The Parties Intended To Limit Balch's Coverage Under the ICSOP Policy ..... 3

2. ICSOP Could Have Limited The Scope Of Balch's Coverage To the Terms Of The Lease Agreement But Chose Not To Do So ..... 6

C. The Scope Of Coverage Provided To Balch Under The ICSOP Policy Cannot Be Limited By The Terms Of The Lease Agreement Because The Additional Insured Endorsement Is Not Ambiguous ..... 7

D. The ICSOP Policy Cannot Be Limited By The Terms Of the Underlying Lease Agreement Because The Policy And Lease Agreement Are Two Completely Different And Integrated Contracts ..... 8

E. The Scope Of Coverage Provided To Balch Under The ICSOP Policy Cannot Be Limited By The Terms Of The Lease Agreement Because There Is No Clear And Plain Exclusion In The ICSOP Policy Limiting Balch's Coverage To The Terms Of The Lease Agreement ..... 11

F. The Scope Of Coverage Provided To Balch Under The ICSOP Policy Cannot Be Limited By The Terms Of The Lease Agreement Even If The Lease Agreement Is Admissible Extrinsic Evidence As To The Meaning Of The Additional Insured Endorsement ..... 12

G. ICSOP Has Waived Any Argument That The Scope Of Coverage Provided To Balch Under The ICSOP Policy Is Limited By The Terms Of The Lease Agreement ..... 14

III. CONCLUSION ..... 15

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Acceptance Ins. Co. v. Syufy Enterprises, et al.*
(1999) 69 Cal.App.4th 321 .......... 6

*ACL Technologies, Inc. v. Northbrook Prop. & Cas. Ins. Co.*
(1993) 17 Cal.App.4th 1773 .......... 7

*AIU Ins. Co. v. Sup. Ct.*
(1990) 51 Cal.3d 807 .......... 7

*Bank of the West v. Sup. Ct.*
(1992) 2 Cal.4th 1254 .......... 7

*Celotex Corp. v. Catrett*
(1986) 477 US 317 .......... 5

*City and Cty. Of San Francisco v. City Investment Corp*
(1971) 15 Cal.App.3d 1031 .......... 10

*Fireman's Fund v. Atlantic Richfield*
(2001) 94 Cal.App.4th 852 .......... 7

*Garvey v. St. Farm & Cas. Co.*
(1989) 48 Cal.3d 395 .......... 8

*Hartford Acc. And Indem. Co. v. U.S. Natural Resources, Inc.*
(D. OR. 1995) 897 F.Supp.466 .......... 5

*Masterson v. Sine*
(1968) 68 Cal.2d 222 .......... 10

*McKinnon, et al. v. Truck Ins. Exch.*
(2003) 31 Cal.4th 635 .......... 11, 14

*Mobil Oil Corp. v. Maryland Cas. Co.*
(Ill. App. 1997) 681 N.E.2d 552 .......... 4, 6, 12, 13

*Myers Bldg. Indus. Ltd. v. Interface Technology, Inc.*
(1993) 13 Cal.App.4th 949 .......... 3

*Shell Oil Company v. Nat'l. Union Fire Ins. Co. of Pittsburg, PA.*
(1996) 44 Cal.App.4th 1633 .......... 6, 12

*Signal Companies, Inc. v. Harbor Ins. Co.*
(1980) 27 Cal.3d 359 .......... 9

## TABLE OF CONTENTS
(continued)

**Page**

**STATUTES**


Cal. Civ. Code §1636 ........ 3
§1638-1639 ........ 4
§1642 ........ 9
§1856 ........ 10
§1856 (b) ........ 10


**OTHER AUTHORITIES**


"The Additional Insured Book," by Malecki & Ligeros (4th ed. 2000) ........ 4

33 Tort & Ins. L.J. 945 ........ 6


011257.0038\667752.1

Wendel, Rosen, Black & Dean, LLP
1111 Broadway, 24th Floor
Oakland, CA 94607-4036

## I. INTRODUCTION

At the January 9, 2004 hearing on the parties' cross motions for summary judgment, Insurance Company State of Pennsylvania ("ICSOP") raised, for the first time, two new arguments in opposition to Plaintiffs' Motion for Summary Adjudication.[1] These were: (1) that Balch Enterprises, Inc. and Balch, LLC (collectively referred to hereinafter as "Balch") are not insureds under the general liability policy issued by ICSOP to 360networks ("360"), and (2) that even if Balch is insured under the operative ICSOP policy, that Balch is not insured under the professional liability coverage in that policy because the lease agreement between Balch and 360 did not require 360 to provide Balch with such coverage.[2]

Neither of these arguments has merit. As to the former, Balch is clearly an insured under the operative ICSOP policy. In arguing that Balch is not an insured, ICSOP has mistakenly argued that Balch is not an insured under an ICSOP policy which is not at issue in this motion. Therefore, ICSOP is simply wrong on this point.

With regard to the latter issue, there are several reasons why ICSOP's argument is contrary to both the facts and law and should be rejected. First, there is no indication in either the underlying lease agreement between Balch and 360 that the parties intended to limit the ICSOP coverage so that Balch would not be insured under the professional liability coverage. Indeed, the evidence is to the contrary. Second, extrinsic evidence cannot be offered to interpret the ICSOP policy because that policy is not ambiguous. Third, under California law, the lease agreement and ICSOP policy cannot be read together as one contract. Fourth, to permit ICSOP to limit the scope of coverage provided to Balch would violate the long held California rule that exclusions to

---

[1] Attached hereto as Exhibit A is a copy of the Reporter's Transcript of Proceedings for January 9, 2004 (hereinafter referred to as the "Transcript).

[2] In addition, ICSOP argued that Balch is not covered under the DPLC because it was not a party "to the right 360 contract." (Transcript, p. 8, ll. 7-9) This appears to refer to the requirement in the DPLC that, "professional services be rendered for others under contract by the **Insured** or any entity for whom the **Insured** is legally liable." (emphasis in original) This issue has already been addressed in Balch's Memorandum of Points and Authorities in Support of Motion for Summary Adjudication ("Balch's Memorandum"), pp. 15-16. In addition, ICSOP argued that there is no coverage because "there's no claim they did something wrong that affected the building, or damaged it, or didn't design it properly, or supervise the construction." (Transcript, p. 8, ll.10-15) As previously discussed, the DPLC does not limit coverage to these types of activities but is much more broadly drawn. (See Balch's Memorandum, pp. 11-15)

coverage must be clearly and plainly set forth. Here, there is no exclusion in any of the policy documents that limits Balch's coverage in the manner proposed by ICSOP.

Fifth, even if the ICSOP policy is limited by the terms of the underlying lease agreement, Balch is still covered under the professional liability coverage. This is because the underlying lease agreement contains a broad indemnity agreement which requires 360 to provide Balch with equally as broad additional insurance coverage, or in other words, with professional liability coverage. Further, it is within Balch's reasonable expectations that the 360 policy would provide Balch with professional liability coverage. Sixth, ICSOP has waived any argument that Balch is not an insured under the operative ICSOP policy for professional liability.

For these several compelling reasons ICSOP's new arguments must be rejected and Balch's motion granted.

## II. ARGUMENT

### A. Balch Is An Insured Under The Operative ICSOP Policy.

At the January 9, 2004 hearing, ICSOP's counsel correctly pointed out that under the certificate of insurance and the additional insured endorsement Balch was named as an additional insured on ICSOP policy GL 933-13-20 RA (hereinafter referred to as the "ICSOP Policy").[3] Counsel then pointed out that one of the two ICSOP policies attached to the Joint Statement was not the ICSOP Policy, but rather another policy issued by ISCOP with policy number GL 267 69 87 RA.[4] Counsel concluded that Balch was not an additional insured under policy GL 267 69 87 because the additional insured endorsement did not refer to this policy.

What ICSOP's Counsel missed was that Balch has never claimed that it is insured under policy GL 267 69 87 RA.[5] Therefore, it is irrelevant whether or not Balch is an additional insured under that policy.

---

[3] Transcript, p. 6, ll.23-24 & p. 7, ll.1-8 and see the Joint Statement of Stipulated Undisputed Facts in Support of the Parties' Cross-Motions For Summary Judgment or, in the Alternative, Summary Adjudication (hereinafter the "Joint Statement"), Exhibit A.

[4] Transcript, p. 7, ll.9-15, and see Joint Statement, Exhibit E.

[5] See Balch's Memorandum, p. 6, fn. 4, wherein Balch pointed out that, "ICSOP also issued liability policy Gl 267-69-87RA to 360 for the period of 11/30/99 to 11/30/00. (SUF, ¶7, Ex. E.) This policy is not at issue in this motion."



Wendel, Rosen, Black & Dean, LLP
1111 Broadway, 24th Floor
Oakland, CA 94607-4036

Balch has contended that it is an insured under the ICSOP Policy [GL 933-13-20 RA], which is attached as Exhibit F to the Joint Statement.[6] It is beyond argument that the additional insured endorsement and certificate of insurance named Balch as an additional insured under the ICSOP Policy. Further, the ICSOP Policy contains the Design Professional Liability Coverage ("DPLC"), pursuant to which Balch seeks coverage in this action. Clearly, Balch is an additional insured under the ICSOP Policy.

### B. The Scope Of Coverage Provided To Balch Under The ICSOP Policy Cannot Be Limited By The Terms Of The Lease Agreement Because

#### 1. There Is No Evidence That The Parties Intended To Limit Balch's Coverage Under the ICSOP Policy.

At the January 9, 2004 hearing, ICSOP argued for the first time that Balch was not covered under the DPLC because the lease between 360 and Balch only required that 360 provide Balch with coverage for bodily injury, property damage and personal injury coverage, and not professional liability coverage.[7] In other words, ICSOP argues that the lease limits the scope of the additional insurance coverage provided to Balch under ICSOP Policy.[8] Such a result would be contrary to California's well-settled law concerning contract interpretation.

Under California law, insurance policies are construed under the same rules that govern the interpretation of other contracts. (*Myers Bldg. Indus. Ltd. v. Interface Technology, Inc.* (1993) 13 Cal.App.4th 949, 969.) The policy must be interpreted to give effect to the mutual intention of the parties. (Cal. Civ. Code §1636.)[9] Such intention is to be ascertained from the "clear and

---

[6] At oral argument, ICSOP's counsel addressed only the policy at Exhibit E in the Joint Statement, and never addressed the correct policy which is located at Exhibit F.

[7] Transcript, p. 6, ll.16-22.

[8] The pertinent portion of the Liability Insurance Section in the Lease provides: "Lessee [360] shall obtain and keep in force a Commercial General Liability Policy of Insurance protecting Lessee and Lessor [Balch] against Claims for bodily injury, personal injury and property damage based upon or arising out of the ownership, use, occupancy or maintenance of the Premises and all areas appurtenant thereto. Such insurance shall be on an occurrence basis providing single limit coverage in an amount not less than $5,000,000.00 per occurrence with an "Additional Insured-Managers or Lessors of Premises Endorsement…"

[9] Civil Code Section 1636 provides: "A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful."

Wendel, Rosen, Black & Dean, LLP
1111 Broadway, 24th Floor
Oakland, CA 94607-4036

explicit" language of the contract. (Cal. Civ. Code §1638-1639.) [10]

The terms of the contract between ICSOP and Balch do not contain any clear and explicit language which evidences the parties' intention to limit Balch's coverage to bodily injury, property damage and personal injury. The certificate of insurance provides:

> Certificate Holder, its officers, directors, agents or employees have been added as an additional insured as their interest may appear with regard to the general liability policy with respects to the location situated at 900 Rock Ave., San Jose, CA, which is comprised of 32,514 Sq. Ft., Project # 94125.[11]

Likewise the additional insured endorsement to the ICSOP Policy broadly provides: "**Who is An Insured (Section II)** is amended to include <u>as an insured</u> the person or organization shown in the Schedule, but only with respect to liability arising out of your ongoing operations performed for the insured." (Bold emphasis in original; underlined emphasis added.)

In neither of these documents is there any language which even suggests that the parties intended to limit the scope of Balch's coverage to the terms of the lease. Indeed, just the opposite is the case. The additional insured endorsement makes Balch an insured under the ICSOP Policy, and therefore entitled to the full benefits of the policy[12]. For example, the insuring agreement in the ICSOP policy provides that, "[w]e [ICSOP] will pay those sums that the <u>insured</u> becomes legally obligate to pay as damages…" (Emphasis added.) [13]. Similarly, the DPLC coverage provides that, "[t]he Company [ICSOP] will pay on behalf of the **Insured** all sums in excess of the deductible that the **Insured** shall become legally obligated to pay as damages…" (Emphasis

---

[10] Civil Code Section 1638 provides: "The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." Civil Code Section 1639 provides: "When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible, subject, however, to the other provisions of this Title."

[11] Joint Statement, Ex. A. There is also no evidence that phrase in the certificate, "as their interest may appear," establishes any basis upon which to limit Balch's coverage. (See *Mobil Oil Corp. v. Maryland Cas. Co.* (Ill. App. 1997) 681 N.E.2d 552, 559) Similarly, the phrase does not preclude Balch from obtaining more coverage from ICSOP than may be required in the lease agreement. *Id.*)

[12] This conclusion is confirmed in the leading treatise on additional insured issues, "The Additional Insured Book," by Malecki & Ligeros (4th ed. 2000) (hereinafter "Malecki & Ligeros"), in which the authors write: "When a party is included as an additional insured on the CGL [Commercial General Liability] policy of another, all of the provisions of that policy that apply to insureds also apply to additional insureds." (*Id.* at p. 81.)

[13] Joint Statement, Ex. F, p. 1 of 12 (Bates BBGS00109)

Wendel, Rosen, Black & Dean, LLP
1111 Broadway, 24th Floor
Oakland, CA 94607-4036

in original.)[14] Once Balch was included as an insured under the ICSOP Policy, Balch was entitled to all the coverages of that policy, unless otherwise limited, and there is no such limitation.

In *Hartford Acc. And Indem. Co. v. U.S. Natural Resources, Inc.* (D. OR. 1995) 897 F.Supp.466, the court was asked to limit the scope of an additional insured endorsement to the terms of the underlying contract and refused to do so. There, the insured argued that the insurance policy was limited by the terms of an underlying construction contract. In rejecting this position the Court observed:

> Nothing in the language of the insurance clause or any other provision of the USNR/Temple-Eastex contract ties the insurance requirements to the indemnity clause, nor did the parties discuss such a limitation when the USNR/Temple-Eastex contract was negotiated. The Rollins broker who handled the USNR account, Sam Gillett, did not see a copy of the USNR/Temple-Eastex contract and was never told to limit the certificate of insurance in any respect not stated on the certificate. I conclude that the CGL policy is unambiguous, and that it provides coverage to Temple-Eastex as an "additional person insured" to the same extent that it provides coverage to any other "insured."

(*Id.* at p. 471.)

The same is the case here. There is no evidence that any of the parties discussed limiting the scope of Balch's coverage. Likewise, there is nothing in the ICSOP Policy or the lease agreement which ties the two agreements together. Finally, there is no evidence that ICSOP was even aware of the terms of the lease agreement when it issued the additional insured endorsement to Balch. ICSOP has simply failed to meet its burden of proving that Balch's additional insured coverage is limited by the terms of the lease agreement. (See *Celotex Corp. v. Catrett* (1986) 477 US 317, 323-324.) Absent any evidence, the ICSOP Policy cannot be limited by the terms of the lease. As one commentator has noted:

> The amount of coverage available to an additional insured must be determined by the policy language and not be reference to the incidental contract. Absent limiting language in the policy at issue, an additional insured enjoys the same rights and protections available to the named insured. (Citations omitted.) An indemnitor's promise to procure minimum coverage is just that-a

[14] *Id.* at Bates BBGS00171.

Wendel, Rosen, Black & Dean, LLP
1111 Broadway, 24th Floor
Oakland, CA 94607-4036

> guarantee of minimum coverage. Such a promise cannot limit the amount of coverage available to the indemnitee. The limits of the additional insured's coverage are necessarily determined by the policy itself. (Citations omitted.)

(33 Tort & Ins. L.J. 945, 957.)[15]

Attached hereto as Exhibit B is the Declaration of Pete Ligeros in Support of Plaintiffs' Supplemental Memorandum of Points and Authorities in Support of Motion for Summary Adjudication ("Ligeros Declaration"). Mr. Ligeros is a nationally recognized expert on additional insured issues, and one of the authors of the "Additional Insured Book." He has examined many of the documents in this case, including the ICSOP policy, the additional insured endorsement, the certificate of insurance and the lease agreement. It is his opinion, based on his extensive experience, that the standard additional insured endorsement, such as the one here, "is not viewed by the insurance and risk management industries as limiting coverage to the extent required by the underlying contract." (Ligeros Declaration, p. 5, ll. 26-27.)

**2. ICSOP Could Have Limited The Scope Of Balch's Coverage To the Terms Of The Lease Agreement But Chose Not To Do So.**

The insurance industry has long used policy language that limits the coverage provided to an additional insured to the terms of the underlying contract. For example, in *Shell Oil Company v. Nat'l. Union Fire Ins. Co. of Pittsburg, PA.* (1996) 44 Cal.App.4th 1633, the court addressed an additional insured provision which limited coverage to the additional insured "to the extent required by said contract." (*Id.* at p. 1638, and see Ligeros Declaration, p. 6, ll.5-11.) If ICSOP wanted to limit Balch's coverage to the terms of the lease agreement it could have done so. (See *Acceptance Ins. Co. v. Syufy Enterprises, et al.* (1999) 69 Cal.App.4th 321, 330 (insurers are free to limit scope of additional insured endorsements), and *Mobil Oil v. Maryland* 681 N.E.2d at 753 (insurer is free to limit scope of additional insured coverage to terms of underlying contract).) ICSOP's failure to do so evidences an intent to not limit Balch's coverage. (See *Fireman's Fund*

---

[15] Likewise, Malecki and Ligeros conclude that, "the word of the [additional insured] endorsement and not that of the indemnity clause governs the coverage provided to an additional insured." (Malecki & Ligeros, p. 70)

*v. Atlantic Richfield* (2001) 94 Cal.App.4th 852 (insurance company's failure to use available language to exclude certain types of liability gives rise to the inference that the parties intended not to so limit coverage).)

**C. The Scope Of Coverage Provided To Balch Under The ICSOP Policy Cannot Be Limited By The Terms Of The Lease Agreement Because The Additional Insured Endorsement Is Not Ambiguous.**

ICSOP proposes to interpret its own policy by reference to extrinsic evidence—the lease agreement. Such an interpretation is contrary to California law because extrinsic evidence cannot be offered to explain the terms of an insurance contract unless the contract is ambiguous. (*ACL Technologies, Inc. v. Northbrook Prop. & Cas. Ins. Co.* (1993) 17 Cal.App.4th 1773.) In order to determine whether the policy is ambiguous the court must engage in a two step analysis. First, the Court must determine objectively what the policy was intended to cover by reference to the terms of the contract as interpreted in the "ordinary and popular sense." (*AIU Ins. Co. v. Sup. Ct.* (1990) 51 Cal.3d 807, 821-822.) If an ambiguity exits after the first step, then the court is to interpret the contract in the sense the promisor (the insurer) believed the promissee (the insured) understood the contract. (*Bank of the West v. Sup. Ct.* (1992) 2 Cal.4th 1254.*)* Only if this second step does resolve any ambiguity issue can the court then interpret the contract as ambiguous and consider extrinsic evidence. (*AIU v. Sup. Ct.* 51 Cal.3d at 822.)

Following the California Supreme Court's prescription, it is clear that the additional insured endorsement here is not ambiguous. There terms of the endorsement are simple: "**Who is An Insured (Section II)** is amended to include <u>as an insured</u> the person or organization shown in the Schedule. . ." (Bold emphasis in original; underlined emphasis added.) The endorsement is obviously intended to modify the ICSOP Policy. The ICSOP Policy provides commercial general liability coverage. In addition, attached to the ICSOP Policy is a list of forms which are applicable to the commercial general liability coverage.[16] This list of forms or endorsements includes the DPLC.[17] The DPLC endorsement clearly states that, "the following coverage is

---

[16] Joint Statement, Ex. F, Bates BBGS00104 (ICSOP Policy declarations page)

[17] See Joint Statement, Ex. F, Bates BBGS00106 (Endorsement MS #0022/Design Professional Liability Coverage).

Wendel, Rosen, Black & Dean, LLP
1111 Broadway, 24th Floor
Oakland, CA 94607-4036

added to this policy."[18]

There is no ambiguity here. The additional insured endorsement was clearly intended to make Balch an insured under the ICSOP Policy which in turned included the DPLC. There is nothing in these documents that even suggests that the coverage is to be other than what is stated. In other words, there is only one reasonable interpretation of the policy: Balch is covered under the DPLC.

This conclusion comports with the ordinary and popular sense of the terms used in the policy. There is nothing in these terms that even suggests that Balch's coverage is limited by the terms of the lease. Neither the endorsement or the ICSOP Policy contain any language referencing the lease, providing that Balch's coverage is limited to the terms of the contract between Balch and 360, or that Balch is not covered under the DPLC.

This conclusion is also consistent with Balch's reasonable expectations. (*Id.* citing to *Garvey v. St. Farm & Cas. Co.* (1989) 48 Cal.3d 395, 406 (coverage clauses are interpreted broadly to protect the objectively reasonable expectations of the insured).)[19] Certainly, Balch never had any basis to conclude that its coverage was limited by the terms of the lease. There is nothing in any of the insurance documents which would have put Balch on notice of such a limitation. Further, it would be reasonable for Balch to conclude that the ICSOP Policy provided coverage for Balch's activities as a construction manager. Once 360 took over the Building pursuant to the lease, Balch's activities were almost exclusively limited to work as a construction manager. As a result, any liability Balch may incur would most likely arise from its activity as a construction manager.

### D. The ICSOP Policy Cannot Be Limited By The Terms Of the Underlying Lease Agreement Because The Policy And Lease Agreement Are Two Completely Different And Integrated Contracts.

Using the lease to interpret the ICSOP Policy runs counter to another settled rule of law: Two contracts cannot be taken together as one unless they relate to the same matters, are

---

[18] Joint Statement, Ex. F, Bates BBGS00171.

[19] Mr. Ligeros points out that, "insureds enjoying additional insured status, do not anticipate that insurers will attempt to limit such coverage to the extent required in the underlying contract." (Ligeros Declaration, p. 5, ll. 8-10)

Wendel, Rosen, Black & Dean, LLP
1111 Broadway, 24th Floor
Oakland, CA 94607-4036

"between the same parties, and made as parts of substantially the one transaction." (Civ. Code §1642.) That is not the case here.

The application of this rule is aptly demonstrated in the California Appellate Court decision in *Signal Companies, Inc. v. Harbor Ins. Co.* (1980) 27 Cal.3d 359. In *Signal*, Pacific, the primary insurer, sought contribution for defense costs from the excess insurer, Harbor, for the defense of a civil action arising out of the failure of a dam. Harbor contended that it had no duty to contribute to the defense costs because as an excess insurer it was only required to pay defense costs if the "claim was settled for a sum in excess of the primary limits provided that Harbor had agreed to a "continuation of the proceedings."(*Id. at 892.)* That was not the case here because, as Harbor argued, once the case settled with Harbor's contribution there was no continuation of the proceedings. Pacific argued, in part, that the primary and excess policies should be read together as one contract, thereby imposing upon Harbor an obligation to contribute to the defense even before the case was settled. The Appellate Court rejected this argument.

> Pacific's argument ignores a basic prerequisite to unified interpretation that the parties to the contracts must be the same. This, of course, is untrue in the matter before us. Furthermore, nothing in the Pacific contract made it contingent upon, or required the existence of, excess coverage and nothing in the Harbor contract made it dependent upon the existence of the specific contract between Pacific and Signal, although a primary policy as required. The contracts were separately negotiated with the insured with different dates of inception and termination. We conclude that the two documents are separate contracts and must be independently interpreted.

(*Id.* at p. 896.)[20]

The same is the case here. The ICSOP Policy and the lease are between different parties. The periods of the two agreements are also different. The ICSOP Policy provides insurance coverage for the period of November 30, 2000 to November 30, 2001. In contrast, the lease agreement, which was entered into on June 30, 2000, commenced on October 1, 2000 with a termination date of September 30, 2015.[21] The two agreements do not relate to the same matters.

---

[20] The decision in *Signal* has been cited favorably by the Ninth Circuit. (See *Oracle Corp. v. Falotti* (9th Cir. 2003) 319 F.3d 1106, 1112)

[21] Joint Statement, Ex. B, page 1 or 12.

Wendel, Rosen, Black & Dean, LLP
1111 Broadway, 24th Floor
Oakland, CA 94607-4036

The lease agreement relates to only the lease of the Building; whereas, the ICSOP Policy provides broad coverage to both 360 and Balch for matters which extend far beyond the mere leasing the Building. Accordingly, ICSOP's proposal that the two agreements should be read together must be rejected.

Reading the two agreements together would also run counter to the rule concerning integrated contracts. Under California law, "[t]erms set forth in a writing intended by the parties as final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous agreement." (Civ. Code §1856.) Similarly, the writing cannot be supplemented by evidence of consistent additional terms where the agreement is a complete and conclusive statement of the terms of the agreement. (Civ Code §1856 (b).)[22] Whether a contract is an integration is determined by looking at whether the parties intended the writing to be an exclusive embodiment of their agreement. (*Masterson v. Sine* (1968) 68 Cal.2d 222.) An integrated agreement is one in which the parties have expressed an intent to adopt as the final and complete expression of their intent. (*City and Cty. Of San Francisco v. City Investment Corp* (1971) 15 Cal.App.3d 1031.)

Both the lease agreement and the ICSOP Policy contain integration agreements.[23] The parties to both agreements have evidenced their intent that those agreements are the final embodiment of their terms. As a result these agreements cannot be contradicted or supplemented by additional terms from any prior agreement. The ICSOP Policy cannot be interpreted by reference to the lease agreement.

---

[22] "The terms set forth in a writing described in subdivision (a) may be explained or supplemented by evidence of consistent additional terms unless the writing is intended also as a complete and exclusive statement of the terms of the agreement."

[23] The lease agreement provides: "The lease contains all agreements between the Parties with respect to any matter mentioned herein, and no other prior or contemporaneous agreement or understanding shall be effective." (Joint Statement, Ex. B, pg. 9 of 12). Similarly, the ICSOP Policy provides that, "[t]his policy contains all the agreements between you and us concerning the insurance afforded….This policy's terms can be amended or waived only be endorsement issued by us and made a part of this policy." (Joint Statement, Ex. F, Bates BBGS00182)

Wendel, Rosen, Black & Dean, LLP
1111 Broadway, 24th Floor
Oakland, CA 94607-4036

### E. The Scope Of Coverage Provided To Balch Under The ICSOP Policy Cannot Be Limited By The Terms Of The Lease Agreement Because There Is No Clear And Plain Exclusion In The ICSOP Policy Limiting Balch's Coverage To The Terms Of The Lease Agreement.

ICSOP seeks to exclude DPLC coverage as to Balch. This interpretation runs contrary to a basic rule of insurance contract interpretation: exclusions are only to be applied if they are conspicuous, plain and clear. Here, there is no exclusion in the additional insured endorsement or the ICSOP Policy which restricts Balch's coverage. Absent such an exclusion, ICSOP cannot manufacture one now.[24]

The California Supreme Court has recently restated this rule:

> [I]nsurance coverage is "interpreted broadly so as to afford the greatest possible protection to the insured, [whereas] …exclusionary clauses are interpreted narrowly against the insurer." (Citation omitted.) "An insurer cannot escape its basic duty to insure by means of an exclusionary clause that is unclear. As we have declared time and again, 'any exception to the performance of the basic underlying obligation must be so stated as clearly to apprise the insured of its effect.' [Citation] Thus, 'the burden rests upon the insurer to phrase exceptions and exclusions in clear and unmistakable language." [Citation] The exclusion clause 'must be *conspicuous, plain and clear*.' "(citation omitted). The rule applies with particular force when the coverage portion of the insurance policy would lead an insured to reasonably expect coverage for the claim purportedly excluded. (Citation omitted.) The burden is…on the insurer to establish that the claim is specifically excluded. (Citation omitted.) (Emphasis in original.)

(*McKinnon, et al. v. Truck Ins. Exch.* (2003) 31 Cal.4th 635, 648.) (Emphasis in original.)

There is no exclusion in the additional insured endorsement, the certificate of insurance,

---

[24] Although ICSOP has never so stated, possibly its intent is to reform the ICSOP Policy to include such an exclusion. That attempt too must be rejected. An insurance policy may only be reformed "where, by reason of *fraud, inequitable conduct or mutual mistake*, the policy as written does not express the actual and real agreement of the parties." (*American Sur. Co. v. Heise* (1955) 136 Cal.App.2d 689, 695-696 and Civ. Code §§3399 & 3401)(emphasis in original) Because a written contract is presumed to express the intention of the parties, the burden is on the party seeking reformation to overcome such a presumption by "*clear and convincing evidence*." (*Taft v. Atlas Assur. Co., Ltd.* (1943) 58 Cal.App.2d 696, 702)(emphasis in original) ICSOP has failed to offer any evidence, let alone clear and convincing evidence, that there was fraud, inequitable conduct, or mutual mistake between the parties as to the terms of the ICSOP Policy. Although Balch believes there is no such evidence, should ICSOP seek to offer such evidence in its supplemental brief, Balch reserves the right to file an additional brief on the issue.


Wendel, Rosen, Black & Dean, LLP
1111 Broadway, 24th Floor
Oakland, CA 94607-4036

or the ICSOP Policy which limits Balch's coverage to bodily injury, property damage, and personal injury coverage.  Absent such an exclusion ICSOP cannot now contend that the ICSOP Policy is so limited.

**F. The Scope Of Coverage Provided To Balch Under The ICSOP Policy Cannot Be Limited By The Terms Of The Lease Agreement Even If The Lease Agreement Is Admissible Extrinsic Evidence As To The Meaning Of The Additional Insured Endorsement.**

Even where Courts have considered the provisions in the underlying contract when interpreting an additional insured endorsement, those courts have rejected the notion, offered by ICSOP here, that the terms of the contract should govern the insurance policy.

In *Shell Oil Company v. Nat'l. Union Fire Ins. Co. of Pittsburgh PA* (1996) 44 Cal.App.4th 1633, the Appellate Court was asked to determine whether a contractor's policy covering Shell as an additional insured excluded coverage for Shell's own negligence because the underlying contract between the contractor and Shell provided that Shell would not be indemnified for its own negligence.  In considering this question, the Court looked at the underlying contract as well as the terms of the policy. The Court then concluded that the terms of the indemnity agreement in the underlying contract did not limit the scope of coverage provided to the additional insured under the contractor's policy.

> Moreover, insofar as Shell was to be a direct beneficiary of the contract's insurance requirements, restricting the CGL to indemnifiable claims, and thus excluding from it those involving Shell's sole negligence, would have left Shell unprotected for those claims for which it most needed insurance. (Citation omitted.)

(*Id.* at p. 1642.)

As discussed *supra*, the same is the case here.  Once the lease commenced and Howard S. Wright begun the improvements to the Building, Balch's role was relegated to that of a construction manager.  It is exactly this role that is covered under the DPLC.  To exclude DPLC coverage would leave Balch unprotected for the claims for which it most needed insurance.

Similarly, in *Mobil Oil Corp. v. Maryland Cas. Co.* (Ill. App. 1997) 681 N.E.2d 552, the court refused to limit the scope of the additional insurance coverage to the terms of the underlying contract.  Mobil entered into a contract with B.M.W. Constructors, Inc. ("BMW") for the repair

of Mobil's facilities. (*Id.* at p. 555.) Pursuant to the contract BMW was required to name Mobil as an additional insured on its general liability policy with Maryland Casualty Company ("Maryland") with limits "of $250,000 in coverage for each occurrence, and a minimum of $500,000 in aggregate coverage." (*Id.)* Mobil was named an additional insured on the Maryland policy, but that policy had limits of one million dollars for each occurrence with excess liability up to five million dollars. (*Id.*)

Following an accident at the construction site to two BMW employees, the employees brought an action against Mobil. Mobil tendered its defense to Maryland, which agreed to defend, but later took the position that the Maryland policy only provided Mobil with limits of $250,000 and $500,000 as provided in the construction contract. Mobil took the position that the policy limits were as stated in the policy and not as stated in the construction contract. The court agreed with Mobil.

The court held that the construction contract did not limit BMW from providing more limits of insurance than required.

> Moreover, language found in the certificate of coverage did not establish the limits of Mobil's rights under the policies (citations omitted), but merely stated the terms of the policy and the policy limits applicable to the insured. The policies themselves provided up to $6 million in coverage, and contained no language limiting coverage for additional insureds. If Maryland truly intended to limit coverage, it readily could have done so by adding its own restrictive language to the insurance policies. (Citation omitted.)

(*Id.* at p. 753.)

The same conclusion applies here. There is nothing in the either the additional insured endorsement, the certificate of insurance or the ICSOP Policy which limits coverage to Balch to bodily injury, property damage, or personal injury coverage. Further, there is nothing in the lease agreement which prohibits 360 and ICSOP from providing additional coverage, such as the DPLC, to Balch. Finally, as discussed *supra*, if ICSOP wanted to limit coverage under the additional insured endorsement to the terms of the lease it could have easily done so. Here, ICSOP chose not to limit the coverage.

If the extent of Balch's additional insured coverage is to be interpreted pursuant to the

Wendel, Rosen, Black & Dean, LLP
1111 Broadway, 24th Floor
Oakland, CA 94607-4036

terms of the lease agreement, then in addition to the lease's Insurance Section, other portions of the lease should also be considered along with the history and purpose of additional insured endorsements. (See *McKinnon v. Truck* 31 Cal.4th 635 at 652 (considering history of pollution exclusion in the interpretation of the exclusion).) As Mr. Ligeros points out, the indemnity provision in the lease is broadly drawn, is not limited to indemnity for just property damage, bodily injury and personal injury, and would be viewed as encompassing Balch's conduct here. (Ligeros Declaration, p. 4, ll. 17-27.) If the additional insured endorsement is to be construed in light of the lease, then this broad indemnity agreement supports Balch's contention that it is covered under the DPLC. In addition, it has been the historical practice of the insurance industry, absent express limitations, not to limit the additional insurance coverage to the terms of the underlying contract. (Ligeros Declaration, p. 5, ll. 11-12.)

### G. ICSOP Has Waived Any Argument That The Scope Of Coverage Provided To Balch Under The ICSOP Policy Is Limited By The Terms Of The Lease Agreement.

California law concerning waiver has been addressed extensively elsewhere.[25] That law particularly applies to ICSOP's late attempt to raise the coverage defenses addressed herein.

At no time prior to the hearing on January 9, 2004, did ICSOP raise these coverage defenses. Since March 5, 2002 when Balch first tendered its defense to ICSOP, now almost two years ago, ICSOP has never asserted that Balch's coverage was limited to bodily injury, property damage or personal injury coverage. This is in spite of the fact that during that entire time ICSOP most assuredly had the ICSOP policy, the additional insured certificate and the additional insured endorsement, and just as assuredly could have obtained a copy of the lease agreement.[26] These facts certainly evidence an intent not to assert the defense that ICSOP now urges. Further, ICSOP's failure to assert timely this defense is a clear violation of the California Insurance Commissioner's Unfair Claims Settlement Practices Regulations, which in and of itself warrants a finding of waiver.

---

[25] See Balch's Memorandum, pp. 19-22.

[26] See Balch's Memorandum, p. 7, for discussion of ICSOP's failure to investigate Balch's tender.

Wendel, Rosen, Black & Dean, LLP
1111 Broadway, 24th Floor
Oakland, CA 94607-4036

## III. CONCLUSION

Balch is clearly an insured under the operative ICSOP Policy. Balch's coverage under the ICSOP Policy is not limited to bodily injury, property damage or personal injury coverage, but rather includes the DPLC. This is because there is no evidence that the parties intended to so limit the coverage, that the ICSOP Policy terms are not ambiguous and therefore not subject to interpretation by extrinsic evidence, that the ICSOP Policy and the lease cannot be read together, that there is no exclusion in the ICSOP Policy restricting the scope of Balch's coverage, and even if the ICSOP Policy is interpreted with reference to the lease agreement, there is no basis to limit the scope of coverage provided to Balch under the ICSOP Policy. Finally, ICSOP has waived any of the policy defenses it now seeks to assert nearly two years after Balch tendered its defense. For these reasons as well as those previously set forth in Balch's moving papers, Balch respectfully requests that the Court grant Balch's Motion for Summary Adjudication.

Dated: February 6, 2004 WENDEL, ROSEN, BLACK & DEAN, LLP

By: /s/
Charles M. Miller
Attorneys for Plaintiffs
BALCH ENTERPRISES, INC. and BALCH, LLC.

Wendel, Rosen, Black & Dean, LLP
1111 Broadway, 24th Floor
Oakland, CA 94607-4036