STEPHEN C. KENNEY (SBN 53883)
JUDE A. CISNEROS (SBN 220391)
KENNEY & MARKOWITZ L.L.P.
255 California Street, Suite 1300
San Francisco, CA 94111
Telephone: (415) 397-3100
Facsimile: (415) 397-3170

Attorneys for Defendants
NORTHWEST AIRLINES, INC. AND
NORTHWEST AIRLINES CORPORATION

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION – ECF PROGRAM

| | |
|---|---|
| ARSHAD CHOWDHURY,<br><br>Plaintiff,<br><br>v.<br><br>NORTHWEST AIRLINES CORPORATION and NORTHWEST AIRLINES, INCORPORATED,<br><br>Defendants. | CASE NO. C 02-2665 CRB<br><br>DEFENDANT NORTHWEST AIRLINES, INC.'S SECOND AMENDED RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES |

PROPOUNDING PARTY: Plaintiff ARSHAD CHOWDHURY

RESPONDING PARTY: Defendant NORTHWEST AIRLINES, INC.

DISCOVERY: INTERROGATORIES

SET NUMBER: ONE (1)

Defendant Northwest Airlines, Inc. ("Northwest") hereby amends its responses to plaintiff Arshad Chowdhury's first set of interrogatories, consistent with the Court's previous rulings in this action, as follows:

## PRELIMINARY STATEMENT

Northwest continues to pursue its investigation and analysis of the facts and law relating to this case. Northwest has not completed its trial preparation. Northwest's responses are limited to information and records that are presently known and available to it. Northwest reserves the right to add to, modify, change or amend these responses as a result of subsequently discovered facts or in order to correct any inadvertent errors or omissions.

## GENERAL OBJECTIONS

Northwest objects to these interrogatories to the extent that they seek information protected from disclosure by the attorney-client privilege and/or the attorney work product doctrine. Northwest will not provide information that constitutes its attorneys' work product or attorney-client communications.

Northwest may have grounds to object to these interrogatories to the extent they seek information protected from disclosure by federal law, including, but not limited to, 49 C.F.R. Part 1520, et seq., and 49 U.S.C. § 40119. Northwest complies with federal law and normally would not provide information that federal law mandates not be produced. However, pursuant to the Court's rulings in this action at the hearing on November 14, 2003, and related rulings, Northwest will not assert "sensitive security information" ("SSI") objections or other similar objections based on federal law in responding to these interrogatories, as directed by the Court, solely for purposes of this discovery and litigation. Northwest does so on the express understanding that these responses may first be submitted to the Transportation Security Administration for review and possible redaction of SSI-related material, as directed by the Court on November 14, 2003, and in related rulings, prior to serving the complete and unredacted responses to plaintiff in order to preserve Northwest's interest in fully complying with federal law. Northwest specifically reserves the right to assert SSI and other federal law objections, as necessary, at any point in further proceedings in this litigation, or any other litigation or proceedings of any nature whatsoever, to ensure Northwest's compliance with the applicable federal law and statutes governing SSI and other related information and documents.

## RESPONSES TO INTERROGATORIES

**INTERROGATORY NO. 1:**

Identify any documents containing and individuals possessing any information or knowledge concerning the facts and allegations set forth in the Complaint, or information or knowledge of any facts which support your defense to the allegations made against defendants, including internal memoranda, incident reports, correspondence, logs, transcripts, and audiotapes. As to each document, describe the information contained therein. As to each individual, describe the information and/or knowledge possessed by him or her.

**RESPONSE TO INTERROGATORY NO. 1:**

Northwest objects to this interrogatory to the extent it seeks information and documents protected from disclosure by the attorney-client privilege and/or the attorney work product doctrine. Northwest objects to the compound nature of this interrogatory, and on the basis that the interrogatory is vague and ambiguous.

Subject to and without waiving these objections, Northwest directs plaintiff to the responses to requests for production of documents that are being served simultaneously with these responses, pursuant to Fed.R.Civ.P. Rule 33(d), as those responses and documents contain information responsive to the portion of this interrogatory requesting a description of information contained in documents.

As to individuals possessing information or knowledge as set out in this interrogatory, see response to Interrogatory No. 4 herein.

Northwest's investigation is ongoing. Northwest reserves the right to supplement this response as discovery continues, if necessary, to the extent permitted by federal law and as approved by the Transportation Security Administration ("TSA").

**INTERROGATORY NO. 2:**

Describe in detail the basis for each of the defenses raised in your Answer and identify any documents and individuals containing or possessing knowledge or information relating to each such defense.

RESPONSE TO INTERROGATORY NO. 2:

Northwest objects to this interrogatory to the extent it seeks information and documents protected from disclosure by the attorney-client privilege and/or the attorney work product doctrine. Northwest objects to the compound nature of this interrogatory.

Subject to and without waiving these objections, Northwest directs plaintiff to the responses to requests for production of documents that are being served simultaneously with these responses, pursuant to Fed.R.Civ.P. Rule 33(d), as those responses and documents contain information responsive to this interrogatory.

As to individuals possessing information or knowledge as set out in this interrogatory, see response to Interrogatory No. 4 herein.

The following facts, based on the information and belief obtained in Northwest's ongoing investigation, support Northwest's defenses: On October 23, 2001, plaintiff Arshad Chowdhury ("Chowdhury") checked in as a passenger to fly from San Francisco International Airport ("SFO") to his destination of Pittsburgh, Pennsylvania, at the SFO Northwest ticket counter. While issuing Chowdhury a boarding pass for Northwest Flight 342 to Detroit, with a connection to Pittsburgh, the attending Northwest customer service agent, Diane Robinson, noticed that plaintiff's name, "Chowdhury, Arshad," was very similar to "Chaudhry, Ashad Ali," a name on a then current government watch list. A copy of the watch list redacted to reveal only this name, as approved by TSA, has been produced in discovery. As Chowdhury left the ticket counter to go to the gate from which Flight 342 was to depart, Robinson pointed out the possible name match to a colleague in the area of the ticket counter, P.J. Routh, who agreed that the name was a very close match. Robinson then called ahead to alert gate agents of the possible name match.

When the Northwest supervising gate agent, Keolani Stacey, was alerted, she is believed to have circled the closely matching name on a hard copy of the watch list. Stacey then telephoned System Operations Control ("SOC") in Minneapolis, Minnesota, and an investigation by federal and local authorities ensued. To date, the identity of the SOC representative with whom Stacey spoke is not certain. The SOC representative advised Stacey the matter would be investigated and

that she would be given a call back. Stacey relayed this information to the captain of flight 342, Bryan Murphy.

While the investigation of the plaintiff was underway, Captain Murphy boarded the aircraft and advised his crew of these developments. Some of the flight crew expressed concerns about the possible name match. Captain Murphy made an independent telephone call to SOC for further clarification as to how the situation was to be handled. To date, the identity of the SOC representative with whom the captain spoke is not certain. The SOC representative advised Captain Murphy that the FBI would want to conduct an investigation of the plaintiff, including his checked luggage, before plaintiff could be allowed to board Flight 342.

Shortly after this telephone call, Captain Murphy was advised by the Ground Security Coordinator (identity not certain at this time) that plaintiff had been cleared for boarding, that the FBI required no further investigation of the plaintiff, and that plaintiff had no checked luggage. None of this information comported with the captain's understanding of the situation based on his telephone call just moments before with the SOC representative. Captain Murphy made an operational decision that Flight 342 would not be delayed any further. If everything finally checked out, Chowdhury could be rerouted on a Northwest flight through Minneapolis within the hour. He was ultimately rerouted within the hour on a U.S. Airways flight direct to Pittsburgh because other Northwest flights with connections through Detroit and/or Minneapolis were not favorable (e.g., lengthy connection times). The U.S. Airways flight arranged for Chowdhury by Northwest personnel arrived in Pittsburgh approximately one hour before Northwest Flight 342 was scheduled to arrive.

Northwest asserted multiple affirmative defenses in its answer and amended answer to preserve its defenses. Northwest's investigation is ongoing. Northwest reserves the right to supplement this response as discovery continues, if necessary, to the extent permitted by federal law and as approved by TSA.

<u>**INTERROGATORY NO. 3:**</u>

If you contend that federal laws or regulations mandated or authorized any of the actions

described in the Complaint, identify the actions and the federal laws or regulations that you contend mandated or authorized them.

## RESPONSE TO INTERROGATORY NO. 3:

Northwest objects to this interrogatory to the extent it seeks information and documents protected from disclosure by the attorney-client privilege and/or the attorney work product doctrine. Northwest objects to the compound nature of this interrogatory, and on the ground that the interrogatory is vague and ambiguous.

Subject to and without waiving these objections, Northwest asserts that its conduct with regard to plaintiff on October 23, 2001, was authorized and required under the applicable federal statutes, including, but not limited to, 49 C.F.R. Part 1520, et seq., and 49 U.S.C. § 40119, and other federal directives governing the airline's use of "sensitive security information," or "SSI." In particular, after the events of September 11, 2001, Northwest received specific directives from federal authorities in the form of security directives, emergency amendments, information circulars, and related materials. These materials contained detailed information as to what Northwest understood to be rapidly developing air safety and security measures designed by federal authorities to prevent future terrorist threats.

Pursuant to these safety and security measures, Northwest was provided with watch lists containing names of individuals, variants of the listed names, and related information. Northwest was given instructions (and variations of these instructions) to deny transportation to any individual whose name was on a watch list or any future lists provided by federal authorities, to notify the FBI, and to notify other aircraft operators at the same airport. The federal directives [redacted] On that basis, Northwest was instructed to use discretion and its best reasonable judgment in determining whether there was a name match.

On the basis of these federal laws, regulations and directives, Northwest was authorized and required to take the actions it did on October 23, 2001, as described in Response to

Interrogatory No. 2.

**INTERROGATORY NO. 4:**

Identify each individual listed or referenced in the "From," "To," "Cc," lines or body of Bryan Murphy's October 29, 2001, e-mail message to Jack Balliet. Include in your answer each individual's full name, title, a description of their job responsibilities, and a description of what, if any, involvement they had related to the facts and allegations set forth in the Complaint, including any investigation or follow-up conducted by Northwest regarding the facts and allegations set forth in the Complaint.

**RESPONSE TO INTERROGATORY NO. 4:**

Northwest objects to the extent this interrogatory seeks information and documents protected from disclosure by the attorney client privilege and/or the attorney work product doctrine. To the extent this interrogatory seeks disclosure of the names of Northwest passengers on Flight 342 on October 23, 2001, or on any other Northwest flight, Northwest objects on the basis of the privacy rights of those individuals. Northwest objects to the compound nature of this interrogatory.

Subject to and without waiving these objections, Northwest identifies the following individuals and their work descriptions, based on the information and belief obtained in Northwest's investigation of this action to date:

Susan Johnson - Director of Pilot Base Operations. Her job responsibilities included, among other things, reviewing and identifying methods of improving policies and procedures relating to pilot crew base/central administration operations, providing front-line managerial support to pilot team of employees and all base/central administration managers, and acting as liaison between pilots and other related departments. Johnson is not believed to have been involved in the events of October 23, 2001, relating to this case. She is believed to have been provided a copy of Captain Murphy's report as a matter of reporting procedure.

Jack Balliet - Chief Pilot, Detroit Pilot Base. His job responsibilities included, among other things, managing pilot base operations to full compliance with all OSHA, FAA and

Northwest safety standards. Balliet is not believed to have been involved in the events of October 23, 2001, relating to this case. Captain Murphy is believed to have reported to Balliet as a matter of reporting procedure.

Chuck Hosier - Assistant Chief Pilot, Detroit Pilot Base. His job responsibilities included, among other things, assisting the chief pilot in managing pilot base operations to full compliance with all OSHA, FAA and Northwest safety standards, and being responsible for such management in the chief pilot's absence. Hosier is not believed to have been involved in the events of October 23, 2001, relating to this case. He is believed to have been provided a copy of Captain Murphy's report as a matter of reporting procedure.

John Krasienko - Assistant Chief Pilot, Detroit Pilot Base. Job responsibilities included, among other things, assisting the chief pilot in managing pilot base operations to full compliance with all OSHA, FAA and Northwest safety standards, and being responsible for such management in the chief pilot's absence. Krasienko is not believed to have been involved in the events of October 23, 2001, relating to this case. He is believed to have been provided a copy of Captain Murphy's report as a matter of reporting procedure.

David McNeill - Assistant Chief Pilot, Detroit Pilot Base. Job responsibilities included, among other things, assisting the chief pilot in managing pilot base operations to full compliance with all OSHA, FAA and Northwest safety standards, and being responsible for such management in the chief pilot's absence. McNeill is not believed to have been involved in the events of October 23, 2001, relating to this case. He is believed to have been provided a copy of Captain Murphy's report as a matter of reporting procedure.

Keolani Stacey - Customer Service Agent (Ticket/Gate Agent). Job responsibilities included, among other things, check-in of passengers for flights, assigning seats, issuing boarding passes, directing passengers to their gates, monitoring carry-on luggage, assisting passengers with special needs and unaccompanied minors. On the date of the incident at issue, October 23, 2001, Stacey was the supervising gate agent for Northwest Flight 342. When Customer Service Agent Diane Robinson noted the possible match between plaintiff's name, "Chowdhury, Arshad," and

the name "Chaudhry, Ashad Ali," which appeared on a then current government watch list, Robinson alerted Stacey. Stacey is believed to have confirmed the possible name match by circling the name on the government watch list that closely matched plaintiff's name. Stacey then telephoned System Operations Control ("SOC") in Minneapolis, Minnesota. To date, the identity of the SOC representative with whom Stacey spoke is not certain. The SOC representative advised Stacey the matter would be investigated and that she would be given a call back. Stacey then relayed this information to Captain Bryan Murphy and returned to her station at the gate.

Delvin Farago - Operations Planner. Job responsibilities included, among other things, working with other Northwest departments or stations in making final decisions relating to cancellations, consolidations, special stops, and diversions. Farago may have been an on-duty operations planner at SOC in Minneapolis on the date of the incident in this case. Farago may be the SOC representative with whom either Captain Murphy or gate agent Keolani Stacey spoke that day.

David Nielsen - Operations Planner. Same job responsibilities as described for Farago. Nielsen may have been an on-duty operations planner at SOC in Minneapolis on the date of the incident in this case. Nielsen may be the SOC representative with whom either Captain Murphy or gate agent Keolani Stacey spoke that day.

Dennis Homer - Customer Service Manager, Ground Operations (Gate). Job responsibilities included, among other things, ensuring safety compliance and high quality customer service at the gate of arriving and departing flights, assistance in maintaining on-time departures, and management and training to ensure proper luggage handling. Upon information and belief, Homer arrived at the gate area where plaintiff was investigated by security personnel (not Northwest employees) on the date of the incident at issue. He is believed to have been present at some time during the events in question. Homer may be the individual Captain Murphy's report refers to as a "Ground Security Coordinator."

Dennis Zamaria - Customer Service Manager, Ground Operations (Gate). Same job responsibilities as those described for Homer. Upon information and belief, Zamaria arrived at the

gate area where plaintiff was investigated by security personnel (not Northwest employees) on the date of the incident at issue. He is believed to have been present at some time during the events in question. Zamaria may be the individual Captain Murphy's report refers to as a "Ground Security Coordinator."

Eric Edmundson - Manager of Inflight Services. Job responsibilities included, among other things, ensuring flight personnel are competent in the knowledge and application of onboard service procedures by guiding, training, assisting, and evaluating flight attendant managers in the performance of their duties. Upon information and belief, Edmundson arrived at the gate area where plaintiff was investigated by security personnel (not Northwest employees) on the date of the incident at issue. He is believed to have been present at some time during the events in question. Edmundson may be the individual Captain Murphy's report refers to as a "Ground Security Coordinator." Edmundson may also be the "inflight manager" that one of the flight attendants called, as reported in the captain's report.

William Lenz - Manager of Aviation Security. Job responsibilities included, among other things, hiring and maintaining a security guard force, conducting investigations, and maintaining the security of Northwest personnel, facilities and property. Lenz is not believed to have been present at SFO at the time of the events in question, but may have been available by telephone.

Michael Thompson - First Officer. Job responsibilities included, among other things, assisting the Captain with safe operation of aircraft. Thompson assisted Captain Bryan Murphy in piloting Flight 342 on October 23, 2001, but is not otherwise believed to have been involved with the facts relating to plaintiff's allegations.

Bryan Murphy - Captain. Job responsibilities included, among other things, safe operation of aircraft. Murphy piloted Flight 342 on October 23, 2001, and wrote the e-mail report inquired about in this interrogatory.

Kevin Nunes - Flight Attendant. Job responsibilities included, among other things, high quality customer service for passengers, assistance to passengers with special needs, coordinating on-time boarding with ground personnel, and providing on-board service to passengers during

flight. Nunes was a flight attendant aboard Flight 342 on October 23, 2001.

Karen May - Flight Attendant. Same job responsibilities as those described for Nunes. May was a flight attendant aboard Flight 342 on October 23, 2001.

Joselean Woodfalks - Flight Attendant. Same job responsibilities as those described for Nunes. Woodfalks was a flight attendant aboard Flight 342 on October 23, 2001.

Betty Peden - Flight Attendant. Same job responsibilities as those described for Nunes. Peden was a flight attendant aboard Flight 342 on October 23, 2001.

Elizabeth Guina - Flight Attendant. Same job responsibilities as those described for Nunes. Guina was a flight attendant aboard Flight 342 on October 23, 2001.

Roberta Taba - Customer Service Agent (Ticket/Gate Agent). Job responsibilities included, among other things, check-in of passengers for flights, assigning seats, issuing boarding passes, directing passengers to their gates, monitoring carry-on luggage, assisting passengers with special needs and unaccompanied minors. Taba's involvement in this case is believed to have been to assist in facilitating an alternative Northwest flight for plaintiff to his destination of Pittsburgh. When she and other Northwest personnel realized the connections through Detroit and/or Minneapolis were not favorable, she booked or assisted in booking plaintiff on a direct U.S. Airways flight to Pittsburgh.

Diane Robinson - Customer Service Agent (Ticket/Gate Agent). Same job responsibilities as noted for Taba. On the date of the incident at issue, October 23, 2001, Robinson checked Chowdhury in as a passenger to fly from San Francisco (SFO) to his destination of Pittsburgh, Pennsylvania, at the Northwest ticket counter. While issuing plaintiff a boarding pass for Northwest Flight 342 to Detroit, with a connection to Pittsburgh, Robinson noticed that plaintiff's name, "Chowdhury, Arshad," was very similar to the name "Chaudhry, Ashad Ali," which appeared on a then current government watch list. As plaintiff left the ticket counter to go to the gate from which Flight 342 was to depart, Robinson pointed out the possible name match to her colleague at the ticket counter, P.J. Routh, who agreed with Robinson that the name was a very close match. Robinson then called ahead to alert gate agents of the possible name match.

P.J. Routh - Customer Service Agent (Ticket/Gate Agent). Same job responsibilities as noted for Taba. On the date of the incident at issue, October 23, 2001, Routh was at or near the ticket counter where his colleague, Diane Robinson, checked Chowdhury in as a passenger to fly from San Francisco (SFO) to his destination of Pittsburgh, Pennsylvania. When Robinson noticed that plaintiff's name, "Chowdhury, Arshad," was very similar to the name "Chaudhry, Ashad Ali," which appeared on a then current government watch list, Robinson pointed out the possible name match to Routh who agreed that the name was a very close match.

Willie Ticzon - Customer Service Agent (Ticket/Gate Agent). Same job responsibilities as noted for Taba. Upon information and belief, Ticzon was also present as a gate agent on October 23, 2001, for Northwest Flight 342, and may have observed some of the events relating to this case. Ticzon may have collected tickets at the gate as passengers boarded Flight 342.

Northwest does not know the identity of the FBI, airport police, and other non-Northwest personnel referenced in the report, except to the extent plaintiff may have identified any or all of them in discovery. Northwest believes the foregoing list is a complete list of Northwest individuals referenced in Captain Murphy's October 29, 2001, e-mail. Northwest's investigation is ongoing. Northwest reserves the right to supplement this response as discovery continues, if necessary, to the extent permitted by federal law and as approved by TSA.

**INTERROGATORY NO. 5:**

Identify each individual who participated in, was present, or was aware of the decision not to allow Mr. Chowdhury to board Northwest Flight 342. Include in your answer the identification of all persons who participated in any determination that Mr. Chowdhury's name was similar to a name on a watch list, a no-fly list, or a list containing security blocks.

**RESPONSE TO INTERROGATORY NO. 5:**

Northwest objects to the extent this interrogatory seeks information and documents protected from disclosure by the attorney-client privilege and/or the attorney work product doctrine. Northwest objects on the grounds that the interrogatory is vague and ambiguous. Northwest objects to the extent that the information requested is equally available to plaintiff.

Subject to and without waiving these objections, Northwest responds that as of the date of this response, the Northwest individuals who may have been involved or have relevant information, as described, include the following:

Keolani Stacey

Delvin Farago

David Nielsen

Dennis Homer

Dennis Zamaria

William Lenz

Michael Thompson

Bryan Murphy

Kevin Nunes

Karen May

Joselean Woodfalks

Betty Peden

Elizabeth Guina

Roberta Taba

Diane Robinson

P.J. Routh

Willie Ticzon

Susan Johnson

Jack Balliet

Chuck Hosier

John Krasienko

David McNeill

Marc Gross

Jeff Breeding

James Sampson

Eric Edmundson

Edna Meyers

Northwest is not aware of the identity of federal agents or other law enforcement personnel involved in this matter on October 23, 2001. Northwest's investigation is ongoing. Northwest reserves the right to supplement this response as discovery continues, if necessary, to the extent permitted by federal law and as approved by TSA.

**INTERROGATORY NO. 6:**

If it is your assertion that Northwest barred Mr. Chowdhury from Northwest Flight 342 because the decision maker(s) felt he or she had insufficient or conflicting information concerning whether Mr. Chowdhury might pose a security risk, state all information or facts giving rise to such concern on the part of the decision maker(s) and identify all documents that support this contention.

**RESPONSE TO INTERROGATORY NO. 6:**

Northwest objects to this interrogatory to the extent it seeks information and documents protected from disclosure by the attorney-client privilege and/or the attorney work product doctrine. Northwest objects to the compound nature of this interrogatory.

Subject to and without waiving these objections, see Response to Interrogatory No. 2 herein. Northwest also directs plaintiff to the responses to requests for production of documents that are being served simultaneously with these responses, pursuant to Fed.R.Civ.P. Rule 33(d), as those responses and documents contain information responsive to this interrogatory.

Northwest's investigation is ongoing. Northwest reserves the right to supplement this response as discovery continues, if necessary, to the extent permitted by federal law and as approved by TSA.

**INTERROGATORY NO. 7:**

If you contend that race, ethnicity, national origin, or religion played no role in Northwest's decision not to allow Mr. Chowdhury to board Northwest Flight 342, state each and every reason

why Northwest did not permit Mr. Chowdhury to board Northwest Flight 342 and each and every reason why Northwest re-booked Mr. Chowdhury on a US Airways flight.

**RESPONSE TO INTERROGATORY NO. 7:**

Northwest objects to this interrogatory to the extent it seeks information and documents protected from disclosure by the attorney-client privilege and/or the attorney work product doctrine. Northwest objects to the compound nature of this interrogatory.

Subject to and without waiving these objections, see Responses to Interrogatory Nos. 2 and 3 herein. When plaintiff was not permitted to board Flight 342 first for security reasons (because his name was first noted by a ticket/gate agent, when plaintiff checked in, as being very close to a name on a government watch list) and then for operational reasons (because the flight was past due to depart), he was protected as a Northwest customer by being issued a ticket on a direct flight from San Francisco to Pittsburgh on U.S. Airways. This direct flight on U.S. Airways was provided as a courtesy to Chowdhury by Northwest because all the remaining Northwest flights, with connections through either Detroit or Minneapolis, would have been an inconvenience to plaintiff, since those flights would have gotten plaintiff to Pittsburgh much later, including into the next day.

**INTERROGATORY NO. 8:**

If it is your assertion that Mr. Chowdhury was not allowed to board Northwest Flight 342 for safety or security reasons, identify all documents that support this contention.

**RESPONSE TO INTERROGATORY NO. 8:**

Northwest objects to this interrogatory to the extent it seeks information and documents protected from disclosure by the attorney-client privilege and/or the attorney work product doctrine.

Subject to and without waiving these objections, Northwest directs plaintiff to the responses to requests for production of documents that are being served simultaneously with these responses, pursuant to Fed.R.Civ.P. Rule 33(d), as those responses and documents contain information responsive to this interrogatory. See also Responses to Interrogatory Nos. 2 and 3

herein.

**INTERROGATORY NO. 9:**

Identify and describe in detail any and all written or oral policies, procedures, and training effective from January 1, 1998, to the present regarding Northwest's boarding procedures, including policies, procedures, and training related to the selection of passengers for additional scrutiny and policies, procedures, and training related to the selection of passengers for non-boarding and for removal from the aircraft; identify when such policies, procedures, or training were adopted; describe in detail the reasons for the adoption of the policies, procedures, or training; identify the person(s) responsible for adopting and/or implementing each such policy, procedure, or training; describe any changes to the policies, procedures or training since January 1, 1998, the reason for such change, and identify any documents or communications concerning such policies, procedures, or training.

**RESPONSE TO INTERROGATORY NO. 9:**

Northwest objects to this interrogatory to the extent it seeks information and documents protected from disclosure by the attorney-client privilege and/or the attorney work product doctrine. Northwest objects on the basis that this interrogatory is compound, vague and ambiguous, over broad, burdensome and oppressive.

Subject to and without waiving these objections, Northwest directs plaintiff to the responses to requests for production of documents that are being served simultaneously with these responses, pursuant to Fed.R.Civ.P. Rule 33(d), as those responses and documents contain information responsive to this interrogatory. See also Response to Interrogatory No. 3 herein.

**INTERROGATORY NO. 10:**

Identify and describe in detail any and all written or oral policies, procedures, and training effective from January 1, 1998, to the present relating to the use of watch lists, no-fly lists, and security blocks by Northwest employees, agents, or representatives, identify when such policies, procedures, or training were adopted; describe in detail the reasons for the adoption of the policies, procedures, or training; identify the person(s) responsible for adopting and/or

Kenney & Markowitz L.L.P.

implementing each such policy, procedure, or training; describe any changes to the policies, procedures or training since January 1, 1998, the reason for such change, and identify any documents or communications concerning such policies, procedures, or training.

**RESPONSE TO INTERROGATORY NO. 10:**

Northwest objects to this interrogatory to the extent it seeks information and documents protected from disclosure by the attorney-client privilege and/or the attorney work product doctrine. Northwest objects on the basis that this interrogatory is compound, vague and ambiguous, over broad, burdensome and oppressive.

Subject to and without waiving these objections, Northwest directs plaintiff to the responses to requests for production of documents that are being served simultaneously with these responses, pursuant to Fed.R.Civ.P. Rule 33(d), as those responses and documents contain information responsive to this interrogatory. See also Response to Interrogatory No. 3 herein.

**INTERROGATORY NO. 11:**

Identify each individual who participated in the decision to place a security block on Mr. Chowdhury's name or to place Mr. Chowdhury's name on a watch list or no-fly list.

**RESPONSE TO INTERROGATORY NO. 11:**

Northwest objects to the compound nature of this interrogatory and on the grounds that it is vague and ambiguous.

Subject to and without waiving the objection, Northwest did not place a "security block" on Mr. Chowdhury's name, as alleged in plaintiff's complaint. Northwest did not make a decision to "place Mr. Chowdhury's name on a watch list or no-fly list." Based on information and belief, Northwest does not have the authority or power to make the decision to place a name on, or remove a name from, a government watch list. Northwest believes that only TSA or other government agencies have such power and authority. On that basis, Northwest does not know the names of the individuals who participated in "the decision" to place a name similar to plaintiff's name on the watch list at issue in this case. See Responses to Interrogatory Nos. 2 and 3 herein.

In compliance with the Court's rulings at the November 14, 2003, hearing and subsequent

rulings in this action, Northwest also states that in the days and weeks following September 11, 2001, the FAA was rapidly developing and disseminating federal air safety and security measures embodied in constantly updated security directives, emergency amendments, and information circulars. The FAA disseminated watch lists and instructions as to how the airlines were to use watch lists in the check-in and boarding process to assist in preventing potential terrorist activity. The lists contained names, [redacted] and other identifying information.

Northwest was given instructions (and variations of these instructions) to maintain a constantly updated list of the names and information contained in the government watch lists as the information was received from federal authorities. That information was being received from federal authorities on a daily, and sometimes hourly, basis in the days and weeks after September 11, 2001. Northwest then placed only those names that were included in watch lists provided to it by federal authorities on an active Northwest computer list devoted exclusively to government watch list information. Northwest did not include information in this list other than what was provided by federal authorities as described above and in Response to Interrogatory No. 3 herein.

**INTERROGATORY NO. 12:**

If you contend that race, ethnicity, national origin, or religion played no role in Northwest's decision to place a security block on Mr. Chowdhury's name, state each and every reason why Northwest placed a security block on Mr. Chowdhury's name or caused such a block to be placed on his name and each and every reason why Northwest did not remove the block or cause such a block to be removed.

**RESPONSE TO INTERROGATORY NO. 12:**

Northwest objects to this interrogatory to the extent it seeks information and documents protected from disclosure by the attorney-client privilege and/or the attorney work product doctrine. Northwest objects to the compound nature of this interrogatory and on the grounds that it is vague and ambiguous.

Subject to and without waiving the objections, Northwest did not place a "security block"

on Mr. Chowdhury's name, as alleged in plaintiff's complaint. Nor did Northwest cause a "security block" to be placed on plaintiff's name. See Response to Interrogatory No. 11 herein.

**INTERROGATORY NO. 13:**

Identify each and every passenger, including but not limited to passengers of Northwest Flight 342, who has not been permitted to board a Northwest Airlines flight or who has been removed from a Northwest Airlines flight since September 11, 2000. Include in your answer the identity of each such passenger; the race or ethnicity of each such passenger; the reason each such passenger was not permitted to board a flight or was removed from a flight; and the date, Flight number, and airport(s) for each such occurrence.

**RESPONSE TO INTERROGATORY NO. 13:**

Northwest objects to this interrogatory on the ground that it is overly broad, burdensome and oppressive. During the course of a day, everywhere in the world Northwest flies, passengers may be denied boarding because of multiple reasons, including, but not limited to, they are late for the flight, they are unable to fly (due to health reasons, alcohol inebriation, drug intoxication) or they fail to comply with safety directives of flight crews and/or exhibit belligerent, uncooperative behavior that may be inimical to the safety of the flight. Similarly, on any given day, throughout the world where Northwest flies, passengers may be removed from aircraft for multiple reasons, including, but not limited to, failure to comply with flight crew instruction, health reasons, drug intoxication, alcohol inebriation or injury. It is unreasonable to require Northwest to check every airport in the world where it flies to identify each such passenger.

Northwest objects to this interrogatory on relevancy grounds inasmuch as the information sought to be discovered is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff has not produced any admissible evidence to support his allegations that Northwest somehow or for some reason discriminated against him. Lacking any such evidence, it would be burdensome and oppressive to subject Northwest to such a wide net of discovery that is not based on any substantiated allegations and not reasonably calculated to lead to the discovery of admissible evidence.

Even if Northwest could easily obtain the information sought to be discovered (which it cannot), Northwest objects to the request on privacy grounds inasmuch as Northwest's passengers are entitled to have their privacy protected from disclosure in the public record.

Subject to and without waiving these objections, in compliance with the Court's January 20, 2004, Order, Northwest states that it is not currently aware of other incidents in which Northwest denied boarding to a passenger "even after Northwest was advised that law enforcement had cleared the passenger for boarding." Northwest's investigation is ongoing. Northwest reserves the right to supplement this response as discovery continues, if necessary, to the extent permitted by federal law and as approved by TSA.

**INTERROGATORY NO. 14:**

Identify and describe in detail any and all communications and training from January 1, 1998, to the present, whether verbal or written, between, to, or from Northwest's employees, agents, or representatives regarding local, state, or federal laws related to anti-discrimination laws or regulations.

**RESPONSE TO INTERROGATORY NO. 14:**

Northwest objects to this interrogatory to the extent that it seeks information and documents protected from disclosure by the attorney-client privilege and/or the attorney work product doctrine. Northwest objects to this interrogatory on the ground that it is overly broad, burdensome and oppressive.

Subject to and without waiving these objections, Northwest directs plaintiff to the responses to requests for production of documents that are being served simultaneously with these responses, pursuant to Fed.R.Civ.P. Rule 33(d), as those responses and documents contain information responsive to this interrogatory.

**INTERROGATORY NO. 15:**

Describe in detail any oral or written, formal or informal, complaints of discrimination, unfair treatment, or civil rights charges filed with Northwest Airlines, Inc., or in any administrative, judicial, or other civil proceeding against Northwest Airlines, Inc. or against any

agent, employee, officer or representative of Northwest Airlines, Inc., including but not limited to: the name(s) of the person(s) making the complaint or charge and their contact information; the substance of the complaint or charge; the person or entity to whom the complaint or charge was made; the particular flight(s), service, and employee(s) involved; the status of such complaint or charge; and identify any documents relating to such complaints.

**RESPONSE TO INTERROGATORY NO. 15:**

Northwest objects to this interrogatory on the ground that it is overbroad, burdensome and oppressive. During the course of a day, everywhere in the world Northwest flies, passengers may be denied boarding because of multiple reasons, including, but not limited to, they are late for the flight, they are unable to fly (due to health reasons, alcohol inebriation, drug intoxication) or they fail to comply with safety directives of flight crews and/or exhibit belligerent, uncooperative behavior that may be inimical to the safety of the flight. Similarly, on any given day, throughout the world where Northwest flies, passengers may be removed from aircraft for multiple reasons, including, but not limited to, failure to comply with flight crew instruction, health reasons, drug intoxication, alcohol inebriation or injury. It is unreasonable to require Northwest to check every airport in the world where it flies to identify each such passenger who may have made a complaint with a reference to alleged discrimination.

Northwest objects to this interrogatory on relevancy grounds inasmuch as the information sought to be discovered is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff has not produced any admissible evidence to support his allegations that Northwest somehow or for some reason discriminated against him. Lacking any such evidence, it would be burdensome and oppressive to subject Northwest to such a wide net of discovery that is not based on any substantiated allegations and not reasonably calculated to lead to the discovery of admissible evidence.

Even if Northwest could easily obtain the information sought to be discovered (which it cannot), Northwest objects to the request on privacy grounds inasmuch as Northwest's passengers are entitled to have their privacy protected from disclosure in the public record.

**INTERROGATORY NO. 16:**

Identify all passengers of Flight 342 and other witnesses, including but not limited to airport employees and vendors, who were or may have been in the vicinity when Mr. Chowdhury was denied entry and asked to step aside for a search of his person and carry-on baggage, and provide any information through which such persons may be contacted.

**RESPONSE TO INTERROGATORY NO. 16:**

Northwest objects to providing the names of passengers on Flight 342 based on the privacy interests of those individuals. As for the identities of any other individuals who were in the vicinity of the alleged incident, the information is equally available to plaintiff.

Subject to and without waiving these objections, Northwest does not have information responsive to this interrogatory, except as to those individuals identified in Responses to Interrogatory Nos. 2 and 4 herein. All the individuals identified by name in those responses were employees of Northwest on October 23, 2001, and are represented in the current action by counsel for Northwest. As such, they can be contacted through counsel.

**INTERROGATORY NO. 17:**

Identify all federal funds, including but not limited to grants, loans, and other federal monies, defendant has received from January 1, 1993 to the present. For each source of federal funding, include in your answer the source, type, and amount of the funds, the purpose of the funds, and the date on which the-funds were received.

**RESPONSE TO INTERROGATORY NO. 17:**

Northwest objects to this interrogatory on the ground that the information sought to be discovered is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff is not entitled to discovery concerning Northwest's financial status unless and until a clear and convincing standard entitling him to such information is met. Northwest objects on the grounds that this interrogatory is overbroad, burdensome and oppressive. Northwest objects to this interrogatory to the extent it seeks information that is equally available to plaintiff and/or is available in the public record.

Northwest objects to the extent that this request seeks information relating to any federal financial assistance received by Northwest. The Court expressly ruled on November 14, 2003, that until plaintiff demonstrates that his action can survive summary judgment, he is not entitled to discovery of such information. (See transcript of 11/14/03 hearing before Judge Breyer, pp. 18-21).

**INTERROGATORY NO. 18:**

Identify each expert whom you may call at the trial of this action, or whom you have retained as an expert or consultant to advise you in connection with this matter, and, for each such expert, state his or her area of expertise, the subject matter on which he or she is expected to testify or for which he or she was retained to study and consult with you, the substance of the facts and opinions as to which he or she is to testify, a summary of the grounds for each such opinion, and whether a report has been made by each such expert and, if so, identify each such report and any and all documents relied upon for that report.

**RESPONSE TO INTERROGATORY NO. 18:**

Northwest objects to the extent this interrogatory seeks information and documents protected from disclosure by the attorney-client privilege and/or the attorney work product doctrine. Northwest objects to the extent this interrogatory seeks premature disclosure of information and documents concerning expert witnesses. Northwest will comply, at the appropriate time, with the disclosure requirements of the Federal Rules of Civil Procedure with regard to the requested information and documents.

**INTERROGATORY NO. 19:**

Identify any insurance policy which could be interpreted as insuring you for all or part of the damages and expenses claimed by plaintiffs [sic] in this lawsuit and specify the policy and coverage limits of each such policy.

**RESPONSE TO INTERROGATORY NO. 19:**

Northwest objects to this interrogatory to the extent that it identifies more than one plaintiff when only one plaintiff has filed the first amended complaint. Northwest objects to this

interrogatory to the extent it seeks information and documents which are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving these objections, the insurance policy which was in effect during the date of the alleged incident (October 23, 2001), Policy No. SP-6508AL, Bates-Stamp Nos. NW000539-NW000594, has been produced in discovery. No other policy of insurance is known to afford coverage in this case.

**INTERROGATORY NO. 20:**

State the net worth of Northwest Airlines, Inc. for each fiscal year from 1998 to the present, and identify all documents you relied on to answer this Interrogatory.

**RESPONSE TO INTERROGATORY NO. 20:**

Northwest objects to this interrogatory on the ground that the information and documents which plaintiff seeks to discover are protected from disclosure by the attorney-client privilege and/or the attorney work product doctrine. Northwest objects to this interrogatory on the ground that the information sought to be discovered is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff is not entitled to discovery concerning Northwest's financial status unless and until a clear and convincing standard entitling him to such information is met. Northwest objects on the grounds that this interrogatory is overbroad, burdensome and oppressive. Northwest objects to this interrogatory to the extent it seeks information that is equally available to plaintiff and/or is available in the public record.

Northwest objects to the extent that this request seeks information relating to Northwest's net worth. The Court expressly ruled on November 14, 2003, that until plaintiff demonstrates that his action can survive summary judgment, he is not entitled to discovery of such information. (See transcript of 11/14/03 hearing before Judge Breyer, pp. 18-21).

**INTERROGATORY NO. 21:**

Identify all documents that were used or referred to in answering these Interrogatories.

**RESPONSE TO INTERROGATORY NO. 21:**

Northwest objects on the grounds that this interrogatory is vague, ambiguous, over broad,

unduly burdensome, and oppressive. Subject to and without waiving the objections, Northwest adopts in their entirety and incorporates by reference as if set forth in full all objections and responses set forth in response to these interrogatories.

DATED: February 7, 2004

**KENNEY & MARKOWITZ L.L.P**

By: ______________________
STEPHEN C. KENNEY
JUDE A. CISNEROS
Attorneys for Defendants
NORTHWEST AIRLINES, INC. AND
NORTHWEST AIRLINES
CORPORATION