Apple Inc. v. Psystar Corporation Doc. 590

MATTHEW D. POWERS (Bar No. 104795)
EDWARD R. REINES (Bar No. 135960)
DOUGLAS E. LUMISH (Bar No. 183863)
MATTHEW SARBORARIA (Bar No. 211600)
WEIL, GOTSHAL & MANGES LLP
Silicon Valley Office
201 Redwood Shores Parkway
Redwood Shores, CA 94065-1175
Telephone: (650) 802-3000
Facsimile: (650) 802-3100

Attorneys for Defendants
SONY COMPUTER ENTERTAINMENT
AMERICA INC. and SONY COMPUTER
ENTERTAINMENT INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| IMMERSION CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>SONY COMPUTER ENTERTAINMENT AMERICA INC., SONY COMPUTER ENTERTAINMENT INC., and MICROSOFT CORPORATION,<br><br>Defendants. | Case No. C 02-0710 CW (WDB)<br><br>Hon. Claudia Wilken<br><br>Date: April 16, 2003<br>Time: 10:00 am |
| AND RELATED COUNTERCLAIMS | |

# DEFENDANTS' OBJECTIONS TO MAGISTRATE JUDGE BRAZIL'S FEBRUARY 26, 2004 ORDER AND MOTION FOR DE NOVO REVIEW



Dockets.Justia.com

TABLE OF CONTENTS

Pages(s)


I. INTRODUCTION .......... 2

II. SONY'S OBJECTIONS TO MAGISTRATE JUDGE BRAZIL'S ORDER STRIKING PORTIONS OF DR. J. KENNETH SALISBURY'S JANUARY 2, 2004 EXPERT REPORT .......... 3

A. There Is No Legal Basis To Strike Dr. Salisbury's Opinions Concerning The Substantial Differences Between Sony's Products And The Immersion Patents .......... 4

1. Magistrate Judge Brazil's Order Left It To Judge Wilken To Determine Whether The Reverse Doctrine Of Equivalents Was "Accessible" to Sony .......... 4

2. The Reverse Doctrine Of Equivalents Is Accessible To Sony .......... 6

3. The Reverse Doctrine Of Equivalents Applies To The Court's Claim Construction Exactly As Issued .......... 9

4. Sony Would Be Irreparably Prejudiced If Its Reverse Doctrine Of Equivalents Evidence Is Stricken .......... 10

III. SONY'S OBJECTIONS TO MAGISTRATE JUDGE BRAZIL'S ORDER DENYING SONY'S MOTION FOR LEAVE TO AMEND ITS FINAL INVALIDITY CONTENTIONS .......... 12

A. The Omission Of Fastening As A Ground For Invalidity Was An Inadvertent Omission Of Counsel For Which Sony Should Not Be Penalized .......... 12

B. The Court Recently Permitted Immersion To Amend Its Infringement Contentions .......... 14

C. Immersion Has Been Long-Aware of Sony's Written Description Defense And Of The Patents' Lack Of Description Of Unfastened Vibrating Devices As A Ground For That Defense .......... 15

1. Immersion Has Been Aware Of Sony's Written Description Defense From The Early Stages Of This Case .......... 15

2. Sony's Requested Amendment Seeks To Add Only The Conclusion That Is Supported By Existing Opinions From Recent Reports Served By Sony's Expert, Dr. Salisbury .......... 16

3. Immersion Has Been Aware Of The Ground For Written Description That Sony Seeks To Add To Its Final Invalidity Contentions For Over Nine Months .......... 17

D. Immersion Would Not Be Prejudiced By The Requested Amendment .......... 19

E. Sony Would Be Prejudiced By The Lack Of Its Written Description Defense Based On The Lack Of Fastening In The Claims .......... 19

IV. SONY'S OBJECTIONS TO MAGISTRATE JUDGE BRAZIL'S ORDER STRIKING DR. SALISBURY'S JANUARY 8 SUPPLEMENTAL INVALIDITY REPORT .......... 20

V. CONCLUSION .......... 21

# TABLE OF AUTHORITIES

## CASES


Page(s)

Amersham Pharmacia Biotech, Inc. v. Perkin Elmer Corp.
2000 U.S. Dist. LEXIS 1142 (N.D. Cal. Jan. 31, 2000) .......... 14

Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki .......... 8
535 U.S. 722, 731 (2002)
Freeman v. Package Machinery Co.
865 F.2d 1331 (1st Cir. 1988) .......... 13

Graver Tank & Manufacturing Co. v. Linde Air Prod. Co.
339 U.S. 605 (1950) .......... 5, 7, 8, 10

Kalman v. Kimberly-Clark Corp.
713 F.2d 760 (Fed. Cir. 1983) .......... 8

Moba, B.V. v. Diamond Automation, Inc.
325 F.3d 1306 (Fed. Cir. 2003) .......... 15

Netword, 242 F.3d at 1352 .......... 18

Ocelto Oil Corp. v. Sparrow Industrial
847 F.2d 1458 (10th Cir. 1988) .......... 3

Precision Metal Fabricators, Inc. v. Jetstream Systems Co.
693 F. Supp. 814 (N.D. Cal. 1988) .......... 8

SRI International v. Matsushita Electric Corp.
775 F.2d 1107 (Fed. Cir. 1985) .......... 8, 9

Scripps Clinic and Research Foundation v. Genentech, Inc.
927 F.2d 1565 (Fed. Cir. 1991) .......... 8, 10

SmithKline Diagnostics, Inc. v. Helena Laboratoriess Corp.
859 F.2d 878 (Fed. Cir. 1988) .......... 8

United States v. Sumitomo Marine & Fire Insurance Co.
617 F.2d 1365 (9th Cir. 1980) .......... 13

Warner-Jenkinson Co. v. Hilton Davis Chem. Co.,
520 U.S. 17, id. at 97 .......... 7

Westinghouse v. Boyden Power Brake Co.
170 U.S. 537 (1898) .......... 7

## TABLE OF AUTHORITIES

## STATUTES


Page(s)

28 U.S.C. § 636(b) .......... 4

35 U.S.C. § 112 .......... passim

Fed. R. Civ. P. § 60(b) .......... 1

Fed. R. Civ. P. 72(a) .......... 4, 6, 12

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on ___, defendants and counterclaimants Sony Computer Entertainment, Inc. and Sony Computer Entertainment America, Inc. (collectively "Sony") will and hereby do move this Court for *de novo* review of, and an order setting aside, the rulings in Magistrate Judge Brazil's February 26, 2004 Order which (1) grant Immersion's motion to strike portions of the January 2, 2004 Expert Report of Dr. J. Kenneth Salisbury, (2) grant Immersion's motion to strike the January 8, 2004 Supplemental Expert Report of Dr. Salisbury, and (3) deny Sony's motion to amend its Final Invalidity Contentions. SCE's motion is based upon the memorandum set forth below, the accompanying declarations in support of the motion, the proposed order submitted herewith, the complete record of this action, evidence and argument presented at the hearing on this motion, and all matters of which the Court may take judicial notice.

## RELIEF REQUESTED

Pursuant to Federal Rules of Civil Procedure 60, 72 and 73, and Local Rule 72, SCE respectfully seeks a *de novo* review of, and an order setting aside, Magistrate Judge Brazil's February 26, 2004 Order to the extent it (1) grants Immersion's motion to strike portions of the January 2, 2004 Expert Report of Dr. J. Kenneth Salisbury, (2) grants Immersion's motion to strike the January 8, 2004 Supplemental Expert Report of Dr. Salisbury, and (3) denies Sony's motion to amend its Final Invalidity Contentions. Pursuant to Civil Local Rule 72-3(b), Sony further requests that the Court consider the Declaration of Douglas E. Lumish filed and served herewith in addition to the record that was before Magistrate Judge Brazil.

## MEMORANDUM OF POINTS & AUTHORITIES

## I.

## INTRODUCTION

Sony respectfully objects to Magistrate Judge Brazil's order issued February 26, 2004, and asks the Court to review *de novo* the portions of that order that (a) strike from evidence certain non-infringement opinions of Sony's expert Dr. Kenneth Salisbury related to Sony's theory of non-infringement under the reverse doctrine of equivalents, (b) prevent Sony from amending its invalidity contentions to add a single sentence specifying a ground for Sony's invalidity defense based on the patents' written description and (c) strike from evidence certain of Dr. Salisbury's invalidity opinions that support that ground.

Dr. Salisbury's timely-served non-infringement opinions at issue support Sony's non-infringement defense based on the "reverse doctrine of equivalents" – a long-standing and important doctrine that guards against a patentee covering with broad claims an accused product that is "substantially different" from the invention as described in the patent's specification. Magistrate Judge Brazil struck Dr. Salisbury's opinions that Sony's products are substantially different from the inventions described in the '213 and '333 patents "[u]nless Judge Wilken rules that this doctrine [the reverse doctrine of equivalents] is accessible to Sony." See Lumish Decl. Exh. A (Feb. 26 Order) at 4:14-17. There is no legal basis to exclude Sony's invocation of the reverse doctrine of equivalents – Immersion did not seek summary judgment on this question, and the doctrine itself is irrefutably a proper and viable theory of non-infringement that is available to Sony and to other patent infringement defendants. There is no legal authority that requires a patent infringement defendant to seek the Court's approval in the first instance to pursue any theory of non-infringement. Accordingly, Sony asks the Court to conclude that the reverse doctrine of equivalents is in fact "accessible" to Sony, and thus to set aside the portion of the February 26 Order that strikes Dr. Salisbury's opinions in support of this non-infringement ground (specifically, the following sections of Dr. Salisbury's report: 2:14-18; 3:15-4:20; 4:21-5:17 and fn. 3; 5:18-6:17; 31:10-34:10; 42:22-43:3).

With regard to Sony's invalidity defenses, Sony sought leave to amend its

Contentions to state as a basis for the patents' invalidity that the inventors were not in possession of an invention that conceptualized use of rotating mass actuators that were not fastened to a user's body. This theory was inadvertently omitted by counsel from Sony's Final Invalidity Contentions. On discovering the omission, Sony immediately sought leave to amend just seven weeks later. Magistrate Judge Brazil, finding a lack of "good cause," rejected Sony's request. Sony's counsel's error was inadvertent and counsel respectfully requests relief from its inadvertence. Further, Sony respectfully submits that it has shown significantly greater cause to amend its Invalidity Contentions than Immersion was able to show only weeks before Sony's motion when the Court granted Immersion's request to amend its Final Invalidity Contentions to include 15 new accused video games as accused products. In particular, unlike Immersion's desire to increase its potential damages at trial, Sony's omission was an inadvertent error of counsel and it is clear that Immersion has long been aware of the lack of fastening as a ground for Sony's written description defense. Moreover, the addition of this defense to Sony's Final Contentions would not impact the proceedings of this case: Immersion has already deposed Dr. Salisbury <u>twice</u> since receiving his supplemental expert report adding the single sentence concerning this defense and have questioned him on this subject matter.

If allowed to stand, the February 26 order would have a significant and prejudicial impact on Sony in this case. It would strip from Sony a legitimate and compelling basis for non-infringement without a motion from Immersion and without a proper legal basis, and it would punish Sony for an inadvertent omission by its counsel and it would unjustly reward Immersion by striking an equally compelling ground for the invalidity of the patents-in-suit. For the reasons set forth below, Sony respectfully objects to that order and asks the Court to set aside its ruling on page 2, lines 1 through 20 as clearly erroneous and contrary to law under Federal Rule of Civil Procedure 72.

## II.

## SONY'S OBJECTIONS TO MAGISTRATE JUDGE BRAZIL'S ORDER STRIKING PORTIONS OF DR. J. KENNETH SALISBURY'S JANUARY 2, 2004 EXPERT REPORT

Magistrate Judge Brazil's February 26 Order was dispositive because it struck

Sony's evidence of non-infringement based on the reverse doctrine of equivalents and because it eliminates a ground for Sony's defense that the patents-in-suit are invalid for failing to provide an adequate written description for the claims. In other words, the Magistrate judge has essentially disposed of Sony's reverse doctrine of equivalents defense without even reviewing the prodigious evidence that supports this defense. Sony believes that order to be dispositive and thus subject to Rule 72(b).[1] Accordingly, because Sony believes Magistrate Judge Brazil's order to be dispositive and thus subject to Rule 72(b), Sony submits this objection together with its above motion pursuant to Civil Local Rule 72-3 and Civil Local Rule 7-2 for de novo review of the specified rulings in that order. In the event the Court determines that Magistrate Judge Brazil's order was not dispositive, Sony files this motion pursuant to Federal Rule of Civil Procedure 72(a)[2] and Local Rule 72-3. Sony requests that its motion be granted and its objections be sustained.

**A. There Is No Legal Basis To Strike Dr. Salisbury's Opinions Concerning The Substantial Differences Between Sony's Products And The Immersion Patents**

**1. Magistrate Judge Brazil's Order Left It To Judge Wilken To Determine Whether The Reverse Doctrine Of Equivalents Was "Accessible" to Sony**

On January 2, 2004, Sony timely served Immersion with a non-infringement expert report from its technical expert Dr. J. Kenneth Salisbury.[3] Among other opinions in his report, Dr. Salisbury opined as follows:

> [E]ven if those limitations [of the asserted claims of the '213 patent] were found to be practiced, one of ordinary skill in the art would understand that the accused products are substantially different from the methods and apparatus described by the inventors in the '213 patent.... Accordingly, one of ordinary skill in the art would not find fastened vibrating devices to

---

[1] Magistrate Judge Brazil lacked authority under 28 U.S.C. § 636(b) to issue a dispositive order. See Ocelto Oil Corp. v. Sparrow Indus., 847 F.2d 1458, 1461 (10th Cir. 1988). The District Court must undertake *de novo* review of the Magistrate Judge's ruling when a party raises an objection to the Magistrate Judge's ruling on a dispositive matter. 28 U.S.C. § 636(b)(1)(B), (C) Ocelet Oil, 847 F.2d at 1461-62.

[2] Under Rule 72(a), a party can object to a Magistrate Judge's order concerning a "matter not dispositive of a claim or defense." Fed. R. Civ. P. 72(a).

[3] There is no dispute that this report was timely served in response to Immersion's submission of expert reports from Dr. J. Edward Colgate and from Dr. Ming Lin which set forth opinions concerning Sony's alleged infringement.

be equivalent to or interchangeable with non-fastened vibrating devices.

Lumish Decl.[4] Exh. B (Salisbury Jan. 2, 2004 Report) at 31:10-34:10. Dr. Salisbury then reached the same conclusion concerning the asserted claims of the '333 patent: "[E]ven if those limitations [of the asserted claims of the '333 patent] were found to be practiced, the accused products are substantially different from the methods and apparatus described by the inventors in the '333 patent." Id. at 42:22-43:3.

Dr. Salisbury's opinions in this regard are based on the discussion in his report explaining the disclosure of the inventions of the '213 and '333 patents as being limited only to vibrating devices that are fastened to a user's body. Id. at 2:14-18 (describing the specifications' descriptions of the preferred embodiment of the invention as a "glove with vibrating motors that is worn by a user"); 3:15-4:20 (describing the primary application for the inventions as described in the specifications as virtual reality gloves, and explaining the patents' description of certain such gloves in the prior art); 4:21-5:17 and footnote 3 (explaining the way in which the patents describe certain "problems" in the prior art, and the way in which the inventions purportedly address those problems); 5:18-6:17 (describing the way in which the patents describe delivering vibrations to the users' bodies).

These opinions are squarely and irrefutably relevant evidence to support Sony's assertions of non-infringement based on what is commonly called the "reverse doctrine of equivalents." This long-standing doctrine was explained by the Supreme Court in its seminal Graver Tank case: "[W]here a device is so far changed in principle from a patented article that it performs the same or a similar function in a substantially different way, but nevertheless falls within the literal words of the claim, the doctrine of equivalents may be used to restrict the claims and defeat the patentee's action for infringement." Graver Tank & Mfg. Co. v. Linde Air Prod. Co., 339 U.S. 605, 608-09 (1950) (emphasis added). Dr. Salisbury's opinions directly track this Supreme Court standard by stating that, even if the accused products fall within the claims, they are "substantially different" from the patents' descriptions of the inventions.

---

[4] Citations to the "Lumish Decl." are to the Declaration of Douglas E. Lumish In Support of Sony's Objection to Magistrate Judge Brazil's Feb. 26, 2004 Order and Motion For De Novo Determination, filed and served herewith.

Immersion moved to strike Dr. Salisbury's opinions supporting this theory despite the opinions' undeniable relevance to non-infringement under the reverse doctrine of equivalents. In his February 26 Order, Magistrate Judge Brazil granted Immersion's motion by finding that Judge Wilken needed to grant express permission to Sony in order for Sony to be able to advance this theory at trial. The order strikes the passages listed above from Dr. Salisbury's report, leaving Sony without this highly probative evidence of non-infringement. See Lumish Decl. Exh. A (Feb. 26 Order) at 6:5-6. Specifically, Magistrate Judge Brazil found as follows:

> Unless Judge Wilken rules that this doctrine [the reverse doctrine of equivalents] is accessible to Sony in the facts and circumstances of this case, a development whose likelihood is subject to substantial question, this rationale is unavailing.

Id. at 4:14-17.

In this way, Magistrate Judge Brazil summarily disposed of one of Sony's strong and legally proper defenses to Immersion's infringement allegations – allegations for which Immersion purports to be owed hundreds of millions of dollars in damages. The loss of this defense weakens Sony's position in a highly prejudicial way and cannot be sustained under the present record and the operative law.

To the extent Magistrate Judge Brazil's order leaves it to Judge Wilken to decide whether the reverse doctrine of equivalents is available to Sony, Sony respectfully submits that, as a matter of law, this is beyond question for the reasons discussed below. To the extent this decision holds that the reverse doctrine of equivalents is somehow *not* available to Sony, that determination was not only beyond the Magistrate Judge's authority; it was also clearly erroneous and contrary to law and should be reversed pursuant to § 636(b)(1) and Rule 72.

### 2. The Reverse Doctrine Of Equivalents Is Accessible To Sony

Immersion did not move for summary judgment of non-infringement, and has not moved to strike the reverse doctrine of equivalents as a basis for Sony's non-infringement defense. There has been no activity in this case that would remove or preclude in any way the reverse doctrine of equivalents as a proper legal theory for Sony's non-infringement defense, assuming that this doctrine was otherwise available to Sony. Moreover, the law is very clear that

the reverse doctrine of equivalents is as available to Sony in this case as it is to all defendants accused of patent infringement.

As explained in a recent scholarly article published in the Federal Circuit Bar Journal, the reverse doctrine of equivalents is a long-standing, and very viable, basis for finding non-infringement. See Lumish Decl. Exh. C ("The Doctrine of Equivalents: Both a Sword and a Shield," hereafter the "FCBJ Article"). As this article notes, the reverse doctrine of equivalents has its roots in a Supreme Court decision of over 100 years ago:

> The patentee may bring the defendant within the letter of the claims, but if the latter has so far changed the principle of the device that the claims of the patent, literally construed, have ceased to represent his actual invention, he is as little subject to be adjudged an infringer as one who has violated the letter of a statute has to be convicted, when he has done nothing in conflict with its spirit and intent.

Westinghouse v. Boyden Power Brake Co., 170 U.S. 537, 568 (1898); see also Lumish Decl. Exh. C (FCBJ Article) at 75-83.

The Supreme Court has repeatedly confirmed the continuing potency of the reverse doctrine of equivalents in several cases including its Graver Tank decision discussed above, and in its more recent Warner-Jenkinson decision:

> *Warner-Jenkinson* clearly endorsed *Graver Tank's* discussion of the restricting, or defensive, power of the DOE. Hence, the Supreme Court has firmly established and applied the same DOE in two ways: first, it may be used as a sword by patent owners to prove infringement when an accused product falls outside the literal claim language ...; and second, the DOE may be used as a shield by alleged infringers to prevent a finding of infringement when an accused device falls within the literal claim language but was so far changed in principle that it does not embody the same, or substantially the same device or combination of devices described in the patent.

Lumish Decl. Exh. C (FCBJ Article) at 81-83 (citing Warner-Jenkinson Co. v. Hilton Davis Chem. Co., 520 U.S. 17, 25-26 (1997)); id. at 97 ("From *Westinghouse* to *Graver tank* to *Warner-Jenkinson*, the Supreme Court has clearly established that the DOE, as both a shield and a sword, is a necessary doctrine to protect 'the delicate balance the law attempts to maintain between the inventors, who rely on the promise of the law to bring the invention forth, and the public, which should be encouraged to pursue innovations, creations, and new ideas beyond the inventor's exclusive rights.'") (quoting Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki, 535 U.S. 722,

731 (2002)).

The Federal Circuit has also confirmed the reverse doctrine of equivalents in numerous cases. See Lumish Decl. Exh. C (FCBJ Article) at 90, fn. 88 (citing Scripps Clinic and Research Foundation v. Genentech, Inc., 927 F.2d 1565, 1581 (Fed. Cir. 1991) ("so the purpose of the 'reverse' doctrine is to prevent an unwarranted extension of claims beyond a fair scope of the patentee's invention.") (reversing summary judgment of infringement, *inter alia*, to permit trial on defendant's reverse doctrine of equivalents defense); SmithKline Diagnostics, Inc. v. Helena Labs Corp., 859 F.2d 878, 889 (Fed. Cir. 1988) (finding that the defendant could establish noninfringement by showing that his device performs a similar function in a substantially different way); SRI Int'l v. Matsushita Elec. Corp., 775 F.2d 1107, 1123 (Fed. Cir. 1985) (en banc) ("Availability of the reverse doctrine of equivalents was set forth by the Supreme Court ..."); Kalman v. Kimberly-Clark Corp., 713 F.2d 760, 770 (Fed. Cir. 1983) (affirming district court's use of the reverse doctrine of equivalents)).

Recognizing the vitality of the doctrine, this Court too has applied the reverse doctrine of equivalents to grant summary judgment of non-infringement:

> The doctrine of equivalents may be applied in favor of plaintiffs or defendants in infringement cases. ... The doctrine of equivalents may also be applied in reverse, so that "where a device is so far changed in principle from a patented article that it performs the same or similar function in a substantially different manner, but nevertheless falls within the literal words of the patent," no infringement will be found.

See Precision Metal Fabricators, Inc. v. Jetstream Systems Co., 693 F. Supp. 814, 818-19 (N.D. Cal. 1988) (quoting Graver Tank, 339 U.S. at 608-09); see also id. at 819 ("Thus, based on the reverse doctrine of equivalents, defendants are entitled to summary judgment as to all three patents.").

Indeed, not only is the doctrine of equivalents a well-established and proper basis for a defendant to argue non-infringement, there is also considerable authority to establish that, to carry its ultimate burden of proving infringement, *Immersion* bears the burden of persuasion and must negate Sony's showing by proving that there are no substantial differences between Sony's accused products on the one hand and the description it gave to its inventions in the patents-in-

suit on the other hand:

> In other words, the infringement analysis does not necessarily end with a determination that the patent claim reads on the accused device. For as the [Federal Circuit] stated, "[i]f the accused infringer makes a *prima facie* case [of no infringement under the DOE defense], the patentee, who *retains the burden of persuasion* on infringement, must rebut the *prima facie* case. That is to say, the burden of proof (persuasion) on the infringement issue remains on the plaintiff-patentee.

See Lumish Decl. Exh. C (FCBJ Article) at 91-92 (quoting SRI v. Matsushita, 775 F.2d at 1124).

In sum, there is no legal basis to preclude Sony's assertion of the reverse doctrine of equivalents as a basis for its non-infringement defense. Immersion never moved for summary judgment to strike this theory, and there is no legitimate basis to argue that the doctrine is in any way unavailable to Sony. Accordingly, there is no basis whatsoever to strike Dr. Salisbury's opinions supporting a finding of non-infringement based on the reverse doctrine of equivalents, and the Court should set aside Magistrate Judge Brazil's order to the extent it strikes the following portions of that report: 2:14-18; 3:15-4:20; 4:21-5:17 and fn. 3; 5:18-6:17; 31:10-34:10; 42:22-43:3.

### 3. The Reverse Doctrine Of Equivalents Applies To The Court's Claim Construction Exactly As Issued

In his order, Magistrate Judge Brazil also expressed concern that permitting Sony to submit evidence that the written description of the patents-in-suit described only fastened vibrating devices "would enable Sony, in effect, to re-argue to the trier of fact the claim construction contentions the Court has squarely rejected." Lumish Decl. Exh. A (Order) at 4:3-13. To the contrary, Sony has no intention of re-arguing claim construction to the jury and would have no need to do so in advancing the reverse doctrine of equivalents as a basis for non-infringement: The doctrine, by definition, must apply a court's claim construction exactly as issued:

> "[W]here a device is so far changed in principle from a patented article that it performs the same or a similar function in a substantially different way, but nevertheless falls within the literal words of the claim, the doctrine of equivalents may be used to restrict the claims and defeat the patentee's action for infringement."

Graver Tank, 339 U.S. at 608-609.

> The so-called "reverse doctrine of equivalents" is an equitable doctrine invoked in applying properly construed claims to an accused device. ... The reverse doctrine of equivalents flows from the Supreme Court's statement in *Graver Tank* that an accused article may avoid infringement, even if it is within the literal words of the claim, if it is "so far changed in principle from a patented article that it performs the same or a similar function in a substantially different way."

Scripps, 927 F.2d at 1581 (emphases added).

Hence, under the operative law, Sony is entitled to argue that, even if the jury finds the accused products to fall within the claim language as construed by the Court, those products are substantially different from the description Immersion gave to its "patented articles" in the patents-in-suit, and, as a result, do not infringe:

> The DOE operates to expand *or restrict* the scope of a patent's claim language to assure the claims are afforded fair and appropriate breadth in view of the scope of the invention described in the patent. ... In either application of the doctrine, however, one concept remains vital to its proper application. That is, the extent to which the DOE affects the scope of a patent claim is determined by what is disclosed in the patent's specification, *i.e.*, the inventor's written description of the invention which he provided in exchange for receiving the limited monopoly.

See Lumish Decl. Exh. C (FCBJ Article) at 77 (italics in original, underscoring added); id. at 83 ("In other words, when the DOE is applied as either a sword or a shield, reference must be made to the disclosure of the invention in the patent's specification. That is the starting point!").

Thus, the reverse doctrine of equivalents expressly requires first a reading of the claims as construed on the accused products, and the a comparison of the invention disclosed in the patent specification and the accused products. Judge Brazil's concerns that the jury might be confused or that Sony is advancing a theory in conflict with the Court's claim construction are not legally cognizable under the reverse doctrine of equivalents law.

**4. Sony Would Be Irreparably Prejudiced If Its Reverse Doctrine Of Equivalents Evidence Is Stricken**

Magistrate Judge Brazil's February 26, 2004 Order strikes Sony's chief evidence of non-infringement under the reverse doctrine of equivalents – Sony's expert's opinions concerning the substantial differences between the invention Immersion described to the public in its patent specification on the one hand, and the much broader scope of its claims as applied against Sony's very different video game controllers on the other hand. This ruling imposes great

prejudice to Sony.

Immersion is seeking over $300,000,000.00 dollars in alleged damages in this case. Immersion bases this damages request on the claims of two patents that have nothing to do with the true inventions of the named inventors. Indeed, both inventors admit that they had left the company long before the claims at issue were filed, and that neither inventor could remember having any role in drafting or guiding the claims of the '213 patent. See Lumish Decl. Exh. D (Yim Depo.) at 16:9-18; id. at 24:4-6; id. at 28:20-30:22; Exhibit E (Tremblay Depo.) at 2-146:24 to 2-148:12. Unlike the virtual reality devices described in the patents, and unlike every claim that was prosecuted with the cooperation of the inventors, the '213 and '333 patents include the first claims that Immersion sought that did not include a "fastening" means or step as an explicit part of the invention. See Lumish Decl. Exh. F ('102 Original Application) at claims 1, 11, 21 and 23; id. Exh. G ('017 Parent Patent) at claims 1, 11, 21 and 23. For purposes of evaluating the reverse doctrine of equivalents the Court should not ignore the fact that Immersion only filed these claims *after* its negotiations with Sony made clear that the true nature of the virtual reality glove and like devices invented by Drs. Yim and Tremblay were fundamentally different from the simple, hand-held, non-fastened controllers sold by Sony.

The reverse doctrine of equivalents was conceived exactly for cases such as this – where a patentee seeks to stretch its patent to cover technologies it did not invent by filing broader claims over time which extend farther and farther beyond the description of the invention. Lumish Decl. Exh. C (FCBJ Article) at 97 ("Thus DOE, whether used as a sword or shield, provides a mechanism to ensure that what is fairly contemplated by a patent is protected."); id. at 98 ("Patentees and the courts may be tempted to push the limits of what is fairly contemplated by the written description to include other embodiments, even if such other embodiments are (1) not described in the patent, and (2) do not satisfy the established tripartite [function, way, result equivalency] analysis."). Sony should be entitled to present Dr. Salisbury's opinions to the jury to defend against Immersion's overreaching claims and its attempts to collect vast amounts of damages to which it is plainly not entitled. Magistrate Judge Brazil's ruling strips Sony of this evidence – and effectively even of argument – despite its irrefutable propriety under the legal

standards set forth by the Supreme Court and the Federal Circuit. This ruling is thus clearly erroneous and contrary to law and should be set aside. Fed R. Civ. P. 72.

## III.

## SONY'S OBJECTIONS TO MAGISTRATE JUDGE BRAZIL'S ORDER DENYING SONY'S MOTION FOR LEAVE TO AMEND ITS FINAL INVALIDITY CONTENTIONS

In his February 26 Order, Magistrate Judge Brazil also denied Sony's motion for leave to amend its Final Invalidity Contentions in order to add as a ground for its written description defense the lack of disclosure of any non-fastened vibrating devices in the patents-in-suit. See Lumish Decl. Exh. A (Feb. 26 Order) at 2:1-20.[5] The basis for this decision was Sony's failure to include the lack of fastening as a ground for its written description defense in its submissions following the Court's claim construction order of October 3, 2003. Id. Here again, Magistrate Judge Brazil's order deprives Sony of important argument and evidence to defend itself against Immersion's infringement contentions. As explained below, the punitive exclusion of this ground for Sony's written description defense is unwarranted by the nominal impact Sony's requested amendment would have on this case. Accordingly, Sony respectfully requests that that Order be set aside.

### A. The Omission Of Fastening As A Ground For Invalidity Was An Inadvertent Omission Of Counsel For Which Sony Should Not Be Penalized

It is true that Sony did not refer to the lack of fastening in its Final Invalidity Contentions on November 21, 2003 as an explicit ground for a written description violation. This, however, was an unintentional error of counsel that Sony's counsel sought to correct immediately upon its detection by promptly serving a supplemental expert report and moving the Court for leave to amend its Contentions only seven weeks after those Contentions were originally served. See Lumish Decl. ¶¶ 2-10. At no time did Sony abandon or intend to abandon this ground for its defense. Id. The Court has the power to set aside an order on the grounds of inadvertence upon such terms as are just. Fed. R. Civ. P. § 60(b). Sony respectfully requests that the Court do so.

---

[5] Sony's Motion is attached as Exhibit H to the Lumish Decl. filed herewith. Immersion's Opposition and Sony's Reply are Exhibits I and J to that declaration.

In submitting its Final Invalidity Contentions, Sony's counsel mistakenly omitted the additional ground for a written description that had ripened only seven weeks earlier when the Court issued its claim construction ruling on October 2, 2003. Lumish Decl. ¶ ¶ 2-10. Prior to that order, there was no basis for Sony to argue that the lack of fastening in the claims as construed by the Court violated the written description requirements of Section 112. During the period of time up until October 2, 2003 there was no ruling on the issue of whether fastening is required in the claims as Sony proposed. Sony therefore could not assert earlier that Immersion specifically violated the written description requirements by removing reference in its claims to the fastening means (which Sony contents are essential elements of Immersion's invention as set out in the written description).[6]

Although Sony's Final Invalidity Contentions did not reflect this new development in the case, that omission was entirely inadvertent and was not in any way intended to waive Sony's rights to argue the lack of fastening as a proper ground of defense. As this Court has held in similar circumstances – granting a defendant leave to add prior art that was omitted from a claim chart under the Court's Local Rules – preventing the jury from hearing relevant evidence and argument is unwarranted in the absence of bad faith:

> In contrast, the result Amersham urges may prejudice Perkin-Elmer and deprive the trier of fact of relevant evidence if the Japanese patent publication is excluded from the litigation. This result is wholly unwarranted in the absence of any indicia of bad faith. See Freeman v. Package Machinery Co., 865 F.2d 1331, 1341 (1st Cir. 1988) (holding that lower court is well within its discretionary authority in declining to impose the extreme preclusion sanction, in the absence of wilfulness, bad faith or significant prejudice); United States v. Sumitomo Marine & Fire Ins. Co., 617 F.2d 1365, 1369 (9th Cir. 1980) (holding that a court's use of sanctions for a party's failure to comply with discovery orders must be tempered by due process requirements; the preclusion sanction should not be imposed when a party's failure to comply is due to inability and not willfulness or bad faith); 3 Moore, Federal Practice and Procedure (3d Ed.1998), P16.92[6][b]("Preclusion of evidence or testimony is a grave step, and is by no means an automatic response to a delayed disclosure." Perkin-Elmer's proposed amendment satisfies Civil L.R.16-9(c) and is consistent with Rule 26(e) F.R.Civ.P., and Civil L.R.16-6(d). Civil L.R.16-9(c) must be read in harmony with the standards of Rule 26(a) and

---

[6] In its Answer, Sony pled Immersion's lack of compliance with the requirements of 35 U.S.C. § 112 (requiring that the patent specification "contain a written description of the invention … in [] full, clear, concise and exact terms). Sony also included its written description defense in both its Preliminary and Final Invalidity Contentions.

26(e), F.R.Civ.P., See Civil L.R.1-2(b)(These local rules "shall be construed so as to be consistent with the Federal Rules....").

<u>Amersham Pharmacia Biotech, Inc. v. Perkin Elmer Corp.</u>, 2000 U.S. Dist. LEXIS 1142 at *648-49 (N.D. Cal. Jan. 31, 2000).

Federal rule of Civil Procedure 60(b) provides the Court with the power to relieve a party of an order entered due to the party's inadvertence in order to preserve justice where the failure to do so would be unfair and unjust and highly prejudicial to the party. CITE. For the reasons discussed further below, Sony' respectfully submits that its counsel's should not merit the extreme and prejudicial result of preclusion under the circumstances of this case.

**B. The Court Recently Permitted Immersion To Amend Its Infringement Contentions**

Less than six weeks before Sony filed its Motion to Amend it Final Invalidity Contentions, the Court issued an order granting Immersion's motion add to its Infringement Contentions 15 video games that were not properly included in Immersion's Preliminary or Final Infringement Contentions. <u>See</u> Lumish Decl. Exh. K (Dec. 4 Order) at 1. This leave to amend was granted even though the fact discovery period had passed, many of the games were developed by third parties, and Sony would be unable to conduct meaningful discovery concerning these games. Moreover, the Court required Sony to provide additional financial discovery to Immersion after the cut-off concerning these newly added games. <u>Id.</u> at 2:1-4.

Like Sony's Motion to Amend, Immersion's motion required a showing of "good cause." <u>See</u> Patent Local Rule 3-7 ("Amendment or modification of the Preliminary or Final Infringement Contentions, or of the Preliminary or Final Invalidity Contentions, other than as expressly permitted in Patent L.R. 3-6, may be made only by order of the Court, which shall be entered only upon a showing of good cause."). The only reasoning Immersion offered to meet this standard was its desire to seek a higher damages award at trial. <u>See</u> Lumish Decl. Exh. L (Immersion Motion to Amend) at 1:11 ("These games have over a billion dollars in sales and add considerably to Immersion's damages."); 2:19-21 ("The addition of these games significantly impacts the amount of damages that Immersion can claim for infringement of the patents-in-suit"); 3:24-4:1 ("Sony should not be permitted to freeze its exposure for damages, or the

products at issue in the case, when Sony keeps introducing new infringing products."); 5:17-18 ("The issue at hand limits and defines the amount of damages recoverable by Immersion for Sony's patent infringement."). Immersion offered no other reason why "good cause" purportedly existed to add the new video games to the case after the discovery cut-off.

Sony asked the Court for leave to amend its Final Invalidity Contentions to include an important ground to an important defense. Unlike Immersion's request, however, as explained below, Sony's amendment would require no additional discovery at all, and would not in any way negatively impact Immersion's trial preparation. Via its Motion To Amend, and now via these Objections and Motion For De Novo Review, Sony seeks the same relief Immersion requested, but with an ample showing of good cause as established by the utter lack of prejudice that Immersion would incur if Sony's Motion were granted.

### C. Immersion Has Been Long-Aware of Sony's Written Description Defense And Of The Patents' Lack Of Description Of Unfastened Vibrating Devices As A Ground For That Defense

#### 1. Immersion Has Been Aware Of Sony's Written Description Defense From The Early Stages Of This Case

Sony pleaded a violation of 35 U.S.C. § 112 in its answer to the amended complaint in this action on October 21, 2002. See Lumish Decl. Exh. M (Answer to Amended Complaint). Seventeen months ago, in August, 2002, Sony also identified the violation of 35 U.S.C. § 112, para. 1's written description requirements[7] in its Preliminary Invalidity Contentions and in its responses to Immersion's interrogatories. See Lumish Decl. Exh. N (Preliminary Invalidity Contentions) at 15:17-19 ("Depending on how the claims are construed, the asserted claims of the '213 patent may also be invalid for failure to provide a written description of the invention as required by 35 U.S.C. §112(1)."); id. Exh. U (Response to Second Set of

[7] 35 U.S.C. § 112, para. 1 states that "The specification shall include a written description of the invention...." "The test for compliance with § 112 [para. 1] has always required sufficient information in the original disclosure to show that the inventor possessed the invention at the time of the original filing." Moba, B.V. v. Diamond Automation, Inc., 325 F.3d 1306, 1320-21 (Fed. Cir. 2003). Whereas the reverse doctrine of equivalents compares *accused products* to the written description of the invention to analyze non-infringement, a written description defense compares a patent's own *claims to* its written description to analyze whether the claims are properly supported by that description.

Interrogatories) at 4:3-5:9 (same).

Moreover, Sony's written description defense was set out in its Final Invalidity Contentions served only seven weeks ago on November 21, 2003. Specifically, Sony's Contention concerning written description stated: "The asserted claims of the '213 and '333 patents are invalid for failure to provide a written description of the invention as required by 35 U.S.C. § 112(1) as set forth in the expert report of Dr. J. Kenneth Salisbury, which is incorporated here by reference." See Lumish Decl. Exh. O (Final Invalidity Contentions) at 16:3-6. Dr. Salisbury's expert reports that had been served up to that time included opinions concerning the inadequacy of the patents' written descriptions, but did not include the specific ground that Sony now seeks to add to its Final Invalidity Contentions. See Lumish Decl. Exh. P (Salisbury Report Re: Invalidity of '213) at 161-166.

There can be no dispute that Sony has maintained a written description defense throughout this case.

**2. Sony's Requested Amendment Seeks To Add Only The Conclusion That Is Supported By Existing Opinions From Recent Reports Served By Sony's Expert, Dr. Salisbury**

In the weeks since the service of Sony's Final Invalidity Contentions, Dr. Salisbury served an additional report concerning Sony's non-infringement. This report includes opinions and rationale that directly support Sony's written description defense. Specifically, pursuant to the Court's December 3, 2003 Order, Dr. Salisbury served an expert report on January 2, 2004 that included the following passages:

> One of ordinary skill in the art would understand from the descriptions of the problems solved in the '213 and '333 patents (discussed above) that the patents' "invention" is the use of known rotating mass actuators that are fastened to a user's body in order to provide vibrations to the user.

See Lumish Decl. Exh. B (Salisbury Non-infringement Report) at 5.

> One of ordinary skill in the art reading the patents' extensive descriptions of fastening the vibrotactile units to a body part – and finding a lack of description for other means to deliver the vibrations to a user – would understand that the inventors were describing this fastening as part of their invention and would read the claims of the patents to require this same fastening.

Id. at 6.

> Moreover, based on the consistent and extensive description in the specification, one of ordinary skill in the art would understand that a "vibrotactile unit" is a device that is fastened to a user's body. ... As discussed above, this function, the *delivery* of the vibration to a user, is at the core of the "invention" described in the specification.

Id. at 7.

To make clear that these passages relate to the inadequacy of the written descriptions of the patents-in-suit, as well as the infringement issues also addressed in Dr. Salisbury's report, Dr. Salisbury served a supplemental report just six days later. The substance of this report is contained in only two sentences which read in their entirety as follows:

> In my opinion, a person of ordinary skill in the art reading the '213 and '333 patents would not understand from the patents that, as of November 30, 1995, the inventors were in possession as part of their invention of the concept of using rotating mass actuators that were not fastened to a user's body. The bases and reasons for this opinion are set forth in my January 2, 2004 expert report including, in particular, the discussion on pages 2 through 11, 31 through 34, and 42 through 43.

See Lumish Decl. Exh. Q (Supp. Salisbury Report) at 1.

Sony's requested amendment to its Final Invalidity Contentions merely adds the ultimate conclusion that flows from Dr. Salisbury's expert reports, namely that the lack of disclosure of non-fastened vibration devices renders the claims invalid. This addition seven weeks after service of the Contentions is minimal and does not meaningfully impact the parties' preparation of their cases.

**3. Immersion Has Been Aware Of The Ground For Written Description That Sony Seeks To Add To Its Final Invalidity Contentions For Over Nine Months**

The specific ground that Sony seeks to add for this defense via its requested amendment – the lack of disclosure of non-fastened vibrating devices – is also no surprise: Immersion has known since the claim construction proceedings in this case that Sony contended the asserted claims were not supported by an adequate "written description" as required by 35 U.S.C. § 112, para. 1 if they were construed not to require fastening of the vibrating devices to a user. More than 10 pages of Sony's claim construction briefing -- filed nearly a year ago on March 17, 2003 -- related directly to the specifications' overwhelming disclosure only of fastened vibrating devices and their complete lack of disclosure of unfastened vibrating devices. See

Lumish Decl. Exh. R (Claim Const. Brief) at 5:1-15:15. Further, Sony specifically noted that reading the claims to cover non-fastened devices would violate the written description requirements of 35 U.S.C. § 112:

> These claims [requiring fastening] establish what the inventors were describing as their invention, and claim the only inventions that are legitimately supported by the written description as mandated by 35 U.S.C. § 112. See 35 U.S.C. § 112, para. 1 ("The specification shall contain a written description of the invention"); Netword, 242 F.3d at 1352 (improper to "enlarge what is patented beyond what the inventor has described as the invention.").

Id. at 8:12-16.

Sony's presentation at the claim construction hearing was also centered on the fastening requirement of the claims as dictated by the disclosure of the specifications – 23 pages of the transcript are dedicated to this very point. See Lumish Decl. Exh. S (Claim Const. Transcript) at 6:8-29:23. Again, during this presentation, Sony specifically identified the invalidity aspect of the "fastening" dispute. See id. at 6:20-7:3 ("First, the extent of the discussion and emphasis in the specification on the concept of fastening, and the concept of fastening permeates the specification. And one of the things that many Federal Circuit cases teach us – and there's no absolute rule in any of this, and I'm not arguing to the Court there is – is that you may not expand the claims to beyond that which the inventors really invented, and there's a validity issue that I know lurks for later, and I know your honor keeps that issue for later.") Lumish Decl. Exh. S (Claim Const. Transcript) at 6:20-7:3. Not surprisingly, Immersion's presentation at the claim construction hearing too was focused almost entirely on the "fastening" argument. Id. at 38:14-49:21.[8]

In sum, Sony's requested amendment merely adds to its Rule 3-6 submission a ground for its written description defense about which Immersion has known for months, but to which explicit mention was inadvertently omitted from the Final Contentions.

[8] Ultimately, the Court construed the claims of the '213 and '333 patents as not limited to apparatus and methods that employ vibrating devices which are fastened to a user's body. See Lumish Decl. Exh. T (Cl. Const. Order) at 7:1-5. This construction, while different than the construction Sony proposed, establishes that the claims are invalid because they are not supported by a written description that is adequate under 35 U.S.C. § 112, para. 1.

### D. Immersion Would Not Be Prejudiced By The Requested Amendment

Over and above the lack of any surprise concerning the ground set out in the amendment, Immersion has no good faith basis to claim it would be prejudiced by the requested amendment in light of its timing. The requested amendment came with three months remaining until trial, and, as noted above, only seven weeks after Sony served its Final Invalidity Contentions. This left sufficient time for Immersion to submit, if it chose to, an expert report that responded to Sony's amended contention and to Dr. Salisbury's reports that support it.

Moreover, Dr. Salisbury's deposition concerning his January 2 report – the report setting out the bases and reasons for his written description opinion – was taken on January 12, 2004. During that deposition, Dr. Salisbury was questioned about his conclusion in his supplemental report that the written description does not support non-fastened devices. Sony then made Dr. Salisbury available for yet a third day of deposition on February 16, 2004. Thus, Immersion has had two separate opportunities to depose Dr. Salisbury on his opinions related to the disclosure of the patents-in-suit, including his conclusion that the specifications do not adequately describe non-fastened vibrating devices as part of the claimed inventions.

Furthermore, as explained above, the ground that Sony's requested amendment would add is directly supported by Dr. Salisbury's opinions in his non-infringement report which conclude that the specifications for Immersion's patents-in-suit describe only fastened vibrotactile devices as the "invention," and do not describe non-fastened devices. If the Court grants Sony's motion above and sets aside Magistrate Judge Brazil's order striking Sony's evidence of non-infringement under the reverse doctrine of equivalents, Immersion will be faced with these opinions in the context of the non-infringement issues in the case, and would have to respond to them in any event. Accordingly, there would be no meaningful burden or expense imposed on Immersion by the inclusion of the single sentence Sony asks to add.

### E. Sony Would Be Prejudiced By The Lack Of Its Written Description Defense Based On The Lack Of Fastening In The Claims

As explained above, there is compelling evidence that Immersion is stretching its patents to cover things that Drs. Yim and Tremblay did not invent by adding new claims after the inventors left the company and in an effort to capture Sony's products years after those inventors

left the company. The written description of the '213 and '333 patents has nothing to do with hand-held video game controllers such as Sony's DualShock and DualShock 2 controllers, and even less to do with Sony's Playstation consoles and video games. Despite this, Immersion intends to argue to the jury that it should receive hundreds of millions of dollars of the revenues Sony has received for the sales of these products.

Magistrate Judge Brazil's order limits Sony's ability to show the jury the differences between its products and what the inventors actually described as their invention before the broadened claims were added by Immersion's patent attorneys. This prejudices Sony's defense in this case, and unfairly punishes Sony for an inadvertent omission that could be remedied with no impact on Immersion's preparation of its case. Sony thus respectfully requests that the Court grant it the same leave to amend it recently provided Immersion, and permit Sony to raise its written description defense based on the lack of a fastening requirement in the claims of the '213 and '333 patents.

## IV.

## SONY'S OBJECTIONS TO MAGISTRATE JUDGE BRAZIL'S ORDER STRIKING DR. SALISBURY'S JANUARY 8 SUPPLEMENTAL INVALIDITY REPORT

In his February 26 Order, Magistrate Judge Brazil granted Immersion's request to strike a supplemental expert report submitted by Dr. Salisbury on January 8, 2004. Lumish Decl. Exh. Q (Salisbury Supp. Report). This report merely states the conclusion that supports Sony's position that the claims of the patents-in-suit are invalid because not supported by a proper written description under 35 U.S.C. § 112 as discussed above:

> In my opinion, a person of ordinary skill in the art reading the '213 and '333 patents would not understand from the patents that, as of November 30, 1995, the inventors were in possession as part of their invention of the concept of using rotating mass actuators that were not fastened to a user's body. The bases and reasons for this opinion are set forth in my January 2, 2004 expert report including, in particular, the discussion on pages 2 through 11, 31 through 34, and 42 through 43.

Id.

Magistrate Judge Brazil struck this report for the same reasons he denied Sony's Motion for Leave To Amend Its Final Invalidity Contentions to include this same ground in its

written description defense. See Lumish Decl. Exh. A (Feb. 26 Order) at 6:8-16. Accordingly, because the portions of the Magistrate Judge's February 26 Order denying Sony leave to amend should be set aside as discussed above, the portions of that same order striking Dr. Salisbury's supplemental expert report should be set aside for the same reasons.

## V.

## CONCLUSION

For the reasons set forth above, Sony respectfully requests that the Court sustain its objections to Magistrate Judge Brazil's February 26, 2004 Order to the extent it strikes portions of Dr. Salisbury's expert report and to the extent it denies Sony's Motion for Leave to Amend Its Final Invalidity Contentions.

Dated: March 3, 2004

Matthew D. Powers
Edward R. Reines
Douglas E. Lumish
Matthew Sarboraria
WEIL, GOTSHAL & MANGES LLP

By: /s/ Douglas E Lumish
Douglas E. Lumish
Attorneys for Defendants

SONY COMPUTER ENTERTAINMENT AMERICA INC. and SONY COMPUTER ENTERTAINMENT INC.