United States District Court
For the Northern District of California

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| REALNETWORKS, INC., Plaintiff(s), v. MICROSOFT CORPORATION, Defendant(s). | NO. C 03-05717 JW **ORDER DENYING MOTION TO TRANSFER** |

## I. INTRODUCTION

Plaintiff RealNetworks, Inc. ("RealNetworks") initiated this lawsuit against Defendant Microsoft Corporation ("Microsoft") asserting claims for antitrust violations. Pursuant to 28 U.S.C. §1404(a), Microsoft moves to transfer the case to the Western District of Washington for the convenience of the parties, witnesses, and the interest of justice. The motion was heard on March 1, 2004. For the reasons set forth below, the motion is denied.

## II. BACKGROUND

RealNetworks and Microsoft are Washington corporations and are headquartered in the Seattle area. They are both software companies. RealNetworks designs "streaming media" software used to "deliver[] audio and video content" over the internet. "Streaming" technologies enable a user to watch or listen to digital content as it is being delivered to his or her personal computer ("PC") without first downloading the entire file. Microsoft designs, among other things, PC operating system

Dockets.Justia.com

United States District Court
For the Northern District of California

software.

RealNetworks alleges that Microsoft has attained monopoly power in PC operating systems and is using this power to expand to digital media markets. RealNetworks also alleges that Microsoft has sufficient economic power in the market for server operating systems to restrain competition in the market for streaming media server software.

Microsoft has allegedly engaged in predatory pricing and exclusionary agreements. According to RealNetworks, Microsoft has spent about $500 million on software research and development, and yet gives its Windows Media products away for free or pays customers to take them. Microsoft allegedly does not charge for Windows Media Player and has offered financial incentives to encourage PC makers to install Windows Media Player. Further, Microsoft allegedly does not separately charge for the Windows Media Server (recently renamed to “Windows Media Services”), which it has allegedly tied to the Windows server operating system products. Microsoft allegedly distributes its Windows Media Encoder for free, and has paid content providers to encode their content in windows Media formats. Microsoft also allegedly licenses the Windows Media Rights Manager DRM solution for free. RealNetworks contends that there is no real valid business reason for Microsoft’s zero and negative pricing of its digital medial software from the perspective of the digital media software business.

Further, RealNetworks alleges that Microsoft has illegally tied its Windows Media Player to its Windows PC operating system. RealNetworks alleges that digital media players are separate products from PC operating systems, and firms have found it efficient to supply the products separately. RealNetworks alleges that consumer demand for the two products is different, and the price points for the products are different. Nevertheless, starting in 1999 and continuing to the present, Microsoft has allegedly distributed its Windows client PC operating systems bundled with its Windows Media Player: Microsoft conditions the availability of Windows on the simultaneous acquisition of Windows Media Player. Similar tying allegations are made with respect to Microsoft’s streaming media server software, Windows Media Services, and its server operating systems.

United States District Court
For the Northern District of California

RealNetworks alleges that there is no legitimate procompetitive justification for the tying.

In addition, RealNetworks alleges that Microsoft restricts competition by withholding or delaying access to essential information about the Windows PC operating system functionality and interfaces. RealNetworks alleges that Microsoft discloses necessary interfaces and technical information in a manner that discriminates among competing software vendors. RealNetworks alleges that Microsoft's practices are not technically justified, and are intended to and do reduce interoperability of products, stifle innovation and preclude competition. RealNetworks alleges that Microsoft's conduct is aimed at restricting or eliminating competition and consumer choice in the digital media markets.

RealNetworks alleges that it has been harmed by Microsoft's conduct. Among other things, RealNetworks' costs have allegedly gone up and its sales have allegedly gone down. Further, RealNetworks alleges that Microsoft's conduct forecloses competition and forecloses entry to the market by substantially raising the costs of its competitors and reinforces the existing barriers to entry while creating new barriers. RealNetworks also alleges that Microsoft's conduct deters innovation and discourages investors' willingness to invest in any technologies that Microsoft could conceivably take interest in and tie with Windows PC operating system and/or its other monopoly products in the future.

Federal jurisdiction is premised on the federal antitrust laws. 15 U.S.C. §§15 and 26, and 28 U.S.C. §§1331 and 1337. RealNetworks alleges that venue is proper in the Northern District of California because Microsoft transacts business and is found within this district, and because a substantial part of the events giving rise to the claims allegedly occurred within this district. 15 U.S.C. §§15 and 22, and 28 U.S.C. §1391(b)(c). RealNetworks asserts the following claims: (1) illegal maintenance of monopoly in the market for licensing of Intel-compatible PC operating systems, in violation of Section 2 of the Sherman Act, 15 U.S.C. §2; (2) attempted monopolization of the digital media markets, in violation of Section 2 of the Sherman Act; (3) unlawful tying of Windows Media Player to Windows PC operating system, in violation of Section 1 of the Sherman Act, 15 U.S.C. §1,

and California's Cartwright Act, California Business and Professions Code §§16720 and 16727; (4) unlawful tying of Microsoft's streaming media server software to Microsoft's server operating systems, in violation of Section 1 of the Sherman Act, and California's Cartwright Act; (5) restrictions in trade and commerce in violation of California's Cartwright Act; (6) unlawful and unfair business and practices as defined by California Business and Professions Code §17200; (7) below cost sales and use of a product as a loss leader in violation of California Business and Professions Code §§17043, 17044; and (8) unlawful exclusive dealing and other exclusionary agreements in violation of Section 1 of the Sherman Act. RealNetworks seeks compensatory damages, treble damages, restitution, and injunctive relief.

Presently before the Court is Microsoft's motion to transfer the action to the Western District of Washington pursuant to 28 U.S.C. §1404(a). Microsoft contends that the Western District of Washington is a significantly more convenient forum for the parties and witnesses because the two companies are headquartered there. Further, Microsoft contends that the State of Washington has a substantial interest in the dispute because the complaint challenges conduct that took place in that State. In contrast, RealNetworks contends that its decision to file suit in this district reflects its determination that this district is the most appropriate forum for trial based upon the need for access to third-party computer-industry trial witnesses within the subpoena range of this Court.

## III. STANDARDS

Motions to transfer venue are governed by Title 28 U.S.C. §1404, which provides that "for the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. 1404(a). A plaintiff's choice of forum is ordinarily given great weight. Lou v. Belzberg, 834 F.2d 730, 739 (9th Cir. 1987). The moving party bears a heavy burden of demonstrating that the existing forum is inconvenient and the convenience of parties and witnesses and interest of justice require transfer to another district. Commodity Futures Trading Commission v. Savage, 611 F.2d 270, 279 (9th Cir. 1979). In determining whether transfer is appropriate, courts often evaluate some or all of the



United States District Court
For the Northern District of California

following factors: the convenience of the parties; the convenience of the witnesses; judicial economy; relative ease of access to proof; availability of compulsory process; the courts' relative familiarity with the governing law; and relative docket congestion. See Hon. William Schwarzer, et al., California Practice Guide Federal Civil Procedure Before Trial, pp. 4:269-4:280 (The Rutter Group 2002). A court's decision to transfer a case on venue grounds is largely discretionary. Hatch v. Reliance Ins. Co., 758 F.2d 409, 414 (9th Cir. 1985), cert. denied, 474 U. S. 1024 (1985). A motion to transfer should not be granted if such a transfer will only shift, and not eliminate, any inconveniences. Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986).

## IV. DISCUSSION

It is undisputed that the present lawsuit might have been brought in the Western District of Washington. See Motion to Transfer at p.6. The only issue, therefore, is whether a transfer to the Western District of Washington is appropriate for the convenience of the parties and witnesses, and the interest of justice. The Court finds that a transfer would not serve these interests any more than having the case proceed here.

The Court notes at the outset that this case is likely to be transferred for pretrial purposes to the District of Maryland in light of the conditional transfer order issued by the Judicial Panel on Multidistrict Litigation. Therefore, the Court need not consider whether this district or the Western District of Washington is the more convenient venue for pretrial purposes. Instead, the Court will focus on trial of the case.

### A. Convenience of the Parties

Microsoft contends that trial of the case in the Western District of Washington will be significantly more convenient for the parties. Microsoft reasons that both parties are headquartered in Washington, and the officers and employees with knowledge relevant to RealNetworks' claims are in Washington. Microsoft contends that for both parties, the trial would be considerably less burdensome to their employees and less disruptive of their businesses if held in Washington rather than California.



United States District Court
For the Northern District of California

RealNetworks does not dispute that it is located in Washington, and that its officers and employees are in Washington. Nevertheless, RealNetworks points out that it has a significant presence in California as well. RealNetworks maintains a large office in San Francisco, and over 10% of its employees reside in California. Therefore, a transfer to Washington would appear to be more substantially more convenient for Microsoft, but not necessarily for RealNetworks. Further, RealNetworks persuasively argues that other factors, including convenience of the witnesses and the interests of justice, weigh more heavily in favor of proceeding with the case in California. These factors are discussed below.

B. Convenience of the Witnesses

According to RealNetworks, California has the largest concentration of companies working in the digital media space and related markets that are directly affected by Microsoft's conduct, including: (1) seven of eleven PC manufacturers who serve as a primary distribution channel for the competing products sold by RealNetworks and Microsoft[1]; (2) content delivery networks[2] and Internet content providers [3] including movie studios, record labels, and other producers of digital audio and video content; (3) Apple Computer, who RealNetworks identifies as a significant digital media competitor for both parties; and (4) significant numbers of customers[4] and competitors of Microsoft. In addition to the companies identified above, Realnetworks also identifies nineteen individuals located in this district who it intends to call as witnesses at trial.

It is an inescapable fact that this case involves far more than the conduct of the parties. A key issue for nearly all of RealNetworks' claims is whether Microsoft's conduct has had an unlawful

---

[1] The PC manufacturers are identified as follows: Acer; eMachines, Inc.; Fujitsu America; Gateway, Inc.; Hewlett-Packard Company; and Toshiba America Information Systems Inc.

[2] The content delivery networks are identified as follows: Seedera and Limelight Networks.

[3] The content providers are identified as follows: CNET Networks, Inc.; Sony Online Entertainment, Inc.; Yahoo! Inc.; Warner Bros. Entertainment, Inc.; Dream Works; and Walt Disney.

[4] The potential customers are identified as follows: Chevron Texaco; Hewlett-Packard; Intel; Kaiser Permanente; Stanford University; Sun Microsystems; University of California-Berkeley; and Wells Fargo & Co.

anticompetitive effect on the digital media market and other related markets. RealNetworks has satisfied this Court that important and considerable evidence on this issue is concentrated in the Northern District of California. There has been no showing that the Western District of Washington has a comparable concentration of evidence relevant to this issue. That additional evidence may be found elsewhere across the entire United States does not weigh in favor of a transfer to the Western District of Washington. Therefore, the convenience of the witnesses weighs in favor of holding the trial in California.

C. Interests of Justice

Microsoft contends that transferring this action to the Western District of Washington will serve the interest of justice because Washington has a superior interest in and connection to this dispute. Microsoft focuses on two factors. First, the conduct at issue – Microsoft's development and distribution of operating systems with streaming media and other related functionality – occurred in Washington. Second, Microsoft's conduct allegedly injured another Washington corporation, RealNetworks. Microsoft argues that the citizens of California should not be called on to resolve a dispute between two foreign corporations arising out of conduct occurring in another state.

Microsoft's argument overlooks a significant factor: RealNetworks alleges not only that it has been injured but that the digital media market and other technology markets have been injured as well. RealNetworks' complaint alleges that Microsoft engaged in unlawful conduct in this district including pressuring Apple to change the way Apple's Quick Time digital media software operated; entering into exclusionary licensing agreements with PC manufacturers that limited RealNetworks' ability to promote and distribute its software; destroying Netscape as a competitor and dominating the web browser market; and preventing the distribution of Sun Microsystem's Java platform and disrupting third parties from using universally compatible Java. Further, RealNetworks has identified numerous companies in this district who allegedly have been directly impacted by Microsoft's anticompetitive conduct. Therefore, California has a more substantial interest in adjudicating this case.

Microsoft next contends that the interests of justice are served by transferring the case to Washington because Washington's compulsory process may be applied to compel former Microsoft and RealNetworks employees to testify at trial. As discussed previously, however, numerous third party witnesses are in California. RealNetworks has a genuine and legitimate interest in maintaining the case in California in order to secure the testimony of these third party witnesses for trial.

Microsoft next accuses RealNetworks of improper forum shopping. Microsoft believes that RealNetworks chose to file suit here because RealNetworks perceives the jury pool here to be the most hostile to Microsoft of any jury pool in the country. Accordingly, Microsoft asks the Court to disregard RealNetworks' choice of forum. This Court has no basis from which to infer the hostility of the jury pool at this stage in the proceedings. Furthermore, jury voir dire is regularly used effectively to ensure a fair jury.

Microsoft further contends that RealNetworks has improperly asserted California statutory claims in an attempt to justify venue in California. The argument is unpersuasive because RealNetworks has alleged that much of Microsoft's conduct occurred in California. Under California law, "state statutory remedies may be invoked by out-of-state parties when they are harmed by wrongful conduct occurring in California." Norwest Mortgage, Inc. v. Superior Court, 85 Cal.Rptr.2d 18, 23 (Cal. Ct. App. 1999).

Lastly, Microsoft contends that the lower docket congestion in the Western District of Washington weighs in favor of transfer. According to data published by the Administrative Office of the United State Courts, on average, civil actions proceed from filing to trial in 18 months in the Western District of Washington and in 23.5 months in this district. The pace at which this case will proceed to trial, however, will probably be dictated by the Multidistrict Litigation proceedings in Maryland. Therefore, relative docket congestion does not justify a transfer to Washington.

//

//

//



United States District Court
For the Northern District of California

V. CONCLUSION

For the reasons set forth above, the motion to transfer pursuant to 28 U.S.C. §1404(a) is denied.

Dated: March 11, 2004

03cv5717transfer

/s/James Ware
JAMES WARE
United States District Judge



United States District Court
For the Northern District of California

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Bradley S. Phillips phillipsbs@mto.com

Donald E. Scott donald.scott@bartlit-beck.com

Edward D. Johnson Johnsone@Sullcrom.com

Eric Sidebotham esidebotham@mfmlaw.com

Eric R. Olson eric.olson@bartlit-beck.com

James McManis jmcmanis@mfmlaw.com

Lynn M. Engel lynne@summitlaw.com

Reeghan W. Raffals reeghan.raffals@bartlit-beck.com

Sean W. Gallagher sean.gallagher@bartlit-beck.com

**Dated: March 11, 2004**

**Richard W. Wieking, Clerk**

**By: /s JW Chambers**
**Ronald L. Davis**
**Courtroom Deputy**

**United States District Court**
For the Northern District of California