Apple Inc. v. Psystar Corporation
Doc. 680

KEVIN V. RYAN (State Bar No. 118321)
United States Attorney

OWEN MARTIKAN (State Bar No. 177104)
Assistant United States Attorney
450 Golden Gate Ave., 10th Floor
San Francisco, California 94102
Telephone: (415) 436-7241

THOMAS L. SANSONETTI
Assistant Attorney General
Environment and Natural Resources Division

LILY N. CHINN (State Bar No. 203173)
Trial Attorney
United States Department of Justice
Environmental Defense Section
P.O. Box 23986
Washington, D.C. 20026-3986
Telephone: (202) 514-0135
Facsimile: (202) 514-8865

ATTORNEYS FOR THE DEFENDANTS

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| OUR CHILDREN'S EARTH FOUNDATION, SANTA BARBARA CHANNELKEEPER, and GET OIL OUT,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. ENVIRONMENTAL PROTECTION AGENCY, MICHAEL LEAVITT, as Administrator of the U.S. EPA, and WAYNE NASTRI, as Regional Administrator of U.S. EPA Region 9,<br><br>Defendants. | Case No. C-04-0294-SI<br><br>EPA'S ANSWER |

Defendants U.S. Environmental Protection Agency, Michael Leavitt, and Wayne Nastri (collectively "EPA"), by and through counsel, hereby answer Plaintiffs' Complaint ("Complaint").



Dockets.Justia.com

## GENERAL DENIAL

Except as expressly admitted herein, EPA denies each and every allegation in the Complaint.

## SPECIFIC RESPONSES

EPA responds to the correspondingly numbered paragraphs of the Complaint as follows:

## INTRODUCTION

1. Paragraph 1 is a characterization of Plaintiffs' claim to which no response is required.

2. In response to the first and second sentences, EPA avers the following: EPA issued NPDES General Permit No. CA0110516 for discharges from Oil Platforms A, B, C, Edith, Eureka, Gilda, Gina, Habitat, Harvest, Henry, Hermosa, Hillhouse, Hidalgo and Hondo on February 18, 1982. EPA issued NPDES Permit No. CA0110419 for discharges from Oil Platform Beta Unit (Elly and Ellen) on July 25, 1979. EPA issued NPDES Permit No. CA0110737 for discharges from Oil Platform Gail on September 30, 1993. EPA issued NPDES Permit No. CA0110020 for discharges from Oil Platform Hogan on March 18, 1977. EPA issued NPDES Permit No. CA0110028 for discharges from Oil Platform Houchin on March 18, 1977. EPA issued NPDES Permit No. CA0110397 for discharges from Oil Platform Grace on September 30, 1993. EPA issued NPDES Permit No. CA0110842 for discharges from Oil Platform Harmony on June 5, 1992. EPA issued NPDES Permit No.CA0110851 for discharges from Oil Platform Heritage on June 5, 1992. EPA issued NPDES Permit No. CA0110648 for discharges from Oil Platform Irene on October 18, 1993. These NPDES permits speak for themselves, and therefore no further response is required to remaining allegations in the first and second sentences. EPA denies the allegations in the third sentence and avers that the NPDES permits have been administratively continued pursuant to Administrative Procedure Act ("APA") section 558(c), 5 U.S.C. § 558(c) and 40 C.F.R. § 122.6.

3. Paragraph 3 consists of legal conclusions to which no response is required. To the extent that this paragraph characterizes the Clean Water Act, the statute speaks for itself, and therefore no response is required.

4. On August 31, 1984, EPA issued a notice concerning the administrative continuance of Permit No. CA0110516. To the extent that paragraph 4 characterizes this administrative continuance, the notice document speaks for itself and no further response is required. NPDES Permit No. CA0110419 was automatically continued pursuant to APA section 558(c), 5 U.S.C. § 558(c) and 40 C.F.R. § 122.6 on December 31, 1983 by virtue of a timely reapplication submitted on June 29, 1983. NPDES Permit No. CA0110028 was automatically continued pursuant to APA section 558(c), 5 U.S.C. § 558(c) and 40 C.F.R. § 122.6 on December 31, 1981 by virtue of a timely reapplication submitted on June 29, 1981. NPDES Permit No. CA0110020 was automatically continued pursuant to APA section 558(c), 5 U.S.C. § 558(c) and 40 C.F.R. § 122.6 on December 31, 1981 by virtue of a timely reapplication submitted on June 29, 1981. NPDES Permit No. CA0110737 was automatically continued pursuant to APA section 558(c), 5 U.S.C. § 558(c) and 40 C.F.R. § 122.6 on May 31, 1998 by virtue of a timely reapplication submitted on November 26, 1997. NPDES Permit No. CA0110842 was automatically continued pursuant to APA section 558(c), 5 U.S.C. § 558(c) and 40 C.F.R. § 122.6 on May 28, 1997 by virtue of a timely reapplication submitted on November 28, 1995. NPDES Permit No. CA0110851 was automatically continued pursuant to APA section 558(c), 5 U.S.C. § 558(c) and 40 C.F.R. § 122.6 on May 28, 1997 by virtue of a timely reapplication submitted on November 28, 1995. NPDES Permit No. CA0110648 was automatically continued pursuant to APA section 558(c), 5 U.S.C. § 558(c) and 40 C.F.R. § 122.6 on June 30, 1998 by virtue of a reapplication submitted on March 28, 1998. NPDES Permit No. CA0110397 was automatically continued pursuant to APA section 558(c), 5 U.S.C. § 558(c) and 40 C.F.R. § 122.6 on July 31, 1998 by virtue of a timely reapplication submitted on January 26, 1998. The remainder of Paragraph 4 consists of legal conclusions to which no response is required. To the extent that Paragraph 4 characterizes the Clean Water Act and/or its implementing regulations, the statute and regulations speak for themselves, and therefore no response is required.

5. EPA is without sufficient knowledge or belief to either admit or deny the allegations contained in paragraph 5 and therefore the allegations are denied.

6. See response to Paragraph 49, below.

## JURISDICTION

7. EPA denies that this Court or any district court has subject matter jurisdiction over the Complaint. Pursuant to Section 509(b)(1)(F) of the CWA, the U.S. Courts of Appeal have exclusive jurisdiction over EPA actions related to the issuance or denial of NPDES permits. 33 U.S.C. § 1369(b)(1)(F). See EPA's Mot. For Judgment on the Pleadings, filed Mar. 23, 2004.

8. EPA is without sufficient knowledge or belief to either admit or deny the allegations contained in paragraph 8 regarding Plaintiffs and its members and therefore these allegations are denied. The remainder of the paragraph consists of legal conclusions to which no response is required.

9. EPA is an agency of the federal government. EPA Region 9's offices are located in the City and County of San Francisco. EPA Region 9's jurisdiction includes the area in which Oil Platforms A, B, C, Edith, Beta Unit (Ellen/Elly), Eureka, Gail, Gilda, Gina, Grace, Habitat, Harmony, Harvest, Henry, Heritage, Hermosa, Hillhouse, Hidalgo, Hogan, Hondo, Houchin, and Irene are operating. The remainder of paragraph 9 consists of legal conclusions to which no response is required.

## VENUE

10. EPA admits that the main office for Region 9 is located at 75 Hawthorne Street, San Francisco, California. The remainder of paragraph 10 consists of legal conclusions to which no response is required.

## INTRADISTRICT ASSIGNMENT

11. Paragraph 11 consists of legal conclusions to which no response is required.

## PARTIES

12. EPA is without sufficient knowledge or belief to either admit or deny the allegations contained in paragraph 12 and therefore the allegations are denied.

13. EPA admits that Environmental Defense Center submitted comments on behalf of Channelkeeper to EPA regarding the need for a lawful and updated NPDES permit for the Oil

Platforms. EPA is without sufficient knowledge or belief to either admit or deny the remaining allegations contained in paragraph 13 and therefore the allegations are denied.

14. EPA is without sufficient knowledge or belief to either admit or deny the allegations contained in paragraph 14 and therefore the allegations are denied.

15. EPA admits the first sentence of paragraph 15. In response to second sentence, EPA avers that EPA is an agency with responsibilities for administering requirements of the Clean Water Act, including permits for offshore oil and gas facilities located more than three miles from shore. The remainder of paragraph 15 is a characterization of Plaintiffs' claim and as such no response is necessary.

## LEGAL AND FACTUAL BACKGROUND

16. EPA admits that the twenty-two Oil Platforms are located on the Southern California Continental Shelf. EPA also admits that these twenty-two platforms have discharged one or more of the wastewater streams listed in the first sentence of paragraph 16 at any given sampling period. The remainder of paragraph 16 characterizes the Clean Water Act. This statute speaks for itself, and therefore no response is required.

### A. Issuance, Expiration and Purported Extension of the Oil Platforms' NPDES Permit

17. See response to paragraph 2.

18. Paragraph 18 characterizes the terms of specific NPDES permits issued by EPA. See response to paragraph 2 for the specific permits at issue. These permits speak for themselves, and therefore no response is required.

19. To the extent paragraph 19 characterizes a July 18, 2000 document entitled "FACT SHEET: Proposed National Pollutant Discharge Elimination System ('NPDES') General Permit No. CAG280000 for Offshore Oil and Gas Exploration, Development and Production Operations off Southern California" ("EPA 2000 Fact Sheet"), this document speaks for itself, and therefore no response is required. The term "notifications of general intent" used in the last sentence of paragraph 19 is vague and ambiguous and not defined in the Complaint, and thus on that basis EPA denies this sentence.

20. Paragraph 20 characterizes Clean Water Act implementing regulations. These

regulations speak for themselves, and therefore no response is required.

21. The first three sentences of paragraph 21 characterizes Clean Water Act implementing regulations. These regulations speak for themselves, and therefore no response is required. The last sentence of paragraph 21 is a legal conclusion to which no response is required.

22. EPA admits that a proposed NPDES general permit for offshore oil and gas exploration, development and production operations off Southern California was proposed on August 22, 1985, see 50 Fed. Reg. 34,036. Subsequently, a pre-notice draft permit was distributed for review on July 30, 1999. The draft permit was formally proposed on July 20, 2000, see 65 Fed. Reg. 45,063. On December 10, 2003, EPA submitted a revised permit and a consistency certification for the revised permit to the California Coastal Commission for review under the Coastal Zone Management Act. EPA denies the remainder of paragraph 22.

**B. Consequences of EPA Delay in Permit Re-Issuance: Failure to Achieve Technology-Based Effluent Limitations Required by the CWA**

23. Denied.

24. The first sentence of paragraph 24 characterizes the terms of NPDES Permit No. CA0110516. This permit speaks for itself, and therefore no response is required. EPA denies that the expiration date of June 30, 1984 was selected solely at the insistence of the California Coastal Commission. EPA avers that the expiration date was selected in consideration of a variety of factors including Clean Water Act sections 301(b)(2)(A) and 403(c). The last sentence of paragraph 24 characterizes the Clean Water Act. This statute speaks for itself, and therefore no response is required.

25. Paragraph 25 consists of legal conclusions to which no response is required.

26. The first two sentences of paragraph 26 characterize the Clean Water Act and/or its implementing regulations. The Clean Water Act and its implementing regulations speak for themselves, and therefore no response is required. EPA denies the third, fourth, fifth and sixth sentences of paragraph 26. EPA avers that in 1975, EPA proposed, among other things, Best Available Technology ("BAT") regulations for the offshore subcategory. See 40 Fed. Reg.

42,572 (Sept. 15, 1975). EPA published interim final rules reflecting Best Practicable Technology ("BPT") for, among other subcategories, offshore oil and gas in 1979. See 44 Fed. Reg. 22,069 (April 13, 1979). Based on new information and data in its record, EPA withdrew its 1975 New Source Performance Standards ("NSPS") proposal in 1980. See 45 Fed. Reg. 56,115 (August 22, 1980). In 1981, EPA withdrew its 1975 and 1976 proposed rules. See 46 Fed. Reg. 17,567 (March 19, 1981). In 1985, EPA proposed best conventional pollutant control technology, BAT, and NSPS for the offshore subcategory of the oil and gas industry. See 50 Fed. Reg. 34,592 (Aug. 26, 1985). In 1988, EPA published a notice of data availability and request for comments regarding the regulations proposed in 1985. See 53 Fed. Reg. 41,356 (Oct 21, 1986). EPA published this notice because subsequent to the 1985 proposal, EPA received significant new data and information. EPA also announced in this notice that it intended to promulgate the offshore regulations in two phases -- the first regulating discharges of drilling fluids and drill cuttings, produced water and other wastestreams. Id. EPA issued subsequent proposed rules in 1990, see 55 Fed. Reg. 49,094 (Nov. 26, 1990) and in 1991, see 56 Fed. Reg. 10,664 (March 13, 1991), prior to its publication of the final effluent guidelines for the offshore subcategory of the oil and gas extraction point source category on March 4, 1993. 58 Fed. Reg. 12,454 (March 4, 1993). The final 1993 offshore rule states "[t]his regulation is also established in response to a Consent Decree entered on April 5, 1990 (subsequently amended on May 28, 1992 in NRDC v. Reilly, D.D.C. No. 79-3442 (JHP). . . )." Id. at 12,455. The seventh and eighth sentences of paragraph 26 characterize Clean Water Act implementing regulations and the Oil Platform NPDES permits. These regulations and permits speak for themselves, and therefore no further response is required. See also response to paragraph 2. EPA admits the first sentence of footnote 2 which is attached to the eighth sentence of paragraph 26. The remainder of footnote 2 characterizes the Oil Platform NPDES permits. These permits speak for themselves, and therefore no further response is required.

27. Paragraph 27 consists of legal conclusions to which no response is required.

28. Paragraph 28 consists of legal conclusions and characterizes the Clean Water Act, which speaks for itself. Thus, no further response is required.

**C. Consequences of EPA Delay in Permit Re-Issuance: Failure to Achieve Effluent Limits Needed to Ensure Water Quality**

29. To the extent that paragraph 29 characterizes the Clean Water Act and the Oil Platform NPDES permits, the statute and permits speak for themselves, and therefore no further response is required. The remainder of the first sentence is a legal conclusion to which no response is required. The second sentence of this paragraph characterizes the EPA 2003 Fact Sheet[1]/. This document speaks for itself, and therefore no response is required.

30. Paragraph 30 characterizes the EPA 2003 Fact Sheet and the NPDES permits for the Oil Platforms. These documents speak for themselves, and therefore no response is required.

31. EPA denies the third sentence of paragraph 31. The remainder of this paragraph characterizes the EPA 2000 Fact Sheet and the EPA 2003 Fact Sheet. These documents speak for themselves, and therefore no response is required.

32. Paragraph 32 characterizes the EPA 2000 Fact Sheet, the EPA 2003 Fact Sheet, and the NPDES permits for the Oil Platforms. These documents speak for themselves, and therefore no response is required.

33. The first sentence of paragraph 33 consists of legal conclusions to which no response is required. EPA denies the second sentence of paragraph 33.

**D. Continued EPA Delay and Unwillingness to Comply with the Coastal Zone Management Act**

34. Denied.

35. Paragraph 35 characterizes the Coastal Zone Management Act. This statute speaks for itself, and therefore no response is required.

36. Paragraph 36 characterizes the Coastal Zone Management Act. This statute

---

[1]/ For the purposes of this Answer, EPA assumes that Plaintiffs' use of the "EPA 2003 Fact Sheet" in the Complaint refers to a December 9, 2003 EPA document entitled: "FACT SHEET: Proposed National Pollutant Discharge Elimination System ('NPDES') General Permit No. CAG280000 for Offshore Oil and Gas Exploration, Development and Production Operations off Southern California."

speaks for itself, and therefore no response is required.

37. EPA admits that the California Coastal Commission is one state agency that administers the Coastal Management Plan.

38. The first sentence of paragraph 38 characterizes the EPA 2000 Fact Sheet. This document speaks for itself, and therefore no response is required. EPA admits that the California Coastal Commission held a meeting on January 9, 2001 in Los Angeles, California regarding the consistency of EPA's proposed NPDES General Permit No. CAG280000 with the California Coastal Management Plan. The remainder of the paragraph characterizes statements made at the January 9, 2001 meeting. This meeting was transcribed verbatim by a certified court reporter and the transcript speaks for itself. Therefore, no further response is required.

39. EPA admits that it did not issue a final revised permit, but denies the remainder of the first sentence of paragraph 39. The remainder of the paragraph characterizes the proposed revised NPDES General Permit No. CAG280000 dated December 10, 2003 and the EPA 2003 Fact Sheet. These documents speak for themselves, and therefore no response is required.

40. EPA admits that it has not yet published a notice of availability of the proposed revised NPDES General Permit No. CAG280000 for public comment in the Federal Register, but denies the remainder of the first sentence of paragraph 40. EPA is without sufficient knowledge or belief to either admit or deny the allegations contained in the second sentence of paragraph 40 and therefore the allegations are denied. The third sentence of paragraph 40 is legal conclusion to which no response is required. EPA denies the last sentence of paragraph 40.

## FIRST CLAIM FOR RELIEF

Violation of the APA

5 U.S.C. §§ 701, et seq.

Request for Injunction to Compel Action on Pending Permit Applications

41. Paragraph 41 incorporates the previous admissions and denials as set forth in Paragraphs 1 through 40.

42. The first and third sentences of paragraph 42 characterizes the Clean Water Act and the Administrative Procedure Act. These statutes speak for themselves, and therefore no

response is required. The second sentence of this paragraph is a legal conclusion to which no response is required.

43. EPA admits the first sentence of paragraph 43. EPA denies the second sentence of paragraph 43.

44. EPA has received applications for renewal of the NPDES permits for the offshore facilities as described in paragraph 4, above. The remainder of the first sentence of paragraph 44 is a legal conclusion to which no response is required. EPA denies the second sentence of paragraph 44. The remainder of paragraph 44 consists of legal conclusions to which no response is required.

45. Paragraph 45 consists of legal conclusions to which no response is required.

46. Paragraph 46 consists of legal conclusions to which no response is required.

47. Paragraph 47 consists of legal conclusions to which no response is required.

48. Paragraph 48 consists of legal conclusions to which no response is required.

## REMEDY

49. EPA denies paragraph 49. EPA also avers that this court does not have jurisdiction over Plaintiffs' claim and thus can offer no remedy to Plaintiffs. See response to paragraph 7.

## PRAYER FOR RELIEF

The remaining paragraphs of the Complaint contain Plaintiff's prayer for relief to which no response is required, but insofar as an answer may be required: denied.

## AFFIRMATIVE DEFENSES

A. The Court lacks jurisdiction over the Complaint.

B. Plaintiffs fail to state a claim under which relief can be granted.

C. Plaintiffs failed to exhaust administrative remedies.

D. Plaintiffs' claim is barred by the relevant statute of limitations.

Respectfully submitted,

KEVIN V. RYAN
United States Attorney

OWEN MARTIKAN
Assistant United States Attorney

THOMAS L. SANSONETTI
Assistant Attorney General
Environment and Natural Resources Div.

DATED: March 23, 2004

/s/ Lily N. Chinn
LILY N. CHINN
Trial Attorney
United States Department of Justice
Environmental Defense Section
P.O. Box 23986
Washington, D.C. 20026-3986

OF COUNSEL:

SUSMITA DUBEY
Office of General Counsel (2355A)
U.S. Environmental Protection Agency
1200 Pennsylvania Ave. N.W.
Washington, DC 20460

MARCELA VON VACANO
Office of Regional Counsel
U.S. Environmental Protection Agency Region IX
75 Hawthorne Lane
San Francisco, CA 94105

**CERTIFICATE OF SERVICE**

I certify that on March 23, 2004 true and correct copies of *EPA's Answer* were served electronically via the Court's e-filing system to:

Counsel for Plaintiffs at:

Danielle R. Fugere (dfugere@aol.com),
George E. Hays (georgehays@mindspring.com),
Linda Krop (Lkrop@edcnet.org),
Rachel Ellyn Shapiro (rshapiro@selmanbreitman.com),
Christopher Alan Sproul (sproul@sbcglobal.net),

and by first class mail to Counsel for Intervenors:

Stephanie A. Jones
Jocelyn Thompson
Kurt Weissmuller
Weston Benshoof Rochefort Rubalcava & MacCuish LLP
333 South Hope Street
Sixteen Floor
Los Angeles, CA 90071

/s/ Lily N. Chinn