Apple Inc. v. Psystar Corporation Doc. 716

Melvyn D. Silver - S.B. #48674
Ruth Silver Taube - S. B. #169589
LAW OFFICES OF SILVER & TAUBE
300 South First Street, Suite 205
San Jose, California 95113
Telephone: (408) 298-9755
Facsimile: (408) 298-9699

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| DAVID DIGIACOMO,<br><br>Plaintiff,<br><br>vs.<br><br>LIBERTY LIFE ASSURANCE COMPANY OF BOSTON; ADOBE SYSTEMS INCORPORATED GROUP DISABILITY INCOME PLAN, et al.<br><br>Defendants.<br>_______________________________/ | ) | CASE NO.:C03 00538 JF PVT<br><br>**Plaintiff's Reply to Defendant's Opposition to Plaintiff's Motion for Summary Judgment**<br><br>Date: April 12, 2004<br>Time: 9:00 a.m.<br>Judge: Honorable Jeremy Fogel |



Dockets.Justia.com

# I. Table of Contents


I. Introduction . . . . . . . . . . . . 1

II. Standard of Review. . . . . . . . . . . . 2

A. Jebian Issue. . . . . . . . . . . 2

B. Insurance Commissioner's Opinion Letter. . . . . . 4

III. Argument. . . . . . . . . . . . 7

A. Despite Liberty Life's Introduction of a New but Equally Unpersuasive Post Hoc Rationale, Liberty Life Is Restricted to the Indefensible Rationale that It Articulated in the Denial Letters. . . . . . . . . . . 7

B. Defendant Focuses Solely on Physical Limitations and Restrictions and Does Not Attempt to Evaluate Whether Plaintiff Had the Mental Acuity Necessary for His Cognitively Demanding Job. . . . . 12

C. Plaintiff's Cases Survive Nord. . . . . . . . 13

IV. Conclusion. . . . . . . . . . . . 25

## II. Table of Authorities

Cases


*Black and Decker v. Nord*, 123 S.Ct. 1965 (2003). . . . . . . 13, 14

*Collins v. Continental Casualty Company,* 2004 U.S.App.LEXIS 985 (8th Cir. 2004). . 8

*Conrad v. Reliance Standard*, 292 F.Supp.2d 233 (D.C. Mass. 2003). . . . 13

*Cook v. Liberty Life*, 320 F.3d 11 (1st Cir. 2003). . . . . . . . 11

*Dishman v. UNUM Life Insurance Co. Of America*, 269 F.3d 974 (9th Cir. 2001). . 11

*Govindarajan v. FMC Corp.*, 932 F.2d 634 (7th Cir. 1991). . . . . 13

*Hawkins v. First Union Corporation*, 326 F.3d 914 . . . . 1, 7, 11, 12

*Isabel v. Hartford Life and Accident Insurance Company*, 1999 U.S.Dist.LEXIS 824 (N.D. Cal. 1999). . . . . . . . . . 14

*Jebian v. Hewlett Packard,* 348 F.3d 1098 (9th Cir. 2003). . . . . . 3, 7, 14

*Kentucky Ass'n of Health Plans v. Miller,* 538 U.S. 329 (2003). . . . . 6

*LaBarge v. Life Insurance Company of North America* . . . . . 14

*Lain v. UNUM,* 279 F.3d 337 (5th Cir. 2002). . . . . . . 8

*Marziale v. Hartford Life & Accid. Ins. Co.*, 2002 U.S.Dist.LEXIS 11321 (E.D. LA. 2003). . . . . . . . . . 10

*Mitchell v. Eastman Kodak Company*, 113 F.3d 433 (3rd Cir. 1996) . . . 8

*Mongulezo v. Baxter Travenol LTD Plan*, 46 F.3d 939 (9th Cir. 1995). . . . 11

*Morgan v. UNUM Life Insurance Co. of America*, 2002 U.S.Dist.LEXIS 17663 (D.C. Minn. 2002). . . . . . . . . . 10

*Palmer v. University Medical Group*, 994 F.Supp. 1221 (D.C. Ore. 1998). . 8, 9, 12

*Quesinberry v. Life Insurance Company*, 987 F.2d 1017 (4th Cir. 1993). . . . 11

*Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355 (2002). . . . . 5, 6

*Russell v. UNUM*, 40 F.Supp.2d 746 (Dist. S.C. 1999). . . . . . 14

*Zavora v. Paul Revere Life Insurance Co.*, 145 F.3d 1118 (9th Cir. 1998). . . 14

**Statutes**

**29 U.S.C. 1144(b)(2)(A). . . . . . . . . . 6**

**29 U.S.C. 1144(a). . . . . . . . . . . 6**

**Cal. Ins. Code § 10291.5. . . . . . . . . . 6**

**Cal. Ins. Code § 10291.5(b)(1). . . . . . . . . 6**

**Cal. Ins. Code § 10291.5(b)(13). . . . . . . . . 6**

## I. Introduction

An examination of the briefs that Liberty Life filed with the court leaves the erroneous impression that Liberty Life's denial letters were replete with discussions of surveillance reports, websites, and attacks on Mr. Di Giacomo's credibility. In fact, the denial letters make absolutely no mention of surveillance reports and websites, and there are no attacks on Mr. DiGiacomo's credibility. In the instant case, defendant's post hoc rationale is not only too late but is also unpersuasive. In its Opposition, defendant not only argues that the substantial evidence in support of its decision includes a surveillance report (Def. Opp., 25:1-3) that it acknowledges was never received until after the final denial, but Liberty Life goes as far as to make the incredible claim that the surveillance report is actually "**in** the file." (Def. Opp., 22:27:28- 23:1). Not content with fabricating a new administrative file, defendant outdoes itself by introducing into evidence, in addition to Mr. DiGiacomo's personal website, a web page from the website at http://www.mobygames.com which refers to a game created by a **different** David DiGiacomo (spelled David Di Giacomo.) Liberty Life even erroneously identifies the Moby Game's web page in its Errrata as part of plaintiff David DiGiacomo's website. These efforts are evidently calculated to detract attention from the indefensible grounds for denial of plaintiff's claim set forth in the two denial letters (Ex. 18 and 30). The grounds for denial in the claim and appeal denial letter boil down to defendant's contention that 1) plaintiff's complaints are subjective and testing is essentially normal; and 2) the effects of the pain medication are irrelevant because Donnatal is not a narcotic, and he began taking Donnatal in June about the time he began to work part-time. However, courts have recognized, as Judge Posner stated in Hawkins v. First Union Corporation Long-Term Disability Plan, 326 F.3d 914, 919 (7th Cir. 2003), that a finding of disability can be predicated on subjective complaints of pain and that pain often "cannot be detected by laboratory tests." Additionally, Liberty Life appears to have adopted a rule, which is nowhere in the plan that, unless pain medication is a narcotic, Liberty Life will disregard the effects of pain medication. However, even Liberty Life's nurse acknowledges that Donnatal is sedating, and it defies logic and common sense to argue that the barbituate, phenobarbital, which is contained in Donnatal is not impairing. Moreover, as discussed at length in plaintiff's Opposition, the administrative record clearly reflects the fact that Mr. DiGiacomo began taking

Donnatal consistently on March 28, 2001 prior to his return to a part-time accommodated job performed primarily from home on May 21, 2001. The fact remains that defendant's only supporting evidence is the terse, error-ridden, sketchy, and selective paragraph written by Liberty Life's in-house nurse reviewers of no known specialization which are clearly entitled to little weight and which does not constitute substantial evidence. Liberty Life has arbitrarily refused to credit the opinions of Mr. DiGiacomo's physician specialists. Liberty Life's new "reviewing nurse rule" is nowhere to be found in the case law. Courts have consistently rejected, under any standard of review, denials, like Liberty Life's, that are predicated on the absence of gross abnormalities on medical tests and that completely ignore complaints of pain and the side effects of pain medication.

## II. Standard of Review

### A. Jebian Issue

In its Opposition, defendant argues that it substantially complied with ERISA regulations and, therefore, the standard of review is abuse of discretion. However, defendant's argument lacks merit. In its Opposition, defendant acknowledges that in phone calls of November 8 and 26 it informed Mr. DiGiacomo that it was aware that it had 60 days to render a response to Mr. DiGiacomo's appeal and that, unless Liberty Life requests an extension before the end of the 60 day period, it was required by ERISA regulations to render an appeal decision within 60 days. (Ex. 33a and 33b). Defendant acknowledges that it received Mr. DiGiacomo's appeal on September 24, 2001. Therefore, since Liberty Life acknowledges that it did not request an extension within 60 days, it was required to render an appeal decision by November 24, 2001. In its Opposition, defendant contends that it substantially complied with the requirement to render a decision within 60 days because its delay was justified by its need to respond to the California Department of Insurance with whom Mr. DiGiacomo had filed a complaint. However, the letter which defendant wrote to Mr. DiGiacomo and copied to the Department of Insurance cannot possibly justify its delay. The letter (Ex. 33 & 39) states that "[t]his letter responds to the request for assistance that you submitted to the California Department of Insurance. It contains only two substantive sentences that refer to Mr. DiGiacomo's claim:

> Our records show that your long term disability benefits were denied based on a determination that the medical findings did not establish that your medical

> condition was of a nature and severity which would prevent you from performing the material and substantial duties of your occupation....You were sent denial letters dated August 10, 2001 (and revised September 6, 2001) which explained to you in detail the basis for the denial of your claim. Under ERISA guidelines, you were advised of your right to appeal this claim denial. Our office has received your September 17, 2001 letter requesting an appeal of the denial of your claim, along with additional medical documentation.

The rest of the letter contains the plan definition of disability and repeats the ERISA statutory time limits for an appeal response. A letter that merely states conclusorily that the claim was denied because plaintiff did not meet the plan definition of disability without any reasoning or new information that would require research or investigation and that the insurer had received plaintiff's appeal cannot possibly justify the failure to comply with ERISA regulations or could constitute the meaningful dialogue contemplated in it Jebian v. Hewlett Packard, 349 F.3d 1098 (9th Cir. 2003). Defendant also contends that its delay was in part due to the fact that Mr. DiGiacomo did not respond to its letter requesting pharmacy information and an updated medical authorization. However, this argument lacks merit since Liberty Life admittedly did not send Mr. DiGiacomo a letter requesting pharmacy records until November 9, 2001, 15 days before the end of the 60 day period. (CF 55, Ex. 40). Moreover, contrary to Liberty Life's contention, Mr. DiGiacomo did respond promptly. The November 9 letter was sent from Dover, New Hampshire which would take at the very least 3 to 4 days. (Ex. 40). Defendant states in its Opposition that "[p]laintiff did not provide Liberty with requested pharmacy information until November 14, 2001." The administrative record reflects (Ex. 41, CF50) that Mr. Di Giacomo faxed back a response at 7:20 a.m. on November 14 with a cover letter dated November 13. Contrary to Liberty Life's implication that Mr. DiGiacomo was a cause of Liberty Life's delay, it is evident that Mr. DiGiacomo responded promptly on the date he received the letter and utilized a fax rather than the U.S. mail in order to assure that Liberty Life received a prompt response. Liberty Life offers no explanation for the fact that it waited until 15 days prior to the end of the 60 day period to request authorization to first obtain pharmacy records when Mr. DiGiacomo states in his September 17, 2001 appeal (Ex. 23) that he was taking Donnatal which impaired his concentration and caused drowsiness and Dr. Verhille's records in Liberty Life's possession reflected that Mr. DiGiacomo had been taking Donnatal consistently since March, 2001.

In the instant case, Liberty Life was not engaged in the meaningful dialogue contemplated in Jebian because the only communications regarding the processing of Mr. DiGiacomo's claim

were the letter regarding his complaint to the Insurance Commissioner, which, as discussed above, merely stated that the appeal response was pending and the two calls from David DiGiacomo on November 8, 2001 and November 26, 2001 inquiring as to the status of his appeal. In response to the November 8, 2001 inquiry, Liberty Life stated that it was "still reviewing his file." Mr. DiGiacomo asked for Liberty Life's understanding of the 60 day time frame. He was advised that Liberty Life has "60 days in which to render decision unless there may be additional information lacking or that we may need to obtain. If [Liberty Life] notif[ies] him prior to the 60 day limit then [Liberty Life] may have up to 120 days." Mr. DiGiacomo asked "when [he] would know and if [Liberty Life] would advise him within 60 days." Liberty Life told him that it "could not give him a date - however we rec'd his appeal on 9/24/01 - and he would know something within 60 days of receipt of his appeal." (Exhibit 33a). In fact, Liberty Life failed to notify Mr. DiGiacomo within 60 days of the appeal. On November 26, 2001, Mr. DiGiacomo called to inquire why his review had not been completed within 60 days. He was advised that Liberty Life "review[ ] files in the order in which we get them." (Exhibit 33b). These two status inquiries and responses clearly do not constitute the "meaningful dialogue" described in Jebian.. Liberty Life did not notify Mr. DiGiacomo prior to the 60 day limit that it required additional time and, as set forth above, the claim was deemed denied on November 23, 2001. Therefore, there was no opportunity for the exercise of discretion, and the denial is reviewed de novo.

**B. Insurance Commissioner's Opinion Letter**

In its Opposition, defendant contends that the California Insurance Commissioner's Opinion Letter and Notification of Intent to Withdraw approval of insurance policies containing discretion is not binding because it is not final as the affected insurers have 30 days to request a hearing. However, this argument lacks merit because the publication of the opinion is a separate act from the issuance of the Notice of Withdrawal and its persuasive effect is not dependent on the withdrawal notice. Nothing in the notice to withdraw negates, delays, or in any way affects the conclusion reached in the letter opinion that the discretionary language in the police at issue in this case violates California and in the DOI's amicus brief that it has long been the DOI's position that such language violates California law and will not be approved. (Ex. 42).

Defendant next contends that the Letter Opinion is irrelevant, because even though the clause may have been determined today to be invalid, it had not been determined to be unlawful

when the appeal was denied. This argument is devoid of logic and commonsense and ignores basic ERISA trust law. It is a basic principle of trust law that "a provision in the terms of a trust is invalid if illegal." Restatement (Second) of Trusts, § 60. However, the invalidity of a particular trust provision due to illegality does not invalidate the entire trust unless "the illegal provision cannot be separated from the other provisions without defeating the purpose of the settlor in creating the trust." Id. at § 65. In this case, DOI's opinion makes clear that the discretionary language in the policy violates California insurance law. The separation of the discretionary language from the other policy provisions does not defeat the purpose of the settlor in creating the trust because there is no indication that Adobe's purpose in creating the plan was anything other than to provide its employees with benefits in the event of disability. In fact, invalidity of the discretionary language is more likely to promote Adobe's purpose in creating the plan than enforcement of the discretionary language. Defendant's reliance on cases that hold that a claim is governed by the terms of the plan in effect at the time of the events giving rise to the claim is misplaced because in the cases cited by defendant the terms of the plan in effect at the requisite time were not unlawful and did not violate state law. Therefore, the court should enforce the plan terms without giving effect to the illegal language - that is, it should review Mr. DiGiacomo's claims de novo.

Additionally defendant argues that the presence of a fiduciary relationship and of conflict of interest analysis undermine the Department of Insurance's conclusion that discretionary language deprives California insureds of state protections. This argument lacks merit because, despite the fiduciary relationship and conflict of interest analysis, it is axiomatic that the abuse of discretion standard of review deprives a California claimant of the scrutiny of a de novo review.

Finally, in a sentence which is not a model of clarity and which misstates ERISA jurisprudence on the issue of preemption, defendant states that "the commissioner's opinion is expressly preempted by ERISA because the decision falls within the deemer clause of ERISA." In fact, defendant misconstrues the ERISA "deemer" clause. The deemer clause only provides that state law regulating insurance shall not apply to self-insured plans. In the seminal Supreme Court case of Rush Prudential HMO, Inc. v. Moran, 536 U.S. 355, n. 6 (2002), the Supreme Court stated that "ERISA's "deemer" clause provides an exception to its saving clause" and that the deemer clause "forbids states from regulating self-funded plans as insurers." Since the plan at issue is not

a self-funded plan (a plan funded solely by Adobe without the purchase of insurance) but a fully insured plan because Adobe purchased insurance from Liberty Life, the deemer clause is not applicable in the instant case.

Defendant's argument that the law at issue, Cal. Ins. Code § 10291.5(b)(1), (13), is not a law that regulates insurance and, is therefore, saved from preemption under the savings clause also lacks merit. The Department of Insurance's Letter Opinion discusses this issue thoroughly. ERISA expressly preempts all states laws that relate to employee benefit plans. ERISA § 514(a), 29 U.S.C. § 1144(a). However, ERISA's insurance savings clause exempts from preemption any law of any state which regulates insurance. ERISA 514(b)(2)(A), 29 U.S 1144(b)(2)(A). The Supreme Court has specifically held that state regulation that deprives insurers of deferential review of benefits decisions is not preempted by ERISA. <u>Rush Prudential</u>, <u>supra</u>, 536 U.S. at 384-85. A state law regulates insurance if it is directed at insurance entities and substantially affects the risk-pooling arrangement between insurer and insured. <u>Kentucky Ass'n of Health Plans v. Miller</u>, 538 U.S. 329, 123 S.Ct. 1471, 1479 (2003). DOI's application of Insurance Code § 10291.5 and the insurance regulation itself clearly meet these criteria. First DOI has determined that the discretionary language violates California law, a determination that is directed at insurance entities and specifically at insurers. DOI's determination substantially affects the risk-pooling arrangement because it shifts risk from insureds to insurers: an insurer bears a greater risk of liability for benefits if it must pay benefits whenever an insured meets the eligibility criteria set forth in the policy as opposed to only when it cannot articulate a non-arbitrary and non-capricious reason by denying benefits. Indeed, DOI specifically determined that the level of risk borne by insureds where discretionary language is present in their policies renders those policies economically unsound for the insured because it deprives them "of the benefits for which they bargained." Therefore, the DOI's opinion and the Section 10291.5 of the Insurance Code which prohibits the approval of any form containing provisions that are "unintelligible, uncertain, ambiguous or abstruse or likely to mislead a person to whom the policy is offered, delivered or issued" is exactly the type of insurance regulation that is saved from preemption. Moreover, in the DOI amicus brief (Ex. 42) the DOI's General Counsel states that the DOI has not approved policies with discretionary clauses since the mid-nineties because they violate California law. Since there is no evidence in the administrative record that the plan at issue was submitted to the

DOI for approval and since the DOI would not have approved a plan with a discretionary clause, the discretionary clause in the instant case is not enforceable because it violates California law.

## III. Argument

### A. Despite Liberty Life's Introduction of a New but Equally Unpersuasive Post Hoc Rationale, Liberty Life Is Restricted to the Indefensible Rationale that It Articulated in the Denial Letters.

In its briefs before this court, Liberty Life introduces for the first time a new but equally unpersuasive rationale involving surveillance reports, websites, and credibility attacks not contained in the denial letters. Courts in our circuit have warned of defendant's attempts to sandbag plaintiff's with rationales that emerge for the first time in litigation. See eg. Jebian v. Hewlett Packard Co., 349 F.3d 1098, 1104 (9th Cir. 2003)(post-hoc rationales sandbag claimants by a "rationale the plan administrator adduces only after the suit has commenced"). Liberty Life is restricted to the grounds for denial articulated in its denial letters. The grounds for denial in the initial claim denial letter of September 6, 2001 (Ex. 18) are summed up in its conclusion as follows: "[i]n summary, treatment records report subjective complaints of abdominal pain" and "objective diagnostic tests results have been normal."[1] The grounds for the appeal denial of December 12, 2001 (Ex. 30) are that 1) Mr. DiGiacomo never used narcotics; 2) Donnatal can be sedating, but Mr. DiGiacomo never used Donnatal with consistency until June which is around the time he began to work part time; 3) symptoms are subjective; and 4) all testing has been essentially within normal limits. The grounds for denial in the claim and appeal denial letter, therefore, boil down to defendant's contention that 1) plaintiff's complaints are subjective (there is no objective medical evidence) and testing is essentially normal; and 2) the effects of the pain medication on Mr. DiGiacomo's ability to work cannot be considered because Donnatal is not a narcotic, and he began taking Donnatal in June about the time he began to work part-time. Both grounds are unreasonable. Courts have recognized, as Judge Posner stated in Hawkins v. First

---

[1] In the September 6, 2001 denial (Ex. 18), Liberty Life states that Dr. Verhille's treatment notes of February 27, 2001 state that "[p]atient has had chronic aching discomfort in epigastrium daily times 14 years." However, defendant misreads Dr. Verhille's treatment notes which clearly states that "[p]atient has had chronic aching discomfort in epigastrium daily times 1 yr." (Ex. 21). In the appeal denial letter, (Ex. 30), Liberty Life's nurse correctly summarizes Dr. Verhille's office notes and recognizes that Mr. DiGiacomo's irritable bowel syndrome did not produce pain noting that Dr. Verhille's notes reflect the fact that Mr. Di Giacomo has "a history of irritable bowel syndrome dating back to age 12 but never associated with pain. [He] reported epigastric pain about a year before [he] went out of work." (Ex. 30).

Union Corporation Long-Term Disability Plan, 326 F.3d 914, 919 (7th Cir. 2003), that a finding of disability can be predicated on subjective complaints of pain and that pain often "cannot be detected by laboratory tests." [2] With regard to Liberty Life's disregard of the effects of pain medication, Liberty Life appears to have adopted a rule, which is nowhere in the plan, that Liberty Life will ignore the effects of pain medication unless the medication is a narcotic. However, even Liberty Life's nurse acknowledges that Donnatal is sedating, and, it defies logic and common sense to argue that the barbituate, phenobarbital, which is contained in Donnatal is not impairing.

---

[2] Defendant contends that Mitchell and Duncan v. Continental Casualty Co., 1997 WL 88374, *2 (N.D. Cal. 1997) and Mitchell v. Eastman Kodak Company, 113 F.3d 433 (3rd Cir. 1996) are inapposite because fibromyalgia and chronic fatigue are conditions which are not susceptible to diagnosis by a dipstick test while Mr. DiGiacomo's condition is. However, Dr. Verhille specifically states in his report that the absence of dramatic abnormalities on medical tests is **"common and expected in patients with functional GI disorders** [emphasis added]**.**" Moreover, plaintiff cites these cases for the proposition that a finding of disability can be predicated on subjective complaints of pain and that neither the instant plan nor the case law requires objective medical evidence to prove a claim. Moreover, even if the chronic fatigue and fibromyalgia cases are excluded, there are numerous cases involving back pain, generalized pain without a cause, and gastrointestinal problems in which there are no gross abnormalities on test results and a recognition that pain cannot be detected by a lab test. See Lain v. UNUM, 279 F.3d 337, 344-347 (5th Cir. 2002),(gastrointestinal problems with tests that were essentially normal where court held that the insurer failed to take into account the fact that Ms. Lain's "pain cannot be clinically measured by tests," and the court concluded that "[t]o focus on the tests, rather than the pain and its effect, further indicates abuse of discretion"); Collins v. Continental Casualty Company, 2004 U.S.App.LEXIS 985, *4-*6 (8th Cir. 2004),(where plaintiff suffered from symptoms of pain without a cause, and the court rejected the plan's heavy reliance on the fact "that Collins' self-reported symptoms were not supported by clinical testing" because a plan administrator "may not deny benefits simply because a claimant cannot provide a diagnosis that would explain her self-reported symptoms" and "a plan administrator may not deny benefits simply because the only evidence of pain is subjective."). In Palmer v. University Medical Group, 994 F.Supp. 1221 (D.C. Ore. 1998), which is factually similar to the instant case despite defendant's contention to the contrary, plaintiff had back pain which did not show up on xrays, bone scans, or neurological tests. Like Liberty Life, the insurer in Palmer "emphasized the absence of gross abnormalities detectable through tests such as x-rays bone scans, and neurological tests." However, the court rejected this basis for denial noting that "[t]here is nothing in the record to indicate that a negative examination necessarily means Ms. Palmer is not suffering from severe back pain." Additionally, the insurer in Palmer like Liberty Life argued that the absence of a detectable cause for the pain was fatal to Ms. Palmer's claim. The court also rejected this argument and stated that "[a]lthough Dr. Krohn was unable to point to a specific cause of the pain on an x-ray, he did not doubt that Ms. Palmer was in fact suffering from severe pain which was exacerbated by her employment." The court concluded that "[w]hile Standard was concentrating on the lack of "objective medical evidence," it simply ignored plaintiff's subjective complaints of pain." The Palmer insurer discounted the plaintiff's claim because "the subjective complaints far outweigh the clinical findings." However, the court held that this reason was not an adequate reason for discounting the complaints. Similarly, in the instant case, Liberty Life's reason for discounting Mr. DiGiacomo's complaints of pain is that "[a]ll testing submitted has been essentially within normal limits and your reported symptoms are mainly subjective" which is not an adequate reason for discounting his complaints.

Moreover, the administrative record clearly reflects the fact that Mr. DiGiacomo began taking Donnatal consistently on March 28, 2001 prior to his return to a part-time accommodated job primarily from home on May 21, 2001.[3]

The bulk of defendant's brief is devoted to attacks on plaintiff's credibility, which is not impugned in any way in the claim and appeal denial letters, to a surveillance report, which defendant acknowledges it did not receive until after the final appeal denial letter, and to a personal website that Mr. DiGiacomo uses to pursue a hobby and to a game invented by a different David DiGiacomo. In Palmer v. University Medical Group, 994 F.Supp. 1221 (D. Ore. 1998), the court is faced with similar post hoc rationales which it rejects. The courts states: "[a]t oral argument, and in its briefs filed with this court, Standard attempted for the first time to articulate legitimate reasons for discounting plaintiff's subjective complaints for her physician's conclusion that she was disabled. That was too late. If Standard's decision is to be affirmed, it must be on the grounds and for the reasons that were articulated in its decision, not some new grounds propounded for the first time in this court by Standard's attorneys. In any event, Standard's arguments are unpersuasive." Similarly, Liberty's Life's post hoc rationale is too late and unpersuasive. In its Opposition, Liberty Life goes as far as to claim that the surveillance report is included in the substantial evidence that supports the denial and is part of the administrative record. On page 25, lines 1-3 of its Opposition, defendant makes the incredible statement that its decision to deny benefits was "supported by substantial evidence **in the record**

---

[3] The New World Medical Dictionary defines a barbiturate as "[a] class of drugs that depress activity in the central nervous system, including many sleeping pills, sedatives, antispasmodics, and anesthetics. Barbiturates are addictive, carry a high risk of overdose, and should never be used with alcohol or with other CNS [central nervous system] depressants." (Ex. 43). Any medication that depresses activity in the central nervous system is impairing. In its Opposition, defendant states that plaintiff's admission in its moving papers that he took Donnatal on a one time trial basis in May, 2000 somehow bolsters defendant's argument. It is clear from the records that Mr. DiGiacomo tried Donnatal only once in May, 2000 and began taking it regularly from March 28, 2001 on. However, the significance of Mr. DiGiacomo's one time trial of Donnatal in May, 2000 is unclear. In its moving papers and Opposition, Liberty Life takes the indefensible position that Mr. DiGiacomo's consistent use of Donnatal which, according to Liberty Life, coincided with his return to work part-time mainly from home is evidence that he was not disabled. The fact that the record clearly reflects that Mr. DiGiacomo began taking Donnatal consistently in April and May, 2001 before he returned to part-time work undercuts defendant's argument although it is still unclear how the argument helps Liberty Life. The fact that Mr. DiGiacomo had to continue to take barbiturates while he was working part-time merely tends to prove that he is not a malingerer and to corroborate Mr. DiGiacomo's complaints of inability to concentrate and fatigue and difficulties in completing assignments, absorbing material, and avoiding errors.

including "plaintiff's medical records, **surveillance reports** and the opinion of Liberty's medically trained staff." On page 22, lines 27-28 and page 23, line 1 of its Opposition, defendant makes the equally incredible statement that the "surveillance report" is part of the "non-medical information **in the file**" that contradicts Mr. DiGiacomo's subjective complaints of pain. Defendant's contention in its Opposition that the surveillance report, which it did not even receive until after the appeal denial, played any part in the defendant's denial is illogical and a post hoc rationale that has been rejected in our circuit.[4] Defendant argues that, in October, 2003, Liberty has learned that plaintiff was operating a web site trading test manuals and other electronic test equipment and he was able to respond to 300 e-mails per day. (Def. Opp., p. 11). In its Errata, defendant submits a webpage allegedly from Mr. DiGiacomo's website but actually from the website of http://www.mobygames.com which refers to a different Mr. David DiGiacomo [spelled David Di Giacomo] who invented games. Liberty also submits the first 2 home pages of plaintiff David DiGiacomo's website followed by 2 pages listing various electronic equipment and manuals for sale and four pages of a "want" list of manuals that Mr. DiGiacomo is seeking in support of his hobby of collecting and trading manuals and electronic test equipment. Contrary to the statement in the Declaration that the exhibit is evidence that "he was able to respond to over 300 e-mails a day that I reviewed online and then downloaded on or about October 24, 2003," the declaration contains no such evidence. As set forth in Mr. DiGiacomo's declaration accompanying this brief and in the attachment to his declaration that contains a copy of the website, Mr. DiGiacomo's website is a personal website that he uses to write about his personal life and his hobby of collecting and selling manuals and electronic test equipment, he applies the proceeds from the trading and sale of these manuals to defray the cost of the rent of the storage facility where he stores the manuals and equipment, and he did not respond to over 300 e-mails

---

[4] Even if the surveillance were not a post hoc rationale, which it is, courts have rejected surveillance reports that have not correlated the physical conduct observed with the ability to perform the material and substantial duties of a highly intellectually demanding job like the plaintiff's in this case and that have not been reviewed by physicians who specialized in the relevant field. See Morgan v. UNUM Life Insurance Company of America, 2002 U.S. Dist.LEXIS 17663, *14 (D.C. Minn. 2002); Marziale v. Hartford Life & Accid. Ins. Co. 2002 U.S.Dist.LEXIS 11321 (E.D. LA. 2003). There is no indication that the investigator had any medical training, and Liberty Life fails to address the relationship between Mr. DiGiacomo's observed physical conduct and his ability to perform the material and substantial duties of his highly cognitive profession.

per day. On its face, defendant's assertion that Mr. DiGiacomo answers 300 e-mails a day is absurd since Mr. DiGiacomo would have to spend 96 seconds per e-mail without a break for 8 hours to answer 300 e-mails per day.[5] In Hawkins v. First Union Corporation Long-Term Disability Plan, 326 F.3d 914 (7th Cir. 2003), Judge Posner reasons that "becoming inert" is not required to prove disability. In the instant case, Mr. DiGiacomo may pursue a hobby for a limited time each day and does not have to become inert to prove disability.

In its Opposition defendant also makes the post-hoc and erroneous argument that plaintiff would not fall within the definition of disabled under the plan if he was working part-time, and, as a result, quit working on November 6, 2001. (Def. Opp. 24:8-10). However, as noted in footnote 8 to plaintiff's moving papers, under the Quick Recovery Program (Ex. 1, Policy, Section 4), an insured is eligible for benefits if he or she is partially disabled or is "able to perform all of the material and substantial duties of his own or any other occupation on a part-time basis" or "able to perform one or more, but not all, of the material and substantial duties of his own or any other occupation on an Active Employment or a part-time basis." (Ex. 1, Form DOP3-LTD-0007). Moreover, defendant did not quit working because he believed that he would not be eligible for benefits if he worked part-time.[6] He quit working as even defendant acknowledges because the

---

[5] Defendant requests that, if the court determines that the standard of review is de novo, defendant be permitted to supplement the record with information regarding Mr. DiGiacomo's hobby. However, such supplementation is not permitted in our circuit even on de novo review. In Mongeluzo v. Baxter Travenol Long Term Disability Benefit Plan, 46 F.3d 938, 944 (9th Cir. 1995), the Ninth Circuit stated that, on de novo review, "[w]e emphasize that a district court should not take additional evidence merely because someone at a later time comes up with new evidence that was not presented to the plan administrator." Moreover, plan administrators are not permitted to present post hoc rationales even in de novo cases. See Jebian v. Hewlett-Packard Company, 49 F.3d 1098, 1104-1105 (9th Cir. 2003)(a de novo case)(rejecting post hoc rationales "articulated by counsel" that sandbag claimants); Dishman v. UNUM Life Insurance Company of America, 269 F.3d 974, 987 (9th Cir. 2001)(a de novo case)(the fact that UNUM may be able, post hoc, to offer a legally plausible justification for its termination of Dishman's benefits is irrelevant.)

[6] Defendant relies on an alleged statement from "Valerie" that is not mentioned in either the denial letter (Ex. 18) or appeal denial letter (Ex. 30). Defendant clearly didn't rely on this statement in the denial letters or consider the statement to be of any significance because there is no evidence in the record that Liberty Life ever followed up the statement with an investigation. The statement itself cannot be reasonable grounds for a denial because it is unclear whether Valerie's statement was transcribed accurately and whether Valerie was in a position to know or observe Mr. DiGiacomo's capabilities or the extent of his medical problems. Liberty Life's failure to mention this evidence or impugn Mr. DiGiacomo's credibility in its claim or appeal denial letters suggests Liberty's own recognition of the weakness of the evidence. See Cook v. Liberty Life, 320 F.3d 11, 23 (1st Cir. 2003)(Liberty Life's failure to state either in its initial termination letter, or in its letter affirming its denial, that a piece of evidence factored into its

employer would no longer permit him to work predominantly from home in an accommodated part-time position. Defendant also argues in its Opposition that "the fact that he was able to work five hours a day is conclusive proof that he was not disabled under the terms of the plan." However, this argument lacks merit because, as Judge Posner recognized in Hawkins, work from home is different from work in the office because of the ability to rest as needed. Moreover, in his appeal denial letter, plaintiff chronicles his difficulty working with pain and the effects of the pain medication. (Ex. 24)("no longer [able to] concentrate sufficiently to complete complex programming tasks," Donnatal "causes drowsiness and further impairs my concentration," "not able to work at a computer for extended periods because it exacerbates the pain," "difficulty in reading and absorbing complex technical material," "often not able to attend scheduled meetings" because "the degree of pain is not predictable," "difficulty participating in technical discussions and providing leadership because of lack of concentration and drowsiness," and "not able to concentrate sufficiently to work at a normal pace, and I make an excessive number of errors.") If, as defendant contends, the ability to work predominantly at home part-time, is "conclusive proof" that an insured "was not disabled under the terms of the plan," then the Quick Recovery Program is illusory and any insured who takes advantage of the program can expect to be denied benefits immediately. In Palmer, supra, 994 F.Supp. at 1236, Standard "cites as proof that [Ms. Palmer] was not disabled" the fact that she "continued to work for 15 years while suffering from back and neck pain." However, the court reasons that "[i]t equally tends to prove that she was not malingering." Similarly, the fact that Mr. DiGiacomo chose to attempt to work part-time on May 21, 2001 instead of choosing not to work at all and only stopped work, as defendant acknowledges, when his employer could no longer accommodate him in a part-time position working predominantly from home tends to prove that he was not malingering.

### B. Defendant Focuses Solely on Physical Limitations and Restrictions and Does Not Attempt to Evaluate Whether Plaintiff Had the Mental Acuity Necessary for His Cognitively Demanding Job

When Liberty Life does attempt to justify its actual rationale in its Opposition, its justification exposes a fundamental error in Liberty Life's reasoning. Defendant argues that plaintiff "**never identified any physical limitations or restrictions** other than to report that

---

decision to deny benefits suggests Liberty Life's own recognition of the weakness of the evidence as a basis for denial.)

plaintiff's self-reported complaints of pain affected his ability to concentrate. [highlighting in original]." (Def. Opp., 19:10-12 ). As evidence, defendant identifies the Physical Capacity form completed by Dr. Verhille that did not list any physical restrictions for plaintiff during an 8 hour day. (Ex. 15 to Moving Papers & Ex. 44 to Reply). However, defendant neglects to point out that Dr. Verhille states under the "physical capacity and lifting capacity" provisions "N/A [not applicable]" because these manual capacities are irrelevant to Mr. DiGiacomo's occupation as a Senior Computer Scientist who performs complex intellectually demanding work. Liberty Life also ignores the fact that, on the very same form, Dr. Verhille states under the "Additional Comments" section "Pt [patient's] job requires concentration at a computer which is difficult with his chronic pain." (Ex. 44). A plan administrator's selective review of the evidence supports reversal under any standard of review. Govindarajan v. FMC Corp., 932 F.2d 634, 637 (7th Cir. 1991). It is unreasonable for Liberty Life to attempt to correlate the ability to perform medium manual work with the ability to perform the extremely complex and intellectually demanding work of a Senior Computer Scientist. In Conrad v. Reliance Standard, 292 F.Supp.2d 233, 241 (D.C. Mass. 2003), the court notes that "it is clear that [the Vocational Rehabilitation Coordinator] limited his inquiry to whether Conrad [who had severe back pain] had the physical ability to do sedentary work, and there was no attempt to evaluate whether Conrad had the mental acuity necessary for his job" which was cognitively demanding. Similarly, in the instant case, defendant limits its inquiry to whether Mr. DiGiacomo had the physical ability to do sedentary work, and there was no attempt to evaluate whether Mr. DiGiacomo had the mental acuity necessary for his job.

**C. Plaintiff's Cases Survive Nord.**

In its Opposition, defendant contends the cases plaintiff cites are not good law in light of the Supreme Court's rejection of the treating physician rule in Nord. However, plaintiff did not cite these cases for the treating physician rule but for the proposition that a reviewing physician (and, in the instant case, reviewing nurses of no known training in gastroenterology) is entitled to less weight than an examining physician. Such a proposition is consistent with Nord and with Ninth Circuit case law. In Nord, the Supreme Court noted that "[p]lan administrators, of course, may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a

treating physician." Black and Decker v. Nord, 123 S.Ct. 1965, 1972 (2003). The court also stated that "it may be true that treating physicians, as a rule, have a greater opportunity to know and observe the patient as an individual." Id. at 1971. Additionally, the Supreme Court stated that a treating physician does not warrant greater credit than the opinion of plan physicians when "for example, the relationship between the claimant and the treating physician has been of short duration." Id. Therefore, the Supreme Court rejected the blanket application of a treating physician rule in favor of an individualized assessment but did not, as defendant appears to contend, adopt a "reviewing physician" rule. The Ninth Circuit recognized the holding in the Nord case and specifically stated in the revised Jebian opinion that "[o]f course, the opinions of Jebian's doctors may (indeed, must) be accorded whatever weight they merit" and that, even with a deferential review, a plan administrator "may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician." Jebian v. Hewlett-Packard, 349 F.3d 1098, n. 8 (9th Cir. 2003). Finally, the court stated that the court must "take cognizance of the fact (if it is a fact in the particular case) that a given treating physician has "a greater opportunity to know and observe the patient" than a physician retained by the plan administrator." Id. The cases from courts in the Ninth Circuit that plaintiff cites in his moving papers survive Nord because they stand for the proposition that a **reviewing** physician's report should be entitled to less weight than the report by an **examining** physician and a **reviewing nurse's report** to the least weight. See Isabel v. Hartford Life and Accident Insurance Company, 1999 U.S. Dist. LEXIS 824, *6-7 (N.D.Cal. 1999)("the opinion of a **non-examining** physician cannot, by itself, constitute substantial evidence to overturn the opinion of an **examining** physician);" Zavora v. Paul Revere Life Insurance Co., 145 F.3d 1118, 1122-1123 (9th Cir. 1998)(reversing a denial of benefits under the abuse of discretion standard and holding that there was an insufficient evidentiary basis for rejecting an **examining** physician's diagnosis because *inter alia* the insurer **did not examine plaintiff**); Russell v. UNUM, 40 F.Supp.2d 747, 751 (Dist. S.C. 1999)(reliance **solely on two nurses** did not constitute authoritative medical opinion and could not overcome the evidence of the authoritative medical opinion by a physician in the record.); LaBarge v. Life Insurance Company of North America, 2001 WL 109527 (N.D.Ill. 2001)( LINA's "determination lacks a proper medical foundation" because LINA relied on a **non-physician** and "[t]he findings

of non-physicians should be afforded little weight"). Similarly, Liberty Life's denial lacks a medical foundation because the findings of the non-physician nurses are entitled to little weight, and the denial of benefits cannot withstand scrutiny under any standard of review.

Liberty Life arbitrarily refuses to credit the opinions of Mr. DiGiacomo's physicians and instead relies on a selective and flawed nurse's report based only on a paper record review. Nurse Janousek reviews the file, summarizes plaintiff's medical reports, and responds to the question "Are the R/L's supported by the objective data" with the answer "No" and without explanation. (Ex. 13). In another four sentence note, Nurse Janousek states conclusorily that "[t]here was no objective data to support subjective complaints," that the claims unit would like to close the file at this time, and that Nurse Janousek will refer to physicians if appropriate. (Ex. 20). Nurse Betty Todd, provides a terse three sentence assessment on November 16, 2001 after a short summary of the claim file (Ex. 28) and repeats the same three sentence evaluation in a Referral Sheet on November, 29, 2001. (Ex. 20). Neither of the nurse reviewers evaluates the opinions of the examining physicians.

Despite Liberty Life's attempt to bolster its denial with unpersuasive post-hoc arguments, the fact remains that defendant's only supporting evidence is the terse, error-ridden, sketchy, and selective paragraph written by Liberty Life's in-house nurse reviewers of no known specialization which is clearly entitled to little weight and which does not constitute substantial evidence. Liberty Life has arbitrarily refused to credit the opinions of Mr. DiGiacomo's physician specialists. Courts have consistently rejected denials, like Liberty Life's, that are predicated on the absence of gross abnormalities on medical tests and that completely ignore complaints of pain and the side effects of pain medication.

## IV. Conclusion

For the reasons set forth above, plaintiff respectfully requests that this court grant plaintiff's Motion for Summary Judgment and deny Defendant's Motion for Summary Judgment.

______________________
Date

______________________
Ruth Silver Taube
Attorney for Plaintiff