Apple Inc. v. Psystar Corporation
Doc. 726


**Exhibit A to**
**Notice of Removal by**
**Defendant Cingular Wireless**
**(28 U.S.C. §§ 1331, 1332, 1441 & 1446)**

Dockets.Justia.com

ORIGINAL

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
***(AVISO AL DEMANDADO):***
CINGULAR WIRELESS, and DOES 1-10, inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:**
***(LO ESTÁ DEMANDANDO EL DEMANDANTE):***
DYLAN PATON and JAMIELYNN STORIE, Individually and on Behalf of All Others Similarly Situated and on Behalf of the General Public,

**You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.**

**There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.**

***Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.***

***Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.***

The name and address of the court is:
*(El nombre y dirección de la corte es):*
Superior Court of California, County of San Francisco
400 McAllister Street, Room 205
San Francisco, CA 94102

CASE NUMBER: *(Número del Caso):* [illegible]

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
JACQUELINE E. MOTTEK (124448), MILBERG WEISS BERSHAD HYNES & LERACH LLP,
100 Pine Street, Suite 2600, San Francisco, CA 94111 Tel. (415) 288-4545 Fax (415) 288-4534

DATE: *(Fecha)* FEB 17 2004 GORDON PARK-LI Clerk, by *(Secretario)* Jun Panelo, Deputy *(Adjunto)*

*(For proof of service of this summons, use* Proof of Service of Summons *(form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario* Proof of Service of Summons, *(POS-010)).*

[SEAL] SUPERIOR COURT OF CALIFORNIA COUNTY OF SAN FRANCISCO

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:

3. ☑ on behalf of *(specify)*: Cingular Wireless

under: ☑ CCP 416.10 (corporation) ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
☐ other *(specify)*:

4. ☐ by personal delivery on *(date)*:



Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

SUMMONS

Code of Civil Procedure §§ 412.20, 465

American LegalNet, Inc. www.USCourtForms.com

**EXHIBIT A**

**COPY**

CM-010

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, state bar number, and address)*:
Jacqueline E. Mottek (124448)
MILBERG WEISS BERSHAD HYNES & LERACH LLP
100 Pine Street, Suite 2600, San Francisco, California 94111
TELEPHONE NO.: (415) 288-4545 FAX NO.: (415) 288-4534
ATTORNEY FOR *(Name)*: Plaintiffs

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Francisco
STREET ADDRESS: Civic Center Courthouse
MAILING ADDRESS: 400 McAllister Street, Room 205
CITY AND ZIP CODE: San Francisco, CA 94102
BRANCH NAME:

CASE NAME: PATON, et al., v. CINGULAR WIRELESS, et al.

*FOR COURT USE ONLY*

ENDORSED FILED
San Francisco County Superior Court
FEB 17 2004
GORDON PARK-LI, Clerk
BY: JUN P. PANELO
Deputy Clerk

## CIVIL CASE COVER SHEET

☑ Unlimited (Amount demanded exceeds $25,000) ☐ Limited (Amount demanded is $25,000 or less)

**Complex Case Designation**

☐ Counter ☐ Joinder

Filed with first appearance by defendant (Cal. Rules of Court, rule 1811)

CASE NUMBER: 04-[illegible]

JUDGE:

DEPT.:

*All five (5) items below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
- ☐ Auto (22)
- ☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- ☐ Asbestos (04)
- ☐ Product liability (24)
- ☐ Medical malpractice (45)
- ☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- ☑ Business tort/unfair business practice (07)
- ☐ Civil rights (08)
- ☐ Defamation (13)
- ☐ Fraud (16)
- ☐ Intellectual property (19)
- ☐ Professional negligence (25)
- ☐ Other non-PI/PD/WD tort (35)

**Employment**
- ☐ Wrongful termination (36)
- ☐ Other employment (15)

**Contract**
- ☐ Breach of contract/warranty (06)
- ☐ Collections (09)
- ☐ Insurance coverage (18)
- ☐ Other contract (37)

**Real Property**
- ☐ Eminent domain/Inverse condemnation (14)
- ☐ Wrongful eviction (33)
- ☐ Other real property (26)

**Unlawful Detainer**
- ☐ Commercial (31)
- ☐ Residential (32)
- ☐ Drugs (38)

**Judicial Review**
- ☐ Asset forfeiture (05)
- ☐ Petition re: arbitration award (11)
- ☐ Writ of mandate (02)
- ☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 1800–1812)**
- ☐ Antitrust/Trade regulation (03)
- ☐ Construction defect (10)
- ☐ Mass tort (40)
- ☐ Securities litigation (28)
- ☐ Environmental /Toxic tort (30)
- ☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- ☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- ☐ RICO (27)
- ☐ Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- ☐ Partnership and corporate governance (21)
- ☐ Other petition *(not specified above)* (43)

2. This case ☑ is ☐ is not complex under rule 1800 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   - a. ☐ Large number of separately represented parties
   - b. ☑ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   - c. ☐ Substantial amount of documentary evidence
   - d. ☐ Large number of witnesses
   - e. ☐ Coordination with related actions pending in one or more courts in other counties, states or countries, or in a federal court
   - f. ☐ Substantial post-judgment judicial supervision
3. Type of remedies sought *(check all that apply)*:
   a. ☑ monetary b. ☑ nonmonetary; declaratory or injunctive relief c. ☐ punitive
4. Number of causes of action *(specify)*:
5. This case ☑ is ☐ is not a class action suit.

Date: February 17, 2004

JACQUELINE E. MOTTEK
(TYPE OR PRINT NAME)

▸ Jacqueline E. Mottek
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**

- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate, Family, or Welfare and Institutions Code). (Cal. Rules of Court, rule 201.8.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 1800 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a complex case, this cover sheet will be used for statistical purposes only.



Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2003]

CIVIL CASE COVER SHEET

Cal. Rules of Court, rules 201.8, 1800–1812;
Standards of Judicial Administration, § 19
www.courtinfo.ca.gov

COPY

SCOTT & SCOTT, LLC
ARTHUR L. SHINGLER
401 B Street, Suite 1700
San Diego, CA 92101
Telephone : 619/744-4907
619/231-7423 (fax)

- and -

DAVID R. SCOTT
ERIN G. COMITE
108 Norwich Avenue
Colchester, CT 06415
Telephone: 860/537-3818
860/537-4432 (fax)

Attorneys for Plaintiffs
[Additional Counsel on Signature Page]

CASE MANAGEMENT CONFERENCE SET
PLAN I JUL 1 6 2004 9:00 AM
DEPARTMENT 212

ENDORSED
FILED
San Francisco County Superior Court
FEB 1 7 2004
GORDON PARK-LI, Clerk
BY: JUN P. PANELO
Deputy Clerk

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN FRANCISCO

| | |
|---|---|
| DYLAN PATON and JAMIELYNN STORIE, Individually and On Behalf of all others Similarly Situated and on Behalf of the General Public,, | Case No. [illegible] |
| Plaintiffs, | CLASS AND PRIVATE ATTORNEY GENERAL ACTION |
| vs. | |
| CINGULAR WIRELESS, and DOES 1-10, inclusive, | COMPLAINT FOR RELIEF FROM UNFAIR, UNLAWFUL AND DECEPTIVE BUSINESS PRACTICES |
| Defendants. | 1) FOR ACTS AND PRACTICES IN VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE SECTIONS 17200, *ET SEQ.* |
| | 2) FALSE AND MISLEADING ADVERTISING IN VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE SECTIONS 17500, *ET SEQ.* |
| | DEMAND FOR JURY TRIAL |

Plaintiffs bring this action on behalf of themselves, all others similarly situated and the general public. Plaintiffs hereby allege, on information and belief, except for information based on personal knowledge, which allegations are likely to have evidentiary support after further investigation and discovery, as follows:

## NATURE OF THE ACTION

1. This is a consumer class and private attorney general action against Cingular Wireless ("Cingular" or the "Company") and Does 1 through 10, seeking equitable relief for Cingular's unfair, unlawful and deceptive business practices associated with the sale of and billing for its Wireless Phone Service ("The Service").

2. Cingular, the second largest wireless phone company in the United States, markets and sells wireless phone service. Cingular sells minute plans, or service contracts, that provide a certain number of minutes for a fixed monthly charge, with additional charges for airtime phone usage that exceeds the monthly plan minutes. Cingular has engaged in a uniform course of business conduct in the last four years with regard to its deceptive and unfair practices in billing customers for disconnected calls. As evident from a review of bills issued by Cingular, that the Company bills its customers multiple times for phone calls placed or received at the exact same time and the exact same date – calls that are frequently terminated as a result of Cingular's poor service and network limitations. Cingular's billing practices result in not only multiple deductions of the ***same minutes*** from whatever particular "minute plan" the customer may be on, but also assesses multiple charges at a rate of 39¢ per minute for the exact same phone calls made at the exact same times. Cingular's routine practice of billing its customers multiple times for phone calls placed to the same number within the same minute simultaneously also results in the accelerated depletion of customers' minutes, thus artificially and fraudulently forcing customers to reach their ceiling of allotted minutes in their service plans prematurely. Cingular at no time adequately discloses these practices to its customers.

3. As a result of Cingular's unfair, unlawful and deceptive business practices, defendants have violated the California Unfair Competition Law (the "UCL") (Cal. Bus. & Prof. Code §§17200, *et seq.*, and §§17500, *et seq.*), as well as other statutes and laws of this state.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over all causes of action asserted in this Complaint pursuant to the California Constitution, Article VI, §10, because this case asserts causes of action not given by statute to other trial courts. Federal jurisdiction does not exist in this case because there is no federal question implicated and the value of the requested injunctive relief to each Class member is far less than the federal jurisdictional minimum of $75,000.

5. This Court has jurisdiction over Cingular because it is a foreign corporation authorized to do business in California and/or is registered with the California Secretary of State, and does sufficient business in California, has sufficient minimum contacts with California and otherwise intentionally avails itself of the laws and markets of California, through the promotion, sale, marketing and distribution of its products and services in California, to render the exercise of jurisdiction by the California courts permissible.

6. Venue is proper in this Court because a substantial part of the acts and practices giving rise to plaintiffs' claims occurred in this county and Cingular maintains significant corporate offices in this county. Cingular has received substantial revenue from the sale of wireless phone service in this County and in the State of California as a result of its business activities here.

## PARTIES

7. Plaintiff Dylan Paton was a customer of Cingular and is a resident of the State of California.

8. Plaintiff Jamielynn Storie was a user of Cingular phone service and is a resident of the State of California.

9. Defendant Cingular is a Georgia corporation with its executive offices located in Atlanta, Georgia. Cingular is a joint venture between the domestic wireless divisions of SBC Communications, Inc. (NYSE:SBC) and BellSouth Corporation (NYSE:BLS). SBC owns 60% of the Company and Bell South owns 40% of the Company, based on their respective contributions to the venture. Cingular engages in the business of selling wireless phone service in California and elsewhere in the United

States. Cingular sells these services to consumers in the United States, including to tens of thousands of consumers in California.

10. The true names and capacities of defendants sued herein under California Code of Civil Procedure §474 as Doe Defendants 1-10, inclusive, are presently unknown to plaintiffs who will amend this Complaint to show their true names and capacities when they have been ascertained. Each Doe Defendant is responsible in some manner for the conduct alleged herein.

11. At all times relevant to the allegations raised herein, each and every defendant was an agent and/or employee of each and every other defendant. In committing and/or participating in the conduct alleged herein, each and every defendant was acting within the course and scope of this agency or employment and was acting with the consent, permission and authorization of each remaining defendant. All actions of each defendant as alleged herein were ratified and approved by every other defendant or its officers or managing agents.

## DEFENDANTS' UNLAWFUL CONDUCT

12. Cingular is one of the world's largest wireless phone companies. Cingular markets and sells wireless phone service through subscriptions to its numerous wireless service plans ("Plans"), through various retail locations owned and operated by Cingular. Under each of the Cingular Plans, customers are sold an allotment of minutes ("Airtime") that they can use each month to make or receive phone calls. The number of Airtime minutes allocated to each customer varies according to the particular Plan to which the customer subscribes.

13. Pursuant to Cingular's Plan Agreement and Service Contract, Cingular bills Airtime used by customers in one minute increments.[1] Each minute of Airtime used, either through the placement or receipt of a call, is deducted by Cingular from the customers' Airtime allotment under that customer's chosen Plan. Once a customer reaches their limit or ceiling of maximum allotted minutes under their

[1] While the Company's billing system is entirely capable of billing in increments of a dollar, Cingular bills for Airtime in full minute fractions only. Cingular provides no explanation why the Company must round every minute upward to the nearest full minute on its website or in its Service Contract.

Plan, they are billed an additional 39¢ per minute. Cingular's billing statements sent to customers on a monthly basis contain a detailed description of every call made or received, including the exact date and time (to the minute), telephone number called, number of minutes elapsed during call, and Airtime charged for each call.

14. Due to the inherent unreliability of the Cingular wireless system, however, once a wireless phone call is placed or received and connected to the other party, they often are interrupted and thereby terminated prematurely. This premature termination is due to a variety of factors, primarily including Cingular's poor network coverage. In addition to causing customer inconvenience, "dropped" calls force customers to reinitiate the same connection or call, often multiple times within a given minute.

15. Since a "dropped" call is often replaced within seconds, and because calls regularly take several attempts to get a "permanent" connection, the unreliability of the Cingular system has enabled the Company to amass significant unearned profits. In fact, as Cingular is well aware, the more unreliable its system is and the longer it remains unreliable, the more the Company is able to profit.

16. The reverse side of the Cingular Service Agreement (which customers receive <u>only after</u> they accept service) discusses stating, the company's billing and payment charges, in substantial part, the following:

> **BILLING AND PAYMENT OF CHARGES.** You will receive monthly bills that are due in full as shown thereon. Billing cycles may change from time to time. ***You are responsible for paying all charges for or resulting from services provided under this Agreement. Charges include, without limitation, airtime, roamer, recurring monthly service, administrative, and late payment charges; network surcharges; optional feature charges; toll, collect call and directory assistance charges; any other charges or calls billed to your wireless telephone number; and applicable taxes and governmental fees, whether assessed directly upon you or upon CINGULAR....***
>
> ***You agree to pay for incoming and outgoing calls to and from your wireless telephone. Airtime and other measured usage (chargeable time) are billed in full minute increments, and actual airtime and usage are rounded up to the next full minute increment at the end of each call for billing purposes, e.g.***, CINGULAR charges a full minute of airtime usage for every fraction of the last minute of airtime used on each wireless call. ***Chargeable time begins for outgoing calls when you press SEND (or similar key) and for incoming calls when a signal connection from the caller is established with CINGULAR's facilities. Chargeable time ends after you press END (or similar key), but not until your wireless telephone's signal of call disconnect is received by CINGULAR's facilities and the call disconnect signal has been confirmed.*** All outgoing calls for which CINGULAR receives answer supervision shall incur a minimum of one-minute airtime charge. Answer supervision is generally

> received when a call is answered; however, answer supervision may also be generated by voicemail systems, private branch exchanges, and interexchange switching equipment. Chargeable time may include time for CINGULAR to recognize that only one party has disconnected from the call, time to clear the channels in use and ring time, however, there will be no charged time for unanswered incoming calls, and no charged time for outgoing calls for which answer ***supervision is not received if chargeable time, including ring time, is under thirty (30) seconds. Chargeable time may also occur from other uses of Cingular facilities, including by way of example, voicemail deposits and retrievals, and call transfers....*** [Emphasis added.]

17. In addition to the charges which Cingular discloses in its contract, however, Cingular fails to disclose that there are other substantial hidden charges that await wireless phone customers. Cingular's billing system allows it to bill more than three minutes for each real minute of time, or as, indicated by the billing summary recited herein, as many as seventeen minutes of airtime in a seven minute period! While other causes for this chronic multiple billing may exist, Cingular is certainly overbilling its customers for calls which are dropped by its unreliable network. The inherent unreliability of most cellular networks has resulted in lower service revenue for many cellular service providers. Yet, Cingular has implemented a billing scheme which actually takes advantage of its own poor network by overbilling their customers for "dropped" calls. Calls which are dropped and replaced by customers may be billed over and over again – many times in a single real and actual minute – each time resulting in either a reduction in allotted monthly minutes or a charge for exceeding the monthly allotment.

18. Cingular's charging repeatedly for dropped calls is especially unconscionable considering that Cingular acknowledges, on its website that "service is not guaranteed in all places at all times" and describes anticipated "Service Interruptions" in its Service Agreement,[2] in part, as follows:

> **SERVICE INTERRUPTION.** Service may be temporarily interrupted, delayed or otherwise limited for a variety of reasons, including, but not limited to, transmission limitations caused by atmospheric and other conditions, availability of radio frequency channels, system capacity limitations, coordination with other systems, equipment modifications and repairs, and problems associated with the facilities of interconnecting carriers. ***There are gaps in Service within the service areas shown on coverage maps. CINGULAR does not guarantee your uninterrupted service. Airtime and other service charges apply to all calls, including involuntarily terminated calls.*** Subject to

---

[2] Information regarding the Company's service reliability, or lack thereof, was again contained on the reverse side of the Cingular Service Agreement, which customers receive only *after* they sign such agreement.

> the limitations below, if your service is interrupted for 24 continuous hours or more, CINGULAR will issue you, upon request, a credit equal to a prorata adjustment of the monthly service fee for the time period your service was unavailable, not to exceed the monthly service fee. An interruption is measured from the time you report it to CINGULAR. CINGULAR may require that you request credit in writing. No credit will be given for a service interruption if evidence of the service interruption is, in CINGULAR's opinion, inconclusive or if the service interruption was caused by (a) your negligent or willful actions, (b) the failure of equipment or services not provided by CINGULAR or (c) causes beyond the control of CINGULAR. ***CINGULAR's liability to you for interruptions, delays and failures in transmission or service is limited solely to the credit set forth above, and such credit will satisfy all of your claims against CINGULAR for interruption of service.***

Cingular is well aware of its service's shortcomings, yet the Company has done nothing to prevent such service interruptions from resulting in overbilling and has instead imposed a billing system which actually allows the Company to derive excessive profits from its own system limitations.

19. Moreover, there is no indication that Cingular takes any measures to mitigate against its routine practice of duplicative billing. To the contrary, Cingular allows such overbilling for its own profit and benefit. Of course, Cingular carefully attempts to limit its own liability to users of their system resulting from service interruptions, by including in the Service Contract,[3] the following language:

> **LIMITATION OF LIABILITY.** CINGULAR MAKES NO WARRANTY, EXPRESS OR IMPLIED, OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, SUITABILITY, OR PERFORMANCE WITH REGARD TO THE SERVICES AND/OR GOODS PROVIDED HEREUNDER. In no event shall CINGULAR be liable, and you hereby release CINGULAR from liability, WHETHER OR NOT DUE TO THE NEGLIGENCE OF CINGULAR, for: (a) any act or omission of any provider of service or facilities other than CINGULAR; (b) mistakes, omissions, interruptions, errors, failures to transmit, delays or defects in the service provided by or through CINGULAR; (c) any damage or injury caused by, or allegedly resulting from, the presence or use of any wireless telephone or service provided by CINGULAR, including, but not limited to, the presence or use thereof in any vehicle or on any property; (d) claims made against you by third parties; (e) damage caused by any suspension or termination of service by CINGULAR; (f) damages caused by failures or delays in the provision of, or making calls to, ¶11 or any other emergency service, where such service is available; or, (g) any damage or injury arising from alleged negligence or willful misconduct of any third party, or including, without limitation, any directory assistance or Internet service provider.
>
> CINGULAR shall not be liable for any indirect, punitive, special, incidental or consequential losses or damages you or any third party may suffer or incur caused by

[3] Information regarding the Company's purported limitations on its liability is contained on the reverse side of the Cingular Service Agreement, which customers ***do not receive prior to signing***.

use of, or inability to make use of, service or equipment provided by or through CINGULAR, such as, but not limited to, (a) loss of business, revenue or profits, (b) damages or losses as a result of your inability to fulfill agreements with third parties, (c) claims of personal injuries, or (d) injury to goodwill. CINGULAR's sole liability, if any, for loss or damage arising out of mistakes, omissions, interruptions, errors or any other causes, INCLUDING THE NEGLIGENCE OF CINGULAR, shall be limited to the credit for service interruption for each separate period of interruption as described in the Section on Service Interruption. To the full extent allowed by law, you hereby release, indemnify, and hold CINGULAR and its offices, directors, employees and agents harmless from and against any and all claims of any person or entity for damages of any nature arising in any way from or relating to, directly or indirectly, service provided by CINGULAR or any person's use thereof (including, but not limited to, vehicular damage and personal injury), INCLUDING CLAIMS ARISING FROM IN WHOLE OR IN PART THE ALLEGED NEGLIGENCE OF CINGULAR, or any violation by you of these Terms and Conditions. This obligation shall survive termination of your service with CINGULAR. CINGULAR is not liable to you for changes in operation, equipment or technology that cause your equipment or software to be rendered obsolete or require modification....

20. Never does Cingular meaningfully or effectively disclose to its users that it will bill for calls that are prematurely terminated as a result of the Company's systemic service limitations and chronic disruptions. Cingular only states that "airtime is billed in one-minute increments" and "unanswered calls of thirty seconds or longer incur airtime." Moreover, Cingular relies on the impracticability and difficulty of scrutinizing a monthly billing statement which typically contains hundreds of time, date and number entries to mislead consumers and deny consumers the "benefit of their bargain" by misrepresenting the actual number of allotted minutes available to them under their respective allotment plan and then charging – often multiple times – for the premium Airtime minutes not covered by their Plan. In addition, Cingular also relies on the fact that, as a result of participating in a service "plan," many customers will not and do not review their bills, except to see how much they owe in excess charges, so that the double, triple and quadruple billing for calls goes undetected by them. For those who do detect such overcharges, Cingular is quick to provide adjusted bills.

21. Cingular's misrepresentations and omissions concerning the sale of their service and their failure to adequately disclose their routine practice of billing for "dropped calls," both in the accelerated depiction of Plan minutes and the assessment of a 39¢ charge for each dropped call, operates as a fraud upon the Cingular subscriber.

22. A typical example of Cingular's unfair and deceptive billing appeared on plaintiff Dylan Paton's bill for December 2002, at which this plaintiff was billed over 14 minutes for only 5 minutes of real or actual time – an over bill of almost 300% – reported as follows:

| Line | Date | Time | Calls To | Numbers Called | Rate Code | Feature | Rate Period | Min/Msg |
|---|---|---|---|---|---|---|---|---|
| 386 | 12/8 | 7:53pm | Temecula CA | 909-303-8080 | CN8N | | OP | 1.00 |
| 387 | 12/8 | 7:53pm | Temecula CA | 909-303-8080 | CN8N | | OP | 1.00 |
| 388 | 12/8 | 7:53pm | Temecula CA | 909-303-8080 | CN8N | | OP | 1.00 |
| | | | | | | | | |
| 389 | 12/8 | 7:54pm | Temecula CA | 909-303-8080 | CN8N | | OP | 1.00 |
| 390 | 12/8 | 7:54pm | Temecula CA | 909-303-8080 | CN8N | | OP | 1.00 |
| | | | | | | | | |
| 391 | 12/8 | 7:55pm | Temecula CA | 909-303-8080 | CN8N | | OP | 1.00 |
| 392 | 12/8 | 7:55pm | Temecula CA | 909-303-8080 | CN8N | | OP | 1.00 |
| 393 | 12/8 | 7:55pm | Temecula CA | 909-303-8080 | CN8N | | OP | 1.00 |
| | | | | | | | | |
| 394 | 12/8 | 7:56pm | Temecula CA | 909-303-8080 | CN8N | | OP | 1.00 |
| 395 | 12/8 | 7:56pm | Temecula CA | 909-303-8080 | CN8N | | OP | 1.00 |
| 396 | 12/8 | 7:56pm | Temecula CA | 909-303-8080 | CN8N | | OP | 1.00 |
| | | | | | | | | |
| 397 | 12/8 | 7:57pm | Temecula CA | 909-303-8080 | CN8N | | OP | 1.00 |
| 398 | 12/8 | 7:57pm | Temecula CA | 909-303-8080 | CN8N | | OP | 1.00 |
| 399 | 12/8 | 7:57pm | Temecula CA | 909-303-8080 | CN8N | | OP | 1.00 |
| | | | | | | | | |
| 402 | 12/8 | 7:59pm | Temecula CA | 909-303-8080 | CN8N | | OP | 1.00 |
| 403 | 12/8 | 7:59pm | Temecula CA | 909-303-8080 | CN8N | | OP | 1.00 |
| 404 | 12/8 | 7:59pm | Temecula CA | 909-303-8080 | CN8N | | OP | 1.00 |

## ALLEGATIONS RELATING TO PLAINTIFFS

23. Commencing in or about 2001, plaintiff Paton subscribed to Cingular's wireless service in California. Mr. Paton selected a wireless service Plan which included a predetermined number of minutes allotted to his service each month for a flat fee, plus additional per-minute use charges for service usage which exceeded the predetermined limit.

24. At the time Mr. Paton subscribed to Cingular's wireless services, Mr. Paton contracted for two separate accounts each attached to a different phone number (referred to herein separately as the "7395" account, and the "3516" account. For his personal usage, Mr. Paton utilized the 7395 account. The 3516 account was utilized at all times by Ms. Storie. Ms. Storie paid all costs associated with the 3516 account and exercised sole dominion and control over this account. Thus, in addition to the phone number utilized by Mr. Paton, Cingular regularly billed for the second phone number utilized exclusively by Ms. Storie. Ms. Storie was not a party to any contract with Cingular, however, Ms. Storie regularly contributed to the payment of the monthly Cingular bill sent directly to Mr. Paton.

25. Upon activation of service, Mr. Paton and Ms. Storie placed and received phone calls. Mr. Paton, and Ms. Storie through Mr. Paton, received billing statements on a monthly basis and regularly paid the amounts charged for their service.

26. Upon close scrutiny of the monthly Cingular wireless service bills, plaintiffs Paton and Storie discovered that they were repeatedly being billed more than once for a phone call placed or received on the same time and date. This pattern of conduct by Cingular revealed itself to be a systematic abuse of normal billing practices occurring on a monthly basis.

27. When confronted with these overcharges, Cingular would sometimes discount or completely strike the monetary charges as well as the duplicative depletion of allotted monthly minutes. However, this "multiple overcharging" for identical calls placed or received in the same time and date to the same number was and is a regular occurrence and systematic billing practice of Cingular.

## CINGULAR'S UNCONSCIONABLE LIMITATION OF REMEDIES

28. In addition to consistently overbilling plaintiffs' and class members' accounts as described herein, Cingular purports to impose on consumers limitations-of- liability and arbitration

provisions in connection with the sale of its wireless service plans. But such provisions are unconscionable, unenforceable and contrary to law and public policy.

29. Cingular's attempt to permanently hinder the ability of consumers to obtain redress are violations of California Civil Code §§1670.5 and 1770(e)(19), which prohibit the imposition of such unconscionable terms in contracts. Unbeknownst to consumers when they subscribe to Cingular service, Cingular publishes in small type on their website several provisions which unilaterally and covertly attempt to subvert avenues of redress available to consumers under California law.

30. Cingular's unilateral imposition of unconscionable terms is embodied in a contract of adhesion that accompanies each subscription to its service. In relevant part, it reads as follows:

> **Billing Disputes, Complaints & Their Resolution**
>
> ...Cingular and Customer will attempt to resolve any dispute pursuant to the California Public Utilities Commission's Interim Rules Governing Non-Communications-Related Charges On Telephone Bills (effective July 1, 2001) (the "Rules")....If Cingular and Customer are unable to resolve their dispute pursuant to the Rules, Cingular and Customer agree to arbitrate their dispute pursuant to the arbitration provision in the terms and conditions of the accompanying Wireless Service Agreement between Cingular and Customer (hereinafter "Legal Remedies Limitations").

31. The Legal Remedies Limitation provision also purports to impose a series of sweeping limitations waiving statutory and legal remedies otherwise available to consumers. Among other things, the Legal Remedies Limitations provisions purports to ***preclude consumers from initiating or participating in any class action proceedings***, relegate consumers to binding arbitration before the American Arbitration Association ("AAA") (or filing a regulatory complaint or a small claims court action) and limit the type and amount of damages and other remedies available to consumers.

32. Cingular's Legal Remedies Limitations provision is unlawful, unconscionable and unenforceable as against public policy. The Legal Remedies Limitation provision is procedurally and substantively unconscionable in scope, operation and effect. Consumers have no meaningful choice with respect to any such purported limitations because they are not presented to them until after they have purchased the wireless service. The Legal Remedies Limitations are presented on a take-it-only basis as part of a series of non-negotiated adhesion terms and conditions available only to those consumers who have Internet access and who happen to visit Cingular's Web site, find the text of the

Legal Remedies Limitation provision, have reason to believe it should be read and ultimately read it. Thus, such purported limitations are hidden from consumers at the point of sale and are included in pre-determined terms and conditions drafted entirely by Cingular with no opportunity for negotiation, modification or waiver.

33. The arbitration provisions and limitations of damages and remedies set forth in the Legal Remedies Limitation provision is wholly unconscionable. The Legal Remedies Limitation provision purports to require consumers to arbitrate any disputes before the AAA. The damages recoverable in any such arbitration would be limited to the purchase price of the Cingular service, absent willful or intentional misconduct by Cingular. The Legal Remedies Limitations also purport to preclude consumers from joining other disputes in any arbitration and also preclude any class-wide resolution of the arbitrated dispute. In addition, the Legal Remedies Limitations purports to require consumers to pay fees and costs that are, on balance, disproportionate to the limited damages available under the Legal Remedies Limitations. The Legal Remedies Limitations also unfairly purport to vest Cingular with unbridled discretion to change any and all applicable terms and conditions, at any time.

34. The Legal Remedies Limitations are also unlawful because they violate Cal. Civ. Code §1751, which provides that "[a]ny waiver by a consumer of the provisions of this title is contrary to public policy and shall be unenforceable and void." The Legal Remedies Limitations also violate Cal. Bus. & Prof. Code §17205, which provides that its remedies are cumulative to each other and to the remedies and penalties available under other laws of the State of California, and under Cal. Civ. Code §1668, which prohibits parties from exempting themselves from liability for violations of law.

35. In addition to the public policy issues at stake in Cingular's unconscionable attempt to limit the rights and remedies of their customers, the ambiguity created in the Agreement itself regarding a customer's ability to partake in a class action against the Company should not be resolved in favor of Cingular. Thus, while the Cingular Service Agreement states that customers "agree to arbitrate any and all disputes or claims (including, but not limited to claims based on or arising from an alleged tort) arising out of relating to this Agreement," and that, "The arbitration of any dispute or claims shall be conducted in accordance with the wireless industry arbitration rules ("WIA Rules") as modified by this

agreement and as administered by the American Arbitration Association," the WIA rules make no mention about a party's ability to bring a class action against the Company, as distinguished from an individual action. This distinction is extremely important, because, pursuant to the Model Rules of the American Arbitration Association, class actions are explicitly excluded from mandatory arbitration. (*See The American Arbitration Association's Mediation and Arbitration Uniform Arbitration Act*, Guidelines for Establishment of Programs for Arbitration, which states, in part, that: "***The rules must exclude the following from any program of mandatory arbitration .... Class actions.***" (Emphasis added.))

36. Since the American Arbitration Associations model rules state that class actions must be excluded from mandatory arbitration, and because both the Cingular service agreement and the WIA Rules are silent on the issue, it must be assumed that the service agreement and the WIA Rules have adopted the default position established in the model rules – that ***class actions must be excluded from mandatory arbitration***. Since the model rules make such an exclusion a requirement, *i.e.*, class actions "must" be excluded, an elimination of this prohibition by Cingular must be explicit, and the Court should not read such an exclusion into the WIA Rules or the service agreement, which are both silent on this point.

## CLASS ACTION ALLEGATIONS

37. This action is brought on behalf of plaintiffs individually and, pursuant to C.C.P. §382 and Cal. Civ. Code §1781, on behalf of similarly situated persons who purchase or purchased Cingular Wireless Phone Service within the State of California. Excluded from the Class are Cingular Wireless and its officers, affiliates, directors, employees and the immediate family members of its officers, directors and employees.

38. This action is properly brought as a class action for the following reasons. The Class is composed of thousands of persons geographically dispersed throughout the state, the joinder of whom in one action is impracticable. The disposition of plaintiffs' and Class members' claims in a class action will provide substantial benefits to both the parties and the Court. The Class is ascertainable and there is a well-defined community of interest in the questions of law or fact alleged since the rights of each

Class member were infringed or violated in a similar fashion based upon defendants' uniform conduct. Notice can be provided through records or by publication, the cost of which is properly imposed upon defendants. The Class consists of thousands of persons and is thus so numerous that joinder of all members is impracticable.

39. The questions of law or fact common to the Class predominate over questions that may affect particular Class members. Such common questions include:

(a) whether defendants engaged in a common course of conduct that deceived plaintiffs and Class members or is likely to deceive plaintiffs, Class members or the public, including whether – Cingular routinely billed its customers multiple times for the same phone calls made at the exact same times;

(b) whether the laws of the State of California were violated by defendants, as alleged herein, by engaging in the described practices; and

(c) whether plaintiffs and Class members are entitled to declaratory, injunctive and other equitable relief.

40. Plaintiffs' claims are typical of the claims of the members of the Class. Plaintiffs will fairly and adequately protect the interests of the Class in that they have no interests antagonistic to those of the other Class members, and plaintiffs have retained attorneys experienced in class action and complex litigation.

41. A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

(a) given the size of individual Class members' claims and the expense of litigating those claims, few, if any, Class members could afford to or would seek legal redress individually for the wrongs defendants committed against them and absent Class members have no substantial interest in individually controlling the prosecution of individual actions;

(b) this action will promote an orderly and expeditious administration and adjudication of the Class claims, economies of time and effort and resources will be fostered and uniformity of decisions will be ensured; and

(c) without a class action, Class members will continue to suffer damages, and defendants' violations of law will proceed without remedy while defendants continue to reap and retain the substantial proceeds of its wrongful conduct.

42. Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

**FIRST CAUSE OF ACTION**

**(For Acts and Practices in Violation of California Business and Professions Code Sections 17200, *et seq.*)**

43. Plaintiffs reallege and incorporate the preceding paragraphs as if set forth in full. This cause of action is brought on behalf of plaintiffs, the Class and the general public against defendants.

44. California Business & Professions Code §§17200, *et seq.*, prohibits acts of unfair competition, which means and includes any "unlawful, unfair or fraudulent business act or practice."

45. Defendants' policies, acts and practices alleged herein were intended to or did result in the sale of and overbilling for its wireless phone service to customers in violation of the California Consumers Legal Remedies Act, Cal. Civ. Code §§1750, *et seq.*, and specifically §§1770(a)(19), because Cingular inserted unconscionable terms in the contracts of adhesion that accompanied the sale of wireless phone service. This conduct also violates Cal. Civ. Code §1670.5 which prohibits the imposition of unconscionable provisions in contracts.

46. By committing the acts and practices alleged herein, defendants also violated Cal. Bus. & Prof. Code §§17500, *et seq.*, by falsely advertising that these products and services had certain characteristics or benefits that they do not possess and omitting material facts contradicting these representations. Such conduct also constitutes fraud and deceit in violation of Cal. Civ. Code §1709, in that defendants either knew, recklessly disregarded or reasonably should have known or was required by law to disclose that customers who purchased and used their service would not receive the quality, characteristics and benefits advertised.

47. As a result of the foregoing, defendants engaged in various "unlawful" business practices. Such violations of law are ongoing. Plaintiffs reserve the right to identify additional violations of the law as circumstances warrant.

48. These acts, omissions, misrepresentations, practices and non-disclosures of defendants as alleged herein also constitute "unfair" business acts and practices within the meaning of Cal. Bus. & Prof. Code §§17200, *et seq.*, in that its conduct is substantially injurious to customers, immoral, unethical, unscrupulous or offends public policy, and because the gravity of the conduct outweighs any alleged benefits attributable to such conduct.

49. Defendants' misrepresentations as to its billing practices for wireless phone service are likely to deceive the Class and the general public regarding the actual benefits and characteristics of defendants' products and services.

50. The acts, omissions, misrepresentations, practices and non-disclosures of defendants as alleged herein thus constitute "fraudulent" business acts or practices within the meaning of Cal. Bus. & Prof. Code §17200.

51. Defendants have thus engaged in unlawful, unfair and/or fraudulent business acts and practices, entitling plaintiffs, the Class and the general public to equitable relief against defendants including restitution, as set forth in the Prayer for Relief.

**SECOND CAUSE OF ACTION**

**(False and Misleading Advertising in Violation of California Business & Professions Code Sections 17500, *et seq.*)**

52. Plaintiffs reallege and incorporate the preceding paragraphs as if set forth in full. This cause of action is brought on behalf of plaintiffs, the Class and the general public against defendants.

53. California Business & Professions Code §17500 prohibits various deceptive practices in connection with the dissemination of representations for the purpose of inducing, or which are likely to induce, directly or indirectly, the purchase of real or personal property or services.

54. The policies, acts and practices alleged herein were intended to, and did, induce the sale of consumers to purchase Cingular Wireless Phone Service and violated and continue to violate Cal. Bus. & Prof. Code §17500.

55. Defendants' false and misleading advertising is ongoing and constitutes a threat to the general public and Class members.

56. As a result of the conduct described above, plaintiffs and the Class members and the general public have suffered injury.

57. Pursuant to Cal. Bus. & Prof. Code §§17203 and 17535, plaintiffs, Class members and the general public are entitled to injunctive relief, including restitution, as set forth in the Prayer for Relief.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs pray for judgment and relief against defendants, jointly and severally, as follows:

A. An order that certifies and maintains this action as a class action on behalf of the Class defined above;

B. An order awarding restitution of the monies defendants wrongfully acquired by virtue of the practices described herein, plus a reasonable rate of interest, so as to restore all monies wrongfully acquired by defendants' unfair, deceptive, and unlawful business practices;

C. An order requiring disgorgement of monies wrongfully obtained as a result of defendants' unlawful, unfair and deceptive business practices as alleged herein;

D. An order that awards plaintiffs and Class members the costs of this action, including reasonable attorneys' fees and expenses;

E. For interest as prescribed by law; and

F. An order that awards such other and further legal and equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

DATED: February 17, 2004

SCOTT+SCOTT, LLC
ARTHUR L. SHINGLER III (181719)

Arthur L. Shingler III /

ARTHUR L. SHINGLER III

JEM

401 B Street, Suite 307
San Diego, CA 92101
Telephone: 619/233-4565
619/233-0508 (fax)

-and-

DAVID R. SCOTT
ERIN G. COMITE
108 Norwich Avenue
Colchester, CT 06415
Telephone: 860/537-3818
860/537-4432 (fax)

STEYER LOWANTHAL BOODROOKAS & WALKER LLP
ALLAN STEYER (111764)
One California Street, Suite 2200
San Francisco, CA 94111
Telephone: 415/421-3400
415/421-2234 (fax)

MILBERG WEISS BERSHAD HYNES & LERACH LLP
PATRICK J. COUGHLIN
JACQUELINE E. MOTTEK
SHANA E. SCARLETT
100 Pine Street, Suite 2600
San Francisco, CA 94111
Telephone: 415/288-4545
415/288-4534 (fax)

Attorneys for Plaintiffs

T:\CptDraft\Consumer\Cingular.doc

**Exhibit B to**
**Notice of Removal by**
**Defendant Cingular Wireless**
**(28 U.S.C. §§ 1331, 1332, 1441 & 1446)**

POS-010

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
Jacqueline E. Mottek, Esq. (124448)
MILBERG WEISS BERSHAD HYNES & LERACH
100 Pine Street, Suite 2600
San Francisco, California 94111
TELEPHONE NO.: (415) 288-4545 FAX NO. (Optional):
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name): Plaintiffs

FOR COURT USE ONLY

FILED
San Francisco County Superior Court
MAR 1 9 2004
GORDON PARK-LI, Clerk
BY: [signature] Deputy Clerk

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Francisco
STREET ADDRESS: 400 Mcallister Street
MAILING ADDRESS:
CITY AND ZIP CODE: San Francisco, California 94102
BRANCH NAME:

PLAINTIFF/PETITIONER: Dylan Paton, Etc., Et All.

DEFENDANT/RESPONDENT: Cingular Wireless

CASE NUMBER: 428855

# PROOF OF SERVICE OF SUMMONS

Ref. No. or File No.: W2416763

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.
2. I served copies of the summons and
   a. ☐ complaint
   b. ☐ Alternative Dispute Resolution (ADR) package
   c. ☐ Civil Case Cover Sheet *(served in complex cases only)*
   d. ☐ cross-complaint
   e. ☑ other *(specify documents)*: Summons; Complaint; Civil Case Cover Sheet; Notice To Plaintiff; Adr Information Package
3. a. Party served *(specify name of party as shown on documents served)*:
   CINGULAR WIRELESS

   b. Person served: ☐ party in item 3a ☑ other *(specify name and relationship to the party named in item 3a)*:
   BECKY DEGEORGE, AUTHORIZED AGENT FOR SERVICE OF PROCESS
4. Address where the party was served: 2730 Gateway Oaks Drive, #100
   Sacramento, California
5. I served the party *(check proper box)*
   a. ☑ **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date)*: 2/24/2004 (2) at *(time)*: 1:20 P.m.
   b. ☐ **by substituted service.** On *(date)*: at *(time)*: I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3b)*:

      (1) ☐ **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.

      (2) ☐ **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

      (3) ☐ **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.

      (4) ☐ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date)*: from *(city)*: or ☐ a declaration of mailing is attached.

      (5) ☐ I attach a **declaration of diligence** stating actions taken first to attempt personal service.





EXHIBIT B

| PLAINTIFF/PETITIONER: DYLAN PA ], ETC., ET ALL. DEFENDANT/RESPONDENT: CINGULAR WIRELESS | CA IBER: 428855 |
|---|---|

c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

(1) on *(date):* (2) from *(city):*

(3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* (form 982(a)(4)) and a postage-paid return envelope addressed to me. (*Attach completed* Notice and Acknowledgement of Receipt *(form 982(a)(4).)* (Code Civ. Proc., § 415.30.)

(4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

d. ☐ **by other means** *(specify means of service and authorizing code section):*

☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:
   a. ☐ as an individual defendant.
   b. ☐ as the person sued under the fictitious name of *(specify):*
   c. ☑ On behalf of *(specify):* CINGULAR WIRELESS
   under the following Code of Civil Procedure section:
   - ☑ 416.10 (corporation)
   - ☐ 416.20 (defunct corporation)
   - ☐ 416.30 (joint stock company/association)
   - ☐ 416.40 (association or partnership)
   - ☐ 416.50 (public entity)
   - ☐ 415.95 (business organization, form unknown)
   - ☐ 416.60 (minor)
   - ☐ 416.70 (ward or conservatee)
   - ☐ 416.90 (authorized person)
   - ☐ 415.46 (occupant)
   - ☐ other:

7. **Person who served papers**
   a. Name: Zola M. Burgess
   b. Address: **Wheels Of Justice, Inc.**, 55 New Montgomery Street, Suite 828, San Francisco, Ca 94105
   c. Telephone number (415) 546-6000
   d. **The fee** for service was: $
   e. I am:
   (1) ☐ not a registered California process server.
   (2) ☐ exempt from registration under Business and Professions Code section 22350(b).
   (3) ☑ registered California process server:
   (i) ☑ Employee or independent contractor.
   (ii) Registration No.: 2002-42
   (iii) County: Sacramento

8. ☑ **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

or

9. ☐ **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date: March 5, 2004

Zola M. Burgess
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)

(SIGNATURE)

ORIGINAL

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

FILED
San Francisco County Superior Court
MAR 19 2004
GORDON PARK-LI, Clerk
BY: [signature]
Deputy Clerk

**NOTICE TO DEFENDANT:**
***(AVISO AL DEMANDADO):***
CINGULAR WIRELESS, and DOES 1-10, inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:**
***(LO ESTÁ DEMANDANDO EL DEMANDANTE):***
DYLAN PATON and JAMIELYNN STORIE, Individually and on Behalf of All Others Similarly Situated and on Behalf of the General Public,

**You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.**

**There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.**

***Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.***

***Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.***

The name and address of the court is:
*(El nombre y dirección de la corte es):*
Superior Court of California, County of San Francisco
400 McAllister Street, Room 205
San Francisco, CA 94102

CASE NUMBER:
*(Número del Caso):* 04-428855

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
JACQUELINE E. MOTTEK (124448), MILBERG WEISS BERSHAD HYNES & LERACH LLP,
100 Pine Street, Suite 2600, San Francisco, CA 94111 Tel. (415) 288-4545 Fax (415) 288-4534

DATE: *(Fecha)* FEB 17 2004 GORDON PARK-LI Clerk, by *(Secretario)* [signature] Jun Panelo, Deputy *(Adjunto)*

*(For proof of service of this summons, use* Proof of Service of Summons *(form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario* Proof of Service of Summons, *(POS-010)).*

[SEAL] SUPERIOR COURT OF CALIFORNIA COUNTY OF SAN FRANCISCO EUREKA

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:
3. ☑ on behalf of *(specify)*:

under: ☑ CCP 416.10 (corporation) ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
☐ other *(specify)*:

4. ☐ by personal delivery on *(date)*:

ORIGINAL FILED
04 MAR 25 PM 3:19
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

JEANINE M. DONOHUE (State Bar No. 161740)
DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, California 94105-2235
Telephone: (415) 591-7500
Facsimile: (415) 591-7510

Attorneys for Defendant
CINGULAR WIRELESS

E-filing

PJH

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DYLAN PATON and JAMIEL LYNN STORIES, Individually and On Behalf of others Similarly Situated and on Behalf of the General Public,<br><br>Plaintiffs,<br><br>v.<br><br>CINGULAR WIRELESS, and DOES 1-10, inclusive,<br><br>Defendants. | Case No. C 04 1199<br><br>**DECLARATION OF JEANINE M. DONOHUE IN SUPPORT OF DEFENDANT CINGULAR WIRELESS' NOTICE OF REMOVAL (28 U.S.C. §§ 1331, 1332, 1441 & 1446)** |

I, Jeanine M. Donohue, have personal knowledge of the following and, if called upon to do so, could and would testify as follows:

1. I am an attorney at law duly authorized to practice before the courts of California and am admitted to practice before the United States District Court Northern District of California. I am an associate in the law firm of Drinker Biddle Reath LLP, attorneys of record in this matter on behalf of defendant Cingular Wireless.

2. Attached hereto as Exhibit A is a true and correct copy of the Wireless Service Agreement between Cingular Wireless and Dylan C. Paton.

///

3. Attached hereto as Exhibit B is a true and correct copy of the Terms and Conditions associated with the Wireless Service Agreement between Cingular Wireless and Dylan C. Paton.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed this 24th day of March, 2004 at San Francisco, California.

Respectfully submitted,

JEANINE M. DONOHUE

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105