Apple Inc. v. Psystar Corporation Doc. 751

**STEVEN AMES BROWN**
Entertainment Law 83363
69 Grand View Avenue
San Francisco, California 94114-2741
415/647-7700 Telephone
415/285-3048 Fax

Attorney for plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

BEATRICE WELLES,

Plaintiff,

vs.

TURNER ENTERTAINMENT CO., RKO PICTURES, INC., RKO PICTURES, LLC, RKO GENERAL, INC.,

Defendants.
_____________________________________/

Civil No. C-03-0414-MMC

[PROPOSED] ORDER DENYING TURNER'S MOTION FOR RULE 11 SANCTIONS.

Date: April 23, 2004

Time: 9:00 a.m.

Judge: Hon. Maxine M. Chesney



Dockets.Justia.com

Turner Entertainment Co.'s motion for Rule 11 sanctions came on regularly for hearing on April 23, 2004. Steven Ames Brown appeared for plaintiff Beatrice Welles. Michael Mazzocone appeared for defendant RKO Pictures, Inc. and RKO Pictures LLC. Tiffany R. Stephan appeared for defendant RKO General, Inc. David W. Quinto appeared for defendant Turner Entertainment Co.

The Court having considered the pleadings and argument of counsel and good cause appearing,

IT IS HEREBY ORDERED that the motion for F.R.Cv.P. Rule 11 sanctions be and is hereby denied.

Rule 11 is designed to deter abusive litigation; that is claims that simply have no objective justification whatsoever.

Even if the evidence relied upon would be insufficient to survive a motion for summary judgment, that does not mean the claim is factually unfounded for purposes of Rule 11. *Stitt, v. Williams*, 919 F.2d 516, 527 (9th Cir. 1990); *Warren v. City of Carlsbad*, 58 F.3d 439, 444 (9th Cir. 1995).

"Where the *opposing party controls the relevant facts*, a pleader must have leeway (at least in the early stages of litigation) to make allegations that may not be well-grounded." *Cal. Prac. Guide: Fed. Civ. Proc. Before Trial* ("*Cal. Prac. Guide"*), § 17:70.3. (emphasis in original.)

Absent an improper purpose, sanctions are not awardable to the moving party. *Cal. Prac Guide*, § 17:122.3. Rule 11 is not meant to reimburse an opposing party for its costs of defense. *Anderson v. County of Montgomery*, 111 F.3d 494 (7th Cir. 1997).

Even if a pleading is filed for an improper purpose, to justify fee shifting it must be shown that the improper claims or allegations <u>increased</u> the cost of litigation to the moving party. *Cal. Prac. Guide*, § 17:54.

An examination of the record clearly demonstrates that plaintiff's *Citizen Kane* allegations are grounded in law and fact.

Orson Welles and his production company Mercury Productions, Inc. each signed

contracts on July 22, 1939 with RKO Radio Pictures, Inc. ("RKO"). *Plaintiff's Exhibit 11; Means Declaration, Exhibit A.*

Under his actor contract, Mr. Welles was entitled to a royalty based on a specified formula. *Plaintiff's Exhibit 11,* pg. 6. (RKO 1284).

The contract between Mercury and RKO provided for Mercury's production of motion pictures which would be distributed by RKO. The contract contained two types of grants of rights, depending on whether the motion picture was based on an original story. *Means Declaration, Exhibit A,* pg 16 – 19 (TE 85 – 88).

Welles wrote, produced, directed and starred in *Citizen Kane* pursuant to the two contracts. *Citizen Kane* was based on an original story. *Means Declaration, Exhibit E*, Bates TE 180, ¶ 1.

The grant of rights clause at issue reads:

"In the case of any original story written by [Mercury], or any of its employees and used as the basis of either Picture, however, [RKO] shall acquire the motion picture and television rights in such story for such Picture only. … [Mercury] shall own the publication, radio, dramatic, and other rights in any such story but shall not use the same in any way to compete with or injure the distribution of the Picture based on such story." *Means Declaration, Exhibit A*, pg. 19 (TE 88). (bracketed material added and omitted.)

Plaintiff seeks a declaration concerning her rights in the *Citizen Kane* copyright.

The grant made by Mercury to RKO for motion pictures based on original stories was limited to undefined "motion picture and television rights." All rights other than those rights were retained by Mercury. RKO was not even permitted to remake *Citizen Kane* without an agreement with Mercury. RKO's copyright registration lists Mercury as the author of the "photoplay" which is the entirety of the audio-visual work. *Means Declaration, Exhibit L* (TE 430).

RKO itself characterized its rights as a limited "license." *Means Declaration, Exhibit N*. (Mercury listed under section identifying royalty participants and limited licenses.)

The grant is at most a limited license from Mercury to RKO. As such, the grant is

presumed to only permit such uses as are specifically authorized; "copyright licenses are assumed to prohibit any use not authorized. []" *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1088 (9th Cir. 1989). (Citations omitted.)

"The clearest language is necessary to divest the author of the fruits of his labor." *Warner Bros. Pictures, Inc. v. Columbia Broadcasting System*, 216 F.2d 945, 949 (9th Cir. 1954). There is no argument that Mercury was the "author" of *Citizen Kane*; the 1941 copyright registration makes this recital.

The question of whether a limited grant of rights made before the advent of home video devices such as videocassettes authorizes the sale of such items to the public is controlled by *Cohen v. Paramount*, 845 F.2d 851 (9th Cir. 1988).

*Cohen* held that "express language" must authorize the distribution of copies "to the public" where the grant reserves all other rights to the author. Here there is no such express language present and the rights not granted to RKO were retained by Mercury.

Thus, Turner lacks the right to distribute *Citizen Kane* to the public through home video devices and plaintiff properly brought a declaratory relief claim to clarify her rights.

Further on January 9, 1989 defendants Turner and RKO Pictures, Inc. purported to license "dramatico-musical stage" rights in *Citizen Kane* to Fifth Avenue Productions, Inc. *Plaintiff's Exhibit 8*. Defendants had no right to execute that license.

Plaintiff is entitled to a declaration that specifies that, except for the limited rights granted to RKO, she alone owns "publication, radio, dramatic, and other rights" in *Citizen Kane*. This again means that plaintiff was entitled to seek declaratory relief.

On December 15, 1944 the Mr. Welles, Mercury and RKO entered into a new agreement concerning the two July 22, 1939 agreements, as amended. ("1944 Agreement.") *Means Declaration, Exhibit F*.

Among other terms, the 1944 Agreement provided:

"Each and all of the original contracts hereinabove referred to and described are hereby cancelled and terminated, and each party to said contracts, and each thereof, is hereby released from performance of any of the terms thereof." *Means Declaration, Exibit F*,

pg. 3, ¶ “First.”

Welles asserts that the 1944 Agreement “terminated and cancelled” RKO’s rights in *Citizen Kane*, while Turner argues that the 1944 Agreement only terminated and cancelled prospective obligations, leaving in tact any grants of rights.

Turner cites California authority to support its position, but both the 1939 contracts are subject to New York law. *Means Declaration*, *Exhibit A*, pg. 35, ¶ 4 (TE 104); *Exhibit 11*, pg. 36 ¶ 5 (RKO 1314).

California’s choice of law rules are applicable whether the contractual issue is considered as a diversity question or Federal common law. *Klaxon C. v. Stentor Elec. Mfg. Co.*, 313 US 487 (1941); *A.I. Trade Finance, Inc. v. Petra Int’l Banking Corp.*, 62 Fd.3d. 1454, 1464-1465 (DC Cir. 1995). California would enforce the New York choice of law unless New York had no substantial connection with the contract. *Ury v. Jewelers Acceptance Corp.*, 227 Cal.App.2d 11, 18 (1964).

The common law supports plaintiff’s view that the 1944 Agreement terminated all grants made in the 1939 agreements.

“[I]t is a common supposition that when a ‘contract’ is said to be discharged, or terminated, or cancelled, all of those legal relations cease to exist, the <u>rights</u> and duties of both parties alike being <u>ended</u>.” 5A *Corbin on Contracts*, § 1229. (emphasis added).

“Where the parties to an existing contract enter into a new agreement, completely covering the same subject-matter, but containing terms which are inconsistent with those of the earlier contract, so that the two cannot stand together, <u>the effect is to supersede and rescind the earlier contract</u>, leaving the later agreement as the <u>only</u> agreement of the parties on the subject.” Black, *Rescission of Contracts and Cancellation of Written Instruments* § 530 (1916). (emphasis added.)

With respect to the questions of whether the 1944 Agreement discharged RKO’s obligation under the actor contract to account to Mr. Welles for *Citizen Kane*, there are genuine issues of material fact as to whether the 1944 Agreement was superseded, terminated or a new agreement was made between the parties.

Commencing after the execution of the 1944 Agreement the parties exchanged correspondence and engaged in conduct which creates genuine issues of material fact concerning the meaning of the 1944 Agreement and whether it was superseded or a new agreement was reached concerning *Citizen Kane*.

In 1948 RKO represented to a District Judge that Orson Welles had indemnified RKO against infringement claims. *Plaintiff's Exhibit 3*. However, the only agreements to which Mr. Welles was a party with RKO concerning *Citizen Kane* are the two 1939 contracts. In addition to his actor contract Mr. Welles personally guaranteed Mercury's performance of its agreement. *Plaintiff's Exhibit 11; Means Declaration, Exhibit E*, pg. 3 (TE 181).

RKO itself was unsure of what rights it held in *Citizen Kane* survived the execution of the 1944 Agreement. *Exhibit 2.*

Mr. Welles and RKO's parent corporation entered into two publishing agreements for *Citizen Kane's* script as joint "sellers." *Plaintiff's Exhibits 4 – 5*.

Finally, when RKO's parent corporation transferred the RKO film library to a new company also called RKO Radio Pictures, Inc., Mr. Welles' name was listed next to *Citizen Kane* in a section entitled "Pictures with participating interests or on which or on which license limited." Mr. Welles name could only have been on that list to indicate he was a royalty participant since he granted no limited licenses to RKO in his contract.

Further, plaintiff has produced evidence that Turner agreed that the names on the list where Mr. Welles is identified next to *Citizen Kane* were intended as royalty participants and that Turner had agree to pay those actors.

Thus, there are genuine issues of material fact and hence it cannot be said that plaintiff's *Complaint* was not grounded in fact or law.

Additionally, Turner has failed to demonstrate that its costs of defending this lawsuit were increased as a result of plaintiff's allegations concerning *Citizen Kane*.

Dated:

________________________________________