Apple Inc. v. Psystar Corporation Doc. 861

Michael L. Glaser (*pro hac vice*)
Michael D. Murphy (*pro hac vice*)
Chris R. Strohmenger (*pro hac vice)*
SHUGHART THOMSON & KILROY, P.C.
1050 17th Street, Suite 2300
Denver, CO 80265
Tel: (303) 572-9300
Fax: (303) 572-7883

PICK & BOYDSTON, LLP
Brian D. Boydston (State Bar No. 155614)
523 West Sixth Street, Suite 1134
Los Angeles, CA 90014
Tel: (213) 624-1996
Fax: (213) 624-9073

Attorneys for Defendants Key Register, L.L.C.,
Key Register Systems, Inc. and Key Management, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEYTRAK, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>KEY REGISTER, L.L.C., KEY REGISTER SYSTEMS, INC., and KEY MANAGEMENT, INC.,<br><br>Defendants. | CASE NO. C-03-00870 (WHA)<br>Hearing Date and Time:<br>April 29, 2004 at 8:00 a.m.<br><br>**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S RENEWED MOTION FOR PRELIMINARY INJUNCTION AND SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES** |



Dockets.Justia.com

## TABLE OF CONTENTS


I. INTRODUCTION ........ 1

II. STATEMENT OF ISSUES TO BE DECIDED ........ 1

III. STATEMENT OF RELEVANT FACTS ........ 2

IV. ARGUMENT ........ 4

A. Preliminary Injunction Standard ........ 4

1. KeyTrak Cannot Satisfy its Burden of Demonstrating a Reasonable Likelihood of Success on the Merits ........ 5

a. KeyTrak Fails to Demonstrate Defendants' Invalidity Defense Lacks Substantial Merit ........ 8

(1) KeyTrak's Argument That This Court Improperly Considered the Examiner's Non-Final Rejection is Disingenuous ........ 9

(2) KeyTrak's Own Expert Concedes That at Least Four References Cited by Defendants Teach a Trackable Object with Three Conductors ........ 11

(3) Application Note 104 is Analogous Art That, Among Other References, Teaches a Trackable Object Having Three Conductors ........ 15

(4) Secondary Considerations, Even if Proven by KeyTrak, Do Not Alone Demonstrate Lack of Substantial Merit of Defendants' Invalidity Defense ........ 19

2. Irreparable Harm in Absence of Preliminary Injunction ........ 20

3. Balance of Hardships ........ 22

4. Public Interests ........ 23

V. CONCLUSION ........ 24

# TABLE OF AUTHORITIES

## Cases

Amazon.com, Inc. v. Barnesandnoble.com, Inc., 239 F.3d 1343, 1350 (Fed.Cir. 2001) ..... 5, 7, 15
Anton/Bauer, Inc. v. Pag, Ltd., 329 F.3d 1343, 1348 (Fed.Cir. 2003) ..... 6
Atlantic Richfield Co. v. Union Oil Co. of Cal., C.A. No. CV-95-2379-KMW (C.D.Cal. 1997) and Union Oil Co. of Cal. v. Atlantic Richfield Co., 238 F.3d 989, 994 (Fed.Cir. 2000) ..... 10
Bell & Howell Doc. Mgt. Prods. Co. v. Altek Sys., 132 F.3d 701, 708 (Fed.Cir. 1997) ..... 23
Biagro Western Sales, Inc., v. Helena Chemical Co., 160 F.Supp. 2d 1112, 1136 (E.D.Cal. 2001) ..... 21, 22, 23
Ecolochem, 227 F.3d at 1380 ..... 19
Genentech, Inc. v. Novo Nordisk, A/S., 108 F.3d 1361, 1364 (Fed.Cir. 1997) ..... 6, 8
High Tech Med. v. Instrumentation, Inc. v. New Image Indus., 49 F.3d 1551, 1556 (Fed.Cir. 1995) ..... 22
H.H. Robertson v. United Steel Deck, Inc., 820 F.2d 384, 387 (Fed.Cir. 1987) ..... 6
Helifix Ltd. v. Blok-Lok, Ltd., 208 F.3d 1339, 1351 (Fed.Cir. 2000) ..... 5, 6, 8
HybriTech, Inc. v. Abbott Labs, 849 F.2d 1446, 1451 (Fed. Cir. 1988) ..... 5, 22
In re Clay, 966 F.2d 656, 658-9 (Fed.Cir. 1992) ..... 16
In re Deminski, 796 F.2d 436, 442 (Fed.Cir. 1986) ..... 16, 18
In re Paulsen, 30 F.3d 1475, 1481-2 (Fed.Cir. 1994) ..... 18
Intel Corp. v. ULSI Sys. Tech., Inc., 995 F.2d 1556, 1568 (Fed.Cir.1993) ..... 1
Intel Corp. v. ULSI Systems Tech., Inc., 995 F.2d 1566, 1568 (Fed.Cir. 1993) ..... 4
Jack Guttman, Inc. v. Kopykake Enters., Inc., 302 F.3d 1325, 1356 (Fed.Cir. 2002) ..... 4
KeyTrak, Norian Corp. v. Stryker Corp., 2004 WL 726120 *6 (Fed.Cir. April 6, 2004) ..... 10
National Steel Car, Ltd. v. Canadian Pacific Railway, Ltd., 357 F.3d 1319, 1325 (Fed.Cir. 2004) ..... 1, 4, 16, 20
New England Braiding Co., Inc. v. A.W. Chesterton Co., 970 F.2d 878, 882-883 (Fed.Cir. 1992) ..... 7, 8
Newell Co, Inc. v. Kenney Mfg. Co., 864 F.2d 757, 768 (Fed.Cir. 1988) ..... 19
Nutrition 21 v. U.S., 930 F.2d at 869 (Fed.Cir. 1991) ..... 8
Oakley, 316 F.3d at 1339-40 ..... 7
Purdue Pharma, L.P. v. Boehringer Ingelheim GmbH, 237 F.3d 1359, 1363 (Fed. Cir. 2001) ..... 6
Reebok v. Int'l Ltd. v. J. Baker, Inc., 32 F.3d 1552, 1555 (Fed.Cir. 1994) ..... 4, 5, 21, 22
Richardson-Vicks Inc. v. Upjohn Co., 122 F.3d 1476, 1483 (Fed.Cir. 1997) ..... 19
Ryko Mfg. Co. v. Nu-Star, Inc., 950 F.2d 714, 719 (Fed.Cir. 1991) ..... 19
State Contracting & Engineering Corp. v. Condotte America, Inc., 346 F.3d 1057, 1069 (Fed.Cir. 2003) ..... 16, 17
Tate Access Floors, Inc. v. Interface Architectural Res., Inc., 279 F.3d 1357, 1365 (Fed. Cir. 2002) ..... 7
WMS Gaming, Inc. V. Int'l Game Tech., 184 F.3d 1339, 1355 (Fed.Cir. 1999) ..... 14

## Rules

35 U.S.C. § 282 (1994 & Supp. III 1997) ........ 8

Plaintiff KeyTrak, Inc. ("KeyTrak") filed its Renewed Motion for Preliminary Injunction on April 8, 2004 ("Renewed Motion"). Defendants Key Register LLC, Key Register Systems, Inc. (collectively, "Key Register") and Key Management, Inc. ("KMI")(hereinafter, the Key Register and KMI are collectively referred to as "Defendants") strenuously oppose the Renewed Motion for the reasons that follow.

## I. INTRODUCTION

The Federal Circuit recently stressed "a preliminary injunction is a '**drastic and extraordinary remedy** that is not to be routinely granted.'" *National Steel Car, Ltd. v. Canadian Pacific Railway, Ltd.*, 357 F.3d 1319, 1325 (Fed.Cir. 2004)(emphasis added; quoting *Intel Corp. v. ULSI Sys. Tech., Inc.*, 995 F.2d 1556, 1568 (Fed.Cir.1993). As demonstrated by KeyTrak's Renewed Motion and further highlighted below, this case is not extraordinary. Accordingly, Defendants submit that such a "drastic" remedy at this juncture cannot be justified under the law or the facts.

## II. STATEMENT OF ISSUES TO BE DECIDED

Has KeyTrak satisfied its burden of demonstrating that this case is extraordinary such that a preliminary injunction should issue, including that (1) KeyTrak will likely succeed on the merits of Defendants' invalidity defense; (2) KeyTrak will suffer irreparable harm without a preliminary injunction; (3) the balance of the hardships favors issuance of preliminary injunction; and (4) the public's interest is better served by the issuance of a preliminary injunction?

With respect to KeyTrak's burden of showing that it will likely succeed on the merits of Defendants' invalidity defense, has KeyTrak demonstrated that Defendants' invalidity defense "lacks substantial merit" as required by governing Federal Circuit authority?

## III. STATEMENT OF RELEVANT FACTS

Justice would not be served if, in determining whether a preliminary injunction should issue pending trial, the relevant procedural history of this case were not detailed for the Court. Shortly after filing its Verified Complaint on February 27, 2003, KeyTrak also sought a preliminary injunction [DKT No. 4], which, after a hearing, the Court denied on May 8, 2003 ("May 8 Order"). [DKT No. 89] In the May 8 Order, the Court found that KeyTrak had not established a likelihood of success on the merits with respect to infringement. Accordingly, the Court did not rule on whether KeyTrak could establish a likelihood of success on the merits with respect to the validity of KeyTrak's '379 Patent. Moreover, the Court did not rule on the other three factors that must be weighed before issuing a preliminary injunction, *i.e.*, irreparable injury, balance of hardships, and the effect on the public interests.

On October 9, 2003, after a hearing on the merits of several pending motions, the Court entered an Order, granting in part and denying in part partial summary judgment of infringement. (the "October 9 Order") The Court determined that, in light of its August 5, 2003 Claim Construction Order [DKT No. 138], Defendants infringe the claims of the '379 Patent. The Court, however, ordered a trial by jury on the merits of Defendants' defense of invalidity. *See* October 9 Order Granting In Part and Denying In Part Plaintiff's Motion for Partial Summary Judgment (the "October 9 Order") [DKT. No. 176].

Despite this favorable ruling of infringement six months ago, KeyTrak (intentionally or not) failed to seek permission of the Court to renew its request for the issuance of a preliminary

injunction pending trial.[1] KeyTrak's failure to seek this Court's permission to file another request for preliminary injunction is quite telling. Clearly, if KeyTrak is suffering today the irreparable harm it describes in its Renewed Motion, KeyTrak must have suffered the same harm six months ago when it had the Court's infringement ruling in its back pocket. It did nothing back then because it likely determined that Defendants' invalidity defense, right or wrong, raised substantial issues precluding KeyTrak from receiving a preliminary injunction. Moreover, any irreparable harm KeyTrak alleges it may have suffered since the October 9 Order with respect to market share has been ameliorated by KeyTrak's recent purchase of another competitor in the marketplace, *to wit*, ISS Solutions-KeyVault ("ISS-KeyVault"). KeyTrak cannot ignore the reality that it just eliminated competition from a major rival which, as demonstrated by KeyTrak's March 18, 2004 and April 12, 2004 disclosures to Defendants, sold nearly as many key-tracking machines as KeyTrak did last year.[2]

Thus, KeyTrak's own conduct over the past six months (*i.e.* failing to seek leave to renew its preliminary injunction request and acquiring a major competitor in the industry) demonstrates that KeyTrak cannot show irreparable harm absent a preliminary injunction. And, in any event, as demonstrated below, KeyTrak cannot meet its burden of showing a likelihood of success on the merits and, thus, it is not entitled to a presumption of irreparable harm. Finally, Defendants submit that the balance of the hardships and public interest factors with in their favor.

---

[1] In fact, it was not until this Court prompted KeyTrak, by its Order to Show Cause on March 11, 2004, that KeyTrak finally renewed its request for a preliminary injunction.

[2] *Compare* Confidential Exhibit C to the Declaration of Michael L. Glaser [DKT No. 369], filed under seal at DKT No. 367, with Confidential Exhibit D to the Declaration of Chris R.

## IV. ARGUMENT

KeyTrak cannot meet its burden of demonstrating that it is entitled to a preliminary injunction because it has not shown, and cannot now show, that Defendants' invalidity defense lacks substantial merit. Moreover, in light of its recent conduct described above, KeyTrak cannot now argue that it will suffer irreparable harm if a preliminary injunction were not to issue. Similarly, the balance of hardships and public interest tip in the favor of Defendants, such that KeyTrak is not entitled to a preliminary injunction.

### A. Preliminary Injunction Standard

The Federal Circuit notes that a preliminary injunction is a "'drastic and extraordinary remedy that is not to be routinely granted.'" *National Steel Car, Ltd., v. Canadian Pacific Railway, Ltd.*, 357 F.3d 1319, 1325 (Fed.Cir. 2004) *rehearing and rehearing en banc denied.* (citing *Intel Corp. v. ULSI Systems Tech., Inc.*, 995 F.2d 1566, 1568 (Fed.Cir. 1993). Moreover, the trial court's decision to grant or deny a preliminary injunction is within its sound discretion. *See id.*; *Reebok v. Int'l Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1555 (Fed.Cir. 1994)("a trial court's decision whether to issue a preliminary injunction is discretionary.")

In order to obtain a preliminary injunction pending a final determination on the merits of the case, the moving party must demonstrate (1) a reasonable likelihood of success on the merits; (2) irreparable harm in the absence of a preliminary injunction; (3) a balance of hardships tipping in its favor; and (4) the injunction's favorable impact on the public interest. *See National Steel,* at 1324-25 (citing *Jack Guttman, Inc. v. Kopykake Enters., Inc.*, 302 F.3d 1325, 1356 (Fed.Cir. 2002). "The burden is <u>always</u> on the movant to show entitlement to a preliminary injunction." *See Reebok*, 32

---

Strohmenger, Esq., dated April 15, 2004, filed in Support of Defendants' Response in

F.3d at 1555 (emphasis added); *see also, Helifix Ltd. v. Blok-Lok, Ltd.*, 208 F.3d 1339, 1351 (Fed.Cir. 2000)("A patent holder seeking a preliminary injunction bears the burden of establishing a likelihood of success of the merits with respect to the patent's validity.")

### 1. KeyTrak Cannot Satisfy its Burden of Demonstrating a Reasonable Likelihood of Success on the Merits

The Federal Circuit stresses that, although "'[t]hese factors, taken individually, are not dispositive' because the district court's conclusion results from a process of overall balancing, (*see HybriTech, Inc. v. Abbott Labs*, 849 F.2d 1446, 1451 (Fed. Cir. 1988)), a movant is not entitled to a preliminary injunction if he fails to demonstrate a likelihood of success on the merits." *See National Steel,* at 1325 (citing *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed.Cir. 2001) ("both 'case law and logic' establish the likelihood of success on the merits and the irreparable harm factors as necessary showings to obtain a preliminary injunction"). Thus, the Federal Circuit stresses that despite "an exceptionally weighty showing on one of the other three factors" used to determine whether a preliminary injunction should issue, a movant is not entitled to a preliminary injunction if he fails to demonstrate a likelihood of success in the merits. *Id.* Accordingly, the most critical factor here for KeyTrak is the reasonable likelihood of success factor; in other words, can KeyTrak can establish that it will likely prevail on Defendants' invalidity defense?

Since, as shown herein and previously shown on the record in this case, Defendants have raised a substantial question concerning the validity of the '379 Patent, in order for KeyTrak to demonstrate a likelihood of success on the merits, it must show that Defendants' invalidity defense "**lacks substantial merit**." *See National Steel,* at 1325 (quoting *Genentech, Inc. v. Novo Nordisk,*

---

Opposition to Plaintiff's Renewed Motion (the "Strohmenger Decl."), filed under seal

*A/S.*, 108 F.3d 1361, 1364 (Fed.Cir. 1997)(emphasis added); *Anton/Bauer, Inc. v. Pag, Ltd.*, 329 F.3d 1343, 1348 (Fed.Cir. 2003) *rehearing and rehearing en banc denied June 27, 2003* (In demonstrating a likelihood of success on the merits, "the moving party must show, in light of the burdens that will inhere at trial, that (1) it will likely prove infringement and (2) any challenges to the validity and enforceability of its patent 'lacks substantial merit.'"(quoting *Purdue Pharma, L.P. v. Boehringer Ingelheim GmbH,* 237 F.3d 1359, 1363 (Fed. Cir. 2001); *Helifix,* 208 F.3d at 1351 (same)

KeyTrak attempts to water down this well-established burden by stating it "need only establish a 'reasonable likelihood that the attack on its patent's validity will fail.'" KeyTrak's Renewed Motion, at 7 (quoting *H.H. Robertson v. United Steel Deck, Inc.,* 820 F.2d 384, 387 (Fed.Cir. 1987)) KeyTrak, however, disregards the significance of more recent authority such as *National Steel*, which holds the patentee to a higher burden than KeyTrak admits during the preliminary injunction stage. *See* KeyTrak's Renewed Motion, at n.13, p.7. Again, on page 8 of its Renewed Motion, KeyTrak confuses its burden by stating, "[t]he following sections demonstrate that **no clear and convincing evidence** of invalidity has been offered by Key Register or KMI." Renewed Motion, at 8 (emphasis added). KeyTrak's attempt to alter well-established law regarding the burdens of the parties in connection with a preliminary injunction is disturbing given that KeyTrak has previously represented to the Court that a higher (and the correct) burden exists for patentees seeking preliminary injunctions. On May 1, 2003, at this Court's preliminary injunction hearing,[3] KeyTrak's lead counsel represented to this Court "it's not [KeyTrak's] burden to prove validity, but just show that the alleged infringer's defense lacks substantial merit." *See* Strohmenger

Decl. at Exhibit A at 15:22-4, which is the relevant page of the transcript from the Court's May 1, 2003 preliminary injunction hearing. Additionally, KeyTrak offered a visual presentation to the Court supporting KeyTrak's then recognition that the applicable burden in a preliminary injunction context is that "the patentee must show that the alleged infringer's defense lacks substantial merit." *See* Exhibit B to the Strohmenger Decl. citing *New England Braiding Co., Inc. v. A.W. Chesterton Co.,* 970 F.2d 878, 882-883 (Fed.Cir. 1992).

Notwithstanding KeyTrak's now reversal on what it takes to obtain a preliminary injunction, a Federal Circuit opinion *this year* makes abundantly clear the parties' burdens at the preliminary injunction stage. The *National Steel* Court, whose opinion was denied reconsideration by the entire Federal Circuit panel, emphasized the distinct differences between the burden of proof at trial as compared to that in the context of a preliminary injunction:

> Although these principles of claim-by-claim analysis and of construction-before-comparison-to-prior-art apply in the context of a preliminary injunction as well as at trial, the accused infringer's burden of proof is notably different in the two contexts. At the preliminary-injunction phase, once the accused infringer has posed a substantial question of invalidity, the patentee must demonstrate that the invalidity defense **lacks substantial merit**. See *Oakley,* 316 F.3d at 1339-40 ("[t]he [preliminary] injunction should not issue if the party opposing the injunction raises "a substantial question concerning infringement or validity, meaning that it asserts a defense that [the party seeking the injunction] cannot prove lacks substantial merit.'" (quoting *Tate Access Floors, Inc. v. Interface Architectural Res., Inc.,* 279 F.3d 1357, 1365 (Fed. Cir. 2002)) (second alteration in original). In other words, "**[v]ulnerability is the issue at the preliminary injunction stage** while validity is the issue at trial. The showing of a substantial question as to invalidity **thus requires less proof than the clear and convincing showing** necessary to establish invalidity itself" at trial. *Amazon.com* 239 F.3d at 1359.

*National Steel* at 1134 -35 (alterations in original)(emphasis added)

---

[3] At this hearing, the Court also determined various other pending matters including whether to issue a preliminary injunction.[DKT No. 89]

Moreover, KeyTrak cannot rest on the basis that its '379 Patent is presumed to be valid.

> A patent holder seeking a preliminary injunction seeks the burden of establishing a likelihood of success on the merits with respect to the patents validity. *See Nutrition 21 v. U.S.*, 930 F.2d at 869 (Fed.Cir. 1991) The presumption of the patent's validity created by 35 U.S.C. § 282 (1994 & Supp. III 1997) 'does not relieve a patentee who moves for a preliminary injunction from carrying the normal burden of demonstrating that it will likely succeed on all disputed liability issues at trial, even when the issue concerns the patents validity.' *New England Braiding Co.*[*v. A.W. Chesterton Co.,*] 970 F.2d 878, 882 (Fed. Cir. 1992). If the alleged infringer raises a substantial question concerning validity, *i.e.*, asserts an invalidity defense that the patentee cannot prove 'lacks substantial merit,' the preliminary injunction should not issue." (quoting *Genentech,* 108 F.3d at 1364 (Fed. Cir. 1997).

*Helifix, Ltd.,* 208 F.3d 1339, 1351.

Thus, the question before the Court today is whether Defendants have made **vulnerable** the '379 Patent's presumption of validity. In keeping with recent and controlling Federal Circuit precedent requiring "less proof than the clear and convincing showing necessary to establish invalidity" at trial, (*National Steel* at 1335), Defendants' attack on the '379 Patent throughout this litigation and again bolstered herein, clearly raises a substantial question as to its validity. Moreover, KeyTrak's attempts to expose perceived weaknesses in Defendants' invalidity defense fall short of demonstrating a "lack of substantial merit." Consequently, KeyTrak cannot show that it is entitled to a preliminary injunction either before the now scheduled May 17, 2004 trial, or thereafter, if trial does not commence at that time.

### a. KeyTrak Fails to Demonstrate Defendants' Invalidity Defense Lacks Substantial Merit.

It stands to reason that, in seeking to enjoin Defendants, KeyTrak would put its best foot forward in attacking Defendants' invalidity defense. If that is the case, then presumably KeyTrak's arguments in its Renewed Motion represent what KeyTrak perceives to be its strongest arguments

for why Defendants' invalidity defense fails. As shown below, however, because each of KeyTrak's arguments fall well short of its burden at this stage, KeyTrak is not entitled to a preliminary injunction pending trial.

**(1) KeyTrak's Argument That This Court Improperly Considered the Examiner's Non-Final Rejection is Disingenuous.**

KeyTrak chose in its Renewed Motion to omit the entire relevant passage from the Court's October 9 Order. Instead, KeyTrak only cites to the Court's reliance on the United States Patent and Trademark Office (the "PTO") Examiner's non-final rejection in contributing to its denial of KeyTrak's partial summary judgment on validity. *See* KeyTrak's Renewed Brief at 8-9 Had KeyTrak included the entire relevant passage in its Renewed Motion, it would be evident that this Court did not improperly consider the non-final rejection as evidence.

> Plaintiff asserts that defendants' use of this evidence is inappropriate. Plaintiff contends that evidence from the prosecution history is not relevant because it is not prior art. **But defendants are not arguing that the prosecution history is itself the source of the suggestion to combine. Rather, they are offering it to show that, at least in the mind of the examiner, the suggestion or motivation to combine would have been evident to one of ordinary skill in the art** (as to the large number of rejected claims). Plaintiff further points out that to look at withdrawn claims, without considering the treatment of subsequent claims, constitutes an erroneous analytical approach. This order, however, has noted the substantial similarities between the rejected (and subsequently withdrawn) claims and those that ultimately issued. In this regard, as to whether there was a suggestion or motivation to combine, the examiner's obviousness and anticipation findings remain relevant. Finally, plaintiff asserts that the examiner's conclusions lacked adequate support and the examiner could have been wrong. At this juncture, the Court is not in a position to hold that the examiner was wrong.

Court's October 9 Order, at 6-7 (emphasis added).

KeyTrak attempts to avoid the Court's above-quoted rationale by (1) omitting this telling part from the Court's October 9 Order and (2) referencing court cases that clearly do not advance its

position. Thus, it is unclear how the *Atlantic Richfield* cases[4] even address this issue or why KeyTrak accords any significance to those decisions. The first *Atlantic Richfield* case is an unpublished opinion and is not binding on this Court even if did somehow address this issue. Although the second *Atlantic Richfield* case may be binding, it clearly does not advance KeyTrak's position. The fact that the district court there "properly instructed the jury on the law" says nothing as to whether a PTO's examiner's state of mind in finding a motivation to combine is probative in an obviousness analysis. Additionally, the last authority cited by KeyTrak, *Norian Corp. v. Stryker Corp.,* 2004 WL 726120 *6 (Fed.Cir. April 6, 2004), actually stands for the proposition that it is improper for courts to delve into speculation as to what an examiner was thinking when he concluded that a patent was valid over cited prior art. *See id. Norian* does not hold, as KeyTrak would like this Court to believe, that an examiner's state of mind (as opposed to his analysis and findings) cannot be probative in an obviousness analysis tried before a jury. "Norian is correct that the presumption of validity is not subject to being diluted by 'procedural lapses' during prosecution. Similarly, flawed prosecution arguments do not affect patent validity, whether or not they raise questions of inequitable conduct." *Norian* at *6 (internal citation omitted). A thorough reading of *Norian* demonstrates KeyTrak's reliance on that opinion is unavailing.

---

[4] KeyTrak cites at p. 9 of its Renewed Motion to *Atlantic Richfield Co. v. Union Oil Co. of Cal.,* C.A. No. CV-95-2379-KMW (C.D.Cal. 1997) and *Union Oil Co. of Cal. v. Atlantic Richfield Co.,* 238 F.3d 989, 994 (Fed.Cir. 2000).

In any event, Defendants are not arguing that the Examiner's rejection of KeyTrak's earlier claims in its '379 Patent should be admitted as evidence of obviousness. Instead, Defendants simply point to the fact that the Examiner, who is one of ordinary skill in the art, found a suggestion or motivation to combine in the cited art. As the Court astutely observed in its October 9 Order, it is not the Examiner's rejection that is probative, it is his state of mind as one skilled in the art that is so significant. *See* Court's October 9 Order, at 6 [DKT No. 176]

Regardless, this Court is not bound by the parties' stipulation as to the use of the Examiner's rejection, which only affects the parties' instructions to the jury.[5] In the context of a preliminary injunction, the Court is free to consider the Examiner's rejection as it sees appropriate, including as evidence that one skilled in the art would find a suggestion or teaching in the cited reference.[6]

**(2) KeyTrak's Own Expert Concedes That At Least Four References Cited by Defendants Teach a Trackable Object With Three Conductors.**

KeyTrak's principal attack in its Renewed Motion on Defendants' invalidity defense, that Defendants fail to cite a reference that teaches a trackable object with three electrical conductors, rings as hollow as its arguments in its Motion *in Limine* No.1 to Exclude Expert Testimony of Dr. James R. Adams. [DKT No. 304] Rather than thrusting every perceived deficiency out there in

---

[5] In light of this further analysis, on or before the jury charge conference with the Court, Defendants will move to dispute Jury Charge No. 24 [DKT. No.333].

[6] The Court has also ruled that Defendants' use of a Canadian Intellectual Property Office Action, dated November 21, 2001, which was the subject of KeyTrak's Motion in Limine No.4, would be permitted for the limited purpose of showing one skilled in the art would combine certain prior art references. *See* Court's March 30, 2004 Rulings on *Motions in Limine*, at 8-9 [DKT No. 358]("**Key Register contends that the office action is relevant because it shows that a person of ordinary skill in the art would combine the PCT application with other prior art references. Key Register's argument is persuasive** and to that extent KeyTrak's motion is DENIED." The Court limited the office action's use to one sentence identified therein)(emphasis added)

hopes that something may stick as it did in its failed attempt to exclude Dr. Adams' testimony, KeyTrak has regrouped and now limits its assault to part of the seventh element of Claim 1: "at least three conductors on said lower portion of each trackable object."

Particularly surprising about KeyTrak's selection of this limitation of Claim 1 to demonstrate how Defendants' invalidity defense fails is the fact that KeyTrak's own expert, Professor James Harris, concedes in his Expert Rebuttal Report that at least four references cited by Defendants (*i.e.* 50 Ways,[7] the DS 2407 Data Sheets,[8] Application Note 104, and Application Note 106) teach the use of three conductors.[9] Thus, the chart on page 32 of Professor Harris' Expert Rebuttal Report shows that "50 Ways" as well as "DSL," which Dr. Harris defines as "Dallas Semiconductor product literature including Application Note 104, Application Note 106, and the DS2407 Data Sheet," teach the use three conductors on an addressable switch, including one conductor being an LED.[10]

Regardless of Professor Harris' concession, Dr. Adams explains in his Declaration attached as Exhibit C to the Strohmenger Decl. that, while there may not be an <u>explicit</u> teaching of three conductors on a lower portion of a trackable object, one can infer such a teaching from Application Note 104 as well as other prior art references cited by Defendants.[11] In fact, as Dr. Adams explains in more detail in his Declaration, Figure 3 of Application Note 104 explicitly shows a computer driving a DS2407 addressable switch having three ports: a ground port, a data port, and an I/O port. Thus, a person of ordinary skill in the art would have to know that if he wanted to use a computer to

---

[7] Dallas Semiconductor's "50 Ways to Touch Memory."

[8] The Dallas Semiconductor Corporation's Data Sheet for the DS2407 Addressable Switch.

[9] *See* Exhibit 4 to the Declaration of Dr. James R. Adams ("Adams' Decl."), attached as Exhibit C to the Strohmenger Decl.

[10] Professor Harris' Expert Rebuttal Report, at p.31, attached as Exhibit 4 to the Adams' Decl., which is attached as Exhibit C to the Strohmenger Decl.

[11] *See* Adams' Decl. at 3, attached as Exhibit C to the Strohmenger Decl.

drive a DS2407 addressable switch that has three ports, he would need *three* conductors to mate those *three* ports with *three* contacts in the socket receiving the trackable object; otherwise the addressable switch would not work. *See* Adams' Decl. at 3. It is as simple and logical as knowing if you want to use a three pronged plug to power a lamp, you must have a three prong socket into which the plug fits. Clearly one of ordinary skill would have the capability to overcome such a minor hurdle.

KeyTrak ignores this simple logic and, instead, resorts to "hide the ball" tactics. In its Renewed Motion at page 11, KeyTrak again carefully selects a portion of Dr. Adams' deposition testimony purportedly to show that Defendants do not cite a reference that teaches this limitation. Defendants submit that KeyTrak's statement in its Renewed Motion "Dr. Adams concedes that none of his six references teach a trackable object with three electrical conductors mated to corresponding electrical contacts in a socket" is perhaps the most uncandid display of lawyering thus far. KeyTrak's Renewed Motion at 11. KeyTrak ostensibly supports this blatant misrepresentation with the fact that Dr. Adams stated during his deposition that he does not "have a document that ***explicitly*** teaches that [limitation]." KeyTrak's Renewed Brief at 11-12 (emphasis added). The very next question and answer in Dr. Adams' deposition is worth the price of admission:

Q: But in your expert report you said you did [have a reference that teaches three conductors on the lower portion of a trackable object], didn't you?

A: No. I said the teaching is either implicit or explicit.[12]

KeyTrak's attorney further inquires where in the document Dr. Adams arrives at his conclusion that this teaching can be inferred:

Q: The bottom line, though, is, Dr. Adams, that you're making that by way of inference as opposed to pointing me to any specific language in the document itself, correct?

A: It's impliedly shown, yes.[13]

The Federal Circuit has unequivocally stated that teachings may be either explicitly or implicitly found within the references. *See WMS Gaming, Inc. V. Int'l Game Tech.,* 184 F.3d 1339, 1355 (Fed.Cir. 1999). Thus, Dr. Adams did not contravene governing law when he testified during his deposition that Application Note 104 implicitly teaches three conductors as an addressable switch. Moreover, as described more fully in Dr. Adams' attached Declaration and Figure 3 of Application Note 104 attached thereto as Exhibit 1 Dr. Adams' Expert Report specifically describes how the Application Note 104 explicitly shows the combination of an addressable switch having three ports: a ground port, a data port, and an I/O port, with an LED. *See* pp. 34-35 of Dr. Adams' Expert Report, Exhibit C to Cicero Affidavit at DKT No. 320.

Dr. Adams' attached Declaration further demonstrates how Application Note 104 can be combined with other cited references to disclose the relevant limitation of Claim 1. *See* Adams' Decl., at pp.3-8, attached as Exhibit C to the Strohmenger Decl.

---

[12] *See* Ex. F to the Declaration of Michael Cicero [DKT No. 371] at 196: 2-5.
[13] *See id.* at 198: 21-25 – 199:1.

KeyTrak's limited reference to Dr. Adams' testimony and Expert Report as support of its Renewed Motion is not only disturbing, it is potent about the strength of KeyTrak's presumption of validity of its '379 Patent. KeyTrak's resort to such tactics as withholding all of Dr. Adams' relevant deposition testimony on this subject does little to assist this Court in its determination of whether to issue a preliminary injunction. Moreover, it exposes KeyTrak's '379 Patent's vulnerability to attack on invalidity grounds, which is all Defendants must do at this juncture. *National Steel* at 1134 -35 (quoting *Amazon.com,* 239 F.3d at 1359).

**(3) Application Note 104 is Analogous Art That, Among Other References, Teaches A Trackable Object Having Three Conductors.**

KeyTrak is completely mistaken when it asserts that Defendants solely rely on Application Note 104 to show the claim limitation of a trackable object having three conductors. Dr. Adams' Expert Report and deposition testimony make clear that 50 Ways, the DS2407, and Application Note 106 also teach this limitation. *See* Adams' Decl. at pp 3-8 attached as Exhibit C to the Strohmenger Decl.

Nonetheless, Defendants' reliance on Application Note 104 as prior art, which, when combined with other prior art renders all of the claims in the '379 Patent obvious, is proper. Defendants do not take issue with KeyTrak's recitation of the law on analogous art as it has been applied by the Federal Circuit. KeyTrak's application of the law to the facts here, however, is incorrect. Under these pre-trial circumstances, KeyTrak incorrectly asserts that Defendants must raise a "'substantial question' that Application Note 104 is analogous art." KeyTrak's Renewed Motion at 13. Although Defendants must raise a "substantial question" as to obviousness, it cannot be said that each and every factor leading to the obviousness determination must be shown as

substantial, and certainly not in those instances where the particular art is analogous on its face. Rather, at this stage, it is KeyTrak's burden to demonstrate that Defendants' invalidity defense, as a whole, "lacks substantial merit." *National Steel, supra.* With respect to whether the Application Note 104 is analogous or not, KeyTrak's argument is unpersuasive.

Defendants agree with KeyTrak's contention that analogous art is that which derives from the same field of endeavor or is reasonably pertinent to a particular problem faced by the inventor. *See In re Clay,* 966 F.2d 656, 658-9 (Fed.Cir. 1992). "Similarity in the structure and function of the invention and the prior art is indicative that the prior art is within the inventor's field of endeavor." *State Contracting & Engineering Corp. v. Condotte America, Inc.*, 346 F.3d 1057, 1069 (Fed.Cir. 2003)(citing *In re Deminski*, 796 F.2d 436, 442 (Fed.Cir. 1986).

In *State Contracting,* the Federal Circuit noted that it could be reasonably concluded that the inventor's field of endeavor was the "use of integrated column and pile structures to provide support." The disputed reference, on the other hand, teaches a "'prefounded column' consisting of a column that merges with the pile when the concrete of the pile hardens around the column, and explains that the prefounded columns are used to support a superstructure." *Id.* In arguing that the disputed reference is not within the field of endeavor, the patentee looked to the title of the reference to demonstrate that these two applications were clearly unrelated. The title of the disputed reference is characterized by the Federal Circuit as "slurry wall art", which is a process for stabilizing "excavation side walls and bottoms to enable that excavation to receive a subterranean structure." *Id.* at 1069. Because the patent in suit did not involve slurry wall technology (it used an auger cast pile), the patentee argued the two products were not within the same field of invention. The Federal

Circuit, however, found that it is error to rely on the "general scope of the [disputed reference] to assess whether it contains disclosures in the pertinent field of endeavor."

> The relevant part of [the disputed reference] deals with creating an integral column and foundation pile as support for a larger structure in construction. The fact that [the disputed reference] also describes the formation of slurry walls does not negate its teaching of integrated columns and piles for use as support in construction.

*Id.* at 1070. The Federal Circuit also noted that, even if the disputed reference was not within the same field of endeavor, the fact finder could conclude that the disputed reference was reasonably pertinent to the problem that the patent addresses.

Similarly, in the instant case, KeyTrak overemphasizes the title of Application Note 104 to demonstrate that it is not within the same field of endeavor as the '379 Patent. KeyTrak stresses that Application Note 104 identifies a temperature monitoring and control demonstration board – an HVAC system. *See* KeyTrak's Renewed Motion at 15-16. Thus, KeyTrak prematurely concludes that "HVAC systems and key tracking systems do not reside in the same field of endeavor." *Id.* at 16.

Defendants find otherwise. As more fully stated in the Adams' Decl. at pp 10-11, the '379 Patent and the Application Note 104 are in the same field of endeavor. Application Note 104 is published by Dallas Semiconductor to show how to use the DS2407. In accordance with the Federal Circuit's opinion in *State Contracting* regarding not overemphasizing the entire scope of a reference's application, it is irrelevant that Application Note 104 shows the use of a DS2407 in a temperature control demonstration. Similar to *State Contracting*, the relevant "field of endeavor" at issue here is the use of an addressable switch to turn an LED on and off, not how to run an HVAC system. *See* Adams' Decl. at pp. 10-11, attached as Exhibit C to the Strohmenger Decl.

In any case, the '379 Patent and Application Note 104 address the *same pertinent problem* - - how to locate a trackable object through the use of an LED. *See id.* at 10. The '379 Patent addresses this issue by using a computer to communicate with a DS2407 addressable switch mounted on a trackable object with the switch having three ports, one of which is used to light an LED, also mounted to the trackable object. Significantly, Figure 3 in Application Note 104 explicitly shows the use of a computer to drive a DS2407 addressable switch having three ports, one of which is used to light an LED mounted on the trackable object – to make it easier to locate the object. *Id.*

In another analogous case, the Federal Circuit found that the patentee's argument was "too narrow a view of what prior art is pertinent to the invention."

> [T]he problems encountered by the inventors of the '456 patent were **problems that were not unique to portable computers**. They concerned how to connect and secure the computer's display housing to the computer while meeting certain size constraints and functional requirements. The prior art cited by the examiner discloses various means of connecting a cover (or lid) to a device that the cover is free to swing radially along the connection axis, as well as means of securing the cover in an open or closed position. We agree with the Board that given the nature of the problems confronted by the inventors, **one of ordinary skill in the art 'would have consulted the mechanical arts for housings, hinges, latches, springs, etc'** Thus, the cited references are 'reasonably pertinent' and we therefore conclude that the Board's finding that the references are analogous was not clearly erroneous.

*In re Paulsen*, 30 F.3d 1475, 1481-2 (Fed.Cir. 1994)(emphasis added, noting the solution could be found in "a desktop telephone directory, a piano lid, a kitchen cabinet, a washing machine cabinet, a wooden furniture cabinet, or two-part housing for storing audio cassettes")

Similarly, KeyTrak takes much too narrow of a view regarding the pertinence of the Application Note 104. This prior art reference does not have to be from a key tracking or even object tracking background to resolve similar problems as those faced by the inventor of the '379 Patent.

### (4) Secondary Considerations, Even if Proven By KeyTrak, Do Not Alone Demonstrate Lack of Substantial Merit of Defendants' Invalidity Defense

Even if KeyTrak can conclusively demonstrate that the secondary considerations of commercial success and advertising tend to show non-obviousness, that finding alone is not necessarily sufficient to override a clear showing of obviousness. *See Richardson-Vicks Inc. v. Upjohn Co.*, 122 F.3d 1476, 1483 (Fed.Cir. 1997) *suggestion for rehearing in Banc declined November 21, 1997* ("Evidence of secondary considerations, including evidence of unexpected results and commercial success, are but a 'totality of the evidence' that is used to reach the ultimate conclusion of obviousness.")(citing, *inter alia, Newell Co, Inc. v. Kenney Mfg. Co.*, 864 F.2d 757, 768 (Fed.Cir. 1988)("although these factors must be considered, they do not control the obviousness conclusion."); and *Ryko Mfg. Co. v. Nu-Star, Inc.*, 950 F.2d 714, 719 (Fed.Cir. 1991)(the weight of secondary considerations may be of insufficient weight to override a determination of obviousness based on primary considerations.))

Indeed, in denying KeyTrak's Motion *in Limine* No. 1 to exclude Dr. Adams' testimony, this Court noted that failure to assess secondary considerations is a matter for cross-examination, not for wholesale exclusion of Dr. Adams' testimony.

> It is true that one panel of the Federal Circuit considered the *Graham* factors most important in weighing all secondary considerations. *Ecolochem*, 227 F.3d at 1380. At this point, however, the record is unclear on whether the expert's failure to consider the other secondary factors substantially outweighs the *Graham* factors and the prior art combinations that were considered by Dr. Adams. **Simply put, his failure to consider the other evidence goes to the weight of his opinion. The failure does not justify exclusion of relevant testimony. This is a matter for cross-examination.**

Court's March 30, 2004 Rulings on Motions *in Limine* (emphasis added)[DKT No. 358].

In the context of a preliminary injunction, even if KeyTrak can demonstrate the proper nexus between the merits of the invention and the secondary consideration of commercial success (*see Ryko* at 719), it still is not enough to show Defendants' invalidity defense lacks substantial merit. KeyTrak has not demonstrated, for example, that the commercial success is not due to other aspects of Defendants' product, such as the software or customer service.

Accordingly, the secondary considerations of commercial success and advertising, when viewed in the totality of the circumstances, is not enough to entitle KeyTrak to a preliminary injunction.

### 2. Irreparable Harm in Absence of Preliminary Injunction

As shown above, because KeyTrak cannot show a likelihood of success on the merits on the issue of invalidity, that is, KeyTrak cannot show that Defendants' invalidity defense "lacks substantial merit," (*see National Steel, supra),* it should not now receive the benefit of the presumption of irreparable harm. *High Tech Med. v. Instrumentation, Inc. v. New Image Indus.*, 49 F.3d 1551, 1556 (Fed.Cir. 1995)(failure to show a reasonable likelihood of success on the merits precludes a presumption of irreparable harm).

Nevertheless, even if KeyTrak were somehow to receive the benefit of the presumption, KeyTrak cannot show that it will suffer irreparable harm if the Court does not issue a preliminary injunction pending trial. First, the Court denied KeyTrak's initial motion for injunctive relief. Since that time, KeyTrak has not suffered irreparable injury. It is still conducting business in the marketplace. Moreover, it has not even made the device covered by the '379 Patent for commercial use. Thus, the facts readily belie any assertion that KeyTrak is suffering irreparable harm. Indeed,

the facts about KeyTrak evinces KeyTrak's complete indifference with respect to the need for any equitable relief.

Additionally, as shown above, the competitive landscape of the key-tracking industry has changed recently. KeyTrak's recent purchase of its largest competitor behind Key Register, ISS-KeyVault, offsets whatever market share KeyTrak alleges to have lost to Defendants. As KeyTrak has stated throughout this litigation, the market in which it competes is essentially a two-supplier market – KeyTrak and Key Register. If KeyTrak were successful in obtaining a preliminary injunction pending trial, it would remove a major competitor from the market and KeyTrak will essentially operate in the industry nearly by itself. If not before, certainly now, KeyTrak's market size in terms of market share and revenues both essentially dwarf those of Key Register. Indeed, KeyTrak is five times as large as Key Register in terms of revenues, and that was prior to its recent acquisition of ISS-KeyVault. Moreover, KeyTrak has approximately four times (and now more than four times) the customers as Key Register. (Declaration of Fred Jenkins at 9 - 12, Exhibit A to Glaser Decl. at DKT No. 58).

Thus, Key Register's continued sales of its Key Register System for the continuous period pending trial will not severely threaten KeyTrak's business. In these circumstances, injunctive relief is simply unwarranted. *See Biagro Western Sales, Inc., v. Helena Chemical Co.*, 160 F.Supp. 2d 1112, 1136 (E.D.Cal. 2001) ("Loss of market share by itself is not the irreparable harm a preliminary injunction was meant to enjoin.").

Similarly, any KeyTrak argument regarding lost market share is effectively based on lost sales. However, potential lost sales is insufficient for a finding of irreparable harm. *Reebok*, 32 F.3d at 1555-56. In *Reebok*, the plaintiff alleged that it established irreparable harm because it would

have forever lost the right to exclude for the time period prior to trial. Id., at 1558. The Court rejected plaintiff's argument:

> In *Illinois Tool* we rejected the patentee's argument that potential lost sales alone could demonstrate 'manifest irreparable harm' because acceptance of that position would require a finding of irreparable harm to every patentee, regardless of the circumstances... Moreover, if the right to exclude during the litigation period alone established irreparable harm, the presumption of irreparable harm stemming from a finding of likely success could never be rebutted, for every patentee whose motion for a preliminary injunction is denied loses the right to exclude an accused infringer from the marketplace pending the trial

*Id.* at 1558-59.

The fact that Defendants, through the Key Register System, compete with KeyTrak also should not justify a finding of irreparable harm. Thus, "[t]he fact that the parties may compete directly with one another does not per se constitute irreparable harm." *Biagro,* 160 F.Supp 2d. at 1135 . In any event, Defendants submit that KeyTrak can be compensated for the period pending trial by monetary damages if it prevails in this case.

### 3. Balance of Hardships

Balancing the hardships means weighing the threatened injury to the patent owner against the potential injury to the accused infringer if the injunction is granted. *H.H. Robertson Co. v. United Steel Deck, Inc.,* 820 F.2d 384, 398 (Fed.Cir. 1987). The balance of the hardship weighs in favor of Defendants and not KeyTrak. A preliminary injunction would have an enormous impact on Defendants, including certain financial hardship.

If the Court were to grant a preliminary injunction now, Defendants' employees will lose their jobs. Additionally, Key Register's distribution agreements with its national network of thirty distributors, including KMI, and subdistributors will be negated and these thirty distributors and

subdistributors will likely go out of business. *See* Jenkins Declaration at ¶ 9, Exhibit A to Glaser Decl. [DKT 58].

Conversely, any hardship to KeyTrak if the injunction did not issue would include only lost sales which, as noted above, cannot relate to the device covered by the '379 Patent because KeyTrak has not yet implemented this device. In any event, lost sales alone cannot tip the balance of hardship in favor of KeyTrak.

As noted above, Key Register is dwarfed by KeyTrak in terms of size, market share and revenues. Thus, if an injunction does not issue, KeyTrak will not lose its role as market leader, nor will it lose its consumers' confidence, market share, business reputation or goodwill. Equally important, it will not lose any jobs. *See Bell & Howell Doc. Mgt. Prods. Co. v. Altek Sys.*, 132 F.3d 701, 708 (Fed.Cir. 1997)(assessing this factor under analogous circumstances).

**4. Public Interests**

"The focus of the district court's public interest analysis should be whether there exists some critical public interest that would be injured by the grant of preliminary relief." *Hybritech, Inc. v. Abbott Labs,* 849 F.2d 1446, 1457-58 (Fed.Cir. 1988). Here, enjoining Key Register from manufacturing and selling its key control systems weighs against the public interest. Granting the requested preliminary injunction may effectively bestow upon KeyTrak a monopoly on the computerized key tracking and control market (both KeyTrak and its expert on damages claim contend that there are no non-infringing substitutes to its product in the marketplace) which is subject to an invalid patent. *See Biagro,* 160 F.Supp. 2d at 1136 ("the public interest is not served by enjoining parties when the patent in suit is of questionable efficacy.") Such unlawful monopoly

will hamper competition, resulting in higher prices to customers. In these circumstances, KeyTrak cannot make a showing of any critical public interest justifying the issuance of a preliminary injunction. Thus, the Court should not issue a preliminary injunction while the case is continued for trial.

## V. CONCLUSION

As demonstrated by the foregoing, KeyTrak cannot show that Defendants' invalidity defense lacks substantial merit. As such, it is not likely to succeed on the merits with respect to invalidity. Consequently, KeyTrak is not entitled to a presumption of irreparable harm, nor can it affirmatively demonstrate any irreparable harm absent a preliminary injunction. Lastly, the hardship to Defendants and impact on the public interest tips in favor of Defendants and against the issuance of a preliminary injunction.

Accordingly, Defendants respectfully submit that this Court should not issue a preliminary injunction pending the tentatively scheduled May 17th trial or pending a subsequent trial on the merits.

Respectfully submitted this 15th day of April, 2004.

SHUGHART THOMSON & KILROY, P.C.

-- and --

PICK & BOYDSTON, LLP

By: ______________________
Michael L. Glaser, *pro hac vice*

***Attorneys for Defendants***

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of April, 2004, a true and correct copy of the foregoing **DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S RENEWED MOTION FOR PRELIMINARY INJUNCTION AND SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES** was served via the court's Electronic Case Filing Program, to:

Martin C. Fliesler, Esq.
Larry T. Harris, Esq.
Michael L. Robbins, Esq.
Fliesler & Meyer, LLP
Four Embarcadero Center, Fourth Floor
San Francisco, CA 94111

Kirk W. Watkins, Esq.
Michael A. Cicero, Esq.
William A. Capp, Esq.
Womble Carlyle Sandridge & Rice, PLLC
One Atlantic Center, Suite 3500
1201 West Peachtree Street
Atlanta, GA 30309

/s/ Scott Wesley