Apple Inc. v. Psystar Corporation Doc. 904

John G. Hanlin (SBN: 104502)
Law Offices of John G. Hanlin
901 Market Street, Suite 450
San Francisco, California 94103
Telephone: (415) 788-4448
Facsimile: (415) 788-4449

Attorneys for Defendant Bilal Zaghloul

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| ALLSTATE INSURANCE COMPANY, an Illinois Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>BILAL ZAGHLOUL, et al.,<br><br>Defendants. | No. C 01 04034 CW<br><br>**DEFENDANT BILAL ZAGHLOUL'S REVISED BENCH TRIAL BRIEF**<br><br>Date: March 22, 2004<br>Time: Via Court Order of 4/16/04<br>Dept.: 2, 4th Floor (Oakland)<br>Judge: Hon. Claudia Wilken |



Dockets.Justia.com

## TABLE OF CONTENTS

I. **INTRODUCTION** . . . . . . . . . . 1

II. **LEGAL ARGUMENT** . . . . . . . . . . 5

A. **Zaghloul Has The Right To Defense Costs.** . . . . . . . . . . 5

B. **Allstate Has Once Again Failed To Meet Its Burden of Proof To Establish Defense Costs Allocated Solely To Non-Covered Claims** . . . . . . . . . . 7

C. **Zaghloul Has Raised Defenses And Defeated This Action By His Amended Answer to Allstate's Complaint** . . . . . . . . . . 13

III. **CONCLUSION** . . . . . . . . . . 16

# TABLE OF AUTHORITIES


Burg v. Transamerica Insurance Co., 47 Cal. App. 4th 498 (1966) . . . . . 9

Buss v. Superior Court, 16 Cal. 4th 35 (1997) . . . . . 4, 5, 7, 8

Certain Underwriters at Lloyd's of London v. Superior Court, 56 Cal. App. 4th 952 (1997) . . . . . 8

Jarchow v. Transamerica Title Ins. Co., 48 Cal. App. 3rd 917 (1975) . . . . . 7

Gray v. Zurich Insurance Co., 65 Cal. 2nd 263 (1966) . . . . . 7

San Diego Mun. Credit Union v. Smith (1986) 176 Cal. App. 919, (1986) . . . . . 13

Swain v. California Casualty, 99 Cal. App. 4th 1 (2002) . . . . . 1, 2


STATUTES


Evidence Code §500 . . . . . 10

## I. INTRODUCTION

______Plaintiff Allstate Insurance Company ("Allstate") on October 26, 2001, brought this declaratory relief action alleging that its policy issued to defendant Bilal Zaghloul ("Zaghloul") did not obligate Allstate to provide a defense to Zaghloul for an action commenced on November 29, 1999, against Zaghloul by former tenants residing at the property owned and managed by Zaghloul located at 3351 22nd Street, San Francisco ("premises"). The action filed by the former tenants was entitled Jordan Hubbard, Angela Cross and James Murray vs. Bilal Zaghloul, Civil Action No. 308181, San Francisco Superior Court (hereinafter "Underlying Action"). In February 2002, the Underlying Action resulted in a defense verdict being awarded in favor of Zaghloul.

Allstate claims in this declaratory relief action that it expended $169,544.76 in defense of the Underlying Action. Previously, Allstate earlier moved for summary judgment in this proceeding for reimbursement of all of its defense costs arguing it had no duty to defend the Underlying Action as a matter of law based on the material facts of the Underlying Action and evidence gathered from written and deposition discovery taken during this action. Allstate argued in its motion for summary judgement that it had no duty to defend because Zaghloul's alleged termination of the tenants' rights at the premises of occupancy at the 22nd Street property was not a "accident" covered by Allstate's policy. After due consideration, Allstate's motion for summary judgment and/or the alternative summary adjudication was denied by the Court.

Now, as the parties move for resolution of this action by "bench" trial, Allstate reiterates its claims that the Underlying Action was defended by Allstate under a reservation of rights reserving Allstate's rights to deny coverage and also allowing for Allstate to seek reimbursement of Allstate's defense costs on the grounds that there was no potential for coverage as the Underlying Action alleged no "occurrence," or "accident."

Allstate has during this declaratory relief action relied upon the relatively recently pronounced California decisional law that the deliberate termination of a tenancy cannot constitute an accident as a matter of law. Swain v. California Casualty, 99 Cal. App. 4th 1 (2002). In Swain, the California Court of Appeal held that where the landlord terminated its former tenants' tenancy on the pretext and ruse that the landlord intended to move into the property that the intentional

termination of a tenancy of a tenant cannot constitute an accident as a matter of law. Id. at 8-10.

Similarly, in this case, as in Swain, Allstate contends, as it did in its earlier brought motion for summary judgement, that the allegations of the Underlying Action were that Zaghloul sought possession of the rental premises from the tenants on the false pretense that Zaghloul would be taking occupancy of the rental unit and that, based thereon, he fraudulently induced his tenants to move out of the rental premises. Relying upon the case of Swain as controlling precedent, Allstate maintains that Zaghloul's notice to terminate his tenants' lease from the rental premises was not "accidental" as a matter of law, irrespective of Zaghloul's actual intent or misunderstanding.

Accordingly, Allstate continues to seek entry of judgement from this Court declaring that it had no duty to defend whatsoever, and, therefore it is entitled to judgment and reimbursement of all of its defense costs incurred in the Underlying Action. As demonstrated below, all of the relief requested by Allstate should be denied.

This Court, after briefing of the same issues and hearing oral argument, denied Allstate's previously brought motion for summary judgment and issued its order in accordance therewith. Nothing is presented in Allstate's revised trial brief by way of factual showing or application of law that should change this Court's prior rulings. The decision of this Court was correctly reached after extensive briefing and presentation of oral argument and presentation of the facts establishing that Allstate is not entitled to reimbursement of its defense costs; whether in whole or even in part. Allstate upon the filing of its motion for summary judgment believed that all of the evidence that it needed had been gathered and presented to this Court for Allstate to prevail on its motion for summary judgment and/or summary adjudication. Upon the presentation of such evidence and law, Allstate's motion was denied. There is nothing new now at this "bench" trial by way of controlling law or compelling evidence that even suggests that the Court reconsider its prior decision and allow for Allstate's reimbursement of any amount of its defense costs and expense.

Allstate's factual showing and arguments in support of its motion for summary judgment properly failed before this Court. Now, Allstate's almost identical legal arguments now set forth in its revised trial brief and its similar supporting factual showing require the same result that judgment be entered against Allstate. Allstate's motion for summary judgment was correctly denied

because the motion was based on a false premise of law and upon an incomplete setting forth of the facts from the Underlying Action. Allstate's revised trial brief presents the same. Allstate once again has inevitably failed to meet its burden of proof which would allow for entry of a favorable judgment on its behalf.

Contrary to all of Allstate's arguments in support of its claim for entry of judgment on its behalf, the Underlying Action was not based solely and entirely on claims or causes of action pertaining to Zaghloul's intentional termination of his tenants' lease or Zaghloul seeking to take possession of the rental premises so that he could move into the property. Instead, the Underlying Action alleges several causes of action based on negligence for which Allstate owed both a duty to defend and to provide indemnity. A review of the four corners of the complaint of the Underlying Action alleges conduct covered by the policy for which Allstate owed a duty to defend. Zaghloul was entitled to a defense by Allstate because the Underlying Action alleges liability for damages potentially, and actually, covered under the insurance policy issued by Allstate to its insured, i.e., Zaghloul.

The complaint in the Underlying Action alleged causes of action for (1) "Breach of Implied Warranty of Habitability–Tort;" (2) "Breach of Covenant of Quiet Enjoyment;" (3) "Negligent Misrepresentation" and (3) "Negligent Infliction of Emotional Distress." Each of these causes of action arise entirely from the alleged negligent conduct of Zaghloul acting in a negligent manner. The complaint in the Underlying Action specifically alleges that Zaghloul breached the warranty of habitability by failing to maintain the rental premises in a habitable condition: "Defendant breached this covenant by allowing defective conditions to exist at the premises and failing and refusing to correct said defective conditions after notice and a reasonable time to do so." Complaint, p. 5, ll. 25-27.

Equally important, the Underlying Action alleged other ***negligent*** conduct of Zaghloul regarding his (1) "Breach of the Covenant of Quiet Enjoyment;" (2) ***"Negligent*** Misrepresentation" and (3) "***Negligen*****t** Infliction of Emotion Distress." (Emphasis added.)

As demonstrated, and as set forth by the causes of action pled in the Underlying Action, the pleading itself of the Underlying Action gave rise to a duty to defend on the part of Allstate to

provide a defense. An insurer must provide a defense to its insured if any one theory or cause of action is potentially covered, even if other causes of action alleged are not covered.

In Buss v. Superior Court, 16 Cal. 4th 35 (1997) an action brought by an insurer against its insured for reimbursement of the costs of defending the insured in an underlying action against mixed claims, some potentially covered by the parties' policy and some not, the California Supreme Court held that the insurer must carry the burden of proof under Evidence Code §500 by a preponderance of the evidence to establish those defense costs that can be allocated *solely* to the claims that are not potentially covered.

Allstate now argues that the duty to defend ceased in the Underlying Action because their was a motion in limine in which it was agreed by the parties that the habitability claims would be dropped from the trial in the Underlying Action. The motion in limine is irrelevant to whether Allstate had a continuing duty to defend. Foremost, there is no competent evidence that the habitability claims were ever actually dismissed from the Underlying Action by an actual dismissal of such causes of action filed by the plaintiffs with the Court. No Request for Dismissal completed on a judicial counsel form or any manuscript request for dismissal of any cause of action was ever filed with the court.

Even if such habitability claims were dropped, there still existed causes of action that proceeded to trial, including, ***negligent*** conduct of Zaghloul regarding his (1) "Breach of the Covenant of Quiet Enjoyment;" (2) ***"Negligent*** Misrepresentation" and (3) "***Negligen*t** Infliction of Emotion Distress." (Emphasis added.)

Furthermore, the duty of an insurer to provide a defense to its policyholder does not evaporate simply because the insurer, Allstate, claims that the policyholder was no longer subject to potentially covered claims because of last minute procedural moves on the eve of trial whereby certain causes of action were supposedly dismissed from the Underlying Case on the eve of trial by way of a motion in limine. For this Court to hold otherwise, the insured could be abandoned by its insurer on the very eve of trial.

It cannot be overstated that such a decision allowing for the insurer to withdraw or refuse to provide a defense costs because potentially covered claims are dropped or dismissed at the

beginning of trial would result in the insured being without knowledgeable and educated defense counsel regarding the case to be tried. The abuse by a cunning plaintiff's trial counsel against the once defended insured would result in a substantial advantage being gained because of sophisticated plaintiff's counsel knowing that dropping potentially covered insurance claims results in the insured to be abandoned by his insurer on the very eve of trial. The right to a complete defense would be eviscerated if the right to counsel at trial can be so easily taken away. The insured would be advised by its insurer that all future defense costs will no longer be a covered expense provided by the insurer as the jury is being selected.

Such a result would allow irreparable prejudice to the insured while the insurer would be allowed to avoid nominal expense because of the last minute dismissal by the plaintiff of potentially covered claims. The abuse that would be practiced by plaintiff's attorney is evident while at the same time great harm to the insured who has already paid the premiums for a complete and full defense, including through trial.

## II. LEGAL ARGUMENT

### A. Zaghloul Has The Right To Defense Costs.

In a suit in which any of the claims are at least partially covered, the insurer has a duty to defend. In a "mixed action," in which some of the claims are at least potentially covered and the others are not, the insurer has a duty to defend as to the claims that are at least potentially covered, having been paid premiums by the insured therefore. In a mixed action the insurer ***has a duty to defend the action in its entirety*** prophylactically as an obligation imposed by law. Id. at 48-49.

Under California law, an insured is entitled to a defense in any action where there is *any potential* for a judgment within coverage. Buss v. Superior Court, supra, 16 Cal. 4th 35, 46-47. That defense **extends to the entirety of the litigation**. *Ibid.* ***There is no right of an insurer to "reimbursement" for the costs of defense of potentially covered claims***. *Id.*, at p. 49-50. As the Buss court said:

> The reason is this. Under the policy, the insurer has a duty to defend the insured as to the claims that are at least potentially covered. With regard to defense costs for these claims, the insurer has been paid premiums by the insured. It bargained to bear these costs. To attempt to shift them would upset the arrangement. *Ibid.*

Here, the Underlying Action alleges several causes of action based on negligence. The Underlying Action was **not** based solely and entirely on claims or causes of action pertaining to Zaghloul's intentional termination of his tenants' lease or Zaghloul seeking to take possession of the rental unit so that he could move into the property.

Allstate had a duty to defend, including through trial, based on the theories being actually prosecuted in the Underlying Action. The causes of action for (1) "Negligent Misrepresentation" (2) "Breach of Covenant of Quiet Enjoyment" and (3) "Negligent Infliction of Emotional Distress;" were claims that were at issue throughout the case and both discovery, trial preparation and trial defense costs were expended on such causes of action.

For example, testimony was provided by Mr. Randy Wertz , Allstate's appointed insurance defense attorney for Zaghloul, regarding such negligent claims.

**Q. Do you recall that the Hubbards alleged that they had suffered emotional distress as a result of all these things that occurred?**

**A. Yes.**

**Q. Was that part of the discovery in the case?**

**A. Yes.**

**Q. And part of the discovery in the case was this breach of the warranty of habitability claim, correct?**

**A. Correct.**

**Q. And another part of the case was, kind of, negligence of Mr. Zaghloul failing to maintain the premises in a proper state of repair, correct?**

**A. Yes.**

<u>AGREED STATEMENT OF FACTS AND STIPULATIONS FOR TRIAL–RE USE OF DEPOSITION TESTIMONY; Transcript of R. Randy Wertz, p.21, ll. 1-13.</u>

The trial court and/or jury could have allowed for recovery to the Plaintiffs in the Underlying Action Sunder negligent theories of recovery and the several causes of action that did not allege intentional conduct by Zaghloul. This factual situation existed even after the motion in limine was brought to supposedly drop the one cause of action relating solely to habitability of the premises. The duty to defend existed to defend the entire Underlying Case as the duty to defend **extends to the entirety of the litigation**. ***There is no right of an insurer to "reimbursement" for the costs of***

***defense of potentially covered claims***. Buss v. Superior Court, supra, 16 Cal. 4th 35, 46-47; 49-50.

The complaint alleged causes of action of negligence and non-intentional conduct. At the time of trial, the jury that was empaneled, or the trial judge, could have allowed a verdict being returned on negligent or non-intentional causes of action and/or negligent theories of recovery that caused injury arising out of the incident giving rise to potential coverage. There was a potential for recovery by the former tenants for damages within the coverage of the policy as the judge could have allowed a verdict to conform with the proof at the time of trial of negligent or non-intentional conduct by Zaghloul.

Once the duty to defend has arisen, **the duty does not dissolve** simply because the insured is ultimately found liable under facts not giving rise to coverage; the fact that the judgment in the third-party action did not come within the policy coverage does not mean that the insurer did not have a duty to defend the third-party action. Such a result would emasculate the duty to defend provision, making it merely a duty to reimburse the insured for defense costs if coverage is found. In this case, it is interesting to note that Zaghloul was not found liable for the alleged wrongful conduct, intentional or negligent *See,* Gray v. Zurich Insurance Co., 65 Cal. 2nd, 263, 278 (1966); Jarchow v. Transamerica Title Ins. Co., 48 Cal. App. 3rd 917, 943-944 (1975).

**B. Allstate Has Once Again Failed To Meet Its Burden of Proof To Establish Defense Costs Allocated Solely To Non-Covered Claims**

In Buss v. Superior Court, 16 Cal. 4th 35 (1997) the California Supreme Court specifically held that in an action involving mixed claims, some potentially covered by the parties' policy–and some not–the insurer may obtain reimbursement from the insured for defense costs that can be allocated *solely* to the claims that are not potentially covered. The deposition transcript and the declaration of defendant Zaghloul and the declaration of trial counsel for defendant Zaghloul in the Underlying Action, Joseph K. Bravo, also sets forth competent evidence that the causes of action for (1) "Breach of Implied Warranty of Habitability – Tort"; (2) "Breach of Covenant of Quiet Enjoyment" and (3) "Negligent Infliction of Emotional Distress" were claims that were at issue throughout the case until trial and that discovery and defense costs were expended on such causes of action. These claims were prosecuted in the Underlying Action and significant defense costs

incurred as these claims remained and were prosecuted until trial. Allstate has failed in its burden of proof as to what claims had no potential for coverage.

Allstate has failed to present any evidence to meet its burden of proof in establishing defense costs that can be allocated solely to the claims that are not potentially covered. As a result of such failure, Allstate's request for entry of judgement should be denied and Allstate denied reimbursement of any defense costs.

Regardless of the motion in limine to dismiss the one cause of action for habitability of the premises, Allstate still had a duty to defend. It cannot be overemphasized that the trial court and/or jury could have allowed for recovery under negligent causes of action and/or negligent theories causing damages. A duty to defend existed throughout the trial of the action and any reimbursement of defense costs as claimed by Allstate must be denied and judgement entered for Zaghloul.

There was a potential for recovery by the former tenants for damages within the coverage of the policy as the judge could have allowed a verdict to conform with the proof at the time of trial for finding of negligent or non-intentional conduct by Zaghloul. Even setting aside such fact, the Underlying Action still alleged covered claims for which a duty to defend existed throughout the entirety of the litigation, including trial, and post-trial proceedings.

Allstate had a duty to defend the entire action based upon the allegations of the complaint filed in the Underlying Action even though certain causes of action may not have been covered by the policy. *See,* Buss v. Superior Court, 16 Cal. 4th 35 (1997). Here, the causes of action of the Underlying Action cannot be ignored as the causes of action for (1) "Negligent Misrepresentation" (2) "Breach of Covenant of Quiet Enjoyment" and (3) "Negligent Infliction of Emotional Distress;" were claims that were at issue throughout the case and both discovery, trial preparation and trial defense costs were expended on such causes of action, including post-trial motions.

Zaghloul need only show that the underlying claims *may* fall within policy coverage; Allstate **must** prove it cannot. Only if the underlying complaint can by no conceivable theory raise a single issue that could bring it within the policy coverage is the insured excused from the duty to defend. When there is any doubt as to whether the duty to defend exists, the doubt must be resolved in favor of the insured and against the insurer. Certain Underwriters at Lloyd's of London v. Superior Court,

56 Cal. App. 4th 952, 961 (1997); Burg v. Transamerica Insurance Co., 47 Cal. App. 4th 498, 456-457 (1966).

Allstate has failed in its burden of proof as to what claims had no potential for coverage. There is overwhelming evidence as reflected by Allstate's own appointed defense counsel for Zaghloul in the Underlying Action, Randy Wertz, Esq., when he admitted during his deposition taken on June 27, 2003, that there could not be an allocation of defense costs between habitability claims and wrongful eviction claims:

**Q. As you sit here today, you recall attorney's fees being incurred for discovery pertaining to the habitability issues, correct?**

**A. Yes.**

**Q. And can you tell me - - can you make - - well, as the case first started, was the emphasis somewhat equal on the habitability issues and the wrongful eviction?**

**A. I don't know if it was equal, but those were the main two issues that I recall at the time of the depositions.**

**Q. Okay. And could you segregate those out in terms of your mind, as you sit here today, as to what portion was allocated to one versus the other?**

**A. No.**

**Q. You testified previously that, sitting here today, you would be unable to allocate the fees you incurred in the underlying action, or Allstate incurred or Mr. Zaghloul incurred, between habitability and wrongful eviction claims; is that correct?**

**A. That is correct.**

**. . . .**

**Q. And did that discussion pertain to that if Mr. Zaghloul won the case, that he wouldn't be sued by Allstate; do you recall any of this?**

**A. I just don't recall much about the discussion, why that topic came up. But I do remember that that was another time that Mr. Zaghloul had mentioned that the Allstate agent had told him that there was coverage for landlord-type exposures.**

**. . . .**

**Q. And the most you can recall is him making some reference to the Allstate agent more or less stating that there would be coverage for these type of claims?**

**A. I feel more comfortable - -**

**Q. In your own words.**

**A. Yeah, the way I recall it was that he indicated, again, that the Allstate agent who had sold him the policy indicated that he would be covered for landlord-type exposures; or he may have said, specifically, wrongful eviction. But I can't remember.**

AGREED STATEMENT OF FACTS AND STIPULATIONS FOR TRIAL–RE USE OF DEPOSITION TESTIMONY; Transcript of R. Randy Wertz, p. 18, ll. 6-20; p. 23, ll. 22-25, p. 24, ll. 1-2; p.19, ll. 4-11, ll 23-25; p. 20, ll 1-7.

As demonstrated, Allstate's own attorney appointed to defend Zaghloul and whom attended the proceedings in the Underlying Case, including attending trial, was truthful enough even to admit that he could not allocate the fees incurred for covered or non-covered claims. Such deposition testimony evidence given by the attorney appointed by Allstate, and who should rightfully be deemed the agent of Allstate, should be given great credence by the Court in rendering its decision in this action.

The admission of counsel for Allstate, Randy Wertz, requires that this Court enter judgment in favor of Zaghloul based upon Allstate failing to meet its burden of proof. Allstate's own attorney has provided the critical evidence establishing that Allstate cannot meet its burden of proof as established by the decisional law rendered by the California Supreme Court that the insurer must carry the burden of proof under Evidence Code §500 by a preponderance of the evidence to establish those defense costs that can be allocated *solely* to the claims that are not potentially covered. Allstate by its own admissions has failed to carry its burden of proof and judgment must be rendered in favor of Zaghloul.

Furthermore, the deposition testimony and declaration in opposition to Allstate's summary judgement motion of defendant Zaghloul and the declaration in opposition to Allstate's summary judgement motion of trial counsel for defendant Bilal Zaghloul in the Underlying Action, Joseph K. Bravo, also sets forth competent evidence that the causes of action for (1) "Breach of Implied Warranty of Habitability – Tort"; (2) "Breach of Covenant of Quiet Enjoyment" and (3) "Negligent Infliction of Emotional Distress" were claims that were at issue throughout the case until trial and that discovery and defense costs were expended on such causes of action for which an allocation could not be made as to potentially covered claims and non-covered claims. Potentially covered

claims were prosecuted in the Underlying Action and significant defense costs incurred as these claims remained and were prosecuted until trial. Allstate has failed in its burden of proof as to what claims had no potential for coverage. The Court is requested to consider the deposition transcripts submitted in opposition to Allstate's motion for summary judgement in accordance with the parties "AGREED STATEMENT OF FACTS AND STIPULATIONS FOR TRIAL–Stipulation Re Use of Deposition Testimony."

Allstate has failed to present any evidence to meet its burden of proof in establishing any defense costs that can be allocated solely to the claims that are not potentially covered. As a result of such failure, Allstate must be denied reimbursement of any defense costs.

Also, the deposition testimony of defendant Zaghloul and the deposition testimony of his attorney in the Underlying Action, Joseph K. Bravo, set forth competent evidence that the causes of action arising from the alleged negligent conduct of Zaghloul were part of the proceedings in the Underlying Action and that significant defense costs were incurred to defend such causes of action for the defense of the Underlying Action. Declarations were also submitted by Zaghloul and his trial attorney, Joseph K. Bravo, in opposition to Allstate's motion for summary judgement and form part of the court record which may be considered by request for judicial notice as competent evidence by the Court in deciding that judgement should be entered in this action in favor of Zaghloul.

The deposition testimony and declaration of defendant Zaghloul and deposition testimony and declaration of trial counsel for defendant Zaghloul in the Underlying Case, Joseph K. Bravo, also set forth competent evidence that the causes of action for (1) "Breach of Implied Warranty of Habitability – Tort"; (2) "Breach of Covenant of Quiet Enjoyment" and (3) "Negligent Infliction of Emotional Distress" were claims that were at issue throughout the case and that discovery and defense costs were expended on such causes of action. These claims were prosecuted in the Underlying Action and significant defense costs incurred as these claims remained and were prosecuted.

As Joseph K. Bravo testified during examination at his deposition by examination by opposing counsel, Sonia Martin, the claims and causes of action <u>are all mixed</u> and Allstate cannot establish that certain causes of action were <u>not</u> potentially covered. All of the claims were

interrelated resulting in the potential for coverage for all of the claims set forth in the Underling Case. As Joseph K. Bravo testified;

> **Q. My question is, it is possible to separate those claims, in your mind, as counsel of record on the underlying action?**
>
> **A. It's possible to think that I looked at the transcripts in preparation for defensing claims relating to the different causes of action. I guess that's what you're asking me, right?**
>
> **I mean, a lot of this stuff was mixed. A lot of this stuff is mixed. I mean, for example, a deposition testimony would have information there that would bear on both the wrongful eviction and the habitability, to say nothing of the other causes of action as well, which were all listed in the complaint.**
>
> **I didn't have a list where I had in front of me, this is only related to habitability. Because, you know, one of the components of a wrongful eviction can be that the property owner was trying to drive the owner out by the condition of the property. So you've got a wrongful eviction tied up with a habitability right there.**
>
> **Q. And was that the issue in the underlying action?**
>
> **A. It can be something that the plaintiff can argue to the jury. You have to be ready for it. He could try and develop facts like that at trial. I don't think he - - I don't recall him doing that at trial. I think he was more focused on attempting to show that Mr. Zaghloul didn't live there.**
>
> **But you had to be prepared that Bilal Zaghloul was going to be accused of driving them out by not making repairs and by maintaining uninhabitable conditions. And that was, I believed to be, an argument they were making as well, even though they didn't necessarily, as I recall right now, emphasize that at trial. The notion that Bilal Zaghloul tried to drive them out by habitability defects and by giving them habitability claims was a real one. Oh, for sure.**

AGREED STATEMENT OF FACTS AND STIPULATIONS FOR TRIAL–RE USE OF DEPOSITION TESTIMONY; Transcript of Joseph Bravo, p. 28, ll. 18-25; p. 29, ll. 1-25, p. 30, ll. 1-4.

Allstate has made no evidentiary showing that the defense costs were not incurred in the Underlying Action for such causes of action that are based on negligence, not intentional conduct. Since Allstate has failed to meet its burden of proof regarding what defense costs incurred should be allocated solely to what claims were not potentially covered in the Underlying Action, the motion should be denied.

Here, there was a potential for coverage. Allstate cannot prove that there was not a potential for coverage. Accordingly, reimbursement of defense costs to Allstate must be disallowed and judgement entered against Allstate and in favor of Zaghloul.

///

**C. Zaghloul Has Raised Defenses And Defeated This Action By His Amended Answer to Allstate's Complaint**

The Verified Answer filed of behalf of Zaghloul asserts many affirmative defenses to this action which establish that defendant Zaghloul has provided sufficient evidence to support a judgement of his behalf. The affirmative defenses raised in Zaghloul's amended answer, and that are at issue for this trial, include the following, as but a few examples of equitable affirmative defenses that give rise to compelling grounds to support a judgement in Zaghloul's favor, including, for example: (1) estoppel; (2) waiver; (3) unclean hands; and (4) latches.

The existence of an estoppel is ordinarily a question of fact. San Diego Mun. Credit Union v. Smith, 176 Cal. App. 919 (1986) . Here, the affirmative defenses of estoppel, waiver and latches are highly relevant. Zaghloul was specifically advised by the agent of Allstate and the lawyers first assigned by Allstate for defense of the Underlying Action that he would not have "to pay a penny" for defense costs.

Indeed, estoppel is established in this action as a matter of law based upon the Stipulation of Facts entered into by the parties regarding Zaghloul's affirmative defense of estoppel. The parties have agreed that oral testimony is not necessary in light of the parties' stipulation which provides in pertinent part as follows:

> **The parties have agreed to stipulate to the following facts relating to defendant Bilal Zaghloul's affirmative defense of estoppel, provided that the Court agrees with parties that oral testimony regarding this affirmative defense will not be necessary in light of the parties' stipulation:**
>
> **1. When Bilal Zaghloul initially tendered the Underlying Action to his Allstate insurance agent, Dean Prince, Mr. Prince told Mr. Zaghloul "not to worry" because he would not had to "pay a penny" in defense costs and Allstate would "hire a lawyer for [him]."**
>
> **2. After the above conversation between Mr. Zaghloul and Mr. Prince, Mr. Zaghloul received Allstate's August 17, 2000 reservation of rights letter.**
>
> **3. After Mr. Zaghloul received the complaint in the instant declaratory relief action, he contacted Mr. Prince, who again stated that Mr. Zaghloul "would not pay a penny" in defense costs.**

**4. On one or two occasions, Randy Wertz told Mr. Zaghloul that Allstate would "pay everything" relating to the defense of the Underlying Action.**

AGREED STATEMENT OF FACTS AND STIPULATIONS FOR TRIAL–Mr. Zaghloul's Estoppel Claim.

As demonstrated, Allstate has stipulated that Mr. Dean Prince was its own agent. As a result, Mr. Dean had the authority as Allstate's agent to bind his company, Allstate. Mr. Dean represented to his insured, Zaghloul, that upon the Underlying Action being tendered that Zaghloul would not have to "pay a penny." Such binding representations by Allstate's agent were subsequently confirmed even after Zaghloul was served with the complaint in the Underlying Action that he "would not have to pay a penny" in defense costs.

In addition to the binding representations by Allstate's agent, Mr. Prince, Allstate has further stipulated as a matter of fact in the Stipulation of Facts that on "one or two occasions", Randy Wertz, the attorney appointed by Allstate for Zaghloul, represented to Zaghloul that Allstate would "pay everything" relating to the defense of the Underlying Action.

Such binding representations by the agents for Allstate that Zaghloul would not have to "pay a penny" and that Allstate would "pay everything" estops Allstate from now claiming that Allstate is entitled to reimbursement from Zaghloul. An insurer such as Allstate and its agents should not be permitted to make such undisputed representations to its insured that the insured will not have to "pay a penny", and then subsequently renege on its representations to the insured's detriment and seek reimbursement of defense costs from its insured.

The evidence is also unquestionable that Zaghloul reasonably relied on the representations made by the agents of Allstate that he would not have to "pay a penny" and that Allstate wold "pay everything." The deposition testimony of Zaghloul and the declaration he submitted in opposition to Allstate's motion for summary judgment establish that he relied on such representations that he would not have to "pay a penny" and elected to be represented by Joseph K. Bravo and Randy Wertz when he had already retained attorneys at a very nominal sum that would provide a defense to the entire Underlying Case and that Zaghloul had paid them greatly reduced sums for such services.

The reliance of Zaghloul on the representations of the agent of Allstate was that he would not be liable for any further defense costs is established by examination of Zaghloul by opposing

counsel herself, Sonia Martin. The testimony of Zaghloul on this point is demonstrated by the following testimony from Zaghloul who is being examined as an adverse witness by opposing counsel, Sonia Martin regarding Zaghloul's conversations with Allstate's agent Dean Prince:

**Q. Now, when did this Allstate agent – when did this agent assure you?**

**A. When I went to him, I told him I have a loss case, and he take all the paper from me. And he told me, Don't worry, this case, you don't have to pay anything . And he call me, and he said, I told you don't worry; your not going to pay anything, and they hire a lawyer for you. You have to go see this lawyer. Call him and make an appointment with him, I think he said. Yes.**

**. . . .**

**Q. After you had this conversation with your agent at the beginning of the lawsuit, what did you do in response to this conversation? Did you do anything differently because your agent had told you about Mr. Wertz?**

**A. No, I got happy I don't have to pay money.**

**Q. You got happy that you don't have to pay money?**

**A. Because I don't have to pay, you know.**

<u>AGREED STATEMENT OF FACTS AND STIPULATIONS FOR TRIAL–RE USE OF DEPOSITION TESTIMONY; Transcript of Bilal Zaghloul, p. 51, ll. 13-22; p. 53, ll. 16-25</u>.

As evidenced from the above testimony, there would be no further legal fees if Allstate honored its agent's representations resulting in a substantial savings of legal fees to Zaghloul. Now, Allstate seeks in excess of one hundred thousand dollars for the services that Allstate provided when Zaghloul could have obtained such services at a fraction of the cost. This is why Zaghloul was happy that Allstate's agents had represented that Zaghloul would not have to "pay a penny" and Allstate would "pay everything."

This testimony of Zaghloul of what he was told by Allstate's agent, Dean Prince, was confirmed by Allstate's agent, Randy Wertz, that his defense costs would be paid for by Allstate. Zaghloul confirmed his understanding that Allstate would pay his defense costs on two occasions during conversations with the agent from Allstate, Randy Wertz:

**Q. And do you recall Mr. Zaghloul ever making any statements to you that he had been assured by the agent of Allstate that sold him the policy that defense costs would be paid? Or any statement similar to that?**

**A. My recollection is vague, but it was that the Allstate agent who sold him the policy had indicated that it would cover either wrongful eviction or exposures that a landlord**

**would normally have.**

**Q. And Mr. Zaghloul told you that?**

**A. Yes.**

**Q. Did he tell you that on more than one occasion?**

**A. Yes.**

**Q. On how many occasions did he tell you that?**

**A. Well, at least twice. And I remember the last time being right at the end of the trial.**

**THE WITNESS: I never talked to the agent, really. The only information I got was the statement from Mr. Zaghloul that he had been told by the agent that there was coverage for either wrongful eviction or the type of exposures that landlords have.**

**Q. Okay. And did that lead you to believe that Mr. Zaghloul had that understanding?**

**A. Yes.**

AGREED STATEMENT OF FACTS AND STIPULATIONS FOR TRIAL–Transcript of R. Randy Wertz, p. 13, ll. 13-25; p.14, ll. 1-3 & ll. 8-15.

Allstate is now estopped to claim reimbursement of defense costs when it was represented to Zaghloul by Allstate's own agents that Zaghloul would not be responsible for defense costs. Zaghloul reasonably relied to his detriment on the statements made by Allstate and its agents that he would not be liable or responsible for any defense costs. Allstate is accordingly estopped from seeking reimbursement of defense costs incurred in the Underlying Action and judgement should be entered accordingly in favor of Zaghloul.

## III. CONCLUSION

There was a potential of coverage under the policy issued to Zaghloul by Allstate based upon the allegations of the complaint filed in the Underlying Case. The complaint filed in the Underlying Case alleged negligence conduct on the part of Zaghloul and sought damages as a result thereof. Based thereon, a duty to defend arose on the part of Allstate as an insurer to its insured. Allstate was required to provide a defense to its insured Zaghloul if any theory or cause of action was potentially within the policy coverage, even if other causes of action alleged by the former tenants in the underlying case were not covered.

As set forth in detail above, the motion in limine heard on the eve of trial did not result in

change regarding Allstate's duty to defend as the negligent causes of action still remained and there was a potential for coverage under said causes of action. In this diversity action, California law governs and provides that the insurer has the burden of proof by a preponderance of the evidence to establish those defense costs that can be allocated solely to the claims that are <u>not</u> potentially covered. Allstate has failed to present sufficient admissible evidence in order to meet its burden of proof as to those claims that are not potentially covered. Here, there are several causes of action alleged in the Underlying Case that are based upon negligent theories of recovery and which sought damages based thereon that remained through trial even if one was to assume that the one cause of action for habitability of the premises was dismissed on the eve of trial. Allstate had a duty to defend based on the theories still being actually prosecuted in the Underlying Action through trial of the case.

It cannot be disputed that the causes of action for (1) "Negligent Misrepresentation" (2) "Breach of Covenant of Quiet Enjoyment" and (3) "Negligent Infliction of Emotional Distress;" were claims that were at issue throughout the case and that discovery, trial preparation and trial defense costs were all expended on such causes of action.

Allstate failed and did not meet its burden of proof in order to obtain a judgement of reimbursement. There was a duty to defend by Allstate on behalf of Zaghloul that remained, including through trial, as the complaint alleged several causes of action that are grounded on the theory of negligence and/or non-intentional conduct of the insured and sought damages arising from such alleged negligence and/or non-intentional conduct of Zaghloul. The Underlying Action alleges causes of action for negligent misrepresentation, breach of the covenant of quiet enjoyment and negligent infliction of emotional distress. As a result, Allstate owed a duty to defend the entire action through trial as California law provides that the duty to defend extends to the entirety of the litigation.

The duty to provide a defense through the entirety of the action cannot be emasculated because the insurer, Allstate, claims that the policyholder was no longer subject to potentially covered claims because on the eve of trial the Court in the Underlying Action issued an "Order on Motion in Limine," stating in part that the Plaintiffs in the Underlying Action would dismiss their

claims of breach of the implied warranty of habitability. Foremost, nowhere in the record is there any evidence that the causes of action pertaining to habitability were ever actually dismissed. No dismissal of such causes of action is part of the record of the Underlying Action.

In any event, an insurer cannot escape its duty to provide a defense to the entire action because Plaintiffs' counsel in the Underlying Action on the eve of trial by way of a motion in limine dismisses certain potentially covered claims. To allow for such conduct by the insurer , would allow the insurer to abandon its insured upon commencement of trial. The insured would be subject to undue prejudice and irreparable harm as a result thereby. The duty to defend existed to defend the entire Underlying Action as that defense *extends to the entirety of the litigation*. It is established California law that the insurer ***has a duty to defend the action in its entirety*** prophylactically as an obligation imposed by law. This obligation cannot be negated by a motion in limine on the eve of trial which never resulted in the dismissal of any cause of action.

Of equal significance as to the duty of the insurer to provide a defense, in this case Allstate is also estopped as a matter of equity and law to deny its duty to defend and to seek any reimbursement of any defense costs it expended. The facts are undisputed and are a matter of stipulation that Allstate's own agent represented to Zaghloul that he would not have to "pay a penny." Zaghloul reasonably relied on such representations to his detriment and switched attorneys based upon the representations of Allstate's agent that he would not have to "pay a penny," Now, Allstate seeks in excess of $160,000.00 for defense costs. The material change in position of Zaghloul to his detriment is established as Zaghloul was only paying a few thousand dollars at most to the attorneys he has retained for the entire defense of the Underlying Case.

Being unable to present any evidence to carry its burden of proof as to costs incurred solely for noncovered claims, and further based on equitable principles, Allstate must be denied reimbursement of all defense costs and a judgement entered in favor of Zaghloul.

Dated: April 23, 2004

________________________________
John G. Hanlin
Attorneys for Defendant
Bilal Zaghloul

## PROOF OF SERVICE (by Attorney)

STATE OF CALIFORNIA
CITY AND COUNTY OF SAN FRANCISCO

I am employed in the City of San Francisco, State of California. I am over the age of 18 and not a party to the within action. My business address is 901 Market Street, Suite 450, San Francisco, CA 94103. (I am an active member of the State Bar of California.)

On April 23, 2004, I served the following described papers on the interested parties:

**DEFENDANT BILAL ZAGHLOUL'S REVISED BENCH TRIAL BRIEF**

[ ] by transmitting a true and correct copy via facsimile to the number(s) shown below:

[X] by placing a true copy of the original enclosed in sealed envelope(s) addressed as follows:

Sonia R. Martin, Esq.
Sonnenschein Nath & Rosenthal
685 Market Street, 6th Floor
San Francisco, CA 94105

[ ] by placing a true copy thereof enclosed in sealed envelope(s) addressed as stated on the attached mailing list.

[ ] by OVERNIGHT DELIVERY by U.P.S.

[ ] (BY MAIL) I placed such envelope(s), with postage thereon fully prepaid, in the United States mail in the City and County of San Francisco, California.

[ ] (BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED) I placed such envelope(s), with postage thereon fully prepaid, in the United States mail in California.

[X] (BY PERSONAL SERVICE) I personally delivered, or caused to be delivered, such envelope(s) by hand to the office(s) of (the addressee(s)).

I declare under penalty of perjury under the laws of the State of California and the United States that the above is true and correct. Executed on April 23, 2004 at San Francisco, California.

______________________________
John G. Hanlin