JOHN EICHHORST (No. 139598)
JASON S. GERLACH (No. 208592)
DERRICK H. ROBINSON (No. 226291)
HOWARD, RICE, NEMEROVSKI, CANADY,
FALK & RABKIN
A Professional Corporation
Three Embarcadero Center, 7th Floor
San Francisco, California 94111-4024
Telephone: 415/434-1600
Facsimile: 415/217-5910

Attorneys for Plaintiff
MISHA CONSULTING GROUP, INC. d/b/a
eBUSINESS DESIGN

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MISHA CONSULTING GROUP, INC., a California corporation, d/b/a eBUSINESS DESIGN,<br><br>Plaintiff,<br><br>v.<br><br>SOURCE MEDICAL SOLUTIONS, INC., a Delaware corporation,<br><br>Defendant. | Action Filed: October 9, 2002<br><br>No. C02 04908 JW (HRL)<br><br>DECLARATION OF JASON S. GERLACH IN SUPPORT OF PLAINTIFF'S MOTION TO STRIKE DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND FOR SANCTIONS<br><br>Date: May 10, 2004[1]<br>Time: 9:00 a.m.<br>Judge: Hon. James Ware<br>Trial Date: July 13, 2004 |

[1]Although Plaintiff recognizes the 35 day notice requirement for motions under Local Rule 7-2, this Motion to Strike relates directly to the untimely Motion for Partial Summary Judgment filed by Defendant which was noticed improperly for hearing on May 10, 2004. If the Court does not sua sponte deny Defendant's untimely motion, Plaintiff EBD asks that this Court consider its Motion to Strike concurrently with Source's Summary Judgment Motion.

I, Jason S. Gerlach, declare as follows:

1. I am a member of the Bar of the State of California and of this Court and an associate at the law firm of Howard, Rice, Nemerovski, Canady, Falk & Rabkin, A Professional Corporation ("Howard Rice"). Howard Rice is counsel for Plaintiff Misha Consulting Group, Inc., d/b/a eBusiness Design ("EBD"). I make this Declaration in support of EBD's Motion to Strike Defendant's Motion for Partial Summary Judgment and For Sanctions and Memorandum of Points and Authorities in Support Thereof. Except where otherwise indicated, I personally know the matters discussed in this Declaration and I could and would testify competently to these matters if called and sworn as a witness.

2. In this action, it is undisputed that in or about late June 2002, Amardeep Misha, the President and CEO of EBD was contacted by Tom Hui, then the Chief Technology Officer of Defendant Source Medical Solutions, Inc. ("Source") who for the first time informed Mr. Misha that Source would not be paying to EBD nearly $1.7 million for unpaid EBD invoices from March, April, May and June 2002 relating to EBD's work on the software development project known as SourceRad. It is also undisputed that the communicated basis for Source's decision not to pay the outstanding EBD invoices were concerns about the quality of the software code written by EBD during its work on SourceRad in the preceding 14 months.

3. Despite its purported concerns about the quality of EBD's programming work, from July 2002 through approximately October 2002, it is also undisputed that Source itself hired six of the EBD employees who had billed many of the hours for which Source still owed money. Specifically, the parties agree that Source hired Dharmesh Vora, Hareesh Pereira, Ajit Goel, Vinod Shetye, Srinivas Chari, and Yogesh Agrawal in the time period subsequent to EBD ceasing work on SourceRad at the end of May 2002.

4. Subsequent to being told in late June 2002 of Source's position as to the unpaid EBD invoices, EBD undertook efforts to recover the monies owed to it by Source. Willing to entertain a possible compromise solution, EBD asked that Source agree to a mediation before JAMS in Chicago, IL on September 19, 2002. Source so agreed and EBD prepared for this mediation in good faith, disclosing nearly one thousand pages of documents and submitting a position statement to the

HOWARD RICE NEMEROVSKI CANADY FALK & RABKIN A Professional Corporation

mediator. Source disclosed nothing in the course of the mediation and after asking EBD for the courtesy of nearly a month extension of the mediation date to October 11, Source without warning on October 8 stated that it refused to appear at the mediation. A true and correct copy of an October 8, 2002 letter from Source's counsel Tony Miller to EBD's then-counsel Todd Thompson indicating Source's refusal to mediate is attached hereto as Exhibit A.

5. With nowhere left to turn but a court of law, EBD brought suit against Source by filing a Complaint with this Court on October 9, 2002. *See* Docket No. 1.

6. Throughout this litigation, Source has continued the pattern of delay that began with its eleventh-hour abandonment of the October 11, 2002 mediation. For instance, on or about November 12, 2002 Source's counsel requested a thirty day extension to respond to EBD's Complaint. As a courtesy, EBD granted this extension of time. A true and correct copy of a November 12, 2002 letter from Source's counsel Bryan Anderson to Mr. Thompson requesting this extension is attached hereto as Exhibit B.

HOWARD RICE NEMEROVSKI CANADY FALK & RABKIN
A Professional Corporation

7. What then followed was several months of motion practice and procedural maneuverings, including three Motions to Dismiss filed by Source. *See* Docket Nos. 27, 66 and 96. Source even went to so far as to file a sanctions motion against EBD for filing a Second Amended Complaint. *See* Docket No. 97. However the Court denied Source's Rule 11 Motion and deemed EBD's Second Amended Complaint sufficient under Rule 12(b)(6). *See* Docket No. 104.

8. During the course of this extended period of motion practice, Source submitted various briefs and declarations that collectively raised a host of claims by Source. Specifically, as after-the-fact excuses for why it should be allowed not to pay EBD the nearly $1.7 million in EBD invoices, Source alleged that EBD's work was of a poor quality, that EBD had padded and falsified billing records, that EBD had made misrepresentations to Source prior to Source's engaging EBD, and that EBD's wrongdoing had caused Source to suffer more than $15 million in damages (which Source would ultimately seek to recover through counterclaims filed in July 2003).

9. In the midst of the parties' motion practice, EBD and Source jointly negotiated and submitted to this Court a Joint Case Management Statement on February 13, 2003, a true and correct copy of which is attached hereto as Exhibit C. This Joint Case Management Statement provided for

the following deadlines: close of discovery on October 30, 2003; initial expert disclosure and reports on November 21, 2003; rebuttal expert disclosure on January 14, 2004; close of expert discovery on February 27, 2004; dispositive motion filing deadline on March 5, 2004; and trial on or after May 10, 2004. *See id* at 3, ¶11.

10. Based on the parties' Joint Case Management Statement, this Court ordered the following case schedule: close of discovery on February 5, 2004; initial expert disclosure and reports on December 5, 2003; rebuttal expert disclosure on December 15, 2003; dispositive motion filing deadline on March 1, 2004; and trial on July 13, 2004. A true and correct copy of the February 27, 2003 Scheduling Order of this Court is attached hereto as Exhibit D. This Scheduling Order was served on both EBD and Source on February 27 (*see* Docket No. 65) and for nearly a year, Source raised no objection to any of the dates contained therein.

11. Despite this action having been on file since October 9, 2002, Source did not take a single deposition until it piggy-backed on EBD's September 11, 2003 deposition of former EBD employee Shekhar Tipnis. This deposition was noticed and arranged by EBD and Source had given no indication that it was ever going to schedule this deposition had EBD not done so.

12. Source in fact did not independently notice and take its first deposition until October 8, 2003 when it deposed Mr. Alok Bal of EBD. Source's next and only other depositions of 2003 were of EBD employees Mr. Brian Clark and Mr. Misha which took place on December 10 and 11, 2003, respectively. All told, Mr. Tipnis, Mr. Bal, Mr. Misha and Mr. Clark would be the only EBD employees ever noticed for deposition or deposed by Source in this action.

13. Toward the end of November 2003 as the December 5 expert disclosure deadline of the Scheduling Order approached and in the midst of EBD's preparation of its own expert disclosures, Source's counsel Jonathan Kanov for the first time approached me about modifying the Scheduling Order. Specifically, in a November 26, 2003 letter to me, Mr. Kanov requested that EBD "agree to extend the deadline for disclosure of expert witnesses and their written reports until December 31, 2003." A true and correct copy of Mr. Kanov's November 26, 2003 letter to me is attached hereto as Exhibit E. In support of this request, Mr. Kanov represented that "Source's proposed experts will be unable to properly review the necessary materials and file a written report by the current

HOWARD RICE NEMEROVSKI CANADY FALK & RABKIN
A Professional Corporation

December 5, 2003 deadline." Mr. Kanov also requested a corresponding extension of the rebuttal expert disclosure deadline to January 10, 2004. Mr. Kanov also indicated that if I did not agree to his proposal, he would file a motion seeking the requested extensions of time.

14. While EBD's experts Michael Wagner and David Klausner had long since been retained and were prepared to submit reports and be disclosed according to the existing Scheduling Order, I took Mr. Kanov's representations at face value and in the interests of courtesy and good faith, agreed to his proposed extensions. This Court adopted the parties' stipulated extensions to the Scheduling Order on December 5, 2003. A true and correct copy of this Court's December 5, 2003 order adopting the parties' stipulation to extend time is attached hereto as Exhibit F. Anxious to keep the case moving forward and meet the discovery cut-off and trial date set by the Court, EBD did not commit to the extension of any other deadlines and in December, continued to press forward in preparation for expert disclosures on the new deadline, December 31, 2003.

HOWARD RICE NEMEROVSKI CANADY FALK & RABKIN
A Professional Corporation

15. However on December 22, 2003, Mr. Kanov e-mailed me indicating that it was his view that the parties had been "too optimistic in only extending the expert witness deadline until the end of the month." A true and correct copy of this December 22, 2003 e-mail from Mr. Kanov to me is attached hereto as Exhibit G. Further, Mr. Kanov indicated in his e-mail that "Source's proposed expert is out of touch all month, and the holidays impede making substantial progress." As a result, Mr. Kanov "took the liberty of drafting a stipulation extending the date for disclosure of expert witnesses to February 10, (2004) rebuttal experts to February 20, and the close of discovery to March 15." *See id*. Given that EBD was prepared to meet the existing deadlines of the Scheduling Order and desirous of keeping the case on track, I did not agree to Mr. Kanov's unilateral proposal.

16. Instead, I engaged in a "meet and confer" process with Mr. Kanov that ultimately resulted in a December 31, 2003 stipulation to extend the Scheduling Order—one that was much shorter than that originally proposed by Mr. Kanov. A true and correct copy of this December 31, 2003 stipulation is attached hereto as Exhibit H. This stipulation moved the deadline for affirmative expert disclosures from December 31, 2003 to January 30, 2004; the deadline for rebuttal expert disclosures from January 12, 2004 to February 10, 2003; and the discovery cut-off from February 10, 2004 to March 1, 2004. *See id*. At EBD's insistence, the parties also stipulated that "[a]ll other

dates set forth in the Court's Scheduling Order remain unaffected by this Stipulation and the parties agree that they *will comply with all other deadlines stated in the Scheduling Order*." *See id*. (emphasis added). This Court entered this second stipulated modification to the Scheduling Order on January 8, 2004. A true and correct copy of this January 8, 2004 Order adopting the parties' stipulation to modify the Scheduling Order is attached hereto as Exhibit I.

17. Barely more than one month later, Source reneged on its commitment to adhere to the deadlines in the Scheduling Order. Specifically, on February 4, 2004 during a deposition, Mr. Kanov asked me whether EBD would agree to yet another extension of time, this time because Source needed more time to comply with the now twice-moved February 10, 2004 deadline for disclosures of rebuttal expert witnesses. The basis for Mr. Kanov's request was his purported "surprise" that EBD's damages expert had challenged the sufficiency of Source's claims for millions of dollars in lost revenues from HealthSouth Corporation. However, Mr. Kanov's position made no sense, particularly in light of the fact that Source had for more than a year been championing its multi-million dollar damages claims against EBD and had back in July 2003 actually filed counterclaims alleging more than $15 million in damages—including lost revenues from HealthSouth. Moreover in approximately September 2003, Source had disclosed a summary of damages spreadsheet stating the same. Although I met and conferred with Mr. Kanov regarding his latest alleged excuse for delay, I was not convinced that further extensions were appropriate. In addition to EBD's concern that further delays would jeopardize the July trial date, EBD believed that Source's stated need for additional time to deal with its own counterclaims provided no basis for an extension. Thus, I informed Mr. Kanov that EBD was not able to agree to any further extensions to the deadlines of the Scheduling Order.

18. Aware of EBD's position on further extensions, on February 9, 2004, Source unilaterally filed a Motion for yet another extension of time that would significantly move the Scheduling Order deadlines which had been agreed upon by the parties and adopted by the Court. A true and correct copy of Source's February 9, 2004 Motion for Order Changing Time is attached hereto as Exhibit J. Changes proposed by Source in its Motion included moving the close of discovery nearly six weeks from March 1, 2004 to April 12, 2004; moving the February 10, 2004

HOWARD RICE NEMEROVSKI CANADY FALK & RABKIN
A Professional Corporation

rebuttal expert deadline nearly six weeks to March 22, 2004; and moving by *over one month the deadline for hearing pretrial dispositive motions from April 5, 2004 to May 10, 2004. See id*.

19. Then, in direct disregard for the existing Scheduling Order issued by this Court, Source chose not to serve or lodge *any* expert rebuttal disclosures or reports on the February 10, 2004 deadline but instead, put its faith in this Court to excuse its dilatory tactics. In contrast to Source, EBD on February 10, 2004 timely met its rebuttal expert obligations and served and filed Mr. Klausner's rebuttal report to Source's purported technical expert, Mr. Jeffrey Jacobs.

20. Despite Source's disregard for the Scheduling Order and over EBD's strenuous objections, this Court granted Source the exact extended discovery schedule it sought. Specifically, this Court moved the rebuttal expert disclosure deadline to March 22, 2004, extended the discovery cutoff to April 12, 2004, and the deadline for hearings of dispositive motions to May 10, 2004. A true and correct copy of this Court's February 18, 2004 order modifying the discovery schedule in accordance with Source's February 9, 2004 Motion for Order Changing Time is attached hereto as Exhibit K.

HOWARD RICE NEMEROVSKI CANADY FALK & RABKIN
A Professional Corporation

21. Source however appears to have misused the extra time granted to it by this Court—particularly with respect to its preparation of its Motion for Partial Summary Judgment ("Motion"). Notably, of all the fact witness depositions noticed and taken by Source in this action, *none* of them took place during the time period from March 1, 2004 (the discovery cut-off stipulated by the parties on December 31, 2004) until the extended April 12, 2004 discovery cut-off Source unilaterally sought and obtained from this Court. Source did question one former HealthSouth employee Janet Young on March 29, 2004 but that was a Rule 30(b)(6) deposition that had been noticed and arranged by EBD and her testimony is not cited in support of Source's Motion nor is it relevant thereto. Moreover while Source did depose EBD's experts Michael Wagner and David Klausner on April 6 and 7, respectively (as well as some further questioning of Mr. Klausner on the morning of April 9), neither are fact witnesses and none of their deposition testimony is cited by Source in its Motion nor would even be relevant to the narrow legal questions raised by Source in its Motion. A true and correct copy of Source's April 19, 2004 Motion for Partial Summary Judgment is Attached hereto as Exhibit L.

22. In addition, during nearly the entire month of March 2004 (March 1 through March 28), no depositions were taken in this action by either side and thus Source's counsel (either Mr. Kanov, any of his colleagues at Fischman, Harvey & Dutton P.A., or any of the numerous lawyers at Source's local counsel Sidley and Austin of San Francisco) should have had ample time to prepare a summary judgement motion. Source's apparent failure to utilize this time for getting its Motion ready of the April 5, 2004 filing deadline is particularly questionable given that the only deposition testimony it relies upon in its Motion is from depositions completed no later than February 4, 2004: HealthSouth's Becky Brown (deposition completed February 4, 2004); Mr. Misha (deposition completed on December 11, 2004); and Source's own employee, Dharmesh Vora (deposition completed on July 29, 2003). *See* Declaration of Jonathan E. Kanov in Support of Defendant's Motion for Partial Summary Judgment (Docket No. 153). At the same time, all of the documents relied upon by Source in its Motion were in Source's possession well before March 2004 began—in many cases months and years before. *See id.* Confirming this fact, on March 26, 2004, more than a week before the April 5, 2004 deadline for Source to serve, file and notice its Motion, Source served on EBD and filed with this Court Amended Initial Disclosures in which it explicitly stated "Source has identified and produced copies of *all* non-privileged documents that . . . Source may use to support its claims or defenses." (emphasis added). A true and correct copy Source's March 26, 2004 Amended Initial Disclosures are attached hereto as Exhibit M.

23. Notwithstanding the ample time available to Source and its counsel in the month of March to timely draft and file its Motion, the April 5, 2004 deadline (again, chosen by Source and requested in its own Motion to Extend Time) came and went without Source providing any written, oral or other notice of any intention to file its Motion, let alone Source actually filing or serving such a motion as required by the Scheduling Order and Local Rule 7-2. In reliance on EBD's apparent decision not to pursue summary judgment, EBD focused on its remaining discovery efforts and then began undertake steps to get its case ready for trial. Specifically, EBD and its counsel are currently preparing to pursue such critical tasks as: reviewing and organizing thousands of potential trial exhibits; designating deposition testimony from nearly 20 deposition transcripts; and preparing numerous motions *in limine*. All of this is occurring in anticipation not only of a July 13 trial but of

HOWARD RICE NEMEROVSKI CANADY FALK & RABKIN
A Professional Corporation

the critical pre-trial conferences and submission deadlines coming up on May 10, May 28, and June 28.

24. Then, in the midst of EBD's trial preparation efforts, in the early evening of April 19, 2004 Source for the first time noticed, filed and served its Motion via this Court's e-filing procedures. As detailed in EBD's Motion to Strike, Source's Motion was not only *two weeks late* under the Scheduling Order and Local Rule 7-2, but it was served on EBD on the very same day EBD's opposition to such a motion was due given the May 10, 2004 hearing date noticed by Source. Accordingly, Source's untimely filing has not only substantially interrupted EBD's trial preparation efforts, it has placed EBD in a precarious procedural netherworld where it is effectively unable to oppose Source's Motion and have this Court give its arguments sufficient consideration prior to the hearing of the Motion.

25. Given the patently untimely nature of Source's Motion, Source's direct violation of the Scheduling Order, and the prejudice heaped upon EBD by Source's actions, I sent to Mr. Kanov on April 21, 2004 a letter demanding that Source withdraw its Motion no later than 9:00 a.m. on Friday, April 23, 2004 or else face a Motion to Strike and for sanctions under Federal Rule of Civil Procedure 16. A true and correct copy of my April 21, 2004 letter to Mr. Kanov is attached hereto as Exhibit N. Mr. Kanov responded to my letter on April 23 by reiterating his belief that Source's Motion was timely under Local Rule 56-1 and that even if it wasn't, Source's delay is excused because Source simply could not have prepared its Motion prior to April 5, 2004. Accordingly, he did not withdraw Source's Motion and thus EBD filed its Motion to Strike on April 23, 2004.

26. Unfortunately, Source's delay and disregard for the Scheduling Order with respect to its Motion is not the first activity of this kind in this Action. For instance Source flatly ignored the statutory deadlines for responding to three sets of written discovery requests from EBD, all hand served on January 30, 2004: namely, EBD's second set of Requests for Production, EBD's Interrogatories, and EBD's Requests for Admission. Specifically, responses to each of these sets of discovery were to be served no later than March 1, 2004 under the applicable federal rules and that deadline was ignored by Source. Instead, without ever seeking a stipulation from EBD and without ever moving this Court for a protective order or extension of time, Source did not serve its responses

to EBD's Requests for Admission until March 12, 2004 (almost two weeks late); Source did not serve its responses to EBD's Interrogatories until March 19, 2004 (almost three weeks late); and Source did not serve its responses to EBD's second set of Requests for Production until March 26, 2004 (nearly one month late). The sanctions for such delay are largely self-effectuating under the applicable federal rules and Source will seek the additional remedies it is entitled to for such delay in due course.

27. On April 5, 2004, I deposed Source's purported technical expert Jeffrey Jacobs. In his deposition, Mr. Jacobs testified that he was not retained by Source Medical until January 2004. This testimony calls into question the representations made by Source back in November and December 2003 suggesting that it had retained experts but that they were not able to complete their work in time for the original December 5, 2003 disclosure deadline of the Scheduling Order or the December 31 deadline stipulated to by the parties. A true and correct copy of the relevant excerpt from Mr. Jacobs' deposition is attached hereto as Exhibit O.

HOWARD RICE NEMEROVSKI CANADY FALK & RABKIN
A Professional Corporation

28. In addition on April 14, 2004—*two days after* the April 12 close of discovery in this action—Source for the first time produced to EBD approximately 400 pages of documents that were responsive to document requests issued by EBD *more than a year earlier*. Included in this production were employment records relating to the six former EBD employee hired by Source back in 2002—documents which Source cites in and attaches to its Motion. Just as disturbing as Source's late production of these responsive documents is that fact that they were accompanied by a cover letter from Mr. Kanov dated March 26, 2004, even thorough the Federal Express package containing these documents was not shipped until April 13, 2004. A true and correct copy of Mr. Kanov's March 26, 2004 cover letter accompanying this production as well as the Federal Express label and tracking data box of documents are attached hereto as Exhibits P, Q, and R.

29. In responding to and moving to strike Source's untimely Motion on behalf of EBD, I have worked under the direction of John Eichhorst, a Director at Howard, Rice, and with the assistance of Michelle Miranda-Albanese, a paralegal at the firm. In my professional judgment, the time spent by each of us in addressing Source's untimely Motion was reasonable and not unusual for the type of writing, research, analysis, editing and clerical tasks we performed.

30. I have reviewed the time that each of us have spent on these tasks in relation to Source's Motion and EBD's responsive Motion to Strike. Collectively, we have spent more than 34 hours since April 19, 2004 when we first received notice of Source's Motion. Multiplied by our regular hourly rates, attorneys' fees and paralegal costs for these 34 hours of time amounts to $10,575.00.

31. Specifically, I have billed more than 25 hours on these tasks from April 19 through our filing of EBD's Motion to Strike. Multiplied by my regular billing rate of $330, the attorneys' fees for these 26 hours of time amount to $8,250.00.

32. John Eichhorst has devoted more than 3 hours of his time on these tasks from April 19 through our filing of EBD's Motion to Strike. Multiplied by his regular billing rate of $395 per hour, the attorneys' fees for these 3 hours of time amount to $1185.00.

33. Michelle Miranda-Albanese has devoted more than 6 hours of her time on these tasks from April 19 through our filing of EBD's Motion to Strike. Multiplied by her regular billing rate of $190 per hour, the paralegal costs for these 6 hours amount to $1140.00.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed on April 23, 2004 at San Francisco, California.

JASON S. GERLACH

HOWARD RICE NEMEROVSKI CANADY FALK & RABKIN
A Professional Corporation

WD 042204/1-1294415/jsg/1145162/v1

HOWARD RICE NEMEROVSKI CANADY FALK & RABKIN
A Professional Corporation