Apple Inc. v. Psystar Corporation Doc. 919

Darryl Parker, California Bar No. 95914
PREMIER LAW GROUP PLLC
6333 N.E. Radford Drive, Suite 3511
Seattle, Washington 98115-8716
Telephone: (206) 934-5681
Facsimile: (206) 281-7930

Attorney for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WAYNE JOHNSON, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF OAKLAND, et al.,<br><br>Defendants. | No. C-03-0162 EDL<br><br>PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br>Date: April 27, 2004<br>Time: 9:00 a.m.<br>Courtroom: E<br>Complaint filed: January 10, 2003<br>Before Honorable Magistrate Judge Elizabeth D. Laporte |

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES**

**IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Premier Law Group PLLC
Darryl Parker
CSB No. 95914

Attorney for Plaintiffs



Dockets.Justia.com

TABLE OF CONTENTS

TABLE OF AUTHORITIES.....iii

I. INTRODUCTION ..... 1

II. STATEMENT OF FACTS ..... 3

III. RELIEF REQUESTED..... 7

IV. ARGUMENT..... 7

A. Defendants Have Failed to Meet Their Burden under Rule 56(b) of the Federal Rules of Civil Procedure ..... 7

B. Defendant City of Oakland Is Not Entitled To Summary Judgment on Plaintiffs' Monnell Claim ..... 8

C. None of the Individual Defendants Are Entitled To Qualified Immunity ..... 10

D. Neither Entry Into Plaintiffs' Home by Defendant Officers Ruiz and Baker Can Be Justified Under the Emergency Doctrine ..... 15

V. CONCLUSION ..... 21



**Premier Law Group PLLC**
6333 N.E. Radford Drive, Suite 3511
Seattle, Washington 98115-8716
(206) 934-5681

## TABLE OF AUTHORITIES

**Cases** **Pages**

Act Up!/Portland v. Bagley
988 F.2d 868 (9th Cir.1993) .................. 11

Anderson v. Creighton
483 U.S. 635, 107 S.Ct. 3034 (1987) .................. 10, 11

Anderson v. Liberty Lobby, Inc.
477 U.S. 242, 106 S.Ct. 2505 (1986) .................. 7

Bouman v. Block
940 F.2d 1211 (9th Cir.), cert. denied, 502 U.S. 1005, 116 L. Ed. 2d 658, 112 S. Ct. 640 (1991) .................. 8

City of Canton v. Harris
489 U.S. 378, 103 L. Ed. 2d 412, 109 S. Ct. 1197 (1989) .................. 8

City of St. Louis v. Praprotnik
485 U.S. 112, 108 S.Ct. 915, 926 (1988) .................. 9

Fuller v. City of Oakland
47 F.3d 1522 (9th Cir. 1995) .................. 9

Gillette v. Delmore
979 F.2d 1342 (1992) .................. 9

Hammond v. County of Madera
859 F.2d 797 (9th Cir.1988) .................. 9

Henry v. County of Shasta
132 F.3d 512 (9th Cir. 1997), amended on denial of rehearing, 137 F.3d 1372, cert. denied sub nom .................. 8

Katz v. United States
194 F.3d 962 (9th Cir. 1999) .................. 10

Larez v. City of Los Angeles
946 F.2d 630 (9th Cir.1991) .................. 9

Malik v. Brown
71 F3d. 724 (9th Cir. 1995) .................. 10



**Premier Law Group PLLC**
6333 N.E. Radford Drive, Suite 3511
Seattle, Washington 98115-8716
(206) 934-5681

Martin v. Oceanside
2004 WL 439856 (9th Cir. 2004) ........................................................ 12, 13, 14, 15

Monell v. Dep't of Social Servs.
436 U.S. 658, 56 L. Ed. 2d 611, 98 S. Ct. 2018 (1978)....................................8

Mendoza v. Block
27 F.3d 1357 (9th Cir.1994) ........................................................................ 10

Oviatt v. Pearce
954 F.2d 1470 (9th Cir. 1992) ........................................................................ 8

Pope v. Henry
525 U.S. 819 (1998)........................................................................................ 8

Reeves v. Sanderson Plumbing Prods., Inc.
530 U.S. 133, at 148, 147 L. Ed. 2d 105, 120 S. Ct. 2097 (2000)............................... 7

Schlegel v. BeBout
831 F.2d 881 (9th Cir.1987) ........................................................................ 11

Thompson v. City of Los Angeles
885 F.2d 1439 (9th Cir. 1989) ........................................................................ 8

United States v. Cervantes
219 F3d 882 (9th Cir. 2000) ...................................................................... 2, 14

United States vs. Gamble
473 F2d 1274 (7th Cir. 1973) ........................................................................ 19

White v. Lee
227 F.3d 1214 (9th Cir. 2000) ........................................................................ 11

White v. Pierce County
797 F.2d 812 (9th Cir.1986) ........................................................................ 11

**Federal Statutes**

42 United States Code 1983.................................................................................... 8, 14

**Other**

U.S. Consitution, Fourth Amendment ..................................................................... 2, 12



**Premier Law Group PLLC**
6333 N.E. Radford Drive, Suite 3511
Seattle, Washington 98115-8716
(206) 934-5681

Darryl Parker, Esq., California Bar No. 95914
PREMIER LAW GROUP PLLC
6333 N.E. Radford Drive, Suite 3511
Seattle, Washington 98115-8716
Telephone: (206) 934-5681
Facsimile: (206) 281-7930

Attorney for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WAYNE JOHNSON, et al., Plaintiffs, vs. CITY OF OAKLAND, et al., Defendants. | No. C-03-0162 EDL<br><br>PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br>Date: April 27, 2004<br>Time: 9:00 a.m.<br>Courtroom: E<br>Complaint filed: January 10, 2003<br>Before Honorable Magistrate Judge Elizabeth D. Laporte |

## I. INTRODUCTION

This is an action for damages sustained by citizens of Oakland, California, against the City of Oakland, two of its police officers and an evidence technician who, through their intentional and reckless conduct, have caused plaintiffs to suffer deprivation of their civil and constitutional rights, as well as mental and emotional distress.

This case is now before this Court on the motion for summary judgment and/or summary adjudication of issues of defendants City of Oakland, Oakland Police Officers Chris Baker and Joel Ruiz, and evidence technician Angela Coogler. As will be shown below, this motion is meritless. Instead of demonstrating the absence of material facts, defendants have simply offered their version of the facts without ever attempting to show that material facts are undisputed. Not only does Officer Ruiz's testimony contradict plaintiffs' version of the facts but he completely contradicts Officer Baker's version of what happened at the plaintiffs' house on material points.

Defendants' motion fails to scholarly analyze United States v. Cervantes, 219 F.3d 882 (9th Cir. 2000), the leading Ninth Circuit case on the emergency doctrine and fails to demonstrate to the Court how the defendant officers' conduct in this case complied with the threshold requirements for entry under the emergency doctrine that our Circuit has held are mandatory.

Plaintiffs' claims are based on violations of the Fourth Amendment. The conspiracy, excessive force, and state claims can be dismissed.

Defendants do not come close to carrying their burden of demonstrating that no material issues remain for trial or that any of the defendants are entitled to judgment as a matter of law on any of plaintiffs' Fourth Amendment claims. Plaintiffs ask this Court to incorporate their evidence and arguments submitted in support of their own motion for summary judgment into this response.

///

///

///



**Premier Law Group PLLC**
6333 N.E. Radford Drive, Suite 3511
Seattle, Washington 98115-8716
(206) 934-5681

## II. STATEMENT OF FACTS

In ruling on a motion for summary judgment, the court must accept the facts as stated by the non-moving party as true. All inferences that can be drawn from those facts also must be made in favor of the non-moving party. What defendants have done is simply provide the Court with any facts that favor their argument and go to great lengths including omitting relevant pages from the deposition transcripts to accomplish that goal. The facts according to plaintiffs, but giving defendant officers the benefit of the doubt as to what they observed, are as follows:

At approximately 8:00 p.m. on Saturday, January 12, 2002, two Oakland Police Department patrol units were dispatched to 4106 Kuhnle Avenue in Oakland, California, to investigate two 911 hang-up calls, which defendant City of Oakland believed originated from that residence. Upon a callback by the dispatcher, a male person within the residence stated that he did not live there and refused to answer any questions. Deposition of Chris Baker, attached as Exhibit "A" to the Declaration of Darryl Parker ("Baker Depo."), at 6:11-23.

At approximately 8:30 p.m., defendant officers Chris Baker and Joel Ruiz arrived at the address and began to scan the perimeter of the residence for any signs of criminal activity. The officers did not see or hear any unusual activity emanating from or around the residence. Baker Depo. at 11:16-12-3. The officers then went to the front door to listen for signs of activity, talking or arguments within the residence. Baker Depo. at 12:4-10. The officers heard no noise nor had any indication that anyone was present within the residence. Baker Depo. at 12:15-20. A few seconds thereafter, the officers knocked on the front door. The officers heard movement within but no one answered the door. Baker Depo. at 13:1-15. The officers waited a minute and then knocked again. This time the officers heard what



**Premier Law Group PLLC**
6333 N.E. Radford Drive, Suite 3511
Seattle, Washington 98115-8716
(206) 934-5681

sounded like someone within the residence walking away from the front door, but again no one answered the door. Baker Depo. at 13:19-14:14.

In the interim off-duty Oakland Police Officer Karla Rush, who had grown up and lived in the neighborhood, drove by and indicated to the officers that she knew the couple who lived there, that they were going through a divorce, and that the wife no longer lived there. Deposition of Karla Rush, attached as Exhibit "B" to the Declaration of Darryl Parker ("Rush Depo."), at 7:3-9:18. Officer Rush further told the officers that the husband lived there with his sons, who continued to go back and forth between the two households. Rush Depo. at 9:3-18. The officers did not further question Officer Rush, nor ask her assistance in identifying the occupants of the residence. Neither officer asked her to describe the children or to provide their ages. Rush Depo. at 10:1-11:6. They did not ask her to describe the residents of the home. They failed to ask about the physical descriptions of the occupants, including their race. Baker Depo. at 28:15-30:14. The officers allowed Officer Rush to leave without ever requesting that she provide them with a means of contacting her should they need her assistance. Rush Depo. at 13:2-13; Baker Depo. at 30:23-31:3.

The Oakland Police Department maintains a database allowing officers to determine the owner of property and the person to whom the telephone is listed under. Deposition of Angel Coogler, attached as Exhibit "D" to the Declaration of Darryl Parker. "Coogler Depo,"), at 28:22-29:8.

Thereafter Officer Baker returned to his patrol car where he radioed the dispatcher his request to place a telephone call into the residence to inform the occupants that the police were outside and to open the front door. Baker Depo. at 14:15-16:8. The dispatcher informed Officer Baker that the telephone line at the residence was busy. Baker then radioed



**Premier Law Group PLLC**
6333 N.E. Radford Drive, Suite 3511
Seattle, Washington 98115-8716
(206) 934-5681

his Sergeant to call into the residence. A few minutes later Sergeant Shalabi informed Officer Baker that he had made contact with a male within the residence who would answer the door. Baker Depo. at 16:11-18:2.

Plaintiff Zuberi Johnson answered the telephone and opened the front door after the officers knocked on it again. Baker Depo. at 19:3-22. Zuberi produced a valid California identification card which contained his photograph. The officers had no reason to question the authenticity of Zuberi's identification card. Baker Depo. at 63:20-25. When Officer Baker asked Zuberi if anyone else was in the residence, Zuberi replied no. Baker Depo. at 20:6-10. There were no signs or sounds that indicated to Officer Baker that anyone was in distress inside the residence. Baker Depo. at 21:5-10. Moments later, Zuberi's brother Jelani entered the kitchen from a downstairs room where he had been sleeping. Declaration of Jelani Johnson ("J. Johnson Decl."), ¶¶ 7 and 9. Officer Baker then handcuffed Zuberi and placed him in the back seat of his patrol vehicle.

The officers then performed a protective sweep of the residence. During the sweep, Officer Ruiz found a kitchen knife lying on top of a small vinyl bag containing various bundles of wire. The officers made no inquiry as to whose knife it was or what it was doing on the floor of the bedroom. J. Johnson Decl., ¶ 9; Declaration of Zuberi Johnson ("Z. Johnson Decl."), ¶ 12; Deposition of Joel Ruiz, Exhibit C to the Declaration of Darryl Parker ("Ruiz Depo."), at 23:16-24:8. Officer Ruiz then handcuffed Jelani Johnson and escorted him out of the house. J. Johnson Decl., ¶¶ 9 and 13. Ruiz then put Jelani in the patrol vehicle. Ruiz Depo., at 37:21-24.

///

///



**Premier Law Group PLLC**
6333 N.E. Radford Drive, Suite 3511
Seattle, Washington 98115-8716
(206) 934-5681

Officer Ruiz then retained Jelani in the back of his patrol vehicle. Jelani was very cooperative. Jelani and Zuberi remained in handcuffs, locked in the back seat of the officers' patrol cars as they awaited the arrival of the evidence technician and while she photographed the residence. Z. Johnson Decl., ¶¶ 15-16; J. Johnson Decl., ¶¶13; Ruiz Depo., at 46:1-21.

At 9:11 p.m., Officer Ruiz called for an Evidence Technician to come and photograph the house and the room where the knife was found. Ruiz Depo., at 36:16-17, and the CAD printout, Exhibit "E" to the Declaration of Darryl Parker. The Evidence Technician, Angela Coogler, arrived on the scene at 9:16 p.m. Coogler Depo. at 9:4-10 and 10:12-22. She was met simultaneously by both Officer Ruiz and Officer Baker. Coogler Depo., at 12:17-23.

The sole reason the officers asked the evidence technician to enter the residence and photograph the residence was to collect evidence of a crime and not to perform a protective sweep. Ruiz Depo. at 53:8-23; Baker Depo. at 44:11-21. Officer Baker admitted during his deposition, that when he and/or Officer Ruiz reentered the residence with the evidence technician, no exigent circumstances existed. Baker Depo. at 51:4-9. Ruiz showed Evidence Technician Angela Coogler what he wanted photographed and stayed with her while she photographed the residence. Coogler Depo. at 17:1-15. While photographing the residence, Coogler did not see any evidence of a crime. Coogler Depo. at 25:3-9. She did not see any blood anywhere and she did not consider the kitchen knife or the box cutters to be evidence of a crime. Coogler Depo. 25:10-29:1.

The officers finally contacted plaintiffs' next-door neighbor, Kenneth Leary, who confirmed that both Jelani and Zuberi lived at the residence with their father Wayne Johnson. Baker Depo. at 42:4-21. At that point, Jelani and Zuberi were released; and the police left.



**Premier Law Group PLLC**
6333 N.E. Radford Drive, Suite 3511
Seattle, Washington 98115-8716
(206) 934-5681

Baker Depo. at 43:7-16. The incident took a little more than an hour. Baker Depo. at 48:24-49:1.

## III. RELIEF REQUESTED

Plaintiffs request that Defendants' Motion For Summary Judgment be denied in its entirety.

## IV. ARGUMENT

### A. Defendants Have Failed to Meet Their Burden under Rule 56(b) of the Federal Rules of Civil Procedure

On summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505 (1986). The party moving for summary judgment has the burden of proving the absence of any genuine issue of material fact that would allow a judgment as a matter of law. Supra, at 256.

Plaintiff Zuberi Johnson testified that within a minute of entering the residence, Officer Baker asked him his name, who lived there, who was present, and requested his identification. Immediately thereafter, Baker pushed him forward over the back of the sofa and then handcuffed him. He was taken out to the patrol car and locked in the backseat. This testimony in and of itself precludes defendants' obtaining summary judgment on any of plaintiffs' claims.

Summary judgment is only appropriate if no rational fact-finder could conclude that defendants' conduct violated plaintiffs' rights. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, at 148, 147 L. Ed. 2d 105, 120 S. Ct. 2097 (2000).

///



**Premier Law Group PLLC**
6333 N.E. Radford Drive, Suite 3511
Seattle, Washington 98115-8716
(206) 934-5681

**B. Defendant City of Oakland Is Not Entitled To Summary Judgment on Plaintiffs' Monnell Claim**

Defendant City of Oakland has also moved for summary judgment on the issue of the City's liability for any violations of plaintiffs' civil rights under 42 United States Code Section 1983. The City argues that plaintiffs will be unable to establish that the entry into their residence, the seizure of plaintiffs Zuberi and Jelani Johnson, and the search of their residence were the result of an official policy or custom.

To establish municipal liability under Section 1983, plaintiffs must prove that the constitutional violations upon which they complain were caused by the City's official policy or custom. Monell v. Dep't of Social Servs., 436 U.S. 658, 694, 56 L. Ed. 2d 611, 98 S. Ct. 2018 (1978); Bouman v. Block, 940 F.2d 1211, 1230 (9th Cir.), cert. denied, 502 U.S. 1005, 116 L. Ed. 2d 658, 112 S. Ct. 640 (1991). A policy "promulgated, adopted, or ratified by a local governmental entity's legislative body unquestionably satisfies Monnell's policy requirement." Thompson v. City of Los Angeles, 885 F.2d 1439, 1443 (9th Cir. 1989).

Moreover, a policy of inaction can be a municipal policy within the meaning of Monnell. See Oviatt v. Pearce, 954 F.2d 1470, 1474 (9th Cir. 1992). The plaintiffs may also establish municipal liability by demonstrating that the alleged constitutional violation was caused by a failure to train municipal employees adequately. See City of Canton v. Harris, 489 U.S. 378, 388-91, 103 L. Ed. 2d 412, 109 S. Ct. 1197 (1989); Henry v. County of Shasta, 132 F.3d 512, 517 (9th Cir. 1997), amended on denial of rehearing, 137 F.3d 1372, cert. denied sub nom Pope v. Henry, 525 U.S. 819 (1998).

There are material issues of fact as to whether the City of Oakland ratified defendant officers' conduct. Internal Affairs investigators received plaintiff Wayne Johnson's



**Premier Law Group PLLC**
6333 N.E. Radford Drive, Suite 3511
Seattle, Washington 98115-8716
(206) 934-5681

complaint as to officers Baker and Ruiz' conduct in entering his home, handcuffing and detaining his children and in searching his house. The City ratified the conduct of the officers involved by sending Johnson a letter exonerating the officers of any wrongdoing. See Exhibit "F" attached to the Declaration of Darryl Parker.

Ratification is shown where an official with final policy-making authority ratified a subordinate's decision or action and the basis for it. Gillette v. Delmore, 979 F.2d 1342, 1346-47 (1992); see also City of St. Louis v. Praprotnik, 485 U.S. 112, 127, 108 S.Ct. 915, 926 (1988).

The Ninth Circuit has found municipal liability on the basis of ratification when the officials involved adopted and expressly approved of the acts of others who caused the constitutional violation. See, e.g., Hammond v. County of Madera, 859 F.2d 797, 802-03 (9th Cir.1988) (board, which was responsible for approving transfers of rights-of-way, accepted and approved of transfer documents that resulted in deprivation of constitutional rights); Larez v. City of Los Angeles, 946 F.2d 630, 645-48 (9th Cir.1991) (individual filed a complaint with the LAPD alleging excessive force was used against him in a search, LAPD investigated it, and the police chief signed a letter stating that none of the complaints would be sustained, thereby ratifying the investigation and search); Fuller v. City of Oakland, 47 F.3d 1522, 1526 (9th Cir. 1995) (an officer investigated complaints of sexual harassment, and police chief who approved investigator's report and conclusion that there was no harassment ratified the investigator's conclusion).

The approval of and ratification of the officers' conduct by the Internal Affairs Unit raises an issue of fact as to whether the City ratified the officers' conduct thus precluding summary judgment.



**Premier Law Group PLLC**
6333 N.E. Radford Drive, Suite 3511
Seattle, Washington 98115-8716
(206) 934-5681

### C. None of the Individual Defendants Are Entitled To Qualified Immunity

Defendants claim that the officers are entitled to qualified immunity because it was reasonable for them to enter the residence pursuant to their community care taking function. Defendant officers are not entitled to qualified immunity because no emergency existed, and the officers are unable to articulate objective facts, that demonstrate the presence of an emergency.

The doctrine of qualified immunity protects government officials such as police officers from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Katz v. United States, 194 F.3d 962, 967 (9th Cir. 1999).

Whether the law was clearly established is purely a question of law for the court to decide. Mendoza v. Block, 27 F.3d 1357, 1360 (9th Cir. 1994). For a right to be "clearly established," its "contours ... must be sufficiently clear that [at the time the allegedly unlawful action is taken] a reasonable official would understand that what he is doing violates that right." Id. at 1361 (quoting Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034 (1987)).

Although plaintiffs herein need not show that the very action challenged was previously held unlawful, they must show that in the light of pre-existing law the unlawfulness was apparent. Anderson, 483 U.S. at 640.

It is not necessary that the alleged acts have been previously held unconstitutional, as long as the unlawfulness of the officers' actions was apparent in light of preexisting law. Malik v. Brown, 71 F3d. 724, 727 (9th Cir. 1995). "Closely analogous preexisting case law



**Premier Law Group PLLC**
6333 N.E. Radford Drive, Suite 3511
Seattle, Washington 98115-8716
(206) 934-5681

is not required to show that a right was clearly established." White v. Lee, 227 F.3d 1214, 1238 (9th Cir. 2000).

The doctrine of qualified immunity does not apply if reasonable officers would have known they were violating clearly established constitutional rights. See White v. Pierce County, 797 F.2d 812, 815 (9th Cir. 1986).

The availability of qualified immunity for individual defendants on summary judgment is tested under the rule of Anderson v. Creighton, 483 U.S. 635 (1987). Under Anderson, the Court must review whether in light of (1) the information possessed by the officer and (2) clearly established law, the officer could have reasonably believed his actions to be lawful.

In Schlegel v. BeBout, 831 F.2d 881, 887, 888 (9th Cir. 1987), the Ninth Circuit held that "the existence of a reasonable belief that conduct was lawful in light of clearly established law is a jury question, not appropriate for summary disposition."

The determination of whether a reasonable officer could have believed his conduct was lawful is a determination of law that can be decided on summary judgment only if the material facts are undisputed. Act Up!/Portland v. Bagley, 988 F.2d 868, 873 (9th Cir. 1993). If, however, there is a material dispute as to the facts regarding what the officers or the plaintiffs actually did, the case must proceed to trial, before a jury if requested. Id.

In the present case, the facts necessary to decide the issue of qualified immunity are in dispute. See the analysis of the facts provided in Section "D", infra. Plaintiff's' version of the facts suggest that no reasonable officer could have believed there was probable cause to enter the residence or to detain or arrest any of the plaintiffs. Furthermore, no reasonable



**Premier Law Group PLLC**
6333 N.E. Radford Drive, Suite 3511
Seattle, Washington 98115-8716
(206) 934-5681

officer would have concluded that an emergency existed based on the facts as stated in plaintiffs' declarations or even based on the facts as stated by defendant officers.

The law is clearly established that, absent consent or probable cause coupled with exigent circumstances, warrantless entries into the homes of citizens are prohibited by the Fourth Amendment.

Defendants next argue that this case is similar to the recently decided Ninth Circuit case of Martin v. Oceanside, 2004 WL 439856 (9th Cir. 2004). This argument is faulty for two reasons: First, defendants fail to submit declarations from either of the officers describing their role in the entry, search or detention of which plaintiffs complain. Instead, defendants rely on selected pages from their deposition. No assessment of reasonableness is possible without such a statement. Officers are entitled to qualified immunity if they act reasonably under the circumstances. What is reasonable for a particular officer depends on his role in the search. Secondly, contrary to the situation confronting Officers Ruiz and Baker, there were objective facts in Martin, supra, from which a reasonable officer could conclude that entry was necessary to avert an emergency.

In Martin, an officer was dispatched to the Martin residence to check the welfare of Martin's female roommate. Her father had called the Oceanside Police Department from Portland, Oregon, urging that the police check on his daughter because he had been unable to reach her by phone for several days and was "extremely concerned and felt she could be in trouble." Upon arrival, the officer noticed the young woman's car parked outside as he had received a description of her car by her father.

The officer knocked on the front door and rang the doorbell, but no one answered. In fact, both the plaintiff and the girl were inside the house. Although the plaintiff saw a



**Premier Law Group PLLC**
6333 N.E. Radford Drive, Suite 3511
Seattle, Washington 98115-8716
(206) 934-5681

uniformed police officer at the door, he did not answer it. When no one answered the door, the officer called into the residence and also had the dispatcher call into the residence. The phone was answered by the girl's answering machine. The officer then walked around the house to a side door which was unlocked but closed. The officer opened it, and entered plaintiff's garage.

Inside the garage, the officer found and tried an unlocked door that led into the main house. Fearing that a crime could be in progress, he exited the garage and requested an additional police unit. He then talked to the next door neighbor, who told him that she had seen a female at the residence on Christmas day and a male at the residence the day before, that the occupants' cars were in the driveway, and that they should be home. The officer then returned to the front door and started banging loudly on it and pushing the door bell repeatedly. This went on for several minutes, but there was no answer.

A second officer arrived and was briefed on the situation. Both officers went back to the unlocked side door. The officers entered the main house through the unlocked door in the garage. They entered "with their guns drawn for their own safety" and that of the occupants. Using flashlights so they could see, the officers checked the downstairs area for people but found no one. They then started up the staircase to the second floor. When the occupants exited the bedroom, the officers demanded they identify themselves and pointed their weapons at them.

Once the occupants identified themselves, and the officers could see that they were okay, the officers left. About four minutes elapsed from the time the officers entered the house and the time they notified dispatch that the young woman was okay.

///



**Premier Law Group PLLC**
6333 N.E. Radford Drive, Suite 3511
Seattle, Washington 98115-8716
(206) 934-5681

The occupants sued the officers under Section 1983 for unlawful search and seizure and the district court granted summary judgment. The Ninth Circuit affirmed because all three prongs of the Cervantes test were met. The officers had objective facts which led them to believe that a warrantless entry was necessary to ensure the safety of the occupants. The officers were informed that occupants' cars were in front of the house, so they should have been home. However, no one answered the door in response to the officers' repeated knocking, nor did anyone answer the telephone when dispatch called.

The circumstances were consistent with the father's statement to the police that he was urgently concerned for the welfare of his daughter, and suggested that she may, in fact, have been in trouble inside the house. These are precisely the facts for which the emergency doctrine was designed.

In the present case, the boys eventually answered the door, so the police knew they were okay. They each produced valid California identification containing their names. Neither was wearing shoes and it was the middle of winter, so the officers could not have thought they were burglars.

No reasonable officer could possibly think a burglar answered the telephone and, once told that the police were coming, remain one half hour later at the residence to answer the phone again. The burglar then would have had to partially undress, remove his shoes and produce identification when asked. The second suspect would have had to bring pajamas, undress, remove his shoes and then go downstairs. This second person, upon hearing the police outside, would have to readily come upstairs, identify himself and be completely cooperative.

///



**Premier Law Group PLLC**
6333 N.E. Radford Drive, Suite 3511
Seattle, Washington 98115-8716
(206) 934-5681

Furthermore, unlike the police in Martin, the police officers by their own admission take up at least 35 minutes of plaintiffs' time, do not leave once the boys are identified, handcuff the boys and lock them in a patrol car and compound the intrusion by summoning an evidence technician to photograph their home and their embarrassingly messy room.

There is no similarity between the four-minute intrusion in Martin and the invasion that took place in this case. Qualified immunity simply is not available for such an obvious constitutional violation.

The law in this area has been expanding giving the police more rights and providing more exceptions to the warrant requirement for entering a private residence. A well-trained officer would have known that he was violating the Constitution by entering the residence, detaining the occupants, handcuffing them, removing them from their home and by reentering the house to photograph it.

**D. Neither Entry Into Plaintiffs' Home by Defendant Officers Ruiz and Baker Can Be Justified Under the Emergency Doctrine**

Defendants contend that the report of a 911 call hang-up coupled with the odd behavior by the person answering the telephone at the residence justified the police going out to the scene to investigate. Plaintiffs do not dispute this contention.

It is the officers' entry into and searching of plaintiffs' home, their detention of the two youths in handcuffs, their escorting them out of the residence, and locking them in patrol cars that violated plaintiffs' constitutional rights.

If we examine the facts in a light most favorable to the plaintiffs, the officers determined that they were faced with an emergency and entered the house based on the following: When the officers arrived at the house, they heard no unusual sounds emanating



**Premier Law Group PLLC**
6333 N.E. Radford Drive, Suite 3511
Seattle, Washington 98115-8716
(206) 934-5681

from the house. They saw no signs of a struggle or heard anything that indicated that someone was hurt or in distress. They saw no signs of forced entry. They went up to the front door and tapped on it. They heard what sounded like someone coming to the door but not opening it. The officers had their Sergeant call into the residence and eventually a male voice (Zuberi Johnson) answered and said he would come to the door and did in fact open the front door. He was wearing house clothes and had no shoes on.

Just inside the front door there were numerous pieces of mail addressed to both boys at this address. There were numerous large photographs of the boys on the mantle that were visible from just inside the door. When the officers entered, they asked plaintiff Zuberi Johnson his name, which he gave them. They asked him for identification and he provided them with a valid California Identification Card with his picture on it. The name on the card matched the name that plaintiff Zuberi Johnson had given the officers.

The officers then asked Zuberi if there was anyone else home, and Zuberi not knowing that his brother was home said no. The officers then asked Zuberi who owned the house and he failed to respond. At this point, the officers entered the house and Officer Baker forced Zuberi over the sofa and handcuffed him behind his back and removed him from the residence. The officer never asked Zuberi why he had told him no one else was home or whether he had made a 911 call.

Plaintiff Jelani Johnson was sleeping in a bedroom downstairs when he heard the sounds of police radios and walkie-talkies coming from inside the house. He heard his brother Zuberi talking to what sounded like policemen. Jelani heard his brother say "What are you doing?" and "What did I do?" Jelani heard his brother cry out in pain. He



**Premier Law Group PLLC**
6333 N.E. Radford Drive, Suite 3511
Seattle, Washington 98115-8716
(206) 934-5681

immediately became concerned because his brother is a very quiet person, a student at San Francisco State University, who rarely speaks.

Jelani knew his brother had not done anything to the police but might have had difficulty expressing himself to the police. Zuberi is slow to respond to questions and is sometimes difficult to understand. Jelani came up stairs to assist his brother.

When Jelani reached the top of the stairs, which end in the kitchen, he saw a police officer handcuff Zuberi with his hands behind his back and push him forward over the back of the sofa. Another officer, most likely Ruiz, stood in the doorway to his upstairs bedroom, which would have been behind him as he faced the front door.

This officer asked Jelani if he lived there, and he said "yes." He then asked for and Jelani provided the officer with a valid California I.D. card with his picture on it. The officer then had Jelani place his hands behind his back and handcuffed him. The officers never asked Jelani if he had made a 911 call or whether there was an emergency or whether a crime had been committed. At this time, Jelani was wearing only pajama pants, was shirtless and was not wearing shoes.

Before the officer escorted Jelani out of the house, he allowed him to put on a shirt and some shoes. He then took him outside and had him sit on a lawn chair and wait. After sitting there for a few minutes, Jelani was placed in the back seat of a patrol car where he stayed between fifteen minutes and one half hour.

After locking the handcuffed boys in the patrol car, the officers reentered the house and searched it. During the search, the officers found a kitchen knife on top of some speaker wires in a small bag on the floor in a spare room that was a mess. The officers saw no



**Premier Law Group PLLC**
6333 N.E. Radford Drive, Suite 3511
Seattle, Washington 98115-8716
(206) 934-5681

evidence of a crime. There was no blood on the knife or anywhere else in the residence. With the exception of that room, the house was neat and nothing appeared to be disturbed.

The officers then left the residence and returned to their respective patrol cars. Officer Ruiz then used his car radio to call for an Evidence Technician to photograph the room where the knife was found. The officers waited outside for the technician's arrival. When Evidence Technician Angela Coogler arrived, she photographed the house, the room, and the knife at the instruction of one or both of the officers. She saw no evidence of a crime while she was photographing the residence.

There is nothing in those facts that even remotely resembles an emergency situation that would allow either the initial entry, or the reentry to photograph evidence.

Defendants claim that plaintiff Zuberi Johnson was lying to them and acting nervous and that he said in a scared voice "they left". This testimony is of course directly contradicted by the testimony of both plaintiffs. Even defendants' version of the facts does not support the conclusion that entry was necessary because they were confronted with an emergency. It is ludicrous for trained officers to feign ignorance when all the tools to resolve this problem were at their disposal and they failed to use them.

Defendant officers also had a fellow officer who could identify the family members, whom they failed to utilize. They had a data base which allows them to retrieve names of homeowners and telephone owners. If the officers had simply glanced around the entryway to the house, they could have readily seen that there were family pictures of the plaintiffs on the mantle and numerous papers with names matching those on the identification cards the plaintiffs had provided to them.

///



**Premier Law Group PLLC**
6333 N.E. Radford Drive, Suite 3511
Seattle, Washington 98115-8716
(206) 934-5681

The officers attempt to create an emergency situation by pointing to the discovery of a knife on top of a bag in a bedroom that was not visible from the entryway to the house. Notwithstanding the fact that the knife was discovered after the officers had already entered the house, its discovery does not create an emergency or exigent circumstance.

A kitchen knife even in a spare room is not contraband, nor is its discovery evidence of a crime. The knife posed no threat because it was not in the proximity of either boy and was probably not discovered until after they had been removed from the residence. More important, a kitchen knife in a residence is not contraband or evidence of a crime. See United States vs. Gamble, 473 F.2d 1274, 1277 (7th Cir. 1973). In that case, the court ruled that knowledge by the police that the resident possessed a gun was not enough to merit a warrantless intrusion by the police.

There is certainly no justification for defendant officers' reentry with the Evidence Technician to obtain photographs of the house, room, and knife.

The officers' contention that each had reasonable cause to believe they were confronted with an emergency is not born out by either their behavior or the circumstances as articulated by them. Both Officer Ruiz and Officer Baker testified that they were delayed in responding to the 911 call hang-up. Office Baker testified that when he approached the residence he saw no sign of criminal activity. He did not see any broken or open windows. He could not hear any signs that someone in the residence might be in distress. In fact, the officers spent a considerable amount of time trying to call into the residence and made no attempt to obtain a description of who lived in the house. Even after the Zuberi opened the door, the officers saw nothing unusual taking place in the house.

///



**Premier Law Group PLLC**
6333 N.E. Radford Drive, Suite 3511
Seattle, Washington 98115-8716
(206) 934-5681

Defendants' version of the facts fails to establish an emergency situation as a matter of law. The factors cited by defendants as the "totality of the circumstances" known to the officers at the time of the entry do not constitute a particularized and objective basis for entering plaintiffs' residence without consent or a warrant.

Plaintiff Zuberi's apparent nervousness when being questioned by an officer in his home at 8:00 p.m. is understandable given his personality and upbringing. Such conduct is consistent if not common and cannot serve to justify the entry by the officers. The only other factor relied upon by the officers is that Zuberi Johnson told them no one else was home, when in fact Jelani Johnson was.

Given the fact that there are three entrances to this house and Jelani came from a room downstairs, it is not the least bit unusual that Zuberi was unaware of his brother's presence. Instead of asking Zuberi why he had told them his brother was not home, the officers immediately handcuffed and arrested the boys without investigating further. Behavior that is common conduct exhibited by the population at large is not a sufficient basis for creating reasonable cause to believe that an emergency existed. Even more incredible, the officers did not check to see who owned the home to see if the boys' last names matched any mail in the home.

The defendants do not attempt to justify the handcuffing plaintiffs or removing them from their home because they have not produced any evidence nor have they articulated any grounds for believing that plaintiffs posed any threat to the safety of the officers or of other persons.

///

///



**Premier Law Group PLLC**
6333 N.E. Radford Drive, Suite 3511
Seattle, Washington 98115-8716
(206) 934-5681

## V. CONCLUSION

Defendants were not justified in seizing plaintiffs while they conducted an investigation into the 911 hang-up and performed a protective sweep. Defendants did not possess a search warrant or an arrest warrant and were permitted to enter the residence only to secure the safety of the occupants and the safety of anyone else who might be in the residence.

Plaintiffs were not detained inside the residence where they could observe the search. They were handcuffed and taken outdoors at gunpoint partially dressed and without shoes. They were further detained and questioned long after the officers had cleared the residence and while an Evidence Technician photographed its interior.

Defendants are not entitled to summary judgment. There are issues of fact as to what transpired which precludes summary judgment in their favor on each of plaintiffs' remaining claims. To the extent that the facts are not disputed or are viewed in a light favorable to defendants, summary judgment should be granted in favor of plaintiffs.

Dated: April 6, 2004

Respectfully submitted,

PREMIER LAW GROUP, PLLC

By: ____________________
Darryl Parker, CSB # 95914
Attorney for Plaintiffs



**Premier Law Group PLLC**
6333 N.E. Radford Drive, Suite 3511
Seattle, Washington 98115-8716
(206) 934-5681