Apple Inc. v. Psystar Corporation

Doc. 1036

BINGHAM McCUTCHEN LLP
WILLIAM BATES III (SBN 63317)
THOMAS E. KUHNLE (SBN 178055)
PATRICK T. WESTON (SBN 211448)
1900 University Avenue
East Palo Alto, CA 94303-2223
Telephone: 650.849.4400
Facsimile: 650.849.4800

Attorneys for Defendant
BRAINSTORMUSA, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CYNTHIA TAMAYO and JUAN ALGARATE, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>BRAINSTORM USA, a limited liability company; and THE PROVIDENT BANK, a corporation; DOES 1-25,<br><br>Defendants. | No. C01-20386 JF (RS)<br><br>DEFENDANT BRAINSTORMUSA, LLC'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT<br><br>Date: May 24, 2004<br>Time: 9:00 a.m.<br>Place: Ctrm. 3, 5th Floor<br>Judge: Hon. Jeremy Fogel |

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /



Dockets.Justia.com

## I. INTRODUCTION

In the face of undisputed evidence that Defendant Provident Bank issued credit to Plaintiffs in the only transaction pertinent to this motion, Plaintiffs have constructed a nonsensical argument that Defendant BrainstormUSA, LLC's ("Brainstorm") Preferred Customer Agreement ("PCA")[1] amounted to a binding *credit* agreement under the Truth in Lending Act ("TILA"). Among other things, Plaintiffs ignore that "[c]ourts are to focus on the economic substance of the transaction in determining whether TILA has been violated." *Williams v. Chartwell Fin. Servs., Ltd.,* 204 F.3d 748, 753 (7th Cir. 2000).

Here, the substance of the Plaintiffs' transaction is undisputed. Plaintiff Cynthia Tamayo testified under oath that she was provided credit by Provident Bank, received bills from Provident Bank, and made credit payments to Provident Bank. The Ninth Circuit has concluded that Brainstorm was neither a party to, nor a third party beneficiary of, the instrument through which credit was issued to Plaintiffs – Provident Bank's Revolving Credit Agreement. The PCA was not a credit agreement; it was a sales agreement. Brainstorm never issued credit to Plaintiffs, nor did Plaintiffs make monthly payments to Brainstorm. Brainstorm is thus not a "creditor" under TILA, and judgment should be entered against Plaintiffs on their TILA claim, as well as the related claim made under California's Unfair Practices Act.

Plaintiffs state they "do not contest Brainstorm's attempt [to] summarily adjudicate the claim under the Spanish Language Contract Act." Judgment should thus be entered in Brainstorm's favor on that cause of action as well.

---

[1] The PCA is attached as Exhibit B to the Rodriguez Declaration, which in turn is Exhibit A to Plaintiffs' Request for Judicial Notice. It is also Exhibit A to the Complaint.

## II. SUMMARY JUDGMENT SHOULD BE GRANTED IN FAVOR OF BRAINSTORM ON THE TILA CLAIM

Plaintiffs concede in the opening sentences of their Opposition Brief that Brainstorm cannot be liable under TILA for credit issued under the Revolving Credit Agreement. (Plaintiffs' Opposition to Defendants' Motion for Summary Judgment ("Opp. Brief") at 1) This is both a necessary, and crippling, concession. It is necessary in light of the evidence set forth in Brainstorm's Motion for Partial Summary Judgment and Memorandum of Points and Authorities in Support Thereof ("Opening Brief"), including: 1) the testimony of Provident Bank's Senior Vice President who asserted that Provident Bank issued Plaintiffs a revolving line of credit; 2) the terms of the Revolving Credit Agreement itself; 3) the testimony of Plaintiffs who agreed they received credit from, and paid their bills to, Provident Bank; and 4) the conclusion of the Ninth Circuit which ruled Brainstorm was not a party to the Revolving Credit Agreement. (Opening Brief at 3-4) Plaintiffs' concession is crippling because, for the reasons set forth below, the PCA is not a credit agreement.

### A. The PCA is Not a Credit Agreement

TILA defines "credit" as "the right granted by a creditor to a debtor to defer payment of debt or to *incur debt and defer its payment*." 15 U.S.C. § 1602(e) (emphasis added). The PCA lists the goods to be purchased, the Plaintiffs' address and phone number, and the amounts comprising the "Balance Due." In addition, in the "NOTICE TO BUYER" section, the PCA includes disclosures required under California's Home Solicitation Sales Act ("HSSA"), California Civil Code sections 1689.6-1689.8.

Nowhere does the PCA evidence any agreement between Plaintiffs and Brainstorm to defer payment of any debt. There are no provisions concerning the rate of interest, the number of payments, the interval of payments, penalties for late payment, or other indicia of

a "credit" agreement.[2] The fact that the PCA creates no credit obligation is consistent with the uncontroverted testimony of Joseph A. Galluccio, Brainstorm's President and CEO, who stated under oath that at no time was Plaintiffs' credit assigned to Brainstorm or otherwise made payable to Brainstorm. (Declaration of Joseph A. Galluccio in Support of Brainstorm's Motion for Partial Summary Judgment ("Second Galluccio Decl.") ¶ 4)

The absence of any credit terms in the PCA contrasts with the operative credit agreement in the transaction with Plaintiffs: Provident Bank's Revolving Credit Agreement. That Agreement has sixteen numbered paragraphs, plus a half-page of additional notices. (Amended Declaration of David Sweet-Cordero in Support of Defendants' Motion to Compel Arbitration ("Sweet-Cordero Decl."), Ex. A) As might be expected in a loan agreement with a bank, the Revolving Credit Agreement defines terms, sets forth the obligation of the bank and its lenders, and includes choice of law and dispute resolution provisions. (*Id.* at 3-6 & Ex. A) At its core, however, are provisions that require the Plaintiffs to repay their debt. Section 2, for example, states: "You are legally obligated to pay the amount owed in full on this Line of Credit Program under this Agreement. . . ." (*Id.* at 4) There is no such provision in the PCA.

Plaintiffs assert that *Riviere v. Banner Chevrolet, Inc.*, 184 F.3d 457, 461 (5th Cir. 1999), stands for the proposition that "a seller who does not receive payments is nonetheless a creditor if the contract is initially payable to the seller." (Opp. Brief at 6) Plaintiffs ignore the fact that the seller in *Riviere* provided the buyer with a "form retail installment contract" entitled "Retail Installment Contract" in which the "finance charge" and "amount financed" were included. *Riviere*, 184 F.3d at 458-59.[3] Plaintiffs do not allege that the single-page PCA is a

---

[2] Plaintiffs contend that the interest rate need not be stated in the contract because TILA applies if payment of a finance charge is required or if there are four or more installment payments. (Opp. Brief. at 7) The PCA, however, references neither requirement.

[3] Likewise, in another case cited by Plaintiffs, *Nigh v. Koons Buick Pontiac GMC, Inc.*, 319 F.3d 119, 122 (4th Cir. 2003), the instruments at issue were a trio of Retail Installment Sales Contracts that reflected the proposed financing.

"form retail installment contract" (it is not), nor can they claim it contains terms necessary to "incur debt and defer its payment" as required by TILA. 15 U.S.C. § 1602(e)

Plaintiffs seek support from *Canaday v. Household Retail Services, Inc.*, 119 F. Supp. 2d 1258, 1268 (M.D. Ala. 2000) for their assertion that "[i]f it looks like a credit agreement, sounds like a credit agreement, and walks like a credit agreement – it's a credit agreement." (Opp. Brief at 4) In *Canaday*, the credit agreement consisted of a single-page application, and a four-page Retail Installment Credit Agreement. 119 F. Supp. 2d at 1261. While the *Canaday* agreement may have looked, sounded, and walked like a credit agreement, the single-page PCA does not.

### B. When Brainstorm Occasionally Provides Financing, a Separate Credit Agreement Must Be Filled Out

Because Plaintiffs cannot show that the debt in this transaction was "initially payable" to Brainstorm, Brainstorm cannot be a "creditor" under TILA. 15 U.S.C. § 1602(f)(2); 12 C.F.R. § 226.2(a)(17)(i)(B) (implementing regulations). Plaintiffs nevertheless argue that Brainstorm met TILA's other requirements for "creditors" such as offering credit in other transactions. This argument could be mis-construed as suggesting that Brainstorm regularly issued credit based solely on its PCA. It did not. As Brainstorm's CEO testified at deposition, if credit could not be arranged through Provident Bank, a few, specially-qualified customers could seek credit directly from Brainstorm. To do this, the customers had to fill out a separate credit application, and enter into a separate credit agreement that was just as long and complicated as Provident Bank's Revolving Credit Agreement. (Supplemental Declaration of Thomas Kuhnle in Support of Defendant BrainstormUSA, LLC's Motion for Partial Summary Judgment ("Kuhnle Suppl. Decl.") ¶ 2 & Ex. A at 124, 161-66)[4] To be clear, no Brainstorm credit agreement was ever submitted by the Plaintiffs.

---

[4] Financing by Brainstorm and Provident Bank are mutually exclusive. (Kuhnle Suppl. Decl. ¶ 2

(Footnote Continued on Next Page.)

### C. Stray References to Credit in the PCA Do Not Transform the Sales Agreement into a Credit Agreement Under TILA

At base, Plaintiffs' argument is that inclusion of the words "creditor," "down payment," and "Approx. 1st Monthly Payment" render the PCA a "credit" agreement. (Opp. Brief at 3-4) These references are not sinister, as suggested by Plaintiffs. Instead, they are helpful to consumers. The PCA refers to Brainstorm both as a "seller" (in the "Notice to Buyer" section) and as a "seller-creditor" (next to Brainstorm's address). This is explained by the fact that the PCA is used both when Provident Bank provides financing, and in those infrequent occasions when Brainstorm issues credit through its own, separate credit agreement. The "down payment" is documented on the PCA, in part to protect the consumer should he or she cancel the transaction under the HSSA and be entitled to a refund. The "Approx. 1st Monthly Payment" (which is conditioned on "credit approval") also benefits consumers because they are informed of their expected monthly payment before committing to the sale.

Plaintiffs also argue that the term "Balance Due" signifies a credit transaction. The very same PCA, however, is used when customers fund their purchase with cash, a money order, checks, or credit cards. Regardless of the method of payment, the customer must pay the "Balance Due." (This is true in most sales transactions.) Plaintiffs go on to argue that the "balance was not immediately due." (Opp. Brief at 2) This is wrong. For the Plaintiffs to complete their purchase, they would have to pay the balance due with cash, a money order, checks, or credit cards, or through credit. The Plaintiffs obtained credit from Provident Bank, which remitted the funds to Brainstorm via a check or wire. (Kuhnle Suppl. Decl. Ex. A at 150) In other words, the balance was "immediately due" and, in fact, paid.

---

(Footnote Continued from Previous Page.)

& Ex. A at 142, 144)

### D. The PCA was Never Consummated as a Credit Agreement

Even if, somehow, the PCA were a credit agreement of some sort (which it is not), it was never consummated as such. TILA's disclosure requirements must be fulfilled "before consummation." 12 C.F.R. § 226.17(b) (implementing regulations) "Consummation" is "the time that a consumer becomes contractually obligated on a credit transaction." 12 C.F.R. § 226.2(a)(13) (implementing regulations).

Here, there is no evidence that any *credit* transaction was consummated between Plaintiffs and Brainstorm. As noted above, Plaintiffs do not contest Mr. Galluccio's testimony that Plaintiffs' credit was not assigned to Brainstorm or otherwise made payable to Brainstorm. (Second Galluccio Decl. ¶ 4) Plaintiffs do not contest Mr. Plum's testimony that "Provident processed the application and granted Mr. Algarate and Ms. Tamayo a revolving line of credit with which . . . Mr. Algarate and Ms. Tamayo purchased the hardware/software package from BrainstormUSA, LLC." (Declaration of James J. Plum in Support of Defendants' Motion to Compel Arbitration ("Plum Decl.") ¶ 4) Moreover, Plaintiffs admit Provident Bank "ultimately provided the financing for the purchase *at issue*." (Opp. Brief at 6) (emphasis added)

Plaintiffs cite two cases for support that the PCA was consummated as a credit agreement. Neither addresses the topic directly. Plaintiffs cite *Zurich General Accident & Liability Assurance Co. v. Industrial Accident Comm.*, 132 Cal. App. 101, 104 (1933), for the proposition that "the outward manifestation or expression of assent to contract is controlling, and the test is an objective one." (Opp. Brief at 7) The objective manifestation or expression of assent in the PCA, however, is of a sale, not the issuance of credit. Another case cited by Plaintiffs, *Greve v. Taft Realty Co.*, 101 Cal. App. 343, 351-52 (1929), suggests that the assent is to a contract's "terms." The PCA's "terms" do not address the conditions precedent to, or the meaning of, "consummation." (More importantly, the terms do not provide for Plaintiffs to "incur debt and defer its payment" as required by TILA.)

### E. Plaintiffs' Interpretation of Brainstorm's Preferred Customer Agreement Would Dramatically Change the Credit Landscape

Plaintiffs' argument that the PCA somehow binds consumers to a lengthy credit engagement would have many perverse implications. If a simple sales agreement were somehow construed to be a binding credit agreement, many lending institutions would be able to escape TILA liability altogether. Here, for example, Brainstorm would be *solely* liable under TILA under Plaintiffs' theory, since the purported debt evidenced by the PCA would be "initially payable" to Brainstorm. 12 C.F.R. Pt. 226, Supp. I, § 226.2(a)(17)(i)(1) (Official Staff Commentary on Regulation Z).[5] If Plaintiffs are right (they are not), Provident Bank would not face any TILA claim since the credit transaction it entered with Plaintiffs occurred, according to the Opposition Brief, after the alleged "credit" transaction with Brainstorm. (Opp. Brief at 6)

## III. PLAINTIFFS CONCEDE JUDGMENT SHOULD BE ENTERED UNDER THE SPANISH LANGUAGE CONTRACT ACT

As set forth in Sections III.C and IV.C of its Opening Brief, the Spanish Language Contract Act ("SLCA"), California Civil Code section 1632, provides as its sole remedy rescission of the contract. Shortly after being contacted by Plaintiffs, and months *before* this action was filed, Brainstorm agreed to rescind Plaintiffs' contract and refunded all amounts owed. Plaintiffs thus do not have standing to litigate this claim against Brainstorm.

In their Opposition Brief, Plaintiffs agree they "do not contest Brainstorm's attempt [to] summarily adjudicate this cause of action." (Opposition Brief at 13) Plaintiffs nonetheless argue that a portion of the refund was received after the action was filed. That portion, however, reflected amounts sent by Provident Bank, not amounts owed by Brainstorm. Plaintiffs' counsel stated on the record:

---

[5] As noted by Plaintiffs, where credit is initially issued, and then assigned to another party, only the initial issuer is the "creditor" under TILA. 12 C.F.R. Pt. 226, Supp. I, § 226(a)(17)(i)(2) (Official Staff Commentary).

> "[T]here's two separate sets of payments, one to [sic] Brainstorm and one to Provident.  I believe [Cynthia Tamayo] testified she got all the money back she paid to Brainstorm, and I'll stipulate to that. . . .  I'll stipulate Provident tendered a check to her for approximately $300, which was never cashed because it was sent after the case – the lawsuit was filed."

(Declaration of Thomas Kuhnle in Support of Motion for Partial Summary Judgment Ex. A at 72)  The amounts owed by the Provident Bank, if any, are irrelevant to Plaintiffs' claim against Brainstorm under the SLCA.  Because Brainstorm rescinded the contract and made a full refund *months before* this action was filed, Plaintiffs have never had standing to litigate this claim against Brainstorm.

## IV. CONCLUSION

For the reasons set forth above, summary judgment should be entered in favor of Brainstorm on:  1) Plaintiffs' third cause of action made under TILA; 2) Plaintiffs' fourth cause of action under California's Unfair Practices Act; and 3) Plaintiffs' sixth cause of action under the California Spanish Language Contract Act.

BINGHAM McCUTCHEN LLP

DATED:  May 12, 2004

By: s/Thomas E. Kuhnle
Thomas E. Kuhnle
Attorneys for Defendant
BRAINSTORMUSA, LLC