Apple Inc. v. Psystar Corporation Doc. 1149

CHRISTINA GONZAGA (CSBN 221187)
LAW OFFICES OF JAMES S. KNOPF
1840 Gateway Drive, Suite 200, San Mateo, CA 94404
Telephone: (650) 627-9595
Facsimile: (888) 715-9583

Attorney for Defendants
VEDATECH INTERNATIONAL INC.,
VEDATECH INC. and VEDATECH, K.K.

MANI SUBRAMANIAN (PRO PER)
c/o LAW OFFICES OF JAMES S. KNOPF
1840 Gateway Drive, Suite 200, San Mateo, CA 94404
Telephone: (650) 627-9595
Facsimile: (888) 715-9583

**UNITED STATES DISTRICT COURT**
FOR THE NORTHERN DISTRICT OF CALIFORNIA
**(San Francisco Division)**

| | |
|---|---|
| QAD INC., a Delaware corporation, and QAD JAPAN K.K., a Japanese corporation,<br><br>Plaintiffs,<br>v.<br><br>MANI SUBRAMANIAN, an individual, VEDATECH INCORPORATED, a Washington corporation, and DOES 1 through 50, inclusive<br>Defendants | Case No. **C-04-01806 PJH**<br><br>**JOINT OPPOSITION**<br>**BY ALL OF THE DEFENDANTS**<br><br>MOTION FOR AWARD OF COSTS AND FEES BY QAD<br><br>**Hearing Date: July 7, 2004** |
| **Consolidated with:**<br><br>VEDATECH K.K., a Japanese corporation; MANI SUBRAMANIAN, an individual,<br><br>Plaintiffs and Counterdefendants<br><br>v.<br><br>QAD INC., a Delaware Corporation; QAD Japan K.K., a Japanese corporation, QAD Japan Inc., a Delaware Corporation; ARTHUR ANDERSEN LLP a limited partnership located in California JOHN DOORDAN, an individual; LAI FOON LEE, an individual; NOMURA RESEARCH HONG KONG Limited, a Hong Kong Company, NOMURA RESEARCH LTD, a Japanese corporation, and ISAO Takatori, an individual<br><br>Defendants and counterclaimants | |



Dockets.Justia.com

## OPPOSITION TO QAD'S MOTION FOR SANCTIONS

**QAD's motion to remand and the question of sanctions**

QAD's motion to remand is based on a false premise: that removing parties removed this action in violation of the prohibitions of 28 U.S.C. §1447(c). Removal jurisdiction itself is an arcane area of law. Preemption and Complete Preemption are topics that are even more difficult. QAD admits as much in its memorandum in support of sanctions in Docket #11, p.9, lines 4-5. Of course, QAD attempts to rely upon this to punish Vedatech's legal representatives, not noting the irony that it weakens their own argument for sanctions in the first place.

**QAD's multi-year effort to weaken legal representation for Vedatech**

QAD has continuously tried to threaten attorneys for Vedatech Parties with imminent motions for Rule 11 violations, all at the drop of a hat. Mr. Connell, attorney for QAD has been "warning" Vedatech's junior attorneys with all kinds of dire consequences for the simple act of defending Vedatech Parties. Mr Roland Desilets, in-house counsel for QAD has conducted a multi-year effort to compromise every major law firm that has tried to represent Vedatech Parties, including Morrison and Foerster. [1]

**Reasonable interpretation of the Order of April 29, 2004**

It is clear that the Order of April 29, 2004 is ambiguous and permits multiple interpretations. Vedatech's motivation for removal is very simple: the recent information from QAD also for the first time provides enough information for Vedatech to file copyright infringement claims against QAD. Vedatech parties do not wish to have multiple proceedings in State Court and the Federal District Court.

---

[1] Mr Desilets wrote a strange letter to Morrison and Foerster in 1999, trying to conflict them out for representing a bank ("Union Bank"?) that was adverse to QAD in a different action.

**Other reasons given by QAD for an award of Costs and Fees**

The various other reasons given by QAD can also be disposed of quickly. In addition, Vedatech Parties will lose their rights to remove to federal court, forever, if they do not remove within the 30-day window of learning about evidence that permits removal. Vedatech's legal advisors will be guilty of malpractice if they do not act in time to effect such removal properly, given the goals of resolving all disputes between the parties in one jurisdiction and under one tribunal. If this case is remanded, Vedatech Parties will have to file a new original action for copyright infringement against QAD – involving the same set of issues, same set of witnesses, same scope of discovery, etc. etc. It would be an enormous waste of resources for both the Court systems and the litigants to duplicate such effort. The only constraint now is the rather unusual restrictions on review for remand orders. While a debate is raging over reforms of the removal jurisdiction etc., Vedatech Parties are not acting out of bad faith or any desire to evade the rules regarding removal. On the other hand, Vedatech parties do not wish to be shut out of a federal jurisdiction for all the reasons mentioned above. If they do have the right to such a jurisdiction, and especially if they will lose the right by not acting promptly, then they wish to act in good faith to avail themselves of such an avenue.

**Delay?**

This is the epitome of hypocrisy. A casual scan of QAD's interrogatory responses (Exhibit E, Docket #25) should convince the Court as to the highly "professional" nature of Mr. Connell's stonewalling and QAD's multi-year effort to drag this case out. QAD is the plaintiff here – they haled Vedatech into Court in January 1998. Yet they refuse to this date to provide the name of their CGL (Commercial General Liability) insurer and their policy information. They claim production of email archives is oppressive, although Magistrate Judge Patricia Trumbull's order in Sep 1999 compelled them to do so (the

case was remanded before they could be sanctioned for that). It took them years to admit that the "intellectual property" at issue had to do with "copyrights".

**Trial Date / Summary Judgment etc.**

This is another red herring. On March 25, 2004 QAD, in a collusive arrangement with St.Paul, Vedatech's insurer, claims to have settled all of its claims against Vedatech. This is a major change that would have resulted in the vacation of the trial date in any event. Even otherwise, given the state of the discovery and QAD's refusal to provide basic information, the rush to trial would be infinitely prejudicial to Vedatech Parties. QAD's attempts to close the books before the books could be opened, and the sunshine of discovery might light up a few pages, is convenient for them after dragging Vedatech parties through litigation for so many years.

Justice will not be served if QAD is permitted to proceed in this manner. These cannot be valid reasons in support of QAD's arguments for fees.

**Case Law**

QAD and its counsel, Mr. Connell try to rely upon extreme examples, such as the *Peabody* case etc. These have little relevance to the facts of this case. QAD accuses Vedatech parties of bad faith, simply for exercising their rights to a federal jurisdiction. If the courts ultimately decide that removal jurisdiction would be denied, then that is one matter. But to shut out proper avenues for seeking federal jurisdiction would have a chilling effect on smaller litigants who seek consolidation, if the rules so permit, of their federal claims with state law claims that they are currently defending.

The line of cases that QAD relies upon are cases where the removing parties were simply re-removing in an attempt to have their prior remands reconsidered, even though the remand orders were non-reviewable final orders under 28 U.S.C. §1447(c).

Removing parties have demonstrated adequately in their opposition to the remand that reasonable people may disagree on the interpretation of the prior remand order, that the basis of the removal was new evidence, that Interpretation-B does permit review of the remand order since it is outside of the scope of 28 U.S.C. § 1447(c), and that QAD has waived all procedural defects in the removal process including the defect of removing after 30-days from when federal jurisdiction became apparent through the receipt of evidence of "other paper".

**CONCLUSION**

Under these circumstances, there is no evidence of bad faith, there are good reasons to support the removal, and there is no real prejudice to QAD. QAD apparently cannot wait for the day that it can complete its transaction with St.Paul, Vedatech's insurers, to drop all of the claims against Vedatech Parties for a handsome sum of money by an agreement reached secretly between St.Paul and QAD on March 25, 2004. This "agreement" in turn saves St.Paul a handsome sum of money that might go to defending QAD's fabricated claims.[2] The discovery of documentary and other evidence from QAD has not progressed much further than 1999-2000 when Magistrate Judge Trumbull signed an order compelling discovery from QAD.[3] To argue that QAD is missing a chance for an early trial date would be ingenuous if not worse. Vedatech defendants have been haled into Court, harassed for the past several years, denied discovery, and subjected to constant and repeated personal attacks from Mr. Connell, attorney for QAD. QAD has "settled" with Vedatech's insurer, St.Paul, but refuses to even provide the name of its

---

[2] The reasons for Vedatech's reluctance to embrace this "agreement" are set out in C-04-01249 VRW.

[3] QAD has dumped, reluctantly, various documents it has carefully screened but refused to provide a single document from its email archives, arguing that it would cost too much.

own CGL carrier or copies of insurance policies. If there are to be any sanctions, it should be against the QAD parties.

Vedatech parties apologize to the Court for having to raise such issues, but the tone and thrust of QAD's motion papers do not leave much choice. It is respectfully submitted that there is no justification for an award of costs and fees to the QAD parties.

**RESPECTFULLY SUBMITTED**

Dated: June 16, 2004

LAW OFFICES OF JAMES S. KNOPF

By ______//s//______
CHRISTINA GONZAGA
Attorneys for Defendants
VEDATECH INTERNATIONAL INC.,
VEDATECH INC. AND VEDATECH K.K.

Dated: June 16, 2004

MANI SUBRAMANIAN (PRO PER)

By ______//s//______
MANI S. SUBRAMANIAN
PRO SE DEFENDANT