Apple Inc. v. Psystar Corporation Doc. 1177

Matthew D. Powers (Bar No. 104795)
Douglas E. Lumish (Bar No. 183163)
Matthew M. Sarboraria (Bar No. 211600)
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065-1175
(650) 802-3000 – telephone
(650) 802-3100 – fax

Dorian E. Daley (Bar No. 129049)
Rebecca Perez-Platt (Bar No. 194930)
ORACLE CORPORATION
500 Oracle Parkway
Redwood Shores, CA 94065
Telephone: (650) 506-5200
Facsimile: (650) 506-7114

Attorneys for Plaintiff
Oracle International Corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ORACLE INTERNATIONAL CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>MANGOSOFT, INC., MANGOSOFT CORPORATION, and BUILT RIGHT NETWORKS, LLC,<br><br>Defendants. | **Case No. C-03-02267 VRW**<br><br>**PLAINTIFF'S CLAIM CONSTRUCTION REPLY BRIEF**<br><br>Date: Sept. 7, 2004<br>Time: 2:00 P.M.<br>Courtroom 6, 17th Floor<br>Honorable Vaughn R. Walker |



Dockets.Justia.com

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..... 1
II. DISPUTED CONSTRUCTIONS ..... 2
A. "Server" ..... 2
B. "Client" ..... 4
C. "Web Browsers" ..... 5
D. "Web Server" ..... 6
E. "A Request From A User" ..... 7
F. "Particular Set Of Information" ..... 8
G. "Server-Side" ..... 10
VII. CONCLUSION ..... 11

# I.

# INTRODUCTION

Through the Patent Local Rules meet and confer process, the parties have reached agreed constructions for numerous claim terms in the '790 patent and have narrowed significantly their disputes for several others. As set forth in Oracle's opening brief, seven claim terms remain at issue.

The parties' most significant dispute centers around the term "a particular set of information," which appears in ten claims, including every independent claim. In particular, in a litigation-driven attempt to limit <u>all</u> claims of the '790 patent to web-based implementations, Mangosoft argues that the "particular set of information" disclosed in the claims must be "a web page," even though 47 of the patent's 49 claims contain no reference whatsoever to web pages or any aspect of the web, and even though the specification explicitly references non-web-based implementations, including local area networks (LANs). As discussed in detail in Oracle's opening brief and in section II.F below, Mangosoft's strained attempt to read a "web page" limitation into all of the claims through its "construction" of this facially clear term does not bear scrutiny and should be rejected.

For four other terms ("server," "client," "web browser," and "web server"), the parties offer competing constructions that are, for the most part, substantively similar. The remaining disputes for these terms focus primarily on issues of precision in language and potential ambiguities and jury confusion stemming from Mangosoft's proposed framing of its definitions. As explained below, through its briefing and the testimony of its expert, Mangosoft has clarified that much of the ambiguous language in its proposed constructions means what Oracle's proposed constructions state explicitly. A jury, however, will not have the benefit of Mangosoft's belated explanations and clarifications.

Finally, the remaining two terms ("a request from a user" and "server-side") are also clear on their face and do not require construction. Significantly, in its opposition brief Mangosoft offers no meaningful explanation of how its proposed constructions would add any further clarity to either of these terms. In fact, Mangosoft's constructions raise more questions

than they answer, ultimately requiring the trier of fact to "construe the constructions" prior to performing any meaningful infringement or validity analysis. Accordingly, the Court should decline to construe these terms.

## II.

## DISPUTED CONSTRUCTIONS

### A. "Server" (Claims 1, 2, 6, 18, 24, 25, 29, 41, 47, and 48)

| Term: | Oracle's Construction: | Mangosoft's Construction: |
|---|---|---|
| "server" | "hardware and software that provide resources to a client" | "*a computer* that provides *network resources* to a client" |

As Oracle explained in detail in its opening brief, servers were well known in the computer field in 1998, and were understood to be computers running administrative software that controls access to the network and its resources. See Oracle Opening Brf. at 6:15-7:23. Significantly, in its opposition brief Mangosoft does not dispute that the term "server" is used in the claims of the '790 patent in a manner consistent with this ordinary meaning. Nor does Mangosoft dispute that a server must utilize programming instructions of some kind to perform its normal data storage and retrieval functions.

Mangosoft's only criticism of Oracle's proposed construction is based on an improper, out-of-context reading of a single passage in the specification. In particular, Mangosoft argues that the characterization of a server as "hardware and software" is inconsistent with the following passage:

> In alternative embodiments, hard-wired circuitry may be used in place of or in combination with software instructions to implement the invention. Thus, embodiments of the invention are not limited to any specific combination of hardware circuitry and software.

'790 patent at 3:49-54.

Mangosoft's reliance on this passage fails for two independent reasons. First, the above language refers to instructions for performing the claimed information delivery interrupt, and not to servers (which, of course, predated the claimed invention by decades). This is clear

when the passage is read in the context of the surrounding disclosure. See, e.g., '790 patent at 3:39-49 (describing "the invention"). Second, even if a server could be implemented exclusively in "hard-wired circuitry," there is no dispute that such a server would still require instructions to handle data management functions. The fact that such software instructions are "hard-wired" (e.g., burned into a ROM chip and often referred to as "firmware") does not change this.

Turning to Mangosoft's proposed construction, while both Mangosoft and its expert have conceded that the reference to "a computer" includes both hardware and software,[1] and that the reference to "network resources" refers to any resources provided by a server, the inclusion of this ambiguous language in a construction adopted by the Court could confuse jurors who do not have the benefit of Mangosoft's *post hoc* clarifications.

Moreover, a principal deficiency in Mangosoft's proposed construction is that its reference to "**a** computer" improperly suggests that the claimed server cannot comprise multiple physical devices. As explained in detail in Oracle's opening brief, the devices used to perform server functions can take many forms and, in a large enterprises in particular, commonly consist of many individual pieces of hardware operating together and appearing to a client as a single unit—a fact readily conceded by Mangosoft's expert in deposition. See Oracle Opening Brf. at 8:9-18. Tellingly, Mangosoft does not address this aspect of its proposed construction at all in its opposition brief. Oracle's construction, in referring generally to a server as "hardware and software" for providing "resources" to clients, avoids the ambiguities of Mangosoft's construction and should be adopted.

---

[1] See Sarboraria Decl. (filed with Oracle's opening brief), Exh. F (Gray Rebuttal Rpt.) at 2:15-18 ("In my opinion, the term 'a computer' typically refers to a combination of both hardware and software (and Oracle's expert appears to agree with this formulation in several places in his report). The specification refers to 'a computer' frequently and that is clearly the sense in which the specification uses the term."); Mangosoft Opp. at 7:10-11 ("Mangosoft agrees with Oracle that a server or other computer typically includes both hardware and software.").

### B. "Client" (Claims 6, 18, 29, 41, 47, and 48)

| Term: | Oracle's Construction: | Mangosoft's Construction: |
|---|---|---|
| "client" | "hardware and software that access resources provided by a server" | "*a computer* that accesses *network resources* provided by a server" |

As Oracle explained in its opening brief, the term "client" was well known in the computer field in 1998 to refer to software (i.e., application programs or processes) executing on hardware to request resources provided by a server, and is used throughout the claims and specification of the '790 patent consistent with this ordinary meaning. See Oracle Opening Brf. at 11:12-12:7.

Again, there appears to be little or no substantive dispute regarding the meaning of the term "client."[2] As it does for the term "server," Mangosoft acknowledges that the reference in its construction to "a computer" encompasses both hardware and software, and the reference to "network resources" does not limit the type or format of resources provided by the server.[3] However, because jurors may not have the benefit of Mangosoft's belated explanations and clarifications, adoption of Mangosoft's proposed language poses a significant risk of unnecessary confusion (e.g., the jury would need to determine whether a particular resource provided by the accused system is a "network resource," when Mangosoft has admitted that any resource provided by a server to a client is a "network resource"). Oracle's construction avoids this unnecessary ambiguity and should be adopted.

---

[2] Again, Mangosoft's only criticism of Oracle's proposed construction is based on the passage in the specification quoted above regarding implementing "the invention" in hard-wired circuitry. Mangosoft's reliance on this disclosure fails for the same reasons discussed above for the term "server."

[3] See Sarboraria Decl., Exh. F (Gray Rebuttal Rpt.) at 2:15-18, 3:5-7 ("In my opinion, the term 'a computer' typically refers to a combination of both hardware and software (and Oracle's expert appears to agree with this formulation in several places in his report). The specification refers to 'a computer' frequently and that is clearly the sense in which the specification uses the term."); Exh. G (Gray Depo.) at 112:21-114:12.

### C. "Web Browsers" (Claim 48)

| Term: | Oracle's Construction: | Mangosoft's Construction: |
| --- | --- | --- |
| "web browsers" | "programs used to request, decode, and display information sent over the World Wide Web" | "client applications that enable users to request, decode, and display *HTML documents*" |

As discussed in Oracle's opening brief, web browsers were well known in 1998. The common understanding of "web browsers" is reflected in the Background of the Invention section of the '790 patent itself, which notes explicitly that "[u]sers of the World Wide Web use a client program, referred to as a browser, to request, decode and display information from listeners." '790 patent at 1:21-31[4] (emphasis supplied). Oracle's proposed construction is derived from this disclosure in the specification.

In its opposition brief, Mangosoft does not challenge the substance of Oracle's construction, arguing only that a web browser must be capable of accessing HTML documents.[5] This unremarkable proposition is not in dispute. As explained in Oracle's opening brief, however, the problem with Mangosoft's construction is that it is misleading and incomplete to the extent that it refers only to accessing "HTML documents." While Mangosoft and its expert have conceded that web browsers are used to access non-HTML data (e.g., text and graphics files), the explicit reference in Mangosoft's construction only to HTML documents improperly suggests that the "information" requested by a user of the claimed invention must be an HTML document. Oracle's construction, in referring more broadly to programs used to access "information" on the World Wide Web, more clearly and accurately reflects the ordinary meaning of "web browsers" and is consistent with the explicit disclosure in the specification.

---

[4] As noted by Oracle's expert, one of ordinary skill in the art would have understood that a "listener" in this context refers to a web server waiting ("listening") for client requests. Kaluzniacki Rpt. at 6:22-24.

[5] Mangosoft also criticizes the reference in Oracle's construction to information "sent over the World Wide Web," claiming that the web is limited to the collection of "pages" that can be accessed. This is incorrect. The World Wide Web ("the web") is commonly understood to refer to the network (i.e., "web") of communication paths that connect computers that access web pages and other types of information, and not just the collection of information that can be accessed.

D. **"Web Server" (Claim 48)**

| Term: | Oracle's Construction: | Mangosoft's Construction: |
|---|---|---|
| "web server" | "any processor which transmits data objects, applications, or files, to a requestor via Web protocols" | "a server that transmits requested information to a client *using the Hypertext Transfer Protocol (HTTP)*" |

Like web browsers, web servers also were well known in the computer field in 1998. As explained in Oracle's opening brief, web servers were understood to be servers that provide information to requestors via Web protocols, and the term is used in claim 48 of the '790 patent in a manner consistent with this common understanding. See Oracle Opening Brf. at 16:10-27.

Again, Mangosoft does not challenge the substance of Oracle's proposed construction, but argues only that a web server must be capable of transmitting data via Hypertext Transfer Protocol (HTTP). This point is not in dispute. However, like Mangosoft's construction for the term "web browser" discussed above, the problem with Mangosoft's construction for "web server" is that it is misleading and incomplete to the extent that it refers only to transmitting information via HTTP. While Mangosoft and its expert have conceded that web servers can also transmit data via other Web protocols (e.g., FTP), the explicit reference in Mangosoft's construction only to HTTP suggests improperly that the data sent from the claimed server to a user must be sent via HTTP—a position that both parties and their respective experts reject. See Oracle Opening Brf. at 17:12-18:9 (citing Mangosoft's definition of "web server" in one of its own prior art patents[6] and its expert's admission that web servers can use protocols other than

[6] Oddly, in its opposition brief Mangosoft questions Oracle's citation to Mangosoft's own definition of "web server" in a prior art patent (U.S. Patent No. 5,918,229). See Mangosoft Opp. at 13:9-17. It is well-settled, however, that usage of a disputed term in the prior art is relevant to understanding the ordinary meaning of the term. See, e.g., Arthur A. Collins, Inc. v. Northern Telecom Ltd., 216 F.3d 1042, 1044-45 (Fed. Cir. 2000) ("Even when prior art is not cited in the written description or prosecution history, it may assist in ascertaining the meaning of a term to a person skilled in the art."). Of course, Mangosoft's own usage of the term "web server" in the prior art is certainly probative of the term's meaning. Indeed, Mangosoft does not argue that its own definition of "web server" in its prior art '229 patent is specialized or in any way inconsistent with the ordinary meaning of the term, nor does Mangosoft argue that the term is used in the '790

HTTP). Oracle's construction, in referring to processors that transmit data "via Web protocols" more clearly and accurately reflects the ordinary meaning of "web server," including the undisputed fact that such servers are not limited to using HTTP.

### E. "A Request From A User" (Claims 1 and 24)

| Term: | Oracle's Position: | Mangosoft's Construction: |
|---|---|---|
| "a request from a user" | no construction necessary | "a request *initiated by a person using a computer*" |

As Oracle explained in its opening brief, the claim language "a request from a user" is clear on its face and does not need to be construed by the Court. The "request" in the context of the claims is clear: It is simply a request by a user of the claimed system for particular information stored on the server. See "790 patent at claim 1, 16:52-53 ("a server receiving *a request from a user for a particular set of information*"); claim 24, 18:56-58 ("in response to *a request from a user for a particular set of information*, a server collecting supplemental information about said user") (emphasis supplied).

Mangosoft does not address this term at all in its opposition brief. It is not clear, however, whether Mangosoft has dropped its proposed construction ("a request *initiated by a person using a computer*"). See Sarboraria Decl., Exh. A (Patent L.R. 4-3 Joint Claim Chart) at 1 (emphasis supplied). In any event, as Oracle explained in detail in its opening brief, Mangosoft's proposed construction only adds ambiguity to otherwise clear language because it would require the trier of fact to determine what it means to "initiate" a request, and then to determine who performed such initiation. See Oracle Opening Brf. at 19:8-18. Again, Mangosoft does not even attempt to address this ambiguity.

Additionally, as Oracle has also explained, Mangosoft's proposed construction is unsupported by the '790 patent itself or its file history. There is no disclosure in the patent or its file history that states or suggests that the claimed "request from a user" is limited to requests

---

patent in a manner inconsistent with its ordinary meaning.

"initiated by a person using a computer," or that the "user" of the claimed system who requests information from a server must be the same person who submits such a request through a computer. Indeed, the patent does not require the "user" to be a person at all—the claimed "user" could be another application or process requesting information stored on a server. Again, Mangosoft fails to address this lack of support for its proposed construction. The Court should reject Mangosoft's improper attempt to add limitations to the claims.

### F. "Particular Set Of Information" (Claims 1, 2, 6, 18, 24, 25, 29, 41, 47, and 48)

| Term: | Oracle's Position: | Mangosoft's Construction: |
|---|---|---|
| "particular set of information" | no construction necessary | "a web page" |

In its most strained and overreaching claim construction position, Mangosoft attempts to limit all asserted claims of the '790 patent only to web-based applications by arguing that the claim term "particular set of information" should be construed to mean only "web pages." Mangosoft's proposed construction is a legally improper and litigation-driven attempt to read a preferred embodiment of the invention into all of the 49 claims, when only two of the claims (claims 48 and 49) are actually so limited. As Oracle explained in detail in its opening brief, Mangosoft's construction fails for multiple independent reasons:

- There is no reference at all to "web pages" or the web (including web servers, web browsers, web protocols, the World Wide Web, or the Internet) anywhere in claims 1 through 47.
- Dependent claim 48 adds the limitation that the "particular set of information" requested by the user is a "web page." Under the doctrine of claim differentiation there is a presumption that the other claims which do not include this express limitation are not limited by it. See, e.g., Intermatic, Inc. v. Lamson & Sessions Co., 273 F.3d 1355, 1364 (Fed. Cir. 2001).
- The specification explicitly discloses non-web-based applications of the claimed

invention, including implementations on local area networks (LANs), and emphasizes that the described web-based implementation is only one "*exemplary*" embodiment of the claimed invention. See, e.g., '790 patent at 4:25-39; 7:15-18.

- Even if the claimed invention is implemented in a "web environment" (e.g., data is transmitted by a web server to a web browser over the Internet), the "particular set of information" requested by a user would not necessarily be a web page (e.g., could be a simple text or graphics file accessed over the Internet through a web browser).

See Oracle Opening Brf. at 19:27-23:14 (citing, *inter alia*, the admission of Mangosoft's own expert that web browsers can be used to access data other than web pages).

In its opposition brief, Mangosoft concedes, as it must, that the claim language "a particular set of information" is very broad. See Mangosoft Opp. at 13:23-24. Not surprisingly, Mangosoft does not dispute that claims 1 through 47 contain no reference to "web pages" or the web at all, and Mangosoft points to no other language in the claims and no amendments, arguments to the Patent Office, or other disclosure in the prosecution history that suggests in any way that the "information" requested by a user in the context of the claimed invention is limited to any particular type of information.

Instead, Mangosoft attempts to support is restrictive construction based on the description of web-based embodiments in the specification. Mangosoft's argument does not bear scrutiny. Significantly, it is based on an incomplete and improper reading of the specification itself, ignoring the explicit disclosure in the patent of non-web-based networks (e.g., local area networks), and the fact that the specification makes clear that even in the context of the World Wide Web, the "requested information" will "typically" (but not always) be a web page. See Oracle Opening Brf. at 22:3-23:6 (citing '790 patent at 2:6-14, 4:25-39, 7:15-18). This clear disclosure in the patent undermines completely Mangosoft's suggestion that a reading of the term "particular set of information" to include information other than just web pages would expand the claims beyond the description of the invention in the specification. There is simply no basis for limiting claims 1 through 47 to transmission of "web pages."

### G. "Server-Side" (Claims 1, 3, 6, 24, 26, 29, and 47)

| Term: | Oracle's Position: | Mangosoft's Construction: |
|---|---|---|
| "server-side" | no construction necessary | "occurring on the server side of a network connection extending between a client and a server" |

As explained in Oracle's opening brief, the term "server-side" is clear in the context of the plain language of the claims and does not require construction by the Court. In claims 1, 6, 24, 29, and 47, the term "server-side" describes the location of a storage unit from which supplemental information about users is retrieved, and in claims 3 and 26, the term describes the location of authentication information (e.g., usernames, passwords, etc.) about users. See, e.g., '790 patent at claim 1, 16:57-59 ("said server collecting supplemental information about said user from *a server-side storage unit*"); claim 3, 17:20-23 ("the step of determining whether said user is authorized includes comparing said authentication information supplied by said user with *server-side authentication information*") (emphasis supplied). It is clear that the term "server-side" is used simply to describe generally the location of the claimed storage devices and authentication information (i.e., on the server side, as distinguished from the requestor or client side).

In its opposition brief, Mangosoft offers no support for its position that this language is ambiguous in the context of the claims, nor does it offer any explanation for how its proposed construction—"occurring on the server side of a network connection extending between a client and a server"—adds any further clarity to the term. Indeed, this proposed "construction" only adds ambiguity to this clear claim language. As Oracle noted in its opening brief, the term "server-side" refers to a location, not to an occurrence. While Mangosoft states in its opposition brief that it intended its phrase "occurring on the server side" to refer to a location, see Mangosoft Opp. at 15:11, its proposed language remains unclear.

Moreover, as Oracle explained in its opening brief, the reference in Mangosoft's construction to "a network connection extending between a client and a server" also adds

ambiguity and is unsupported by the claim language. Claims 1, 3, 24, and 26, for example, contain no reference to "clients," "networks," or "network connections." The Court should reject Mangosoft's improper attempt to read these additional requirements into the claims. The term is clear on its face and requires no further construction.

## III.

## CONCLUSION

For the foregoing reasons and the reasons set forth in Oracle's Opening Claim Construction Brief, Oracle respectfully requests that this Court enter an order adopting its proposed constructions set forth above and rejecting Mangosoft's unsupported and unnecessary constructions for claim terms that are clear.

Respectfully submitted,

Dated: June 22, 2004

Matthew D. Powers (Bar No. 104795)
Douglas E. Lumish (Bar No. 183163)
Matthew M. Sarboraria (Bar No. 211600)
WEIL, GOTSHAL & MANGES LLP

By: /s/ Matthew M. Sarboraria
Matthew M. Sarboraria
Attorneys for Plaintiff
Oracle International Corporation