Apple Inc. v. Psystar Corporation

Doc. 1214 Att. 2

8022020431

THE

# General Accident

ASSURANCE COMPANY
OF CANADA

HEAD OFFICE - TORONTO

**MARSH & McLENNAN**

**INSURANCE**

Expires 1960

6/30/57 –
6/30/60

Exhibit C
Page 1

Dockets.Justia.com

8022020429

CERTIFIED
POLICY NO.

L.90-4672

ISSUED TO

THE FLINTKOTE COMPANY
OF CANADA LIMITED AND/OR
THE FLINTKOTE MINES
LIMITED
NEW YORK CITY, NEW YORK
U.S.A.

DATE OF EXPIRY:

JUNE 30th, 1960

AGENCY

MARSH & McLENNAN LIMITED
44 KING STREET W.,
TORONTO: ONTARIO.

Exhibit C
Page 2

# DECLARATIONS

Item 1. NAME OF INSURED: THE FLINTKOTE COMPANY OF CANADA LIMITED and/or THE FLINTKOTE MINES LIMITED and/or Subsidiary or affiliated corporation or corporations now existing or hereafter created as their respective interests may appear.

ADDRESS: 30 Rockefeller Plaza, New York City, New York, U.S.A.

Item 2. BUSINESS OF THE INSURED: Consists principally of asbestos mining and milling, wood preserving, manufacturing of road surfacing and waterproofing materials, asphalt and asbestos products.

Item 3. No Insurer has cancelled any similar insurance issued to the Insured except as herein stated: No

Item 4. Estimated Advance Premium: $3,366.94

Item 5. The Minimum Annual Premium shall be: $40.50

Item 6. Policy Period: From 12.01 A.M. June 30th, 1957 to 12.01 A.M. June 30th, 1960, standard time at the address of the Insured as stated herein.

Item 7. It is agreed that $977.51 (Contractual) of the Estimated Advance Premium is not subject to adjustment.

It is further agreed that $2,389.43 of the Estimated Advance Premium is subject to adjustment annually at the following rates:

| | | | | |
|---|---|---|---|---|
| Est. 3 year payroll | 3,565,000.00 | @ $.04965 per $100.00 - | 3 year Prem. | 1,770.00 |
| Est. 3 year tank cars | 120 | @ 2.38 | 3 year Prem. | 285.60 |
| Est. 3 year sublet | 1,330,000.00 | @ .0251 | 3 year Prem. | 333.83 |

AGENT: MARSH & McLENNAN LTD. ADDRESS: 44 KING ST.W. TORONTO: ONTARIO.

THE

# GENERAL ACCIDENT

## ASSURANCE COMPANY

OF CANADA

HEAD OFFICE - TORONTO

(Herein called the Company)

Replacing
Policy No.....NEW............

CERTIFIED
POLICY NO. L 90-4672

AGREES with the Insured, named in the Declarations made a part hereof, in consideration of the payment of the premium and in reliance upon the statements in the Declarations and subject to the exclusions and conditions of this policy:

INSURING AGREEMENTS

I. Coverage A - Bodily Injury Liability

To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay by reason of liability for damages, including damages for care and loss of services, because of bodily injury, including death at any time resulting therefrom, sustained by any person or persons.

Coverage B - Property Damage Liability

To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay by reason of liability for damages because of injury to or destruction of property, including the loss of use thereof.

II. Assumed Liability:

Coverage A and Coverage B shall include coverage for liability assumed by the Insured under any contract or agreement in force at any time during the policy period.

III. Additional Insured

This policy shall cover the following as Additional Insureds in respect of liability arising from the risk of the named Insured:

(1) Directors and executive officers of the Insured;
(2) Persons, firms or corporations financially controlling or controlled by the Insured;
(3) Agents of the Insured having care, custody or control of the property or operations of the Insured.

IV. Defense, Settlement, Supplementary Payments

It is further agreed that the Company shall:

(a) defend in the name and on behalf of the Insured any suit against the Insured alleging such injury or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the Company shall have the right to make such investigation, negotiation and settlement of any claim or suit as may be deemed expedient by the Company.

(b) pay all premiums on bonds to release attachments for an amount not in excess of the applicable limit of liability of this policy, all premiums on appeal bonds required in any such defended suit, all costs taxed against the Insured in any such suit, all expenses incurred by the Company, all interest accruing after entry of judgment until the Company has paid, tendered, or deposited in court such part of such judgment as does not exceed the limit of the Company's liability thereon, and any expense incurred by the Insured, in the event of bodily injury, for such immediate medical and surgical relief to others as shall be imperative at the time of occurrence.

The Company agrees to pay the expenses incurred under divisions (a) and (b) of this section in addition to the applicable limit of liability of this policy.

V. Assault

Bodily injury or death alleged to have been caused by an assault shall be deemed the result of an occurrence within the meaning of this policy, provided that the assault was not committed at the specific instance or direction of the Insured.

VI. Cross Liability Clause

It is understood and agreed that the coverage provided by this policy shall apply with respect to any action brought against any one Insured by any other Insured or by any employee of such other Insured.

VII. Territory

This policy shall apply to occurrences or accidents occurring in the Dominion of Canada or the United States of America, its territories or possessions.

## DEFINITIONS

1. "BODILY INJURY" shall be construed to include sickness, disease and mental anguish.

2. When used as a basis for premium computation:

(a) "PREMISES" shall mean each 100 square feet of floor area and each linear foot of street frontage of buildings and grounds owned or operated;

(b) "COSTS" shall mean total cost of work performed for the Insured by independent contractors (including cost of labour and material used in the execution of such work);

(c) "RECEIPTS" shall mean the gross amount of money, including taxes, charged by the Insured or by others for such of the Insured's operations as are rated on a receipts basis;

(d) "PAYROLL" shall mean the entire remuneration (but excluding payments under a profit sharing plan where such payments form no part of the contract of employment) earned during the policy period by all employees other than drivers of teams or automobiles, subject to a maximum fixed amount of $5,000.00 per employee per annum.

(e) "SALES" shall mean the gross amount of money, including taxes, charged (a) for all goods and products sold or distributed during the policy period by the Insured or, (b) for construction operations entered into during the policy period by the Insured.

(f) "PRODUCTS" shall mean

(I) the handling or use of, the existence of any condition in, or a warranty of, goods or products manufactured, sold, handled or distributed by the Insured (other than anything belonging to the Insured located outside the Insured's own premises for the use of others, whether or not a charge is made for such use) if the occurrence or accident on which the claim is founded arises after the Insured has relinquished possession thereof to others and away from premises owned, rented or controlled by the Insured;

(II) the construction operations of the Insured, if the occurrence or accident on which the claim is founded arises after such operations have been completed or abandoned at the place of such occurrence and away from premises owned, rented or controlled by the Insured, provided that operations shall not be deemed incomplete because improperly or defectively performed or because further operations may be required pursuant to a service or maintenance agreement.

(g) "RAILWAY TANK CARS" shall mean railway tank cars owned or leased, hired or borrowed during the policy period.

(h) "ELEVATOR" shall mean a hoisting and lowering mechanism equipped with a car or platform which moves in guides in a substantially vertical direction, including its shaft, hoistway, equipment and operating machinery.

(i) "ESCALATOR" shall mean a moving, inclined, continuous stairway or runway used for raising or lowering passengers or freight.

EXCLUSIONS

Except with respect to liability assumed under contract, this policy does not apply to:

(1) bodily injury sustained by any employee of the Insured while engaged in his duties as such. This exclusion shall not apply to those employees not covered by any Workmens Compensation Statute, Law or Plan;

(2) the ownership, maintenance, operation or use (including loading and unloading) by or on behalf of the Insured of any of the following, including their equipment: any self-propelled vehicle, trailer or semi-trailer, required by law to carry a license, locomotive engine, train, aircraft, watercraft;

IN THE PROVINCE OF QUEBEC this exclusion shall not apply to motor vehicles having no apparatus for the load, and which are equipped for purposes of construction, repairs, or maintenance, for which reduced license fees have been established by Order in Council No. 91, dated February 3, 1949, nor to motor vehicles which are not intended to circulate on the public highways, for which special fees have been established by Order in Council No. 125, dated February 10, 1949;

(3) injury to or destruction of:

(a) property owned or occupied by, or leased to the Insured; or any other property used by or in the care, custody or control of the Insured. This exclusion shall not apply to

(i) injury to or destruction of property of others in charge of or transported by the Insured caused by elevators;
(ii) injury to or destruction of leased premises;
(iii) injury to or destruction of employees' personal effects.

Exhibit C
Page 6

(b) any personal property or any fixtures as a result of any work performed thereon, by the Insured or anyone on his behalf;

(c) goods or products, manufactured, sold, handled, or distributed by the Insured in or out of which the accident arises;

(d) work done by or for the Insured where the cause of accident is defect in such work.

This Policy does not apply to:

"PRODUCTS" as defined in Definition (f).

CONDITIONS

**A Limitation of Liability**

In respect of Coverages A and B, the liability of the Company for all damages, including damages for care and loss of services, arising out of bodily injury to or death of one person, shall be limited to the sum of $100,000.00 in any one occurrence, and subject to the same limit for each person, the total limit of the Company's liability for all damages, including damages for care and loss of services, arising out of bodily injury to or death of two or more persons, shall be limited to the sum of $200,000.00 in any one occurrence. The liability of the Company on account of all claims for damages because of injury to or destruction of property including the loss of use thereof, shall be limited to the sum of $20,000.00 as the result of any one accident. It is agreed, however, that in consideration of the reduced Property Damage rate charged in respect to the Insured's Asbestos Mining and Milling operations at Thetford Mines, Quebec, the liability of the company for loss or damage because of injury to or destruction of property in any one accident shall be limited to the sum of $1,000.00. There is no limit to the number of occurrences or accidents for which claims may be made hereunder, provided such occurrences or accidents occur during the currency of this policy, except as hereinafter provided.

The inclusion herein of more than one Insured shall not operate to increase the limits of the Company's liability.

**B Premium**

The premium for this policy is as stated in the Declarations.

**C Automatic Coverage**

This policy shall cover automatically additional premises and elevators acquired during the term of this policy without prior notice to the Company, but the Insured, shall, within ninety days of their acquisition or installation in the Insured's service, report additional elevators to the Company by written notice for the sole purpose of enabling the Company to afford adequate inspection service.

**D Notice of Occurrence or Accident**

Upon the happening of an occurrence or accident written notice shall be given by or on behalf of the Insured to the Company or to Marsh & McLennan Limited as soon as practicable after notice thereof has been received by its executive officers at the Insured's headquarters. Such notice shall contain particulars sufficient to identify the Insured and also reasonably obtainable information respecting the time, place and circumstances of the occurrence or accident, the name and address of the injured, and of any available witnesses. If claim is made or suit brought against the Insured, the Insured shall

immediately forward to the Company every demand, notice, summons, or other process received by it or its representatives.

**E**
**Assistance and Co-operation of the Insured**

The Insured shall co-operate with the Company, and upon the Company's request, shall attend hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits, and the Company shall reimburse the Insured for any expense, other than loss of earnings, incurred at the Company's request. The Insured shall not, except at its own cost, voluntarily make any payment, assume any obligation, or incur any expense other than for such immediate medical and surgical relief to others as shall be imperative at the time of the occurrence or accident. Upon the Company's request, the Insured shall give to the Company a signed statement of facts containing all available information deemed necessary by the Company to determine and define its liability and rights under this policy.

**F**
**Action Against Company**

No action shall lie against the Company unless, as a condition precedent thereto, the Insured shall have fully complied with all the conditions hereof, nor until the amount of the Insured's obligation to pay shall have been finally determined either by judgment against the Insured, after actual trial or by written agreement of the Insured, the claimant, and the Company, nor in either event unless suit is instituted within two years and one day after the date of such judgment or written agreement.

Any person or his legal representative who has secured such judgment or written agreement shall thereafter be entitled to recover under the terms of this policy in the same manner and to the same extent as the Insured.

Nothing contained in this policy shall give any person or organization any right to join the Company as a co-defendant in any action against the Insured to determine the Insured's liability. Bankruptcy or insolvency of the Insured shall not relieve the Company of any of its obligations hereunder.

**G**
**Other Insurance**

If the Insured has other insurance against a loss covered by this policy, the insurance provided by this policy shall be in excess of such other valid and collectible insurance.

**H**
**Conflicting Statutes**

If any condition in this policy conflicts with any specific statutory provision in the province or state in which it is claimed that the Insured is liable for any such injuries or loss as are covered by this policy, such specific statutory provision shall be substituted for such condition.

**I**
**Subrogation**

In the event of any payment under this policy, the Company shall be subrogated to all the Insured's rights of recovery therefor, and the Insured shall execute all papers required and shall do everything that may be necessary to secure such rights, but the Company shall have no right of subrogation against any subsidiary or allied Company owned or controlled by the Insured, nor against any person, firm or corporation in respect of which the Insured has assumed liability under any contract or agreement.

J
Changes

No notice to any agent or knowledge possessed by any agent or by any other person shall be held to effect a waiver or change in any part of this policy nor stop the Company from asserting any right under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part hereof, signed by the General Manager.

K
Assignment

No assignment of interest under this policy shall bind the Company until its consent is endorsed hereon. If the Insured shall be adjudged bankrupt or insolvent within the policy period, this policy, unless cancelled, shall cover the Insured's legal representative for the unexpired portion of such period.

L
Cancellation

This policy may be cancelled at any time by either party by written notice to the other stating when thereafter cancellation shall be effective. Such notice by the Company to the Insured's address stated in the Declarations, given not less than sixty (60) days prior to the effective date of cancellation, shall be a sufficient notice. The mailing of notice as aforesaid shall be sufficient proof of notice and the insurance under this policy shall end on the effective date and hour of cancellation stated in the notice. Delivery of such written notice, either by the Insured or the Company shall be equivalent to mailing. The Company's cheque or the cheque of its representative similarly mailed or delivered shall be a sufficient tender of any refund of premium due to the Insured. In the event of cancellation the minimum premium as stated in the Declarations of the policy shall apply.

M
Declarations

By acceptance of this policy, the Insured agrees that the statements in the Declarations are its agreements and representations, that this policy is issued in reliance upon the truth of such representations, and that this policy embodies all agreements existing between itself and the Company or any of its agents relating to the insurance.

IN WITNESS WHEREOF The General Accident Assurance Company of Canada has caused this Policy to be signed by its General Manager, but this Policy shall not be binding upon the Company until countersigned by a duly authorized representative of the Company.

This is a true and Certified copy of Policy No. L.90-4672

Countersigned: [signature] for Manager, Liability Department

[signature]

.......................................................
(Authorized Representative)

General Manager.

Exhibit C
Page 9