IRELL & MANELLA LLP
Morgan Chu (70446)
Richard M. Birnholz (151543)
Andrei Iancu (184973)
Richard G. Frenkel (204133)
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
Telephone: (310) 277-1010

ATTORNEYS FOR PLAINTIFF
IMMERSION CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| IMMERSION CORPORATION,<br><br>Plaintiff,<br><br>vs.<br><br>SONY COMPUTER ENTERTAINMENT AMERICA, INC.; SONY COMPUTER ENTERTAINMENT, INC.; and MICROSOFT CORPORATION,<br><br>Defendants. | Case No. C-02-0710 CW (WDB)<br><br>**IMMERSION'S OPPOSITION TO MICROSOFT'S MOTION FOR ENTRY OF A PROTECTIVE ORDER AND IMMERSION'S CROSS-MOTION FOR AN ENTRY OF ITS OWN VERSION OF THE PROTECTIVE ORDER**<br><br>**Date: September 18, 2002**<br>**Time: 2:30 p.m.**<br>**Courtroom: 4, Third Floor** |
| AND RELATED COUNTERCLAIMS | **The Honorable Wayne D. Brazil**<br>**United States Magistrate Judge** |

# TABLE OF CONTENTS

Page


I. INTRODUCTION .......... 1

II. ARGUMENT .......... 3

A. Microsoft's Proposed Source Code Log And Confidentiality Log Are Unnecessary And Invade Immersion's Attorney Work Product .......... 3

1. A Source Code Log Is Unnecessary, and an Invasion of Work Product Protection .......... 5

2. Counsel Should Not Be Required To Disclose Where Source Code Is Being Sent .......... 6

3. A Confidentiality Log Also Makes No Sense, For The Same Reasons As The Source Code Log .......... 7

B. Microsoft's Proposed Prosecution Bar Is Overbroad And Can Be Appropriately Narrowed And Tailored To The Facts Of This Litigation .......... 8

C. The Protective Order In The Case Should Allow Access To Attorneys' Eyes Only Documents To Immersion's Sole In-House Counsel .......... 12

D. Other Clarifications To The Proposed Protective Order .......... 14

1. Section 2(a)(ii) .......... 14

2. Additional Sections 7(a)(ix) and 10(d) .......... 15

3. Addition to Section 12 .......... 15

III. CONCLUSION .......... 15

TABLE OF AUTHORITIES

Page(s)

**Cases**

Adobe Sys., Inc. v. Macromedia, Inc., 2001 WL 1414843 (D. Del. Nov. 5, 2001) .......... 5

Amgen, Inc. v. Elanex Pharms., Inc., 160 F.R.D. 134, 139 (W.D. Wash. 1994) .......... 14

Davis v. AT&T Corp., 1998 U.S. Dist. LEXIS 20417 (W.D.N.Y. Dec. 23, 1998) .......... 9

Dynamic Microprocessor Assocs. v. EKD Computer Sales, 919 F. Supp. 101 (E.D.N.Y. 1996) .......... 5, 6

In re Papst Licensing GmbH Patent Litigation, 2000 WL 554219 (E.D. La. May 4, 2000) .......... 9, 10

Intel Corp. v. VIA Techs, 198 F.R.D. 525 (N.D. Cal. 2000) .......... 13

Interactive Coupon Marketing Group, Inc. v. H.O.T! Coupons, LLC, 1999 U.S. Dist. LEXIS 12437 (N.D. Ill. Aug. 9, 1999) .......... 9

Medtronic, Inc. v. Guidant Corp., 2001 U.S. Dist. LEXIS 22805 (D. Minn. Dec. 19, 2001), aff'd, 2002 U.S. Dist. LEXIS 1758 (D. Minn. Jan. 29, 2002) .......... 2, 9

Mikohn Gaming Corp. v. Acres Gaming, Inc., 1998 U.S. Dist. LEXIS 22251 (D. Nev. Apr. 15, 1998) .......... 9, 12

Texas Instruments, Inc. v. Hyundai Elecs. Indus. Co., 190 F.R.D. 413 (E.D. Tex. 1999) .......... 5

**Rules**

Fed. R. Civ. P. 1 .......... 13

## I. INTRODUCTION

Immersion agrees that a protective order must be entered in this case, but Microsoft's proposed form of order overreaches in several important respects. The parties' disagreement on the scope of the protective order centers around three primary issues: (1) Microsoft's request that the parties maintain a "source code log" that must be turned over to the opposing party on demand – not only an undue burden, but a direct invasion of work product; (2) Microsoft's request for an extremely broad "patent prosecution bar" that restricts everyone involved in the case both at Immersion and its outside counsel from doing anything relating to patents – a bar that also ostensibly precludes Immersion's counsel at Irell & Manella LLP, which does not prosecute patents for Immersion, from advising its longstanding client on any patent-related matters; and (3) Microsoft's request that Immersion's in-house counsel not be allowed any access to any confidential documents in the case unless he does nothing relating to patents or "competitive decision making" – a provision that leaves Immersion, which does not compete with Microsoft, the untenable choice of having its in-house counsel not supervise this litigation meaningfully or not do his job supervising various legal functions. As explained below, each of Microsoft's requests is not justified in these circumstances. With this brief, Immersion lodges a slightly revised proposed protective order that Immersion respectfully submits is more reasonable and at the same time addresses defendants' legitimate concerns about confidentiality.

First, Microsoft's proposed protective order unnecessarily requires the parties to keep a log that tracks the details of who was given access to source code or other confidential documents, and when. Microsoft's proposal also allows Microsoft to unfairly monitor Immersion's counsel by demanding that Immersion's counsel turn over this log to Microsoft for inspection at any time. There is no cause for such provisions. Immersion has already agreed that only a limited number of paper copies may be made of the source code, and that the source code be maintained in secure locations. Even if a log is appropriate, allowing the opposing party to inspect the log at any time is not. This provision is without support in the case law. It also improperly allows an unfettered invasion of attorney work product with regard to counsel's trial preparation strategies and counsel's review of certain documents. Other provisions in the protective order, such as those allowing for

opportunities to object to disclosure to experts and consultants for good cause, provide ample protection.

Second, Microsoft's proposed prosecution bar also is not tailored to be reasonable in scope, and expansively precludes anyone from "in any way" being involved in patent prosecution or from assisting or supervising those who perform such activities. This provision simply is too broad in light of the circumstances in this case. Immersion could argue that no prosecution bar is necessary, given that the order will provide that information disclosed be used solely for purposes of this litigation. However, Immersion does not object to a patent prosecution bar that is reasonable. Immersion therefore proposed to Microsoft a provision that restricts those persons with access to confidential information from appearing as counsel of record on patent applications, drafting claims, drafting specification language or preparing papers to be submitted to the Patent Office. Such a provision was adopted in Medtronic, Inc. v. Guidant Corp., 2001 U.S. Dist. LEXIS 22805 (D. Minn. Dec. 19, 2001), aff'd, 2002 U.S. Dist. LEXIS 1758 (D. Minn. Jan. 29, 2002), where the court rejected an overly broad provision such as that Microsoft proposes.

Third, there is no reasonable justification to preclude Immersion's in-house counsel Patrick Reutens from seeing information provided in discovery unless Mr. Reutens agrees to refrain from performing his basic job duties. It is Mr. Reutens who is charged with supervising this litigation. While Immersion of course has retained outside counsel, Mr. Reutens needs to be educated about the litigation in order to effectively assist counsel and make substantive decisions during the course of the litigation. Microsoft's proposed protective order gives Immersion, and Mr. Reutens, a Hobson's choice: either he can participate in the patent litigation and make informed decisions about the course of the case or he can do the rest of his job, which includes supervising others at Immersion, including those who handle the patent prosecution work. In other words, be involved in the lawsuit or do his job, but not both. The problem is that doing both is Mr. Reutens job. Immersion is a small company that does not have a large legal department.

Moreover, Microsoft's strenuous objections to such disclosure ring hollow. The parties are not direct competitors. Immersion does not market or commercially sell video game consoles, video game controllers or video games. Mr. Reutens does not prosecute patents for Immersion.

But as in-house counsel at a small company whose primary focus is innovating in the field of haptics, Mr. Reutens must be able to supervise the personnel who do perform these tasks, to ensure that applications are filed on time, and that the patent attorneys are speaking to the appropriate inventors within Immersion, and perform other supervision as appropriate.

Immersion has tried to be reasonable, and propose compromises that make sense for this particular litigation – a litigation between companies who are not direct competitors in the video game field. Microsoft and Sony have not given any justification for the broad restrictive provisions they seek, and Microsoft has used the protective order dispute to unnecessarily delay any production of confidential documents. Immersion requests that the Court approve the form of protective order lodged herewith.[1]

## II. ARGUMENT

### A. Microsoft's Proposed Source Code Log And Confidentiality Log Are Unnecessary And Invade Immersion's Attorney Work Product

On page 8 of its memorandum of points and authorities, Microsoft outlined four protective order provisions related to source code. Immersion realizes the importance and sensitive nature of source code, and has agreed to most of Microsoft's proposed provisions related to source code. Specifically, Immersion has already agreed to

(1) provide advance notice of any expert or consultant who may have access to source code, and provide a chance for an objection to that expert or consultant [Section 7(a)(i)[2] of Microsoft's proposed protective order as well as Immersion's proposed protective order];

(2) limit the form of production of source code to paper production, rather than electronic production [Section 5(c)(i)]; and

(3) restrict the number of copies of source code to four additional copies [Section 5(c)(iii)].

---

1 To illustrate the changes from Microsoft's proposal, Immersion also has lodged a "redlined" copy.

2 In Microsoft's motion for entry of a protective order, page 8, Microsoft mistakenly referred to this provision as Section 6(a)(i).

Immersion disputes Sections 5(c)(iv) and 5(c)(v), which imposes onerous requirements of a source code log and allow Microsoft to demand inspection of this log at any time. These proposed provisions, italics added, read:

> (iv) The Receiving Party shall maintain a log of all individuals who have accessed any of the paper copies of the source code. This log shall include the name of the person who accessed any of the paper copies of the source code, and the date that the access was made. *This log shall be made available for inspection to the Producing Party within five (5) business days of receipt of a written request for access to the log.*
>
> (v) If the Receiving Party's outside counsel of record desires to store and access the paper copy of the source code at a secure facility at a location other than their offices, the Receiving Party's outside counsel of record shall propose in writing to the Producing Party's outside counsel of record the precise location of the proposed secure facility. Unless the Producing Party's outside counsel of record notifies the Receiving Party's outside counsel of record of its objection to any such proposed secure facility, and the basis therefor, within seven (7) business days after receipt of a copy of the writing proposing the secure facility, that secure facility will be qualified to store Designated Material marked as ATTORNEYS' EYES ONLY-SOURCE CODE, subject to all other obligations of this Order.

Microsoft also included a similar requirement of a log for the lowest tier of documents, "confidential documents" which may be shared with employees for the parties. Microsoft again includes the same objectionable provision allowing an inspection of that log. This requirement is in Microsoft's proposed Section 6(c)(ii), italics added, which reads:

> For each party to this litigation, which includes Immersion Corporation, Sony Computer Entertainment America, Inc., Sony Computer Entertainment, Inc., and Microsoft Corporation, ten employees subject to the terms of paragraph 7. With respect to this subparagraph, the term "employee" shall include current directors, officers and/or employees of the Receiving Party. The Receiving Party shall maintain a log of the name and job position of each employee who is provided access under this subparagraph to Designated Material marked "CONFIDENTIAL INFORMATION." *This log shall be made available for inspection to the Producing Party within five (5) business days of receipt of a written request for access to the log.*

### 1. A Source Code Log Is Unnecessary, and an Invasion of Work Product Protection

Immersion believes that a source code log is unnecessary. The parties have all agreed to many restrictions on source code. Given that the parties already know counsel of record and that the parties will have to disclose the name of any consultant who will receive access to confidential documents, a log serves no additional purpose.

Moreover, the cases Microsoft cites do not support Microsoft's proposed source code log. Two of the cases cited by Microsoft, Adobe Sys., Inc. v. Macromedia, Inc., 2001 WL 1414843 (D. Del. Nov. 5, 2001) and Texas Instruments, Inc. v. Hyundai Elecs. Indus. Co., 190 F.R.D. 413 (E.D. Tex. 1999), did not even discuss or mention source code access logs. The third case, Dynamic Microprocessor Assocs. v. EKD Computer Sales, 919 F. Supp. 101 (E.D.N.Y. 1996), involved an order in a copyright infringement case allowing the defendant to access the source code of the plaintiff. Although the court adopted the plaintiff's proposed order, which included a source code log, that provision was never meaningfully litigated. See id. at 106.

In the event that the Court believes that a source code log is appropriate, Immersion strongly objects to the last sentence of Microsoft's proposed Section 5(c)(iv) and Section 6(c) (ii). Those provisions allow a Producing Party to demand production of the log of names and dates of review of source code on a few days notice. Such a provision in effect provides the Producing Party unfettered access to the work product of the other side. Once Immersion's attorneys make a list of documents that they review, or make an entry in a log of which people review documents and on which date, such information will clearly be work product reflecting the strategies, choices, and decisionmaking of attorneys in their pretrial preparation. Microsoft's proposal would unfairly enable Microsoft or Sony to demand, without any cause or justification, Immersion's list of which attorneys and consultants who have reviewed source code and on which date. There is no basis for such an invasive and unreasonable provision.

Even the Dynamic court, which appeared to allow source code logs, did not discuss or mention whether the producing party could request a copy of the log during the pendency of the litigation. In fact, other provisions of the order in Dynamic indicate that the source code copies

and any notes pertaining to the source code could be returned to the producing party, but not until the final termination of the litigation. See id.

Microsoft's purported rationale for allowing a random audit of the source code log whenever Microsoft wanted an audit is that their instant access to the log is "an effective deterrent against inadvertent or deliberate disclosure."[3] The protective order, and counsel's duties as officers of the Court, are more than sufficient deterrents.

Immersion proposes that Section 5(c)(iv) and Section 6(c) (ii) relating to the log be deleted as unnecessary. If the Court disagrees and believes that source code logs would be beneficial, then Immersion proposes that Section 5(c)(iv) be altered to read to remove concern over invasion of work product, and as suggested by the Dynamic court [See Immersion's Proposed Protective Order, Frenkel Decl., Ex. 6, ¶ 5(c)(iv)]:

> The Receiving Party shall maintain a log of all individuals other than the attorneys acting as counsel of record for the parties in this action who have accessed any of the paper copies of the source code. This log shall include the name of the person who accessed any of the paper copies of the source code, and the date that the access was made. This log shall be sent to the Producing Party after the conclusion of the litigation, including appeals.

Immersion believes that this compromise protects any concerns Microsoft and Sony may have regarding protection of source code, while still maintaining a deterrent effect against misuse.

### 2. Counsel Should Not Be Required To Disclose Where Source Code Is Being Sent

Section 5(c)(v) also acts as an invasion of attorney work product. If Immersion desires to send a copy of source code or an excerpt of source code to one of its consultants, then Microsoft's proposed protective order requires Immersion to notify Microsoft of the exact location where that source code is being sent. That will immediately disclose to Microsoft which consultant is looking at the source code, and when. Microsoft can then demand access to the location to determine if it is truly secure. This protective order provision will only interfere with Immersion's

---

[3] Immersion, in an attempt to reach a compromise and avoid bringing this matter to the Court, proposed several alternatives that would satisfy Immersion. [Declaration of Richard G. Frenkel (filed herewith) Ex. 1 at 2]. Microsoft never responded to Immersion's proposed alternatives, and instead filed its motion.

ability to utilize independent consultants – whose identity must be shared with opposing parties in any event.

Immersion has an alternative proposal. Immersion proposes that the Consultant Acknowledgement of Exhibit A of the protective order be modified to add the following modification, as the second-to-last paragraph of the acknowledgement:

> I hereby agree that to the extent I am provided any source code in conjunction with this litigation, that I will maintain that source code in a secure location accessible only to me, and I will not disclose that source code or the fact that I have that source code to any other person. I also agree to not make any copies of the source code, and to return the source code when requested to do so by the party that hired me. I further agree to return or destroy any notes made about the source code at the conclusion of the litigation.

Immersion further proposes that Section 5(c)(v) of the proposed protective order be replaced with the following language:

> The Receiving Party's outside counsel may only send a copy of the source code to an individual who has signed an Acknowledgement of Protective Order in Exhibit A.

These changes should be more than adequate to address Microsoft's concerns, with the least burden to the parties and without invading the work product privilege.

**3. A Confidentiality Log Also Makes No Sense, For The Same Reasons As The Source Code Log**

Immersion proposes that the last two sentences of Microsoft's proposed Section 6(c)(ii) be deleted. These sentences impose another log – a log of who has access to the lowest-tiered level of confidential information. For the reasons discussed with respect to the source code log above, Immersion believes that a confidential document access log would be equally onerous and would be an invasion of work product. Should the Court agree that a log is indeed warranted, then Immersion again objects to the last sentence of proposed Section 6(c)(ii), which allows instant access upon request, for any reason.

### B. Microsoft's Proposed Prosecution Bar Is Overbroad And Can Be Appropriately Narrowed And Tailored To The Facts Of This Litigation

Normally, during civil litigation involving exchange of confidential information, parties agree to various levels of protection in order that the confidential information be protected, and not disseminated. However, in the case of a prosecution bar, not only is confidential information protected, but persons with access to that information are prohibited from prosecuting patent applications for a period of time. The theory behind prosecution bars is to prevent the patent prosecutor who has had access to the documents of his competitor from disclosing or using those documents in the course of prosecution.

When Microsoft first proposed a prosecution bar, Immersion did not see the need for this protection. There was no prosecution bar, for example, in Immersion's previous litigation with InterAct in the Northern District of California. And the protective order Immersion proposed in this case already provided that the information disclosed may not be used for any other purpose.

However, in the spirit of compromise, and considering Microsoft's position, Immersion does not object to a limited prosecution bar. [Frenkel Decl., Ex. 1, at 2]. Immersion therefore proposed a narrower prosecution bar. [See id.] This proposal precludes those who have access to confidential information from directly participating in patent prosecution. Microsoft did not respond, but instead insisted on its own overly broad restriction.

Immersion therefore now proposes to the Court that Section 5(d) of the protective order read as follows:

> (d) *Prosecution Restriction*. Any attorney or patent agent who, on behalf of a party to this litigation, actually has received or reviewed Designated Material of another party shall not thereafter prosecute any patent application relating to force feedback, vibrations, tactile responsiveness, or haptics technologies on behalf of parties to this litigation for the pendency of this litigation and for a period of one year after the conclusion of this litigation. This restriction does not apply generally to the law firms involved in this litigation, but only to the specified individuals. For purposes of this paragraph, prohibited patent prosecution shall include: drafting claims; preparation of and/or amendments to original, continuation, divisional, continuation-in-part, request for continued examination, reexamination, reissue, substitute, renewal or convention patent applications; or drafting arguments to the Patent and Trademark Office regarding such claims or applications.

[Frenkel Decl., Ex. 6, ¶ 5(d)].

In Medtronic, Inc. v. Guidant Corp., 2001 U.S. Dist. LEXIS 22805 (D. Minn. Dec. 19, 2001) [Frenkel Decl., Ex. 2], aff'd, 2002 U.S. Dist. LEXIS 1758 (D. Minn. Jan. 29, 2002) [Frenkel Decl., Ex. 3], the court entered such a provision, after rejecting an overly broad provision such as the one Microsoft requests. In Medtronic, Magistrate Judge Lebedoff considered the relevant case law, and decided that a prosecution bar was appropriate in patent litigation involving direct competitors in the field of implantable defibrillators. However, Magistrate Judge Lebedoff was only willing to extend the prosecution bar to attorneys who "actually draft patent applications, claim language for patent applications, or arguments made in support of patent applications related to the treatment of abnormal cardiac rhythms." Id. at *15. Medtronic had proposed that the bar also prohibit attorneys from advising or supervising patent prosecution. The court found these terms to be too vague to be enforceable, and further found that the confidential information was adequately protected from inadvertent disclosure to the PTO by the prohibitions of direct prosecution present in the narrower language. See id.

In contrast, none of the cases cited by Microsoft support the broad prosecution bar Microsoft now requests. In Interactive Coupon Marketing Group, Inc. v. H.O.T! Coupons, LLC, 1999 U.S. Dist. LEXIS 12437 (N.D. Ill. Aug. 9, 1999) and Davis v. AT&T Corp., 1998 U.S. Dist. LEXIS 20417 (W.D.N.Y. Dec. 23, 1998), a prosecution bar was upheld, but one that prohibited only the actual prosecution of patent applications. Advice and supervision were not prohibited activities in the Interactive Coupon or Davis prosecution bars. Interactive Coupon, 1999 U.S. Dist. LEXIS 12437, at *11; Davis, 1998 U.S. Dist. LEXIS 20417 at *2-*3. Mikohn Gaming Corp. v. Acres Gaming, Inc., 1998 U.S. Dist. LEXIS 22251 (D. Nev. Apr. 15, 1998), another case cited by Microsoft, did not even discuss prosecution bars at all; in that case, an attorney who was actively prosecuting patents, including the very patents-in-suit, was denied access to confidential information. See id. at *11.

The protective order in In re Papst Licensing GmbH Patent Litigation, 2000 WL 554219 (E.D. La. May 4, 2000) was indeed broad. However, after considering the history of the Papst litigation, it is apparent that the circumstances are not comparable to this case.. In October 1990,

Papst Motoren GmbH & Co. KG, a German manufacturer of motors for hard disk drives, entered into a joint venture with Minebea Co., a Japanese motor manufacturer, in order so that the two companies could manufacture spindle motors for hard disk drives. [Frenkel Decl., Ex. 4, at 3]. That joint venture continued for a few years, until Papst withdrew from the joint venture agreement in August 1993. [See id.]. After the breakup of Papst and Minebea, relations became rocky between the two companies when Papst started suing Minebea's customers for patent infringement. In March 1997, Minebea filed a declaratory judgment action in the United States District Court for the District of Columbia, seeking to stop Papst from enforcing its patents. [This case is styled as District of District of Columbia Case No. 1:97cv590]. Based on the fact that Minebea and Papst were direct competitors, competing in the same field of spindle motor production, their protective order was broadly written, providing a prosecution bar that prohibited a wide range of activities.

Subsequently, Papst proceeded to sue many of the world's largest hard disk drive manufacturers for patent infringement, based on the same patents that Minebea was trying to invalidate. The cases were consolidated in the Eastern District of Louisiana in front of Judge Sear, who authored the opinion cited by Microsoft. Judge Sear, while finding that the scope of confidential documents warranted a prosecution bar, rested his decision on the fact that the "parties have operated under an identical restriction imposed by the District of Columbia court for many months, and numerous third parties have consented to the disclosure of their confidential information in express reliance on that restriction. To alter the restriction significantly after thousands of documents have been produced would likely create significant disputes and delays." 2000 WL 554219 at *4.

In contrast, Immersion is not a direct competitor to Microsoft or Sony. Unlike Papst, who competed directly with Minebea in the field of spindle motor manufacturing, Immersion does not commercially sell video game consoles, video game controllers, or video games. There is extremely little danger that Immersion will ever make a product to compete with the XBox or PlayStation. Furthermore, any concerns regarding outside counsel are misplaced because counsel at Irell & Manella do not and, under the protective order Immersion proposes, will not be able to

draft claims, patent applications or arguments before the PTO. Finally, unlike the situation in Papst, the parties in this case have not been operating "for several months" under a temporary protective order that restricts supervision, assistance and counseling.

Moreover, Immersion is a small company, with a legal department consisting of Patrick Reutens, plus two recently-hired in-house attorneys to handle contracts and patent prosecution, respectively. Mr. Reutens does not prosecute patents, does not draft claims for patents, he does not draft patent specification language, and he does not draft arguments to be made to the Patent and Trademark Office regarding patent applications. But as part of his duties as Immersion's primary in-house counsel, Mr. Reutens must be able to supervise the patent attorneys who do perform these tasks.

Mr. Reutens' other major duty as in-house counsel for Immersion is to manage important litigation, such as the present litigation against Microsoft and Sony. He needs to be educated about the litigation in order to effectively be able to assist outside counsel and make substantive decisions about the conduct and course of the litigation. Furthermore, as part of Immersion's long-standing relationship with Irell & Manella, Immersion has called on Irell & Manella for periodic advice on matters that may relate to patent law or patents. Irell & Manella has not represented Immersion as counsel of record before the PTO. But Microsoft's request that Immersion be forced to forego seeking the advice of its longstanding counsel is unduly prejudicial. Immersion also will be harmed if it is forced to make Mr. Reutens choose between managing prosecution or managing litigation.

Accordingly, given the facts of this case, Immersion submits that the prosecution bar in Medtronic is adequate to protect the interests of Microsoft and Sony. The broad language proposed by Microsoft is not only vague and difficult to enforce, but is only supported by a single litigation among direct competitors of products for the disk drive industry. Immersion's proposed compromise prosecution bar, however, reaches an appropriate balance between the need to protect confidential information against inadvertent disclosure and the need for small companies like Immersion, who do not compete directly with the accused infringers in the litigation.

### C. The Protective Order In The Case Should Allow Access To Attorneys' Eyes Only Documents To Immersion's Sole In-House Counsel

Immersion originally proposed a protective order that would allow in-house attorneys to view confidential information, so that the in-house attorneys could participate in the litigation, to the benefit of all parties. Microsoft responded by insisting on access by four in-house attorneys (the parties later negotiated the number down to two), even though Immersion told Microsoft that currently Immersion only has a single in-house attorney, Patrick Reutens, who would be involved in the case. Although Microsoft agreed that in-house attorneys may have access, Microsoft has proposed additional limitations that would preclude Immersion from having its in-house attorney access attorneys eyes only information, but which would leave Microsoft and Sony free to choose among the many in-house attorneys in their employ. Microsoft's proposed restrictions are unnecessary and overly restrictive.

Microsoft's proposed Section 6(a)(x) denies access to any attorney "involved in patent prosecution . . . or competitive decisionmaking . . . ." Microsoft broadly defined "not involved in patent prosecution," to include "having any involvement with the drafting, filing, or prosecuting of any patent applications, having any involvement with strategic counseling, planning, or analysis with repsect to any patent applications, and/or sending, soliciting or intentionally receiving any communications with respect to any patent applications." Microsoft Proposed Order, at 6(a)(x).

Microsoft did not cite a single case to support its exclusion of in-house counsel who are "involved in patent prosecution" as Microsoft has defined it. Such a restriction includes attorneys who do not prosecute patents, but who may supervise such activities. Immersion is not aware of any case that countenances such a broad restriction on access to documents. In the only case cited by Microsoft which denied access based on patent prosecution activity, Mikohn Gaming, that court only prohibited access to confidential information to an attorney who was actively drafting claim language and drafting specification language of patent applications. See Mikohn Gaming, 1998 U.S. Dist. LEXIS 22251 at *11. Immersion's proposed protective order will only give access to one in-house attorney, Patrick Reutens, who does not draft patent claim language or specification language. Knowing Immersion is a small company, Microsoft's proposed Section

6(a)(x) is aimed at preventing Mr. Reutens from accessing documents in this case, while preserving the ability for Sony and Microsoft to involve in-house counsel.

Furthermore, in a case where the two parties are not direct competitors, there is no need for a restriction based on "competitive decisionmaking." All of the cases Microsoft cites are cases where the parties fighting over the protective order were direct competitors, each making products in the same industry. As just one example, in Intel Corp. v. VIA Techs, 198 F.R.D. 525 (N.D. Cal. 2000), Magistrate Judge Larson cited as a major factor in denying Intel's in-house counsel from access to documents the fact that

> Intel and VIA are direct competitors, and confidential information about products that compete against each other in the market will be involved in this litigation. Some courts have found an increased risk of harm when information is being disclosed to a direct competitor. Disclosure of trade secrets to Intel of VIA's competing products and VIA's marketing information, strategies, and customer related data could have dire consequences for VIA.

Id. at 531.[4] Of course Microsoft's interpretation of the competitive decisionmaking clause [see Microsoft's brief, p. 6] is so broad that it would effectively deny any in-house attorney from participating in any way in this litigation. Such cannot be consistent with Fed. R. Civ. P. 1. The parties have already agreed that anyone who reviews confidential information cannot prosecute patents related to the subject matter of the patents-in-suit for a limited time. This is restrictive enough; there is no need to pile on additional restrictions in the "access" clauses, other than for the improper purpose of allowing Microsoft and Sony attorneys to have access but not Mr. Reutens.

Finally, and most importantly, the most obvious consequence of Microsoft's proposed protective order is that Immersion, through its in-house attorney Patrick Reutens, will not be able to participate in the litigation. Microsoft and Sony are very large companies, each with many in-house attorneys. Immersion has only Mr. Reutens, the only in-house attorney who has been at Immersion for any length of time. Although it is unclear whether Mr. Reutens will even want to

---

[4] Even though access was ultimately denied to technical information due to the competitive nature of the businesses of Intel and VIA, Magistrate Judge Larson noted that in another litigation between the two parties, the protective order allowed in-house counsel to access all "confidential business information," while denying access to technical information, a compromise which Intel's counsel admitted made managing that case difficult. There apparently is at least some precedent for allowing access to non-technical confidential information even in the case where the two sides are direct competitors, a situation that does not exist in the present case.

have access to attorneys' eyes only documents, he should be able to see the documents when he wants to see them. For example, if Microsoft brings a motion for summary judgment relying on attorneys' eyes only information, Mr. Reutens will not be able to participate meaningfully in Immersion's response, yet Microsoft and Sony can have the wisdom of their in-house counsel, who can help guide the outside attorneys to take the best positions for their clients. Similarly, Mr. Reutens will be precluded from viewing Microsoft or Sony's business documents when evaluating damages issues, but Microsoft and Sony in-house attorneys cleared under the protective order would be able to see Immersion's financial documents.

Courts routinely grant in-house counsel access to sensitive information where that information is necessary to allow them to fulfill their management responsibilities. See, e.g., Amgen, Inc. v. Elanex Pharms., Inc., 160 F.R.D. 134, 139 (W.D. Wash. 1994). Accordingly, parties routinely agree that in-house counsel should have access to sufficient information to evaluate the substantive patent issues as well as damages and settlement issues. Access is appropriate in this case as well.

Immersion's proposed protective order is appropriate given the facts of this case. Immersion's proposed protective order, Section 6(a)(x), reads as follows:

> For each party to this litigation, which includes Immersion Corporation, Sony Computer Entertainment America, Inc., Sony Computer Entertainment, Inc., and Microsoft Corporation, two in-house attorneys. Immersion designates Patrick Reutens as its in-house attorney.

[Frenkel Decl., Ex. 6, ¶ 6(a)(x)].

**D. Other Clarifications To The Proposed Protective Order**

In preparing a proposed order for this brief, Immersion noted a few other sections of Microsoft's proposed protective order should be changed to improve and clarify the protective order. This is a summary of those changes, with added language noted by underlining:

**1. Section 2(a)(ii)**

Immersion proposes, in its protective order, that "Attorneys' Eyes Only Information" be defined as information "of such an extremely sensitive nature that the disclosure of such Designated Material to a Receiving Part would result in competitive or other business injury to it."

#### 2. Additional Sections 7(a)(ix) and 10(d)

Sections 7(a) and 10 involve conditions on disclosure and access to confidential documents. Immersion had several conversations with Microsoft regarding who should carry the burden if a dispute arises over disclosure or access by consultants or other third parties. Microsoft did not include this dispute in their motion for a protective order.

Immersion proposes that the following language be added as additional sections 7(a)(ix) and 10(d), which deals with objections to additional disclosures. The additional language confirms that the party designating material confidential continues to bear the burden of justifying the confidentiality designation, notwithstanding who is required to take steps first to bring an issue to the Court's attention:

> Any party moving for such an order requesting disclosure shall explain why the requested disclosure is appropriate, but the Producing Party shall bear the burden of justifying the confidentiality designation and explaining the harm that would result from the requested disclosure.

#### 3. Addition to Section 12

Section 12 of the proposed order pertains to unintentional disclosure of privileged information. The proposed order does not cover the situation where a party in good faith uses information that was, in fact, privileged and inadvertently produced. Immersion proposes that the following language be added to the end of Section 12:

> To the extent that any such inadvertently produced material has been used, included, referenced or summarized in a pleading, deposition or other proceeding, nothing in this paragraph shall require a Receiving Party to purge, redact or excise any such information that has been used in good faith before a request for the return of the unintentionally produced material.

## III. CONCLUSION

For the foregoing reasons, Immersion requests that the Court deny Microsoft's motion for an entry of a protective order, and enter Immersion's proposed protective order. The full text of this proposed order is attached as Exhibit 6 to the Declaration of Richard G. Frenkel, filed herewith. For the Court's convenience, Immersion has also attached a redlined version of

Microsoft's Proposed Protective Order as Exhibit 5 to the Frenkel Declaration, so that the changes to Microsoft's order are readily apparent to opposing counsel and the Court.

Respectfully submitted,

Dated: September 3, 2002

IRELL & MANELLA LLP
Morgan Chu
Richard M. Birnholz
Andrei Iancu
Richard G. Frenkel

By: /s/ Richard G. Frenkel
Richard G. Frenkel

Attorneys for Plaintiff
Immersion Corporation