Apple Inc. v. Psystar Corporation Doc. 1332



Denise M. Hulett (No. 121553)
MEXICAN AMERICAN LEGAL DEFENSE AND EDUCATIONAL FUND
931 Cole Street, No. 381
San Francisco, CA 94117
Telephone: (415) 504-6901
Facsimile: (415) 504-8901 (fax)

Robert E. Borton (No. 53191)
Cal G. Gonzales (No. 166540)
HELLER EHRMAN WHITE & McAULIFFE LLP
333 Bush Street
San Francisco, CA 94104-2878
Telephone: (415) 772-6000
Facsimile: (415) 772-6268

Christopher Ho, Senior Staff Attorney (No. 129845)
THE LEGAL AID SOCIETY – EMPLOYMENT LAW CENTER
1663 Mission Street, Suite 400
San Francisco, California 94103-2449
Telephone: (415) 864-8848 [x255]
Facsimile: (415) 864-8199

Lisa Duarte (No. 169750)
MINAMI, LEW & TAMAKI LLP
360 Post Street, 8th Floor
San Francisco, CA 94108
Telephone: (415) 788-9000
Facsimile: (415) 398-3887
Email: ld@mlts.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| MICHAEL BRIONEZ, PEGGY HERNANDEZ, MARIA HERNANDEZ, ALAN GALLEGOS, REGIONAL HISPANIC WORKING GROUP,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF AGRICULTURE, ANN VENEMAN, IN HER OFFICIAL CAPACITY, PACIFIC SOUTHWEST REGION OF THE FOREST | No.<br><br><u>CLASS ACTION</u><br><br>[PROPOSED] FIRST AMENDED COMPLAINT FOR VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. §§2000e *et seq.* |

Dockets.Justia.com

SERVICE OF THE U.S. DEPARTMENT OF AGRICULTURE ("REGION 5"),

Defendants.

## INTRODUCTION

1. This is an action brought pursuant to Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. §§ 2000e *et seq*. ("Title VII"), to obtain relief for plaintiffs MICHAEL BRIONEZ, PEGGY HERNANDEZ, MARIA HERNANDEZ, ALAN GALLEGOS, organizational plaintiff REGIONAL HISPANIC WORKING GROUP ("RHWG"), and the class of all persons similarly situated.

2. This action is brought by plaintiffs to secure redress for violations by all defendants of plaintiffs' civil right to be free from employment discrimination because of their national origin.

3. Plaintiffs allege that the hiring and promotion practices of Defendant PACIFIC SOUTHWEST REGION OF THE FOREST SERVICE OF THE U.S. DEPARTMENT OF AGRICULTURE ("REGION 5"), which is coextensive with the State of California, and of the other named Defendants, unlawfully discriminate against class members in violation of Title VII.

4. Notwithstanding Defendant REGION 5's March 30, 1990 EEOC administrative agreement (known as the "Hispanic Resolution Agreement", or "Agreement") with plaintiffs to rectify systemic employment discrimination against Hispanics, Hispanics continue to be severely underrepresented in REGION 5's current workforce, as compared to their representation in the applicable California civilian labor force.

5. Plaintiffs further allege that Defendants have engaged in discriminatory harassment and retaliation against class members, including retaliation for class members' participation in the RHWG and other civil rights activities.

6. This action seeks injunctive, monetary and declaratory relief.

## JURISDICTION

7. This action arises under the laws of the United States in that it states claims under Title VII. Jurisdiction of the subject matter of this action is established under 28 U.S.C. § 1331, 28 U.S.C. § 1337, 28 U.S.C. § 1343, 28 U.S.C. § 2201, 28 U.S.C. § 2202, and Section 706(f)(3) of Title VII, inasmuch as the allegations of this complaint state a claim for employment discrimination on the basis of plaintiffs' national origin in violation of Title VII.

8. This is the proper venue for this action in that the unlawful employment practices alleged herein were committed within this Court's judicial district.

**PARTIES**

9. Plaintiff MICHAEL BRIONEZ is a Hispanic employee of Defendant REGION 5, a current member of the executive board of Plaintiff RHWG, and a signatory to the March 30, 1990 Hispanic Resolution Agreement ("Agreement") that is the subject of an administrative action, EEOC Appeal No. 01944100. During his employment in Region 5, he has been subjected to discriminatory employment actions, including for non-selection and retaliation, based upon his national origin and his activism in civil rights matters. In response to those adverse actions, he has over the course of his service in Region 5 filed several administrative charges of discrimination against Defendant REGION 5. As a result of those adverse actions, however, his career prospects in Region 5 were significantly frustrated and, ultimately, derailed.

10. Plaintiff PEGGY HERNANDEZ is a Hispanic employee of Defendant REGION 5, a current member of the executive board of Plaintiff RHWG, and a signatory to the Agreement. During her employment in Region 5, she has been subjected to discriminatory employment actions, including for non-selection and retaliation, based upon her national origin and her activism in civil rights matters. She currently has an administrative charge of national origin discrimination pending against Defendant REGION 5.

11. Plaintiff MARIA HERNANDEZ is a Hispanic employee of Defendant REGION 5, a current member of the executive board of Plaintiff RHWG, and a signatory to the Agreement.

12. Plaintiff ALAN GALLEGOS is a Hispanic employee of Defendant REGION 5, a current member of the executive board of Plaintiff RHWG, and a signatory to the Agreement.

13. Organizational Plaintiff REGIONAL HISPANIC WORKING GROUP ("RHWG") is an association comprised of Hispanic employees of Defendant REGION 5. RHWG was formed for the purposes of promoting the civil rights of Hispanics in REGION 5, promoting equal employment opportunity and career development for Hispanic employees, and protecting Hispanic employees against retaliation and harassment.

14. Defendant PACIFIC SOUTHWEST REGION OF THE FOREST SERVICE OF THE UNITED STATES DEPARTMENT OF AGRICULTURE ("REGION 5"), which is geographically coextensive with the State of California, is a unit of Defendant UNITED STATES FOREST SERVICE.

15. Defendant UNITED STATES DEPARTMENT OF AGRICULTURE is a department of the executive branch of the Government of the United States of America.

16. Defendant ANN VENEMAN, sued in her official capacity, is the Secretary of Defendant UNITED STATES DEPARTMENT OF AGRICULTURE.

17. Plaintiffs are informed and believe and thereon allege that all Defendants controlled, influenced, permitted, acquiesced in, or otherwise ratified the wrongful actions of Defendant REGION 5 alleged herein, and are thus jointly liable therefor.

18. All relevant events and transactions alleged herein occurred within Region 5.

## CLASS ACTION ALLEGATIONS

19. Plaintiffs bring this action as a class action pursuant to Rule 23 (a) and (b) of the Federal Rules of Civil Procedure on behalf of themselves and all those similarly situated. The plaintiff class is composed of all permanent Hispanic employees of Defendant REGION 5 who have applied for and not been selected for a Region 5 position based on race or national origin, or have been subjected to retaliation because of their involvement in civil rights activities. The class also includes former permanent Hispanic employees who have formal equal employment

opportunity ("EEO") complaints, based on non-selection because of race, national origin, or retaliation, currently pending before Defendants.

20. Plaintiffs are informed and believe and thereon allege that the plaintiff class is sufficiently numerous and geographically dispersed such that joinder is impracticable.

21. The claims of the Plaintiffs are typical of the claims of the members of the plaintiff class.

22. Plaintiffs will fairly and adequately protect the interests of the plaintiff class. The named Plaintiffs have no interest which is now or may be potentially antagonistic to the interests of the plaintiff class. The attorneys representing the Plaintiffs and the plaintiff class have substantial experience in litigating federal and state law claims of employment discrimination.

23. Defendants have acted on grounds generally applicable to the Plaintiffs and the plaintiff class, thereby making appropriate final injunctive relief and corresponding declaratory relief with respect to the plaintiff class as a whole.

24. Questions of law and fact common to the members of the plaintiff class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

25. All conditions precedent to jurisdiction pursuant to Title VII have been satisfied by plaintiffs. Plaintiffs timely filed charges of discrimination with Defendant UNITED STATES DEPARTMENT OF AGRICULTURE on their claims of discrimination and on their claims of non-compliance with the Agreement more than 180 days prior to the institution of this action, and this action is timely filed.

26. Plaintiffs filed a motion for reconsideration on their appeal to the EEOC on their claim of non-compliance with the Agreement more than 180 days prior to the institution of this action.

27. On or about June 26, 2002 the Parties entered into a Settlement Agreement regarding the class claims in this action. (Exhibit 1) The Settlement Agreement provides that the

Agency must increase representation of Hispanics in the Region 5 work force. The Settlement Agreement also provided a claims resolution process to mediation Equal Employment Opportunity (hereinafter "EEO") complaints which were outstanding at the time of the signing of the Settlement Agreement.

28. Section III (A)(1) of the Settlement Agreement provides that any class members, including named-plaintiffs, who had pending formal EEO and individual complaints of non-selection based upon race or national origin, or retaliation with respect to this complaint would be afforded the opportunity to participate in mediation. Unresolved complaints that were the subject of unsuccessful mediations were to continue to be processed under normal EEO procedures.

29. At the time that the time the Settlement Agreement was entered into, named-plaintiff Peggy Hernandez had three pending EEO complaints, which were alleged in this lawsuit and upon which her named-plaintiff capacity was based as set forth in paragraphs 10, 38 and others of this class complaint.

30. On or about August 25, 2003, named-plaintiff Hernandez participated in a mediation pursuant to Section III of the Settlement Agreement. Of all those requesting mediation pursuant to Section III, Hernandez was the only named plaintiff and class representative.

31. Class Counsel and the Agency made further attempts to resolve named-plaintiff Hernandez's claims during a meeting on or about February 19, 2004. This meeting was unsuccessful. On or about February 19, 2004, the Agency issued a Best and Final Offer (hereinafter " BAFO") pursuant to Section III (A)(4) of the Settlement Agreement. The BAFO remained open until March 5, 2004. Named-plaintiff Hernandez declined the BAFO.

32. Since the Parties have not successfully resolved Ms. Hernandez's individual claims, she requests moves to amend her complaint.

33. Plaintiff HERNANDEZ has filed at three timely formal Equal Employment Opportunity complaints, including Complaint Numbers # 000878, 010553 and 010762,

regarding the facts described below. Ms. Hernandez never received a Final Agency Decision for regarding 00878, but she filed this present class action in October, 2001 which was more than 180 days after she filed her EEO Complaint.

34. Plaintiff HERNANDEZ's complaints numbers 010553 and 010762 were combined for investigation. On July 31, 2002, Plaintiff received a letter informing her that she could either request hearing, file in federal court or that the Agency would issue a Final Agency Decision. The Agency never issued a Final Agency Decision. Since no decision was ever issued by the Agency, this Complaint is timely filed. In addition, the allegations in this EEO complaint were already part of this lawsuit filed October 2001.

## GENERAL ALLEGATIONS

35. At all times relevant herein, Plaintiffs were employed by Defendant REGION 5.

36. On December 16, 1988, the RHWG and a number of individual Plaintiffs as class agents filed a class action administrative complaint against Defendant REGION 5, alleging that its hiring and promotional practices discriminated against Hispanic employees.

37. On March 30, 1990, the RHWG and class agents entered into the "Hispanic Resolution Agreement" ("Agreement"), wherein Defendant REGION 5 agreed to implement procedures and policies necessary to achieve the goal of the Agreement, which was that of attaining a Region-wide Hispanic workforce at parity with Hispanic representation in the applicable California civilian labor force.

38. At the signing of the Agreement, the Hispanic share of Region 5's employee workforce was approximately 7% Region-wide. The 1990 Hispanic share of the California civilian labor force was approximately 24%.

39. In the four years after the signing of the Agreement, however, Hispanic representation within Region 5 failed to rise more than one percent above its level at the time of the signing of the Agreement. For example:

a. Although the Agreement required 95% Hispanic workforce parity in each of the five general job categories -- professional, administrative, technical, clerical, and "other" -- parity was achieved in *none* of those categories.

b. Although the Agreement required 90% parity in job series containing 50 or more employees, the Region failed to reach this goal in *23* out of 25 such series. In many series, Hispanic representation actually *decreased* under the Agreement.

c. Although the Agreement required 85% parity in 28 particular job grades targeted by the parties for improvement, the Region failed to reach this goal in fully *26* of them.

d. Although the Agreement targeted specific decision-making positions for increase Hispanic representation, there was, overall, *no improvement whatever* as far as they were concerned.

40. By their own admission, and as the above statistics reflect, Defendants systematically failed to recruit, hire, or promote Hispanic employees in sufficient numbers to comply with their obligations under the Agreement. For example:

a. Defendant REGION 5's own monitoring reports concerning the implementation of the Agreement in its forests variously characterized their progress in meeting the parity goals as "insufficient"; predicted that "the Region will fall steadily behind in its attempts to reach [its goal of workforce parity]"; conceded that "few Hispanic employees are receiving promotions"; and noted that "[t]here is a lack of commitment, education, and awareness of the Hispanic Program on some forests."

b. Defendant REGION 5's Federal Affirmative Employment Program Plan observed that "[c]urrent recruitment and placement efforts [regarding Hispanics] are ineffective, inefficient and inconsistent"; and also stated that regional compliance efforts were hobbled by "inadequate program structure due to a lack of emphasis by managers and first line supervisors on Civil Rights workload."

c. Declaration evidence submitted in connection with EEOC administrative proceedings in this matter revealed significant and overt discriminatory animus and resistance toward compliance efforts.

41. Moreover, since the signing of the Agreement, Defendants engaged in a pattern and practice of retaliatory conduct against Hispanic employees who sought to enforce the terms of the Agreement through activities conducted as members of the RHWG. For example:

a. A 1992 report commissioned by the Forest Service to investigate claims of discriminatory retaliation by RHWG members found: 1) a pattern of backlash due to activism in the Hispanic Employment Program; 2) reprisal against Hispanics, such as downgraded performance ratings and the initiation of adverse employment actions; 3) non-selection of highly qualified Hispanics; 4) Hispanics being placed on "unfunded" lists; and 5) Hispanics being subjected to disparate and unfair treatment.

b. Several Region 5 forests reported to regional management that "Hispanic employees continue to be harassed by others based on ethnic origin," and found that "hostile work environments" existed in the Region, including in the Mendocino and El Dorado National Forests.

c. Declaration evidence submitted in connection with EEOC administrative proceedings in this matter revealed numerous instances of disparate treatment against Hispanics with respect to assignments, poor performance ratings and unjustified disciplinary proceedings, as well as harassment in the form of ethnic slurs and ridicule, against Hispanics, particularly against those active in civil rights causes.

42. On May 18, 1993, Plaintiffs MICHAEL BRIONEZ, PEGGY HERNANDEZ, MARIA HERNANDEZ, and ALAN GALLEGOS, on behalf of the class of similarly situated Hispanic employees of Defendant REGION 5, and organizational plaintiff RHWG, filed an administrative complaint with Defendant UNITED STATES DEPARTMENT OF AGRICULTURE alleging Defendant REGION 5's non-compliance with the Agreement.

43. On May 10, 1994, Defendant UNITED STATES DEPARTMENT OF AGRICULTURE issued its finding of compliance by Defendant REGION 5 with the Agreement, and Plaintiffs timely appealed therefrom to the Equal Employment Opportunity Commission ("EEOC").

44. On April 6, 1996, the EEOC found that Defendant REGION 5's excuse for non-compliance was insufficient, and ordered Defendant UNITED STATES DEPARTMENT OF AGRICULTURE to reinstate Plaintiffs' original complaint. Plaintiffs timely filed a motion for reconsideration of remedy, and Defendant REGION 5 filed a motion for reconsideration of the EEOC decision in its entirety.

45. On October 5, 1999, the EEOC issued a decision in favor of Defendant REGION 5. Plaintiffs timely filed a motion for reconsideration therefrom. On July 19, 2001, the EEOC denied Plaintiffs' motion for reconsideration.

46. In July 2000, Plaintiff PEGGY HERNANDEZ was discriminated against by Defendant REGION 5 on the basis of her national origin and unlawful retaliation when she was not selected for the position of Forest Supervisor, Angeles National Forest in Region 5, a position for which she was qualified and for which she applied.

47. In 2001, PEGGY HERNANDEZ was denied reassignment to Region 5 and to the Pacific Crest Trial Manager Position. Other individuals who were not Hispanic or had not filed EEO complaints were permitted to transfer to Region 5.

48. In 2001, Although PEGGY HERNANDEZ was qualified, she was not selected for a Assistant Director of the Cooperative Fire, for Region 5. HERNANDEZ was not selected due to discrimination and retaliation.

49. Defendant REGION 5 discriminated against Plaintiff PEGGY HERNANDEZ on the basis of her national origin and retaliated against her because of her prior EEO activity.

**ALLEGATIONS OF PEGGY HERNANDEZ**

50. HERNANDEZ has been an employee of the Forest Service since 1980. She is an Executive Group member of the Regional Hispanic Working Group (RHWG), and has held that position since the Group's inception in the mid 1980's. The role of the RHWG is to monitor progress in implementing the settlement agreements between the RHWG and the Forest Service.

51. Plaintiff HERNANDEZ was a signatory to the Hispanic Resolution Agreement (HRA), a settlement agreement entered into between the Forest Service, Region 5 and the RHWG, whereby it was Region 5's intention to undertake and continue specific measures designed to eliminate the under-representation of all groups, including Hispanics, from the R5 workforce. The HRA was in effect from March 30, 1990 until April, 1994.

52. HERNANDEZ is a signatory to the Hispanic Settlement Agreement, a settlement agreement entered into by the RHWG and the Forest Service in June, 2003, with an effective date of December, 2003. The monitoring and enforcement of that agreement was the subject of regular and numerous communications between the Region and Ms. Hernandez concerning the Region's failure to make any progress in reaching work force parity.

53. As a member of the RHWG, HERNANDEZ has actively monitored the Region's compliance with the HSA and has made a concerted effort to assist the Region with its implementation of the Agreement provisions.

54. From March, 2000 to the summer of 2001, HERNANDEZ made several efforts to relocate to Region 5. She applied and was not selected for the following positions:

**Angeles National Forest, Forest Supervisor, GS-340-15**. HERNANDEZ was rated among the best qualified and her name was referred to the selecting official. A white female was selected.

**Deputy Regional Forester, Resources, GS-340-15**. HERNANDEZ was rated among the best qualified and her name was referred to the selecting official. A white male was selected.

**Director, State and Private Forestry, GS-340-15**. HERNANDEZ was rated among the best qualified and her name was referred to the selecting official. A white female was selected.

**Deputy Regional Forester, State and Private Forestry, GS-340-15**. HERNANDEZ was rated among the best qualified and her name was referred to the selecting official. A white male was selected.

**Forest Supervisor, Sierra and Sequoia National Forests, GS-340-15**. HERNANDEZ was rated among the best qualified and her name was referred to the selecting official. The incumbents, both white males, were selected.

**Assistant Director, Cooperative Fire, GS-401-13**. HERNANDEZ was not formally notified of her qualifications for the position. A white male was selected.

**Pacific Crest Trail Manager, GS-401-13**. HERNANDEZ was not formally notified of her qualifications for this position. However, HERNANDEZ was advised by the Recreation Director, John Shilling, that she was the preferred candidate. The position was never offered to HERNANDEZ. A white male was selected.

55. From March 2000 to the summer of 2001, HERNANDEZ also requested placement assistance through reassignment or detail to Region 5. HERNANDEZ requested reassignment to the then vacant Regional Forester Liaison position, GS-14 (her grade level at the time), located in Sacramento, CA. HERNANDEZ's requests for reassignment to the Liaison position were denied because then Regional Forester Brad Powell said that when he reassigned employees, it resulted in complaints being filed. Powell stated that there just weren't many opportunities for reassignment in Region 5. During this same time period, Powell reassigned several other employees into vacant positions, including:

Jim Fenwood, reassigned to Forest Supervisor, Mendocino NF from Washington Office. Wife is Laurie Fenwood, then Director, Ecosystem Management, presently Enterprise Team Director. These two individuals are a white male and female.

Brent Handley, reassigned to Director, Lands and Minerals, Regional Office and wife Jayne Handley, reassigned to newly created position in Information Management, from Washington Office. These two individuals are a white male and female

Janice Gauthier, reassigned to Regional Forester Assistant position, newly created position in the Regional Forester's staff, GS-301-13. This individual is a white female.

56. During this same time period, HERNANDEZ was on the Regional Hispanic Working Group Executive Board, and was one of the principal negotiators of the Hispanic Resolution Agreement.

57. In August, 2004, HERNANDEZ participated in mediation of her then pending EEO complaints as outlined in the HSA. A Best and Final Offer (BAFO) was made in April, 2004, and was rejected.

58. In August 2003, HERNANDEZ applied to the Regional Recreation Director position, GS-401-15. HERNANDEZ was rated among the best qualified and her name was referred to the selecting official. A white female was selected.

**APPROPRIATENESS OF EQUITABLE RELIEF**

59. Plaintiffs and the class they represent do not have a plain, adequate, or complete remedy at law. Injunctive relief including, but not limited to, an order enjoining Defendants from future such discriminatory actions is a therefore appropriate and necessary to effectuate the purposes of Title VII.

**CLAIM FOR RELIEF**
**[Discrimination Because of National Origin - Title VII]**

60. Plaintiffs refer to and incorporate herein by reference the allegations contained in Paragraphs 1 through 39.

61. Defendants' use of the policies and practices complained of herein, including but not limited to their non-selection, harassment, retaliation, and other adverse employment actions against Plaintiffs, constituted unlawful discrimination in employment on the basis of national origin in violation of Title VII.

62. As a direct and proximate result of the above-described actions of Defendants, Plaintiffs were not selected for positions for which they were qualified, and suffered a loss of wages.

63. As a further direct and proximate result of the above-described actions of Defendants, Plaintiffs have suffered and/or continue to suffer emotional distress, humiliation and dignitary harms, and other injuries.

64. Defendants undertook the above-described actions willfully and with disregard for Plaintiffs' rights under Title VII.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

1. For an injunction restraining Defendants and their officers, agents, directors, successors, employees, attorneys, or representatives from further violations of Title VII, including but not limited to enjoining Defendants from the use of policies and practices such as those complained of herein, and requiring the establishment of appropriate and effective means to prevent future such violations;

2. For an order requiring Defendants to make offers of selection to Plaintiffs to positions substantially comparable to those for which they were non-selected, with full retroactive salary, benefits, and seniority;

3. For an injunction enforcing the terms of the March 30, 1990 Hispanic Resolution Agreement or, in the alternative, incorporating the goals contained in that Agreement;

4. For an award of back pay, in amounts according to proof;

5. For an award of compensatory damages, in amounts according to proof;

6. For an award of punitive damages, in amounts according to proof;

7. For Plaintiffs' reasonable attorneys' fees and costs of suit; and

8. For such other and further relief which this Court deems just, equitable, and proper.

Dated: October 22, 2001

Respectfully submitted,

Denise M. Hulett (No. 121553)
MEXICAN AMERICAN LEGAL DEFENSE AND EDUCATIONAL FUND
931 Cole Street, No. 381
San Francisco, CA 94117
Telephone: (415) 504-6901
Facsimile: (415) 504-8901 (fax)

Robert E. Borton (No. 53191)
Cal G. Gonzales (No. 166540)
HELLER EHRMAN WHITE & McAULIFFE LLP
333 Bush Street
San Francisco, CA 94104-2878
Telephone: (415) 772-6000
Facsimile: (415) 772-6268

Christopher Ho, Senior Staff Attorney (No. 129845)
THE LEGAL AID SOCIETY – EMPLOYMENT LAW CENTER
1663 Mission Street, Suite 400
San Francisco, California 94103-2449
Telephone: (415) 864-8848 [x255]
Facsimile: (415) 864-8199

Lisa Duarte (No. 169750)
MINAMI, LEW & TAMAKI LLP
360 Post Street, 8th Floor
San Francisco, CA 94108
Telephone: (415) 788-9000
Facsimile: (415) 398-3887
Email: ld@mlts.com

By: ______________________________
DENISE HULETT

Attorneys for Plaintiffs

Heller
Ehrman
White &
McAuliffe LLP