Apple Inc. v. Psystar Corporation Doc. 1336

**Gregory L. Spallas - SBN 129306**
**Bahareh Abdollahi - SBN 227206**
PHILLIPS, SPALLAS & ANGSTADT LLP
650 California Street, Tenth Floor
San Francisco, California 94108
Telephone: (415) 278-9400
Facsimile: (415) 278-9411

Attorneys for Defendants
Shakil Kissana, Grand Lake Copy,
Oakland Copy & Print

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SATISH KUMAR dba GRAND COPY,<br><br>Plaintiff,<br>v.<br><br>GRAND LAKE COPY, SHAKIL KISSANA,<br>OAKLAND COPY & PRINT,<br><br>Defendants. | Case No. C 03 4463 ADR VRW<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT AS TO CONSUMER CONFUSION**<br><br>Date: August 19, 2004<br>Time: 2:00 p.m.<br>Judge: Hon. Vaughn R. Walker |



Dockets.Justia.com

**TABLE OF CONTENTS**

I. INTRODUCTION . . . . . . . . . . 1

II. FACTUAL STATEMENT . . . . . . . . . . 2

III. LEGAL ARGUMENT . . . . . . . . . . 4

A. Summary Judgment Should Be Granted in Favor of Defendants As To The Lack of Consumer Confusion Because Plaintiff Has Failed to Prove He Has a Valid Protectable Trademark . . . . . . . . . . 4

B. Summary Judgment Should Be Granted In Favor of Defendants Because Plaintiff Has Not Shown a Likelihood of Consumer Confusion Caused By Defendants . . 7

IV. CONCLUSION . . . . . . . . . . 12

# TABLE OF AUTHORITIES

## Cases

*AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-349 (9th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . 7

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*California Cooler Inc. v. Loretto Winery, Ltd.*, 774 F. 2d 1451, 1452 (9th Cir. 1985) . . . . . . . . . 7

*Celotex Corp. v. Cartrett*, 477 U.S. 317, 322 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Eclipse Associates Ltd. v. Date General Corp.*, 894 F. 2d 1114 (9th Cir. 1990) . . . . . . . . . . . . . 7

*Filipino Yellow Pages v. Asian Journal*, 198 F.3d 1143, 1147 (9th Cir. 1999) . . . . . . . . . . . . . . . 5

*Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042, 1055 (9th Cir. 1998) . . . . 5

*Miss. World (UK) Ltd. v. Mrs. America Pageants, Inc.*, 856 F. 2d 1445, 1448 (9th Cir. 1988) . . . 7

*New West Corp. v. NYM Co. of Calif., Inc.*, 595 F. 2d 1194, 1202 (9th Cir. 1979) . . . . . . . . . . . . 7

*Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.* (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . 4

*Nutri/System, Inc. v. Con-Stan Indus.*, 809 F.2d 601, 605-606 (9th Cir. 1987) . . . . . . . . . . . . . . . 9

*Secular Org. for Sobriety, Inc. v. Ullrich, et al*, 213 F.3d 1125, 1130 (9th Cir. 2000) . . . . . . . . . . 5

## Statutes

Federal Rule of Civil Procedure 11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Federal Rule of Civil Procedure 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

# I. INTRODUCTION

This is an action by plaintiff and his copy shop alleging various causes of action against defendant and his copy shop, all of which are premised on defendants' alleged violation of plaintiff's common law trademark rights in the name of his business. Specifically, plaintiff's case of trademark infringement is based on alleged intentional misrepresentation by defendants. Plaintiff bases these allegations solely on the experiences of various customers who claim that defendant Kissana has misrepresented himself as affiliated with plaintiff and plaintiff's business. However, as yet, there has been no admissible evidence presented by plaintiff to support these allegations of consumer confusion.

Following the filing of his Complaint on October 2, 2003, plaintiff immediately and without notice filed a request for a Temporary Restraining Order. This request was denied outright by the Court. On or about November 18, 2003, again without notice to defendants, plaintiff filed a Motion for Preliminary Injunction and applied for an Order to have the hearing set on shortened time. This court granted the order shortening time and the hearing on plaintiff's application for a preliminary injunction was scheduled for January 29, 2004. Defendants were made aware of this hearing date only by receipt of the court order setting such, however plaintiff never served defendants with plaintiff's Application for Preliminary Injunction or supporting papers.

Defendants ultimately obtained plaintiff's moving papers from the Court and spent dozens of hours preparing an opposition to plaintiff's application. Less than one week before the preliminary injunction motion was to be heard, plaintiff unilaterally withdrew the application. Due to plaintiff's frivolous filings and withdrawal, defendants were forced to unnecessarily oppose the preliminary injunction motion and file an objection to the withdrawal, as well as a Rule 11 motion seeking sanctions against plaintiff and his attorney.

Defendants respectfully submit the following Memorandum of Points and Authorities in support of their Motion for Summary Judgment as to consumer confusion for the consideration of the Court. Summary Judgment should be granted in favor of defendants because plaintiff cannot meet the very high standard required to show that there are genuine issues of material fact

present as to consumer confusion.

## II. FACTUAL STATEMENT

Plaintiff has owned and operated a copy shop known and registered as Grand Copy Center since approximately 1992. Plaintiff's business is located at 3665 Grand Avenue, Oakland, California. From 1996 until 2000, plaintiff employed defendant Shakil Kissana, at which point defendant Kissana quit to expressly open his own copy shop (See ¶¶3&4 of the Declaration of Shakil Kissana, attached hereto).

In January of 2001, Mr. Kissana and his wife Ruhksana Kissana, opened their copy business called Grand Lake Copy at 3527 Grand Avenue, Oakland, California (See ¶6 of the Declaration of Shakil Kissana, attached hereto; see also ¶ 3 of the Declaration of Rukhsana Kissana, attached hereto). This business was opened and operated with the full knowledge of plaintiff and was located only one block away from plaintiff's business. Up until the Kissanas opened Grand Lake Copy in 2001, plaintiff had advertised his business as Grand Copy Center. However, in 2001, plaintiff suddenly changed his business' sign and began advertising his business as Grand Copy (See **Exhibit H** attached to ¶7 of the Declaration of Shakil Kissana, attached hereto).

In or about August of 2003, Mr. and Mrs. Kissana opened a second location of their copy business, Oakland Copy & Print, at 3711 Grand Avenue, Oakland, California, with a telephone number of 510/451-2679 (See ¶8 of the Declaration of Shakil Kissana, attached hereto; see also ¶4 of the Declaration of Rukhsana Kissana, attached hereto). Shakil Kissana specifically requested and paid for this number because the last four digits of the telephone number spell "C-O-P-Y" (See ¶8 of the Declaration of Shakil Kissana, attached hereto).

The Kissanas never heard any objection or complaints from plaintiff, either verbal or written, regarding their business until the Complaint in this action was filed by plaintiff on October 2, 2003 (See ¶9 of the Declaration of Shakil Kissana, attached hereto; See also ¶5 of the Declaration of Ruhksana Kissana, attached hereto). In fact, Mrs. Kissana encountered plaintiff prior to the filing of the instant suit, and plaintiff failed to mention whatsoever any problems he had with the Kissanas and/or their business (See ¶6 of the Declaration of Ruhksana Kissana,

attached hereto). Further, the Kissanas and plaintiff share several mutual acquaintances, but the Kissanas have also not become aware of any problems plaintiff had with the Kissanas and/or Grand Lake Copy through anyone else (See ¶10 of the Declaration of Shakil Kissana, attached hereto). Neither Shakil, Ruhksana nor any other family member or employee of the Kissanas have ever passed themselves off as plaintiff's business to customers or anyone else (See ¶11 of the Declaration of Shakil Kissana, attached hereto; See also ¶7 of the Declaration of Ruhksana Kissana, attached hereto).

At the same time plaintiff filed his complaint on October 2, 2003, plaintiff filed his Application for a Temporary Restraining Order against defendants but never served these papers on defendants (See ¶3 of the Declaration of Gregory L. Spallas, attached hereto). In a court Order served on October 16, 2003, the Hon. Vaughn R. Walker issued a nine page opinion denying plaintiff's Application for TRO (See **Exhibit A** attached to ¶4 of the Declaration of Gregory L. Spallas, attached hereto).

Subsequently, on November 18, 2003, plaintiff filed an Application for Order Shortening Time for Motion for Preliminary Injunction as well as the Motion for Preliminary Injunction. Although plaintiff again never served these papers on defendants, defendants obtained a copy when they received the Court Order setting the hearing on the motion. Defendants spent dozens of hours preparing an opposition to plaintiff's Application. Less than one week before the preliminary injunction motion was to be heard, plaintiff unilaterally withdrew the motion, erroneously relying on the authority of L.R. 7-7 (a)(1).

In response to plaintiff's frivolous attempts to obtain an injunction against defendants, defendant filed a Motion for Sanctions against plaintiff, pursuant to FRCP 11, also scheduled to be heard on August 19, 2004. Defendants maintain that all of plaintiff's attempts for an injunction were for improper purposes, not warranted by law, and frivolous, therefore violating Federal Rule of Civil Procedure 11 and exposing him to sanctions.

On February 3, 2004, during a Status Conference, the Court ordered both parties to file their Cross Motions for Summary Judgment as to the issue of consumer confusion, with the hearing currently on calendar for August 19, 2004. During the discovery phase of this litigation,

plaintiff was unable to produce any admissible evidence to support his claim of infringement. Instead, he provided hearsay statements by witnesses for whom he was unable to list any current addresses or telephone numbers. As such, the Court should grant defendants' Motion for Summary Judgment determining there is no "consumer confusion" as to the competing businesses.

## III. LEGAL ARGUMENT

In a summary judgment, plaintiff has both an initial burden of production and the ultimate burden of persuading the court that there is "no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FRCP 56(c).

"Summary judgment for a defendant is appropriate when the plaintiff fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Cartrett,* 477 U.S. 317, 322 (1986). However, if the moving party fails to carry its initial burden of production, the opposing party has no obligation to produce anything. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.* (9th Cir. 2000).

At the summary judgment stage the judge's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). The Supreme Court in *Anderson*, defined "genuine issue of material fact" as a determination by the Federal Judge that a reasonable jury could return a verdict for the nonmoving party. 477 U.S. at 248-50. When reviewing the complete lack of evidence presented by plaintiff in this matter, the Court will have no option other than to grant defendants' motion.

### A. Summary Judgment Should Be Granted in Favor of Defendants As To The Lack of Consumer Confusion Because Plaintiff Has Failed to Prove He Has a Valid Protectable Trademark

The name of plaintiff's business is not sufficiently distinctive to constitute a trademark. Plaintiff has failed to register "Grand Copy Center" or "Grand Copy" as a trademark, and the names "Grand Copy Center" and "Grand Copy" are merely descriptive of the location at which

plaintiff conducts his copying business (See Spallas Declaration, **Ex. D**, Kumar Deposition 43:14-16). Descriptive marks define qualities or characteristics of a product in a straightforward way that requires no exercise of the imagination to be understood. *Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042, 1055 (9th Cir. 1998). Descriptive marks only acquire distinctiveness, and are consequently protected, if plaintiff is able to demonstrate that plaintiff has established some sort of "secondary meaning" in the mark. *Secular Org. for Sobriety, Inc. v. Ullrich, et al*, 213 F.3d 1125, 1130 (9th Cir. 2000). When a mark has achieved "secondary meaning" in the minds of consumers, it has become distinctive of the mark's applicant's goods in commerce. *Filipino Yellow Pages v. Asian Journal*, 198 F.3d 1143, 1147 (9th Cir. 1999). Secondary meaning can be demonstrated in several ways, including but not limited to direct consumer testimony, survey evidence, exclusivity, manner and length of use of a mark, amount and manner of advertising, amount of sales and number of customers, established place in the market and proof of intentional copying by the defendant. *Id.* at 1151.

In the instant matter, "Grand Copy" and "Grand Copy Center" are both descriptive marks, and plaintiff has failed to produce any evidence of "secondary meaning" associated with these alleged marks. "Grand Copy" and "Grand Copy Center" are descriptive in that they simply signify what they state, namely, the fact that it is a copy business located on Grand Avenue in Oakland, California. Plaintiff has not demonstrated any "secondary meaning" in these supposed marks in that plaintiff has introduced virtually no admissible evidence of direct consumer testimony, survey evidence, exclusivity, manner and length of use of a mark, amount and manner of advertising, amount of sales and number of customers, established place in the market or proof of intentional copying by the defendant. In fact, in plaintiff's responses to defendant's special interrogatories, plaintiff fails to set forth any evidence of secondary meaning, providing only self-serving and baseless accusations against defendants (See **Exhibit F** attached to ¶9 of the Declaration of Gregory L. Spallas, attached hereto).

To the contrary, plaintiff changed the name of his business from "Grand Copy Center" to "Grand Copy" merely two years ago, and up until that point was listed in the White Pages as "Grand Copy Center" (See **Exhibit B** attached to ¶5 of the Declaration of Gregory L. Spallas,

attached hereto). Plaintiff has not introduced any evidence that, despite the fact that "Grand Copy" has not been exclusively used for a long period of time, enough time has somehow elapsed for it to have established a place in the market and a secondary association among customers. Further, as to plaintiff's "evidence" of alleged intentional misrepresentation by the Kissanas, defendant Shakil Kissana and his wife Ruhksana Kissana have <u>never</u> conducted any intentional acts of misrepresentation, and plaintiff's supposed "evidence" to this effect is inadmissible and/or should be excluded by the Court as discussed below (See ¶11 of the Declaration of Shakil Kissana, attached hereto; see also ¶7 of the Declaration of Ruhksana Kissana, attached hereto; see also ¶¶ 4-9 of Declaration of Bahareh Abdollahi).

Thus, the fact that "Grand Copy"/"Grand Copy Center" is descriptive and plaintiff has failed to demonstrate "secondary meaning," means that the name of plaintiff's business is not protectable as a mark and cannot have been "infringed upon" by the Kissanas or Grand Lake Copy. The fact that the name "Grand Copy" is not distinctive, and consequently not protectable, is further evidenced by the numerous businesses in Oakland on Grand Avenue incorporating the word "Grand" into their name. In the 2003 White Pages Business Listings, there are at least 26 businesses alone having a name beginning with the word "Grand" located on Grand Avenue in Oakland (See **Exhibit B** attached to ¶5 of the Declaration of Gregory L. Spallas, attached hereto). This is not including the businesses located on Grand Avenue in Oakland having the word "Grand" somewhere else in their name, i.e., other than the first word of the title of the business. Further, several of the businesses containing the word "Grand" in their names are part of a group of businesses offering similar goods or services. For example, there are several restaurant-type businesses on Grand Avenue with the word "Grand" in their name, i.e., Grand Avenue Café, Grand Oaks Restaurant and Grand Avenue Grill (See **Exhibit B** attached to ¶5 of the Declaration of Gregory L. Spallas, attached hereto). The names of all of these businesses with the word "Grand" in them, including the name of plaintiff's business, are merely descriptive in that they describe where they are located, i.e., on Grand Avenue.

In sum, plaintiff's alleged mark is descriptive, and plaintiff has failed to introduce any admissible evidence regarding the "secondary meaning" of the supposed mark. As plaintiff's

mark is not registered, plaintiff is not entitled to any presumptions of acquired distinctiveness. *California Cooler Inc. v. Loretto Winery, Ltd.*, 774 F. 2d 1451, 1452 (9th Cir. 1985); *Miss. World (UK) Ltd. v. Mrs. America Pageants, Inc.*, 856 F. 2d 1445, 1448 (9th Cir. 1988). Therefore, plaintiff is not entitled to any protection of his alleged "mark." As all of plaintiff's claims against defendants are predicated on trademark infringement, yet plaintiff's mark is not distinctive and consequently not protectable as a "trademark," defendants should be granted summary judgment as to the lack of consumer confusion.

Even if plaintiff's supposed mark acquired distinctiveness, i.e., secondary meaning, plaintiff's mark is an extremely weak descriptive mark entitled to a very narrow scope of protection. *New West Corp. v. NYM Co. of Calif., Inc.*, 595 F. 2d 1194, 1202 (9th Cir. 1979). This means that the names of plaintiff's and defendant's businesses would have to essentially be identical in order to infringe. *Id.* As this is not the case in the instant matter, plaintiff's claims will not withstand the very high standard required for summary judgment on this issue of trademark infringement and consumer confusion.

**B. <u>Summary Judgment Should Be Granted In Favor of Defendants Because Plaintiff Has Not Shown a Likelihood of Consumer Confusion Caused By Defendants</u>**

Plaintiff cannot demonstrate a likelihood of consumer confusion as a result of the actions of defendants. Though the Ninth Circuit has made it clear that the question of consumer confusion is ultimately factual, they have enumerated several factors, discussed below, to be used as a guideline for the district courts. *Eclipse Associates Ltd. v. Data General Corp.,* 894 F. 2d 1114 (9th Cir. 1990).

First, one factor in determining whether consumer confusion is likely is the strength of the mark. *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-349 (9th Cir. 1979). As discussed above, because "Grand Copy" and "Grand Copy Center," are descriptive and plaintiff has failed to demonstrate "secondary meaning," plaintiff's mark is not protectable as a trademark. Therefore, no consumer confusion can result from something the public has not associated with a certain product or service, i.e., a name to which no secondary meaning has become attached. In

fact, plaintiff's witness and long time customer, Nancy Purdon, stated during her deposition that she does not refer to "Grand Copy" by its name, but instead as "Satish's store." (Abdollahi Declaration, **Ex. I**, Purdon Deposition 18:25-19:8). At most, "Grand Copy" is an extremely weak descriptive mark entitled to a very narrow scope of protection.

Two other factors in determining consumer confusion are the proximity of the goods and the similarity of the marks. Here, though the two copy shops do have similar names and are located in close proximity, the names of these shops are not so similar as to incite confusion among customers who are intentionally choosing to solicit one of the shops. Further, as explained above, the similarity in the names is due to the descriptive nature of the location and services provided by the shop. Also, plaintiff stated in his deposition that within the same neighborhood and on Grand Avenue, there are a total of five copy shops (Spallas Declaration, **Ex. D**, Kumar Deposition 80:18-22). It is easy to imagine that a customer looking for a copy shop located on Grand Avenue could wander into any one of these five shops if the customer was not seeking out the services of a specific merchant.

Another factor in determining likelihood of confusion is the defendants' intent. Plaintiff makes disturbing allegations regarding defendants causing consumer confusion by intentionally misrepresenting themselves and/or their business as being affiliated with plaintiff. Contrary to plaintiff's assertions, neither Shakil Kissana nor any other member of his family or employee of Grand Lake Copy <u>have ever</u> passed themselves off as plaintiff's business to customers or anyone else (See ¶11 of the Declaration of Shakil Kissana, attached hereto; See also ¶7 of the Declaration of Ruhksana Kissana, attached hereto). It is also important to note that plaintiff failed to allege any intentional acts on the part of defendants in his Complaint.

Moreover, with respect to plaintiff's allegations of defendant, Shakil Kissana, passing himself off as being affiliated with plaintiff, it should be noted that the Kissanas have an employee named Sunil Kumar, and as plaintiff is named Satish Kumar, it is possible that this may have generated some innocent confusion (See ¶13 of the Declaration of Shakil Kissana, attached hereto). This is especially true in light of, not only the similarity between the two names, but the fact that Grand Lake Copy has dozens of copiers running at any given time, and

there is virtually constant background noise when anyone at Grand Lake Copy is speaking with a customer (See ¶14 of the Declaration of Shakil Kissana, attached hereto).

Additionally, plaintiff alleges in his declaration in support of his applications for TRO and preliminary injunction that the Kissanas "intentionally" sought to cause consumer confusion and affiliate themselves with plaintiff and plaintiff's business by virtue of one of the Kissana's businesses having the same last four digits in their phone number as plaintiff's business. However, again plaintiff failed to make any charging allegations regarding any phone number similarity in his Complaint in this matter. The Kissanas obtained the specific telephone number for their Oakland Copy & Print business because the last four digits spell "C-O-P-Y." Many businesses incorporate the nature of their business into their business telephone numbers, e.g., 1-800-572-LOAN for a lender and/or bank, or 246-NAIL for a nail salon business. While the Kissanas actively pursued, bought, and paid for the Oakland Copy & Print telephone number, this had everything to do with the desire to have their phone number spell out the word "COPY," and was not the alleged deliberate entering into any unlawful competition with plaintiff. Therefore, given the differences in both the first three digits of the phone numbers of the two businesses, and the vast dissimilarity in the two businesses' names, it is extremely unlikely that any consumer confusion would result.

Another factor for determining likelihood of confusion is evidence of actual confusion. The fact that the Kissanas vehemently deny that they ever misrepresented themselves as being affiliated with plaintiff or his business is especially significant in that all of plaintiff's "evidence" of actual consumer confusion is inadmissable. Courts have held that they do not accept evidence of actual confusion if it is "de minimis." *Nutri/System, Inc. v. Con-Stan Indus.*, 809 F.2d 601, 605-606 (9th Cir. 1987). Plaintiff fails to set forth any evidence of consumer confusion except the inadmissable and unsubstantiated accounts of several unavailable witnesses.

Plaintiff provided four witnesses in his Supplemental Disclosure of February 13, 2004, and identified additional witnesses during his deposition of April 15, 2004 (See **Exhibit E** attached to ¶ 8 of Spallas Declaration). One of the witnesses provided in plaintiff's Supplemental Disclosure, Craig Wilson, a private investigator hired by plaintiff to investigate the alleged

misrepresentation by defendants, is unresponsive to numerous telephone messages (See ¶4 of the Declaration of Bahareh Abdollahi, attached hereto). Also, plaintiff does not have Mr. Wilson's address, making it impossible for defendants to subpoena his deposition (See **Exhibit L** attached to ¶5 of the Declaration of Bahareh Abdollahi). Plaintiff submitted Mr. Wilson's declaration in support of his applications for TRO and preliminary injunction. In his declaration, Mr. Wilson claims that defendant, Mr. Kissana, misrepesented an affiliation with plaintiff, both to him and a "friend." Besides the fact that Mr. Wilson has not been made available for deposition, his declaration would be inadmissable because it is based on hearsay regarding his "friend's" experience that is outside his personal knowledge.

Another witness provided by plaintiff in his Supplemental Disclosure is Nancy Purdon, also a customer of plaintiff's shop, who prepared a memorandum in the summer of 2003 alleging that "her friend" experienced confusion and intentional misrepresentation by defendant. Ms. Purdon's memorandum was attached to plaintiff's declaration in support of his applications for TRO and preliminary injunction. However, during her deposition of April 23, 2004, Ms. Purdon admitted that the "incident" her friend experienced, which was described in this memorandum, never actually occurred (Abdollahi Declaration, **Ex. I**, Purdon Deposition 24:11-18). Ms. Purdon was planning on sending her friend into defendant's shop, and assumed that defendant would intentionally misrepresent himself as affiliated with plaintiff's shop. As no misrepresentation actually occurred, this memorandum is irrelevant and also inadmissable.

One of the other two witnesses listed by plaintiff in his supplemental disclosure, Ms. Nancy Morganti, has recently passed away, and there is no other person at Horace Mann Elementary School with information regarding this matter (See ¶6 of the Declaration of Bahareh Abdollahi, attached hereto). The other witness, Mr. Yuval Atias, refuses to cooperate despite numerous attempts by defendant's counsel to discuss this matter. Mr. Atias' deposition was subpoenaed for June, 2004, however he failed to appear (See **Exhibit J** attached to ¶7 of the Declaration of Bahareh Abdollahi).

Plaintiff has yet to provide any contact information for the three other witnesses he identified during his deposition, despite numerous requests by defendants' counsel (See **Exhibit**

**K** attached to ¶8 of the Declaration of Bahareh Abdollahi). Additionally, defendants' counsel spent several hours attempting to independently locate these witnesses to no avail (See ¶9 of the Declaration of Bahareh Abdollahi, attached hereto). As plaintiff has failed to provide these witnesses for discovery purposes, any declarations from them should be stricken and disregarded for the purposes of plaintiff's summary judgment motion.

In sum, plaintiff has presented no admissible evidence of actual consumer confusion. Plaintiff has provided no evidence to support his claims other than his own self-serving statements, all of which are hearsay. Further, defendants have been operating Grand Lake Copy since January, 2001. In over three years of significant business, plaintiff only claims to have evidence of seven customers who were allegedly confused about the two copy shops. Assuming *arguendo*, that these instances actually occurred, this number is minimal, and due to the numerous copy shops located in this area, not surprising. Due to plaintiff's inability to make his witnesses available, plaintiff should be excluded from using evidence of their alleged confusion for purposes of his summary judgment motion. In the alternative, if plaintiff is allowed to present these witnesses, the Court should refrain from rendering an opinion until plaintiff has provided contact information for these witnesses.

In conclusion, the Kissanas have not, in the operation of Grand Lake Copy and Oakland Copy & Print, caused any "likelihood of consumer confusion" as alleged by plaintiff. To the contrary, to the extent there exists any consumer confusion, it is plaintiff who has caused it. Plaintiff contends that the current name of his business is simply "Grand Copy." However, plaintiff registered his business with the City of Oakland as "Grand Copy Center" in 1996, and only changed the name to "Grand Copy" after the Kissanas registered with the City of Oakland and began doing business as Grand Lake Copy. Therefore, when the Kissanas began doing business, plaintiff's business was entitled "Grand Copy Center." "Grand Copy Center" is clearly distinguishable from "Grand Lake Copy," yet plaintiff changed the name of his business's sign and **began** advertising as "Grand Copy" mere months after Grand Lake Copy was opened by the Kissanas. This is evident by plaintiff's advertisements in the Yellow Pages. In 2000, plaintiff still advertised as Grand Copy Center; however, in 2001, the year Grand Lake Copy opened,

plaintiff suddenly changed the business sign and began advertising as Grand Copy (See **Exhibit H** attached to ¶7 of the Declaration of Shakil Kissana, attached hereto). Therefore, not only is plaintiff changing his business' name within the past two years evidence that "Grand Copy" has not acquired secondary meaning, it is also evidence of "confusion" caused by plaintiff himself, and not by defendant's use of the name "Grand Lake Copy."

As plaintiff has failed to introduce any admissible evidence of a likelihood of consumer confusion due to operation of defendants' businesses, plaintiff has failed to meet the high standard required to be granted a summary judgment and defendant should prevail.

## IV. CONCLUSION

Defendant respectfully requests the Court grant defendant's Motion for Summary Judgment as to the lack of consumer confusion as Plaintiff cannot meet the very high standard required to show that there is a genuine issues of material fact present as to this issue.

PHILLIPS, SPALLAS & ANGSTADT LLP

Dated: July 15, 2004

By: [signature]
Gregory L. Spallas
Attorneys for Defendants GRAND LAKE COPY, SHAKIL KISSANA and OAKLAND COPY & PRINT