Apple Inc. v. Psystar Corporation Doc. 1344

MORGENSTEIN & JUBELIRER LLP
BRUCE A. WAGMAN (CSB #159987)
JENNIFER K. ACHTERT (CSB #197263)
One Market, Spear Street Tower, 32nd Floor
San Francisco, CA 94105
Telephone: (415) 901-8700
Facsimile: (415) 901-8701

LOWENSTEIN SANDLER PC
David Harris (admitted *pro hac vice*)
65 Livingston Avenue
Roseland, New Jersey 07068
Telephone: (973) 597-2500
Facsimile: (973) 597-2403

Attorneys for Plaintiff and Counter-Defendant
FEROLIE CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA



| | |
|---|---|
| FEROLIE CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>PEN-RITE SYSTEMS, INC. dba PENRITE SYSTEMS and ADVANTAGE SALES & MARKETING, LLC,<br><br>Defendant. | Case No.: C03 5092 VRW ARB<br><br>(Related Case No. C04-1896 VRW)<br><br>**PLAINTIFF FEROLIE CORPORATION'S NOTICE OF MOTION AND MOTION TO DISMISS THE FIRST, FIFTH, SIXTH AND SEVENTH CAUSES OF ACTION, AND TO STRIKE PART OF THE SECOND CAUSE OF ACTION OF THE AMENDED COUNTERCLAIM OF PEN-RITE SYSTEMS, INC.; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTIONS**<br><br>Date: August 19, 2004<br>Time: 2:00 p.m.<br>Dept.: Hon. Vaughn R. Walker |



Dockets.Justia.com

TABLE OF CONTENTS

Page

NOTICE AND MOTION ....... 1

MEMORANDUM OF POINTS AND AUTHORITIES ....... 3

I. PRELIMINARY STATEMENT ....... 3

II. STATEMENT OF FACTS ....... 3

III. LEGAL ARGUMENT ....... 4

A. Legal Standard For A Motion To Dismiss. ....... 4

B. PenRite's Claim That Ferolie Violated California's Uniform Trade Secrets Act (First Cause of Action) Must Be Dismissed As a Matter of Law. ....... 5

C. PenRite's Request For Monetary Damages Under California's Statutory Unfair Competition Law In Its Second Cause of Action Must Be Stricken. ....... 7

D. PenRite's Fraud Claim (Fifth Cause of Action) Must Be Dismissed As A Matter Of Law. ....... 9

E. PenRite's Only New Claim, That Ferolie Interfered With PenRite's Prospective Economic Advantage (Sixth Cause of Action), Must Be Dismissed As A Matter Of Law. ....... 11

F. PenRite's Claim That Ferolie Interfered With PenRite's Contractual Relations (Seventh Cause of Action) Must Be Dismissed. ....... 13

IV. CONCLUSION ....... 15

MORGENSTEIN & JUBELIRER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Cinebase Software, Inc. v. Media Guaranty Trust, Inc.*
No. C98-1100, WL 661465 (N.D. Cal. 1998) .......... 5, 6

*Clegg v. Cult Awareness Network*
18 F.3d 752 (9th Cir. 1994) .......... 4

*Conley v. Gibson*
355 U.S. 41 (1957) .......... 4

*Globespan, Inc. v. O'Neill*
151 F. Supp. 2d 1229 (C.D. Cal. 2001) .......... 5

*Hip Hop Beverage Corp. v. Ric Representacoes*
220 F.R.D. 614 (C.D. Cal. 2003) .......... 9

*Integral Systems, Inc. v. PeopleSoft Inc.*
1991 WL 498874, 14 (N.D. Cal. 1998) .......... 7

*Lee v. County of Los Angeles*
250 F.3d 668 (9th Cir. 2001) .......... 4

*Sprewell v. Golden State Warriors*
266 F.3d 979 (9th Cir. 2001) .......... 5

*Terracom v. Valley National Bank*
49 F.3d 555 (9th Cir. 1995) .......... 4

*Zito v. Steeplechase Films, Inc.*
267 F. Supp. 2d 1022 (N.D. Cal. 2003) .......... 11

### STATE CASES

*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*
7 Cal. 4th 503 (1994) .......... 10

*Charles C. Chapman Building Co. v. California Mart*
2 Cal. App. 3d 846 (1969) .......... 15

*Charpentier v. Los Angeles Rams Football Co., Inc.*
75 Cal. App. 4th 301 (2000) .......... 9

*Della Penna v. Toyota Motor Sales, U.S.A., Inc.*
11 Cal. 4th 376 (1995) .......... 12

*Freed v. Manchester Service*
165 Cal. App. 2d 186 (1958) .......... 14

*Jones v. Kelly*
208 Cal. 251 (1929) .......... 10



MORGENSTEIN & JUBELIRER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*Korea Supply Co. v. Lockheed Martin Corp.*
29 Cal. 4th 11134 (2003) ........ 8, 12

*Kraus v. Trinity Management Services, Inc.*
23 Cal. 4th 116 (2000) ........ 8

*Lacher v. Super. Court*
230 Cal. App. 3d 1038 (1991) ........ 9-10

*LeFrancois v. Goel*
14 Cal. Rptr. 3d 321 (2004) ........ 11

*Olson v. Cohen*
106 Cal. App. 4th 1209 (2003) ........ 9

*Pacific Gas & Electric v. Bear Stearns & Co.*
50 Cal. 3d 1118 (1990) ........ 14

*Quelimane v. Stewart Title Guaranty Co.*
19 Cal. 4th 26 (1999) ........ 14

*Tozuko Shida v. Japan Food Corp.*
251 Cal. App. 2d 864 (1967) ........ 15

*Westside Center Associates v. Safeway Stores 23, Inc.*
42 Cal. App. 4th 507 (1996) ........ 12

*Youst v. Longo*
43 Cal. 3d 64 (1987) ........ 12

## FEDERAL STATUTES

Federal Rule of Civil Procedure 12(b)(6) ........ 4

## STATE STATUTES

California Civil Code
Section 1709 ........ 11
Section 3333 ........ 11
Section 3426.1 ........ 5
Section 3426.1(a) ........ 7
Section 3426.1(b) ........ 5
Section 17200 ........ 7
Section 17203 ........ 7

## OTHER

Restatement Second of Torts, § 766B c ........ 15

MORGENSTEIN & JUBELIRER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Please take notice that on August 19, 2004, at 2:00 p.m. (or as soon thereafter as counsel may be heard) at 450 Golden Gate, San Francisco, California, in the courtroom of the Honorable Vaughn R. Walker, plaintiff Ferolie Corporation ("Ferolie") will and does hereby move to: dismiss the first, fifth, sixth, and seventh causes of action and strike a portion of the second cause of action set forth in the Amended Counterclaim of defendant Pen Write Systems, Inc. d/b/a PenRite Systems ("PenRite") pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, for the following reasons:

***First Cause of Action - Violation of the Uniform Trade Secrets Act:*** This claim should be dismissed because the Amended Counterclaim fails to allege disclosure of any alleged trade secrets to Ferolie and any misappropriation of any alleged trade secrets by Ferolie.

***Second Cause of Action - Strike Plaintiff's Request for Monetary Damages under California's Statutory Unfair Competition Law:*** This portion of the claim should be stricken because the Amended Counterclaim fails to plead any proper restitution to which it is entitled as a matter of law.

***Fifth Cause of Action – Fraud:*** This claim should be dismissed because the Amended Counterclaim fails to plead any legally cognizable fraud claim separate and apart from PenRite's breach of contract claim.

***Sixth Cause of Action – Interference with Prospective Economic Advantage:*** This cause of action should be dismissed because the Amended Counterclaim fails to state a claim because (i) it does not plead any actionable prospective economic relationship; (ii) it does not plead any acts or inaction by Ferolie to disrupt such relationships; (iii) it does not plead any actual disruption of any prospective contractual relationship; and (iv) it does not plead any actual economic harm to PenRite as a result of any alleged actions by Ferolie.

///

MORGENSTEIN & JUBELIRER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

***Seventh Cause of Action – Interference with Contractual Relations:*** This claim should be dismissed because (i) it does not plead any actionable contract between PenRite and national customers, such as Mars and Unilever Best Foods; and (ii) PenRite does not plead that any contract with Advantage Sales & Marketing, LLC ("ASM LLC") was breached, or any disruption in contractual relations with ASM LLC as to which Ferolie caused a breach, but rather that ASM LLC declined to renew its expired contract with PenRite.

These motions are supported by this notice and the accompanying Memorandum of Points and Authorities, and by such additional matters as may be raised at the hearing.

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff/Counter-Defendant Ferolie Corporation ("Ferolie") seeks to dismiss the first, fifth, sixth, and seventh causes of action and strike a portion of the second cause of action of Defendant/Counter-Claimant Pen Write Systems, Inc. d/b/a PenRite Systems' ("PenRite") Amended Counterclaim.

## I. PRELIMINARY STATEMENT

On or about March 25, 2004, PenRite filed its first Counterclaim asserting several causes of action against Ferolie. Ferolie responded by filing a motion to dismiss some of those claims as a matter of law, assuming for purposes of the motion only that the facts alleged therein were true. Instead of opposing Ferolie's motion, on Friday, July 2, 2004 PenRite filed an Amended Counterclaim ("the Amended Counterclaim"), in which it attempts to rectify the deficiencies pointed out by Ferolie in its original motion to dismiss. However, PenRite's new pleading at best corrects only some, but not all, of the deficiencies in its original Counterclaim. For example, PenRite recognized that its claim for abuse of process was legally deficient and withdrew its entire sixth cause of action. Other than that withdrawal, however, PenRite has failed to correct the deficiencies in its original Counterclaim, and its entirely new sixth cause of action (for alleged interference with prospective economic advantage, instead of abuse of process) is just as deficient as the abuse of process claim it replaced.

Accordingly, Ferolie now files this motion to dismiss PenRite's Amended Counterclaim. For the Court's ease of reference, Ferolie has withdrawn its original motion to dismiss and has incorporated the still-relevant arguments from its original brief in this motion.

## II. STATEMENT OF FACTS

PenRite designs, installs and maintains a computer-based software system for its clients that enables the collection, analysis and reporting of retail sales and marketing data. Amended Counterclaim, ¶ 5. Its clients include marketing services companies in

MORGENSTEIN & JUBELIRER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

the food and consumer goods industries, such as defendant Advantage Sales & Marketing, LLC ("ASM LLC") and large consumer goods manufacturers. *Id.*, ¶ 6. PenRite's Amended Counterclaim does not plead any contracts with any consumer goods manufacturers.

PenRite has developed a system known as ARTS, used by ASM LLC to track retail data. *Id.*, ¶ 9. PenRite and Ferolie entered into a General Non-Disclosure, Non-Compete and Confidentiality Agreement ("the NDA") in January 2002, but PenRite claims that Ferolie breached that agreement. *Id.*, ¶¶ 14-22. PenRite further claims that Ferolie and/or its officers or employees attempted to gain access to proprietary software and design information on the ARTS system. *Id.*, ¶¶ 20-23.

## III. LEGAL ARGUMENT

### A. Legal Standard For A Motion To Dismiss.

Pursuant to Federal Rule of Civil Procedure 12(b)(6), the first, fifth, sixth and seventh causes of action in PenRite's Amended Counterclaim must be dismissed for failure to state a claim. A complaint or cause of action is properly dismissed when it fails to state a claim because it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Terracom v. Valley National Bank*, 49 F.3d 555, 558 (9th Cir. 1995). As further guidance, the Supreme Court noted that "a complaint … must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under *some* viable legal theory." *Conley*, 355 U.S. at 45-46 (emphasis in original; citations omitted). This Court's review for purposes of a motion to dismiss is limited to the contents of the complaint, including documents physically attached to the complaint or documents on which the complaint necessarily relies and the authenticity of which are not contested. *See Lee v. County of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001); *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994). All allegations of fact in the complaint must be taken as true, and construed in

the light most favorable to the non-movant. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). However, this Court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Id.*

### B. PenRite's Claim That Ferolie Violated California's Uniform Trade Secrets Act (First Cause of Action) Must Be Dismissed As a Matter of Law.

In its motion to dismiss PenRite's initial Counterclaim, Ferolie moved to dismiss PenRite's claim under California's Uniform Trade Secrets Act ("the Act") because: (1) it did not allege that Ferolie actually misappropriated any trade secrets; (2) it has not linked specific, confidential information from its program to a specific manifestation in Ferolie's system; and (3) it has failed to allege any injury suffered as a result of any purported bad conduct by Ferolie. In its Amended Counterclaim, PenRite has failed to plead any new or additional facts that would sustain this claim. The only "new fact" alleged by PenRite (albeit without any specific support) is that Ferolie had access to PenRite's technology. However, PenRite's amendment still does not adequately allege that the technology to which Ferolie had access was a trade secret and still does not allege that any PenRite technology was used by Ferolie. Amended Counterclaim, ¶¶ 18-22, 27.

To state a claim for misappropriation of trade secrets under the Act, a plaintiff must allege that it possessed subject matter capable of protection as a trade secret; the trade secret was conveyed to the defendant under circumstances giving rise to an obligation not to use or disclose the secret to the detriment of the discloser; and that the trade secret was misappropriated. Cal. Civ. Code § 3426.1; *Globespan, Inc. v. O'Neill*, 151 F. Supp. 2d 1229, 1235 (C.D. Cal. 2001); *Cinebase Software, Inc. v. Media Guaranty Trust, Inc.*, No. C98-1100, 1998 WL 661465 (N.D. Cal. Sept. 22, 1998).

Misappropriation is defined as "disclosure," "acquisition," or "use" of a trade secret. Cal. Civ. Code § 3426.1(b). As an initial matter, PenRite explicitly pleads that it refused all of Ferolie's requests for any access to any proprietary information, even when

MORGENSTEIN & JUBELIRER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Ferolie was entitled to it pursuant to the NDA. See Amended Counterclaim, ¶ 16, 6:19, ¶ 18, 7:12, 14 *and* Declaration of Richard Pierini dated December 5, 2003 submitted in response to Ferolie's application for a TRO, ¶¶ 17-18 (PenRite "refused" to permit Ferolie access to ARTS other than allowing Ferolie's data to be transmitted "manually"; PenRite "made clear that Ferolie was not to have access to PenRite's handheld computers").

While these allegations are inherently inconsistent with the notion that Ferolie actually obtained access to technology that PenRite claims is a trade secret, PenRite alleges exactly that. In its initial counterclaim, PenRite pled that Ferolie only "attempted" to access PenRite's trade secrets. *See* original Counterclaim, ¶ 17, 6:15-16 ("attempt[ed] to gain access"), ¶ 17, 6:27 ("attempted to "hack"), and ¶ 18, 7:8 ("attempted to acquire and use"). Recognizing, however, that Ferolie correctly argued in its initial motion to dismiss that such allegations cannot support a claim for a violation of the Act as a matter of law, PenRite now leaps to the conclusory allegation that Ferolie actually obtained access to PenRite's technology. However, PenRite has alleged no new facts to adequately support this conclusory statement. PenRite alleges without support that Ferolie requested handheld units (as permitted under the NDA) and that Ferolie attended a training session, but then again leaps to the conclusion that these materials were proprietary. However, PenRite does not identify or allege which "proprietary materials" Ferolie was exposed to, why those materials were proprietary, how Ferolie purportedly *used* those proprietary materials, or even that PenRite was injured as a result of Ferolie's alleged use of those materials.

The only reasonable assumption or inference allowed by even the most generous reading of the Amended Counterclaim is that PenRite *assumes* that Ferolie's Merchant Eyes system is somehow similar to PenRite's ARTS system. However, the Amended Counterclaim does not allege *any* evidence that Ferolie could have, or did in fact, misappropriate any trade secrets.



MORGENSTEIN & JUBELIRER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

PenRite's Amended Counterclaim still has not linked specific, confidential information from its program to a specific manifestation in Ferolie's system. *See Cinebase Software, Inc. v. Media Guaranty Trust, Inc.*, No. C98-1100 FMS, 1998 WL 661465, *10 (N.D. Cal. Sept. 22, 1998) (holding that plaintiff's claim that defendant's program will perform functions similar to plaintiff's is insufficient to demonstrate actual misappropriation); *Integral Systems, Inc. v. PeopleSoft Inc.*, 1991 WL 498874, *14 (N.D. Cal. July 19, 1991) (denying injunctive relief because plaintiff fails to "identify specific, confidential information proprietary to [it] alone which was clearly misappropriated and used in the [defendant's technology]"). The only possible other claim by PenRite is that one of Ferolie's officers, Jimmy Ferolie, somehow either reverse-engineered or attempted to reverse-engineer PenRite technology. However, the Act specifically states that reverse-engineering alone "shall not be considered" an improper means under the Act. Cal. Civ. Code § 3426.1(a).

For all the foregoing reasons, PenRite's amended cause of action under the Act has not cured the deficiencies in its original Counterclaim, and the first cause of action in its Amended Counterclaim should be dismissed as a matter of law.

### C. PenRite's Request For Monetary Damages Under California's Statutory Unfair Competition Law In Its Second Cause of Action Must Be Stricken.

PenRite has improperly reasserted its claim for restitutionary damages in its Amended Counterclaim, ignoring the fact that it cannot sustain a claim for "restitutionary damages equal to the improper gains of Ferolie, achieved at PenRite's expense," *see* Amended Counterclaim, ¶ 41, because California courts have clearly held that no monetary damages may be awarded to a plaintiff in a claim under the California Unfair Competition Law ("the UCL"), California Civil Code Section 17200. The UCL only provides that a court may make "orders or judgments … as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition." Cal. Civ. Code § 17203. In interpreting

MORGENSTEIN & JUBELIRER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

that statute, the courts have refused to permit any monetary damages to private plaintiffs under the UCL, and have only permitted injunctive relief or restitution of monies in which the plaintiff had a vested ownership interest.

In *Kraus v. Trinity Management Services, Inc.*, 23 Cal. 4th 116 (2000), the California Supreme Court defined orders for restitution as "orders compelling a UCL defendant to return money obtained through an unfair business practice to those from whom the property was taken, that is, to persons who had an ownership interest in property or those claiming through that person." *Id.* at 126-27, 137 (refusing to expand recovery for plaintiff beyond direct restitution).

The court then expanded on that definition in *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 11134 (2003), holding that nonrestitutionary disgorgement of profits allegedly obtained by means of an unfair business practice is *not* a remedy authorized by the UCL. In *Korea Supply*, the plaintiff company requested disgorgement of profits obtained by the defendant company as a result of the defendant's alleged unfair competition. *Id.* at 1142. The defendant had been awarded a contract by the Republic of Korea. Plaintiff alleged that if not for the defendant's unfair competitive conduct (bribery of the Korean Minister of Defense), the contract would have been awarded to the plaintiff. However, the Court held that the plaintiff was not seeking return of money or property that was once in plaintiff's possession and that it had no ownership or other vested interest in any monies paid to the defendant under the contract. *Id.* at 1149. As such, the Court refused to permit the plaintiff to proceed with its damages claim under the UCL.

While PenRite has alleged that it is due restitution from Ferolie, Amended Counterclaim, ¶¶ 40-41, its conclusory allegations in this regard are still insufficient as a matter of law, because it remains apparent from other allegations in the Amended Counterclaim that what PenRite is alleging is not restitutionary in nature. PenRite has completely failed to explain the restitution to which it claims it is entitled. Instead, it

MORGENSTEIN & JUBELIRER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

makes vague assertions that it is entitled to the "improper gains of Ferolie," which PenRite does not even attempt to allege with any form of specificity. PenRite only pleads as damages that Ferolie has "undercut" or "unfairly [won]" business from customers instead of PenRite. Amended Counterclaim, ¶ 37. However, it is clear that nonrestitutionary damages are not recoverable under the UCL and a close reading of this Amended Counterclaim as a whole shows that is all PenRite has truly alleged. *Id.*; *Hip Hop Beverage Corp. v. Ric Representacoes*, 220 F.R.D. 614, 623-24 (C.D. Cal. 2003). Nowhere does PenRite plead that Ferolie usurped any money or property from PenRite in which PenRite had a vested ownership interest.[1] In sum, the allegations themselves demonstrate that the alleged restitutionary relief is not really restitutionary at all. In essence, PenRite has basically asked this Court for an amount of damages based on a disgorgement of profits it claims Ferolie obtained at PenRite's expense, while failing still to explain what those profits are. Putting aside all other factual and legal flaws that may exist in this claim, it is *not* one for restitution based on PenRite's "vested ownership rights."

### D. PenRite's Fraud Claim (Fifth Cause of Action) Must Be Dismissed As A Matter Of Law.

The well-established elements of fraud which give rise to the tort action for deceit are: (1) misrepresentation of material fact (false representation, concealment or nondisclosure); (2) knowledge of falsity (scienter); (3) intent to deceive and induce reliance; (4) justifiable reliance on the misrepresentation; and (5) resulting damages. *Olson v. Cohen*, 106 Cal. App. 4th 1209, 1217 (2003); *Charpentier v. Los Angeles Rams Football Co., Inc.*, 75 Cal. App. 4th 301, 312 (2000). "What distinguishes actionable fraudulent deceit is the element of knowing intent to induce someone's action to his or her detriment with false representations of fact." *Lacher v. Super. Court*, 230 Cal. App.

---

[1] Despite PenRite's conclusory addition of the phrase "vested commercial rights" in its Amended Counterclaim, *see* Amended Counterclaim, ¶ 41, PenRite makes no specific allegations to support this statement or assert an actual vested ownership interest in anything.

MORGENSTEIN & JUBELIRER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3d 1038, 1046-47 (1991). While PenRite may have corrected some of the deficiencies in its initial counterclaim in response to Ferolie's initial motion to dismiss, its amended cause of action remains fundamentally flawed as a matter of law.

Essentially, in its revamped fraud claim PenRite alleges that it entered into the NDA in January 2002 on the basis of various false or misleading representations by Ferolie concerning its intentions with respect to Ferolie's Merchant Eyes system. Even assuming those allegations to be true for the purposes of this motion, however, it is apparent from the face of the Amended Counterclaim that it remains legally indistinguishable from PenRite's breach of contract claim (fourth cause of action). Paragraph 63 of the Amended Counterclaim makes it clear that the gist of the claim is that Ferolie allegedly did not abide by the terms of its contract with PenRite. Paragraphs 63(c) and 64 confirm this, because they assert, in essence, that Ferolie did not intend to abide by its contractual obligations, and in fact did not do so. Moreover, Paragraph 67 of the Amended Counterclaim makes it clear that the damages allegedly flowing from the fraud are the same as PenRite's alleged damages for breach of contract. *Compare* Amended Counterclaim, ¶¶ 59 and 67. Under California law, such allegations will only support a breach of contract claim, not a fraud claim. *See, e.g.*, *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 515 (1994) (*en banc*) ("Conduct amounting to a breach of contract becomes tortious only when it also violates an independent duty arising from principles of tort law.") (*citing Jones v. Kelly*, 208 Cal. 251, 255 (1929) ("This duty is independent of the contract … '[A]n omission to perform a contract obligation is never a tort, unless that omission is also an omission of a legal duty.'")). The alleged fraud here is legally indistinguishable from the alleged breach, the alleged reliance is legally indistinguishable from the allegations in the breach of contract claim that PenRite performed its end of the bargain, and the alleged fraud damages are the same as the damages resulting from the alleged breach.

///

MORGENSTEIN & JUBELIRER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Furthermore, PenRite still has failed to adequately plead that it relied to its detriment upon any statements or actions by Ferolie. To maintain a fraud action, a plaintiff must show that it changed its position in reliance upon the alleged fraud and any damage was proximately caused by that change of position. Cal. Civ. Code §§ 1709 and 3333; *LeFrancois v. Goel*, 14 Cal. Rptr. 3d 321 (Cal. App. 2004). Despite PenRite's bald assertion that it "relied" upon the NDA in "allowing Ferolie access" to PenRite's proprietary technology, Amended Counterclaim, ¶ 17, PenRite admits that it *never acted* in reliance upon the NDA. PenRite "refused" to provide Ferolie access to any proprietary data collection and database protocols, Amended Counterclaim, ¶ 16, and "refused" to allow Ferolie access to PenRite's handheld data collection devices or design information. Amended Counterclaim, ¶ 18. As such PenRite cannot sustain its fraud claim. *See, e.g., Zito v. Steeplechase Films, Inc.*, 267 F. Supp. 2d 1022 (N.D. Cal. 2003). In *Zito*, the plaintiff claimed that the defendant had induced plaintiff into entering a licensing agreement regarding a photograph and plaintiff's fraud claim was based on defendant's alleged misrepresentations made during the negotiations. *Id.* at 1028. The Court held that the plaintiff did not rely upon defendant's misrepresentations to his detriment because he had refused to grant permission to use the item that was the basis of the licensing agreement, and therefore the plaintiff had not stated a cognizable claim for fraud.

### E. PenRite's Only New Claim, That Ferolie Interfered With PenRite's Prospective Economic Advantage (Sixth Cause of Action), Must Be Dismissed As A Matter Of Law.

As noted previously, one of the major differences between PenRite's original counterclaim and its amended counterclaim is that it has removed its legally deficient abuse of process claim and replaced it with a claim of interference with prospective economic advantage. However, this new claim is as legally deficient as its predecessor, albeit for different reasons.

///

Morgenstein & Jubelirer LLP
Attorneys At Law
San Francisco

To sustain a claim for interference with prospective economic advantage, PenRite must demonstrate: (1) an economic relationship between PenRite and some third party, with the probability of future economic benefit to PenRite; (2) Ferolie's knowledge of the relationship; (3) intentional acts by Ferolie designed to disrupt the relationship; (4) conduct by Ferolie that is wrongful by some legal measure other than the fact of the interference itself; (5) actual disruption of the relationship; and (6) economic harm to PenRite proximately caused by Ferolie's acts. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (2003); *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal. 4th 376, 392-93 (1995); *Youst v. Longo*, 43 Cal. 3d 64, 71 (1987). PenRite has failed to properly plead most of these elements.

First, PenRite does not adequately plead the existence of any likely probable future contractual or economic relationships (other than four *already existing* alleged contractual relationships which, by definition, could not be the subject of a *prospective* economic relationship). As far as *prospective* economic relationships are concerned, PenRite only alleges that it had "prospective client relationships." Amended Counterclaim, ¶ 73. However, PenRite does not plead any particular business it was expecting to receive, or that the hoped-for future business from these purported relationships was anything other than speculation. A vague and general allegation that "important commercial opportunities" were "destroyed," Amended Counterclaim, ¶ 73, is not enough to support a cognizable claim for interference with prospective economic advantage. The tort of interference with prospective economic advantage "protects the expectation that the relationship will yield the desired benefit, not the necessarily more speculative expectation that a potentially beneficial relationship will eventually arise." *Korea Supply*, 29 Cal. 4th at 1164 (*citing Westside Center Assocs. v. Safeway Stores 23, Inc.*, 42 Cal. App. 4th 507, 524 (1996)). Simply put, it must be alleged that there has been economic interference with a real, likely deal, and PenRite has not so alleged.

///

MORGENSTEIN & JUBELIRER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Second, while PenRite alleges that Ferolie knew of the four entities mentioned in this claim were existing clients of PenRite, Amended Counterclaim, ¶ 72, nowhere does PenRite allege that Ferolie knew of any actual prospects of impending new or future business between PenRite and any of these existing clients. Indeed, no particular impending new or future business is even alleged. Alleging knowledge of the identity of certain PenRite clients is by no means the same thing as alleging that Ferolie knew there was the real, likely prospect of new business between PenRite and any of them.

Third, there are no legally sufficient allegations that Ferolie did anything to interfere with any realistic, likely prospect of future business between PenRite and any of the entities mentioned here, or with any other unidentified prospective customer of PenRite for that matter. The alleged wrongful conduct of Ferolie was the supposed misappropriation of PenRite's technology, Amended Counterclaim, ¶ 72, but PenRite has not pled how this alleged misappropriation affected any prospective business relationships or how those purported relationships were harmed or lost because of the alleged misappropriation.

Indeed, PenRite has not alleged any legally sufficient economic harm caused by Ferolie's supposed interference, except the purely speculative allegation that it might lose future client orders and "repeat business." Amended Counterclaim, ¶ 73. However, this allegation does not satisfy the elements of the cause of action. PenRite must allege at a minimum that there was an actual, real prospect of future business that was lost, and that actual, not speculative, economic harm resulted from it. PenRite has not made such allegations because it cannot in good faith make such allegations. Its interference with prospective economic advantage claim should therefore be dismissed as a matter of law.

### F. PenRite's Claim That Ferolie Interfered With PenRite's Contractual Relations (Seventh Cause of Action) Must Be Dismissed.

Finally, PenRite has not corrected the pleading deficiencies with respect to its

final claim, Ferolie's alleged interference with contract. To sustain a claim for interference with contract, PenRite must plead: (a) a valid contract between the plaintiff and a third person; (b) the defendant's knowledge of that contractual relationship; (c) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (d) the resulting breach of the contract; and (e) damages to the respondent as a result of the breach. *See Quelimane v. Stewart Title Guaranty Co.*, 19 Cal. 4th 26, 55 (1999); *see also Pacific Gas & Electric v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990); *Freed v. Manchester Service*, 165 Cal. App. 2d 186, 189 (1958).

Here, PenRite fails to adequately plead interference with contracts between PenRite and its clients. Even though PenRite makes a vague reference to "contracted clients" and makes a vague and unspecific assertion that Ferolie knew about them, Amended Counterclaim, ¶ 79, there are no allegations as to which specific clients PenRite supposedly had contracts with, or which alleged contracts were known to Ferolie. In Paragraph 78 of the Amended Counterclaim, PenRite alleges that an important aspect of its business is developing larger national clients such as Mars and Unilever Best Foods. However, reading this amended claim carefully and correctly, PenRite never alleges that it actually *had* contracts with any of them. Absent such an allegation, PenRite does not allege a legally cognizable claim for interference with contractual relationships between it and "national clients."

PenRite also fails to adequately plead tortious interference with the contract between it and ASM. Again, reading the amended claim carefully and correctly, PenRite alleges at best that ASM decided not to renew the "expired" PenRite/ASM contract. Amended Counterclaim, ¶ 80.[2] However, as noted above, one of the essential elements of a claim for tortious interference with contract is that the defendant's alleged misconduct caused a *breach* of contract. Declining to renew an expired contract is

[2] Moreover, PenRite does not allege that its relationship with ASM is over because of what Ferolie allegedly said or did -- it just alleges that the formal written contract expired and was not renewed.

Morgenstein & Jubelirer LLP
Attorneys At Law
San Francisco

obviously not a breach. *See Charles C. Chapman Building Co. v. California Mart*, 2 Cal. App. 3d 846, 855-57 (1969); *Tozuko Shida v. Japan Food Corp.*, 251 Cal. App. 2d 864 (1967); Restatement (Second) of Torts, § 766B, comment c. Therefore, PenRite's tortious interference with contract claim is insufficient as a matter of law as regards the PenRite/ASM contract, and should be dismissed.

## IV. CONCLUSION

For all of the foregoing reasons, Ferolie respectfully requests that the Court dismiss the first, fifth, sixth and seventh counts of PenRite's Amended Counterclaim in their entirety, and strike that portion of the second counterclaim which seeks non-restitutionary monetary damages.

DATED: July 15, 2004

Respectfully submitted,

MORGENSTEIN & JUBELIRER LLP

By /s/
Bruce A. Wagman
Attorneys for Plaintiff and Counter-Defendant FEROLIE CORPORATION