United States District Court
For the Northern District of California

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

In the Matter of DIRECTV, INC. Cases pending in the Northern District of California,
______________________________________/

Case No. C-02-5912-JW and related matters subject to special referral

**ORDER REGARDING LIMITED ASSIGNMENT TO DETERMINE ISSUES REGARDING JOINDER OF DEFENDANTS AND SHOWING NEEDED TO ESTABLISH A *PRIMA FACIE* CASE UNDER STATUTORY CLAIMS**

## I. INTRODUCTION

Plaintiff DIRECTV, Inc. (“DIRECTV”) has filed approximately 20 lawsuits which have been assigned to Judge Ware. Each lawsuit involves multiple defendants. These lawsuits claim that each defendant possessed and used devices and equipment to intercept illegally DIRECTV’s encrypted satellite communications. In addition to the cases assigned to Judge Ware, DIRECTV has filed in this District over 180 lawsuits assigned to various District Judges and Magistrate Judges. Similar to the cases pending before Judge Ware, the various lawsuits group together over 775 Defendants.

On the face of the various complaints, it appears that each joined defendant allegedly purchased the interception equipment independently from one another and has no business or other relationship with one another. Judge Ware *sua sponte* raised a question whether defendants who purchased and used allegedly offending equipment (albeit the same type of equipment) in separate transactions could properly be joined in the same lawsuit. Other judicial officers in this District to whom the actions had been assigned raised the same concern.

Dockets.Justia.com

In addition, during the prosecution of the pending cases, when defendants did not respond to the complaint, DIRECTV requested entry of a default and subsequently requested entry of a default judgment. In the course of the hearing for entry of a default judgment, Judge Ware raised a question as to whether under the circumstances of these cases, DIRECTV was entitled to recover under the various federal statutes upon which it based its claim, and if so, what was the *prima facie* showing DIRECTV had to make in order to be entitled to a default judgment.

Because the joinder and proof issues raised by Judge Ware were involved in each of the actions pending in this District, in the interest of judicial economy and to avoid potentially conflicting legal standards being applied, Chief Judge Marilyn Hall Patel referred all of the DIRECTV actions pending in this District to Judge Ware for the limited purposes of:

(1) Determining whether or not DIRECTV was in compliance with Federal Rule of Civil Procedure 20 with respect to its joinder of multiple defendants; and

(2) Ruling on the showing DIRECTV must make to be entitled to relief, including relief by default judgment.

Pursuant to the Order of Limited Assignment, this Court ordered DIRECTV to show cause, if any, why transactionally unrelated defendants should not be dismissed and why it was entitled to default judgment on the basis of the showing being made. A hearing for this limited purpose assignment was conducted on June 21, 2004. Michael Williams and Alan Kessel appeared on behalf of DIRECTV. Shaw Parr appeared on behalf of defendants and individual defendants Eric Verducci, Matthew Ahangi and Bernard Maryanski appeared at the hearing.

## II. BACKGROUND

DIRECTV, a California-based company, is in the business of distributing satellite television broadcasts throughout the United States. DIRECTV delivers over 225 channels of television and other programming to more than 10 million residences and businesses in the United States. It does this by relaying digital signals from within the United States up to satellites hovering thousands of miles above earth. Those signals are then broadcast back to earth, where they are captured by a fixed outdoor satellite dish that is connected by cable to an indoor satellite receiver. The satellite receiver

is connected by cable to a television monitor.

DIRECTV's signals are encrypted to prevent unauthorized reception and use of DIRECTV's broadcasts. A programmable “access card” provided by DIRECTV, which is inserted in a slot in the satellite receiver, is used to unscramble the signals. The access card is about the size of a credit card. DIRECTV remotely programs the access card electronically to unscramble portions of the satellite signal so that a subscriber can view the specific television channels or listen to audio programs to which he or she has subscribed. When a subscriber wants to view programming on a limited basis, such as a pay-per-view movie or a special sporting event, he or she can do so by ordering the program through the remote control or through a phone call. The access card records these purchases and communicates the information to DIRECTV.

DIRECTV's main revenue source is from subscriptions paid by authorized users of its signals. It has a significant interest in preventing the unauthorized receipt and use of its satellite programming. Despite encryption technology used to protect DIRECTV's signal, apparently there are individuals in the United States and other countries who have successfully developed and sold devices and equipment that can intercept DIRECTV’s signal. Interception includes the illegal programming of valid access cards used to pirate DIRECTV's signals (“Pirate Access Devices”). In general, the Pirate Access Devices provide the user with access to all of DIRECTV's satellite programming with no payment to DIRECTV.

During the past few years, DIRECTV has conducted raids on businesses that market and sell Pirate Access Devices. Information derived from these raids has led DIRECTV to identify individuals who have allegedly purchased and used the devices. Specifically, on or about May 25, 2001, with the cooperation of local law enforcement, DIRECTV obtained sales records, shipping records, e-mail communications, credit card receipts and other records from a mail shipping facility used by major distributors of Pirate Access Devices. Based primarily upon this information, DIRECTV brought over 180 lawsuits in this District against over 775 defendants.

In its lawsuits, DIRECTV classifies defendants as “end users” or “resellers.” End users are defendants who allegedly purchased a Pirate Access Device for allegedly personal use. Resellers are

defendants who allegedly purchased significant quantities of Pirate Access Devices for alleged distribution and resale to others.

DIRECTV alleges that each end user or reseller defendant is a resident of this District who has purchased and used illegally modified DIRECTV access cards and other Pirate Access Devices that are designed to permit viewing of DIRECTV's programming without authorization by or payment to DIRECTV, all in violation of various federal telecommunication laws and related state laws.

Significantly for purposes of the matters specially assigned to Judge Ware, the various lawsuits joined groups of end users in a single lawsuit. Similarly, DIRECTV joined groups of resellers in a single lawsuit. The Court turns its attention to whether this joinder is proper.

## III. DISCUSSION

### A. Joinder of Defendants

Federal Rule of Civil Procedure 20(a) provides in pertinent part that:

> [a]ll persons... may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a). The purpose of the rule is to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits. League to Save Lake Tahoe v. Tahoe Reg'l Planning Agency, 558 F.2d 914, 917 (9th Cir. 1977). Rule 20(a) imposes two specific requisites to the joinder of parties: (1) a right to relief must be asserted by, or against, each plaintiff or defendant relating to or arising out of the same transaction or occurrence, and (2) some question of law or fact common to all the parties must arise in the action. Fed. R. Civ. P. 20(a). Both of these requirements must be satisfied in order to justify party joinder under Rule 20(a). Id.

The rules governing permissive joinder are construed liberally in order to promote trial convenience and to expedite the final determination of disputes. Id. "Joinder of claims, parties and remedies is strongly encouraged." United Mine Workers v. Gibbs, 383 U.S. 715, 724 (1966).

For the "same transaction or occurrence" requirement, courts have adopted a case-by-case



United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

approach for ascertaining whether a particular factual situation constitutes a single transaction or occurrence for the purposes of Rule 20(a).[1] 7 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1653 (3rd ed. 1998).

"Transaction" is admittedly "a word of flexible meaning," and "may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." Mosley v. General Motors Corp., 497 F.2d 1330, 1333 (8th Cir. 1974). However, "to be reasonably related, the actions must involve more than just similar goods that are used for a similar purpose." See DIRECTV, Inc. v. Boggess, 300 F. Supp. 2d 444, 449 (S.D. W. Va. 2004) (citing DIRECTV, Inc. v. Perez, No. 03-C3504, 2003 WL 22682344, at *1 (N.D. Ill. Nov. 12, 2003)).

DIRECTV concedes there is no evidence that defendants acted in concert with each other or had any relationship with each other. (DIRECTV, Inc.'s Resp. to Judge Ware's Order to Show Cause at 12:6-7.) Nevertheless, DIRECTV asserts that the various defendants are properly joined because the evidence identifying each defendant was derived from execution of a common writ of seizure, and "in most instances, [the defendants] are grouped together based on the raid sources from which the evidence against them was obtained." (DIRECTV's Resp. at 12:12-13.)[2]

If, as is the case here, the purchase or use of an allegedly offending device is asserted as the

---

[1] "There can be no hard and fast rule, and ... the approach must be the general one of whether there are enough ultimate factual concurrences that it would be fair to the parties to require them to defend jointly [the claims] against them." Eastern Fireproofing Co. v. U.S. Gypsum Co., 160 F. Supp. 580, 581 (D. Mass. 1958).

[2] For the second requirement, Rule 20(a) "does not require the commonality of all questions of law and fact raised in the dispute, rather, the requirement is satisfied if there is any question of law or fact common to all parties." Puricelli v. CNA Ins. Co., 185 F.R.D. 139, 143 (N.D.N.Y. 1999).

DIRECTV contends that it has also satisfied the second prong of Rule 20(a). It asserts identical statutory claims against defendants for their alleged possession, purchase and use of devices designed to pirate its satellite signals, or for the unlawful manufacture, distribution, and/or sale of illegal devices intended to permit viewing of its satellite programming. DIRECTV argues that these common statutory causes of action will raise similar questions of law, as well as similar questions of fact.

In the context of this case, the Court finds properly joined transactionally connected defendants would satisfy this requirement.

United States District Court

For the Northern District of California

basis of a defendant's liability, in order to join multiple defendants in a single case, DIRECTV must allege that the individual purchases by the joined Defendants occurred in the same transaction or occurrence, or were part of a series of transactions which were connected to one another. See DIRECTV, Inc. v. Davlantis, No. 03-C3506, 2003 WL 22844401, at *2 (N.D. Ill. Nov. 26, 2003). DIRECTV raided approximately nine shipping facilities. Records from the shipping facilities listed the manufacturers of the unlawful devices and listed the end users or resellers to whom the devices where shipped. DIRECTV used this information to identify defendants and grouped them together on the basis of receiving the devices from a common shipping point.

Individual purchasers, who have no business connection with one another and who make their purchases independently of one another are not engaged in the same transaction simply because their purchases were processed through the same shipper. See DIRECTV, Inc. v. Adrian, No. 03-C6366, 2004 WL 1146122, at *3 (N.D. Ill. May 18, 2004); DIRECTV v. Lewis, No. 03-CV-6241CJS(F), 2004 WL 941805, at *7 (W.D. N.Y. Jan. 6, 2004); Davlantis, 2003 WL 22844401, at *2; DIRECTV, Inc. v. Loussaert, 218 F.R.D. 639, 644 (S.D. Iowa 2003); Boggess, 300 F. Supp. 2d at 449.

In Movie Systems, Inc. v. Abel, a distributor of television entertainment programs, claiming unlawful pirating of its microwave signals, filed an action against 1795 individual party defendants by filing 18 similarly worded actions with approximately 100 defendants allocated to each filing. Movie Sys., Inc. v. Abel, 99 F.R.D. 129 (D. Minn. 1983). The court found a misjoinder of party defendants in contravention of the "same transaction" requirement of Rule 20(a). Id. at 130.

> It may be that the complaints assert a right to relief against all defendants arising from *similar* transactions, but the rule permitting joinder requires that such arise from the *same* transactions. They don't here. Each of the complaints states a separate cause of action against each of the 1795 defendants. No concert of action is alleged, nor could it be because the operative facts of each transaction are distinct and unrelated to any other. There is no claim that the alleged pirating of microwave signals was done other than independently by each of the 1795 defendants.

Id.

DIRECTV defends its joinder on the ground that it has properly grouped defendants on the basis of geographical location, namely the defendants are in the same district or area, and have

allegedly purchased the same type(s) of devices. Unrelated defendants performing the same act in the same area is improper ground for joinder. See Adrian, 2004 WL 1146122, at *3.

DIRECTV contends that commonality exists because defendants injured DIRECTV in the same manner." (DIRECTV's Resp. at 12:14-16.) Allegations of similar statutory violations do not satisfy the first prong of Rule 20(a). See Adrian, 2004 WL 1146122, at *3; Davlantis, 2003 WL 22844401, at *2.

During oral argument, DIRECTV likened its joinder of multiple defendants to a case where a raid is conducted at a location where stolen property is being sold or "fenced." DIRECTV asserts that it would be proper to name the fence and each customer caught in the raid in a single case.[3] The Court does not reject this analogy as an example of proper joinder. However, the Court finds that DIRECTV has failed to satisfy the Court that its joinder decisions make this an apt analogy.

DIRECTV provided the Court with a chart containing nine columns listing the date each action was filed, the case number of each action pending in this District, the name of the case, the number of defendants joined in the action, the name of each defendant in the action, the alleged pirate access device(s) purchased by each defendant, the vendor from which the devices were purchased, and the raid source from which the evidence was obtained. (DIRECTV's Resp. Ex. A.) In total, there are over 25 different types of devices purchased from over 20 different vendors by over 775 defendants. DIRECTV executed writs of seizure on at least eight shipping facilities. Id.

Assuming that there are circumstances which would allow joinder of a seller of unlawful goods and each customer in a single lawsuit proper, that is not what DIRECTV has done in this District. First, none of the cases pending in this District join an alleged reseller in a single action against alleged end user customers of that reseller. In the actions pending in this District, DIRECTV

[3] In many of the cases there was no appearing defendant. In response to the Show Cause Order, however, some defendants did appear. Those defendants who appeared, contended that in most cases, DIRECTV grouped defendants for its own efficiency. Defendants argued that DIRECTV joins defendants that have no business relationship with or knowledge of one another. Defendants also contended that contrary to DIRECTV's alleged raid-based grouping, defendants are joined with other defendants who have allegedly purchased different devices from different vendors, and the evidence obtained against them is from different raid sources.



United States District Court
For the Northern District of California

has variously joined in a single action multiple so-called end user Defendants who have allegedly purchased different devices from different vendors, and these purchases have been processed by different shipping facilities. In some actions pending in this District, DIRECTV has joined end user defendants who have allegedly purchased different devices from the same vendor, however, the common vendor is not sued. Therefore, even if the Court were to allow DIRECTV to join in a single action a reseller and all customers of that reseller, the Court finds that DIRECTV has failed to make a requisite showing that it has joined party defendants on that basis.

DIRECTV has filed numerous lawsuits across the nation, alleging similar claims. Some courts in other Districts faced with this same joinder issue have declined to order severance of DIRECTV's claims. DIRECTV, Inc. v. Russomanno, No. 03-2475, 2003 U.S. Dist. LEXIS 23403, at *14 (D.N.J. Nov. 12, 2003) (difficult at an early stage in the litigation to conduct an analysis to determine whether the claims against defendants involve the same factual issues or arise out of the same transactions or series of transactions. "[W]ithout some discovery and the development of a substantive factual record, defendants cannot yet demonstrate the propriety of severing the claims and instituting separate actions against each of them."); DIRECTV, Inc. v. Hosey, 289 F. Supp. 2d 1259, 1262 (D. Kan. 2003) (declined to sever the claims because it was "not prepared to hold that the claims in this case did not arise out of the same transaction, occurrence, or series of transactions or occurrences."); DIRECTV, Inc. v. Essex, No. C02-5503RJB, 2002 U.S. Dist. LEXIS 26923, at *4 (W.D. Wash. Nov. 13, 2002) (declined to sever claims because defendants "purchased and used Pirate Access Devices . . . from the same distribution center in Santa Ana, California" and that the alleged purchases fell "within a twelve-month time frame, from June 2000 through May 2001.").

Other courts have found the same kind of joinder used in cases filed in this District improper. See e.g., Perez, 2003 WL 22682344, at *1 (noting that unrelated defendants who purchase Pirate Access Devices in separate transactions engage in distinct and unrelated acts); DIRECTV v. Beecher, 296 F. Supp. 2d 937, 945 (S.D. Ind. 2003) ("DIRECTV alleges that many individuals have wronged it in the same way, but in separate transactions or occurrences."); Boggess, 300 F. Supp. 2d at 449; Davlantis, 2003 WL 22844401 at *2; DIRECTV, Inc. v. Armellino, 216 F.R.D. 240, 241



United States District Court
For the Northern District of California

(E.D.N.Y. 2003); Loussaert, 218 F.R.D. 639, 644. See also, Lewis, 2004 WL 941805, at *7; DIRECTV, Inc. v. Westerheide, No. 03-C3476, 2004 U.S. Dist. LEXIS 1417, at *2 (N.D. Ill. Feb. 4, 2004); DIRECTV, Inc. v. Long, No. SA-03-CA-360-XR, 2003 U.S. Dist. LEXIS 23396, at *8 (W.D. Tex. Oct. 29, 2003); DIRECTV, Inc. v. Smith, No. 03-C3540, 2003 U.S. Dist. LEXIS 20091, at *3 (N.D. Ill. Sep. 18, 2003); DIRECTV, Inc. v. Patel, No. 03-C3442, 2003 WL 22669031, at *1 (N.D. Ill. Nov. 10, 2003); DIRECTV, Inc. v. Gatsiolis, No. 03-C3534, 2003 U.S. Dist. LEXIS 20275, at *5 (N.D. Ill. Nov. 10, 2003); DIRECTV, Inc. v. Geenen, No. 03-C3542, 2003 U.S. Dist. LEXIS 20229, at *5 (N.D. Ill. Nov. 10, 2003).

The Court finds the defendants' actions do not arise out of the same transaction or occurrence, nor are a part of a series of connected transactions or occurrences. Thus, DIRECTV has violated Federal Rule of Civil Procedure 20(a) in the actions filed in this District.[4]

Finding that joinder of defendants is improper under Rule 20(a), the Court must decide a proper remedy. Fed. R. Civ. P. 21 provides in pertinent part that "[p]arties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just." Fed. R. Civ. P. 21. Alternatively, "[a]ny claim against a party may be severed and proceeded with separately." Id. In formulating a remedy for improper joinder, the court must avoid prejudice to the parties. See Elmore v. Henderson, 227 F.3d 1009, 1012 (7th Cir. 2001).

Accordingly, as set forth below, the Court finds that, except for the first-named defendants, the claims against all other defendants should be dismissed, without prejudice to DIRECTV re-filing against those defendants in separate actions. The Court also finds that except for the first-named defendants, all previously entered default judgments should be vacated.

The Court acknowledges the potential statute of limitations consequences of dismissal. Accordingly, the Court finds that as to any defendant ordered dismissed pursuant to this Order, if on

[4] The Court is mindful of the cost of litigation and the savings which can be experienced when claims and parties are properly joined. Nothing in this Order is intended to effect DIRECTV's rights to seek legitimate methods to minimize the cost of the litigation process, such as: filing a class action lawsuit; consolidating actions; or stipulating to use depositions and other evidence for one lawsuit in another lawsuit.



United States District Court
For the Northern District of California

or before August 26, 2004, DIRECTV files a separate action, such action shall be deemed a continuation of the original action for purposes of the statute of limitations.

**B. Proof Necessary for Recovery Under Federal Statutes**

To the extent that the Court's order of dismissal for improper joinder leaves any actions pending before this Court for which default judgment is sought, the Court addresses the *prima facie* showing DIRECTV must make to be entitled to a default judgment.

In many of the actions pending in this District, the named defendants have not answered the complaint and DIRECTV has obtained entry of their defaults pursuant to Federal Rule of Civil Procedure 55(a). DIRECTV has used a uniform procedure for proving its entitlement to a default judgment. DIRECTV alleges and presents evidence that a defendant purchased a Pirate Access Device, and offers evidence of the source and circumstances of the purchase as circumstantial evidence that the defendant used the device to intercept its satellite communications. The Court now addresses the sufficiency of this showing under the various federal statutes upon which DIRECTV bases its claims.

**1. The Allegations of the Complaint are Taken as True for Purposes of Entry of Default Judgment**

"Upon entry of default, the well-pleaded allegations of the complaint relating to a defendant's liability are taken as true," and the defaulting party is deemed to have admitted all allegations in the complaint pertaining to liability (but not allegations as to the amount of damages). See TeleVideo System, Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987); Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc., 722 F.2d 1319, 1323 (7th Cir. 1983).

In exercising its discretion to grant default judgment, the court may consider the following factors: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).



United States District Court
For the Northern District of California

The Court has the discretion to consider DIRECTV to have met its burden of proof by the admissions of liability which accompany entry of default against each defendant. However, the court also has power to require additional proof of any fact alleged in the complaint as the basis for liability. See Quirindongo Pacheco v. Rolon Morales, 953 F.2d 15, 16 (1st Cir. 1992).

However, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." Cripps v. Life Ins. Co., 980 F.2d 1261, 1267 (9th Cir. 1992).

Therefore, the Court examines the complaints to determine if under the statutes sued upon DIRECTV is asserting claims for which it is entitled to a civil remedy.

**2. Statutory Claims**

**a. 18 U.S.C. § 2511(1)(a)**

In the actions pending before this Court, and presumably in each action pending in this District, DIRECTV alleges a civil claim under Title 18 U.S.C. § 2511(1)(a). However, § 2511(1)(a) is a criminal statute which provides that "any person who...intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral or electronic communication...shall be punished....or shall be subject to suit as provided in subsection (5).[5] DIRECTV is not entitled to any relief under § 2511(1)(a).

**b. 18 U.S.C. § 2520(a)**

Section 2520 (a) of Title 18 U.S.C. creates a private cause of action for interception, disclosure or intentional use of wire, oral or electronic communication. DIRECTV, Inc. v. Beauchamp, 302 F. Supp. 2d 786, 796 (W.D. Mich. 2004); Hosey, 289 F. Supp. 2d at 1263; DIRECTV, Inc. v. Huynh, 318 F. Supp. 2d 1122, 1129 (M.D. Ala. 2004); Lewis, 2004 WL 941805, at *6.

Section 2520(a) provides:

> Except as provided in section 2511(2)(a)(ii), any person whose wire, oral, or

---

[5]Subsection 5 allows a civil action by the Federal Government only for certain types of communications.

> electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person...which engaged in that violation such relief as may be appropriate.

DIRECTV has not stated a claim for relief under § 2520(a). Some courts have allowed civil actions to proceed under § 2511(1)(a), but the courts in those cases have deemed the actions as governed by § 2520(a).[6] See e.g., DIRECTV, Inc. v. Brower, 303 F. Supp. 2d 856, 863 (W.D. Mich. 2004); DIRECTV, Inc. v. Gilliam, 303 F. Supp. 2d 864, 872 (W.D. Mich. 2004).

The Court deems the claims stated under § 2511(1)(a) as claims under § 2520(a).[7] In order to state a claim under § 2520(a), DIRECTV must allege that it is a "person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used." Lewis, 2004 WL 941805, at *6 (The plain language of § 2520 requires a plaintiff to prove that the defendant has intercepted, disclosed, or intentionally used plaintiff's wire, oral, or electronic communication, and "then, if that condition is met, a plaintiff may recover "from the person or entity ... which engaged in that violation such relief as may be appropriate.").

In the cases pending before this Court, and presumably in each case pending in this District, DIRECTV has alleged facts which if proven would entitle DIRECTV to recover under § 2520(a).

As discussed above, in order to recover a default judgment, DIRECTV must present evidence proving these allegations. However, upon entry of default, the allegations that its signals were "intercepted, disclosed, or intentionally used" are taken as true. Therefore, the Court finds that DIRECTV has properly alleged a claim under § 2520(a) against any properly joined defendants who are alleged to have purchased and used Pirate Access Devices to intercept its satellite programming without authorization. Upon default by such a defendant, DIRECTV would be entitled to the remedies provided by § 2520(a), according to proof. With respect to this and the other claims, the

[6] These courts have held that because the plaintiff cited § 2520(a) in its prayer for relief, it was sufficiently clear the plaintiff was alleging that the defendant violated § 2511(1)(a) as part of its claim under § 2520(a).

[7] In all future filings before this District, if DIRECTV states a civil claim under § 2511(1)(a), the claim will be dismissed.



United States District Court
For the Northern District of California

Court addresses the appropriate remedy below.

**c. 18 U.S.C. § 2512(1)(b)**

Title 18 U.S.C. § 2512(1)(b) provides, in pertinent part:

> [A]ny person who intentionally...manufactures, assembles, *possesses,* or sells any...device, knowing or having reason to know that the design of such device renders it primarily useful for the purpose of the surreptitious interception of...electronic communications, and that such device...has been or will be sent through the mail or transported in interstate...commerce...shall be fined under this title or imprisoned not more than five years, or both.

(emphasis added). Like § 2511(1)(a), § 2512(1)(b) is a criminal statute. Unlike § 2511(1)(a), however, there is no parallel statute which provides a private right of action for violations of Section 2512(1)(b). See DIRECTV v. Treworgy, No. 03-15313, 2004 WL 1317849 , at *5 (11th Cir. 2004); see also DIRECTV v. Cardona, 275 F. Supp. 2d 1357 (M.D. Fla. 2003).

Therefore, the plain language of § 2520(a) does "[not] create a private right of action against a person who possesses a device in violation of § 2512." Treworgy, 2004 WL 1317849. at *5. As set forth below, the Court orders all claims under § 2512(1)(b) dismissed.

**d. 47 U.S.C. § 605(a)**

Title 47 U.S.C. § 605(a) provides as follows:

> [N]o person receiving, [or] assisting in receiving ... any interstate ...communication by wire ... shall divulge or publish the ... contents ... thereof, except through authorized channels of ... reception, (1) to any person other than the addressee, his agent, or attorney, (2) to a person employed or authorized to forward such communication to its destination, (3) to proper accounting or distributing officers of the various communication centers over which the communication may be passed, (4) to the master of a ship of whom he is serving, (5) in response to a subpoena issued by a court of competent jurisdiction, or (6) on demand of other lawful authority. No person not being authorized by the sender shall intercept any radio communication and divulge or publish the ... contents...of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents ... of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the ... contents ...of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.



United States District Court
For the Northern District of California

Title 47 U.S.C. § 605(e) provides that any "person aggrieved by any violation of subsection (a) ... may bring a civil action in a United States district court."

DIRECTV alleges in its complaints that defendants possessed Pirate Access Devices and received its satellite transmission without authorization. Upon entry of default, this allegation is deemed admitted. In Huynh, the Court inferred from the defendant's possession of the Pirate Access Device that he received DIRECTV's signal without authorization of § 605(a). Huynh, 318 F. Supp. 2d at 1128. The Huynh court emphasized that, "had DIRECTV alleged only that Huynh possessed a pirate-access device, this would not have been sufficient to state a claim under the plain language of § 605(a). [T]o establish liability under § 605(a), a plaintiff must prove that the defendant received or assisted in receiving a communication to which he was not entitled." Id. at 1128, n.11. See also DIRECTV, Inc. v. Getchel, 2004 WL 1202717, *1 (D. Conn. May 26, 2004) (The court may reasonably conclude that [the defendant] purchased the device in order to pirate DIRECTV's transmissions.").

Accordingly, the Court finds that DIRECTV properly alleges a claim against properly joined defendants under § 605(a) and upon default, would be entitled to the remedies provided by that statute, according to proof.

**e. 17 U.S.C. § 1201(a)(2)**

Finally, as to the "reseller" Defendants only, DIRECTV alleges that the reseller defendants have violated the Digital Millennium Copyright Act of 1998 ("DMCA"), 17 U.S.C. § 1201(a)(2), which penalizes the distribution of devices designed to circumvent technological measures intended to limit access to copyright material. Section 1201(a)(2) provides as follows:

> (2) No person shall manufacture, import, offer to the public, provide, or otherwise traffic in any technology, product, service, device, component, or part thereof, that-
>
> (A) is primarily designed or produced for the purpose of circumventing a technological measure that effectively controls access to a work protected under this title;
>
> (B) has only limited commercially significant purpose or use other than to circumvent a technological measure that effectively controls access to a work protected under this title; or
>
> (C) is marketed by that person or another acting in concert with that person with that person's knowledge for use in circumventing a technological measure that effectively controls access to a work protected under this title.



United States District Court
For the Northern District of California

The DMCA explicitly provides for a civil cause of action for "any person injured by a violation of section 1201." 17 U.S.C. § 1203(a).

DIRECTV alleges that reseller defendants actively engaged in "manufacturing, ... providing and/or trafficking in pirate access devices knowing or having reason to know that such devices are primarily designed for the purpose of circumventing DIRECTV's encryption and conditional access" and "have only limited commercially significant purpose ... other than to circumvent" DIRECTV's controlled access. (Williams Decl. Ex. B at ¶ 43.) DIRECTV further alleges that reseller defendants violations have injured DIRECTV through deprivation of subscription and pay-per-view revenues. Id. at ¶ 44.

Accordingly, the Court finds that DIRECTV properly alleges a claim against properly joined defendants under § 1201(a)(2) and upon default, would be entitled to the remedies provided by that statute, according to proof.

**2. Damages**

Finding that DIRECTV may recover against properly joined end user defendants under § 2520(a) and § 605(a), and against properly joined reseller defendants under those provisions as well as under § 1201(a)(2), the Court now turns to the recovery to which DIRECTV is entitled.

The Court may conduct hearings or order such references as it deems necessary and proper in order to "determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter." Fed. R. Civ. P. 55(b)(2).

In a request for a default judgment the process of assessing damages is limited by Fed. R. Civ. P. 54(c), which states that "[a] judgment by default shall not be different in kind or exceed in amount that prayed for in the [complaint]."

In its complaint, DIRECTV requests that "in the event of a default, an award of statutory damages of $10,000 for each pirate access device, ... and a further award of DIRECTV's reasonable attorneys' fees and costs of suit." (Williams Decl. Exh. A. ¶ 4.) Thus in no event may DIRECTV recover greater than $10,000, plus attorneys' fees and costs in any complaint which contains this allegation.

United States District Court
For the Northern District of California

**a. 18 U.S.C. § 2520(c)(2)**

Under § 2520(c)(2), a court may assess damages for violations of § 2520(a). Section 2520(c)(2) provides that the court may assess as damages whichever is the greater of - -

> (A) the sum of the actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation; or
> (B) statutory damages of whichever is the greater of $100 a day for each day of violation or $10,000.

In determining the amount of damages under § 2520(c)(2), first, the court should determine "the amount of actual damages to the plaintiff plus the profits derived by the violator, if any." Dorris v. Absher, 179 F.3d 420, 430 (6th Cir. 1999); 18 U.S.C. § 2520(c)(2)(A). Second, the court should "ascertain the number of days that the statute was violated, and multiply by $100." Dorris, 179 F.3d at 430; 18 U.S.C. § 2520(c)(2)(B). Third, the court should "tentatively award the plaintiff the greater of the above two amounts" (actual damages or statutory damages) unless each is less than $10,000, in which case $10,000 is to be the presumed award. Dorris, 179 F.3d at 430. Finally, the court should "exercise its discretion to determine whether the plaintiff should receive any damages at all in the case before it." Id.; 18 U.S.C. § 2520(c)(2). However, the court may not award an amount falling between those two choices. DIRECTV, Inc. v. Hedger, No. 03-CV-733, 2004 WL 1396274, *2 (W.D. Mich. April 20, 2004) (citing DIRECTV, Inc. v. Griffin, 290 F. Supp. 2d 1340, 1347-48 n.28 (M.D. Fla. 2003).

In exercising its discretion, courts have opted to award less than the requested amount. The court has "broad discretion, to award damages as authorized by the statute, or to award no damages at all." DIRECTV, Inc. v. Kaas, 294 F. Supp. 2d 1044, 1048 (N.D. Iowa 2003) (citing Reynolds v. Spears, 93 F.3d 428, 435 (8th Cir. 1996). In Kass, the court granted Plaintiff's motion for default judgment but awarded no damages under 18 U.S.C. § 2520(c)(2) after noting that "there is no evidence [the defendant] profited from the pirate access device" and that "although a reasonable assumption, there is no evidence he even used the device, only that he received it." Kass, 294 F. Supp. 2d at 1049.

**b. 18 U.S.C. § 2512(1)(b)**

All actions under § 2512(1)(b) having been ordered dismissed, DIRECTV is not entitled to any remedy under that provision.[8]

**c . 47 U.S.C. § 605(e)**

Title 47 U.S.C. § 605(e) provides that any "person aggrieved by any violation of subsection (a) ... may bring a civil action in a United States district court or in any other court of competent jurisdiction." Section 605(e)(4) provides that for purposes of all penalties and remedies established, the prohibited practices established as it applies to each such device shall be deemed a separate violation.

DIRECTV asserts that § 605(e) authorizes the court to award statutory damages of not less than $1,000 nor more than $10,000 for each violation of § 605(a), with additional damages of up to $100,000 per violation, upon showing that a defendant acted willfully and for the purposes of direct or indirect commercial advantage or private financial gain. See 47 U.S.C. § 605(e)(3)(C)(I), (ii); (DIRECTV's Resp. at 18:15-19.)

A court has discretion to increase the award to not more than $100,000, where it finds that the defendant's violation was committed "willfully and for the purposes of direct or indirect commercial advantage or private financial gain," or to decrease the award to no less than $250 where the court finds that the defendant "was not aware and had no reason to believe that his acts constituted a violation of" § 605(a). 47 U.S.C. § 605(e)(3)(C)(ii), (iii).

The burden is on DIRECTV to provide justification for why damages in excess of the minimum should be awarded. See DIRECTV, Inc. v. Hamilton, 215 F.R.D. 460, 463 (S.D.N.Y. 2003).

The cases are referred back to each assigned judicial officer to conduct further proceedings to

---

[8] To the extent a default judgment has already been allowed for claims under § 2512(1)(b) prior to the date of this Order, this Court refers the matters back to the assigned judicial officers for further consideration. It might well be that those judgments would be allowed to stand if, for example, the remedy would be the same under alternative applicable provisions. There might also be instances where a defaulting defendant would seek to set aside a default judgment entered on this ground.



United States District Court
For the Northern District of California

award damages under § 605 against any properly joined defendants. In instances where the same conduct is asserted as a violation of more than one statute, care should be exercised to avoid duplicity beyond what is statutorily allowed.

**d. 17 U.S.C. § 1203**

Remedies for violations of 17 U.S.C. § 1201(a)(2) are governed by 17 U.S.C. § 1203. In the actions pending in this Court, DIRECTV has not sought any remedy under §1203. The cases are referred back to each assigned judicial officer to conduct further proceedings to award damages under § 1203, against any properly joined defendants, if requested.

## IV. CONCLUSION

For the reasons set forth above, the Court Orders as follows:

1. In all DIRECTV actions pending in this District, unless the individually assigned District Judge or Magistrate Judge otherwise orders, the action is dismissed without prejudice against all defendants except the first-named defendant. Nothing in this Order is intended to prevent DIRECTV from filing a duly noticed motion before the assigned District Judge or Magistrate Judge for permission to join additional transactionally related defendants. If on or before August 26, 2004, DIRECTV files a separate action against a defendant dismissed pursuant to this Order, such action shall be deemed a continuation of the original action for purposes of the statute of limitations.

2. In all DIRECTV actions pending in this District, all claims alleging violations of 18 U.S.C. § 2511(1)(a) shall be deemed to proceed under § 2520(a). In all future filings before this District, DIRECTV shall not state a claim under § 2511(1)(a).

3. In all actions pending in this District, all claims alleging violations of 18 U.S.C. § 2512(1)(b) are dismissed with prejudice.

4. DIRECTV is advised that all future claims must be initiated in accordance with this Order. Failure to comply with this Order may result in dismissal of the entire action and/or sanctions.

5. In all DIRECTV actions remaining against the first-named defendant, unless the individually assigned District Judge or Magistrate Judge otherwise orders, any pending motions shall

United States District Court
For the Northern District of California

be re-noticed by the parties. In actions where DIRECTV re-notices a request to enter a default judgment, in addition to other showings in support of the request for default judgment, the request shall contain a declaration of counsel of compliance with this Order. DIRECTV shall lodge a proposed form of default judgment which sets forth the relief requested. With respect to statutory damages, the proposed form of default judgment shall set forth each statute under which damages are requested and how the statutory damages were calculated.

6. In all DIRECTV actions pending before Judge Ware, the Clerk of Court is directed to vacate all previously entered default judgments against all defendants, except the first-named defendant.

7. All other DIRECTV cases are referred back to the assigned District Judge or Magistrate Judge to determine whether to vacate any previously entered default judgments or to allow such judgments to stand, and to take further action as deemed appropriate.

/ / /

Dated: July 26, 2004

/s/ James Ware
JAMES WARE
United States District Judge