Richard G. Grotch, Esq. - SBN 127713
**CODDINGTON, HICKS & DANFORTH**
**A Professional Corporation, Lawyers**
555 Twin Dolphin Drive, Suite 300
Redwood City, California 94065-2133
Tel. (650) 592-5400
Fax. (650) 592-5027

**ATTORNEYS FOR** Defendant
DELTA AIR LINES, INC.

**IN THE UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DANIEL ROBINSON, | No. C 03-3979 VRW |
| Plaintiff, | DEFENDANT DELTA AIR LINES, INC.'S SUPPLEMENTAL BRIEF RE IMPACT OF *BLANSETT* DECISION ON MOTION FOR RECONSIDERATION OF ORDER DENYING MOTION TO DISMISS FIRST AMENDED COMPLAINT |
| vs. | |
| DELTA AIRLINES, INC. and THE BOEING COMPANY, | |
| Defendants. ______/ | Honorable Vaughn R. Walker |

On July 21, 2004, guided by Supreme Court precedent,[1] the United States Court of Appeals for the Fifth Circuit decided the case of *Blansett v. Continental Airlines. Inc.*, __ F.3d __ , 2004 U.S. App. LEXIS 15120, 2004 WL 1627247 (5th Cir. Jul. 21, 2004). Delta Air Lines, Inc. ("Delta") sought permission, pursuant to this Court's local rules, to submit the *Blansett* decision to the Court as apposite authority directly bearing upon its motion for reconsideration of the denial of its motion to dismiss the first amended complaint in this case.[2] The Court granted Delta's request and the *Blansett* decision was submitted. The Court having requested further briefing regarding the impact of *Blansett* on the pending motions, this brief is provided for the Court's assistance.

---

[1]This includes *Air France v. Saks,* 470 U.S. 392, 400, 84 L. Ed. 2d 289, 105 S. Ct. 1338 (1985) and the recent decision in *Husain v. Olympic Airways,* 157 L. Ed. 2d 1146, 124 S. Ct. 1221, 1227-30 (2004).

[2]That motion was taken under submission on June 10, 2004 and remains *sub judice*. Also under submission is Delta's motion to dismiss the first amended complaint in *McLachlan v. Delta Air Lines, et al.* (Docket No. C 03-5234 VRW).



Dockets.Justia.com

# I.

## LEGAL ARGUMENT

A. <u>The Claims In This Case Cannot Be Meaningfully Distinguished From Those In *Blansett*</u>

In *Blansett*, the allegations and claims are substantively identical to those in the case at bar. In both cases, an airline passenger-plaintiff contends that the airline's failure to warn of risks of DVT, associated with air travel, was an "accident" for purposes of the Warsaw Convention, thus entitling the plaintiff to sue for damages under the treaty.

Just as in the case at bar, in *Blansett* it was alleged – and assumed for purposes of the Rule 12(b)(6) motion to be true – that (a) certain international carriers had "added DVT warnings to their battery of pre-flight instructions to passengers" and (b) the airline in question had not provided such warnings. *Blansett*, 2004 U.S. App. LEXIS 15120, **1-2. Here, as there, the fact was that "Federal regulations do not require that air carriers issue any such warnings, though at the time of [the subject] flight, the International Air Transport Association, a trade association, had recommended that airlines implement a long schedule of instructions to passengers on the risks of DVT." *Id.*

B. <u>The District Court Rulings</u>

In *Blansett*, the district court concluded that the failure to warn *could* constitute an accident and allowed the case to proceed past a motion to dismiss. Applying what was tantamount to a "negligence" standard, the court there concluded that if the airline's failure to provide DVT warnings and instructions was an "unreasonable deviation from industry standards," it could be an "accident" under the Convention.

In denying Delta's motion to dismiss in the case at bar, this Court adhered in large measure to its July 1, 2003 order denying a motion to dismiss in the related case of *Miller v. Continental Airlines*. As the Court has explained, the July 1, 2003 order was based primarily on three factors. (Apr. 17, 2004 Order at p.3). *First*, the definition of the term "accident," under the Warsaw Convention, is to be broadly construed. *Id.* *Second*, focusing on the procedural posture of a motion to dismiss, this Court found that a "motion to dismiss is not the proper procedural setting to determine whether plaintiffs' injuries were, in fact, caused by the alleged 'accident.'" *Id.* And, *third*, the accident inquiry is particularly fact-intensive, although the Court also "recognize[d] that



**CODDINGTON, HICKS & DANFORTH**
**A Professional Corp., Lawyers**
555 Twin Dolphin Drive, #300
Redwood City, CA 94065
(650) 592-5400

plaintiffs' claims for failure to warn have a legal element." *Id.*

C. <u>The Apposite Court of Appeals Decision in *Blansett*</u>

The Court of Appeals' decision in *Blansett* (and in *Witty v. Delta Airlines*, 366 F.3d 380 (5th Cir. 2004), before that), demonstrates that this Court need not be concerned about denying a motion such as Delta's, solely on the basis of the pleadings.

In each of these cases, the "pertinent question . . . is whether [the airline's] failure to provide warnings and instructions concerning DVT could have constituted a covered "accident" under article 17" – as a matter of law. *Blansett*, 2004 U.S. App. LEXIS 15120, *3. On an interlocutory appeal, from the denial of a *motion to dismiss*, the Court of Appeals in *Blansett* held that a "failure to provide DVT warnings and instructions *could not have constituted an 'accident' under article 17*." (*Id.*, emphasis added). That is the result even assuming the truth of claims that (a) other airlines provided warnings about DVT, (b) the targeted defendant airline did not provide DVT warnings and (c) an industry trade group advocated that such warnings be given. *Id.* at **1-2.

In *Blansett*, the Court of Appeals also explained how its decision was consistent with *Husain*, just as Delta has previously shown. First, the DVT cases and *Husain* are radically at odds factually. *Id.* at *5. As the Court in *Blansett* characterized it: "The situation in the instant case differs markedly from that in *Husain*. Here, no request was made of the airline; the flight staff was entirely passive." 2004 U.S. App. LEXIS 15120, *5. Precisely the same differentiation can be made between the instant case and *Husain.*

While the Court of Appeals was cognizant that the Supreme Court observed, in *Husain*, that under some circumstances, an "accident" may constitute an omission or refusal to act, "unusual circumstances" must exist in order "to elevate the willing inaction of airline personnel from mere inertia – from a *non-event* – to an event both "unexpected and unusual." *Id.* at *9. Consistent, then, with *Husain* and *Blansett*, this Court faces *a non-event coupled with nothing at all unusual*. And, as Delta has repeatedly shown, there can be no reasonable expectation of being warned about something (i.e., DVT) where there is neither a duty nor practice of warning. A non-event coupled with nothing unusual is not – and cannot be – an "accident."

///

CODDINGTON, HICKS
& DANFORTH
A Professional Corp., Lawyers
555 Twin Dolphin Drive, #300
Redwood City, CA 94065
(650) 592-5400

In addition, *Blansett* teaches that (as Delta has repeatedly asserted), to ask whether an airline's failure to provide any particular DVT warning amounted to an "unexpected and unreasonable departure from routine industry procedure," is to pose the wrong question. *Id.* at **6-7. That negligence-rooted inquiry runs afoul of the Warsaw Convention and the Supreme Court's decision in *Husain*. As the Court of Appeals observed in *Blansett*, "[a]lthough the Supreme Court ultimately affirmed that Olympic Airways' refusal to aid the plaintiff was an 'accident,' the Court declined to base its analysis on language of reasonableness or unreasonableness." 2004 U.S. App. LEXIS 15120, *7.

The initial error of subjecting carriers to a negligence standard is then further compounded by allowing a jury to determine whether a particular airline kept up with so-called reasonable and practical industry practices. As the Court of Appeals correctly found in both *Blansett* and *Witty,* "the policies of the Federal Aviation Administration ('FAA'). . . prescribe[] what warnings airlines should issue to passengers." *Blansett*, 2004 U.S. App. LEXIS 15120, *12. "[T]he warnings reasonably required to be made by an airline are those enumerated by the FAA, and no others." *Id.* at *12, citing *Witty*.

In *Witty* (and reiterated in *Blansett*), the Court of Appeals "noted that the balance of warnings required by the government is the product of its careful judgment." Certainly, the determination about what warnings are appropriate, or what additional warnings might harmoniously fit with the federally mandated warnings (i.e., without diluting the required admonitions), cannot be the stuff of jury deliberations. Where, as here, and in *Blansett* (and *Witty*),[3] the airlines' warnings undeniably conformed with FAA policy, the failure to warn of DVT is not an "unusual or unexpected event" and not a qualifying "accident." *Id.* at **11-12. And the failure to give warnings nowhere required cannot be either unexpected or unusual.

///

///

[3]Although *Witty* was a domestic case which did not implicate the Warsaw Convention, as Delta has previously shown, the case is nonetheless instructive. Moreover, in *Witty* the Court of Appeals had no difficulty concluding that Delta's warnings comported with what was required by the governing federal regulators.

CODDINGTON, HICKS
& DANFORTH
**A Professional Corp., Lawyers**
555 Twin Dolphin Drive, #300
Redwood City, CA 94065
(650) 592-5400

## II.

## **CONCLUSION**

If the *Robinson v. Delta* and *McLachlan v. Delta* cases were pending in a district court within the jurisdiction of the Fifth Circuit, there is little doubt that both cases would be dismissed pursuant to the airline's Rule 12(b)(6) motions. *Blansett* is all but the factual and legal twin of these cases against Delta and would be controlling; dismissals of these cases would be bolstered by the reasoning of the Court in *Witty v. Delta*.

There is simply no reason for this Court to turn a blind eye to the sound reasoning and the considered holding of *Blansett v. Continental Airlines* simply because it was decided by an appellate court in another part of this country. That is particularly true because *Blansett* is guided by, and faithful to, Supreme Court precedent in *Saks* and *Husain*. *Saks* and *Husain* are controlling here. And, both compel a conclusion – in these cases – which is consistent with that in *Blansett*.[4]

For all of the foregoing reasons, and for all of the reasons expressed in Delta's previous submissions in support of its motions to dismiss the *McLachlan* and *Robinson* cases, and its motion for reconsideration of the denial of its motion to dismiss in the *Robinson* case, Delta respectfully requests that the Court issue the following orders: (1) granting the motion to dismiss in *McLachlan v. Delta Air Lines* and (2) granting the motion for reconsideration in *Robinson v. Delta Air Lines*, and granting the motion to dismiss in that case.

Dated: August 18, 2004

Respectfully submitted,

CODDINGTON, HICKS & DANFORTH

/s/

By:______________________________

Richard G. Grotch
Attorneys for Defendant
Delta Air Lines, Inc.

[4] Moreover, *Blansett* is fully consistent with DVT-Warsaw Convention jurisprudence around the world, including England and Australia.





CODDINGTON, HICKS & DANFORTH
A Professional Corp., Lawyers
555 Twin Dolphin Drive, #300
Redwood City, CA 94065
(650) 592-5400