COOLEY GODWARD LLP
THOMAS J. FRIEL, JR. (80065)
BRIAN E. MITCHELL (190095)
KENNETH B. OPLINGER (219095)
One Maritime Plaza, 20th Floor
San Francisco, CA 94111-3580
Telephone: (415) 693-2000
Facsimile: (415) 951-3699

Attorneys for Plaintiffs
LASER DESIGN INTERNATIONAL, LLC and NORWOOD OPERATING COMPANY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| LASER DESIGN INTERNATIONAL, LLC and NORWOOD OPERATING COMPANY,<br><br>Plaintiffs,<br><br>v.<br><br>BJ CRYSTAL, INC., a California corporation; CRYSTAL MAGIC, INC., a Florida corporation; U.C. LASER, INC., a New Jersey corporation; VITRO LASER GROUP U.S.A., INC., a Nevada corporation; JIMAC MARKETING, INC., a Canadian corporation; CONCORD INDUSTRIES, INC., a Connecticut corporation; C. STIEFELMAYER GMBH & Co. KG, a German limited liability partnership; CERION GMBH, a German limited liability company; CRYSTAL CAPTURE INC., a Texas corporation; CRYSTAL CAPTURE INTERNATIONAL, LLC, a Nevada limited liability company; G.W. PARTNERS INTERNATIONAL, INC., a California corporation; HIRSCH GIFT INC., a Texas corporation; VISIONS IN CRYSTAL, INC., a California corporation; VITRO LASER GMBH, a German limited liability company; VITRO INTERNATIONAL, LLC, a Nevada limited liability company; VITRO USA, LLC, a Nevada limited liability company; MERITAGE GRAPHICS, INC., a Nevada corporation; 3DLI, Inc., a Nevada corporation; and DOES 1-20, | Lead Case No. C 03-1179 JSW<br>Consolidated with No. C 03-3905 JSW<br><br>**DECLARATION OF BRIAN E. MITCHELL IN SUPPORT OF PLAINTIFFS' REPLY CLAIM CONSTRUCTION BRIEF**<br><br>Hearing Date: November 9, 2004<br>Time: 2:00 p.m.<br>Courtroom: 2, 17th Floor<br>Judge: Hon. Jeffrey S. White<br><br>Trial: Not Set |



Dockets.Justia.com

Defendants.

AND RELATED COUNTERCLAIMS

I, Brian E. Mitchell, declare:

**1.** I am associated with the law firm of Cooley Godward, LLP, counsel of record for Plaintiffs. I have personal knowledge of the facts contained in this declaration and, if called upon to testify to the truth of them, I could and would do so competently.

**2.** Attached as Exhibit A are additional portions of the deposition testimony of Dr. Robert M. Clement, from August 17 and 18, 1998. The full transcript of this deposition has previously been produced to the defendants in discovery in this case.

**3.** Attached as Exhibit B is a copy of the Consent Judgment entered on September 8, 1999 in connection with *LDI, et al. v. Scanova, et al.*

**4.** Attached as Exhibit C is a copy of the prosecution history for U.S. Patent No. 5,206,496. This exhibit includes a copy of the patent, an index that my office prepared, and a copy of the complete prosecution history that we obtained from the PTO.

**5.** Attached as Exhibit D is a copy of the prosecution history for the reexamination of U.S. Patent No. 5,206,496. This exhibit includes a copy of the reexamination certificate, an index that my office prepared, and a copy of the complete prosecution history that we obtained from the PTO.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed at San Francisco, California.

Dated: August 23, 2004

/s/
Brian E. Mitchell

# EXHIBIT A

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

LASER DESIGN INTERNATIONAL, LLC; JANESVILLE GROUP LIMITED; and UNITED DISTILLERS PLC,

Plaintiffs,

vs.

NO. C-97 20274 RMW (PVT)

SCANOVA LIMITED, a Virginia corporation; LAZER-TEK DESIGNS, LIMITED, a Nevada corporation; and MINTEX CORPORATION, a Minnesota corporation,

Defendants./

DEPOSITION OF ROBERT MARC CLEMENT
VOLUME I

DATE: August 17, 1998

DAY: Monday

TIME: 9:21 a.m.

PLACE: Skjerven, Morrill, MacPherson, Franklin & Friel
25 Metro Drive, Suite 700
San Jose, California

PURSUANT TO: Notice

REPORTED BY: KATHY L. SUSICH, RPR
CSR No. 8665

COMP-U-SCRIPTS
OFFICIAL REPORTERS and NOTARIES
1101 South Winchester Blvd., Suite D-138
San Jose, California 95128
(408) 261-9795

A. It is difficult to give you a generic answer because the combination is different. Marks that you shared with me in plastic are not a specific pixel in space in a controlled manner. In fact, it's highly uncontrolled in one of the three dimensions and of a very poor quality. So that's very, very different.

Other marks are not in three dimensions. Other claims in prior art are clearly defined by the authors as thermal interactions and not ionizing interactions. So it's a cocktail of reasons for holding the view that I hold in different cases.

Q. Can you tell me what you mean by thermal interaction?

A. Yes. Light interacts with material in a number of different ways. When light interacts -- there are four primary domains. Photochemical is one, photothermal is another, photoacoustic is another, and photoionizing is another.

In the photochemical domain, light at low levels with long exposure times interacts with the material to induce chemical change. Examples of that are the changes of color in my skin when I expose it to the sunlight and the photosynthesis interaction that takes place in nature.

When you reduce the exposure time and increase the energy or power density, then you get thermal

interactions, when a parameter known as the thermodiffusion -- there is sufficient energy there to heat the object, but it's there for long enough to allow that heat to conduct to the surrounding material, and that's a thermal interaction.

The third interaction is photoacoustic, when the energy is delivered to the material in a shorter still time frame, inducing a shock wave in the material.

And finally photoionization, when the energy delivered to the material is delivered in a still shorter time and has sufficient power density to ionize the material, or to remove the electrons. So photothermal is -- in broad terms those time frames approximately are seconds, milliseconds, microseconds, nanoseconds.

Q. You mentioned the photothermal effect., Is that a linear effect?

A. Effectively, yes.

Q. How about the photoionizing effect?

A. That is a non-linear effect.

Q. And photoacoustic?

A. To the best of my knowledge that is a linear effect.

Q. Are you familiar with the name John Ready?

A. Yes.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

LASER DESIGN INTERNATIONAL, LLC;
JANESVILLE GROUP LIMITED; and
UNITED DISTILLERS PLC,

Plaintiffs,

vs. NO. C-97 20274
RMW (PVT)

SCANOVA LIMITED, a Virginia corporation;
LAZER-TEK DESIGNS, LIMITED, a Nevada
corporation; and MINTEX CORPORATION,
a Minnesota corporation,

Defendants./

DEPOSITION OF ROBERT MARC CLEMENT
VOLUME II

DATE: August 18, 1998

DAY: Tuesday

TIME: 9:20 a.m.

PLACE: Skjerven, Morrill, MacPherson,
Franklin & Friel
25 Metro Drive, Suite 700
San Jose, California

PURSUANT TO: Notice

REPORTED BY: KATHY L. SUSICH, RPR
CSR No. 8665

COMP-U-SCRIPTS
OFFICIAL REPORTERS and NOTARIES
1101 South Winchester Blvd., Suite D-138
San Jose, California 95128
(408) 261-9795

transparent in the visible region.

Does that sound complete?

A. Yes.

Q. And is it your testimony that claim 6 of the '496 patent embodies and requires each and all of these eleven limitations?

A. If my reading of -- understanding and reading of the patent is correct I believe that to be true.

(Mr. Barron enters.)

MR. WANG: Let's go off the record for a second.

(Discussion held off the record.)

Q. (By Mr. Wang) Let's go back on the record.

Professor, yesterday you testified that light can interact in a material in four ways. Do you remember that?

A. Yes.

Q. I believe that you mentioned there was a photochemical process, a photothermal process, photoacoustic process and photoionizing process. Do you recall that?

A. Yes.

Q. Can more than one of these processes occur simultaneously when light interacts with material?

A. There are areas where the domains overlap, and that is dependent on the homogeneity of the material

L 002634

and the material concerned, but certainly there are areas where these interactions can overlap.
Q. Are there any other types of interactions other than the four that you've listed for us?
A. There may well be. Those are the four that I deal with in my field of activity, that is, in the medical field and in the industrial field.
Q. Do you know of any types of interactions other than the four that you've listed for us?
A. There are many interactions between light and matter: scattering, Raman scattering, he's a scientist; transmission; absorption. There are many ways in which light interacts with matter. But to the best of my -- well, in my field, those are the four interactions that induce significant change.
Q. Is it your testimony that only the four types of interactions which you've called photochemical, photothermal, photoacoustic and photoionizing can cause a change to the material?
A. No.
Q. Under what conditions can one or more of the -- strike that.
Under what conditions can more than one of the four processes occur simultaneously?
A. Under a number of different scenarios, if I could give you one as a means of example.

Q. Sure.
A. If you focus a beam into the bulk of the material you have, in my view, two key parameters that we are dealing with here, that is, the energy and pulse duration. However, when you focus a beam into the bulk of material, it is never the case that the focal spot is of uniform distribution. You will have a distribution that may be what we call in the scientific terms a Gaussian distribution, and in that focal spot, at the very peak of the energy density, you may be creating ionization.

However, in the periphery, in the wings of that distribution your energy may be below that threshold and you may have other effects.

So there is -- isn't a straightforward, simple scenario. The spatial distribution of the beam in space is a very important factor.
Q. You mentioned in the periphery that there were other effects. What other effects may be occurring in the periphery?
A. Again depending on the material, the energy, pulse duration, you may have in the periphery thermal effects, but it is more complex than that still, because you will have secondary as well as primary effects.
Q. What are the secondary effects?

L 002636

A. Well, whenever you deposit energy, if the ionization is the primary effect, you will have subsequent cooling, emission of light, as we've discussed yesterday. A combination of effects.
Q. Using your example where ionization is occurring at the center of the focal spot, not at the periphery, is --
A. I'm not sure that I said ionization wouldn't occur at the periphery. I just said there was a different distribution of effects.
Q. Okay. In the -- strike that.
Using your example where in the center of the focal spot is where ionization is occurring, is a thermal process occurring in the same location?
A. In my view the thermal process, if it does occur, is primarily a secondary effect. But the initial effect is an ionization process.
Q. What do you mean when you say primary effect?
A. In our experimentation, as I said to you yesterday, energy and pulse duration are the two key parameters. If you do not achieve a minimum pulse duration, then you will not achieve ionization.
If you do not have an energy threshold, if you're not above a certain energy threshold you will not achieve ionization.
Those thresholds are also material dependent and

L 002637

almost certainly also wavelength dependent. Therefore, if we elect to talk about one wavelength, which we have been predominantly in this discussion, then the energy density threshold and the pulse duration minimum are two parameters that are interlinked.
Q. You've mentioned that where ionization occurs depends on energy threshold and pulse duration; is that correct?
A. Yes.
Q. Does it depend on anything else?
A. The material and the wavelength, as I've just mentioned.
Q. Other than the energy, pulse duration, wavelength and the material -- strike that.
What do you mean by energy?
A. It also is dependent, if I could supplement before answering your question, it's also dependent on the energy, on the size of the focal spot, which of course means energy density and subsequently power density.
Q. I think you mentioned there would be no ionization if a particular energy threshold was not reached?
A. That's our experience, yes.
Q. What is that energy threshold?

L 002638

Q. What intensity at focus is necessary to induce ionization in glass using a 1.06 micron Nd:YAG laser if the pulse duration was 100 nanoseconds?
A. I don't know. All I know is that in our experimentation with our laser systems and in my view the pulse duration was too long. But that's a specific glass, a specific laser system.
Q. Is it your testimony that you cannot induce ionization in glass using a 1.06 micron Nd:YAG laser at 100 nanosecond -- is it your testimony that one cannot induce ionization in glass using a 1.06 micron Nd:YAG laser using a 100-nanosecond pulse?
A. No.
Q. Under what conditions would one be able to induce ionization in glass using a 1.06 micron Nd:YAG laser and using a 100-nanosecond pulse?
A. I don't know. I haven't conducted the experiment. You haven't defined the glass.
Q. What would you need to know in order to confirm that ionization has been induced under these conditions?
A. What would I need to know in order to confirm that ionization had taken place? I would need to observe the interactions and observe emitted electromagnetic radiation from the focal point.
Q. What do you mean by emitted electromagnetic --

A. Light, emitted light.
Q. So if light was emitted then ionization occurred?
A. Yes.
Q. Turning back to the four processes that you listed for us at the beginning of today's session -- photochemical, photothermal, photoacoustic and photoionizing -- is it ever a case that only one of these processes occur exclusive of the others?
A. In both primary and secondary interaction.
Q. What do you mean?
A. I mean, as I tried to explain earlier, when the initial interaction takes place there are secondary interactions. For example, being perhaps flippant, but the light emitted can have a secondary photochemical interaction.
It is very unlikely that any one of these interactions would occur with absolutely none of the other interactions. The fact that you see the light is a photochemical interaction in your retina, the secondary photochemical interaction.
Q. I'd like to focus on the interactions within the material itself. Within the material itself is it ever the case that only one of the processes occurs, exclusive of the others?
A. I think it's unlikely that it would be totally

L 002648

exclusive of the others. There would be some thermal interaction, primarily secondary, but it would be unlikely.

Q. So it's unlikely that only one of these processes is occurring at a time?

A. Exclusively, yes. But it may well be predominantly.

Q. Which of the four processes can lead to the formation of a mark inside a transparent material?

A. It is my view that the ionization interaction starts the process.

Q. What do you mean by starts the process?

A. In our experience, my experience, if you do not get ionization you don't get the mark.

MR. WANG: Do you want to take a break? Let's go off the record.

(Recess taken 10:18 to 10:36.)

Q. (By Mr. Wang) Back on the record.

Professor, what intensity at focus is necessary to induce ionization in glass using a 1.06 micron laser with a pulse duration of 100 picoseconds?

A. I haven't conducted -- that's not true. In our experimentation we did not -- we came to the conclusion that we could not produce quality marks in glass at that pulse duration.

Q. What do you mean by quality marks?

L 002649

# EXHIBIT B

COPY

ORIGINAL FILED
SEP 08 1999
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| LASER DESIGN INTERNATIONAL, LLC; JANESVILLE GROUP LIMITED; and UNITED DISTILLERS, PLC,<br><br>Plaintiffs,<br><br>vs.<br><br>SCANOVA, LIMITED, a Virginia corporation; LAZER-TEK DESIGNS LIMITED, a Nevada corporation; and MINTEX CORPORATION, a Minnesota corporation;<br><br>Defendants. | NO. C-97 20274 RMW (PVT)<br><br>**CONSENT JUDGMENT** |

Thomas J. Friel, Jr. and Brian E. Mitchell, of Skjerven, Morrill, MacPherson, Franklin & Friel LLP, for Plaintiffs, and Kenneth B. Wilson and David C. Wang, of Wilson Sonsini Goodrich & Rosati, for Defendant Mintex Corporation, and Arnold Weinstock for the other Defendants. The Honorable Ronald M. Whyte, U.S. District Court Judge, presiding.

## I. BACKGROUND

This case involves a dispute over the manufacture and sale of "Laser Crystal Products." "Laser Crystal Products" are decorative objects that contain internal images that have been created inside a transparent medium using a laser. Plaintiffs are the owner and licensees of U.S. Patent No. 5,206,496 (the "'496 patent"). Plaintiffs have sued defendants for patent infringement, alleging that defendants infringe the '496 patent by manufacturing and selling infringing Laser Crystal Products. On motions for summary judgment, this Court granted plaintiffs' motion for summary judgment on patent infringement, denied defendants' motion for summary judgment based on validity, and subsequently ordered the case to be set for trial. However, rather than continuing to trial, the parties have agreed to settle the controversy between them and have agreed that this Consent Judgment may be entered by this Court.

### A. <u>THE PARTIES</u>

1. The Plaintiffs

There are three plaintiffs in this action:

(a) United Distillers, PLC (now known as United Distillers & Vintners (ER) Ltd.) ("United Distillers") is the owner of the '496 patent.

(b) Laser Design International LLC ("LDI") is the exclusive licensee of the '496 patent in the "indicative" and "decorative" fields of use;

(c) Janesville Group, Ltd. ("Janesville") has an exclusive sublicense of LDI under the '496 patent in the "decorative" field of use. Janesville manufactures a full line of stock and custom "Laser Crystal Products" that are created by using the patented technology.

2. <u>The Defendants</u>

There are also three defendants:

(a) Lazer-Tek Designs Limited ("Lazer-Tek") was (and still is) a

manufacturer of its own line of Laser Crystal Products which have been found to infringe the '496 patent, using infringing methods and infringing apparatus:

(b) Scanova Limited ("Scanova") is a distributor of these infringing Laser Crystal Products.

(c) Mintex Corporation ("Mintex") was a distributor of these infringing Laser Crystal Products.

**B. THE '496 PATENT**

In general terms, the '496 patent teaches how to make controlled marks within the interior space of transparent materials such as glass and plastic without altering any of the surfaces of the material using sub-surface laser marking technology. This technology uses a computer-controlled laser to make marks inside of transparent materials using a process and phenomenon called "localised ionisation."

The '496 patent was issued on April 27, 1993. The '496 patent was assigned to plaintiff United Distillers. In 1995, Plaintiffs LDI and Janesville obtained exclusive U.S. rights to the '496 patent from United Distillers for the "indicative" and "decorative" fields of use. As exclusive licensees of the '496 patent, plaintiffs LDI and Janesville utilize the '496 patent's technology for a slightly different purpose than United Distillers. LDI and Janesville use this technology to make marks inside of glass for artistic or decorative purposes.

Defendants have also used this technology to make decorative images inside of glass. However, the process is the same as, and is covered by, the technology claimed by the '496 patent.

Plaintiffs have asserted 18 of the 25 patent claims (1, 2, 4-7, 9-15, 19, 21, 23, 24). The claims fall into three broad groups:

1. Method claims (1-5);
2. Apparatus claims (7-18); and
3. Article claims (19-25).

## II. CLAIM INTERPRETATION

Pursuant to Civil L.R. 16-11(b), the parties submitted a Joint Claim Construction

Statement for each of the '496 patent's asserted claims. This Court adopted the parties' interpretation of the undisputed claim language of the '496 patent as set forth in the parties' Joint Claim Construction Statement.

In addition, the parties briefed this Court on disputed claim language. A claim construction hearing was conducted on April 20, 1998. By Court order, this Court construed the disputed claim language of the '496 patent in a written order issued on April 27, 1998. This Court's claim construction of the disputed terms or phrases is set forth below:

| Disputed Language | Construction |
|---|---|
| "mark" | "mark" means an area of increased opacity to electromagnetic radiation. |
| "mark with a predetermined shape" | "mark with a predetermined shape" means an area of increased opacity to electromagnetic radiation wherein the predetermined shape is formed by moving the focus of the beam relative to the material. |
| "localised ionisation" | "localised ionisation" means the effect which may be caused by focusing a high energy density beam at a location in a body of material. For "localised ionisation" of the material to take place, the beam must possess sufficient energy to cleave molecular bonds and create a plasma at the point of focus. |
| "means for moving the focus of the beam relative to said portion so as to create the mark with a predetermined shape | "means for moving the focus of the beam" means:<br>(a) one or more movable mirrors (including rotatable mirrors of the preferred embodiment);<br>(b) a leans or lenses (including the zoom lenses configuration of the preferred embodiment);<br>(c) any mechanical or electromechanical device which moves the beam source relative to the body of the material;<br>(d) any combination of (a), (b), or (c); and<br>(e) any structural equivalents thereof. |

In addition, plaintiffs' opposition to defendants' motion for summary judgment on patent invalidity raised other issues of claim interpretation that warranted resolution by this Court. In this Court's order denying defendants' motion for summary judgment of patent

invalidity and granting plaintiffs' motion for summary judgment of infringement, this Court issued the following additional claim interpretations:

| Disputed Claim Interpretation | Construction |
|---|---|
| The number of pulses required to cause "localised ionisation" | claim 1 of the '496 patent places no limitation on the number of laser pulses that are necessary to cause "localised ionisation." |
| "three-dimensional" | to meet the limitation of claim 5 that the "mark is three-dimensional," the creation of the mark must be controlled in the x-, y-, and z-dimensions. Control in the x-, y-, and z-dimensions is consistent with the plain language of claim 5, which incorporates claim 4, specifying a mark with a predetermined shape. |

## III. SUMMARY JUDGMENT ON PATENT INFRINGEMENT

On motion by the plaintiffs, this Court found that there were no triable issues of material fact with regard to the defendants' infringement of claims 1, 2, 4, 5, 6, 7, 9, 10, 11, 12, 13, 19, 23, and 24 of the '496 patent. Therefore, this Court granted plaintiffs' motion for summary judgment on patent infringement as to those claims.

## IV. SUMMARY JUDGMENT ON PATENT VALIDITY

Defendants filed a motion for summary judgment on patent invalidity, asserting that all asserted claims of the '496 patent were invalid under Sections 102(a) or 102(b) of the Patent Act. Defendants relied on several products allegedly manufactured or sold in the United States, the declarations of various individuals, and numerous printed publications, as prior art in support of their summary judgment motion.

However, this Court held that there were triable issues of material fact with respect to the alleged prior art and defendants' claims that the '496 patent was invalid. Because this Court found that there were triable issues of material fact, this Court denied defendants' motion for summary judgment on patent invalidity. Subsequently, this Court then set this case for trial.

## CONSENT JUDGMENT

Rather than continuing to trial, the parties have agreed to settle the controversy between

them and have consented to the entry of the following judgment by this Court. However, should this Court desire to modify or decline to sign this Consent Judgment then, at the option of the Plaintiffs, the settlement will be voided. In the alternative, if this Court modifies the Consent Judgment, then Plaintiffs will have the right to accept that modification and the settlement will remain in force.

## I. CONCLUSIONS OF LAW

IT IS FOUND, ORDERED, ADJUDGED AND DECREED that:

1. This is an action for patent infringement arising under the patent laws of the United States.

2. Jurisdiction of this Court is proper pursuant to 28 U.S.C. §§ 1331, 1332, and 1338(a).

3. This Court has personal jurisdiction of the parties, and venue is proper in this district pursuant to 28 U.S.C. § 1400(b).

4. The parties agree and the Court accepts that all claims of the '496 patent are valid and enforceable in this cause of action or any different causes of action.

5. United Distillers, LDI, and Janesville have standing to sue for infringement of the '496 patent.

6. The patent rights of plaintiffs are not barred or limited by laches, waiver, estoppel, inequitable conduct, patent misuse, or fraud.

7. Defendants infringe the '496 patent if they directly or indirectly import, manufacture, cause to be made, offer for sale, sell, or use Laser Crystal Products that are covered by the claims of the '496 patent, or any colorable variation thereof (unless under rights granted by license).

8. Defendants have infringed all asserted claims of the '496 patent by making, causing to be made, offering to sell, and selling Laser Crystal Products that are covered by the '496 patent claims.

9. Plaintiffs have no adequate remedy at law and are entitled to an injunction.

10. Any Conclusion of Law, which is deemed to be a Finding of Fact is hereby,

adopted as such.

## II. PLAINTIFFS' RELIEF

IT IS FURTHER FOUND, ORDERED, ADJUDGED AND DECREED that:

1. Damages of $190,000 are awarded to plaintiffs as compensation for defendants' past infringement.

2. Defendant Mintex (including parents, subsidiaries, affiliates, and its officers, agents, servants, employees, successors and assigns of any of them, and all other persons in active concert or participation with any of them who receive actual notice of this Consent Judgment) is permanently restrained and enjoined during the unexpired term of the '496 patent from directly, contributory or by inducement, importing or causing to be imported, making or causing to be made, offering for sale, selling or causing to be sold, using or causing to be used, any Laser Crystal Product that infringes any claim of the '496 patent, literally or under the doctrine of equivalents, including a colorable imitation thereof. This injunction includes, but is not limited to, any Laser Crystal Product that is covered by any of claims of the '496 patent that is manufactured, sold, or offered for sale by defendant Lazer-Tek.

3. Defendants Lazer-Tek and Scanova have entered into non-exclusive separate written licensing agreements with LDI and Janesville for Laser Crystal Products, and so they are not enjoined by this Consent Judgment.

## III. TERMINATION OF THIS ACTION

IT IS FURTHER FOUND, ORDERED, ADJUDGED AND DECREED that:

1. Judgment is hereby entered for plaintiffs on the terms described above.

2. Defendants' counterclaims for declaratory relief and declaration of patent invalidity, unenforceability, and non-infringement are dismissed with prejudice.

3. This judgment shall finally conclude and dispose of this litigation and as to all parties shall be entitled to issue preclusion, claim preclusion, res judicata, and collateral estoppel effect in future litigation or patent office proceedings related to the '496 patent, whether involving the methods, apparatus, or articles of manufacture covered by this judgment, or materially different methods, processes, or articles of manufacture. The parties agree and

this Court accepts that such issue preclusion, claim preclusion, res judicata, and collateral estoppel effects to extend to the issues of claim construction, validity, and enforceability regarding any claim of the '496 patent whether raised in a court proceeding, patent office proceeding, reexamination, reissue or other dispute, even with respect to materially different methods, apparatus, or articles of manufacture.

4. This Court retains exclusive jurisdiction of this action for purposes of ensuring compliance with this Judgment and injunction; and to enforce the settlement agreement between plaintiffs and defendants, a copy of which is attached as Exhibit A.

5. No appeal shall be taken by any party from this Judgment, the right to appeal being expressly waived by all parties.

6. This Court finds and determines that there is no just reason for delay of entry of this Judgment and injunction and hereby directs that this Judgment and injunction be entered.

## IV. COSTS

1. All issues pertaining to damages, costs and attorneys fees have been settled between plaintiffs and defendants.

2. None of the parties shall recover any additional damages, costs, or attorney's fees over or above that which they have agreed, and each side shall bear its own costs and attorneys fees. All remaining costs shall be assumed by the side incurring them.

///

///

///

///

///

///

///

///

///

///

Judgment is hereby entered on the terms described above. The Clerk is directed to enter this Consent Judgment forthwith.

ORDERED THIS 30 day of August, 1999

Ronald M. Whyte
HONORABLE RONALD M. WHYTE
United States District Judge

Consented to on behalf of Plaintiffs:

DATED: August 6, 1999

SKJERVEN, MORRILL, MacPHERSON, FRANKLIN & FRIEL LLP

By [signature]
THOMAS J. FRIEL, JR.
Attorneys for Plaintiffs

Consented to on behalf of Defendant Mintex Corporation

DATED: August 10, 1999

WILSON SONSINI GOODRICH & ROSATI

By [signature] for Kenneth B. Wilson
KENNETH B. WILSON
Attorneys for Defendant Mintex Corporation

Consented to on behalf of Defendants Scanova Limited and Lazer-Tek Designs Limited

ARNOLD WEINSTOCK, P.C.

DATED: August __, 1999

By: ______________________
ARNOLD WEINSTOCK
Attorney for Defendants Scanova Limited and Lazer-Tek Designs Limited

Consented to on behalf of Plaintiffs:

DATED: August 6, 1999

SKJERVEN, MORRILL, MacPHERSON, FRANKLIN & FRIEL LLP

By: THOMAS J. FRIEL, JR.
Attorneys for Plaintiffs

Consented to on behalf of Defendant Mintex Corporation

DATED: August __, 1999

WILSON SONSINI GOODRICH & ROSATI

By: ______________________
KENNETH B. WILSON
Attorneys for Defendant Mintex Corporation

Consented to on behalf of Defendants Scanova Limited and Lazer-Tek Designs Limited

ARNOLD WEINSTOCK, P.C.

DATED: August 26, 1999

By: ARNOLD WEINSTOCK
Attorney for Defendants Scanova Limited and Lazer-Tek Designs Limited

# EXHIBIT C

# COMPLETE PROSECUTION HISTORY FOR PATENT NO. 5,206,496

# ATTACHED TO DECLARATION OF BRIAN E. MITCHELL

# MANUALLY FILED WITH COURT

# EXHIBIT D

# COMPLETE PROSECUTION HISTORY FOR RE-EXAMINATION PATENT NO. 5,206,496

# ATTACHED TO DECLARATION OF BRIAN E. MITCHELL

# MANUALLY FILED WITH COURT