GARRY G. MATHIASON, Bar No. 51119
ALAN S. LEVINS, Bar No. 57612
DEBORAH A. RICE, Bar No. 207100
LITTLER MENDELSON
A Professional Corporation
650 California Street, 20th Floor
San Francisco, CA 94108
Telephone: 415.433.1940
Fax: 415.434.2302

Attorneys for Plaintiff
GRANITE ROCK COMPANY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| GRANITE ROCK COMPANY,<br>Plaintiff,<br>v.<br>INTERNATIONAL BROTHERHOOD OF TEAMSTERS, FREIGHT, CONSTRUCTION, GENERAL DRIVERS, WAREHOUSEMEN AND HELPERS, LOCAL 287 (AFL-CIO), and DOES 1 through 20, inclusive,<br>Defendants. | Case No. C 04 2767 JW<br><br>**REPLY BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR NEW TRIAL PURSUANT TO RULE 59(a) OR, IN THE ALTERNATIVE, MOTION TO VACATE DISMISSAL OF THE FIRST AMENDED COMPLAINT PURSUANT TO RULE 59(a), (e) AND/OR RULE 60(b)**<br><br>Date: September 13, 2004<br>Time: 9:00 a.m.<br>Judge: The Honorable James Ware<br>Courtroom: 8 |

## TABLE OF CONTENTS

**PAGE(S)**


I. INTRODUCTION .......... 1

II. LEGAL ARGUMENT .......... 1

A. Newly Discovered Critical Evidence Justifies A New Trial Under Rule 59. .......... 1

1. Background. .......... 1
2. Mr. Walrod's Declaration Is Critical New Evidence. .......... 2
3. Based On Well-Established Legal Principals And The Parties' Past Practice, The Union's Claim That Ratification Of The Collective Bargaining Agreement Was Conditioned On Execution Of The Back To Work Agreement Is Without Merit. .......... 4
4. Granite Rock Exercised Due Diligence In Finding The Newly Discovered Evidence. .......... 7

B. In The Alternative To Plaintiff's Motion For A New Trial Under Section 59(a), The Court's Dismissal Of Plaintiff's First Amended Complaint Must Be Vacated Pursuant To Rule 60(b). .......... 10

1. Notice Of Consolidation Was Not Clear And Unambiguous, Nor Did Granite Rock Waive Its Right To A Trial On The Merits. .......... 10
2. The Dismissal Of The Complaint Must Be Vacated Because Granite Rock Has Not Had Reasonable Opportunity To Conduct Discovery Or Full Opportunity To Present Its Case To The Court. .......... 12
3. The Dismissal Of The Complaint Must Be Vacated Because Rule 65(a)(2) Does Not Expressly Permit Consolidation Of The Merits With An Application For A Temporary Restraining Order. .......... 14

III. CONCLUSION .......... 15

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**


*Air Line Pilots Ass'n, Intern. v. Alaska Airlines, Inc.*,
898 F.2d 1393 (9th Cir. 1990) .... 11

*AMF Bowling Co. v. NLRB*,
977 F.2d 141 (4th Cir. 1992) .... 6

*Benda v. Grand Lodge of International Assoc. of Machinists & Aerospace Workers*,
442 F. Supp. 431 (N.D. Cal. 1977),
*reversed in part on other grounds*, 584 F.2d 308 (9th Cir. 1978),
*cert denied*, 441 U.S. 937 (1979) .... 5

*Granny Goose Foods v. Teamsters*,
415 U.S. 423 (1974) .... 14

*In re Sonnax Indus.*,
907 F.2d 1280 (2d Cir. 1990) .... 10

*NLRB v. General Teamsters*,
368 F.3d 741 (7th Cir. 2004) .... 5

*NLRB v. Pennsylvania Tel. Guild*,
799 F.2d 84 (3d Cir. 1986) .... 6

*NLRB v. Salvation Army of Mass. Dorchester Day Care Center*,
763 F.2d 1 (1st Cir. 1985) .... 6

*NLRB v. South Atlantic and Gulf Coast District*,
443 F.2d 218 (5th Cir. 1971) .... 5

*NLRB v. Wooster Division of Borg-Warner Corp.*,
356 U.S. 342 (1958) .... 5, 6

*Pleasantview Nursing Home, Inc. v. NLRB*,
351 F.3d 747 (6th Cir. 2003) .... 6

*Retlaw Broadcasting Co. v. NLRB*,
172 F.3d 660 (9th Cir. 1999) .... 5, 6

*Rossmore House*,
269 NLRB 1176 (1984) .... 10

*Rush v. Virginia Dep't of Transportation*,
208 F. Supp. 2d 624 (W.D. Va. 2002) .... 14

*United States v. Microsoft Corp.*,
147 F.3d 935 (D.C. Cir. 1998) .... 10

*Univ. of Texas v. Camenisch*,
451 U.S. 390 (1991) .... 11

## STATUTES

29 U.S.C §157 .... 10
Fed. R. Civ. P. 26(d) .... 1, 9, 13
Fed. R. Civ. P. 26(f) .... 1, 9, 13
Fed. R. Civ. P. 38(b) .... 11
Fed. R. Civ. P. 59 .... 1
Fed. R. Civ. P. 59(a) .... 1, 10, 15
Fed. R. Civ. P. 59(e) .... 1, 15
Fed. R. Civ. P. 60(b) .... 1, 10, 15
Fed. R. Civ. P. 65 .... 14
Fed. R. Civ. P. 65(a) .... 12
Fed. R. Civ. P. 65(a)(2) .... 1, 11, 12, 14
Fed. R. Civ. P. 65(b) .... 8, 14
National Labor Relations Act, Section 8(a)(1) .... 10

## OTHER AUTHORITIES

*Federal Practice and Procedure, Civil 2nd*, § 2808 .... 9
National Labor Relations Act .... 10

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
Twentieth Floor
San Francisco, CA 94108.2693
415.433.1940

## I. INTRODUCTION

The first issue before the Court is whether Plaintiff (also "the Employer" or "Granite Rock") is entitled to a new trial under Rule 59(a). Plaintiff's motion for a new trial was timely filed and is properly before the Court. It is based on newly discovered evidence. Depending upon the Court's decision, it may then be unnecessary to consider Plaintiff's alternative motion under Rule 60(b) to vacate the Dismissal of the First Amended Complaint. This motion involves three related but independent issues: (a) Whether notice of consolidation of the temporary restraining order hearing with a full-trial of the case was sufficiently clear and unambiguous; (b) Whether Granite Rock had a full and fair opportunity to conduct discovery and present its entire case on the merits to the Court; and (c) Whether it is legally possible under Rule 65(a)(2) to combine what was noticed as a temporary restraining order hearing with a full-trial on the merits.

## II. LEGAL ARGUMENT

### A. Newly Discovered Critical Evidence Justifies A New Trial Under Rule 59.

#### 1. Background.

At the time of the hearing on July 26, 2004,[1] Bruce Woolpert, Granite Rock's CEO, provided a Declaration and was prepared to testify that he was informed by an agent of the Union that the collective bargaining agreement had been ratified, that the Union continued to strike in breach of the no strike clause of the new agreement and that irreparable harm was occurring. Likewise, Mr. George Netto had filed a declaration and was available as a witness. It was in this context that the two hour hearing took place.

During the hearing, the Court explained that the declarations were contradictory regarding whether a July 2 phone call took place between Mr. Netto and Mr. Woolpert and whether Mr. Netto had ever stated that the parties' collective bargaining agreement was ratified. Plaintiff relied on Mr. Netto's alleged statement as sufficient to bind the Union regardless of whether the vote had actually taken place because the case had only recently been filed and no discovery was permitted under F.R.C.P. 26(d) and (f). The Court ruled that Mr. Netto had not informed the Company that the contract had been ratified and relied on Mr. Netto's testimony that a ratification vote had not

[1] All dates refer to 2004, unless otherwise stated.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
Twentieth Floor
San Francisco, CA 94108.2693
415.433.1940

occurred.

Although the Court made a determination as to whether Mr. Netto informed Mr. Woolpert that the collective bargaining agreement had been ratified, the critical issue of whether the unit employees had actually voted in favor of ratification on July 2 was effectively not litigated as Mr. Netto was the only direct witness to the meeting present in the Courtroom. The Union attorney stated that "no vote was actually taken by secret ballot or otherwise" (Tr. 16:7-10). When Netto was asked point-blank whether there had been any vote on the Saturday work issue (the so-called letter of understanding side agreement) or any other matter, Netto failed to confirm any such vote.[2] Rather, Netto stated that the employees "didn't vote on any agreement." (Tr. 98:25-99:4). Netto was the only person to testify that there had been no ratification at the meeting.

### 2. Mr. Walrod's Declaration Is Critical New Evidence.

Following the hearing, Mr. Richard R. Walrod, a driver who was present for the vote on July 2, learned of Mr. Netto's testimony and believed it was "wrong." Despite Mr. Netto's previous threats and vandalism attributed to the Union, Mr. Walrod voluntarily provided a declaration under oath detailing that a secret ballot vote on the new collective bargaining agreement had indeed occurred. (Walrod Decl. ¶ 11, 13.) There is no ambiguity or equivocation in Mr. Walrod's statement. He explains that Netto reviewed the proposed collective bargaining agreement, recommended approval and passed out ballots to vote on "whether we [unit employees] approved the new contract or not." (Walrod Decl. ¶ 7). After the vote, Netto announced there was "unanimous support for the new contract." (Walrod Decl. ¶ 8).[3] Moreover, Mr. Walrod's Declaration clearly distinguishes any discussion of Saturday work as coming after the employees voted to approve the contract.

Mr. Walrod is the only employee witness whose potential testimony is before the Court

---

[2] Mr. Netto has changed his testimony in his supplemental declaration. He now remembers there was a vote. Mr. Netto's testimony is contrary to Mr. Walrod's, a rank and file Teamster driver who has nothing to gain in this litigation or by testifying.

[3] The Union's patronizing effort to suggest that Mr. Walrod somehow could not understand what was occurring at the meeting must be rejected. As a Teamster driver, he was well aware of what a ratification vote entailed. If there is any doubt Mr. Walrod understood what was occurring, an assumption the Employer denies, that is yet another argument in favor of the Employer's instant motion.

regarding what occurred at the ratification vote on July 2.[4] At the very least, Mr. Walrod's testimony presents the Court with a dispute over a material fact that goes to the heart of this case—whether the unit employees ratified the collective bargaining agreement on July 2. This core issue is separate and distinct from the Court's primary finding that Mr. Netto did not inform Mr. Woolpert that the contract was ratified during their telephone conversation on July 2. As the cases previously cited by Plaintiff demonstrate, this new evidence, bearing directly on the ratification meeting itself, and not on the conversation between Mr. Woolpert and Mr. Netto, warrants a new trial.

In response to this new critical evidence Defendant's counsel hypothesizes that Mr. Walrod could have been confused or should be discredited. While such attacks may be fully explored at trial, they are not properly raised at this time. The issue before the Court is whether a new trial should be ordered and normal discovery permitted. During discovery, Mr. Walrod can be cross-examined and his testimony compared with the expected testimony of other employees who attended the July 2 meeting. Minimal discovery regarding the ballots alone could potentially resolve the issue of what was voted upon. A new trial at this early point in the litigation is an efficient use of resources. No discovery has occurred, no depositions have been taken, and no requests for admissions or interrogatories have been answered. The total record in this case consists of the initial pleading and the two-hour hearing held before the Court. This is a natural and efficient juncture in the case at which to commence initial discovery.

While litigation has a purpose of resolving the claims before the Court, it also has the very important purpose of providing the parties with their "day in court." In this case, substantial rights are involved regarding potential damages suffered not only by the Employer, but by employees who would have been at work if the contract had been approved. The Court is now aware that an employee vote did take place on July 2; that ballots exist that might on their face show whether the contract was ratified; that there is an irreconcilable conflict in the testimony between George Netto and an employee who was at the meeting; and that there are other material witnesses who could

[4] Granite Rock objects to Exhibit 1, which is attached to Mr. Netto's Supplemental Declaration dated August 23. It is inadmissible hearsay. It is not properly authenticated or signed under penalty of perjury. It must be disregarded by the Court. (*See* Plaintiff's Objections to Defendant's Evidence.)

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
Twentieth Floor
San Francisco, CA 94108.2693
415.433.1940

testify about the vote on July 2. In the interests of justice and the perception of justice, sufficient evidence should be taken to resolve the question of whether the contract was in fact ratified.

**3. Based On Well-Established Legal Principals And The Parties' Past Practice, The Union's Claim That Ratification Of The Collective Bargaining Agreement Was Conditioned On Execution Of The Back To Work Agreement Is Without Merit.**

In response to Mr. Walrod's detailed description of what took place during the July 2 meeting and the vote to approve the contract, the Union now contends that the existence of a disagreement over the terms of the back to work agreement precludes a finding that the contract was ratified. But the Union's position assumes its own conclusion, i.e. that there was not a ratification vote. Mr. Walrod's testimony, however, demonstrates that the Union, consistent with the parties' prior practice, ratified the collective bargaining agreement before addressing the back to work agreement.[5]

To be sure, at one point the parties considered voting for the collective bargaining agreement and back to work agreement at the same time. In fact, a proposal from the Company contemplated that the members would have a 6:00 a.m. ratification meeting and approve both the contract and the back to work agreement. The testimony from Mr. Woolpert, the offered testimony from Shirely Ow and the declaration of Mr. Walrod explain, however, that the Union did not accept this proposal, but instead agreed to vote on the ratification of the contract. When Mr. Netto left the bargaining session on the morning of July 2, he promised to recommend approval of the contract. Later, Mr. Netto told Mr. Woolpert that the contract had been approved and that the back to work agreement would be finalized over the next days. As Mr. Netto admitted, this is the same procedure utilized by the Parties in the previous year at the Gilroy facility.[6] Therefore, even if it is determined (as the Court

---

[5] The Defendant Union attributes this argument to the Court, but misreads the words used by the Court. In deciding whether the contract had in fact been ratified or not, the Court stated: "For various reasons the back to work agreement was never executed and signed and so the ratification vote that would have been part of what was intended by the parties to take place <u>never took place</u>." [emphasis added] (Tr. 117.)

[6] At some point, Mr. Netto decided that he wanted the back to work agreement approved before a full return to work. Apparently to gain leverage, Mr. Netto then falsely claimed that the ratification vote on the contract itself had not yet been taken. Clearly both the Company's back to work proposal and the one later received from the Union are consistent with the above theory of the case which underlies Granite Rock's lawsuit.

has already ruled) that Mr. Woolpert was not told the contract had been ratified, the above theory pleads a cause of action if the collective bargaining agreement was actually ratified.

Beyond the entirely plausible events described above and supported by Mr. Walrod's Declaration, it is a matter of long established labor law that if the employees had voted upon the collective bargaining agreement, their approval would have resulted in an enforceable contract binding on Granite Rock and the Union. It is undisputed that the terms and conditions of employment (wages, hours, and working conditions) were agreed upon during the July 2 negotiating session, and the Court found that the parties' "reached a tentative agreement." (Tr. 114:17.) The remaining items in the back to work agreement involved disciplinary actions, grievances, legal claims, potential secondary picketing, and contract violations. These are known as "permissive" items of negotiations. Such items cannot under the National Labor Relations Act be used to block an otherwise agreed upon contract. *See Retlaw Broadcasting Co. v. NLRB,* 172 F.3d 660, 665-66 (9th Cir. 1999); *see also NLRB v. General Teamsters,* 368 F.3d 741, 746 (7th Cir. 2004) (also holding that waiver of the right to hold a union office is a permissive subject of bargaining). The Union's position to the contrary is wrong as a matter of law.

It is unlawful to condition execution of a collective bargaining agreement upon such permissive items. Once parties reach final agreement on the terms of a collective bargaining agreement, they cannot avoid agreement by injecting "extraneous issues [such as the back to work agreement] into the negotiations." *Benda v. Grand Lodge of International Assoc. of Machinists & Aerospace Workers*, 442 F. Supp. 431, 436 (N.D. Cal. 1977*), reversed in part on other grounds*, 584 F.2d 308 (9th Cir. 1978), *cert denied*, 441 U.S. 937 (1979); *see also NLRB v. South Atlantic and Gulf Coast District*, 443 F.2d 218, 220 (5th Cir. 1971). Further, by conditioning ratification on the execution of the back to work agreement, the Union would be violating its duty to bargain by insisting to impasse on a permissive subject of bargaining. *NLRB v. Wooster Division of Borg-Warner Corp.,* 356 U.S. 342, 349 (1958); *see also Retlaw Broadcasting Co. v. NLRB,* 172 F.3d 660, 665-66 (9th Cir. 1999). Accordingly, if it is assumed for the purpose of considering this motion that the facts in Mr. Walrod's declaration are true (and the contract was approved), then as a matter of law the collective bargaining agreement would be enforceable and either party could be required to



LITTLER MENDELSON
A Professional Corporation
650 California Street
Twentieth Floor
San Francisco, CA 94108.2693
415.433.1940

sign it. Under these circumstances it is not surprising that the parties have a practice of reaching agreement on the contract, having it ratified, and later finalizing an agreeing upon the terms of the back to work agreement. Thus, the back to work agreement was not, and legally cannot be, "inextricably intertwined" with the ratification of the contract as the Union suggests.[7]

The above legal analysis demonstrates it would be unlawful to claim that agreement on the back to work items became a condition for enforcement of a ratified contract. Yet this is the argument Defense counsel is suggesting when it is claimed that the Walrod declaration is "meaningless." If actual ratification took place, fifty years of published cases from every circuit court in the nation establish that the collective bargaining agreement would be enforceable notwithstanding any open items in the back to work agreement. *See Wooster Division of Borg-Warner Corp., supra,* 356 U.S. at 349 (cited and/or followed by every circuit court) *accordingly see NLRB v. Salvation Army of Mass. Dorchester Day Care Center,* 763 F.2d 1, 7 (1st Cir. 1985), *NLRB v. Pennsylvania Tel. Guild,* 799 F.2d 84, 87 (3d Cir. 1986), *AMF Bowling Co. v. NLRB,* 977 F.2d 141, 148 (4th Cir. 1992), *Pleasantview Nursing Home, Inc. v. NLRB,* 351 F.3d 747, 759 (6th Cir. 2003), *Retlaw, supra,* 172 F.3d at 665-66.

Not only is Defendant's claim that ratification was contingent on execution of the back to work agreement contrary to well-established labor law principles, but it is also inconsistent with the parties' past practice. In 2003, the parties were engaged in negotiations for a new contract covering unit employees at Granite Rock's Gilroy facility. Similar to this case, the unit employees went out on strike after the collective bargaining agreement expired. The parties' reached tentative agreement on August 1, 2003, and the Union <u>verbally notified</u> Granite Rock that the contract was ratified that same evening. The parties subsequently negotiated a back to work agreement, which was not finalized until August 7, 2003—nearly a week <u>after</u> ratification. (Tr. 86:20-87:25.) These facts are undisputed. Based on Netto's testimony itself, it is clear that the parties routinely negotiate a back to

---

[7] Last week, the Union informed Granite Rock that it had ratified the new collective bargaining agreement. However, the Union made no reference to the back to work agreement, which the parties have not settled. (*See* Supplemental Woolpert Decl. ¶ 2, Exh. A.) Therefore, the Union's claim that ratification of the new collective bargaining agreement was conditioned on the execution of the back to work agreement is entirely without merit as evidenced by the Union's recent actions.

work agreement <u>after</u> the collective bargaining agreement has been ratified. (Tr. 86:20-87:25.)

The impact of the Walrod Declaration is that there is now a dispute of fact regarding the central issue of whether the contract was ratified, regardless of what Mr. Netto did or did not tell Mr. Woolpert. If the collective bargaining agreement was ratified, regardless of the pending back to work agreement, then there is a valid contract that the Union must comply with. The counter-declaration from Netto and the hearsay references to other drivers merely confirms that this is a material question of fact that could benefit from discovery and the normal litigation process. That question is what actually happened during the July 2 meeting regarding the new collective bargaining agreement. Accordingly, Plaintiff's new evidence regarding the ratification of the collective bargaining agreement is material and justifies a new trial with reopening of discovery.

#### 4. Granite Rock Exercised Due Diligence In Finding The Newly Discovered Evidence.

Having established above that the new evidence is material to the outcome of the case, the remaining question is whether Granite Rock exercised due diligence. The undisputed evidence shows that the new evidence was not reasonably available on July 26, 2004 nor expected to be available in the context of a temporary restraining order hearing. When Granite Rock filed its Complaint on July 9, immediate injunctive relief was not sought as picketing was limited and an imminent resolution was expected. When picketing continued and expanded to impact over 170 employees (Woolpert Declaration, 3:10-17), the Company amended its Complaint on July 22 and sought immediate temporary relief from what it believed was irreparable harm to the Company and to the many employees out of work.

Only four days after filing its Amended Complaint, a hearing was held on Granite Rock's request for a temporary restraining order ("TRO"). This was not noticed as a preliminary injunction hearing, nor would that have been possible given the short timeframe between amending the Complaint to seek injunctive relief and petitioning the Court. Specifically, after greeting the parties, the Court stated that Granite Rock's motion for a TRO came to its "immediate scrutiny to determine whether or not there are circumstances which would require the Court to exercise its discretion to stop conduct that is underway or order anyone to do something early in litigation." (Tr. 3:17-4:2.)



LITTLER MENDELSON
A Professional Corporation
650 California Street
Twentieth Floor
San Francisco, CA 94108.2693
415.433.1940

The July 26 hearing was noticed to address only Granite Rock's motion for a TRO and this fact is essential in looking with hindsight at the expectation of the parties upon entering the Courtroom. Under Rule 65(b), the legal standard for granting temporary relief is whether or not the applicant demonstrates from specific facts or by the verified complaint that it will suffer immediate and irreparable injury, loss or damage absent action by the court. Granite Rock was prepared to address the issue of irreparable harm at the hearing. Granite Rock was not, however, fully prepared or required to show a likelihood of success on the merits of its entire case for injunctive relief on July 26, as would be required had a preliminary injunction hearing been noticed.

Plaintiff could not, with any amount of diligence, know that it would need the testimony of Mr. Walrod or any unit employees for purposes of the TRO hearing. As described in its moving papers, Plaintiff clearly engaged in all appropriate due diligence to marshal facts necessary for the Court to grant temporary injunctive relief. Granite Rock spoke with unit employees Shridan, Alvarnez, Nowak, Galaz and Hopf, who confirmed that they had voted and implied that the collective bargaining agreement was ratified.[8] (Tr. 50-54.) Netto called Mr. Woolpert on July 2 to inform Granite Rock that the contract had been ratified and that the parties could turn their attention to the back to work agreement. (Tr. 44:6-12). Unit employees who were previously on strike also called into Granite Rock's dispatch office to pick up their next scheduled shift. (Tr. 46:2-11). Based on these facts that were testified to by Mr. Woolpert (and which would have been confirmed by Ms. Ow if allowed by the Court), Granite Rock reasonably believed that it had sufficient evidence establishing that the underlying collective bargaining agreement had been ratified. In order to satisfy the legal standard necessary for the Court to issue a TRO, Plaintiff intended to proceed with testimony from Mr. Woolpert that the Union's failure to recognize and abide by the contract's no-strike clause was causing the Employer irreparable harm. Defendant does not dispute those facts or even discuss Plaintiff's supporting authority in its brief.

[8] Granite Rock also attempted to contact Mr. Walrod, but was unable to reach him due to a non-working phone number. Defendant's claim that Plaintiff should have interrogated Mr. Walrod's co-workers in order to ascertain his whereabouts in order to satisfy its due diligence requirement lacks any legal support. Given that Granite Rock had sufficient evidence from five other unit employees that the contract had been ratified and the low threshold required for temporary injunctive relief, the Employer clearly acted with due diligence in not contacting Mr. Walrod at that time.

In fact, the very slim reed that Defendant uses to support its position is its citation to *Federal Practice and Procedure, Civil 2nd*, § 2808. That section states that the new evidence must consist of facts existing at the time of trial that the moving party did not know of despite its due diligence. Defendant's citation actually *supports* Granite Rock's position for two reasons. First, this matter was never set for trial, but only for a temporary restraining order. At this stage, formal discovery was not allowed under F.R.C.P. 26 (d) and (f). The hearing was set a mere four calendar days from the filing of Granite Rock's Amended Complaint. Defendant cites to what should occur post-trial. But, in those circumstances, i.e., post-trial, there would have already been months of discovery. Defendant cannot analogize this situation to cases that discuss evidence discovered after a trial that was preceded by months or years of discovery.

Here, at the time of the TRO hearing, Mr. Woolpert did not know of Walrod's potential testimony nor was it reasonably discoverable. No discovery had taken place, no responsive pleading was received until the day of the hearing, and the decision to allow testimony concerning whether Mr. Netto informed Mr. Woolpert that the contract was ratified was made during the hearing. Hindsight must be tempered with what was known and reasonably expected when the hearing commenced. Again, if Mr. Walrod's testimony is ultimately credited, it establishes that the contract was ratified, even if it remains determined that Mr. Netto did not convey this information to Granite Rock.

Second, discovery was not available under Rules 26(d) and (f) because only four days had passed from the filing of the Employer's Amended Complaint. Nevertheless, Granite Rock acted with the utmost due diligence in preparing the many papers necessary and securing the testimony of Bruce Woolpert and Shirley Ow. Their testimony was expected to be sufficient to prove irreparable harm and a *prima facie* case supporting the Complaint. Prior to the commencement of the TRO hearing, Plaintiff had no reason to expect that the Court would seek or allow testimony on what happened during the July 2 employee meeting to such an extent that over twenty employees should be subpoenaed to testify. Employees had been told by the Union not to talk to Mr. Woolpert, and, generally, the testimony of union members about a union meeting has to be handled carefully to

avoid claims under Section 8(a)(1) of the National Labor Relations Act. 29 U.S.C. §158(a).[9] The test of "due diligence" should be applied based on what the Employer know and expected at the commencement of the TRO hearing. Under this standard, Granite Rock's actions met any possible requirement of due diligence.

In sum, it is clear that Granite Rock marshaled sufficient evidence in support of its application for a TRO. The Declaration of Richard Walrod that is currently before the Court constitutes critical evidence regarding the central issue of whether the collective bargaining agreement was ratified. While Mr. Walrod's testimony was not necessary as of July 26, given the threshold Plaintiff was required to meet for temporary injunctive relief, Granite Rock did make diligent efforts to ascertain such information. Accordingly, the Court must grant Plaintiff's motion for a new trial under Rule 59(a).

### B. In The Alternative To Plaintiff's Motion For A New Trial Under Section 59(a), The Court's Dismissal Of Plaintiff's First Amended Complaint Must Be Vacated Pursuant To Rule 60(b).

#### 1. Notice Of Consolidation Was Not Clear And Unambiguous, Nor Did Granite Rock Waive Its Right To A Trial On The Merits.

As noted in its Opening Brief, Granite Rock never expressly consented to a trial on the merits and there is no waiver by Granite Rock in the record of its right to a trial on the merits. The decision to consolidate was ambiguously set forth. Defendant's opposition once again skirts the critical issue and fails to address the cases cited by Plaintiff.

Defendant's opposition highlights the ambiguities that existed[10]. Defendant quotes as follows: "I can have that hearing this afternoon and you can be done with this whole problem one way or the other, but I would have to have your waiver because I haven't given you any notice of it.

---

[9] It is a violation of Section 8(a)(1) of the NLRA for an employer to interrogate an employee if such questioning tends to interfere with, restrain, or coerce employees in the exercise of their Section 7 rights (29 U.S.C §157). *Rossmore House*, 269 NLRB 1176 (1984).

[10] Defendant quotes the Court as follows: "This comes to me today by way of a preliminary injunction..." (Tr.24). However, the Court repeatedly stated that the only issue brought before it was the TRO (Tr.3 and 113.) Moreover, even if the Court mistakenly characterized the proceedings on July 26, as a preliminary hearing, it cannot change the fact that it was noticed and calendared as a temporary restraining order hearing. *See In re Sonnax Indus.*, 907 F.2d 1280, 1287 (2d Cir. 1990) (stating that discovery had not begun at the time a preliminary injunction was issued); *see also United States v. Microsoft Corp.*, 147 F.3d 935, 940 (D.C. Cir. 1998) (continuing discovery after preliminary injunction was issued).

LITTLER MENDELSON
A Professional Corporation
650 California Street
Twentieth Floor
San Francisco, CA 94108.2693
415.433.1940

It sounds like the plaintiff here is wishing to have it…" (Tr. 25:5-12). This statement clearly meant that the parties have to affirmatively waive their right to a trial on the merits in order to proceed. But, there is no indication in the record that Granite Rock or the Union consented to, or waived its right to, a trial on the merits. (Levins Decl., ¶ 9-10.) As the standard under Rule 65(a)(2) is "clear and unambiguous notice," <u>any</u> misunderstanding between the Court and the parties must be resolved in favor of Granite Rock. *Air Line Pilots Ass'n, Intern. v. Alaska Airlines, Inc.*, 898 F.2d 1393, 1397 (9th Cir. 1990) citing *Univ. of Texas v. Camenisch,* 451 U.S. 390, 395 (1991).

Defendant also relies on the following statement made by the Court: "My understanding of all the actions that are <u>before this Court</u> would be tried to the Court sitting without a jury. So I'm not depriving anyone of the right to a <u>jury</u> trial on any of the matters that are before the Court." (Tr. 35-36 (emphasis added)). At that time, Plaintiff believed the only matter <u>before</u> the Court was whether an injunction would be granted. Plaintiff still had its Complaint for Damages that would be tried by a jury and never contemplated waiving that right. The Union's assertion that Granite Rock was somehow barred from trying its case before a jury is simply incorrect. Under F.R.C.P. 38(b), Granite Rock does not have to demand a jury trial until ten days <u>after</u> the Union files its Answer. In light of the fact that the Union has not filed an Answer, Granite Rock most definitely retained the right to request a jury trial.

Without question, the right to a trial by jury is so sacred that waiver must be explicit, not implicit. Yet, no such waiver was given by Granite Rock at any time during the TRO hearing. Conceivably, the Court could have construed Granite Rock's litigation of the issue of whether or not Mr. Netto informed Mr. Woolpert that ratification had occurred as a tacit agreement to consolidate its right to a preliminary hearing with its application for a TRO. However, the record is devoid of any indication that the Employer consented to or waived its right to a trial on the merits with respect to its damage action. (Levins Decl. ¶ 9-10.)

The Court was not in a position to determine whether an actual ratification vote had taken place since the only witness to the meeting was the Union Business Agent Netto. In fact, the Court was informed by counsel <u>for the Union</u> that unit employees had attended the ratification meeting and that their testimony <u>would be very important to such a determination</u>. (Tr. 25: 14-20; 26: 5-8.) As

LITTLER MENDELSON
A Professional Corporation
650 California Street
Twentieth Floor
San Francisco, CA 94108.2693
415.433.1940

previously noted, Granite Rock was relying on Mr. Netto's verbal confirmation to Mr. Woolpert that the tentative collective bargaining agreement had been ratified or approved by the membership for purposes of immediate and temporary injunctive relief. That was the critical issue before the Court. Granite Rock did not intend to waive the right to establish that such a ratification vote actually took place in subsequent proceedings. (Levins Decl. ¶ 8.) *See* Discussion in Opening Brief at pp. 12-17.

Defendant begs the key question where it states, "Neither attorney for Plaintiff objected or expressed any reservations to the Court's understanding." (Defendant's Opposition p. 3 (emphasis added).) Defendant does not dispute that neither Plaintiff nor Defendant accepted the consolidation or waived their due process rights to further discovery[11]. Further, regardless of the Court's understanding, the issue is whether that understanding was explained unambiguously to the Plaintiff and resulted in the Plaintiff's knowing waiver. For the reasons set forth in the Plaintiff's Opening Brief and in this Brief, Plaintiff did not receive clear and unambiguous notice of consolidation and did not waive its right to discovery and a trial on the merits. (Levins Decl. ¶¶ 6-10.)

### 2. The Dismissal Of The Complaint Must Be Vacated Because Granite Rock Has Not Had Reasonable Opportunity To Conduct Discovery Or Full Opportunity To Present Its Case To The Court.

The Union's attempt to establish no difference between a TRO and a preliminary injunction is unavailing. Rule 65(a), which is entitled "Preliminary Injunction," and specifically Rule 65(a)(2) provides: "Before or after the commencement of the hearing of an application for a preliminary injunction, the court may order the trial of the action on the merits to be advanced and consolidated with the hearing of the application." F.R.C.P. §65(a)(2) (Emphasis added). While the hearing may have evolved into a proceeding having the characteristics of a preliminary injunction hearing, it was calendared and noticed as a TRO proceeding. This fact is significant because an applicant must show a likelihood of success on the merits to succeed at a preliminary injunction hearing,. Thus, the parties are on notice that they will be called upon to provide testimony that goes to the merits of the

[11] Defendant's statement in footnote 2 of its opposition demonstrates exactly why the Union is wrong in this case. It is not the inevitable consequence of all consolidation rulings to give up discovery. Far to the contrary, it is not unusual at the preliminary injunction stage of a case to have engaged in substantial discovery.

dispute.

Here, Plaintiff did not know that it would be required to put on the merits of its case because the only proceeding scheduled for July 26, was a hearing on Granite Rock's application for a TRO. As such, Granite Rock arrived at the hearing prepared to put on evidence establishing that it was suffering irreparable harm as a result of the Union's strike and picketing activity. This was the only standard Granite Rock was required to meet for temporary injunctive relief. It did not have to present evidence demonstrating a likelihood of success on the merits of its entire claim.

It is without question that Granite Rock was not afforded a full and complete opportunity to try its case on the merits within the forum of a preliminary injunction hearing. Although the Court made the determination that Mr. Netto did not tell Mr. Woolpert that the contract was ratified, the key issue of whether the collective bargaining agreement was actually ratified by the unit employees remains. However, at the time of the hearing, Granite Rock had no reasonable opportunity to conduct discovery on the merits of the case. Granite Rock could not seek discovery as the parties never met and conferred to arrange a discovery plan pursuant to Rule 26(d) and (f). Even if Granite Rock wanted to conduct discovery, only four days passed between the filing of the Amended Complaint and the hearing, affording Granite Rock very little time to conduct discovery. Because of this time constraint, Granite Rock had not utilized any formal discovery tools such as depositions, interrogatories, or subpoenas but, rather, only had opportunity to speak informally with potential witnesses. The hearing itself lasted no more than two hours, which was insufficient time to present Granite Rock's full case on the merits. (Levins Decl., ¶ 16.) When presented with formal discovery tools such as depositions, subpoenas, and interrogatories, Union members will be persuaded—or compelled—to come forward with the truth that the contract was ratified.

In addition to not having the testimony of one percipient employee witness to testify as to what occurred at the ratification meeting on July 2, the Court refused to hear evidence from Granite Rock's second witness, Shirley Ow. Ms. Ow was present and prepared to testify at the hearing that Mr. Woolpert contemporaneously notified her on July 2 that Netto confirmed that the Agreement had been ratified—contrary to Netto's testimony. Ms. Ow's testimony was directly relevant to this factual dispute decided by the Court and likely would have changed the outcome of the hearing.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
Twentieth Floor
San Francisco, CA 94108.2693
415.433.1940

*Rush v. Virginia Dep't of Transportation,* 208 F. Supp. 2d 624 (W.D. Va. 2002). Certainly, the Court's dismissal of Granite Rock's action in its entirety after denying the Employer the opportunity to provide a second witness to confirm that the collective bargaining agreement was ratified constitutes a fundamental denial of Plaintiff's due process rights and warrants the overturning of the Court's Judgment.

**3. The Dismissal Of The Complaint Must Be Vacated Because Rule 65(a)(2) Does Not Expressly Permit Consolidation Of The Merits With An Application For A Temporary Restraining Order.**

The plain language of Rule 65(a)(2) only permits consolidation of a trial on the merits with a hearing for a preliminary injunction. Rule 65(b) expressly and separately deals with temporary restraining orders. The Federal Rules of Civil Procedure do not on its face allow a TRO to be consolidated with a trial on the merits.

Defendant cites *Granny Goose*, to show that a hearing for a TRO and a preliminary injunction are essentially the same. *Granny Goose Foods v. Teamsters*, 415 U.S. 423 (1974) (Defendants Opposition p.5) *Granny Goose* actually supports Plaintiff's position that a TRO and preliminary injunction are different and that one should not be substituted for the other without the consent of the parties. *Id.* at 452. In *Granny Goose,* the Supreme Court refused to find that a TRO obtained in state court, but later removed to federal court, became a preliminary injunction of unlimited duration. *Id.* at 426. *Granny Goose* also holds that a hearing for a TRO should not become a hearing for a preliminary injunction if the parties are either not ready or do not intend to go forward on that basis. *Id.* at 452.

Based on *Granny Goose,* Plaintiff's motion should be upheld. Granite Rock did not intend to go forward on anything more than the application for the injunction. (Levins Decl., ¶¶ 6-9.) Granite Rock was certainly not ready to go forward with a trial on the merits. By prematurely moving from a TRO to a trial on the merits, the Court was deprived from making a decision on the appropriate factual issue, namely the issue of ratification. At the time of the TRO, the only factual issue was the conversation between Mr. Netto and Mr. Woolpert. As stated above, Mr. Walrod's testimony now provides the new critical evidence to make the proper factual determination.

As both the case law and the plain language of F.R.C.P. 65 differentiate between a TRO and

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
Twentieth Floor
San Francisco, CA 94108.2693
415.433.1940

preliminary injunction, the Court should not have overstepped its procedural bounds.

## III. CONCLUSION

For the reasons set forth above and in Plaintiff's opening papers, the Court should allow Plaintiff's motion for a new trial because of the newly discovered critical evidence regarding the July 2 ratification meeting. This new evidence goes well beyond the issue the Court concentrated on at the TRO hearing, *i.e.* the conversation between Mr. Netto and Mr. Woolpert. Furthermore, allowing the new trial will not cause significant delay as elementary discovery can resolve the factual issue in this case, and it will preserve Plaintiff's due process rights to have this matter adjudicated on the merits. Defendant's opposition does not address the key issues raised by Plaintiff's motion with respect to Mr. Walrod's testimony or with respect to Plaintiff's position that the consolidation of the hearing was not appropriate.

Therefore, Granite Rock respectfully requests that the Court grant a motion for a new trial on the merits of the case, including Granite Rock's application for a temporary restraining order, pursuant to Rule 59(a). In the alternative, Granite Rock respectfully requests that the Court vacate the dismissal of Granite Rock's First Amended Complaint pursuant to Rule 59(a) and (e) or Rule 60(b).

Dated: August 30, 2004

ALAN S. LEVINS
LITTLER MENDELSON
A Professional Corporation
Attorneys for Plaintiff
GRANITE ROCK COMPANY

San_Francisco:31185323.1 001511.1075