JEFFER, MANGELS, BUTLER & MARMARO LLP
JOSEPH N. DEMKO (Bar No. 113104)
JENNIFER S. COLEMAN (Bar No. 213210)
Two Embarcadero Center, Fifth Floor
San Francisco, CA 94111-3824
Telephone: (415) 398-8080
Facsimile: (415) 398-5584

Attorneys for Defendant
WELLS FARGO BANK, N.A.

JONATHAN R. BASS (Bar No. 075779)
SUSAN K. JAMISON (Bar No. 131867)
ZUZANA J. SVIHRA (Bar No. 208671)
COBLENTZ, PATCH, DUFFY & BASS, LLP
One Ferry Building, Suite 200
San Francisco, California 94111-4213
Telephone: (415) 391-4800
Facsimile: (415) 989-1663

Attorneys for Defendants
WELLS FARGO BANK, N.A.
and CAROL BARBER

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| EDWARD L. SCARFF, an individual; NANCY V. SCARFF, an individual; SCARFF, SEARS & ASSOCIATES, a California partnership; and PENTOGA PARTNERS, a California partnership<br><br>Plaintiffs,<br><br>vs.<br><br>WELLS FARGO BANK, N.A.; COMERICA BANK; BANK OF AMERICA CORP.; FIDELITY NATIONAL TITLE CO.; COMPUTING RESOURCES, INC.; INTUIT INC.; KELLY HVEGHOLM, an individual; CAROL BARBER, an individual; JOAN BURTZEL, an individual; LISA CICCOTTI, an individual; and CAROL HUANG, an individual;<br><br>Defendants. | Case Nos. C03 03394 JF/PVT<br>C03 04829 JF/PVT<br>C03 05871 JF/PVT<br><br>**NOTICE OF MOTIONS AND MOTIONS OF DEFENDANTS WELLS FARGO BANK, N.A. AND CAROL BARBER (1) TO DISMISS CERTAIN CLAIMS FOR RELIEF IN CONSOLIDATED AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED, AND (2) TO STRIKE PORTIONS OF THE CONSOLIDATED AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**[F.R.C.P. 12 (b)(6); 9(b); 12(f)]**<br><br>Date: October 15, 2004<br>Time: 9:00 a.m.<br>Judge: Honorable Jeremy Fogel<br>Courtroom: 3 |



Dockets.Justia.com

## TABLE OF CONTENTS

Page

NOTICE OF MOTION AND MOTION ........ 1

MEMORANDUM OF POINTS AND AUTHORITIES ........ 2

INTRODUCTION ........ 2

ARGUMENT ........ 4

I. THE CLAIMS BASED ON THE PAYROLL SCHEME ALLEGATIONS FAIL TO STATE ANY CLAIM BASED UPON BREACH OF DUTY, INCLUDING BREACH OF ANY DUTY TO DISCLOSE HUANG'S ACTIVITIES RESPECTING THE SSA AND PENTOGA PAYROLL ........ 4

A. None Of The Scarff Plaintiffs Has A Viable Claim For Breach Of The Payroll Processing Agreements. ........ 4

B. The Third Cause of Action For "Fraud and Deceit" Alleges No Facts Stating A Claim For Relief. ........ 8

C. The Fourth Cause Of Action For Conversion Fails To State A Claim For Relief. ........ 8

D. The Fifth Cause Of Action For Negligence Fails To State A Claim For Relief. ........ 9

E. Plaintiffs Have Not Stated Any Claim For Breach Of Fiduciary Duty Against Wells Fargo And Barber. ........ 10

F. Because Plaintiffs Have Not Alleged Any Violation Of An Underlying Law, Or Any Unfair Or Fraudulent Conduct By Wells Fargo, They Have Failed To State A Claim For Violation Of California's Unfair Competition Law. ........ 11

II. THE NINTH THROUGH THIRTEENTH CAUSES OF ACTION, BASED UPON THE SO-CALLED "CREDIT LINE SCHEME," DO NOT STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED. ........ 13

A. The Ninth Cause Of Action For Fraud And Deceit Against Wells Fargo And Barber Fails To State A Claim For Relief With The Required Specificity, Or At All. ........ 13

B. Plaintiffs' Tenth Cause of Action Still Fails To Allege A "Conversion" Based On The So-Called "Credit Scheme." ........ 19

C. The Eleventh Cause of Action for Negligence Based On The "Credit Line Scheme" Fails To State A Claim For Relief. ........ 19

D. Plaintiffs Thirteenth Cause of Action Alleges No Unfair Competition Claim Based On The "Credit Line Scheme." ........ 21

III. THE NEW CLAIMS AGAINST BARBER - THE THIRD, FOURTH, FIFTH, SIXTH, SEVENTH, NINTH AND TWELFTH CAUSES OF ACTION - SHOULD BE STRICKEN. PLAINTIFFS HAVE AMENDED AND EXPANDED THEIR CLAIMS AGAINST HER WITHOUT LEAVE OF COURT. FURTHERMORE, BARBER IS NOW BEING SUED BY SSA AND PENTOGA, RATHER THAN JUST SCARFF INDIVIDUALLY. ..................... 22

IV. THE SIXTH AND TWELFTH CAUSES OF ACTION FAIL TO STATE CLAIMS AGAINST BARBER UNDER THE BANK BRIBERY STATUTE. .. 23

CONCLUSION .................................................................................................................. 25

# TABLE OF AUTHORITIES

Page

**CASES**

*Bondanza v. Peninsula Hospital & Medical Center*,
23 Cal.3d 260 (1979) .......... 10, 12

*Brown Leasing Co. v. Cosmopolitan Bancorp, Inc.*,
42 F.3d 1112 (7th Cir. 1994) .......... 24

*Byer v. Canadian Bank of Commerce*,
8 Cal.2d 297 (1937) .......... 19

*Chazen v. Centennial Bank*,
61 Cal.App.4th 532 (1998) .......... 11

*Conrad v. Bank of America*,
45 Cal.App.4th 133 (1996) .......... 18

*Copesky v. Superior Court*,
229 Cal.App.3d 678 (1991) .......... 11, 16

*Cortez v. Purolater Air Filtration Products Co.*,
23 Cal.4th 163 (2000) .......... 12, 16

*Day v. AT & T Corp.*,
63 Cal.App.4th 325 (1998) .......... 21

*Dodd v. Citizens Bank of Costa Mesa*,
222 Cal.App.3d 1624 (1990) .......... 11

*Durante Bros. & Sons, Inc. v. Flushing Nat'l Bank*,
755 F.2d 239 (2d Cir. 1985) .......... 24

*Glen Holly Entertainment, Inc. v. Tektronix, Inc.*,
100 F.Supp.2d 1086 (C.D. Cal. 1999) .......... 14

*Goodman v. Kennedy*,
18 Cal.3d 335 (1976) .......... 17

*Hamelin v. Allstate Ins. Co.*,
2002 U.S. Dist. LEXIS 5093, *6-7 (C.D. Cal. Mar. 12, 2002) .......... 21, 22

*Khoury v. Maly's of California, Inc.*,
14 Cal.App.4th 612 (1993) .......... 10, 12

*Korea Supply Co. v. Lockheed Martin Corp.*,
29 Cal.4th 1134 (2003) .......... 10, 12

*La Jolla Village Homeowners' Ass'n, Inc. v. Superior Court*,
212 Cal.App.3d 1131 (1989) .......... 16

*Las Palmas Associates v. Las Palmas Center Associates*, 235 Cal.App.3d 1220 (1991)........ 18

*Lingsch v. Savage*, 213 Cal.App.2d 729 (1963)........ 16, 17

*Lovejoy v. AT&T Corp.*, 92 Cal.App.4th 85 (2001)........ 18

*Miscellaneous Serv. Workers, Drivers, & Helpers, Teamsters Local #427 v. Philco-Ford Corp.*, 661 F.2d 776 (9th Cir. 1981)........ 14

*Moore v. Kayport Package Express, Inc.*, 885 F.2d 531 (9th Cir. 1989)........ 15

*Mosier v. Southern California Physicians Ins. Exchange*, 63 Cal.App.4th 1022 (1998)........ 16

*People v. McKale*, 25 Cal.3d 626, 634-35 (1979)........ 10, 12

*Price v. Wells Fargo Bank*, 213 Cal.App.3d 465 (1989)........ 16

*Roy Supply, Inc. v. Wells Fargo Bank, N.A.*, 39 Cal.App.4th 1051 (1995)........ 11, 20

*Saunders v. Taylor*, 42 Cal.App.4th 1538 (1996)........ 18

*Seibels Group, Inc. v. R.J. Reynolds Tobacco Co.*, 1999 U.S. Dist. LEXIS 15320 *26 (N.D. Cal. Sept. 21, 1999)........ 21

*Shin v. Kong*, 80 Cal.App.4th 498 (2000)........ 19

*Software Design & Application, Ltd. v. Hoefer & Arnett*, 49 Cal.App.4th 472 (1996)........ 9, 20

*Tippett v. Terich*, 37 Cal.App.4th 1517 (1995)........ 16

*Vega v. Jones, Day, Reavis & Pogue*, 121 Cal.App.4th 282 fn. 6 (2004)........ 15

*Wilson v. Century 21 Great Western Realty*, 15 Cal.App.4th 298 (1993)........ 16

**STATUTES**

18 U.S.C. section 1005........ 24

18 U.S.C. section 1014........ 24

Business & Professions Code section 17200 ... 12
California Comm. Code section 3104 ... 9
California Comm. Code section 3420 ... 9

**RULES**

Federal Rules of Civil Procedure, 12(b)(6) ... 1
Federal Rules of Civil Procedure, 12(f) ... 1
Federal Rules of Civil Procedure, 15(a) ... 1
Federal Rules of Civil Procedure, 9(b) ... 1

## <u>NOTICE OF MOTION AND MOTION</u>

TO ALL INTERESTED PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on October 15, 2004 at 9:00 a.m., or as soon as thereafter as this matter may be heard in Courtroom No. 3 of the above-entitled Court, located at 280 South First Street, San Jose, California, before the Honorable Jeremy Fogel, defendants WELLS FARGO BANK, N.A. ("Wells Fargo") and CAROL BARBER ("Barber") will and hereby move the Court to dismiss and strike the Consolidated Amended Complaint.

This motion is made pursuant to Federal Rules of Civil Procedure 12(b)(6), 12(f) and 9(b) on the following grounds:

- The Third, Fourth, Fifth, Sixth, Seventh, Ninth and Twelfth Causes of Action against Barber should be stricken on the ground that plaintiffs failed to obtain leave of Court to assert said claims, in violation of Fed. R. Civ. P. 15(a) ;
- Plaintiff Nancy Scarff should be stricken as a plaintiff on the ground that plaintiffs failed to obtain leave of Court to add a new plaintiff, in violation of Fed. R. Civ. P. 15(a);
- Plaintiffs Scarff, Sears & Associates' ("SSA") and Pentoga Partners' ("Pentoga") should be stricken as plaintiffs with respect to the First, Sixth and Twelfth Causes of Action on the ground that plaintiffs failed to obtain leave of Court to add these two plaintiffs with respect to the above claims, in violation of Fed. R. Civ. P. 15(a);
- The First, Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, Eleventh, Twelfth, and Thirteenth Causes of Action fail to state a claim upon which relief may be granted; and
- The Third and Ninth Causes of Action lack the requisite specificity required by Fed. R. Civ. P. 9(b).

This motion is based on this Notice of Motion and Motion, the following Memorandum of Points and Authorities, all the pleadings and papers on file in this action, any matters of which the Court may take judicial notice, any evidence or argument presented at the hearing on the motion, and any other matters the Court deems proper.

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION[1]

Plaintiffs Edward Scarff, his wife Nancy Scarff, and two business entities have filed a Consolidated Amended Complaint, which restates claims against a variety of defendants following the Court's order granting motions to dismiss more than twenty claims for relief asserted in earlier pleadings. We move, once again, to dismiss most claims asserted against Wells Fargo Bank and its former employee, Carol Barber, because the Consolidated Amended Complaint (the "Complaint") simply reorganizes and restates earlier claims and theories already rejected by the Court, or because it makes new admissions fatal to plaintiffs' claims.

In many ways, the new pleading is even harder to comprehend than its forebears were, because plaintiffs assert their claims as a group (the "Scarff Plaintiffs") when they do not in fact possess any "group" claims, and they base those "group" claims on theories that reference specific banking relationships arising from different agreements. This combining of claims renders the new complaint almost impenetrable. We believe, frankly, that this is no accident.

This is supposed to be plaintiffs' last chance to try to cure the defects that existed in their earlier pleadings. But it is hard to see where any progress has been made. The Complaint again fails to identify in a clear way who is asserting, and who has a right to assert, which claims, based on which contract and which transactions.

Edward Scarff, for example, was a party to certain Line of Credit agreements with Wells Fargo Bank. *See* Complaint, Exh. F. None of the other plaintiffs were parties to those agreements, and none, therefore, had any rights under them. If anyone has a claim arising from those Lines of Credit, or abuse of them, then, it is Edward Scarff. Yet all of the "Scarff Plaintiffs" are asserting claims against Wells Fargo Bank based on the so-called "Line of Credit" scheme.

Pentoga Partners ("Pentoga") and Scarff, Sears & Associates ("SSA") each had *separate*

---

[1] Defendants Intuit Inc., Computer Resources, Inc., and Lisa Ciccotti, in a separate Motion filed concurrently herewith, move to dismiss all claims against them. Many of the arguments presented in support of that Motion are relevant to this Motion as well, and we refer to portions of it in this memorandum. The Court may find it convenient to review the Intuit and Ciccotti motion first.

payroll services agreements with Wells Fargo Bank. *See* Complaint, Exh. A: Pentoga agreement and correspondence, and Exh. B: SSA agreement and correspondence. Mr. Scarff was not a party to those contracts, nor was his wife. Neither Scarff nor Mrs. Scarff is identified in the contracts as a "contact" or "authorized signature." Complaint, Exhs. A and B. Yet all of the "Scarff Plaintiffs" are asserting contract, negligence, and non-disclosure claims based on the so-called "Payroll Scheme."

The Complaint is premised, once again, on a "relationship" Mr. Scarff purportedly had with Wells Fargo, rather than the express terms of the contracts defining the parties' respective obligations. Plaintiffs appear to suggest that their long "relationship" with Wells Fargo generated obligations that trump any express ones set forth in the contracts, and that it even renders Wells Fargo Bank liable (presumably as a fiduciary) for "fraudulent" nondisclosure. Plaintiffs purport to base a fraud claim, for example, on Wells Fargo's *inaction* in failing to do things like "conduct periodic meetings with Mr. Scarff to review the nature of the transactions under the lines of credit" and to "monitor Bank's practices" and to "recognize, identify, and report suspicious transactions." Complaint, ¶ 182. And yet the Complaint contains no allegations supporting the existence of any fiduciary or confidential relationship. Indeed, it reveals that Mr. Scarff himself had virtually no contact with the Bank at all after a few interactions in the early 1980's, when he established various accounts. Complaint, ¶¶ 90, 111. And the Complaint alleges no trust relationship or contract which could give rise to a fiduciary duty.

Plaintiffs also, inexcusably, rely on a host of *unidentified* legal obligations or quasi-legal standards to prop up their claims that Wells Fargo Bank breached some duty owed to them: unidentified "best practices," internal "policies and procedures," "consumer protection laws," "common law," "federal banking laws and regulations," and "know your customer" rules. Complaint, ¶¶ 133(h); 52(f); 154; 175. Why are we encountering this sort of vagueness in a *fifth* amended pleading? Why should Wells Fargo be called upon to defend against claims that it violated obligations that are nowhere spelled out in the Complaint?

There is, we think, a reason that the plaintiffs rely on the "relationship" between Scarff and the Bank, and try to invoke unspecified legal "obligations" and standards, rather than

alleging, concretely, what specific obligations Wells Fargo owed to him, what each written contract said, and how that obligation was breached: they can't do the latter. The actual written agreements are flatly inconsistent with Scarff's claims that Wells Fargo engaged in wrongful conduct, and they demonstrate conclusively that most of the plaintiffs have no claims at all.

Plaintiffs have attached a few of the relevant contracts to the Complaint. They leave others to the imagination, such as the agreements governing the deposit accounts Mr. Scarff and the other plaintiffs had at Wells Fargo Bank. The agreements they do attach nullify a large swath of their claims, for they show that the Bank had no obligation to do the very things that, according to plaintiffs, the failure to do was wrongful.

Plaintiffs *still* have not supported their claims for relief with adequate allegations. For many of the claims, it would be impossible for them to do so consistent with their own admissions and with the language of the contracts attached to the Complaint. Because this was to be plaintiffs' last chance to plead viable claims against Wells Fargo Bank, all such claims should be dismissed with prejudice.

## ARGUMENT

### I. THE CLAIMS BASED ON THE PAYROLL SCHEME ALLEGATIONS FAIL TO STATE ANY CLAIM BASED UPON BREACH OF DUTY, INCLUDING BREACH OF ANY DUTY TO DISCLOSE HUANG'S ACTIVITIES RESPECTING THE SSA AND PENTOGA PAYROLL.

#### A. None Of The Scarff Plaintiffs Has A Viable Claim For Breach Of The Payroll Processing Agreements.

##### 1. The Written Payroll Services Agreements Are Fatal To The Claim That Huang Acted Without Authority, That Wells Fargo Owed A Duty To The Scarffs, Or That Wells Fargo Breached A Duty To Disclose Huang's Activities To Scarff Or Anyone Else.

As their First and Second Causes of Action, the Scarff Plaintiffs[2] advance claims for breach of contract and breach of the implied covenant of good faith and fair dealing against the "payroll scheme" defendants. The "payroll scheme defendants," for purposes of these two claims, are Wells Fargo, with which certain plaintiffs contracted for payroll services, and its

[2] The "Scarff Plaintiffs" is a collective term that refers to all of the plaintiffs. Complaint, p. 2, 11, 1-2

subcontractors Computer Resources, Inc. and Intuit, Inc. The payroll services agreements themselves are attached to the Complaint as Exhibits A and B. They show that SSA and Pentoga, separately, contracted for payroll services from Wells Fargo Bank in the early 1980's, that both of them — SSA in 1983 and Pentoga in 1985 — designated Carol Huang as a "contact and authorized signature" for the customer, that neither of them designated Edward Scarff or his wife as such a "contact and authorized signature," and that Mr. and Mrs. Scarff, were nowhere mentioned as having any interest in, or authority over either entity. Complaint, Exhs. A and B.

Plaintiffs' complaint about the payroll services is this: Carol Huang was directing the payroll service provider to issue large checks to herself, directing that adjustments be made to correct for the large payments after she "repaid" the accounts from which the payments were made, was making telephone transfers, was receiving the reports and statements (and then not showing them to Mr. Scarff), and was making gifts to employees of the provider, *and none of this was reported to Mr. Scarff*.

Huang was, it eventually became clear, embezzling large sums of money from Mr. Scarff. According to the Complaint, the payroll service providers breached a duty to Mr. Scarff by following Huang's instructions and not telling Scarff what she was doing. But this theory of liability cannot co-exist with the agreements themselves, which are now (finally) attached to the Complaint. Those agreements say nothing about Mr. Scarff, or about reporting anything to him. The agreements instead designate *Huang* as the agent authorized to determine what payroll would issue and when, to whom, and in what amounts. They expressly anticipate that deviations from pre-arranged schedules might be ordered, and they specify the deadlines for telephoning in such deviations. They anticipate phoned-in instructions explicitly. They contain no limitations on the discretion of the customer, through the customer's designated representative, to make special instructions to payroll runs and to make special instructions for the preparation of reports reflecting those runs. Complaint, Exhs. A and B.[3]

[3] See, in particular, Paragraph A of each exhibit, under the heading "Procedures," regarding telephoning in instructions and notifying payroll processor of "any deviation from the Processing Schedule;" and the provisions entitled "Amendment of Agreement".

The separate Motions to Dismiss of Defendants Intuit and Ciccotti explain why these facts are fatal to the claims for breach of contract, breach of the implied covenant, negligence, and breach of fiduciary duty asserted against the "payroll defendants" arising from the "payroll services." We will not burden the Court with duplicative briefing on those points, and so we simply adopt, and incorporate, those arguments. In brief, though, corporate entities that tell a service provider that a particular officer has authority to speak for it cannot complain later that the provider should have disregarded that individual's instructions.

Mr. Scarff could have designated himself as the "contact and authorized signature" for the payroll relationship, but he, or someone else at SSA and Pentoga, decided to designate Carol Huang instead, and to allow her to be the companies' sole contact with the payroll service providers for some twenty years. Mr. Scarff, SSA, and Pentoga could have entered into a contract with some other payroll service provider that contained all of the limitations on their agent's authority to modify payroll arrangements that they wish were contained in *these* agreements. Plaintiffs did none of these things, and they cannot blame Wells Fargo for that.

### 2. SSA And Pentoga Again Fail To Allege Any Damage To Support Their Claims For Breach Of The Payroll Processing Agreements.

Plaintiffs continue to seek "damages" which are not theirs to recover, or which are not legally cognizable. This is especially true for the claims based on the "payroll scheme" asserted by SSA and Pentoga.

According to plaintiffs, Carol Huang would persuade various banks to make advances on Edward Scarff's personal lines of credit. Those advances would be deposited to a personal account of Edward Scarff. Huang would also, in her capacity as an employee of SSA and Pentoga, instruct their payroll service to issue her payroll checks grossly in excess of the amounts actually due her. The SSA and Pentoga accounts would be debited in the amount of those checks. But Huang would then *reimburse* the SSA/Pentoga accounts for the "overpayments" by taking funds from (non-party) Northcliff's account at Wells Fargo and depositing them to the SSA/Pentoga accounts, effectively making SSA and Pentoga "whole." Complaint, ¶ 58. The money in the Northcliff account, in turn, allegedly came from "the Scarff personal checking

account" — that is, the one that received the advances from the lines of credit. Complaint ¶¶ 58, 85.[4]

This is the scenario described in previous pleadings, and described again in the new Complaint. The question that arises from it, though, is how this movement of money legally damaged *SSA* or *Pentoga*.

From all that appears in the Complaint, *it didn't*. The alleged payroll "overpayments" were *restored* to SSA and Pentoga. Complaint ¶ 58. Their accounts, in other words, were simply conduits for Huang's embezzlement of *other people's money*.

SSA and Pentoga nevertheless allege that *they* have been "damaged in the amount of at least fifteen million dollars ($15,000,000)" by the breach of the payroll services agreements. Complaint ¶ 127. As the Court has previously held, such conclusory damage allegations, backed by *no* facts pleaded anywhere else in the complaint, do not establish a claim for damage. (*See* July 22, 2004 Order Re Wells Fargo N.A.'s Motion To Dismiss, at 4:18: "Similarly, Scarff has not alleged damages resulting from the contracted for payroll services. . ."; 5:15: "However, Scarff has alleged no cognizable damages"; 7:19: "Scarff has not alleged that it was his money that was taken.") The Complaint alleges that the monies that exited from those accounts and flowed into Huang's pockets did not belong to SSA and Pentoga at all. Whatever claims other plaintiffs may possess, *these* plaintiffs — SSA and Pentoga — have *no* claims, as they have alleged no damage.

The absence of any viable damage allegations by SSA and Pentoga is significant because they are the only plaintiffs with standing to pursue a claim that disbursements made to Huang via the payroll service breached a contract obligation. Edward and Nancy Scarff are not parties to the payroll processing agreements. Even if SSA and Pentoga had a claim for breach of those agreements — which they do not, for reasons briefed more fully in the separate Motion to

---

[4] The account of the path of the money given in paragraph 85 is perhaps the clearest one: "Huang . . .obtain[ed] unauthorized advances from the WFB 2001 Credit Line . . ., which advances were then deposited into Mr. Scarff's personal WFB accounts, and later transferred to Northcliff and Pentoga and SSA payroll accounts, in order to perpetuate the ***payroll scheme*** described above."

Dismiss of Intuit and Ciccotti — their failure to allege any cognizable damage is fatal to "the Scarff Plaintiffs"' claim of breach of contract and breach of the implied covenant alleged in the First and Second Causes of Action, which are premised exclusively on breaches of the payroll services agreements. Complaint, ¶¶ 121, 130.

### B. The Third Cause of Action For "Fraud and Deceit" Alleges No Facts Stating A Claim For Relief.

The separate motion of Intuit, Inc. and Lisa Ciccotti explains, in detail, the defects in this claim. Every argument made by Intuit and Ciccotti applies equally to Wells Fargo Bank. Briefly, no affirmative misrepresentations are alleged; the claim rests entirely on non-disclosure. Complaint ¶ 137(a)-(f). The nondisclosure theory, however, imagines a duty that did not exist: to inform a non-customer, Edward Scarff, of what instructions SSA's and Pentoga's authorized agent was issuing and what transactions she was conducting. No such obligation was created by the contracts, nor does it exist under the law. For all of the reasons set forth in the separate Intuit Motion, this claim should be dismissed with prejudice.[5]

In addition, as noted above, SSA and Pentoga, the only parties which could allege that they were owed a duty of disclosure, allege no damage from the concealment. According to the Complaint, it was other people's money that was laundered through their accounts.

### C. The Fourth Cause Of Action For Conversion Fails To State A Claim For Relief.

The fourth cause of action alleges, as previous complaints have, that Wells Fargo "converted" money belonging to "the Scarff Plaintiffs" by permitting and authorizing Huang to "draw on" their funds and by "disbursing" those funds to Huang. We briefed this issue at length

---

[5] As is also briefed in the separate Intuit Motion, the claim is not pled with the specificity required by Rule 9(b). In previous motions, we noted that Scarff was alleging he was the victim of twenty years of misrepresentations, but that he was persistently refusing to plead the specific misrepresentations that supposedly misled him. He has now, apparently, given up on identifying any such misrepresentations, and is instead basing his claim, and those of the "Scarff Plaintiffs," on omissions. But he does not describe what information was not provided to SSA and Pentoga. Whatever that information might be, however, the failure to identify it is not a curable pleading defect. Carol Huang, of course, was not in the dark as to anything that was going on, and Huang, according to both Exhibits. A and B, was the customer representative to whom any information could be relayed. This, then, is a claim that is going nowhere.

the last time plaintiffs asserted this claim against Wells Fargo, and established that, as a matter of law, permitting unauthorized disbursements from bank accounts is not conversion. Money in a bank account is simply *not* "converted" when it is wrongfully disbursed. *See* Intuit Motion at Section V.

As the Court recognized in granting Wells Fargo's last motion to dismiss based on this very point, in order to allege a conversion claim, one or more of the Scarff Plaintiffs "would need to allege that Wells Fargo stole a negotiable instrument payable and delivered to him." Order re: Wells Fargo Motion, at 6:3-4 (*citing* Cal. Comm. Code §§ 3104, 3420; *Software Design & Application, Ltd. v. Hoefer & Arnett*, 49 Cal.App.4th 472, 485 (1996). Plaintiffs still have not alleged the theft of any such instruments; they still rely on the notion, already rejected by the Court, that the Bank, by allowing Huang to get her hands on "their" money, converted something from them. That is not true as a matter of law. This claim should now be dismissed with prejudice.

**D. The Fifth Cause Of Action For Negligence Fails To State A Claim For Relief.**

The negligence claim alleged as the Fifth Cause of Action is also premised on the payroll service relationship. Complaint, ¶ 151. It alleges that the "payroll scheme defendants" owed a host of duties to all of the plaintiffs, and breached all of them. This claim is defective for all of the reasons stated in the separate Intuit Motion: (a) SSA and Pentoga cannot complain that, by following the directions of their authorized agent, the payroll services providers breached any duties whatsoever, and (b) Scarff, individually, was owed no duties, as he was not the customer.

The negligence claim is also fatally defective because the only parties in a position to assert a breach of duty arising from the payroll relationship — SSA and Pentoga — have alleged no damage caused by any breach. Again, they complain only that money belonging to others flowed through their accounts and into Carol Huang's pocket. This is not damage, and it provides no basis for a claim against any of the "payroll defendants."

Finally, plaintiffs have persisted in basing this claim on a host of unidentified policies, practices, laws, and regulations. We have noted, each time we have moved to dismiss plaintiffs' claims, that plaintiffs cannot sue us for violating legal obligations that they do not bother to

identify.

The Court has already ruled that plaintiffs cannot base a negligence claim against Wells Fargo on standards established by unidentified laws: "Finally, Scarff refers to other laws, without specifying their identity. Clearly, a second amended cross-complaint must be more definite than that." Order re: Wells Fargo Motion, 7:8-9. The Court gave plaintiffs "one final opportunity" to plead their claims properly. *Id.*, 9:22. For plaintiffs, again, to purport to base their claim on undescribed "best practices" and on violations of unidentified "federal and state laws, statutes, and regulations," amounts to a concession that the claim should be dismissed with prejudice.[6]

In any event, it is hard to imagine what "best practices" or "laws" would have precluded the payroll services defendants from following the instructions of a customer representative with whom they had been doing business for decades, and who, for all intents and purposes, *was* the customer under the terms of the written contracts spelling out the parties' obligations. If there is such a rule, plaintiffs are keeping it a secret. The negligence claim should be dismissed with prejudice.

### E. Plaintiffs Have Not Stated Any Claim For Breach Of Fiduciary Duty Against Wells Fargo And Barber.

The breach of fiduciary duty claim, too, arises from the payroll service arrangement, and it, too, is addressed in Intuit's Motion to Dismiss. As set forth in Intuit's Motion, defendants were

---

[6] The one specific law they do identify is a federal bribery statute. They nowhere explain, however, how Carol Huang's alleged gifts injured them. SSA and Pentoga do not allege that those alleged gifts were paid with their money, nor do they allege that they suffered any monetary damage as a result of such gifts.

Plaintiffs also reference California's broad Unfair Competition Law, which creates a cause of action for equitable relief in favor of persons who can allege violations of other laws, but they nowhere explain what standard of care established by that law was violated by the "payroll defendants'" conduct in obeying Huang's directions with respect to the payroll services they provided, and SSA and Pentoga, again, allege no damage. In any event, even if the payroll services defendants had breached their contract with SSA and Pentoga, that is not the kind of dispute that implicates the unfair competition laws at all. As the California Supreme Court has held, "an action under the UCL is not an all-purpose substitute for a tort or contract action." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1151(2003). A simple breach of contract does not constitute an unlawful or unfair business practice. *See generally, Khoury v. Maly's of California, Inc.*, 14 Cal.App.4th 612, 619 (1993). Instead, the contract itself must be infected with some infirmity. *People v. McKale*, 25 Cal.3d 626, 634-35 (1979) (insertion and assertion of illegal contractual term; *see also Bondanza v. Peninsula Hospital & Medical Center*, 23 Cal.3d 260, 266-67(1979) (enforcement of unconscionable contract term).

not fiduciaries to any of the Scarff Plaintiffs, and the individual Scarff plaintiffs were not customers of the payroll service providers.[7]

SSA and Pentoga, which *were* payroll processing customers, were owed no *fiduciary* obligations under those agreements. *See* Intuit Motion, at Section VIII. Moreover, plaintiffs have not alleged a breach of any duty, fiduciary or otherwise, owed to SSA and Pentoga. The duties of Wells Fargo with respect to the payroll function are spelled out in the written agreements attached to the Complaint as Exhibits A and B. They impose on the payroll service provider none of the obligations that plaintiffs claim were breached. *See also* Intuit Motion at Section III.

Plaintiffs may argue, however, that this claim does not arise merely from the performance of the payroll function for SSA and Pentoga, but from defendants' conduct in "processing disbursements, withdrawals, and/or transfers of money from *Mr. Scarff's personal accounts at WFB* . . . ." Complaint, ¶ 167.e. If that is the premise of their breach of fiduciary duty claim, it fails as a matter of law. A bank is not a fiduciary to its depositors and does not breach a fiduciary duty in processing disbursements, withdrawals, or transfers of money from its depositors' accounts. *Copesky v. Superior Court*, 229 Cal.App.3d 678, 694 (1991) (banks "are not fiduciaries for their depositors"); *Chazen v. Centennial Bank*, 61 Cal.App.4th 532, 537 (same).

There is no basis in law for a breach of fiduciary duty claim in this action. The Seventh Cause of Action should be dismissed with prejudice.

### F. Because Plaintiffs Have Not Alleged Any Violation Of An Underlying Law, Or Any Unfair Or Fraudulent Conduct By Wells Fargo, They Have Failed To State A Claim For Violation Of California's Unfair Competition Law.

As their final claim based on the purported "payroll scheme," the Scarff Plaintiffs allege

---

[7] *See Chazen v. Centennial Bank*, 61 Cal.App.4th 532, 537 (1998) (bank's contractual relationship with its customer entails no obligations to persons other than the account holder and no fiduciary obligations to anyone); *Dodd v. Citizens Bank of Costa Mesa*, 222 Cal.App.3d 1624, 1628 (1990) (bank had no obligations to officer of corporate account holder; sustaining demurrer to claim by individual where signature card attached to the complaint demonstrated that he was not the customer); *Roy Supply, Inc. v. Wells Fargo Bank, N.A.*, 39 Cal.App.4th 1051, 1076 (1995) (individual officer and principal of corporate bank customer "had no cause of action for a wrong done to the corporate plaintiffs" because "absent extraordinary and specific facts, which Roy has not alleged here, a bank is liable only to its customer for its mishandling of that customer's account.").

that Wells Fargo violated California's Unfair Competition Law, Bus. & Prof. Code § 17200 *et seq*. This claim is addressed in detail in the Intuit Motion. Plaintiffs have alleged no violation of any law by Wells Fargo upon which to predicate a claim of an "unlawful" business practice. They have not even alleged a breach of the payroll services contract by Wells Fargo, much less an "unfair" business practice (which requires more than a mere breach of contract). And they have alleged no "fraudulent" conduct in connection with the performance of the payroll function, as we demonstrate above in Section I.B.[8]

Plaintiffs again base this claim on a host of unidentified laws and regulations, (Complaint, ¶ 175), despite having been told by the Court that they could not base claims in an amended complaint on unspecified "laws." To state such a claim, plaintiffs "must state with reasonable particularity the facts supporting the statutory elements of the violation" and "*identify] [a] particular section of the statutory scheme*" violated by the defendant's practices. *Khoury v. Maly's of California, Inc.*, 14 Cal.App.4th 612, 619 (1993).[9]

---

[8] As the California Supreme Court has held, "an action under the UCL is not an all-purpose substitute for a tort or contract action." *Korea Supply Company v. Lockheed Martin Corporation*, 29 Cal.4th 1134, 1151 (2003), *citing Cortez v. Purolater Air Filtration Products Co.*, 23 Cal.4th 163, 173 (2000). A simple breach of contract does not constitute an unlawful or unfair business practice. *Khoury*, 14 Cal.App.4th at 619. Instead, the contract itself must be infected with some infirmity. *People v. McKale*, 25 Cal.3d 626, 634-35 (1979) (insertion and assertion of illegal contractual term); *see also Bondanza v. Peninsula Hospital & Medical Center*, 23 Cal.3d 260, 266-67 (1979) (enforcement of unconscionable contract term).

[9] As for the claim of violation of a predicate law, plaintiffs do allege, in this cause of action, a violation of federal anti-bribery statutes as a "predicate" violation. Those statutes, however, do not render banks liable for bribes; they apply only to individual bank officers who accept bribes with intent to defraud the United States or the bank they work for. Nothing in the cited statutes provides the basis for a claim that *Wells* Fargo violated any federal law because it employed Ms. Barber, who is alleged to have violated one of those laws.

In any event, even if Ms. Barber's alleged violation of federal bank bribery prohibitions could be deemed an unlawful business practice by Wells Fargo, there is no claim by these plaintiffs to the limited relief afforded by section 17200 arising from the so-called "payroll scheme." The only relief awardable under that statute is restitutionary and injunctive. SSA and Pentoga, again, lost no money as a result of the movement of moneys through their accounts, and they fail to allege they paid any additional fees *to the bank* as a result of the "overpayments" to Huang than they otherwise would have. Mr. Scarff himself paid nothing to the bank (or at least, he does not allege he paid anything to the bank) in connection with the payroll services rendered to SSA and Pentoga; he, after all, was not the customer and would not have been billed for anything.

## II. THE NINTH THROUGH THIRTEENTH CAUSES OF ACTION, BASED UPON THE SO-CALLED "CREDIT LINE SCHEME," DO NOT STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

Plaintiffs again assert a host of claims based upon Wells Fargo's conduct in making advances under Edward Scarff's Lines of Credit. In addressing these claims, we first wish to point out that, in every Wells Fargo Line of Credit agreement attached to the Complaint, Edward Scarff is identified as the sole "borrower." Nancy Scarff was not a borrower, nor were SSA and Pentoga. *See* Complaint, Exh. F (group exhibit of Wells Fargo Line of Credit agreements). Nevertheless, the claims asserted against the so-called "Credit Scheme" defendants are, like the earlier claims, asserted by all "Scarff Plaintiffs."

Plaintiffs never explain why they, as a group, have *any* claim based upon advances from Mr. Scarff's lines of credit. Plaintiff Nancy Scarff, for example, was not a borrower, and there is no allegation that any claims for collection of the loans have been asserted against her. SSA and Pentoga, likewise, do not allege that any collection actions have been brought against them, and their allegations indicate that they have not been injured at all by any part of either the "payroll" scheme or the "credit" scheme, as we noted earlier.

The Complaint fails to cure the principal problem that led the Court to dismiss claims based on the advances from the Lines of Credit: Edward Scarff still has not identified how those advances caused him legal injury. While he has faced collection actions from banks respecting those Lines, the defense of a lawsuit is not a legal injury giving rise to a claim (particularly where the plaintiff has not yet to prevail in the lawsuit). Scarff still does not allege, likewise, that he has repaid any of the monies advanced under the lines, or that he plans to do so. In fact, he alleges (in his final cause of action) that he is *not* liable for those debts. To the extent, then, that his claims arising out of the advances under the lines seek "recovery" of the loan amounts, he has no claim, as the Court ruled in its Order granting Wells Fargo Bank's last motion to dismiss.

### A. The Ninth Cause Of Action For Fraud And Deceit Against Wells Fargo And Barber Fails To State A Claim For Relief With The Required Specificity, Or At All.

#### 1. Plaintiffs Do Not Allege This Claim With Particularity.

The Ninth Cause of Action purports to state a claim for "fraud and concealment" based on

the "Credit Scheme." Plaintiffs, however, do not plead such a claim properly, or at all.

Fraud claims must meet the heightened pleading standards imposed by Rule 9(b). Every element of a fraud claim must be pled both factually and specifically. *Miscellaneous Serv. Workers, Drivers, & Helpers, Teamsters Local #427 v. Philco-Ford Corp.*, 661 F.2d 776, 782 (9th Cir. 1981); *Glen Holly Entertainment, Inc. v. Tektronix, Inc.*, 100 F.Supp.2d 1086, 1093 (C.D. Cal. 1999).

Plaintiffs' fraud allegations remain inadequate. The Complaint actually alleges no misrepresentations at all, much less any specific misrepresentations. Complaint, ¶¶ 180-190. Plaintiffs identify no particular individual employed by Wells Fargo Bank who either said anything to them that was untruthful or withheld any information from them in the course of a conversation, a meeting, or the like. They do not say when any misleading information was imparted, or truthful information withheld. They do not say how they relied, or on what they relied to their detriment. They do not say how, if at all, they were damaged by the "Credit Scheme," other than that they lost "millions of dollars" in some unspecified way.

They do allege various failures to act by Wells Fargo, but without stating when these failures occurred, and when and how plaintiffs relied on any misapprehension of fact that resulted. Finally, they provide no detail as to how their reliance on some misapprehension of fact damaged them. *See* Complaint, ¶¶ 182(a)-(f) and 184.

The complete absence of necessary, supporting detail in this, their fourth attempt to allege fraud against Wells Fargo, is inexcusable. If anything, this complaint is even vaguer than the last one. There, plaintiffs at least stated in general terms the substance of supposed misrepresentations made over the course of twenty years. Here, the pleading gives no clue as to what specific "misinformation" was given to Scarff, or what facts were withheld from him, or how that information was material to Scarff. *See, e.g.*, Complaint, ¶ 182(d) (alleging "failure to monitor bank practices and procedures"); ¶182(a) (alleging "failure to conduct periodic meetings with Scarff.").

Plaintiffs persist in indulging in the prohibited practice of "group" pleading, rendering it impossible to determine which plaintiff has which claim (if any), for which damage, and under

which theory. *See Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 541 (9th Cir. 1989) (affirming dismissal of second amended complaint without leave to amend for failure, under Fed. R. Civ. P. 9(b), to detail with particularity the time, place, and manner of each act of fraud, as well as the role of each party).

Defendants should not have to guess as to the basis of a fraud claim. The Complaint alleges only inaction, such as a failure to hold meetings, or to monitor procedures, or to discover information (Complaint, ¶ 182(a)-(e)), or nonexpressive conduct, such as "accepting kickbacks" (*id.*, ¶ 182(f)). None of this tells us why Wells Fargo is being sued for *fraud*. Fraud is about deceiving someone as to a state of facts. A complaint that does not even bother to spell out the facts misrepresented or concealed, or how plaintiff relied on them and was damaged, does not satisfy Rule 9(b), does not state a claim for fraud, and should be dismissed.

**2. Plaintiffs Fail To Plead Facts To Support Each Element Of A Fraud Or Concealment Claim.**

Turning from the defective form to the deficient substance of the fraud claim, the picture becomes no clearer. Plaintiffs now premise their deceit claim solely on *nondisclosure*: they do not allege a single affirmative misrepresentation on the part of Wells Fargo. Complaint, ¶¶ 180-186.[10] Plaintiffs list the alleged derelictions by Wells Fargo that support their "fraud and deceit" claim on page 62 of their Complaint. Not one *misrepresentation* is identified on that list. Complaint, ¶ 182 (a)-(f).

A nondisclosure claim against a non-fiduciary must be based upon an *intentional* failure to disclose a fact that the defendant *knew* to be true, and he must have failed to disclose it for the *purpose* of misleading the plaintiff. Negligent non-disclosures are not actionable in California. *Vega v. Jones, Day, Reavis & Pogue*, 121 Cal.App.4th 282, 292 fn. 6 (2004) (a claim based on merely negligent misrepresentation requires a positive assertion); *Wilson v. Century 21 Great*

[10] Plaintiffs say that Scarff, during all of the years he had accounts and other banking relationships with Wells Fargo, met only once with his bankers, "at the very beginning of the relationship." Complaint, ¶ 90. He elsewhere describes his meeting as occurring in 1991. Complaint, ¶ 80. Plaintiffs do not allege that any misrepresentations were made during that long-ago meeting, or that any affirmative misrepresentations form the basis of the fraud and concealment claim. Complaint, ¶¶ 179-189.

*Western Realty*, 15 Cal.App.4th 298, 306 (1993) (if only negligence alleged, positive assertion required, an implied assertion or representation is not enough); *Mosier v. Southern California Physicians Ins. Exchange*, 63 Cal.App.4th 1022, 1045 (1998) (intentional concealment with intent to defraud plaintiff required for claim based on omission). Put another way, a defendant cannot be liable for not disclosing a fact of which he himself was unaware. *Tippett v. Terich*, 37 Cal.App.4th 1517, 1538 (1995), *overruled on other grounds; Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal.4th 163, 171, 175-76 (2000).

Here, the "acts and omissions" upon which plaintiffs base their "fraud and deceit" claim include no facts known to Wells Fargo and intentionally suppressed for the purpose of defrauding the plaintiffs. Complaint, ¶ 182(a)-(f). The closest plaintiffs come to alleging nondisclosure at all is the allegation of defendants' "failure to recognize, identify, and report suspicious transactions given the history of the prior relationship between Defendants and Edward Scarff, and the Scarff Plaintiffs." Complaint, ¶ 182(e). But if Wells Fargo failed to *recognize and identify* "suspicious transactions," it could not have *knowingly concealed* them from plaintiffs with the intent to defraud them.[11]

Second, plaintiffs do not allege any facts to support a second critical element of their nondisclosure claim: that defendants knew that salient facts were available only to them and that those facts were not available to plaintiffs. A legal duty to speak is a prerequisite to any claim based on nondisclosure. *Lingsch v. Savage*, 213 Cal.App.2d 729, 735 (1963). In the absence of a fiduciary duty to speak, there ordinarily is no such duty to speak at all. *La Jolla Village*

---

[11] Plaintiffs do allege, conclusorily, in paragraph 181 that defendants were *intentionally* failing to comply with "best practices" and industry standards "for the purpose or intent of concealing and/or deceiving the Scarff Plaintiffs . . . ." Paragraph 182, it appears, is supposed to be the list of those "failures." This notion — that Wells Fargo was intentionally failing to acquire information by failing, intentionally, to follow the "best practices" that would have led it to discover the information — falls short of alleging the scienter needed to plead a concealment claim. There is no basis in California law for imposing liability, on a concealment theory, on a defendant who did not in fact know the information suppressed, but merely failed to discover it, "intentionally" or otherwise.

*Homeowners' Ass'n, Inc. v. Superior Court*, 212 Cal.App.3d 1131, 1150 (1989).[12] However, a duty to disclose a fact can arise between contracting parties, even in the absence of a fiduciary relationship, *if* one party has superior knowledge as to a fact, *knows* that the other person is unaware of the fact, and knows and intends that the other party act on his mistaken knowledge. *Goodman v. Kennedy*, 18 Cal.3d 335, 347 (1976); *Lingsch*, 213 Cal.App.2d at 735 (where seller of real property knows of facts known or accessible only to him and also knows that such facts are not known to purchaser, he is under duty to disclose them to purchaser).

Plaintiffs have not alleged such knowledge here, and the facts they do allege contradict the notion that Wells Fargo had such knowledge and intent. They complain, generally, that Wells Fargo "failed to contact Plaintiffs directly" and "concealed the line of credit transactions from Plaintiffs" (Complaint, ¶ 186), but they do *not* allege that Wells Fargo possessed, and knew it possessed, *superior* information about them. Nor, given what they do admit, could they credibly allege that knowledge.

The monies loaned by Wells Fargo pursuant to the lines of credit *were deposited to Edward Scarff's personal bank accounts at Wells Fargo*. Complaint, ¶¶ 8; 66(a); 84, 90(c). Although plaintiffs conclusorily allege "concealment" of the advances on the lines of credit, they do not say what would have led Wells Fargo to assume that Edward Scarff would not himself have noticed *that millions of dollars were being deposited into his personal bank accounts*. They nowhere allege that information concerning the loans was, as far as Wells Fargo knew, unavailable to Scarff. In short, the Complaint fails to allege how Wells Fargo could have realized that Mr. Scarff was unaware of the advances on his own lines of credit. And if Wells Fargo had no reason to suspect Mr. Scarff's blindness, the Bank could not have intended to conceal anything from him.[13]

---

[12] As noted above, banks are not fiduciaries to their customers. *Price v. Wells Fargo Bank*, 213 Cal.App.3d 465, 476 (1989); *accord Copesky v. Superior Court*, 229 Cal.App.3d 678, 694 (1991).

[13] All of this, of course, is aside from the inherent absurdity of the notion that Wells Fargo would have advanced $3 million in loans while knowing that the money was being stolen by the borrower's employee, that the borrower himself was unaware of the loans, and that the borrower would, inevitably, refuse to repay the loans when they came due.

Given plaintiffs' admission that all monies advanced on the lines of credit were deposited to Scarff's personal bank accounts, coupled with the absence of any facts indicating that Wells Fargo knew he was not receiving his bank statements, plaintiffs' "concealment" claim must fail. It simply cannot be inferred from this Complaint that Wells Fargo had superior knowledge regarding the advances and knew that plaintiff was unaware of them.

Finally, no fraud claim can lie in the absence of an allegation of damage resulting from the fraud. *Conrad v. Bank of America*, 45 Cal.App.4th 133, 159-60 (1996), *overruled in part on other grounds; Lovejoy v. AT&T Corp.*, 92 Cal.App.4th 85, 93-94 (2001); *Saunders v. Taylor*, 42 Cal.App.4th 1538, 1542 (1996); *Las Palmas Associates v. Las Palmas Center Associates*, 235 Cal.App.3d 1220, 1252 (1991). SSA and Pentoga, as previously noted, claim no proximately caused damage. The Complaint admits that their accounts were merely used as conduits, and SSA and Pentoga identify not a single penny of loss to them caused by Huang's use of their accounts to further her scheme.

Scarff, on the other hand, does claim that Huang transferred monies from his personal bank accounts to another account (the Northcliff account), and that that money was then transferred to the SSA and Pentoga accounts, from which the alleged salary "overpayments" were paid. But that does not mean that he has alleged proximately caused damage from the nondisclosure of the "line of credit" transactions, which is the "fraud" alleged in the Ninth Cause of Action. The "nondisclosure" is that monies were being advanced from the lines of credit without Scarff's knowledge. But according to Scarff, the money was deposited *into his own bank accounts*. Moreover, Scarff has not alleged that he has repaid, or will ever repay, those loans. So far, at least, "advances" that Scarff alleges he did not know about are a loss to the Bank, not to Scarff. *See* Order re: Wells Fargo Motion at 4:9-10.

The "fraud and deceit" claim is riddled with problems. No positive misrepresentations are alleged; the scienter to support a concealment claim is not alleged; facts to show a duty to disclose are not alleged; proximately caused damage is not alleged. The Ninth Cause of Action should be dismissed.

### 3. Plaintiffs Nancy Scarff, SSA, And Pentoga Do Not Allege, And Cannot Allege, A Nondisclosure Claim Arising From The "Credit Scheme."

Nondisclosure is only actionable, as we noted above, if there is a duty to disclose. Plaintiffs Nancy Scarff, SSA, and Pentoga cannot state a nondisclosure claim arising from the "Line of Credit" scheme since they do not allege, and cannot allege, any duty to disclose the line of credit transactions to *them*. They were not the bank's line of credit customers. *See* Complaint, Exh. F (group exhibit of Wells Fargo Line of Credit Agreements). They had no relationship that could give rise to a duty by Wells Fargo to disclose line of credit transactions to them. *See, e.g., Shin v. Kong*, 80 Cal.App.4th 498, 509 (2000).

### B. Plaintiffs' Tenth Cause of Action Still Fails To Allege A "Conversion" Based On The So-Called "Credit Scheme."

Unimpressed, apparently, by the ruling granting Wells Fargo's last motion to dismiss all of their "conversion" claims, the "Scarff Plaintiffs" again allege that Wells Fargo is liable for conversion as a result of permitting and allowing "Huang to renew, extend, increase, draw down, and/or open new lines of credit in Mr. Scarff's name." This claim should again be dismissed.

First, plaintiffs remain unable to explain how the act of depositing loan advances to Edward Scarff's personal bank accounts satisfies the requirement that the Bank exercise "dominion" over property belonging to Scarff. Depositing money to someone's bank account is not a theft of money. *Byer v. Canadian Bank of Commerce*, 8 Cal.2d 297, 300 (1937) (act of dominion wrongfully exerted over the property of another is required for a conversion claim).

Scarff complains that the Banks "*obtained* interest, fees, and other benefits each time they opened, extended, increased, renewed, and/or allowed a draw on each line of credit." Complaint, ¶ 191. He fails, however, to allege, as he must, that Wells Fargo exerted *wrongful* dominion over a *discrete and segregable item of personal property*. Receiving payments of interest or fees from a customer is, obviously, not the legal equivalent of exercising "wrongful" dominion over the customer's money.

### C. The Eleventh Cause of Action for Negligence Based On The "Credit Line Scheme" Fails To State A Claim For Relief.

Plaintiffs' "negligence" claim based on the alleged "credit line scheme" fails to state a

claim for relief for reasons that are, by now, familiar: (1) Nancy Scarff, SSA, and Pentoga, who were not line of credit customers, were owed no duties by Wells Fargo with respect to the opening of the lines or disbursements from them; and (2) Scarff fails to allege cognizable damage.

Duty is an essential element of a negligence claim, and its existence is a question of law for the court to decide. *Software Design*, 49 Cal.App.4th at 478. Nancy Scarff, SSA, and Pentoga were strangers to the contractual relationships formed by the line of credit agreements, and they therefore have no claims based upon them or on any industry or internal standards that may have governed the Bank's performance under them. *Id.* at 478-482; *see also Roy Supply*, 39 Cal.App.4th at 1076 (duty owed by bank derives from its contracts with its customers; plaintiff, who was not a party to those contracts nor an intended beneficiary of them, was owed no duty that could support a negligence or contract claim).

Proximately caused damage is likewise an essential element of a negligence claim. Edward Scarff, the only plaintiff who could potentially assert a claim under these agreements, has alleged no cognizable damage from the purportedly unauthorized advances. It would be one thing if the loans had been repaid out of Scarff's assets, or even if he acknowledged his obligation to repay them.[14] As the Court has previously ruled:

> Scarff has not alleged how he has been damaged by Wells Fargo. If Wells Fargo did disburse the money inappropriately, then Wells Fargo has lost it, but has not damaged Scarff. If Wells Fargo appropriately disbursed the money, then Scarff may or may not be liable for its repayment. However, by definition, there would be no negligence on the part of Wells Fargo.

Order re: Wells Fargo Motion at 6:13-17.

No new fact has been alleged that would render that ruling obsolete or inapplicable. Scarff still denies liability on the loans, and he still fails to plead any damage that would be cognizable on a negligence claim even if he were so liable. He does complain that he has had to

---

[14] Even then, we would submit, Mr. Scarff would have suffered no damage from the loan advances. As he now concedes, the money was simply deposited into his own account, a transaction that could not have resulted in any damage to him.

defend collection actions and has expended attorneys' fees and litigation costs, but those are not damages recoverable under a common law negligence theory in this lawsuit. The only collection actions stemming from the Wells Fargo loans were a case filed in the San Francisco Superior Court (stayed by virtue of Mr. Scarff's bankruptcy filing), and a non-judicial foreclosure proceeding that Wells Fargo agreed to stay once Mr. Scarff asserted that the deed of trust was forged. Once all the smoke clears, someone may be entitled to an award of attorneys' fees under the line of credit agreements, but we doubt it will be Mr. Scarff, and it will be pursuant to a contractual attorneys' fees clause, not a "negligence" claim.[15]

### D. Plaintiffs Thirteenth Cause of Action Alleges No Unfair Competition Claim Based On The "Credit Line Scheme."

Plaintiffs have stated no unfair competition claim for the reasons they had no claim before: they allege no basis for recovering the limited relief section 17200 affords, which is restitution and injunctive relief.

Plaintiffs allege no out-of-pocket sums paid to Wells Fargo Bank in connection with the credit scheme, as we have previously noted. That omission is fatal to a claim for monetary relief under section 17200. Restitution "operates only to return to a person those measurable amounts which are wrongfully taken by means of an unfair business practice," not to compensate a person for an injury, as damages do. *See Day v. AT & T Corp.*, 63 Cal.App.4th 325, 338-40 (1998); *Seibels Group, Inc. v. R.J. Reynolds Tobacco Co.*, 1999 U.S. Dist. LEXIS 15320 *26 (N.D. Cal. Sept. 21, 1999).

They also allege no basis for injunctive relief. They do not allege that Huang (who is shortly to be sentenced, having entered a guilty plea) is still embezzling money, or that Scarff or

---

[15] Scarff may argue that he has suffered some out-of-pocket losses (again, other than attorneys' fees) as a result of the Bank's alleged "negligence" in advancing sums without his authorization. But it is difficult to imagine what those would be. The entire premise of this litigation is that, after his one use of the line of credit in 1991, he never even knew that his Wells Fargo lines were being drawn down. Although he says in another cause of action that the bank "obtained" interest and fees, he never alleges facts indicating that *he* paid them (which is not surprising: how could he square such an allegation with a claim that he was unaware that the accounts were active and being drawn down?). From all that appears in this complaint, any fees or interest associated with the lines was being paid with money *drawn from the lines themselves*.

anyone faces any further danger from the credit line scheme. Federal courts do not issue injunctions in these circumstances. "In the context of injunctive relief, a plaintiff has standing only when the possibility of future injury is particular and concrete." *Hamelin v. Allstate Ins. Co.*, 2002 U.S. Dist. LEXIS 5093, *6-7 (C.D. Cal. Mar. 12, 2002) (dismissing Section 17200 claim for injunctive relief).

Finally, other than the alleged violation of federal bribery statutes (which caused plaintiffs no out-of-pocket loss), plaintiffs identify no conduct by Wells Fargo in connection with the credit line scheme that violated any law, or which was unfair or fraudulent. As the Court pointed out in its last order, if Wells Fargo appropriately disbursed the money from the lines, then its conduct was by definition not even negligent. If the disbursals were contrary to the terms of the agreements, then the Bank may end up being the loser. Order at 6:13-17. Wells Fargo either did nothing wrongful in disbursing funds pursuant to the lines of credit, or, if it did, harmed no one but itself. In either case, there is no basis for Mr. Scarff to seek to enjoin the Bank, or to recover "restitution" from it. A federal court may not entertain a claim for relief from a person who has not been injured by the wrong he complains of.

## III. THE NEW CLAIMS AGAINST BARBER - THE THIRD, FOURTH, FIFTH, SIXTH, SEVENTH, NINTH AND TWELFTH CAUSES OF ACTION - SHOULD BE STRICKEN. PLAINTIFFS HAVE AMENDED AND EXPANDED THEIR CLAIMS AGAINST HER WITHOUT LEAVE OF COURT. FURTHERMORE, BARBER IS NOW BEING SUED BY SSA AND PENTOGA, RATHER THAN JUST SCARFF INDIVIDUALLY.

Carol Barber was not named in the Second Amended Cross-Complaint. She was named in a single cause of action — the fourth, for violation of 12 U.S.C. § 503 — in the First Amended Complaint. The claim against her was that, in her capacity as an officer of Wells Fargo, she accepted gifts from Huang that influenced her actions with respect to the Bank's loan relationship with Scarff. We moved to dismiss that claim against her as part of our motion to dismiss the First Amended Complaint. The Court denied that aspect of our motion. Having left that claim undisturbed, the Court did not grant leave to amend it. Plaintiffs have done so anyway.

In the Complaint, Barber is now named in two causes of action, both purporting to arise

under Section 503.[16] But neither is identical to the Fourth Cause of Action of the First Amended Complaint, and the Sixth Cause of Action in the latest complaint raises a wholly new claim against Barber involving the payroll and payroll tax services.

Finally, in the Fourth Cause of Action of the First Amended Complaint, Barber was being sued only by Scarff individually (along with his family trust, which is no longer a party to the action). Now, in the Sixth and Twelfth Causes of Action, she is being sued by SSA, Pentoga, and Nancy Scarff as well.[17] This makes no sense, obviously, as to the loan transactions, since SSA, Pentoga, and Mrs. Scarff are not parties to the loans, and these plaintiffs have never sought leave to assert a claim, of any type, against her.

These new claims should be stricken, as plaintiffs did not obtain permission from the Court to add them. *See* Fed. R. Civ. P. 15(a). Whether plaintiffs should be given leave to re-insert in the new complaint the allegations of the Fourth Cause of Action of the First Amended Complaint should turn on how the Court addresses our motion to dismiss the new Twelfth Cause of Action, which is presented in the next section.

## IV. THE SIXTH AND TWELFTH CAUSES OF ACTION FAIL TO STATE CLAIMS AGAINST BARBER UNDER THE BANK BRIBERY STATUTE.

As discussed above, the Sixth and Twelfth Causes of Action, insofar as they name Carol Barber, should be stricken on procedural grounds. In addition, they should be dismissed for failure to state a claim. The Sixth Cause of Action should be dismissed because it seeks to implicate Barber in the payroll and payroll tax claims, with which, as is clear from the factual allegations of the Complaint, she had nothing to do. The Twelfth Cause of Action, which accuses Barber of having accepted bribes in order to influence Wells Fargo's loan relationship with Scarff,

---

[16] Also without leave of Court, plaintiffs have alleged a raft of new tort claims against Barber: the Third Cause of Action for Fraud, the Fourth Cause of Action for Conversion, the Fifth Cause of Action for Negligence, the Seventh Cause of Action for Breach of Fiduciary Duty, and the Ninth Cause of Action for Fraud (as to the "credit line scheme"). For the reasons set forth in the Intiut Motion to Dismiss, Section I, this Court should strike these new causes of action alleged against Barber.

[17] Without the Court's permission, plaintiffs have also added Nancy Scarff as a plaintiff asserting various claims against Wells Fargo and Barber. For the reasons set forth in the Intuit Motion to Dismiss, Section I, Mrs. Scarff should be stricken as a plaintiff.

should now be dismissed because the admissions contained in the new complaint make clear that Scarff suffered no loss as a result of the loans. Scarff therefore lacks the damages that would confer standing on him to assert this claim against Barber.

Barber worked for Wells Fargo, not Intuit. Complaint ¶ 22. It was Intuit that handled the payroll servicing for SSA and Pentoga. The so-called payroll scheme, which is described in detail in the Complaint (at paragraphs 52-76), nowhere mentions Barber as an actor or participant. Out of the blue, the Sixth Cause of Action, buttressed by no relevant factual allegations whatever, then names Barber as having accepted bribes in connection with the payroll scheme. Complaint, ¶¶ 157-63. The Complaint offers no factual basis for this claim, and it should therefore be dismissed.

The Twelfth Cause of Action is a closer correlate to the Fourth Cause of Action of the First Amended Complaint, since it addresses Section 503 in the context of the loan relationship, rather than the payroll relationship, but it differs in several respects. First, the earlier claim was stated just against Barber, and it related just to the Wells Fargo loans. The new Twelfth Cause of Action combines the claim against Barber with a claim against Joan Burtzel, a Comerica employee, and it appears to suggest — although this is not entirely clear from the syntax — that Barber was somehow implicated in, or liable for, the Comerica loans. This is an entirely new claim.

It has now become clear, given the admissions in this new complaint, that Mr. Scarff suffered no loss by virtue of the Wells Fargo loans in any event. The proceeds of those loans went directly into his own accounts at the Bank, and he has neither repaid the loans nor accepted responsibility for doing so. Proximately caused damage is an element of a Section 503 claim. *Brown Leasing Co. v. Cosmopolitan Bancorp, Inc.*, 42 F.3d 1112, 1117-18 (7th Cir. 1994) (dismissing with prejudice 12 U.S.C. § 503 claim because plaintiff must plead causation, i.e., that it detrimentally relied on the false entry in bank's books); *Durante Bros. & Sons, Inc. v. Flushing Nat'l Bank*, 755 F.2d 239, 244-46 (2d Cir. 1985), *cert. denied* 473 U.S. 906 (1985) (affirming dismissal of 12 U.S.C. § 503 claim; plaintiff's claim that bank's alleged violation of 18 U.S.C. §§ 1005 and 1014 caused its injuries was "entirely speculative"). Mr. Scarff is unable to satisfy

that element.[18]

## CONCLUSION

For all of the foregoing reasons, we respectfully request that the Court grant Wells Fargo's and Barber's motions to dismiss and/or strike, without leave to replead, all claims other than the Fourteenth and Fifteenth Causes of Action.

Dated: September 7, 2004

Respectfully submitted,

COBLENTZ, PATCH, DUFFY & BASS, LLP

By:__________//s//______________________
JONATHAN R. BASS
Attorneys for Defendants
WELLS FARGO BANK, N.A. and CAROL BARBER

---

[18] SSA and Pentoga, which have hitched a ride on the claims against Barber, obviously have no claim at all with respect to the loans to Scarff personally.