# EXHIBIT 2

Dockets.Justia.com

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA - SAN FRANCISCO**

| | |
|---|---|
| MONSTER CABLE PRODUCTS, INC., Plaintiff, v. DISCOVERY COMMUNICATIONS, INC., Defendant. | Civil Action No: C 03 3250 |

**SUR-REBUTTAL EXPERT REPORT OF JEFFREY M. SAMUELS**

1. This Sur-Rebuttal Expert Report is prepared pursuant to Federal Rule of Civil Procedure 26(a)(2)(B) in connection with the above-referenced matter. As noted in my earlier-submitted Expert Report, I have been retained as an expert in the above-captioned case by counsel for Defendant Discovery Communications, Inc. to offer expert opinions regarding various trademark issues raised in the instant matter.

2. I have reviewed the Rebuttal Expert Report of Anne Hiaring, Esq., dated August 6, 2004. In her report, Ms. Hiaring notes, in part, that, under the Lanham Act, "any party that may be damaged by registration of a mark, may oppose registration" (Hiaring Report, §6) and that "[m]any trademarks that are initially approved for registration by a Trademark Examining Attorney are opposed and ultimately not registered due to a likelihood of confusion with other pre-existing marks." (Hiaring Report, §7).

3. In this regard, I note that of the approximately twenty

(20) applications filed on behalf of Defendant Discovery Communications for its MONSTER GARAGE and MONSTER HOUSE marks, only three (3), those bearing Serial Nos. 76/442576, 76/442499, and 76/459176, have been opposed by Plaintiff Monster Cable Products. Two of these applications, Serial Nos. 76/442576 and 76/442499, relate to use of the MONSTER GARAGE and MONSTER GARAGE and Design marks for "entertainment services in the nature of a television series regarding the reconstruction of automobiles into unique motor vehicle devices." Each opposition is based on the claim that, in view of Plaintiff's registrations for its MONSTER marks, registration by Defendant of the applied-for marks is likely to cause confusion. In its January 20, 2004, order in this case, the Court held "that no likelihood of confusion exists between [Plaintiff's] cables, connectors, and electrical components with [Defendant's] cable-television channel and programs."

4. In my earlier Expert Report, I noted that the PTO did not cite any of Plaintiff's MONSTER marks as a basis to refuse registration of any of Defendant's MONSTER HOUSE and MONSTER GARAGE marks. In her Rebuttal Report, Ms. Hiaring commented that, even if such is the case, such fact "does not create a basis to assume that the Trademark Examining Attorney in fact, did consider Plaintiff's Monster Family of marks and conclude that there was no likelihood of confusion." (Hiaring Report, §4.

5. It is true that there is no way to know with absolute certainty whether the Trademark Examining Attorney, in fact, did consider any of Plaintiff's MONSTER marks in determining whether or not any of Defendant's MONSTER GARAGE and MONSTER HOUSE marks are registrable. However, given the respective marks and at least some of the goods and services involved, it would be reasonable to assume that the Trademark Examining Attorney's search strategy would have led to the disclosure of Plaintiff's MONSTER marks. As indicated in my earlier report, each Trademark Examining Attorney "receive[s] particular and detailed training throughout their tenure with the agency with respect to the many substantive and procedural issues that arise during the examination of an application." This includes instruction in searching for potentially confusingly similar marks. In my opinion, if the search strategies designed by the Trademark Examining Attorneys assigned to review Defendant's applications did not disclose Plaintiff's MONSTER marks, the agency's quality review office would deem such search "deficient." The agency's quality review office randomly reviews actions taken by Trademark Examining Attorneys in examining trademark applications. One of the elements reviewed as part of the review process is the quality of searching.

6. I further note that Defendant's applications to register its MONSTER HOUSE and MONSTER GARAGE marks were examined by

at least seven (7) different Trademark Examining Attorneys, many of whom have been employed by the agency for a significant number of years. The probability that all of these Trademark Examining Attorneys would not have considered any of Plaintiff's MONSTER marks in reviewing the registrability of at least some of Defendant's marks is remote.

7. Ms. Hiaring also comments in paragraph 8 of her report that "[t]he only subjects that the Trademark Examining Attorney and the appellate body of the trademark office (the Trademark Trial and Appeal Board) are allowed to consider, are the exact marks that are before them and the specific goods and services as set forth in the pending applications or the desscriptions [sic] of goods or services for registered marks." However, a Trademark Examining Attorney may consider evidence other than the marks and goods and/or services, as set forth in the application and registration certificates, when considering the issue of likelihood of confusion, where such evidence is made of record.

8. The opinions stated in this written report are based on my education, background, knowledge and experience in trademark law and my review of the information currently available to me. I plan to continue my study of the matters discussed herein, including a review of documents that may yet be produced, court papers, reports of other experts, rebuttal reports of experts, and testimony. Accordingly, as noted

above, I reserve the right to expand upon or modify my opinions as my studies continue and to supplement my opinions in response to any additional information that becomes available to me in connection with any matters raised by Plaintiff and/or to any opinions provided by the experts retained by Plaintiff.

I declare and state under penalty of perjury that the entirety of this Expert Report is true and correct to the best of my knowledge and understanding.

Date: August 13, 2004

Jeffrey M. Samuels