Apple Inc. v. Psystar Corporation Doc. 1930

CYNTHIA MELLEMA (State Bar No. 122798)
JOHN LELAND WILLIAMS (State Bar No. 129918)
SONNENSCHEIN NATH & ROSENTHAL LLP
685 Market Street, 6th Floor
San Francisco, CA 94105
Telephone: (415) 882-5000
Facsimile: (415) 543-5472

Attorneys for Plaintiff
ALLSTATE INSURANCE
COMPANY

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ALLSTATE INSURANCE COMPANY, an Illinois Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>TIMOTHY CHODERA, SANDRA CHODERA, LAURA R. BEAUCHESNE and RICHARD B. BEAUCHESNE,<br><br>Defendants. | No. C 03-05127 JW<br><br>ALLSTATE INSURANCE COMPANY'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT<br><br>Date: September 27, 2004<br>Time: 9:00 a.m.<br>Courtroom 8<br>Honorable James Ware |



Dockets.Justia.com

## TABLE OF CONTENTS


Page

INTRODUCTION .......... 1

ARGUMENT .......... 1

I. THE PROPOSED AMENDMENT TO THE BEAUCHESNE COMPLAINT IS IMMATERIAL .......... 1

II. CHODERAS' ARGUMENTS REGARDING THE "OWNED PROPERTY EXCLUSION" ARE MISGUIDED .......... 2

III. THE AMBIGUITY/REASONABLE EXPECTATIONS ARGUMENT HAS NO MERIT .......... 3

A. The Rule Governing Insurance Contract Interpretation .......... 3

B. The "Other Premises" Exclusion Does Not Create An Objectively Reasonable Expectation of Coverage For The Beauchesne Suit .......... 5

IV. ALLSTATE IS ENTITLED TO REIMBURSEMENT .......... 9

CONCLUSION .......... 9

## TABLE OF AUTHORITIES

### FEDERAL CASES

Page


*Allstate Insurance Co. v. Chaney*,
804 F. Supp. 1219 (N.D. Cal. 1992) ........ 1, 2, 8, 9

*Bailey v. State Farm Insurance Co.*,
810 F. Supp. 267 (N.D. Cal. 1992) ........ 2

*Di Nunzio v. Allstate Insurance Co.*,
1995 U.S. Dist. LEXIS 17555 (S. D. Cal. 1995) ........ 8

*Occidental Fire & Casualty Co. v. Lumbermen's Mutual Casualty Co.*,
667 F. Supp. 679 (N.D. Cal. 1987) ........ 4, 5

*Safeco Insurance Co. v. Andrews*,
915 F.2d 500 (9th Cir. 1990) ........ 1, 9


### STATE CASES


*AIU Insurance Co. v. Superior Court*,
51 Cal. 3d 807 (1990) ........ 3, 4, 5

*American International Bank v. Fidelity & Deposit Co. of Md.*,
49 Cal. App. 4th 1558 (1996) ........ 2

*Bank of the West v. Superior Court*,
2 Cal. 4th 1254 (1992) ........ 3, 4, 9

*Bay City Paving & Grading, Inc. v. Lawyer's Mutual Insurance Co.*,
5 Cal. 4th 854 (1993) ........ 8

*Bohannon v. Aetna Casualty and Surety Co.*,
166 Cal. App. 3d 1172 (1985) ........ 4

*Buss v. Transamerica Insurance Co.*,
16 Cal. 4th 35 (1997) ........ 9

*Camelot by the Bay Condominium Owners' Association v. Scottsdale Insurance Co.*,
27 Cal. App. 4th 33 (1994) ........ 9

*Collin v. American Empire Insurance Co.*,
21 Cal. App. 4th 787 (1994) ........ 2, 9

*Cooper Cos. Inc. v. Transcontinental Insurance Co.*,
31 Cal. App. 4th 1094 (1995) ........ 4

*Furtado v. Metropolitan Life Insurance Co.*,
60 Cal. App. 3d 17 (1976) ........ 4

*Gunderson v. Fire Insurance Exch.*,
37 Cal. App. 4th 1106 (1995) ........ 2

*Hurley Construction Co. v. State Farm Fire & Casualty Co.*,
10 Cal. App. 4th 533 (1992 (same)........ 4
*La Jolla Beach and Tennis Club, Inc. v. Industrial Indemnity Co.*,
9 Cal. 4th 27 (1994)........ 7
*Middlesex Mutual Insurance Co. v. Bright*,
106 Cal. App. 3d 282 (1980)........ 4
*Montrose Chemical Corp. v. Admiral Insurance Co.*,
10 Cal. 4th 645 (1995)........ 8
*National Insurance Underwriters v. Carter*,
17 Cal. 3d 380 (1976)........ 4
*Producers Dairy Delivery Co. v. Sentry Ins. Co.*,
41 Cal. 3d 903, Cal. Civ. Code § 1641........ 3, 4
*Reserve Insurance Co. v. Pisciotta*,
30 Cal. 3d 800 (1982)........ 3, 4, 7
*St. Paul Fire and Marine Insurance Co. v. Coss*,
80 Cal. App. 3d 888 (1978)........ 4, 5
*State Farm Fire & Casualty Co. v. Drasin*,
152 Cal. App. 3d 864 (1984)........ 2
*Titan Corp. v. Aetna Casualty and Surety Co.*,
22 Cal. App. 4th 457 (1994)........ 6, 7

STATUTES

California Civil Code section 2860........ 9

## INTRODUCTION

The Choderas concede no possibility of coverage exists for the Beauchesne Suit under either of the Allstate homeowners policies. The Choderas do not contest that no possibility of coverage exists under *any* of the Allstate policies for the Beauchesnes' fraud and misrepresentation claims or their equitable claims. The Choderas do not contest that the "owned property" exclusion bars coverage for any liability they may have for damaging the condominium when they owned it. Nor do the Choderas contend a triable issue of material fact exists.

By virtue of their concessions, the Choderas have narrowed the issue before the court to one simple question of law: Does the exclusion of liability coverage for "property damage to property rented to, occupied or used by, or in the care of, an insured person **…**" preclude any possibility of coverage for the Beauchesne's putative claim for damage to the condominium during the brief period the Choderas rented it from the Beauchesnes? As this very court held in *Allstate Ins. Co. v. Chaney*, 804 F. Supp. 1219 (N.D. Cal. 1992), the answer to this question is, plainly, "yes." Consequently, the Choderas resort to shopworn exhortations of "ambiguity" and "reasonable expectations." As demonstrated below, the Allstate policies are not ambiguous and the "reasonable expectations" doctrine is inapplicable.

## ARGUMENT

### I. THE PROPOSED AMENDMENT TO THE BEAUCHESNE COMPLAINT IS IMMATERIAL

Allstate's argument that its policies do not cover the Beauchesnes' misrepresentation and concealment claims is unassailable. See, e.g., *Safeco Ins. Co. v. Andrews*, 915 F. 2d 500 (9th Cir. 1990). The Choderas therefore completely ignore this issue. Instead, they insist the Beauchesnes are also suing (or could sue) for damage the Choderas allegedly inflicted on the condominium during the brief period they rented it from the Beauchesnes. To bolster this point, the Choderas have joined forces with their nemesis and submitted a declaration from Mr. Beauchesne which sets forth a proposed amendment to the Beauchesne complaint alleging the

Choderas "negligently maintained and caused property damage to the condominium" during the time they rented it. (Decl. Beauchesne, ¶ 2.)

The Choderas could have saved themselves the effort. Allstate acknowledged in its moving papers that the Beauchesnes could theoretically assert a claim that "the Choderas physically damaged the Condominium … during the brief post-sale period [that] the Choderas rented the Condominium…." (Allstate's Mem. at 10:21-24.) As Allstate explained in its opening brief, and will do so again here, the Allstate policies bar coverage for any claim that the Choderas damaged the condominium during the "rent back" period. Specifically, the policy excludes liability coverage for "property damage to property rented to, occupied or used by, or in the care of, an insured person **…**" *Chaney*, 804 F. Supp. at 1223 (holding same exclusion bars defense of suit for damage to residence occupied by insured). Thus, the proposed amendment to the Beauchesne complaint is of no consequence.[1]

## II. CHODERAS' ARGUMENTS REGARDING THE "OWNED PROPERTY EXCLUSION" ARE MISGUIDED

The Choderas advance two arguments with respect to the "owned property" exclusion. Both are misguided. First, the Choderas note they did not own the condominium after August 22, 2000 and assert the property damage alleged by the Beauchesnes "could very easily have occurred during the time the Choderas did not own the property." (Op. Mem. 8:25-27) Allstate has no quarrel with this assertion, but it does not obligate Allstate to defend the Beauchesne Suit. Allstate has simply argued that the "owned property" exclusion bars any possibility of coverage to the extent the Beauchesnes seek damages for damage the condominium suffered during the

---

[1] The Choderas also make the common mistake of assuming "negligence" and "accident" (*i.e.*, an "occurrence") are one in the same. (Op. Mem. 8:13-14) They are not. *American Int'l Bank v. Fidelity & Deposit Co. of Md.*, 49 Cal. App. 4th 1558, 1572 (1996) ("'Negligent' and 'accidental' are not synonymous"). An "accident" is "something out of the usual course of events which happens suddenly and unexpectedly and without design." *State Farm Fire & Cas. Co. v. Drasin*, 152 Cal. App. 3d 864, 865 (1984). Thus it is doubtful that allegations of "negligent maintenance" fall within the policies' basic scope of coverage. *Bailey v. State Farm Ins. Co.*, 810 F. Supp. 267 (N.D. Cal. 1992) (insured's efforts to improve appearance of property were not accidental); *Collin v. American Empire Ins. Co.* 21 Cal. App. 4th 787, 812 (1994) (removal of claimant's property, even if for good reason, was no "accident"); *Gunderson v. Fire Ins. Exch.*, 37 Cal. App. 4th 1106, 1107, 1115 (1995) (insured's removal of fence could not have been accidental).

time the Choderas owned it. (Allstate Mem. 10:21-11:20.) If the Beauchesnes are not making such a claim, the "owned property" exclusion, of course, would not come into play. It would not follow from that circumstance, however, that Allstate has a duty to defend. The Beauchesnses' claims for misrepresentation and concealment and their equitable claims still would not fall within the basic scope of coverage. Moreover, the Beauchesnes' putative claims for damage during the "rent back" period would still be barred by the "occupied property" exclusion.

The Choderas also assert the "owned property" exclusion does not apply because their daughter lived with them at the condominium. According to the Choderas, this means the condominium was not "reserved for an insured person's exclusive use and occupancy." (Op. Mem. 8:28-9:1) This is nonsense. The Choderas' daughter is an "insured person" under the terms of the policies.[2] Moreover, just because the Choderas' daughter lived with her parents does not mean the condominium was not "reserved' for their "exclusive use and occupancy." As owners of the condominium the Choderas had the exclusive right to use it as they saw fit and to determine who could reside there, including providing a home for their child.

## III. THE AMBIGUITY/REASONABLE EXPECTATIONS ARGUMENT HAS NO MERIT

The Choderas' core argument is that the "occupied property" exclusion should be disregarded because it is ambiguous and conflicts with their "reasonable expectations" of coverage. This argument rests on a tortured construction of the policies and a misapplication of the fundamental rules of insurance contract interpretation.

### A. The Rule Governing Insurance Contract Interpretation

The rules governing the interpretation of insurance contracts are settled. Insurance policies, like any contracts, are to be interpreted to give effect to the mutual intention of the parties. If the language of the policy "is clear and explicit, it governs." *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1264 (1992). See, also, *AIU Ins. Co. v. Superior Court*, 51 Cal. 3d 807, 821-822 (1990). The entire policy must be read so as to give effect to every term. *Id.* at

[2] "Insured person" is defined in the policies to include any "relative" residing in the named insured's household and "any dependent person" in the named insured's care.

827; *Producers Dairy Delivery Co. v. Sentry Ins. Co.*, 41 Cal. 3d 903, 916-917 (1986); Cal. Civ. Code § 1641. Moreover, specific policy terms govern over general, broader terms. *Furtado v. Metropolitan Life Ins. Co.*, 60 Cal. App. 3d 17, 25 (1976). Thus, for example, the "specific language of [an] exclusion clause overrides the general coverage provisions of the insuring clause." *National Ins. Underwriters v. Carter*, 17 Cal. 3d 380, 386 (1976). See, also, *Middlesex Mut. Ins. Co. v. Bright*, 106 Cal. App. 3d 282, 291-293 (1980) ("[a]n exclusion would be unnecessary if the matter covered therein would not otherwise be covered"); *Occidental Fire & Cas. Co. v. Lumbermen's Mut. Cas. Co.*, 667 F. Supp. 679, 683 (N.D. Cal. 1987) (exclusions necessarily eliminate coverage from an insuring clause because policies are written in such a way as to first define the insuring agreements, and then to exclude from those agreements the specific risks which the insurer does not cover).

Whether language in an insurance contract is ambiguous is a question of law. *Producers Dairy*, 41 Cal. 3d at 912. An insurance policy provision is only ambiguous if it is capable of more than one *reasonable* construction when considered in the context of the policy as a whole. *Id.*; *Bank of the West*, 2 Cal. 4th at 1264. An ambiguity "cannot be based on a strained interpretation of the policy language." *Producers Dairy*, 41 Cal. 3d at 912. See, also, *Reserve Ins. Co. v. Pisciotta*, 30 Cal. 3d 800, 807 (1982) ("Courts will not adopt a strained or absurd interpretation to create an ambiguity where none exists"). Rather, the words in a policy must be read in their "ordinary and popular sense." *AIU*, 51 Cal. 3d at p. 822. A policy "*cannot be found to be ambiguous in the abstract,*" but must rest on the application of the term to the actual circumstances at issue. *Producers Dairy*, 41 Cal. 3d at 916 n. 7. Nor is an ambiguity created because an exclusion eliminates coverage from an insuring agreement. *Occidental*, 667 F. Supp. at 683. *Cf.*, *St. Paul Fire and Marine Ins. Co. v. Coss*, 80 Cal. App. 3d 888, 895-896 (1978) (exception to exclusion does not create ambiguity); *Hurley Constr. Co. v. State Farm Fire & Cas. Co.*, 10 Cal. App. 4th 533, 540 (1992 (same).

Finally, the "reasonable expectations" doctrine does not apply absent an ambiguity in the policy. *Producers Dairy*, 41 Cal. 3d at 912.; *Bank of the West*, 2 Cal. 4th at 1264. Whether an insured's expectations of coverage are *objectively* reasonable is a question of law. *Id.* at 1265;

*Cooper Cos. Inc. v. Transcontinental Ins. Co.*, 31 Cal. App. 4th 1094 (1995)v. *Bohannon v. Aetna Cas. and Sur. Co.*, 166 Cal. App. 3d 1172, 1177 (1985).

Measured against these rules, the Choderas' ambiguity/reasonable expectations argument fails.

**B. The "Other Premises" Exclusion Does Not Create An Objectively Reasonable Expectation of Coverage For The Beauchesne Suit**

The first variation on the Choderas' ambiguity/reasonable expectations argument runs as follows: The policy has a specific exclusion barring liability coverage for "property damage arising out of any premises, other than an insured premises…." The Choderas therefore contend that by virtue of this exclusion they "have coverage for liability for property damage arising out of the insured premises." (Op. Mem. 9:11-17) This argument fails as a matter of law. As the court held in *Coss*, 80 Cal. App. 3d 888, an "exclusion cannot act as additional grant or extension of coverage." *Id.* at 896. Rather, the scope of coverage afforded by a policy is determined by the insuring agreement as limited by *all* exclusions in the policy. *Id.* Indeed, the very purpose of an exclusion is to limit a policy's coverage, not expand it. *Occidental*, 667 F. Supp. at 683.

When read in the context of the policy as a whole, as required, the "other premises" exclusion merely bars coverage for any liability the Choderas might have that arises out other premises they own or occupy, such the 388 La Strada Drive house in San Jose they rented, the house at 336 Mariposa Avenue in Mountain View they previously owned and the house at 7443 Hoylake Court, Gilroy they currently own. Thus, for example, if a tree at the Choderas' current home fell and damaged a neighbor's house, the ensuing suit by the neighbor would not be covered by the Condominium Policy by virtue of the "other premises" exclusion. In short, nothing in the language, the context or the function of the "other premises" exclusion can be reasonably construed to *grant* coverage for property damage to the insured premises, *i.e.*, the condominium.

The Choderas' argument suffers from another fundamental flaw. Whether any coverage exists for the Beauchense Suit cannot be determined by looking solely at the "other premises" exclusion. The court is required to read the entire policy and give effect to every term. *AIU*, 51

Cal. 3d at 827. This includes the "occupied property" exclusion which plainly states the policy does "not cover **property damage** to property rented to, occupied or used by, or in the care of, an **insured person.**" The Choderas, of course, are "insured persons." They undeniably "rented" the condominium, "occupied" and "used" it and had the condominium in their "care." Any liability the Choderas may have for damaging the condominium while they rented, occupied, used or cared for it is thus unmistakably excluded. Any other conclusion would render the "occupied property" exclusion "a dead appendage to the policy." *Titan Corp. v. Aetna Cas. and Sur. Co.*, 22 Cal. App. 4th 457, 474 (1994).

Finally, it bears noting that although the Choderas do not have liability coverage for damaging the condominium during the time they occupied it, the "occupied property" exclusion does not bar all coverage for liability arising out the condominium. For example, if a sudden and accidental water leak in the condominium damaged a neighboring condominium, the Choderas' liability to their neighbor would not be excluded by the "occupied property" exclusion. But that is not the circumstance before the Court. The Choderas are being sued for damage they allegedly caused to the condominium *they* rented, occupied and used. That potential liability is wholly excluded.[3]

**C. The First Party Coverage Of The Policy Is Irrelevant**

The Choderas' second variation on the ambiguity/reasonable expectations argument is more convoluted than their first. The policy has two separate and distinct coverages. Section I of the policy, entitled "Your Property," covers "sudden and accidental direct physical loss" to the insured's residence premises and personal property and theft of the insured's personal property. Section II provides liability coverage. According to the Choderas, the same items of alleged "property damage" for which the Beauchesnes are suing them would have been covered by Section I of the policy had the Choderas made an insurance claim while they owned or occupied

---

[3] The purpose of an "occupied property" exclusion is obvious. Absent such an exclusion, a tenant could blithely damage his apartment and take comfort that his insurer, rather than the security deposit, will cover the tab. (The Beauchesnes required the Choderas to provide a security deposit during the time they rented the condominium.)

the condominium.[4] The Choderas therefore contend they can reasonably expect coverage under Section II for their potential *liability* to the Beauchesnes for property damage they alleged caused during their tenancy. (Op. Mem. 12:13-24) This is exactly the kind of strained, "absurd interpretation" of the policy prohibited by the law. *Reserve*, 30 Cal. at 807. Indeed, by the Choderas' logic, they would have liability coverage for stealing because the first party part of the policy covers theft.

The issue before the Court is whether the policy covers the Choderas' potential *liability* to the Beauchesnes. It is axiomatic that the scope of the policy's *liability* coverage is determined by the policy terms setting forth the *liability* coverage. See, *La Jolla Beach and Tennis Club, Inc. v. Industrial Indem. Co.*, 9 Cal. 4th 27, 41-44 (1994) (existence of separate employer's liability coverage does not create reasonable expectation that wrongful termination suit would be covered by separate workers' compensation coverage). Those terms are separately set forth in Section II of the policy appropriately named "Family *Liability* and Guest Medical Protection." The coverage afforded by Section I of the policy has no bearing whatsoever on the coverage afforded by Section II. Stated differently, the terms of Section I cannot be read to create coverage under Section II or, more specifically, to eliminate the "occupied property" exclusion from the liability coverage provisions of the policy. *Titan*, 22 Cal. App. 4th at 474 (rejecting argument that separate "personal injury" coverage can be read to eliminate exclusion under separate "property damage" coverage of the policy).

**D. The "Occupied Property" Exclusion Is Unambiguous**

The Choderas' last argument is that the "occupied property" exclusion cannot be read to include the "insured premises" and is ambiguous because "the term 'property' is not defined." (Op. Mem. 13:5-12) Neither assertion has merit.

The Choderas' contention that the "occupied property" exclusion cannot be read to include the insured premises is simply a reiteration of their first argument. In their view, the

[4] This premise is largely, if not entirely, false. Section I of the policy only covers "sudden and accidental direct physical loss" and excludes damage caused by pets, mechanical breakdown, wear and tear, and defects among other things. Thus, pet urine stains, non-working locks, spliced telephone lines, warped doors and the like are not covered by Section I. (Op. Mem. 6:20-25.)

"other premises" exclusion renders the "occupied property" exclusion ambiguous. No reading of either exclusion could reasonably lead one to that conclusion. As explained above, the "other premises" exclusion bars coverage for any liability the Choderas might have that arises out of premises other than the one insured under the condominium policy. The "occupied property" exclusion, on the other hand, bars coverage for any liability the Choderas may have for property damage to property they rented, occupied or used. The two exclusions do not conflict or create any ambiguity in the policy. To the contrary, the two exclusions serve entirely different purposes and have nothing to do with one another.

The Choderas' companion notion is that the "occupied property" exclusion is ambiguous because the word "property" is not defined. This argument smacks of desperation. Just because a particular term is not defined in a policy does not make it ambiguous. *Bay City Paving & Grading, Inc. v. Lawyer's Mut. Ins. Co.*, 5 Cal. 4th 854, 866 (1993). To the contrary, the words in an insurance policy are interpreted according to their plain and ordinary meaning. *Id.* ("The reliance on common understanding of language is bedrock"); *Montrose Chemical Corp. v. Admiral Ins. Co.*, 10 Cal. 4th 645, 667 (1995) (court is to apply meaning a layperson would ascribe to). "Property," of course, means property. Property can be real, such as the condominium, or personal, such as furniture. The "occupied property" exclusion does not distinguish between these two types of property because its purpose is to exclude liability coverage for property damage to *any* property "rented" "occupied" "used" on "in the care of the insured." For example, if the Choderas rented furniture and damaged it, their liability to the rental company would be excluded. By the same token, their potential liability to the Beauchesnes for allegedly damaging the condominium during their tenancy is excluded. That is the plain meaning of the exclusion and it must be given effect under settled rules of insurance contract interpretation. See, *Chaney*, 804 F. Supp. at 1223-1224 (rejecting argument that "owned property" and "occupied property" exclusions are ambiguous); *Di Nunzio v. Allstate Ins. Co.*, 1995 U.S. Dist. Lexis 17555 (S. D. Cal. 1995) (noting Allstate's "occupied property" exclusion is "clear").

## IV. ALLSTATE IS ENTITLED TO REIMBURSEMENT

As demonstrated above, and in Allstate's opening brief, no potential for coverage ever existed under the Allstate policies for the Beauchesne Suit. Accordingly, Allstate is entitled to judgment declaring that the Choderas must reimburse Allstate for the fees and costs it has paid to defend them. *Buss v. Transamerica Ins. Co.*, 16 Cal. 4th 35, 53 n. 15 (1997).[5]

## CONCLUSION

The Choderas began their brief by observing they are an average middle class family which has had the misfortune of becoming embroiled in a costly lawsuit. One may have sympathy for the Choderas' plight,[6] but that is no basis for rewriting the Allstate policy and fastening to it a liability it did not insure. Indeed, as the court observed in *Camelot by the Bay Condominium Owners' Assn. v. Scottsdale Ins. Co.*, 27 Cal. App. 4th 33 (1994)

> An insurer clearly takes on the duty of protecting, defending, and indemnifying its insured *with respect to the scope of coverage that was purchased* and attendant duties (defense and settlement). *The insurer does not, however, insure the entire range of an insured's well-being, outside the scope of and unrelated to the insurance policy*, with respect to paying third party claims. It is an insurer, not a guardian angel.

*Id.* at 52 (emphasis added).

The Beauchesne Suit falls wholly outside the scope of coverage of the Allstate policies. The Allstate policies do not insure liability for misrepresentation or concealment. *Safeco Ins. Co. v. Andrews*, 915 F. 2d 500 (9th Cir. 1990). The Allstate policies do not insure liability for conversion or equitable claims. *Collin v. American Empire Ins. Co.*, 21 Cal. App. 4th 787 (1994); *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1266 (1992). The Allstate policies do not insure liability for property damage to property owned by the insured or property "rented to, occupied or used by, or in the care of" the insured. *Chaney*, 804 F. Supp. 1219.

---

5 The Choderas note the defense costs for which Allstate seeks reimbursement exceed $100,000. The Choderas neglect to note these are fees and costs billed by defense counsel *they* selected and retained pursuant to California Civil Code section 2860 and over whom Allstate exerted no control. Although it is entitled to them, Allstate has not sought reimbursement of the fees and costs it also paid to defense counsel it appointed.

6 Allstate takes no position as to the merits of the Beauchesne Suit.

For the foregoing reasons Allstate submits that it is entitled to judgment as a matter of law and respectfully requests that its motion be granted.

Dated: September 13, 2004

SONNENSCHEIN NATH & ROSENTHAL LLP

By______________/s/ ___________________
JOHN L. WILLIAMS

Attorneys for Plaintiff
ALLSTATE INSURANCE COMPANY

27178300