STEVEN M. WOODSIDE, #58684
County Counsel
GREGORY T. DION, #149710
Deputy County Counsel
County of Sonoma
575 Administration Dr., Rm. 105
Santa Rosa, California 95403
Telephone: (707) 565-2421
Fax: (707) 565-2624

Attorneys for Petitioner
SONOMA COUNTY FIRE CHIEF

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE THE MATTER OF SONOMA COUNTY FIRE CHIEF'S APPLICATION FOR AN INSPECTION WARRANT RE: SONOMA COUNTY ASSESSOR'S PARCEL NUMBER 131-040-001 OR 3250 HIGHWAY 128, GEYSERVILLE, COUNTY OF SONOMA SUPERIOR COURT CASE NO. 231201.<br><br>_________________________________________/ | No. C 02 4873 JSW<br><br>SONOMA COUNTY FIRE CHIEF'S REPLY TO DRY CREEK'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE SUMMARY ADJUDICATION OF ISSUES<br><br>Date: October 1, 2004<br>Time: 9:00 a.m.<br>Courtroom: 2, 17th Floor<br><br>Hon. Jeffrey S. White |

The SONOMA COUNTY FIRE CHIEF ("Fire Chief") hereby submits his Reply to Dry Creek Rancheria Band of Pomo Indians of California's ("Dry Creek") Opposition to the Fire Chief's Motion for Summary Judgment or in the Alternative Summary Adjudication of Issues.



Dockets.Justia.com

## TABLE OF CONTENTS


I. INTRODUCTION . . . . . . . . . . 1

II. OBJECTIONS TO HEARSAY EVIDENCE SUBMITTED BY DRY CREEK . . . . . . . . . . 1

III. LEGAL DISCUSSION . . . . . . . . . . 2

A. Based on the Facts of this Case, Public Law 280 Provides the Fire Chief with Enforcement Authority over the Rancheria . . . . . . . . . . 2

B. The Fire Chief Has Enforcement Authority over the Easement . . . . . . . . . . 2

1. The Easement Was Never Properly Transferred into Trust . . . . . . . . . . 2

2. The Easement Is Not Governed by the Compact Because the Compact Is Limited to Reservation Land . . . . . . . . . . 4

C. The Cabazon Exigent Circumstances Exception Applies . . . . . . . . . . 4

D. The Compact Does  Not Exclude the Fire Chief's Jurisdiction . . . . . . . . . . 6

E. Dry Creek's Additional Reasons Do Not Warrant Denial of the Fire Chief's Motion for Summary Judgment . . . . . . . . . . 7

IV. CONCLUSION . . . . . . . . . . 9

## TABLE OF AUTHORITIES


*American Vantage Companies v. Table Mountain Rancheria*, 103 Cal.App.4th 590 (November 7, 2002) . . . . . 5

*California v. Cabazon Band of Mission Indians*, 480 U.S. 202, 208 (1987) . . . . . 4

*California Coastal Com'n v. Granite Rock Co.* 480 U.S. 572 (1987) . . . . . 8

*City of Alameda v. Todd Shipyards Corp.*, 635 F.Supp. 1447 (1986) . . . . . 8

*City of Lincoln City v. U.S. Department of Interior*, 229 F.Supp.2d 1109 (D. Oregon 2002) . . . . . 3

*Colville Reservation v. Washington*, 938 F.2d 146 (9th Cir. 1991) *cert denied*, 503 U.S. 997 (1992) . . . . . 2

*Gaming Corp. of America v. Dorsey & Whitney*, 88 F.3d 536 (8th Cir. 1996) . . . . . 5

*Hillsborough County, Fla. v. Automated Medical Laboratories, Inc.* 471 U.S. 707 (1985) . . . . . 8

*Schroeder v. Municipal Court*, 73 Cal.App.3d 841 . . . . . 8

*Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 48 (1996) . . . . . 4, 5

*Surplus Trading Co. v. Cook*, 281 U.S. 647 (1930) . . . . . 8


**Other Codes & Statutes**


7 Witkin, *Summary of California Law, Constitutional Law*, §14 . . . . . 8

25 C.F.R. §151.12-151.14 . . . . . 3

25 U.S.C. §2701 . . . . . 4,5

25 U.S.C. §2072 . . . . . 5

25 U.S.C. §2703(8) . . . . . 5

Administrative Procedures Act, 5 U.S.C. §702 . . . . . 3

Federal Communications Act . . . . . 8

Health & Safety Code §13146 . . . . . 8

Public Law 280 . . . . . 2, 5, 6, 7

Quiet Title Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
Uniform Building Code . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6
U.S. Constitution, 10th Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
U.S. Constitution Property Clause . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

As referenced in the moving papers, this case requires the court to determine whether the Fire Chief has the authority to enforce state and local fire safety laws at Dry Creek's Rancheria and on an adjacent easement. The *gravamen* of the Fire Chief's action is that local firefighters will be the first and primary responders to any emergency at the Tribe's casino and, as such, it is the local Fire Chief's duty to ensure that the facility and its access easement are safe. Of paramount importance is that there be adequate ingress and egress to the facility. Without a second access road, the facility is fundamentally unsafe. Dry Creek, on the other hand, contends that even though local firefighters are putting their lives at risk, the local Fire Chief has no jurisdiction to enforce fire safety. With this impasse, an accident is waiting to happen.

## II. OBJECTIONS TO HEARSAY EVIDENCE SUBMITTED BY DRY CREEK

Dry Creek contends through the declarations of Mr. Manuel and Ms. DeRouen that the State of California and the Geyserville Fire and Protection District have indicated that the facility is safe. (Opposition 4:7-17). These statements are inadmissible as hearsay testimony. *See*, FRE 602, 801, and 802. In addition, the declarations of Mr. Manuel and of Mr. Bergfeld are misleading. The declarations contain statements that Mr. Rosevear's assessment of the conditions at the facility are wrong. Dry Creek fails to mention the fact that Dry Creek took corrective action after Mr. Rosevear's report and before Mr. Bergfeld's inspection. For instance, at the time of Mr. Rosevear's inspection, the easement road was not fully paved. Dry Creek paved the road before Mr. Bergfeld's inspection.

Moreover, this motion is limited to jurisdictional issues pursuant to the Court's prior order. Accordingly, the Fire Chief will not address the factual assertions made by Dry Creek regarding its alleged fire safety compliance. Notwithstanding, please note that Dry Creek has continually asserted that all information regarding fire code compliance is confidential. This is one of the reasons which led to the Fire Chief's filing his action.

III. <u>LEGAL DISCUSSION</u>

A. *Based on the Facts of this Case, Public Law 280 Provides the Fire Chief with Enforcement Authority over the Rancheria*

The fundamental issue before the Court is whether the Fire Chief has enforcement authority to enforce fire codes pursuant to Public Law 280. Previously, this Court held that the case of *Colville Reservation v. Washington*, 938 F.2d 146 (9th Cir. 1991), *cert denied,* 503 U.S. 997 (1992) is controlling. As alluded to in the Fire Chief's moving papers, based on the discovery since the Court's ruling on the motion to remand, it appears that *Colville* is factually distinguishable. More specifically, the Tribe is basically policing itself in regard to fire safety. Dry Creek contends that that is not so and that a separate legal entity – the Dry Creek Gaming Commission – enforces fire safety. (*See*, Opposition at 12:6-8.) However, as stated by Ms. DeRouen, Tribal Chairperson, in her deposition testimony, the entity that has been hired to perform safety inspections – STANTEC – has been hired by the Tribe, not by the Dry Creek Gaming Commission. *(See*, Motion for Summary Judgment, Exhibit H, DeRouen Depo, 64:10-13.) Accordingly, notwithstanding Dry Creek's assertions to the contrary, Dry Creek is policing itself. This fact, and the fact that local firefighters are the first and primary responders to any emergency, mandates that the local Fire Chief have enforcement powers to enforce fire codes.

B. *The Fire Chief has Enforcement Authority over the Easement*

1. *The Easement Was Never Properly Transferred into Trust*

Dry Creek contends that the easement is trust property, even though the grant deed fails to state that the property is in trust. *(See,* Opposition at 16:16 -19:21.) Dry Creek also contends that the Ninth Circuit, in *Proschold v. United States*, has already ruled that the property is trust property. (See, Opposition 17:17-18.)

The Fire Chief recognizes that case authority supports the position that the easement does not have to state on its face that the property is in trust. The issue, however, is whether

the United States, after obtaining the easement, took the necessary steps to transfer the property into trust. Dry Creek contends that the Ninth Circuit has already decided that issue. Dry Creek is simply wrong.

As stated in the Fire Chief's moving papers, in *Proschold*, the current owners of the property adjacent to the Rancheria and which is subject to the easement, brought litigation against the United States to quiet title on the easement pursuant to the Quiet Title Act. *Proschold, supra*. The Quiet Title Act waives sovereign immunity for title disputes involving real property in which the United States claims an interest, except in disputes involving lands held in trust for Indian Tribes. Under this exception, sovereign immunity applies if the United States "has a colorable claim and has chosen to assert its immunity on behalf of land of which the government declares that it is the trustee for Indians." The Ninth Circuit held that "**<u>while some doubt exists as to the true status of the easement</u>**," the United States has asserted a colorable claim that the easement is held in trust, and for purposes of the Quiet Title Act, the United States need not actually prove that it holds the property in trust. The Ninth Circuit never concluded that the easement was in trust. It only concluded that the United States was not subject to suit under the Quiet Title Act.

Though Dry Creek contends that the easement has been utilized as if it were trust property (Opposition at 18:5 - 19:9), Dry Creek has not established that the property has been properly transferred into trust. *See,* 25 C.F.R. §151.12-151.14. The transfer of property from fee to trust requires notice and opportunity to be heard from affected parties. *Id*. Parties that oppose transfer of property into trust also have the opportunity to appeal any administrative decision regarding the transfer. *See*, Administrative Procedures Act, 5 U.S.C. §702 ("APA") (grants federal court standing to any "person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute.") *See also, City of Lincoln City v. U. S. Department of Interior,* 229 F.Supp.2d 1109 (D.Oregon 2002) (City challenged the United States' decision to transfer property from fee to trust). In the instant action, Dry Creek contends that the United States properly transferred the easement

from fee into trust. However, other than self-serving letters or declarations, Dry Creek submits no evidence that the United States ever followed the proper procedures under the Federal Code of Regulations for transferring the easement into trust. Accordingly, Dry Creek has failed to establish that the easement is trust property.

2. *The Easement Is Not Governed by the Compact Because the Compact Is Limited to Reservation Land.*

Dry Creek contends that the easement is governed by the Compact. *(See*, Opposition 19:22-28.) In support of its contention, Dry Creek submits the declarations of DeRouen and Manuel. At her deposition, Ms. DeRouen testified that she was not involved in any way with the negotiations between the State of California and the Tribe in regard to the Compact. (*See*, Exhibit A to Declaration of Gregory T. Dion in Support of Reply Brief, DeRouen Depo. 37:5-8.) The person who was involved in the negotiations was Greg Cordova. (Exhibit A to Declaration of Gregory T. Dion in Support of Reply Brief, DeRouen Depo. 37:9-12.) Accordingly, neither Mr. Manuel nor Ms. DeRouen are competent to interpret the terms of the compact.

The plain language of the Compact provides that "the Tribe intends to develop and operate a gaming facility offering Class III gaming activities **on its reservation land**, which is located in Sonoma County of California." (Compact, Preamble, §C) (Emphasis added.) The plain language of the Compact limits its application to "reservation land." The Compact makes no reference to the easement located on non-reservation land. Accordingly, the easement is not subject to the Compact.

C. *The Cabazon Exigent Circumstances Exception Applies*

Dry Creek contends that IGRA preempts the Fire Chief's enforcement of fire codes and, therefore, the *Cabazon* exigent circumstances exception doesn't apply. *See,* Opposition at 20:11-14. *California v. Cabazon Band of Mission Indians,* 480 U.S. 202, 208 (1987).

Congress enacted IGRA to provide a statutory basis to authorize and regulate gaming by Indian Tribes on Indian lands. *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 48 (1996); 25 U.S.C. §2701. IGRA divides gaming on Indian lands into three classes and provides a different regulatory scheme for each class. *Seminole Tribe*, 517 U.S. at 48. Class III gaming, such as that conducted at the Dry Creek casino, include such things as slot machines, casino games, and banking cards. *Id*.; 25 U.S.C. §2703(8). IGRA's reach is limited to providing a regulatory process and framework to help ensure that Indian gambling activities are shielded from corrupt influences and that they provide significant economic benefits to tribes. 25 U.S.C. §2702.

Nowhere does IGRA provide any standards or procedures for the application of fire safety standards.[1] Nothing in IGRA or its legislative history suggests that it was intended to preempt otherwise applicable health and safety regulations. This is not surprising as IGRA is primarily concerned with the regulation of the gaming activities themselves to prevent the influence of organized crime, ensure that the games are legal, fair and honest, and maximize the economic benefit to tribes rather than third parties.[2] 25 U.S.C. 2701-2702. To the extent that specific legal issues arise regarding regulation of gambling activities on Indian lands, IGRA has been found to preempt the field and to present federal questions. *Gaming Corp. of America v. Dorsey & Whitney*, 88 F.3d 536, 547 (8th Cir. 1996). On issues that are ancillary to gaming, however, but not relating to control of the casino enterprise, IGRA's scope is not so pervasive. *American Vantage Companies v. Table Mountain Rancheria*, 103 Cal.App.4th

---

[1] IGRA does not contain any provisions concerning fire safety other than a section permitting the Chairman of the National Indian Gaming Commission to approve tribal ordinances which provide that "the construction and maintenance of the gaming facility, and the operation of that gaming (facility) (sic) is conducted in a manner which adequately protects the environment and the public health and safety." 25 U.S.C. sec. 2710 (b)(2)(E). This provision, however, relates solely to class II gaming facilities, not a class III facility such as the one operated by Dry Creek.

[2] As evidenced by the Senate report "The entire basis for the enactment of IGRA was to provide for the regulation of *gaming* on Indian lands." *See* S. Rep. 100-446, 1988 U.S.C.C.A.N. 3071 (emphasis added).

590, 126 Cal.Rptr.2d 849, 854 (November 7, 2002). Accordingly, IGRA does not preempt the Fire Chief from enforcing fire codes.

Moreover, as to the easement, IGRA does not preempt the Fire Chief from enforcing fire codes on the easement. As explained earlier, the easement is not governed by the Compact because it is not "reservation land." As such, even if IGRA governs the Compact and preempts the enforcement of fire codes on the Rancheria, IGRA is not applicable to the easement because the Compact does not include the easement.

D. *The Compact Does Not Exclude the Fire Chief's Jurisdiction*

Dry Creek contends that the relief sought by the Fire Chief is precluded by provisions set forth in the Compact. *(See* Opposition at 23:3- 24:7.) None of the provisions cited by Dry Creek prohibits the Fire Chief from enforcing fire codes or creates inconsistent obligations on the part of Dry Creek.

First, Section 6.4.2(b) provides that the Tribe shall adopt the Uniform Building Code as to its Gaming Operations. The Fire Chief is not contending that the Uniform Building Code does not apply. However, those state laws that are not preempted or inconsistent with the Uniform Building Code should also apply. Pursuant to Public Law 280, the Fire Chief should have the authority to enforce building codes to ensure that County emergency personnel who respond to an emergency are adequately protected.

Second, Section 6.4.2(b) provides that "nothing herein shall be deemed to confer jurisdiction upon any county of the State with respect to any reference to such building and safety codes." The Compact, however, also explicitly provides that "[n]othing in this Gaming Compact affects civil and criminal jurisdiction of the State under Public Law 280. . . ." (*See* Compact at 8.2.) Read together, the Compact may not confer jurisdiction, but it does not divest the State, or the County Fire Chief in this case, from its authority to enforce fire safety pursuant to Public Law 280.

Third, Section 6.4.2(c) provides that "[i]nspections by qualified building and safety experts shall be conducted under the direction of the Tribal Gaming Agency as the basis for issuing any certificate hereunder." (Emphasis added.) The County Fire Chief is not contending that the Tribe obtain a certificate of occupancy from the County Fire Chief prior to occupancy of the Casino. The County Fire Chief is simply mandating compliance with the state's fire safety laws pursuant to Public Law 280.

Fourth, Section 6.4.2(d) requires the State to designate an agent or agents to be given reasonable notice of each inspection by the Tribal Gaming Agency's experts. In and of itself, Section 6.4.2(d) does not prohibit the application of Public Law 280. The fact that the State has the right to demand the ability to accompany inspectors of the Tribal Gaming Agency does not somehow waive the State and the County Fire Chief's authority to enforce fire safety pursuant to Public Law 280.

Fifth, Dry Creek refers to sections 10.2(c) and 10.4 which provide that the Tribe must comply with the building and safety standards set forth in Section 6.4 (the Uniform Building Code) and that the Tribe shall make reasonable provisions for adequate emergency fire, medical, and related relief and disaster services for patrons and employees of the Gaming Facility. Again, though these sections may mandate certain duties on behalf of Dry Creek, nothing in these sections prohibits the enforcement of fire codes by the Fire Chief.

Sixth, Dry Creek asserts that the Compact requirements may only be enforced by the State and the Tribe. The fact that the State may have the ability to declare the Tribe in breach of the Compact and the fact that the Compact may be revoked through a civil proceeding does not mean that all state laws that are classified as "criminal/prohibitory" are no longer applicable. In other words, the civil remedy for revocation of the Compact does not preempt other available remedies, such as enforcement of laws that are classified as "criminal/prohibitory."

E. *Dry Creek's Additional Reasons Do Not Warrant Denial of the Fire Chief's Motion for Summary Judgment*

Dry Creek contends that the Fire Chief is not authorized by State Law to enforce fire codes. Dry Creek's argument is premised on the fact that the Compact was passed by the California State legislature. The fact that the Compact may be treated as state law does not mean that the Fire Chief is preempted from enforcing fire codes. The Fire Chief is authorized under state law to enforce fire codes. *See*, Health & Safety Code §13146. Nothing in the Compact, even if treated as state law, prohibits the enforcement of fire codes by the Fire Chief.

Dry Creek also contends that federal authority over Indian property is exclusive and plenary (Opposition 24:19-25:2) and that the United States Constitution's Property Clause preempts application of County and State codes (Opposition 25:3-9). A state law which does not frustrate or impede the operation of the federal law normally may apply in the same areas. 7 Witkin, *Summary of California Law, Constitutional Law*, §14; U.S. Constitution, 10th Amendment (The Tenth Amendment declares that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the states, are reserved to the states, or the people."); *Hillsborough County, Fla. v. Automated Medical Laboratories, Inc.*, 471 U.S. 707, 105 S.Ct. 2371, 85 L.Ed.2d 714, 723 (1985) (county ordinances regulating blood plasma centers not preempted by FDA regulations establishing minimum standards for collection of blood plasma); *California Coastal Com'n v. Granite Rock Co.*, 480 U.S. 572, 107 S.Ct. 1419, 1431, 94 L.Ed.2d 577, 599 (1987) (California Coastal Commission's permit requirement for mining by holder of unpatented mining claim in national forest, not preempted by federal statutes and regulations governing land use planning); *Surplus Trading Co. v. Cook,* 281 U.S. 647 (1930); *see also, City of Alameda v. Todd Shipyards Corp.*, 635 F.Supp. 1447 (1986) ("It is not unusual for the United States to own within a state lands which are set apart and used for public purposes. Such ownership and use without more do not withdraw the lands from the jurisdiction of the state. On the contrary, the lands remain part of her territory and within the operation of her laws, save that the latter cannot affect the title of the United States or embarrass it in using the lands or interfere with its right of disposal."); *Schroeder v.*

*Municipal Court*, 73 Cal.App.3d 841, 846, 141 Cal.Rptr. 85 (1977) (municipal zoning ordinance prohibiting radio or television antennas over 40 feet in height not preempted by Federal Communications Act authorization of antennas reaching 200 feet). Accordingly, the Fire Chief is not preempted by the United States Constitution or federal law from enforcing fire codes.

## IV. <u>CONCLUSION</u>

In conclusion, because local firefighters will be the first and primary responders to any emergency at the Tribe's casino, it is imperative that the Fire Chief be allowed to carry out his statutory duties under state law to ensure that the facility and its access easement are safe. Of paramount importance is that there be adequate ingress and egress to the facility. Without a second access road, the facility is fundamentally unsafe. Accordingly, the Fire Chief requests that his motion for summary judgment be granted.

Respectfully submitted.

Dated: September 16, 2004

STEVEN M. WOODSIDE, County Counsel

By: s/s/ Gregory T. Dion
Gregory T. Dion
Deputy County Counsel
Attorneys for Petitioner