Apple Inc. v. Psystar Corporation
Doc. 2142

ROBERT E. FREITAS (State Bar No. 80948)
MELISSA A. FINOCCHIO (State Bar No. 150632)
MICHAEL C. SPILLNER (State Bar No. 205785)
DANIEL J. WEINBERG (State Bar No. 227159)
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025
Telephone: 650-614-7400
Facsimile: 650-614-7401

Attorneys for Petitioner
NITGen Co., Ltd.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NITGEN CO., LTD., a Korea corporation,<br><br>Petitioner,<br><br>v.<br><br>SECUGEN CORPORATION, a California corporation; JUN-YOUNG AHN, an individual; and DONG-WON LEE, an individual.<br><br>Respondents. | Case No. C-04-2912 JW<br><br>**NITGEN'S OPPOSITION TO RESPONDENTS' MOTION TO CONFIRM-IN-PART AND VACATE-IN-PART ARBITRATION AWARD**<br><br>Date: October 18, 2004<br>Time: 9:00 a.m.<br><br>The Honorable James Ware |



Dockets.Justia.com

## TABLE OF CONTENTS

Page


I. BACKGROUND .......... 2

II. THE RESPONDENTS' PETITION TO VACATE SHOULD BE DENIED AS UNTIMELY .......... 7

III. THE RESPONDENTS' "PUBLIC POLICY" ARGUMENTS ("DOUBLE RECOVERY" AND "FORFEITURE") HAVE NO MERIT .......... 8

- A. Background .......... 8
- B. The Respondents Wrongly Seek To Apply A "Public Policy" Concept Applicable Only In The Labor Context .......... 8
- C. SecuGen Has No Standing To Assert Any Rights With Respect To The Surrendered Shares .......... 9
- D. The Respondents Wrongly Seek To Relitigate Failed Arguments .......... 10
  - 1. The "Release" Claim Rejected By The Arbitrator .......... 10
  - 2. The "Unjust Enrichment" Claim Rejected By The Arbitrator .......... 10
  - 3. The Post-Hearing "Double Recovery" Theory Rejected By The Arbitrator .......... 11
- E. SecuGen's "Public Policy" Arguments Are Baseless .......... 11
  - 1. There Was No "Double Recovery." .......... 11
    - a. The Embezzlement And Accounting Fraud Are Separate Wrongs .......... 12
    - b. The Accounting Fraud Caused Separate And Substantial Harm .......... 13
    - c. The Respondents' Pleading Sleight Of Hand Should Be Rejected .......... 13
    - d. The "Satisfaction" Claim Has No Basis .......... 14
    - e. The Respondents Have No Right To Remake The Share Surrender .......... 14


/ / /

/ / /

## TABLE OF CONTENTS
**(continued)**

**Page**

2. SecuGen's "Forfeiture" Arguments Are Similarly Meritless .................. 14

a. No "Forfeiture" Argument Was Presented To The Arbitrator...... 14

b. There Was No Forfeiture ............................................................ 15

F. The Respondents' "Correction" Arguments Are Frivolous ................................. 15

IV. THE COURT SHOULD NOT CENSOR THE EMBEZZLEMENT FINDING............. 15

V. SECUGEN WAS NOT DEPRIVED OF ANY OPPORTUNITY TO PRESENT EVIDENCE MATERIAL TO ITS DAMAGE CASE..................................................... 16

A. Background ......................................................................................... 16

B. SecuGen Was Not Prejudiced By The Arbitrator's Refusal To Modify The Scheduling Order ......................................................................... 17

1. SecuGen Had A Full Opportunity To Address Mr. Napper's Rebuttal Report ......................................................................... 17

2. The Respondents Do Not Explain What the "Reply" Report Would Have Said. ......................................................................... 18

VI. CONCLUSION ......................................................................................... 20

## TABLE OF AUTHORITIES

**Page**

*Abraham* v. *Lancaster Cmty. Hosp.*, 217 Cal. App. 3d 796 (1990) ... 6

*Carpenters 46 N. Cal. Counties Conf. Bd.* v. *Meddles*, 535 F. Supp. 775 (N.D. Cal. 1981) ... 7

*Chiron Corp.* v. *Ortho Diag. Sys., Inc.*, 207 F.3d 1126 (9th Cir. 2000) ... 15

*Coleman* v. *Gulf Ins. Group*, 41 Cal. 3d 782 (1986) ... 6

*Employers Ins. of Wausau* v. *National Union Fire Ins.*, 933 F.2d 1481 (9th Cir. 1991) ... 19

*Foster* v. *Turley*, 808 F.2d 38 (10th Cir. 1986) ... 15

*Kyocera Corp.* v. *Prudential-Bache Trade Services, Inc.*, 341 F.3d 987 (9th Cir. 2003) ... 9

*Local Joint Exec. Bd. of Las Vegas* v. *Riverboat Casino, Inc.*, 817 F.2d 524 (9th Cir. 1987) ... 10

*Oren Royal Oaks Venture* v. *Greenberg, Bernhard, Weiss & Karma, Inc.*, 42 Cal. 3d 1157 (1986) ... 6

*Pau* v. *Yosemite Park & Curry Co.*, 928 F.2d 880 (9th Cir. 1991) ... 19

*Providence Journal Co.* v. *Providence Newspaper Guild*, 271 F.3d 16 (1st Cir. 2001) ... 7

*Spellens* v. *Spellens*, 49 Cal. 2d 210 (1957) ... 6

*Todd Shipyards Corp.* v. *Cunard Line, Ltd.*, 943 F.2d 1056 (9th Cir. 1991) ... 10, 11, 12, 20

*Wellman* v. *Writers Guild of Am., West, Inc.*, 146 F.3d 666 (9th Cir. 1998) ... 15

*Western Employers Ins. Co.* v. *Jefferies Co., Inc.*, 958 F.2d 258 (9th Cir. 1992) ... 7

/ / /

/ / /

/ / /

## TABLE OF AUTHORITIES
## (continued)

**Page**

### STATUTES

9 U.S.C. § 10 .......... 8, 9, 19

9 U.S.C. § 10(a)(3) .......... 17, 18

9 U.S.C. § 11 .......... 15

9 U.S.C. § 12 .......... 1, 7

Fed. R. Evid. 103(a)(2) .......... 19

Cal. Civ. Code § 47(b) .......... 6

### MISCELLANEOUS

W. Knight, et al., *California Practice Guide: Alternative Dispute Resolution* § 5:422.9 (Rutter Group 2004) .......... 7

Petitioner NITGen Co., Ltd. ("NITGen") submits this memorandum in opposition to the untimely motion by respondents SecuGen Corporation ("SecuGen"), its Chairman, Jun-young Ahn, and its Chief Executive Officer, Dong-won Lee, to confirm in part and vacate in part an arbitration award. Nothing the respondents say provides any reason why NITGen's petition to confirm the numerous aspects of the arbitration award on which it prevailed should not be granted.

- Under 9 U.S.C. § 12, the respondents had three months after the award was filed or delivered within which to seek vacatur. The respondents' motion was served more than four months after the award was filed and delivered, and the motion should therefore be denied as untimely.

- The respondents claim that SecuGen is entitled to a reduction in the arbitration award because Mr. Ahn and Mr. Lee surrendered shares of NITGen Technologies stock in 2002. The assertion of third party rights by SecuGen has no basis, and all matters relevant to the respondents' arguments were (a) resolved against their position in the arbitration hearing, (b) rejected by the arbitrator after the hearing when SecuGen advanced new theories, or (c) never properly raised in arbitration.

- The respondents ask the Court to censor the arbitration award by deleting the reference to the embezzlement for which Mr. Ahn and SecuGen were held liable. Mr. Ahn embezzled ₩875,000,000 from NITGen, laundered the money through a company controlled by his brother-in-law, and used the money to support a letter of credit that served as collateral for a bank loan for SecuGen. The Court's limited authority to review the arbitrator's decision does not include the power to question the arbitrator's use of terminology, or to censor the manner in which she described Mr. Ahn's crimes. Moreover, during the arbitration hearing, SecuGen specifically placed in issue the question of whether Mr. Ahn's conduct involved embezzlement by claiming that NITGen made a false statement when it truthfully reported that Mr. Ahn is the subject of a "suspended indictment" in Korea.

- The respondents also claim that SecuGen was unfairly denied the right to present its damage case because the arbitrator did not modify a longstanding scheduling order and allow a

"reply" report by SecuGen's damages expert. The arbitrator's liability determinations preclude the possibility of damage causation and require the rejection of this argument. In addition, the SecuGen expert in question, Robert Dwyer, testified at length and SecuGen had a full and fair opportunity to present whatever Mr. Dwyer had to say.

SecuGen also seeks to confirm several aspects of the award, unnecessarily duplicating matters already before the Court on NITGen's petition pursuant to 9 U.S.C. §§ 9-11. For the reasons set forth in the papers submitted by NITGen in support of its petition, the Court should not confirm the "abuse of process" award, the trademark injunction, or the prior restraint injunction. The respondents' unnecessary and untimely petition should be denied.

## I. BACKGROUND.

The arbitration hearing in issue began on January 8, 2004 and ended on January 30, 2004. NITGen won a resounding victory.

- *Recovery of Accounts Receivable*: The arbitrator awarded NITGen $3,322,419.57, including interest, on NITGen's accounts receivable claim. *See* Partial Final Award at 32 ¶ 2.[1]

- *Embezzlement*: Mr. Ahn testified that he was not responsible for the embezzlement of ₩875,000,000 from NITGen, the subsequent laundering of the money through a company controlled by Mr. Ahn's brother in law, Sun-hong Kim, or the eventual use of NITGen's money to collateralize a letter of credit supporting a bank loan to SecuGen. *Id.* at 32 ¶ 3. The arbitrator rejected Mr. Ahn's false testimony, held him and SecuGen jointly and severally liable for embezzlement, and awarded NITGen $724,099.94, including interest, on its embezzlement claim.

- *LPSA Invalidity*: During 2000, Mr. Ahn caused NITGen to enter into an agreement known as the License, Production and Services Agreement ("LPSA"). The arbitrator terminated the LPSA as of October 31, 2002, and voided *ab initio* the unbalanced intellectual property provisions pursuant to which SecuGen attempted to put NITGen out of business by

---

[1] The April 27, 2004 Partial Final Award of Arbitrator ("Partial Final Award"), and the July 12, 2004 Final Award of Arbitrator ("Final Award") are respectively attached as Exhibits A and B to NITGen's Petition Pursuant To 9 U.S.C. §§ 9-11 [Docket No. 1].

misappropriating all of its non-Korea intellectual property. *Id.* at 32 ¶¶ 1, 10.

- *Shop Rights*: The arbitrator held that NITGen holds shop rights in U.S. Patent No. 6,324,020 ("'020 patent") and U.S. Patent No. 6,381,347 ("'347 patent"), and therefore rejected SecuGen's claims that NITGen was liable for infringement of those patents. *Id.* at 32 ¶ 4.

- *Accounting Fraud*: The arbitrator found that Mr. Ahn directed a multi-year accounting fraud scheme. *Id.* at 10-16 ¶¶ 39-49. Although Mr. Ahn falsely testified that he had no involvement in the accounting fraud, the arbitrator credited the six witnesses who testified or submitted witness statements to the contrary, and found "no doubt that Mr. Ahn was the ultimate decision maker" with respect to the accounting fraud. *Id.* at 14 ¶ 47.

The arbitrator rejected virtually all of SecuGen's counterclaims and all of the claims by Mr. Ahn and Mr. Lee.

- *Lost Profits*. The arbitrator rejected the entirety of SecuGen's $42,900,000 lost profits damages claim on three independent grounds, "any one of [which] is fatal to its claims." *Id.* at 24 ¶ 90. In addition, the arbitrator rejected virtually all of the liability contentions made to support SecuGen's damage case, and held that the remaining allegations could not establish damage causation. *Id.*

- *Breach Of Contract (LPSA)*: The arbitrator rejected SecuGen's counterclaim that NITGen breached the LPSA by refusing to deliver products to SecuGen, finding that "SecuGen was in material breach of the LPSA by its failure to make payments for product." *Id.* at 16 ¶ 51.

- *Breach Of Implied Covenant Of Good Faith And Fair Dealing*: The arbitrator rejected SecuGen's counterclaim that NITGen was liable for breach of its implied duty of good faith and fair dealing under the LPSA, finding that "until the disclosure of the accounting fraud, NITGen's actions outside the LPSA supported SecuGen." *Id.* at 18 ¶ 59.

- *Breach Of Contract ("Cash Up Front Agreement")*: The arbitrator rejected SecuGen's counterclaim that NITGen breached an interim "cash up front" agreement by stopping shipment to SecuGen. The agreement was "conditioned not only on payment but also on a new agreement between the parties," neither of which came to pass. *Id.* at 18 ¶ 58.

/ / /

- *Interference With Contract and Prospective Economic Advantage (Customers)*: The arbitrator rejected SecuGen's counterclaim that NITGen is liable for wrongfully interfering with relationships between SecuGen and actual or potential customers. Although SecuGen claimed that NITGen made false statements to customers, the arbitrator concluded that the statements NITGen made were almost entirely true and non-actionable. Some of the statements challenged by SecuGen involved the criminal proceedings that have resulted in a "suspended indictment" ("ki-so-jung-ji") against Mr. Ahn in Korea. The arbitrator specifically held that "SecuGen's argument that Mr. Ahn is blameless has been rejected," that "[m]ost of the statements in the 'Information Packet' given by NITGen to customers about the criminal charges brought against Mr. Ahn in Korea were true," *id.* at 24 ¶ 86, and that "a large portion of SecuGen's 'false and defamatory' allegations have been rejected." *Id.* at 26 ¶ 96.

- *Interference With Contract and Prospective Economic Advantage (ITX)*: The arbitrator rejected SecuGen's counterclaim that NITGen caused the termination of negotiations between SecuGen and a Japanese company called ITX. *Id*. at 21-23 ¶¶ 76-84. The arbitrator found that SecuGen attempted to deceive ITX, and that ITX's discovery of the existence of litigation/arbitration between NITGen and SecuGen was the true cause of the failure of the transaction. *Id*. at 22-23 ¶¶ 80-81, 84.

- *Trade Libel*: The arbitrator rejected SecuGen's counterclaim that NITGen is liable for damages for making false statements about SecuGen. *Id.* at 33 ¶ 12.

- *Defamation*: The arbitrator rejected the defamation counterclaim that SecuGen, Mr. Ahn, and Mr. Lee tried to add to the case after the arbitration hearing ended. *Id.*

- *Patent Infringement*: Based on the conclusion that NITGen holds shop rights in both the '347 patent and the '020 patent, the arbitrator held that NITGen is not liable for infringement of either patent. *Id.* at 32 ¶¶ 4, 10.

- *Trademark Infringement*: The arbitrator rejected SecuGen's counterclaim for damages for trademark infringement, finding that SecuGen failed to prove infringing sales. *Id.* at 27-28 ¶ 108; 34 ¶ 17.

/ / /

- *Copyright Infringement*: The arbitrator rejected SecuGen's counterclaim for damages for copyright infringement, and granted injunctive relief with respect to only one non-consequential work that was developed by NITGen and for which SecuGen "paid" with the proceeds of a bank loan obtained on the strength of a letter of credit supported by money embezzled from NITGen. *Id.* at 33 ¶ 15.
- *Misappropriation Of Trade Secrets (Customer Information)*: The arbitrator rejected SecuGen's counterclaim that NITGen is liable for misappropriation of confidential SecuGen customer information. *Id.* at 32 ¶ 9. The arbitrator found that NITGen did not use any trade secret information. *Id.* at 19 ¶ 66. Although NITGen was competing with SecuGen, the arbitrator held that "targeting SecuGen's customers was not a misappropriation of trade secret information. Customers generally do not belong to anyone; they can buy from any seller they choose." *Id.* at 18-19 ¶ 65.
- *Unfair Competition*: The arbitrator rejected SecuGen's counterclaim for damages for unfair competition. *Id.* at 34 ¶ 18.

All of Mr. Ahn's and Mr. Lee's claims were rejected.

- *Assault And Battery*: The arbitrator rejected Mr. Ahn's claim that NITGen is liable for the actions of a third party who threw an ashtray at Mr. Ahn in a karaoke bar in Seoul after finding out about the accounting fraud. *Id.* at 34 ¶ 19.
- *Breach Of "Release"*: The arbitrator rejected Mr. Ahn's and Mr. Lee's claims that NITGen is liable for breaching agreements by which NITGen allegedly released Mr. Ahn and Mr. Lee from liability for all wrongdoing. *Id.* at 34 ¶ 20. The arbitrator rejected the claims that releases were intended when Mr. Ahn and Mr. Lee surrendered their shares of stock in NITGen's publicly traded parent, NITGen Technologies.
- *Unjust Enrichment*: The arbitrator rejected Mr. Ahn's and Mr. Lee's claims that NITGen was unjustly enriched when Mr. Ahn and Mr. Lee surrendered their shares in the aftermath of the accounting fraud. *Id.* The arbitrator held that Mr. Ahn and Mr. Lee surrendered their shares to assume responsibility for their actions as directors of NITGen and that NITGen was not unjustly enriched. *Id.* at 31 ¶ 128; 34 ¶ 20.

SecuGen obtained minimal recovery.

- *Abuse of Process*. The only claim on which SecuGen obtained a monetary award was its abuse of process counterclaim. *Id.* at 33 ¶ 13. The arbitrator held that NITGen engaged in abuse of process by asserting legal rights in judicial proceedings. There was no attempt by SecuGen to prove that any claim or argument NITGen made was without a colorable basis, and no finding to that effect. (NITGen's victory demonstrates that any such assertion would have been futile.) Under settled California law: (1) the filing and maintenance of a lawsuit and the filing of an appeal are not abuse of process, *Oren Royal Oaks Venture* v. *Greenberg, Bernhard, Weiss & Karma, Inc.*, 42 Cal. 3d 1157, 1169 (1986); *Coleman* v. *Gulf Ins. Group*, 41 Cal. 3d 782, 788-89 (1986); (2) these actions are recognized by California law as absolutely privileged communicative activities that cannot form the basis of an abuse of process claim under any circumstances, Cal. Civ. Code § 47(b); *Abraham* v. *Lancaster Cmty. Hosp.*, 217 Cal. App. 3d 796, 824-25 (1990); and (3) attorneys' fees are not available as damages on claims for abuse of process. *Spellens* v. *Spellens*, 49 Cal. 2d 210, 233-34 (1957). Although all of these undisputed principles were specifically called to the arbitrator's attention, she disregarded the settled law and ruled in SecuGen's favor, albeit on a basis other than that presented by SecuGen.

- *Prior Restraint*. The arbitrator issued a prior restraint on protected speech, prohibiting NITGen from making various statements not found to be false. (The truth of at least one of the statements is established by the arbitrator's finding that Mr. Ahn and SecuGen embezzled money from NITGen.) The prior restraint was in excess of the arbitrator's jurisdiction because the dispute on which it was based was not subject to mandatory arbitration under the LPSA.

- *Trademark Injunction*. The arbitrator enjoined NITGen from using various trademarks, including marks that NITGen indisputably owns and has registered in Korea. This ruling was in excess of the arbitrator's jurisdiction because the trademark injunction claim was not arbitrable under the LPSA, and because the ruling addresses matters not presented to the arbitrator for disposition.

/ / /

Although the respondents have tried hard to sanitize the results of the arbitration, and to suggest that the arbitrator "split the baby," the simple truth is that the respondents were beaten about as badly as they could have been beaten.

## II. THE RESPONDENTS' PETITION TO VACATE SHOULD BE DENIED AS UNTIMELY.

On September 8, 2004, the respondents filed this motion to confirm/vacate the arbitration award, and they scheduled their motion for hearing on October 18, 2004, almost a month after the hearing on NITGen's previously-filed petition.

The respondents had ample opportunity to present whatever arguments they have in opposition to NITGen's petition or to file a timely motion. They have instead engaged in repeated delay tactics by filing a duplicative petition in state court, a motion to dismiss NITGen's petition, and a motion under Civil Local Rule 6-3 to delay the hearing on NITGen's petition indefinitely.

The respondents' motion is untimely. Under 9 U.S.C. § 12, a motion to vacate an arbitration award must be served within three months after the award is filed or delivered. The limitations period set forth in section 12 applies both to motions to vacate and to efforts to oppose confirmation, and the respondents' belated filing would not have sufficed even as an attempt to resist NITGen's petition. *See Western Employers Ins. Co.* v. *Jefferies Co., Inc.*, 958 F.2d 258, 260-61 (9th Cir. 1992); *PaineWebber, Inc.* v. *Barca*, 2000 WL 1071836, *2 (N.D. Cal. 2000); *Carpenters 46 N. Cal. Counties Conf. Bd.* v. *Meddles*, 535 F. Supp. 775, 777 (N.D. Cal. 1981).

The respondents' motion was served September 8, 2004, four months and thirteen days after the April 27, 2004 Partial Final Award. The incorporation of the Partial Final Award into the July 12, 2004 Final Award did not extend the limitations period; all the liability findings were made in the April 27 Partial Final Award. "[A] partial final award is deemed final for review purposes." W. Knight, et al., *California Practice Guide: Alternative Dispute Resolution* § 5:422.9 (Rutter Group 2004); *Providence Journal Co.* v. *Providence Newspaper Guild*, 271 F.3d 16, 20 (1st Cir. 2001). The petition is untimely, and it should not be permitted to delay the

enforcement of the award in NITGen's favor.[2]

## III. THE RESPONDENTS' "PUBLIC POLICY" ARGUMENTS ("DOUBLE RECOVERY" AND "FORFEITURE") HAVE NO MERIT.

### A. Background.

In April 2002, NITGen's newly hired Chief Financial Officer, Byung-wook Kim, uncovered an accounting fraud scheme that had resulted in the preparation of false financial statements for NITGen for both 2000 and 2001. During the period of the fraud, Mr. Ahn was the Chairman and CEO of NITGen, and Mr. Lee was a director and senior officer of NITGen.

Mr. Kim reported his discovery in a board meeting in mid-April 2002. Mr. Ahn was present at the meeting, but, as the arbitrator noted, Partial Final Award at 11 ¶ 41, Mr. Ahn was silent. A public disclosure was made, with catastrophic results for the stock of NITGen Technologies. Within days, Mr. Ahn fled Korea, and he never returned to NITGen. *Id*.

After the accounting fraud was discovered, Mr. Ahn and Mr. Lee were asked to make a gesture that would acknowledge their responsibility for the accounting fraud at NITGen, and allow NITGen and NITGen Technologies to demonstrate that steps were being taken in response to the fraud. Reflecting their responsibility, and, as the arbitrator found, without negotiating anything in return, Mr. Ahn and Mr. Lee agreed to surrender their NITGen Technologies shares in April 2002. *See* Declaration of Daniel J. Weinberg In Opposition To Respondents' Motion To Confirm/Vacate Arbitration Award ("Weinberg Decl.") Ex. A.

### B. The Respondents Wrongly Seek To Apply A "Public Policy" Concept Applicable Only In The Labor Context.

SecuGen seeks vacatur based on a "public policy" concept that is not found in 9 U.S.C. § 10, or applied in cases outside the labor context. The "public policy" concept is

---

[2] NITGen believes that the duplicative state court petition was a result of the respondents' lawyers' realization that they had missed the section 12 deadline for a motion to vacate. The duplicative state court petition was filed on August 5, 2004, eight days after the section 12 deadline passed, but before the 100 day deadline for state court vacatur petitions. *See* Cal. Code Civ. Proc. § 1288.

narrowly applied under the Labor Management and Relations Act ("LMRA"), but the respondents did not cite, and NITGen has not located, any case in which the Ninth Circuit has recognized "public policy" as a ground for vacatur in any other area of law.

The Ninth Circuit identified the permissible grounds for vacatur under the Federal Arbitration Act in *Kyocera Corp*. v. *Prudential-Bache Trade Services, Inc*., 341 F.3d 987 (9th Cir. 2003) (en banc). The court did not recognize "public policy" as a separate ground for vacatur. The Ninth Circuit explained that other than the statutory grounds prescribed in 9 U.S.C. § 10, the only bases on which an award can be vacated are if the award is "completely irrational" or in "manifest disregard of the law."

> In sum, the Federal Arbitration Act allows a federal court to correct a technical error, to strike all or a portion of an award pertaining to an issue not at all subject to arbitration, and to vacate an award that evidences affirmative misconduct in the arbitral process or the final result or that is completely irrational or exhibits a manifest disregard for the law. These grounds afford an extremely limited review authority, a limitation that is designed to preserve due process but not to permit unnecessary public intrusion into private arbitration procedures.

*Id.* at 997-98.

A "public policy" basis for vacatur is sometimes used in cases arising under a different statute, the LMRA. Both of the federal "public policy" cases the respondents cite are LMRA cases.[3] The respondents' motion to vacate should be denied because the only basis for vacatur they offer is not recognized under the Federal Arbitration Act.

### C. SecuGen Has No Standing To Assert Any Rights With Respect To The Surrendered Shares.

The respondents request that the award in NITGen's favor against SecuGen be reduced by the alleged value of the NITGen Technologies shares surrendered by Mr. Ahn and Mr. Lee. SecuGen cannot assert rights on the basis of shares it did not own. The Court should confirm the full amount of NITGen's award against SecuGen, both on NITGen's collection claim

---

[3] The California case cited by the respondents is not helpful. State law is different from federal law, recognizing a broader "public policy" basis for vacatur.

against SecuGen (for $3,322,419.57) and on NITGen's embezzlement claim (for $724,099.94), for which SecuGen was held jointly and severally liable.

**D. The Respondents Wrongly Seek To Relitigate Failed Arguments.**

The arbitrator has considered and rejected the respondents' arguments that they are entitled to relief based on the share surrender. The Court may not reconsider the arbitrator's determination that no relief is warranted. An award may not be reviewed by a court for errors in law or fact. *See Kyocera*, 341 F.3d at 997; *see also Todd Shipyards Corp.* v. *Cunard Line, Ltd.*, 943 F.2d 1056, 1060 (9th Cir. 1991); *Local Joint Exec. Bd. of Las Vegas* v. *Riverboat Casino, Inc.*, 817 F.2d 524, 528 (9th Cir. 1987).

**1. The "Release" Claim Rejected By The Arbitrator.**

Mr. Ahn and Mr. Lee made arbitration claims asserting that the shares were surrendered pursuant to an agreement by which NITGen supposedly gave them releases from all liability. *See* Weinberg Decl. Ex. B at 8-9, 36-37. The parties extensively briefed the "release" issue, collectively submitting thirty-eight pages to the arbitrator in their post hearing briefs. *See id*. Exs. S, T. The arbitrator rejected Mr. Ahn's and Mr. Lee's theory on the facts, finding, "[t]he Confirmation Agreements do not contain the word 'release.' The only language that could be interpreted as pertaining to a release is the phrase 'to make up for this.' But that phrase does not convey the agreement of NITGen to a release." Partial Final Award at 31 ¶ 126. The arbitrator further considered the circumstances of the share surrender, citing a document "establish[ing] that on April 30, 2002, neither Mr. Ahn nor his lawyers at Bae Kim & Lee thought he had obtained a release through signing the Confirmation Agreement and transferring his NITGen [Technologies] shares." *Id.* ¶ 127. The arbitrator concluded that "Mr. Ahn and Mr. Lee have failed to prove they were given general releases by NITGen." *Id.* ¶ 128.

**2. The "Unjust Enrichment" Claim Rejected By The Arbitrator.**

Along with the "release" theory, Mr. Ahn and Mr. Lee claimed that NITGen would be unjustly enriched if it were permitted to keep the shares they surrendered. *See* Weinberg Decl. Ex. B at 8-9, 36-37. This claim was also thoroughly briefed, *id*. at Exs. S, T, and was also rejected by the arbitrator. Partial Final Award at 34 ¶ 20 ("The counterclaims of Mr.

Ahn and Mr. Lee for unjust enrichment are denied."). SecuGen (and secondarily, Mr. Ahn) have recast the unjust enrichment claim in the form of the "double recovery" and "forfeiture" arguments discussed below.

**3. The Post-Hearing "Double Recovery" Theory Rejected By The Arbitrator.**

After it lost, SecuGen modified the claims unsuccessfully made by Mr. Ahn and Mr. Lee, and presented new arguments as its own. Despite the arbitrator's findings, SecuGen filed a motion under American Arbitration Association Rule R-46[4] in which it claimed that the arbitrator was guilty of an oversight with respect to the share surrender. *See* Weinberg Decl. Ex. C. SecuGen claimed generically that the "net award" to NITGen should be reduced on the basis of an "accounting" for the surrendered shares to avoid "double recovery." *Id*. at 2.

NITGen responded to this motion by pointing out that Rule R-46 did not permit SecuGen to reargue the merits, and by explaining that there was no double recovery. *See id*. Ex. D. The arbitrator denied SecuGen's motion and explained that SecuGen was wrong to claim "oversight." The arbitrator ruled that SecuGen's requests "would call for a redetermination of the merits of claims already decided." *Id*. Ex. E at Part IV. The Court should deny SecuGen's petition for vacatur on the same basis. *See Kyocera*, 341 F.3d at 997.

**E. SecuGen's "Public Policy" Arguments Are Baseless.**

The respondents now retreat to an argument that the arbitrator's refusal to remake the share surrender transaction and afford a credit against the award in NITGen's favor violates public policy. They repeat the "double recovery" idea and claim that a "forfeiture" will result if a credit is not recognized. Neither assertion has any basis.

**1. There Was No "Double Recovery."**

Even if the Court had the power to reconsider the "double recovery" argument rejected by the arbitrator, there are several reasons why no relief could be had on the basis of a claim of "double recovery."

---

[4] *See* http://www.adr.org (Rules: Commercial Arbitration Rules And Mediation Procedures).

**a. The Embezzlement And Accounting Fraud Are Separate Wrongs.**

The shares surrendered by Mr. Ahn and Mr. Lee, and the amounts awarded to NITGen by the arbitrator, do not, as the respondents contend, relate to "a single injury." Respondents' Mem. at 11-12. This assertion is made of whole cloth, unsupported by the facts, and without any basis at all in the arbitration award. The contention that the share surrender "*already* compensated . . . NITGen for the breach of fiduciary duty for which he was found liable," *id.*, is absolutely false. The respondents cannot manufacture "double recovery" by making things up.

The arbitrator's award of $615,153.84 (plus interest) to NITGen was for Mr. Ahn's **embezzlement** from NITGen. *See* Partial Final Award at pp. 7-8 ¶¶ 25-29 & p. 32 ¶ 3. (As explained below, the money awarded against SecuGen on the **accounts receivable** claim also involved entirely separate matters.) The embezzlement took place in December 2001. Mr. Ahn instructed that ₩875,000,000 be withdrawn from NITGen as "advance deposits" on contracts that did not exist. *See id.* at 7 ¶ 26. The money was then laundered through a company controlled by Mr. Ahn's brother-in-law and used as collateral for a loan to SecuGen. *See id.* There was no claim or proof, and there is no basis for a contention, that the embezzled money had anything to do with, or was compensated for by, the share surrender.

The evidence showed, and the arbitrator found, that the share surrender was an unrelated business transaction by which Mr. Ahn and Mr. Lee agreed to take a measure of responsibility for the harm caused by the **accounting fraud** directed by Mr. Ahn. *See id.* at 30 ¶ 121 ("There is no dispute that in the immediate aftermath of the disclosure of the accounting fraud at NITGen, the board of directors asked Mr. Ahn, Mr. Won Lee, and [co-conspirator] Mr. Suh to surrender their shares in NITGen's publicly traded parent, NITGen Technologies Co., Ltd."). The accounting fraud involved a series of unrelated wrongful acts that occurred at different times than the embezzlement. *Compare id.* at 10-16 ¶¶ 39-49 (circumstances of the accounting fraud) *with id.* at 7-8 ¶¶ 25-29 (circumstances of the embezzlement). The accounting fraud took place from October 2000 to February 2002, while Mr. Ahn was CEO of NITGen and

involved Mr. Ahn directing that NITGen's financial statements be changed "from red to black." *See id.* at 10-16 ¶¶ 39-49. The facts of these separate crimes are distinct, and the respondents' attempt to connect them by using the common label "breach of fiduciary duty" has no basis.

**b. The Accounting Fraud Caused Separate And Substantial Harm.**

When the accounting fraud was disclosed, there was an immediate and dramatic drop in the price of NITGen Technologies stock. Weinberg Decl. Ex. F. NITGen and NITGen Technologies faced substantial damage to their businesses and their reputations, and NITGen itself faced losses as a result of its ownership of NITGen Technologies stock. In a contemporaneous document, Mr. Ahn estimated the harm caused by the accounting fraud to be in the range of $5,000,000, more than the value of the shares claimed by SecuGen. *See id.* Ex. G.[5]

NITGen had no burden to justify the receipt of the shares. Nonetheless, the evidence provided ample "justification" in the form of unrelated legal and other harm for NITGen to retain the shares without penalty, as agreed by Mr. Ahn and Mr. Lee.

**c. The Respondents' Pleading Sleight Of Hand Should Be Rejected.**

The respondents apparently claim that NITGen pleaded one claim for "breach of fiduciary duty," and should only be able to collect one form of "damages" on that claim. NITGen did not receive the surrendered shares as damages, or in connection with the arbitration. The shares were surrendered almost two years **before** the award, and the surrender had nothing to do with the arbitration or the recovery of damages.[6]

---

[5] Proceeding as if the Court has the power to find facts, the respondents discuss the parties' factual dispute about the value of the surrendered shares. The arbitrator never resolved the value issue because her decisions made a resolution unnecessary. There is no basis on which the Court could resolve the value dispute or resolve any other factual issues.

[6] The respondents also ignore that NITGen pleaded a separate conversion claim to address Mr. Ahn's embezzlement. *See* Weinberg Decl. Ex. H. The respondents' false assertion that "NITGen never articulated the bases for its conversion and money laundering claims" is appalling. Respondents' Mem. at 8. NITGen expressly argued that the conversion claim was based on Mr. Ahn's embezzlement and money laundering. *See id.* Ex. I; Partial Final Award at 7 ¶ 26.

**d. The "Satisfaction" Claim Has No Basis.**

The respondents make another confusing attempt to transform the 2002 share surrender transaction with the unsupportable assertion that the share surrender "already satisfied" NITGen's accounts receivable claim against SecuGen. Respondents' Mem. at 13. This makes no sense.

Like the embezzlement claim, the accounts receivable has nothing to do with the share surrender. NITGen's accounts receivable claim was against SecuGen (not Mr. Ahn and Mr. Lee), for goods and services admittedly received by SecuGen from NITGen over an extended period (from 1999 to 2002), but for which SecuGen never paid. *See* Partial Final Award at 7 ¶¶ 22-24. SecuGen's debt to NITGen for these goods and services has nothing whatsoever to do with the accounting fraud that led to Mr. Ahn's and Mr. Lee's surrender of shares.

**e. The Respondents Have No Right To Remake The Share Surrender.**

The respondents attempt to mislead the Court by stating that the arbitrator found that the purpose of the share surrender was "to compensate [NITGen] for any damage 'that could result in the course of performing managerial duties while [Mr. Ahn served] as a director of NITGen' . . . [and] [T]he sole 'damage' for which Mr. Ahn was liable amounted to $615,153.84 plus interest." Respondents' Mem. at 13 (emphasis added). This is nothing more than the release argument in sheep's clothing.

The translation of the Korean language share surrender document was disputed at the arbitration hearing. NITGen's translation did not include the word "damage," but SecuGen's did. *Compare* Weinberg Decl. Ex. A (NITGen translations) *with id.* Ex. J (SecuGen translations). After asking the official interpreter for his opinion, the arbitrator adopted NITGen's translation. *See* Partial Final Award at 31 ¶ 128. The arbitrator's finding closes the matter. The attempt to reinject the "damage" concept found in the inaccurate translation is improper.

**2. SecuGen's "Forfeiture" Arguments Are Similarly Meritless.**

**a. No "Forfeiture" Argument Was Presented To The Arbitrator.**

In addition to their attempts to relitigate matters resolved by the arbitrator, the

respondents make a new argument that a "forfeiture" will result if NITGen is allowed to retain the shares surrendered by Mr. Ahn and Mr. Lee in 2002. "A party may not sit idle through an arbitration proceeding and then collaterally attack that procedure on grounds not raised before the arbitrators when the result turns out to be adverse." *Wellman* v. *Writers Guild of Am., West, Inc.*, 146 F.3d 666, 673 (9th Cir. 1998). The respondents' "forfeiture" argument was not presented to the arbitrator, and was waived.

**b. There Was No Forfeiture.**

Raised or not, the "forfeiture" argument has no basis. Unlike in the cases cited by the respondents, the arbitrator's award did not provide for any forfeiture. Mr. Ahn and Mr. Lee voluntarily surrendered their shares long before the arbitration began, and two years before the award.

Since the share surrender, nothing establishing a "forfeiture" has happened. Nothing changed when the arbitration hearing occurred, and nothing changed when the arbitrator awarded unrelated damages to NITGen. The arbitrator did not "effect[ ] a forfeiture" by "not apply[ing] the value of the stock to the amounts for which she found SecuGen and Mr. Ahn to be liable." Respondents' Mem. at 11-14. The shares were already long gone.

**F. The Respondents' "Correction" Arguments Are Frivolous.**

Mr. Ahn asks that the award be "corrected" to specify that he has no liability to NITGen for the amounts for which he was held liable. Under 9 U.S.C. § 11, "a court may modify an award to correct an obvious material miscalculation of figures or an imperfection in matter of form ***not affecting the merits***." *Chiron Corp.* v. *Ortho Diag. Sys., Inc.* 207 F.3d 1126, 1134 n.2 (9th Cir. 2000) (emphasis added). *See also, e.g.*, *Foster* v. *Turley*, 808 F.2d 38, 42 (10th Cir. 1986) ("This section does not license the district court to substitute its judgment for that of the arbitrators." (citation omitted)). Obviously, a change in the award to specify that Mr. Ahn does not have to pay would "affect the merits." The arguments to "correct" the award to afford SecuGen a credit based on shares it did not own fare no better. *See* Part III.C *supra*.

## IV. THE COURT SHOULD NOT CENSOR THE EMBEZZLEMENT FINDING.

Reflecting the old maxim that "the truth hurts," the respondents seek to censor the

award to eliminate the reference to the embezzlement for which Mr. Ahn and SecuGen were held liable. NITGen explicitly accused Mr. Ahn and SecuGen of embezzlement and it proved them liable for embezzlement. The embezzlement claim was labeled "Breach of Fiduciary Duty (. . . Embezzlement . . .)," *see* Weinberg Decl Ex. H, but that is not important. The arbitrator had the right to call Mr. Ahn's embezzlement "embezzlement," to distinguish the embezzlement from the other species of breach of fiduciary duty in which Mr. Ahn engaged (accounting fraud, self dealing, etc.), and she had the right to use whatever terms she found appropriate without approval from the respondents or oversight by this Court.

Moreover, the respondents themselves put in issue the question of whether Mr. Ahn engaged in "embezzlement." SecuGen asserted counterclaims against NITGen for "false statement" torts, and it claimed, citing a criminal case, that NITGen spoke falsely when it discussed accusations of "embezzlement" against Mr. Ahn. *See id.* Ex. K. Because truth is a defense, the question of whether Mr. Ahn engaged in embezzlement was squarely presented.

## V. SECUGEN WAS NOT DEPRIVED OF ANY OPPORTUNITY TO PRESENT EVIDENCE MATERIAL TO ITS DAMAGE CASE.

SecuGen suffered a total defeat on its lost profits damages claim. For a variety of reasons related to liability, causation, and calculation issues, the arbitrator rejected the entirety of SecuGen's $42,900,000 claim. *See* Partial Final Award at 24-26 ¶¶ 90-99. The respondents now contend that the arbitrator's discretionary decision not to permit the submission of a "reply" report by a damages expert justifies vacatur of the award. This claim has no basis.

### A. Background.

On May 19, 2003, the arbitrator issued a comprehensive scheduling order. *See* Weinberg Decl. Ex. L. The order provided that the parties were to submit expert statements by December 12, 2004. *See id.* at 2. The Order also provided that rebuttal reports could be submitted on December 19, 2003. *See id.* The Order did not provide for "reply" reports.

NITGen submitted compliant expert information on December 12, 2003. *See, e.g.*, *id.* Ex. F. The respondents submitted only inadequate lists of general topics on which some of their experts might opine. *See id*. Exs. M, N.

On January 5, 2004, NITGen filed a motion *in limine* to exclude the testimony of each expert designated by SecuGen due to SecuGen's failure to comply with the Scheduling Order. *See id*. Ex. O. On January 11, the arbitrator issued an order denying NITGen's motion *in limine* without prejudice. *See id.* Ex. P. Although she found that "NITGen is correct in its assertion that SecuGen failed . . . to meet the requirement of the Scheduling Order," *id.*, and that "the statements with respect to Mr. Dwyer, Mr. Kang, Mr. Pampinella and Mr. Turek are still deficient," *id.*, she gave the respondents yet another chance to cure these deficiencies. *Id.*

On January 16, 2004, more than a month late, the respondents served Mr. Dwyer's expert report. Under the Scheduling Order, NITGen had a right to serve a rebuttal report. On January 28, 2004, NITGen served the rebuttal report of damages expert Brian Napper. *See* Declaration of Erica D. Wilson [Docket No. 30] ("Wilson Decl.") Ex. I.

On January 30, 2004, SecuGen asked to submit a "reply" report by Mr. Dwyer in response to Mr. Napper's rebuttal report. The arbitrator did not allow a special exception, noting that Mr. Dwyer would not be available for cross-examination on a reply report.

### B. SecuGen Was Not Prejudiced By The Arbitrator's Refusal To Modify The Scheduling Order.

Title 9 U.S.C. § 10(a)(3) permits vacatur "where the arbitrators were guilty of misconduct in refusing . . . to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced." The arbitrator's decision not to modify the scheduling order to allow a reply report by Mr. Dwyer did not result in any prejudice to SecuGen or violation of its rights.

#### 1. SecuGen Had A Full Opportunity To Address Mr. Napper's Rebuttal Report.

SecuGen had a full and fair opportunity, during and after the hearing, to respond to the opinions expressed in Mr. Napper's report. On January 30, 2004, Mr. Napper was cross-examined at length. *See* Weinberg Decl. Ex. Q. Mr. Dwyer also testified on January 30, and he explicitly replied to the topics discussed in Mr. Napper's rebuttal report.

> Q. Now, Mr. Dwyer, if it were argued by NITGen in this case that your report should have tied specifically – a specific portion of lost profits suffered by SecuGen to each of NITGen's specific unlawful acts, statements, et cetera, what would be your response?

*See id.* Ex. R at 207. Mr. Dwyer responded at length. *See id.* Mr. Dwyer's testimony was specifically directed to an opinion offered by Mr. Napper on page 3 of his rebuttal report. Wilson Decl. Ex. I at 3 ¶ 6.

Mr. Dwyer was also asked on direct examination about Mr. Napper's rebuttal opinion that Mr. Dwyer's damages analysis improperly assumed that SecuGen would have received a significant amount of external funding.

> Q. Mr. Dwyer, there's been a suggestion by NITGen in this case that SecuGen needed to net approximately 27 million in funding in the last two months of 2002 in order to meet the projections in the November 2002 offering memorandum that you used as a starting point for your analysis. And do you agree with that contention?

Weinberg Decl. Ex. R at 211. Mr. Dwyer again responded at length. *See id.* Again, his testimony specifically addressed a point made by Mr. Napper in his rebuttal report. Wilson Decl. Ex. I at 7 ¶ 14.

Over NITGen's objection, the arbitrator even permitted SecuGen and Mr. Dwyer to change fundamentally — **during his direct examination** — the causation opinion expressed in Mr. Dwyer's report. *See* Weinberg Decl. Ex. R at 210 ("I'll allow the testimony."). The refusal of the reply report did not prejudice SecuGen.

### 2. The Respondents Do Not Explain What the "Reply" Report Would Have Said.

The respondents claim that the information that would have appeared in Mr. Dwyer's reply report "goes to the heart of the arbitrator's bases for denying SecuGen's counterclaims." Respondents' Mem. at 18.[7] A convenient claim, but one that has a major flaw. The respondents do not, and they did not before the arbitrator, make any showing of the substance

[7] In a similarly conclusory vein, the respondents say "SecuGen would have been able to effectively address and refute [Mr. Napper's] criticisms had it not been deprived of the opportunity to do so." Respondents' Mem. at 18.

of the "excluded" evidence.

A losing party may not complain about the exclusion of evidence unless it has made the "substance of the evidence" known. Fed. R. Evid. 103(a)(2); *Pau* v. *Yosemite Park & Curry Co.*, 928 F.2d 880, 887 (9th Cir. 1991) ("Normally, an offer of proof must have been made to show the substance of the would-be evidence and the purpose for which a party sought to introduce it. . . . There appears to have been no offer of proof made regarding this videotape. Thus it is unclear exactly what the videotape would have revealed and whether its exclusion was prejudicial to the Paus."). In *Pau*, the Ninth Circuit concluded that it was "unable to review" the issue presented by the exclusion of a videotape because no offer of proof was made. *Id.* The respondents fare no better. SecuGen never told the arbitrator, and the respondents do not tell this Court, what Mr. Dwyer would have said in his reply report. The respondents have presented nothing other than an assertion that the reply report would have been important.

Because the respondents have not identified the excluded evidence, they cannot satisfy the requirements applicable to their claim. Where as here, a party complains of the exclusion of evidence, vacatur is not proper unless the court finds that "the rights of [the] party have been prejudiced" by the exclusion of the evidence. 9 U.S.C. § 10(a)(3). *See Employers Ins. of Wausau* v. *National Union Fire Ins.*, 933 F.2d 1481, 1490 (9th Cir. 1991) ("[A] showing of prejudice is a prerequisite to relief based on an arbitration panel's evidentiary rulings."). With no information about the substance of the proposed reply report, and ample proof that SecuGen and Mr. Dwyer had and took advantage of the opportunity to respond to Mr. Napper's rebuttal report, the respondents cannot establish a prejudicial exclusion of evidence.

The respondents also misrepresent the "trial" dynamic surrounding SecuGen's claims. The respondents misleadingly say that the arbitrator enjoined NITGen from making "no less than nine" statements, and they falsely claim that the arbitrator found a "systematic" undermining of SecuGen's credibility. The truth is that the arbitrator rejected the bulk of the "false statement" claims, and found that any remaining statements represented "an exceedingly slim reed" to support a damage award. Partial Final Award at 26 ¶ 96. Mr. Dwyer conceded that his damage study would collapse if "massive amounts" of SecuGen's allegations were rejected by

the arbitrator. Weinberg Decl. Ex. R at 219-220. The arbitrator specifically invoked Mr. Dwyer's testimony in the award: "[I]n the words of SecuGen's expert, 'massive amounts' of allegations can not be included in SecuGen's causation analysis." Partial Final Award at 25 ¶ 90. *See also id*. at 26 ¶ 96 ("[A] large portion of SecuGen's 'false and defamatory' allegations have been rejected."). The arbitrator's factual determination that the few liability contentions not explicitly rejected were insufficient to support the damage case requires the rejection of the respondents' argument, independent of all of the other problems. *See Kyocera*, 341 F.3d at 997.

## VI. CONCLUSION.

For the reasons stated above, the respondents' motion should be denied.

Dated: September 27, 2004

Respectfully submitted,

ROBERT E. FREITAS
MELISSA A. FINOCCHIO
MICHAEL C. SPILLNER
ORRICK, HERRINGTON & SUTCLIFFE LLP

/s/ Robert E. Freitas /s/

Robert E. Freitas
Attorneys for Petitioner NITGen Co., Ltd.

I, Michael C. Spillner, am the ECF User whose identification and password are being used to file this document. Pursuant to General Order 45.X.B, I hereby attest that Robert E. Freitas, the signatory of this document, has concurred in this filing.

/s/ Michael C. Spillner /s/
Michael C. Spillner