PAMELA E. COGAN (SBN 105089)
KATHRYN C. CURRY (SBN 157099)
ROPERS, MAJESKI, KOHN & BENTLEY
1001 Marshall Street
Redwood City, CA 94063
Telephone: (650) 364-8200
Facsimile: (650) 780-1701

Attorneys for Defendant
LIBERTY LIFE ASSURANCE COMPANY OF BOSTON

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VORRIS BLANKENSHIP,<br>Plaintiff,<br>v.<br>LIBERTY LIFE ASSURANCE COMPANY OF BOSTON AS ADMINISTRATOR AND FIDUCIARY OF THE KPMG EMPLOYEE LONG-TERM DISABILITY PLAN AND THE KPMG EMPLOYEE LONG-TERM DISABILITY PLAN,<br>Defendant. | CASE NO. C 03-1132 SC<br>**LIBERTY LIFE ASSURANCE COMPANY OF BOSTON'S NOTICE OF AND MOTION TO AMEND, ALTER OR VACATE THE JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br>[Fed.R.Civ.P. 59 (a) and (e)]<br>Date: November 19, 2004<br>Time: 10:00 a.m.<br>Dept.: Courtroom 1<br>**The Honorable Samuel Conti.** |

Apple Inc. v. Psystar Corporation
Doc. 2163

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

NOTICE IS HEREBY GIVEN that on November 19, 2004 at 10:00 a.m. or as soon thereafter as the matter may be heard in Courtroom 1 of the above-entitled court located at, 450 Golden Gate Ave, San Francisco, California 94102, defendant Liberty Life Assurance Company of Boston ("Liberty") will move pursuant to Federal Rules of Civil Procedure 59(a) and (e) for an order amending, altering or vacating the court's Judgment entered on August 15, 2004.

This motion is made on the grounds the Judgment entered by the Court in favor of plaintiff was based in part on erroneous findings of fact and conclusions of law. By this motion

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City



Dockets.Justia.com

defendant seeks an order amending the court's Findings of Fact and Conclusions of Law; the Order Re: Costs, Attorneys Fees, Benefits and Interest; and the Judgment to reduce the benefits awarded by the Court by the pro rata portion of the lump sum retirement benefits plaintiff received from his KMPG Pension and Personal Account for Retirement ("PAR") plans in December 2000 and January 2001 respectively. The Court's determination that the lump sum retirement benefits did not fall within the policy's definition of "Other Income" because the money was were not "received" by plaintiff was based on erroneous findings of fact and conclusions of law that were contradicted by the evidence and statutes relied upon by the court.

This motion is based on this Notice, the attached memorandum of points and authorities, the Request for Judicial Notice, the Declaration of Kathryn C. Curry, the Declaration of Jeanne Sasek and the exhibits attached thereto.

Dated: September 28, 2004

ROPERS, MAJESKI, KOHN & BENTLEY

By: Kathryn C. Curry

PAMELA E. COGAN
KATHRYN C. CURRY
Attorneys for Defendant
LIBERTY LIFE ASSURANCE
COMPANY OF BOSTON

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

# TABLE OF CONTENTS

Page


I. INTRODUCTION ..... 3

II. REQUESTED RELIEF ..... 3

III. PROCEDURAL HISTORY AND STATEMENT OF FACTS ..... 4

IV. LEGAL ARGUMENT ..... 6

A. THE COURT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW AND THE JUDGMENT MUST BE AMENDED BECAUSE THE KPMG PENSION PLAN AND PAR PLAN DISTRIBUTIONS SHOULD HAVE BEEN DEDUCTED FROM FINAL AWARD OF BENEFITS ..... 6

B. THE COURT'S DETERMINATION THAT THE PAR AND KPMG PENSION PLAN DISTRIBUTIONS DID NOT FALL WITHIN THE DEFINITION OF "OTHER INCOME" WAS BASED ON ERRONEOUS FINDINGS OF FACT AND CONCLUSIONS OF LAW ..... 7

V. CONCLUSION ..... 11

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496 (5th Cir. 2000) ..... 6

*Divane v. Krull Electric Co.*, 194 F.3d 845 (7th Cir. 1999) ..... 6

*Innovative Home Health Care, Inc. v. P.T.O.T. Associates of Black Hills*, 141 F.3d 1284 (8th Cir. 1998) ..... 6

*Kalvinskas v. California Institute Tech.*, 96 F.3d 1305 (9th Cir. 1996) ..... 5, 11

*Sutliff, Inc. v. Donovan Cos.*, 727 F.2d 648 (7th Cir. 1984) ..... 6

*Tripati v. Henman*, 845 F.2d 205 (9th Cir. 1988) ..... 6

## FEDERAL STATUTES

Federal Rules Civil. Procedure. 59 (a) ..... 1, 6

Internal Revenue Code Section 72(t) ..... 5, 9

Internal Revenue Code Section 402(a) ..... 8, 9

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Pursuant to Rule 59(a) and (e) of the Federal Rules of Civil Procedure, defendant Liberty Life Assurance Company of Boston seeks an order amending or altering the judgment entered by the Court on August 15, 2004. By this motion defendant seeks an order amending the Court's Findings of Fact and Conclusions of Law and the Judgment to reduce the benefits awarded by the Court by the pro rata portion of the lump sum retirement benefits plaintiff received from his KMPG Pension and Personal Account of Retirement ("PAR") plans. The Court's determination that the distributions did not fall within the definition of "Other Income" set forth in the Group Long Term Disability Income policy issued by Liberty Life Assurance Company of Boston to plaintiff's employer, KPMG, was based on erroneous findings of fact and conclusions of law that are contradicted by the evidence and statutes relied upon by the court. Contrary to the court's findings, plaintiff's employment with KPMG was not terminated because Liberty Life had discontinued payment of his long-term disability income payments. Rather, plaintiff was terminated because he had not returned to work within two years and plaintiff's employment would have been terminated in October 2002 even if Liberty had continued to pay benefits. Also contrary to the court's findings, the lump sum distributions from the KPMG Pension and PAR Plans were "received" within the meaning of the Internal Revenue Code, although it is expressly exempted for income tax purposes. Accordingly, the pro rata portions of the lump distributions fall within the meaning of "Other Income" and should have been deducted from the benefits awarded by the Court.

Defendants thereby respectfully request that the court's Findings of Fact and Conclusions of Law and the Judgment be amended to include a set-off for the retirement benefits received by plaintiff under the KPMG Pension and PAR Plans.

### II. REQUESTED RELIEF

1. An order amending the Court's Findings of Fact and Conclusions of Law to find that the lump sum distributions from plaintiff's KPMG Pension and PAR Plans in December 2000 and January 2001 fall within the definition of "Other Income" within the meaning of the Liberty Life

policy.

2. An order vacating that portion of the Order Re: Costs, Attorneys Fees, Benefits and Interest awarding plaintiff $227,319.56 in benefits and $74,345.48 in interest and amending the order to award $75,393.26 in benefits and prejudgment interest.

3. An order vacating the Court's Judgment awarding $325,451.28 to plaintiff and the entry of a new and different Judgment reflecting an award of benefits in the amount of $75,393.26, plus prejudgment interest.

## III. PROCEDURAL HISTORY AND STATEMENT OF FACTS

Plaintiff filed this ERISA action against defendants seeking benefits under a Group Disability Income Policy issued by Liberty Life Assurance Company of Boston ("Liberty Life") to plaintiff's former employer, KPMG, after Liberty Life discontinued benefits on April 19, 2000. (Exhibit 1 to Request for Judicial Notice, p. 1:21-26.) The parties stipulated that the applicable standard of review to be applied by the court was *de novo* and a court trial was held on July 26, 2004. (Decl. of Kathryn Curry ¶ 4; Exhibit 1, pp. 1:26-28.)

In its trial brief, Liberty Life asserted that if the court should find in favor of plaintiff, the past due benefits owed were $75,393.26, which included deductions for a percentage of the lump sum distributions received by plaintiff from his KPMG Pension Plan and PAR Plan. (Decl. of Curry ¶ 5.) Because plaintiff did not address the issue of the retirement offsets in his trial brief, his counsel requested an opportunity to be heard on the issue during the trial, which was granted by the court. (Decl. of Curry ¶ 6.) Counsel argued that the distributions from the KPMG Pension Plan and the PAR Plan did not fall within the definition of "Other Income" under the policy because the lump sum distributions had been rolled over into an Individual Retirement Account and therefore had not been "received" by plaintiff. (Decl. of Curry ¶ 6.) After further questioning from the Court, plaintiff requested the opportunity to submit additional briefing on the issue, which was granted. (Decl. of Curry ¶ 6; Exhibit 1:26-28.) Plaintiff was given three days to submit a brief and defendant was given three days to respond. (Decl. of Curry ¶ 7.) The briefs were filed and the Court took the matter under submission. (Decl. of Curry ¶ 7.)

On August 20, 2004, the court issued its Finding of Fact and Conclusions of Law.



Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

(Exhibit 1 to Request fro Judicial Notice.) The court found that plaintiff was "totally disabled" under the terms of the policy and was therefore entitled to an award of benefits, attorneys' fees, costs and interest. (Exhibit 1, pp. 34-35.) The court found plaintiff was entitled to $6,093.82 in benefits per month from April 2000 through May 2003. (Exhibit 1, pp. 35.) The court held the lump sum distributions made to plaintiff under the KPMG Pension Plan and the KPMG Personal Account for Retirement ("PAR") in December 2000 and January 2001 respectively, did not qualify as "Other Income" under the policy because the benefits were not "received" as required under the terms of the policy. (Exhibit 1, pp. 28-34.) The determination was based on the court's factual finding that plaintiff was terminated from KPMG because Liberty had terminated long-term disability income benefits requiring plaintiff to take action with respect to the KPMG retirement plans. (Exhibit 1, pp. 29:10-12 and 33:19-21.) In support of this finding of fact, the court referenced pages VB 016 and VB 096 of the trial record. Document VB 016, however, is irrelevant because it is a document created in 2002 (after plaintiff's termination) and refers to the subsequent long-term insurer, MetLife, not Liberty Life. Document VB 096 is an internal memorandum from KPMG, which specifically states that plaintiff's employment was terminated because he had not returned to work after two years, not because Liberty Life had terminated his disability benefits. (See also, Decl. of Jeanne Sasek filed concurrently herewith.)

The court's determination was also based on the Court's finding that the transfer of the lump sum distributions to another IRA account did not constitute "receipt" of the money for tax purposes. (Exhibit 1, p. 32, lines 1-9.) The Internal Revenue Code, however, expressly acknowledges that the money is "received", but it is "exempted" for income tax purposes. The court also held plaintiff did not obtain the use and enjoyment of the funds by the transfer. (Exhibit 1, p. 32, lines 10-18.) Because plaintiff was over age 59½ at the time of the lump sum distributions, he did have unfettered use and enjoyment of the funds and was no longer subject to a 10% penalty for early withdrawal of the funds. (Internal Revenue Code § 72(t).) Finally, the court held its determination that the money was not "received" was consistent with the Ninth Circuit's opinion in *Kalvinskas v. California Inst. Tech.*, 96 F.3d 1305 (9th Cir. 1996).) (Exhibit 1, pp. 33-34.) The Ninth Circuit's holding in *Kalvinskas*, however, is factually distinguishable

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

from the present claim. In its Supplemental Trial Brief, plaintiff did not allege that his employment with KPMG was terminated because Liberty Life discontinued payment of his claim long-term benefits, nor did plaintiff rely on or cite to the Ninth Circuit's opinion in *Kalvinkas*. (Exhibit 4 to Request for Judicial Notice, Decl. of Curry ¶ 8.)

On September 15, 2004, the Court entered an Order Re: Costs, Attorneys Fees, Benefits and Interest awarding plaintiff $227,319.56 in benefits, $74,345.48 in interest, $22,800 in attorneys' fees, and $986.24 in costs, for a total award of $325,451.28. (Exhibit 2 to Request for Judicial Notice.) That day, Judgment was entered by the Court awarding plaintiff $325,451.48. (Exhibit 3 to Request for Judicial Notice.)

## IV. LEGAL ARGUMENT

### A. <u>THE COURT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW AND THE JUDGMENT MUST BE AMENDED BECAUSE THE KPMG PENSION PLAN AND PAR PLAN DISTRIBUTIONS SHOULD HAVE BEEN DEDUCTED FROM FINAL AWARD OF BENEFITS</u>

District courts have the power to alter or amend a judgment by motion under Rule 59(e). (F.R.C.P. 59(e).) The power to alter or amend includes the power to vacate or set aside the judgment. (*Sutliff, Inc. v. Donovan Cos.*, 727 F.2d 648, 652 (7th Cir. 1984).) Additionally, a motion challenging the district court's analysis of various pieces of evidence is proper under Rule 59(e). (*Tripati v. Henman,* 845 F.2d 205, 206 fn. 1 (9th Cir. 1988).) The court's commission of some manifest error of law or fact justifies the grant of a Rule 59(e) motion. (*Divane v. Krull Electric Co.*, 194 F.3d 845, 848 (7th Cir. 1999); *Innovative Home Health Care, Inc. v. P.T.O.T. Assocs. of Black Hills*, 141 F.3d 1284, 1286 (8th Cir. 1998).)

District courts do <u>not</u> have authority to prohibit a Rule 59(e) motion and must carefully weigh the merits. (*Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 502 (5th Cir. 2000).) Here, the Judgment in favor of plaintiff must be amended because the court's findings and conclusions of law with respect to the calculation of plaintiff's benefits were based on erroneous facts.

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

## B. <u>THE COURT'S DETERMINATION THAT THE PAR AND KPMG PENSION PLAN DISTRIBUTIONS DID NOT FALL WITHIN THE DEFINITION OF "OTHER INCOME" WAS BASED ON ERRONEOUS FINDINGS OF FACT AND CONCLUSIONS OF LAW</u>

The lump sum distributions from the KPMG Pension and PAR Plans fall within the definition of "Other Income" set forth in the Liberty Life policy because the money was "received" by plaintiff in December 2000 and January 2001, respectively. The court's determination to the contrary was based on erroneous findings of fact and conclusions of law. Accordingly, the judgment and order awarding benefits to plaintiff in the amount of $227,319.56 must be vacated and an amended order entered awarding benefits in the amount of $75,393.26.

Pursuant to the terms of the Liberty Life policy, monthly benefits are computed by multiplying the insured's monthly earnings ($11,166.67) by the benefit percentage in the application (66 2/3 %), **less** "Other Income benefits." Here, total monthly benefits available, without deduction for "Other Income" through age December 23, 2003 is $277,219.48. ("Gross Benefits.")

"Other Income Benefits" is expressly defined in the policy to include, social security (disability or retirement) and "retirement benefits." (VB 457 to 458, Exhibit E to Decl. of Curry.) The parties do not dispute that the social security amounts received by plaintiff through December 2003 in the amount of $51,349.22 was properly offset from the Gross Benefit. (Exhibit 4, p. 12:3-5 to Request for Judicial Notice.) The policy defines "Other income benefits" to include:

> (4) The amount of benefits the insured <u>receives</u> under the employer's retirement plan as follows:
>
> 1. (a) any disability benefits;
>    (b) <u>any retirement benefits</u>."

(Exhibit E, pp. VB 458 to Decl. of Curry, emphasis added.)

Although the parties agreed the KPMG Pension Plan and KPMG PAR Plan fall within the definition "retirement benefits," which is separately defined in the policy, the parties disagreed as to whether the lump sum distributions had been "received." (Exhibit 1, p. 30:14-15.) Contrary to the court's findings of fact and conclusions of law, the lump sum distributions from the KPMG

Pension and PAR Plans were "received" by plaintiff in December 2000 and January 2001. The fact that plaintiff had the money directly deposited into a previously existing individual retirement account does not mean that the money was not "received" by plaintiff.

In reaching its determination, the Court held that the transfer of the retirement benefits from KPMG to the Vanguard IRA did not constitute "receipt" for tax purposes under Internal Revenue Code section 402(a). (Exhibit 1, p. 32:1-9.) Section 402(a), however, actually acknowledges that the money is "received," but is exempted from income for tax purposes. Section 402 of the Internal Revenue Code states:

> "(a) Taxability of Beneficiary of Exempt Trust.
>
> Except as otherwise provided in this section, any amount actually distributed to any distributee by any employee's trust described in Section 401(a) which is exempt from tax under Section 501(a) shall be taxable to the distributee, in the taxable year of the distributee in which distributed, under Section 72 (relating to annuities).
>
> (b) Taxability of Beneficiary of Non-Exempt Trust
>
> . . .
>
> (2) Distributions
>
> The amount actually distributed or made available to any distributee by any trust described in paragraph (1) shall be taxable to the distributee, in the taxable year in which so distributed or made available, under Section 72 (relating to annuities), except that distributions of income of such trust before the annuity starting date (as defined in Section 72(c)(4)) shall be included in gross income of the employee without regard to Section 72(e)(5) (relating to amounts not received as annuities).
>
> . . .
>
> (c) Rules Applicable to Rollovers From Exempt Trusts
>
> (1) Exclusions from Income If –
>
> (A) any portion of the balance to the credit of any employee in a qualified trust is paid to the employee in an eligible rollover distribution,
>
> (B) the distributee transfers any portion of the property **<u>received</u>** in such distribution to an eligible retirement plan, and
>
> (C) in the case of a distribution of property other than money, the amount so transferred consists of the property distributed, then such distribution (to the extent so transferred) shall not be includable in

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

gross income for the taxable year in which paid.

> . . .
>
> (Title 26, Subtitle A, Subchapter 1, Subchapter D, Part 1, Part A, Section 402, emphasis added.)

Thus, pursuant to the statute, the lump sum distributions, even though they were not taxable, were in fact "received" by plaintiff.

Also contrary to the court's findings, the letter from KPMG to plaintiff setting forth the various options under the employee benefit plans does not state that the lump sum distributions would not be deemed "received" for tax purposes if the lump sum distribution was rolled over into an IRA. (Exhibit 1, p. 29:23-27.) The letter actually states that the lump sum distribution is "received," but is not taxable as income:

> "A lump sum distribution represents the current value of your lifetime annuity which is paid to you in a single sum. No further benefits are payable under the Plan.
>
> Your Lump sum distribution is taxable as ordinary income in the year <u>received</u>, and may also be subject to a 10% excise tax if you are under age 55, unless you roll it over into an IRA or other tax qualified vehicle." (VB 529, VB 530 attached as Exhibit C to Decl. of Curry.)

Similarly, the letter from KPMG dated December 6, 2000, also specifically acknowledges that the distributions were received. (Exhibit D, p. VB 558.)

The lump sum distributions were also "received" within the plain meaning of that word even though the money was directly deposited into an IRA account. The court's determination that the money was not "received" because plaintiff did not have the use or enjoyment of those funds (Exhibit 1, p. 32:10-13) is unsupported and erroneous. Because plaintiff was over age 59½ at the time of the lump sum distributions, he did have unfettered use and enjoyment of the funds, because he was no longer subject to a 10% penalty for early withdrawal of the funds. (Internal Revenue Code § 72(t).) The fact that plaintiff would be subject to income tax on any amounts withdrawn from the IRA account (amounts that may have been withdrawn but are unknown) does not mean that plaintiff did not have the use or enjoyment of that money. He was free to use the money as he wished. Indeed, there is no evidence that plaintiff did not make withdrawals from

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

the IRA account during the years in question.

The court's finding that plaintiff did not "receive" the lump sum distributions because he did not have access to the money and he was in the same position as if the money had remained in the KPMG plan is also erroneous. Plaintiff had to make the election to receive the retirement plan distributions regardless of whether he was receiving disability benefits from Liberty Life because he was terminated after he failed to return to work within two years. (Decl. of Jeanne Sasek ¶ 2-5.) Further, unlike when the money was in the KPMG Plans, plaintiff could withdraw whatever amounts he wanted from his IRA account, whenever he wanted. There were no limitations and the IRA simply allowed plaintiff the ability to defer taxes until he actually withdrew the money.

Also contrary to the Court's findings, plaintiff did receive something in the transaction. (Exhibit 1, p. 32:13-18.) Prior to his retirement and election under the Plans, plaintiff did not have immediate access to the money held in the KPMG Pension and PAR Plans. After the transaction, the money was taken out of the KPMG Plans and distributed to plaintiff in whatever form he chose and he had the right to use the money as he wished. The fact that he was able to defer income tax on the money does not mean that plaintiff did not receive anything in the transaction. Also, according to the Internal Revenue Code the money deposited from the KPMG Plans to the IRA was considered <u>received</u>, but exempt from taxation.

Finally, in reaching its decision that the lump sum distributions were not "received" by plaintiff, the court erroneously found that plaintiff was terminated by KPMG because Liberty Life had discontinued his disability benefits. (Exhibit 1, pp. 29:10-12 and 33:19-21.) In support of this finding of fact the court referenced pages VB 016 and VB 096 of the trial record. Document VB 016, however, is irrelevant because it is a page from the current Long Term Disability Plan insured by MetLife beginning in January 1, 2001. (Exhibit A to Decl. of Curry, pp. VB 1-4.) The document was generated on February 21, 2002, well after plaintiff's termination in October 2000.[1] (Exhibit A to Decl. of Curry, VB 16, VB 96.) Document VB 096 is an internal

---

[1] Liberty Life had objected to the inclusion of the Met Life documents on the ground they were irrelevant. (Decl. of Curry ¶ 9.)

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

memorandum from KPMG, which specifically states that plaintiff's employment was terminated because he had not returned to work after two years, not because Liberty Life had terminated his disability benefits. (Exhibit B Curry Decl.) Neither supports the court's finding. Indeed, KPMG had an employee practice whereby employees who are on medical leave and do not return to work within two years are terminated. (Decl. of Jeanne Sasek ¶ 3.) The termination does not affect the continuation of any group insurance benefits or entitlement to post-retirement benefits. (Decl. of Jeanne Sasek ¶ 3.) Blankenship was terminated by KPMG on September 12, 2000, after a two-year leave of absence. (Decl. of Jeanne Sasek ¶ 4.) The termination of plaintiff's employment by KPMG was unrelated to Liberty Life's discontinuation of disability income benefits and he would have been terminated after two years even if disability benefits were still being paid. (Decl. of Jeanne Sasek ¶ 5.) Thus, contrary to the court's finding, plaintiff was not forced into retirement because Liberty Life terminated his disability payments. (Exhibit 1, p. 33:19-21.)

Because plaintiff was not forced to retire due to Liberty Life's discontinuation of benefits, the court's reliance on the Ninth Circuit's opinion in *Kalvinskas v. California Inst. Tech.*, 96 F.3d 1305 (9th Cir. 1996) was misplaced. In *Kalvinskas*, the Plan took the offset for retirement benefits even though plaintiff had not retired, because he was *eligible* to retire and yet had chosen not to. The court held the eligible retirement benefits were not received and were not proper offsets under the Plan. The Plan had argued it was entitled to the offset because plaintiff could have retired at age 65 and received benefits. Here, unlike the plaintiff in *Kalvinskas*, plaintiff actually retired and elected to receive a lump sum payout from the KPMG Pension and PAR plans. Accordingly, the Ninth Circuit's holding in *Kalvinskas* does not support the court's finding that the benefits were not "received" within the meaning of the Liberty Life policy.

## V. CONCLUSION

The lump sum distributions from the KPMG Pension and PAR Plans qualified as "Other Income" within the meaning of the Liberty Life policy. Contrary to the court's findings, the distributions were "received" within the plain meaning of the term and as that term is used in the Internal Revenue Code, the KPMG Plans and the relevant case law. Therefore, the pro rata

portions of the lump sum distributions should have been deducted from the Court's award of benefits. Accordingly, defendant respectfully requests that the Judgment and the court's Findings of Fact and Conclusions of Law be amended and that the portion of the Order Re: Costs, Attorneys Fees, Benefits and Interest awarding plaintiff $227,319.56 in benefits and $74,345.48 in interest be vacated and amended to award $75,393.26 in benefits, plus prejudgment interest.

Dated: September 28, 2004

ROPERS, MAJESKI, KOHN & BENTLEY

By: Kathryn C. Curry

Pamela E. Cogan
Kathryn C. Curry
Attorneys for Defendant
LIBERTY LIFE ASSURANCE
COMPANY OF BOSTON

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City