PAMELA E. COGAN (SBN 105089)
KATHRYN C. CURRY (SBN 157099)
ROPERS, MAJESKI, KOHN & BENTLEY
1001 Marshall Street
Redwood City, CA 94063
Telephone: (650) 364-8200
Facsimile: (650) 780-1701

Attorneys for Defendant
LIBERTY LIFE ASSURANCE COMPANY OF BOSTON

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VORRIS BLANKENSHIP,<br>Plaintiff,<br>v.<br>LIBERTY LIFE ASSURANCE COMPANY OF BOSTON AS ADMINISTRATOR AND FIDUCIARY OF THE KPMG EMPLOYEE LONG-TERM DISABILITY PLAN AND THE KPMG EMPLOYEE LONG-TERM DISABILITY PLAN,<br>Defendant. | CASE NO. C 03-1132 SC<br>**DECLARATION OF KATHRYN C. CURRY IN SUPPORT OF LIBERTY LIFE ASSURANCE COMPANY OF BOSTON'S MOTION TO AMEND, ALTER OR VACATE THE JUDGMENT**<br>Date: November 19, 2004<br>Time: 10:00 a.m.<br>Dept.: Courtroom No. 1<br>**The Honorable Samuel Conti.** |

Apple Inc. v. Psystar Corporation
Doc. 2163 Att. 1

I, Kathryn C. Curry, declare:

1. I am an attorney at law licensed to practice before all courts of the State of California and the United States District Court, Northern District of California. I am a partner in the law firm of Ropers, Majeski, Kohn & Bentley, counsel of record for defendant Liberty Life Assurance Company of Boston ("Liberty Life") herein.

2. I have personal knowledge of the matters stated in this declaration, and could competently testify to same if called upon as a witness to do so.

3. Plaintiff filed this ERISA action against defendants seeking benefits under a Group Disability Income Policy issued by Liberty Life Assurance Company of Boston ("Liberty Life")



Dockets.Justia.com

to plaintiff's former employer, KPMG, after Liberty Life discontinued benefits on April 19, 2000.

4. The parties stipulated that the applicable standard of review to be applied by the court was *de novo* and a court trial was held on July 26, 2004, which I attended as counsel for Liberty Life.

5. In its trial brief, Liberty Life asserted that if the court should find in favor of plaintiff, the past due benefits owed were $75,393.26, which included deductions for a percentage of the lump sum distributions received by plaintiff from his KPMG Pension Plan and PAR Plan.

6. Because plaintiff did not address the issue of the retirement offsets in his trial brief, his counsel requested an opportunity to be heard on the issue during the trial, which was granted by the court. Counsel argued that the distributions from the KPMG Pension Plan and the PAR Plan did not fall within the definition of "Other Income" under the policy because the lump sum distributions had been rolled over into an Individual Retirement Account and therefore had not been "received" by plaintiff. After further questioning from the Court, plaintiff requested the opportunity to submit additional briefing on the issue, which was granted.

7. Plaintiff was given three days to submit a brief and defendant was given three days to respond. The briefs were filed and the Court took the matter under submission.

8. In its Supplemental Trial Brief, plaintiff did not allege that his employment with KPMG was terminated because Liberty Life discontinued payment of his claim long-term benefits. Nor did plaintiff rely on or cite to the Ninth Circuit's opinion in *Kalvinkas v. California Inst. Tech.*, 96 F.3d 1305 (9th Cir. 1996).

9. For the court trial, the parties submitted a Joint Exhibit Binder. Plaintiff Exhibit 1 consisted of numerous documents, including a letter from Scott Kalkin to KMPG dated April 5, 2002 requesting in part a copy of the current and all prior Summary Plan Descriptions (VB 0001-0002); KMPG letter dated April 24, 2002 in response (VB 0003); and the Summary Plan Description for the Long Term Disability Plan insured by MetLife beginning on January 1, 2001. (VB 004 to VB 0037.) The Summary Plan Description for the MetLife insured plan indicates that is was printed on February 21, 2002. True and correct copies of pages VB 001 to VB 007 and VB 0016 are attached hereto as Exhibit A. At the trial, I objected to the MetLife documents on

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

the ground they were irrelevant.

10. Attached hereto as Exhibit B is a true and copy of document VB 0096 submitted by plaintiff at trial.

11. Attached hereto as Exhibit C is a true and correct copy of document VB 528 to VB 532 submitted by defendant at trial.

12. Attached hereto as Exhibit D is a true and correct copy of document VB 558 submitted by defendant at trial.

13. Attached hereto as Exhibit E are true and correct copies of the relevant portions of the Group Long Term Disability Income policy issued by Liberty Life Assurance Company to KPMG submitted by defendant at trial.

Executed this 28th day of September 2004 at Redwood City, California.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Kathryn C. Curry

KATHRYN C. CURRY

# EXHIBIT A

ROBOOSTOFF & KALKIN
A PROFESSIONAL LAW CORPORATION
369 Pine Street, Suite 500, San Francisco, California 94104 415.732.0282 - phone 415.732.0287 - fax robokalk@earthlink.net

April 5, 2002 Via FedEx

Raymond C. Stengel
National Director of Compensation and Benefits
KPMG
Three Chestnut Ridge Road
Montvale, New Jersey 07645

Re: The Long Term Disability Claim of Vorris Blankenship

Dear Mr. Stengel:

This office has been retained by Mr. Vorris Blankenship regarding his claim for long term disability benefits. Mr. Blanenship's authorization in this regard is enclosed for your reference. I am writing to you to introduce myself as his attorney and to request your assistance in obtaining all documents in the Plan's and/or KPMG's possession or control relating to his claim being administered by Liberty Life Assurance Company of Boston.

As you may know, Mr. Blankenship's long term disability benefits were terminated on or about April 20, 2000. In accordance with my client's rights under 29 U.S.C. section 1001, *et seq.*, I hereby request that you produce the following documents:

1) a copy of the current, and all prior, Summary Plan Description(s) relating to the Disability Plan under which Mr. Blankenship is covered and under which this claim was presumably evaluated ("SPD");

2) copies of all documents comprising the Disability Plan ("Plan"), including, but not limited to, any contracts for disability coverage for KPMG employees, any insurance policies, and any and all amendments to those policies;

3) copies of <u>all</u> correspondence, memoranda, notes or other materials in each

**EXHIBIT A**

of your company's or the Plan's files regarding my client's disability claim;

4) any and all contracts or other documents under which my client's Long Term Disability Plan has been established, operated or administered (see, *Hughes Salaried Retirees Action Committee v. Administrator of The Hughes Non-Bargaining Retirement Plan*, 72 F.3d 686 (9th Cir. 1995), where the court defined the universe of documents subject to disclosure under ERISA § 104(b)(4) as those "which describe the terms and conditions of the Plan, as well as its administration and financial status");

5) any and all documents, or contracts between the Plan and/or KPMG and/or Liberty Mutual and/or Liberty Life Assurance Company of Boston, establishing or amending the Plan, and those establishing or setting forth any claims policies or procedures;

6) any and all documents setting forth all financial arrangements among the Plan and/or KPMG and Liberty Mutual and/or Liberty Life Assurance Company of Boston (i.e., documents relating to payment of premiums, processing and/or monitoring of Plan claims, etc.) (See, ERISA sections 104, 402, 404 and Dept. of Labor Opinion 97--11A.);

7) all documents provided to, or received from, my client at the time he enrolled in the Plan; and

8) a copy of all annual reports for the Plan filed with the IRS and the Department of Labor on IRS Form 5500 since 1997.

Please promptly send these materials to my attention at the above address. If you have any questions regarding this matter or if there is a charge for the copying of these materials, please feel free to contact me.

I thank you for taking the time to read this letter. Please feel free to call me at any time should you wish to discuss anything set forth above.

Sincerely,

Scott Kalkin

SDK:bs
enclosure

EXHIBIT A

KPMG

Three Chestnut Ridge Road
Montvale, NJ 07645-0435

Telephone 201 307 7000
Fax 201 930 8617

April 24, 2002

**Via Fed Ex**
Scott Kalkin, Esq.
Roboostoff & Kalkin
369 Pine Street, Suite 500
San Francisco, CA 94104

Re: LTD Claim of Vorris Blankenship

Dear Mr. Kalkin:

Enclosed are the documents you requested in your letter of April 5, 2002 in connection with the LTD claim of Vorris Blankenship.

The documents in my possession have been numbered to coincide with your letter. Additional information from our administrative center will be sent within two weeks.

Sincerely,

KPMG LLP

Jeanne M. Sasek

Jeanne M. Sasek
*Director*
*Group Insurance*

cc: D. Keller

Enclosure

EXHIBIT A

VB0003

KPMG LLP KPMG LLP, a U.S. limited liability partnership, is a member of KPMG International, a Swiss association.

# 1. CURRENT METLIFE 1/1/01

EXHIBIT A

# Long Term Disability



The possibility of losing your income due to disabling sickness or injury may present a serious need to replace your income for an extended period of time. The Long Term Disability Plan provides you with a percentage of salary after your Short Term Disability ends.

Plan Overview

- Coverage Begins/Ends
- Cost
- Definition of Disability
- Eligibility
- States Which Do Not Require Coverage

Benefit Amount

Claims

- Approval of Claim
- Denied Claim
- Filing a Claim

Limitations and Exclusions

- Excluded Periods
- Mental Illness/Substance Abuse: Special Rules
- Pre-Existing Conditions

Pay Issues

Payment of Benefits

- Disability Payments Begin/End
- Payments that Offset Benefits
- Examples of Offsets
- Work Incentive/Return to Work
- Job-Related Disability Payments (Worker's Compensation)
- Maximum Benefit Period - Table

Returning to Work

Social Security Disability Benefits

- Applying for Social Security Disability

Successive Disabilities

Survivor Benefits

- Filing a Claim for Survivor Benefits

Taxes

EXHIBIT A

Content Managed by the eHR Team.
All Information is for the use of KPMG people only.

VB0005

© 2002 KPMG LLP. All rights reserved.

EXHIBIT A

VB0006

# Plan Overview

KPMG offers you optional income protection coverage under the Long Term Disability Plan. The Plan replaces a portion of your basic monthly earnings if you become disabled due to illness or injury. It is mandatory that you enroll for Long Term Disability coverage. Your contributions will be deducted from your paycheck after tax.

You are eligible for LTD benefits when you have been totally disabled for 25 weeks following a 5-day waiting period. Provided you remain totally disabled, benefits will continue for the maximum benefit period.

You will receive up to **66 2/3 percent** of your basic monthly earnings at the time you became disabled. The maximum monthly benefit amount you may receive is **$15,000**.

The minimum LTD benefit is **$100** per month unless your combined income from other sources, including Return to Work Earnings, exceeds 100% of your Predisability Basic Monthly Earnings.

The Long Term Disability Plan provides for a reduction in your benefit amount if you receive, or are eligible for, income benefits from other sources. Other sources include Social Security, Workers' Compensation, Work Incentive/Return to Work earnings or other work-related benefits you may receive such as any retirement benefits (on an annuity basis) and any benefits paid under statutory plans, so that your total disability income from all sources will equal 66 2/3 percent of your compensation.

You must apply for Social Security Disability Benefits (SSDB) during your first six months of disability. If you do not apply for SSDB, an estimated SSDB amount may be deducted from your monthly LTD payments.

Your eligible survivor is also entitled to a benefit from the Plan if you die after completing the elimination period for LTD benefits.

You may be accepted into an approved program of rehabilitative employment and continue to receive LTD benefits. However, LTD benefits may be reduced by a percentage of those earnings.

**Note:**
Benefits will not be paid for a pre-existing condition under certain circumstances.

[illegible]

Cost

Eligibility

Definition of Disability

How To Enroll

When Coverage Begins and Ends

States Which Do Not Require Coverage

Applying for Social Security Disability Benefits

Content Managed by the eHR Team.
All Information is for the use of KPMG people only.
© 2002 KPMG LLP. All rights reserved.

EXHIBIT A

VB0007

# Denied Claim

Under certain circumstances, your application for Long Term Disability (LTD) benefits may be denied. The notification from MetLife will indicate the reason your claim was denied.

Generally, claims are denied because MetLife:

- has determined that you are not disabled according to the Plan, either at the onset of filing the claim or at the end of the period approved for disability; and/or
- has not received adequate information from your physician providing evidence of your continued disability.

You are expected to return to work if your disability claim is denied. If you require additional time off, discuss other options with your performance manager, such as FMLA or unpaid personal leave.

If MetLife determines that you have a partial disability and can participate in a Work Incentive/Return to Work Program, KPMG will work with you to provide any necessary reasonable accommodation.

You have the right to appeal your claim if it is denied.

Related Information

Leaves of Absence

Content Managed by the eHR Team.
All Information Is for the use of KPMG people only.
© 2002 KPMG LLP. All rights reserved.

EXHIBIT A

VB0016

# EXHIBIT B

## Sasek, Jeanne M

**From:** Sasek, Jeanne M
**Sent:** Thursday, November 09, 2000 11:34 AM
**To:** Flynn, Timothy P
**Cc:** Mcgill, Robert L (US/HR); Hillman, Barbara ; Maiorano, Joseph; Ivey, Claire; Clark, James D
**Subject:** Vorris Blankenship

Tim -

In reference to the letter sent to Mr. Butler by Mrs. Blankenship, here are the facts surrounding Mr. Blankenship's situation:

He retired as a partner 5/91and immediately became an employee.

He went on STD in 2/98 due to prostate cancer/treatments, and remained on LTD until 4/19/00. Liberty Mutual terminated his benefits at that time due to lack of objective medical evidence substantiating continued disability. (Prior to 4/19, Mr. Blankenship appealed Liberty's decision. Liberty had another Liberty doctor peer review their decision, an independent physician review of the case as well, and conversations with Mr Blankenship's doctors. They maintained their decision based on the fact that although he was using medicines to treat his symptoms, he hadn't been seen by his doctors for over a year.)

During the two years Mr. Blankenship was on disability, he continued his benefits through HRSC. His leave of absence status was terminated 9/12/00, after the maximum two year leave of absence period was reached. Prior to the actual termination in P/S, James Clark in HRSC had a conversation with him to advise him of this and to facilitate continuation of his benefits as a retiree. James sent him a memo about this on 9/24/00. He then sent him a retirement package on 10/12/00. (He is entitled to retired partner life insurance, BPA, and medical/dental coverage. He elected to continue life, BPA and dental. He had been on an HMO and declined to elect an Aetna plan as a retiree.) I have copies of the two documents that were sent.

When the termination/retirement date was entered in P/S, payout of his personal days occurred. This was not accompanied by any letter or explanation other than that the payment amounts appeared on the personal days line on the paystub. This must be the final paycheck Mrs. Blankenship refers to in her letter.

ıe termination of his employment prior to his reaching age 65 in 12/00 did not affect the continuation of his group insurance benefits nor any retirement benefits he is entitled to. (He would only have accrued service credit for retirement benefits through his disability period, i.e., 4/19/00, not 12/00 when he reaches 65.)

Please let me know if you would like any other information or if you want me to prepare anything.

Jeanne

EXHIBIT B

VB0096

# EXHIBIT C

KPMG

Three Chestnut Ridge Road
Montvale, NJ 07645-0435

Telephone 201 307 7000
Fax 201 930 8617

Mr. Vorris Blankenship
3120 Texas Hill Road
Placerville, CA 95667

October 31, 2000

RE: KPMG LLP Retirement Benefits

Dear Mr. Blankenship:

You are eligible to receive retirement benefits under the following plans based on your retirement date of September 13, 2000:

I) KPMG Pension Plan
II) KPMG Personal Account for Retirement/PAR
III) KPMG Money Purchase Plan (MPP)
IV) KPMG 401(k) Plan

This letter describes the plans listed above and outlines your payment options under each plan. Other sections of the package include the payment forms applicable to each plan. At the end of the letter you will find a summary of:

1) Your benefit amounts under all plans
2) A list of all the forms required to start your pension payments, and

If you currently have medical and/or dental coverage, you will receive information on post-retirement medical/dental continuation from HRSC in Dallas within the next few weeks. If you have any questions regarding your coverage please call 214/200-7763.

## I. KPMG PENSION PLAN

Your normal benefit under the Pension Plan is a monthly annuity commencing at age 62. If you are under age 62, the normal retirement date, your benefit has been discounted based on your early retirement date. In lieu of an annuity, you may elect to receive your benefit in the form of a lump sum.

1. Annuity

Your annuity is paid monthly over your lifetime under one of the options shown below:

- Straight Life Annuity - No Certain Period
  A monthly income for your lifetime. Payments cease upon death.
- Straight Life Annuity - 5 Years Certain
  A reduced monthly income for your lifetime and in the event of your death prior to receiving 60 monthly payments, payments continue to your designated beneficiary until a total of 60 monthly payments have been made.

EXIBIT C

- <u>50% Contingent Annuitant</u> *
  A reduced monthly income for your lifetime and upon your death, your eligible beneficiary receives 50% of this monthly income for the remainder of his/her lifetime.
- <u>100% Contingent Annuitant</u> *
  A reduced monthly income for your lifetime and upon your death, your eligible beneficiary receives 100% of this monthly income for the remainder of his/her lifetime.

*Age of beneficiary other than spouse, restricted to 17 year difference. Birth date must be provided to calculate benefit. For married members, amounts on election form reflect spouse's birth date.

2. <u>Lump Sum</u>
A lump sum distribution represents the current value of your lifetime annuity which is paid to you in a single sum. No further benefits are payable under the Plan.

Your Lump sum distribution is taxable as ordinary income in the year received, and may also be subject to a 10% excise tax if you are under age 55, unless you roll it over into an IRA or other tax qualified vehicle. You may elect to roll over your lump sum distribution into your KPMG 401(k) account if the value of your 401(k) account is $5,000.00 or more.

If you will be rolling your lump sum over into an IRA or your current employer's qualified plan, please give us direct rollover information as indicated on the enclosed election form, under Option "B". A lump sum distribution that is not "rolled over" will be made payable to you less an automatic 20% Federal Tax withholding.

The "Special Tax Notice" enclosed provides important information on the tax implications inherent in your lump sum distribution. Please review the information carefully with your tax advisor before making any decision on the distribution of your account.

The election form enclosed shows estimated benefit amounts. Please complete the form and return it to my attention. A finalized statement will be provided and benefits will be paid approximately six weeks after the end of the month in which you retire.

**PLEASE NOTE: if you are married and elect a form of payment other than the 50% or 100% Joint and Survivor options, your spouse must sign the Spousal Consent Section on the enclosed Spousal Consent form in the presence of a Notary in compliance with I.R.S. Code Section 417(a).**

## II. KPMG PERSONAL ACCOUNT FOR RETIREMENT/PAR

The current value of your PAR account is $830,619.22.

The normal form of benefit under the Plan is an insured monthly annuity payable under the 50% Joint and Survivor form for married members and the Straight Life form for unmarried members. You may elect to receive your benefit under the normal form of payment noted above or you may elect to receive payment under one of the other optional forms shown on the enclosed PAR election form and described in more detail below.

After reviewing the options below please complete the enclose *PAR Election Form* and return it to the Pension Dept. as soon as possible.

VB-00529

EXHIBIT C

1. Insured Annuity
The insured annuity provides monthly benefits for your lifetime which are guaranteed by Prudential Life Insurance Company. KPMG will make the purchase on your behalf. Your annuity payments are taxed as received. A brief description of the various forms of monthly payment is shown below:

- Straight Life Annuity - No Certain Period
  A monthly income for your lifetime. Payments cease upon death.
- Straight Life Annuity - 5 Years Certain
  A reduced monthly income for your lifetime and in the event of your death prior to receiving 60 monthly payments, payments continue to your designated beneficiary until a total of 60 monthly payments have been made.
- 50% Contingent Annuitant *
  A reduced monthly income for your lifetime and upon your death, your eligible beneficiary receives 50% of this monthly income for the remainder of his/her lifetime.
- 100% Contingent Annuitant *
  A reduced monthly income for your lifetime and upon your death, your eligible beneficiary receives 100% of this monthly income for the remainder of his/her lifetime.

2. Lump Sum
A lump sum distribution will be made based on the value of your account as of the end of the month in which you retire, or as of the end of the month in which we receive your form, if later.

Your Lump sum distribution is taxable as ordinary income in the year received, and may also be subject to a 10% excise tax if you are under age 55, unless you roll it over into an IRA or other tax qualified vehicle. You may elect to roll over your PAR distribution into your KPMG 401(k) account if the value of your 401(k) account is $5,000.00 or more.

If you will be rolling your PAR over into an IRA or your current employer's qualified plan, please give us direct rollover information as indicated on your *Par Election Form*. A lump sum distribution that is not "rolled over" will be made payable to you less an automatic 20% Federal Tax withholding.

3. Payment of Account Balance in Monthly Installments
You may elect you have the balance in your PAR account paid out over a specified period of time, either 5 or 10 years. At the end of the payout period you will have a zero account balance.

4. Specific Payment Amount in Monthly Installments
You may designate a specific amount to be paid to you from your account each month.

5. Deferred Distribution
You may defer the payment of your account up to the April 1st following or coincident with the date you attain age 70 ½. Please note, that during the deferral period your Par account remains invested in the PAR Trust Fund which is subject to any risk's associated with current trends and fluctuations in the market.

NOTE: Federal legislation requires that if you are married and elect any payment form other than a joint and survivor insured annuity, your spouse must consent to that election in the presence of a Notary. The Spousal Consent section at the bottom of the PAR Election Form should be completed for this purpose.



EXHIBIT C

## III. MONEY PURCHASE PLAN

The normal form of benefit under the Plan is an insured monthly annuity payable under the 50% Joint and Survivor form for married members and the Straight Life form for unmarried members. You may elect to receive your benefit under the normal form of payment noted above or you may elect to receive payment under one of the other optional forms shown described in more detail below.

1. Insured Annuity
The insured annuity provides monthly benefits for your lifetime which are guaranteed by Prudential Life Insurance Company. KPMG will make the purchase on your behalf. Your annuity payments are taxed as received. A brief description of the various forms of monthly payment is shown below:

- Straight Life Annuity - No Certain Period
  A monthly income for your lifetime. Payments cease upon death.
- Straight Life Annuity - 5 Years Certain
  A reduced monthly income for your lifetime and in the event of your death prior to receiving 60 monthly payments, payments continue to your designated beneficiary until a total of 60 monthly payments have been made.
- 50% Contingent Annuitant *
  A reduced monthly income for your lifetime and upon your death, your eligible beneficiary receives 50% of this monthly income for the remainder of his/her lifetime.
- 100% Contingent Annuitant *
  A reduced monthly income for your lifetime and upon your death, your eligible beneficiary receives 100% of this monthly income for the remainder of his/her lifetime.

2. Lump Sum Distribution
A lump sum distribution will be made based on the value of your account as of the end of the month in which you retire, or as of the end of the month in which we receive your form, if later.

Your lump sum distribution is taxable as ordinary income in the year received, and may also be subject to a 10% excise tax if you are under age 55, unless you roll it over into an IRA or other tax qualified vehicle. You may elect to roll over your Money Purchase Plan distribution into your KPMG LLP 401(k) account if the value of your 401(k) account is $3,500.00 or more.

3. Payment of Account Balance in Monthly Installments Over Specified Time Period
You may elect to have the balance in your account paid out over a specified period of time, either 5 or 10 years. At the end of the payout period you will have a zero account balance.

4. Specific Payment Amount in Monthly Installments
You may designate a specific amount to be paid to you from your account each month. You may stop or start payment at your discretion. NOTE: If you are under age 55 when you retire, you must receive monthly payments for a minimum of 5 years in order to avoid the 10% excise tax on premature distributions. (As a guideline, the minimum annual amount should be 10% of your account balance.)

5. Deferred Distribution
You may defer the payment of your account up to the April 1st following or coincident with the date you attain age 70 1/2.



EXHIBIT C

You may request a distribution any time following your retirement date by calling the Merrill Lynch Participant Service Center at 1-888-401-KPMG. The taxable portion of your distribution is subject to Federal income tax and may also be subject to a 10% excise tax if you are under age 55, unless you roll over the taxable distribution into an IRA or another qualified plan.

## IV. 401(k) PLAN

In addition to your retirement benefits described above, you are also entitled to benefits under the KPMG 401(k)/Thrift Plan.

Your 401(k) contributions are the before-tax income deferrals you elected under the terms of the 401(k) Plan; while your Thrift contributions(if any) are your after-tax savings. Account statements for all of these contributions are forwarded to you by Merrill Lynch on a quarterly basis.

If your total account balance under the 401(k)/Thrift Plan is greater than $5,000.00 you have the option of leaving your savings in the Plan. At some later date, you may elect to have your balance paid to you under any of the available options that include: total or partial lump sum in cash or as a rollover; payout over 10, 15 or 20 years, or a discretionary draw down. The distribution of your balance must, however, commence no later than the April 1 coincident with or next following the date you reach age 70 ½.

You may request a distribution at any time following your retirement date by calling the Merrill Lynch Participant Service Center at 1-888-401-KPMG. The taxable portion of your distribution will be subject to Federal income tax and may also be subject to a 10% excise tax if you are under age 55, unless you roll over the taxable distribution into an IRA or another qualified plan.

SUMMARY OF FORMS AND OTHER DOCUMENTS TO BE COMPLETED AND RETURNED TO: PENSION DEPT (3-2), KPMG LLP, 3 CHESTNUT RIDGE ROAD, MONTVALE, NJ 07645

Required Documents:

KPMG PAR Forms

1. PAR Election Form

Additional Required Documents:

1 Copy of your birth certificate or other proof of age (i.e. copy of current passport baptismal certificate, etc.)

2 Copy of your spouse's birth certificate or other proof of age as noted above if you elect a joint and survivor annuity.

3 Copy of your marriage license if you elect an insured annuity.

Additional Document – FYI:

Important Tax Information

Please give me a call at (201) 307-7155 or Evelyn Massar at (201) 307-7453 if you have any questions.

Very truly yours,
KPMG LLP

Kathy Mellish
Supervisor, Retirement and Savings Plans

Enclosure/Ref.



EXHIBIT C

# EXHIBIT D

KPMG

Three Chestnut Ridge Road
Montvale, NJ 07645-0435

Telephone 201 307 7000
Fax 201 930 8617

December 6, 2000

Vorris Blankenship
3120 Texas Hill Road
Placerville, CA 95667

**Re: KPMG LLP Defined Benefit Plans**

Dear Vorris:

This will confirm your retirement benefit election under the KPMG Pension Plan (formerly known as the Pension Plan for Client Service Support Employees) and the PAR(Personal Account for Retirement).

*KPMG Pension Plan*
As elected, you received a lump sum distribution of $29,291.93 which will be directly rolled over to an IRA account with Vanguard Fiduciary Trust Company, FBO Vorris Blankenship, Acct # 9935444787, Po Box 1110, Valley Forge, PA, 19482-1110.

The KPMG Pension Plan is qualified under IRC Section 401(a) and this distribution consists of 100% employer contributions.

*KPMG Personal Account for Retirement (PAR)*
Also as elected, a lump sum distribution of you account balance using the November 30, 2000 unit value(available in approximately 3-4 weeks) will be rolled over to an IRA account with Vanguard Fiduciary Trust Company, FBO Vorris Blankenship, Acct # 9935444787.

Please call me if you have any questions at 201/505-6339.

Very truly yours,

KPMG LLP

Amy Weisel
*Human Resource Specialist, Retirement and Savings Plans*

KPMG LLP KPMG LLP a U.S. limited liability partnership is a member of KPMG International, a Swiss association.

VB-00558

EXHIBIT D

# EXHIBIT E

PREDISABILITY INCOME - See Basic Monthly Earnings definition.

RETIREMENT BENEFIT, when used with the term retirement plan, means money which:

(1) is payable under a retirement plan either in a lump sum or in the form of periodic payments;

(2) does not represent contributions made by an employee (payments which represent employee contributions are deemed to be received over the employee's expected remaining life regardless of when such payments are actually received); and

(3) is payable upon:

(a) early or normal retirement; or
(b) disability if the payment does reduce the amount of money which would have been paid at the normal retirement age under the plan if the disability had not occurred.

RETIREMENT PLAN means a plan which provides retirement benefits to employees and which is not funded wholly by employee contributions. The term shall not include: a 401(K), profit-sharing plan, thrift plan, individual retirement account (IRA), tax sheltered annuity (TSA), stock ownership plan, or a non-qualified plan of deferred compensation.

EMPLOYER'S RETIREMENT PLAN is deemed to include any retirement plan:

(1) which is part of any federal, state, county, municipal or association retirement system; and

(2) for which the employee is eligible as a result of employment with the employer.

TOTAL COVERED PAYROLL is the total amount of basic monthly earnings for which all employees are insured under this policy.

WAITING PERIOD as shown in the application means the continuous length of time an employee must serve in an eligible class to reach his eligibility date.

VB0452



EXHIBIT E

TOTAL DISABILITY MONTHLY BENEFIT

To figure the amount of monthly benefit:

(1) Multiply the insured's basic monthly earnings by the benefit percentage shown in the application.

(2) Take the lesser of:

 (a) the amount determined in step (1) above; or
 (b) the maximum monthly benefit shown in the application; and

(3) Deduct other income benefits, shown below, from this amount.

The total disability benefit payable will never be less than the minimum monthly benefit shown in the application.

OTHER INCOME BENEFITS

Other income benefits mean those benefits shown below:

(1) The amount for which the insured is eligible under:

 (a) Workers' or Workmen's Compensation Law;
 (b) occupational disease law; or
 (c) any other act or law of like intent.

(2) The amount of any disability income benefits for which the insured is eligible under any compulsory benefit act or law.

(3) The amount of any disability income benefits for which the insured is eligible under:

 (a) any other group insurance plan of the employer;
 (b) any governmental retirement system as a result of his job with the employer.

VB0457



EXHIBIT E

(4) The amount of benefits the insured receives under the employer's retirement plan as follows:

(a) any disability benefits;
(b) any retirement benefits.

(5) The amount of disability or retirement benefits under the United States Social Security Act, The Canada Pension Plan, or the Quebec Pension Plan, or any similar plan or act, as follows:

(a) disability or unreduced retirement benefits for which:

- the insured is eligible; and
- his spouse, child or children are eligible because of his disability; or
- his spouse, child or children are eligible because of his eligibility for unreduced retirement benefits; or

(b) reduced retirement benefits received by:

- the insured; and
- his spouse, child or children because of his receipt of the reduced retirement benefits.

(6) The amount of earnings the insured receives from partial disability employment.

These other income benefits except retirement benefits, must be payable as a result of the same disability for which we pay a benefit.

COST OF LIVING FREEZE

After the first deduction for each of the other income benefits, the monthly benefit will not be further reduced due to any cost of living increases payable under these other income benefits.

LUMP SUM PAYMENTS

Other income benefits which are paid in a lump sum will be prorated on a monthly basis over the time period for which the sum is given. If no time period is stated, the sum will be prorated on a monthly basis over the insured's expected lifetime as determined by the Company.