BRAMSON, PLUTZIK, MAHLER & BIRKHAEUSER, LLP
Alan R. Plutzik, Esq. (State Bar No. 077785)
Daniel E. Birkhaeuser, Esq. (State Bar No. 136646)
Jennifer S. Rosenberg, Esq. (State Bar No. 121023)
L. Timothy Fisher, Esq. (State Bar No. 191626)
2125 Oak Grove Road, Suite 120
Walnut Creek, California 94598
Telephone: (925) 945-0200
Facsimile: (925) 945-8792

BEATIE AND OSBORN LLP
Russel H. Beatie, Esq. (Admitted pro hac vice)
Philip J. Miller, Esq. (Admitted pro hac vice)
Curt D. Marshall, Esq. (Admitted pro hac vice)
521 Fifth Avenue, Suite 3400
New York, New York 10175
Telephone: (212) 888-9000
Facsimile: (212) 888-9664

Of Counsel: John E. Lynch (Admitted pro hac vice)

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRIOT SCIENTIFIC CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>CHARLES H. MOORE, TECHNOLOGY PROPERTIES LIMITED, and DANIEL E. LECKRONE,<br><br>Defendants. | Civil Action No. C 04 0618 JF (HRL)<br><br>**PATRIOT'S ANSWERING MEMORANDUM ON DEFENDANTS' MOTION TO AMEND ANSWER, REPLY MEMORANDUM ON ITS MOTION TO SEVER, ETC., AND SUGGESTED AGENDA FOR THE CASE MANAGEMENT CONFERENCE** |

Plaintiff Patriot Scientific Corporation ("Patriot") submits this memorandum in response to defendants' motion to amend their answer to assert a claim for declaratory judgment on the issue of inventorship and ownership for all seven patents involved in this litigation; in further support of its motion to sever, etc.; and for the Case Management Conference. Plaintiff Patriot is

somewhat baffled about the nature of the document it should submit because, when counsel for defendants called to inquire about their motion, adjournments, consolidation of Patriot's pending motion with their proposed motion, and consent to their prayer for relief, we cleared the issue with our client and gave our consent to the amended pleading (subject only to seeing that it was as represented to us). Nevertheless, they made the motion. As usual, however, the motion papers contain a plethora of blatant misstatements of both fact and law. No doubt, to the (hopefully) mild annoyance of the Court, we respond to some of these assertions and, once more, give our consent to the motion, along with recommendations for the correct manner to implement their request for relief.

Misstatements of Fact and/or Law. In their papers, defendants make a number of statements they know to be inaccurate or false (unless they are not reading any of the documents filed with the Court or any relevant cases). For example:

(a) Defendants assert their estoppel and laches defenses and describe the facts supporting those defenses on every possible occasion. Both issues are irrelevant to the request for permission to amend their answer. Documents showing their lack of substance are described, infra.

(b) Defendants assert that Patriot's claim of sole inventorship of the four patents ('336, '148, '749, and '890) was not made until fifteen years after

the original patent application. However, the statute which provides for the correction of inventorship of an issued patent allows the action to be brought at any time and does not require diligence for bringing an action under the statute. 35 U.S.C. § 256; Stark v. Advanced Magnetics, Inc., 29 F.3d 1570, 1574-78 (Fed. Cir. 1994).

(c) Also in support of the irrelevant issue of estoppel and laches, defendants' memorandum and the Leckrone Declaration assert that "documents or other records have been lost or destroyed." (Defs.' Opp. at 9, lines 17-20; Declaration of Daniel E. Leckrone in Opposition to Plaintiff's Motion to Sever, etc., dated October 8, 2004 ("Leckrone Decl."), ¶¶ 8-9.) As usual on assertions subject to severe doubt, defendants make no statement based on personal knowledge about the records of defendant Moore or about the failure to recover the contents of Moore's "magnetic tapes constituting his work product designing the Sh-Boom microprocessor." (Leckrone Decl., ¶ 9.) On the basis of our investigation and discovery, we believe that Leckrone may have intentionally destroyed his documents and encouraged Moore to do the same.

(d) Defendants assert that "two nearly identical . . .

trials . . . may result in inconsistent findings." (Defendants' Opposition to Plaintiff's Motion to Sever, etc. ("Defs.' Opp.") at 8, lines 17-18.) Given the fact that the Court need find no more than inventorship for each of several patents and that the technological facts for each patented device would be different, the findings could not possibly be inconsistent (or even very related).

(e) Defendants complain that, if Patriot's motion is granted, they will need to pick "two separate juries." (Defs.' Opp. at 9, lines 5-7.) One of the worst! A question of inventorship is an issue of law; is for the Court; and may not be tried to a jury. Ethicon, Inc. v. United States Surgical Corp., 135 F.3d 1456, 1460 (Fed. Cir. 1998); Sewall v. Walters, 21 F.3d 411, 415 (Fed. Cir. 1994).

(f) Defendants claim that Patriot can "expedite [the] infringement proceedings" if it will "dismiss the present litigation with prejudice." (Defs.' Opp. at 10, lines 4-5.) Another of the worst! Dismissal of this case will not allow the infringement proceedings to go forward because the defendants in the infringement proceedings will continue to claim, as they did earlier, that indispensable parties (the owners of interests in the patents,

TPL and/or Moore) have not joined in the case. Ethicon, 135 F.3d at 1468. The Federal Circuit has held that an action for infringement must be dismissed if all owners of the patent have not joined in it. Id.

(g) Defendants claim that "the drawings and the specifications (excluding the abstract and claims) are identical in all four disputed patents." The complete set of "drawings" and "specifications" from the original 1989 filing were repeated by patent counsel in the divisional patent applications. However, the patented inventions themselves are very different, the drawing for each device is radically different from the drawing for each other device covered by an application; and the specifications governing that device are, although taken from the large section marked "specifications," different for each patent. For the "four patents in dispute," they are as follows: U.S. Patent No. 5,809,336, "High Performance Microprocessor Having Variable Speed System Clock," col. 3, lines 26-35, col. 5, lines 10-16 and col. 10, line 18, to col. 32, line 10 (Exhibit A to the accompanying Affidavit of Russel H. Beatie, dated

October 15, 2004)[1]; see especially col. 16, line 43 to col. 17, line 37 (Id.); U.S. Patent No. 6,598,148, "High Performance Microprocessor Having Variable Speed System Clock," col. 1, line 50 to col. 2, line 21, col. 2, lines 41-43, col. 2, lines 61-67, col. 7, lines 17-44 and col. 8, line 1, to col. 31, line 3 (Ex. B), see especially col. 14, line 14 to col. 15, line 33 (Id.); U.S. Patent No. 5,440,749, "High Performance, Low Cost Microprocessor Architecture," col. 2, lines 13-26, col. 4, lines 48-55, col. 5, lines 15-16, col. 5, lines 24-25, col. 7, line 12 to col. 8, line 16 and col. 10, line 44, to col. 35, line 13 (Ex. C); and U.S. Patent No. 5,530,890, "High Performance, Low Cost Microprocessor," col. 4, lines 53-54, col. 4, lines 61-63, col. 6, lines 17-46, col. 8, lines 1-24, col. 8, line 64 to col. 9, line 32 and col. 10, line 18, to col. 32, line 42 (Ex. D).

(h) Presumably for pejorative value, defendants have attached under seal a copy of an agreement between Patriot and Russell H. Fish, III. With the exception of a few changes to address the unique circumstances of the individual, Patriot simultaneously made the identical offer to Moore.

---

[1] All subsequent references to "Ex." are references to exhibits to the accompanying Affidavit of Russel H. Beatie, dated October 15, 2004.

(Letter, dated July 15, 2004, from Beatie to Heptig and Saunders (Ex. E); letter, dated July 21, 2004, from Marshall to Heptig and Saunders (Ex. F); letter, dated July 22, 2004, from Marshall to Heptig and Saunders (Ex. G).)

(i) Defendants claim that Moore designed the original 32-bit microprocessor. (Defs.' Opp. at 3, lines 20-21.) The segment about Sh-Boom on Moore's website stated that "Russell Fish suggested a 32-bit chip with 8-bit instructions. . . . It is now owned and was recently marketed by Patriot Scientific." Where is the "repeated" declaration of Moore's inventorship and ownership? (Charles H. Moore, website and resume, dated July 6, 2001 (Ex. H at Patriot 031946));

(j) Defendants' counsel and their clients have repeatedly asserted that Patriot has no documentary evidence or corroborating evidence of inventorship or ownership:

(i) "it appears that Patriot will be unable to produce corroboration." (Defendants' Case Management Statement and Proposed Order at 9-10 (Ex. I).); and

(ii) "Patriot has admitted that it has no documents which would support such a contention [that Moore made no contribution to the conception of any claim of the '336 Patent] and has consistently relied solely upon two snippets of testimony from Mr. Fish during the Patriot/Fish litigation over Mr.

> Fish's royalty rights." (Letter, dated July 22, 2004, from Cook to Mag. J. Lloyd at 3 (Ex. J); Declaration of Roger L. Cook Regarding Discovery Conference Topics, dated August 3, 2004, at 5 (Ex. K).)

The following documents, which include public statements by Moore about Fish's conception of the variable high speed ring oscillator clock, the "Fish Clock" (the '336 Patent and the derivative '148 Patent), show Fish's inventorship and, therefore, Patriot's sole ownership. The documents also show that the affirmative defenses of laches and estoppel have no merit:

(a) Higgins wrote to them about individual devices within the Sh-Boom microprocessor before he filed the original application in August of 1989, but he noted that the PTO would probably divide the features into several applications. (Letter, dated April 11, 1989, from Willis E. Higgins, Esq., patent counsel for Fish and Moore, to Leckrone (Ex. L at 2));

(b) defendant Leckrone, acting on behalf of defendant Moore, asked Higgins "if it was possible to separate Chuck's inventive contributions from [Fish's]. Based on my belief that [Fish's] primary contribution was the clock circuit, I told [Leckrone] that this could be done by canceling the claims to the clock circuit and any other contribution of [Fish's] from the application. I later found out from Chuck that [Fish's] contributions were much more extensive than the clock circuit, and then advised both of them that such a separation would not be feasible"). (Letter, dated October 1, 1990, from Higgins to Fish (Ex. M at 1));

(c) in his report on the division order, Higgins said, "Russel [sic] Fish will also provide us with his identification of inventorship for the 10 features. By copy of this letter I am asking Chuck Moore to do the same. Russel [sic] believes that there would not be any significant disagreement in those lists." (Letter, dated September 11, 1992, from

Higgins to Falk, copies to Fish and Moore (Ex. N at 1-2));

(d) "We may have to change inventorship when we file divisional applications on the other groups, many of which are not tied together with dependent claims in the same manner as Group II." (Letter, dated September 30, 1992, from Higgins to Falk, copies to Fish and Moore (Ex. O));

(e) Higgins referred to the "microprocessor incorporating a variable speed ring oscillator clock (the so-called 'Fish Clock')." (Letter, dated January 3, 1997, from Higgins to Douglass (Ex. P at 2));

(f) Fish made a written statement on inventorship for each of the ten inventions, including the "Fish Clock, device number five," and referred Higgins to Moore for additional information. (Memorandum, dated September 12, 1992, from Fish to Higgins (Ex. Q at 1));

(g) "Chuck [Moore] called it the Fish clock for some reason. I was very flattered." (Deposition of Fish on September 20 and 21, 1999, at 137, lines 5-6 (Ex. R));

(h) "Russell Fish devised the concept of ShBoom and organized the consortium that supports it."[2] (Transcript of a speech by Moore entitled "Sh-Boom on ShBoom: A Microcosm of Software and Hardware Tools," dated June 1990, at 18 (Ex. S));

(i) "Central to the custom implementation is a high-speed on-chip clock. This is a simple ring-oscillator suggested by Russell Fish." (Computer Cowboys [Moore's DBA name] Proprietary sheet on "Timing" (Ex. T at 2));

(j) reference to the "Fish Clock;" ("State of the Prior Art, ShBoom Microprocessor," at 1 attached to fax cover sheet by Fish to Higgins, dated June 10, 1992 (Ex. U));

(k) "You need a second cycle to fix up the stack after the operation is completed. To eliminate that it makes sense to move the address out of the way to a special place out of the way and then you clear up the stack to receive the data. Now this really

---

[2] While not bearing directly on the '336 Patent, this constitutes an admission that Fish made individual contributions.

wasn't my idea. It was Russell Fish's idea in ShBoom." ("Dispelling the User Illusion," transcript of a speech by Charles Moore on May 22, 1999, to the Silicon Valley Chapter of the Forth Interest Group (Ex. V at 5)); and

(l) Moore's website on Sh-Boom states that "Russell Fish suggested a 32-bit chip with 8-bit instructions. . . . It is now owned and was recently marketed by Patriot Scientific." (Charles H. Moore, website and resume, dated July 6, 2001 Ex. H.)

Now, belatedly, to the point: we consent to the motion to amend; we consent to concentration of the case on four patents ('336, '148, '749, and '890); given the fact that defendants wish to have pending claims for relief for patents that Patriot would sever and stay, we suggest the following amended pleadings:

(a) an amended complaint by Patriot seeking declaratory judgment, etc., on inventorship for the '336 and '148 Patents; and

(b) an amended answer by defendants asserting a counterclaim for declaratory judgment, etc., on behalf of defendants on the issue of inventorship for the '749 and '890 Patents.

The triability, including discovery and a trial date, of these issues we address in a later segment of this memorandum.

**PATRIOT'S REPLY MEMORANDUM ON**
**<u>ITS MOTION TO SEVER AND STAY, ETC.</u>**

Because Patriot consents to defendants' motion to amend and their redefinition of the concentration of the case to four

patents, rather than seven or two, Patriot's motion appears to be moot; and no reply is necessary.

**MATTERS FOR CONSIDERATION AT**
**THE CASE MANAGEMENT CONFERENCE**

Defendants have insisted that a joint case management submission should be made to the Court, but the rule requires a joint submission only for the initial case management conference. That conference has already occurred. Rather than bury our points for the case management conference in a document that will undoubtedly contain the usual lengthy factual recitations and prejudicial assertions characteristic of defendants' papers, Patriot prefers its own statement. The Court should consider the following issues:

(a) Current State of Discovery. A great mass of documentary material has been exchanged by the parties, including documents from Russell H. Fish, III, one of the inventors; defendant Charles H. Moore, the other inventor; defendant Daniel E. Leckrone; plaintiff Patriot Scientific Corporation; and patent law firm Knobbe Martens. Patriot is attempting to obtain documents from other sources; and when those are available, those relevant to the case will be given to counsel for the defendants. One full day of deposition testimony has been taken from defendant Leckrone (given the extraordinarily evasive nature of Leckrone's testimony, Patriot estimates that two more full days would probably be necessary to complete the testimony); and Russell

H. Fish, III (given Fish's contributions to some or all of the ten devices designated by the patent examiner in the division order and to the subsequent seven patents issued by the patent office, we estimate that inventor Fish's testimony will probably require another two days for completion by counsel for the defendants and "cross-examination" by counsel for Patriot).

(b) Further Discovery. Plaintiff Patriot is considering the deposition of several non-parties, but has not made any final decision. These will be scheduled in the usual manner when decisions on going forward and timing have been made by Patriot.

(c) End of Discovery. Patriot believes that all discovery, including any experts and any disputed matters -- so far, none have arisen -- can be completed comfortably by January 31, 2005.

(d) Dispositive Motions. Given the limited nature of the issues in this case and the current state of the evidence according to the documents and testimony in hand to this point, Patriot does not believe that dispositive motions would serve any useful purpose except to establish the obvious fact that triable issues exist. At the present time,

Patriot does not contemplate any dispositive motions.

(e) Trial Date and Related Submissions. By clear and indisputable case law, inventorship is an issue for the Court and cannot properly be tried to a jury. Patriot agrees with the urgent statements by defendants in their motion papers that open issues of inventorship should be tried as soon as possible, particularly in light of the fact that both plaintiff and defendants claim extreme prejudice by the unresolved nature of the inventorship issues. Patriot requests that the Court assign this case for trial on the earliest date convenient for the Court after March 1, 2005. No jury charge will be necessary. Pretrial memoranda, evidentiary memoranda, and other similar documents should be submitted to the Court according to the local rules, this Court's rules, and any other schedule the Court deems appropriate under the circumstances.

(f) Settlement. A settlement conference is now scheduled for the day before this case management conference, Thursday, October 28, at 9:30 a.m. before Magistrate Judge Howard R. Lloyd. Both sides have made settlement offers, and the issues

are complex. If the Magistrate Judge determines that further sessions might be beneficial, he can schedule them for any date that suits his convenience and that of the parties. Having thoroughly assessed the conduct of defendant Leckrone after he consented to a settlement agreement in the Cooper litigation, Patriot has little faith in the effectiveness of any settlement agreement under any circumstances. Patriot continues to believe, as it informed the Court at the first case management conference, that the case cannot be settled and that only a final judgment will be effective. At the initial case management conference Patriot expressed its willingness to participate in mediation; and that willingness continues; nevertheless, Patriot strongly believes that any settlement, if a satisfactory, enforceable settlement can be reached, will be achieved only at the time of trial. Patriot renews its earlier request that mediation not be allowed to interfere with any trial date.

**CONCLUSION**

When defendants called to request that we adjourn our motion, that we agree to a compressed briefing schedule for their motion, and that we agree to other scheduling matters, we obtained approval from the client and told counsel for defendants we would consent to their motion to amend. We still consent. And this

motion was unnecessary except for defendants' irrepressible desire to make prejudicial statements.

Dated: October 15, 2004

BRAMSON, PLUTZIK, MAHLER & BIRKHAEUSER, LLP
Alan R. Plutzik, Esq. (State Bar No. 077785)
Daniel E. Birkhaeuser, Esq. (State Bar No. 136646)
Jennifer S. Rosenberg, Esq. (State Bar No. 121023)
L. Timothy Fisher, Esq. (State Bar No. 191626)
2125 Oak Grove Road, Suite 120
Walnut Creek, California 94598
Telephone: (925) 945-0200
Facsimile: (925) 945-8792

BEATIE AND OSBORN LLP

By: /S/
Russel H. Beatie
(Admitted pro hac vice)
Curt D. Marshall
(Admitted pro hac vice)
521 Fifth Avenue, Suite 3400
New York, New York 10175
Telephone: (212) 888-9000
Facsimile: (212) 888-9664

Of Counsel: John E. Lynch
(Admitted pro hac vice)

Attorneys for Plaintiff