Apple Inc. v. Psystar Corporation Doc. 2331



LEONIDOU & ROSIN
Professional Corporation
JANETTE G. LEONIDOU (SBN 155257)
SLOAN C. BAILEY (SBN 188113)
DAVID COUNTRYMAN (SBN 226995)
5 Thomas Mellon Circle, Suite 205
San Francisco, CA 94134
Telephone: (415) 715-2860
Facsimile: (415) 715-2870

Attorneys for Plaintiff
SVALA CONSTRUCTION, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SVALA CONSTRUCTION, INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>ZURICH NORTH AMERICAN, a business entity, form unknown; COLONIAL AMERICAN CASUALTY AND SURETY COMPANY, a purported Maryland corporation; and DOES 1 through 75, inclusive,<br><br>Defendants. | Case No.: C 04-00262 MJJ<br><br>[Alameda County Superior Court Case No. HG04136312 filed January 14, 2004]<br><br>PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY ADJUDICATION<br><br>Date: November 16, 2004<br>Time: 9:30 a.m.<br>Dept.: 11 |

///

///

///

///

///

///

///

///

Dockets.Justia.com

TABLE OF CONTENTS


| | Page |
|---|---|
| TABLE OF CONTENTS | i, ii |
| TABLE OF AUTHORITIES | iii, iv |
| I. **INTRODUCTION** | 1 |
| II. **BACKGROUND FACTS** | 1 |
| A. **The Project And Contract Documents** | 1 |
| B. **The Payment And Performance Bonds** | 2 |
| C. **The Division of Labor Standards Enforcement Complaint** | 3 |
| III. **SUMMARY OF LAW** | 3 |
| A. **Colonial Must Prove Beyond All Doubts Every Element Of Its Defenses And That There Are No Contested Issues Of Material Fact** | 3 |
| IV. **ARGUMENT** | 4 |
| A. **Svala Made Its Claim Within The Four-Year Statute of Limitations Period** | 4 |
| B. **The Language Of The Bonds Themselves Do Not Limit Svala's Time To File Suit** | 4 |
| 1. **Svala's Claim Against The Payment Bond Is Not Bared As The Payment Bond Only Purports To Limit The Time For Claimants To File Suit; Svala Is An Obligee, Not A Claimant** | 4 |
| 2. **Svala's Claim Against The Performance Bond Is Not Barred Because Lis Electric Did Not Perform Its Contractual Obligations and Final Payment Is Not Due** | 6 |
| 3. **Colonial's Reliance On *Fidelity* Is Misplaced** | 7 |
| 4. **Colonial's Reliance On *Clarke v. Safeco* Is Misplaced** | 8 |

C. **The Provisions Purporting To Alter The Time To File A Claim Are Invalid** 9

1. **The Bond Provisions Purporting to Alter The Time To File A Claim Must Be Read To Allow Svala, As The Obligee, To Receive More Time Than Claimants to Make A Claim** 9

2. **Svala Did Not Accept Limitations On Its Right To File A Lawsuit** 10

D. **The Bonds Cannot Be Read So As to Impose A Forfeiture** 10

1. **The Bonds Do Not Provide For A Forfeiture Of The Obligee's Rights** 10

2. **Svala Would Be Entitled To Relief From Forfeiture Even If The Bonds Did Purport To Impose A Forfeiture** 11

IV. **CONCLUSION** 12

# TABLE OF AUTHORITIES

**Cases**


| Cases | Page |
|---|---|
| *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970) | 4 |
| *British Airways Board v. Boeing Company*, 585 F.2d 936 (9th Cir. 1978) | 3 |
| *Cisneros v. UNUM Life Ins. Co. of America*, 134 F.3d 939 (9th Cir. 1998) | 12 |
| *Clarke v. Safeco*, 15 Cal. App. 4th 882 (1997) | 8, 9 |
| *Continental Casualty Co. v. Hartford Accident and Indemnity Co.*, 243 Cal. App. 2d 565 (Cal. Ct. App., 1966) | 6, 8 |
| *Decca Design Build, Inc. v. Am. Auto. Ins. Co.*, 206 Ariz. 301 (Ariz. Ct. App., 2003) | 6 |
| *Department of Industrial Relations v. Fidelity Roof Co.*, 60 Cal. App. 4th 411 (Cal. Ct. App., 1997) | 7, 8 |
| *Eastman Kodak Co. v. Image Technical Services, Inc.*, 504 U.S. 451 (1992) | 3 |
| *Fontenot v. Upjohn Co.*, 780 F.2d 1190 (5th Cir. 1986) | 3 |
| *Gintjee v. Knieling*, 35 Cal. App. 563 (Cal. Ct. App. 1917) | 9, 10 |
| *Glens Falls Indem. Co. v. United States*, 229 F.2d 370 (9th Cir., 1955) | 6, 8 |
| *Gross v. Unumprovident Life Ins. Co.*, 319 F. Supp. 2d 1129 (C.D. Cal. 2004) | 5 |
| *Lake Nacimiento Ranch Co. v. San Luis Obispo County*, 841 F.2d 872 (9th Cir. 1987) | 4 |
| *Mai Steel Service, Inc. v. Blake Constr. Co.*, 981 F.2d 414 (9th Cir., 1992) | 6, 7, 8 |
| *Mason v. Lawyers Surety Corp.* 224 Cal. App. 3d 634 (Cal. Ct. App., 1990) | 4 |
| *Moreno v. Sanchez*, 106 Cal. App. 4th 1415 (Cal. Ct. App., 2003) | 9 |
| *Nationwide Life Ins. Co. v. Bankers Leasing Ass'n, Inc.*, 182 F.3d 157 (2nd Cir. 1999) | 3 |
| *O'Flaherty v. Belgum*, 115 Cal. App. 4th 1044 (Cal. Ct. App., 2004) | 10, 11 |

*Scarberry v. Bill Patch Land & Water Co.*, 184 Cal. App. 2d 87 (Cal. Ct. App., 1960) 12

*Select Ins. Co. v. Superior Court*, 226 Cal. App. 3d 631 (Cal. Ct. App., 1990) 12

*Southern California Gas Co. v. City of Santa Ana,* 336 F.3d 885 (9th Cir. 2003) 3

*Staley v. State Bar of California*, 17 Cal. 2d 119 (Cal., 1941) 11

*Summers v. L. F. S. Syndicate* 46 Cal. App. 250 (Cal. Ct. App., 1920) 4

*Troughton v. Eakle*, 58 Cal. App. 161 (Cal. Ct. App., 1922) 11

*Valley View Home of Beaumont, Inc. v. Department of Health Services*, 146 Cal. App. 3d 161 (Cal. Ct. App., 1983) 11, 12

*Walt Rankin & Associates, Inc. v. City of Murrieta,* 84 Cal. App. 4th 605 (Cal. Ct. App., 2000) 10

*Yamanishi v. Bleily & Collishaw, Inc.*, 29 Cal. App. 3d 457 (Cal. Ct. App., 1972) 4, 5, 11


STATUTES


Cal. Civil Code § 1654 4

Cal. Civil Code § 3226 4, 8

Cal. Civil Code § 3248 4, 10

Cal. Civil Code § 3275 11, 12

Cal Code of Civil Procedure § 337 4, 10

Cal Code of Civil Procedure § 996.450 4, 10

Cal. Insurance Code § 22 5, 12

Cal. Insurance Code § 105(a) 5, 12


OTHER SOURCES


Black's Law Dict. (5th ed. 1979) p. 12, col. 1 10

Restatement (Second) of Contracts § 236 cmt. b (1981) 11

## I. INTRODUCTION

Zurich American Insurance Company and Colonial American Casualty and Surety Company's ("Colonial Surety") motion for summary judgment is a desperate attempt to escape its bond obligations, for which it received a substantial premium. Colonial Surety's motion alleging that Svala Construction, Inc.'s ("Svala") claim is barred by the statute of limitations fails for numerous, independent reasons: (1) Svala made its claim within the four-year statute of limitations period; (2) the payment bond does not limit Svala's rights, because it is an "obligee" not a "claimant", as defined by the bond; (3) the trigger for the performance bond limitation is two years from when final payment is due to Lis Electric, Inc. ("Lis Electric"), and final payment to Lis Electric is not yet due; (4) to be valid under California law, the bonds must be construed to allow Svala sufficient time to pursue remedies against Colonial Surety; (5) to be valid under California law, provisions limiting Svala's time to file an action must be accepted by Svala, and Svala did not accept either bond's provision; (6) neither bonds' time provision purports to forfeit rights if a claim is not timely made; and (7) even if the bonds did authorize a forfeiture, Svala would be entitled to relief because Colonial Surety cannot show that it was prejudiced. Because Colonial Surety has failed to prove its statute of limitations defenses, Colonial Surety's motion for summary judgment must be denied.

## II. BACKGROUND FACTS

### A. The Project And Contract Documents

This case arises from a public works construction project known as the Irvington High School Modernization Project (the "Project") owned by the Fremont Unified School District (the "Owner"). (Svidler Decl. at ¶ 1 and Exhibit A). Svala was awarded the general contract on the Project and subcontracted with Lis Electric for electrical wiring work. (Svidler Decl. ¶¶ 2-3 and Exhibits A and B; Eaves Decl. Exhibit D). The subcontract provides that final payment is only due to Lis Electric after Lis Electric has performed its contractual obligations:

> The final payment of (see above) which the said Prime Contactor [Svala] will pay to the said Sub-Contractor [Lis Electric], SEVEN days after the said amount is received by the Prime Contractor <u>provided the Sub-Contractor shall have completed his work to the full satisfaction of said Prime Contractor, Owner, and Architect</u>."

(Svidler Decl. Exhibit A, page 3, ¶ 7; Eaves Decl. Exhibit D, page 3, ¶ 7). Final payment is not due to Lis Electric until Lis Electric provides "satisfactory evidence that all current bills for labor and materials, or other liabilities, have been paid in connection with this Sub-Contract … ." (Svidler Declaration Exhibit A, page 3, ¶ 6; Eaves Declaration Exhibit D).

**B. <u>The Payment And Performance Bonds</u>**

In exchange for a $10,600.00 premium (Eaves Decl. Exhibit B; Svidler Decl. Exhibit D), Colonial Surety issued payment and performance bonds on behalf of Lis Electric on January 21, 2000. (Eaves Decl. ¶¶ 9-10 and Exhibits A and B; Svidler Decl. Exhibits C and D). Both bonds expressly incorporate the subcontract. (Eaves Decl. Exhibits A and B, ¶ 2 Svidler Decl. Exhibits C and D, ¶). The payment and performance bonds guarantee that Lis Electric will perform its work and pay its obligations. (Eaves Decl. Exhibits A and B; Svidler Decl. Exhibits C and D). The payment bond purports to limit the time in which a "claimant," but not the "obligee," may bring an action. (Eaves Decl. Exhibit A; Svidler Decl. Exhibit C). "A claimant is defined as one having a direct contract with the Principal for labor, material, or both, used or reasonably required for use in the performance of the subcontract … ." (Eaves Decl. Exhibit A, p. 1, ¶ (1)). Likewise, the performance bond states that: "Any suit under this bond must be instituted before the expiration of two (2) years … from the date on which final payment under the Subcontract falls due." (Eaves Decl. Exhibit B ¶ 5; Svidler Decl. Exhibit D ¶ 5).

Svala is defined in the bond as the obligee, not a claimant, so the purported limitations language of the payment bond does not apply to Svala. (Svidler Decl. ¶ 11). Similarly, because Lis Electric was obligated to pay its workers prevailing wages and provide evidence of such payment (Svidler Decl. Exhibit A, page 3, ¶ 6), final payment to Lis Electric is not due until prevailing wages are paid and evidence of such payment is tendered. (Svidler Decl. Exhibit A, page 3, ¶ 7; Eaves Decl. Exhibit D, page 3, ¶ 7). Svala never had any reason to believe, and did not believe, that any provision of any bond shortened its time to file an action on either bond. (Svidler Decl. ¶ 15). Svala never accepted any provision in either bond limiting its right to bring an action against Colonial Surety. (Svidler Decl. ¶¶ 7, 9).

///

### C. The Division of Labor Standards Enforcement Complaint

On July 19, 2001, the Division of Labor Standards Enforcement ("DLSE") filed suit against Lis Electric and Svala alleging that Lis Electric failed to pay its employees prevailing wages. (Request for Judicial Notice Exhibit A). Colonial Surety, as the parent company of Fidelity and Deposit Company of Maryland (Countryman Decl. Exhibit A), was notified of the DLSE action on June 3, 2001 in a letter sent by the DLSE. (Yuen-Garcia Decl. Exhibit A). Under the terms of its subcontract with Svala, Lis Electric was obliged to pay its employees prevailing wages. (Svidler Declaration Exhibit A, page 3, ¶ 6). Up to the point that it filed for bankruptcy, Lis Electric had defended Svala, as was required under the subcontract. (Svidler Decl., ¶¶ 13-14 and Exhibits A, p.1, ¶ 3, B, § 00510-1, ¶ 8(c), and F). Although this is exactly the sort of situation in which Colonial Surety guaranteed to perform and pay Lis Electric's obligations, Colonial Surety refuses to comply with its obligations under the bonds. (Request for Judicial Notice Exhibit C).

## III. SUMMARY OF LAW

### A. Colonial Must Prove Beyond All Doubts Every Element Of Its Defenses And That There Are No Contested Issues Of Material Fact

The party moving for summary judgment must "must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986), *emphasis in original*; *see also Southern California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003). Furthermore, because "summary judgment is a drastic device … the moving party bears a heavy burden of demonstrating the absence of any material issue of fact." *Nationwide Life Ins. Co. v. Bankers Leasing Ass'n, Inc.*, 182 F.3d 157, 160 (2nd Cir. 1999). The "resolution of all doubts should be in favor of the party opposing the motion." *British Airways Board v. Boeing Company*, 585 F.2d 936, 951 (9th Cir. 1978).

At the summary judgment stage, the non-movant's version of any disputed issue of fact is presumed correct. *Eastman Kodak Co. v. Image Technical Services, Inc.*, 504 U.S. 451, 456 (1992). Even where the basic facts are undisputed, if reasonable minds could differ on the

inferences to be drawn from those facts, summary judgment should be denied. *Ibid.*; *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Lake Nacimiento Ranch Co. v. San Luis Obispo County*, 841 F.2d 872, 875 (9th Cir. 1987).

## IV. ARGUMENT

### A. Svala Made Its Claim Within The Four-Year Statute of Limitations Period

An action on a surety bond may be brought within four years from when a cause of action accrues. Cal. Code of Civil Procedure § 996.450 *citing* Cal. Code of Civil Procedure § 337; *see also Mason v. Lawyers Surety Corp.* 224 Cal. App. 3d 634, 638 (1990) ("Undoubtedly Code of Civil Procedure section 337 is broad enough to encompass an action on a surety bond"); *Summers v. L. F. S. Syndicate* 46 Cal. App. 250, 253 (1920) (the four-year statute of limitations on written contracts begins to run when the cause of action accrues).

Under any interpretation of the facts of this case, Svala's lawsuit is timely. Even under, the most favorable interpretation of the facts proffered by Colonial Surety, which Svala denies, Svala's cause of action against the payment and performance bonds accrued, at the earliest, on July 19, 2001 when the DSLE filed suit against Svala and Lis Electric. (Eaves Decl. ¶ 13, Exhibit "F"). Svala filed its complaint against Colonial Surety on January 14, 2004, less than two-and-a-half years later. (Eaves Decl. ¶ 16 and Exhibit C thereto, page 3, ¶¶ 13, 14.) As such, Svala's suit is well within the four-year period prescribed by the statute of limitations. In fact, Svala filed its complaint less than four years after the bonds were even issued. (Eaves Decl. ¶¶ 9-10 and Exhibits A and B; Eaves Decl. ¶ 16 and Exhibit C, page 4, line 15.) There is no statutory bar to Svala's complaint.

### B. The Language Of The Bonds Themselves Do Not Limit Svala's Time To File Suit

#### 1. Svala's Claim Against The Payment Bond Is Not Bared As The Payment Bond Only Purports To Limit The Time For Claimants To File Suit; Svala Is An Obligee, Not A Claimant

Construction bonds "will be construed most strongly against the surety and in favor of all persons for whose benefit such bond is given." Cal. Civil Code § 3226; Cal. Civil Code 3248(b). Furthermore, it is black letter contract law that "the language of a contract should be interpreted most strongly against the party who caused the uncertainty." Cal. Civil Code § 1654; *Yamanishi*

*v. Bleily & Collishaw, Inc.*, 29 Cal. App. 3d 457, 463 (1972). Finally, in issuing bonds, Colonial Surety was acting as an insurer. Ins. Code §§ 22 & 105(a). As such, California law requires that the bonds therefore must be strictly construed against Colonial Surety. *See Gross v. Unumprovident Life Ins. Co.*, 319 F. Supp. 2d 1129, 1134 (C.D. Cal. 2004). There is no dispute that the payment bond on this Project was provided by Colonial Surety for the benefit of Svala (Eaves Decl., ¶10 and Exhibits A and B); therefore any ambiguity in the terms of the bond must be interpreted against Colonial Surety. .

The language in the bond at issue explicitly distinguishes Svala as the obligee from claimants on the bond, and it states that the purpose of the payment bond is to protect Svala in the event that Lis Electric fails to pay claimants, such as employees, subcontractors, or suppliers:

> KNOW ALL MEN BY THESE PRESENTS: That Lis Electric, Inc. as principal, hereinafter called Principal, and [Colonial Surety], as surety, hereinafter called Surety, are held and firmly bound unto Svala Construction, Inc. as obligee, hereinafter called Obligee, for the use and benefit of claimants as hereinafter defined. . . .

(Eaves Decl. Exhibit A, p. 1; Svidler Decl. ¶ 10 and Exhibit C, emphasis added). The bond provides that "[n]o suit or action shall be commenced hereinunder by any claimant . . . [a]fter the expiration of one (1) year following the date on which the Principal ceased work on said Subcontract . . . ." (Emphasis added). (Eaves Decl. ¶ 11 and Exhibit A thereto). "A claimant is defined as one having a direct contract with the Principal for labor, material, or both, used or reasonably required for use in the performance of the subcontract . . . ." (Eaves Decl. Exhibit A, p. 1, ¶ (1)).

Nowhere does the language of the bond purport to limit the time in which an action may be brought by the obligee. The bond is very specific in defining the obligee and the claimants as separate parties: Lis Electric and Colonial Surety are bound unto Svala, as obligee, for the benefit of the claimants. (Eaves Decl. Exhibit A). This makes sense, as the purpose of the payment bond is to protect Svala, the obligee, from the downstream claims of Lis Electric's subcontractors and suppliers: the claimants. (Eaves Decl. Exhibit A; Svidler Decl. ¶ 10 and Exhibit C, emphasis added). Accordingly, because Svala's complaint was filed less than four

years after the bonds were issued, this suit was commenced within the period prescribed by the statute of limitations.[1]

**2. Svala's Claim Against The Performance Bond Is Not Barred Because Lis Electric Did Not Perform Its Contractual Obligations and Final Payment Is Not Due**

Although Svala made payment to Lis electric on August 1, 2001, final payment was not due at that time. A case exactly on point is *Decca Design Build, Inc. v. Am. Auto. Ins. Co.*, 206 Ariz. 301 (Ariz. Ct. App., 2003) (Decca). If a bond limitations provision is premised upon when final payment is "due," and when the conditions precedent to trigger final payment have not been met, even if final payment has been made, the limitations period under the performance bond has not begun to run and the obligee may pursue its claim against the surety. *Ibid.* "A subcontractor does not perform its contractual obligations for purposes of a performance bond until it pays for all of the labor and materials used in completing its work." *Mai Steel Service, Inc. v. Blake Constr. Co.*, 981 F.2d 414, 420-21 (9th Cir., 1992) *citing Glens Falls Indem. Co. v. United States,* 229 F.2d 370, 375 (9th Cir., 1955); *Continental Casualty Co. v. Hartford Accident and Indemnity Co.*, 243 Cal. App. 2d 565, 569 (Cal. Ct. App., 1966).

In *Decca*, a surety issued a performance bond with a subcontractor as the principal and the general contractor as obligee. *Decca, supra*, 206 Ariz. at 302. The performance bond contained a limitations provision that is virtually identical to the one here: "Any suit under this bond must be instituted before the expiration of two (2) years from the date on which final payment under the subcontract falls due." *Id.*, at 302, fn. 2. The court held that where "the conditions precedent to trigger [the final payment] have not been met, the limitations period under the performance bond has not begun to run." *Id.* at 305. The court also held that whether the subcontractor was or was not paid is immaterial; what is "dispositive [is] the time when final payment is *due*." *Ibid.* (Emphasis in original).

///

[1] Colonial Surety make the torturous argument that, contrary to the intent and language of the contract, Svala is a claimant because Svala and Lis Electric were in direct contract. However, this analysis is erroneous for two reasons: (1) first, Svala is the obligee of the bond, and may bring an action in that capacity regardless of whether or not may also be claimant, and (2) secondly, paragraph 1 of the statute expressly states that the purpose of the payment bond is to protect Svala, as obligee, from claims by claimants. Therefore, categorizing Svala as a claimant is nonsensical.

The performance bond purports to limit the time in which a claim may be filed against the surety after final payment is due. (Eaves Decl. at ¶ 11 and Exhibit B, ¶ 6). The subcontract provides that final payment is only due after Lis Electric has performed its contractual obligations. (Svidler Decl. Exhibit A, page 3, ¶¶ 6-7; Eaves Decl. Exhibit D, page 3, ¶¶ 6-7). Therefore, final payment is not due to Lis Electric until Lis Electric (1) pays for all of the labor and materials used in completing its work (*Mai Steel Service, supra*, 981 F.2d at 420-21); and (2) provides "satisfactory evidence that all current bills for labor and materials, or other liabilities, have been paid in connection with this Sub-Contract". (Svidler Decl. Exhibit A, page 3, ¶ 6).

Here, Colonial Surety has not shown that Lis Electric paid for all of the labor and materials used in completing its work. Furthermore, it is undisputed that Lis Electric has failed to provide evidence of proper payment, as evidenced by the DLSE's claim against Svala and Lis Electric for failing to pay prevailing wages and the current action by Svala against Colonial Surety for performance on Lis Electric's bonds. (Eaves Decl. at ¶¶ 13-16 and Exhibits C, F, and H thereto; Request for Judicial Notice Exhibit A). Finally, although Lis Electric did begin to defend Svala in the DLSE Complaint, it breached its duty to defend when it filed for bankruptcy and ceased providing representation to Svala. (Svala Decl. ¶¶ 13-14 and Exhibits A, p.1, ¶ 3, B, § 00510-1, ¶ 8(c), and F; Request for Judicial Notice Exhibits D and E). Because Lis Electric has not fulfilled its contractual obligations, final payment to Lis Electric is not yet due, and the contractual limitations period has not been triggered.

### 3. Colonial's Reliance On *Fidelity* Is Misplaced

Defendant relies on *Department of Industrial Relations v. Fidelity Roof Co.*, 60 Cal. App. 4th 411 (1st Dist. 1997) (Fidelity), to support it proposition that the bond limitations period, which was drafted by Colonial Surety and is triggered by a condition precedent, should be read as to ignore that condition precedent. Colonial Surety's reliance on *Fidelity* is misplaced.

In *Fidelity*, the DLSE had to bring an action pursuant to Labor Code § 1775 within 90 days from the later of two dates: (1) the recording of a valid notice of completion, or (2) the awarding body's acceptance of the work. *Id.* at 417. The *Fidelity* Court held that when a notice of completion had not and could not be filed, the statutory limitations period began to run from

the alternate trigger listed in the statute: acceptance of the work. *Id.* at 418. To hold otherwise would allow the DLSE an unlimited time to bring an action. *Ibid.*

This is unlike the case at bar. Unlike the Labor Code section in *Fidelity*, Colonial Surety drafted the language in the performance bond, and ambiguities in that language must be "construed most strongly against the surety and in favor of all persons for whose benefit such bond is given." Cal. Civil Code § 3226. In drafting the purported contractual limitations language—which was never accepted by Svala— Colonial Surety chose to have shorter period, but agreed that the period would only run once the work was completed and final payment for that completed work was due. Now, faced with the reality that its language actually extends the statutory period, Colonial Surety wants this Court to disregard one of the fundamental rules of contract interpretation and read the limitations language in favor of the drafting party and against the party for whose benefit the bond was given. *Fidelity* does not hold that a contracting party should benefit from the ambiguity in a bond that it drafted.

Furthermore, unlike the DLSE in *Fidelity*, Svala is not trying to take advantage of the condition precedent, intentionally written into the bond by Colonial Surety, to claim an unlimited time to file and action. Given the ambiguity in the bond language drafted by Colonial Surety, the plain language of which requires final payment to be due before the clock runs on the purported limitations period, Svala is only requesting the time guaranteed by the statue of limitations.

### 4. <u>Colonial's Reliance On *Clarke v. Safeco* Is Misplaced</u>

Colonial Surety correctly cites *Clarke v. Safeco*, 15 Cal. 4th 882 (1997), for the provision that pay-if-paid provisions are invalid. However, *Clarke* does not even mention, and there is substantial authority opposing, the proposition that pay-when-work-is-complete provisions are invalid. *Mai Steel Service, supra*, 981 F.2d at 420-21 ("A subcontractor does not perform its contractual obligations for purposes of a performance bond until it pays for all of the labor and materials used in completing its work") *citing Glens Falls Indem. Co, supra.*, 229 F.2d at 375; *Continental Casualty Co. supra*, 243 Cal. App. 2d at 569. Paying its workers the appropriate wages and presenting sufficient evidence of such payment are part of Lis Electric's contractual

obligations. *Ibid.* Because Lis Electric has not fulfilled these obligations, final payment is not due.

### C. The Provisions Purporting To Alter The Time To File A Claim Are Invalid

#### 1. The Bonds Must Be Construed To Allow Svala Sufficient Time To Pursue Remedies Against Colonial.

To be enforceable, a clause purporting to shorten the time within which to file suit must be both clear and reasonable. *Moreno v. Sanchez*, 106 Cal. App. 4th 1415, 1430 (2003) (holding that "one year from the date of inspection can be an unreasonably short period of time to discover a home inspector's breach."). "'Reasonable' in this context means the shortened period nevertheless provides sufficient time to effectively pursue a judicial remedy." *Ibid.* It is settled law that a bond limitations period is not reasonable unless the bond obligee has time to file an action against the bond after the time for claimants to file claims against the obligee has expired. *Gintjee v. Knieling*, 35 Cal. App. 563 (1917).

In *Gintjee*, the bond limitations period provided that "any suit brought on this bond to recover any claims hereunder must be instituted within the time allowed by law for instituting a suit to enforce a lien claim." *Id.* at 565. The court rejected the surety's contention that this language required the obligee to file a claim within the time allowed to file a lien claim, and held that the language was limited to the claims of lien claimants. *Id.* at 566. In support of this holding, the court reasoned that:

> It is obvious that no limitation of the time within which the [obligee] must begin his action would be reasonable which should attempt to limit the [obligee's] right of action to the same time within which lien claimants must begin their suits, for the sufficient reason that the [obligee] could not know the extent of his detriment until either such actions had been commenced, or until the statutory time within which they were required to be commenced had fully expired. The construction of the clause of the bond in question for which the appellant contends would therefore, in our opinion, render it, as applied to the [obligee], unreasonable, and therefore void.

*Gintjee*, *supra*, 35 Cal. App. at 556-67.

Like the surety in *Gintjee*, Colonial Surety is improperly trying to read the bond language to limit Svala's time to file suit to the same time that claimants can file suits. In fact, because claimants can file claims against Svala up until the four-year statute of limitations, Colonial

Surety's reading of the bonds would preclude Svala from filing a claim years before its liability could be determined. This is unreasonable as Svala "[can] not know the extent of his detriment until either such actions [have] been commenced, or until the statutory time within which they were required to be commenced [has] fully expired." *Id.* at 556-67. Therefore, any restrictions on the time for filing suit must be read as to apply only to claimants seeking payment for work.

### 2. Svala Did Not Accept Limitations On Its Right To File A Lawsuit

Even if the bonds did contain language limiting Svala's rights to file an action, any such provisions would still be unenforceable because Svala did not accept them. "No provision in a bond is valid that attempts by contract to shorten the period prescribed by Section 337" unless "the principal, beneficiary, and surety accept a provision for a shorter period." Cal. Code Civ Proc § 996.450; *see also Walt Rankin & Associates, Inc. v. City of Murrieta,* 84 Cal. App. 4th 605 (Cal. Ct. App., 2000) (a bond issued pursuant to Cal. Civil Code § 3248 is covered by the Bond and Undertaking Law). To accept "[m]eans something more than to receive, meaning to adopt, to agree to carry out provisions, to keep and retain." Black's Law Dict. (5th ed. 1979) p. 12, col. 1.

Svala did not sign either bond. (Svidler Decl. Exhibits C and D). Svala never had any reason to believe, and did not believe, that any provision of any bond shortened its time to file an action on either bond. (Svidler Decl. ¶ 15). Svala certainly never accepted any provision to shorten its time to file an action on either bond. (Svidler Decl. ¶¶ 7, 9). If Colonial Surety had wanted to shorten the period in which Svala could file a claim it should gotten written acceptance of that provision from Svala. Colonial Surety has not alleged, or provided any evidence, that Svala ever accepted any provision for a shorter period of time on either bond. Colonial Surety has not and cannot meet this burden. Therefore, as there is evidence that the provisions were not accepted, and no evidence that they were accepted, the provisions, even if applicable to Svala, are invalid.

## D. The Bonds Cannot Be Read So As to Impose A Forfeiture

### 1. The Bonds Do Not Provide For A Forfeiture Of The Obligee's Rights

"The law abhors forfeiture." *O'Flaherty v. Belgum*, 115 Cal. App. 4th 1044, 1059 (Cal.

Ct. App., 2004); *Staley v. State Bar of California*, 17 Cal. 2d 119, 159 (Cal., 1941) ("Equity abhors a forfeiture."). "Conditions in a contract, [sic] will if possible be construed to avoid forfeiture." *Valley View Home of Beaumont, Inc. v. Department of Health Services*, 146 Cal. App. 3d 161, 168 (1983); *Yamanishi v. Bleily & Collishaw, Inc.*, 29 Cal. App. 3d 457, 463 (1972) ("Provisions will not be construed as conditions precedent in the absence of language plainly requiring such a construction"). While the failure to bring suit within two years may possibly be a breach of the contract, "the injured party's remaining duties under the contract are not necessarily discharged." Restatement (Second) of Contracts § 236 cmt. b (1981).

Neither the performance nor the payment bond specifies the consequences of not filing suit within the time periods to which the bonds refer. Furthermore the bonds do not state that the consequence of not filing the action in a certain time period is that a forfeiture of all rights should be impliedly read into the bonds. If Colonial Surety had wanted the bonds to include a clause imposing a forfeiture of rights, it was required to use clear and unmistakable language. *Valley View, supra*, 146 Cal. App. 3d at 168; *Yamanishi, supra,* 29 Cal. App. 3d at 463.[2] However, Colonial Surety failed to do so. Therefore, as there is no "plain language" requiring a forfeiture if suit is not filed within the time periods to which the bonds refer, the bonds cannot be construed as requiring a forfeiture of rights.

**2. <u>Svala Would Be Entitled To Relief From Forfeiture Even If The Bonds Did Purport To Impose A Forfeiture</u>**

"[T]he courts are ready upon the slightest equitable consideration to relieve parties, upon such terms as may be just, from the results of a forfeiture." *Troughton v. Eakle*, 58 Cal. App. 161, 173 (Cal. Ct. App., 1922). This maxim is codified in California Civil Code § 3275, which provides:

> "Whenever, by the terms of an obligation, a party thereto incurs a forfeiture, or a loss in the nature of a forfeiture, by reason of his failure to comply with its provisions, he may be relieved therefrom, upon making full compensation to the other party, except in case of a grossly negligent, willful, or fraudulent breach of duty."

---

[2] Reading an implied forfeiture provision into the bonds is contrary to both California law and the plain language of the bonds. A better reading is to view any non-compliance with the purported time provisions as a potential partial breach of the contract for which Colonial Surety could seek damages to the extent of its prejudice. Restatement (Second) of Contracts § 236 cmt. b (1981).

*Valley View Home of Beaumont, Inc.*, 146 Cal. App. 3d 161, 168 (1983).[3] Relief under Section 3275 must be ordered even when the party seeking relief has been negligent, so long as there has been no gross negligence or willful misconduct. *Scarberry v. Bill Patch Land & Water Co.*, 184 Cal. App. 2d 87, 105-06 (1960). Under such circumstances, a "court is not only is prevented from enforcing a forfeiture but is required to grant relief therefrom." *Id.*

The equitable principles embodied in Section 3275 are embodied in the "notice-prejudice" cases construing insurance policies. In the absence of clear language requiring a forfeiture of rights, a beneficiary's failure to comply with provisions of an insurance policy does not impair the beneficiary's rights. Only if and to the extent that the insurance company has been prejudiced by the beneficiary's noncompliance will the insurance company have a defense. *Select Ins. Co. v. Superior Court*, 226 Cal. App. 3d 631 (Cal. Ct. App., 1990) (failure to comply with notice provision under policy; citing cases);*Cisneros v. UNUM Life Ins. Co. of America*, 134 F.3d 939, 947 (9th Cir. 1998). Insurance cases concerning lack of prejudice from a beneficiary's alleged noncompliance with a contractual provision are particularly instructive because under California law, a surety bond is considered a form of insurance. Cal. Ins. Code §§ 22, 105(a).

Colonial Surety has suffered no prejudice from suit having been filed when it was. Colonial Surety, as the parent company of Fidelity and Deposit Company of Maryland (Countryman Decl. Exhibit A), was notified of the DLSE action on June 3, 2001 in a letter sent by the DLSE. (Yuen-Garcia Decl. Exhibit A). It makes no difference to Colonial Surety whether suit was filed one or three years after final payment falls due. Furthermore, up to the point that it filed for bankruptcy, Lis Electric had been providing a defense to Svala, and thereby performing the obligations that Lis Electric and Colonial Surety jointly owed under the bonds. (Svidler Decl., ¶¶ 13-14 and Exhibits A, p.1, ¶ 3, B, § 00510-1, ¶ 8(c), and F). After Lis Electric breached its duty to defend (Request for Judicial Notice Exhibit E), Svala promptly filed suit. (Request for Judicial Notice Exhibit C).

---

3 "And where the condition is express and cannot be avoided by construction, the court may, in a proper case, excuse compliance with it or give equitable relief against its enforcement. Relief from forfeiture when the facts and equities militate in favor thereof may be granted even when the party seeking it has violated an express condition precedent, such as where time is made of the essence." *Valley View Home of Beaumont, Inc.*, 146 Cal. App. 3d 161, 168 (1983)

Colonial Surety was paid a premium to guarantee Lis Electric's obligations under its subcontract (Svidler Decl. Exhibit B) and had notice of the DLSE claim. (Countryman Decl. Exhibit A; Yuen-Garcia Decl. Exhibit A). However, when Lis Electric stopped performing, Colonial did nothing, and Svala was forced to file suit. (Svidler Decl., ¶¶ 13-14 and F; Request for Judicial Notice Exhibits C and F). Colonial Surety has not been prejudiced. As a consequence, even if all of Colonial Surety's arguments were assumed to be true, Colonial Surety still would not have a defense. Colonial Surety should be required to perform the duties it undertook and for which it received payment.

## IV. CONCLUSION

Colonial Surety has failed to prove the essential elements of its statute of limitations defense as: (1) Svala made its claim within the four-year statute of limitations period; (2) the payment bond does not limit Svala's rights, because it is an "obligee" not a "claimant"; (3) the trigger for the performance bond limitation is two years from when final payment is due to Lis Electric, and final payment to Lis Electric is not yet due; (4) to be valid under California law, the bonds must be construed to allow Svala sufficient time to pursue remedies against Colonial Surety; (5) to be valid under California law, provisions limiting Svala's time to file an action must be accepted by Svala, and Svala did not accept either bond's provision; (6) neither bonds' time provision purports to forfeit rights a claim is not timely made; and (7) even if the bonds did authorize a forfeiture, Svala would be entitled to relief unless Colonial Surety could show that it was prejudiced. Consequently, Colonial's motion for summary adjudication must be denied.

Dated: October 26, 2004

LEONIDOU & ROSIN
Professional Corporation

By [signature] for JGL
JANETTE G. LEONIDOU
Attorneys for Plaintiff
SVALA CONSTRUCTION, INC.