Apple Inc. v. Psystar Corporation

Doc. 2381 Att. 1

# COLLECTIVE BARGAINING AGREEMENT

## BETWEEN

## THE HOTELS

## and

## HOTEL EMPLOYEES AND RESTAURANT EMPLOYEES UNION, LOCAL 2

**AUGUST 14, 1989 - AUGUST 14, 1994**

586

EXHIBIT

tabbies

A-2

Dockets.Justia.com

## TABLE OF CONTENTS


| SECTION | TITLE | PAGE NUMBER |
|---|---|---|
| 7 | Business Representatives | 6 |
| 10 | Change of Status/Immigration | 7 |
| 6 | Checkoff | 5 |
| 13 | Confessions, Lie Detectors | 12 |
| 17 | Copies of Contract | 13 |
| 12 | Discipline | 11 |
| 16 | Emergency | 13 |
| 2 | Exemptions | 1 |
| 21 | Fully Bargained | 14 |
| 11 | Grievance Procedure | 7 |
| 4 | Hiring | 3 |
| 9 | Individual Contract | 7 |
| 8 | No Discrimination | 6 |
| 5 | No Loss of Wages | 5 |
| 14 | Personnel Files | 12 |
| 1 | Recognition | 1 |
| 20 | Relations | 13 |
| 15 | Safety and Health | 12 |
| 19 | Savings Clause | 13 |
| 3 | Subcontracting | 2 |
| 18 | Successors and/or Assigns | 13 |
| 22 | Term | 14 |
| 23 | **Health & Welfare & Pension** | 15 |
| 23.8 | Billing | 18 |
| 23.6 | Complete Agreement Concerning Rates of Employer Contributions | 18 |
| 23.2 | Contributions | 16 |
| 23.4 | Education Fund | 17 |
| 23.1 | Eligibility | 15 |
| 23.5 | Employer Contributions | 18 |
| 23.9 | Governmental Coordination | 18 |
| 23.12 | Liquidated Damages and Delinquencies | 19 |

| SECTION | TITLE | PAGE NUMBER |
|---|---|---|
| 23.3 | Pension Fund | 17 |
| 23.7 | Posting of Monthly Reports | 18 |
| 23.10 | Savings Clause | 18 |
| 23.11 | Trust Documents and Modifications | 19 |
| | **General Rules Applicable To All Crafts** | 21 |
| 31 | Additional Classifications of Work | 39 |
| 29 | Adjustment of Pay | 38 |
| 27 | Automation | 38 |
| 24 | Breakage and Cash Shortage | 38 |
| 32 | Bulletin Boards | 39 |
| 11 | Combination Work | 29 |
| 22 | Construction | 37 |
| 28 | Early Shift Release | 38 |
| 1 | Employees - Definition of | 21 |
| 21 | Equal Pay for Men and Women | 37 |
| 18 | Funeral Leave | 35 |
| 12.1 | Holidays | 29 |
| 12 | Holidays and Vacations | 29 |
| 34 | Job Descriptions | 39 |
| 17 | Jury Duty | 35 |
| 5.1 | Layoff, Reduced Schedules, Room Closures, Recall and Another Job Classification | 25 |
| 14 | Leave of Absence | 33 |
| 37 | Legal Plan | 40 |
| 8 | Lockers | 28 |
| 35 | Lost and Found | 40 |
| 10 | Meals | 28 |
| 30 | Messages | 39 |
| 16 | Military Leave | 35 |
| 25 | Minimum Scale | 38 |
| 36 | Off Premises Work | 40 |
| 4 | Overtime | 22 |
| 20 | Pay Period | 36 |
| 7 | Posted Job Vacancies | 27 |





| SECTION | TITLE | PAGE NUMBER |
|---|---|---|
| 15 | Pregnancy Disability | 35 |
| 6 | Promotions and Transfers | 27 |
| 5.3 | Reporting Pay | 26 |
| 9 | Rest Periods | 28 |
| 5.2 | Scheduling | 26 |
| 26 | Seats | 38 |
| 5 | Seniority | 23 |
| 3 | Shifts | 21 |
| 19 | Shop Stewards | 36 |
| 13 | Sick Leave | 32 |
| 23 | Uniforms and Linen | 37 |
| 33 | Union Buttons | 39 |
| 12.2 | Vacations | 31 |
| 2 | Workday, Workweek | 21 |
| | **Food Preparation Department** | 41 |
| 7 | All Other Cooks | 42 |
| 8 | Apprentices | 42 |
| 11 | Beverages | 43 |
| 4 | Chef - Head Cook | 41 |
| 1 | Classifications of Hotel Restaurant Kitchens | 41 |
| 5 | Cleaning/Closing Time | 41 |
| 9 | General Cleaning | 43 |
| 12 | Hazardous Surfaces | 43 |
| 3 | Kitchen Stations | 41 |
| 10 | Knife Sharpening | 43 |
| 16 | Meals | 44 |
| 6 | Night Chef | 42 |
| 14 | Night Shift | 43 |
| 13 | Number of Cooks | 43 |
| 2 | Relief Cooks | 41 |
| 15 | Shifts | 43 |

| SECTION | TITLE | PAGE NUMBER |
|---|---|---|
| | **Dining Room Department** | 45 |
| 9 | Banquet Service Charge/Gratuities | 47 |
| 5 | Banquet Shifts, Covers, Overages | 46 |
| 3 | Banquets | 45 |
| 2 | Bus Person | 45 |
| 14 | Cash Shortages - Missing Checks | 49 |
| 4 | Combination Service | 45 |
| 13 | Duties, Servers | 49 |
| 10 | Gratuities | 48 |
| 20 | Meals | 51 |
| 11 | New Year's Eve | 49 |
| 21 | Night Shift | 51 |
| 9.1 | Records | 48 |
| 17 | Room Service | 51 |
| 8 | Rotation of Parties | 47 |
| 7 | Rotation of Stations | 46 |
| 1 | Scheduling of Days Off and Shifts | 45 |
| 12 | Scrub Captain | 49 |
| 18 | Steady Extra Banquet Food Servers | 51 |
| 19 | Steady Extra Banquet Servers Overtime | 51 |
| 16 | Stools, Chairs | 50 |
| 6 | Tray Stand | 46 |
| 15 | Vacation for Extra and Steady Extra Banquet Personnel | 50 |
| | **Beverage Department** | 52 |
| 12 | Apprentices | 54 |
| 7 | Banquet Ticket Sales | 54 |
| 2 | Banquets and Special Occasions, Etc | 52 |
| 11 | Bar Attendants | 54 |
| 5 | Bartender Stations | 52 |
| 6 | Gratuity Distribution | 53 |
| 3 | Head Bartenders | 52 |
| 13 | Meals | 55 |
| 8 | Seniority for Job Vacancies | 54 |





| SECTION | TITLE | PAGE NUMBER |
|---|---|---|
| 4 | Service Bartenders | 52 |
| 1 | Shifts | 52 |
| 10 | Steady Extra Banquet Bartenders/ Bar Attendants | 54 |
| 9 | Vacation Pay - Steady Extras | 54 |
| | **Stewards Department** | 56 |
| 4 | Banquets and Special Parties | 56 |
| 2 | Combination Bus Person and Dishwasher | 56 |
| 8 | Combination Work | 57 |
| 9 | Dish-Up | 57 |
| 6 | Flooring | 56 |
| 13 | Grease Traps | 58 |
| 10 | Meals | 57 |
| 14 | Night Shift | 58 |
| 11 | Scheduling | 57 |
| 3 | Seniority | 56 |
| 12 | Shifts | 58 |
| 5 | Soap | 56 |
| 1 | Uniforms and Linen | 56 |
| 7 | Upgrading | 56 |
| | **Hotel Service Department** | 59 |
| 4 | Classification of Hotels | 62 |
| 1 | Definition of Work - Bell Person | 59 |
| 6 | Inspectress | 62 |
| 5 | Meals | 62 |
| 3 | Night Shift | 61 |
| 2 | Room Cleaners | 60 |
| 7 | Telephone Operators | 62 |

| APPENDIX | TITLE | PAGE NUMBER |
| --- | --- | --- |
| "A" | Wage Rates | 63 |
| "B" | Unit Clarification Petition - 20-UC-232......<br>(Section 2. Exemptions, p. 1) | |
| "C" | Payroll Deduction Authorization<br>(Section 6. Checkoff, p. 5) | 75 |
| "D" | Specialty Restaurants<br>(Section 5 (d), Seniority, p. 24) | 76 |
| "E" | Supplemental Vacation Benefit Plan<br>(Section 12.2 (k), Vacation, p. 32) | 77 |
| "F" | Tip Distribution Sheet<br>(Section 9.1 (d), Records, p. 48) | 81 |
| "G | List of Arbitrators<br>(Section 11, (j), p 10) | 82 |
| "H" | Side Letter | 83 |



## *PREAMBLE*

THIS AGREEMENT is made and entered into by and between the HOTEL EMPLOYEES AND RESTAURANT EMPLOYEES UNION LOCAL 2, affiliated with the HOTEL EMPLOYEES AND RESTAURANT EMPLOYEES INTERNATIONAL UNION AFL-CIO, hereinafter referred to as the Union, and the ___________ Hotel, hereinafter referred to as the Employer:

## *AGREEMENT*

### SECTION 1. RECOGNITION

The Employer recognizes the Union as the sole representative for collective bargaining purposes of all its employees falling within the jurisdiction of said Union, excepting and excluding employees referred to in Section 2 hereof.

### SECTION 2. EXEMPTIONS

The exemptions from coverage under the collective bargaining agreement are subject to adjudication of by the National Labor Relations Board in case 20-UC-232. Nothing in our proposal under Section 2 or anywhere else in the agreement shall require the inclusion of persons or positions determined to be supervisory or managerial in case 20-UC-232.

Chefs (one per hotel);

Front Office Clerks;

Inside Office help such as Bookkeepers, Stenographers and the employees of the Auditing Department (except Dining Room Cashiers, Food Checkers and Beverage Checkers)

Assistant Managers (the designation of the title Assistant Manager shall not be used to circumvent the spirit and intent of this Agreement);

Bona fide Room Managers hired after July 1, 1975;

Superintendents of Service (in charge of uniformed personnel in the Hotel Service and Housekeeping departments, who do not perform manual duties, except in emergencies);

Head Housekeeper;

Three Assistant Housekeepers (who have the right to hire and fire);

Head Checker;

Chief Telephone Operators (who have the right to hire and fire, and who have supervision over two (2) or more operators);

Supervising Stewards/Stewardesses (who do not regularly perform manual duties of employees under the jurisdiction of the Union);

Food Controller;

Purchasing Agent;

Promotion Manager;

Receiving Clerks;

House Officers (who are delegated policing responsibilities);

Office Manager;

Advertising Manager.

For each Hotel all positions determined to be exempt in the written settlements in 20-UC-232; that except for said positions determined to be exempt in said written settlement agreement, work normally performed by the classifications covered by this Agreement shall only be performed by members of the bargaining unit, except in the event of a bona fide emergency; and that as stated in 20-UC-232, "It is further understood, however, that the performance of some bargaining unit work may be incidental to the duties of some of the supervisory positions exempted herein. This Agreement in no way limits the Hotel's rights, consistent with it's Collective Bargaining Agreement with Local 2, to decide in its sole discretion whether to employ, or how to schedule, individuals performing such bargaining unit work." See APPENDIX "B" - Unit Clarification Petition 20-UC-232.

**SECTION 3. SUBCONTRACTING**

If the Employer sub-contracts any work performed by the bargaining



unit, employees shall be transferred to the sub-contractor in order of their hotel seniority and shall continue to accumulate hotel seniority while in the employ of the sub-contractor or any subsequent sub-contractors. In the event the Hotel terminates the services of a sub-contractor, the affected employees shall be returned to available employment within the classification with the Employer on the basis of their total hotel seniority if the individual continues to work within the Hotel. An individual previously employed by the Hotel who is working in the hotel as an employee of a sub-contractor shall retain job bidding rights pursuant to Section 7 POSTED JOB VACANCIES. It is understood that sub-contractors shall be required to maintain benefits and/or standards at no less than the applicable level set forth in this Agreement. (See letter of understanding dated September 5, 1983.)

**SECTION 4. HIRING**

(a) In the hiring and discharging of employees, the Employer shall determine the suitability and competence of the employees within the provisions of this Section, and provided that such determination shall not be used for the purpose of discriminating against members of the Union, or to circumvent the spirit and intent of this Agreement.

(b) In filling all vacancies, except as provided for in Section 6 of the General Rules, PROMOTIONS AND TRANSFERS, the individual Hotels signatory hereto shall apply to the Union having jurisdiction over the particular classification involved and it shall have the right to choose from among all applicants for referral and, except as otherwise provided in this Section, to reject any job applicant referred by the Union. In the event the Union is unable to provide competent help suitable for the position within seventy-two (72) hours, excluding Saturdays, Sundays, and holidays, the Employer shall be at liberty to hire persons not referred by the Union. Applicants who are so employed shall be on probation during the first thirty (30) days of their employment unless extended by mutual agreement between the Employers and the Union and may be subject to discharge during this period without recourse to the grievance and arbitration provisions of this Agreement.

When banquet or a la carte food servers are required, the Union shall be notified at least forty-eight (48) hours in advance, unless the fact that such food servers would be required was not known to the Hotel forty-eight (48) hours in advance. In the hiring of extra food servers for banquets or a la carte, the Hotel shall designate the number of food servers needed and the Union shall then furnish crews of extra food servers available.

(c) Employees who are now members of the Union shall, as a condition of continued employment, remain members of the Union. All other

employees within the bargaining unit and all new employees employed within the bargaining unit shall, as a condition of employment, become members on or after thirty (30) calendar days of the execution of this Agreement or their date of employment, whichever is later. The Union agrees to permit all employees to become and remain members of the Union on the same terms and conditions of which any employees, now members of the Union, are admitted to membership.

(d) The Union shall notify a Hotel in writing that an employee has not complied with sub-section (c) herein. After two (2) days (except Saturday, Sunday, or holidays) from receipt of such notice, if such employee had not complied with the provisions of sub-section (c) such employees shall be discharged and shall not have recourse to Section 11 GRIEVANCE PROCEDURE. The Union shall have recourse to Step 3, GRIEVANCE PROCEDURE should the Employer fail to comply.

(e) If such employee so hired makes application to join the Union, the Union agrees to accept such application and accept for membership such applicants on the same terms and conditions on which any employee, now members of the Union, are admitted to membership.

(f) The Employer shall notify the Union on forms mutually satisfactory to both parties of the employment of all classifications of new regular or extra employees under the jurisdiction of the Union party to this Agreement within seventy-two (72) hours, Saturdays, Sundays and holidays excepted, of the date of the employment of such individuals.

(g) Selection by the Union of applicants for referral to jobs shall be on a non-discriminatory basis and shall not be based on, or in any way affected by Union membership, by-laws, rules, regulations, constitutional provisions or any other aspect or obligation of Union membership, policies or requirements. In carrying out this provision, the Union shall maintain lists of applicants for referral for the various classifications of jobs covered by this Agreement. Eligibility for registration on said list shall be determined solely upon the basis of each applicants experience and qualifications for the particular classification of work involved. When an Employer applies to the Union as provided in sub-section (b) hereof, eligible applicants will be referred to the Employer in the order of their registration on said lists unless the Employer requests referral of a particular applicant or group of applicants for specified job openings. Said lists of eligible applicants shall be available to the Employer at the Union offices upon request.

(h) Each Hotel and the Union shall post in places where notices for employees and applicants for employment or referral to employment are customarily posted, all of the provisions of the foregoing paragraphs (a), (b), (c), (d), (e), and (f). Any authorized member of the Union, believing



that the provisions of said sub-sections have not been observed shall have the right to file a grievance as provided in Section 11 GRIEVANCE PROCEDURE hereof, provided said grievance is filed within ten (10) days from the time said person's complaint arose.

(i) An employee shall not be required or permitted to subscribe to any form of insurance prescribed by the Employer or to make any deductions from wages without the written authorization of such employees, except such as may be required by law or this Agreement. When an employee is required as a condition of employment to be bonded, the Employer shall pay the cost of said bond.

(j) Employees shall not be required to sign employment applications which are inconsistent with the provisions of this Agreement. A sample copy of the application form shall be on file with the Union.

(k) Learner Rate: Effective September 17, 1986, during the first eight (8) months of employment employees shall be paid seventy-five percent (75%) of the applicable wages as set forth in APPENDIX "A." After said eight months, employees shall be paid one hundred percent (100%) of the applicable wages set forth in Appendix "A." All newly hired employees who have twelve (12) months of experience in the employment of hotels with the same class of hotels within the jurisdiction of Local 2 or in the same Corporate chain or in a Class "A" restaurant within the jurisdiction of Local 2, shall be hired at the wage rate set forth in APPENDIX "A."

(l) Any person hired through an employment agency to fill a vacancy in any hotel, in violation of Section 4 HIRING of this Agreement shall be reimbursed by the Employer in full all monies paid to said employment agency, other than Governmental agencies.

(m) The Employer and the Union shall create a Joint Labor-Management Study Committee on a city-wide basis to develop means of having the hiring hall assist the Employers in providing documentation under the Immigration Reform and Control Act and to improve the quality and training of hiring hall referrals to the Employer. Said Committee shall consist of at least five (5) representatives of the Class "A" hotels and five (5) representatives of the Union who shall be selected no later than August 14, 1989.

## SECTION 5. NO LOSS OF WAGES

No employee shall as a result of the signing of this Agreement, suffer a reduction in wages.

## SECTION 6. CHECKOFF

The Checkoff Agreement from the previously existing Agreement between the parties hereto effective July 1, 1980 to August 14, 1983 will

be added herein as set forth in APPENDIX "C" - Payroll Deduction Authorization.

## SECTION 7. BUSINESS REPRESENTATIVES

The authorized representatives of the Union shall be free to visit the hotels at all reasonable hours and shall be permitted to carry on their duties, provided that they shall first notify the management of the Hotel who shall be defined as General Manager, Manager on Duty, Personnel Director or other authorized representative of management; and there shall be no interference with the proper conduct of business or with the work duties of employees. Such representatives shall not interview employees in, or enter, guests' rooms, guests corridors, or guest floors. However, a business representative may, when investigating a specific grievance, enter a guest corridor or unoccupied guest room when accompanied by a Management Representative.

## SECTION 8. NO DISCRIMINATION

(a) There shall be no discrimination against any employee on account of membership in, or activity on behalf of the Union, or because of race, color, creed, sex, sexual preference, age, handicap as defined by law, religion, or national origin as defined by law.

(b) The Employer and the Union recognize the critical importance of insuring equal employment opportunity in all job categories covered by this Agreement for all persons regardless of their race, color, creed, sex, sexual preference, age, handicap as defined by law, religion or national origin as defined by law. The Employer and the Union further acknowledge that, despite past good faith efforts to achieve this goal, further progress is both possible and necessary. In order to achieve such progress, the parties agree to engage in affirmative action consistent with applicable state and federal law and other provisions of this Agreement. To implement their affirmative action policy, the Employer and the Union shall endeavor to administer hiring, working conditions, benefits and privileges of employment, compensation, training, upgrading, promotion, transfer and terminations of employment including layoffs and recalls for all employees without discrimination in accordance with sub-section (a). It shall be the policy of the Employer to make possible the upgrading of current employees from the lowest classification to the highest consistent with the employee's skills, merit and ability without regard to race, color, creed, sex, sexual preference, age, handicap as defined by law, religion or national origin as defined by law.

In cases where it is appropriate to a particular job and where it is advantageous to the Hotel to have a position staffed by a multilingual employee, the Hotel recognizes this as an asset.



(c) The parties hereto further agree to propose appropriate training programs to the Trustees of the Industry-Wide Education Fund and to encourage affected employees to participate in said training.

(d) Each party agrees to advise the other of outstanding equal employment opportunity problems of which they are aware. The Employer and the Union will jointly seek solutions to such problems. The Employer shall consult with the Union prior to any changes in the equal employment opportunity program.

## SECTION 9. INDIVIDUAL CONTRACT

No member of the Union shall be compelled or allowed to enter into any individual contract or agreement with the Employer concerning the conditions of employment varying the conditions of employment contained herein.

## SECTION 10. CHANGE OF STATUS/IMMIGRATION

(a) No employee covered by this Agreement shall suffer any loss of seniority, compensation, or benefits due to any changes in the employee's name or social security number. It is understood that falsification by an employee of work history and/or background can be cause for discipline which may include discharge.

(b) In the event that an employee has a problem with their residency status in the United States, the Employer agrees to meet with the Union upon request to discuss the job related impact on said employee.

## SECTION 11. GRIEVANCE PROCEDURE

(a) Should disputes arise between the employee or the Union and the Employer regarding the interpretation and/or application of the specific terms of this Agreement, and/or disciplinary action, including discharge taken pursuant to alleged violation(s) of house rules, work rules, procedures and/or the terms and conditions of this collective bargaining agreement, such disputes shall be processed in the time and manner prescribed herein:

Step 1. The affected employee shall first take the matter up with his or her supervisor or other authorized Employer representative within five (5) days excluding Saturdays, Sundays, and Holidays, from the date of the incident or circumstances giving rise to the dispute in order to settle the matter promptly. Meetings between the employee and the immediate supervisor may be attended, at the employee's request, by the Union Business Representative, or authorized Shop Steward. Step 1 shall not be interpreted to mean the issuance of the disciplinary action by the supervisor. How-

ever, an employee may request the Step 1 be convened at the issuance, provided that such request is made by the employee when the disciplinary notice is issued. The parties may move to Step 2 at any time.

Step 2. If the grievance is not satisfactorily settled, as provided in Step 1 above, the Union shall be free to present the grievance to the Personnel Director or other designated Employer representative. Such grievance must be presented to the designated Employer representative, within fifteen (15) days from the date on which the circumstances or incident occurred which gave rise to the dispute, provided, however, that the fifteen day requirement may be waived by mutual written agreement of the Union and the Employer. The parties shall have a maximum of fifteen (15) additional days excluding Saturdays, Sundays and holidays to resolve the dispute at Step 2. Should the dispute not be resolved in said fifteen (15) days, the moving party must present the written grievance to Step 3 within an additional five (5) days, exclusive of Saturday, Sunday and holidays. Meetings between the employee and the Personnel Director or other designated Employer Representative may be attended, at the employee's request, by the Union Business Representative or authorized Shop Steward.

Step 3. (a) If the grievance as presented is not resolved as provided in Steps 1 and 2 hereof, the Union shall be free to file a written grievance with the Hotel and the dispute shall be referred to a Hotel Adjustment Board. The written grievance shall set forth the facts giving rise to the dispute including the date and persons involved and designate the specific grievance, as well as the specific remedy sought.

The Hotel Adjustment Board shall consist of two (2) management representatives, one of whom shall be an in-house representative, plus two (2) representatives from the Union, one of whom shall be the assigned Union staff representative and the other shall be either another assigned Union staff representative or an authorized Shop Steward from the hotel.

(b) The Hotel Adjustment Board shall be empowered to hear and resolve, by simple majority, all grievances properly brought before them. The Hotel Adjustment Board shall hear such grievances no sooner than ten (10) days, and no later than twenty (20) days, from the date on which the matter is deemed



unresolvable according to Step 2. The Adjustment Board shall have no power to alter or amend the terms of this Agreement.

(c) No briefs, transcripts, or stenographic records shall be taken of the Hotel Adjustment Board meeting. The Hotel Adjustment Board shall not be bound by formal rules of evidence. No lawyers shall be present.

(d) Nothing herein shall preclude the Hotel Adjustment Board from hearing more than one (1) grievance at any one session.

(e) If the Hotel Adjustment Board is unable to reach a decision by simple majority, the moving party shall notify the other party in writing of its intent to withdraw the grievance or to arbitrate the dispute within fifteen (15) days, excluding Saturdays, Sundays, and holidays, of a deadlocked Board of Adjustment.

(f) Should the grievance not be resolved as set forth in Step 3 (a) hereof, the dispute may be referred by the grieving party for resolution in accordance with Paragraph (c) entitled Arbitration.

(b) Grievance Procedures for Employer/Union. The Employer and/or the Union shall be free to file grievances as described in (a) hereof directly with the other party. The initial consideration of such grievance(s) shall commence with the Hotel Adjustment Board as provided for in Step 3 (a) hereof.

(c) Arbitration. If the parties choose to submit a grievance to arbitration, the case shall be submitted for final and binding decision among the list of ten (10) arbitrators named in this Agreement who will be chosen by the parties within thirty (30) days following the signing of this Agreement. An arbitrator must be selected and a request to the arbitrator for available dates for a hearing must be mutually made within thirty (30) days from the date of submission to arbitration. These time limits may be extended only by written agreement between the parties.

(d) The Arbitrator shall not have the power to add to or modify any of the terms, conditions, sections or articles of this Agreement. His or her decision shall not go beyond what is necessary for the interpretation and application of this Agreement in the case of the specific grievance at issue.

(e) Notwithstanding any of the foregoing, a claim of any employee for any payment of any additional compensation or sum due under the terms of this Agreement for all forms of overtime (except in the case of the spread of the work week), uniform allowance and meals, shall not go

beyond a sixty (60) day period, unless such claim is reported to the Union by the aggrieved employee and the Employer is notified by the Union within ten (10) days of the pay period when such claim or sum should have been paid.

(f) Each party shall bear their own cost of arbitration, excluding the Arbitrator's fee and his related costs which shall be divided equally between the parties.

(g) The parties may, by mutual agreement, request expedited arbitration. In an expedited arbitration proceeding, both parties shall waive their rights to submission of any briefs and stenographic recordings. The arbitration proceedings must be continuous to a conclusion. The Arbitrator must render a bench decision immediately following the close of the hearing, followed by a written decision within seven (7) days of the close of the hearing.

(h) At each step of the Grievance Procedure, either party may employ a translator.

(i) Each party shall have the right to strike an arbitrator six (6) months after an arbitrator hears his or her first case. In the event either party strikes an arbitrator, the parties shall continue to submit pending grievances for arbitration to the remaining arbitrators in accordance with this Agreement. The parties shall also select a substitute arbitrator.

(j) Should the parties be unable to mutually agree upon the selection of an arbitrator from the panel, an arbitrator shall be assigned on a rotating basis in order from the list of arbitrators found in APPENDIX "G" of this Agreement.

(k) If an arbitrator is struck by either party as provided in letter (i) above, the new arbitrator shall receive the number of the struck arbitrator.

(l) Expedited Arbitration. At the request of either the Union or the Employer, any individual suspension or discharge case shall be submitted to expedited arbitration in accordance with the following rules. The parties hereby adopt and incorporate by reference the then current Expedited Labor Arbitration Rules of the American Arbitration Association but agree that the arbitration hearing hereunder must be held within thirty (30) calendar days of the submission of the suspension or discharge grievance to expedited arbitration hereunder. The time limit may be extended by written mutual agreement.

(m) In the event that the Union develops a pattern and practice of abusing this expedited arbitration procedure over an eighteen (18) month period at a given Hotel and thereby undermines the other steps in the grievance procedure herein or substantially lessens the legitimate compromising of grievances, as determined by an arbitrator, then this section shall not apply for the remainder of the contract at said Hotel.



## SECTION 12. DISCIPLINE

(a) Written disciplinary notices (written warnings, suspensions and terminations) issued to employees must specify the events or actions for which the notice is issued. Written disciplinary notices (written warnings, suspensions and terminations) shall be issued to employees within three (3) working days (eight (8) working days for extra banquet personnel), excluding Saturdays, Sundays, holidays, vacations, sick leave, leave of absence, or any other authorized leave, of the event or action for which the written disciplinary notice is issued or within three (3) working days (eight (8) working days for extra banquet personnel), excluding Saturdays, Sundays, holidays, vacations, sick leave, leave of absence, or other authorized leave, after the Employer first became aware of such event or action. There shall be a standard written warning notice form uniform to all Hotels covered by this Agreement.

(b) An employee shall not be issued a written warning notice or other disciplinary action (suspension or termination) solely on the basis of verbal complaints by customers; however, this shall not preclude the Hotel from issuing a written warning notice or other disciplinary action (suspension or termination) following a proper investigation of a verbal complaint by a customer.

(c) A legible copy of any written warning notice, notice of suspension or notice of discharge shall be given immediately to the employee with a copy mailed to the Union within seventy-two (72) hours after issuance of the notice excluding Saturdays, Sundays and holidays.

(d) The Employer may only discipline, suspend, or discharge for reasons of just cause.

(e) An employee may request the attendance of a Shop Steward at an investigatory interview where the employee reasonably and in good faith believes discipline may result from such investigatory interview or where disciplinary measures may be taken.

(f) If the report of a "spotter" agency is used as a basis for any discipline, the agency involved must be duly licensed in the State of California. The disciplinary action shall take place within three (3) days of the receipt of the complete "spotters" report excluding Saturdays, Sundays, holidays, vacations, sick leave, leave of absence, or other authorized leave.

(g) Employees shall only be issued warning notices on the job during work time.

(h) Warning notices shall not be used as a basis for discipline after a period of nine (9) months.

(i) Verbal warnings must be clearly stated.

## SECTION 13. CONFESSIONS, LIE DETECTORS

(a) No employee shall be required or requested as a condition of hire or continued employment to sign a confession or statement concerning his or another employee's conduct.

(b) No Employer shall demand or require that an applicant or an employee take a polygraph, lie detector, or similar test as a condition of continued employment.

## SECTION 14. PERSONNEL FILES

(a) Each Hotel shall at reasonable times and reasonable intervals, upon the request of an employee, permit that employee to inspect such employee's master personnel file. At the employee's request, a Shop Steward or Union Representative may be present during the employee's inspection of his personnel file.

(b) Each Hotel shall keep a copy of each employees personnel file on the Hotel's premises in San Francisco, or shall make such file available at such place within a reasonable period of time after a request therefore by the employee.

(c) This section does not apply to the records of an employee relating to the on-going investigation of a possible criminal offense or to letters of reference.

(d) No disciplinary action shall be taken against an employee on the basis of documents not contained in the employee's master personnel file.

## SECTION 15. SAFETY AND HEALTH

(a) The Employer and the employees shall fully comply with all state and/or federal regulations regarding health and/or safe working conditions and will otherwise provide for the protection of the health and safety of the employees and the work place through the use of appropriate safety devices and safeguards as required.

(b) Where no safety and health committee currently exists in an individual Hotel there shall be established in the Hotel within one (1) month following the signing of this Agreement, a Safety Committee. Said committee shall be comprised of two (2) management representatives and two (2) representatives who are elected from the bargaining unit within the Hotel. Where there currently exists a health and safety committee in an individual Hotel, the number of management representatives shall be equaled by representatives of the various bargaining units. Local 2 shall be represented by the same number of representatives as each other Union. Said committee shall meet regularly or on call of two (2) members of the committee to review and discuss safety and health problems. Such meetings of the committee shall be held during work time.



(c) Where procedural rules are not now in effect for existing committees, the health and safety committee may establish such procedural rules as are deemed necessary.

(d) Should the committee be unable to resolve any health or safety problem, such problem shall be referred to Cal OSHA. If such problem is not resolved within thirty (30) calendar days after referral, such problem shall be referred to Step 3 of the Grievance Procedure.

(e) During an inspection by OSHA, an authorized Union Representative shall have the right to participate in such inspection.

(f) The Hotel shall furnish to each committee at their regular meeting, the required Cal OSHA reports of all reported employee injuries on Hotel premises since the date of the last report of the committee.

## SECTION 16. EMERGENCY

An "emergency" shall be defined as: a crisis, sudden or unexpected happening or situation.

## SECTION 17. COPIES OF CONTRACT

The parties will share the cost on a pro-rata basis for the printing of a reasonable number of copies of this Agreement.

## SECTION 18. SUCCESSORS AND/OR ASSIGNS

When a Hotel, party to this Agreement, sells, transfers, leases, assigns or otherwise disposes of a property covered by this Agreement, it shall first notify the party acquiring such property of the provisions of this Agreement and inform the Union of the change in ownership.

## SECTION 19. SAVINGS CLAUSE

If any provisions or sections of this Agreement be rendered or declared invalid by reason of any existing or subsequently enacted legislation, or by any decree of a court of competent jurisdiction, such invalidation of such part or portion of this Agreement shall not invalidate the remaining portions hereof and they shall remain in full force and effect. The parties agree that upon such invalidation, the parties shall meet within two (2) weeks, and negotiate substitute provisions for such parts of provisions rendered or declared invalid.

## SECTION 20. RELATIONS

(a) There shall be no strikes, lockouts, picketing, or stoppages of work during the life of this Agreement.

(b) The observance of a bona fide picket line sanctioned by the San Francisco Labor Council by any individual member of the Union shall not constitute a breach of this Agreement, provided that no affirmative action is taken by the Union in violation of this Agreement.

(c) Employee Relations Committee: The Employer agrees to recognize the Union's Committee as a legitimate part of the Union's structure in each Hotel. The Employer agrees to confer with the Union upon request regarding appropriate Labor-Management communications through the Committee.

## SECTION 21. FULLY BARGAINED

The Employer and the Union acknowledge that during the negotiations which resulted in this Agreement, each party had the unlimited right and opportunity to make demands and proposals with respect to any subject or matter not removed by law from the area of collective bargaining, and that the understandings and agreements arrived at by the parties after the exercise of that right and opportunity are fully set forth in this Agreement. It is further understood that this Agreement fully and completely sets forth all understandings and obligations between the parties, constitutes the entire Agreement between the parties and both parties in their own behalf and on behalf of their respective members, waive any past claims or demands during the term of this Agreement. Therefore, the Employer and the Union for the term of this Agreement each voluntarily and unqualifiedly waives the right and each agrees that the other shall not be obligated to bargain collectively with respect to any subject or matter not specifically referred to or covered by this Agreement. It is recognized that management has the right to implement such changes in working conditions/practices for employees covered by the terms of this contract as may be required to conform those existing hotel working conditions/practices to the working conditions/practices as are set forth in this collective bargaining agreement. It is further recognized that the provisions of this Section shall not apply with respect to actions which are properly within the authority of the Boards of Trustees of the respective trust funds referred to in other sections of this Agreement.

## SECTION 22. TERM

This Agreement made and entered into by and between the ______________Hotel (hereinafter referred to as the Hotel) and the Hotel Employees and Restaurant Employees Union, Local 2, (hereinafter referred to as the Union), shall be in effect from August 14, 1989 to and including August 14, 1994, and supersedes all previous agreements including the agreement dated August 14, 1986 to and including August 14, 1989.

This Agreement shall remain in full force and effect until August 14, 1994 and from year to year thereafter unless either party shall serve written notice upon the other of a desire to alter, amend, or terminate said Agreement ninety (90) days prior to expiration thereof.



## SECTION 23. HEALTH & WELFARE & PENSION

### Section 23.1 Eligibility

All employees in the employ of an Employer who complete the qualifying periods set forth in Paragraphs (a), (b), (c) or (d) below, for the period immediately preceding the first day of each month, shall be included as eligible employees, and the Employer shall make the contributions required for each of such employees not later than the tenth (10th) day of each succeeding month. Such employees will be eligible for health and welfare benefits excluding dental the first day of the month following the month in which the second (2nd) contribution is due in any twelve (12) month period. To qualify for dental benefits, an employed member must have earned five Employer contributions within a twelve month period and thereafter earn at least three Employer contributions each year. Also, an Employer contribution must be earned in the month preceding the month dental care is received.

(a) All employees who have worked regularly three (3) hours or more per day, five (5) days or more per week, in at least three (3) of the four (4) payroll weeks of the Employer immediately preceding the first day of the month for which contributions are due.

(b) All employees who are regularly scheduled for and work two (2) full shifts or more per payroll week, in at least three (3) of the four (4) full payroll weeks of the Employer immediately preceding the first day of the month for which contributions are due.

(c) The first thirty (30) days of absence from work due to bona fide sickness or disability, leave of absence, vacation, holidays or temporary layoff by the Employer, shall be counted as time worked except that this provision shall not be applicable to Paragraph (d) below.

(d) All extra and banquet employees whose combined employment by one or more Employers in the Industry equals the qualifying periods set forth in Paragraph (1) below, for the period immediately preceding the first day of each month, shall be considered eligible employees and the respective Employer shall make the contributions required by this Agreement for each of such employees, prorated in accordance with employment records, not later than the tenth (10th) day of each succeeding month, and each of such employees shall be entitled to all benefits provided for by the Health & Welfare, Pension and Education Funds; provided that not more than one (1) full contribution shall be made on behalf of each employee.

The industry is the San Francisco Hotel, Restaurant & Club Industry as covered in the San Francisco Hotel, Restaurant & Club Industry Fringe Benefit Collective Bargaining Agreement for the period of November 1, 1981 to October 31, 1983 (also known as the Levin Award).

4. All extra and banquet employees who have worked two (2) short shifts or more per week in at least three (3) of the payroll weeks during the four (4) payroll weeks of the Employers' immediately preceding the first of the month for which contributions are due.

(e) No employee under this Agreement shall have more than one (1) full contribution per month made on his behalf. Should an employee other than one covered by Section 23.1, work for more than one contributing Employer in the Industry such contribution shall be divided on an equal basis among said Employers. Further it is understood that no individual covered by the terms of this Agreement shall receive more than the benefits provided for an individual working solely for a single Employer.

(f) Accelerated Eligibility for Health and Welfare. A new employee of a contributing Employer who in the month prior to said employee's employment with a contributing Employer was employed by an Employer with a collective bargaining agreement with the Local Union party to this Agreement, and was entitled to health and welfare benefits at such previous place of employment pursuant to a collectively bargained plan with the Union, shall be eligible for the benefits covered under the Health and Welfare Fund (medical, hospital, life insurance, dental, and other benefits) commencing with the first day of the month following the month in which a contribution is required to be paid, to the Fund on his or her behalf.

**Section 23.2 Contributions**

On November 1, 1989, the total Employer contribution to all Funds shall be $293.83 per month per eligible employee.

The Hotel will pay the following increases for Health & Welfare, Pension, Dental, Education Fund, and Supplemental Vacation Fund: $30.00 per month additional effective November 1, 1990, $30.00 per month additional effective November 1, 1991, $30.00 per month additional effective November 1, 1992, and $30.00 per month additional effective November 1, 1993. The Union may decide which portion of said total sum shall be used for each of said purposes; but the Hotel shall pay no more than a total of $30.00 increase per month per year for any and all such benefits. If the Union does not need the full $30.00/month/year, any unused portion thereof may be carried over to the following year.

The Union may in its discretion use up to $5.00/month of each of the $30.00/month benefit increases in the last four (4) years of the contract for AIDS projects or funds, including additional AIDS medication, AIDS training and educational programs, AIDS hospices, etc.

The same level and kind of retiree fringe benefits as were in effect on August 14, 1989, shall continue for the term of this Agreement, subject only to the discretion of the Trustees to reduce the benefits offered by the Trust Funds in extreme financial emergencies, or to increase retirees benefits if circumstances permit.

Nothing in this Agreement shall be construed to require Employer contributions in excess of the amounts herein.

**Section 23.3 Pension Fund**

(a) Effective August 14, 1989, the Employer shall contribute to the San Francisco Culinary, Bartenders and Service Employees Pension Trust Fund the amount of fifty-six dollars and twenty-three cents ($56.23) per eligible employee per month (which is part of, not in addition to, the contribution amount listed in Section 23.2 above). During the life of this Agreement there shall be no Employer contribution decreases. Increases in contributions to the Pension Fund shall be utilized to provide a pension benefit improvement for all pensioners and non-pensioners for all years of credited service in an amount to be actuarially determined.

(b) With regard to any actuarial gain which may result from the Pension Fund for the year ending March 31, 1989; March 31, 1990; March 31, 1991; March 31, 1992; and March 31, 1993, one-half (1/2) of said actuarial gain shall be applied solely to reducing the unfunded vested liability as it may exist at that time. The remaining one-half (1/2) shall be utilized to provide a pension benefit improvement for all pensioners and non-pensioners for all years of credited service in an amount to be actuarially determined as of April 1, 1989; April 1, 1990; April 1, 1991; April 1, 1992; and April 1, 1993, respectively, and in a manner so as not to increase either the Employer contributions or the amortization period of the unfunded vested liabilities.

(c) It is mutually understood that all of the Hotel contributions provided for herein shall be deductible from gross revenue under Section 404 of the Internal Revenue Code.

**Section 23.4 Education Fund**

(a) Effective August 14, 1989, the Employer shall contribute fifty cents (50¢) per month per eligible employee to the San Francisco Hotel-Restaurant Labor-Management Education Trust Fund (herein referred to as "Education Fund") established pursuant to a trust document dated July 1, 1970 and as subsequently amended.

(b) Should the reserves of the Education Fund reach $100,000 the contribution will be suspended until such time as the reserves decrease to a minimum level of $50,000.

(c) The Education Fund shall be utilized at the discretion of the Education Fund Trustees for the purpose of funding training programs of

which "On-The-Job" Training (OJT) programs at the sites of Employers shall be a primary goal. The Trustees of the Education Fund shall act upon the specific requests from Employers and the Union for grants to fund such specific OJT training programs.

(d) A coordinator shall continue to be employed to coordinate Education Fund Programs.

**Section 23.5 Employer Contributions**

During the life of this Agreement, there shall be no Employer contribution increases or decreases other than what is specifically set forth in this Agreement.

**Section 23.6 Complete Agreement Concerning Rates of Employer Contributions**

Complete Agreement. The express provisions of this Agreement concerning the rates of Employer contributions constitute the complete fringe benefit collective bargaining contract concerning the rates of Employer contributions for the term of this Agreement.

This Agreement can be added to, detracted from, altered, amended or modified only by a written document signed on behalf of all the parties by their duly authorized agents and representatives.

**Section 23.7 Posting of Monthly Reports**

Employers shall be required to post in an area frequented by employees a copy of the monthly Employer remittance form the Employer sends each month to the Trust Funds administrator. Such posting shall conform to the terms of this collective bargaining agreement between the Employer and the Union as an official Union notice. The administrator shall provide the Employer with such additional copies of the form for the posting as necessary.

**Section 23.8 Billing**

The administrator shall submit a billing to each Employer on the first (1st) day of each month during the life of this Agreement.

**Section 23.9 Governmental Coordination**

All fringe benefits covered by this Agreement shall be coordinated with benefits or contributions mandated by state or federal legislation for the purpose of eliminating duplications in benefits or Employer contributions for benefits.

**Section 23.10 Savings Clause**

If any Articles, Sections, or Paragraphs of this Agreement should be held invalid by operation of law or any tribunal of competent jurisdiction; or if compliance with or enforcement of any provision should be restrained by such tribunal pending final determination as to its validity, the remaining provisions of this Agreement shall not be affected thereby, but shall continue in full force and effect.



**Section 23.11 Trust Documents and Modifications**

(a) The Employer and the Union hereby agree to and are bound by the individual Trust Agreements, as amended for each of the above Trust Funds.

(b) The parties shall agree that all Trust Documents, including the Agreements and Declarations of Trust, Plan Documents, etc., shall be amended so as to effectuate all the terms and conditions of this Fringe Benefits Agreement.

**Section 23.12 Liquidated Damages and Delinquencies**

The Employer contributions required by the Collective Bargaining Agreement shall be payable on the tenth (10th) day of the month, for the immediate preceding month, and shall be payable to the Funds in care of the custodian designated by the Trustees. Payment shall be accompanied by complete reports on forms furnished or approved by the Trustees, so that the contributions can be allocated accurately. Contributions will be timely received, as actually received by the designated custodian, on or before the twentieth (20th) day following the date report forms are mailed by the administrator, provided the administrator mails the remittance forms on or before the first day of the month. Should the administrator not mail the remittance forms on or before the first day of the month (as determined by the postmark), the Employer shall have twenty calendar days following the date of mailing to submit the required contributions. Contributions will also be timely received if mailed with the correct address and postage in an envelope postmarked on or before the twentieth (20th) day following the date report forms are mailed by the administrator, unless the twentieth (20th) falls on a Saturday, Sunday or holiday, in which case the envelope must be postmarked no later than the next working day.

It is recognized and acknowledged that the regular and prompt payment of Employer contributions to each of the Funds is essential to the operation of the Trusts and the provision of benefits under the Plans, and that it would be extremely difficult, if not impossible, to fix the actual expense and damage to the Funds and to the covered employee, which would result from the failure of an Employer to make such monthly contributions in full within the time provided.

The amount of damage resulting from each such failure to make timely contributions hereunder, as defined above, by way of liquidated

damages and not as a penalty, is presumed to be ten percent (10%) of the amount due and unpaid to each Fund, which amount shall become due and payable to the Funds at the principal office of the Funds upon the day following the twentieth (20th) day of the month in which said delinquency occurred. Such liquidated damages shall be added to and become part of said contributions due and unpaid; and from the first day of the month following the month in which the payment became delinquent the whole thereof shall bear interest at the rate of ten percent (10%) per annum.

If any Employer further defaults in the payment of any amounts due the Funds, following receipt of a written ten-day notice of claimed delinquency, then, in addition to the contribution due and the liquidated damages provided for in this Section, there shall be added to the obligation of said defaulting Employer, all costs and fees incurred by the Funds in the collection of the same, in the event any action or proceeding is commenced to enforce payment by such Employer. Such costs and fees, which the Trustees are entitled to recover in their own names or otherwise, shall include, without limitation, court costs, arbitration fees, costs or fees of collection agents and auditing fees, together with all reasonable attorneys' fees and reasonable compensation for employees or agents of the Trust Fund incurred in connection therewith.



## GENERAL RULES APPLICABLE TO ALL CRAFTS

### SECTION 1. EMPLOYEES - DEFINITION OF

(a) All employees other than extra employees as defined in section (c) shall be considered "regular employees" and shall accrue seniority in accordance with this Agreement.

(b) 1. An "extra employee" shall be deemed to be one who is temporarily hired in addition to the regular employee. Employees called in to relieve an employee in an emergency shall be considered "extra employees." Any employee who is temporarily hired by the Hotel to replace absent employees or to supplement the regular staff, shall be considered an "extra employee."

2. Any employee who is temporarily hired by a Hotel to replace absent employees, or to supplement the regular staff, shall be considered an extra employee. Extra employees shall have a determined length of employment not to exceed thirty (30) cosecutive days. Upon the thirty-first (31st) consecutive calendar day of employment, an extra employee shall henceforth be considered a regular employee, and his initial hire date shall be used for the purpose of computing all awards and benefits of this Agreement. This section does not apply to anyone called from the hiring hall, including banquet employees, to fill any temporary position, nor does it apply if the hiring hall is called and the Union is not able to provide competent help suitable for the position within seventy-two (72) hours excluding Saturday, Sunday and holidays.

(c) No newly hired trainee or apprentice shall replace regular or laid off employees in their classifications.

### SECTION 2. WORKDAY, WORKWEEK

(a) Workday. The workday shall consist of seven (7) hours work, two paid fifteen minute break periods, and a paid meal period of one-half (1/2) hour, for a total of eight (8) hours.

(b) Workweek. Five (5) consecutive days of work within seven (7) successive calendar days, beginning on the same day of the week shall constitute a week's work.

### SECTION 3. SHIFTS

(a) Short Shift. The short shift shall consist of at least three (3) hours of work. No employee shall be paid for less than a short shift on any day