# EXHIBIT H

Dockets.Justia.com

BEFORE THE PUBLIC UTILITIES COMMISSION OF THE STATE OF CALIFORNIA

| | |
|---|---|
| Order Instituting Investigation Into the Gas Market Activities of Southern California Gas Company, San Diego Gas and Electric, Southwest Gas, Pacific Gas and Electric, and Southern California Edison and Their Impact on the Gas Price Spikes Experienced at the California Border from March 2000 through May 2001. | Investigation 02-11-040 (Filed November 21, 2002) |
| Order Instituting Investigation Whether San Diego Gas & Electric Company, Southern California Gas Company and Their Holding Company, Sempra Energy, Respondents, Have Complied With Relevant Statutes and Commission Decisions, Pertaining to Respondents' Holding Company Systems and Affiliate Activities. | Investigation 03-02-033 (Filed February 27, 2003) |

# RESPONSE AND OPPOSITION OF SOUTHERN CALIFORNIA EDISON COMPANY (U 338-E) TO SEMPRA ENERGY TRADING'S MOTION TO QUASH SUBPOENA; DECLARATION OF WALKER A. MATTHEWS, III IN SUPPORT THEREOF

DOUGLAS K. PORTER
LEON BASS, JR.
WALKER A. MATTHEWS III

Attorneys for
SOUTHERN CALIFORNIA EDISON COMPANY
2244 Walnut Grove Avenue
Post Office Box 800
Rosemead, California 91770
Telephone: (626) 302-6879
Facsimile: (626) 302-3990
E-mail: Walker.Matthews@sce.com

Dated: October 09, 2003

LW032820010.doc(00)

D7 [illegible]

# TABLE OF CONTENTS


| Section | Title | Page |
| --- | --- | --- |
| I. | PRELIMINARY STATEMENT | 1 |
| II. | INTRODUCTION | 2 |
| III. | BACKGROUND | 4 |
| IV. | ARGUMENT | 6 |
| | A. The Commission Has The Authority To Subpoena Documents From SET In Connection With Its Lawful Investigation. | 6 |
| | B. Section 314(b), Which Does Not Even Apply To The Commission's Investigation, Does Not Limit What SET Documents Can Be Subpoenaed | 9 |
| | C. The Documents Requested In The Subpoena Are Relevant To The Investigation, And Are Needed To Complete It | 11 |
| V. | CONCLUSION | 16 |

BEFORE THE PUBLIC UTILITIES COMMISSION OF THE STATE OF CALIFORNIA

| | |
|---|---|
| Order Instituting Investigation Into the Gas Market Activities of Southern California Gas Company, San Diego Gas and Electric, Southwest Gas, Pacific Gas and Electric, and Southern California Edison and Their Impact on the Gas Price Spikes Experienced at the California Border from March 2000 through May 2001. | Investigation 02-11-040 (Filed November 21, 2002) |
| Order Instituting Investigation Whether San Diego Gas & Electric Company, Southern California Gas Company and Their Holding Company, Sempra Energy, Respondents, Have Complied With Relevant Statutes and Commission Decisions, Pertaining to Respondents' Holding Company Systems and Affiliate Activities. | Investigation 03-02-033 (Filed February 27, 2003) |

**RESPONSE AND OPPOSITION OF SOUTHERN CALIFORNIA EDISON COMPANY (U 338-E) TO SEMPRA ENERGY TRADING'S MOTION TO QUASH SUBPOENA; DECLARATION OF WALKER A. MATTHEWS, III IN SUPPORT THEREOF**

## I.

## PRELIMINARY STATEMENT

In its Motion to Quash, Sempra Energy Trading ("SET") seeks to quash Southern California Edison's ("SCE") subpoena issued in connection with the Commission's investigation of the California natural gas market and the price

LW032820010.doc(00)

spikes that occurred in that market between March, 2000 and May, 2001 (the "Subject Period"). Contrary to SET's assertion, the Commission possesses the authority under California Public Utilities Code Sections 311 and 312 (and, indeed, under the state constitution) to issue the subpoena as part of its investigation. In addition, the discovery requests contained in the subpoena are narrowly tailored and seek only relevant documents needed to gain a comprehensive understanding of the natural gas market during the Subject Period. Indeed, SET raises no relevance or undue burden objections in its motion, and only challenges the Commission's authority to issue the subpoena. Because the Commission possesses the authority to issue the subpoena and the subpoena seeks relevant information needed to conduct a thorough investigation, the Court should deny SET's motion.

## II.

## INTRODUCTION

SET's motion to quash is based on the misconception that the Commission lacks the authority to subpoena SET in connection with its investigation of the California natural gas market and the activities of California utilities Southern California Gas Company ("SoCalGas") and San Diego Gas & Electric Company ("SDG&E"), even though SET, a subsidiary of Sempra Corporation ("Sempra") and an affiliate of SoCalGas and SDG&E, does business in that market with those utilities. Specifically, SET argues erroneously that because it is a non-utility, the Commission does not have jurisdiction, and therefore lacks the authority to subpoena certain documents from SET. SET also argues erroneously that the subject of the requests are overbroad in that they are beyond the scope of the Commission's investigatory authority.

SET confuses the scope of Commission's jurisdiction (i.e. what companies the Commission regulates) with the scope of Commission's authority to investigate

matters within its jurisdiction, and to issue subpoenas in connection with such an investigation. SET incorrectly equates the scope of the Commission's jurisdiction with the scope of the Commission's investigatory authority, and erroneously asserts that the Commission cannot subpoena non-utilities. SET is wrong. It does not matter whether SET (or any other entity or person) falls under the Commission's jurisdiction. The Commission is authorized to investigate matters within its jurisdiction, and to subpoena non-utilities (and, indeed, any entity), pursuant to California Public Utilities Code Sections 311 and 312, for information relevant to the investigation, as long as the investigation is cognate and germane to the Commission's regulation of utilities.

Here, the Commission's investigation is cognate and germane to its regulation of California utilities SoCalGas and SDG&E. Indeed, as provided in the Commission's November 21, 2003 Order Instituting Investigation ("OII"), the Commission has initiated a lawful investigation of the California natural gas market and the price spikes that occurred here in order to determine, among other things, whether any regulatory mechanisms, such as SoCalGas' and SDG&E's Gas Cost Incentive Mechanisms ("GCIM"), should be modified or eliminated, and whether SoCalGas and SDG&E violated any Commission rules or statutory laws. (OII at 2). Therefore, pursuant to California Public Utilities Code Sections 311 and 312 – as derived from the California state constitution – the Commission possesses the authority to subpoena SET, even though it is not a respondent in this proceeding, in order to complete its lawful investigation, just as it could subpoena any person or entity who possesses information relevant (or reasonably calculated to the discovery of admissible evidence) to its investigation.

In sum, the Commission is vested with broad statutory (and constitutional) powers to conduct its investigation of the California natural gas market and the price spikes. These broad powers include the authority to issue subpoenas to

companies, such as SET, who do business in that market and possess information relevant to its investigation. The requests at issue are relevant and reasonably calculated to lead to the discovery of admissible evidence from SET. The information sought will also help conduct a thorough and complete Commission investigation. For these reasons, the Court should deny SET's motion to quash.

## III.

## BACKGROUND

On November 21, 2002, the Commission issued an OII to examine the California natural gas market and activities of certain participants in that market during the period March, 2000 to May, 2001, and determine whether those activities caused or contributed to price spikes at the California border. The Commission named SoCalGas and SDG&E as respondents for Phase I of the investigation. In its April 16, 2003 Scoping Memo, the Commission identified the following issues to be investigated during Phase I:

1. Whether SoCalGas and/or SDG&E (sometimes referred to collectively as "Respondents") played a role in causing the increase in California border gas prices during the Subject Period;
2. Whether Respondents' parent company, Sempra, or any of their affiliates played a role in causing the increase in border prices; and whether Respondents' concerns about the financial position of their parent company or affiliates cause Respondents to take actions that, may have increased gas costs;
3. Whether and what other factors, in addition to the increase in costs caused by El Paso Natural Gas Company's ("El Paso") actions, may have caused California border gas prices to increase to such high levels; and whether inaccurate reporting of gas price information to

energy trade publications by energy trading companies have any effect on published index prices;

4. Whether Respondents' gas cost incentive mechanisms ("GCIMs") create perverse incentives to increase or otherwise manipulate natural gas prices at the California border; and whether SoCalGas' Year 7 and Year 8 operations under the GCIM enable it to exercise market power and/or anticompetitive behavior and, if so, whether those incentive mechanisms should be modified or eliminated to prevent such activity.

The Scoping Memo also identified several sub-issues, but expressly stated that these sub-issues were illustrative in nature, and not intended to limit the overall scope of the investigation as described in the Scoping Memo.[1]

Given the breadth of the Scoping Memo, the Commission intends to conduct a thorough investigation into the root causes of the price spikes in natural gas experienced during the California energy crisis. Although Phase I of the proceeding focuses principally on the actions of SoCalGas and SDG&E, the Commission cannot fully investigate or understand the impact of their actions within the natural gas market without developing and fully understanding the market itself, and the activities of other market participants. Simply stated, while reference to the actions of SoCalGas and SDG&E in a vacuum may provide some insights into their roles in causing the price spikes, a full understanding requires an evaluation of the activities of other parties. Accordingly, permitting discovery to be directed only to SoCalGas and SDG&E, or restricting the scope of discovery directed to non-parties such as SET, will undermine the Commission's investigation.

---

[1] Scoping Memo for Phase I of I.02-11-040 and Ruling of Assigned Commissioner ("Scoping Memo"), p. 4.

IV.

ARGUMENT

A. The Commission Has The Authority To Subpoena Documents From SET In Connection With Its Lawful Investigation.

SET argues that the Commission does not have the authority to subpoena it in connection with the Commission's investigation of the California natural gas market and the price spikes that occurred during the Subject Period.[2] (Motion at 1, 5-8). Incorrectly equating the Commission's jurisdiction with the Commission's subpoena power, SET essentially argues that because SET is a non-utility, it is not subject to the Commission's jurisdiction, and therefore beyond the subpoena power of the Commission. SET is incorrect.

Whether or not the Commission has jurisdiction (i.e. regulatory authority) over SET is beside the point. The Commission has the authority under Public Utilities Code Sections 311 and 312 to subpoena SET in connection with its investigation of the California natural gas market and the price spikes that occurred here. Section 311 provides:

> The commission, each commissioner, the executive director, and the assistant executive directors may administer oaths, certify to all official acts, and *issue subpoenas for* the attendance of witnesses and *the production of papers, waybills, books, accounts, documents* and testimony *in any inquiry, investigation, hearing, or proceeding in any party of the state.*

[2] The Commission's authority to conduct this investigation derives from, among other things, Public Utilities Code Section 701, which provides that the Commission "may supervise and regulate every public utility in the State *and may do all things*, whether specifically designated in this part or in addition thereto, *which are necessary and convenient in the exercise of such power and jurisdiction.*" Id. (emphasis supplied). The Commission's plenary power to supervise and regulate public utilities gives it the power to initiate investigations on its own motion. *See Oakland v. Key System*, 64 Cal. App. 2d 247 (1944).

*See* Cal. Pub. Util. Code § 311 (emphasis added). Section 312 confirms that this authority is to same extent as that possessed by judicial courts:

> The commission and each commissioner may issue writs of summons, *subpoenas*, warrants of attachment, warrants of attachment, warrants of commitment, and all necessary process in proceeding for contempt, *in like manner and to the same extent as courts of record*.

*See* Cal. Pub. Util. Code § 312 (emphasis added); *see also San Diego Gas & Electric Co. v. Superior Court*, 13 Cal. 3th 893, 915 (1996) (noting that the commission has broad authority to "*do all things*, whether specifically designated in the Public Utilities Act or in addition thereto, which are necessary and convenient in the exercise of its jurisdiction over public utilities.") (emphasis added). Consequently, "the commission's authority has been liberally construed and includes not only administrative but also legislative and judicial powers," (*id.* at 915) such as the power to issue subpoenas, which is expressly provided by Sections 311 and 312.[3]

Furthermore, the Commission's subpoena power set forth in Sections 311 and 312 comes from the California state constitution, which likewise states that the Commission may issue subpoenas in connection with its duties. *See* Cal. Const. Art. 12 § 6 (stating that "the commission may . . . issue subpoenas . . .," among a host of other duties and powers).

SET's argument that the Commission's subpoena power extends only to utilities within the Commission's jurisdiction is unavailing. (Motion at 1, 5-8). The Commission has already determined that Sections 311 and 312 give it the authority to subpoena documents from non-utilities (including the non-utility affiliates of California utilities). *See In Matter of the Application of Roseville Telephone Co.*,

---

[3] In the event a witness refuses to comply with a subpoena issued by the Commission, Sections 1792 and 1703 of the Public Utilities Code authorize the Commission to request an order from Superior Court compelling the witness to produce the requested documents and awarding sanctions.

Decision No. 96-07-059, Application No. 95-05-031, 67 CPUC 2d. 145 at ¶ 21 (1996) (holding that Section 311(a) authorized the Commission to issue subpoenas); *In Complaint of Holocard v. PT&T Co.*, Decision No. 87714, Case No. 10240, 82 CPUC 406 (1977) (holding that under Section 312 of the Public Utilities Code, the Commission had the power to enforce discovery from any entity, whether or not the entity was a utility and whether or not the entity was a party to the case before the Commission). Indeed, in *Roseville*, the Commission decided that under Section 311 "the Commission's reach into the books and records of utility affiliates in connection with a proceeding is limited only by due process, the [Commission's Rules of Practice and Procedure], and the applicable laws of evidence and privilege." *Roseville*, Decision No. 96-07-059, 67 CPUC 2d. 145 at ¶ 21. Furthermore, the Commission determined, "no limitation appears in that statute on the persons to whom subpoenas may be issued. Nor does the statute limit the purpose for which books and records may be sought."[4]

*Younger v. Jensen* is also on point, and refutes SET's contention that the Natural Gas Act preempts the Commission's investigation. *Younger v. Jensen*, 26 Cal. 3d 397 (1980). In *Younger*, the California attorney general sought to enforce a subpoena issued to two non-utility companies (Exxon and Pacific Lighting Gas Development Company, an affiliate of SoCalGas) seeking evidence for its investigation into possible antitrust violations in California's natural gas market. *Id.* at 402. The investigation was prompted by a request from the Public Utilities Commission. *Id.* at 403. Exxon and Pacific Lighting failed to respond to the subpoenas, and objected, among other things, that under the Natural Gas Act, the attorney general did not have jurisdiction to issue the subpoenas or the power to investigate the matter. *Id.* at 404. The California Supreme Court rejected those

---

4 Id.

arguments. Enforcing the subpoenas, the Court determined that the attorney general had the power, as the state's chief law officer, to investigate activities in California's natural gas market and the possible violation of laws. *Id.* at 404-06. In addition, the Court held that the Natural Gas Act did not preempt the investigation. *Id.* at 406. The act only preempted state law that would interfere with its regulatory scheme by fixing rates. *Id.*

Here, SET (also a SoCalGas affiliate like Pacific Lighting) makes precisely the same arguments that were made *and rejected* in the *Younger* case. Under *Younger*, the Natural Gas Act does not preempt the Commission's investigation of the California natural gas market – a market in which the Commission undoubtedly has jurisdiction. Nor does the act prohibit the Commission's authority to issue subpoenas to non-utilities in order to complete its investigation.

As held in *Younger*, *Roseville*, and *Holocard*, far from being prohibited, the California state constitution and Sections 311 and 312 expressly authorize the Commission to issue a subpoena to SET.

B. <u>Section 314(b), Which Does Not Even Apply To The Commission's Investigation, Does Not Limit What SET Documents Can Be Subpoenaed</u>

In addition to its ill-conceived jurisdiction argument, SET argues erroneously that Section 314(b) limits the category of documents that the Commission may subpoena. SET wrongly asserts that the Commission can inspect documents relating solely to transactions between SET and its affiliates SoCalGas and SDG&E. (Motion at 5). SET's reliance on Section 314(b) is misplaced.[5]

---

5

Section 314(b) has nothing to do with subpoenas issued in connection with an investigation. Sections 311 and 312 do. Section 314(b) merely concerns a special category of documents demanded for inspection independent of an investigation or subpoena. *See Roseville*, Decision No. 96-07-059, 67 CPUC 2d. 145 at ¶ 21 (holding that Section 314(b) "applies only in the relatively restricted circumstances of demands for inspection and examination independent of other proceedings"). Section 314(b) does not govern discovery in any other inquiry, investigation, hearing, or proceeding, which fall under Sections 311(a) and 312. Indeed, if what SET contends was true, Section 314(b) would render Sections 311 and 312 meaningless and overrule *Younger* (which also involved the discovery of a SoCalGas affiliate's documents), *Roseville* and *Holocard*. This surely cannot be the case.

Moreover, in any event, SET fails to meet (or, indeed, even attempt to meet) its burden of demonstrating how the documents sought do not fall within the category of affiliate transaction documents the Commission can inspect independent of an investigation or subpoena under Section 314(b), if that section even did apply here (which it does not). Section 314(b) has two important limitations: (1) that the data to be inspected relate to a transaction with a utility, and (2) that the transaction be one that might adversely affect ratepayers. SET fails to demonstrate how the requests do not meet these limitations. Indeed, in light of SET's business as a leading worldwide gas marketer who enters into thousands of trade transactions with utilities, including SoCalGas and SDG&E, the two limitations are likely met. As identified in the Scoping Memo, these trade transactions ultimately may have adversely affected ratepayers.

On a related note, SET also wrongly argues that Section 314(b) precludes discovery concerning the flow of information between SET and Sempra. The Commission should reject this argument as well. As demonstrated above, discovery concerning Sempra's communications with SET is not prohibited by § 314(b).

because this section does not even apply to this investigation. Moreover, discovery concerning Sempra's communications with SET is relevant to the Commission's investigation, and needed for a complete understanding about what occurred during the Subject Period. Indeed, during the Subject Period, Sempra Energy Risk Management, a department within Sempra, oversaw the risk management activities of all Sempra subsidiaries, including SoCalGas, SDG&E and SET. The Vice President for Energy Risk Management for Sempra was a member of SoCalGas' Gas Acquisition Committee (and participated in Gas Acquisition Committee meetings). Thus, there was a potential, if not a likelihood, for inappropriate information sharing between SET, Sempra, SoCalGas and SDG&E. The Commission is entitled to investigate (and discover) whether this occurred.

## C. <u>The Documents Requested In The Subpoena Are Relevant To The Investigation, And Are Needed To Complete It</u>

SET only challenges the Commission's authority to issue the subpoena.[6] SET does not make any relevance or undue burden objections. These objections have therefore been waived.[7] Even to the extent SET's motion could be construed as raising relevance and undue burden objections, those objections are without merit.

Discovery will be permitted if the information sought is relevant or reasonably calculated to lead to the discovery of admissible evidence.[8] As

---

6 On a related note, SET also argues that only the second issue of the Commission's Scoping Memo pertains to it, and that requests relating to other issues are therefore improper. (Motion, at 6, n. 4). In light of the discovery standards, this argument does not make sense. Under this standard, the Commission can seek from SET any information, even on issues that do not expressly name SET, as long as the information is relevant or reasonably calculated to lead to the discovery of admissible evidence.

7 *See Stadish v. Superior Court*, 71 Cal. App. 4th 1130, 1141 (holding that a party whose response fails to set forth a particular objection waives its right to raise that objection later.)

8 Cal. Civ. Proc. Code § 2017(a), *Davies v. Superior Court*, 36 Cal. 3d 291, 301 (1984).

established in the Affidavit of Steve Levine, supporting the issuance of a subpoena to SET, the requested documents are indeed relevant (or reasonably calculated to lead to the discovery of admissible evidence. *See Declaration of Walker A. Matthews, III*, Ex. A. The documents also will help the Commission gain a comprehensive understanding of the California natural market during the Subject Period, and complete its investigation.

For the Court's convenience, the reasons why each request is relevant to the investigation follow:

- **Edison's Questions 1, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, and 39 from its First Set of Data Requests to Sempra Energy Trading**

  **Edison's Questions 1, 2, 3, 4, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, and 34 from its Second Set of Data Requests to Sempra Energy Trading**

These data requests seek discovery related to information sharing between SoCalGas, SDG&E, Sempra and SET, and whether SET took actions as a result of inappropriately shared information. Given that the Vice President for Energy Risk Management for Sempra was a member of SoCalGas' Gas Acquisition Committee (and participated in Gas Acquisition Committee meetings), there was a potential, if not likelihood, that information was passed from SoCalGas to Sempra and then to other affiliates like SET. It is therefore reasonable to seek discovery from SET concerning information sharing with SoCalGas, SDG&E and Sempra, and whether SET acted in response to inappropriately shared information.

These requests are reasonably calculated to lead to the discovery of admissible evidence concerning Sub-issues 2a of the Commission's Scoping Memo ("Did any activities of Sempra's Energy Risk Management Department create an incentive for SoCalGas and/or SDG&E to act in a manner that affected border prices during the Subject Period?"), as well as Sub-issue 2c ("Did SET become aware

of SoCalGas' gas hedging activities during the subject period? If so, did SET use that knowledge to its benefit?"), and Sub-issue 2e ("Did SoCalGas, SDG&E and SET share information?"). Discovery related to actions that SET took in western electric markets is also reasonably calculated to lead to admissible evidence related to Sub-issue 2b from the Scoping Memo, which states: "Did Sempra Energy Trading (SET) take positions in the electric market that allowed it or any of its affiliates to unjustifiably benefit from increased border prices during the subject period?" Finally, discovery related to actions taken by SET in western gas markets during the Subject Period is reasonably calculated to lead to the discovery of admissible evidence on the Issue 2 in the Scoping Memo, which is more general than Sub-issues 2a, 2b, 2c, and 2d. Issue 2 states in part: "Did any of SoCalGas and SDG&E's affiliates or their parent company, Sempra, play a role in causing the increase in border prices?"

- **Edison's Questions 2, 3 and 4 from its First Set of Data Requests to Sempra Energy Trading**

These data requests seek discovery related to gas market conditions in western gas markets during the Subject Period. In particular, they request that SET provide any documents that discuss or analyze gas prices during the Subject Period, including any information SET possesses on gas price manipulation and behavior of other parties in western gas markets. They also request information on the impact of Enron and EnronOnline on gas markets, and SET's use of EnronOnline in western gas markets.

All of these requests are reasonably calculated to lead to the discovery of admissible evidence on Issue 3 of the Scoping Memo, which states in part: "What were the primary factors that caused the increase in border prices? In addition to the increase in gas costs caused by El Paso's actions, what other factors may have caused gas prices to increase to such high levels?"

- **Edison's Questions 5, 6, 7 and 8 from its First Set of Data Requests to Sempra Energy Trading**

These data requests seek information concerning natural gas price reports to industry publications, and concerning whether SET participated in wash trades, or reported false information to gas industry publications. In particular, the requests seek information SET provided to industry publications (Question 5). In addition, they seek documents SET has provided to government agencies pertaining to wash trades and false reporting (Question 8), and internal studies and other documents related to wash trading and false reporting (Questions 6 and 7).

These requests are reasonably calculated to lead to the discovery of admissible evidence related to Issue 2 in the Scoping Memo, which states in part "Did any of SoCalGas and SDG&E's affiliates or their parent company, Sempra, play a role in causing the increase in border prices?" These data requests are also reasonably calculated to lead to the discovery of admissible evidence on Sub-issue 2d of the Scoping Memo, which states: "Did SET report false trades and/or false prices to the trade press? Did any such false reporting to the trade press affect border prices during the subject period?" Finally, they are reasonably calculated to lead to the discovery of admissible evidence concerning Issue 3 from the Scoping Memo, which states in part: "Did recently acknowledged inaccurate reporting of gas price information to energy trade publications by energy trading companies have any effect on published index prices?"

- **Edison's Questions 5 and 16 from its Second Set of Data Requests to Sempra Energy Trading**

These data requests seek discovery from SET relating to the relationship between western gas and electricity markets, and to conditions in western US electricity markets, during the Subject Period. These requests are reasonably

calculated to lead to the discovery of admissible evidence on Sub-issue 3c in the Commission's Scoping Memo, which states: "Did activities in the electric marketplace and electricity price increases affect border prices during the subject period?"

V.

## CONCLUSION

Pursuant to the state constitution and Sections 311 and 312 of the Public Utilities Code, the Commission possesses the authority to issue the subpoena. In addition, the requests are relevant and necessary to complete the investigation. For these reasons, the Court should deny SET's motion to quash.

Respectfully submitted,

DOUGLAS K. PORTER
LEON BASS, JR.
WALKER A. MATTHEWS III

W. A. Matthews, III

By: Walker A. Matthews III

Attorneys for
SOUTHERN CALIFORNIA EDISON COMPANY

2244 Walnut Grove Avenue
Post Office Box 800
Rosemead, California 91770
Telephone: (626) 302-6879
Facsimile: (626) 302-3990
E-mail: Walker.Matthews@sce.com

October 09, 2003

## CERTIFICATE OF SERVICE

I hereby certify that, pursuant to the Commission's Rules of Practice and Procedure, I have this day served a true copy of RESPONSE AND OPPOSITION OF SOUTHERN CALIFORNIA EDISON COMPANY (U 338-E) TO SEMPRA ENERGY TRADING'S MOTION TO QUASH SUBPOENA; DECLARATION OF WALKER A. MATTHEWS, III IN SUPPORT THEREOF on all parties identified on the attached service list(s). Service was effected by one or more means indicated below:

- ☐ Placing the copies in properly addressed sealed envelopes and depositing such envelopes in the United States mail with first-class postage prepaid (Via First Class Mail):
  - ☐ To all parties, or
  - ☐ To those parties without e-mail addresses or whose e-mails are returned as undeliverable;
- ☐ Placing the copies in sealed envelopes and causing such envelopes to be delivered by hand or by overnight courier to the offices of the Commission or the other addressee(s);
- ☑ Transmitting the copies via e-mail to all parties who have provided an address.

Executed this 9th day of October, 2003, at Rosemead, California.

Paula Kay Knuth

Paula Knuth
Project Analyst
SOUTHERN CALIFORNIA EDISON COMPANY

2244 Walnut Grove Avenue
Post Office Box 800
Rosemead, California 91770

ATTACHMENT
DECLARATION OF WALKER A. MATTHEWS

# EXHIBIT I

**BEFORE THE PUBLIC UTILITIES COMMISSION OF THE**

**STATE OF CALIFORNIA**

| | |
|---|---|
| Order Instituting Investigation Into the Gas Market Activities of Southern California Gas Company, San Diego Gas and Electric, Southwest Gas, Pacific Gas and Electric, and Southern California Edison and Their Impact on the Gas Price Spikes Experienced at the California Border from March 2000 through May 2001. | Investigation 02-11-040 (Filed November 21, 2002) |
| Order Instituting Investigation Whether San Diego Gas & Electric Company, Southern California Gas Company and Their Holding Company, Sempra Energy, Respondents, Have Complied With Relevant Statutes and Commission Decisions, Pertaining to Respondents' Holding Company Systems and Affiliate Activities. | Investigation 03-02-033 (Filed February 27, 2003) |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF SEMPRA ENERGY TRADING'S MOTION TO QUASH SUBPOENA DUCES TECUM**

Pursuant to Rule 45(g) of the Commission's[1] Rules of Practice and Procedure, non-party respondent SET respectfully requests that the Administrative Law Judge assigned to this matter accept this reply memorandum of law in response to Edison's Response and Opposition of Southern California Edison Company (U 338-E) to Sempra Energy Trading's Motion to Quash Subpoena ("Edison Opp'n").[2]

[1] The definitions of defined terms herein are incorporated by reference to Sempra Energy Trading's Motion to Quash Subpoena Duces Tecum from Southern California Edison, dated September 24, 2003 ("Moving Brief").

[2] ALJ Sarah Thomas granted SET leave to file the instant reply brief by e-mail on October 10, 2003.

50228569

# I. INTRODUCTION

Edison's opposition fails to address — let alone refute — any of the key points raised by SET. Indeed, Edison in large part ignores the grounds underlying SET's request for relief, preferring instead to argue what SET has not: that the Commission does not have the power to subpoena SET. Edison misses the point. SET agrees that, in furtherance of an investigation into matters properly before the Commission, the Commission has the *power* to issue subpoenas to non-party, non-jurisdictional entities, such as SET. What the Commission may not do is *investigate* SET, nor subpoena SET to produce documents on matters not properly before it. And that, with the imprimatur of the Commission, is precisely what Edison is trying to do with its data requests. Accordingly, for the reasons set forth below and in the Moving Brief, the instant motion should be granted and the Subpoena quashed.

# II. DISCUSSION

## A. While the Commission Has the Power to Subpoena SET, Edison Improperly Seeks to Exceed the Limits of That Power.

Contrary to Edison's assertion,[3] SET has not and does not call into question the Commission's power to subpoena non-parties, such as SET. The Commission undoubtedly has the power to subpoena SET in furtherance of its authority to investigate California public utilities. Cal. Pub. Util. Code §§ 311, 312.[4] But that power is limited, here, in that the Commission may only compel SET to produce documents with respect to matters that are relevant to an issue properly before the Commission. As set forth below, however, Edison's 73 categories of documents in large part have little, if anything, to do with the issues properly before the Commission

[3] Without any basis, Edison merely declares that "SET's motion to quash is based on the misconception that the Commission lacks the authority to subpoena SET[.]" (Edison Opp'n at 2.)

[4] Edison similarly misconstrues SET's argument concerning section 314(b) of the Public Utilities Code. SET cites section 314(b) as an example of the limitations placed on the Commission's subpoena power. (Moving Brief at 5-6.) Section 314(b), together with the restrictions in sections 311 and 312, merely illustrate that the Commission's subpoena power is not unlimited.

in this proceeding. Thus, Edison is attempting to do what the Commission itself may not do and, accordingly, the Subpoena should be quashed.

1. <u>Edison Mischaracterizes SET's Argument Respecting the Commission's Jurisdiction</u>.

As a threshold matter, Edison mischaracterizes — and misses the import of — SET's argument that it is not subject to the Commission's jurisdiction. The Commission of course has the power, consistent with California law, to command non-party, non-jurisdictional entities (such as SET) to produce documents and things germane to an investigation conducted in accordance with the Commission's jurisdictional limits. Cal. Pub. Util. Code §§ 311, 312. Thus, to the extent that SET, as an affiliate of SoCalGas and SDG&E, has documents that could be relevant to the Commission's investigation of those utilities, SET is subject to the Commission's subpoena power.

SET's jurisdictional argument, however, is very different. First, it is indisputable that SET is not a public utility and, thus, is not subject to the jurisdiction of the Commission. *City and County of San Francisco v. Western Air Lines, Inc.*, 204 Cal. App. 2d 105, 131 (1962) ("Unless the enterprise or activity in question is a public utility . . . it is not subject to the jurisdiction of the [Commission]"). Consequently, the Commission does not have the power to investigate SET itself. *Re: Volatile Organic Compounds, Perchlorate, MTBEs*, 1999 WL 687695, Cal. P.U.C., June 10, 1999 (excluding companies that were not public utilities from Commission investigation into drinking water provided by public utilities). Therefore, the Commission's authority to subpoena SET in connection with its investigation of SoCalGas and SDG&E is limited both to the Commission's jurisdictional limits and matters related to the investigation. By its data requests, however, Edison is trying to drive a truck through this narrow doorway. Simply put, the Commission's jurisdiction does not empower Edison to assail SET with discovery on any topic currently of interest to Edison.

2. Although SET Is Not the Subject of the Commission's Investigation, Edison's Data Requests Seek to Investigate SET.

Edison, nonetheless, acts as if SET is being investigated. SET, however, is not — and, indeed, cannot be — the subject of an investigation by the Commission. *Western Air*, 204 Cal. App. at 131, *see also Mississippi Power & Light Co. v. Mississippi ex rel. Moore*, 487 U.S. 354, 377 (1988) (Scalia J. concurring) ("It is common ground that if FERC has jurisdiction over a subject, the States cannot have jurisdiction over the same subject.") To the extent that Edison's argument is couched in its belief that the Commission is investigating SET, Edison is mistaken because such an investigation would be beyond the scope of the Commission's mandate and would be, as discussed in the Moving Brief, preempted by Federal law.[5]

Edison apparently misses this point by simplistically arguing that FERC's exclusive jurisdiction over matters involving interstate transportation and wholesale sale of natural gas does not preempt the Commission from subpoenaing SET. But SET's argument is not that FERC's occupation of the field prevents the Commission from being able to *subpoena* SET; rather, it prevents the Commission from being able to *investigate* SET. Accordingly, Edison's reliance on *Younger v. Jensen*, 26 Cal. 3d 397 (1980) is misplaced. In short, a subpoena from the Commission to SET is appropriate *if* it is limited to matters relevant to an investigation that is being conducted pursuant to the Commission's jurisdictional limits.

Here, the Commission is investigating SoCalGas and SDG&E with respect to issues concerning the price of natural gas at the California border from March 2000 through May 2001. *See* Commission Scoping Memo (April 16, 2003). Edison itself has admitted that the purpose of the Commission's investigation is to determine "whether any regulatory mechanisms, such as

---

[5] Matters involving interstate transportation and wholesale sale of natural gas are within the exclusive jurisdiction of the Federal Energy Regulatory Commission pursuant to the Natural Gas Act, under which Congress empowered FERC with exclusive jurisdiction over the sale of natural gas for resale. *Schneidewind v. ANR Pipeline*, 485 U.S. 293, 300-01 (1988). It is well-settled law that if Congress grants jurisdiction to FERC over a matter, that jurisdiction is exclusive. *Cascade Natural Gas Corp. v. FERC*, 955 F. 2d 1412, 1421 (10th Cir. 1992), *see also Mississippi Power & Light Co.*, 487 U.S. 354 at 377.

50228569

SoCalGas' and SDG&E's Gas Cost Incentive Mechanisms ("GCIM"), should be modified or eliminated, and whether SoCalGas and SDG&E violated any Commission rules or statutory laws." (Edison Opp'n at 3.)

As an affiliate of SoCalGas and SDG&E, SET may have certain categories of documents in its possession that could be relevant to the Commission's investigation. For this reason, SET has agreed to produce any documents it may possess that are responsive to the 12 out of 73 data requests (or portions thereof) that do fall within the scope of the investigation and jurisdiction of the Commission.[6] But, as set forth in the Moving Brief and as explained further below, the vast majority of Edison's requests are not relevant to matters within the Commission's jurisdiction. Edison thus has overreached by asking for far more than it is entitled to and, despite SET's repeated good faith efforts, Edison has refused to limit the scope of its data requests.

**B. Edison's Data Requests Are Beyond the Reach of the Scoping Memorandum.**

Edison asserts that its data requests are relevant to and necessary for completion of the Commission's investigation. Aside from the 12 data requests (or portions thereof) that SET has already agreed to comply with, as shown below, Edison's discovery is not relevant to an investigation conducted pursuant to the Commission's jurisdictional limits.

1. <u>Data Requests Concerning Information Shared Between SET and Utilities</u>.

Edison's first category of data requests purports to ask for "discovery related to information sharing between SoCalGas, SDG&E, Sempra, and SET, and whether SET took actions as a result of inappropriately shared information." (Edison Opp'n at 12.) SET agrees conceptually that such documents (if any exist), as well as documents concerning affiliate transactions, could be relevant to the Commission's investigation and within the scope of the Commission's jurisdiction. The vast majority of the requests that Edison has identified as relevant to information sharing, however, do *not* ask for documents that were shared by the entities.

---

[6] SET has already indicated to Edison that it will produce documents responsive to requests 1, 10, 25, 26, 27, 28, 33, 34 and 37 of set one and requests 6, 7 and 8 of set two. (Moving Brief at 3 fn. 1.)

Rather, many of Edison's requests either seek circumstantial evidence of coordinated activity among the Sempra entities or do not relate to information sharing at all. For instance, Edison's assertion to the contrary notwithstanding, "[d]iscovery related to actions that SET took in western electric markets" is *not* "reasonably calculated to lead to admissible evidence" that SET took positions in the electric market that allowed it or any of its affiliates to unjustifiably benefit from increased border prices.[7] (*Id.* at 13.) Similarly unavailing is Edison's contentions concerning "discovery related to actions taken by SET in western gas markets." (*Id.*) First, despite its inclusion in this category, this data request has anything to do with information sharing at all. Edison nonetheless makes the conclusory assertion, without any explanation, that such discovery "is reasonably calculated to lead to the discovery of admissible evidence" as to whether any Sempra affiliate played a role in causing the increase in border prices.[8] (*Id.*). If Edison seeks evidence that SET coordinated its market activities with other Sempra entities and "took actions as a result of inappropriately shared information" so as to allow them "to unjustifiably benefit," those data requests to which SET has acceded would certainly include any documents reflecting such alleged coordination.

---

[7] SET respectfully submits that, for the reasons discussed above, the question of whether SET itself allegedly "unjustifiably benefited" from increased border prices, divorced from coordination with SoCalGas or SDG&E, is not properly before the Commission.

[8] Edison does not explain how, absent evidence of coordination, SET's activities in the gas market would shed any light on whether SoCalGas or SDG&E caused the alleged increase in border prices. SET's activities, if not linked to the activities of its regulated affiliates, are not properly the subject of a Commission investigation. By way of illustration, absent a showing that SET's activities were somehow intended to benefit SoCalGas or SDG&E (an allegation that if true — and it is not — could be proven by way of narrowly tailored discovery asking for communications between the entities), SET's isolated wholesale gas activities and their alleged impact on prices in California, cannot be relevant to the Commission's determination of "whether any regulatory mechanisms, such as SoCalGas' and SDG&E's Gas Cost Incentive Mechanisms ("GCIM"), should be modified or eliminated, and whether SoCalGas and SDG&E violated any Commission rules or statutory laws" (Edison Opp'n at 3) — the very issues *Edison* has admitted are at the core of this investigation.

Simply stated, requests that do not directly ask for documents that were shared among Sempra entities — but instead seek circumstantial evidence of SET's wholesale electricity activities from which coordinated activity could be inferred — constitute an impermissible fishing expedition. *Greyhound Corp. v. Superior Court*, 56 Cal. 2d 355, 384-85 (1961) (empowering courts to utilize Discovery Act to reject improper fishing expeditions that constitute abuses of discovery). As SET explained in the Moving Brief[9] (and reiterates below), it is well-established that California courts will afford non-parties additional protection from such invasive and abusive tactics. *See, e.g., California Shellfish, Inc. v. United Shellfish Co.*, 56 Cal. App. 4th 16, 24 (1997) (recognizing a more protective discovery standard applies to non-parties facing subpoenas). More fundamentally, however, SET's activities — divorced from purported coordination with other Sempra entities — are not relevant to any issue that falls within the Commission's jurisdiction. Thus, Edison's first category of data requests remains improper.

2. <u>Data Requests Concerning SET's Analysis of Western Gas Markets</u>

The second category of data requests purports to seek discovery related to "gas market conditions in western gas markets." (Edison Opp'n at 13.) In particular, Edison requests any documents that discuss or analyze gas prices, the impact of Enron and EnronOnline on gas markets, and SET's use of EnronOnline. Again, SET's analysis of business conditions for its own use is not relevant to an investigation of SDG&E and SoCalGas' activities and, accordingly, these data requests are beyond the scope of the instant investigation.[10] Similarly, SET's use of EnronOnline in western gas markets is wholly immaterial to this investigation. SET, as set forth above, is not the subject of this investigation, cannot be the subject of an investigation by the Commission,[11] and the Commission is not empowered to investigate the sale of natural gas for

---

[9] *See* SET Moving Brief at 8.

[10] Any analysis allegedly shared by SET with SoCalGas or SDG&E, or *vice versa*, nonetheless would be picked up by the "information sharing" requests with which SET has agreed to comply.

[11] *See, e.g.,* Western *Air Lines*, 204 Cal. App. 2d at 131.

resale. *Schneidewind*, 485 U.S. at 300-01 (holding that FERC is empowered by Congress with exclusive jurisdiction over the sale of natural gas for resale).

In short, Edison's conclusory statement that these requests are relevant in that they are reasonably calculated to lead to the discovery of admissible evidence is insufficient to rebut SET's argument that this group of data requests is not relevant to the instant investigation.

3. Data Requests Concerning Natural Gas Price Reporting and the Relationship Between Western Gas and Electricity Markets

Edison's third category of data requests concerns natural gas price reporting and the fourth concerns the relationship between western gas and electricity markets. (Edison Opp'n at 14.) As with the data requests discussed above, these requests seek discovery of SET's *wholesale* market activities without any nexus to the activities of SoCalGas and SDG&E — entities subject to the Commission's jurisdiction. Moreover, Edison again fails to articulate how these requests are relevant to an investigation that it has conceded is ultimately directed at the conduct of SoCalGas and SDG&E.

As explained above, the Commission does not have the power to investigate SET, only the power to subpoena SET in furtherance of an investigation conducted in accordance with the Commission's jurisdictional limits. These data requests exceed that narrow scope and are thus inappropriate. Edison cannot argue that SET's status as an affiliate of certain jurisdictional utilities makes everything about its business fair game in these proceedings. Edison's efforts to do so are improper and should not be countenanced by the Commission.

**C. Edison Fails to Meet Its Burden for Propounding Discovery to a Non-Party.**

Edison's Opposition does not even mention — let alone refute — the well-settled law that SET cites concerning the extra protections afforded non-parties from burdensome discovery. *See, e.g., Calcor Space Facility, Inc. v. Superior Court*, 53 Cal. App. 4th 216, 224-25 (1997) ("Particularly when dealing with an entity which is not even a party to the litigation, the court should attempt to structure discovery in a manner which is least burdensome to such an entity"); *Monarch Healthcare v. Superior Court*, 78 Cal. App. 4th 1282, 1289-90 (2000) ("Discovery pro-

cedures are generally less onerous for strangers to the litigation[.] [N]onparty witnesses should be somewhat protected from the burdensome demands of litigation.") Here, the oppressive nature of Edison's data requests would be troublesome if propounded to a party; the fact that Edison has foisted this burden on SET, a non-party, makes the requests unacceptable. For this reason alone, the instant motion should be granted.

**D. SET Has Not Waived Any Objections to the Substance of Edison's Data Requests.**

Contrary to Edison's specious argument,[12] SET has *not* waived any objections, including objections to relevancy and burden, which it may later assert in response to the data requests propounded by Edison. This is so for at least two independent reasons. First and foremost, SET *expressly reserved* the right to object to the data requests in its original moving papers. (SET Moving Brief p. 4, fn. 2.) Under these circumstances, there can be, and in fact is, no waiver of any objections. *See, e.g., O'Mary v. Mitsubishi Electronics America, Inc.*, 59 Cal. App. 4th 563, 577 (1997) ("Our court has decried precisely a 'gotcha' theory of waiver.")

Second, SET's motion to quash does not address the substance of the data requests *per se*, but rather is directed at the ability of Edison to subpoena SET in the first place. SET has asserted that the subpoena itself is invalid because it represents a spectacular stretch beyond the scope of the Commission's authority to subpoena a non-party, non-utility, non-jurisdictional entity. Under well-settled law, SET had the choice of responding to the requests or moving to quash the subpoena. *See, e.g., Monarch Healthcare*, 78 Cal. App. 4th at 1290 (holding that non-party has several options when responding to a subpoena, including moving to quash or responding to requests). Having chosen the latter, SET will have to respond to the individual requests only if its motion to quash is unsuccessful, at which point, SET will have the opportunity to assert all appropriate objections.

---

12 *See* Edison Opp'n at 11.

50228569

Finally, the case Edison relies upon to argue to the contrary, *Stadish v. Superior Court*, 71 Cal. App. 4th 1130, 1141 (1999), is simply inapposite here. *Stadish* merely stands for the unremarkable proposition that in *responding* to discovery requests, if the responding party fails to raise a specific objection to a request, it waives that specific objection. *Stadish* is utterly silent with respect to the obligations of a non-party, such as SET, that is *moving to quash*. Accordingly, much like the rest of Edison's brief, *Stadish* has absolutely nothing to do with the matters at issue here.

## III. CONCLUSION

As set forth above, Edison's data requests to SET dramatically exceed the scope of the discovery that can be properly propounded in this investigation. Edison argues that the Commission has *carte blanche* to conduct investigations at will and is attempting to cash one of those checks. SET already has agreed to voluntarily produce all documents responsive to Edison's requests that fall within the scope of the Commission's jurisdiction. Aside from those data requests, Edison is attempting to push the boundaries of permissible discovery beyond well-defined limits and, accordingly, the Commission should quash the Subpoena.

Dated: October 24, 2003

STROOCK & STROOCK & LAVAN LLP
ALAN Z. YUDKOWSKY
PETER F. JAZAYERI
ALEX M. WEINGARTEN

By: ______________________
Alan Z. Yudkowsky

Attorneys for Non-Party Respondent Sempra Energy Trading Corp.

## CERTIFICATE OF SERVICE

I hereby certify that, pursuant to the Commission's Rules of Practice and Procedure, I have this day served a true copy of REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF SEMPRA ENERGY TRADING'S MOTION TO QUASH SUBPOENA DUCES TECUM on all parties identified on the attached service list(s). Service was effected by one or more means indicated below:

☒ Placing the copies in properly addressed sealed envelopes and depositing such envelopes in the United States mail with first-class postage prepaid (Via First Class Mail)

- ☒ To all parties, or
- ☐ To those parties without e-mail addresses or whose e-mails are returned as undeliverable.

☐ Placing the copies in sealed envelopes and causing such envelopes to be delivered by hand or by overnight courier to the office of the Commission or the other addressees(s);

☒ Transmitting the copies via e-mail to all parties who have provided an address.

Executed this 24th day of October, 2003, at Los Angeles, California.

Patricia Bloom
Patricia Bloom
STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1800
Los Angeles, California 90067

50228569v3

**I.02-11-040**
Friday, October 24, 2003

KEITH MCCREA
SUTHERLAND, ASBILL & BRENNAN
1275 PENNSYLVANIA AVENUE, NW
WASHINGTON, DC, 20004-2415

I.02-11-040

BRIDGET A. BRANIGAN
SOUTHWEST GAS CORPORATION
5241 SPRING MOUNTAIN ROAD
LAS VEGAS, NV 89150-0002

I.02-11-040

EDWARD PEREZ
CITY OF LOS ANGELES
CITY HALL EAST
200 N MAIN SREET, RM 1800
LOS ANGELES, CA 90012

I.02-11-040

MARZIA ZAFAR
SO CAL GAS/SDG&E
555 WEST 5TH STREET
LOS ANGELES, CA 90013

I.02-11-040

MICHAEL THORP
SEMPRA ENERGY
555 W. FIFTH STREET, SUITE 1400
LOS ANGELES, CA 90013

I.02-11-040

DAVID J. GILMORE
SEMPRA ENERGY
555 WEST FIFTH STREET
LOS ANGELES, CA 90013-1011

I.02-11-040

ANDREW SAFIR
RECON RESEARCH CORPORATION
6380 WILSHIRE BLVD STE 1604
LOS ANGELES, CA 90048

I.02-11-040

LEON BASS
SOUHTERN CALIFORNIA EDISON COMPANY
2244 WALNUT GROVE AVENUE, SUITE 353
ROSEMEAD, CA 91770

I.02-11-040

MARK C. MOENCH
KERN RIVER GAS TRANS. CO.
2755 E. COTTONWOOD PARKWAY
SUITE 300
SALT LAKE CITY, UT 84121

I.02-11-040

DAVID E. VAN IDERSTINE
SOUTHERN CALIFORNIA EDISON COMPANY
2244 WALNUT GROVE AVENUE, ROOM 345
ROSEMEAD, CA 91770

I.02-11-040

THOMAS C. SANGER
SEMPRA ENERGY
101 ASH STREET
SAN DIEGO, CA 92101-3017

I.02-11-040

JOHN BURKHOLDER
BETA CONSULTING
2023 TUDOR LANE
FALLBROOK, CA 92028

I.02-11-040

STEVEN D. DAVIS
SAN DIEGO GAS & ELECTRIC COMPANY
101 ASH STREET
SAN DIEGO, CA 92101-3017

I.02-11-040

OSA ARMI
SHUTE MIHALY & WEINBERGER LLP
396 HAYES STREET
SAN FRANCISCO, CA 94102

I.02-11-040

FREDERICK M. ORTLIEB
CITY OF SAN DIEGO
1200 THIRD AVENUE, 11TH FLOOR
SAN DIEGO, CA 92101-4100

I.02-11-040

MARCEL HAWIGER
THE UTILITY REFORM NETWORK
711 VAN NESS AVENUE, SUITE 350
SAN FRANCISCO, CA 94102

I.02-11-040

DARCY MORRISON
PACIFIC GAS AND ELECTRIC COMPANY
77 BEALE STREET,
MAIL CODE B9A
SAN FRANCISCO, CA 94105

I.02-11-040

JACK FULCHER
CALIF PUBLIC UTILITIES COMMISSION
505 VAN NESS AVENUE
AREA 4-A
SAN FRANCISCO, CA 94102-3214

I.02-11-040

THERESA L. MUELLER
CITY AND COUNTY OF SAN FRANCISCO CITY HALL
ROOM 234
SAN FRANCISCO, CA 94102-4682

I.02-11-040

BARRY R. HIMMELSTEIN
LIEFF, CABRASER, HEIMANN & BERNSTEIN,LLP
275 BATTERY STREET,
30TH FLOOR
SAN FRANCISCO, CA 94111-3339

I.02-11-040

MARK FOGELMAN
STEEFEL, LEVITT & WEISS, P.C.
ONE EMBARCADERO CENTER,
30TH FLOOR
SAN FRANCISCO, CA 94111

I.02-11-040

**I.02-11-040**
Friday, October 24, 2003

JOSEPH M. MALKIN
ORRICK, HERRINGTON & SUTCLIFFE LLP
400 SANSOME STREET
SAN FRANCISCO, CA 94111-3143

I.02-11-040

DOUGLAS K. KERNER
ELLISON, SCHNEIDER & HARRIS
2015 H STREET
SACRAMENTO, CA 95814

I.02-11-040

ERIC B. FASTIFF
LIEFF,GABRASER,HEIMANN& BERNSTEIN,LLP
275 BATTERY STREET, 30TH FLOOR
SAN FRANCISCO, CA 94111-3339

I.02-11-040

TOM BEACH
CROSSBORDER ENERGY
2560 NINTH STREET, SUITE 316
BERKELEY, CA 94710

I.02-11-040

KEVIN J. SIMONSEN
ENERGY MANAGEMENT SERVICES
646 EAST THIRD AVENUE
DURANGO, CO 81301

I.02-11-040

DARCIE L. HOUCK
CALIFORNIA ENERGY COMMISSION
1516 9TH STREET, MS 14
SACRAMENTO, CA 95814-5512

I.02-11-040

MARK PINNEY
CANADIAN ASSN. OF PETROLEUM PRODUCERS
2100 - 350 SEVENTH AVENUE, S.W.
CALGARY AB T2P 3N9
CANADA

I.02-11-040

GREGORY KLATT
LAW OFFICES OF DANIEL W. DOUGLASS
411 E. HUNTINGTON DRIVE, SUITE 107-356
ARCADIA, CA 91006

I.02-11-040

DAVID M. NORRIS
SIERRA PACIFIC POWER COMPANY
6100 NEIL ROAD, PO BOX 10100
RENO, NV 89520

I.02-11-040

RANDALL W. KEEN
MANATT, PHELPS & PHILLIPS, LLP
11355 WEST OLYMPIC BLVD.
LOS ANGELES, CA 90064

I.02-11-040

CALIFORNIA ENERGY MARKETS
517-B POTRERO AVENUE
SAN FRANCISCO, CA 94110

I.02-11-040

RAHUL RAVIPUDI
ENGSTROM, LIPSCOMB & LACK
10100 SANTA MONICA BLVD., 16TH FLOOR
LOS ANGELES, CA 90067

I.02-11-040

NORMAN A. PEDERSEN
HANNA AND MORTON LLP
444 SOUTH FLOWER STREET, SUITE 1500
LOS ANGELES, CA 90071-2916

I.02-11-040

JUDY PECK
SEMPRA ENERGY UTILITIES
601 VAN NESS AVENUE, SUITE 2060
SAN FRANCISCO, CA 94102

I.02-11-040

DOUGLAS PORTER
SOUTHERN CALIFORNIA EDISON COMPANY
2244 WALNUT GROVE AVENUE
ROSEMEAD, CA 91770

I.02-11-040

JOHN W. LESLIE
LUCE, FORWARD, HAMILTON & SCRIPPS, LLP
600 WEST BROADWAY, SUITE 2600
SAN DIEGO, CA 92101

I.02-11-040

EDWARD G. POOLE
ANDERSON & POOLE
601 CALIFORNIA STREET, SUITE 1300
SAN FRANCISCO, CA 94108

I.02-11-040

KURT J. KAMMERER
ENERGY SOLUTIONS PARTNERS
11264 PORTOBELO DRIVE
SAN DIEGO, CA 92124

I.02-11-040

NORMAN J. FURUTA
DEPARTMENT OF THE NAVY
2001 JUNIPERO SERRA BLVD., SUITE 600
DALY CITY, CA 94014-3890

I.02-11-040

CHRISTOPHER A. HILEN
DAVIS, WRIGHT TREMAINE, LLP
ONE EMBARCADERO CENTER, 6TH FLOOR
SAN FRANCISCO, CA 94111

I.02-11-040

ERIC EISENMAN
LA PALOMA GENERATING CO.
345 CALIFORNIA STREET, SUITE 2600
SAN FRANCISCO, CA 94104

I.02-11-040

**I.02-11-040**
Friday, October 24, 2003

EVELYN KAHL
ALCANTAR & KAHL, LLP
120 MONTGOMERY STREET,
SUITE 2200
SAN FRANCISCO, CA 94104

I.02-11-040

LINDSEY HOW-DOWNING
DAVIS WRIGHT TREMAINE LLP
ONE EMBARCADERO CENTER,
SUITE 600
SAN FRANCISCO, CA 94111

I.02-11-040

LULU WEINZIMER
CALIFORNIA ENERGY MARKETS
517 B POTRERO AVENUE
SAN FRANCISCO, CA 94110

I.02-11-040

BRIAN CRAGG
GOODIN MACBRIDE SQUERI
RITCHIE & DAY LLP
505 SANSOME STREET, SUITE 900
SAN FRANCISCO, CA 94111

I.02-11-040

DANIEL MCLAFFERTY
PACIFIC GAS AND ELECTRIC
COMPANY
PO BOX 770000, B9A
SAN FRANCISCO, CA 94177

I.02-11-040

JAMES A. BOOTHE
LEBOEUF,LAMB,GREEN&MACRAE,
L.L.P.
ONE EMBARCADERO CENTER,
4TH FLOOR
SAN FRANCISCO, CA 94111

I.02-11-040

JOSEPH M. KARP
WHITE & CASE LLP
2 EMBARCADERO CENTER,
SUITE 650
SAN FRANCISCO, CA 94111

I.02-11-040

AVIS CLARK
CALPINE CORPORATION
4160 DUBLIN BLVD.
DUBLIN, CA 94568

I.02-11-040

CRAIG M. BUCHSBAUM
PACIFIC GAS AND ELECTRIC
COMPANY
77 BEALE STREET
SAN FRANCISCO, CA 94120

I.02-11-040

EDWARD C. REMEDIOS
33 TOLEDO WAY
SAN FRANCISCO, CA 94123-2108

I.02-11-040

MRW & ASSOCIATES, INC.
1999 HARRISON STREET,
SUITE 1440
OAKLAND, CA 94612

I.02-11-040

ROBIN J. WALTHER
1380 OAK CREEK DRIVE, NO. 316
PALO ALTO, CA 94304-2016

I.02-11-040

ANDREW J. VAN HORN
VAN HORN CONSULTING
61 MORAGA WAY, SUITE 1
ORINDA, CA 94563

I.02-11-040

RICHARD MCCANN
M.CUBED
2655 PORTAGE BAY ROAD, SUITE 3
DAVIS, CA 95616

I.02-11-040

JOE PAUL
DYNEGY MARKETING & TRADE
5976 W. LAS POSITAS BLVD.,
NO. 200
PLEASANTON, CA 94588

I.02-11-040

PETER HANSCHEN
MORRISON & FOERSTER, LLP
101 YGNACIO VALLEY ROAD,
SUITE 450
WALNUT CREEK, CA 94596-8130

I.02-11-040

JAMES WEIL
AGLET CONSUMER ALLIANCE
PO BOX 1599
FORESTHILL, CA 95631

I.02-11-040

REED V. SCHMIDT
BARTLE WELLS ASSOCIATES
1889 ALCATRAZ AVENUE
BERKELEY, CA 94703

I.02-11-040

PAUL M. PREMO
ENERGY ECONOMICS
CONSULTING
310 HAZEL AVENUE
MILL VALLEY, CA 94941-5054

I.02-11-040

MATT HARRIS
HENWOOD ENERGY SERVICE, INC.
2379 GATEWAY OAKS DRIVE,
SUITE 100
SACRAMENTO, CA 95833

I.02-11-040

CAROLYN M. KEHREIN
ENERGY MANAGEMENT SERVICES
1505 DUNLAP COURT
DIXON, CA 95620-4208

I.02-11-040

**I.02-11-040**
Friday, October 24, 2003

SCOTT BLAISING
BRAUN & ASSOCIATES, P.C.
8980 MOONEY ROAD
ELK GROVE, CA 95624

I.02-11-040

ELIZABETH WESTBY
ALCANTAR & KAHL, LLP
1300 SW 5TH AVENUE, SUITE 1750
PORTLAND, OR 97201

I.02-11-040

KEVIN WOODRUFF
WOODRUFF EXPERT SERVICES
980 9TH STREET, 16TH FLOOR
SACRAMENTO, CA 95814

I.02-11-040

MELANIE GILLETTE
DUKE ENERGY NORTH AMERICA
980 NINTH STREET, SUITE 1540
SACRAMENTO, CA 95814

I.02-11-040

DANILO E. SANCHEZ
CALIF PUBLIC UTILITIES
COMMISSION
505 VAN NESS AVENUE
ROOM 4205
SAN FRANCISCO, CA 94102-3214

I.02-11-040

RONALD LIEBERT
CALIFORNIA FARM BUREAU
FEDERATION
2300 RIVER PLAZA DRIVE
SACRAMENTO, CA 95833

I.02-11-040

KAREN LINDH
LINDH & ASSOCIATES
7909 WALERGA ROAD, NO. 112,
PMB 119
ANTELOPE, CA 95843

I.02-11-040

KELLY C LEE
CALIF PUBLIC UTILITIES
COMMISSION
ROOM 4102
505 VAN NESS AVENUE
SAN FRANCISCO, CA 94102-3214

I.02-11-040

JAMES LOEWEN
CALIF PUBLIC UTILITIES
COMMISSION
320 WEST 4TH STREET SUITE 500
LOS ANGELES, CA 90013

I.02-11-040

CHARLOTTE TERKEURST
CALIF PUBLIC UTILITIES
COMMISSION
505 VAN NESS AVENUE
ROOM 5021
SAN FRANCISCO, CA 94102-3214

I.02-11-040

ANDREW ULMER
SIMPSON PARTNERS LLP
900 FRONT STREET, SUITE 300
SAN FRANCISCO, CA 94111

I.02-11-040

JASON J. ZELLER
CALIF PUBLIC UTILITIES
COMMISSION
ROOM 5030
505 VAN NESS AVENUE
SAN FRANCISCO, CA 94102-3214

I.02-11-040

JOYCE ALFTON
CALIF PUBLIC UTILITIES
COMMISSION
505 VAN NESS AVENUE
AREA 4-A
SAN FRANCISCO, CA 94102-3214

I.02-11-040

MANUEL RAMIREZ
CALIF PUBLIC UTILITIES
COMMISSION
505 VAN NESS AVENUE
AREA 4-A
SAN FRANCISCO, CA 94102-3214

I.02-11-040

CLARENCE BINNINGER
ENERGY TASK FORCE
455 GOLDEN GATE AVE.,
SUITE 11000
SAN FRANCISCO, CA 94102-7004

I.02-11-040

JOHN PACHECO
CALIFORNIA DEPARTMENT OF
WATER RESOURCES
3310 EL CAMINO AVENUE,
ROOM 120
SACRAMENTO, CA 95821

I.02-11-040

MARIA E. STEVENS
CALIFORNIA PUBLIC UTILITIES
COMMISSION
320 WEST 4TH STREET,
SUITE 500
LOS ANGELES, CA 90013

I.02-11-040

JACQUELINE GREIG
CALIFORNIA PUBLIC UTILITIES
COMMISSION
505 VAN NESS AVENUE
ROOM 4102
SAN FRANCISCO, CA 94102-3214

I.02-11-040

**I.02-11-040**
Friday, October 24, 2003

GLORIA M. ING
SOUTHERN CALIFORNIA EDISON COMPANY
2244 WALNUT GROVE AVENUE
ROSEMEAD, CA 91770

I.02-11-040

MICHAEL ROCHMAN
SCHOOL PROJECT UTILITY RATE REDUCTION
1430 WILLOW PASS ROAD,
SUITE 240
CONCORD, CA 94520

I.02-11-040

KIRK T. MORGAN
KERN RIVER GAS TRANS. CO.
2755 E. COTTONWOOD PARKWAY
SUITE 300
SALT LAKE CITY, UT 84121

I-02-11-040

**PG&E E-MAIL SERVICE LIST**

adanker@kayescholer.com; agover@dbllp.com; akornberg@paulweiss.com; aro@cpuc.ca.gov; bhermann@paulweiss.com; bhoch@dbllp.com; bill.bates@bingham.com; bill.lockyer@doj.ca.gov; blange@orrick.com; brendan.collins@usdoj.gov; bruce.worthington@pge-corp.com; callisonlf@cooley.com; cameron_baker@sfgov.org; cbonham@tu.org; city_attorney@city.palo-alto.ca.us; cjw5@pge.com; craig.buchsbaum@pge-corp.com; dattanasio@dbllp.com; dcarroll@dbsr.com; dcoffino@deweyballantine.com; dginter@dbsr.com; djwa@pge.com; dkanaya@cooley.com; douglas.chang@usdoj.gov; dshemano@pgwklaw.com; dwyerjc@cooley.com; ed.myrtle@usdoj.gov; ehollander@whitecase.com; elisa.lemmer@weil.com; emseid@aol.com; eodonnell@dbllp.com; eric.brunstad@bingham.com; fbrown@orrick.com; frank.cadigan@usdoj.gov; gary.encinas@pge-corp.com; geoffrey.holtz@bingham.com; gmccrea@dbllp.com; grant_kolling@city.palo-alto.ca.us; grp-cpuc@paulweiss.com; hagnost@nielsenhaley.com; hweg@pgwklaw.com; ita1@pge.com; jason.billeck@weil.com; jbowe@dbllp.com; jhoover@morganlewis.com; jkern@perkinscoie.com; jlindholm@best1.net; jmalkin@orrick.com; jmaroulis@cooley.com; jmiller@dbllp.com; jxb7@pge.com; kostrow@milbank.com; kramerns@cooley.com; lball@milbank.com; lengel@morganlewis.com; leslie.everett@pge-corp.com; lfenning@dbllp.com; lgoldstein@deweyballantine.com; ljay@orrick.com; lla3@pge.com; m49@orrick.com; marccohen@kayescholer.com; margarita.padilla@doj.ca.gov; mdiamond@milbank.com; mgorton@mhalaw.com; mhefter@dbllp.com; michael.donnelly@pge-corp.com; michael.kessler@weil.com; mschenker@cooley.com; mstenglein@dbllp.com; nealsc@cooley.com; oscar.cantu@weil.com; paronzon@milbank.com; patricia.cutler@usdoj.gov; patricial.cutler@usdoj.gov; pcalifano@cwclaw.com; phaley@nielsenhaley.com; pjp2@pge.com; ploegerle@cooley.com; pmar@mofo.com; pmunoz@reedsmith.com; ppascuzzi@ffwplaw.com; pwarden@pillsburywinthrop.com; rcrane@nixonpeabody.com; richard.morrison@weil.com; rick.frank@doj.ca.gov; rkaplan@paulweiss.com; rmoore@milbank.com; romero@dslextreme.com; rrcollins@n-h-i.org; sbeatty@cwclaw.com; schwartzph@cooley.com; sfelderstein@ffwplaw.com; smillich@hotmail.com; srussell@dbllp.com; susan.sallaberry@pge-corp.com; tduncan@bankofny.com; tom.greene@doj.ca.gov; wcw3@pge.com; jlopes@howardrice.com; jnexon@howardrice.com; gkaplan@howardrice.com; <u>jschaffer@howardrice.com</u>; danette.valdez@doj.ca.gov; <u>sabramowitz@velaw.com</u>; <u>ewilson@kelleydrye.com</u>;

# EXHIBIT J

Stroock & Stroock & Lavan – Mr. Weingarten

# BEFORE THE PUBLIC UTILITIES COMMISSION
OF THE
STATE OF CALIFORNIA

ADMINISTRATIVE LAW JUDGE SARAH R. THOMAS, presiding.

| | |
|---|---|
| Order Instituting Investigation into the Gas Market Activities of Southern California Gas Company, San Diego Gas and Electric, Southwest Gas, Pacific Gas and Electric, and Southern California Edison and their impact on the Gas Price Spikes experienced at the California Border from March 2000 through May 2001. | **LAW & MOTION**<br>I.02-11-040 |
| Order Instituting Investigation whether San Diego Gas & Electric Company, Southern California Gas Company and their holding company, Sempra Energy, respondents, have complied with relevant statutes and Commission decisions, pertaining to respondents' holding company systems and affiliate activities. | I.03-02-033 |

55 2641-0059
11-04-03
10-31-03

REPORTER'S TRANSCRIPT
San Francisco, California
October 30, 2003
Pages 55 - 98
Volume 3

Reported by: Alejandrina E. Shori, CSR No. 8856
Lydia R. Radovich, CSR No. 9223

PUBLIC UTILITIES COMMISSION, STATE OF CALIFORNIA
505 Van Ness Avenue, San Francisco, California 94102

SAN FRANCISCO, CALIFORNIA, OCTOBER 30, 2003 - 1:00 P.M.

* * * * *

ADMINISTRATIVE LAW JUDGE THOMAS: Let's be on the record. Good afternoon. This is a law and motion hearing in connection with Investigation 02-11-040. I am the law and motion judge, Sarah Thomas, and I will be handling the rulings on the motions today that are before me.

I have three motions. The first that we will take up is Sempra Energy Trading's motion to quash subpoena duces tecum from Southern California Edison. The second is the motion of Sempra Energy and Sempra Energy Resources for a protective order limiting the scope of discovery from Southern California Edison. And the third is Southern California Edison Company's motion for an order approving a modified protective order for nonparties producing material.

Let's have appearances -- that is, those that intend to speak today -- starting from my left. And then we'll get into the motions.

MR. LICHTBLAU: Eric Lichtblau, for Sempra Energy and Sempra Energy Resources.

ALJ THOMAS: Welcome.

MR. JAZAYERI: Peter Jazayeri, Alex Weingarten, Alan Yudkowsky, for Sempra Energy Trading.

ALJ THOMAS: Welcome.

MR. BASS: Leon Bass, on behalf of Southern California Edison Company.

ALJ THOMAS: Good afternoon.

MR. MATTHEWS: Walker Matthews, on behalf of Southern

California Edison Company.

ALJ THOMAS: All right. I am going to allow each party a brief period of time to argue the motion, but don't reargue what's in your papers.

I have read all of the motions and considered them extensively, and already have in my mind a sense of what I want to do. I'd even be willing to give you my tentative ruling now, if you'd like to know what it is.

MR. LICHTBLAU: Sure.

MR. BASS: Sure.

ALJ THOMAS: On the first motion, which is the Sempra Energy Trading motion to quash, I agree with Edison that the objections based on our jurisdiction are not well placed in this context. And I think Edison laid out fairly well what the arguments are; and that is that the Commission's power to subpoena documents is broader than its jurisdiction to regulate entities. And therefore, I believe the jurisdictional arguments fail, and that the only issue before me in terms of determining what discovery Sempra Energy Trading should respond to is whether the discovery is reasonably calculated to lead to the discovery of admissible evidence, whether it's within the scope of the proceeding.

And so what I was going to do was, as to each of the motions that's aimed at the specific discovery, give you some broad parameters for what I think the problems are with the discovery -- because I do see that in some ways the discovery is overbroad -- and make you go back and confer again, with your focus limited to whether the discovery's

within the scope of the proceeding.

I reject all of your jurisdictional arguments.

With that said, I'm happy to hear something further from you, but that's where I'm leaning.

MR. YUDKOWSKY: Your Honor, if I may.

ALJ THOMAS: Sure.

MR. YUDKOWSKY: Alan Yudkowsky, appearing specially on behalf of Sempra Energy Trading Corp. in connection with this motion.

With respect to jurisdiction, let me see if I can refocus the Court as to the argument that we are, in fact, making. We do not contest the Commission's ability to subpoena SET. Really, the issue before the Court is what the Commission, through the guise of Southern California Edison, may do under state law, and what consitutionally it may not do in respect of a comprehensive federal regulation -- regulatory scheme with respect to wholesale sales of natural gas and electricity. And, with respect, your Honor, I think that that's where the focus of jurisdiction lies.

ALJ THOMAS: But did you file an application for rehearing or an interlocutory appeal with regard to the OII itself? Because it seems to me that that is the place to challenge the Commission's jurisdiction. We're dealing here with the subpoena. And the rules with regard to subpoenas are set forth in 311 and 312 of the Public Utilities Code.

MR. YUDKOWSKY: I understand that, your Honor, but let me address that point. First of all, SET is a nonparty nonjurisdictional entity. It's not a respondent in this

investigation, and therefore, it would not have been appropriate for SET to be involved in such an appearance.

ALJ THOMAS: Is there any appeal or application for rehearing or any attempt by any of the Sempra entities to challenge the Commission's jurisdiction to open the investigation in the first place, which does name the utilities, but then in its scoping memo also makes clear that the focus of the investigation will be not only on the utilities, but on what they did vis-a-vis their holding company and affiliates?

MR. YUDKOWSKY: I would have to defer to Mr. Lichtblau on that, but I will tell you that SET's first involvement in this proceeding was with respect to this subpoena. And as a result, it's our first opportunity to challenge the Commission's jurisdiction, and that was the purpose of the motion to quash.

ALJ THOMAS: And, Mr. Lichtblau, can you answer the question that I posed?

MR. LICHTBLAU: You know, that was my personal first involvement as well. And I could, at a break, place a few phone calls, but I honestly don't know.

MR. BASS: I believe both SET, Sempra Energy Resources, and Sempra Corp. appeared at the beginning of this proceeding for information only. And it would be SCE's position that at any time, they could have specially appeared to make a motion regarding the scope of the issues set forth in the scoping memo, just as they are specially appearing now with respect to the discovery motion.

ALJ THOMAS: And it's your representation that there was no such --

MR. BASS: It's my representation there was no such appearance made by either SET, Resources, or Sempra Corp.

ALJ THOMAS: Was there any application for rehearing or attempt at an appeal?

MR. BASS: There was an application for rehearing brought by SoCalGas and SDG&E.

ALJ THOMAS: Regarding jurisdiction?

MR. BASS: No.

ALJ THOMAS: Let's be off the record for a moment.

(Off the record)

ALJ THOMAS: We'll be back on the record.

We have now identified Mr. Thorp, for SoCalGas and SDG&E.

And, sir, you had a comment?

MR. THORP: Yes. Thank you, your Honor.

The only comment I have is that we did file an application for rehearing; but perhaps not so helpfully to the other Sempra companies, the only issue that we took up is whether or not it should -- the proceeding should be phased in the way that it is currently phased. We asked that the phases be eliminated, and that there just be one phase that considered all respondents at the same time. And that application for rehearing was not successful.

ALJ THOMAS: Okay. So, Mr. Yudkowsky, why don't you proceed with argument?

MR. YUDKOWSKY: Thank you, your Honor.

Again, just a follow-up: Sempra Energy Trading is not a subject of the Commission's investigation in this proceeding. And, as a result, there was no reason for Sempra Energy Trading to be involved before this, but let me go back to the issue of jurisdiction.

It is clear that in the area of wholesale natural gas marketing activity and in the area of wholesale electricity trading, that the Federal Energy Regulatory Commission has exclusive jurisdiction, both under the Federal Power Act, and under the Natural Gas Act. It cannot be underscored enough, your Honor, that Sempra Energy Trading is a wholesale energy marketer. As a result, while it may be subject to the Commission's subpoena power, it is neither subject to the Commission's investigatory power, nor may its activities on the wholesale level be investigated or the subject of this Commission's investigation.

As a result, it has been Sempra Energy Trading's position thus far that, to the extent that Edison is seeking documents/communications between Sempra Energy Trading and its affiliate with respect to affiliate activities, that that would be appropriate; it's both within the scoping memorandum issued by the Commission, and it is within the jurisdictional limits of the Commission.

And the distinction between wholesale and retail activity is key in this analysis, because the Commission's investigatory powers necessarily are limited by that distinction. Edison realizes this, because in its papers, it concedes three matters.

First, it concedes that the issue before the Commission is whether any regulatory mechanisms should be modified or eliminated.

It also concedes that whether SoCalGas or SDG&E violated any Commission rules or state statutes is part of the scope of the investigation that the Commission has initiated.

The third respect, it arises out of one of the data requests that have been issued by Edison; and that is seeking all documents that have been provided, to the extent they have been provided by Sempra Energy Trading to the Department of Justice, to the SEC, to the CFDC, to the Federal Energy Regulatory Commission.

By seeking those documents, Edison acknowledges that there are other investigatory agencies who are vested with the appropriate authority to deal with these wholesale marketing activities who are, in fact, investigating these issues. And it's simply unnecessary for the Commission to go there, because other agencies already are there.

And if I may, your Honor, I would like to have one of my colleagues hand up to you a request for judicial notice. And I would ask your Honor to take judicial notice of the December 19th, 2001, order by the Federal Energy Regulatory Commission in respect of the refund proceeding -- what's commonly called "the refund proceeding."

ALJ THOMAS: Because it's an order of another body, you can simply cite it as a case, as you would cite a Commission order. So I don't even need to take official

notice of it.

MR. YUDKOWSKY: Thank you, your Honor. And the reason I point it out to you is because there -- and it's a rather hefty document -- it discusses the background.

ALJ THOMAS: That's why I want you to just cite it, and not make me take the -- ordinarily you can cite FCC orders, FERC orders, orders of other boards or commissions as case law. And so I don't ordinarily -- unless there's some reason to have this full document in the record for easy reference or something along those lines, I don't ordinarily feel it's necessary to take official notice, because you are free to cite it.

MR. YUDKOWSKY: Thank you, your Honor. I would like, if I may, this document to be part of the record, because it really is not only FERC's order in respect to the refund proceeding, but it is the genesis out of which the various investigations that have been commenced by FERC in connection with not only the electricity markets in the West, but also the natural gas markets and the various issues that really are at the crux of Edison's data request.

ALJ THOMAS: Okay. I'm going to deny your motion, on the grounds that you are free to cite it. And I don't see the need for me to have it in the record in order to refer to it for purposes of resolving this hearing.

I will also say that you've conceded that the Commission has the power to subpoena documents, and that that power goes beyond jurisdiction, and that the only thing before me today is the subpoena. If you've conceded that we

have the power, therefore, as if they were standing in our stead, Edison has the power. I think that ends the inquiry.

I have read your reply brief. It did go into the arguments that you're making here at some length. I've read them. I did allow the filing of the reply brief because I thought that it made sense to allow you the chance to respond, because Edison did raise some new issues in its opposition or some issues that weren't raised in the original motion, but I believe that the law is clear that if we were to determine that our subpoena power goes only as far as our jurisdiction, that determination would eviscerate Public Utilities Code 311 and 312 and our constitutional authority under Article 1, Section 6 -- I may have mis-cited that -- to subpoena records.

You seem to be arguing that we could only subpoena insofar as the subpoenaed party is either under our jurisdiction, or the matter as to which the subpoena is issued is pursuant to our jurisdiction. And I believe our powers are broader than that. Our powers are fairly broad in this context. And by -- it follows that Edison can get at least some of the subpoenaed documents in this case.

I do have trouble, as I said earlier, with some of the requests. And we can go over those specifically, although I'm not going to go over them in great detail today, because what I would prefer to do is give you some parameters where I think I have some concerns, and then order you to go back and meet and confer, with those parameters in mind.

Given that there was a flat-out jurisdictional

objection, a lot of the discovery -- the specifics of the discovery did not get resolved.

MR. YUDKOWSKY: Your Honor, just one last point.

ALJ THOMAS: Sure.

MR. YUDKOWSKY: And then I'll rest my case, if you will.

We agree that the Commission has the right to issue a subpoena. Where we disagree respectfully is that that right to issue a subpoena and the scope of that subpoena has to be limited by the commerce clause and by the federal powers against which it bumps. And therefore, the argument is really one of does Commission has the constitutional right to do certain things under both the California constitution and under the Public Utilities Code. What it does not have the right to do is step beyond those bounds into the purview of the commerce clause where it is expressly preempted.

And I respectfully submit, your Honor, in this case and with respect to these data requests, that is precisely what Edison is doing.

ALJ THOMAS: Okay. You have my ruling. I don't believe that your arguments go to the power of the Commission and, by extrapolation, Edison to subpoena records. And therefore, what I'd like to do is give you some broad outlines -- guidelines for the specific discovery and then, as I said, order you to go back and talk further.

Because I do think, Mr. Bass, that when you ask for every document that passed between two entities or every document that the entity possesses that deals with the gas

market, the western gas market, I think those discovery requests are overbroad. I get the sense that what you're trying to do is get everything and then see if there's something within the universe that is pertinent to the issues before me, and I don't think that's proper.

MR. BASS: Well, that's --

ALJ THOMAS: So I would like to limit discovery to documents that relate to the specific issues that are in the scoping memo.

It seems to me that one way you could do this is to narrow the discovery requests to essentially mirror what's in the scoping memo: all documents that relate to and then cite to -- quote the scoping memo.

It seems to me that this is a fishing expedition to ask for all documents relating to the western gas market that passed between two entities. That is too broad.

So let's hear your response to that.

MR. BASS: Well, Edison will represent that in its data request questions, it was tracking the scoping memo issues and, in fact, trying to be more specific with areas that we knew about.

But the nature of discovery itself is essentially a fishing expedition. We don't know what the affiliates have. And also, when we propounded discovery to the respondents, we don't know what they have exactly. That's why we have to utilize general categories, which we tried to do, but as specifically as we possibly could.

ALJ THOMAS: All right. Let's go through this. And

I'll to try refer -- there may be some overlap between the first motion and the second motion because both motions deal with the specific discovery requests and problems that Sempra has with -- or the Sempra affiliates have with discovery.

MR. BASS: Well, in that Sempra Energy Resources and Sempra Energy Incorporated by reference, Sempra Energy Trading's jurisdictional arguments, there is certainly some overlap.

ALJ THOMAS: Right. Let's look at page 12 of the motion that we have under discussion right now, the -- I'm sorry. Page 12 of the response of Edison to the motion under consideration. That's where it starts to talk about individual requests and it's -- the data requests are lumped together in large numbers. But they seek discovery related to information sharing between SoCal Gas, SDG&E, Sempra and SET and whether SET took actions as a result of inappropriately shared information. That seems overbroad to me.

Now, I didn't -- I have to confess: I didn't look at each individual discovery request listed there because there were dozens of them. But to ask specifically generally for information that was shared between the two without narrowing it to the issues in this case is problematic. Maybe I'm missing something.

MR. BASS: Looking at Issue 2 that's in the scoping memo of April 16, 2 starts with: Any of SoCal Gas and SDG&E's affiliates or their parent company Sempra play a

role in causing the increase in border prices. That is a very broad issue. And I would submit that virtually all of our questions to all of the affiliates would be relevant to that issue alone.

ALJ THOMAS: There's got to be a way to limit it. I mean, you're asking for virtually every document that ever passed between these entities, and I'm just -- I'm never going to allow you to ask that broad a question.

MR. BASS: What we were asking is that a diligent and reasonable search be conducted by the affiliates. And with that, reasonable and diligent comes with certain parameters. As was indicated in both Sempra Resources and Sempra Corp's papers and in ours, Mr. Lichtblau and I did discuss that, and there was a discussion about the fact that it was asking for a lot of people to -- according to Mr. Lichtblau, a lot of people to conduct searches. And my response was it can be limited, just as long as it can be demonstrated that the search is diligent and reasonable.

ALJ THOMAS: Let's go off the record for a second.

(Off the record)

ALJ THOMAS: Let's be back on the record.

I needed to locate the actual discovery requests.

I'm looking at Question No. 1, just as an illustration. This is attached to the declaration of Mr. Yudkowsky in support of Sempra Energy Trading's motion.

Question No. 1 asks for all documents that discuss, analyze, or refer to Southern California Gas Company's activities in western U.S. physical and forward gas

markets during the subject period. That's overbroad.

It has to be that might go to the issue of why the prices during the subject period were so high. I mean, they're a company that's in this business. If every document that transferred between them relating to its business is to be produced, they're producing every record in their files presumably. It's just too broad.

So I'm going to either deny you the right to ask this question and make you propounded new discovery because I think this is just asking for everything in their files; or, I'm going to make you go back and try to narrow these somewhat.

I mean, ask about records that discuss, analyze, or refer to the price spikes or that might shed light on why the prices were so high or that might indicate that the parties were sharing information, inside information, that they shouldn't be sharing, and therefore giving each other or one another a competitive advantage; all of the things that this investigation seems to be focused on.

MR. BASS: May I be heard?

ALJ THOMAS: Sure.

MR. BASS: When you continue down on Question No. 1, there are several items A through M that are listed. And what it says that the response should include, but not be limited to, all documents referring to, and there it specifies what it is that Edison is looking for.

I think that an argument could certainly be made if Edison came back and said, "Well, you gave us that, but

you didn't give us -- we don't know whether you gave us everything that" --

ALJ THOMAS: Yeah. I don't agree on that. I mean, just looking at the subheadings, again, they are so generic as to essentially call for routine documents that would be generated in the course of the company's business: All negotiations with SoCal Gas for the purchase or sale of natural gas, transportation services, hub services or storage services, purchases of natural gas from SoCal Gas or sales of natural gas to SoCal Gas in production basins or at the California boarder.

I mean, again, that's asking for everything they did. It seems to me you have to focus on documents that would shed light on why the prices were what they were.

I mean, the approach that you're taking seems to be "Give us everything and then we're going to go comb through everything and find evidence of what went wrong." And that's one approach, and it might be the approach that the Commission might want to take.

MR. BASS: Given the broad scope that you see in the scoping memo issues, I think that essentially is the really only effective way to obtain information here from the affiliates or from the respondents.

Another concern, if I --

ALJ THOMAS: I don't agree with you.

MR. BASS: Yeah.

ALJ THOMAS: And I don't agree that limiting it to searching certain individual's files cures the problem.

Because the subject matter is so broad, that limiting it to certain individuals does not eliminate the subject matter problem.

MR. BASS: Well, it also could be that the affiliates do not -- can look at the broad categories here and say they don't have any documents responsive to, and that would take care of the matter right there.

In fact, I believe SER has indicated that that's what they have already found to be, and that's how they would respond.

And it would be only for those particular questions where they do have documents that they'd have to conduct a search. And yes, it would be broad, but it still would be relevant to the broad-based issues that we find in the scoping memo.

ALJ THOMAS: I think, as I look down through some of the other questions, I think many of them suffer from the same problem, which is what you're asking to do is look at everything because it's difficult to -- you're saying let's look at everything because in that haystack we will find the needle. And I don't think that that's the proper way to approach discovery here.

It might be either the Commission decided that that was the way it wanted to do it, but to start out that way seems overbroad to me.

As I look at the next one, it's a document -- all documents that refer to gas market conditions in western gas markets during the subject period.

Again, that could mean anything. It could mean normal conditions. It could mean price spike conditions. But it seems to me it should be limited to documents that refer to the price spikes and the causes for them.

Third one: Memos that deal with, and other communications, that deal with the use of Enron On-Line for gas purchases. Again, it seems to me that that could be limited to the use of that device and I don't know how that device necessarily relates. But let's assume it does. The use of Enron On-Line for gas purchases in a way that contributed to the price spikes.

And I think I can continue in that vein, which is why what I wanted to do is to give you my reaction and tell you that I think you have some work to do, sitting down and negotiating.

MR. BASS: Two concerns.

ALJ THOMAS: And again, it may be that the Commission decides at some point down the line we need more. But at the first, fresh out of the box, I think you need to at least try to get the ball rolling with regard to discovery and to focus it on the issues that are really germane to the investigation I think would be more productive.

MR. BASS: Okay. If I may.

ALJ THOMAS: Sure.

MR. BASS: I have two concerns with what I'm hearing from the Bench; one is with respect to finding the needle in the haystack.

In order to really focus questions on the needle,

you have to know what that needle is. And it's very difficult for Edison to know that not --

ALJ THOMAS: Do you have any -- I mean, are there theories about what these players may have done --

MR. BASS: Most certainly.

ALJ THOMAS: -- to contribute -- may or may not have done to contribute to the border price spikes?

MR. BASS: We are also -- all our questions were designed to try to elicit information and attempt to respond to the issues as set forth in the scoping memo.

ALJ THOMAS: Right. And I understand that this is a slightly odd situation because it's the Commission's investigation, yet the Commission has asked parties to also help it along in terms of developing the record. So you may feel sort of compelled to do some of this by what's in the decision. But at the same time, I am concerned that the -- sort of the first step out of the box to ask for everything isn't a great way to get the discovery ball rolling.

MR. YUDKOWSKY: Your Honor, if I may.

ALJ THOMAS: Let him finish.

MR. BASS: I had one more.

MR. YUDKOWSKY: My apologies.

ALJ THOMAS: I'm here to frustrate you all, you can tell.

MR. BASS: The other concern is time.

ALJ THOMAS: Yes.

MR. BASS: We have been working on this for many

months now.

ALJ THOMAS: Right.

MR. BASS: And our testimony is due in a period of days --

ALJ THOMAS: Right. Now I know --

MR. BASS: -- at this point.

ALJ THOMAS: I know this date was set by all of you.

MR. BASS: Well, unfortunately, because of schedules of all the lawyers --

ALJ THOMAS: Right. But I mean, I could have heard this a long time ago because I had the papers for some time now. But it sounds like I did give you all the freedom to set your own schedule, and this is the date you all agreed on.

MR. BASS: Well, I couldn't do it. I could have been here earlier, but I can't do it without the other attorneys being available.

ALJ THOMAS: Right.

MR. BASS: And they weren't.

ALJ THOMAS: Okay. And I'm sympathetic to the need to get this discovery rolling, which is why I think it would be --

MR. BASS: It's even beyond rolling here. I mean --

ALJ THOMAS: Do you have anything at this point?

MR. BASS: Oh, we have information from respondents, but nothing from the affiliates at all. Because of their jurisdictional arguments, they believed that they were not required.

ALJ THOMAS: All right. Well, I disagree that they're not required to respond. They are required to respond. The question is what they're required to respond to.

And I would be prepared to order you all to sit down after this hearing is over -- because you're all here -- and meet and confer once again. And I would be even willing to come back down here later in the afternoon, if the court reporters can accommodate me, and, you know, have you memorialize some agreement, or have me make some calls with regard to the remaining issues, but I think you need to sit down and narrow this.

Otherwise, I could go through the various arguments, and sort of grant or deny, but it's difficult, because there are so many discovery requests, and that could take all afternoon. And I thought it might be more productive for you all to talk.

MR. BASS: The only concern I would have is that I would like to -- we have consultants, of course, as do respondents and affiliates. And I would need to confer with my consultants about our discussions here in narrowing the request to ensure that we're at least getting some of what -- or a lot of what they need --

ALJ THOMAS: Right.

MR. BASS: -- to draft testimony.

ALJ THOMAS: Can you get them on the phone today?

MR. BASS: I can. The problem is they're in Cambridge; but they're still there now. I can get them on the phone.

ALJ THOMAS: All right. Why don't we do this? Let's go off the record for a moment.

(Recess taken) ]

ALJ THOMAS: Let's be on the record.

We've now had about a 20-minute break during which I asked counsel to consider the possibility of a meeting today here among themselves to try and narrow the scope of discovery.

Counsel wanted to talk to their respective experts and/or consultants and clients, and I believe have had an opportunity to attempt to do so.

Mr. Bass, can you report back?

MR. BASS: Yes, your Honor.

I did get a chance to talk to our consultants briefly and they're checking into it. But I would like to propose -- make a proposal regarding the --

ALJ THOMAS: Sure.

MR. BASS: -- data requests.

One -- it's a two-step proposal. The first step would be to ask the affiliates -- there were certain questions that both Sempra Energy Trading and Sempra Energy Resources and Sempra Energy Corp. indicated they had no objection to initially. That we in this first step would ask that they respond and produce documents to those questions that they indicated they would early on.

ALJ THOMAS: Meaning the only objection was the jurisdictional one?

MR. BASS: Yes. And even with that, they indicated --

there was an indication from them that they would respond to certain questions that they thought were within Commission jurisdiction.

ALJ THOMAS: Okay. And what's the second part?

MR. BASS: The second part would be then that SCE refashion a data request to each of the affiliates in keeping with what your Honor provided on the record thus far. And we'd do that forthwith; getting a new request to them, I'm even going to venture to say tomorrow afternoon, but then have an expedited period within which the affiliates would provide responses, and then provide documents I was thinking, off the top, three days to provide responses and then an additional two to provide documents.

That would be the initial proposal.

I don't have complete authority from my superiors at SCE on this proposal, though. I anticipate that they may be acceptable of it.

ALJ THOMAS: Okay. And let's hear from the various lawyers for the other side.

First of all, have you had the opportunity to speak to whoever it was you needed to call?

I know, Mr. Lichtblau, you wanted to talk to the attorney that would be handling this motion in your absence.

MR. LICHTBLAU: Yes. I called her and she's coming down because I thought we were going to actually -- I thought we were going to sit down and do some negotiating, and I thought she'd want to be here for that. But it sounds like

Mr. Bass is proposing that instead he go back and try to rewrite the request. So I don't think we need to wait for her to get here if that's what we'll end up doing.

ALJ THOMAS: Mr. Yudkowsky.

MR. YUDKOWSKY: Your Honor, our client unfortunately is also on the East Coast. We were not able to speak to anyone there, so I don't have the client's authority.

Let me, however, correct the record, if I may, with respect to Mr. Bass's recollection.

While there were I believe 12 data requests with which we agreed or parts of those data requests that were within the Commission's jurisdiction, we reserved all of our rights to object on some of grounds that your Honor referred to earlier.

So while we'd, at least with respect to those categories, be willing to respond quickly and we would welcome refashioning of the remaining data requests, we'd still reserve our right to object on grounds other than jurisdiction.

ALJ THOMAS: Again, we don't have a lot of time here. So it seems to me that if -- I'm just not sure why we haven't had substantive objections to these data requests given that they've been outstanding for so many months. So it feels a little bit like you're imposing some additional delay that we can't afford at this point if you haven't yet given them the individualized responses to the various data requests.

So what I'm going to do is, I think Mr. Bass's proposal is reasonable and necessary given the short time

frame that you're working on now. So I am going to set a very short time frame for you to raise your specific objections to the revised discovery that he's indicated he's willing to provide -- to propound.

MR. YUDKOWSKY: Your Honor, we're happy to comply with that time frame with respect to the responses, but I must tell that you that Mr. Bass's proposal that documents be produced within two days after is probably --

ALJ THOMAS: You don't know what the discovery is yet.

MR. YUDKOWSKY: I agree. But it's likely unworkable.

(Cell phone rings)

ALJ THOMAS: What I'm going to do is --

Let's be off the record for a second.

(Off the record)

ALJ THOMAS: On the record.

What I'm going to do is to ask that you go forward and do that, Mr. Bass; ask that you rewrite these in a way -- you don't have rewrite them. You can simply agree to narrow them and -- the clock has been running for some time on those discovery requests, but I think your proposal is even more reasonable in what you're doing is proposing to rewrite them, which I think benefits the other side as much -- and order that responses be -- written responses be produced.

What did you propose?

MR. BASS: I said in two -- if we got them tomorrow, be produced by Tuesday. Tomorrow is Friday; correct? So by next Tuesday, with documents by Thursday.

ALJ THOMAS: All right. When's your hearing?

MR. BASS: Testimony -- SCE testimony is due November 12th. So we're talking 13 days.

MR. THORP: The hearing itself is in March.

MR. BASS: The hearing is in March.

ALJ THOMAS: Have you approached Judge TerKeurst at all about extending that deadline?

MR. BASS: We have had an extension of the deadline previously. The earlier deadline was in November -- excuse me, in June. And we had requested to December 17 and received November 12th. So that's where we are with that.

ALJ THOMAS: All right. Well, I'll talk to her about this given that I do think you need some discovery and some of the delay has been that there were jurisdictional arguments, responses to discovery requests that I don't think were appropriate. I don't think -- I mean, you weren't doing anything wrong, but I don't think they are sustainable in this context.

Therefore, what I'll do is I'll say that go ahead and propound your discovery tomorrow, which is the 31st of October.

MR. BASS: What about with respect to those questions that the parties had indicated they had no objection to?

For instance, in I believe Sempra Energy Trading's reply on page 5, Footnote 6, it indicates that SET had already indicated to Edison that it would produce documents responsive to Requests 1, 10, 25, 26, 27, 28, 33, 34 and 37 of Set 1 and Requests 6, 7 and 8 of Set 2.

ALJ THOMAS: All right. Then I will hold SET to that

representation, and SET will be required to provide documents in response to those requests on the same time limit I'm going to give you now with regard to the new requests, because I'm going to give you a very short timeline.

The written request, as I said, will be propounded on the 31st of October, by close of business tomorrow. But make sure that they're in the hands of the respective attorneys. So talk after this about how to make sure they actually have them in their possession tomorrow.

The written responses shall be due by the 5th of November, which is Wednesday. And the documents will be due on the 10th of November.

I know that puts you up against a deadline. I'm going to talk to Judge TerKeurst about what we've done today and see if there's any flexibility there.

The hearing is what date?

MR. THORP: It's the entire month of March, your Honor.

MR. BASS: The hearing starts in March because after SCE testimony, then there's opportunity for rebuttal testimony.

ALJ THOMAS: I'll talk to her.

MR. THORP: On that point, I'd just like to say one thing. If do you talk to Judge TerKeurst about the schedule, I would urge you to also tell her that the respondents in Phase 1 believe that they need every day that they've got right now to prepare rebuttal. We believe that Edison is preparing a very substantial showing and we need each of

those days to actually respond. It would be horrendous for us if there was an extension of their testimony deadline but there was no concurrent extension of our time to prepare reply testimony.

ALJ THOMAS: When is your testimony due?

MR. THORP: The testimony is due I believe on February 24th.

ALJ THOMAS: That's pretty generous. I've never given anyone that kind of a generous schedule. So --

MR. THORP: But --

ALJ THOMAS: -- let me see.

Obviously, this is all up to her. I'm just going to let her know what happened today and indicate that the discovery has to happen and we're really up against a deadline.

MR. THORP: And your Honor, I would just say part of the reason -- Edison made a motion to extend the procedural schedule. We responded and presented detailed reasons why we needed extensive time for rebuttal testimony. And one of those reasons is we have really not been able to do any discovery right now. Edison has responded to a certain number of data requests. Other parties have told us -- or PG&E at least has told us that you can't have any information from us because --

ALJ THOMAS: I'm going to stop you right there. All I'm going to do is let her know what happened today and what schedule I set, and it's going to be up to her. So if you feel you need to communicate with her, you should do that.

I just need to let her know the outcome of this indicates that discovery is going to happen. It appears that Sempra at least believed that it might not because of the jurisdictional arguments that were made, and there needs to be some time to get this done. It benefits the Commission as well as Edison, the propounding party, to have this discovery done.

MR. YUDKOWSKY: Your Honor, one more point if I may.

ALJ THOMAS: Sure.

MR. YUDKOWSKY: Mr. Bass referred you to Footnote 1. And I would refer your Honor to Footnote 2 which follows:

> SET's willingness to produce these documents, however, is subject to appropriate objections to the data requests, all of which are expressly reserved. Moreover, any production would be made subject to an appropriate protective order respecting confidential and proprietary information.

ALJ THOMAS: Okay. We'll talk about the protective order shortly.

I just find that difficult to reconcile; the one statement with the other. One statement is you'll produce it and then the second statement is you won't produce -- you'll produce subject to objections. And I'm not sure why you said you would produce if --

MR. YUDKOWSKY: Well, your Honor --

ALJ THOMAS: -- you were later going to limit it.

MR. YUDKOWSKY: -- you frankly went in the same direction that we were thinking, although it's not properly before your Honor with this motion. But with respect to Data Request No. 1, your Honor believed it was overbroad and that's one of the data requests that we thought would comply -- was within the Commission's jurisdiction. So that frankly was our thinking as well. Your Honor is already there.

ALJ THOMAS: Okay. Given that we're on such a short time frame to respond to the data requests, why don't you propound your responses to the data requests that you get tomorrow and your objections to the ones that you said you would produce responses to but now say you also have objections to. Propound all of those written responses by Wednesday, the 5th, close of business. And again, by hand delivery or some method designed to get the responses in the hands of the other side on the date they're due. And then we'll see where we are. Because I don't know what the objections are going to be until I see them.

MR. BASS: Just for the record, your Honor. I did address those data requests that Sempra Energy Trading indicated that they would already respond to, but I did not do that with respect to Sempra Energy Resources and Sempra Energy Corp.

What we can do is identify those in a letter attached to the revised data requests to them tomorrow.

ALJ THOMAS: Sure. Do that.

And the order would be the same; that is, to the extent that you simply agree -- and I'm speaking now to Sempra Energy Resources and Sempra Energy Trading. To the extent that your counsel agreed to produce responses but for this jurisdictional objection, go ahead and produce your responses. To the extent that your argument is the same as Mr. Yudkowsky's -- and that is that you said you would produce documents but subject to some objections that might go to burden or relevance or the like -- go ahead and produce those responses on the 5th of November.

Does that make sense? I don't know that that was very clear.

MR. LICHTBLAU: In our case, there were several that we said fine, and then there were several that were the subject of our motion because our motion was primarily on whether some went beyond the scope of the proceeding and some were overbroad.

ALJ THOMAS: Right.

MR. LICHTBLAU: I take it at this point Edison is going to attempt to resolve that in the next draft. And then on November 5th, if we don't think he did, that's when we will serve further objections.

ALJ THOMAS: Right. Does that make sense?

MR. BASS: It does. Would there be some kind of expedited proceeding available to adjudicate the disputes?

ALJ THOMAS: Yes, by conference call. Therefore, send me copies of the discovery and the responses.

That's not the usual means of doing this, but

given where you are in the process, send me copies.

And then if we need a conference call to resolve disputes, we'll do it by conference call.

I'll ask you, Mr. Bass, since you're the propounding party, to set up the meeting number and everything for everybody and let everyone know how to call in.

And I'm around all next week.

MR. BASS: Okay.

ALJ THOMAS: So we can do it at your convenience.

MR. BASS: So that these --

ALJ THOMAS: And that won't be reported.

MR. BASS: And the dates are November 5 -- if -- we will provide the revised data requests tomorrow; that is, October 31. The responses are due November 5.

ALJ THOMAS: 5, close of business.

MR. BASS: 5. And documents due November 10.

ALJ THOMAS: 10, close of business.

MR. BASS: Thank you.

ALJ THOMAS: And again, as to all three sets, get them in the hands of the recipient. Do everything you can to make sure that you've contacted the recipient, and that they actually received them. And I would again urge you to make those arrangements now, so that there's no problem later. Okay.

MR. YUDKOWSKY: Your Honor, one last point.

ALJ THOMAS: Sure.

MR. YUDKOWSKY: Just to be clear, to the extent the

conference call is designed to deal with any objections with respect to burden -- in other words, after we serve Edison with the responses and objections, to the extent that there is a burden issue, that we could take that up with your Honor on the conference call that we set up before the 10th.

ALJ THOMAS: If you need it. I mean, if you object, and they're okay with what you've said, and you produce the documents, and there's no problem, obviously, don't involve me; but yes, if you're concerned with the responses, then involve me.

MR. YUDKOWSKY: Thank you, your Honor.

ALJ THOMAS: Let's be off the record for a second.

(Off the record)

ALJ THOMAS: Back on the record.

All right. We just talked a little bit about the second motion, which is the motion of Sempra Energy and Sempra Energy Resources for a protective order. And that motion is subsumed into the agreement that we've all just made with regard to timing; but I would like to point out, because Mr. Lichtblau mentioned it off the record, that I will require the responding parties to search attorney files for documents responsive. Even if you don't produce anything, you at least have to produce a privilege log with regard to those documents; but sometimes documents in attorneys' files aren't privileged, because they were sent to the attorney and 70 other people, and so they were never privileged documents to begin with. So I won't carte blanche exempt you from searching attorney files and responding to

discovery.

MR. LICHTBLAU: With regard to -- I guess we'll have to see the new requests, but with regard to a privilege log, I could see some examples where that would just kind of get out of hand.

For example, some of them don't relate to necessarily documents created during the subject period, but anything that discusses it. And Mike Ford is the attorney of record for this proceeding. He's going to have a ton of clearly privileged documents in representing the utilities here that --

ALJ THOMAS: I think once you see the discovery request --

MR. LICHTBLAU: Yeah.

ALJ THOMAS: -- which I expect to be more narrowly tailored to the issues in this proceeding, I would hope that the responsive documents would then be easier to identify.

MR. LICHTBLAU: Right. That's why I'm saying -- I'm getting ahead of myself there, but I still see possible issues with that, with the --

ALJ THOMAS: Okay.

MR. LICHTBLAU: At least with the attorneys that are representing the clients in this proceeding.

ALJ THOMAS: Sure. We can take that up next week if there's a problem. And I don't think that the privilege log needs necessarily to be produced next Wednesday, but it should be produced, you know, within the next couple of weeks.

That can take some time to prepare. And I always make clear that the privilege log should contain the date, the people who sent the document or the authors, the recipients, and a general subject matter -- description of the subject matter of the document.

MR. THORP: Okay. Your Honor, just for clarification, because I'm sort of surprised by this discussion, I would strongly object to having to -- I don't have the exact requests in front of me. I'm not that familiar with the requests.

ALJ THOMAS: Well, again --

MR. THORP: I just read the papers, but --

ALJ THOMAS: We're going to do new requests, so nobody has them.

MR. THORP: Okay, but it would be -- to me it seems to be strange and it would be very burdensome if we would have to create a privilege log with respect to documents that are created or received by an attorney that are part of the preparation process for a proceeding at the CPUC; in this case, this border price investigation. If I send out a note to somebody in August of 2003, that --

ALJ THOMAS: No. I mean the discovery is going to be focused on the subject period, on past events. Again, it's -- we're talking about this in a vacuum, because I haven't seen the discovery. None of us knows what it's going to say. Mr. Bass very soon will propound it, and we'll all know; but a privilege log tends to be focused on documents that were prepared at the time of the events that occurred

and that are under litigation --

MR. THORP: That somehow relate to these price spikes --

ALJ THOMAS: -- that somehow relate to the issues.

MR. THORP: -- in 2002/2001 that would otherwise be responsive. And we're holding back because --

ALJ THOMAS: I've probably prepared dozens of them over my career. It's not strange or unusual, in my experience. If there's an argument about that later, we can take that up later.

MR. THORP: What I was saying was strange or unusual to me is it seems unusual, the discussions seem to be tending to actually having a privilege log with respect to the work I have done in this proceeding.

ALJ THOMAS: No. We will talk about it further, if and when we talk next week. I don't think we're going to run into that problem.

I would not include in the privilege log things that have been created as part of this investigation. I'm talking about documents that may have passed into the attorneys' hands at the time of the price spikes at issue that might discuss the reasons for the price spikes. And you might contend -- all of you on the Sempra side of the table might contend that those are privileged documents; and Mr. Bass might contend that they're not. And in order to determine whether they were or they were not, we need to see a log of them.

MR. THORP: Thank you for the clarification,

your Honor.

ALJ THOMAS: Sure.

MR. BASS: One other request, your Honor.

ALJ THOMAS: Sure.

MR. BASS: With the respondents in this court, on the record, we established not only the subject period, but we established a discovery period --

ALJ THOMAS: Right.

MR. BASS: -- which was --

ALJ THOMAS: A broader period than the --

MR. BASS: -- a broader period of time. And I think it might be a good thing to establish that discovery period with respect to the affiliates.

ALJ THOMAS: Right. And remind me what it was.

MR. BASS: It was April 1, 1998, through May 31, 2002. And I believe I had a right; otherwise, Mr. Thorp would have already said something.

MR. THORP: Mr. Bass has got it correct.

ALJ THOMAS: Okay. That will be the appropriate discovery period for all of these parties before me today.

All right. Let's go to the third motion, which is the terms of the protective order. And I think I agree, again, with Edison that one protective order is all that's necessary, but I do think some modifications might be in order --

MR. BASS: Okay.

ALJ THOMAS: -- given that I've rejected the jurisdictional arguments.

I'll just go off the record for a second.

(Off the record)

ALJ THOMAS: We'll be on the record.

So I've looked at the response of Sempra Energy and Sempra Energy Resources to the motion of Southern California Edison for the protective order, Mr. Lichtblau. And I think some of your concerns are well taken. So I was going to just highlight the ones that I thought reflected changes that should be made. And if I don't indicate a change should be made, you can assume that I've rejected your suggestion.

So pages 7 and 8, I reject your suggestions.

Page 9, the proposed change to paragraph 1 is fine with me. So that would be because Section 583 of the Public Utilities Code and the Commission's General Order 66-C already require Commission employees to maintain the confidentiality of such protective materials.

Page 10, I reject everything.

Page 11, I reject.

MR. THORP: Your Honor, just for clarification, I'm trying to find and line up the page references you've got. Are you in Appendix B or Appendix C.

ALJ THOMAS: Let's be off the record.

(Off the record)

ALJ THOMAS: Let's be back on the record.

Let me clarify, because there appears to have been some confusion, that the page numbers I'm referring to are the page numbers of the brief that Sempra Energy and Sempra

Energy Resources filed, and not the attachments; because I think the brief not only suggests the changes, but also explains why the changes should -- in Sempra's view, should be made. So it's easier for me to rule on them together with the arguments.

I reject the argument that Edison cannot designate employees as, quote, "reviewing representatives."

MR. BASS: What page was that, your Honor?

ALJ THOMAS: Page 12.

And everything else on page 12.

Okay. I do agree with Sempra, on page 13, changes to Edison paragraph 11; that there should be some provision to address what, quote, "reviewing representatives" must do with protected materials already in their possession if their employment has been terminated. So I'd suggest, Mr. Lichtblau, that you provide language, or that the parties simply adopt the language that Mr. Lichtblau has suggested.

I also don't have a problem with the suggestion in paragraph -- on page 13, paragraph 12, additional changes to Edison paragraph 12, where Sempra proposes to add some language stating none of the participants or nonparties waive their rights to seek additional administrative or judicial remedies after a decision respecting protected materials or reviewing representatives or the Commission's denial of any appeal thereof. That's fine.

MR. LICHTBLAU: Okay, your Honor. And, your Honor, actually unless I'm able to persuade you to change your mind on some of the ones you've rejected, I think that's already

in there, but it was in a different spot that had been deleted because I was deleting the whole paragraph. I'd have to check, but I think that may already be there, if you don't allow the deletion of the other paragraph.

ALJ THOMAS: Okay. Would you explain why on the next one, page 13, at the very bottom, you think "necessary to aid the Commission in this proceeding" -- that's the language, in quotes, you think should be added --

MR. LICHTBLAU: Well, it was -- it was to --

ALJ THOMAS: -- if necessary?

MR. LICHTBLAU: The problem I had was with the term "related to," because it was related to this investigation. And I mean, to me, some of the FERC proceedings or the AG's lawsuits are related to this investigation. And that's why I didn't like the use of that word: because I think "related to" is just ambiguous.

And I'd be happy if Edison has some suggestion other than the one I used that somehow really indicates it can only be used for this proceeding. "Related to" this proceeding just seemed to open it up.

MR. BASS: Unfortunately, I don't have his Sempra Energy Resources response in front of me, but I will look at it. I'm going by what it is that I had. And I'm noting what it is that you're saying.

ALJ THOMAS: Okay. Let's be off the record for a second.

(Off the record)

ALJ THOMAS: Back on the record.

MR. LICHTBLAU: I'm sorry. Yeah, that's where it is.

ALJ THOMAS: Back on the record.

I have looked at the underlying language from the proposed protective order, and I'm going to rule that the words "related to" should remain. I believe they're clear enough, and that the restriction that you're proposing, Mr. Lichtblau, requires people to read the Commission's mind as to what's necessary to aid it in this proceeding. "Related to this proceeding," I think, is clear enough.

MR. THORP: And this may be a point that was just heard. At least I can clear the record that SoCalGas and SDG&E would strongly object to any interpretation that protected materials produced in this proceeding could be used in other proceedings because of an expansive interpretation of the words "related to."

ALJ THOMAS: I interpret "related to" to mean they may be used in this proceeding.

MR. THORP: And that's the way we've been interpreting it in this proceeding alone.

ALJ THOMAS: Right. Which is why I'm ruling that the words "related to" should remain.

MR. LICHTBLAU: With that definition of "related to" on the record, I'm happy.

ALJ THOMAS: I think that's it with regard to your proposed changes. So that resolves, I believe, the concerns about the protective order.

MR. LICHTBLAU: Well --

ALJ THOMAS: Other than the fact you disagree with me

on all the things I rejected.

MR. LICHTBLAU: Just to be clear then, I take it it's -- you believe that the Commission has authority to determine that a document that we believe is confidential isn't confidential, and is therefore allowed to be distributed publicly.

ALJ THOMAS: Well, it's not necessarily that -- first of all, you're given fairly broad authority to designate. Because unless somebody comes to me or to the assigned ALJ and asks that the designation -- challenges the designation, you're going to be designating as you see fit. But there is it a tendency to overdesignate, I think.

And I don't know why someone necessarily would challenge the designation. But it seems to me that if material that is clearly not confidential has been so designated, it's within the Commission's broad authority to subpoena records to also consider whether documents should be -- are appropriately so designated. But I --

Do you anticipate a lot of motion practice over a designation?

MR. LICHTBLAU: No. I guess, your Honor --

ALJ THOMAS: Because it seems that both sides are going -- in the second phase, it may be in Edison's interest to keep things confidential. So it seems to me nobody is going to be arguing about most confidentiality designations because they are going to be produced -- the documents are going to be produced. They are just going to be produced in a way that keeps them confidential.

MR. LICHTBLAU: I guess the concern that we had isn't in that narrow sense of is it really confidential. If Edison can prove that the document isn't confidential, we wouldn't have issues with that. But for utilities, the Commission has the power to determine that even something that is truly confidential shouldn't be. And I -- it appears to me the way it is drafted, that power remains. And that's the power we take issue with. If it truly is confidential, I don't think the Commission has the authority to say it shouldn't be and that there's a public interest in making the documents public.

And this has happened in Pac Bell proceedings, for example, where the Commission recognizes that documents are actually confidential but believe it's in the public interest that they not be.

And for utilities, the Commission clearly has, as part of its authority, part of its jurisdiction, to say "You're a regulated utility; and as part of that, we have certain rights to determine how you do your business and what the public knows about it."

For the parent company that's not a utility, that's where we had the concern, because there's nothing that would restrict a party from coming in and saying "This is juicy stuff. It should be public."

ALJ THOMAS: Well, I believe that the Commission has that authority, not only with regard to -- with reference to Public Utilities Code 311 and 312, but there was also a decision that the Commission issued in a case that I worked

on so I know it pretty well, the holding company investigation, where it held that the Commission actually did have jurisdiction over the parent companies of these various utilities independently of its discovery rights.

So there may very well be jurisdiction, but I don't know that I need to reach that issue in order to rule that we have the authority to be given our plenary power to subpoena records to also determine that records that are inappropriately designated as confidential should be in the public record. We haven't reached that point yet.

It may be that it's rare, I think, that parties actually come to us and ask us to unseal records. Sometimes we do it -- you're right -- where we believe that the public interest in knowing what's in documents that are referred to in a decision, for example, is so high that we can't allow them to be sealed.

But until we get to that point, I think the specter that you're concerned about is probably speculative.

MR. LICHTBLAU: I mean, I agree. But what we were hoping would be to have something in place before we produce anything that guarantees us that that's not going to be a concern.

ALJ THOMAS: Yeah. I can't leave that to -- solely in your discretion, which is what you're proposing that I do; that you simply have plenary authority to designate as confidential whatever you believe is confidential, and there's absolutely no recourse by anyone to this proceeding, including the Commission, to challenge that.

So I disagree that the Commission lacks that authority under 311 and 312 and its constitutional powers.

MR. LICHTBLAU: Okay. I disagree, but arguing with you I don't think is going to change your mind.

ALJ THOMAS: All right. Is there anything else that I need to take up today before we adjourn?

MR. BASS: Not that I can think of.

ALJ THOMAS: No? All right.

So you've heard of the orders of the Court today. If you have any questions or concerns, I will be around all next week. And again, I will be available for an additional conference call or more than one if you need it.

And again, Mr. Bass, you will be in charge of setting those up and getting the number for everyone; letting them know what it is.

MR. BASS: Yes, your Honor.

ALJ THOMAS: All right. We'll be off the record.

(Whereupon, at the hour of 2:40 p.m., this Law and Motion was concluded.)

* * * * *

## BEFORE THE PUBLIC UTILITIES COMMISSION
## OF THE
## STATE OF CALIFORNIA

| | |
|---|---|
| Order Instituting Investigation into the Gas Market Activities of Southern California Gas Company, San Diego Gas and Electric, Southwest Gas, Pacific Gas and Electric, and Southern California Edison and their impact on the Gas Price Spikes experienced at the California Border from March 2000 through May 2001. | Investigation 02-11-040 |

## CERTIFICATION OF TRANSCRIPT OF PROCEEDING

I, Alejandrina E. Shori, Certified Shorthand Reporter No. 8856, in and for the State of California, do hereby certify that the pages of this transcript reported by me comprise a full, true and correct transcript of the testimony and proceedings held in the above-captioned matter on October 30, 2003.

I further certify that I have no interest in the events of the matter or the outcome of the proceeding.

EXECUTED this 30th day of October, 2003.

Alejandrina E. Shori
CSR 8856

**BEFORE THE PUBLIC UTILITIES COMMISSION
OF THE
STATE OF CALIFORNIA**

| | |
|---|---|
| Order Instituting Investigation into the Gas Market Activities of Southern California Gas Company, San Diego Gas and Electric, Southwest Gas, Pacific Gas and Electric, and Southern California Edison and their impact on the Gas Price Spikes experienced at the California Border from March 2000 through May 2001. | Investigation 02-11-040 |
| Order Instituting Investigation into the Gas Market Activities of Southern California Gas Company, San Diego Gas and Electric, Southwest Gas, Pacific Gas and Electric, and Southern California Edison and their impact on the Gas Price Spikes experienced at the California Border from March 2000 through May 2001. | Investigation 03-02-033 |

## CERTIFICATION OF TRANSCRIPT OF PROCEEDING

I, Lydia R. Radovich, Certified Shorthand Reporter No. 9223, in and for the State of California, do hereby certify that the pages of this transcript reported by me comprise a full, true and correct transcript of the testimony and proceedings held in the above-captioned matter on October 30, 2003

I further certify that I have no interest in the events of the matter or the outcome of the proceeding.

EXECUTED this 30th day of October 2003.

Lydia R. Radovich
RPR, CSR No. 9223