Apple Inc. v. Psystar Corporation
Doc. 2399 Att. 5


# EXHIBIT N

Dockets.Justia.com

**BEFORE THE PUBLIC UTILITIES COMMISSION OF THE**

**STATE OF CALIFORNIA**

| | |
|---|---|
| Order Instituting Investigation Into the Gas Market Activities of Southern California Gas Company, San Diego Gas and Electric, Southwest Gas, Pacific Gas and Electric, and Southern California Edison and Their Impact on the Gas Price Spikes Experienced at the California Border from March 2000 through May 2001. | Investigation 02-11-040<br>(Filed November 21, 2002) |

**MOTION TO RECONSIDER FEBRUARY 13, 2004 ORDER REQUIRING PRODUCTION AND FOR STAY OF THAT ORDER PENDING RESOLUTION OF THIS MOTION; AND, IF DENIED, MOTION FOR ORDER REFERRING THE MATTER TO THE COMMISSION FOR DETERMINATION PURSUANT TO RULE 65**

ALAN Z. YUDKOWSKY
PETER F. JAZAYERI
LUCAS A. MESSENGER

Attorneys for Non-Party
SEMPRA ENERGY TRADING CORP.

2029 Century Park East, Suite 1800
Los Angeles, California 90067
Telephone: (310) 556-5800
Facsimile: (310) 556-5959
E-mail: Ayudkowsky@stroock.com
Pjazayeri@stroock.com
Lmessenger@stroock.com

BEFORE THE PUBLIC UTILITIES COMMISSION OF THE

STATE OF CALIFORNIA

| | | |
|---|---|---|
| Order Instituting Investigation Into the Gas Market Activities of Southern California Gas Company, San Diego Gas and Electric, Southwest Gas, Pacific Gas and Electric, and Southern California Edison and Their Impact on the Gas Price Spikes Experienced at the California Border from March 2000 through May 2001. | ) | Investigation 02-11-040 (Filed November 21, 2002) |

**MOTION TO RECONSIDER FEBRUARY 13, 2004 ORDER REQUIRING PRODUCTION AND FOR STAY OF THAT ORDER PENDING RESOLUTION OF THIS MOTION; AND, IF DENIED, MOTION FOR ORDER REFERRING THE MATTER TO THE COMMISSION FOR DETERMINATION PURSUANT TO RULE 65**

Pursuant to Rule 45(c)(2) of the California Public Utilities Commission's ("Commission") Rules of Practice and Procedure, non-party Sempra Energy Trading Corp. ("SET") files the instant Motion for Reconsideration of February 13, 2004 Order Requiring Production and For Stay of that Order Pending Resolution of this Motion; and, If Denied, Motion for Order Referring the Matter to the Commission for Determination Pursuant to Rule 65 ("Motion").

## I. INTRODUCTION

To date, SET has produced to Southern California Edison Company ("Edison") more than 6,000 pages of responsive documents, three compact discs containing more than 2,000 additional responsive documents, and several electronic spreadsheets totaling hundreds of pages each. Edison nonetheless seeks, *inter alia,* production of e-mails from a difficult-to-access electronic backup storage system from as many as 73 SET employees for a fifteen-month period in response to 38 data requests (containing an additional 24 sub-questions) and four-and-a-half pages of definitions and instructions. As explained more fully below, Edison thus asks SET — a

non-party to this proceeding — to restore and to review nearly 4,600,000 pages of e-mail, for an investigation that is to be completed within only a few months.

By granting Edison's request and ordering SET to restore and produce all e-mails contained on its data storage system (the "February 13, 2004 Order") for the period March 2000 through May 2001 (the "Subject Period") responsive to Edison's *subpoena duces tecum* ("Subpoena") and the Amended Data Requests ("Amended Data Requests") in connection therewith, Administrative Law Judge Sarah R. Thomas ("ALJ Thomas") improperly has directed SET to comply with unduly burdensome and expensive discovery requests seeking information in excess of what is required from a non-party.

The February 13, 2004 Order thus should be stayed pending resolution of this Motion, and ultimately reversed. Should that relief be denied, this Motion should be referred to the Commission for determination pursuant to Rule 65 of the Commission's Rules of Practice and Procedure because a prompt decision from the Commission clarifying the proper boundaries for non-party discovery in Commission proceedings is required to promote substantial justice. Delaying this Motion and any subsequent appeal until after a final decision is issued in this proceeding would be prejudicial to SET, as SET already would have suffered the consequences of the undue burden and expense that the February 13, 2004 Order imposes.

## II. PROCEDURAL HISTORY

SET, a Delaware corporation, is a wholesale energy marketer with its principal place of business in Connecticut and is not a party to this investigation. While SET is not a public utility, it is a subsidiary of Sempra Energy ("Sempra") and an affiliate of Sempra subsidiaries San Diego Gas & Electric Company ("SDG&E") and Southern California Gas Company ("SoCalGas"). SDG&E and SoCalGas are both public utilities.

### A. Initiation of the "Border Spike" Investigation

On November 21, 2002, the Commission issued an order instituting a two-phase investigation ("OII") to examine the price of natural gas delivered at the California border during the Subject Period. (Declaration of Lucas A. Messenger ("Messenger Decl."), Ex. A.) Phase I of the investigation named SDG&E and SoCalGas as respondents.[1] Phase II named Southwest Gas, Pacific Gas and Electric Co., and Edison — all public utilities — as respondents. SET has not been named as a respondent. In each phase of the investigation, the Commission ordered respondents to present evidence and testimony regarding gas market activity that may have affected natural gas prices during the Subject Period. Phase II was to commence at some future time. On April 16, 2003, the Commission issued a Scoping Memo that, *inter alia*, named ALJ TerKeurst as the presiding hearing officer. (Messenger Decl., Ex. B.)

On May 15, 2003 and June 5, 2003 respectively, Edison propounded its first and second sets of data requests to SET ("Data Requests"). The Data Requests were improperly served on SET's affiliate, SoCalGas, and thus SET did not receive them until mid-June 2003. Notwithstanding this procedural deficiency, on June 30, 2003, SET indicated to Edison that SET would produce documents responsive to the Data Requests that related to issues properly within the scope of the Commission's subject matter jurisdiction.[2] (Messenger Decl., Ex. U.) On August 14, 2003, Edison sent SET a letter asking for confirmation that SET would produce the indicated

---

[1] On March 10, 2004, Administrative Law Judge Charlotte F. TerKeurst ("ALJ TerKeurst") issued an order bifurcating Phase I into Phase I. A and Phase I. B. Issues regarding "whether the Sempra Energy (Sempra) non-utility affiliates or their parent company played a role in causing the natural gas spikes at the California border from March 2000 to May 2001" will be heard in Phase I. B, the evidentiary hearings for which are to commence on June 28, 2004. (Messenger Decl., Ex. W.)

[2] The Data Requests contained 73 requests for production, and with regard to the first data request ("First Data Request"), SET indicated to Edison that it would produce documents responsive to requests 1, 10, 25-28, 33-34, and 37. As to the second set ("Second Data Request"), SET indicated that it would produce documents responsive to requests 6-8 but maintained that the Data Requests required substantial substantive and procedural revisions.

documents. (Messenger Decl., Ex. I.) On August 21, 2003, SET again advised Edison that it would produce the indicated documents, noted its continuing jurisdictional objection, and requested a meet and confer. (Messenger Decl., Ex. J.) Instead, on August 27, 2003 — at Edison's behest — the Commission issued the Subpoena to SET to order production of documents responsive to the Data Requests as originally propounded. (Messenger Decl., Ex. C.)[3]

**B. Post-Subpoena Proceedings**

On September 24, 2003, SET filed a Motion to Quash the Subpoena ("Motion to Quash"). (Messenger Decl., Ex. K.) In the Motion to Quash, SET argued that certain Data Requests exceeded the Commission's subject matter jurisdiction by seeking the production of materials related solely to SET's activities in the wholesale energy markets — an area preempted and governed exclusively by federal law. On October 9, 2003, Edison filed a Response and Opposition to the Motion to Quash, which argued that the Commission's ability to issue subpoenas is broader than its jurisdiction. (Messenger Decl., Ex. L.) On October 28, 2003, SET filed a Reply that did not challenge the Commission's ability to issue and enforce compliance with subpoenas; rather, SET challenged the Edison's ability to obtain documents responsive to issues which are beyond the Commission's jurisdictional ability to investigate. In short, SET argued that Edison's Data Requests amounted to an improper investigation of SET itself. (Messenger Decl., Ex. M.)

On October 30, 2003, ALJ Thomas heard oral argument on, *inter alia*, SET's Motion to Quash. (Messenger Decl., Ex. G.) At the hearing, ALJ Thomas denied SET's Motion to Quash and, essentially, concluded that the Commission's power to subpoena non-parties exceeded the Commission's subject matter jurisdiction. (Messenger Decl., Ex. G at 149, 155-56.) Nonetheless, ALJ Thomas ruled that the Data Requests were, in large part, overbroad and, as a result,

[3] On April 8, 2004, Edison served SET with a second subpoena issued by the Commission at Edison's request. (Messenger Decl., Ex. U.)

Edison filed Amended Data Requests the next day ("Amended Data Requests"). (Messenger Decl., Ex. F.) The Amended Data Requests, as modified by subsequent hearings and by agreement of Edison and SET, remain the operative data requests at issue.

On November 24, 2003, SET produced its first set of responsive documents. (Messenger Decl., Ex. S.) Edison did not respond to, seek clarification of, or comment in any way upon this production until January 7, 2004 in anticipation of the January 9, 2004 telephonic hearing scheduled by ALJ Thomas to discuss whether Edison should be allowed additional time to submit direct testimony respecting SET, among others. At that hearing, ALJ Thomas held that SET had not been dilatory with respect to discovery, and recommended to ALJ TerKeurst that no additional testimony respecting SET be allowed. Nonetheless, on February 13, 2004, at Edison's request a hearing was held before ALJ Thomas and ALJ TerKeurst — this time to determine, *inter alia*, the adequacy of SET's responses to the Amended Data Requests, and the sufficiency of the documents produced in connection therewith ("February 13, 2004 Hearing"). (Messenger Decl., Ex. H.)

During oral argument, counsel for SET explained at length that restoring e-mails from SET's data storage system was both a time-consuming and expensive process that would most likely not yield information in time for the conclusion of this proceeding. (Messenger Decl., Ex. H at 239-40.)[4] Nonetheless, ALJ Thomas ordered SET to "search these [e-mail] backup tapes for responsive documents during the relevant period as defined in [the] discovery requests."

---

[4] For example, SET stated: "[I]t is urgent that the Court understand in this regard ... that this is a burdensome and time-consuming process. So to the extent that emails during the relevant period can be restored, it takes an enormous amount of time to do so for each of the individuals ...." (Messenger Decl., Ex. H at 239); and "This is not a situation where you have a room full of documents, and we simply need to throw more bodies at it to review it. This is a situation where you are dealing with backup technology, it has to be restored, it takes a period of time to restore. And, yes, it can be done, but it will take a long time to do it. It will be enormously expensive," (Messenger Decl., Ex. H at 240).

(Messenger Decl., Ex. H at 239-40, 243.) SET advised ALJ Thomas and ALJ TerKeurst that, under California evidentiary law, Edison would be responsible for all reasonable costs incurred by SET for the restoration and production of the e-mails, and that the restoration process would likely cost in excess of several hundred thousand dollars. (Messenger Decl., Ex. H at 287.) ALJ Thomas instructed SET to file a motion regarding this issue, noting that "if you get down the road and you're spending massive amounts of money, and nether side knows who's paying for it, I think we're going to have a problem." (Messenger Decl., Ex. H at 288.)

To avoid precisely that, on February 25, 2004, SET filed a Motion For Order Requiring Southern California Edison To Pay The Costs Incurred By Non-Party Sempra Energy Trading Corp. In Responding To A Subpoena Duces Tecum Pursuant To California Code Of Evidence Section 1563 (the "Costs Motion"). (Messenger Decl., Ex. N.) Edison sought an extension of its time to respond to the Costs Motion and, in the interim, Edison and SET were ordered to meet and confer on the scope of Edison's e-mail request. On March 24, 2004, Edison wrote to SET with a specific demand that SET restore the e-mail of as many as 73 employees for the Subject Period. (Messenger Decl., Ex. Q.) Edison filed an opposition to the Costs Motion, and on March 26, 2004, SET filed its reply. (Messenger Decl., Exs. O-P.) The Costs Motion was subsequently transferred to Administrative Law Judge John E. Thorson ("ALJ Thorson"). During the March 29, 2004 telephonic hearing, however, ALJ Thomas advised counsel that she did not expect a ruling on the Costs Motion in the "next several weeks" and, as a result, ordered SET to begin the restoration process immediately. On April 15, 2004, ALJ Thorson issued an order denying the Costs Motion. SET intends to file a motion seeking reconsideration of ALJ Thorson's order.

## III. STATEMENT OF FACTS

The February 13, 2004 Order compels SET to produce e-mails responsive to the Amended Data Requests as modified at the February 13, 2004 Hearing. Edison's initial testimony respecting the Sempra affiliates currently is due at some, as yet, undetermined date. The Amended Data Requests contain 38 requests (plus an additional 24 sub-requests) and four-and-a-half pages of definitions and instructions that require the restoration and review of e-mail for a fifteen-month period from a difficult-to-access electronic backup storage system. (Messenger Decl., Ex. F.) Moreover, these requests did not identify, of the more than 300 SET employees during the Subject Period, whose e-mail should be restored.

Indeed, it was not until March 24, 2004 that Edison finally specified which employees' e-mail should be restored and reviewed; the letter identified as many as 73 employees. (See Messenger Decl., Ex. Q.) Compliance with the February 13, 2004 Order, therefore, will require SET to conduct an expensive process of restoration, review, and production. To this end, SET has engaged the services of DolphinSearch, Inc. ("Dolphin"), an e-discovery company providing electronic discovery services to law firms and corporations nationwide, (See Messenger Decl., Ex. X [Declaration of Kate O'Brien dated February 19, 2004 ("O'Brien Decl.")] at ¶ 4), to restore the e-mails since they are only accessible from a backup system where they are stored in a compressed form on digital backup tapes. Once the e-mail is restored, SET will have to review literally millions of e-mails from the Subject Period in search of documents potentially responsive to the Amended Data Requests. Given the scope of Edison's requests and the procedural schedule in this investigation, it is doubtful that any of this information could be timely produced.

**A. System**

Based on the retrieval Dolphin has completed to date, Dolphin estimates that each SET employee has an average of approximately 2.4GB of e-mail from the Subject Period. (O'Brien Decl. ¶ 5.) Assuming as many as 73 employees' e-mail are to be restored, as indicated by the March 24, 2004 letter, approximately 175.2GB of raw data from the Subject Period will need to be processed to make it accessible and searchable. This processing, *inter alia*, eliminates duplicate e-mails. (See id. ¶ 7.) Thus, for example, if one SET employee sent an e-mail to three other SET employees, the raw data contains four copies of the identical e-mail. (See id. ¶ 7.) Dolphin's processing, however, is able to record which employee sent and received this e-mail such that no information is lost, while at the same time only restoring a single copy of the e-mail. (See id. ¶ 7.) After processing, therefore, Dolphin typically sees a 60-70% reduction in total data volume. (See id. ¶ 7.) Assuming a 65% reduction, this leaves 61.32GB of data to be restored. Since one gigabyte equals approximately 75,000 pages of "hard copy," (see id. ¶ 7), Edison's revised request amounts to nearly 4,600,000 pages of e-mail to be restored and reviewed.

Dolphin's fee for restoring this data is based on the volume of processed data. (See id. ¶ 8.) For 61.32GB of processed data, Dolphin would charge SET a processing fee of approximately $4.00 per megabyte. (See id. ¶ 8.) (There are 1,000 megabytes in a gigabyte.) Accordingly, *the total processing fee for 61.32GB would be approximately **$245,000*** (*i.e.*, 61.32GB X 1000MB/GB X $4/MB). (See id. ¶ 9.) Dolphin's fees for e-mail retrieval services are comparable to its competitors' rates. (See id. ¶ 12.) There are certain additional fees incurred in the e-mail retrieval process. These include, for example, data restoration and handling fees of $850 per digital tape (the recording medium on which SET's e-mail backups are stored). In addition, there is a $5,000 charge for building a system to house SET's data and a monthly hosting fee of $500. (See id. ¶ 11.) The restoration process will likely take some time to be completed.

### B. Time And Expense For Reviewing Restored E-mails

After the e-mails are restored, they must be reviewed by attorneys for relevance and for privilege. Factoring in the use of Dolphin's search software and considering the breadth of Edison's discovery requests, based on SET's experience, at least two-thirds of the 4,600,000 pages of restored e-mail – 3,036,000 pages – potentially will be responsive and thus will need to be reviewed. Assuming, *arguendo*, that it *only requires six seconds to review a page*, it will take 5060 hours for SET to review 3,036,000 pages. Accordingly, a review of these documents requires SET to expend — at a minimum — more than $1 million in attorneys' fees, and it is likely, significantly more. (Messenger Decl., Ex. V.) In addition, considerable attorney and paralegal time will be required to accurately redact responsive documents and compile a privilege log, if necessary, and to produce the documents to Edison.

## IV. <u>DISCUSSION</u>

### A. The February 13, 2004 Order Should Be Reversed Because The Scope Of The Ordered Production Is Unduly Burdensome And Expensive.

It is well-settled that California law protects parties from unduly burdensome and expensive discovery demands, and non-parties even more. SET, as a non-party to this investigation, is entitled to this higher degree of protection.[5] For this reason, as more fully explained below, the February 13, 2004 Order must be reversed.

In California, courts retain broad discretion to protect defendants from the burden and expense of overreaching discovery demands. <u>See</u> Cal. Civ. Proc. Code §§ 2017(c), 2019(b) &

---

[5] Edison likely will argue that SET is not really a non-party, and therefore is not entitled to this higher degree of protection, because "SET is not a stranger to this litigation." Edison is wrong for the following reasons: (1) SET is not a named respondent in this proceeding; (2) ALJ Thornson concluded that SET is a non-party in his April 15, 2004 order denying the Costs Motion; (3) Edison followed the Commission's procedures under Rules 59, 59.2, and 60 for obtaining information from a non-party by way of the Subpoena to which its data requests were appended; (4) Edison stated in papers filed in October 2003 in this proceeding that SET is a non-party; and (5) Edison's expert declaration submitted in support of the Subpoena describes SET as a nonparty.

2023.[6] Courts must limit the scope of discovery if it is determined "that the burden, expense, or intrusiveness of the discovery clearly outweighs the likelihood that the information sought will lead to the discovery of admissible evidence," Cal. Civ. Pro. Code § 2017(c), or alternatively, if "[t]he discovery sought is unreasonably cumulative or duplicative" or "is unduly burdensome or expensive, taking into account the needs of the case, the amount in controversy, and the importance of the issues at stake in the litigation," Cal. Civ. Pro. Code § 2019(b). See California Shellfish, Inc. v. United Shellfish Co., 56 Cal. App. 4th 16, 23 (1997) (finding that section 2020 deposition of non-parties does not create an independent method of discovery not enumerated in section 2019); see also Cal. Civ. Pro. Code § 1987.1 ("[T]he court may make any other order as may be appropriate to protect the parties, the witness, or the consumer from unreasonable or oppressive demands ....").

Since "[d]iscovery procedures are generally less onerous for strangers to the litigation," Monarch Healthcare v. Superior Court, 78 Cal. App. 4th 1282, 1289-90 (2000), these protections apply with even greater force to non-parties, and California courts have consistently emphasized that "particularly when dealing with an entity which is not even a party to the litigation, the court should attempt to structure discovery in a manner which is least burdensome to such an entity," Calcor Space Facility, Inc. v. Superior Court, 53 Cal. App. 4th 216, 222 (1997); see Monarch Healthcare v. Superior Court, 78 Cal. App. 4th at 1289-90 (observing that while "parties should be subject to the full panoply of discovery devices ... *nonparty witnesses should be somewhat protected from the burdensome demands of litigation*"). Courts have reached this conclusion because "the concerns for avoiding undue burdens on the "adversary" in the litigation ... apply

6 The Commission's rules on discovery procedures mirror those set forth in the California Code of Civil Procedure. See Cal. Pub. Util. Code § 1794; see also In re Alternative Regulatory Frameworks for Local Exchange Carriers, 55 CPUC 2d 672 (1994).

with even more weight to a nonparty." Calcor Space Facility, Inc. v. Superior Court, 53 Cal. App. 4th at 225 (acknowledging "the tremendous burdens promiscuous discovery has placed on litigants and nonparties alike"). The exact line between "reasonable" and "abusive" discovery must be drawn by the trial court based on the particular facts of the case. See Weil & Brown, Cal. Prac. Guide: Civ. Pro. Before Trial § 8:73 (The Rutter Group 2003) (citing Cal. Civ. Proc. Code § 2017(c)).

The seminal California case addressing non-party discovery is Calcor Space Facility, Inc. v. Superior Court, 53 Cal. App. 4th at 216. In that case, Delco Systems Operations contracted with Thiem Industries, Inc. to produce certain gun mounts. Delco claimed Thiem failed to meet required specifications and, as a result, contracted with Calcor Space Facility, Inc. to produce the gun mounts. Thiem filed suit against Delco and, over the course of the litigation, Thiem served a subpoena on Calcor demanding that Calcor, "a non-party and Thiem's competitor, to, in effect, produce all materials in its possession relating to gun mounts ...." Id. at 219. In response, Calcor filed a motion for a protective order "contending the subpoena was unreasonably burdensome and overly broad for service on a nonparty and was not limited to materials relevant to the subject matter of the suit ...."[7] Id. at 220. Thiem countered with a motion to compel on the grounds that the discovery sought from Calcor was relevant to whether Delco was responsible for the costs it incurred in having to hire Calcor. Id. at 220-21.

[7] In support of its motion for protective order, Calcor filed a declaration from its vice-president averring, *inter alia*, "that there were thousands of documents fitting the categories described in the subpoena and that these documents were kept in various departments in the company.... 'to respond to the Subpoena, Calcor would have to review the correspondence and general files in all of its departments,' and this project 'would take two people a minimum of two and one-half to three weeks of full-time effort.'" Calcor, 53 Cal. App. 4th at 220. At a minimum, the February 13, 2004 Order imposes a many-fold greater burden on non-party SET.

After reviewing the discovery requests[8] contained in the subpoena, the court of appeal concluded:

> Although facially Thiem's detailed description of categories, combined with the three pages of "definitions" and another three pages of "instructions" would seem to satisfy a requirement of "particularity," it is, in effect, a blanket demand and hardly constitutes "reasonable" particularity. As noted, Thiem's 12-page demand might as well be condensed into a single sentence: *Produce everything in your possession which in any way relates to gun mounts.* There is no indication the "categories" bear any relationship to the manner in which Calcor maintains its records. The burden is sought to be imposed on Calcor to search its extensive files, at many locations, to see what it can find to fit Thiem's definitions, instructions and categories.

Id. at 222 (emphasis added). The court of appeal next described the six pages of definitions and instructions as particularly "obnoxious" because they turned each discovery request into a complicated category, and concluded that the "grossly excessive use of 'definitions' and 'instructions,' in and of itself, makes the subpoena unduly burdensome." Id. at 223 (analogizing to interrogatories where such practice is expressly prohibited). Combined with the overbreadth of the discovery sought, the lack of particularity contained in the discovery requests, and a lack of proof that the materials sought were reasonably calculated to lead to the discovery of admissible evidence, the court of appeal determined that the subpoena was unduly burdensome. Id. at 222-26. The same rationale is applicable here.

---

[8] At issue in Calcor were 32 discovery requests expanded by 6 pages of "definitions" and "instructions." The court of appeal set forth the first four discovery requests as examples: (1) "The Gun Mounts, including but not limited to documents relating to the design, modification, engineering manufacture, testing, rejection, revision, modification, or acceptance of the Gun Mounts or any subassemblies or components manufactured in connection with the Gun Mount Project;" (2) "All purchase orders, amendments to purchase orders, engineering change orders, drawings, specifications, invoices, rejection reports, accident reports and Material Review Board ('MRB') authorization reports relating to the Gun Mounts or the Gun Mount Project;" (3) "All requests for quotation ('RFQ') or requests for proposal ('RFP') in connection with the Gun Mounts or the Gun Mount Project;" and (4) All bid materials, including but not limited to cost estimates, labor estimates, and production time estimates prepared for and submitted by Calcor in connection with the Gun Mount Project." Calcor, 53 Cal. App. 4th at 219-220.

1. The February 13, 2004 Order Is Unduly Burdensome Because The Amended Data Requests Are Not Reasonably Particularized.

By statute, a business records subpoena must "designate the business records to be produced either by specifically describing each individual item or by reasonably particularizing each category of item ...." Cal. Civ. Pro. Code § 2020(d)(1). Thus, a business records subpoena may not be used to determine whether documents exist; instead, the categories of documents to be produced must be reasonably particularized from the standpoint of the party on whom the demand is made. Calcor Space Facility, Inc. v. Superior Court, 53 Cal. App. 4th at 222. "The 'reasonably' in the statute implies a requirement such categories be reasonably particularized from the standpoint of the party who is subjected to the burden of producing the materials. Any other interpretation places too great a burden on the party on whom the demand is made." Id.

Here, many if not all of the discovery requests contained in the Amended Data Requests do not meet this requirement of reasonable particularity. This investigation began in November 2002 and, based on the entirety of the discovery it has conducted to date, Edison should be adequately situated to reasonably particularize its discovery requests in order to reduce the burden on non-party SET. (See, e.g., Messenger Decl., Ex. H at 262 ("[I]f [Edison] cannot articulate what [it] is looking for even with the assistance of [its] consultant, I'm not sure that a custodian of records is going to help [it].").) Yet even at this late date, and after having received more than 6000 pages, three compact discs containing 2000 additional documents, and several electronic spreadsheets totaling hundreds of pages each from SET alone, Edison remains consistently unclear about what information it is actually seeking and where SET should look to find this information. What is more, the transcript of the February 13, 2004 Hearing reveals that it was necessary for both ALJ TerKeurst and ALJ Thomas to constantly advise Edison regarding the best method to conduct discovery. (See, e.g., Messenger Decl., Ex. H at 212, 225, 259, 281-82.)

Edison's lack of focus and inability to reasonably particularize its requests is crystallized by its suggestion at the February 13, 2004 Hearing: "One ... alternative would be for SET *to basically copy what is in their files that could possibly be relevant* and may be reviewed either in-camera by the ALJs or reviewed by us and then we start from there." (Messenger Decl., Ex. H at 261 (emphasis added).) In other words, Edison's clarification of the Amended Data Requests amounts to: "Give us everything you have and we will decide what is relevant." This is manifestly improper under Calcor and is not how discovery is meant to be conducted either in California courts or before the Commission.

As SET made clear at the February 13, 2004 Hearing, "[W]e're now being told that they need guidance. They have consultants. It's their burden to ask questions. It's our burden to respond to them." (Messenger Decl., Ex. H at 263.) Edison has not met its "burden" of asking reasonably particularized questions as required by California Code of Civil Procedure § 2020(d)(1). The February 13, 2004 Order, therefore, is unduly burdensome and should be reversed.

2. The February 13, 2004 Order Is Unduly Burdensome Because The Discovery Sought By The Amended Data Requests Constitutes An Improper Fishing Expedition.

"Use of discovery procedures as devices to determine whether certain documents exist places a great burden on the responding party; this burden should generally be borne by the party seeking discovery." 27B Cal. Jur. 3d Discovery and Depositions § 171 (citing Calcor Space Facility, Inc. v. Superior Court, 53 Cal. App. 4th 216). Data requests, such as the Amended Data Requests at issue in this case, clearly constitute a "fishing expedition" where the party is seeking discovery but does not know precisely what it is seeking and is "attempting to obtain all possible information for the purposes of [its] case." Greyhound Corp. v. Superior Court, 56 Cal. 2d 355, 384 (1961) (noting concerns regarding fishing expeditions). "Although appellate courts have

frequently stated fishing expeditions are permissible in discovery, there is a limit." Calcor Space Facility, Inc. v. Superior Court, 53 Cal. App. 4th at 224.

One example of an improper fishing expedition is where there exists "insufficient identification of the requested information to acquaint the other party with the nature of information desired ... placing more burden upon the adversary than the value of the information warrants .... Such improper methods of 'fishing' may be (and should be) controlled by the trial court under the powers granted to it by statute." Calcor Space Facility, Inc. v. Superior Court, 53 Cal. App. 4th at 225 (quoting Greyhound Corp. v. Superior Court, 56 Cal.2d 355, 384-385 (1961).

Here, the 38 requests implicating backup e-mail (containing an additional 24 sub-requests) in the Amended Data Requests comprise a blanket demand that requires SET to restore, review and produce *almost every document SET generated in the course of its western gas and electric business during the Subject Period.* This type of blanket demand is flatly unacceptable under the Calcor standard, and any objective reading of California Code of Civil Procedure § 2020(d). See Calcor Space Facility, Inc. v. Superior Court, 53 Cal. App. 4th at 223 (finding that where the subpoena in effect asked for everything in the custodian's possession relating to the subject of the litigation, the subpoena was unduly burdensome and unenforceable); see Obregon v. Superior Court, 67 Cal. App. 4th 424, 431 (1998) ("When discovery requests are grossly overbroad on their face, and hence do not appear reasonably related to a legitimate discovery need, a reasonable inference can be drawn of an intent to harass and improperly burden.")

As examples of the sweeping breadth of the documents requested, SET provides the following exemplar requests from the Amended Data Requests:

Question No. 2:

Question No. 2a: Please provide all documents analyzing the natural gas prices that existed at the California Border during the Discovery Period.

> Question No. 2b: Please provide all documents concerning the natural gas price spikes that existed at the California Border during the Discovery Period.
>
> Question No. 2c: Please provide all documents concerning any alleged gas price manipulation in California physical and forward gas markets by any entity during the Discovery Period.

Question No. 10: Please provide all documents concerning SET's strategies for purchasing natural gas in California physical gas markets during the Discovery Period (1) to supply other market participants or end-users, (2) to supply generating plants owned by your company or affiliated companies that serve California, (3) as part of a gas supply portfolio used for general trading purposes in California gas markets, or (4) to repay gas loaned from SoCalGas, PG&E, or other California gas participants.

Question No. 5: Please provide all documents that characterize relationship (sic) between California gas and electric markets during the Discovery Period. (Your response should include, but not be limited to, all documents that discuss or analyze the effects of gas market conditions (including gas prices, alleged gas price manipulation in the California physical and forward gas markets, or the behavior of other participants in the California physical and forward gas markets) on electricity markets, and the effects of electricity market conditions (including electricity prices, changes in electricity price caps, alleged electricity price manipulation in the California physical and forward gas markets, or the behavior of other participants in the California physical and forward electricity markets) or gas markets.)

Question No. 12: Please provide all documents concerning:

a) California electricity market conditions;
b) California gas market conditions;
c) El Paso's affect on the California gas market;
d) Enron's affect on the California gas market;
e) SoCalGas' affect on the California gas market;
f) Likely future prices in the California gas market;
g) Likely future prices in the California electricity market;
h) SET's current trading practices (e.g. as contained in a position report);
i) SET's plans for future trading positions in gas or electric industries;
j) SET's requests for exceptions to its risk management limits; or
k) SET's pursuit of new gas or electricity sales

(Messenger Decl., Ex. F.)

As in Calcor, the Amended Data Requests may *appear* to be detailed and particularized on first glance, but, in effect, they lack the "reasonable" particularity required by California Code of Civil Procedure § 2020. Indeed, the Amended Data Requests "might as well be condensed into a single sentence: Produce everything in your possession which in any way relates to"

SET's western gas and electricity businesses during the Subject Period — essentially the same request the court of appeal found improper in Calcor. Calcor Space Facility, Inc. v. Superior Court, 53 Cal. App. 4th at 222.

Simply put, the overbreadth of the Amended Data Requests and the incredible burden and expense the Amended Data Requests would place on SET are exactly the type of improper discovery propounded against a non-party that was rejected by the court of appeal in Calcor and identified as a concern by the California Supreme Court in Greyhound. The February 13, 2004 Order therefore should be reversed.

3. The Four-And-A-Half Pages Of Definitions And Instructions Alone Render The Amended Data Requests Unduly Burdensome.

Otherwise proper discovery requests may become unduly burdensome if combined with detailed definitions and instructions that expand and complicate the demand. Calcor Space Facility, Inc. v. Superior Court, 53 Cal. App. 4th at 223. As set forth in detail above, the Calcor court found that the six pages of detailed definitions and instructions were "particularly obnoxious" and "grossly excessive" because they turned each of 32 document requests into a complicated "category". Id.

The rationale of the Calcor court is equally apposite here: "The burden is sought to be imposed on [SET] to search its extensive files, at many locations, to see what it can find to fit [Edison's] definitions, instructions and categories." Id. The Amended Data Requests contain four-and-a-half pages of detailed definitions and instructions, and consequently, they mimic those in Calcor in appearance and effect. Accordingly, each of the 38 requests (and the additional 24 sub-requests) effectively is greatly expanded in scope and complexity, rendering the Amended Data Requests unduly burdensome. The February 13, 2004 Order thus should be reversed.

4. The Burden and Expense Is Undue When Compared To Any Likely Benefit To The Investigation.

As set forth above, courts are to limit the scope of discovery if they determine that the burden or expense of the discovery "outweighs the likelihood that the information sought will lead to the discovery of admissible evidence," Cal. Civ. Pro. Code § 2017(c), or alternatively, if the discovery sought "is unduly burdensome or expensive, taking into account the needs of the case, the amount in controversy, and the importance of the issues at stake in the litigation," Cal. Civ. Pro. Code § 2019(b).

Despite knowing that the e-mail restoration, review and production process would likely take several months and, at that time, that it was supposed to submit its initial testimony on April 19, 2004 for the hearings beginning in late June, Edison was unable or unwilling until March 24, 2004 to specify which of SET employees' e-mails should be restored and reviewed. It has been no secret that the restoration process likely would take some time. *A fortiori*, the February 13, 2004 Order is unreasonably burdensome because it cannot lead to the discovery of admissible evidence since it will be impossible for Edison to timely submit testimony based on responsive e-mails, to the extent any exist.[9] Calcor Space Facility, Inc. v. Superior Court, 53 Cal. App. 4th at 223 (finding that "[a] carelessly drafted discovery order may result in cost and inconvenience far outweighing the potential usefulness of the material ordered to be produced").

Moreover, as described above, compliance with the February 13, 2004 Order will require a minimum of 5060 hours of attorney time to review the documents for relevance and privilege. Additional attorney and paralegal time will be required to accurately redact responsive docu-

[9] That said, SET observes that this is not a situation in which Edison has not been provided with any discovery whatsoever. To the contrary, where the discovery requests have not been unduly burdensome or expensive, SET has produced responsive documents. Indeed, eleven sets of responsive documents totaling 6000 pages, three compact discs containing 2000 additional documents, and several electronic spreadsheets totaling hundreds of pages each have been produced to date.

ments and to compile a privilege log, if necessary, and to produce the documents to Edison. At present billing rates, compliance would require SET to incur a minimum of $1 million in attorneys' fees, and very likely more. In addition to attorneys' fees — which are not recompensable under the California Evidence Code — the restoration process will cost in excess of $270,000. But even if California law allowed a non-party to be abused in this fashion, which it manifestly does not, an army of lawyers and support staff most likely would be unable to process, review and produce this information prior to the Phase I. B evidentiary hearing now scheduled to begin on June 28, 2004.

As the Calcor court explained, it is this adjudicatory body's responsibility to control such abuse:

> Whether served on a party or a nonparty, the procedure here used to compel production of documents and other materials represents an outrageous abuse of the discovery system, and exemplifies the misuses to which the discovery statutes are prone absent judicial consideration for the great burdens which may be imposed on parties and nonparties alike. ... Courts must insist discovery devices be used as tools to facilitate litigation rather than as weapons to wage litigation. These tools should be well calibrated; the lancet is to be preferred over the sledge hammer.

Id. at 221.

In short, compliance with February 13, 2004 Order will require an immense expenditure of both time and money, thereby rendering the discovery obligations thereunder unduly burdensome and expensive on their face. See Cal. Civ. Pro. Code § 2019(b). Accordingly, the February 13, 2004 Order should be reversed.

5. The Extra-Jurisdictional Nature of the Discovery Sought By February 13, 2004 Order Further Supports Argument That It Is Unduly Burdensome.

Finally, much of the discovery Edison sought to be compelled by the February 13, 2004 Order relates solely to SET's activities in the wholesale energy market — an area of investiga-

tion outside of the Commission's jurisdiction and preempted by federal law. It is axiomatic that the Commission only has *subject matter* jurisdiction over public utilities.[10] City and County of San Francisco v. Western Air Lines, Inc., 204 Cal. App. 2d 105, 131 (1962) ("Unless the enterprise or activity in question is a public utility ... it is not subject to the jurisdiction of [the Commission]."). Since SET is a wholesale energy marketer and not a public utility, SET is not subject to the jurisdiction of the Commission. See City and County of San Francisco v. Western Air Lines, Inc., 204 Cal. App. 2d at 131; Re: Volatile Organic Compounds, Perchlorate, MTBEs, 1999 WL 687695, *22, Cal. P.U.C. (June 10, 1999) (excluding companies that were not public utilities from Commission investigation into drinking water provided by public utilities).

Although Edison may seek discovery from SET relating to matters within the Commission's subject matter jurisdiction, such as the activities of SET's corporate affiliates SoCalGas and SDG&E (both of which are jurisdictional entities and respondents in this investigation), other discovery related solely, for example, to SET's wholesale energy trading business can only be relevant to matters that fall outside of the Commission's jurisdictional mandate and is preempted by federal law.[11] See DeTomaso v. Pan American World Airways, Inc., 43 Cal. 3d 517,

---

[10] Public utilities include "every common carrier, toll bridge corporation, pipeline corporation, gas corporation, electrical corporation, telephone corporation, telegraph corporation, water corporation, sewer system corporation, and heat corporation, where the service is performed for or the commodity delivered to the public or any portion thereof." Cal. Pub. Util. Code § 216(a).

[11] "The commission may ... issue supenas [sic] ... subject to its jurisdiction." Cal. Const. Art. 12 § 6. Pursuant to the Federal Power Act of 1935 ("FPA") and the Natural Gas Act of 1938 ("NGA"), Congress granted FERC exclusive jurisdiction over the wholesale electricity market as well as the wholesale natural gas market. See 15 U.S.C. §§ 717(b), 717a(6), 717c; see 16 U.S.C. §§ 824d(a), 824e(a); see also New York v. FERC, 535 U.S. 1, 18-19 (2002) (finding the FPA grants FERC jurisdiction over the sale of electric energy at wholesale in interstate commerce); see also Schneidewind v. ANR Pipeline, 485 U.S. 293, 300-01 (1988) (finding the NGA confers upon FERC exclusive jurisdiction over sale of natural gas in interstate commerce for resale); see also Mississippi Power & Light Co. v. Mississippi ex rel. Moore, 354, 377 (1988) (Scalia, J., concurring) ("It is common ground that if FERC has jurisdiction over a subject, the States cannot have jurisdiction over the same subject."); see also Public Util. Comm'n of California v. FERC, 900 F.2d 269, 274 (D.C. Cir. 1990) (observing that "the cases are legion affirming the exclusive character of FERC jurisdiction where it applies, both under the NGA ... and under the analogous provi-

520, 526-29 (1987) (finding California courts and administrative bodies have no subject matter jurisdiction if federal law preempting state regulation vests jurisdiction of claims arising under that law exclusively in federal courts). Thus, the extra-jurisdictional nature of Edison's discovery required by the February 13, 2004 Order only adds to its undue burden and expense since, as a matter of law, the Commission cannot act upon these materials.

**B. Should The Relief Sought Herein Be Denied, This Motion Should Be Referred To The Commission To Promote Substantial Justice.**

As the Commission itself often has noted, the Rules of Practice and Procedure "do not provide for interlocutory appeals of rulings issued by the presiding officer." In re Southern California Edison Company, 82 CPUC 2d 220, 1998 Cal. PUC Lexis 1080 (1998); Appeal of Examiner's Ruling by Miles Tank Lines and Edwin S. Acker Denied, 81 CPUC 389, 1977 Cal. PUC Lexis 1112, *3-5 (1977). However, despite the Commission's hesitance to review a ruling made by an ALJ before the proceeding has been submitted, the Commission will review a decision in extraordinary circumstances to promote substantial justice where the presiding officer has re-

---

sions of the FPA ...."). Moreover, FERC has a statutory obligation to ensure that prices in interstate wholesale energy markets are just and reasonable. See 15 U.S.C. 717c(a); see 16 U.S.C. § 824d(a).

Therefore, to the extent the February 13, 2004 Order requires production of discovery pertaining solely to the wholesale energy markets, such inquiry is preempted via "field preemption," Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230 (1947) (finding field preemption of state laws regulating grain elevators already licensed by federal government because purpose of federal law was to eliminate dual state and federal regulations of grain warehouses and federal regulation "so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it."); Exxon Corp. v. Eagerton, 462 U.S. 176, 184 (1983) (observing that the United States Supreme Court has previously recognized that "the Gas Act was intended to occupy the field of wholesale sales of natural gas in interstate commerce"), and "conflict preemption," see In re California Wholesale Elec. Antitrust Litig., Util Dist. No. 1 of Snohomish County v. Dynegy, 244 F. Supp. 2d 1072, 1082-83 (S.D. Cal 2003) (finding conflict preemption because there was an imminent possibility plaintiff's claims would conflict with FERC's exclusive jurisdiction and would therefore frustrate FERC's proper regulatory effort) (citing Schneidewind v. ANR Pipeline, 485 U.S. at 310)); Florida Lime & Avocado Growers, Inc. v. Paul, 373 U.S. 132, 142-43 (1963) (finding conflict preemption exists where state law actually conflicts with federal law such that "compliance with both federal and state regulations is a physical impossibility"); Hines v. Davidowitz, 312 U.S. 52, 67 (1941) (finding conflict preemption where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress").

ferred the matter to the Commission. See Rule 65; In re Alternative Regulatory Frameworks for Local Exchange Carriers, 55 CPUC 2d 672, 676, 1994 Cal. PUC Lexis 485 (1994) (finding review was appropriate "because of possible ramifications the ruling could have in other proceedings where an association is a party to the proceeding"); Karrison v. A and P Moving, Inc., 75 CPUC 2d 658, 1997 Cal. PUC Lexis 882, *3 (1997) (finding review appropriate because substantial justice would not be promoted if evidentiary hearings continued despite complainant disputing jurisdiction and responsibilities of the Commission); In re Southern California Edison Company, 49 CPUC 2d 218, 1993 Cal. PUC Lexis 368, *10 (1993) (finding review appropriate because a prompt decision was "necessary to promote settlement discussions among the parties"); In re California-American Water Co., 80 CPUC 2d 476, 1998 Cal. PUC Lexis 476, *11 (1998) (finding review appropriate because proceeding involved a critical evaluation of a proposed dam in relation to possible alternatives).[12] Such extraordinary circumstances are evident here, and substantial justice requires referral to the Commission if this Motion is not granted.

Moreover, review by the Commission is particularly appropriate here because the Commission's ruling could have such widespread ramifications on non-jurisdictional entities that, by definition, are not parties to Commission investigations but nonetheless are served with discovery. Indeed, the circumstances at bar present novel issues concerning electronic discovery, on which there is no applicable Commission case law. Given the fact that discovery of electronic materials will only continue to grow, this matter provides the Commission with an opportunity to

---

[12] In contrast, in In re Southern California Edison Company, 82 CPUC 2d 220, the Commission concluded that it would not address Edison's two appeals of the assigned Commissioner's and ALJ's rulings because, in both appeals, Edison presented new arguments on appeal and "[t]he public would have been better served if Edison's initial motion for protective order had presented a clear justification for redaction on a section-by-section basis, rather than a general appeal for blanket protection." Here, however, SET has not previously filed an appeal nor sought review of an interlocutory order by the Commission. Moreover, SET has consistently made the same argument to the presiding officers that it makes here regarding the undue burden and expense the February 13, 2004 Order imposes on SET as a non-party.

provide stability to future proceedings by ensuring a full and fair discovery process that does not unfairly burden non-jurisdictional entities doing business in today's electronic age.

Immediate relief from the February 13, 2004 Order also is imperative since SET will be prejudiced if the issues raised in this Motion are not addressed until an appeal of a final decision by the Commission is heard, because SET already will have suffered the harm that the February 13, 2004 Order imposes on it. SET is a non-jurisdictional entity that is not a party to this proceeding and has little at stake in this investigation other than minimizing the burden and expense imposed upon it by the Commission. Accordingly, notwithstanding the Commission's great reluctance to review interlocutory appeals on procedural and evidentiary matters, the *only* way non-party SET can gain real relief from the February 13, 2004 Order is if review is granted now.

Against this backdrop, based on ALJ Thomas' and ALJ TerKeurst's various rulings to date and statements made on the record, it has become evident that non-party discovery in this proceeding has evolved into an abuse of the process itself, which discounts the undue burden and expense placed on non-parties, due process, and the Commission's own jurisdictional limitations:[13]

- Compliance with the February 13, 2004 Order will require SET to incur well in excess of $1 million in attorneys' fees, and in excess of $270,000 in costs to restore, review and produce responsive e-mails.
- Compliance with the February 13, 2004 Order will require SET to produce documents, which, due to technical electronic data restoration issues, are not capable of production in time for the submission of testimony into the administrative re-

[13] In Kelly v. HUD, 97 F.3d 118 (6th Cir. 1997), the Court of Appeals described HUD as an "agency run amok" because "the agency's conduct violated not only Congressional statute and HUD's own regulations *but also basic principles of adjudication*." 97 F.3d at 120 (emphasis added).

cord. The February 13, 2004 Order thus ignores the requirement imposed by California Code of Civil Procedure § 2017(c) that courts are to limit the scope of discovery if the burden or expense of the discovery "outweighs the likelihood that the information sought will lead to the discovery of admissible evidence."

- Despite the fact that Edison reached agreements with both non-party SET and non-party Sempra to amend the scope of Amended Data Requests to reduce the burden, at the February 13, 2004 Hearing, ALJs Thomas and TerKeurst repeatedly recast the discovery requests to include information that was not within the scope of the Amended Data Requests despite the resulting harm in having SET repeatedly review the same universe of material looking for different information.[14] (See, e.g., id. at 267, 285.)
- And despite acknowledging that "if you get down the road and you're spending massive amounts of money [restoring e-mail], and nether side knows who's paying for it, I think we're going to have a problem," and that it was important to settle the matter "immediately," ALJ Thomas ordered restoration to begin without deciding the matter. (Messenger Decl., Ex. H at 288.)

This cannot be the standard by which the Commission intends non-parties to be subject to discovery in Commission investigations; it is therefore both vital and appropriate for the Commission to clarify the proper boundaries for non-party discovery. The issues raised in this Motion, thus, are at least of equal importance to the issue raised in In re Alternative Regulatory Frameworks for Local Exchange Carriers, where the Commission deemed review appropriate

[14] A similar situation recently occurred with non-party Sempra, where ALJ Thomas rejected Sempra's objections to an order regarding redaction, stating, "I believe these materials are relevant to the investigation regardless of whether they are directly addressed in the subpoena, although I believe the subpoena covers most if not all of the documents I have ordered produced." (Messenger Decl., Ex. R.)

"because of possible ramifications the ruling could have in other proceedings where an association is a party to the proceeding," 55 CPUC 2d 672; or in Karrison v. A and P Moving, Inc., where the Commission granted review because substantial justice could not exist if evidentiary hearings continued despite complainant disputing jurisdiction and responsibilities of the Commission, 1997 Cal. PUC Lexis 882, *3. Simply put, review of this Motion by the Commission pursuant to Rule 65 of the Commission's Rules of Practice and Procedure is necessary because a prompt decision from the Commission is required to promote substantial justice.

## V. STAY

Due to the extreme burden and expense it imposes on SET, the February 13, 2004 Order should be stayed pending a decision on this Motion pursuant to this adjudicatory body's inherent equitable powers.

## VI. CONCLUSION

For the foregoing reasons, SET respectfully requests that the Presiding ALJ grant a stay of the February 13, 2004 Order while this Motion is pending, and reconsider and reverse the February 13, 2004 Order. Should the Presiding ALJ deem relief unwarranted, SET respectfully requests that the Presiding ALJ refer this Motion to the Commission for review.

Dated: April 20, 2004

STROOCK & STROOCK & LAVAN LLP
Alan Z. Yudkowsky
Peter F. Jazayeri
Lucas A. Messenger

By: ______________________
Alan Z. Yudkowsky

Attorneys for Non-Party Sempra Energy Trading Corp.

# CERTIFICATE OF SERVICE

I hereby certify that, pursuant to the Commission's Rules of Practice and Procedure, I have this day served a true copy of MOTION TO RECONSIDER FEBRUARY 13, 2004 ORDER REQUIRING PRODUCTION AND FOR STAY OF THAT ORDER PENDING RESOLUTION OF THIS MOTION; AND, IF DENIED, MOTION FOR ORDER REFERRING THE MATTER TO THE COMMISSION FOR DETERMINATION PURSUANT TO RULE 65 on all parties identified on the attached service list(s). Service was effected by one or more means indicated below:

☒ Placing the copies in properly addressed sealed envelopes and depositing such envelopes in the United States mail with first-class postage prepaid (Via First Class Mail)

- ☐ To all parties, or
- ☒ To those parties without e-mail addresses or whose e-mails are returned as undeliverable.

☐ Placing the copies in sealed envelopes and causing such envelopes to be delivered by hand or by overnight courier to the office of the Commission or the other addressees(s);

☒ Transmitting the copies via e-mail to all parties who have provided an address.

Executed this 21st day of April, 2004, at Los Angeles, California.

Regina Harcourt
STROOCK & STROOCK & LAVAN LLP

2029 Century Park East, Suite 1800
Los Angeles, California 90067

I.02-11-040
Wednesday, April 21, 2004

**VIA U.S. MAIL**

Edward Perez, Esq.
City of Los Angeles
City Hall East
200 N. Main Sreet, Rm. 1800
Los Angeles, California 90012

Thomas C. Sanger
Sempra Energy
101 Ash Street
San Diego, CA 92101-3017

**VIA E-MAIL**

keith.mccrea@sablaw.com; mzafar@semprautilities.com; mthorp@sempra.com; dgilmore@sempra.com; safir@reconcorp.com; walker.matthews@sce.com; david.vaniderstine@sce.com; leon.bass@sce.com; burkee@cts.com; fortlieb@sandiego.gov; marcel@turn.org; armi@smwlaw.com; jef@cpuc.ca.gov; jnm@cpuc.ca.gov; theresa_mueller@ci.sf.ca.us; mfogelman@steefel.com; jmalkin@orrick.com; frl3@pge.com; d2mr@pge.com; tomb@crossborderenergy.com; dkk@eslawfirm.com; dhouck@energy.state.ca.us; pinney@capp.ca; kjsimonsen@ems-ca.com; john.smith@kernrivergas.com; mark.moench@kernrivergas.com; dnorris@sppc.com; rkeen@manatt.com; rravipudi@elllaw.com; npedersen@hanmor.com; klatt@energyattorney.com; case.admin@sce.com; douglas.porter@sce.com; gloria.ing@sce.com; peggy.stern@sce.com; jleslie@luce.com; norman.furuta@navy.mil; ek@a-klaw.com; epoole@adplaw.com; Cem@newsdata.com; bcragg@gmssr.com; chrishilen@dwt.com; jboothe@llgm.com; lindseyhowdowning@dwt.com; elichtblau@orrick.com; bhimmelstein@lchb.com; efastiff@lchb.com; jkarp@whitecase.com; lisaweinzimer@sbcglobal.net; ecrem@ix.netcom.com; mdm8@pge.com; rwalther@pacbell.net; service@spurr.org; vhconsult@earthlink.net; aclark@calpine.com; joe.paul@dynegy.com; phanschen@mofo.com; mrw@mrwassoc.com; rschmidt@bartlewells.com; paulpremo@msn.com; rmccann@umich.edu; cmkehrein@ems-ca.com; blaising@braunlegal.com; jweil@aglet.org; kdw@woodruff-expert-services.com; mlgillette@duke-energy.com; mharris@henwoodenergy.com; rliebert@cfbf.com; karen@klindh.com; egw@a-klaw.com; loe@cpuc.ca.gov; mer@cpuc.ca.gov; beg@cpuc.ca.gov; cft@cpuc.ca.gov; des@cpuc.ca.gov; jjz@cpuc.ca.gov; alf@cpuc.ca.gov; kcl@cpuc.ca.gov; mzr@cpuc.ca.gov; map@cpuc.ca.gov; rg1@cpuc.ca.gov; srt@cpuc.ca.gov; tah@cpuc.ca.gov; clarence.binninger@doj.ca.gov; andrew@simpsonpartners.com; gbell@water.ca.gov; jslee@water.ca.gov; jpacheco@water.ca.gov;

# EXHIBIT O

SRT/hl2 6/25/2004

**BEFORE THE PUBLIC UTILITIES COMMISSION OF THE STATE OF CALIFORNIA**

| | |
|---|---|
| Order Instituting Investigation into the Gas Market Activities of Southern California Gas Company, San Diego Gas and Electric, Southwest Gas, Pacific Gas and Electric, and Southern California Edison and their impact on the Gas Price Spikes experienced at the California Border from March 2000 through May 2001. | Investigation 02-11-040 (Filed November 21, 2002) |
| Order Instituting Investigation whether San Diego Gas & Electric Company, Southern California Gas Company and their holding company, Sempra Energy, respondents, have complied with relevant statutes and Commission decisions, pertaining to respondents' holding company systems and affiliate activities. | Investigation 03-02-033 (Filed February 27, 2003) |

**ADMINISTRATIVE LAW JUDGE'S RULING DENYING RECONSIDERATION OF RULING ON MOTION CONCERNING DISCOVERY**

This ruling denies Sempra Energy Trading Corporation's (SET) April 22, 2004 *Motion to Reconsider February 13, 2004 Order Requiring Production and for Stay of that Order Pending Resolution of this Motion; and, if Denied, Motion for Order Referring the Matter to the Commission for Determination Pursuant to Rule 65.*

SET seeks reconsideration of an order I entered on February 13, 2004, requiring SET to produce to Southern California Edison e-mails from its backup storage system. SET claims it is not a party to this proceeding, and that it should not have to undergo the cost and burden of retrieving and reviewing stored e-mails.

In an April 15, 2004 ruling, Administrative Law Judge (ALJ) John E. Thorson ruled that SET was required to bear the expense of producing the e-mails. ALJ Thorson affirms that ruling on motion for reconsideration here (see discussion below). Thus, SET's objection to producing the e-mails based on cost considerations is moot, as ALJ Thorson has already ruled that SET must bear this cost.

ALJ Thorson's April 15, 2004 ruling rejected SET's claim that it is a stranger to this proceeding:

> [I]n approving the reorganizations and mergers that resulted in Sempra's current corporate configuration, the Commission imposed perpetual transparency on the parent, subsidiaries, and affiliates to ensure that the conditions of the merger continue to be satisfied and anticompetitive transactions among these entities do not occur. This proceeding has been initiated to determine whether the Sempra entities have complied with relevant statutes and Commission decisions pertaining to the holding company and the transactions among the affiliated corporations.

Thus, despite its claim, SET is not a non-party to this investigation entitled to a higher degree of protection from discovery than would be its utility affiliates.

Nor is SET's claim of burden meritorious. Both ALJ Thorson and ALJ TerKeurst have worked extensively with the parties to narrow the scope of discovery to just what is relevant to this proceeding.[1] Because the incidents alleged in the Order Instituting Investigation in this proceeding relate to events

---

[1] A law and motion hearing was held on May 14 and continued to June 2, 2004 (telephone conference call), before ALJs Thorson and TerKeurst on unresolved discovery problems concerning SET's recovery and delivery of e-mail documents pursuant to SCE's subpoena duces tecum. ALJ Thorson issued a ruling on the issue on June 10, 2004.

in 2001 and before, and SET has archived all e-mails from that period, there is no alternative to having SET search the backup storage system.

Thus, SET has not established that I should reconsider my earlier ruling. Its motion is DENIED.

**IT IS SO RULED.**

Dated June 25, 2004, at San Francisco, California.

Sarah R. Thomas
Administrative Law Judge

## CERTIFICATE OF SERVICE

I certify that I have by mail this day served a true copy of the original attached Administrative Law Judge's Ruling Denying Reconsideration of Ruling on Motion Concerning Discovery on all parties of record in this proceeding or their attorneys of record.

Dated June 25, 2004, at San Francisco, California.

Elizabeth Lewis

## N O T I C E

Parties should notify the Process Office, Public Utilities Commission, 505 Van Ness Avenue, Room 2000, San Francisco, CA 94102, of any change of address to insure that they continue to receive documents. You must indicate the proceeding number on the service list on which your name appears.

**************************************

The Commission's policy is to schedule hearings (meetings, workshops, etc.) in locations that are accessible to people with disabilities. To verify that a particular location is accessible, call: Calendar Clerk (415) 703-1203.

If specialized accommodations for the disabled are needed, e.g., sign language interpreters, those making the arrangements must call the Public Advisor at (415) 703-2074, TTY 1-866-836-7825 or (415) 703-5282 at least three working days in advance of the event.

# EXHIBIT P

JET/hl2 6/10/2004

**BEFORE THE PUBLIC UTILITIES COMMISSION OF THE STATE OF CALIFORNIA**

| | |
|---|---|
| Order Instituting Investigation into the Gas Market Activities of Southern California Gas Company, San Diego Gas and Electric, Southwest Gas, Pacific Gas and Electric, and Southern California Edison and their impact on the Gas Price Spikes experienced at the California Border from March 2000 through May 2001. | Investigation 02-11-040 (Filed November 21, 2002) |
| Order Instituting Investigation whether San Diego Gas & Electric Company, Southern California Gas Company and their holding company, Sempra Energy, respondents, have complied with relevant statutes and Commission decisions, pertaining to respondents' holding company systems and affiliate activities. | Investigation 03-02-033 (Filed February 27, 2003) |

**ADMINISTRATIVE LAW JUDGE'S RULING FOLLOWING LAW AND MOTION HEARING ON DISCOVERY**

A law and motion hearing was held on May 14 and continued to June 2, 2004 (telephone conference call), before Administrative Law Judge (ALJ) John E. Thorson and ALJ Charlotte Terkeurst on unresolved discovery problems concerning Sempra Energy Trading Corp.'s (SET) recovery, review, and delivery of email documents pursuant to Southern California Edison's (SCE) subpoena *duces tecem*. On both days, Alan Yudkowsky and Daniel Hecht of Strook & Strook & Lavan LLP (Strook), attorneys for SET, and Leon Bass, Jr., and Walker

Matthews, attorneys for SCE, appeared and presented extensive, detailed commentary on the email recovery and review problem. During the May 14 hearing, SCE called Stuart J. Hanley who was sworn as an expert witness to testify about electronic data recovery technologies and costs.

After considering the presentations and arguments of counsel, SET and SCE shall undertake the following:

1. SET, through its attorneys Strook, shall assign a total of fifteen attorneys to the review and provision of emails to SCE. This is the staffing level described as feasible by SET in its email communication to the Commission dated May 21, 2004. This staffing level shall be achieved as expeditiously as is reasonably possible given the availability of contract attorneys, furniture, and commuter equipment.

2. SET, through its attorneys, shall communicate with its document recovery expert as to the feasibility of globally removing emails where search terms appear only in the affiliate disclaimer or other template portions of emails.

3. At some point, SET will have completed the review of the email sets for employees named on both the list supplied by the California Attorney General and the list supplied by SCE. For purposes of this proceeding, it is desirable for the review process thereafter to proceed in a manner that allows SET to work on both lists at the same time (even though the employees will then be different). SET, through its attorneys,

shall communicate with the Attorney General and request that office's concurrence in this procedure.

4. After SET's consultation with the Attorney General, SET and SCE shall meet, confer, and agree on the priority for processing the review of emails for the 34 employees jointly identified by SET and SCE.

5. SET and SCE shall continue to meet and confer as to procedures that may be undertaken to expedite the review and provision of emails to SCE including, but not limited to, further refinements of the search terms and using connectors between search terms to reduce the number of identified potential documents.

6. Until further ordered, SET and SCE shall report jointly on Friday of each week, commencing on June 18, 2004, as to the number of Strook attorneys conducting email review, the number of documents that have been reviewed during the preceding week, the number of documents that have been provided to SCE during the preceding week, the running number of employee email sets (complete or partial) that have been provided to SCE, a summary of any major meet and confer agreements or disagreements during that weekly period, and the status of obligations ordered in this ruling. The first report submitted on June 18 will cover the period of

June 2-18. The weekly report need not be filed but shall be sent by email to the assigned ALJ and the undersigned ALJ.

**IT IS SO RULED.**

Dated June 10, 2004, at San Francisco, California.

/s/ JOHN E. THORSON
John E. Thorson
Administrative Law Judge

## CERTIFICATE OF SERVICE

I certify that I have by mail, and by electronic mail to the parties to which an electronic mail address has been provided, this day served a true copy of the original attached Administrative Law Judge's Ruling on all parties of record in this proceeding or their attorneys of record.

Dated June 10, 2004, at San Francisco, California.

/s/ ELIZABETH LEWIS
Elizabeth Lewis

## N O T I C E

Parties should notify the Process Office, Public Utilities Commission, 505 Van Ness Avenue, Room 2000, San Francisco, CA 94102, of any change of address to insure that they continue to receive documents. You must indicate the proceeding number on the service list on which your name appears.

**************************************

The Commission's policy is to schedule hearings (meetings, workshops, etc.) in locations that are accessible to people with disabilities. To verify that a particular location is accessible, call: Calendar Clerk (415) 703-1203.

If specialized accommodations for the disabled are needed, e.g., sign language interpreters, those making the arrangements must call the Public Advisor at

(415) 703-2074, TTY 1-866-836-7825 or (415) 703-5282 at least three working days in advance of the event.

# EXHIBIT Q

Subpoena Requested by:

Leon Bass, Jr.
(Name)

2244 Walnut Grove Ave.

Rosemead, California 91770
(Address)

(626) 302-6789
(Telephone No.)

552 641-0089

Representing: Southern California Edison Co. Interested Party
(Complainant, Defendant, Other)

# Public Utilities Commission Of The State Of California

(Caption of Proceeding)
Order Instituting Investigation Into the Gas Market Activities of Southern California Gas Company, et al. and Their Impact on the Gas Price Spikes Experienced at the California Border from March 2000 through May 2001

I.02-11-040
(Proceeding Number)

**SUBPOENA OR SUBPOENA DUCES TECUM**

____ Hearing ____ Deposition

THE PEOPLE OF THE STATE OF CALIFORNIA,

TO: Custodian of Records for Sempra Energy Trading

You are ordered to appear before the California Public Utilities Commission, located at 505 Van Ness Avenue, San Francisco, CA 94102-3298 (Address) on April 14, 2004 (Date) at 10:00 a.m. (Time) to testify as a witness in this matter unless you make a special agreement with Leon Bass, Jr. (Name of Attorney or Party requesting Subpoena) ______ to appear at another time. You are:

____ Ordered to appear in person.

____ Ordered to appear in person and produce the records described in the attached affidavit. The personal attendance of the custodian or other qualified witness and the production of the original records is required by this subpoena.

X Not required to appear in person if you produce the records described in the attached affidavit in compliance with Evidence Code Sections 1560 and 1561.

If you have been subpoenaed as a witness, you are entitled to witness fees and mileage actually traveled, as provided by law. You may request one day's witness and mileage fees for travel to and from the place you are required to appear. You may demand these fees at the time of service from the process server or from the party or attorney requesting the subpoena. If they are not paid or tendered at that time, or unless the subpoena was obtained by the Commission staff, you are not required to appear (Public Utilities Code Section 1791).

**DISOBEDIENCE OF THIS SUBPOENA MAY BE PUNISHED AS CONTEMPT BY THIS COMMISSION.**

By order of the Public Utilities Commission of the State of California. Given under the seal of this Commission this 25th day of March, 19/ 2004.

(See reverse)

[signature]
Chief Administrative Law Judge

**BEFORE THE PUBLIC UTILITIES COMMISSION OF THE STATE OF CALIFORNIA**

| | |
|---|---|
| Order Instituting Investigation Into the Gas Market Activities of Southern California Gas Company, San Diego Gas and Electric, Southwest Gas, Pacific Gas and Electric, and Southern California Edison and Their Impact n the Gas Price Spikes Experienced at the California Border from March 2000 through May 2001. ) | Investigation 02-11-040 |

**AFFIDAVIT OF WALKER A. MATTHEWS, III SUPPORTING THE ISSUANCE OF SOUTHERN CALIFORNIA EDISON COMPANY'S (U 338-E) SUBPOENA DUCES TECUM TO SEMPRA ENERGY TRADING**

I, Walker A. Matthews, III, declare:

1. I am an attorney licensed to practice in the State of California and before this Commission. I am one of the attorneys of record in this Order Instituting Investigation 02-11-040 proceeding (hereinafter referred to as the "OII"), on behalf of Southern California Edison Company ("SCE"). I have personal knowledge of the following facts, and could testify competently thereto if called.

2. On November 21, 2002, the Commission issued an OII to examine the California natural gas market and activities of certain participants in that market during the period March, 2000 to May, 2001, and determine whether those activities caused or contributed to price spikes at the California border. The Commission named Southern California Gas Company ("SoCalGas") and San Diego Gas & Electric Company ("SDG&E") as respondents for Phase I of the investigation.

3. The Commission also stated in the OII that it expected cooperation in the investigation from other non-jursidictional entities, especially from the affiliate trading entities of the utilities.

4. In its April 16, 2003 Scoping Memo, the Commission expressly identified a number of issues concerning Sempra Energy Corporation ("Sempra"), Sempra Energy Trading ("SET"), and Sempra Energy Resources ("SER") to be investigated during Phase I, including whether Sempra, SET, or SER played a role in causing the increase in border prices, and whether concerns about the financial position of their parent company or affiliates caused SoCalGas or SDG&E to take actions that may have increased gas costs. (Scoping Memo Issue Number 2).

5. The Scoping Memo also identified several sub-issues, but expressly stated that these sub-issues were illustrative in nature, and not intended to limit the overall scope of the investigation as described in the Scoping Memo.

6. On October 30, 2003, Administrative Law Judge Sarah Thomas ruled that the Commission had the authority to subpoena Sempra, SET, and SER in connection with the OII.

7. The requests attached to the subpoena as Attachment A are necessary for discovery of evidence relevant to Scoping Memo Issue No. 2, and other issues identified in the Scoping Memo. Specifically, Questions 1 – 3 seek data and information concerning SET's transactions with Enron in Western gas and electricity markets. Question 4 seeks data and information concerning gas procurement for the El Dorado plant. As provided in the Scoping Memo the Commission, is investigating among other things the gas market transactions that occurred during the Subject Period to see how those transactions contributed to price spikes. These questions are relevant to Scoping Memo Issue No. 2 concerning SET's role in causing price spikes, and Scoping Memo Sub-issue No. 2b concerning SET's positions in the electricity market. In addition, Question 5 merely seeks data and information about how SET's eastern traders enter into transactions in western markets. The Commission is investigating the California natural gas market, and

needs to understand how transactions in eastern market but that concern the western markets affected the California natural gas market. Question 5 is therefore relevant to the same issues as Questions 1 – 4. Finally, Question 6 seeks data and information that SET produced in the San Diego Cases, which matters are examining the California natural gas market and activities of SoCalGas and SDG&E. ALJ Thomas has ruled that documents produced in those matters are relevant to the issues the Commission is investigating in this proceeding.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 7th day of April 2004, in Rosemead, California.

Walker A. Matthews, III

Walker A. Matthews, III

## CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of Los Angeles } ss.

On April 7, 2004 (Date) before me, ANA A. CALDERON, NOTARY Public (Name and Title of Officer (e.g., "Jane Doe, Notary Public"))

personally appeared WALKER A. MATTHEWS, III (Name(s) of Signer(s))

☒ personally known to me
☐ proved to me on the basis of satisfactory evidence

to be the person(~~s~~) whose name(~~s~~) is/~~are~~ subscribed to the within instrument and acknowledged to me that he/~~she/they~~ executed the same in his/~~her/their~~ authorized capacity(~~ies~~), and that by his/~~her/their~~ signature(~~s~~) on the instrument the person(~~s~~), or the entity upon behalf of which the person(~~s~~) acted, executed the instrument.

ANA A. CALDERON
Commission # 1337663
Notary Public - California
Los Angeles County
My Comm. Expires Jan 5, 2006

WITNESS my hand and official seal.

[signature]
Signature of Notary Public

### OPTIONAL

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

**Description of Attached Document**

Title or Type of Document: ____________________

Document Date: ____________________ Number of Pages: __________

Signer(s) Other Than Named Above: ____________________

**Capacity(ies) Claimed by Signer**

Signer's Name: ____________________

☐ Individual
☐ Corporate Officer — Title(s): ____________________
☐ Partner — ☐ Limited ☐ General
☐ Attorney-in-Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: ____________________

Signer Is Representing: ____________________

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

© 1999 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402 • www.nationalnotary.org Prod. No. 5907 Reorder: Call Toll-Free 1-800-876-6827

# ATTACHMENT A

***SOUTHERN CALIFORNIA EDISON COMPANY***
***ORDER INSTITUTING INVESTIGATION***
***I.02-11-040***
**Data Request No. SCE-SET-03**
Dated: 04/07/04

## DATA REQUESTS

**Question No. 1:**

Please describe the types/categories of transactions that SET had with Enron in Western gas and electricity markets during the Subject Period. The response provided does not need to describe each individual transaction that occurred during the Subject Period.

**Question No. 2:**

For each type/category of transactions described in the response to Question 1, please provide documents concerning those types/categories of transactions during the Subject Period. If documents responsive to this request have already been produced, please provide the Bates range(s) of the production.

**Question No. 3:**

For each type/category of transactions described in the response to Question 1, please confirm that those types/categories of transactions are reflected only in SET's Western gas and electricity risk management "books" and are never included in the risk management "books" of other trading desks at SET (i.e., the East Power and East Gas "books").

**Question No. 4**

Please provide documents concerning SET's gas procurement for the El Dorado plant (including any contracts pertaining to gas procurement), electricity sales from the El Dorado plant (including any contracts pertaining to electricity sales), operations of the El Dorado plant related to plant dispatch, and the financial performance of SET's transactions related to the El Dorado plant.

**Question No. 5:**

Please describe how SET traders on other desks (i.e., the East Power and East Gas desks) who wish to enter into transactions involving Western gas and electricity markets complete that transaction. The response provided should describe, for example, whether Eastern traders have to contact a trader on the Western desk to place a transaction, or whether they do a



Exhibit Q 351

*SOUTHERN CALIFORNIA EDISON COMPANY*
*ORDER INSTITUTING INVESTIGATION*
*I.02-11-040*
**Data Request No. SCE-SET-03**
Dated: 04/07/04

transaction without discussing it with a Western trader and enter it themselves in the Western book?

**Question No. 6:**

Please provide all materials prepared during the Subject Period or after the Subject Period but that concern the Subject Period that SET has or will produce in the San Diego Cases.

***SOUTHERN CALIFORNIA EDISON COMPANY***
***ORDER INSTITUTING INVESTIGATION***
***I.02-11-040***
**Data Request No. SCE-SET-03**
Dated: 04/07/04

**DEFINITIONS**

A. The name "SET," as used herein, refers to Sempra Energy Trading, its parents, subsidiaries, affiliates, and all divisions, predecessors-in-interest, successors-in-interest, assigns, agents, employees, officers, directors, consultants, attorneys or any other person or entity acting on their behalf.

B. The name "SCE," as used herein, refers to Southern California Edison Company.

C. The terms "you" and "your," as used herein, refer individually and collectively to SDG&E.

D. The term "Border Price OII," as used herein, refers to that certain proceeding currently pending before the California Public Utilities Commission captioned "Order Instituting Investigation Into the Gas Market Activities of Southern California Gas Company, San Diego Gas & Electric, Southwest Gas, Pacific Gas and Electric, and Southern California Edison and Their Impact on the Gas Price Spikes Experienced at the California Border from March 2000 through May 2001," Docket No. I.02-11-040 (consolidated with I.03-02-033).

E. The term "Subject Period," as used herein, refers to the period March 1, 2000 through and including May 31, 2001.

F. The term "Discovery Period," as used herein, refers to the period April 1, 1998 through and including May 31, 2002.

G. The term "document," as used herein, has the same meaning as is set forth in California Evidence Code Section 250, and includes, without limitation, all data maintained in Pinnacle or other data bases.

H. The term "communication," as used herein, refers to any expression of information in any form, including, without limitation, a document, as defined herein.

I. The term "concerning," as used herein, means, without limitation, "constituting, comprising, containing, describing, analyzing, evidencing, summarizing, incorporating and/or referring to."

J. The term "all," as used herein, means "any and all."

K. Western gas markets comprises wholesale physical and forward gas markets within the State of California, at the California border (the delivery points at Topock, Needles, Ehrenberg/Blythe, Daggett, and Kern River Station) and in the producing

*SOUTHERN CALIFORNIA EDISON COMPANY*
*ORDER INSTITUTING INVESTIGATION*
*I.02-11-040*
**Data Request No. SCE-SET-03**
Dated: 04/07/04

basins that deliver gas to the California border (the San Juan, Permian, Anadarko, and Rocky Mountain basins). Western electricity markets comprises wholesale physical and forward electricity markets within the State of California and in trading hubs that import to or export from California (the Palo Verde, Mead, Four Corners, California-Oregon border, Malin, and Mid-Columbia trading hubs).

L. The term "San Diego Cases" refers to those actions raising antitrust/anticompetitive and/or market manipulation claims against Sempra Energy Corp., Southern California Gas Company, and/or San Diego Gas & Electric Company, and/or any of their affiliates pending in the San Diego Superior Court (Coordination Proceeding Special Title (Rule 1550(b)) Natural Anti-Trust Cases I, II, III & IV; J.C.C.P. Nos. 4221, 4224, 4226 and 4228).

***SOUTHERN CALIFORNIA EDISON COMPANY***
***ORDER INSTITUTING INVESTIGATION***
***I.02-11-040***
**Data Request No. SCE-SET-03**
Dated: 04/07/04

## INSTRUCTIONS

A. These data requests shall be deemed to seek the production of documents and/or information within your possession, or subject to your custody or control, including documents and information held by you or by any past and present directors, officers, agents representatives, employees, investigators, attorneys, and accountants, or in the possession of your or their consultants, investigators, advisors, agents or associates.

B. For any document withheld from production by you based upon any claim of privilege, please state information sufficient to allow SCE to evaluate the privilege asserted including: the type of document (*i.e.*, letter, memorandum, notes, report, etc.); the date, title and subject matter of the document; the name of the author(s) and signatory(ies); the name(s) of the addressee(s), persons copied with the document and all other recipients of the document; the physical location of the document; a description of any enclosures referred to or included with the document; and the type and basis of the privilege asserted.

C. If you object that a term or phrase is vague, ambiguous or indefinite, you are requested to provide your understanding of the term or phrase, or what you believe to be a reasonable interpretation of the term or phrase, and respond in accordance with that understanding or interpretation. If you object that a request is overbroad or to any extent beyond the scope of discovery, you are requested to explain the manner and extent to which it is overbroad or beyond the scope of discovery. If you object that a request is unduly burdensome, you are requested to explain the manner and extent to which it is unduly burdensome and to state whether you will make documents or other information responsive to the request available to SCE for inspection and/or photocopying in order to avoid the claimed burden. If you object to only a portion of a request, you are requested to respond and produce documents with respect to that portion of the data request to which you do not object. For example, if a request were to ask for production of certain "photographs and pictures," and you were to object to the term "pictures" is ambiguous, you are requested in that instance to nonetheless produce all documents that are responsive with respect to the term "photographs."

D. If a request calls for the production of a document which has been destroyed, placed beyond your possession, custody or control, or otherwise disposed of, you are requested to set forth with respect to each such document, a brief, but complete, identification and description of the document, including: i) the identity of all individuals to whom the substance of the document was transmitted, who saw such document, or otherwise know any of its contents, and under what circumstances such person(s) became aware of the document; ii) the present location of the



Exhibit Q 355

**SOUTHERN CALIFORNIA EDISON COMPANY**
**ORDER INSTITUTING INVESTIGATION**
**I.02-11-040**
**Data Request No. SCE-SET-03**
Dated: 04/07/04

document if the document has not been destroyed; and iii) the name, title, home and business address, and home and business telephone number of the person(s) currently having possession, custody or control of the document; iv) if the document has been destroyed, the date and circumstances under which document was destroyed.

E. If, after you have conducted a reasonable investigation, a complete answer or production of documents cannot be provided with respect to any request herein, you are requested to state that such is the case and to respond to the fullest extent possible, stating what responsive documents or information are available, what documents or information cannot be provided, why such documents or information are unavailable, and what efforts were made to obtain the unavailable documents or information.

F. Documents should be produced for inspection as they are kept in the usual course of business, or organized and labeled to correspond to the categories in the requests. If a document is maintained in the ordinary course of your business in electronic format, the document should be produced in electronic format. Documents from any single file should be produced in the same order as they were found in such file.

G. Unless otherwise stated, these data requests only seek information and documents that i) were prepared or generated during the Discovery Period; or ii) refer to events, activities and/or occurrences during the Discovery Period. Thus, by way of example only, a document dated June 30, 2002 that refers to an event that occurred during the Discovery Period would be responsive to these data requests, whereas a monthly report containing only data for the month of June 2002 would not be responsive to these data requests.

**Prepared By:** **Leon Bass, Jr., Esq.**
**Title:** **Senior Attorney**
**Southern California Edison Company**

# EXHIBIT R

Subpoena Requested by:

Leon Bass, Jr. Esq. )
(Name) )
2244 Walnut Grove Ave./G01, Quad 3B )
)
Rosemead, CA 91770 )
(Address) )
(626) 302-6967 )
(Telephone No.) )
)
Representing: Southern California Edison Co )
)
Interested Party )
(Complainant, Defendant, Other) )

# Public Utilities Commission Of The State Of California

(Caption of Proceeding)

Order Instituting Investigation Into The Gas Market Activities of Southern California Gas Company, et al and Their Impact on the Gas Price Spikes Experienced at the California Border from March 2000 through May 2001

I.02-11-040
(Proceeding Number)

**SUBPOENA OR SUBPOENA DUCES TECUM**

**____Hearing ____Deposition**

THE PEOPLE OF THE STATE OF CALIFORNIA,

TO: Custodian of Records for Sempra Energy Trading

You are ordered to appear before the California Public Utilities Commission, located at 505 Van Ness (Address) Ave., San Francisco, CA 94102-3298 on May 28, 2004 (Date) at 10:00 a.m. (Time) to testify as a witness in this matter unless you make a special agreement with Leon Bass, Jr. (Name of Attorney or Party requesting Subpoena) ______________ to appear at another time. You are:

____ Ordered to appear in person.

____ Ordered to appear in person and produce the records described in the attached affidavit. The personal attendance of the custodian or other qualified witness and the production of the original records is required by this subpoena.

XX Not required to appear in person if you produce the records described in the attached affidavit in compliance with Evidence Code Sections 1560 and 1561.

If you have been subpoenaed as a witness, you are entitled to witness fees and mileage actually traveled, as provided by law. You may request one day's witness and mileage fees for travel to and from the place you are required to appear. You may demand these fees at the time of service from the process server or from the party or attorney requesting the subpoena. If they are not paid or tendered at that time, or unless the subpoena was obtained by the Commission staff, you are not required to appear (Public Utilities Code Section 1791).

**DISOBEDIENCE OF THIS SUBPOENA MAY BE PUNISHED AS CONTEMPT BY THIS COMMISSION.**

By order of the Public Utilities Commission of the State of California. Given under the seal of this Commission this 11th day of May, ~~19~~ 2004.

Angela K. Minkin
Chief Administrative Law Judge

(See reverse)

Exhibit R 357

# PROOF OF SERVICE OF SUBPOENA

I served this _____ subpoena/_____ subpoena duces tecum and supporting affidavit by delivering a copy personally to the person served as follows.

Person served (name) ________________________________

Address where served ________________________________

________________________________

Date of delivery ________________________________

Time of delivery ________________________________

Witness fees (check one)

_____ Were demanded and paid or tendered (Amount $ ______________)

_____ Were not demanded or paid

Fees for service $ ______________

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration is executed on

________________________________
(Date)

________________________________
(Signature)

**BEFORE THE PUBLIC UTILITIES COMMISSION OF THE STATE OF CALIFORNIA**

| | | |
|---|---|---|
| Order Instituting Investigation Into the Gas Market Activities of Southern California Gas Company, San Diego Gas and Electric, Southwest Gas, Pacific Gas and Electric, and Southern California Edison and Their Impact in the Gas Price Spikes Experienced at the California Border from March 2000 through May 2001. | ) | Investigation 02-11-040 |

**AFFIDAVIT OF WALKER A. MATTHEWS, III SUPPORTING THE ISSUANCE OF SOUTHERN CALIFORNIA EDISON COMPANY'S (U 338-E) SUBPOENA DUCES TECUM TO SEMPRA ENERGY TRADING**

I, Walker A. Matthews, III, declare:

1. I am an attorney licensed to practice in the State of California and before this Commission. I am one of the attorneys of record in this Order Instituting Investigation 02-11-040 proceeding (hereinafter referred to as the "OII"), on behalf of Southern California Edison Company ("SCE"). I have personal knowledge of the following facts, and could testify competently thereto if called.

2. On November 21, 2002, the Commission issued an OII to examine the California natural gas market and activities of certain participants in that market during the period March, 2000 to May, 2001, and determine whether those activities caused or contributed to price spikes at the California border. The Commission named Southern California Gas Company ("SoCalGas") and San Diego Gas & Electric Company ("SDG&E") as respondents for Phase I of the investigation.

3. The Commission also stated in the OII that it expected cooperation in the investigation from other non-jurisdictional entities, especially from the affiliate trading entities of the utilities.

4. In its April 16, 2003 Scoping Memo, the Commission expressly identified a number of issues concerning Sempra Energy Corporation ("Sempra"), Sempra Energy Trading ("SET"), and Sempra Energy Resources ("SER") to be investigated during Phase I, including whether Sempra, SET, or SER played a role in causing the increase in border prices, and whether concerns about the financial position of their parent company or affiliates caused SoCalGas or SDG&E to take actions that may have increased gas costs. (Scoping Memo Issue Number 2).

5. The Scoping Memo also identified several sub-issues, but expressly stated that these sub-issues were illustrative in nature, and not intended to limit the overall scope of the investigation as described in the Scoping Memo.

6. On October 30, 2003, Administrative Law Judge Sarah Thomas ruled that the Commission had the authority to subpoena Sempra, SET, and SER in connection with the OII.

7. The requests attached to the subpoena as Attachment A are necessary for discovery of evidence relevant to Scoping Memo Issue No. 2, and other issues identified in the Scoping Memo. Specifically, Questions 1 – 16 seek data and information concerning the accounting calculations and adjustments made on various financial transaction documents produced by SET in this action. As provided in the Scoping Memo, the Commission is investigating, among other things, the gas market transactions that occurred during the Subject Period to see how those transactions contributed to price spikes. Consequently, the questions are relevant to Scoping Memo Issue No. 2 concerning SET's role in causing price spikes, and Scoping Memo Sub-issue No. 2b concerning SET's positions in the electricity market. Indeed, the questions are needed to elicit information that the Commission needs to understand how the transactions, including SET's accounting for the transactions, affected the California natural gas market.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 12th day of May 2004, in Rosemead, California.

Walker A. Matthews, III

Walker A. Matthews, III

State of California )
) ss.
County of Los Angeles )

On May 12, 2004, before me, Sarah C. Perez, Notary Public, personally appeared Walker A. Matthews, III, personally known to me to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, executed the instrument.

SARAH C. PEREZ
Commission # 1312551
Notary Public - California
Los Angeles County
My Comm. Expires Aug 6, 2005

Sarah C. Perez

Sarah C. Perez
Notary Public for the State of California

# ATTACHMENT A

***SOUTHERN CALIFORNIA EDISON COMPANY***
***ORDER INSTITUTING INVESTIGATION***
***I.02-11-040***
**Data Request No. SCE-SET-04**
Dated: 05/12/04
**REFERS TO PROTECTED MATERIALS**

## DATA REQUESTS

**Question No. 1:**

With respect to documents SET 05679 to SET 05862, please explain how these documents were generated and identify the individual most knowledgeable about the financial results reported within these documents.

**Question No. 2:**

With respect to SET 05685, please explain in detail the accounting adjustments that are being made (or the income that is being recognized) in December 2000 such that Net Income before Allocations is $12,976,497 and Net Income before Taxes etc. is $35,799,660. Explain the source of the adjustment and provide all documents that detail the adjustment.

**Question No. 3:**

With respect to SET 05688, please explain in detail the accounting adjustments that are being made (or the income that is being recognized) in December 2000 such that Net Income before Allocations is $16,764,264 and Net Income before Taxes etc. is $39,833,041. Explain the source of the adjustment and provide all documents that detail the adjustment.

**Question No. 4:**

With respect to SET 05721, please explain in detail the accounting adjustments that are being made (or the income that is being recognized) in December 2000 such that Net Income before Allocations is $9,916,085 and Net Income before Taxes etc. is $120,411,289. Explain the source of the adjustment and provide all documents that detail the adjustment.

**Question No. 5:**

With respect to SET 05724, please explain in detail the accounting adjustments that are being made (or the income that is being recognized) in December 2000 such that Net Income before Allocations is -$458,880 and Net

*SOUTHERN CALIFORNIA EDISON COMPANY*
*ORDER INSTITUTING INVESTIGATION*
*I.02-11-040*
**Data Request No. SCE-SET-04**
Dated: 05/12/04
**REFERS TO PROTECTED MATERIALS**

Income before Taxes etc. is $34,817,615. Explain the source of the adjustment and provide all documents that detail the adjustment.

**Question No. 6:**

With respect to SET 05727, please explain in detail the accounting adjustments that are being made (or the income that is being recognized) in December 2000 such that Net Income before Allocations is $58,472,562 and Net Income before Taxes etc. is $302,210,493. Explain the source of the adjustment and provide all documents that detail the adjustment.

**Question No. 7:**

With respect to SET 05730, please explain in detail the accounting adjustments that are being made (or the income that is being recognized) in December 2000 such that Net Income before Allocations is -$48,594,791 and Net Income before Taxes etc. is -$256,933,669. Explain the source of the adjustment and provide all documents that detail the adjustment.

**Question No. 8:**

With respect to SET 05748, please explain in detail the accounting adjustments that are being made (or the income that is being recognized) in December 2000 such that Net Income before Allocations is -$19,607 and Net Income before Taxes etc. is $6,297,657. Explain the source of the adjustment and provide all documents that detail the adjustment.

**Question No. 9:**

With respect to SET 05754, please explain in detail the accounting adjustments that are being made (or the income that is being recognized) in December 2000 such that Net Income before Allocations is $8,958 and Net Income before Taxes etc. is $3,001,275. Explain the source of the adjustment and provide all documents that detail the adjustment.

***SOUTHERN CALIFORNIA EDISON COMPANY***
***ORDER INSTITUTING INVESTIGATION***
***I.02-11-040***
**Data Request No. SCE-SET-04**
Dated: 05/12/04
**REFERS TO PROTECTED MATERIALS**

**Question No. 10:**

With respect to SET 05757, please explain in detail the accounting adjustments that are being made (or the income that is being recognized) in December 2000 such that Net Income before Allocations is -$28,737 and Net Income before Taxes etc. is $3,296,211. Explain the source of the adjustment and provide all documents that detail the adjustment.

**Question No. 11:**

With respect to SET 05760, please explain in detail the accounting adjustments that are being made (or the income that is being recognized) in December 2000 such that Net Income before Allocations is $10,394,597 and Net Income before Taxes etc. is $79,296,041. Explain the source of the adjustment and provide all documents that detail the adjustment.

**Question No. 12:**

With respect to SET 05763, please explain in detail the accounting adjustments that are being made (or the income that is being recognized) in December 2000 such that Net Income before Allocations is $8,505,617 and Net Income before Taxes etc. is $72,967,645. Explain the source of the adjustment and provide all documents that detail the adjustment.

**Question No. 13:**

With respect to SET 05766, please explain in detail the accounting adjustments that are being made (or the income that is being recognized) in December 2000 such that Net Income before Allocations is $1,888,980 and Net Income before Taxes etc. is $6,328,397. Explain the source of the adjustment and provide all documents that detail the adjustment.

**Question No. 14:**

With respect to SET 05784, please explain in detail the accounting adjustments that are being made (or the income that is being recognized) in December 2000 such that Net Income before Allocations is $536 and Net Income before Taxes etc. is $13,857. Explain the source of the adjustment and provide all documents that detail the adjustment.

***SOUTHERN CALIFORNIA EDISON COMPANY***
***ORDER INSTITUTING INVESTIGATION***
***I.02-11-040***
**Data Request No. SCE-SET-04**
Dated: 05/12/04
**REFERS TO PROTECTED MATERIALS**

**Question No. 15:**

With respect to SET 05790, please explain in detail the accounting adjustments that are being made (or the income that is being recognized) in December 2000 such that Net Income before Allocations is $0 and Net Income before Taxes etc. is $10,365. Explain the source of the adjustment and provide all documents that detail the adjustment.

**Question No. 16:**

With respect to SET 05793, please explain in detail the accounting adjustments that are being made (or the income that is being recognized) in December 2000 such that Net Income before Allocations is $0 and Net Income before Taxes etc. is $2,956. Explain the source of the adjustment and provide all documents that detail the adjustment.

*SOUTHERN CALIFORNIA EDISON COMPANY*
*ORDER INSTITUTING INVESTIGATION*
*I.02-11-040*
**Data Request No. SCE-SET-04**
Dated: 05/12/04
**REFERS TO PROTECTED MATERIALS**

## DEFINITIONS

A. The name "SET," as used herein, refers to Sempra Energy Trading, its parents, subsidiaries, affiliates, and all divisions, predecessors-in-interest, successors-in-interest, assigns, agents, employees, officers, directors, consultants, attorneys or any other person or entity acting on their behalf.

B. The name "SCE," as used herein, refers to Southern California Edison Company.

C. The terms "you" and "your," as used herein, refer individually and collectively to SDG&E.

D. The term "Border Price OII," as used herein, refers to that certain proceeding currently pending before the California Public Utilities Commission captioned "Order Instituting Investigation Into the Gas Market Activities of Southern California Gas Company, San Diego Gas & Electric, Southwest Gas, Pacific Gas and Electric, and Southern California Edison and Their Impact on the Gas Price Spikes Experienced at the California Border from March 2000 through May 2001," Docket No. I.02-11-040 (consolidated with I.03-02-033).

E. The term "Subject Period," as used herein, refers to the period March 1, 2000 through and including May 31, 2001.

F. The term "Discovery Period," as used herein, refers to the period April 1, 1998 through and including May 31, 2002.

G. The term "document," as used herein, has the same meaning as is set forth in California Evidence Code Section 250, and includes, without limitation, all data maintained in Pinnacle or other data bases.

H. The term "communication," as used herein, refers to any expression of information in any form, including, without limitation, a document, as defined herein.

I. The term "concerning," as used herein, means, without limitation, "constituting, comprising, containing, describing, analyzing, evidencing,

summarizing, incorporating and/or referring to."

J. The term "all," as used herein, means "any and all."

K. Western gas markets comprises wholesale physical and forward gas markets within the State of California, at the California border (the delivery points at Topock, Needles, Ehrenberg/Blythe, Daggett, and Kern River Station) and in the producing basins that deliver gas to the California border (the San Juan, Permian, Anadarko, and Rocky Mountain basins). Western electricity markets comprises wholesale physical and forward electricity markets within the State of California and in trading hubs that import to or export from California (the Palo Verde, Mead, Four Corners, California-Oregon border, Malin, and Mid-Columbia trading hubs).

L. The term "San Diego Cases" refers to those actions raising antitrust/anticompetitive and/or market manipulation claims against Sempra Energy Corp., Southern California Gas Company, and/or San Diego Gas & Electric Company, and/or any of their affiliates pending in the San Diego Superior Court (Coordination Proceeding Special Title (Rule 1550(b)) Natural Anti-Trust Cases I, II, III & IV; J.C.C.P. Nos. 4221, 4224, 4226 and 4228).

***SOUTHERN CALIFORNIA EDISON COMPANY***
***ORDER INSTITUTING INVESTIGATION***
***I.02-11-040***
**Data Request No. SCE-SET-04**
Dated: 05/12/04
**REFERS TO PROTECTED MATERIALS**

**INSTRUCTIONS**

A. These data requests shall be deemed to seek the production of documents and/or information within your possession, or subject to your custody or control, including documents and information held by you or by any past and present directors, officers, agents representatives, employees, investigators, attorneys, and accountants, or in the possession of your or their consultants, investigators, advisors, agents or associates.

B. For any document withheld from production by you based upon any claim of privilege, please state information sufficient to allow SCE to evaluate the privilege asserted including: the type of document (*i.e.*, letter, memorandum, notes, report, etc.); the date, title and subject matter of the document; the name of the author(s) and signatory(ies); the name(s) of the addressee(s), persons copied with the document and all other recipients of the document; the physical location of the document; a description of any enclosures referred to or included with the document; and the type and basis of the privilege asserted.

C. If you object that a term or phrase is vague, ambiguous or indefinite, you are requested to provide your understanding of the term or phrase, or what you believe to be a reasonable interpretation of the term or phrase, and respond in accordance with that understanding or interpretation. If you object that a request is overbroad or to any extent beyond the scope of discovery, you are requested to explain the manner and extent to which it is overbroad or beyond the scope of discovery. If you object that a request is unduly burdensome, you are requested to explain the manner and extent to which it is unduly burdensome and to state whether you will make documents or other information responsive to the request available to SCE for inspection and/or photocopying in order to avoid the claimed burden. If you object to only a portion of a request, you are requested to respond and produce documents with respect to that portion of the data request to which you do not object. For example, if a request were to ask for production of certain "photographs and pictures," and you were to object to the term "pictures" is ambiguous, you are requested in that instance to nonetheless produce all documents that are responsive with respect to the term "photographs."

*SOUTHERN CALIFORNIA EDISON COMPANY*
*ORDER INSTITUTING INVESTIGATION*
*I.02-11-040*
**Data Request No. SCE-SET-04**
Dated: 05/12/04
**REFERS TO PROTECTED MATERIALS**

D. If a request calls for the production of a document which has been destroyed, placed beyond your possession, custody or control, or otherwise disposed of, you are requested to set forth with respect to each such document, a brief, but complete, identification and description of the document, including: i) the identity of all individuals to whom the substance of the document was transmitted, who saw such document, or otherwise know any of its contents, and under what circumstances such person(s) became aware of the document; ii) the present location of the document if the document has not been destroyed; and iii) the name, title, home and business address, and home and business telephone number of the person(s) currently having possession, custody or control of the document; iv) if the document has been destroyed, the date and circumstances under which document was destroyed.

E. If, after you have conducted a reasonable investigation, a complete answer or production of documents cannot be provided with respect to any request herein, you are requested to state that such is the case and to respond to the fullest extent possible, stating what responsive documents or information are available, what documents or information cannot be provided, why such documents or information are unavailable, and what efforts were made to obtain the unavailable documents or information.

F. Documents should be produced for inspection as they are kept in the usual course of business, or organized and labeled to correspond to the categories in the requests. If a document is maintained in the ordinary course of your business in electronic format, the document should be produced in electronic format. Documents from any single file should be produced in the same order as they were found in such file.

G. Unless otherwise stated, these data requests only seek information and documents that i) were prepared or generated during the Discovery Period; or ii) refer to events, activities and/or occurrences during the Discovery Period. Thus, by way of example only, a document dated June 30, 2002 that refers to an event that occurred during the Discovery Period would be responsive to these data requests, whereas a monthly report containing only data for the month of June 2002 would not be responsive to these data requests.

*SOUTHERN CALIFORNIA EDISON COMPANY*
*ORDER INSTITUTING INVESTIGATION*
*I.02-11-040*
**Data Request No. SCE-SET-04**
Dated: 05/12/04
**REFERS TO PROTECTED MATERIALS**

**Prepared By:** Leon Bass, Jr., Esq.
**Title:** Senior Attorney
Southern California Edison Company



Exhibit R 371

# EXHIBIT S

JET/jva 8/26/2004

**BEFORE THE PUBLIC UTILITIES COMMISSION OF THE STATE OF CALIFORNIA**

| | |
|---|---|
| Order Instituting Investigation into the Gas Market Activities of Southern California Gas Company, San Diego Gas and Electric, Southwest Gas, Pacific Gas and Electric, and Southern California Edison and their impact on the Gas Price Spikes experienced at the California Border from March 2000 through May 2001. | Investigation 02-11-040 (Filed November 21, 2002) |

## ADMINISTRATIVE LAW JUDGE'S RULING RE COMPLIANCE WITH PREVIOUS DISCOVERY RULINGS

A review of the status of compliance with earlier discovery rulings in this proceeding (including the ruling of June 10, 2004) is necessary to assist the Commission in scheduling the remaining phases of this proceeding. Therefore, the parties are ordered as indicated to file and serve the following described information by 5:00 p.m. (PDT), Wednesday, September 1, 2004 (with simultaneous e-mail service to Administrative Law Judges TerKeurst and Thorson of those documents that can be e-mailed in an electronic format). If necessary, parties may request that certain information be filed under seal.

### Southern California Edison (Edison)

1. Comments, if any, on the information and representations contained in Sempra Energy Trading's (SET) weekly status reports and Peter Jazayeri's August 17, 2004, e-mail concerning the status of e-mail discovery and review.

2. A list of the search terms, connectors and other parameters submitted to SET and apparently now being used by SET to discover and review employee e-mail records.
3. A copy of the "39 data requests with 24 detailed subparts" propounded by Edison, as referred to in paragraph 2 of Peter Jazayeri's August 17 e-mail.

**Sempra Energy Trading**

1. A list of the search terms, connectors and other parameters being used to identify e-mail documents for the California Attorney General.
2. Names of the employees, and their job titles, whose e-mail sets are being reviewed for submission to the California Attorney General.
3. Names and job titles of the "senior managers . . . whose work involved western natural gas markets," as referred to in the final paragraph of Lucas A. Messenger's August 20, 2004, e-mailed weekly status report (and in other prior weekly status reports).
4. For each employee identified in paragraphs 2 and 3, (a) the number of e-mail documents identified for review; (b) the number or percentage of e-mail documents for which review is complete; and (c) the number or percentage of e-mail documents provided to Edison.
5. Have all e-mails furnished to the California Attorney General also been supplied to Edison? If not, indicate how many documents have not been provided and explain why they have not been provided.

**IT IS SO RULED.**

Dated August 26, 2004, at San Francisco, California.

/s/ JOHN E. THORSON
John E. Thorson
Law and Motion Judge

## CERTIFICATE OF SERVICE

I certify that I have by mail, and by electronic mail to the parties to which an electronic mail address has been provided, this day served a true copy of the original attached Administrative Law Judge's Ruling Re Compliance With Previous Discovery Rulings on all parties of record in this proceeding or their attorneys of record.

Dated August 26, 2004, at San Francisco, California.

/s/ JANET V. ALVIAR
Janet V. Alviar

## N O T I C E

Parties should notify the Process Office, Public Utilities Commission, 505 Van Ness Avenue, Room 2000, San Francisco, CA 94102, of any change of address to insure that they continue to receive documents. You must indicate the proceeding number on the service list on which your name appears.

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *
* * *

The Commission's policy is to schedule hearings (meetings, workshops, etc.) in locations that are accessible to people with disabilities. To verify that a particular location is accessible, call: Calendar Clerk (415) 703-1203.

If specialized accommodations for the disabled are needed, e.g., sign language interpreters, those making the arrangements must call the Public Advisor at (415) 703-2074, TTY 1-866-836-7825 or (415) 703-5282 at least three working days in advance of the event.

# EXHIBIT T

BEFORE THE PUBLIC UTILITIES COMMISSION OF THE

STATE OF CALIFORNIA

| | |
|---|---|
| Order Instituting Investigation Into the Gas Market Activities of Southern California Gas Company, San Diego Gas and Electric, Southwest Gas, Pacific Gas and Electric, and Southern California Edison and Their Impact on the Gas Price Spikes Experienced at the California Border from March 2000 through May 2001. | Investigation 02-11-040<br>(Filed November 21, 2002) |

**RESPONSE OF SOUTHERN CALIFORNIA EDISON COMPANY (U-338-E) TO ADMINISTRATIVE LAW JUDGE JOHN E. THORSON'S AUGUST 26, 2004 ORDER REQUESTING INFORMATION REGARDING COMPLIANCE WITH PREVIOUS DISCOVERY RULINGS; DECLARATION OF WALKER A. MATTHEWS, III IN SUPPORT**

DOUGLAS PORTER
LEON BASS, JR.
WALKER A. MATTHEWS, III

Attorneys for
SOUTHERN CALIFORNIA EDISON COMPANY

2244 Walnut Grove Avenue
Post Office Box 800
Rosemead, California 91770
Telephone: (626) 302-6879
Facsimile: (626) 302-3990
E-mail: walker.matthews@sce.com

Dated: September 1, 2004

**BEFORE THE PUBLIC UTILITIES COMMISSION OF THE STATE OF CALIFORNIA**

| | |
|---|---|
| Order Instituting Investigation Into the Gas Market Activities of Southern California Gas Company, San Diego Gas and Electric, Southwest Gas, Pacific Gas and Electric, and Southern California Edison and Their Impact on the Gas Price Spikes Experienced at the California Border from March 2000 through May 2001. | Investigation 02-11-040 (Filed November 21, 2002) |

**RESPONSE OF SOUTHERN CALIFORNIA EDISON COMPANY (U-338-E) TO ADMINISTRATIVE LAW JUDGE JOHN E. THORSON'S AUGUST 26, 2004 ORDER REQUESTING INFORMATION REGARDING COMPLIANCE WITH PREVIOUS DISCOVERY RULINGS; DECLARATION OF WALKER A. MATTHEWS, III IN SUPPORT**

Pursuant to Administrative Law Judge ("ALJ") John E. Thorson's August 26, 2004 Order, Southern California Edison Company ("SCE") submits this response regarding Sempra Energy Trading's ("SET") compliance with the Commission's previous discovery rulings.

## I.

## PRELIMINARY STATEMENT

SET's Commission-ordered production of e-mails remains incomplete, with no set timetable as to when SET will be able to complete it. Indeed, rather than increasing or becoming more efficient during the past few months, the pace of SET's e-mail production has slackened noticeably during the past few weeks from the initial high of approximately 13,000 documents per week. As a result of SET's incomplete production and the uncertainty of the expected completion date, SCE cannot prepare comprehensive testimony for Phase I.B of this investigation, or reasonably estimate when it will be able to do so.

Continued and unfettered delay from SET in producing these e-mails is unacceptable. The Commission first ordered SET to search for and produce its back-up e-mail tapes in November, 2003, but nearly one year later according to SET's reports, only a small fraction – approximately 15 of 73 requested e-mail files – have been produced.[1] At that pace, SET likely will not complete its production until another three to four years, effectively stalling this investigation.[2]

As explained below, the pace of SET's review and production can most measurably (and sensibly) be increased by requiring SET to use more attorneys to review the e-mails. Accordingly, SCE also submits this response to respectfully request the Commission to hold a discovery hearing on this matter to determine whether SET should be required to add additional attorneys to SET's review, and to set a final deadline for SET to complete its e-mail production within two to three months, so that SCE can prepare its Phase I.B testimony, and further delays caused by SET's incomplete production can be avoided.

## II.

## DISCUSSION

### SCE's Responses To ALJ Thorson's Specific Questions

In the August 26, 2004 Order, ALJ Thorson requests SCE to provide the following: (1) comments, if any, on the information and representations contained in Sempra Energy Trading's ("SET") weekly status reports and Mr. Peter Jazayeri's August 17, 2004 e-mail concerning the status of e-mail discovery and review; (2) a list of the search terms, connectors and other parameters submitted to SET and apparently being used by SET to discover and review employee e-mail records; and (3) a copy of the "39 data requests with 24 detailed subparts" propounded by SCE,

---

1 The Commission actually has ordered SET to search for and produce its back-up e-mail tapes during three separate discovery hearings in November 2003, February 2004 (clarifying that the order was first made in November 2003), and March 2004.

as referred to in paragraph 2 of Peter Jazayeri's August 17 e-mail. *See* Attachment G, August 26, 2004 Order. SCE response to each request follows:

1. **<u>Comments On SET's Weekly Status Reports and Mr. Jazayeri's August 17, 2004 E-Mail</u>**

As ALJ Thorson previously recognized, SET's weekly status reports show that the pace of SET's review and production of e-mails has decreased nearly each week during the past two months since SET began providing these reports. Mr. Jazayeri's explanation as to why SET's review and production has slowed merely confirms that SET's pace of production will <u>not</u> improve. In addition, Mr. Jazayeri's explanation completely fails to (and indeed, does not even attempt to) identify steps SET has taken (or has considered taking) to improve the pace of its production. *See* Attachment F, Mr. Jazayeri's August 17, 2004 E-mail to ALJ Thorson. SET's lackluster pace, and utter failure to identify ways to improve its production is unacceptable. SET should be able to increase the pace of its production without compromising the quality of its review or increasing its costs, and the Commission should require it to do so.

Based on the information and representations provided by SET that it takes approximately one minute to review one document page, the pace of SET's production can be improved most measurably and sensibly – without compromising quality of SET's review or increasing SET's costs – by merely increasing the number of attorneys involved during the various "tiers" of review that SET say it needs to complete. For example, if one attorney can review one page in one minute, two attorneys can review two pages in that same one-minute interval, and so forth. Consequently, the time SET says it needs to review and produce the e-mails can therefore be reduced in half, by a third, or more simply by adding more reviewing

---

Continued from the previous page
2 SET's former counsel, Mr. Daniel Hecht, has advised the Commission that SET projects that it will not be able to complete its review and production of e-mails until four years. *See* Attachment E, May 14, 2004 Transcript 438:15-25.

attorneys. This solution also makes sense because it should not increase the cost of SET's document review. Indeed, the cost of the review should remain the same – or even decrease – given that the overall time spent by attorneys reviewing the e-mails will decrease proportionally (if not more so) to the number of attorneys involved in the review.

The conclusion is supported by information SCE has learned from Special Counsel. Special Counsel is a national legal consulting firm that provides, among other things, legal workforce and project solutions for a variety of legal matters, including those legal matters similar to the document review and production the Commission has ordered SET to complete. *See* Attachment H SCE provided Special Counsel with information concerning the size of the e-mail files being reviewed by SET (approximately 60 gigabytes and 4.5 million pages of e-mail) that was provided by Mr. Hecht at the May 14, 2004 hearing. *See* Attachment E, Transcript 436: 4-10.

Using SET's own representations about the size of the search required, Special Counsel estimates that they could complete the project in one to six months for a total cost from $625 thousand to $3.75 million, depending upon the number of attorneys involved and the type of review completed.[3] *See* Attachment H. Significantly, the cost of the project remains the same regardless of how many attorneys are used, because the pace of the review increases proportionately. Simply stated, if more attorneys are utilized, less time is needed to review the documents, and the total cost of the review project remains the same.

2. <u>Search Terms Provided to SET</u>

As ordered by the Commission, SCE has provided a list of several "search terms," "connectors," and other search parameters to assist SET in its Commission-ordered review and production of e-mails. *See* Attachment B

---

[3] Special Counsel did not offer (and indeed could not offer) an opinion on the adequacy of SET's search, but only estimated how long it would take them to complete the project.

(providing initial search terms); and Attachment C (providing at SET's request connector terms for certain search terms that provided excessive "hits", and other search parameters to further focus and assist SET's search). For the convenience of the Commission, the current complete list of these terms is provided in Attachment A.

3. **Data Requests**

The "39 data requests" referred to in Mr. Jazayeri's August 17, 2004 e-mail refer to SCE's First Set of Data Requests to Sempra Energy Trading. These requests are provided in Attachment D.

## III.
## CONCLUSION

To facilitate the setting of a schedule for Phase I.B, SCE proposes that the Commission hold a discovery hearing on this matter to determine whether SET should be required to use additional attorneys in its review and production of e-mails, and hopefully to set a deadline for SET to complete its production.

Respectfully submitted,

W. A. Matthews, III

By: Walker A. Matthews, III

Attorneys for
SOUTHERN CALIFORNIA EDISON COMPANY

2244 Walnut Grove Avenue
Post Office Box 800
Rosemead, California 91770
Telephone: (626) 302-6879
Facsimile: (626) 302-3990
E-mail: Walker.Matthews@sce.com

Dated: September 1, 2004

# EXHIBIT U

-----Original Message-----
From: Thorson, John E. [mailto:JET@cpuc.ca.gov]
Sent: Wednesday, September 08, 2004 12:15 PM
To: 'keith.mccrea@sablaw.com'; 'dgilmore@sempra.com'; 'mthorp@sempra.com'; 'safir@reconcorp.com'; 'walker.matthews@sce.com'; 'david.vaniderstine@sce.com'; 'leon.bass@sce.com'; 'burkee@cts.com'; 'fortlieb@sandiego.gov'; 'marcel@turn.org'; 'mzafar@semprautilities.com'; 'armi@smwlaw.com'; Fulcher, Jack; Greig, Jacqueline; 'theresa_mueller@ci.sf.ca.us'; 'd2mr@pge.com'; 'frl3@pge.com'; 'jmalkin@orrick.com'; 'mfogelman@steefel.com'; 'tomb@crossborderenergy.com'; 'dkk@eslawfirm.com'; 'dhouck@energy.state.ca.us'; 'pinney@capp.ca'; 'dlberesford@hhlaw.com'; 'kjsimonsen@ems-ca.com'; 'john.smith@kernrivergas.com'; 'mark.moench@kernrivergas.com'; 'dnorris@sppc.com'; 'centralfiles@semprautilities.com'; 'pucservice@manatt.com'; Yudkowsky, Alan; 'rravipudi@elllaw.com'; 'npedersen@hanmor.com'; 'klatt@energyattorney.com'; 'case.admin@sce.com'; 'douglas.porter@sce.com'; 'gloria.ing@sce.com'; 'peggy.stern@sce.com'; 'jleslie@luce.com'; 'kjk@kjkammerer.com'; 'norman.furuta@navy.mil'; 'ek@a-klaw.com'; 'mdm8@pge.com'; 'elichtblau@orrick.com'; 'epoole@adplaw.com'; 'Cem@newsdata.com'; 'bcragg@gmssr.com'; 'chrishilen@dwt.com'; 'james.boothe@bklaw.com'; 'bhimmelstein@lchb.com'; 'efastiff@lchb.com'; 'lindseyhowdowning@dwt.com'; 'jkarp@whitecase.com'; 'daniel.fessler@hklaw.com'; 'lisaweinzimer@sbcglobal.net'; 'ecrem@ix.netcom.com'; 'rwalther@pacbell.net'; 'RochmanM@spurr.org'; 'vhconsult@earthlink.net'; 'phanschen@mofo.com'; 'aclark@calpine.com'; 'joe.paul@dynegy.com'; 'mrw@mrwassoc.com'; 'rschmidt@bartlewells.com'; 'paulpremo@msn.com'; 'rmccann@umich.edu'; 'cmkehrein@ems-ca.com'; 'blaising@braunlegal.com'; 'jweil@aglet.org'; 'kdw@woodruff-expert-services.com'; 'mlgillette@duke-energy.com'; 'mharris@henwoodenergy.com'; 'rliebert@cfbf.com'; 'karen@klindh.com'; 'egw@a-klaw.com'; Loewen, James; 'mer@cpuc.ca.gov'; Gatti, Belinda; TerKeurst, Charlotte; Sanchez, Danilo E.; Zeller, Jason; Thorson, John E.; Alfton, Joyce; Lee, Kelly; Ramirez, Manuel; Cagen, Robert C.; Grant, Roosevelt; Thomas, Sarah R.; Horner, Trina; 'clarence.binninger@doj.ca.gov'; 'andrew@simpsonpartners.com'; 'gbell@water.ca.gov'; 'jslee@water.ca.gov'; 'jpacheco@water.ca.gov'
Cc: 'dfollett@sempra.com'
Subject: I02-11-040 LAW & MOTION HEARING

Counsel,

Judge TerKeurst and I have scheduled a law and motion calendar for 10:00 a.m.-noon, Friday, September 17, 2004, at the Commission in San Francisco, to address the following matters:

1-Southern California Edison Co.'s Motion for an Order Compelling Sempora Energy Corp. to Produce Documents (filed August 13, 2004) (Walter A. Matthews III, SCE/Erich F. Lichtblau, Sempra Energy)

2-Compliance with Administrative Law Judge's Ruling Following Law and Motion Hearing on Discovery (June 10, 2004) (Leon Bass, Jr. & Walter A. Matthews III, SCE/Alan Yudkowsky, Sempra Energy Trading)

Concerning Item 2, above, we have reviewed the pleadings filed last week in response to my ALJ Ruling re Compliance With Previous Discovery Rulings (August 26, 2004), and we believe a hearing is necessary to determine how the email review process may be expedited. Edison and Sempra Energy Trading should come prepared to offer evidence and argument supporting recommendations on this question. Some of the issues that will be explored
include: increasing attorney or para-professional resources, obtaining assistance of other contractors, modifying or reducing search terms, or modifying or reducing employee email sets. The parties are encouraged to offer other suggestions. Sempra Energy Trading should prepare up-to-date statistics on the email review process. Edison should be prepared to report on the status of its review of those emails already provided to it by Sempra Energy Trading.

The hearing will be reported. Written notice will follow.

John E. Thorson
Law and Motion Judge
Administrative Law Judge
California Public Utilities Commission
505 Van Ness Ave., Rm. 5007
San Francisco, CA 94102
(415) 355-5568
jet@cpuc.ca.gov

# EXHIBIT V

 552041-0009

**BEFORE THE PUBLIC UTILITIES COMMISSION OF THE STATE OF CALIFORNIA**

| | | |
|---|---|---|
| Order Instituting Investigation into the Gas Market Activities of Southern California Gas Company, San Diego Gas and Electric, Southwest Gas, Pacific Gas and Electric, and Southern California Edison and their impact on the Gas Price Spikes experienced at the California Border from March 2000 through May 2001 | ) ) ) ) ) ) ) ) ) | I. 02-11-040 |

**ORDER (PROPOSED) RE: E-MAIL RECOVERY, REVIEW AND PRODUCTION BY SEMPRA ENERGY TRADING CORP.**

DOUGLAS K. PORTER
LEON BASS, JR.
WALKER A. MATTHEWS III

Attorneys for
SOUTHERN CALIFORNIA EDISON COMPANY

2244 Walnut Grove Avenue
Post Office Box 800
Rosemead, California 91770
Telephone: (626) 302-6967
Facsimile: (626) 302-3990
E-mail: leon.bass@sce.com

Dated: October 6, 2004

LW042800007.doc

**BEFORE THE PUBLIC UTILITIES COMMISSION OF THE STATE OF CALIFORNIA**

| | | |
|---|---|---|
| Order Instituting Investigation into the Gas Market Activities of Southern California Gas Company, San Diego Gas and Electric, Southwest Gas, Pacific Gas and Electric, and Southern California Edison and their impact on the Gas Price Spikes experienced at the California Border from March 2000 through May 2001 | ) | I. 02-11-040 |

**ORDER (PROPOSED) RE: E-MAIL RECOVERY, REVIEW AND PRODUCTION BY SEMPRA ENERGY TRADING CORP.**

This Order (Proposed) reflects rulings issued by Assigned Administrative Law Judge ("Assigned ALJ") Charlotte Terkeurst and Law and Motion Administrative Law Judge ("Law & Motion ALJ") John E. Thorson at the discovery hearing held on September 20, 2004. That hearing addressed the status of Sempra Energy Trading Corp.'s ("SET") compliance with Law & Motion ALJ Thorson's prior June 10, 2004 rulings concerning SET's recovery, review, and delivery of email documents pursuant to Southern California Edison Company's ("SCE") subpoena *duces tecum*.

After hearing the presentations and arguments of counsel on behalf of SCE and SET, Law & Motion ALJ Thorson ruled as follows:

1. SET will review the e-mail of the following primary employees[1]: Nos. 3, 5, 6, 7, 8, 9, 12, 15, 16, 17, 18, and 19.[2]
2. Within 10 days of the September 20, 2004 hearing, SET will provide to SCE job descriptions for the employees that are not going to be the primary objects of SET's email search, review and production. Based upon review of the job descriptions provided, SCE will continue to have the opportunity to ask the Commission for the search of additional employees.
3. SET will review the employee email sets for those identified primary employees, using the search terms and connectors already provided to SET by SCE. In addition, SCE and SET are to engage in meaningful dialogue about how the search function can be more expeditiously performed and fashioned in a more convenient and less expensive manner.
4. The tier review process presently utilized by SET to review documents identified through the use of SCE search term documents is hereby modified. The need to match the documents to the 54 questions contained in SCE's data request is eliminated. SET's tier two review must now search for documents that are responsive to the issue of the potential impact on the price of energy in the Western United States.

---

[1] During the September 20 hearing, SCE counsel, upon the Law & Motion ALJ's request, identified twelve SET employees whose e-mail files SCE would be most interested in reviewing. Following the hearing, SCE identified two other SET employees whose e-mails SCE believes will be relevant to thie issues in this Phase 1B proceeding. SCE included those two employees on its priority list, which was e-mailed to SET counsel on September 27, 2004. SCE created and served the priority list pursuant to an order issued by the Law & Motion ALJ at the September 20 hearing.

[2] The SET employees identified are listed by name on page 2 of 6 slides presented by SCE during the September 20, 2004 hearing. In order to preserve the confidentiality of those names, a corresesponding number was given to each of the 19 names listed on that slide. That corresponding number is being used to identify those primary employees whose e-mail files SET is being ordered to review.

5. SET must review documents at a rate of 10,000 to 14,000 per week. SET must reach that volume range no later than October 4, 2004 and maintain a rolling average of 12,000 documents per week (with that average being calculated over a four week period) until the e-mail recovery, review and production is completed.
6. In the event SET does not achieve the required document review rate, SET is to notify both Assigned ALJ TerKeurst and Law & Motion ALJ Thorson by means of a written filing explaining the reasons for not reaching the required review targets.
7. If SET fails to meet the review rate targets, the Commission reserves the right to hold another discovery hearing on the issue of whether sufficient cause exists for the imposition of sanctions.

8. SET is also to continue to serve weekly reports, in the appropriate modified form, on the current status of its document review.

Respectfully submitted,

DOUGLAS K. PORTER
LEON BASS, JR.
WALKER A. MATTHEWS III

By: Leon Bass, Jr.

Attorneys for
SOUTHERN CALIFORNIA EDISON COMPANY

2244 Walnut Grove Avenue
Post Office Box 800
Rosemead, California 91770
Telephone: (626) 302-6967
Facsimile: (626) 302-3990
E-mail: leon.bass@sce.com

October 6, 2004

# CERTIFICATE OF SERVICE

I hereby certify that, pursuant to the Commission's Rules of Practice and Procedure, I have this day served a true copy of **ORDER (PROPOSED) RE: E-MAIL RECOVERY, REVIEW AND PRODUCTION BY SEMPRA ENERGY TRADING CORP.** on all parties identified on the attached service list. Service was effected by one or more means indicated below:

☑ Placing the copies in properly addressed sealed envelopes and depositing such envelopes in the United States mail with first-class postage prepaid (Via First Class Mail);

☐ Placing the copies in sealed envelopes and causing such envelopes to be delivered by hand to the offices of each addressee (Via Courier);

☑ Transmitting the copies via facsimile, modem, or other electronic means (Via Electronic Means).

Executed this **6th day of October, 2004**, at Rosemead, California.

Lizette Vidrio
Project Analyst
SOUTHERN CALIFORNIA EDISON COMPANY

2244 Walnut Grove Avenue
Post Office Box 800
Rosemead, California 91770