Apple Inc. v. Psystar Corporation Doc. 2433

PETER D. KEISLER
Assistant Attorney General
THOMAS R. LEE
Deputy Assistant Attorney General
KEVIN V. RYAN
United States Attorney
JOANN SWANSON
Assistant United States Attorney
ELIZABETH J. SHAPIRO
Assistant Branch Director

MARCIA BERMAN
Trial Attorney
(PA Bar No. 66168)
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue N.W. Room 7204
Washington, D.C. 20530
Tel.: (202) 514-3330
Fax: (202) 616-8470
Email: marcia.berman@usdoj.gov

Attorneys for Defendants Department of Justice
and Federal Bureau of Investigation

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION OF NORTHERN CALIFORNIA,<br><br>Plaintiff<br><br>v.<br><br>DEPARTMENT OF JUSTICE; FEDERAL BUREAU OF INVESTIGATION<br><br>Defendants. | Case No. C 04 4447 PJH<br><br>NOTICE OF CROSS-MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT<br><br>Date: January 5, 2005<br>Time: 9:00 a.m. |



Dockets.Justia.com

## TABLE OF CONTENTS

**PAGE**

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

1. Statutory and Regulatory Framework . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

   a. The 1996 FOIA Amendments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

   b. Department of Justice Regulations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

2. Plaintiff's Request for Expedited Processing . . . . . . . . . . . . . . . . . . . . . . . . 4

3. DOJ's Response to Plaintiff's Expedition Request . . . . . . . . . . . . . . . . . . . . . 6

4. Proceedings to Date . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

PLAINTIFF FAILED TO SATISFY THE STANDARDS FOR EXPEDITED PROCESSING. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

A. Plaintiff Failed to Satisfy the "Urgency to Inform" Standard. . . . . . . . . . . . . . . . 7

   1. The ACLU-NC Is Not Primarily Engaged in Disseminating Information. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

   2. Plaintiff's FOIA Request Did Not Involve an "Urgency to Inform" the Public about Federal Government Activity. . . . . . . . . . . . 11

B. Plaintiff Failed to Satisfy the DOJ Media-Related Standard. . . . . . . . . . . . . . . 16

C. Plaintiff Failed to Demonstrate That its Due Process Rights Would Be Infringed by the Normal Processing of its FOIA Request. . . . . . . . . . . . . . . . 17

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

## TABLE OF AUTHORITIES

**PAGE**

**Cases**

ACLU v. DOJ, 321 F. Supp. 2d 24 (D.D.C. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11, 17

Al-Fayed v. Central Intelligence Agency, 254 F.3d 300 (D.C. Cir. 2001) . . . . . . . . . . . . . passim

Electronic Privacy Information Center v. Department of Defense, 241 F. Supp. 2d 5 (D.D.C. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

Frito-Lay v. U.S. Equal Employment Opportunity Commission, 964 F. Supp. 236 (W.D. Ky. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

National Security Archive v. Department of Defense, 880 F.2d 1381 (D.C. Cir. 1989), cert. denied, 494 U.S. 1029 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Young v. Central Intelligence Agency, 972 F.2d 536 (4th Cir. 1992) . . . . . . . . . . . . . . . . . . . . 8

**Statutes and Rules**

5 U.S.C. § 552(a)(6)(E) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

16 C.F.R. § 16.1(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

28 C.F.R. § 16.5(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

28 C.F.R. § 16.11(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**Other Authorities**

H.R. Rep. No. 104-795 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

63 Fed. Reg. 29591 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 16

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

Please take notice that on January 5, 2005, at 9:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 3 of the United States District Court for the Northern District of California, 450 Golden Gate Avenue, Seventeenth Floor, San Francisco, California, defendants United States Department of Justice and Federal Bureau of Investigation will cross-move for summary judgment, pursuant to Federal Rule of Civil Procedure 56, on the ground that there is no genuine issue of material fact and plaintiff is not entitled to expedited processing of its Freedom of Information Act request as a matter of law.

This cross-motion will be based on this Notice of Cross-Motion for Summary Judgment, Defendants' Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for Summary Judgment and in Support of Defendants' Cross-Motion for Summary Judgment, the Declaration of Marcia Berman and attached exhibits, and papers and records appropriately filed with the Clerk.

Dated: December 1, 2004

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General
THOMAS R. LEE
Deputy Assistant Attorney General
KEVIN V. RYAN
United States Attorney
JOANN SWANSON
Assistant United States Attorney

ELIZABETH J. SHAPIRO
Assistant Branch Director

____________________________
MARCIA BERMAN
Trial Attorney (PA Bar No. 66168)
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue N.W. Room 7204
Washington, D.C. 20530
Tel.: (202) 514-3330
Fax: (202) 616-8470
Email: marcia.berman@usdoj.gov
Attorneys for Defendants.

## INTRODUCTION

Plaintiff American Civil Liberties Union of Northern California ("ACLU-NC") filed this lawsuit against the Department of Justice ("DOJ" or the "Department") and the Federal Bureau of Investigation ("FBI") seeking expedited processing of a Freedom of Information Act ("FOIA") request plaintiff submitted to the FBI, a DOJ component. The FBI denied plaintiff's expedition request, DOJ affirmed that decision, and plaintiff filed the instant suit challenging the agency's denial of its request for expedited processing.

The Court should deny plaintiff's claim for expedited processing and grant judgment in favor of defendants as a matter of law. Plaintiff did not demonstrate to the FBI that its FOIA request deserved expedited treatment at the expense of other, earlier-submitted requests waiting in the FBI's first-in, first-out processing queue. Specifically, plaintiff failed to show that there was an "urgency to inform" the public about the subject of its FOIA request, or that plaintiff is "primarily engaged in disseminating information," as DOJ regulations require in order to justify expedited processing. Alternatively, plaintiff did not establish that its FOIA request involved a matter of widespread and exceptional media interest under DOJ regulations. For these reasons, and those set forth at length below, plaintiff's motion for summary judgment should be denied, and defendants' cross-motion for summary judgment should be granted.

## BACKGROUND

### 1. Statutory and Regulatory Framework

#### a. The 1996 FOIA Amendments

Agencies ordinarily process FOIA requests for agency records on a first-in, first-out basis. In 1996, Congress amended the FOIA to provide for "expedited processing" of certain categories of requests. See Electronic Freedom of Information Amendments of 1996, Pub. L. 104-231, § 8 (codified at 5 U.S.C. § 552(a)(6)(E)) ("EFOIA"). Expedition, when granted, entitles requestors to move immediately to the front of an agency processing queue, ahead of requests filed previously by other persons.

As part of EFOIA, Congress directed agencies to promulgate regulations providing for

expedited processing of requests for records. Specifically, Congress directed agencies to enact regulations providing for expedited processing (i) "in cases in which the person requesting the records demonstrates a compelling need"; 5 U.S.C. § 552(a)(6)(E)(i)(I); and (ii) "in other cases determined by the agency." Id. § 552(a)(6)(E)(i)(II). The statute defines "compelling need" to mean:

> (I) that a failure to obtain requested records on an expedited basis under this paragraph could reasonably be expected to pose an imminent threat to the life or physical safety of an individual; or
>
> (II) with respect to a request made by a person primarily engaged in disseminating information, urgency to inform the public concerning actual or alleged Federal Government activity.

Id. § 552(a)(6)(E)(v)(I), (II). Requests for expedited processing which an agency grants are to be processed "as soon as practicable." Id. § 552(a)(6)(E)(iii).

The EFOIA House Report, upon which the D.C. Circuit has relied in construing the amendments, states that the EFOIA expedition categories should be "'narrowly applied.'" Al-Fayed v. Central Intelligence Agency, 254 F.3d 300, 310 (D.C. Cir. 2001) (quoting Electronic Freedom of Information Amendments of 1996, H.R. Rep. No. 104-795, at 26 (1996)). As the court explained in Al-Fayed: "Congress' rationale for a narrow application is clear: 'Given the finite resources generally available for fulfilling FOIA requests, unduly generous use of the expedited processing procedure would unfairly disadvantage other requestors who do not qualify for its treatment.' . . . Indeed, an unduly generous approach would also disadvantage those requestors who do qualify for expedition, because prioritizing all requests would effectively prioritize none." 254 F.3d at 310 (quoting H.R. Rep. No. 104-795, at 26).

The requestor bears the burden of showing that expedition is appropriate. See Al-Fayed, 254 F.3d at 305 n.4 (quoting H.R. Rep. No. 104-795, at 25). Agency decisions to deny or affirm denial of a request for expedited processing are subject to judicial review. 5 U.S.C. § 552(a)(6)(E)(iii). Such judicial review "shall be based on the record before the agency at the time of the determination." (Id.).

The standard for reviewing agency decisions to deny expedition depends on the ground

for decision. As noted above, an agency may grant expedition "in cases in which the person requesting the records demonstrates a compelling need," 5 U.S.C. § 552(a)(6)(E)(i)(I), or "in other cases determined by the agency." Id. § 552(a)(6)(E)(i)(II); see also Al-Fayed, 254 F.3d at 307 n.7 (noting this latter provision gives agencies "'latitude to expand the criteria for expedited access' beyond cases of 'compelling need'") (quoting H.R. Rep. No. 104-795, at 26). A decision denying expedited processing for failure to establish "compelling need" under Section 552(a)(6)(E)(i)(I) is reviewed de novo. See Al-Fayed, 254 F.3d at 308. A decision denying expedited processing for failure to meet criteria established by an agency under Section 552(a)(6)(E)(i)(II) is reviewed under a more deferential "reasonableness" standard. See Al-Fayed, 254 F.3d at 307 n.7 (noting that, "to the extent [the agency FOIA] regulations expand the criteria for expedited processing beyond 'compelling need,' the agencies reasonably determined that plaintiffs' requests did not meet the expanded criteria").

b. Department of Justice Regulations

DOJ implemented EFOIA by final rule effective July 1, 1998. See Revision of Freedom of Information Act and Privacy Act Regulations and Implementation of Electronic Freedom of Information Act Amendments of 1996, 63 Fed. Reg. 29591 (1998). This rule, which governs FOIA requests directed to DOJ components like the FBI (see 16 C.F.R. § 16.1(b)), states that "[r]equests and appeals" will be "taken out of order and given expedited treatment whenever it is determined that they involve:

> (i) Circumstances in which the lack of expedited treatment could reasonably be expected to pose an imminent threat to the life or physical safety of an individual;
>
> (ii) An urgency to inform the public about an actual or alleged federal government activity, if made by a person primarily engaged in disseminating information;
>
> (iii) The loss of substantial due process rights; or
>
> (iv) A matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence."

28 C.F.R. § 16.5(d)(1)(i)-(iv). Categories (i) and (ii) implement the statutory "compelling need" standard; categories (iii) and (iv) define additional categories for expedition. See 5 U.S.C. §

552(a)(6)(E)(v).

As Congress recognized, agency expedition decisions depend on "factual and subjective judgments about the circumstances cited by requestors to qualify them for 'expedited processing.'" H.R. Rep. No. 104-795, at 26. Accordingly, DOJ requires requestors to "explain[] in detail the basis for" their expedition requests. 28 C.F.R. § 16.5(d)(3); see also H.R. Rep. No. 104-795, at 26 ("the requestors will need to explain in detail their basis for seeking such treatment"). For requests based on urgency (category (ii) above), the requestor "must establish a particular urgency to inform the public about the government activity involved in the request, beyond the public's right to know about government activity generally." Id.; see also H.R. Rep. No. 104-795, at 26. A requestor within category (ii) who is not a full-time member of the news media must establish that he or she "is a person whose main professional activity or occupation is information dissemination, though it need not be his or her sole occupation." 28 C.F.R. § 16.5(d)(3).

Requests for expedition based on categories (i), (ii), and (iii) must be submitted to the component that maintains the records requested. See 28 C.F.R. § 16.5(d)(2). Requests for expedition based on category (iv) – the Department's "special media-related standard" (see 63 Fed. Reg. at 29592) – must be submitted to the Director of the Office of Public Affairs ("OPA"). See 28 C.F.R. § 16.5(d)(2). This enables "the Department's media specialists [to] deal directly with matters of exceptional concern to the media." 63 Fed. Reg. at 29592. A granted request for expedition "shall be given priority and shall be processed as soon as practicable." 28 C.F.R. § 16.5(d)(4).

2. Plaintiff's Request for Expedited Processing

On August 20, 2004, plaintiff submitted a broad, wide-ranging FOIA request to multiple DOJ offices. (Declaration of Alan J. Schlosser in Support of Plaintiff's Motion for Summary

Judgment ("Schlosser Decl."), at Ex. A ("Pl. Ex. A")).[1] Plaintiff's FOIA request was directed to FBI Headquarters, the San Francisco and Sacramento Field Offices of the FBI and connected resident agencies, the Executive Office for United States Attorneys ("EOUSA"), the United States Attorneys for the Northern and Eastern Districts of California, and the Director of Public Affairs for DOJ. (Id. at 1-2).

Plaintiff explained that the impetus for its FOIA request was that the National Lawyers' Guild had received reports from individuals living throughout Northern California that they had been interrogated by the FBI "for no apparent reason other than having been born in and/or traveled to the Middle East." (Id. at 3). According to plaintiff, these reports suggested that "the FBI and the Joint Terrorism Task Forces ["JTTFs"] operating in Northern California are infringing upon the civil rights and civil liberties of immigrants, U.S. Citizens and organizations by interrogating them without any valid basis, rationale, or individualized suspicion for doing so." (Id.).

Based on these concerns, plaintiff requested four categories of records, each with multiple subparts. Two of the categories sought records relating to the structure, operations, funding, policies and procedures of JTTFs in Northern California. (Id. at 4, 6-7 (nos. (1) and (4))). One of the other two categories sought a variety of records relating to the monitoring, surveillance, questioning, interrogation, and investigation of individuals and organizations in Northern California on the basis of national origin, racial or ethnic background, religious affiliation, organizational membership, political views or affiliation, or participation in protest activities or demonstrations. (Id. at 4-5 (no. (2)). For example, plaintiff requested records relating to the types of information law enforcement agents are instructed to obtain; policies and procedures addressing the gathering, sharing, maintenance, protection and destruction of information received through these efforts; and records revealing the way in which the information is to be

---

[1] Exhibits to the Schlosser Declaration, submitted in support of plaintiff's motion for summary judgment, will be referred to herein as "Pl. Ex. __."

used. (Id.). The final category of information requested by plaintiff sought a similar variety of records about individuals in Northern California who were born in, lived, worked, and/or traveled to the Middle East or South Asia. (Id. at 5-6 (no. (3)). This request included, among many other things, cumulative data about such individuals, procedures for selecting such individuals for monitoring or interrogation and for analyzing the information, and records relating to the way in which resulting information is to be used. (Id.).

Contained in its FOIA request was a request for expedited processing. Plaintiff requested expedited processing pursuant to DOJ regulations 28 C.F.R. §§ 16.5(d)(1)(ii) (based on "[a]n urgency to inform the public about an actual or alleged federal government activity, if made by a person primarily engaged in disseminating information"), (d)(1)(iii) (based on "[t]he loss of substantial due process rights"), and (d)(1)(iv) (based on "[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence"). (Pl. Ex. A at 8-9). In support of its request under § 16.5(d)(1)(iv), plaintiff claimed that its FOIA request related to possible violations of constitutional rights and had been subject to "substantial" media attention. (Id.). Plaintiff provided citations to eight news articles or reports as evidence of this purported "substantial" media attention. (Id.). In support of its request under § 16.5(d)(1)(ii), plaintiff argued that it was primarily engaged in disseminating information and that there is an urgency to inform the public about the FBI and JTTF's activities because such activities may bear on the public's exercise of its constitutional rights. (Id. at 8).

3. DOJ's Response to Plaintiff's Expedition Request

On August 27, 2004, the EOUSA informed plaintiff that it decided that plaintiff's FOIA request merited expedited processing by the EOUSA. (Pl. Ex. J). On September 1, 2004, the FBI notified plaintiff that it had denied plaintiff's request for expedited processing on behalf of FBI Headquarters and FBI's San Francisco and Sacramento Field Offices. (Pl. Ex. L). On September 7, 2004, the FBI advised plaintiff that DOJ's Director of Public Affairs denied the request for expedited processing under § 16.5(d)(1)(iv). (Pl. Ex. M).

Plaintiff appealed DOJ's denial of its request for expedited processing to DOJ's Office of Information and Privacy ("OIP"). OIP affirmed the denial on September 22, 2004 (Pl. Ex. O).

4. Proceedings to Date

Plaintiff subsequently filed the instant action in federal district court. The complaint, which names DOJ and the FBI as defendants, sets forth a single claim challenging the FBI's denial of plaintiff's expedition request and seeks expedited processing of its FOIA request. On November 17, 2004, plaintiff filed a motion for summary judgment, contending that it is entitled to expedited processing of its FOIA request as a matter of law, pursuant to 28 C.F.R. §§ 16.5(d)(1)(ii) and (iv). On November 22, 2004, defendants answered the complaint.

## ARGUMENT

PLAINTIFF FAILED TO SATISFY THE STANDARDS FOR EXPEDITED PROCESSING.

Plaintiff failed to satisfy the standards for expedited processing, under 28 C.F.R. § 16.5(d)(1)(ii), the "urgency to inform" standard; under 28 C.F.R. § 16.5(d)(1)(iv), DOJ's "media-related" standard; or under 28 C.F.R. § 16.5(d)(1)(iii), the "loss of substantial due process rights" standard. Accordingly, defendants are entitled to summary judgment on plaintiff's claim for expedited processing.

A. Plaintiff Failed to Satisfy the "Urgency to Inform" Standard.

EFOIA and DOJ regulations provide for expedited processing of FOIA requests made by persons "primarily engaged in disseminating information" and that involve an "urgency to inform" the public about an actual or alleged federal government activity. 5 U.S.C. § 552(a)(6)(E)(v)(II); 28 C.F.R. § 16.5(d)(1)(ii). Because the ACLU-NC is not "primarily engaged in disseminating information," and its FOIA request did not involve an "urgency to inform the public" about an actual or alleged federal government activity, the FBI correctly denied plaintiff's request for expedited processing under § 16.5(d)(1)(ii).[2]

---

[2] Contrary to plaintiff's suggestion, DOJ did not concede that the ACLU-NC is "primarily engaged in disseminating information" by not addressing this particular issue in its letter

1. The ACLU-NC Is Not Primarily Engaged in Disseminating Information.

The operative word in the "primarily engaged in disseminating information" standard is "primarily." The legislative history of EFOIA makes clear that the word "primarily" was meant to constrain the application of the "urgency to inform" category for demonstrating compelling need. The legislative history expressly states that "[t]he specified categories for compelling need are intended to be narrowly applied." H.R. Rep. No. 104-795, at 26 (1996). See also Al-Fayed, 254 F.3d at 310. It elucidates this directive by explaining the following about the "primarily engaged in disseminating information" standard:

> A person "primarily engaged" in the dissemination of information should not include individuals who are engaged only incidentally in the dissemination of information. The standard of "primarily engaged" requires that information dissemination be the main activity of the requestor, although it need not be their sole occupation. A requestor who only incidentally engages in information dissemination, besides other activities, would not satisfy this requirement.

H.R. Rep. No. 104-795, at 26. DOJ regulations incorporate this legislative intent. 28 C.F.R. § 16.5(d)(3) ("a requestor within the category in paragraph (d)(1)(ii) of this section, if not a full-time member of the news media, must establish that he or she is a person whose main professional activity or occupation is information dissemination, though it need not be his or her

---

affirming the FBI's denial of plaintiff's expedition request. (See plaintiff's brief at 12). In its affirmance letter, DOJ stated that the FBI's action was affirmed, and, more specifically, that "[e]xpedited processing under 28 C.F.R. § 16.5(d)(1)(ii) of your request is not warranted." (Pl. Ex. O at 1). That the letter further explained that the subject of plaintiff's FOIA request was not a matter of current exigency to warrant expedited processing does not operate as a waiver of the position that plaintiff failed to meet the "primarily engaged in disseminating information" standard as well. Where judicial review of a FOIA claim is de novo, as it is with respect to plaintiff's 28 C.F.R. § 16.5(d)(1)(ii) claim, an agency cannot waive arguments by failing to raise them in the administrative process. See Young v. Central Intelligence Agency, 972 F.2d 536, 538-39 (4th Cir. 1992) (FOIA's provision of de novo judicial review means that agencies do not litigate FOIA requests and therefore do not waive FOIA exemptions by not raising them during administrative process); Frito-Lay v. U.S. Equal Employment Opportunity Commission, 964 F. Supp. 236, 239 (W.D. Ky. 1997) (agency's failure to raise exemption at any level of administrative process does not preclude it from raising it at district court level).

sole occupation").

The ACLU-NC has not shown that information dissemination is its "main activity." All it has shown is that it disseminates information, whether it be through a website, a bi-monthly newsletter, reports, or public speaking engagements. See Appendix A to plaintiff's FOIA request (Pl. Ex. A). Plaintiff conclusorily declares that it is primarily engaged in disseminating information and that "[d]isseminating information to the public is central, not merely incidental, to the ACLU-NC's activities[,]" but it provides absolutely nothing to back up these statements – either to the FBI or to this Court. See Pl. Ex. A at 8; plaintiff's brief at 14. The facts that the ACLU-NC allegedly produces numerous publications and maintains an "information-dense website" merely demonstrate that the ACLU-NC disseminates information, not that disseminating information is the primary or main function of the ACLU-NC.

In fact, the ACLU-NC's website, and the website of the national ACLU, indicate that the primary activity of the organization is to litigate high-impact cases to defend and promote civil liberties. The ACLU-NC website's "About Us" page emphasizes that the ACLU is the "only national organization dedicated to defending and expanding the civil liberties of all people." (See http://www.aclunc.org/about.html). It describes its efforts to educate the public, inform the media, educate and lobby legislators, organize grass-roots activists and disseminate information as activities it engages in "[i]n addition to the direct litigation for which the ACLU has been known over the past seven decades." (Id.). The "Frequently Asked Questions" page on the ACLU-NC website is almost entirely litigation oriented. (See http://www.aclunc.org/faq.html). The national ACLU website similarly reveals that the primary mission of the organization is to defend and preserve civil liberties, not to disseminate information. (See http://www.aclu.org/about/aboutmain.cfm). While there is no doubt that the ACLU-NC disseminates information in furtherance of its strategic goals, information dissemination is not its "main activity." H.R. Rep. No. 104-795, at 26.

Rather than satisfying the "primarily engaged in disseminating information" standard, plaintiff seeks to apply a different standard. It argues that the Court should apply the

"representative of the news media" test for qualifying for a fee waiver under the FOIA to determine whether the ACLU-NC is "primarily engaged in disseminating information" for purposes of qualifying for expedited processing, because "[t]he two standards are virtually indistinguishable." As a preliminary matter, the legislative history for the expedited processing provisions of EFOIA provides sufficient guidance on how to interpret and apply the "primarily engaged in disseminating information" standard such that there is no need to search for the meaning of this phrase in other provisions of the FOIA. See H.R. Rep. No. 104-795, at 26. This Court is not writing on a blank slate in applying the "primarily engaged in disseminating information" standard, as plaintiff suggests. (Plaintiff's brief at 12).

In any event, the two standards are in fact distinguishable and are not interchangeable. The two standards relate to different provisions with different underlying purposes. As discussed above, the "primarily engaged in disseminating information" standard is to be narrowly applied in order to avoid unfairly disadvantaging requestors who do not obtain expedited processing. H.R. Rep. No. 104-795, at 26; Al-Fayed, 254 F.3d at 310. In contrast, the "representative of the news media" standard is to be broadly interpreted consistent with the purpose of the fee waiver provision of encouraging the dissemination of information in government files. National Security Archive v. Department of Defense, 880 F.2d 1381, 1386 (D.C. Cir. 1989), cert. denied, 494 U.S. 1029 (1990); Electronic Privacy Information Center v. Department of Defense, 241 F. Supp. 2d 5, 10 (D.D.C. 2003). Accordingly, "'any person or organization which regularly publishes or disseminates information to the public . . . should qualify for [fee] waivers as a "representative of the news media[,]"'" National Security Archive, 880 F.2d at 1386 (quoting legislative history at 132 Cong. Rec. S14298 (daily ed. Sept. 30, 1986)), but only those persons who are "primarily engaged" in disseminating information qualify for expedited processing under 5 U.S.C. § 552(a)(6)(E)(v)(II) and 28 C.F.R. § 16.5(d)(1)(ii).[3] As argued above, plaintiff failed

[3] Plaintiff's reliance on ACLU v. DOJ, 321 F. Supp. 2d 24 (D.D.C. 2004), and on other agencies' regulations, in support of its argument that the "representative of the news media" and

to satisfy this standard, thus it did not qualify for expedited processing under the "urgency to inform" provision.

### 2. Plaintiff's FOIA Request Did Not Involve an "Urgency to Inform" the Public about Federal Government Activity.

In keeping with the congressional mandate that the categories for compelling need are to be narrowly applied, Congress described the "urgency to inform" standard as follows:

> The standard of "urgency to inform" requires that the information requested should pertain to a matter of a current exigency to the American public and that a reasonable person might conclude that the consequences of delaying a response to a FOIA request would compromise a significant recognized interest. The public's right to know, although a significant and important value, would not by itself be sufficient to satisfy this standard.

H.R. Rep. No. 104-795, at 26; see also Al-Fayed, 254 F.3d at 310. Thus, courts consider three factors in determining whether a requestor has demonstrated "urgency to inform": (1) whether the request concerns a matter of current exigency to the American public; (2) whether the consequences of delaying a response would compromise a significant recognized interest; and (3) whether the request concerns federal government activity. Plaintiff's request failed to satisfy factors (1) and (2).[4]

Importantly, this Court's review of whether plaintiff's request satisfied the "urgency to

---

"primarily engaged in disseminating information" standards are interchangeable, is unavailing. (Plaintiff's brief at 13, 14 n. 5). In ACLU v. DOJ, 321 F. Supp. 2d at 29 n. 5, the court concluded that the Electronic Privacy Information Center ("EPIC") is "primarily engaged in disseminating information" for purposes of its expedition request, citing to EPIC v. DOD, 241 F. Supp. 2d at 11 (finding that EPIC is a "representative of the news media" for FOIA fee waiver request purposes), and providing no further analysis. Respectfully, this Court is not bound by this decision and should not follow it.

Plaintiff's assertion that other agencies' regulations indicate that "news media" requesters will necessarily satisfy the "primarily engaged in disseminating information" standard for the purposes of expedited processing, merely highlights the fact that DOJ's regulations – the only ones that matter here – do not so state. 28 C.F.R. § 16.5(d)(3). See also 28 C.F.R. § 16.11(b)(6) (defining "representative of the news media" for purposes of fee waivers).

[4] Defendants do not dispute that plaintiff's FOIA request concerns federal government activity.

inform" standard is restricted to the record as it existed before the FBI when it denied plaintiff's expedition request.[5] 5 U.S.C. 552(a)(6)(E)(iii); Al-Fayed, 254 F.3d at 304. That record consisted of one letter from plaintiff, with one one-page attachment describing the ACLU-NC's media and publication activities. (Pl. Ex. A). That letter cited a total of eight articles to demonstrate that the subject of plaintiff's FOIA request has been the object of "substantial media interest." (Id. at 8-9). Plaintiff did not attach copies of any of these articles to its letter, nor did it provide links to the articles on the internet. Instead, plaintiff merely cited to the articles and provided general website citations for the publications for six out of the eight pieces. Plaintiff's failure to provide copies of the articles – which it could easily have done, as evidenced by the fact that plaintiff attached copies of the articles to its summary judgment motion for the Court's convenience – was a sufficient reason alone for the FBI to deny its request under 28 C.F.R. § 16.5(d)(1)(ii). It was plaintiff's burden to demonstrate that its expedition request was warranted. See Al-Fayed, 254 F.3d at 305 n.4 (quoting H.R. Rep. No. 104-795, at 25); see also 28 C.F.R. § 16.5(d)(3) (burden is on requestor to explain in detail the basis for requesting expedited processing). The burden is not on the FBI to research numerous newspapers and websites in order to hunt down copies of articles plaintiff relies upon for its expedition request. The content of the articles cited in plaintiff's letter was not part of the record before the FBI and should not be considered as part of this Court's review of the FBI's denial of plaintiff's expedition request.

Even if the Court were to consider the articles that plaintiff failed to make available to the FBI, they do not in fact show that plaintiff's FOIA request concerns a matter of current exigency to the public, or that any significant recognized interest would be compromised if plaintiff's expedition request were denied. Three of the eight articles relate to a subject that is only a minor part of plaintiff's FOIA request. The driving force behind, and dominant topic of, plaintiff's FOIA request is the alleged interrogation by the FBI of residents of Northern California for no

---

[5] The Court should reject plaintiff's inappropriate attempt to expand the record to include news reports that were not only not included in its expedition request, but that post-date it. See Schlosser Decl. at 4-5 and Pl. Ex. P-S.

apparent reason other than having been born in and/or traveled to the Middle East. (Pl. Ex. A at 1). However, three of the news stories cited by plaintiff to support is expedition request are solely about the FBI's questioning of would-be protestors about possible violence at last summer's political conventions, a different subject. (Pl. Ex. A at 8-9, citing Eric Lichtblau, Inquiry into FBI Question is Sought, NYTimes.com, August 18, 2004 (Pl. Ex. B); Larry Abramson, FBI Questioning Political Demonstrators, NPR.org, August 17, 2004; Eric Lichtblau, FBI Goes Knocking for Political Troublemakers, NTYimes.com [sic], August 16, 2004 (Pl. Ex. C)). The issue addressed in these articles is the FBI's questioning of potential demonstrators aimed at detecting and preventing violence at the Republican National Convention and at the Democratic National Convention. (see Pl. Ex. B and C). These stories say nothing about the FBI's alleged targeting of Muslim and Arab Americans, or, more specifically, targeting of Muslim and Arab Americans living in Northern California, for questioning. In addition, the subject of these articles is moot, and is therefore not a matter of current exigency, since the political conventions are long over.[6]

That leaves a total of five articles on the subject of the FBI's questioning of Muslim and Arab Americans. (Pl. Ex. A at 9, citing Jayashri Srikantiah, Few Benefits to Questioning Targeted Groups, San Francisco Chronicle, August 6, 2004 (Pl. Ex. D); Camille T. Taiara, New FBI Witch-Hunt, San Francisco Bay Guardian, August 4-10, 2004 (Pl. Ex. E); Kelly Thornton, FBI's Home Visits Have Some Muslims Feeling Harrassed, Alienated, Signonsandiego.com, August 4, 2004 (Pl. Ex. F); Richard Schmitt and Donna Horowitz, FBI Starts to Question

---

[6] One of the four categories of records requested by plaintiff seeks records relating to "the monitoring, surveillance, questioning, interrogation, and/or investigation of individuals and organizations in northern California on the basis of national origin, racial and/or ethnic background, religious affiliation, organizational membership, political views or affiliation, or participation in protest activities or demonstrations." (Pl. Ex. A at 4) (emphasis added). Placed in context of the overall scope and thrust of plaintiff's FOIA request, the request for records relating to the FBI's questioning of individuals based on their participation in protest activities or demonstrations is a very minor part of plaintiff's FOIA request.

Muslims in U.S. About Possible Attacks, latimes.com, July 18, 2004 (Pl. Ex. G); and Mary Beth Sheridan, Interviews of Muslims to Broaden, washingtonpost.com, July 17, 2004 (Pl. Ex. H)). Significantly, these articles only incidentally mention the involvement of JTTFs in the FBI questioning at issue. They do not show that the structure, operations, funding, policies and procedures of JTTFs in Northern California – the subject of half of plaintiff's FOIA request (Pl. Ex. A at 4, 6-7 (nos. (1) and (4))) – are matters of interest to the American public, let alone matters of current exigency to the American public, or that a significant recognized interest would be compromised if plaintiff did not obtain expedited processing of its request for records relating to the structure, operations, funding, policies and procedures of JTTFs in Northern California.

Nor do the five articles show that the FBI's questioning of Muslims and Arab Americans is a matter of current exigency to the American public or that any significant recognized interest would be compromised if plaintiff did not obtain expedited processing of its FOIA request. Rather than reflecting a widespread, exigent concern amongst the general public about this issue, the articles show a concern amongst a more narrow segment of the population. The articles seem to have been generated, in large part, by plaintiff and those working with plaintiff. The author of the opinion article in the San Francisco Chronicle, titled Few Benefits to Questioning Targeted Groups, Jayashri Srikantiah, was the former associate legal director at the ACLU-NC. (See Camille T. Taiara, New FBI Witch-Hunt, San Francisco Bay Guardian, August 4-10, 2004 (Pl. Ex. E at 1). Ms. Srikantiah is one of the primary sources quoted in Camille T. Taiara's article, New FBI Witch-Hunt, San Francisco Bay Guardian, August 4-10, 2004. (Pl. Ex. E at 1). Ms. Taiara's article also quotes Mark Schlosberg, police practices director of the ACLU-NC (and the author of plaintiff's FOIA request); an assistant from the local National Lawyers Guild program, which is identified in plaintiff's FOIA request as being associated with the ACLU-NC (see Pl. Ex. A at 1); and "local lawyers." (Pl. Ex. E at 2-3). Stacy Tolchin, an attorney with the National Lawyers Guild in San Francisco, is quoted extensively in the story by Richard Schmitt and Donna Horowitz (Pl. Ex. G at 2) and is also quoted in Mary Beth Sheridan's story (Pl. Ex. H at

1). These articles also rely on quotes from representatives of the Council on American-Islamic Relations ("CAIR"). (Pl. Ex. G at 1-2 (quoting Nihad Awad, executive director of CAIR; Deedra Abboud, director of CAIR's Arizona office; and James Hacking, identified as a Muslim lawyer in St. Louis, who happens to be the head of CAIR's St. Louis chapter (see CAIR of New York press release, CAIR Representative Named "Best of St. Louis", attached to Declaration of Marcia Berman ("Berman Decl.") as Ex. 1)); Pl. Ex. H at 1-2 (quoting James Hacking and Deedra Abboud)). The ACLU-NC is working with the National Lawyers Guild to monitor government surveillance tactics and with CAIR to monitor and provide services for impacted communities. (See ACLU-NC Oct. 5, 2004 press release, FBI's New Surveillance Plan Chills Religious and Political Activity – Bay Area Civil Rights Groups Warn, attached to Berman Decl. as Ex. 2).

All of these interconnections between plaintiff and the sources cited in the articles strongly suggest that plaintiff had a hand in the creation and publication of the articles that it relies upon to support its expedition request. This discredits plaintiff's claim that the subject of its FOIA request was a matter of genuine "local and national scrutiny," or that there was a "widespread public controversy about the FBI's terrorism-related surveillance." (Plaintiff's brief at 15, 17). While defendants do not deny that alleged FBI questioning of Muslim and Arab Americans may be "newsworthy," that falls short of the standard of "urgency" that is the touchstone for expedited processing. See Al-Fayed, 254 F.3d at 310 (subject, while "newsworthy," was not a matter of "current exigency"). Plaintiff did not demonstrate to the FBI that its FOIA request involved a matter of urgency, and the FBI rightly denied it.

Plaintiff also did not satisfy the second factor for the "urgency to inform" standard – that "the consequences of delaying a response would compromise a significant recognized interest." Al-Fayed, 254 F.3d at 310. Plaintiff's primary argument here is that the public has a right to know about the records it has requested under the FOIA. (Plaintiff's brief at 17-18). However, "[t]he public's right to know, although a significant and important value, would not by itself be sufficient to satisfy" the "urgency to inform" standard. H.R. Rep. No. 104-795, at 26; Al-Fayed, 254 F.3d at 310. See also 28 C.F.R. § 16.5(d)(3) (a requestor under § 16.5(d)(1)(ii) "must

establish a particular urgency to inform the public about the government activity involved in the request, beyond the public's right to know about government activity generally"). Plaintiff additionally argues that "[d]elaying a response could also affect significant recognized constitutional interests." (Plaintiff's brief at 18) (emphasis added). This too falls short of the standard – that "the consequences of delaying a response would compromise a significant recognized interest." Al-Fayed, 254 F.3d at 310 (emphasis added). The remaining reasons that plaintiff gives to support its argument that its request satisfies the "urgency to inform" standard – that the FBI's questioning activities are ongoing; that refusal to expedite plaintiff's FOIA request would deny the public important information for months, if not years; and that plaintiff needs the requested records to participate in the public debate – were not part of plaintiff's expedition request and are not properly before this Court. (Compare plaintiff's brief at 15, 18-19, with plaintiff's expedition request (Pl. Ex. A at 8-9)).

Thus, plaintiff failed to satisfy both prongs of the "urgency to inform" standard.

B. Plaintiff Failed to Satisfy the DOJ Media-Related Standard.

Plaintiff also sought expedited processing under 28 C.F.R. § 16.5(d)(1)(iv), through which the Department, by regulation, expedites treatment whenever it determines that a FOIA request involves "[a] matter of widespread and exceptional media interest in which there exists possible questions about the government's integrity which affect public confidence." Requests for expedition under § 16.5(d)(1)(iv) must be submitted to DOJ's Office of Public Affairs, the Department's "media specialists," 63 Fed. Reg. at 29592, whose decisions are reviewed for reasonableness. See Al-Fayed, 254 F.3d at 307 n. 7. OPA appropriately denied plaintiff's expedition request under § 16.5(d)(1)(iv).

Plaintiff's argument that it established "widespread and exceptional" media interest essentially repeats its argument on "current exigency" and should be rejected for the same reasons. The handful of articles cited by plaintiff shows, at best, that alleged FBI questioning of Muslims and Arabs is newsworthy, not that plaintiff's FOIA request (half of which concerns the structure, operations, funding, policies and procedures of JTTFs, which are only incidentally

mentioned in the articles cited by plaintiff) is a matter of "widespread and exceptional" media interest. Compare ACLU v. DOJ, 321 F. Supp. 2d at 29 (newspaper articles cited by plaintiffs discussed how widespread public concern about renewal of the Patriot Act was reflected by many resolutions passed by local and state governments urging Congress to narrow the Patriot Act).

Plaintiff's failure to demonstrate "widespread and exceptional" media interest is enough without more to affirm DOJ's denial of plaintiff's request for expedited processing under 28 C.F.R. § 16.5(d)(1)(iv).

### C. Plaintiff Failed to Demonstrate That its Due Process Rights Would Be Infringed by the Normal Processing of its FOIA Request.

Plaintiff also sought expedited processing pursuant to DOJ regulations 28 C.F.R. § 16.5(d)(1)(iii) (providing for expedited processing to prevent the loss of substantial due process rights), and DOJ denied this request as well. (Pl. Ex. A at 8-9; Pl. Ex. L; Pl. Ex. O at 2). Plaintiff seems to have abandoned this claim. Its motion for summary judgment (which is captioned as a motion for summary judgment, not as a motion for partial summary judgment) contains no argument on plaintiff's (d)(1)(iii) request for expedited processing.

In the event that plaintiff has not abandoned its (d)(1)(iii) claim, the claim is meritless and fails as a matter of law. The ACLU-NC did not show that any of its due process rights would be infringed by the processing of its FOIA request in the normal course. All that it provided in support of its (d)(1)(iii) request was the following vague, conclusory sentence: "the records sought relate to the possible inappropriate questioning, surveillance, and retention of information on individuals and organizations based on race, ethnicity, and religious or political persuasion including the possible violation of due process and other constitutional rights." (Pl. Ex. A at 9) (emphasis added). However, DOJ regulations do not provide for expedited processing of FOIA requests that involve the "possible" violation of due process rights. 28 C.F.R. § 16.5(d)(1)(iii) (providing for expedited treatment of FOIA requests that involve "[t]he loss of substantial due process rights"). Indeed, plaintiff's formulation would substantially broaden the standard. Moreover, the ACLU-NC did not assert the possible violation of any of its due process rights.

Plaintiff was not entitled to expedited processing of its FOIA request based on possible violations of other people's due process rights.

**CONCLUSION**

For all of the foregoing reasons, defendants respectfully request that the Court deny plaintiff's motion for summary judgment, grant defendants' cross-motion for summary judgment, and grant defendants judgment in their favor as a matter of law on all of plaintiff's claims.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General
THOMAS R. LEE
Deputy Assistant Attorney General
KEVIN V. RYAN
United States Attorney
JOANN SWANSON
Assistant United States Attorney

ELIZABETH J. SHAPIRO
Assistant Branch Director

______________________________
MARCIA BERMAN
Trial Attorney (PA Bar No. 66168)
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue N.W. Room 7204
Washington, D.C. 20530
Tel.: (202) 514-3330
Fax: (202) 616-8470
Email: marcia.berman@usdoj.gov

Attorneys for Defendants.

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 1, 2004, true and correct copies of Defendants' Notice of Cross-Motion for Summary Judgment, Defendants' Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for Summary Judgment and in Support of Defendants' Cross-Motion for Summary Judgment, the Declaration of Marcia Berman and attached exhibits, and a Proposed Order, were served upon plaintiff's counsel of record at the addresses listed below:

<u>Via ECF</u>:

Amitai Schwartz
Law Offices of Amitai Schwartz
Watergate Towers
2000 Powell Street
Suite 1286
Emeryville, CA 94608
510-597-1775
Fax: 510-597-0957
Email: Amitai@SchwartzLaw.com

Alan L. Schlosser
American Civil Liberties Union
Foundation of Northern California
1663 Mission Street
Suite 460
San Francisco, CA 94103
415/621-2493
Fax: 415-255-8437
Email: aschlosser@aclunc.org

Elizabeth Scott Letcher
Law Offices of Amitai Schwartz
Watergate Towers
2000 Powell Street
Suite 1286
Emeryville, CA 94608
510/597-1775
Fax: 510-597-0957
Email: attorneys@schwartzlaw.com

Via Federal Express:

Mark Schlosberg
American Civil Liberties Union Fndt.
1663 Mission Street, Suite 460
San Francisco, CA 94103
415-621-2493
Fax: 415-255-8437

________________________________
MARCIA BERMAN