Apple Inc. v. Psystar Corporation Doc. 2564

DLA PIPER RUDNICK GRAY CARY

**DLA Piper Rudnick Gray Cary US LLP**
2000 University Avenue
East Palo Alto, California 94303-2248
T 650.833.2293
F 650.833.2001
W www.dlapiper.com

February 17, 2005

E-FILING

Honorable Jeremy Fogel
U.S.D.C. Northern District of California
San Jose Division
280 South First Street
San Jose, CA 95113-3008

**Re: *Horta, LLC v. City of San Jose*,
U.S.D.C. Case No. C02-04086-JF**

Dear Judge Fogel:

I write on behalf of Horta, LLC ("Horta"), to correct the misleading assertions in the correspondence sent to you on January 14, 2005 by the City of San Jose.

The City's letter makes two central assertions.

First, the City asserts that the information provided by Horta in response to the City's attempt to manipulate the order and judgment to prevent curfew-hour operations of Horta's 727 at the Airport "is far more descriptive and detailed than any information provided by Horta in discovery." The City's implication is that it was ignorant of the contractual arrangements pursuant to which the 727 was being operated, and therefore could not previously have asserted a claim that those arrangements affected the relief sought by Horta. The City's assertion and its implication are patently false.

Second, the City insinuates that Horta is now seeking some form of relief other than that it previously requested. In particular, the City implies that entering the order and judgment requested by Horta would amount to granting an authorization other than the authorization requested by Horta. Nothing could be further from the truth.

The truth is that the City was provided with detailed documentation of the contractual arrangements regarding operation of the 727.[1] The documents provided to the City included the following (among others):

- The Amended and Restated Aircraft Master Lease Agreement (Boeing 727) between Horta and T.C.I., Ltd.;

[1] The City is correct that Horta resisted disclosure of much of this information, on the grounds that it was irrelevant. Horta continues to believe that is the case. The City concurred in practice, by failing to address these arrangements in moving for summary judgment or opposing Horta's motion.



Dockets.Justia.com

- The Amended and Restated Aircraft Sublease Agreement (Boeing 727) between T.C.I., Ltd. and Fry's Electronics, Inc.;
- The Aircraft Lease and Management Agreement between Fry's Electronics, Inc., and Horta, dated February 1, 2002;
- The Amended Aircraft Management Agreement between Fry's Electronics, Inc., and Horta, dated July 23, 2004;
- The First Amendment to Amended Aircraft Management Agreement between Horta, Horta Aviation, LLC, and Fry's Electronics, Inc., dated July 23, 2004, substituting Horta Aviation, LLC for Horta in the Amended Aircraft Management Agreement;
- The Time Share Agreement (Boeing 727-200) between Fry's Electronics, Inc., and the San Jose SaberCats, dated March 5, 2001;
- The revised Time Share Agreement (Boeing 727-200) between Fry's Electronics, Inc., and the San Jose SaberCats, dated September 24, 2002; and
- The First Amendment to Time Share Agreement (Boeing 727-200) between Fry's Electronics, Inc., and the San Jose SaberCats, dated April 28, 2003.

In addition, while the City implies that Horta withheld correspondence between Horta and the FAA requested by the City's letter of August 31, 2004, it deliberately obscures the fact that its request to Horta was moot in light of the fact that it had already received copies of the correspondence, not later than August 10, 2004, in response to a subpoena issued to the FAA.[2] (Enclosed as Attachment A is a copy of the affidavit of the Manager of the FAA Flight Standards District Office authenticating the records provided in response to the City's subpoena.) Included in the correspondence provided by the FAA were the following documents (among others):

- The original Part 125 deviation authority issued to Horta on March 21, 2001;
- Horta's correspondence to the FAA dated July 19, 2004, requesting re-issuance of the deviation authority previously issued to Horta in the name of Fry's Electronics, Inc. and Horta Aviation, LLC; and
- The FAA's revised letter of deviation authority, issued to Fry's Electronics and Horta Aviation, LLC on August 4, 2004.

All of the information provided to the Court in Horta's correspondence of February 11, 2005, and more, was contained in and apparent from these documents.

- The Master Lease and Sublease agreements demonstrate that Horta owns the 727 and leases it, through an intermediary company, to Fry's Electronics.
- The Time Share Agreements document the time share arrangement pursuant to which the San Jose SaberCats are transported using the 727. They specifically provide that "**Lessor [Fry's Electronics, Inc.] shall be in operational control of the Aircraft at all times** during the Lease Term. Lessor shall be solely responsible for the operation and maintenance of

[2] The City also fails to mention that Horta had previously produced all correspondence with the FAA that existed at the time the City's request for production was made in April of 2002, and that the City's letter requesting Horta to provide correspondence regarding the revised deviation authority was not sent until after the parties' motions for summary judgment were filed.

the Aircraft." Time Share Agreement, § 6. (A copy of the relevant portions of the Time Share Agreements provided to the City is enclosed as Attachment B.)

- The Aircraft Lease and Management Agreement documents Horta's provision of services to Fry's Electronics, including providing flight crew, flight operation services, and maintenance of the Aircraft (among other things).
- The Amended Aircraft Management Agreement and the First Amendment to Amended Aircraft Management Agreement demonstrate that Horta Aviation, LLC, assumed responsibility for the management of the 727 on behalf of Fry's Electronics, providing flight crew, flight operation services, maintenance, and other services in connection with operation of the 727—as Horta has previously done.

In short, the City was provided with detailed information documenting precisely the manner in which operations of the 727 were and are conducted, and the entities involved in those operations.[3]

Indeed, in a letter to the FAA—provided to the City in response to its subpoena to the FAA—Horta explained why it was seeking the revised deviation authority: "**The main reason for this update is that the 727 is to be operated exclusively by Fry's Electronics under Part 91, in accordance with Fry's Electronics' current time share agreement with the San Jose SaberCats** (14 C.F.R. § 91.501(c)(1)) on file with the FAA in Oklahoma City. **The other reason is that Horta Aviation, LLC will now be providing aircraft management and maintenance services for the 727**." (A copy of the July 19, 2004 letter from Horta to the FAA, as produced to the City by the FAA, is enclosed as Attachment C.) In response to that request, the FAA provided a revised letter of deviation authority (also provided to the City by the FAA), which specifically names Fry's Electronics, Inc. and Horta Aviation, LLC as the recipients of the deviation authority.[4] (A copy of the August 4, 2004 revised deviation authority is enclosed as Attachment D.)

The City's claims of ignorance about the contractual arrangements pursuant to which the 727 was and is operated are simply false. At no time prior to the Court's order granting Horta's motion for summary judgment did the City assert that those arrangements had any effect whatsoever on the relief sought by Horta, or the Court's ability to grant that relief. Horta's motion for summary judgment made it clear that the relief it was seeking was not limited to flights which no entity but

---

3 The City falsely implies that Horta misrepresented or concealed the contractual arrangements pursuant to which the 727 was and is operated. **The fact is, the City never asked**. Mr. DiCiuccio deposed John Scheifly, the Manager of Aviation for Horta, for approximately 30 minutes. He never asked about the contractual arrangements pursuant to which the 727 was operated, or whether any entity other than Horta was involved in or had operational control of the flights. Similarly, Mr. DiCiuccio deposed Randy Fry, the Manager of Horta, for approximately 35 minutes, and never inquired into these topics. (Copies of the deposition transcripts will be provided to the Court upon request.) The City's interrogatories did not ask whether entities other than Horta were involved in or had operational control over flights of the 727. The interrogatory to which the City refers in its letter to the Court asks only about Part 91 flights **other than those for the transportation of the SaberCats**, and only asks about the dates, destinations, and purpose of such flights.

4 As previously noted, the City specifically commented on this revised deviation authority in its motion for summary judgment. *See* Memorandum of Points and Authorities in Support of Defendant City of San Jose's Motion for Summary Judgment, filed August 20, 2004, 11:24-28.

Horta was involved in operating, but rather sought a determination that "Horta's Boeing 727-200 (the "727") satisfies the criteria set forth in Section X(B)(2) of the San Jose Airport Noise Control Program ("Noise Program") to operate at [the Airport] during [the Curfew], and is therefore entitled to operate under the original Noise Program and the revised noise program enacted on October 21, 2003 . . . ." *See* Notice of Motion and Motion for Summary Judgment; Memorandum of Points and Authorities, filed August 20, 2004. Therefore, even if these arrangements somehow affected Horta's ability to seek relief or the Court's ability to grant it—which they do not—the City cannot now seek to exploit them to prevent operations of the 727 during curfew hours.

Nor is there any merit to the City's contention that the order and judgment requested by Horta grant an authorization somehow different than the authorization Horta originally requested from the City. First, Horta is not attempting to expand the scope of the requested authorization. As explained in its prior correspondence to the Court, Horta is simply trying to ensure that the City does not exploit the technicalities of the Federal Aviation Regulations ("FAR") to assert that Horta is not operating flights of the 727 involving transportation of the San Jose Sabercats. Horta did and still does "operate" the 727 in the ordinary and non-technical sense used in its request for authorization.[5] The definition employed by the FAR is quite different. *See* 14 C.F.R. § 1.1 (definitions of "operational control" and "operate"). The fact that flights of the 727 involving the transportation of the SaberCats are subject to the operational control of Fry's Electronics, or are flown pursuant to a deviation authority issued to Fry's Electronics rather than Horta, has no effect on any of the concerns the City has ever raised about such flights. Therefore, the City should not be permitted to exploit these arrangements to prevent curfew-hour flights of the 727.

Second, the relief requested by Horta, and to which the Court has held that Horta is entitled, does not entail any deviation from the conditions to which Horta agreed to abide in making its request for authorization. Horta agreed that curfew-hour flights would be limited to 15 annually, that they would be used only for transportation of the San Jose SaberCats, that they would be conducted pursuant to Part 91, and that quiet flying procedures would be used. Horta did not state or suggest that it was agreeing that such flights would be conducted pursuant to specific contractual arrangements, or that the flights would not be subject to the operational control of Fry's Electronics under the FAR. Furthermore, the contractual arrangements pursuant to which the 727 is operated were not among the criteria considered by the City in allowing other operators to perform curfew-hour flights. As the Court found: "The City permitted such operations on a flight-by-flight basis, and the only stated criteria for approval were operation of the flight in question under FAR part 91 and compliance with Stage 3 noise standards." Order Granting in Part and Denying in Part Plaintiff's Motion for Summary Judgment and Denying Defendant's Motion for Summary Judgment, 16:12-17:2.

Third, it would be fundamentally unfair—and, indeed, would violate due process—for the City to deny Horta the ability to operate at the Airport based on the contractual arrangements pursuant to which the 727 is operated, when those arrangements had no bearing whatsoever on its denial of Horta's request for authorization, and when the City never asked Horta in the processing of its request for authorization for any information pertaining to those arrangements. As the Court noted

---

5 As a transitive verb, the word operate means "(1) to bring about: effect (2) a. to cause to function: work; b. to put or keep in operation (3) to perform an operation on, esp: to perform surgery on." Webster's New Collegiate Dictionary, G. & C. Merriam Co. (1981).

in its decision on the motions for summary judgment: "The City cannot now justify its denial of Horta's application by reference to factors of which Horta received no notice in the document that, by its own terms, is a complete embodiment of the City's administrative decision." Order Granting in Part and Denying in Part Plaintiff's Motion for Summary Judgment and Denying Defendant's Motion for Summary Judgment, 20:6-8.

**Adopting the order and judgment proposed by Horta does not entail granting a request for authorization to any entity other than Horta**. It simply entails granting Horta's request for authorization in a manner that permits the operations of the 727 Horta always sought. The specific contractual arrangements pursuant to which those flights are operated were and are irrelevant.

Tellingly, the City does not deny that its objective is to prevent the use of the 727 for curfew-hour transportation of the San Jose SaberCats. The City is, in effect, seeking to reverse the Court's decision by making an unauthorized and improper motion for reconsideration. In doing so, it is deliberately attempting to mislead the Court about its own knowledge of the facts in order to justify its failure to make any mention of them prior to the Court's determination of the issues, and about the significance of the order and judgment proposed by Horta.

The City's effort is dishonest and improper. The Court should not countenance the City's attempt to manipulate the outcome of this litigation in a manner designed to contradict the fundamental relief that Horta has always sought, and to which it has demonstrated it is entitled.

Respectfully submitted,

**DLA Piper Rudnick Gray Cary US LLP**

James Chadwick

Enclosures

cc: Mr. Richard Doyle, w/ encls.

EM\7182314.1
2500070-1