COPY

CONTRACT DATA PAGE

| | | | |
|---|---|---|---|
| ANNUITANT | Arthur F. Buhs | CONTRACT NUMBER | |
| ANNUITY DATE | March 1, 2006 | DATE OF ISSUE | May 14, 1997 |
| SEX | Male | AGE AT ISSUE | 81 |
| OWNER | | | |

BENEFICIARY AS STATED IN THE APPLICATION UNLESS SUBSEQUENTLY CHANGED IN ACCORDANCE WITH THE PROVISIONS OF THIS ANNUITY CONTRACT.

BENEFIT AND PREMIUM SUMMARY

SCHEDULE OF BENEFITS

SINGLE PREMIUM DEFERRED ANNUITY MATURES

LUMP SUM PREMIUM PAYMENT ON DATE OF ISSUE $59,304.15

(ADDITIONAL LUMP SUM PREMIUM PAYMENTS MAY BE MADE DURING THE FIRST 6 MONTH PERIOD FOLLOWING THE DATE OF ISSUE OF THIS ANNUITY CONTRACT.)

Exhibit 4
Page 1 of 29

Dockets.Justia.com

# Single Premium Annuity Contract

**CalFarm** Life Insurance Company

This is an Annuity Contract. The Earned Bonus Account, in the form of a monthly income, becomes payable on the Annuity Date. If the Annuitant or Owner dies before the Annuity Date, benefits will be payable as described in the "Death Payments" provision. This is a non-participating contract—Not Eligible For Dividends.

## AGREEMENT

We will pay a periodic income—the Annuity Payment—to the Annuitant, if living, on the Annuity Date. The first Annuity Payment will be payable on the Annuity Date. The number of Annuity Payments and the amount of each Annuity Payment will be determined by applying the Earned Bonus Account under the annuity option or options chosen.

We will pay to the Beneficiary benefits as described in the "Death Payments" provision, if the Annuitant or any Owner dies prior to the Annuity Date. The amount payable will be determined as of the date of such death. Payment will be made upon receipt of due proof of death.

All Annuity Payments and any benefits will be payable subject to the terms of this contract. The consideration for issuance of this contract is the application, a copy of which is attached, and the Premium Payment on the Date of Issue.

Premium Payments after the first may be made as provided in the "Premium Payments" provision.

Signed for the Company at its Home Office, Sacramento, California.

**CalFarm** Life Insurance Company

SECRETARY PRESIDENT

## IMPORTANT

YOU HAVE PURCHASED AN ANNUITY CONTRACT. CAREFULLY REVIEW IT FOR LIMITATIONS.

THIS CONTRACT MAY BE RETURNED WITHIN 30 DAYS FROM THE DATE YOU RECEIVE IT FOR A FULL REFUND BY RETURNING IT TO THE INSURANCE COMPANY OR AGENT WHO SOLD YOU THIS CONTRACT. AFTER 30 DAYS, CANCELLATION MAY RESULT IN A SUBSTANTIAL PENALTY, KNOWN AS A SURRENDER CHARGE. PLEASE REFER TO THE "CASH SURRENDER VALUE" AND "SURRENDER" PROVISIONS, ON PAGE 8 FOR SURRENDER CHARGE INFORMATION.

## DEFINITIONS

**Accumulation Period.** The period between the Date of Issue and the Annuity Date.

**Annuitant.** The natural person named in the application upon whose life Annuity Payments are based or will be based and to whom Annuity Payments are or will be made. The Annuitant may not be changed after the Annuity Date.

**Annuity Date.** The date or dates on which Annuity Payments are to start.

**Annuity Payment.** Payments to the Annuitant made at regular intervals throughout the Annuity Period.

**Annuity Period.** The period during which Annuity Payments are made.

**Beneficiary.** The Beneficiary designated by You in Your application, or as later changed by You.

**Bonus Account Interest Rate.** The current interest rate periodically declared by the Company which is credited to the Bonus Account.

**Cash Surrender Value.** The amount available to You for partial surrenders or total surrender for a lump sum payment.

**Cash Value Account Interest Rate.** The current interest rate periodically declared by the Company which is credited to the Cash Value Account.

**Company Reference.** "We," "Our," "Us," or "Company" means CalFarm Life Insurance Company.

**Contingent Beneficiary.** The Contingent Beneficiary designated by You in Your application, or as later changed by You.

**Contract Year.** The 12 months beginning with the Date of Issue or on any anniversary of that date.

**Date of Issue.** The date on which the initial Premium Payment is made. It is also the date from which all Contract Years and anniversaries are determined.

**Earned Bonus Account.** The amount available for annuity options 1 through 15, and partial withdrawals.

**Home Office.** The home office of CalFarm Life Insurance Company is located at 1601 Exposition Blvd., Sacramento, CA 95815.

**Owner.** "You," "Your," or "Owner" means the Owner or Owners of the contract.

**Premium Bonus.** A percentage of all Premium Payments, based on the Annuitant's age on the Date of Issue, plus interest credited at the applicable Bonus Account Interest Rate.

**Premium Payment.** An amount of premium paid by You, in a lump sum, and accepted by Us.

## PREMIUM PAYMENTS

The single Premium Payment for this contract may be made on the Date of Issue; or on the Date of Issue, plus additional Premium Payments within 6 months following the Date of Issue, subject to the following requirements:

A. The minimum single Premium Payment which must be paid to Us on the Date of Issue is $1,000.

   If the minimum single premium is not paid in full on the Date of Issue, You must provide, on a form acceptable to Us, authorization to request the balance due, and the sources from which such amount may be requested.

B. Additional Premium Payments may only be made within 6 months following the Date of Issue, before the Annuity Date and during Your lifetime and that of the Annuitant.

C. We may refuse to accept any additional Premium Payments of less than $1,000.

D. Premium Payments are payable to Us at our Home Office.

**Premium Tax.** When applicable, We will deduct an amount to cover premium taxes. Depending on the applicable state law, any such deduction will be made either:

A. from Premium Payments when received; or

B. from the Earned Bonus Account and the Cash Surrender Value at any time such premium tax is payable.

If no amount is deducted for premium tax, but tax is later determined to be due, We reserve the right to reduce the Earned Bonus Account and the Cash Surrender Value by the amount of tax due at the time such determination is made. We will increase the Earned Bonus Account and the Cash Surrender Value by any amount deducted for premium tax which is later determined not to be due.

## MAINTENANCE FEE

At the end of each Contract Year after the first, and upon total surrender of this contract after the first Contract Year, a maintenance fee of $45 will be deducted on a Last-In/First-Out basis from the Bonus Account and the Cash Surrender Value unless the Bonus Account at the end of such Contract Year, or at the time of surrender, is $5,000 or more. The maintenance fee ends as of the date You annuitize this contract.

**ANNUITY DATE**

The Annuity Date (i) may not be within the first Contract Year; (ii) may not be prior to the date on which the Accumulation Value is sufficient to provide minimum monthly payments as set forth in the "Minimum Payment" provision; and (iii) will be as set forth in C below, unless otherwise provided in Your application, or changed by You.

You may change the Annuity Date to any date provided to Us in writing, provided that:

A. The Annuitant is then living.

B. It meets conditions (i) and (ii) above.

C. Annuity Payments will commence no later than the first day of the calendar month following the end of the 15th Contract Year.

Regardless of the above conditions, the Annuity Date must be no later than the first day of the calendar month following the month in which the Annuitant attains age 90.

The Annuity Date must be the first day of a calendar month. Any request for change of the Annuity Date must be submitted to Our Home Office. The request must be in writing in a form acceptable to Us.

**PREMIUM BONUS**

The Premium Bonus is equal to the percentage (as shown in the table below) for the Annuitant's age on the Date of Issue, of all Premium payments, plus interest credited at the applicable Bonus Account Interest Rate, less amounts deducted as a result of any partial withdrawals or partial surrenders.

| Issue Age | Premium Bonus | Issue Age | Premium Bonus | Issue Age | Premium Bonus |
|---|---|---|---|---|---|
| 66-75 | 15% | 80 | 10% | 85 | 5% |
| 76 | 14% | 81 | 9% | 86 | 4% |
| 77 | 13% | 82 | 8% | 87 | 3% |
| 78 | 12% | 83 | 7% | 88 | 2% |
| 79 | 11% | 84 | 6% | 89 | 1% |

**BONUS ACCOUNT**

The Bonus Account is equal to the sum of (a) and (b), where:

(a) is equal to 100% of all Premium Payments received by Us, less amounts deducted as a result of any partial withdrawals or partial surrenders, plus interest credited at the applicable Bonus Account Interest Rate; and

(b) is equal to the Premium Bonus.

*Interest Rates.* We will periodically declare a Bonus Account Interest Rate which may be higher than the guaranteed minimum monthly interest rate of .24663% which is 3% when compounded for a year.

The Bonus Account Interest Rate declared with respect to the Premium Payment on the Date of Issue, and to each additional Premium Payment, is guaranteed for 12 months following the date of each payment. Such guarantees will be renewed, at the applicable declared Bonus Account Interest Rate in effect at the beginning of each succeeding period of 12 months.

**EARNED BONUS ACCOUNT**

A. If the Date of Issue is on or before the Annuitant's 75th birthday, the Earned Bonus Account during the first 15 Contract years prior to the Annuity Date is equal to the Bonus Account less the product of (a) times (b), where:

(a) is equal to the Premium Bonus; and

(b) is equal to the ratio of (1) to (2), where:

(1) is 180 minus the number of full contract months elapsed since the Date of Issue; and

(2) is 180.

After the first 15 Contract Years, and prior to the Annuity Date, the Earned Bonus Account is equal to 100% of the Bonus Account.

B. If the Date of Issue is after the Annuitant's 75th Birthday, the Earned Bonus Account Prior to the Annuity Date is equal to the Bonus Account less the product of (a) times (b), where:

(a) is equal to the Premium Bonus; and

(b) is equal to the ratio of (1) to (2), where:

(1) is the number of full contract months remaining until the first day of the calendar month following the Annuitant's 90th birthday; and

(2) is the number of full contract months from the Date of Issue to the first day of the calendar month following the Annuitant's 90th birthday.

**ANNUITIZATION RULES**

Subject to the limitations set forth herein, You may choose to have Annuity Payments made beginning on the Annuity Date under any one or more of the options listed in the "Annuity Options" provision. If no option has been chosen within 30 days after the Annuity Date, the Earned Bonus Account will be applied to provide a monthly income under annuity option 3, provided the minimum monthly payment requirement is satisfied. If the minimum monthly

LIFE 13780 [8/95]

payment requirement is not satisfied, payments may not commence until the Annuitant attains age 90.

Any option which pays to other than a natural person is subject to Our approval. Payment options other than those listed in the "Annuity Options" provision are subject to Our approval.

**Supplementary Contract.** A supplementary contract will be issued to each payee to whom Annuity Payments are to be made. The contract will set forth the rights of the payee and will provide for the payment of any unpaid balance which may be due the Beneficiary when the payee dies. The "Death Payments" provision will apply to any supplementary contract.

**Election of Options.** You may choose or change any annuity option prior to the Annuity Date. A Beneficiary payee may choose an option providing for payments to begin within 1 year after the Annuitant's death if such death occurs prior to the Annuity Date, subject to the "Death Payments" provision.

Annuity options 9 and 12 are only available if the Annuity Date is on or before the Annuitant's 80th birthday. Annuity options 10 and 13 are only available if the Annuity Date is on or before the 80th birthday of both the Annuitant and the Annuitant's spouse.

**Minimum Payment.** For annuity options 1 through 13, an annuity option may be elected only if monthly payments of at least $100 will be provided under that option. If Annuity Payments are made other than monthly, they must be equivalent to at least $100 per month (for annuity option 14 this condition applies quarterly). For annuity option 15, Annuity Payments must be at least $100 per month for the initial 12 months following the Annuity Date. Annuity Payments under annuity option 15 are permitted on a monthly basis only.

**Evidence That Payee Is Alive.** Before making any payment under an annuity option, We may ask for proof that the payee is alive. If proof is requested, no payment will be made or considered due until We receive proof.

## ANNUITY OPTIONS

**Option 1. Life Only.** The Earned Bonus Account (or any part thereof), as of the Annuity Date, will be used to provide Annuity Payments in equal amounts for the life of the Annuitant.

When the Annuitant dies the Annuity Payments will cease.

Monthly payments under this option will be determined by Us at the time Annuity Payments commence, but such payments will not be less than payments calculated using the guaranteed minimum annual interest rate of 3.0% and the 1983 Individual Annuity Mortality Tables.

**Option 2. Life Income with Installments Guaranteed for 5 Years.** The Earned Bonus Account (or any part thereof), as of the Annuity Date, will be applied to provide Annuity Payments in equal amounts for a guaranteed payment period of 5 years. Annuity Payments will continue for the lifetime of the Annuitant. If the Annuitant dies before the end of the guaranteed period, payments will continue to the Beneficiary to the end of the guaranteed period, subject to the "Death Payments" provision.

Monthly payments under this option will be determined by Us at the time Annuity Payments commence, but such payments will not be less than payments calculated using the guaranteed minimum annual interest rate of 3.0% and the 1983 Individual Annuity Mortality Tables.

**Option 3. Life Income with Installments Guaranteed for 10 Years.** The Earned Bonus Account (or any part thereof), as of the Annuity Date, will be applied to provide Annuity Payments in equal amounts for a guaranteed payment period of 10 years. Annuity Payments will continue for the lifetime of the Annuitant. If the Annuitant dies before the end of the guaranteed period, payments will continue to the Beneficiary to the end of the guaranteed period, subject to the "Death Payments" provision.

Monthly payments under this option will be determined by Us at the time Annuity Payments commence, but such payments will not be less than payments calculated using the guaranteed minimum annual interest rate of 3.0% and the 1983 Individual Annuity Mortality Tables.

**Option 4. Life Income with Installments Guaranteed for 15 Years.** The Earned Bonus Account (or any part thereof), as of the Annuity Date, will be applied to provide Annuity Payments in equal amounts for a guaranteed payment period of 15 years. Annuity Payments will continue for the lifetime of the Annuitant. If the Annuitant dies before the end of the guaranteed period, payments will continue to the Beneficiary to the end of the guaranteed period, subject to the "Death Payments" provision.

Monthly payments under this option will be determined by Us at the time Annuity Payments commence, but such payments will not be less than payments calculated using the guaranteed minimum annual interest rate of 3.0% and the 1983 Individual Annuity Mortality Tables.

**Option 5. Life Income with Installments Guaranteed for 20 Years.** The Earned Bonus Account (or any part thereof), as of the Annuity Date, will be applied to provide Annuity Payments in equal amounts for a guaranteed payment period of 20 years. Annuity Payments will continue for the lifetime of the Annuitant. If the Annuitant dies before the end of the guaranteed period, payments will continue to the Beneficiary to the end of the guaranteed period, subject to the "Death Payments" provision.

Monthly payments under this option will be determined by Us at the time Annuity Payments commence, but such payments will not be less than payments calculated using

the guaranteed minimum annual interest rate of 3.0% and the 1983 Individual Annuity Mortality Tables.

**Option 6. Joint and Survivor Income.** The Earned Bonus Account (or any part thereof), as of the Annuity Date, will be applied to provide Annuity Payments in equal amounts to the Annuitant while both the Annuitant and his or her spouse are living; payments continue to the survivor during the remaining lifetime of the survivor.

Monthly payments under this option will be determined by Us at the time Annuity Payments commence, but such payments will not be less than payments calculated using the guaranteed minimum annual interest rate of 3.0% and the 1983 Individual Annuity Mortality Tables.

**Option 7. Joint and 2/3 Contingent Survivor Income.** The Earned Bonus Account (or any part thereof), as of the Annuity Date, will be applied to provide Annuity Payments in equal amounts to the Annuitant while both the Annuitant and his or her spouse are living; full payments continue to the Annuitant for life if the spouse dies; 2/3 of the original payment amount continues to the spouse for life if the Annuitant dies.

Monthly payments under this option will be determined by Us at the time Annuity Payments commence, but such payments will not be less than payments calculated using the guaranteed minimum annual interest rate of 3.0% and the 1983 Individual Annuity Mortality Tables.

**Option 8. Life Income with Installment Refund.** The Earned Bonus Account (or any part thereof), as of the Annuity Date, will be applied to provide Annuity Payments in equal amounts during the Annuitant's life. If the Annuitant dies before Our total payments equal the Earned Bonus Account applied to this option on the Annuity Date, We will continue such payments to the Beneficiary until the total payments made to the Annuitant and the Beneficiary equal the Earned Bonus Account applied on the Annuity Date, subject to the "Death Payments" provision.

Monthly payments under this option will be determined by Us at the time Annuity Payments commence, but such payments will not be less than payments calculated using the guaranteed minimum annual interest rate of 3.0% and the 1983 Individual Annuity Mortality Tables.

**Option 9. Adjustable Life Expectancy Income.** The Earned Bonus Account (or any part thereof), as of the Annuity Date, will be applied to provide Annuity Payments in amounts based on the Annuitant's life expectancy, as defined in Treasury Regulation Section 1.72-9, and in any successor regulations.

Annuity Payments for the first 12 months following the Annuity Date will be calculated using the Annuitant's applicable life expectancy, the Earned Bonus Account, and an interest rate established by Us, as of the Annuity Date. The amount applied to provide Annuity Payments under this option, less payments made, will accumulate at such interest rate established by Us. Annuity Payments for each successive 12-month period will be redetermined annually, using the then applicable life expectancy, the Earned Bonus Account balance remaining as of each successive anniversary and the interest rate which was established by Us as of the Annuity Date. The interest rate used will not be less than a guaranteed minimum annual interest rate of 3.0%.

At any time during the Annuity Period that the Earned Bonus Account balance remaining is less than $1,000, such balance may be paid in a lump sum to the payee as of the next Annuity Payment due date.

Transfer Option. Before age 90, You may request, in writing, the transfer of the balance remaining under this option on any anniversary of the Annuity Date to any of annuity options 1 through 8, 11 or 12 of this contract, at an interest rate established by Us as of the date of transfer, which will not be less than the guaranteed minimum interest rate of 3.0%. However, option 12 is only available if the Annuity Date was on or before the Annuitant's 80th birthday. After such transfer, Annuity Payments will be paid in accordance with the provisions of the annuity option selected. The period selected cannot exceed the Annuitant's life or life expectancy, or, in the case of options 6 or 7, the joint lives of the Annuitant and the Annuitant's spouse.

Payment Suspension Option. Before age 85, You may request, in writing, the suspension of Annuity Payments, on any anniversary of the Annuity Date. You must give Us the number of months that Annuity Payments are to be suspended. Any suspension must be for at least 12 months. You may request an extension of the suspension or recommencement of Annuity Payments by written request to Us, at least 30 days prior to the end of any suspension period, or recommencement date. The recommencement date must be no later than the date the Annuitant attains age 90. Interest will be credited on the Earned Bonus Account at the rate established by Us on the Annuity Date.

Payments on Your death are made in accordance with the "Death Payments" provision.

**Option 10. Adjustable Joint Life Expectancy Income.** The Earned Bonus Account (or any part thereof), as of the Annuity Date, will be applied to provide Annuity Payments in amounts calculated using the Annuitant's and the Annuitant's spouse's joint life expectancy, as defined in Treasury Regulation Section 1.72-9, and in any successor regulations.

Annuity Payments for the first 12 months following the Annuity Date will be calculated using the Annuitant's and the Annuitant's spouse's joint life expectancy, the Earned Bonus Account, and an interest rate established by Us as of the Annuity Date. The amount applied to provide Annuity Payments under this option, less payments made, will accumulate at such interest rate established by Us. Annuity Payments for each successive 12-month period will be

redetermined annually, using the Annuitant's and the Annuitant's spouse's joint life expectancy, the Earned Bonus Account remaining as of each successive anniversary, and the interest rate established by Us as of the Annuity Date. The interest rate used will not be less than a guaranteed annual interest rate of 3.0%.

At any time during the Annuity Period that the Earned Bonus Account balance remaining is less than $1,000, such balance may be paid in a lump sum to the payee, as of the next Annuity Payment due date.

Transfer Option. Before age 90, You may request, in writing, the transfer of the balance remaining under this option on any anniversary of the Annuity Date to any of annuity options 1 through 8, 11, 12 or 13 of this contract, at an interest rate established by Us as of the date of transfer, which will not be less than the guaranteed minimum interest rate of 3.0%. However, annuity option 12 is only available if the Annuity Date was on or before the Annuitant's 80th birthday. Annuity option 13 is only available if the Annuity Date is on or before the 80th birthday of both the Annuitant and the Annuitant's spouse. After such transfer, Annuity Payments will be paid in accordance with the provisions of the annuity option selected. The period selected cannot exceed the Annuitant's life or life expectancy, or, in the case of options 6, 7 or 13, the joint lives or life expectancy of the Annuitant and the Annuitant's spouse.

Payment Suspension Option. Before age 85, You may request, in writing, the suspension of Annuity Payments, on any anniversary of the Annuity Date. You must give Us the number of months that Annuity Payments are to be suspended. Any suspension must be for at least 12 months. You may request an extension of the suspension or recommencement of Annuity Payments by written request to Us, at least 30 days prior to the end of any suspension period, or recommencement date. The recommencement date must be no later than the date the Annuitant attains age 90. Interest will be credited on the Earned Bonus Account at the rate established by Us on the Annuity Date.

Payments on Your death are made in accordance with the "Death Payments" provision.

**Option 11. Income for a Guaranteed Period with Installments Guaranteed.** The Earned Bonus Account (or any part thereof), as of the Annuity Date, will be applied to provide Annuity Payments in equal amounts for the number of years selected. The period selected cannot be more than 30 years nor less than 10 years. If the Annuitant dies during the guaranteed period, payments will continue to the Beneficiary to the end of the guaranteed period, subject to the "Death Payments" provision.

Monthly payments under this option will be determined by Us at the time Annuity Payments commence, but such payments will not be less than payments calculated using the guaranteed minimum annual interest rate of 3.0%.

**Option 12. Income for Life Expectancy Period.** The Earned Bonus Account (or any part thereof), as of the Annuity Date, will be applied to provide Annuity Payments in equal amounts for a number of years and months equal to the Annuitant's life expectancy (the guaranteed period), as defined in Treasury Regulation Section 1.72-9, and in any successor regulations.

Annuity Payments will be determined as of the Annuity Date, but such payments will not be less than payments calculated using a guaranteed minimum annual interest rate of 3.0%.

If the Annuitant dies during the guaranteed period, payments will continue to the Beneficiary to the end of the guaranteed period, subject to the "Death Payments" provision.

**Option 13. Income for Joint Life Expectancy Period.** The Earned Bonus Account (or any part thereof), as of the Annuity Date, will be applied to provide Annuity Payments in equal amounts for a number of years and months equal to the joint life expectancy of the Annuitant and the Annuitant's spouse (the guaranteed period), as defined in Treasury Regulation Section 1.72-9, and in any successor regulation(s).

Annuity Payments will be determined as of the Annuity Date, but such payments will not be less than payments calculated using a guaranteed minimum annual interest rate of 3.0%.

If the Annuitant dies during the guaranteed period, payments will continue to the Annuitant's spouse to the end of the guaranteed period, subject to the "Death Payments" provision.

If both the Annuitant and the Annuitant's spouse die during the guaranteed period, payments will continue to the Beneficiary to the end of the guaranteed period, subject to the "Death Payments" provision.

**Option 14. Interest Income for 5 Years.** The Earned Bonus Account (or any part thereof), as of the Annuity Date, will become the Deposit Amount to be held on deposit by Us for 5 years.

Payment of interest will be made to the Annuitant quarterly during the 5 year period. If the Deposit Amount is $50,000 or more, You may elect to have payments made monthly.

Interest under this option will be based upon an interest rate established by Us on the Annuity Date, but such interest rate will not be less than the guaranteed minimum annual interest rate of 3.0%.

During the 5 year period, You may neither terminate this option nor withdraw any portion of the Deposit Account.

At the end of the 5 year period, You may elect one of the following. We will notify You at least 30 days prior to the end of the 5 year period.

A. Renew the election of annuity option 14 for another 5 years. Interest will be based upon an interest rate established by Us at the time of renewal, which will not be less than the guaranteed minimum annual interest rate of 3.0%. Renewals may not extend the 5 year period beyond the Annuitant's age 90.

B. Transfer the Deposit Amount to any of annuity options 1 through 13 of this contract. Such transfer must be made by the Annuitant's age 90.

C. Receive the Deposit Amount in a single lump sum payment.

If You do not make an election before the end of the 5 year period, Your election of annuity option 14 will be automatically renewed for another 5 year period, unless the Annuitant will attain age 90 before the end of such 5 year period. In that case, the Deposit Amount will be transferred to annuity option 3 as if chosen by You.

If any Owner dies during the 5 year period, We will pay the Beneficiary the benefits set forth in A or B below:

A. The Beneficiary may elect to have payments as described above continued until the end of the 5 year period, at which time the Deposit Amount will be paid to the Beneficiary in a lump sum. We will pay benefits under this option if the Beneficiary is not a natural person.

B. In lieu of the lump sum death benefit described in A above, the Beneficiary may elect to have the Deposit Amount applied under any of annuity options 1 through 5, 8, 9, 11 or 12 which were available to the Annuitant, subject to the following:

(1) If the Beneficiary is the Owner's spouse, the contract may be continued with the spouse as Owner.

(2) If the Beneficiary is not the Owner's spouse, Annuity Payments must commence within 1 year after the date of death. Notwithstanding any other provision of this contract, the Annuity Period cannot exceed the longer of the Beneficiary's life or life expectancy.

(3) Option 9 and 12 are not available if the Beneficiary is age 80 or more.

(4) Option 9, if available, will not include the Transfer and Payment Suspension options.

Within 1 year following the death of any Owner, the Beneficiary must choose to have benefits paid under either A or B, as described above. If, within 1 year following such death, the Beneficiary has not chosen to have benefits paid under A or B, We will pay benefits as set forth in A, as if so chosen by the Beneficiary. In no event will any lump sum payable hereunder be distributed more than 5 years after the death of any Owner.

If the Annuitant is not the Owner, and the Annuitant dies during the 5 year period, interest will continue to be paid to the Beneficiary until the end of the 5 year period. The Beneficiary may then request a lump sum death benefit or may elect to have the Deposit Amount applied under any of annuity options 1 through 5, 8, 9, 11 or 12 which were available to the Annuitant. However, options 9 and 12 are not available if the Beneficiary is age 80 or more. If an election is not made within 60 days, benefits will be paid in a lump sum.

These provisions will be administered in accordance with the provisions of the Internal Revenue Code and the regulations thereunder.

**Option 15. Income for a Specified Period.** The entire Earned Bonus Account, as of the Annuity Date, will be applied to provide income for the specified payout period shown in the Table of Specified Payout Periods, based upon the sex of the Annuitant and the Annuitant's age on the Annuity Date. Option 15 may be elected at any time, including during the first contract year, provided minimum monthly payments on the Annuity Date are $100 or more.

We will make monthly payments to the Annuitant during the specified payout period, beginning on the Annuity Date. Such payments will be of equal amount during each 12 month period following the Annuity Date, and will be redetermined annually on each anniversary of the Annuity Date.

During the first 12 months following the Annuity Date, the monthly payments will be calculated to pay out all of the interest earned during that 12 month period plus 1% of the balance in the Earned Bonus Account on the Annuity Date.

On each anniversary of the Annuity Date, monthly payments will be redetermined for the next 12 months based upon the balance in the Earned Bonus Account on such anniversary. The payments during each such 12 month period will be calculated to pay out all of the interest earned during that 12 month period plus 1% of the balance in the Earned Bonus Account on such anniversary.

Interest under this option will be based upon an interest rate established by Us on the Annuity Date, but such interest rate will not be less than the guaranteed minimum interest rate for this annuity option of 3.0% per year, compounded annually.

During the specified payout period, You may neither terminate this annuity option nor withdraw any portion of the remaining Earned Bonus Account balance. At the end of such period, the remaining balance in the Account will be paid to You in a lump sum.

If any Owner dies during the specified payout period, We will pay the Beneficiary the benefits set forth in A, B or C below:

A. Upon request, or if the Beneficiary is not a natural person, We will pay a lump sum death benefit to the Beneficiary. Requests may not provide for delayed payments. The benefit will be the commuted value of the remaining payments, including the balance at the end of the specified period. The interest rate used in commuting such payments is described below.

B. In lieu of the lump sum death benefit described in A, the Beneficiary may elect to have the remaining balance in the Earned Bonus Account applied under any of the annuity options which were available to the Annuitant, except options 6, 7, 10, 13, and 14 or this option 15, subject to the following:

(1) If the Beneficiary is the Owner's spouse, the contract may be continued with the spouse as Owner.

(2) If the Beneficiary is not the Owner's spouse, Annuity Payments must commence within 1 year after the date of death. Notwithstanding any other provision of the contract, the Annuity Period cannot exceed the longer of the Beneficiary's life or life expectancy.

If chosen, annuity option 9 will not include the Transfer and Payment Suspension options.

C. In lieu of the death payments described in A or B above, the Beneficiary may elect to have payments as described above continued until the earlier of the end of the original specified payout period, at which time the remaining balance in the Account will be to paid, the Beneficiary in a lump sum, or 5 years following the date of the Owner's death, at which time the remaining payments, including the balance at the end of the specified period, will be commuted and paid to the beneficiary in a lump sum. The interest rate used in commuting such payments is described below.

Within 1 year following the death of any Owner, the Beneficiary must choose to have benefits paid under A, B or C, as described above. If the Beneficiary chooses to receive benefits under A, We will make payment within 30 days of receiving notice of the Beneficiary's choice. If, within 1 year following such death, and the Beneficiary has not chosen to have benefits paid under A, B or C, We will pay benefits as set forth in A, within 30 days following the end of such period, as if so chosen by the Beneficiary. In no event will any lump sum payable hereunder be distributed more than 5 years after the death of any Owner.

If the Annuitant dies during the specified payout period, and the Annuitant was not the Owner, payments will continue to be paid to the Beneficiary until the end of such period, subject to the "Death Payments" provision of the contract. At the end of the specified period, the remaining balance in the Earned Bonus Account will be paid to the Beneficiary in a lump sum. At the option of the Beneficiary, the remaining payments, including the balance at the end of the specified period, may be commuted and paid in a lump sum.

The interest rate used to commute any payments described above will be determined by Us as of the date of such commutation, and will not exceed the greater of (1) or (2), plus 3%, where:

(1) is the average of the discount rates of 91 day U.S. Treasury Bills auctioned during the 13 weeks of the calendar quarter preceding the date of such commutation, and

(2) is the average of Moody's Investors Service indexes of 10 year yields on U.S. Treasury securities published weekly during the 13 weeks of the calendar quarter preceding the date of such commutation.

If either of the above indexes is discontinued or materially changed, We reserve the right to substitute an index which in our opinion is a comparable index to the index discontinued or changed.

**Table of Specified Payout Periods**

| Age | Payout Period No. of Years Male | Payout Period No. of Years Female | Age | Payout Period No. of Years Male | Payout Period No. of Years Female | Age | Payout Period No. of Years Male | Payout Period No. of Years Female |
|---|---|---|---|---|---|---|---|---|
| 66 | 12 | 16 | 75 | 8 | 10 | 83 | 5 | 6 |
| 67 | 12 | 15 | 76 | 7 | 10 | 84 | 5 | 6 |
| 68 | 11 | 15 | 77 | 7 | 9 | 85 | 5 | 5 |
| 69 | 11 | 14 | 78 | 7 | 9 | 86 | 4 | 5 |
| 70 | 10 | 13 | 79 | 6 | 8 | 87 | 4 | 5 |
| 71 | 10 | 13 | 80 | 6 | 8 | 88 | 4 | 5 |
| 72 | 9 | 12 | 81 | 5 | 7 | 89 | 4 | 5 |
| 73 | 9 | 11 | 82 | 5 | 7 | 90 | 3 | 4 |
| 74 | 8 | 11 | | | | | | |

These provisions will be administered in accordance with the provisions of the Internal Revenue Code and the regulations thereunder.

## CASH VALUE ACCOUNT

The Cash Value Account is equal to 100% of all Premium Payments received by Us, less amounts deducted as a result of any partial withdrawals and partial surrenders plus interest credited at the applicable Cash Value Account Interest Rate.

Interest Rate. We will periodically declare a Cash Value Account Interest Rate which may be higher than the guaranteed minimum monthly interest rate.

The Cash Value Account Interest Rate declared with respect to the Premium Payment on the Date of Issue, and to each additional Premium Payment, is guaranteed for 12 months following the date of each payment. Such guarantees will be renewed, at the applicable declared Cash Value Account Interest Rate in effect at the beginning of each succeeding period of 12 months.

The Cash Value Account Interest Rate in the 6th and later Contract Years will be the same as the corresponding Bonus Account Interest Rate.

The guaranteed minimum monthly Cash Value Account Interest Rate during the first 5 Contract Years is .20598%, which is 2.5% when compounded for a year. Thereafter, the guaranteed minimum monthly interest rate is the same as the corresponding guaranteed minimum monthly Bonus Account Interest Rate.

## CASH SURRENDER VALUE

The Cash Surrender Value is equal to the Cash Value Account less a percentage of that Cash Value Account, as shown in the Surrender Charge Table, for the applicable Contract Year.

Surrender Charge Table

| End of Contract Year | Surrender Charge | End of Contract Year | Surrender Charge |
|---|---|---|---|
| At Issue | 10.8% | 6 | 5.5% |
| 1 | 9.9% | 7 | 4.6% |
| 2 | 9.1% | 8 | 3.7% |
| 3 | 8.2% | 9 | 2.8% |
| 4 | 7.3% | 10 | 1.8% |
| 5 | 6.4% | 11 & over | None |

The percentages in the above table only apply when surrender occurs on a Contract Year anniversary. If surrender occurs between anniversaries, the percentage will decrease monthly on a straight line basis. (Percentages will not reach zero until the end of the 11th Contract Year.)

After the first 11 Contract Years prior to the Annuity Date, the Cash Surrender Value is equal to 100% of the Cash Value Account.

## PARTIAL WITHDRAWALS

After the first Contract Year and prior to the Annuity Date, You may request, in writing, a withdrawal of a portion of the Earned Bonus Account which will be computed as of the day We receive Your request in Our Home Office.

We will pay You the withdrawal amount requested, subject to the following:

A. Only 1 partial withdrawal may be made during a Contract Year;

B. The Cash Surrender Value remaining after a partial withdrawal must be at least $5,000; and

C. The maximum partial withdrawal amount in any Contract Year is limited to 10% of the Earned Bonus Account.

Withdrawal amounts will be paid to You on a Last-In/First-Out basis.

Any amount paid to other than a natural person is subject to Our approval.

The Earned Bonus Account and Cash Value Account will be reduced by the amount of any withdrawal, as of the date of withdrawal. The Premium Bonus, and the Bonus Account, as of the date of withdrawal, will be reduced proportionately to the reduction in the Earned Bonus Account, as of the date of withdrawal.

If this contract is totally surrendered during the first 11 Contract Years, and within 12 months of any partial withdrawal, the surrender charge at time of surrender will be adjusted to include any surrender charge previously waived pursuant to this "partial withdrawals" provision.

Partial withdrawal funds will be treated as a taxable distribution to You at the time partial withdrawal is made, and will be subject to applicable tax withholding and reporting rules.

## SURRENDER

At any time prior to the Annuity Date, You may request, in writing, the partial or total surrender of the Cash Surrender Value. For a total surrender this contract must be submitted with Your request. The Cash Surrender Value will be computed as of the day We receive the surrender request in Our Home Office. A partial withdrawal will not be permitted in conjunction with a total surrender request.

Any amount paid to other than a natural person is subject to Our approval.

The minimum partial surrender amount is $1,000 and the Cash Surrender Value remaining after the partial surrender must be at least $1,000. Partial surrender amounts will be paid on a Last-In/First-Out basis. A partial surrender will not be made in any Contact Year until any available partial withdrawal for such year has been utilized.

We will reduce the Cash Surrender Value by the partial surrender amounts paid and the Premium Bonus, Bonus Account and Cash Value Account proportionately to the reduction in the Cash Surrender Value.

In the event of total surrender, the Cash Surrender Value amount payable will be the greater of (a) or (b) where:

(a) is the amount determined as otherwise described in this contract; and

(b) is 90% of the amount determined in the same manner as described in this contract for calculating the Cash Value Account, except that the monthly interest rate utilized is .24663%.

Surrender funds will be treated as a taxable distribution at the time partial or total surrender is made and will be subject to applicable tax withholding and reporting rules.

**LOANS**

This contract does not permit loans.

**DEATH PAYMENTS**

**Death of the Owner or the Annuitant Prior to the Annuity Date.** If the Annuitant or any Owner dies prior to the Annuity Date, We will pay the Beneficiary the benefits set forth in A or B below:

A. Upon request, or if the Beneficiary is not a natural person, We will pay a lump sum death benefit to the Beneficiary. Requests may not provide for delayed payments. The benefit will be the Cash Surrender Value as of the date of death. The Cash Surrender value will be calculated as provided in the "Surrender" provision.

B. In lieu of the lump sum death benefit described in A above, the Beneficiary may elect to have the Earned Bonus Account applied under any of the annuity options which were available to the Annuitant, except options 14 and 15, subject to the following:

(1) If the Beneficiary is the Annuitant's spouse, and the Annuitant was the Owner at the date of death, the contract may be continued with the spouse as Annuitant and Owner.

(2) Otherwise, Annuity Payments must commence within 1 year after the date of death. Notwithstanding any other provision of this contract, the Annuity Period cannot exceed the longer of the Beneficiary's life or life expectancy.

(3) Annuity options 6, 7, 10 and 13 are available only to joint Beneficiaries, and annuity options 9 and 10, if available, will not include the Transfer and Payment Suspension options.

(4) Annuity options 9 and 12 are only available if payments commence before the Beneficiary's 80th birthday. Annuity options 10 and 13 are only available if payments commence before the 80th birthday of both Beneficiaries.

Within 1 year following the Annuitant's death (or any Owner's death, if earlier), the Beneficiary must choose to have benefits paid under either A or B, as described above. If the Beneficiary chooses to receive benefits under A, We will make payment within 30 days of receiving notice of the Beneficiary's choice. If, within 1 year following such death, the Beneficiary has not chosen to have benefits paid under A or B, We will pay benefits as set forth in A, within 30 days following the end of such period, as if so chosen by the Beneficiary. In no event will any lump sum payable hereunder be distributed more than 5 years after the Annuitant's death (or any Owner's death, if earlier).

These provisions will be administered in accordance with the provisions of the Internal Revenue Code and the regulations thereunder.

**Death of the Owner or the Annuitant On or After the Annuity Date.** The guaranteed number of Annuity Payments which remain payable after the Annuitant's death under Annuity Options 2, 3, 4, 5, 8, 11, 12, or 13 will continue to be made to the Beneficiary (or in the case of option 13, to the Annuitant's spouse, if living); provided, however, that amounts payable under such options may extend over a period no longer than a period equal to the Annuitant's remaining life expectancy (had the Annuitant survived) at the age the Annuitant had attained at the date of death. In the event that a shortened payment period is required, Annuity Payments will be adjusted accordingly.

In the event of the Annuitant's death, and if the Annuitant was receiving payments under annuity option 6 or 7, the survivor income provided for under that option will continue to the spouse during his or her remaining lifetime.

In the event of the Annuitant's death, and if the Annuitant was receiving payments under annuity option 9 or 10, the balance at the date of death will be paid under annuity option 11 for a period not to exceed, in the case of option 9, the Annuitant's remaining life expectancy (had the Annuitant survived) at the age attained at the date of death, or in the case of option 10, the remaining joint life expectancy of the Annuitant and the Annuitant's spouse (had the Annuitant survived) at the date the Annuitant had attained at the date of death. Payments will be made to the Beneficiary, or, in the case of option 10, to the Annuitant's spouse, if living. Any payment suspension option in effect at the date of death shall immediately terminate, and the balance at date of death will be paid under option 11 as described above.

In addition, in the event of the Annuitant's death, and if the Annuitant was receiving benefits under annuity option 14 or 15, the balance at the date of death will be paid as provided in option 14 or 15, respectively.

In addition, in the event of any Owner's death on or after the Annuity Date, the amount to which the Beneficiary (or Annuitant, if living) is entitled under the annuity option chosen will be distributed at least as rapidly as under the method of distribution being used as of the date of death.

Payments hereunder may be modified to comply with the provisions of the Internal Revenue Code and the regulations thereunder.

## BENEFICIARY

Subject to the "Death Payments" (Death of the Owner or Annuitant On or After the Annuity Date) provision, the Beneficiary will receive any proceeds that may become payable upon the death of the Annuitant or any Owner. Unless otherwise provided in the Beneficiary designation in the application for this contract:

A. If any Beneficiary dies, that Beneficiary's interest will pass to any other Beneficiary according to his or her respective interest.

B. If no designated Beneficiary survives to receive proceeds under the "Death Payments" provision, proceeds will be paid in one lump sum to You if living, otherwise to Your estate. The estate will be required to accept payment within 1 year of the death of the Annuitant or any Owner.

C. The Owner or the Owner's estate is the Beneficiary unless otherwise specified.

If payments are being made under an annuity option, and no Beneficiaries remain living after the death of all Annuitants, any remaining proceeds will be paid to the Owner or the estate of the Owner.

**Common Disaster.** If We cannot determine whether an Owner, the Annuitant or a Beneficiary died first in a common disaster, We will presume that the Beneficiary died first. Proceeds will be payable on this basis unless otherwise provided by endorsement.

**Change of Beneficiary.** The Beneficiary may be changed at any time, including after the Annuity Date, unless a previous designation provides otherwise. The change may be made by submitting a written request to Our Home Office.

The change will not take effect until We have recorded it. After We record the change, it will be effective as of the date of the written request for change. The change will be subject to any payments made or action taken by Us before the request is recorded.

## GENERAL PROVISIONS

**The Contract.** This annuity contract is a legal contract between You and CalFarm Life Insurance Company.

We have issued this contract in consideration of the application and the payment of the initial Premium Payment. There is no contract until such premium is paid. This contract and application, a copy of which is attached, make up the entire contract.

This contract begins on the Date of Issue as shown on the contract specifications page.

Only Our president, a vice-president, the secretary, or an assistant secretary can waive or change any of Our rights as set forth in this contract. Such waiver or change must be in writing.

**Owner.** The Annuitant is the Owner of this contract unless otherwise stated in the application and contract specifications page, or unless changed by endorsement. The Owner is entitled to all rights under this contract.

If any Owner dies during the Accumulation Period, the Beneficiary will be the successor Owner, but the rights of such successor Owner shall be subject to the provisions of this contract regarding Death Payments.

**Incontestability.** We rely on the statements made in the application. These statements, in the absence of fraud, are considered representations and not warranties. No statement may be used in defense of a claim unless it is in the application.

**Last-In/First-Out.** For any affected disbursements, payments made shall be from the most recent Premium Payments, in reverse order by date of receipt by Us, and from the interest credited on such Premium Payments.

**Nonforfeitability.** The values of this contract are nonforfeitable.

**Misstatement Of Age Or Sex.** If the Annuitant's age or sex is misstated in the application, any amount payable will be adjusted to pay the amount which the Premium Payments made would have purchased at the correct age and sex. By age, We mean the age at nearest birthday.

If, due to misstatement of age or sex, We make an overpayment of annuity benefits, the amount of such overpayment, plus interest not to exceed 6.0% per annum, will be deducted from the current or next succeeding payment. If, due to a misstatement of age or sex, We make an underpayment of annuity benefits, the amount of such underpayment, plus interest of not less than 3.0% per annum will be added to the current or next succeeding payment. We will notify You if We make any such adjustment.

**No Dividends.** This contract does not pay dividends. It is a nonparticipating contract and does not participate in Our surplus or earnings.

**Assignment.** This contract may be assigned by the Owner. The assignment must be received at Our Home

Office before it becomes effective. However, once a change is recorded, it may become effective as any specified date other than the date received at Our Home Office. The change will be subject to any payment made or action taken by Us before the request is recorded. We are not responsible for the validity of any assignment. Assignment may be a taxable event.

**Annual Report.** We will provide a statement regarding the status of this contract at least once each Contract Year. Statements will be sent until Annuity Payments begin.

**Change of Contract by Mutual Agreement.** The Owner and an authorized officer of the Company, by an agreement in writing, may change any or all terms of this contract. No agent of the Company is authorized to make any changes to this contract whether verbal or written. In addition, certain changes required by law may be made by us without your consent.

Consent of the Beneficiary (except an irrevocable Beneficiary) will not be required for any changes in this contract.

**Deferment.** We may defer payment of partial withdrawals and a partial or total surrender request for up to 6 months after We receive Your request. If payment is deferred for 30 days or more, interest will be applied to the amount requested at a rate as determined by Us, but which will not be less than 3.0%

## STATUTORY REQUIREMENTS

The paid-up annuity benefits, surrender benefits, and death benefits guaranteed in this contract are not less than the minimum benefits required by any statute of the state in which this contract is delivered.

This contract is intended to be an annuity contract for federal income tax purposes. Notwithstanding any provision of this contract to the contrary, We will administer this contract in a manner consistent with the requirements applicable to annuity contracts set out in the Internal Revenue Code of 1986, as amended, and regulations or rulings thereunder. We reserve the right to make changes to the terms of this contract in order to ensure that this contract complies with such laws, regulations or rulings.



Exhibit A
Page 13 of 29

# Annuity Disclosure Statement

CalFarm Life Insurance Company

Enclosed is Your annuity contract. It is designed as a long-term commitment by You to provide income at retirement. We suggest that You keep it with Your other valuable papers. However, please take the time to carefully read the contract before You file it away. This review should reaffirm Your decision concerning the benefits and provisions that attracted You to Our annuity in the first place.

You may make additional lump sum Premium Payments for up to 6 months from the issue date of Your contract.

Your contract has a Premium Bonus which is equal to a percentage, based on the Annuitant's age on the Date of Issue, of all Premium Payments, plus interest credited on such bonus. The bonus (including interest credited to it) is earned on a pro-rata basis. If the Date of Issue is on or before the Annuitant's 75th birthday, the bonus is 15% and the pro-rata basis is 1/15th of the bonus for each Contract Year during the first 15 years, and before annuitization. For example: the bonus earned by the end of the first year is 1/15th of the 15%, plus interest. By the end of the 5th year it is 5/15ths of the 15%, plus interest; by the end of the 10th year it is 10/15ths of the 15%, plus interest, and so on until at the end of the 15th year the entire bonus plus interest credited to it is earned. If the Date of Issue is after the Annuitant's 75th birthday the maximum bonus is earned at 1% for each year between the age at issue and age 90. For example: Issue age 80 will receive a 10% bonus, and issue age 85 will receive a 5% bonus. The bonus is earned on a proportional basis, similar to that described above for a date of issue on or before the Annuitant's 75th birthday.

The contract's Bonus Account is equal to 100% of all Premium Payments plus current interest credited, and the Premium Bonus, less any deductions for partial withdrawals and partial surrenders.

Prior to the Annuity date, the Earned Bonus Account, which is available for partial withdrawals and 15 payment options, is equal to the Bonus Account, less any unearned portion of the premium bonus and current interest credited on such bonus.

The Cash Value Account is equal to 100% of premiums paid, less any partial withdrawals and partial surrenders, plus current interest credited. (The premium bonus is not credited to this account.) If You surrender this contract before the end of the 11th Contract Year, We will apply a surrender charge based on the following table:

| End of Contract Year | Surrender Charge | End of Contract Year | Surrender Charge |
|---|---|---|---|
| At Issue | 10.8% | 6 | 5.5% |
| 1 | 9.9% | 7 | 4.6% |
| 2 | 9.1% | 8 | 3.7% |
| 3 | 8.2% | 9 | 2.8% |
| 4 | 7.3% | 10 | 1.8% |
| 5 | 6.4% | 11 & over | None |

The percentages in the above table apply only when surrender occurs on a Contract Year anniversary. If surrender occurs between anniversaries, the percentage will decrease monthly on a straight line basis. Percentages will not reach zero until the end of the 11th Contract Year. The surrender charge is highest at issue, and decreases to zero in the 12th and later years.

A declared current interest rate (which is subject to change) is credited to all Premium Payments and is guaranteed for 12 months following the date of each payment. This guarantee is renewed, at the applicable declared interest rate in effect at the beginning of each successive period of 12 months. During the first 5 Contract Years the Cash Value Account

 (Continued on back) 

current interest rate is less than the rate for the Bonus Account. However, after the 5th year the rate for both accounts is the same. The guaranteed minimum annual interest rate for the Bonus Account is 3.0%; for the Cash Value Account it is 2.5% for the first 5 Contract Years, and 3.0% thereafter.

After the first Contract Year, you may start receiving Annuity Payments at any time after the Earned Bonus Account is sufficient to provide monthly payments of $100 ($100 quarterly for annuity option 14) or more. For annuity option 15, annuity payments must be at least $100 per month for the initial 12 months following the Annuity Date. Payments under option 15 are permitted on a monthly basis only. Assuming this minimum payment requirement is met, annuitization must commence by no later than the month following your 75th birthday, or if later, the month following the 15th Contract Year. All annuitizations must commence by age 90.

After the first Contract Year, You may request, but not more than once each Contract Year, a partial withdrawal of up to 10% of the Earned Bonus Account. The Cash Surrender Value remaining after the withdrawal must be at least $5,000. A retroactive surrender charge will apply to any such withdrawals that occur within 12 months of a full surrender.

You may also request a partial surrender of a portion of the Cash Surrender Value at any time before the Annuity Date. The amount requested must be at least $1,000 and the amount remaining after the surrender must be at least $1,000.

Loans are not available under this annuity contract.

You may request a total surrender of your contract at any time before the Annuity Date for its Cash Surrender Value.

We will deduct a maintenance fee of $45 from the Bonus Account and the Cash Surrender Value at the end of each Contract Year after the first, and upon surrender of the contract after the first Contract Year, unless the Bonus Account at the end of such Contract Year or at the time of surrender is $5,000 or more. The maintenance fee ends upon annuitization of the contract.

In the event You or the Annuitant dies prior to the Annuity Date, We will pay to your Beneficiary the Cash Surrender Value in a lump sum; or the Earned Bonus Account may be applied under an appropriate annuity option.

You will receive a statement, at least once each Contract Year, which will reflect the current status of Your contract. Statements will be sent until Annuity Payments begin.

Contract values do not reflect the impact of any Federal and/or State Taxes. All payments, including partial withdrawals or surrenders, may be taxable events, in which case you may be subject to tax on amounts withdrawn from the contract.

We recommend that You and/or Your Beneficiary consult with a tax advisor as to payments and all other benefits under this contract.

This disclosure statement is only a summary of some of the provisions of Your contract. A full description of the exact terms and conditions of coverage is provided in the contract.

If You have any questions about Your annuity,
please contact Your CalFarm agent.

This Disclosure Statement is applicable to Single Premium Annuity Contract, LIFE 13780.

**CalFarm** Life Insurance Company

| ANNUITY TYPE | | MODE OF PAYMENT (TIMES DURING 12-MO. PERIOD) | MONTHS TO BE EXCLUDED (CIRCLE EXCLUSIONS) | SOURCE OF FUNDS |
|---|---|---|---|---|
| ☐ Asset Protector I | ☐ FLEX/SP-I | ☐ 10 | J F M A M J | ☐ Qualified |
| ☒ Asset Protector II | ☐ SP-II | ☐ 12 | J A S O N D | Type ______ |
| ☐ Accessible-1 | ☐ SP-III R | ☐ Other______ | | ☒ Non Qualified |
| ☐ Accessible-2 | ☐ Other______ | | | |

| MODEL PAYMENT AMOUNT | ANTICIPATED ANNUAL PAYMENT | ANTICIPATED 1ST SALARY RED DATE | SINGLE PREMIUM DEPOSIT |
|---|---|---|---|
| | | | 59,165 |

| ANNUITANT'S NAME (FIRST, MIDDLE, LAST) | SOCIAL SECURITY NO. | BIRTH DATE (M/D/Y) | SEX |
|---|---|---|---|
| ARTHUR F. BUHS | | | M |

MAILING ADDRESS OF ANNUITANT (NUMBER & STREET, CITY, STATE, ZIP)

R. MILLBRAE, CA 94030

| ANNUITANT'S HOME PHONE NO. | EMPLOYMENT DATE | ANNUITANT'S ANNUAL SALARY | EMPLOYEE NO. | EMPLOYER TAX I.D. NO. |
|---|---|---|---|---|
| | / | $ / | If Applicable / | If Applicable / |

EMPLOYER—NAME & ADDRESS (NUMBER & STREET P.O. BOX, CITY, STATE, ZIP)

OWNER—NAME & ADDRESS (LEAVE BLANK IF SAME AS ANNUITANT) — OWNER TAX I.D. NO.

| BENEFICIARY (PRIMARY)—NAME (FIRST, MIDDLE, LAST) | RELATIONSHIP TO ANNUITANT |
|---|---|
| THE BUHS FAMILY TRUST d. 1-9-97 | LIVING TRUST |

| BENEFICIARY (SECONDARY)—NAME (FIRST, MIDDLE, LAST) | RELATIONSHIP TO ANNUITANT |
|---|---|
| SAme | |

| CASH WITH APPLICATION | SPECIAL REMARKS |
|---|---|
| AMOUNT RECEIVED ⊖ | Anticipated 1035 transfer amount $59,165 |

**REPLACEMENT**

Will this contract replace any life insurance policy or annuity contract with this or any other company? ☒ Yes ☐ No If "Yes", include appropriate replacement forms application.

Name of Company Capitol Life Policy/Contract Cert # Policy #

To the best of my knowledge and belief, the statements and answers in this application are true and complete. I agree they shall be the basis for any annuity issued as a result of this application. I certify that the Social Security and Tax Identification Number(s) for the Annuitant and Owner, if applicable, are correctly stated above. I understand that: (i) my Annuity Date will be at my age 75 or the 10th contract anniversary, whichever is later, unless I elect otherwise as allowed under the contract; (ii) if for any reason I am not satisfied with the contract, I may return the contract within 30 days after the contract is delivered, and CalFarm Life will promptly refund to me the amount of money submitted with this application, if any, as shown in the Cash With Application box; and (iii) upon my request you will send me, within a reasonable amount of time, factual information about the benefits and provisions of this annuity contract. WWA

Arthur F. Buhs
Signature of Annuitant

Signature of Owner

Robin G. Noe
Signature of Agent

03784
Agent Number

ROBIN G. NOE
Agent Name (Please print)

Millbrae CA
Signed at City / State

4-16-97
Date

Agency Name

AGENT: If "No", has been checked in the "Replacement" section, I hereby state that to the best of my knowledge and belief, this annuity will not replace any life insurance policy or annuity contract with any company.

Signature of Agent

LIFE 13206 [Rev. 3/96]

REDACTED

CalFarm Life
Insurance Company
1 SunAmerica Center
Century City
Los Angeles, CA 90067-6022

Mailing Address:
P.O.Box 54299
Los Angeles, CA 90054-0299

CalFarm Life
A SunAmerica Company

## ASSIGNMENT OF OWNERSHIP/1035 POLICY EXCHANGE

**DO NOT USE HIGHLIGHTER.** Please print or type.

**A. SURRENDERING COMPANY INFORMATION**

Security First Group
THE CAPITOL Life Ins. Co.
CURRENT TRUSTEE/CUSTODIAN/INSURANCE COMPANY

800 678-4535
TELEPHONE NUMBER

P.O. Box 92193—M.S. 278 Los Angeles CA 90009
SURRENDING COMPANY ADDRESS CITY STATE ZIP CODE

ARTHUR F. BUHS
POLICYOWNER OR ACCOUNT OWNER'S NAME

ANNUITANT'S LAST NAME IF DIFFERENT FROM OWNER FIRST INITIAL

**B. POLICY INFORMATION**

Policy #
Contract#
CONTRACT/POLI
Cert. # 7
CONTRACT/POLICY/ACCOUNT NUMBER

The contract is: ☒ ENCLOSED
☐ LOST/DESTROYED (I certify that the policy is lost or destroyed. In addition, I certify that the policy has not been assigned or pledged as collateral.)

Dear Sir/Madam:

I (we) hereby assign, convey, and transfer to CalFarm Life Insurance Company ("CalFarm Life"), all of my (our) rights, ownership, title, and interest in the referenced policy(ies) subject to the following conditions:

1. AUTHORITY TO CASH SURRENDER - CalFarm Life is authorized to surrender the referenced policy(ies) and to receive all cash payable as a result of such surrender. I (we) understand that upon CalFarm Life's receipt of the surrender and/or other values, such values will be applied to and be considered part of the purchase payment of a new policy issued by CalFarm Life.

2. BENEFICIARY DESIGNATION - CalFarm Life is appointed as the sole beneficiary under the referenced policy(ies) and is entitled to receive all proceeds otherwise payable to the beneficiary thereof. As beneficiary, CalFarm Life will retain any proceeds received in order to pay the entire premium for the new policy applied for by me (us) from CalFarm Life.

3. POWER OF ATTORNEY - CalFarm Life is appointed as my (our) attorney to accomplish all actions necessary to surrender the referenced policy(ies) and to make an exchange intended to qualify under IRC § 1035. CalFarm Life's authority under this power includes, but is not limited to: (1) surrendering; (2) obtaining information; and (3) receiving death proceeds for the policy(ies).

I (we) understand that before this Assignment can be exercised by CalFarm Life, it must approve the issue of the new policy applied for. If said policy is not issued, this Assignment will be revoked. I (we) further understand that upon approval of the application for a new policy, CalFarm Life will surrender the referenced policy(ies) for the cash and other values.

I (we) expressly represent and warrant that no other person, firm, or corporation has any interest in the referenced policy(ies). I (we) further represent and agree that CalFarm Life is furnishing this form and is participating in this transaction at my (our) specific request as an accommodation and that CalFarm Life, nor any of its representatives, has made no representations concerning tax treatment under IRC § 1035 or otherwise, or assumes any responsibility or liability for tax treatment pertaining to this transaction.

Signed this 16 day of Apr, 1997.

[signature] OWNER(S) Arthur F Buhs

Witness

LIFE 13507A [Rev. 3/96]

REDACTED

Insurance Company
1 SunAmerica Center
Century City
Los Angeles, CA 90067-6022

P.O.Box 54299
Los Angeles, CA 90054-0299

CalFarm Life
A SunAmerica Company

# NOTICE REGARDING REPLACEMENT

## Replacing Your Life Insurance Policy or Annuity Contract?

Are you thinking about buying a new life insurance policy or annuity contract and discontinuing or changing an existing one? If you are, your decision could be a good one - or a mistake. You will not know for sure unless you make a careful comparison of your existing benefits and the proposed benefits.

Make sure you understand the facts. You should ask the company or agent that sold you your existing life insurance policy or annuity contract to give you information about it. Hear both sides before you decide. This way you can be sure you are making a decision that is in your best interest.

We are required by law to notify your existing company that you may be replacing their life insurance policy or annuity contract.

### Existing Life Insurance and/or Annuities Which May be Replaced

| Full Name of Insurance Company, Including Home Office Location | Policy or Contract Number* | Insured's Name | Est. Amount of Funds to be Transferred |
|---|---|---|---|
| Security First Group | | Arthur F. Buhs | $ 59,165. |
| The Capitol Life Ins. Co | Policy# | | $ |
| P.O. Box 92193-MS 278 | | | $ |
| Los Angeles, CA 90009 | Certif # | | $ |

*If a number has not been assigned by the existing insurer, indicate alternative identification, such as an application or receipt number.

**Applicant's Statement**
I hereby understand and acknowledge that I am making application for a new life insurance policy and/or annuity contract, and that such policy and/or contract, if issued by CalFarm Life Insurance Company, will replace my existing life insurance policies and/or annuity contracts listed above.

Arthur F Buhs
Applicant's Signature

Date: 4-16-97

ARTHUR F. BUHS
Applicant's Name (printed)

**Agent's Statement**
I hereby acknowledge that the application for a new life insurance policy and/or annuity contract being made by the above applicant will, if issued by CalFarm Life Insurance Company, constitute a replacement of the applicant's existing life insurance policies and/or annuity contracts listed above.

Robin G. Noe
Agent's Signature

Date: 4-16-97

ROBIN G. NOE
Agent's Name (printed)

Agent No.: 03784

LIFE 13432A [Rev. 3/96]

REDACTED

Exhibit A
Page 18 of 29

In confirmation and affirmation of the foregoing, the undersigned Trustors and Trustees hereby state that the assertion by any Trustee hereinabove designated that (a) he or she is acting alone or with another as a qualified Trustee, or (b) he or she is acting with full delegated powers from a Co-Trustee, shall be sufficient on its face, and no person shall be put to further inquiry into the right of such Trustee to so act.

Reproductions of this executed original (with reproduced signatures) shall be deemed to be original counterparts of this Certificate and Abstract.

**IN WITNESS WHEREOF**, the parties execute this Trust intending that it be effective on the Effective Date and at the Effective Place of Execution.

Transferror - Trustor

Transferee - Trustee

Transferror - Trustor

Transferee - Trustee

State of California )
)
County of San Mateo )

On, [illegible], before me, personally appeared Arthur F. Buhs and Beverly J. Buhs, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacities, and that by his/her/their signature(s) on the instrument the person(s), or entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

1-15-2001
Notary Expiration Date

Notary Public

TOBY STROBER
Comm. #1122401
NOTARY PUBLIC CALIFORNIA
ORANGE COUNTY
Comm Exp Jan. 15, 2001

SunAmerica Financial, Inc.
1 SunAmerica Center
Century City
Los Angeles CA 90067-6022

*Mailing Address*
P.O. Box 54299
Los Angeles CA 90054-0299

CFSH
CORO
C429703233

SunAmerica Financial

May 16, 1997

Arthur F. Buhs

RE Non-Qualified Single Premium Deferred Annuity Number

Dear Mr. Buhs:

On May 14, 1997, we received a payment of $59,304.15 from The Capitol Life Insurance Company. This amount plus your 9% premium bonus was applied to your new annuity contract effective May 14, 1997. The premium bonus is earned on a pro rata basis during the 9 years after your policy is issued and before an annuitization option is elected.

For every year you keep your contract before annuitization (up to 9 years), you earn 1/9th of the 9% premium bonus along with its interest. The interest rate credited to the bonus account is currently 6.75% and is guaranteed for 12 months from the date of deposit. The interest rate credited to the cash value account is currently 5.25% and is also guaranteed for 12 months from the date of deposit.

Your new annuity contract is enclosed. Please take a moment to review it carefully. If you have questions, please contact your agent. You may also call our customer service department at (800) 435-7078.

Thank you for placing your trust in CalFarm Life Insurance Company.

Sincerely,

Andria Michiulis
Financial Services Representative
CalFarm Life Insurance

cc: Robin G. Noe 03784 08809

February 5, 2003

Beverly Buh
[illegible]
Millbrae, CA 94030

Re: SunAmerica Life Insurance Company
Policy Number:
Deceased Arthur Buhs

Dear Mrs. Buhs:

We are sorry to learn of the death of your husband, **Arthur Buhs**. Please accept our sincere condolences on your recent loss. Our records list **"The Buhs Family Trust"** as the beneficiary of the above-referenced policy. The trust may take a lump sum settlement.

*We recommend you consult a tax professional as to the tax consequences of this benefit. **This contract was issued after 1/18/85. Lump sum distributions must be made within 5 years of the date of death and the Contract does not allow for partial distributions.*

To finalize this as a death claim, please have the trustee(s) complete the enclosed Death Claim form according to the general instructions for the method chosen listing the **trust** as the beneficiary in section "B" **and be sure to use the proper Tax Identification or Deceased Social Security number** as well.

The completed form should be returned with the original policy, ***certified*** Death Certificate **listing the cause of death and a <u>complete copy of the trust with any and all amendments since the date of the trust</u>**.

If you have any questions or require further assistance, please contact our customer service representatives, available Monday through Friday, 8:00AM to 5:00PM Central Time, at (888) 333-2349 X8090. We appreciate this opportunity to serve you.

Sincerely,

Brandy Phillips

Brandy Phillips, Claims Analyst
SunAmerica Life Insurance Company

# DEATH CLAIM

**A. DECEASED'S INFORMATION**

Buhs — DECEASED'S LAST NAME
Arthur — FIRST NAME
F — MIDDLE INITIAL

Dr. Millbrae — CITY
CA — STATE
94030 — ZIP

MO. 12 DAY 11 YR. 02 — DECEASED'S DATE OF DEATH

DECEASED'S DATE OF BIRTH

DECEASED SOCIAL SECURITY NUMBER

**B. BENEFICIARY'S INFORMATION**

Each Beneficiary must complete a separate form.

The Buhs Living Trust — BENEFICIARY'S LAST NAME — FIRST NAME — MIDDLE INITIAL

Dr. Millbrae — CITY
CA — STATE
94030 — ZIP

BENEFICIARY'S TELEPHONE NUMBER

Trust — RELATIONSHIP TO DECEASED

Dated 01-09-1997 — MO. DAY YR. — BENEFICIARY'S DATE OF BIRTH

☐ M ☐ F — SEX OF BENEFICIARY

BENEFICIARY'S SOCIAL SECURITY NUMBER

**C. CONTRACT INFORMATION**

RECEIVED
ANNUITY POLICY SERVICE
JUN 2 2003

Please check the appropriate box.
Issuing Company:
☐ Anchor National Life Insurance Company
☒ SunAmerica Life Insurance Company
☐ The Central National Life Insurance Company Of Omaha
☐ John Alden Life Insurance Company

CONTRACT NUMBER

CONTRACT NUMBER

**D. POSSESSION OF CONTRACT**

I hereby certify that, to the best of my knowledge, the contract has not been assigned or pledged as collateral and that the contract: (Select one)

☐ is enclosed.
☐ is not in my possession and I am unaware of its whereabouts.

**E. SPOUSAL CONTINUATION**

☐ By this statement, I request the contract continue in my name. I am the listed Beneficiary and spouse at the time of the deceased's death. I understand I will be the new owner and annuitant on the contract. I agree that I will be subject to all contractual provisions which may include penalties for withdrawal or surrender. When selecting this option, new beneficiaries may be necessary. Please submit a completed "Change of Beneficiary" form (SA-2224POS).

It is not necessary to return original contract if this option is selected.

**F. BENEFIT PAYMENT SELECTION**

You may elect to either (1) take a lump sum distribution; or (2) annuitize the contract and receive periodic income payments under one of the income options described on page 2. If you wish to annuitize the contract, you must begin receiving income payments prior to the first anniversary of the date of death. However, if the contract is structured as part of a Qualified plan or an IRA, you have until December 31 following the first anniversary of the date of death to begin receiving income payments.

1. **LUMP SUM DISTRIBUTION**
For payment in a form other than an income option, please check the box below.

☒ Lump sum payment to Beneficiary.

**Notice and Election for Lump Sum Death Benefits** – The taxable portion of this withdrawal will be subject to 10% Federal tax withholding unless you elect not to have withholding apply. You may elect not to have tax withheld from your distribution by checking Box #1 below, signing and dating the Death Claim Form, and returning it to us prior to the date the lump sum distribution is paid to you. (However, we must have your correct social security number in order for you to elect out of withholding.) If you do not check Box #1 below, 10% Federal income tax will be withheld from the taxable portion of your withdrawal. You may also elect to have a flat dollar amount withheld in addition to the 10% withholding amount by checking Box #2 below, and filling in the additional amount. Your distribution may also be subject to state tax withholding requirements.

(OVER)

SA-2220POS (10/99)

SCANNED: 2003-06-03

REDACTED

SCANNED: 2003-06-03

**F. BENEFIT PAYMENT SELECTION (CONT.)**

If you elect not to have withholding apply to your withdrawal, or if you do not have enough Federal income tax withheld from your withdrawal, you may be responsible for payment of estimated tax. You may incur penalties under the estimated tax rules if your withholding and estimated tax payments are not sufficient.

**Tax Withholding Election For Lump Sum Distributions** – Even if you elect not to have Federal income tax withheld, you are liable for payment of Federal income tax on the taxable portion of your withdrawal. You also may be subject to tax penalties under the estimated tax payment rules if your payments of estimated tax and withholding, if any, are not adequate. **(Please check only one box.)**

1. ☒ I do not want to have Federal income tax withheld from my withdrawal.
2. ☐ Please withhold ________________ dollars / percent (circle one) in addition to the 10% taxes required to be withheld from my withdrawal.

**Lump Sum Distribution Payee Information** (if other than Beneficiary)

NAME

ACCOUNT NUMBER

ADDRESS CITY STATE ZIP

**2. INCOME OPTION SELECTION**

For life income options and installment refunds, a certified copy of Beneficiary's birth certificate must be submitted with this form. PLEASE NOTE: The life only income option and the joint and survivor income options without a period certain offer higher income payments than income options with a guaranteed period but do not guarantee a minimum number of payments; payments stop upon your death (or the death of the joint annuitant.)

INCOME OPTIONS ARE DESCRIBED ON PAGE 2.

**INCOME OPTIONS**
(Joint Annuitants Must be Spouses)

- ☐ 5-30 Years Guaranteed
  ______ Years (number of years)
- ☐ Life Income Annuity
- ☐ Life Income with 10 Years Guaranteed
- ☐ Life Income with 20 Years Guaranteed
- ☐ Installment Refund*

* Not available for Variable Annuities.

- ☐ Joint and 100% Survivor Life Annuity
- ☐ Joint and 2/3 Survivor Life Annuity
- ☐ Joint and 50% Survivor Life Annuity (pension)
- ☐ Joint and 100% Survivor Life Annuity with 10 Years Guaranteed
- ☐ Joint and 100% Survivor Life Annuity with 20 Years Guaranteed

JOINT ANNUITANT'S LAST NAME FIRST NAME M.I.

MO. DAY YR.
JOINT ANNUITANT'S DATE OF BIRTH

☐ M ☐ F
SEX OF JOINT ANNUITANT

JOINT ANNUITANT'S SOCIAL SECURITY NUMBER

**PLEASE SELECT PAYMENT FREQUENCY**

☐ a. Fixed Annuities: (Choose one) ☐ Monthly ☐ Quarterly ☐ Semi-annually ☐ Annually
☐ b. Variable Annuities: Only monthly payments are available for these products.



(CONTINUE ON NEXT PAGE)

SCANNED: 2003-06-03

**F. BENEFIT PAYMENT SELECTION (CONT.)**

**Notice and Election for Periodic Income Payments** – The taxable portion of your periodic income payments will be subject to Federal tax withholding unless you elect not to have withholding apply. Withholding will apply by treating each payment as a payment of wages. You may elect not to have tax withheld from your income payments by checking Box #1 below, signing and dating this form, and returning it to us. (However, we must have your correct social security number in order for you to elect out of withholding.) If you do not check Box #1 below, Federal income tax will be withheld from your income payments using IRS wage withholding tables, based on the marital status and number of withholding allowances you have claimed in Box #2 below. If you do not elect a marital status and number of withholding allowances, we are required to withhold tax by treating you as a married individual claiming three (3) withholding allowances until you file an election to request withholding on a different basis. However, if we do not have your correct social security number, we must withhold tax by treating you as a single individual claiming -0- withholding. You may also elect to have a flat dollar amount withheld in addition to the amount otherwise required to be withheld by checking Box #2 below, and filling in the additional amount.

Your tax withholding election will remain in effect and apply to all future income payments you receive under this contract until you change or revoke it. You may make and change your withholding election at any time and as often as you wish with regard to future payments in this series by contacting us to file a new election. Any election, or change or revocation of a previously-filed election will be effective for payments made no later than 30-days after it is received by us. Your distribution may also be subject to state tax withholding requirements.

If you elect not to have withholding apply to your income payments, or if you do not have enough Federal income tax withheld from your payments, you may be responsible for payment of estimated tax. You may incur penalties under the estimated tax rules if your withholding and estimated tax payments are not sufficient.

**Tax Withholding Election For Periodic Income Payments** – Even if you elect not to have Federal income tax withheld, you are liable for payment of Federal income tax on the taxable portion of your income payments. You also may be subject to tax penalties under the estimated tax payment rules if your payments of estimated tax and withholding, if any, are not adequate. **(Please check only one box.)**

1. ☐ I do not want to have Federal income tax withheld from my periodic income payments.
2. ☐ I want Federal income taxes withheld as indicate below. (Unless you elect otherwise below, we are required to treat you as a married person claiming three (3) withholding allowances.)

Withhold taxes based on:

__________________ (Enter number) Number of withholding allowances

Marital status: (Check one)
☐ Single ☐ Married ☐ Married, but withhold at higher single rate

☐ Please withhold the following amount $____________ from each income payment in addition to the amount otherwise required to be withheld.

Please indicate a payee
☐ Please send my income payments to the address listed in Section B.
☐ Please direct deposit my income payments to my bank account. **A voided check is attached.**

____________________________________
NAME OF FINANCIAL INSTITUTION

____________________________________
BANK/ROUTING NUMBER ACCOUNT NUMBER

Please indicate one: ☐ Checking (Attach voided check) ☐ Savings ☐ Other (Attach voided check)

____________________________________
ADDRESS OF FINANCIAL INSTITUTION

____________________________________
FINANCIAL INSTITUTION PHONE NUMBER

If you choose direct deposit, your first distribution may be in the form of a physical check sent directly to your address of record.

(OVER)

SCANNED: 2003-06-03

## G. SIGNATURES

THE FOLLOWING FRAUD WARNING APPLIES TO CLAIMS FILED IN ALL STATES EXCEPT OREGON, VIRGINIA AND THE STATES NOTED BELOW.

FRAUD WARNING

ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT MAY BE GUILTY OF A CRIME AND MAY BE SUBJECT TO FINES AND/OR CONFINEMENT IN PRISON.

ALASKA: A PERSON WHO KNOWINGLY AND WITH INTENT TO INJURE, DEFRAUD, OR DECEIVE AN INSURANCE COMPANY FILES A CLAIM CONTAINING FALSE, INCOMPLETE OR MISLEADING INFORMATION MAY BE PROSECUTED UNDER STATE LAW.

CALIFORNIA: FOR YOUR PROTECTION, CALIFORNIA LAW REQUIRES THE FOLLOWING TO APPEAR ON THIS FORM: ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR THE PAYMENT OF A LOSS IS GUILTY OF A CRIME AND MAY BE SUBJECT TO FINES AND CONFINEMENT IN STATE PRISON.

COLORADO: IT IS UNLAWFUL TO KNOWINGLY PROVIDE FALSE, INCOMPLETE, OR MISLEADING FACTS OR INFORMATION TO AN INSURANCE COMPANY FOR THE PURPOSE OF DEFRAUDING OR ATTEMPTING TO DEFRAUD THE COMPANY. PENALTIES MAY INCLUDE IMPRISONMENT, FINES, DENIAL OF INSURANCE, AND CIVIL DAMAGES. ANY INSURANCE COMPANY OR AGENT OF AN INSURANCE COMPANY WHO KNOWINGLY PROVIDES FALSE, INCOMPLETE, OR MISLEADING FACTS OR INFORMATION TO A POLICYHOLDER OR CLAIMANT FOR THE PURPOSE OF DEFRAUDING OR ATTEMPTING TO DEFRAUD THE POLICYHOLDER OR CLAIMANT WITH REGARD TO A SETTLEMENT OR AWARD PAYABLE FROM INSURANCE PROCEEDS SHALL BE REPORTED TO THE COLORADO DIVISION OF INSURANCE WITHIN THE DEPARTMENT OF REGULATORY AGENCIES.

DELAWARE, IDAHO, INDIANA AND OKLAHOMA: ANY PERSON WHO KNOWINGLY, AND WITH INTENT TO INJURE, DEFRAUD OR DECEIVE ANY INSURER, FILES A STATEMENT OF CLAIM CONTAINING ANY FALSE, INCOMPLETE OR MISLEADING INFORMATION IS GUILTY OF A FELONY.

DISTRICT OF COLUMBIA: IT IS A CRIME TO PROVIDE FALSE OR MISLEADING INFORMATION TO AN INSURER FOR THE PURPOSE OF DEFRAUDING THE INSURER OR ANY OTHER PERSON. PENALTIES INCLUDE IMPRISONMENT AND/OR FINES. IN ADDITION, AN INSURER MAY DENY INSURANCE BENEFITS IF FALSE INFORMATION MATERIALLY RELATED TO A CLAIM WAS PROVIDED BY THE APPLICANT.

FLORIDA: ANY PERSON WHO KNOWINGLY AND WITH INTENT TO INJURE, DEFRAUD OR DECEIVE ANY INSURER, FILES A STATEMENT OF CLAIM OR AN APPLICATION CONTAINING ANY FALSE, INCOMPLETE, OR MISLEADING INFORMATION IS GUILTY OF A FELONY IN THE THIRD DEGREE.

KENTUCKY: ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES A STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION OR CONCEALS, FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME.

MINNESOTA: A PERSON WHO FILES A CLAIM WITH INTENT TO DEFRAUD OR HELPS COMMIT A FRAUD AGAINST AN INSURER IS GUILTY OF A CRIME.

NEW HAMPSHIRE: ANY PERSON WHO, WITH A PURPOSE TO INJURE, DEFRAUD OR DECEIVE ANY INSURANCE COMPANY, FILES A STATEMENT OF CLAIM CONTAINING ANY FALSE, INCOMPLETE OR MISLEADING INFORMATION IS SUBJECT TO PROSECUTION AND PUNISHMENT FOR INSURANCE FRAUD, AS PROVIDED IN RSA 638:20.

NEW JERSEY: ANY PERSON WHO KNOWINGLY FILES A STATEMENT OF CLAIM CONTAINING ANY FALSE OR MISLEADING INFORMATION IS SUBJECT TO CRIMINAL AND CIVIL PENALTIES.

OHIO: ANY PERSON WHO, WITH INTENT TO DEFRAUD OR KNOWING THAT HE IS FACILITATING A FRAUD AGAINST AN INSURER, SUBMITS AN APPLICATION OR FILES A CLAIM CONTAINING A FALSE OR DECEPTIVE STATEMENT IS GUILTY OF INSURANCE FRAUD.

PENNSYLVANIA: ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION OR CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME AND SUBJECTS SUCH PERSON TO CRIMINAL AND CIVIL PENALTIES.

TEXAS: ANY PERSON WHO, WITH INTENT TO DEFRAUD AND KNOWING THAT HE IS FACILITATING A FRAUD AGAINST AN INSURER, FILES A CLAIM CONTAINING A FALSE OR DECEPTIVE STATEMENT, COMMITS INSURANCE FRAUD WHICH IS A CRIME, AND IS SUBJECT TO CIVIL AND CRIMINAL PENALTIES.

WASHINGTON: ANY PERSON WHO MAKES, WITH INTENT TO DEFRAUD OR KNOWING THAT HE IS FACILITATING A FRAUD AGAINST AN INSURER, A FALSE OR DECEPTIVE STATEMENT ON AN APPLICATION OR FILES A FRAUDULENT CLAIM MAY BE GUILTY OF INSURANCE FRAUD.

Under penalty of perjury, the undersigned certifies that all information provided in this form is complete and true.

Beverly J. Becks, Trustee — May 15, 2003
BENEFICIARY'S SIGNATURE — DATE

[signature] — 5-15-2003
WITNESS' SIGNATURE — DATE

 RETURN PAGES 3-6 OF THIS FORM TO THE COMPANY ALONG WITH A CERTIFIED COPY OF THE DEATH CERTIFICATE.

Sun America
Life Insurance Company

Administrator for:
John Alden
Life Insurance Company

Mailing Address:
P.O. Box 9006
Amarillo, TX 79105

Overnight Address:
205 East 10th Avenue
Amarillo, TX 79101

SunAmerica
A SunAmerica Company

Anchor National
Life Insurance Company

Administrator for:
The Central National
Life Insurance Company of Omaha

# DEATH CLAIM (For Non-Qualified and IRA Annuities)

SA-2220POS (10/99)

**DO NOT USE HIGHLIGHTER.**

**Please read the following instructions carefully. Any omissions may cause a delay in the processing of your claim.**

SCANNED: 2003-06-03

## GENERAL INSTRUCTIONS

1. **THE DEATH CLAIM FORM (PAGES 3-6) MUST BE COMPLETED BY THE PERSON OR PERSONS TO WHOM THE BENEFIT IS PAYABLE. PLEASE USE A SEPARATE FORM FOR EACH BENEFICIARY.**

2. **A CERTIFIED DEATH CERTIFICATE MUST BE INCLUDED WITH ALL CLAIMS.**

3. **UNTIL OUR RECEIPT OF THE DEATH CERTIFICATE AND THIS FORM, FUNDS HELD IN VARIABLE ANNUITY CONTRACTS (AND THEREFORE THE BENEFIT PAYABLE) MAY BE SUBJECT TO MARKET GAIN OR LOSS. IF ADDITIONAL REQUIREMENTS BECOME NECESSARY, THE DEATH CLAIM WILL BE PAID AT THE CURRENT PRICE WHEN ALL REQUIRED DOCUMENTS ARE RECEIVED BY US.**

4. **IF WE PROCESS THE CLAIM MORE THAN 30 DAYS AFTER WE RECEIVE THE BENEFICIARY'S DEATH CLAIM PAPERWORK IN GOOD ORDER, WE WILL, BEGINNING ON THE 31ST DAY, CREDIT THE DEATH BENEFIT AMOUNT WITH POST-SETTLEMENT INTEREST AT AN ANNUAL RATE OF 4%, UNLESS OTHERWISE REQUIRED BY STATE LAW.**

5. **WE RECOMMEND YOU CONSULT YOUR TAX PROFESSIONAL ABOUT THE TAX CONSEQUENCES OF THIS BENEFIT.**

6. ***IF THE CONTRACT HAS BEEN ANNUITIZED** (paying periodic income payments), complete Sections A through D, the tax withholding and payee information under Section F and sign and date under Section G. If the contract is a variable annuity, you may be entitled to redeem the contract value in the form of a lump sum distribution payment. The amount available to you upon redemption would be the discounted present value of the remaining guaranteed income payments. Please contact our customer service representative to inquire as to whether this option is available to you.
   ***IF THE CONTRACT IS IN DEFERRED STATUS** (not paying periodic income payments) and you are not the spouse of the deceased, complete Sections A-D, F and G.
   ***IF THE CONTRACT IS DEFERRED AND YOU ARE THE SPOUSE OF THE DECEASED,** you may continue to defer the contract by completing Sections A through C, E and G. Alternatively, you may elect to take a lump sum distribution or periodic income payments by completing Sections A-D, F and G.

7. **WHEN A BENEFIT IS PAYABLE TO:**

   **AN INDIVIDUAL BENEFICIARY** or Beneficiaries, the Death Claim form must be completed by the Beneficiary/Beneficiaries. (If any Beneficiary has died, the benefit may become otherwise payable and a certified death certificate of such Beneficiary is required.)

   **AN ESTATE,** or executors or administrators of an estate, the Death Claim form must be completed by the estate's executor or administrator and a certified, court-approved appointment must be furnished.

   **A MINOR,** the Death Claim form must be completed by a guardian of the estate of the minor (not necessarily the parent). A certified, court-approved appointment must be furnished.

   **AN ASSIGNEE** (recipient of collateral assignment), the Death Claim form must be completed by the assignee (for financial institutions, a qualified officer must sign).

   **CHILDREN OR MEMBER OF A CLASS** (to be used when Beneficiaries have not been identified by name), a sword representation and indemnification form must be furnished, giving the names and dates of birth of each child or member of the class. (If any of the Beneficiaries have died, the benefit may become otherwise payable and a certified death certificate should be furnished.) The representation and indemnification form is available through the Company.

   **FUNERAL BENEFITS,** an itemized copy of the bill, made out to the person who is responsible for the funeral costs, must be submitted. If the entire proceeds are not claimed for funeral expenses, the Death Claim form must be completed by the Beneficiary for the balance of the benefit amount.

   **A TRUST,** the Death Claim form must be completed by the current Trustee(s), and a complete copy of the trust documents (including amendments), and all paperwork necessary to establish the current Trustee(s), must be furnished.

**INCOME OPTIONS**
(Not all income options are available for every contract. Please call our Annuity Service Center for available options.)

1. **INCOME FOR A SPECIFIED PERIOD (5-30 YEARS GUARANTEED):** Payments will be made throughout the specified period. If death of the annuitant occurs during this period, the remaining payments will continue to the designated beneficiary until the specified period has expired.

2. **LIFE INCOME ANNUITY*:** Payments are made for the lifetime of the annuitant. There are no provisions for any return of proceeds or payment continuation after death of the annuitant.

3. **LIFE INCOME WITH 10 OR 20 YEARS GUARANTEED*:** Payments will be made for the number of years elected, and for the remaining lifetime of the annuitant thereafter. If the annuitant dies during the period certain, payments will continue to the named beneficiary for the balance of the specified period.

4. **INSTALLMENT REFUND*:** Payments will be made for the lifetime of the annuitant. If the annuitant dies and total payments received by the payee are less than the contract annuitization value, payments will continue to the designated beneficiary until the total payments made by the company equal the contract value at the time it was annuitized. This option is not available for variable annuities.

5. **JOINT AND 100% SURVIVOR LIFE ANNUITY*:** Payments will be made for the joint lifetime of the annuitants and thereafter for the remaining lifetime of the survivor. All payments will cease upon the second death.

6. **JOINT AND 2/3 SURVIVOR LIFE ANNUITY*:** Payments will be made for the joint lifetime of the annuitants. After the first death, two-thirds of the payments will continue to be made during the lifetime of the survivor. All payments will cease upon the second death.

7. **JOINT AND 50% SURVIVOR LIFE ANNUITY*:** Payments will be made for the joint lifetime of the annuitants. After the first death, one-half of the payment will continue to be made during the lifetime of the survivor. All payments will cease upon the second death.

8. **JOINT AND 50% SURVIVOR LIFE ANNUITY (PENSION)*:** This option is only available for pensions. If the primary annuitant dies first, the secondary annuitant will receive 50% of the payment. If the secondary annuitant dies first, the primary annuitant will continue to receive 100% of the payment (Please note: Unisex mortality tables are not used for this option).

9. **JOINT AND SURVIVOR LIFE ANNUITY WITH 10 OR 20 YEARS GUARANTEED*:** Payments will be made during the joint lifetime of the annuitants and thereafter as long as one is alive. The payments will cease upon the second death unless the second death occurs during the first ten or twenty years, whichever is applicable. If this occurs, the payments will continue to be made to the designated beneficiary for the remainder of the ten or twenty-year period.

- **NOTE: IF A LIFE INCOME OPTION IS SELECTED, A CERTIFIED COPY OF THE BENEFICIARY'S BIRTH CERTIFICATE MUST BE SUBMITTED.**

SCANNED: 2003-06-03

AIG SunAmerica

SUNAMERICA LIFE INSURANCE COMPANY
1 SUNAMERICA CENTER, CENTURY CITY
LOS ANGELES, CA 90067-6022

**Check**

| | |
|---|---|
| Payment Document Date | June 11, 2003 |
| Reference Account No. | VANT |
| Policy Number | |
| Annuitant | BUHS ARTHUR F |
| Agent I.D | 03784 |

THE BUHS LIVING TRUST
BEVERLY BUHS,TRUSTEE
375 MILLWOOD DRIVE
MILLBRAE CA 94030

| Internal Doc. | Description | Amount |
|---|---|---|
| | DEATH BENEFIT | 90,313.53<br>4,127.29 -<br>15,271.83 - |
| Amount Payable | | 70,914.41 |

SCANNED: 2003-06-19

THE BACK OF THIS DOCUMENT HAS AN ARTIFICIAL WATERMARK - VERIFY ITS PRESENCE

AIG SunAmerica

SUNAMERICA LIFE INSURANCE COMPANY
1 SUNAMERICA CENTER, CENTURY CITY
LOS ANGELES, CA 90067-6022

BankOne, NA - 0710
Chicago, Illinois
Payable Through First USA Bank, NA

Check Number 62-28 / 311
09 35239

Date *June 11, 2003*
Not valid after 180 days from date

$********70,914.41*
Two signatures required if over $300,000.00

PAY
*** SEVENTY THOUSAND NINE HUNDRED FOURTEEN and 41/100 DOLLARS ***

To The Order Of
THE BUHS LIVING TRUST
BEVERLY BUHS,TRUSTEE
375 MILLWOOD DRIVE
MILLBRAE CA 94030

AUTHORIZED SIGNATURE

AUTHORIZED SIGNATURE

⑈1129354⑈ ⑆031100283⑆ 09 35239⑈

Exhibit A
Page 28 of 29

REDACTED

MRS ARTHUR F BUHS
) E
MILLBRAE, CA 94030
650-588-7772

September 21, 2004

ATTENTION: AIG Sun America Records Department:

Thank you for the 'CONTRACT' papers I received in yesterday's mail. I am NOT requesting 'contract papers'; my request is to receive the 'SUN AMERICA ANNUITY POLICY # hat I mailed to your company May 28, 2003.

I request SUN AMERICA ANNUITY POLICY # returned to me within 10 days.

Respectfully,

Mrs. Beverly J. Buhs

Mrs. Beverly J. Buhs
(wife of ARTHUR F. BUHS)

SCANNED: 2004-09-27

REDACTED