Apple Inc. v. Psystar Corporation
Doc. 2794 Att. 3

# EXHIBIT C

Dockets.Justia.com

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

--oOo--

NETWORK APPLIANCE, INC., A DELAWARE CORPORATION,

PLAINTIFF,

vs.

No. C 03-05665 MHP

BLUEARC CORPORATION, A DELAWARE CORPORATION,

DEFENDANT.

COPY

HIGHLY CONFIDENTIAL

VIDEOTAPED DEPOSITION OF

MARK E. NUSBAUM

Friday, April 8, 2005

WILKINS & ASSOCIATES
CERTIFIED SHORTHAND REPORTERS
(925) 674-1480

Reported By:
HOLLY MOOSE, CRR-RDR-CRP
**CSR NO. 6438**

P R O C E E D I N G S

THE VIDEOGRAPHER: Good morning. We're on the video record at 10:04 a.m. Today's date is April 8th, 2005. My name is Jason Butko. I'm your videographer, representing DMS Legal Video of San Mateo, California. Phone number is 1(888)338-4612.

We're located today at 525 Market Street in San Francisco, California. And this case is appearing before the U.S. District Court, Northern District of California in the case captioned "Network Appliance versus BlueArc Corporation," case number C 03-05665 MHP.

Our court reporter today is Holly Moose, representing Wilkins & Associates.

This is the beginning of tape number 1, Volume I of the deposition of Mark E. Nusbaum.

Would counsel please identify yourself and who you represent, starting with the questioning attorney.

MR. LIVORNESE: Yes. Don Livornese, representing Network Appliance.

MS. STANTON: Shana Stanton, representing BlueArc Corporation.

THE VIDEOGRAPHER: Can the court reporter please swear in the witness.

(Witness sworn).

THE VIDEOGRAPHER: You may proceed.

MARK E. NUSBAUM,
having been duly sworn,
was examined and testified as follows:

**EXAMINATION BY**

MR. LIVORNESE: Q. Good morning, Mr. Nusbaum.
A. Good morning, sir.
Q. Could you please spell your name for the record, please.
A. M-A-R-K, E-D-W-A-R-D, N-U-S-B-A-U-M.
Q. Okay. And with whom are you employed?
A. I'm employed by the intellectual property law firm of Nixon Vanderhye, PC, in Arlington, Virginia.
MR. LIVORNESE: I'm going to have the -- well, let me ask the court reporter, do you have your own exhibit stickers or ...
THE REPORTER: (Nods head).
MR. LIVORNESE: You do. Okay. I'd appreciate it if you could mark this as Exhibit 718.
(Plaintiff's Exhibit No. 718 marked for identification).
MR. LIVORNESE: Q. Have you seen this notice before?
A. I have not.
MR. LIVORNESE: Counsel, is the witness here pursuant to this notice of deposition?

MS. STANTON: Yes.

MR. LIVORNESE: That's all we have for the notice.

MS. STANTON: Mark this as Exhibit 719.

(Plaintiff's Exhibit No. 719 marked for identification).

MR. LIVORNESE: Q. Is this a copy of an expert report that you prepared in this case, Mr. Nusbaum?

A. Certainly appears to be.

Q. Did you prepare an expert report in this case?

A. I did indeed.

Q. Could you please look at Exhibit A of this exhibit. What is Exhibit A?

A. Exhibit A is a document entitled "Curriculum Vitae of Mark E. Nusbaum," and it is a document which summarizes my career, focusing on the Patent and Trademark Office.

Q. Is the information in Exhibit A current up through today?

A. It's -- it's current in the sense that it's -- to the best of my knowledge, it's accurate as of today.

Q. Okay. All right. Could you please describe your educational background after high school, please.

A. I received a Bachelor of Science degree with

honors from -- intellectual engineering with honors from the University of Maryland in 1969.

I received a juris doctor degree in 1974 from American University's Washington College of Law.

Q. I'm sorry, what year was that?

A. That was in 1974.

Q. Okay. And where did you work after you graduated?

A. I worked at the United States Patent and Trademark Office.

Q. Okay. Did you work at the Patent Office while you were in law school?

A. I worked from 8:30 to 5 and approximately three days a week went to law school from 6 to 10.

Q. Was that during the entire tenure of your law school career?

A. That's correct, from 19 -- from about 1970 to 1974.

Q. And how long did you work at the Patent Office? Until what year?

A. Until July of 1986.

Q. Where were you employed after July of 1986?

A. I began working for the law firm of Nixon Vanderhye, the firm where I currently work.

Q. And you've been there ever since?

expert, the Cheriton article describes,"
quote, "'providing control messages.'"

MS. STANTON: I'm going to object as asked and answered. I believe he's made it clear that he can't identify an instance where he wasn't -- he was not [sic] relying exclusively on the expert.

MR. LIVORNESE: Well, I think from his memory he can't, but that's the reason I want to have him go through each individual instance where he used it, because that may refresh his recollection.

THE WITNESS: I'm not relying exclusively on Dr. McKusick for that.

MR. LIVORNESE: Q. Looking at page 48, the first full paragraph begins,

"Relying on defendant's technical
expert, such control messages as are used
in the V kernel system."

A. I was not relying exclusively on Dr. McKusick for that either.

Q. You were relying on your own background as well?

A. In part.

Q. The same with respect to the next paragraph. The sentence begins,

"With respect to claimed," quote,

"'communication bus'" -- strike that.

Begins "With respect to the claimed communication" -- strike that.

"With respect to the claimed," quote, "'communication bus,'" close quote, "that provides for the interconnection of said processor units, relying on defendant's technical expert."

Do you see that?

A. Yes. And I was not relying exclusively on Dr. McKusick for this.

Q. Okay. I have the same question with respect to the last paragraph where you're talking about independent claim 7.

A. I was not relying exclusively on Dr. McKusick for that as well.

Q. Okay. Turning to page 50, the bottom partial paragraph. You say "relying in part on defendant's technical expert."

Is it your testimony that this was -- you were relying in part upon your own experience as well?

A. Yes.

Q. Okay. Turning to page 51, okay, bottom full paragraph, it begins,

"Relying on defendant's technical

expert, for example, the file server and
printer server peer-level facilities."
Do you see that?
A. Yes.
Q. Okay. Were you relying exclusively on defendant's technical expert?
A. I was not.
Q. Okay. And in the next sentence, it says,
"For example, relying on defendant's
technical expert, the operating system."
Do you see that?
A. Yes.
Q. Were you relying exclusively on defendant's technical expert?
A. I was not.
Q. Okay. If you turn to page 52, the last paragraph before it says "Other Testimony," do you see that? It begins,
"For the reasons set forth above,
relying on defendant's technical expert."
It may require you to look up above to see what was said.
A. I was not relying exclusively on Dr. McKusick.
Q. Okay. Are you a person of ordinary skill in the art to which the claims in the '037 patent are

directed?

A. I certainly have had many years in the Patent and Trademark Office and examining the technology to which the claims of the '037 patent are directed, and I was determined by the Patent and Trademark Office to have a master's degree level of understanding of the general computer system technological area and was a senior examiner in this art area. But I do not personally consider myself a person of ordinary skill in this art.

MR. LIVORNESE: Why don't we take a break.

MS. STANTON: Okay.

THE VIDEOGRAPHER: We're off the record at 11:50 a.m.

(Discussion off the record).

THE VIDEOGRAPHER: We're back on the record at 12:09 p.m. You may proceed.

MR. LIVORNESE: Q. I know you said this earlier, but could you tell me what your undergraduate degree was in.

A. Bachelor of Science in electrical engineering.

Q. Okay. Did you ever take any advanced courses in engineering past the bachelor degree level?

A. I took some in-house courses at the Patent and Trademark Office relating to computers and

microprocessor technology, but no formal graduate-level course.

Q. Did you ever obtain any type of master's degree in engineering?

A. I did not, other than receiving the recognition that I mentioned in the Patent and Trademark Office with respect to PTO determination that the technology that I examined require at least a master's degree in order to understand and that I had indeed mastered that technology.

Q. Have you ever taken any academic courses in computer science?

A. During my time period at the University of Maryland, I surely did, including at least one course that I recall on machine and assembly language programming.

Q. You don't have a bachelor's degree in computer science, though, do you?

A. I do not.

Q. Do you have any degrees in computer engineering?

A. The degree program that I went through with the University of Maryland was entitled Bachelor of Science degree in electrical engineering.

Computers were discussed, but the title of the

program was not formally computer engineering.

Q. Do you have a degree in computer software engineering?

A. I do not.

Q. Do you have any practical commercial -- let me ask it this way: Have you ever worked in industry?

MS. STANTON: Objection. Ambiguous.

THE WITNESS: I worked as -- in a consulting engineering firm as a summer employee during the time frame when I was at the University of Maryland. And then, as I testified, after graduating, I went directly to the Patent and Trademark Office.

MR. LIVORNESE: Q. Other than that, do you have any -- do you have any experience -- strike that.

Other than that, do you have any experience working in industry?

MS. STANTON: Objection. Asked and answered.

THE WITNESS: To the extent that my present job as a patent attorney can be characterized as working in industry, perhaps. But that's the extent of it.

MR. LIVORNESE: Q. Do you consider yourself a technical expert in the technology that's at issue in the '037 patent?

A. I consider myself an expert in examining the technology that's -- that's at issue, in light of my

many years in the Patent and Trademark Office examining computer system technology, the computer software that's inherent in those computer systems. But I do not consider myself a technical expert in the technology.

Q. Have you ever designed a network file system?

A. I have not.

Q. Have you ever implemented a network file system?

A. I have not.

Q. Have you ever done any troubleshooting on a network file system?

A. I have not.

Q. Have you ever tested a network file system?

A. I have not.

Q. Have you ever written any evaluations of network file systems?

A. I have not.

Q. Have you ever done any design or implementation of a kernel operating system?

A. I have not.

Q. Are you familiar with the ISO protocols?

A. I have heard of the ISO protocols. I've heard about ISO protocols in the context of the '037 patent.

Q. Have you ever designed or implemented any of these protocols?

CERTIFICATE OF REPORTER

I, HOLLY MOOSE, CSR No. 6438, Certified Shorthand Reporter, hereby certify that the witness in the foregoing deposition was by me duly sworn to tell the truth, the whole truth and nothing but the truth in the within-entitled cause;

That said deposition was taken down in shorthand by me, a disinterested person, at the time and place therein stated, and that the testimony of the said witness was thereafter reduced to typewriting, by computer, under my direction and supervision;

I further certify that I am not of counsel or attorney for either or any of the parties to the said deposition, nor in any way interested in the event of this cause, and that I am not related to any of the parties thereto.

DATED: April 15, 2005

Holly Moose

HOLLY MOOSE, CSR NO. 6438