United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

EASA BEGZAD,

Plaintiff,

v.

CITY OF HAYWARD, et al.,

Defendants.

NO. C03-2163 TEH

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR LEAVE TO AMEND AND DENYING PLAINTIFF'S MOTION TO DISQUALIFY COUNSEL

This matter came before the Court on Monday, April 18, 2005, on Plaintiff's motions to disqualify counsel and for leave to amend to file a third amended complaint. At the conclusion of the motion hearing, the Court issued an oral ruling that DENIED Plaintiff's motion to disqualify counsel and GRANTED IN PART and DENIED IN PART Plaintiff's motion for leave to amend. The Court further DENIED the request for attorneys' fees and GRANTED IN PART the request for other monetary sanctions, both of which were contained in Plaintiff's motion to disqualify counsel. Finally, the Court ORDERED the parties to meet and confer and file a stipulation regarding documents to be sealed to protect Plaintiff's privacy. This order further explains the Court's rulings.

**BACKGROUND**

This Court has elsewhere summarized the underlying facts of this case and need not repeat them here. These motions primarily concern the ex parte contacts made by the Hayward City Attorney's office with the paramedic who transported Begzad to the John George Psychiatric Pavilion on May 24, 2002, and two doctors who evaluated him there. When the officer defendants moved for summary judgment, they submitted declarations from Heather Clague and Milton Lorig, the two doctors who examined Begzad. Begzad objected to these declarations in part because he alleged that they violated the Health Insurance Portability and

Dockets.Justia.com

Accountability Act ("HIPAA").[1] The Court did not rule on these objections because it did not consider either of the disputed declarations in ruling on Defendants' motion. Defendants also obtained but did not submit to the Court a declaration from Amy Smith, an emergency medical technician who transported Begzad to the mental health facility and conducted a preliminary evaluation of Begzad. In addition, Randolph Hom of the Hayward City Attorney's office copied Clague, Lorig, and Smith on a letter he wrote to Begzad's counsel regarding deposition scheduling. Begzad contends that all of these contacts were improper and subject to sanctions. Begzad also seeks to amend his complaint to add causes of action related to these contacts and to make several other unrelated changes.

## DISCUSSION

### I. Motion to Disqualify Counsel and for Sanctions

#### A. Disclosure of Begzad's Social Security Number

First, Begzad seeks disqualification of Defendants' counsel because counsel violated Civil Local Rule 3-17, which governs privacy of information. Local Rule 3-17(a)(1) provides that, "[i]f an individual's social security number must be included in a pleading or other paper filed in the public file, only the last four digits of that number should be used." With their motion for summary judgment, Defendants filed documents that contained Begzad's social security number in full and therefore failed to comply with this rule.

Begzad cites no authority for the proposition that violation of a local rule such as this one should result in disqualification of counsel. Nor does Begzad provide any evidence that inclusion of the social security number was intentional. Defendants, on the other hand, declare that the disclosure was unintentional, and that the proper remedy is to seal the filed documents that contain Begzad's complete social security number. Interestingly, despite allegedly being concerned about his privacy, Begzad never asks in his papers that the documents be sealed and,

---

[1]Begzad's counsel incorrectly refers to HIPAA as the Health Insurance Portability and **Privacy** Act, or HIPPA.



United States District Court
For the Northern District of California

instead, only made an oral request to seal the offending documents after the Court questioned counsel about the issue during the motion hearing.

The Court agrees with Defendants that sealing such documents is the proper remedy to what appears to be an inadvertent violation of Local Rule 3-17(a)(1). Thus, the Court DENIES Begzad's motion to disqualify counsel based on the publication of Begzad's social security number. Instead, as ordered at the April 18 hearing, the parties shall meet and confer and file a joint stipulation to seal the offending documents, identifying with particularity which pages in which exhibits must be sealed. This stipulation shall be filed no later than **Monday, April 25, 2005**. Defendants shall also be prepared to file redacted versions of the sealed documents electronically as soon as the Court issues the order placing the appropriate pages under seal.

### B. Ex Parte Contacts with Doctors

The bulk of Begzad's motion to disqualify counsel is based on allegedly improper ex parte contacts with Clague, Lorig, and Smith. It is undisputed that an investigator working for the City of Hayward contacted these individuals without first notifying Begzad, let alone getting authorization from him. Based on these ex parte contacts, Begzad seeks $40,000 in monetary sanctions ($10,000 for each of four contacts – one contact each for the three declarations and the fourth contact being the letter regarding deposition scheduling); disqualification of the City Attorney's office as counsel for Defendants; and $13,710 in attorneys' fees for preparing and arguing the motion.

#### 1. California Law

Begzad first argues that the ex parte contacts violated counsel's ethical duties as an attorney. This assertion is without merit. First, Begzad attempts to invoke Rule 2-100 of the California Rules of Professional Conduct. This rule does not apply to this case on its face. The rule governs an attorney's contact with a represented party and explains that an attorney shall not communicate with "an officer, director, or managing agent of a corporation." Strangely, Begzad cites this language and states that the rule "specifically deals with this situation." Mot. at 8. Begzad appears to be citing this rule to support a HIPAA violation, since he also cites a case stating that counsel should be "far more cautious" in contacting medical



United States District Court
For the Northern District of California

fact witnesses to "ensure that they do not run afoul of HIPAA's regulatory scheme. Wise counsel must now treat medical witnesses similar to the high ranking corporate employee of an adverse party." *Law v. Zuckerman*, 307 F. Supp. 2d 705, 711 (D. Md. 2004). This language, however, refers only to HIPAA, and Begzad cites no authority for the proposition that HIPAA somehow imposes additional duties on attorneys under state law or state ethical rules.[2]

Second, Begzad argues that Defendants violated Opinion 1975-33 of the State Bar's Standing Committee on Professional Responsibility and Conduct.[3] That opinion addressed whether "it is ethically improper for a defense counsel to communicate with the treating physician of the plaintiff without the consent or prior authorization of the plaintiff or his counsel." The committee concluded that:

> a communication by defense counsel with plaintiff's treating physician, without prior consent of plaintiff's counsel, regarding information in respect to which the physician/patient privilege has been waived, does not constitute a violation of a rule; however, because of the possibility of eliciting information not within the waiver, defense counsel's ethical duty requires that prior notice be given to plaintiff's counsel.

Here, Begzad waived the physician/patient privilege regarding his mental state at the time of the detention because he placed it at issue in this case. Cal. Evid. Code § 996. However, the parties dispute whether Clague, Lorig, and Smith should be considered "treating physicians." A magistrate judge in the Southern District of California analyzed this issue and concluded that a "treating physician" ordinarily sees a patient more than once, but that a physician who examines a patient only once may be a "treating physician" if the doctor continues to monitor and oversee the patient's care. *Crenshaw v. MONY Life Ins. Co.*, 318 F. Supp. 2d 1015, 1021-24 (S.D. Cal. 2004). Here, there is no contention that Begzad saw Clague, Lorig, or Smith more than once, or that any of these individuals took any interest in continuing to monitor Begzad's care. In addition, Begzad has not made any arguments not considered by the *Crenshaw* court, and he presents no argument for why the Court should not rely on *Crenshaw*'s reasoning. To

---

[2]It was also undisputed in *Law* that the doctor in question was the plaintiff's treating physician. *Law*, 307 F. Supp. 2d at 707.

[3]Although Defendants do not raise this point, the opinion explicitly states that it is "advisory" and "not binding upon the courts . . . or any member of the State Bar."



United States District Court
For the Northern District of California

the contrary, Begzad urges the Court to rely on *Crenshaw* to find a HIPAA violation but ignores the fact that, while the *Crenshaw* court found a violation of HIPAA, it also found no violation under California law. Based on the reasoning in *Crenshaw*, this Court finds that Clague, Lorig, and Smith were not Begzad's treating physicians.

Moreover, there is no evidence that Defendants' contacts with the doctors exceeded the scope of Begzad's waiver of the physician/patient privilege. The declarations obtained by Defendants merely repeat information contained in the medical reports that Defendants received pursuant to valid subpoenas, the propriety of which Begzad does not contest. Clague, Lorig, and Smith all further attested that they "have no other knowledge of any kind regarding the subject incident." Clague Decl. ¶ 6 (Ex. 1 to Khawaja Decl.); Lorig Decl. ¶ 6 (Ex. 2 to Khawaja Decl.); Smith Decl. ¶ 7 (Ex. 3 to Khawaja Decl.). Thus, not only did the contacts not reveal any privileged information that was not waived; the declarations indicate that there was no risk of the contacts exceeding Begzad's waiver of the privilege. Consequently, there was no violation of California law in this case: "If there is *no risk* of disclosing a patient's confidential information, because confidentiality has been waived by initiating suit or otherwise, California law does not prohibit an attorney's ex parte contacts with a nontreating physician."[4] *Crenshaw*, 318 F. Supp. 2d at 1028.

**2. HIPAA**

California law is not the only law governing counsel's conduct, however. HIPAA imposes additional obligations on counsel beyond California law, and the parties do not dispute that HIPAA applies to this case. HIPAA clearly governs the disclosure of patient health information, which includes:

> any information, whether oral or recorded in any form or medium, that: (1) Is created or received by a health care provider, health plan, public health authority, employer, life insurer, school or university, or health care clearinghouse; and
> (2) Relates to the past, present, or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past, present, or future payment for the provision

---

[4]Of course, the more advisable course may well have been for Defendants' counsel to have notified Begzad's counsel before contacting Clague, Lorig, and Smith.



United States District Court
For the Northern District of California

of health care to an individual.

45 C.F.R. § 160.103. Defendants do not and cannot dispute that the Clague, Lorig, and Smith revealed Begzad's health information during the ex parte contacts.

On the other hand, HIPAA does not prohibit all ex parte contacts with health care providers. For example,

> Mere contact between Plaintiff's physician and Defendant's counsel is not regulated by HIPAA. Such contact could include discussion of many benign topics, including but not limited to, the best methods for service of a subpoena, determining convenient dates to provide trial testimony, or the most convenient location for the anticipated deposition of the physician.

*Law*, 307 F. Supp. 2d at 708. Thus, Hom's letter regarding deposition scheduling is not covered by HIPAA.

Defendants argue that the contacts caused no harm to Begzad because they were made only to establish the authenticity of medical records received by subpoena, and because any protective order would have provided no additional protection to Begzad since the declarants' knowledge was limited to the contents of the medical records.[5] While this may be true, Defendants' intentions in initiating the ex parte contacts are irrelevant. HIPAA sets forth certain procedures designed to protect the privacy of patient health information, and those procedures must be followed even if failure to do so would ultimately result in little or no harm.

Indeed, the three courts that have considered this issue have all concluded that HIPAA prohibits ex parte contacts to obtain health information about an opposing party unless the requirements of 45 C.F.R. § 164.512(e)(ii) have been satisfied. *Bayne v. Provost*, 359 F. Supp. 2d 234 (pagination unavailable), 2005 WL 469360, at *5-7 (N.D.N.Y. 2005); *Crenshaw*, 318 F. Supp. 2d at 1027-29; *Law*, 307 F. Supp. 2d at 708-11. Section 164.512(e)(ii) provides that, when there has not been a court order requiring disclosure, disclosure of health information during discovery is only authorized if "reasonable efforts have been made . . . to

[5]The records were produced by the custodians of records for the John George Psychiatric Pavilion and American Medical Response along with affidavits as to the documents' authenticity. Thus, authenticity should not have been an issue.



United States District Court
For the Northern District of California

ensure that the individual who is the subject of the protected health information that has been requested has been given notice of the request" or "reasonable efforts have been made . . . to secure a qualified protective order that meets the requirements of paragraph (e)(1)(v) of this section." 45 C.F.R. § 164.512(e)(ii). It is undisputed that Defendants failed to satisfy either requirement because they did not attempt to notify Begzad or secure a protective order before contacting Clague, Lorig, and Smith. Thus, Defendants' ex parte contacts with all three individuals violated HIPAA.

**3. Appropriate Sanctions**

Although the Court finds that Defendants' counsel violated HIPAA, the Court does not find any basis for awarding Begzad's requested sanctions. Begzad seeks $10,000 for each HIPAA violation and further seeks attorneys' fees and disqualification of counsel. Especially where, as here, no non-waived privileged information was revealed, disqualification is unwarranted. *See, e.g., Crenshaw*, 318 F. Supp. 2d at 1020 (when deciding a motion to disqualify counsel, courts often consider whether the attorney's conduct would prevent a fair trial due to the disclosure of confidential information); *Visa U.S.A., Inc. v. First Data Corp.*, 241 F. Supp. 2d 1100, 1104 (N.D. Cal. 2003) (disqualification of counsel is an extreme sanction that should be imposed only in instances of "absolute necessity").

The Court also finds Begzad's requested monetary sanctions to be too severe. HIPAA does not dictate what sanctions a court should impose if a party or attorney violates HIPAA during the course of discovery, but HIPAA does provide that the Secretary of Health and Human Services may impose a sanction of up to $100 per violation. 42 U.S.C. § 1320d-5(a)(1). As another district court has noted, the "mild" nature of this $100 maximum sanction serves as a guide to the court's exercise of discretion in sanctioning counsel for a HIPAA violation. *Law*, 307 F. Supp. 2d at 712. In the two cases cited by Begzad in which courts have considered sanctions for HIPAA violations, one court imposed no sanctions, *id.* at 712-13, and the other required defendant's counsel to pay deposition costs for the witness in question to ensure that counsel did not exceed the scope of the plaintiff's waiver of the physician/patient privilege, *Crenshaw*, 318 F. Supp. 2d at 1030. In this case, as discussed above, the declarants



United States District Court
For the Northern District of California

have no knowledge beyond what was contained in the medical reports, so there is no need for depositions to ensure that the waiver was not exceeded. However, the Court exercises its discretion to impose a monetary sanction because, unlike the case in *Law*, counsel in this case does not argue that he had a good faith belief that his conduct was acceptable under HIPAA. Instead, Defendants' counsel appears to have completely failed to consider HIPAA before making contact with the physicians. Given that no confidential information was obtained, however, and that the statute itself contemplates only a maximum sanction of $100 per violation, the Court sanctions counsel $300 – $100 each for counsel's ex parte contacts with Clague, Lorig, and Smith.

An additional factor weighing against heavy sanctions in this case is that Begzad appears to have moved for disqualification in bad faith and as a dilatory tactic. If Begzad were truly concerned about his privacy, he would have moved to seal the documents that listed his social security number. He failed to do so until the Court directly asked about this at oral argument. Similarly, Begzad has expressed no interest in seeking sanctions against the doctors for violating HIPAA, which places obligations on both health care providers as well as those seeking protected health information. In addition, Begzad did not file this motion for sanctions until March 12, 2005 – just prior to the last day for filing dispositive motions in this case. Two of the declarations at issue were filed on November 29, 2004, and Begzad states that he wrote a letter to Defendants' counsel alleging a HIPAA violation on December 31, 2004. The delay in filing the motion is a further sign of Begzad's less-than-pure motive in seeking disqualification of Defendants' counsel.

Finally, Begzad also seeks attorneys' fees, but he has cited no authority to establish his entitlement to fees. In addition, for the reasons discussed above, the Court does not find an excessive monetary sanction to be appropriate in this case.

In summary, for all of the above reasons, the Court DENIES Begzad's motion to disqualify Defendants' counsel and also DENIES Begzad's request for attorneys' fees. However, the Court GRANTS IN PART Begzad's motion for monetary sanctions by sanctioning Defendants' counsel $300. As ordered at the motion hearing, Defendants' counsel

United States District Court
For the Northern District of California

shall pay this amount to Begzad within thirty days of the hearing – i.e., on or before **May 18, 2005.**

## II. Motion for Leave to Amend

In a prior order, the Court stated that "**absolutely** no further amendments to the complaint shall be permitted" and that "[t]he second amended complaint shall be the final amended complaint in this case." Feb. 14, 2005 Order Granting in Part & Denying in Part Defs.' Mot. for Summ. J. at 12. However, under Federal Rule of Civil Procedure 15(a), leave to amend a pleading "shall be freely given when justice so requires." Courts should apply this provision with "extreme liberality." *Morongo Band of Mission Indians v. Rose,* 893 F.2d 1074, 1079 (9th Cir. 1990). In deciding whether to grant leave to amend, a court should consider the following factors: bad faith, undue delay, repeated failure to correct deficiencies by prior amendment, prejudice to the opposing party, and futility of amendment. *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 & n.3 (9th Cir. 1987). An amendment would be futile if it could be defeated by a motion to dismiss or motion for summary judgment. *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988); *Gabrielson v. Montgomery Ward & Co.*, 785 F.2d 762, 766 (9th Cir. 1986). The non-moving party bears the burden of demonstrating why leave to amend should not be granted. *Genentech, Inc. v. Abbott Laboratories*, 127 F.R.D. 529, 530-31 (N.D. Cal. 1989).

### A. Amendments Regarding Ex Parte Contacts with Physicians

As discussed in the previous section of this order, there are strong indications in this case that Begzad seeks to assert HIPAA and privacy violations solely for tactical advantage. For example, he only belatedly asked the Court to seal the documents containing his social security number, and he has not sought sanctions against the doctors, who also violated HIPAA by discussing Begzad's health information with Defendants' counsel without the requisite procedural safeguards. Moreover, Begzad waited several months after becoming aware of the violations before filing the motions for disqualification and leave to amend. Additionally, Begzad filed an earlier motion to amend the complaint to change the name of one of the

United States District Court
For the Northern District of California

officers on January 10, 2005 – after he became aware of the HIPAA violations – but failed to include any mention of amending the complaint to state a HIPAA claim at that time. All of the above indicates both bad faith and undue delay.

Beyond that, allowing the complaint to be amended would cause undue prejudice to Defendants. This amendment is sought on the eve of trial, on the last possible day for hearing motions other than motions in limine. Adding Defendants' counsel to the case as named defendants would force all defendants to seek new counsel. This would undoubtedly delay trial because new counsel would need time to get up to speed.

In addition, there is no strong public policy interest in having the Court adjudicate the underlying claims of Begzad's suit – which concern a mental health detention in May 2002 – at the same time that claims regarding alleged privacy violations that occurred over two years later are adjudicated. Begzad asserts that allowing the amendments would promote judicial economy, but it is far from clear that it would be efficient to adjudicate both sets of claims at the same time.

Moreover, Begzad has also failed to make any factual allegations regarding Defendants' involvement in the alleged privacy violations. Instead, it appears that any claim, if one could be stated at all, could be stated only against Defendants' counsel. That is, there are no proposed allegations that implicate Defendants themselves, as opposed to Defendants' counsel, in the alleged privacy violations. Thus, amending the complaint to state privacy claims against the existing Defendants would be futile because any such amendment would be subject to dismissal for failure to state a claim.

Finally, as discussed above, Defendants' counsel did not violate California ethical rules or the law governing the physician/patient privilege by making ex parte contacts. Even though counsel did violate HIPAA, HIPAA does not provide for a private cause of action. *E.g.*, *Univ. of Colo. Hosp. Auth. v. Denver Publ'g Co.*, 340 F. Supp. 2d 1142, 1143-46 (D. Colo. 2004); *Logan v. Dep't of Veterans Affairs*, 357 F. Supp. 2d 149, 155 (D.D.C. 2004); *O'Donnell v. Blue Cross Blue Shield of Wyo.*, 173 F. Supp. 2d 1176, 1179-80 (D. Wyo. 2001).

In light of all of the above, the Court finds it appropriate to DENY Begzad's motion for leave to amend to state privacy-related claims against Defendants and their counsel.

**B. Fourteenth Amendment Cause of Action**

Begzad also seeks leave to amend his claim under the Fourteenth Amendment to include the phrase "religion and liberty." The proposed version of the paragraph in question would read: "Defendants, and each of them, deprived plaintiff of his freedom of expression, religion, and liberty in violation of [the] First and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983." Proposed Third Am. Compl. ¶ 25. However, when the Court granted in part and denied in part Defendants' motion to dismiss the original complaint, the Court dismissed Begzad's First Amendment claim with prejudice and granted Begzad leave to amend to state an equal protection claim. Begzad amended the title of the claim to state, "Deprivation of rights and liberty pursuant to Equal Protection clause," but Begzad failed to conform the text of the allegation to state an equal protection claim. *See* Jan. 5, 2004 Order Granting in Part & Denying in Part Defs.' Mots. to Dismiss at 3 n.1 ("While Plaintiff's claim for relief refers to equal protection, the actual text mistakenly refers to a First Amendment violation. FAC [First Am. Compl.] ¶ 24. At the November 10 hearing, this Court dismissed Plaintiff's First Amendment claim with prejudice but allowed Plaintiff to amend the complaint to state an equal protection violation. Plaintiff apparently changed the title of his fourth claim for relief but failed to modify the text.").

Although Begzad has had more than one previous opportunity to correct this error, the Court also finds no prejudice to Defendants in allowing this amendment. It has been clear from the outset of this case that Begzad claims that the officers improperly discriminated against him based on his religion. Given the liberal standard on motions for leave to amend, the Court therefore GRANTS IN PART and DENIES IN PART Begzad's motion to amend the equal protection claim. The motion is denied to the extent that Begzad seeks to revive the First Amendment claim that this Court already dismissed with prejudice. However, the motion is granted to the extent that Begzad may amend the language of the text to assert an equal



United States District Court
For the Northern District of California

protection violation based on religious discrimination in violation of the Fourteenth Amendment's Equal Protection Clause.

**C. Dates of Claim to and Rejection of Claim by the City of Hayward**

Finally, as the Court noted when it granted in part and denied in part the officer defendants' motion for summary judgment, the second amended complaint ("SAC") fails to allege the correct dates on which Begzad filed his claim with the City of Hayward and on which that claim was rejected. Feb. 14, 2005 Order at 4-5, 12. As with the FAC, the SAC erroneously alleges that the claim was filed and rejected in 2003, when it was actually filed and rejected in 2002. Although amendment is not necessary because the Court has already construed the complaint to reflect the correct dates, it would be an abuse of discretion for the Court to deny leave to amend on this point. Accordingly, the Court GRANTS Begzad's motion for leave to amend to correct the dates relating to his claim with the City of Hayward.

**CONCLUSION**

In summary, with good cause appearing for the reasons discussed above, IT IS HEREBY ORDERED that:

1. Begzad's motion to disqualify Defendants' counsel is DENIED.

2. Begzad's request for attorneys' fees is DENIED.

3. Begzad's request for monetary sanctions is GRANTED IN PART and DENIED IN PART. Defendants' counsel shall pay Begzad $300 for violating HIPAA. Payment shall be made on or before **May 18, 2005.**

4. Begzad's motion for leave to amend is GRANTED IN PART and DENIED IN PART. Begzad may amend the complaint to correct the date of his claim to the City of Hayward and the date on which the City rejected that claim. Begzad may also amend the complaint to conform the text of his third claim for relief to state an equal protection claim, instead of the First Amendment claim that this Court dismissed with prejudice. Begzad may not amend the complaint to state privacy-related claims against Defendants' or Defendants' counsel. Begzad

shall file his third amended complaint in conformity with this order on or before **April 27, 2005.**

IT IS FURTHER ORDERED that counsel shall meet and confer and file a joint stipulation to seal documents containing Begzad's full social security number. The stipulation shall identify with particularity which pages in which exhibits must be sealed and shall be filed no later than **April 25, 2005.** Once the documents are sealed, the Court will order Defendants to file redacted versions of the sealed documents. Defendants shall be prepared to do so within one business day of the issuance of the Court's order sealing the documents.

**IT IS SO ORDERED.**

DATED 04/20/05

/s/
THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT



United States District Court
For the Northern District of California