CLIFF PALEFSKY (SBN 77683)
KEITH EHRMAN (SBN 106985)
McGuinn, Hillsman & Palefsky
535 Pacific Avenue
San Francisco, CA 94133
Telephone: (415) 421-9292
Facsimile: (415) 403-0202

MICHAEL RUBIN (SBN 80618)
PEDER J. V. THOREEN (SBN 217081)
Altshuler, Berzon, Nussbaum, Rubin & Demain
177 Post Street, Suite 300
San Francisco, CA 94108
Telephone: (415) 421-7151
Facsimile: (415) 362-8064

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| DOUGLAS FRAZIER,<br><br>individually and on behalf of a class of similarly situated persons,<br><br>Plaintiff,<br><br>v.<br><br>CITICORP INVESTMENT SERVICES, INC., DOES 1-25 inclusive,<br><br>Defendants. | Case No. CV 05-01235 (CW)<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION TO REMAND; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND**<br><br>**Date:** June 3, 2005<br>**Time**: 10:00 a.m.<br>**Courtroom**: 2, 4th floor<br>**Judge:** Hon. Claudia Wilken |



Dockets.Justia.com

## TABLE OF CONTENTS


PAGE

I. INTRODUCTION . . . . . 1

II. BACKGROUND . . . . . 1

III. ARGUMENT . . . . . 2

- I. Compensatory Damages . . . . . 3
- II. Punitive Damages . . . . . 6
- III. Attorneys' Fees . . . . . 9
- IV. Request for Attorneys' Fees and Costs . . . . . 12

IV. CONCLUSION . . . . . 13

## TABLE OF AUTHORITIES

## FEDERAL CASES

*Anderson v. St. Paul Mercury Indemnity Co.*,
119 F. Supp. 222 (W.D. La. 1954) . . . . . 5

*Anthony v. Security Pacific Financial Services, Inc.*,
75 F.3d 311 (7th Cir. 1996) . . . . . 6

*BMW of North America, Inc. v. Gore*,
517 U.S. 559 (1996) . . . . . 7

*Bankers Life & Casualty Co. v. Namie*,
341 F.2d 187 (5th Cir. 1965) . . . . . 4

*Brady v. Mercedes-Benz USA, Inc.*,
243 F. Supp. 2d 1004 (N.D. Cal. 2002) . . . . . 5, 9

*Burk v. Medical Savings Insurance Co.*,
348 F. Supp. 2d 1063 (D. Ariz. 2004) . . . . . 9

*City of Chicago v. International College of Surgeons*,
522 U.S. 156 (1997) . . . . . 2

*Connolly v. Volvo Trucks North America, Inc.*,
208 F.R.D. 600 (N.D. Ill. 2002) . . . . . 4

*Conrad Associates v. Hartford Accident & Indemnity Co.*,
994 F. Supp. 1196 (N.D. Cal. 1998) . . . . . 3, 8, 9, 12

*Dept. of Recreation & Sports of Puerto Rico v. World Boxing Ass'n*,
942 F.2d 84 (1st Cir. 1991) . . . . . 9

*Galt G/S v. JSS Scandinavia*,
142 F.3d 1150 (9th Cir. 1998) . . . . . 9, 10

*Gaus v. Miles, Inc.*,
980 F.2d 564 (1992) . . . . . 2, 3

*Gibson v. Chrysler Corp.*,
261 F.3d 927 (9th Cir. 2001) . . . . . 2, 6, 9, 10

*Haisch v. Allstate Insurance Co.*,
942 F. Supp. 1245 (D. Ariz. 1996) . . . . . 9

*Holmes v. Boehringer Ingelheim Pharmaceuticals, Inc.*,
158 F. Supp. 2d 866 (N.D. Ill. 2001) . . . . . 4

*Kanter v. Warner-Lambert Co.*,
265 F.3d 853 (9th Cir. 2001) . . . . . 10

*Matheson v. Progressive Specialty Insurance Co.*,
319 F.3d 1089 (9th Cir. 2003) . . . . . 2, 3

*Moore v. Permanente Medical Group, Inc.*, 981 F.2d 443 (9th Cir. 1992) . . . . . 12

*Pacific Mutual Life Insurance Co. v. Haslip*, 499 U.S. 1 (1991) . . . . . 7

*Simmons v. PCR Technology*, 209 F. Supp. 2d 1029 (N.D. Cal. 2002) . . . . . 5, 8, 9

*Snyder v. Harris*, 394 U.S. 332 (1969) . . . . . 2

*St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283 (1938) . . . . . 2, 3

*St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250 (5th Cir. 1998) . . . . . 3

*State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408 (2003) . . . . . 6, 7, 8

*State of Missouri ex rel. Pemiscot County, Missouri v. Western Surety Co.*, 51 F.3d 170 (8th Cir. 1995) . . . . . 6

*Strickland Transport Co. v. Navajo Freight Lines, Inc.*, 199 F. Supp. 108 (N.D. Tex. 1961) . . . . . 5

*Suber v. Chrysler Corp.*, 104 F.3d 578 (3d Cir. 1997) . . . . . 4

*Zahn v. International Paper Co.*, 469 F.2d 1033 (2d Cir. 1972) . . . . . 6

**STATE CASES**

*ABF Capital Corp. v. Grove Properties Co.*, 126 Cal. App. 4th 204 (2005) . . . . . 4

*Bardis v. Oates*, 119 Cal. App. 4th 1 (2004) . . . . . 8

*Diamond Woodworks, Inc. v. Argonaut Insurance Co.*, 109 Cal. App. 4th 1020, 1057 (2003) . . . . . 7

*Faulkner v. Astro-Medical, Inc.*, 1999 WL 820198 (N.D. Cal. Oct. 4, 1999) . . . . . 9

*Nedllyod Lines B.V. v. Superior Court*, 3 Cal. 4th 459 (1992) . . . . . 4

*Textron Financial Corp. v. Nat'l Union Fire Insurance Co. of Pittsburgh, Pennsylvania*, 118 Cal. App. 4th 1061 (2004) . . . . . 7, 8

**FEDERAL STATUTES**

28 U.S.C. §1331 . . . . . . . . . . 2

28 U.S.C. §1332 *et seq.* . . . . . . . . . . 2

28 U.S.C. §1441 *et seq.* . . . . . . . . . . 2

28 U.S.C. §1446(b) . . . . . . . . . . 5

28 U.S.C. §1447(c) . . . . . . . . . . 12

**STATE STATUTES**

California Labor Code §203 . . . . . . . . . . 3, 5

California Labor Code §218.5 . . . . . . . . . . 11

California Labor Code §221 . . . . . . . . . . 1

California Code of Civil Procedure §1021.5 . . . . . . . . . . 11

California Business & Professions Code §§17200 *et seq* . . . . . . . . . . 1

New York Labor Law §193 . . . . . . . . . . 1

New York Labor Law §198 . . . . . . . . . . 3, 11

New York Labor Law §198-b . . . . . . . . . . 1

**MISCELLANEOUS**

Margaret Cronin Fisk, *Calif. Court Bounces $101M Fraud Suit*, Nat'l L.J., May 14, 2001 . . . . . . . . . . 8

Theodore Eisenberg & Geoffrey P. Miller, *Attorneys Fees in Class Action Settlements: An Empirical Study* (2003) . . . . . . . . . . 10, 11, 12

**TO DEFENDANT AND ITS ATTORNEYS OF RECORD:**

NOTICE IS HEREBY GIVEN that on June 3, 2005, at 10:00 a.m., or as soon thereafter as counsel may be heard, in Courtroom 2, 4th floor of the above entitled Court, located at 1301 Clay Street, Suite 400 S, Oakland, California, plaintiffs will and hereby do move the Court for an order remanding this action to the Superior Court of California, City and County of San Francisco.

______Plaintiffs seek remand of this action because diversity jurisdiction is lacking. Specifically, the removing party cannot meet its burden of establishing that plaintiff Frazier's amount in controversy exceeds $75,000. As there is no other possible basis for jurisdiction in federal court, the case must be remanded.

This motion is based on this Notice of Motion to Remand, Motion to Remand, the Memorandum of Points and Authorities filed herewith, the Declaration of Peder J. V. Thoreen, the pleadings and papers filed herein, and upon such other matters as may be presented to the Court at the time of the hearing.

## I. INTRODUCTION

Defendant Citicorp Investment Services, Inc. ("CIS") improperly seeks to invoke the diversity jurisdiction of this Court by inflating by a factor of more than 20 the $3,350 demanded by plaintiff Douglas Frazier, in an attempt to satisfy the $75,000 jurisdictional threshold. CIS's efforts to manufacture the requisite amount in controversy are infected with legal error and unsupportable speculation. Under Supreme Court and Ninth Circuit precedent, which strictly construe the relevant statutes against removal, CIS has not met its burden of proving that plaintiff more likely than not seeks over $75,000 for his claim.

## II. BACKGROUND

Plaintiff Douglas Frazier filed this nationwide class action in the Superior Court for the County of San Francisco on February 17, 2005 against CIS, a broker-dealer that provides investment services, and 25 "Doe" defendants. (*See* Thoreen Decl. ¶ 2; Exh. A.) Plaintiff alleges that defendants violated New York Labor Law § 193, New York Labor Law § 198-b, and California Labor Code § 221, and committed "unlawful, unfair or fraudulent business act[s] or practice[s]" in violation of California Business and Professions Code §§ 17200 *et seq.*, by assessing fines against their employees, including Frazier, and by refusing, as a disciplinary measure, to pay to Frazier and other employees sales commissions that such employees have earned. Through these policies and practices, defendants not only violated the statutes identified above but also breached their written employment contracts with Frazier and other employees, breached their duty of good faith and fair dealing under those contracts, and caused the conversion of personal property belonging to Frazier and other employees. The complaint identifies $1100 in fines that CIS assessed against plaintiff Frazier and $2250 in commissions that CIS withheld from plaintiff Frazier pursuant to these unlawful policies and practices.

CIS terminated plaintiff Frazier on March 24, 2005. (Notice of Removal, Boccio Decl. ¶ 9.) CIS filed its answer in state court on the same day. (Thoreen Decl. ¶ 4, Exh. A.) On March 25, 2005, CIS filed its Notice of Removal in this Court.

/ / /

/ / /

**III. ARGUMENT**

Title 28 U.S.C. § 1441 permits the removal of "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a); *City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 163 (1997) ("The propriety of removal thus depends on whether the case originally could have been filed in federal court."). CIS's removal of this action is premised solely on the diversity jurisdiction of this Court, 28 U.S.C. § 1332. *See* 28 U.S.C. § 1441(b). CIS properly does not contend that this case raises a federal question. *See* 28 U.S.C. § 1331.

For an action to be removable on the basis of diversity, the suit must be between citizens of different states (or otherwise diverse) and the "matter in controversy" must exceed $75,000. 28 U.S.C. § 1332(a). As plaintiff Frazier is a citizen of California and CIS is a citizen of New York and Delaware for diversity purposes, plaintiff Frazier does not dispute that this is a suit between citizens of different states. (*See* Complaint ¶¶ 5, 6; Notice of Removal at 2); 28 U.S.C. § 1332(c).[1] Plaintiff does dispute, however, whether the independent amount in controversy requirement has been satisfied, given that Frazier's own claim seeks far less than $75,000. *See Gibson v. Chrysler Corp.*, 261 F.3d 927, 941 (9th Cir. 2001) (for purposes of determining the amount in controversy, the named plaintiff's claim, rather than that of an unnamed class member, must be examined).

The removal statute is "strictly construe[d]" against removal jurisdiction; "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (1992) (per curiam); *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003) (per curiam) ("Where doubt regarding the right to removal exists, a case should be remanded to state court."); *see also St. Paul Mercury Indem. Co.*

---

[1] Although this is a nationwide class action, only the citizenship of the named plaintiff is relevant for purposes of diversity jurisdiction. *Snyder v. Harris*, 394 U.S. 332, 340 (1969); *Gibson v. Chrysler Corp.*, 261 F.3d 927, 931 n.2 (9th Cir. 2001). The citizenship of the "Doe" defendants is not considered when determining diversity on removal. 28 U.S.C. § 1441(a) ("For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded.").

*v. Red Cab Co.*, 303 U.S. 283, 288 (1938) ("The intent of Congress drastically to restrict federal jurisdiction in controversies between citizens of different states has always been rigorously enforced by the courts."). The Supreme Court has explained that, where a case is removed from state court, "[t]here is a strong presumption that the plaintiff has not claimed a large amount in order to confer jurisdiction on a federal court or that the parties have colluded to that end." *St. Paul Mercury Indem. Co.*, 303 U.S. at 290. Where "it is *unclear* what amount of damages the plaintiff has sought, . . . defendant bears the burden of actually proving the facts to support jurisdiction, including the jurisdictional amount." *Gaus*, 980 F.2d at 567 (emphasis in original). A defendant must meet its burden of proving that the amount in controversy exceeds $75,000 by a preponderance of the evidence. *Matheson*, 319 F.3d at 1090; *St. Paul Reins. Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1253 n.13 (5th Cir. 1998) (where plaintiff has not asserted a sum in excess of the jurisdictional threshold, "[t]he test is whether it is more likely than not that the amount of the claim will exceed [$75,000]."); *See Conrad Assocs. v. Hartford Accident & Indem. Co.*, 994 F. Supp. 1196, 1201 (N.D. Cal. 1998).

CIS contends that the jurisdictional threshold is met when Frazier's compensatory damages, punitive damages, and attorneys' fees claims are aggregated. However, as demonstrated below, CIS fails to meet its burden of establishing the alleged amounts under each category.

A. <u>Compensatory Damages</u>

In calculating the amount in controversy, CIS begins with the $3,350 in fines or withheld commissions specifically identified in the Complaint. To this CIS adds the 25% liquidated damages allowed under New York Labor Law § 198(1-a), which would equal $837.50. (Notice of Removal at 5.) CIS then adds $6,015.49, which represents the maximum 30 days in "waiting time penalties" permitted under California Labor Code § 203. (Notice of Removal at 5-6.) On the basis of these calculations, CIS contends that the "compensatory damages-related component of the amount-in-controversy is at least $10,202.99" (Notice of Removal at 6) - the sum of all three figures.

This preliminary damages calculation is necessarily erroneous for at least two reasons. First, plaintiff does not – because he cannot – seek to recover under both New York and California law for the same injury. Plaintiff invokes New York and California law because this case presents an uncertain choice of law issue. Although this case was brought in California state court and may be governed by California law, the employment agreement between plaintiff Frazier and CIS indicates that New York law may apply to this dispute. (Thoreen Decl. ¶ 6, Exh. C at 8.) Either New York or California law will apply to plaintiff Frazier's claims, and he will only be entitled to recover under one state's law. *See generally Nedllyod Lines B.V. v. Superior Court*, 3 Cal.4th 459 (1992) (applying choice of law principles in the context of a contractual choice-of-law provision ); *ABF Capital Corp. v. Grove Props. Co.*, 126 Cal. App. 4th 204 (2005) (same).[2] When determining the amount in controversy, it is improper to aggregate claims for which the plaintiff cannot simultaneously recover. *See Suber v. Chrysler Corp.*, 104 F.3d 578, 588 (3d Cir. 1997) ("[T]hese two claims could not be aggregated if Suber could not recover damages for both. That is, if these claims are alternative bases of recovery for the same harm under state law, Suber could not be awarded damages for both, and a court should not aggregate the claims to arrive at the amount in controversy."); *Connolly v. Volvo Trucks N. Am., Inc.*, 208 F.R.D. 600, 601 (N.D. Ill. 2002) (noting that aggregation of claims for assessing the amount in controversy is prohibited where the claims are actually "one claim pleaded in the alternative under separate legal theories" (quotation marks and citation omitted)); *Holmes v. Boehringer Ingelheim Pharm., Inc.*, 158 F. Supp. 2d 866, 868 (N.D. Ill. 2001) ("[O]ne claim pleaded in the alternative under separate legal theories *cannot* be aggregated for jurisdictional purposes." (emphasis in original)); *cf. Bankers Life & Cas. Co. v. Namie*, 341 F.2d 187, 188 n.2 (5th Cir. 1965) (when complaint proceeds on two alternative theories, only one of which satisfies the amount-in-controversy requirement, jurisdiction has been sustained). Therefore, CIS may not

[2] If CIS believes that it is legally possible for plaintiff Frazier to recover under both states' laws, CIS must demonstrate how this is possible in order to meet its burden of establishing the amount in controversy.

count both the liquidated damages available under New York and the waiting time penalties available under California law.

Second, CIS arguably errs in counting over $6,000 in waiting time penalties toward the jurisdictional amount. California Labor Code § 203 provides for waiting time penalties for failure to pay wages to an employee "who is discharged or who quits." Cal. Labor Code § 203. Frazier was terminated on March 24, 2005 (Notice of Removal, Boccio Decl. ¶ 9); the waiting time penalties under § 203 only accrue after that date because only then did Frazier become an employee "who is discharged or who quits."

Frazier thus had accrued only a single day of waiting time penalties by the time this action was removed. For amount-in-controversy purposes, courts generally do not consider damages that become due after the date of removal. *See Strickland Transp. Co. v. Navajo Freight Lines, Inc.*, 199 F. Supp. 108, 109 (N.D. Tex. 1961) ("Where the amount in controversy involves only accrued installments and these do not exceed the jurisdictional amount at the time of removal, the case is subject to remand, although installments coming due since removal augment the recoverable amount beyond the jurisdictional sum."); *Anderson v. St. Paul Mercury Indem. Co.*, 119 F. Supp. 222, 223-24 (W.D. La. 1954) (refusing to count toward the amount in controversy installments that became due after removal); *but see Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1011 n.4 (N.D. Cal. 2002) ("While an estimate of the amount in controversy must be made based on facts known at the time of removal, that does not imply that items such as future income loss, damages, or attorneys fees likely to be incurred cannot be estimated at the time of removal."); *Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1035 (N.D. Cal. 2002) ("The court determines the amount in controversy based on the damages that can reasonably be anticipated at the time of removal."). There is particular reason to follow the former rule here, because it was only by virtue of CIS's willful act—the termination of plaintiff Frazier *after* he filed the complaint and only *one day prior* to the deadline for filing its Notice of

///

///

///

Removal[3] - that CIS is able to argue that any waiting time penalties apply to plaintiff Frazier. *See Simmons*, 209 F. Supp. 2d at 1033 (criticizing efforts "to manipulate the amount in controversy to secure jurisdiction in the desired court."). Therefore, CIS should also be found to have improperly included 29 days of waiting time penalties when calculating the amount in controversy (thus reducing to $200.52 the waiting time penalties applicable to the pending jurisdictional issue).

B. Punitive Damages

CIS's attempt to establish this Court's jurisdiction also relies heavily on plaintiff Frazier's request for punitive damages. *See Gibson*, 261 F.3d at 945. In this regard, CIS contends that a punitive damages ratio of between five-to-one and seven-to-one is appropriate in calculating the amount in controversy. By CIS's own calculations, even if it prevails on all other arguments the amount in controversy cannot exceed $75,000 *unless* the relevant punitive damages factor is at least five.

Especially where, as here, punitive damages constitute the vast majority of the alleged amount in controversy, courts evaluate the calculation of such claims with exacting scrutiny. *See Anthony v. Sec. Pac. Fin. Servs., Inc.*, 75 F.3d 311, 315 (7th Cir. 1996) ("When a claim for punitive damages makes up the bulk of the amount in controversy, and may even have been colorably asserted solely to confer jurisdiction, we should scrutinize that claim closely."); *State of Mo. ex rel. Pemiscot County, Mo. v. W. Sur. Co.*, 51 F.3d 170, 173 (8th Cir. 1995) ("When determining the amount in controversy, we scrutinize a claim for punitive damages more closely that a claim for actual damages to ensure that Congress's limits on diversity jurisdiction are properly observed."); *Zahn v. Int'l Paper Co.*, 469 F.2d 1033, 1033 n.1 (2d Cir. 1972) ("[I]n computing jurisdictional amount, a claim for punitive damages is to be given closer scrutiny . . . than a claim for actual damages.").

[3] Title 28 U.S.C. § 1446(b) provides that a notice of removal shall be filed within 30 days after the receipt by the defendant of a copy of the initial pleading or summons. CIS was served with a summons on February 23, 2005. (Thoreen Decl. ¶ 3, Exh. A.) Therefore, CIS's last day to remove was March 25, 2005.

The punitive damages that may be awarded in this case are especially difficult to predict because both the class size and the amount of fines and commissions at issue for class members other than plaintiff Frazier are completely unknown. As the Ninth Circuit has recognized, "the amount of the punitive damage award may well be influenced by the presence of a large class of plaintiffs, each of whom was wronged by the defendant in the same way." *Gibson*, 261 F.3d at 946. Punitive damages thus will depend on factors yet to be established; estimates at this stage are necessarily highly speculative, and CIS cannot present admissible facts sufficient to meet its burden of proving the likelihood of unusually high classwide punitive damages.

Punitive damages awards that are greater than four times the compensatory damages are generally subject to heightened judicial scrutiny. Although the Supreme Court has not established a *per se* ceiling, it stated in *State Farm Mutual Auto Insurance Co. v. Campbell*, 538 U.S. 408 (2003), that punitive damages exceeding a ratio of four-to-one require a particularly searching case-specific inquiry.

> In [*Pacific Mutual Life Insurance Co. v. Haslip*, 499 U.S. 1 (1991)], in upholding a punitive damages award, we concluded that an award of more than four times the amount of compensatory damages might be close to the line of constitutional impropriety. 499 U.S., at 23-24, 111 S.Ct. 1032. We cited that 4-to-1 ratio again in [*BMW of North America, Inc. v. Gore*, 517 U.S. 559, 581 (1996)]. The Court further referenced a long legislative history, dating back over 700 years and going forward to today, providing for sanctions of double, treble, or quadruple damages to deter and punish. *Id.,* at 581, and n. 33, 116 S.Ct. 1589. While these ratios are not binding, they are instructive.

*State Farm*, 538 U.S. at 425.

While CIS responds with a citation to *Textron Financial Corp. v. National Union Fire Insurance Co. of Pittsburgh, Pennsylvania*, 118 Cal. App. 4th 1061 (2004), a post-*State Farm* California appellate case (*see* Notice of Removal at 6), the court in *Textron* reduced the punitive damages award in that case, which *had been* approximately 10 times the compensatory damages, to "a sum approximating four times the compensatory damages awarded." *Id.* at 1085. The court found that the award of 10 times the compensatory damages was "excessive and violate[d] the federal Constitution's due process clause." *Id. See also Diamond Woodworks, Inc. v. Argonaut Ins. Co.*, 109 Cal. App. 4th 1020, 1057 (2003). Thus, although punitive damages factors greater than four may be permissible in a given case, CIS has failed to identify which factors in *this* case

would make a heightened punitive damages ratio appropriate. To the contrary, CIS has thus far taken the position that it acted in good faith and that the complaint itself contains *no* facts upon which *any* award of punitive damages could be justified. (Thoreen Decl. ¶ 5, Exh. B at 4, 5.); *see State Farm*, 538 U.S. at 419 (noting that the degree of reprehensibility of defendant's conduct is "[t]he most important indicium of the reasonableness of a punitive damages award" (quotation marks and citation omitted)).

In an attempt to justify the use of a higher punitive damages multiplier here, CIS cites verdicts in three California cases. One of the three cases, the one with the largest punitive damages factor was reversed in 2001, with judgment entered for the defendants. *See* Margaret Cronin Fisk, *Calif. Court Bounces $101M Fraud Suit*, Nat'l L.J., May 14, 2001. *None* of these cases appears to have involved *any* of the causes of action alleged in the instant lawsuit. And the conduct alleged in those suits includes none of the conduct alleged in the instant action.[4]

A defendant may not simply assert that a particular case is similar to past cases in an attempt to justify punitive damages intended to meet the amount-in-controversy requirement. Instead, the defendant must particularly (and convincingly) demonstrating similarities between prior cases and the one before the court. *See Simmons*, 209 F. Supp. 2d at 1033 ("To establish probable punitive damages, defendant may introduce evidence of jury verdicts in cases involving analogous facts."). In *Conrad Assocs. v. Hartford Accident & Indem.*, 994 F. Supp. 1196 (N.D. Cal. 1998), a defendant attempted to prove likely punitive damages by presenting a sampling of verdicts in the insurance bad faith arena. The court found that defendant's argument was insufficient, noting that "defendant has made no effort to compare the facts of those cases with the alleged facts of this case." *Id.* at 1201. The court went on to find that the cases presented by the defendant in fact "b[ore] little or no resemblance to this litigation." *Id.*

---

[4] The punitive damages awards in two of the cases also predated the "recent due process constraints laid down by the United States Supreme Court" in *State Farm*. *Bardis v. Oates*, 119 Cal. App. 4th 1, 5 (2004); *see Textron Fin. Corp.*, 118 Cal. App. 4th at 1081-85 (reducing by nearly 80%, in light of *State Farm*, a punitive damages award that the court had twice previously upheld).

Apart from its conclusory statement that the three cases cited by CIS are "fraud-related cases similar to the conversion claim alleged here (including employment-related fraud cases)," (Notice of Removal at 7), CIS makes no effort to compare the facts of any of these cases. As in *Conrad*, 994 F. Supp. at 1201, the "Defendant has failed to articulate why the *particular facts* that are alleged in the instant case might warrant extraordinary damages." *Id.* (emphasis in original; citation omitted); *see Haisch v. Allstate Ins. Co.*, 942 F. Supp. 1245, 1249 (D. Ariz. 1996) ("It would be inherently speculative for this Court to conclude that the amount in controversy can be met by simply asserting that large punitive damage awards have been awarded in the past against insurance companies faced with allegations of fraud."). "[T]he evidence submitted in this action provides no reliable basis for the court to determine that it is more likely than not that a potential punitive damage award could sufficiently increase the amount in controversy to meet the jurisdictional requirement." *Conrad*, 944 F. Supp. at 1201.

For the foregoing reasons, CIS has failed to establish, as more likely than not, that punitive damages in this case would be more than four times the award of compensatory damages – or any particular amount.

C. Attorneys' Fees

In its Notice of Removal, CIS outlines different scenarios under which the amount-in-controversy requirement may be met; but nearly every scenario relies on a substantial award of attorneys' fees. Plaintiffs acknowledge that where an underlying statute authorizes an award of attorneys' fees, such fees may be included in the amount in controversy. *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150,1156 (9th Cir. 1998).[5] However, "while attorney's fees may, if

---

[5] It is *not* clear, however, that in removal cases jurisdiction may be premised on attorneys' fees incurred after the filing of the notice of removal. A recent survey of cases indicates that "district courts in this circuit have disagreed whether attorneys' fees incurred after the date of removal are properly included in the amount in controversy." *Burk v. Med. Savings Ins. Co.*, 348 F. Supp. 2d 1063, 1068-69 (D. Ariz. 2004) (*citing Faulkner v. Astro-Med, Inc.*, 1999 WL 820198, at *4 (N.D. Cal. Oct. 4, 1999); *Conrad Assocs. v. Hartford Accident & Indem. Co.*, 994 F. Supp. 1196, 1200 (N.D. Cal. 1998); *Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1010-11 (N.D. Cal. 2002); *Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1034-35 (N.D. Cal. 2002)). Should the Court follow the district courts that do not consider attorneys' fees (continued...)

authorized by law, constitute part of the amount in controversy, they may only do so to the extent *reasonable.*" *Dept. of Recreation & Sports of P.R. v. World Boxing Ass'n.*, 942 F.2d 84, 90 (1st Cir. 1991) (emphasis in original). Here, CIS contends that the reasonable attorneys' fees that it may be required to pay if plaintiffs prevail are estimated at 23% of the total classwide damages. (*See* Notice of Removal at 9.)

For the reasons set forth above, however (*see supra* Parts III.A - B), even if 23% were an accurate estimate of the likely attorneys' fees that CIS will be required to pay, in addition to damages, that sum would still be is insufficient to meet the jurisdictional requirement because CIS has vastly overstated the relevant compensatory and punitive damages. For example, adopting a four-to-one punitive damages ratio but leaving all of CIS's other assumptions in place, a 23% award of attorneys' fees would still only bring plaintiff Frazier's amount in controversy to $62,748.39. When determining the amount in controversy, attorneys' fees must be based solely on the individual named plaintiff's share of any total award. *See Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 858 (9th Cir. 2001) ("[A]ttorneys' fees awarded under [the relevant statute] must be divided among all members of the plaintiff class for purposes of the amount in controversy."); *Gibson*, 261 F.3d at 942. At 23% of his other damages as properly calculated, plaintiff Frazier's share of attorneys' fees does not increase his claim over $75,000.

Moreover, CIS has failed to present sufficient relevant evidence to justify its contention that 23% represents a reasonable estimate of the fees to be paid by CIS in this case on top of whatever damages it may pay to plaintiff Frazier and other class members. CIS's figure of 23% is based on a single study. (*See* Notice of Removal at 9.) As CIS points out, this study found that the attorney fee awards in 30 "[l]abor/wage/pension" tended toward 22.9% (mean) or 26.4% (median). Theodore Eisenberg & Geoffrey P. Miller, *Attorneys Fees in Class Action Settlements: An Empirical Study* 33 (2003), *available at* http://ssrn.com/abstract=456600 [hereinafter

[5](...continued)
incurred after removal in determining the amount in controversy, the relevant attorneys' fees will certainly be substantially less than the estimate relied on by CIS. It will, of course, remain CIS's burden to establish their amount.

Eisenberg]. A review of this study demonstrates precisely why CIS's estimate is unsupported.

First, as CIS recognizes, in order to be considered for amount-in-controversy purposes, the attorneys' fees must be premised on underlying statutory authorization, so-called "fee-shifting statutes," because only "fee-shifting" fees are paid separately by a defendant under the American Rule. *See Galt*, 142 F.3d at 1155-56.[6] None of the data relied on by CIS comes from cases involving fee-shifting statutes; instead, the figures are based solely on common fund cases - i.e., from cases in which the defendants did not pay *any* fees. *See* Eisenberg at 33. Thus, this study is no more relevant to determining what plaintiff Frazier may recover from defendant than a study of individual fee retainers which shows that plaintiffs commonly pay 25% to 40% of their recovery to their counsel. CIS has made no effort to demonstrate how attorneys' fees awards in common fund cases, where the award comes from plaintiffs' recovery and not from the defendants, shed any light on attorneys' fees awards in fee-shifting cases. In fact, the study's authors explicitly warn against such use of the data: "Non-fee-shifting and fee-shifting cases have such distinct fee characteristics that analyzing them together is inappropriate for many purposes." *Id.* at 67-68. Indeed, fee-shifting cases have a much wider distribution of awards. *Id.* at 30. For this reason, CIS has presented no *relevant* data regarding attorneys' fee awards in this case.

Second and related, the data relied on appear to be far too broad to assist in determining the amount in controversy in the instant case. Although the underlying data, in relevant part, are left undescribed (Eisenberg at 27), it appears from the title of the study and from the data itself as though they come from a nationwide sample of cases in state and federal courts that were resolved by settlement (*see id.* at 1, 4, 10, 27). Plaintiff Frazier's claim for attorneys' fees is based on three specific statutes: New York Labor Law § 198, California Labor Code § 218.5, and California Code of Civil Procedure § 1021.5. CIS has made no effort to show what bearing, if any, attorneys' fees awards in settlements from class actions in states across the country awarded under the common fund doctrine, would have on the particular circumstances of this case.

---

[6] Attorneys' fees under the "common fund doctrine" are paid by the *class*, from its overall recovery, not by the defendant. *See* Eisenberg at 4 & 4 nn.4 & 5.

Third, the study relied on by CIS concludes that the "single most important factor" determining the fee percentage is the aggregate recovery to the entire plaintiff class. Eisenberg at 67; *see also id.* at 47 ("[T]he overwhelming determinant of fee is the amount of the recovery for the class."). CIS presented no such aggregate recovery analysis in its Notice of Removal. Indeed, such analysis cannot be conducted until the size of the class is established and the general size of each class member's claim is determined. In the absence of such information, CIS's own study indicates the Court is left without the "single most important" factor in predicting the attorneys' fees award.

Fourth, as noted above, CIS's estimate of attorneys' fees is premised on a small sample (only 30) of "labor/wage/pension" cases. *See* Eisenberg at 33. CIS has not indicated, and indeed the study does not appear to reveal, what percentage of those 30 cases are unlawful kickback cases like the instant case. Certainly the predictive value of this data for the instant case would be significantly different if 90% of the cases were kickback cases as opposed to 5%. In the absence of such information, it is improper to use such data as a basis for determining potential attorneys' fees awards.

It is CIS's burden to demonstrate that prior cases are sufficiently similar to the instant case to provide meaningful guidance. As in *Conrad Associates*, the "defendant has made no effort to compare the facts of those cases [relied on] with the alleged facts of this case." *Id.* at 1201. No such effort *can* be made in this case because the names and facts of the underlying cases are not revealed in the study on which CIS relies. If the cases were available, the Court might conclude, as the court in *Conrad* did, that they in fact "bear little or no resemblance to this litigation." *Id.* Given the patently broad category "labor/pension/wage" that defines the cases underlying the data, the probability that the cases bear little or no resemblance to the instance case is indeed high.

For the foregoing reasons, CIS has failed to establish an appropriate estimate of attorneys' fees for determining the amount in controversy.

///

///

D. Request for Attorneys' Fees and Costs

Plaintiff Frazier hereby requests attorneys' fees and costs incurred as a result of the removal of this case. 28 U.S.C. § 1447(c). No finding of bad faith is required. *Moore v. Permanente Med. Group, Inc.*, 981 F.2d 443, 445-48 (9th Cir. 1992). The purpose of such awards is not to punish defendants, but rather to reimburse plaintiffs for unnecessary litigation costs. *See id.* at 447.

## IV. CONCLUSION

For the reasons stated herein, CIS has failed to meet its burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds $75,000. Therefore, the plaintiffs respectfully request that this action promptly be remanded to the San Francisco County Superior Court and that CIS be required to pay plaintiffs' reasonable fees and costs.[7]

Dated: April 22, 2005

Respectfully submitted,

McGUINN, HILLSMAN & PALEFSKY

By: /s/

CLIFF PALEFSKY (SBN 77683)
KEITH EHRMAN (SBN 106985)
MCGUINN, HILLSMAN & PALEFSKY
535 Pacific Avenue
San Francisco, CA 94133
Telephone: (415) 421-9292
Facsimile: (415) 403-0202

MICHAEL RUBIN (SBN 80618)
PEDER J.V. THOREEN (SBN 217081)
ALTSHULER, BERZON, NUSSBAUM, RUBIN & DEMAIN
177 Post Street, Suite 300
San Francisco, CA 94108
Telephone: (415) 421-7151
Facsimile: (415) 362-8064
Attorneys for Plaintiffs

[7] Plaintiffs' counsel will submit an itemized statement of such fees and costs, through the date of hearing, at the Court's request.