Apple Inc. v. Psystar Corporation Doc. 2921


James R. Wheaton (State Bar No.115230)
Iryna A. Kwasny (State Bar No.173518)
Joshua Borger (State Bar No. 231951)
ENVIRONMENTAL LAW FOUNDATION
1736 Franklin Ave., 9th Floor
Oakland, CA 94612
Telephone: (510) 208-4555
Facsimile: (510) 208-4562

Roger Flynn, *pro hac vice*
Jeffrey C. Parsons, *pro hac vice*
WESTERN MINING ACTION PROJECT
2260 Baseline Rd., Suite 101A
Boulder, CO 80302
Telephone: (303) 473-9618
Facsimile: (303) 786-8054

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| **KARUK TRIBE OF CALIFORNIA**<br><br>Plaintiff,<br><br>vs.<br><br>**UNITED STATES FOREST SERVICE; MARGARET BOLAND**, Forest Supervisor, Klamath National Forest,<br><br>Defendants,<br><br>The New 49'ers, Inc. and Raymond W. Koons,<br><br>Defendant-Intervenors. | Case No. C 04-4275 (SBA)<br><br>**DECLARATION OF TOZ SOTO IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date: June 21, 2005<br>Time: 1 p.m.<br>Ctrm: 3, 3d Floor<br>Judge: Hon. Saundra B. Armstrong |



Dockets.Justia.com

I, Toz Soto, make this declaration based upon my personal knowledge and belief and state:

1. I reside in Somes Bar, California. My address is 2033 Ti Bar RD. I am 33 years old and competent to testify.

2. I serve as the Karuk Tribal Fisheries Biologist in the Karuk Department of Natural Resources.

3. I follow direction from the Karuk Department of Natural Resources and therefore am obligated to protect fisheries resources in the Klamath River Basin.

4. The mission of the Karuk Department of Natural Resources is to protect, promote, and preserve the cultural/natural resources and ecological processes upon which the Karuk People depend. Natural Resources staff works in conjunction with federal and state agency personnel to ensure that the integrity of natural ecosystem processes and traditional values are incorporated into current and future management strategies within our area of influence. For example, the Tribe and the Klamath and Six Rivers National Forests have entered into a Memorandum of Understanding (MOU) based upon the Government-to-Government relationship established between the Tribe and the Forest Service. This MOU establishes a framework upon which the Tribe and the Forest Service may jointly identify, plan and accomplish mutually beneficial projects and activities that provide for watershed restoration, job opportunities, and community economic development. Improved watersheds and fisheries are a significant component of rebuilding the economy of the region. Watershed restoration represents an opportunity for long-term, stable employment based on non-resource extraction ecosystem management and a stable, fully functioning ecosystem. An increase in recreation with improved fishing and economic development.

5. The objective of the Karuk Tribe’s Watershed Restoration Division is to protect the habitat of anadromous fish by decreasing the sedimentation caused by various activities, including suction dredge mining, within watersheds of critical concern. The Tribe works to protect the wild salmon, steelhead, Pacific Lamprey, Green Sturgeon, and other fish

species, and the water quality of the streams and rivers on the Six Rivers and Klamath National Forests. The Tribe's Natural Resource Department works to protect, promote, and preserve the cultural/natural resources and ecological processes upon which the Karuk People depend. Members, staff, and elected officials of the Tribe have been involved in the Six Rivers and Klamath National Forests' planning process and have regularly submitted comments to, and otherwise corresponded with, the Forest Service regarding suction dredge and other mining operations in these Forests. The Tribe is also a member of the Klamath River Intertribal Fish and Water Commission, which works to promote and protect the interests of the various Native American Tribes in northern California and southern Oregon in the management and use of the Klamath River and its tributaries.

6. Members of the Karuk Tribe, regularly use and enjoy the waters of the Salmon, Klamath, and Scott Rivers for traditional cultural, religious, and subsistence uses. The suction dredge and other mining operations in and along the Salmon, Klamath, and Scott Rivers and their tributaries cause permanent and/or long-lasting impacts to wildlife, fisheries, water quality, recreation, and visual resources. *See* Grunbaum (USFS), Summary of Fisheries Issues Concerning Suction Dredge Mining, USFS April 20, 2004 (AR 294-299); *see also* Soto (Karuk Tribe of California Department of Natural Resources), Summary of Issues and Potential Impacts on Salmon River Salmonids and Other Non-salmonid Species From Suction Dredging in the Salmon River, Klamath River and Tributaries, June, 2004 (attached as Exhibit 1)

7. By virtue of these impacts, suction dredge mining thereby has a direct and concrete adverse impact on tribal members' ability to enjoy the spiritual, religious, subsistence, fisheries, recreational, wildlife, and aesthetic qualities of the areas affected by the mining operations. The Forest Service's failure to properly regulate mining operations also directly and adversely harms my fisheries interests, along with those of the Tribe and its members by, among other things, threatening and causing injury to and death of fish,

degrading the habitat of fish, degrading the water quality of these streams and rivers, as well as degrading lands along these waterways in the Six Rivers and Klamath National Forests. The suction dredge operations can be seen and/or heard on and around the streams and rivers where they are being operated.

8. My interests, along with those of the Tribe and its members, are also harmed by the Forest Service's failure to follow the public notice, review, and commenting requirements of NEPA as well as the requirements of the Endangered Species Act regarding mining in and along the Klamath, Salmon, and Scott Rivers and their tributaries, and by the Forest Service’s failure to consult with the Tribe on a government-to-government basis regarding mining in and along the Klamath, Salmon, and Scott Rivers and their tributaries.

9. Suction dredging causes harm to my interests, and those of the Tribe and its members, due to the process by which suction dredging is conducted. In particular, suction dredging is an instream mining technique where streambed material is drawn up through a hose and passed over a sluice to separate out gold. The waste material ("tailings"), consisting of rocks, gravel, silt, and biota, is then discharged back into the stream in a different area from which it was removed. This suction dredging activity disturbs stream channels and topography. Rocks, gravel, and silt are scoured away and then deposited in a different location within a stream, often in previously undisturbed areas. *See* photographs of in-stream suction dredge activities showing typical operations, taken on the Salmon River in August and September, 2003 by Karuk Department of Natural Resources staff. (attached as Exhibit 2). Large boulders, stumps, and rootwads in the stream may be moved before a site is excavated, which reduces stream stability. Further, fine sediment dispersed by suction dredging operations can infiltrate the gravelly areas where salmon construct their nests (redds). The sediment suffocates the eggs and prevents young salmon from emerging. Sediment also reduces water clarity and affects the ability of young salmon to see their food.

10. In addition to suction dredge mining in these waterways, mining also occurs immediately along and above these waters. A form of mining known as “highbanking” or “mechanized sluicing” involves the removal, usually by motorized heavy equipment such as backhoes or bulldozers, of rock, dirt, plants and other materials from their natural location. This material is then sent through mechanical equipment in an effort to remove fine particles of gold and other metals. The resulting debris from the equipment is then deposited in and/or near the streambank. Oftentimes, water is taken from the stream to facilitate this removal and deposition process. This mechanized sluicing disturbs the riparian areas in which it takes place by among other impacts, removal of portions of the streambanks and/or riparian area from its natural location, disruption and/or removal of plant material, the creation of unnatural excavated areas and/or discarded debris dumps.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed this 29 day of April, 2005.

/s/ Toz Soto
Toz Soto