Apple Inc. v. Psystar Corporation

Doc. 2941 Att.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

CERTIFIED COPY

| | | |
|---|---|---|
| JAYNE PALMISANO, et al., | ) | |
| Plaintiffs, | ) | |
| -vs- | ) | CASE NO. C 03-01607 RMW |
| OLIN CORPORATION, et al., | ) | |
| Defendants. | ) | |

DEPOSITION OF ROBERT D. MORRISION, Ph.D.

DATE: March 3, 2005

TIME: 1:05 p.m.

LOCATION: DUANE MORRIS, LLP
One Market, Spear Tower
Suite 2000
San Francisco, California

DISK ENCLOSED

REPORTED BY: Joanmarie Torreano, CSR, CRR, CRP
Certified Shorthand Reporter
License Number C-6504

EXHIBIT C



Dockets.Justia.com

Q. Okay. You had also mentioned that in connection with the presentations you recently gave in 2005 to the Bar Associations of San Francisco and Orange County some discussion of the historical activities associated with the perchlorate ion.

Can you describe generally what the nature of that aspect of the presentation contained?

A. Yes. My recollection is that I shared information regarding historical sources of perchlorate contamination to subsurface, such as solid rocket fuel.

Q. Any other sources that you discussed?

A. I may have. I certainly recall the use and incorporation of perchlorate in solid rocket fuel formulations.

Q. Did you discuss pyrotechnics?

A. I don't recall.

Q. Do pyrotechnics, such as fire works, have the potential of emitting perchlorate into the environment?

MR. FRANCO: Objection. Vague.

THE WITNESS: I haven't looked into that issue.

BY MR. MILLER:

Q. Have you looked into the issue associated with the use of Chilean fertilizers as a source of perchlorate into the environment?

A. I'm familiar with some of the literature

relative to the presence of perchlorate at low concentrations in some Chilean fertilizers.

Q. Have you ever had occasion to assess a site or area for the presence of perchlorate associated with the use of -- the historical use of Chilean fertilizers?

A. No.

Q. Did you discuss in your presentations the recent publication of data suggesting the presence of perchlorate in groundwater in the vicinity of areas absent any historical industrial use of perchlorate?

MR. FRANCO: Objection. Lacks foundation, vague.

THE WITNESS: No.

BY MR. MILLER:

Q. Okay. Are you familiar with recent publications that have reported the presence of perchlorate in groundwater in areas in which there is no historically known industrial discharge of perchlorate?

A. You would need to be more specific relative to the literature that you're referring to.

Q. Okay. There have been reports from West Texas in which perchlorate has been detected in groundwater but for which there is no attributable industrial source. Are you familiar with that literature?

A. I'm generally familiar with that literature

Q. Do you know why this request was made?
A. Not specifically.
Q. In general do you know why Paul Garcia requested this particular change order?
A. Not in general, although I would comment that it's not uncommon when DPRA is retained to do this type of sampling work that we request that J-flags be reported.
Q. What's your understanding, Dr. Morrison, of what a J-flag qualifier may mean for the validity of the results obtained with that qualification?
MR. FRANCO: Object to the form. It's vague and ambiguous and it assumes facts.
Go ahead.
THE WITNESS: That would be an area outside of my expertise.
BY MR. MILLER:
Q. Okay. If that area is outside of your expertise I take it that you are not rendering an opinion with respect to the validity of the perchlorate sampling results reported by Calscience with J-qualifiers; is that correct?
MR. FRANCO: Object to the form, vague and ambiguous.
THE WITNESS: I'm not offering an opinion

regarding that subject.

BY MR. MILLER:

Q. Are you offering the opinion in this case regarding the validity of any of the results that are reported in Exhibit 2, your expert report, with respect to the presence of perchlorate at specific quantifications or quantities?

MR. FRANCO: Objection to form.

Go ahead.

THE WITNESS: I don't understand your question.

BY MR. MILLER:

Q. Okay. Are you offering an opinion, Dr. Morrison, with respect to the validity of any of the results reflected in Exhibit Number 2 regarding the quantity of perchlorate detected in these four plaintiffs' wells?

MR. FRANCO: Objection. Vague. Go ahead.

THE WITNESS: Relative to the analytical validity of the values contained in Exhibit 2, that would be an issue for Calscience and is outside of my area of expertise.

BY MR. MILLER:

Q. Thank you very much.

Dr. Morrison, do you know whether EPA Method 314 permits the reporting of perchlorate levels using

STATE OF CALIFORNIA )
) ss.
COUNTY OF SANTA CLARA )

I, JOANMARIE TORREANO, a Certified Shorthand Reporter in and for the State of California, certify that the witness in the foregoing deposition,

ROBERT D. MORRISION, Ph.D.,

was by me duly sworn to tell the truth, the whole truth and nothing but the truth in the within-entitled cause, and that the foregoing is a full, true and correct transcript of the proceedings had at the taking of said deposition, reported to the best of my ability and transcribed under my direction.

March 14, 2005 Joanmarie Torreano
Date CSR Number C-6504