Apple Inc. v. Psystar Corporation

Doc. 2941 Att.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

JAYNE PALMISANO, et al.,

Plaintiff,

-vs-

OLIN CORPORATION, et al.,

Defendants.

______________________________________ /

5:03-cv-01607-RMW

CERTIFIED COPY

DIGITAL VIDEO DEPOSITION OF ERIC M. NICHOLS, PE

Pages 1 to 201

DATE: March 2, 2005

TIME: 9:20 a.m.

LOCATION: LAW OFFICES OF DUANE MORRIS
One Market Street
Spear Tower
Suite 2000
San Francisco, California

REPORTED BY: Alicia M. C. Kemp
Certified Shorthand Reporter
License Number C-6718

EXHIBIT
tabbies
D

DISK ENCLOSED

PULONE & STROMBERG, INC.
CERTIFIED SHORTHAND REPORTING
AND VIDEOCONFERENCING SERVICES

Offices located in:

San Jose, California
(408) 280-1252

Santa Cruz, California
(831) 459-6668

Dockets.Justia.com

Q. -- contamination in groundwater? 09:43a

MR. PEARCE: Objection. Lack of foundation, calls for speculation, overly broad. 09:43a 09:43a

You can answer. 09:43a

THE WITNESS: Blasting agents have been known to contain perchlorate, and therefore could potentially act as a source to groundwater contaminants. 09:43a 09:43a 09:44a

BY MR. MILLER: 09:44a

Q. I take it that at that particular site the source of perchlorate may be a source other than blasting operations; is that correct? 09:44a 09:44a 09:44a

A. It's possible, yes. 09:44a

Q. Okay. What other potential sources are being evaluated at that particular site? 09:44a 09:44a

A. My involvement in that site is peripheral enough that I do not have that specific information. 09:44a 09:44a

Q. Okay. You have identified in your expert witness report and rebuttal report various potential sources of perchlorate in groundwater; is that correct? 09:44a 09:44a 09:44a

A. I did identify a few potential sources, yes. 09:44a

Q. Okay. Um, can you identify for us here on the record what those potential sources might be? 09:44a 09:44a

MR. PEARCE: Let me object. That's vague and ambiguous. Are you referring to in general or this specific site that -- that is the subject of this 09:44a 09:44a 09:45a

litigation? 09:45a
MR. MILLER: In general. 09:45a
THE WITNESS: So agents that contain 09:45a
perchlorate? Is that what you're asking me? 09:45a
BY MR. MILLER: 09:45a
Q. Yes, that could be a source of groundwater 09:45a
contamination. 09:45a
A. If I could refer to my expert report -- 09:45a
Q. Certainly. 09:45a
A. -- for the complete list? 09:45a
Q. Sure. We've identified your expert report of 09:45a
Eric M. Nichols, dated January 24, 2005, as Exhibit 09:45a
Number 3, Mr. Nichols, and the expert rebuttal report of 09:45a
Eric M. Nichols, as Exhibit Number 2. 09:45a
A. As it states in my expert report, other sources 09:46a
of perchlorate could include highway safety flares, some 09:46a
agricultural fertilizers, fireworks, matches, dyes, 09:46a
lubricating oils, air bag inflators, paints, 09:46a
electroplating and medical specialty tests. And I would 09:46a
add blasting agents to that list following on the 09:46a
discussion we just had. 09:46a
Q. What page of your expert witness report is that 09:46a
contained on, Mr. Nichols? 09:46a
A. In this particular hard copy, it's page 13. 09:46a
Q. All right. Do you know the extent to which any 09:46a

BY MR. MILLER: 

Q. Um, Mr. Nichols, have you looked specifically at perchlorate sampling done on any of the supply wells serving the properties of the four plaintiffs whose cases we're here today to discuss? 10:01a 10:01a 10:01a 10:01a 10:01a

A. I'm not sure what wells you're referring to. 10:01a

Q. Um, the well owned by Mr. Wess, the Dallas, the Pereiras or the Smiths? Have you looked specifically at the sampling conducted on those wells? 10:01a 10:01a 10:01a

A. The sampling or the results? 10:02a

Q. The results. I'm sorry. 10:02a

A. I've reviewed reported concentrations at the Dalla and Wess wells in conjunction with my rebuttal of Larson's opinion. 10:02a 10:02a 10:02a

Q. Okay. In other words, you looked at the reported concentrations, but did not look at the underlying data that was collected from those particular wells; is that correct? 10:02a 10:02a 10:02a 10:02a

A. I did not have access to that data. 10:02a

Q. In other words, you didn't look at the chromatograms or any of the other laboratory data that would have been the source of the calculated concentrations; is that correct? 10:02a 10:02a 10:02a 10:02a

A. I did not. 10:02a

Q. You've indicated in your report that method 10:02a

Q. It was a very poorly worded question. 12:05p

Do you know the extent to which the results of 12:05p the four plaintiffs' wells at issue in this particular 12:05p case varied from sampling event to event? 12:05p

A. I've been able to look at sampling results for 12:05p the Dalla and Wess wells for one or two sampling events 12:05p in 2004, I believe, but I am unaware of the full number 12:05p of samples and sample results that have been -- possibly 12:06p been collected at the wells that you named. 12:06p

Q. All right. Have you requested of counsel all 12:06p results that are available for the sampling of the wells 12:06p of the plaintiffs whose cases are at issue here today, 12:06p of Mr. Wess, the Dallas, the Pereiras and the Smiths? 12:06p

A. The only data that I've been able to obtain is 12:06p what is published in Olin's consultants' reports, in the 12:06p hard copies of Olin's consultants' reports. 12:06p

Q. Did you make any recommendations to counsel 12:07p that additional sampling be done on these particular 12:07p wells? 12:07p

A. No. 12:07p

Q. Are you satisfied with respect to the data you 12:07p have as to whether or not these wells have experienced 12:07p variability over time in terms of their perchlorate 12:07p levels? 12:07p

MR. PEARCE: Objection. Lacks foundation. 12:07p

Vague and ambiguous, also, as to satisfy. 12:07p

THE WITNESS: Having only seen one or two samples from two of the four wells you mentioned, I don't think it's possible to assess the variability at those particular wells. 12:07p 12:07p 12:07p 12:07p

BY MR. MILLER: 12:07p

Q. Did, um, counsel show you the results of the sampling results obtained by the plaintiffs themselves in this litigation? 12:07p 12:07p 12:07p

A. No. 12:08p

Q. Did counsel, um, share with you the results of testing conducted by Olin's counsel in connection with these four wells, other than the data that have been reported in MACTEC reports? 12:08p 12:08p 12:08p 12:08p

A. The only data I've seen are the data reported in the MACTEC reports. 12:08p 12:08p

Q. Can you rule out, Mr. Nichols, the possibility that the four wells owned by the four plaintiffs in these case -- these cases, or the wells serving these plaintiffs in these cases, will not experience variability beyond that which you've seen from the data reported by MACTEC? 12:09p 12:09p 12:09p 12:09p 12:09p 12:09p

MR. PEARCE: Objection. Vague and ambiguous. Multiple double negatives. 12:09p 12:09p

THE WITNESS: I don't understand the question. 12:09p

I'm sorry. 12:09p

BY MR. MILLER: 12:09p

Q. Okay. You indicated that -- well, strike that. 12:09p

Am I correct that you do not have an opinion as to whether or not the four wells at issue in this particular case have been variable in terms of their perchlorate levels in the past? 12:09p 12:09p 12:09p 12:09p

MR. PEARCE: Objection. Vague and ambiguous. 12:10p

THE WITNESS: I don't -- I've not been presented with enough data to assess the variability of any of those four wells. 12:10p 12:10p 12:10p

BY MR. MILLER: 12:10p

Q. In terms of perchlorate levels; correct? 12:10p

A. In terms of anything, but perchlorate in particular. 12:10p 12:10p

Q. Okay. Um, do you have a -- an opinion to a reasonable degree of scientific certainty that these wells will experience variability in the future with respect to perchlorate specifically? 12:10p 12:10p 12:10p 12:10p

A. I'm having a hard time understanding the nature of that question, given that the reported levels in the MACTEC reports have been less than 4, but the specific concentrations that may be in those wells less than 4 has not been reported by MACTEC. 12:11p 12:11p 12:11p 12:11p 12:11p

Q. Let me ask it this way. 12:11p

Do you have an opinion to a reasonable degree of scientific certainty, Mr. Nichols, that Mr. Wess' well will ever exceed 4 parts per billion of perchlorate? 12:11p 12:11p 12:11p 12:11p

MR. PEARCE: Objection. Lack of foundation. 12:11p

THE WITNESS: I don't think it's possible to assess at this point whether or not that well will rise above 4 or remain below 4. 12:11p 12:11p 12:11p

BY MR. MILLER: 12:12p

Q. Okay. So asking it a different way, would you agree with me you do not have an opinion to a reasonable degree of scientific certainty that Mr. Wess' well will ever exceed 4 parts per billion of perchlorate? 12:12p 12:12p 12:12p 12:12p

MR. PEARCE: Objection. Lacks foundation. I also object to the extent that it mischaracterizes Mr. Nichols' expert opinion reports, which are stated in reports which we provided to you, which documents speak for themselves. 12:12p 12:12p 12:12p 12:12p 12:12p

BY MR. MILLER: 12:12p

Q. You can answer the question. 12:12p

A. As I said before, I don't think enough data has been collected of those wells to assess the future variability. And as my expert rebuttal report discusses, I don't think that, given the data we have and the knowledge of the perchlorate extent in the 12:12p 12:12p 12:12p 12:12p 12:12p

Llagas Subbasin, that future impacts above any level can be ruled out and current impacts below the current reporting level of 4 cannot be ruled out. 12:12p 12:12p 12:13p

Q. I understand that. Can you say with a reasonable degree of certainty, Mr. Nichols, that Mr. Wess' well will ever have more than 4 parts per billion of perchlorate in it? 12:13p 12:13p 12:13p 12:13p

MR. PEARCE: Objection. Calls for speculation. Asked and answered. Lacks foundation. 12:13p 12:13p

THE WITNESS: Can you ask the question again, please. 12:13p 12:13p

MR. MILLER: Sure. Why don't we have the court reporter read it back. 12:13p 12:13p

THE REPORTER: One moment. 12:13p

(Record read as requested.) 12:13p

THE WITNESS: I don't think, with the data we have at hand, that any prediction can be made with any degree of certainty, whatever the level. 12:14p 12:14p 12:14p

BY MR. MILLER: 12:14p

Q. Okay. So you can't make a prediction with any degree of certainty that his well will be tested with more than 4 parts per billion of perchlorate in it? 12:14p 12:14p 12:14p

A. I'm sorry. I don't quite understand the distinction between that question and the question before it. 12:15p 12:15p 12:15p

THE VIDEOGRAPHER: We're back on the record. 01:36p
The time is 1:34. 01:36p

Please proceed. 01:36p

BY MR. MILLER: 01:36p

Q. Mr. Nichols, did you review any data or other 01:36p
information over the course of the lunch hour? 01:36p

A. No, I did not. 01:36p

Q. Okay. Have you ever seen a positive detection 01:36p
for the presence of perchlorate in the Wess and Dalla 01:36p
wells? 01:36p

A. I have not. Just a reporting of less than 4 01:36p
micrograms per liter. 01:36p

Q. Okay. Are the data for the Wess and Dalla 01:36p
wells insufficient to opine on the probability that 01:36p
these wells have ever been at 2 micrograms per liter -- 01:36p

MR. PEARCE: Objection. Lacks foundation. 01:36p

BY MR. MILLER: 01:36p

Q. -- perchlorate? 01:36p

MR. PEARCE: Vague and ambiguous. 01:36p

THE WITNESS: I think that the data at those 01:36p
wells needs to also be put in the context of the data 01:37p
around those wells to make that determination. 01:37p

BY MR. MILLER: 01:37p

Q. Okay. Can you tell me what the probability is, 01:37p
Mr. Nichols, that the Wess and Dalla wells have ever had 01:37p

MR. PEARCE: I object to the extent the question lacks foundation. 02:17p 02:17p

You can answer it. 02:17p

THE WITNESS: There may be reasons for that, 02:17p but I would be -- I would have to speculate as to what 02:17p they are. 02:17p

BY MR. MILLER: 02:17p

Q. Okay. Um, um, is it conceivable, Mr. Nichols, 02:17p that there are migration pathways that exist on the 02:17p eastern boundary of the plume that bypass the Wess and 02:17p Dalla wells? 02:18p

MR. PEARCE: I object to the extent it calls 02:18p for speculation, vague and ambiguous, lacks foundation. 02:18p

THE WITNESS: Where specifically along the 02:18p eastern boundary are you referring to? 02:18p

BY MR. MILLER: 02:18p

Q. In the vicinity of the Wess and Dalla wells. 02:18p

A. As I explained in my first expert report about 02:18p groundwater movement through heterogeneous alluvial and 02:18p fluvial environments, there can be preferential 02:18p pathways. So if you're asking me to say is it possible 02:18p for preferential pathways to exist, certainly it is. 02:19p

Q. How would we confirm the existence or absence 02:19p of preferential pathways that bypass the Wess and Dallas 02:19p wells? 02:19p

MR. PEARCE: I object to the extent it misstates his testimony, lacks foundation. 02:19p

THE WITNESS: Well, first of all, I think a preferential pathway could lead to the Wess and Dalla wells as likely as to bypass the Wess and Dalla wells. 02:19p

BY MR. MILLER: 02:19p

Q. How can we be sure whether they lead to or bypass the Wess and Dalla wells? 02:19p

A. More detailed site characterization, as we mentioned before, and as the regional board and the Santa Clara Valley District has required of Olin, which Olin has not done yet, is to put in a more detailed, depth-discrete monitoring well network that better characterizes the flow conditions and the occurrence of perchlorate and the existence or absence of any preferential pathways. 02:20p

Q. So is it the case that the plume is insufficiently characterized for you to determine the existence or absence of preferential pathways that would lead to or bypass the Wess and Dalla wells? 02:20p

A. Can you repeat the question? 02:20p

THE REPORTER: One moment. 02:20p

(Record read as requested.) 02:20p

THE WITNESS: I think it is the fact that the plume is so poorly characterized, that is the nature of 02:21p

Q. All right. Mr. Nichols, I'm not going to put you on the spot here and ask you to draw a diagram of the convex holes, because, apparently, it would be speculation on your part to do so; is that correct? 03:40p 03:40p 03:40p 03:40p
A. Yes. 03:40p
Q. All right. Um, Mr. Nichols, in your expert witness report, you have indicated that you have attempted to identify alternative sources of perchlorate in the plume? 03:40p 03:41p 03:41p 03:41p
A. I'm sorry? Could you repeat the question? 03:42p
Q. Let me ask you this. Did you make any attempt to identify any alternative sources of perchlorate that exist in the Llagas Basin? 03:42p 03:42p 03:42p
A. I did not. And to my knowledge, no one else has either. 03:42p 03:42p
Q. Okay. Um, why did you not assess the presence of alternative sources of perchlorate in the basin? 03:42p 03:42p
A. I simply had no access to that kind of information. 03:42p 03:42p
Q. Um, the document that we've marked as Exhibit Number 4 has the tail end here of a reservoir. Do you see that? 03:42p 03:42p 03:42p
A. Yes. 03:42p
Q. Do you know what that reservoir is called? 03:42p
A. Anderson Reservoir. 03:43p

Q. The results of a study of that nature might assist you in determining the extent to which the existing plume originated from the site versus perchlorate coming into the plume from alternative sources; is that correct? 04:04p 04:04p 04:04p 04:04p 04:04p

A. It would help establish whether there were any other significant sources of perchlorate in the subbasin. 04:05p 04:05p 04:05p

Q. And absent such a study, you can't establish whether there are significant sources of perchlorate other than from Olin; is that correct? 04:05p 04:05p 04:05p

MR. PEARCE: Objection. Misstates prior testimony, lacks foundation. 04:05p 04:05p

THE WITNESS: I have not seen any data to suggest or to indicate other significant sources of perchlorate in the Llagas Subbasin. 04:05p 04:05p 04:05p

BY MR. MILLER: 04:05p

Q. I understand that. But in the absence of the study that you were pleased to hear that the Regional Water Quality Control Board ordered Olin to do, in the absence of the data that might be generated by such a study, you can't determine or eliminate the possibility that portions of the perchlorate in the Llagas Subbasin came from alternative sources such as Chilean fertilizer; correct? 04:05p 04:05p 04:05p 04:05p 04:05p 04:05p 04:05p 04:05p

from that site heading generally southeast, but with significant spread around that direction, and terminating approximately 9 and a half or 10 miles southeast of the site, it appears to me that the dominant source of perchlorate in the Llagas Subbasin is the Olin site. 04:08p 04:08p 04:09p 04:09p 04:09p 04:09p

BY MR. MILLER: 04:09p

Q. I appreciate that. Let me get back to the question that I don't think you answered. 04:09p 04:09p

Um, what data have you independently collected and analyzed, if any, that would permit you to rule out alternative sources of perchlorate in the Llagas Subbasin, other than the Olin-generated perchlorate? 04:09p 04:09p 04:09p 04:09p

MR. PEARCE: Objection. Asked and answered. 04:09p

THE WITNESS: The only data that I reviewed is the data produced and summarized by Olin's consultants. 04:09p 04:09p

BY MR. MILLER: 04:09p

Q. Does that data permit you to rule out the potential for contribution to this plume of perchlorate from alternative sources? 04:09p 04:09p 04:09p

A. As I stated in my expert report, those other sources may exist in the basin, but it's my opinion that they are not significant or that no data has come to light to evaluate the significance of those sources. 04:10p 04:10p 04:10p 04:10p

Q. Okay. And you didn't collect any data to 04:10p

assist you in that analysis; correct? 04:10p

A. I did not collect any data at this site. 04:10p

Q. Do you know whether there were any metal plating or etching facilities in the Llagas Subbasin or in the vicinity of the basin? 04:10p 04:10p 04:10p

A. I don't know of any specific metal plating or etching facilities. 04:10p 04:10p

Q. Um, are metal plating and etching facilities the types of facilities that historically have used perchlorate? 04:10p 04:10p 04:10p

A. Under certain conditions, it appears that electroplating may contribute or it may involve perchlorate. 04:11p 04:11p 04:11p

Q. Did you make any analysis of the historical uses of properties in the vicinity of the Llagas Subbasin to determine whether there were any metal plating facilities anywhere within the subbasin area? 04:11p 04:11p 04:11p 04:11p

A. I did not. 04:11p

Q. Okay. We talked about your work that is ongoing at a gravel facility. I don't mean to mischaracterize it. You mentioned a facility in Massachusetts? 04:11p 04:11p 04:11p 04:11p

A. Sand and gravel and concrete batch plant. 04:11p

Q. Okay. And there may have been blasting operations within the vicinity that may have contributed 04:12p 04:12p

STATE OF CALIFORNIA )
) ss.
COUNTY OF SANTA CLARA )

I, ALICIA M. C. KEMP, a Certified Shorthand Reporter in and for the State of California, certify that the witness in the foregoing deposition,

ERIC M. NICHOLS, PE,

was by me duly sworn to tell the truth, the whole truth and nothing but the truth in the within-entitled cause, and that the foregoing is a full, true and correct transcript of the proceedings had at the taking of said deposition, reported to the best of my ability and transcribed under my direction.

March 8th, 2005 Alicia M. C. Kemp
Date CSR Number C-6718.