Apple Inc. v. Psystar Corporation Doc. 2970

**BRUCE E. STANTON (SBN 104925)**
**LAW OFFICES OF BRUCE E. STANTON**
**1530 The Alameda, Suite 115**
**San Jose, CA 95126**
**Telephone: (408) 971-0900**
**Facsimile: (408) 971-6810**

**Attorney for Plaintiffs**

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| VICTORIA CRISIONE, DIANA ZANFARDINO, TATIANA MARIN, LOUIS JOSVAI, BILLIE JOSVAI,<br><br>Plaintiffs,<br><br>vs.<br><br>MHC FINANCING LIMITED PARTNERSHIP dba CALIFORNIA HAWAIIAN MOBILE ESTATES, DOES 1 through 100, inclusive,<br><br>Defendants. | **Case No.: C 03-05173 JF**<br><br>**PLAINTIFFS' REPLY BRIEF TO OPPOSITION TO NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**<br><br>**[FRCP 15(a)]**<br><br>**Date: May 6, 2005**<br>**Time: 11:00 a.m.**<br>**Dept: 3**<br><br>**Complaint Filed: October 17, 2003**<br>**Trial Date: May 20, 2005** |

## I. INTRODUCTION

The opposition filed by defendant (hereinafter "MHC") herein shows a lack of understanding as to what this Court's "invitation" to amend and the proposed Amendment itself is all about. The new cause of action seeks only the rescission of the lease agreements, and not to undo the entire purchase transactions. Plaintiffs would not have to move out of the Park if the leases are terminated, as California mobilehome tenancies can only be terminated "for cause" pursuant to California civil Code sec. 798, et seq. Plaintiffs do not require that said leases



Dockets.Justia.com

remain in effect in order to continue to maintain a tenancy in the Park. No other third party sellers or lenders are relevant to this discussion, as it would be ludicrous to ask this Court to undo the entire purchase transactions for each plaintiff or reinstate the original sellers of the mobilehomes to ownership. Plaintiffs seek only the rescission of their rental agreements with MHC in order that the Court may conform their tenancies to what was originally represented to them, and upon which induced each plaintiff to expend large sums of money to purchase and invest in their homes. The equitable remedy sought by the proposed new cause of action is what this Court invited when it made reference to its “discretion to fashion an equitable remedy.” It is precisely because the mobilehome purchases cannot be completely undone that plaintiffs have no other equitable remedy but to seek rescission and reformation of the lease agreements to reflect the original intention of the parties; i.e. that MHC was content to rent to plaintiffs based upon the current and future rental terms agreed to at the inception of each lease. Plaintiffs own ‘im’obilehomes in an ‘im’obilehome park. Without the equitable remedy being sought, it their lease agreements are held to be unenforceable due to mutual mistake, plaintiffs shall lose their homes. MHC persists in characterizing this case as one where the selfish and greedy plaintiffs wish to obtain some sort of financial windfall at the expense of the poor, unsuspecting park owner. It is, rather, a case of individual homeowners fighting to protect their homes and only investments from a multi-million dollar park owner which has embarked upon a vendetta against rent control at the expense of its tenants. If indeed a mutual mistake is present, then equity is needed to give plaintiffs justice. The proposed amendment only seeks to create an equitable remedy from the same operative facts without adding new parties or creating new legal issues that were previously unknown or not contemplated by MHC.

MHC alleges that leave to amend should be denied because it would violate multiple precepts developed by courts to test the validity of such a motion under F.R.C.P. Rule 15. MHC is wrong on all accounts.

## II.

## GRANTING LEAVE TO AMEND WILL NOT CAUSE UNDUE PREJUDICE

The proposed new cause of action seeks only to add a remedy based upon the same operative facts always known to MHC; i.e. that it never actually knew for sure that plaintiff's spaces were covered by rent control, even though it affirmatively represented that they were. No new or surprise evidence is alleged or required to sustain the new legal theory. Little or no new discovery should be required for MHC to be given an adequate opportunity to construct its defense to the new cause of action. However, it is routine for a Court to condition its granting of such a motion upon the ability of defendant to file an amended Answer, re-open discovery or extend the trial date. Plaintiffs do not oppose, and in fact will stipulate, to any of the above.

As set forth in plaintiffs' motion papers, the granting or denial of a motion to amend is placed within the sound discretion of the Court. The relevant case law makes it clear that the most important factor for a reviewing court to consider in ruling upon such a motion is the resulting prejudice to the opposing party which granting the motion could create. Without "undue prejudice", the Court is free to exercise the discretion granted by Rule 15 to allow an amendment "when justice so requires." *Bates v. Western Electric* (1976, ED Pa) 420 F. Supp. 521. The opposing party's mere statement that it will suffer prejudice is not a sufficient reason for denying the motion. The opposing party must show how it is prejudiced, and that the prejudice is substantial. *Hageman v. Signal L.P. Gas, Inc.* (1973, CA6 Ohio) 486 F. 2d 479. Virtually all amendments to complaints will involve some amount of claimed prejudice to a

defendant. The true test in each case is whether undue prejudice would result, and the court must balance this against the general policy behind Rule 15 that controversies should be decided on their merits. *Alberto-Culver Co. v. Gillette Co. (1976, ND Ill.)* 408 F. Supp. 1160. A mere showing of some prejudice is not sufficient to remove discretion from the court and require a denial of the motion. Rather, any such prejudice must to established to be undue; i.e. more than is appropriate or justified. *Doe v. Columbia Univ.* (1996, SD NY) 165 FRD 394. Defendant must show that the asserted prejudice amounts to more than a mere inconvenience, and that the amendment would unfairly cause disadvantage or deprive it of an opportunity to present facts or evidence which would have been offered if the amendment was made in a more timely fashion. *Phillips v. Borough of Keyport* (1998, DC NJ) 179 FRD 140.

MHC's opposition argument turns this usual analysis on its head by waiting until the last section before explaining just how it will be prejudiced if plaintiffs' motion is granted. After repeatedly saying that it will suffer prejudice and repeating other legal arguments, a description of the supposed prejudice is finally found in a single paragraph at page 9, lines 19-27 of MHC's opposition brief, wherein it alleges that it "cannot now gather information in order to defend against plaintiff's claims. Just what "information" MHC is referring to is not described. Defendant goes on to state that the amendment "would actually require additional discovery on potential new issues (again undefined) including new depositions and additional research…".

The fact that a party needs to perform "additional research" of an undefined amount is a likely product of any amendment, and hardly constitutes undue prejudice. Even assuming that additional discovery is warranted, plaintiffs are happy to make themselves available to MHC for this purpose. Defendant may have all the time that it needs to take its "new depositions". Again, this court has complete authority to extend both discovery and trial so as to avoid any prejudice

to defendant. Where discovery has closed but the opposing party has already conducted some investigation into the subject matter of the amendment, and a trial date has been set, it is not error to allow an amendment where discovery can be re-opened and the cost thereof was not sufficient by itself to warrant a denial of the motion. *Dennis v. Dillard Dept. Stores, Inc.* (2000, CA8 Mo) 207 F. 3d 523. It is also significant that the proposed amendment seeks to add one cause of action based upon the same facts (MHC's opposition admits this at Page 3; lines 7-9) as set forth in the First Amended Complaint. No new parties need be added, nor will the case become unduly complicated as a result of the proposed new cause of action. A defendant is not unduly prejudiced where the amended complaint involves substantially same issues as those originally plead, although a similarity of issues and legal theories is not required to make the amendment permissible. *Liu v. T & H Mach., Inc.* (1999, CA7 Ill.) 191 F. 3rd 790. Where decisions have denied a motion to add a new claim, it has been where new defendants are added or a joinder of parties is required (*Societe Liz, S.A. v. charles of Ritz Group, Ltd.* (1987, DC Dist Col) 118 FRD 2.), the theory of the case is substantially changed and the defendant is required to do significant new preparation (*Thibodeau v. Fujisawa USA* (1993, DC Me) 151 FRD 502.) or the new cause of action is time barred by the statute of limitations and consequently futile. (*Jablonski v. Pan American World Airways, Inc.* (1988, CA3 Pa) 863 F. 2d 289.

In short, no prejudice exists which prevents this Court from exercising its discretion under Rule 15(a) to grant plaintiffs' motion.

**III.**

**MERE DELAY IS INSUFFICENT REASON FOR DENYING THE MOTION**

There is a legion of cases which stand for the proposition that delay in filing a motion alone is not sufficient reason to deny a motion for leave to amend. *Harrison v. Rubin* (1999,

App DC) 335 US App DC 413, 174 F. 3d 249. _Ramos v. O' Connell_ (1996, WD NY) 169 FRD 260. _Mercantile Trust Co. Nat'l Asso. V. Inland Marine Products Corp._ (1976, CA8 Mo.) 542 F. 2d 1010. Undue prejudice must also be present, which as plaintiff as shown above does not exist in this case. A court was held to have abused its discretion in denying a motion to amend based upon the same facts as initially plead, where the Court based its decision solely upon the moving party's undue delay in filing the motion 2 ½ years after the suit was commenced, and found that only relatively light prejudice would result to the defendant. _Moore v. Paducah_ (1986, CA6 Ky) 790 F.2d 557. This is exactly the situation in the case at bar. Conversely, a plaintiff was granted leave to amend over objections of lateness where the liability theories added did not result in surprise or particular prejudice to the defendant. _Oost-Lievense v. North Am. Consortium, P.C._ (1997, SD NY) 969 F. Supp. 874. Some cases have even held that "undue delay" refers to a delay in the proceedings, as opposed to the delay of the amending party in filing the motion to amend. _Wausau Underwriters Ins. Co. v. Shisler_ (1999, ED Pa) 190 FRD 341.

Here, as MHC has taken great care to point out, it knew of and plead the defense of mutual mistake when its Answer was first filed. It was thus aware that the potential for mutual mistake existed long before plaintiffs. As such, MHC is charged with the knowledge that equitable theories such as rescission or reformation could be plead and are available to plaintiffs as potential remedies. The addition of an equitable cause of action is thus no surprise, but is a natural by-product of MHC's February, 2005 admission that it was mistaken about the existence of rent control coverage for plaintiffs' spaces. The proposed new cause of action more fully flushes out the original prayer of plaintiffs that the court award them "such other and further relief as the court deems just and proper."

Nor need plaintiffs' motion be rejected simply because it is made after partial summary judgment has been granted, and a motion for summary judgment is still pending. Plaintiffs do not make this motion to "stave off dismissal" as MHC implies. This Court has already sustained at least one cause of action for each plaintiff, and has ensured that this case will proceed to trial. The issue is whether that trial shall also include an equitable cause of action. Where a court had taken a motion for summary judgment under advisement, and the plaintiff moved for leave to amend, defendant's opposition upon the ground that the motion was untimely was meritless, in that the parties were in much the same position as if the motion for summary judgment has not been made. *Rucienski v. Vanadium Corp. of America* (1943, DC NY) 6 FRD 313. In one case, an amendment was permitted two weeks after a motion for summary judgment was submitted for decision, even though the plaintiff had almost no opposition to defendant's summary judgment motion, so that the plaintiff would not be denied its day in court. *Watson v. Southern R. Co.* (1975, DC SC) 420 F. Supp. 483. The "substantial merit" of plaintiffs' motion that MHC argues must be present is established by the fact that defendant's counsel acknowledged at oral argument the relevance of the proposed new cause of action, that the Court itself suggested it, and by the presence of California statutes which allow the remedy of both rescission and reformation in the case of a mutual mistake (see below).

## IV.

## GRANTING THE MOTION WOULD NOT BE FUTILE

While "futility" as a matter of law constitutes grounds for denying leave to amend, that fact that a claim may be difficult to prove does not constitute futility. *Outboard Marine Corp. v. Pezetel* (1982, DC Del) 535 F. Supp. 248. A proposed claim should be labeled futile only where it is clearly frivolous or legally insufficient on its face, and if the proposed claim sets forth facts

and circumstances which may entitle plaintiff to relief, then futility is not a proper basis for denying relief. *Gallegos v. Bandeis Sch.* (1999, ED NY) 189 FRD 256. Futility is typically present where there is immunity from liability (*Martinez v. Newport Beach City* (1997, CA9 Cal) 125 F. 3d 777); a lack of standing (*Bell v. City of Kellogg* (1991, CA9 Idaho) 922 F. 2d 1418); a history of previous unsuccessful amendments (*Allen v. Beverly Hills* (1990, CA9 Cal) 911 F. 2d 367); or a statute of limitations bar *Northbrook Nat'l Ins. Co. v. J & R Vending Corp.* (1996, ED NY) 167 FRD 643. None of these issues exist here.

Futility is not established either because defendant does not understand the nature of the remedy sought, or because it is as of yet unclear what form of equitable remedy the court might choose to fashion. Civil Code section 1689 clearly provides that a contract where consent is given by mistake can be rescinded. Nothing would prevent this Court from doing so here. Restoring the parties to their "original position" is only a theoretical proposition in this case, since the existence of the leases is not required for the plaintiffs' tenancies to exist (see Civil Code sec. 798, et seq.). A rescission of the leases will restore the parties to a tenancy without a written document. But it is clearly not necessary to move plaintiffs' mobilehomes out of the park or require plaintiffs to be reimbursed for all of the rent previously paid (at least that which is not in excess of what rent control allows). When, through the mutual mistake of the parties, a contract does not express the true intention of the parties, it may be revised so as to express that intention pursuant to Civil Code section 3399. This reformation can be accomplished by this Court as part and parcel to the rescission, in order to do equity and conform to the original intent and understanding of the plaintiffs; i.e. that they would agree to purchase a mobilehome and move into the park only based upon the space rents represented by MHC along with the annual rent increases represented, and would have not have entered into said lease agreements had they

known the truth; i.e. that exempt construction could result in rent increases substantially higher than what was represented to them. It is disingenuous for MHC to argue that it was never its "true intent" to rent plaintiffs spaces at the rents being charged prior to 2002. MHC did so voluntarily, without seeking administrative leave from the City for higher rents, and without investigating for seven years whether the spaces were otherwise exempt from rent control coverage. Although it did not know that the spaces were exempt construction, it had no expectation of receiving higher rent than what was represented, and apparently based its annual operating budget and financial expectations upon what it had agreed to receive. It is not inequitable for a court to rescind the lease agreements and reform them to what was originally within the intent of both parties. Plaintiffs simply want to keep their homes.

## IV.

## CONCLUSION

The bottom line for this Court is this: The Court has discretion to grant or deny plaintiffs' motion, and it would not be an abuse of discretion for the Court to grant the motion. Plaintiffs thus pray that for all of the forgoing reasons, plaintiffs' motion to file the proposed Second Amended Complaint be granted.

Dated: May 5, 2005

Respectfully Submitted,

_______________________________

Bruce E. Stanton, Attorney for Plaintiffs