Apple Inc. v. Psystar Corporation
Doc. 3131 Att. 1

# EXHIBIT
# B

Dockets.Justia.com

State of California - City of San Francisco

# SEARCH WARRANT AND AFFIDAVIT

## (AFFIDAVIT)

I **Officer Jacob Fegan #1380**, swears under oath that the facts expressed by him/her in the attached and incorporated **Statement of Probable Cause**, are true and that based thereon he has probable cause to believe and does believe that the person(s), property, and/or thing(s) described below is/are lawfully seizable pursuant to Penal Code Section 1524, as indicated below, and is/are now located at the locations set forth below. Wherefore, affiant requests that this Search Warrant be issued.

_______________________________,
(Signature of Affiant)

NIGHT SERVICE REQUESTED: YES ( ) NO ( x )

## (SEARCH WARRANT)

THE PEOPLE OF THE STATE OF CALIFORNIA TO ANY SHERIFF, POLICEMAN OR PEACE OFFICER IN THE CITY AND COUNTY OF SAN FRANCISCO: proof by affidavit having been made before me by JACOB FEGAN that there is probable cause to believe that the property, person (s), and / or things described herein may be found at the locations set forth herein and that it is lawfully seizable pursuant to Penal Code Section 1524 as indicated below by "X" (s) in that it:

____ was stolen or embezzled
__x_ was used as the means of committing a felony
__x_ is possessed by a person with the intent to use it as means of committing a public offense or is possessed by another to whom he or she may have delivered it for the purpose of concealing it or preventing its discovery.
__x_ tends to show that a felony has been committed or that a particular person has committed a felony.
____ tends to show that sexual exploitation of a child , in violation of P.C. section 311.3 , or possession of matter depicting sexual conduct of a person under the age of 18, in violation of P.C. section311.11 has occurred or is occurring.
____ There is a warrant to arrest a person.

**YOU ARE THEREFORE COMMANDED TO SEARCH:**
**1) 375 FRANKFORT ST., DALY CITY, CA.**

**FOR THE FOLLOWING PROPERTY; PERSON(S); AND/0R THING(S):**

See Exhibit A attached hereto and incorporated by this reference

**AND IN THE CASE OF PROPERTY AND/OR THINGS, TO SEIZE IT/THEM IF FOUND** and bring it/them forthwith before me, or this court, at the courthouse of this court. This Search Warrant and incorporated **Statement of Probable Cause** was sworn to as true and subscribed before me this 6th day of January, ~~2004~~ 2005, at 2:30 AM. / PM. Wherefore, I find probable cause for the issuance of this Search Warrant and do issue it.

_______________________________
(Signature of Magistrate)

NIGHT SEARCH APPROVED YES ( ) NO (✓)

Judge of the Superior Court # 514 City and County of San Francisco.

MELLON

01/06/05

EZ0010

1-6-05

STATE OF CALIFORNIA-CITY AND COUNTY OF SAN FRANCISCO
RETURN TO SEARCH WARRANT

Jacob Fegan, being sworn, says that he/she conducted a search pursuant to the
(Name of San Francisco Police Officer)

below described search warrant: Search Warrant/Case number: 050020569

Issuing Magistrate: Judge Mellon.

Magistrate's Court: Superior/Municipal Court # 514, City and County of San Francisco.

Date of Issuance: 1-6-05.
Date of Service : 1-6-05.

and searched the following location (s) , Vehicle (s) , and person (s):
375 Frankfort St.

and seized the following items:

- Cocaine, rock cocaine, scale, spoon, packaging, pay-owe sheets, gift wrapped boxes,
- Smith&Wesson gun, money counter, bullets, safes, "Eldo" indicia, Ruger rifle, baking soda, pyrex and strainer, Walgreen envelope, US Currency:

I further swear that this is a true and detailed account of all the property taken by me pursuant to the search warrant and that pursuant to Penal Code Sections 1528 and 1536 this property will be retained in my custody subject to the order of this court or of any other court in which the offense in respect to which the seized property is triable.

Be advised that pursuant to California Penal Code Sections 1539 and 1540, you may file a written motion in the court of the above-named magistrate who issued the search warrant, seeking the return of the property seized pursuant to this warrant. For further information concerning this search warrant contact ______________________ at telephone number ______________.
(Name of Officer)

______________________
(Signature of Affiant)

**Sworn to and subscribed before me this ________ day of __________,2004**

______________________
(Signature of Magistrate)
**Judge of the Superior Court**
**City and County of San Francisco**

Statement of Probable Cause of OFFICER JACOB FEGAN #1380

My name is Jacob Fegan. I am employed as a police officer in and for the City and County of San Francisco, California. I have been employed as a Police Officer for over 10 years. I am currently assigned to the Narcotics Bureau. I have been assigned to the Narcotics Bureau for approximately 24 months. Prior to working in the Narcotics Bureau I worked as a plainclothes narcotics officer at Mission Station for two years.

I am POST certified and I have received SFPD training in the cooking of base cocaine and heroin. My law enforcement experience includes over 100 narcotics related investigations and arrests. During my investigations, I've interviewed hundreds of narcotics, users, dealers and informants, to obtain additional information regarding the use / possession / possession for sale and sale of Controlled Substances, including information regarding packaging, pricing, updated terminology and slang names for the various Controlled Substances.

On 12/8/04 Off. Barberini and I were driving in the Tenderloin area. I was at Bush and Leavenworth when I saw a vehicle stop on the corner and someone get into the backseat. I saw the vehicle drive forward to Jones st. and the person who got into the backseat got out. I drove by the person who got out of the vehicle. I caught up to the vehicle saw the driver, the passenger and the license plate of the vehicle was CA. 2KSK457. I followed the vehicle and saw the vehicle stop again at O farrell and Jones. I saw another male get into the vehicle and the vehicle drive E/B to Taylor. The vehicle stopped and I was stopped at a red light next to it. I saw the latin male sitting in the passenger seat reach to the back seat and take an unknown amount of U.S. currency from the person in the backseat. I saw the latin male sitting in the passenger seat hand the person who got into the back seat something back. The person who got into the vehicle got out again. Due to my training and experience I believed I was witnessing possible narcotic's transactions.

I have made several narcotics arrests in the area where I have seen people waiting on corners or on streets and the dealer picks the buyer up. It is common that the driver drives the buyer a block or two while he makes the deal and drops the buyer off after a short distance.

On 12/15/04 I was driving in the Tenderloin area again when I saw the same vehicle driving on Bush St. I followed the vehicle and saw the same vehicle do the same things where it picked two separate people up on street corners in the Tenderloin and drop them off after a short distance. I followed the vehicle out of the Tenderloin area and to Daly City. I saw the vehicle stop on Frankfort St. and Acton and park. The person sitting in the passenger seat got out and walked to 375 Frankfort St. where I saw him use a key to open the front gate. The vehicle drove away.

On 12/16/04 I drove to 375 Frankfort to conduct surveillance on the house. At approximately 1030 hrs. I saw the same vehicle as before park at Frankfort and Acton. I could see that it was the same latin male driver that I had seen before. The driver was later identified as Diego Rivera. I saw the same Latin male sitting in the passenger seat of the vehicle on the prior days, later identified as Eldo Zamago, exit the house located at 375 Frankfort St. and walk towards the vehicle. Zamago was looking around in several different directions as he walked up to the vehicle. Zamago got into the vehicle and it drove N/B on Templeton towards Mission St. I followed the vehicle into the Tenderloin area where I saw it stop on the corner of Post and Jones and pick up another male who was waiting on the corner. I saw the white male standing on the corner talking on his cell phone looking into the oncoming traffic like he was waiting for someone. The white male walked off the curb as the vehicle

from Frankfort St. got closer and when it stopped the white male got into it. I watched as the vehicle stopped at Post and Taylor and the same person who got into the vehicle got out. Due to my training and experience I believed I was witnessing another narcotics transaction.

Later on that day I saw the vehicle driving on Mission St at Army. I followed the vehicle down Mission St. where I saw it drive towards 375 Frankfort St. I saw the vehicle stop at Frankfort and Acton. Zamago got out and walked to 375 Frankfort where I saw him use a key to open the gate of the house. I watched the vehicle drive away.

On 1/6/05 other members of my narcotics team and I set up surveillance on 375 Frankfort St. I saw the same vehicle drive S/B on Acton st. and park on the corner of Frankfort and Acton. I could see that the driver was Rivera. 15 minutes later Zamago exited 375 Frankfort St. and walk towards the vehicle. I saw Zamago look around in several different directions again like he was looking for someone. I watched Zamago get into the vehicle and the vehicle drove S/B on Templeton. Zamago and Rivera drove on the freeway and again drove into the Tenderloin area using the 280 freeway. I saw Rivera drive on Jones and stop to pick up another latin male who was waiting on the corner of Bush and Jones. I followed the vehicle W/B on Sutter where it pulled over to the curb on Sutter at Jones. I watched the latin male who got into the back seat exit the vehicle and walk E/b on Sutter. Due to my training and experience and my prior observations I believed I had witnessed a possible narcotics transaction.

Off. Barberini detained the latin male who got out of the vehicle, later identified as Marquez. I pulled my vehicle in front of the suspects. Off. Barberini conducted a pat search looking for any weapons on Marquez when he told me that he felt a small plastic baggie with rocks inside of Marquez's right front jacket pocket. Off. Barberini told me that he believed the object in Marquez's pocket was consistent with the size and packaging of possible crack cocaine. Off. Barberini took the object out and it was approximately ½ ounce of suspected crack cocaine wrapped in a plastic baggie. I arrested the the driver, Rivera. Insp. Lew told me that when he approached Zamago sitting in the passenger seat that he had plastic baggies in his right hand. Insp. Lew told me that Zamago shoved his right hand in between his legs trying to conceal what he had in his hands. Insp. Lew told me that when he searched Zamago he had three more baggies of crack cocaine in his right front pants pocket.

I took a keyring with keys on it from Zamagos pants pocket. I gave the keyring to Insp. Lew and he went to 375 Frankfort. Insp. Lew told me that the same keys that I took from Zamago opened the front gate and the front door to 375 Frankfort st.

Sgt. Hallisy, Insp. Cunningham and Insp. Lew drove to 375 Frankfort to freeze the house. I was worried that with the use of cell phones the connection would be made that these drug dealers were under arrest and that other dealers in the area would alert anyone at the 375 Frankfort allowing them to destroy any evidence.

At the narcotics office Off. Barberini used a presumptive test packet, Reagent brand, for cocaine to test the crack cocaine. Off. Barberini used a piece of crack cocaine he took from Marquez and it tested positive. I have used the same test over five times to test cocaine.

Based on my training and experience, I know that drug dealers store pay/owe, client data, and supplier data on electronic devices such as PDA's, Computers, floppy disks, zip drives, cellphones, pagers, and computers.

Based on my training and experience, I know that drug dealers maintain quantities of the

particular drug they sell and keep an inventory for their customers as well as scales and packaging material to weigh and package drugs for sale. I know that drug dealers often possess firearms such as short barrel shot guns, hand guns and various types of assault rifles, and other weapons to protect their drugs and currency from robbers and rival drug dealers.

Based on my experience and training, and the facts set forth in this affidavit, I believe that Elmo Zamago is a crack cocaine dealer who stores and sells crack cocaine from his house located at 375 Frankfort St. Daly City, Ca. I know that narcotics salespersons frequently store at their residence, narcotics, proceeds of narcotics, safe-deposit keys, paper records and pay-owe lists.

Wherefore, affiant prays that a search warrant issue, commanding the immediate search of the persons, premises, above designated for the property or things above described and that such property be brought before a magistrate or retained as provided in Section 1536 of the California Penal Code.

______________________________

Officer Jacob Fegan
San Francisco Police Department

Sworn to as true and subscribed before me this Jan 6, ~~2004~~ 2005.

______________________________

Judge of the Superior Court for the city and county of San Francisco, California

MELLON

# EXHIBIT 'A'

**Cocaine, Sch II and Cocaine base, Sch.I**, and narcotic paraphernalia, consisting in part of and including, "freebase" equipment, "freebasing" oils and solvents, small paper or "sno-seals", small plastic bags, balloons, cellophane wrap, cutting materials; and including to Mannitol, lactose, milk sugar, quinine, baking soda, and flour. Additional paraphernalia may include, mirrors, hypodermic needles, hypodermic syringes, razor blades, straws and small tubes, sieves, freebase pipes, strainers, scales and weighing devices. All documentary evidence as defined in California Penal Code 1524(f) including, all U.S. currency, buyer lists, seller lists, and records of narcotic trafficking activities including summary sheets, bank statements, canceled checks, deposit slips, check stubs, applications and receipts for cashiers checks, money orders, traveler's checks, bank wires, bank drafts, and bank transfers, inventory records, journals, cash expenditure and receipt records; transaction records relating to investment activity involving real estate, securities, mutual funds, gold, silver and similar assets, many of which are held in nominee names; transaction records which reflect net worth expenditures, including loan applications, credit cards and related items, as well as other notes, papers and records which record nominee names, dates, amounts of narcotics and money and identities of narcotics supplies and customers. All articles of personal property tending to establish and document sales of cocaine, consisting in part, of articles of personal property tending to establish the identity of persons in control of premises, vehicles, storage areas or containers located at, or nearby, or related to the subject premises where cocaine may be hidden. All vehicles, storage areas or containers located at, or nearby, or related to the subject premises where cocaine may be hidden; all articles of personal property tending to establish the location of such premises, vehicles, storage areas or containers where cocaine may be found or secreted, consisting of and including but not limited to, utility bills and receipts, rent receipts, canceled mail envelopes and keys. All firearms and weapons commonly related to narcotics trafficking. All computers and related or similar devices, and information on hard or floppy drives, which may contain any documents or records described above. All video equipment and tapes, and all telephone devices and machines, cellular equipment, and telephone calls to identify persons engaged in narcotics' related activities and to record narcotics' related conversations. All property subject to forfeiture as defined in California Health and Safety Code 11469 et seq. (7/97)